IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC., and
HONEYWELL INTELLECTUAL
PROPERTIES, INC.,

        Plaintiffs,

        v.

APPLE COMPUTER, INC.; ARGUS a/k/a
HARTFORD COMPUTER GROUP, INC.;
CASIO COMPUTER CO., LTD.; CASIO,
INC.; CONCORD CAMERAS; DELL
INC.; EASTMAN KODAK COMPANY; FUJI
PHOTO FILM CO., LTD.; FUJI PHOTO FILM
U.S.A., INC.; FUJITSU LIMITED; FUJITSU
AMERICA, INC.; FUJITSU COMPUTER
PRODUCTS OF AMERICA, INC.;
KYOCERA WIRELESS CORP.;
MATSUSHITA ELECTRICAL INDUSTRIAL
CO.; MATSUSHITA ELECTRICAL
CORPORATION OF AMERICA; NAVMAN
NZ LIMITED; NAVMAN U.S.A. INC.;
OLYMPUS CORPORATION; OLYMPUS
AMERICA, INC.; PENTAX CORPORATION;
PENTAX U.S.A., INC.; SONY
CORPORATION, SONY CORPORATION OF
AMERICA; SONY ERICSSON MOBILE
COMMUNICATIONS AB; SONY ERICSSON
MOBILE COMMUNICATIONS (USA) INC.;
TOSHIBA CORPORATION; and TOSHIBA
AMERICA, INC.

        Defendants.

C.A. No. 04-1338 (KAJ)

**DEFENDANTS' RESPONSE TO HONEYWELL'S MOTION TO CONSOLIDATE
AND OPPOSITION TO HONEYWELL'S MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...............................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDING ...............................................3

III.  SUMMARY OF ARGUMENT............................................................................5

IV.   STATEMENT OF FACTS...................................................................................6

V.    ALL THREE RELATED ACTIONS SHOULD BE CONSOLIDATED
      FOR PURPOSES OF DISCOVERY ....................................................................8

VI.   THE OPTREX ACTION SHOULD PROCEED TO TRIAL FIRST,
      NOT HONEYWELL'S SUIT AGAINST CUSTOMERS
      OF OPTREX'S ACCUSED LCD PRODUCTS ....................................................9

      A.   The Declaratory Judgment Action Brought By Optrex Should Be
           Given Priority Because Optrex Manufacturers LCDs That
           That Allegedly Infringe The '371 Patent.......................................................10

      B.   For Purposes Of The "Customer Suit Exception," Optrex Is The
           Manufacturer Of The Accused Products, Not KWC ....................................13

      C.   Honeywell Does Not Have A "Special Interest" That Warrants
           Proceeding With The Customer Defendants First Merely Because
           They Manufacture End Products .................................................................16

      D.   There Is No Basis For Staying A Manufacturer's Action And
           Proceeding With An Infringement Action Against Its Customers
           When Both Actions Are Pending Before The Same Court .........................19

      E.   KWC's Indemnification Claim Against Optrex Further Supports
           Adjudicating The *Optrex* Action First.........................................................21

VII.  CONCLUSION ................................................................................................23

i

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
    133 F.Supp.2d 354 (D. Del. 2001) ...............................................................................15

*Beck Systems, Inc. v. Marimba, Inc.*,
    2001 WL 1502338 (N.D. Ill. Nov. 20, 2001) ..................................................................21

*Codex Corp. v. Milgo Electronics Corp.*,
    553 F.2d 735 (1st Cir.), *cert. denied*, 434 U.S. 860 (1977).............................................11

*Collier v. Airtite, Inc.*,
    1988 WL 96363 (N.D. Ill. Sept. 15, 1988).......................................................................12

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    293 F.Supp.2d 423 (D. Del. 2003) .....................................................................14, 18, 19

*Commissariat a l'Energie Atomique v. Dell Computer Corp.*,
    2004 WL 1554382 (D. Del. May 13, 2004) ...............................................................*passim*

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F.Supp. 656 (D. Del. 1990) ...................................................................13, 15, 18, 21

*Ellenby Technologies, Inc. v. AT Systems Inc.*,
    2002 WL 356686 (D. Del. Feb. 8, 2002)......................................................................5, 11

*Ferri v. United Aircraft Corp.*,
    357 F.Supp. 814 (D.C. Conn. 1973)...................................................................................23

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ...........................................................................................10

*Izume Products Co. v. Koninklijke Philips Electronics N.V.*,
    315 F.Supp.2d 589 (D. Del. 2004) .....................................................................................16

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ....................................................................................11, 15

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ....................................................................................11, 12

*Loral Fairchild Corp. v. Matsushita Elec.*,
    266 F.3d 1358 (Fed. Cir. 2001) .......................................................................6, 18, 20, 21

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*,
    931 F.Supp. 1014 (E.D.N.Y. 1996)....................................................................................20

\\\CC - 88549/0003 - 46585 v1

*Nikken, USA, Inc. v. Robinson-May, Inc.*,
    2003 WL 21781149 (C.D. Cal. July 8, 2003) ...................................................... 11-12, 21

*Philips Electronics North America Corp. v. Contec Corp.*,
    220 F.R.D. 415 (D. Del. 2004) .......................................................................................

*Rates Technology, Inc. v. New York Telephone Co.*,
    1995 WL 438954 (S.D.N.Y. July 25, 1995)............................................................. 20-21

*Refac Int'l, Ltd. v. IBM*,
    790 F.2d 79 (Fed. Cir. 1986) ........................................................................11, 12, 20, 21

*Ricoh Co. v. Aeroflex Inc.*,
    279 F.Supp. 554 (D. Del. 2003) ................................................................................*passim*

*Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, LLP*,
    243 F.Supp.2d 145 (D. Del. 2003) ....................................................................................22

*T.J. Smith and Nephew Ltd. v. Ferris Corp.*,
    1987 WL 7496 (N.D. Ill. March 2, 1987) ...........................................................14, 16, 18

*Tec Air, Inc. v. Denso Mfg. Michigan Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) ......................................................................................16

*Whelen Technologies, Inc. v. Mill Specialties, Inc.*,
    741 F.Supp. 715 (N.D. Ill. 1990)..............................................................................14, 18

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................................ 10-11

*Zemel Bros., Inc. v. Dewey Electronics Corp.*,
    218 U.S.P.Q. 722 (N.D.N.Y. 1982)................................................................................15

## **Rules**

Federal Rules of Civil Procedure
    Rule 16 .............................................................................................................................5
    Rule 26(f) .........................................................................................................................5

\\\CC - 88549/0003 - 46585 v1

## I. INTRODUCTION

Honeywell has sued 35 defendants[1] in two separate actions before this Court alleging that a wide range of consumer products including portable televisions, laptop computers, digital cameras, cellular phones, video games, PDAs, and video cameras infringe U.S. Patent No. 5,280,371 ("the '371 patent").  However, the issue of infringement turns solely on the structure of one independent component that is included in all of these diverse products – a liquid crystal display ("LCD").  It is undisputed that the numerous other aspects of the accused end products are irrelevant to the issue of liability.

Significantly, most of the defendants that make and sell the accused end products don't make their own LCDs, and don't even have information concerning the structures of the LCDs.  Rather, they purchase their LCDs from various manufacturers and suppliers and incorporate them into their end products.  Accordingly, while some LCD manufacturers are already parties to the litigation, others are now seeking to join or are being impleaded so as to directly defend their LCD products against Honeywell's claims of infringement.

The way this litigation has been structured is the result of Honeywell's licensing strategy, not that which would be most judicially efficient.  On the one hand, Honeywell is actively negotiating licenses with LCD manufacturers, which licenses protect themselves and their customers from liability.  At the same time, Honeywell is suing the customers of those LCD manufacturers – the end product manufacturers – while trying to keep the LCD manufacturers from participating at trial.  In this way, Honeywell is using this litigation as a tool for pressuring the LCD manufacturers to take licenses from Honeywell.  Not surprisingly, however, many of the

---

[1] Since Honeywell's motion is focused on a requested stay of Optrex's declaratory judgment action, much of the factual focus of this brief is on Optrex and KWC.  Nevertheless, many of the arguments presented herein are equally applicable to the participation of other LCD module manufacturers and the trial of their respective claims, and the other defendants in this action join in this consolidated brief.

1

manufacturers of the LCDs would prefer to litigate Honeywell's claims of infringement against their LCD products, rather than play along with Honeywell's game of negotiating licenses with the real parties in interest while suing their customers for leverage.

One such manufacturer, Optrex, provides LCDs to Kyocera Wireless Corporation ("KWC") and other customer defendants. To establish that its LCDs do not infringe Honeywell's patent, Optrex filed its own action against Honeywell, seeking a declaratory judgment of non-infringement, invalidity and unenforceability of the '371 patent. Honeywell now moves to consolidate this action with the *Optrex* action for purposes of discovery. Defendants agree with the proposed consolidation and propose that ***all three*** cases be consolidated for purposes of discovery.

The parties sharply differ, however, as to which case should be given priority for purposes of trial. Honeywell seeks to stay the *Optrex* suit following discovery to ensure that Honeywell's lawsuit against the customers of Optrex will proceed to trial first.[2] However, Optrex manufactures LCDs that are accused of infringement and has the greatest interest in adjudicating the infringement allegations directed toward its own products, especially considering its indemnification obligations to its customers. Moreover, the adjudication of the *Optrex* action will, as a practical matter, resolve Honeywell's infringement claims at least as to those end products that incorporate Optrex's LCDs. Should Optrex prevail on its claim that Honeywell's patent is invalid or on other defenses, the *Optrex* action may resolve Honeywell's claims against all defendants. Accordingly, the *Optrex* action should be given priority and proceed to trial first.

---

[2] Similarly, Honeywell has requested that Seiko Epson's intervention be conditioned on a stay of the trial of Seiko Epson's declaratory judgment action. Honeywell's current motion is part of a broader strategy by Honeywell to ensure that its infringement claims against end product manufacturers are tried first – even though they know little or nothing about the technical configuration of the LCDs – and stay any actions involving the real parties in interest, the LCD manufacturers themselves.

\\\CC - 88549/0003 - 46585 v1

For many of the same reasons, defendants further contend that the Court should stay Honeywell's action against the "customer defendants" – those defendants who simply purchase LCDs and use them in their products – and only proceed with those parties who manufacture or supply the LCDs accused of infringement. The basis for this broader proposal is set forth in defendants' own motions to stay, which will be filed shortly hereafter. The present brief only focuses on the narrower question of which case should proceed to trial first: (1) Optrex's declaratory judgment action, which seeks to adjudicate whether the LCDs manufactured by Optrex infringe Honeywell's patent; or (2) Honeywell's suit against Optrex's customers, which contends that those customers' end products infringe simply because they incorporate LCDs manufactured by Optrex.

## II. NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties, Inc. (collectively, "Honeywell") have filed two related patent infringement actions before this Court: *Honeywell International Inc. v. Apple Computer Inc. et al. ("Honeywell I")* (Case No. 04-1338) (D.I. 1) and *Honeywell International Inc. v. Audiovox Corp. et al. ("Honeywell II")* (Case No. 04-1337) (*Honeywell II* D.I. 1). In both actions, Honeywell alleges that defendants sell consumer electronic products incorporating LCD modules that infringe unspecified claims of U.S. Patent No. 5,280,371. Such products, according to Honeywell, include laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and portable game systems.

Honeywell alleges that its '371 patent covers an "improved LCD display" that makes the screen easier to see without requiring additional power. Honeywell's Motion at pp. 3-4 (D.I. 134); Complaint ¶ 35 (D.I. 1). Honeywell contends that the defendants' "end products" infringe the patent because the "products all incorporate an LCD display." Honeywell's Motion at p. 4

3

(D.I. 134). Accordingly, the issue of infringement turns solely on the structure of the LCD itself, non on any other features or components of the accused end products.

Most of the defendants in *Honeywell I* and *Honeywell II* have answered and have asserted various affirmative defenses and counterclaims against Honeywell. In lieu of answering, the Fuji defendants filed a motion for more definite statement and also filed a motion to transfer venue. (D.I. 95, 97). Seiko Epson filed a motion to intervene in the action, on the basis that it supplies LCD modules to more than 25 of the defendants in the two Honeywell actions. (D.I. 136). KWC filed a third-party complaint on January 20, 2005, seeking indemnification from the three non-licensed companies other than Seiko Epson who supply KWC's LCD modules, Philips Electronics North America Corp., Wintek Electro-Optics Corp. and Optrex America, Inc. (D.I. 114). Similarly, on March 9, 2005, Audiovox filed a third party complaint against Curitel Communications Inc. and Toshiba Corporation. (*Honeywell II,* D.I. 49). Nokia filed its own motion for leave to file a third party complaint against Koninklijke Philips Electronics N.V. and Samsung SDI Co. on April 5, 2005. (*Honeywell II,* D.I. 58). The third party complaints of Audiovox and Nokia, as with KWC, seek indemnification from their LCD suppliers based on Honeywell's infringement claims against their products. The motions filed by Fuji, Seiko Epson and Nokia remain pending before the Court.

Optrex America, Inc. filed a related action against Honeywell seeking declaratory judgment that the LCDs sold by Optrex to KWC and other defendants do not infringe the '371 patent and that the '371 patent is invalid. *Optrex America, Inc. v. Honeywell International Inc.* (*"Optrex"*) (Case No. 04-1536) (*Optrex* D.I. 1). Honeywell answered and counterclaimed for infringement on February 16, 2005 (*Optrex* D.I. 11).

\\\CC - 88549/0003 - 46585 v1

A Rule 16 Scheduling Conference for all three cases is set for May 16, 2005.  A Rule 26(f) conference in the three cases is scheduled for April 27, 2005.  Discovery has not yet commenced in any of the three actions.

### III.  SUMMARY OF ARGUMENT

1.       There are three related actions pending before this Court that are based on the same patent and involve some of the same accused LCD products.  Honeywell moves to consolidate two of the actions, and does not oppose consolidation of the third.  Accordingly, defendants propose that all three actions be consolidated for purposes of discovery.

2.       The parties agree that this action and the *Optrex* action should ***not*** be consolidated for trial.  This raises the issue of which suit should be tried first.  It is well established that a declaratory judgment suit brought by a manufacturer is given preference over an earlier infringement action against the manufacturer's customers.  *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 557 (D. Del. 2003); *Ellenby Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, n. 4 (D. Del. Feb. 8, 2002).   Under this rule, the action filed by Optrex should proceed to trial first, not Honeywell's suit against customers of Optrex for their use of Optrex's LCDs.

3.       Honeywell tries to characterize KWC as a manufacturer of the accused products in order to avoid application of the "customer suit exception" to the first-to-file rule.  However, KWC does ***not*** manufacture the LCD component that is accused of infringing the '371 patent.  KWC simply purchases the accused LCDs from Optrex and incorporates those LCDs into KWC phones.  A determination of non-infringement against Optrex would also release KWC from liability.  Under these facts, the *Optrex* action should be given priority.  *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004) (staying action against purchasers of accused LCDs who incorporated the LCDs into end products); *Ricoh,* 279

5

F.Supp. at 558 (manufacturer's suit has priority where the infringement claims are "fundamentally claims against the ordinary use" of the purchased component).

4.    Honeywell contends that it has a "special interest" in litigating against the end product manufacturers because the end products have greater economic value than the LCDs by themselves. However, even in cases where components, materials or equipment are used by downstream purchasers to assemble or produce more economically valuable "end products," courts give priority to the manufacturer of the components that allegedly infringe. *See, e.g., Loral Fairchild Corp. v. Matsushita Elec.,* 266 F.3d 1358 (Fed. Cir. 2001) (district court stayed action against "customer defendants" which manufactured end products using certain "CCD" components); *CEA,* 2004 WL 1554382 (staying action against defendants who incorporated accused LCDs into end products); *Ricoh,* 279 F.Supp. at 558 (customer defendants stayed while action proceeded against the manufacturer of software used to design the "end products" at issue). Moreover, Honeywell's contention is undermined by its own conduct in negotiating licenses with LCD manufacturers, which licenses protect downstream purchasers from liability. Honeywell's licensing strategy demonstrates that Honeywell *does* believe that it can obtain the value of its claimed invention from royalties paid by LCD manufacturers.

5.    Honeywell contends that the indemnification issues between KWC and Optrex should be tried second. KWC agrees. However, the indemnification issues are part of *this* action, *Honeywell I,* which includes KWC's third party complaint against Optrex. Optrex should be allowed to first litigate Honeywell's infringement claims against Optrex's own LCD products, *before* it faces potential liability based on its customers using those LCDs in their end products.

## IV.  STATEMENT OF FACTS

On October 6, 2004, Honeywell filed two related actions in this Court. In *Honeywell International Inc. v. Apple Computer Inc. et al. ("Honeywell I")* (Case No. 04-1338), plaintiffs

accuse 27 companies of infringing U.S. Patent No. 5,280,371, including Kyocera Wireless

Corporation ("KWC").  Plaintiffs accuse eight other defendants of infringing the '371 patent in

*Honeywell International Inc. v. Audiovox Corp. et al. ("Honeywell II")* (Case No. 04-1337).

      Honeywell's '371 patent allegedly covers an "improved LCD display," which LCD is

incorporated into various consumer electronic products.  *Id.* at pp. 3-4 (D.I. 134).  The abstract of

the patent describes "a display apparatus including a light source, a liquid crystal panel, and one

or more directional diffuser lens arrays disposed there between."  Honeywell's Complaint

describes the technology covered by the '371 patent as "enabl[ing] a display to produce a brighter

image (making the screen easier to see) without requiring additional power while helping to

reduce the appearance of an undesirable interference pattern."  Complaint ¶ 35 (D.I. 1).

Honeywell then accuses various "end products" of infringement *on the basis that* the "products

all incorporate an LCD display."  Honeywell's Motion at p. 4 (D.I. 134).

      Honeywell's complaint is not specific as to which designs of LCDs are accused of

infringement or which end products incorporate the accused LCDs.  Rather, Honeywell broadly

alleges that LCDs are incorporated into, *e.g.,* "at least one of the following: laptop computers,

cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, and portable

televisions, and/or portable game systems." *See, e.g.,* Complaint ¶¶ 37 (D.I. 1). Honeywell

further alleges that "at least some of the LCD screen-containing products" manufactured or sold

by the defendants infringe the '371 patent.  *Id.* ¶ 53.

      On December 20, 2004, Optrex America, Inc. ("Optrex") filed a related action against

Honeywell seeking declaratory judgment that the LCDs sold by Optrex to KWC do not infringe

the '371 patent and that the '371 patent is invalid.  *Optrex America, Inc. v. Honeywell*

*International Inc.* (Case No. 04-1536) (*Optrex* D.I. 1).  Although Optrex supplies other customer

defendants in this action, Optrex's declaratory judgment action only specifically references the

7

LCDs sold to KWC.  *See Id.* ¶¶ 4, 10 (04-1536).  Optrex's declaratory judgment action is based on its own "interest in defending its LCD products against Defendants Honeywell International's and HIPI's accusation of infringement."  *Id.* ¶ 12.  Honeywell answered and counterclaimed on February 16, 2005 (*Optrex* D.I. 11).

On January 20, 2005, KWC filed a third-party complaint against three of its suppliers, Philips Electronics North America Corp., Wintek Electro-Optics Corp., and Optrex America, Inc. Third Party Complaint (D.I. 114).  By its complaint, KWC alleges that Philips, Wintek and Optrex manufactured and/or sold to KWC the LCDs that form the basis of Honeywell's infringement claims against KWC.  *Id.* ¶ 13.  KWC contends that its LCD suppliers have a duty to indemnify KWC for any liability that arises out of the present lawsuit.  *Id.* ¶ 15.  KWC recently served its third-party complaint, but none of the third-party defendants have answered at this time.

Honeywell recognizes that "KWC buys LCD modules from Optrex (and others) and then independently incorporates those modules into the accused products."  Honeywell's Motion at p. 1 (D.I. 134).  KWC does not itself manufacture any of the LCD displays that are incorporated into its cellular phones.  Declaration of Don Timms, ¶ 3.  Accordingly, Honeywell's infringement allegations against KWC are based solely on its use of LCDs manufactured by Optrex and others, specifically:  "KWC has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products ***that include*** a liquid crystal display (LCD) in the United States with the knowledge and intention that such ***LCD screen-containing*** products would be sold throughout the United States."  Complaint ¶ 45 (D.I. 1) (emphasis added).

## V.  ALL THREE RELATED ACTIONS SHOULD BE CONSOLIDATED

## FOR PURPOSES OF DISCOVERY

Honeywell has moved to consolidate this action with *Optrex v. Honeywell* for purposes of discovery.  Defendants do not oppose the requested consolidation.  However, all three related

actions pending before this court involve the same patent, the same invalidity issues, and many of

the same accused LCD products.[3]  Honeywell states that it "does not oppose" a further

consolidation of *Honeywell I* and *Honeywell II.*   Honeywell's Motion at p. 1, n. 1 (D.I. 134).

Accordingly, **all three** actions should be consolidated for purposes of discovery.

### VI.  THE OPTREX ACTION SHOULD PROCEED TO TRIAL FIRST,

### NOT HONEYWELL'S SUIT AGAINST CUSTOMERS

### OF OPTREX'S ACCUSED LCD PRODUCTS

Honeywell has only moved to consolidate this case with the *Optrex* action for purposes of

pre-trial discovery.  Honeywell specifically argues *against* consolidation for purposes of trial,

because combining LCD manufacturers and end product manufacturers in the same trial "would

introduce a host of additional and complicating issues."  Honeywell's Motion at pp. 9-11 (D.I.

134).  Accordingly, all parties agree that the two cases should **not** be consolidated for **trial,** and

that LCD manufacturers such as Optrex should proceed to trial separately from sellers of end

products (such as KWC).  The only question remaining is which case – namely, which type of

accused infringer – should proceed to trial first.

Honeywell contends that this action should proceed to trial first, and therefore moves to

stay the *Optrex* action following discovery.  The only basis for this argument is that Honeywell

filed its lawsuit first.  However, Optrex manufactures the LCD modules that are accused of

infringement and supplies those LCDs to KWC and other customer defendants in this action.  As

a manufacturer of the accused LCDs, Optrex has the greatest interest in adjudicating Honeywell's

---

[3] Just as Optrex's LCD products are at issue in both *Honeywell I* and *Optrex,* other LCD manufacturers supply accused LCD products to defendants in both *Honeywell I* and *Honeywell II*. For example, Seiko Epson supplies LCD modules to 22 of the 27 defendants in *Honeywell I* and at least 3 of the defendants in *Honeywell II*.  SEC's Motion to Intervene, Attachment #1 at p. 11 (D.I. 136).  Similarly, Audiovox Communications Corp. has filed a third party complaint in *Honeywell II* identifying Toshiba Corp. as one of its LCD suppliers, and Honeywell has already accused Toshiba's LCDs of infringement in *Honeywell I*.  (Case No. 04-1337, D.I. 49 at ¶ 10).

infringement claims and has much greater knowledge regarding the design of the LCD products. Accordingly, applying the reasoning of the "customer suit exception" to the first-to-file rule, the *Optrex* action should be given priority and proceed to trial first.

Based upon many of the same reasons and precedent, defendants further contend that the most judicially efficient manner in which to proceed with this litigation is to immediately stay Honeywell's action against the numerous customer defendants, such as KWC, who merely purchase the accused LCD modules and incorporate them into end products like cellular phones. The litigation would then proceed as to the manufacturer defendants, such as Optrex, who manufacture the LCD modules accused of infringement.  This broad solution for streamlining the litigation was recently utilized by this Court in a very similar LCD patent litigation involving more than 60 parties, *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004), and would be equally beneficial here.

The basis for this broader solution is more fully discussed in defendants' own motions to stay, which are being filed soon hereafter.  Accordingly, the present brief only focuses on Honeywell's motion for a stay of the trial of the *Optrex* action and the narrower question of whether the *Optrex* action or the present litigation should proceed to trial first.

**A.      The Declaratory Judgment Action Brought By Optrex Should Be Given Priority Because Optrex Manufactures LCDs That Allegedly Infringe The '371 Patent**

Honeywell contends that its lawsuit against KWC and other customer defendants should be given priority over the declaratory judgment action filed by Optrex because Honeywell filed its lawsuit first.  However, it is well-established that the "first-to-file" rule will give way where, as here, the second-filed action involves the manufacturer of components accused of infringement.

Although a first-filed suit is generally given priority over a later-filed action, exceptions "are not rare, and are made when justice or expediency requires."  *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled in part on other grounds, Wilton v. Seven*

10

*Falls Co.,* 515 U.S. 277, 289 (1995).  One such exception is commonly referred to as the

"customer suit exception."  "The customer suit exception is a limited exception to the first-filed

rule, whereby a second filed declaratory relief action filed by a manufacturer takes precedence

over a first filed action brought by a patent owner against a mere customer."  *Ellenby*

*Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, n. 4 (D. Del. Feb. 8, 2002).  "Under

Federal Circuit precedent, a manufacturer's declaratory judgment suit should be given preference

over a patentee's suit against the manufacturer's customers when those customers are being sued

for their ordinary use of the manufacturer's products."  *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp.

554, 557 (D. Del. 2003), *citing Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990).

     "The customer suit exception is based on the manufacturer's presumed greater interest in

defending its actions against charges of patent infringement."  *Kahn v. General Motors Corp.,*

889 F.2d 1078, 1081 (Fed. Cir. 1989).  For this reason, the manufacturer's action is given priority

because "it is more efficient for the dispute to be settled directly between the parties in interest."

*Ricoh,* 279 F.Supp. at 557.  As stated by the First Circuit in an oft-cited opinion,

> "At the root of the preference for a manufacturer's declaratory judgment action is the
> recognition that, in reality, the manufacturer is the true defendant in the customer suit …
> it is a simple fact of life that a manufacturer must protect its customers, either as a matter
> of contract, or good business, or in order to avoid the damaging impact of an adverse
> ruling against its products."

*Codex Corp. v. Milgo Electronics Corp.,* 553 F.2d 735, 737-78 (1st Cir.), *cert. denied,* 434 U.S.

860 (1977), *cited by Katz,* 909 F.2d at 1464.

     Although the customer suit exception is often applied when two separate suits are filed in

different jurisdictions, the exception also applies when the customer and manufacturer actions are

filed in the same court or when one comprehensive suit is filed against both the manufacturer and

its customers.  *Refac Int'l, Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986); *Commissariat A L'Energie*

*Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004); *Nikken, USA, Inc.*

\\\CC - 88549/0003 - 46585 v1

*v. Robinson-May, Inc.*, 2003 WL 21781149 (C.D. Cal. July 8, 2003); *Collier v. Airtite, Inc.,* 1988 WL 96363 (N.D. Ill. Sept. 15, 1988).   When the actions are pending before the same court, "the court may separate customer and manufacturer defendants during the liability phase of the case and stay further proceedings (regarding liability and damages) with respect to the customer defendants until the liability issue is resolved." *Nikken,* 2003 WL 21781149 at *2, *citing Refac,* 790 F.2d 79.  A stay of the customer action may be warranted even though not all of the issues in the customer action will be resolved by the manufacturer action, so long as the customer action will be advanced by the adjudication of the manufacturer action and may be mooted by a determination of non-infringement or invalidity. *Katz,* 909 F.2d at 1464.

The customer suit exception applies directly to the facts before this Court.  Honeywell's '371 patent allegedly covers LCDs that are incorporated into various consumer electronic products, and Honeywell accuses those "end products" of infringement *on the basis that* the products incorporate an LCD display.  Honeywell's Motion at pp. 3-4 (D.I. 134); Complaint ¶ 35 (D.I. 1).  For example, Honeywell has provided no evidence that KWC itself manufactures infringing LCDs, but accuses KWC of infringement because it sells products that *include* the accused LCDs.  Complaint ¶ 45 (D.I. 1); Honeywell's motion at p. 1 (D.I. 134).  As a company that merely purchases the LCDs and incorporates them into end products, KWC has no technical information concerning the design or manufacture of the accused LCDs and has limited ability to defend against the infringement claims asserted by Honeywell.  While it is not surprising that Honeywell might wish to proceed to trial first against KWC, since KWC lacks either the information or the level of interest as its supplier, Optrex, it is well-established that in such circumstances the component manufacturer – the real party in interest with the most to lose – should try the issues first.

\\\CC - 88549/0003 - 46585 v1

The principal case relied upon by Honeywell, *Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656 (D. Del. 1990), does not support a different result.  In that case, the manufacturer's motion to stay was filed on February 6, 1990, only four months before the scheduled trial date in the original action, June 5, 1990.  *Id.* at 658.  Ruling on the motion to stay only two months prior to trial, the Court focused on the prejudice that would result to the patentee if it postponed the imminent trial of its infringement claims against the customer defendant.  *Id.* at 658-59.

No such considerations exist here.  The initial Scheduling Conference in this action is set for May 16, 2005.  Discovery has not yet commenced, and no trial date has been set.  Thus, adjudicating the *Optrex* action first will ***not*** significantly delay the adjudication of Honeywell's claims against KWC, if at all.   Indeed, given the much greater complexity of Honeywell's two lawsuits against 35 different defendants selling a wide array of products in very diverse markets, Optrex's declaratory judgment action could proceed to trial much sooner than the more complex litigation, as it only involves one manufacturer and one set of accused LCDs.  This could result in an *earlier* adjudication of some of Honeywell's infringement claims than would otherwise be possible.  The factors regarding delay and prejudice that existed in *Dentsply* have no application.

**B.      For Purposes Of The "Customer Suit Exception," Optrex Is The Manufacturer Of The Accused Products, Not KWC**

In an effort to avoid application of the "customer suit exception," Honeywell contends that KWC and other accused infringers in this action "are in no way merely customers – they are actual manufacturers and sellers of the products alleged to infringe the '371 patent."  Honeywell's Motion at p. 8 (D.I. 134).  Honeywell goes on to claim that KWC "admitted in its answer that it 'imports, assembles, offers for sale and sells' the accused products."  *Id.*

Honeywell's argument is misleading at best.  Honeywell contends that the '371 patent covers ***LCDs***.  In its answer, KWC explicitly ***denied*** that it was engaged in the manufacture of LCDs.  Answer ¶ 45 (D.I. 80).   KWC "offers for sale and sells cellular phones" and it therefore

13

"imports, assembles, offers for sale and sells in the United States products that *include* a liquid crystal display." *Id.* (emphasis added). Accordingly, KWC's answer merely reflects that KWC purchases LCDs from module manufacturers, incorporates those LCDs into cellular phones, and then sells those phones in the United States. *See* Declaration of Don Timms ¶ 3.

When a defendant purchases a component that is accused of infringement and then incorporates it into a different product, that defendant is still a "customer" for purposes of the "customer suit exception." If a determination of non-infringement against the manufacturer will release the customer of liability, then the "customer suit exception" is applicable, and the manufacturer's action will be given priority. *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 558 (D. Del. 2003); *Whelen Technologies, Inc. v. Mill Specialties, Inc.,* 741 F.Supp. 715, 716 (N.D. Ill. 1990). Stated another way, the manufacturer's suit will have priority where the patentee's "infringement claims against the [customer] defendants are fundamentally claims against the ordinary use" of the product purchased from the manufacturer. *Ricoh,* 279 F.Supp.2d at 557-58.

Numerous cases illustrate this point. For example, in *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D.Del. May 13, 2004), the patentee alleged infringement of two patents covering LCD technology. The Court stayed the action as to the original equipment manufacturers that incorporated the LCDs into "end products" such as computer monitors, as well as sellers of the end products and stores at which the end products were sold. The litigation proceeded only against the LCD manufacturers. *Commissariat,* 2004 WL 1554382 at *1-3; *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, 425 (D. Del. 2003). Similarly, in *T.J. Smith and Nephew Ltd. v. Ferris Corp.*, 1987 WL 7496 (N.D. Ill. March 2, 1987), the Court stayed infringement claims against the manufacturer of certain adhesive dressings and gave priority to the suit involving Avery, the manufacturer of the base material used to make the dressings. *See also Ricoh,* 279 F.Supp.2d at

14

556-58 (giving priority to a later-filed declaratory judgment suit brought by the manufacturer of a software design tool, rather than the infringement action against the customers who used that tool to design and manufacture integrated circuit products).

The only fact pattern in which the manufacturer of a component product is **_not_** given priority is where the component itself does not infringe, but only infringes if it is used by the customer in a particular manner or is incorporated by the customer into an infringing product. This was the fact pattern in two of the cases cited by Honeywell. *See Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F.Supp.2d 354, 357 (D. Del. 2001) (manufacturer's equipment had many applications, only some of which allegedly infringed the process claims of the patent); *Kahn,* 889 F.2d at 1081-82 ("customer suit exception" inapplicable to Motorola, whose integrated circuits were *not* accused of infringement, only the AM stereo receivers which used those components). *Accord, Zemel Bros., Inc. v. Dewey Electronics Corp.,* 218 U.S.P.Q. 722, 724 (N.D.N.Y. 1982) ("customer suit" exception inapplicable where customers were the only direct infringers of a patented process of snow production).[4]

As these cases demonstrate, the focus of the "customer suit exception" is not which entities in a distribution chain engage in a manufacturing process, but where in the distribution chain the infringement first occurs.  The entity that first manufactures the product accused of infringement is the "manufacturer defendant" and downstream purchasers of the product are "customer defendants" regardless of whether they use the product to manufacture something else.

Optrex is the entity that designs, manufactures, and sells the LCD displays accused of infringement, and the adjudication of infringement issues in the *Optrex* action will resolve the infringement issues concerning the Optrex LCDs in this action.  If no infringement is found or if

---

[4] In *Dentsply,* 734 F.Supp. at 659, the principal case relied on by Honeywell, the fact that the customer was a mere reseller of the accused products, UNIDOSE cartridges and ejector holders, was never mentioned and was not an issue, as the motion to stay was decided on other grounds.

the asserted claim – whatever it is – of the '371 patent is found invalid or unenforceable, then KWC cannot be held liable either. On the other hand, if Optrex's LCDs are found to infringe any valid and enforceable claims of the '371 patent, Optrex will be enjoined from supplying its LCDs to KWC and/or Optrex will enter into a license with Honeywell. Accordingly, just like the end product manufacturers in *CEA, T.J. Smith* and *Ricoh,* it is appropriate to give priority to the manufacturer of the accused component, and the *Optrex* action should proceed to trial first.

**C.      Honeywell Does Not Have A "Special Interest" That Warrants Proceeding With The Customer Defendants First Merely Because They Manufacture End Products**

Honeywell contends that it has a "special interest" in pursuing its infringement action against KWC and other customer defendants that militates against giving priority to Optrex and other LCD manufacturers. Honeywell bases this "special interest" on its unsupported contention that the end products sold by the customer defendants "derive special value" from use of the "improved" LCD that is allegedly covered by the '371 patent. Honeywell's Motion at pp. 3-4, 8 (D.I. 134).[5]

Honeywell fails to present any factual support for its contention that the LCDs at issue add any significant value to the end products. Moreover, Honeywell's argument is undermined by its own actions. Honeywell has already entered into licenses with some LCD manufacturers, and is using this litigation as leverage to negotiate licenses with other LCD manufacturers. For example, Honeywell has publicly announced license agreements with three major LCD

---

[5]  In fact, Honeywell's damages will ***not*** be any different as to the customer defendants' end products. Among other reasons, customer demand for the end products is ***not*** based on the LCDs. *See, e.g., Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999) (the patent-related feature must be the "basis for customer demand" for the entire apparatus, in order for damages to be based on the value of the entire apparatus); *Izume Products Co. v. Koninklijke Philips Electronics N.V.,* 315 F.Supp.2d 589, 614 (D. Del. 2004) (same). However, this issue need not be resolved on the current motion, as judicial efficiency weighs heavily in favor of proceeding to trial with the LCD manufacturers first, regardless of whether some additional damages issues might remain as to the customers.

16

manufacturers, LG Philips, Samsung Electronics and NEC LCD Technologies.  Appendix, Exh.

A.  Once a manufacturer is licensed, its downstream purchasers are likewise protected against any claims of infringement by Honeywell.  The fact that Honeywell is voluntarily negotiating royalty agreements with LCD manufacturers, knowing that those licenses will preclude any further recovery from downstream end product manufacturers, indisputably demonstrates that Honeywell *can* recover the value of its alleged invention from LCD manufacturers.  It is entirely inconsistent for Honeywell to negotiate licenses with LCD manufacturers based on their sale of LCD modules, and then insist that it should not be compelled to litigate directly with LCD manufacturers because it can only recover the value of its patent from end product manufacturers.

Honeywell also cites no legal precedent for the proposition that if the purchaser of an accused component uses that component in a more economically valuable end product, then the patentee has a "special interest" in the seller of the end product so as to avoid application of the "customer suit exception."  Indeed, fundamental economics dictate that the sales revenues of a "customer" – even if it is a mere reseller – will almost always exceed the sales revenues of the "manufacturer," *i.e.*, the price charged by the customer will invariably exceed what the customer paid for the product.  If higher revenues were sufficient to confer upon a patentee a "special interest" to pursue a customer over the manufacturer, the "customer suit exception" would be inapplicable in most every instance.

Not surprisingly, Honeywell's theory is not supported in the case law.  To the contrary, many courts have accorded priority in litigation to the manufacturer of an accused product, even though the accused component, materials or equipment was used by downstream purchasers to assemble or produce more economically valuable "end products."  For example, in *Commissariat a l'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1554382 (D.Del. May 13, 2004), the Court stayed all of the patentee's claims as to more than 55 end product manufacturers and

retailers, and proceeded with only five LCD module manufacturers, even though the stayed

defendants incorporated the LCDs into "larger pieces of equipment" (such as computer monitors)

that had far greater economic value than the LCD panels by themselves.  *See also Commissariat,*

293 F.Supp.2d at 424-25 (underlying facts of case).  *Accord, Loral Fairchild Corp. v. Matsushita*

*Elec.,* 266 F.3d 1358 (Fed. Cir. 2001) (stayed "customer defendants" manufactured end products

that used the accused CCDs); *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 558 (D. Del. 2003)

(customer defendants were stayed while infringement action proceeded against Synopsys, the

manufacturer of a design tool that was used by defendants to design and manufacturer integrated

circuit products); *T.J. Smith and Nephew Ltd. v. Ferris Corp.*, 1987 WL 7496 (N.D. Ill. March 2,

1987) (staying customers who used the accused adhesive base materials to make adhesive

dressings that were subsequently sold at retail).

   The case Honeywell relies upon for its "special interest" argument is readily

distinguishable.  In *Dentsply,* the Court found that the patentee had a "special interest" in its

action against the customer because it was the "sole vendor" of the product at issue.  *Dentsply,*

734 F. Supp. At 659-60.  *But cf. Whelen,* 741 F.Supp. at 716 (granting stay of customer action

even though customer was the "sole instrument of promotion and subsequent sale and use of the

allegedly infringing products" in at least 33 states).  Regardless, such reasoning has no

application here, where Optrex supplies not only KWC but several other companies with the LCD

modules that are accused of infringement.[6]  Honeywell has not cited any example of the type of

exclusive marketing relationship that existed in *Dentsply,* which is also distinguishable on other

grounds.  *See* discussion *supra* at p. 14.

---

[6]  Optrex has represented to counsel for KWC that it supplies other customer defendants with
LCDs accused of infringement, but has declined to identify those other customers at this time.

18

As these cases illustrate, the fact that KWC incorporates the accused LCDs into "end products" such as cellular phones does not provide Honeywell with a "special interest" in KWC so as to warrant staying the *Optrex* action. Optrex remains the party with the greater interest and ability to litigate issues of infringement as to its own LCD products and should proceed to trial ahead of its customers.

**D.    There Is No Basis For Staying A Manufacturer's Action And Proceeding With An Infringement Action Against Its Customers When Both Actions Are Pending Before The Same Court**

Although the "customer suit exception" often arises where a manufacturer action and a customer action are pending in different courts, manufacturers of accused products and their customers are sometimes parties to infringement litigation pending in the same court. In this context, when there are more than 30 parties involved in the litigation, courts consistently streamline the proceedings by giving priority to the claims brought by or against the manufacturers of the infringing components and staying the litigation against purchasers of those products. In contrast, when there are only a handful of parties, courts often proceed to trial with the manufacturers and customers simultaneously. However, Honeywell has not cited ***any*** precedent for Honeywell's proposition that when manufacturer actions and customer actions are pending before the same Court and were both initiated before the commencement of discovery, the *manufacturers* should be stayed while their *customers* proceed to trial alone.

The leading case on this issue could not be more directly on-point. In *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D.Del. May 13, 2004), the patentee sued manufacturers of the accused LCD panels, OEMs which incorporated the LCDs into "end products" such as computer monitors, and retailers that sold the "end products" to consumers. *Commissariat,* 293 F.Supp.2d at 425. The defendants moved to stay CEA's case against the end product manufacturers and retailers pending resolution of the case against the

19

LCD manufacturers, while CEA sought to have all of its cases consolidated for discovery, pretrial and trial. *Commissariat,* 2004 WL 1554382 at *1-2.

Finding that it would greatly simplify and streamline the case, the Court agreed with defendants' proposed approach and stayed the entire action as to all but the LCD manufacturers. The Court explained its reasoning as follows:

> "Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers [were] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."

*Id.* at *3.

This approach had been approved by the Federal Circuit in *Refac Int'l, Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986), where the district court separated for trial six manufacturer defendants from 31 customer defendants and stayed all further proceedings against the customer defendants. *Id.* at 81. The same approach was adopted when Loral alleged infringement of a patent that claimed a process for manufacturing a charge-coupled device ("CCD"), a component in electronic cameras. The Court severed and stayed Loral's claims against the "customer defendants" that purchased the accused CCDs and incorporated them into end products, and proceeded with the six CCD manufacturers. Appendix, Exh. B at p. 1. *See Loral Fairchild Corp. v. Matsushita Elec.,* 266 F.3d 1358 (Fed. Cir. 2001); *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 931 F.Supp. 1014 (E.D.N.Y. 1996). The Court stated that after the CCD manufacturers' trials were concluded, it would consider whether any further adjudication was needed as to the customer defendants on issues such as damages. Appendix, Exh. B at p. 2.

Although several courts have decided *not* to follow *Refac* and its progeny, those cases are readily distinguishable. For example, in *Rates Technology, Inc. v. New York Telephone Co.*, 1995

20

WL 438954 (S.D.N.Y. July 25, 1995), the court distinguished *Refac* on the basis that there were

37 defendants in *Refac* "and thus it made sense to simplify the case." In contrast, there were only

three defendants in *Rates Technology*. Likewise, in *Beck Systems, Inc. v. Marimba, Inc.,* 2001

WL 1502338 (N.D. Ill. Nov. 20, 2001), the Court declined to apply "customer suit" exception

because there were only four defendants and they were represented by the same attorneys. In

*Nikken, USA, Inc. v. Robinson-May, Inc.*, 2003 WL 21781149 (C.D. Cal. July 8, 2003), liability

for infringement had already been determined.[7] Moreover, no Court in this Circuit has decided

*not* to follow *Refac.*

 The present litigation, with more than 30 parties (and that number is growing), is directly

analogous to *CEA, Refac* and *Loral,* in which the Courts streamlined similarly complex

proceedings by proceeding to trial with the manufacturer defendants first and staying the

customer defendants (including end product manufacturers). Moreover, even in cases which had

only three or four defendants and did not require simplification, the courts tried the manufacturers

and customers together. There is ***no*** applicable precedent supporting the relief sought by

Honeywell – that claims brought by or against the LCD manufacturers should be stayed while

Honeywell proceeds to trial against customers of the LCD manufacturers, which customers are

only alleged to infringe because they use LCDs in their end products.

**E. KWC's Indemnification Claim Against Optrex Further Supports Adjudicating
The *Optrex* Action First**

 In support of its motion to stay the *Optrex* action, Honeywell asserts that the trial of

Optrex's declaratory judgment action "would introduce a host of additional and complicating

issues" into this litigation, including the indemnification agreement between KWC and Optrex.

---

[7] The primary case cited by Honeywell, *Dentsply,* 734 F.Supp. 656, is similarly inapplicable. In
*Dentsply,* as in the other cases cited above, the court allowed the customer action and the
manufacturer action to *both* proceed unimpeded, and *neither* was stayed. Moreover, the Court in
*Dentsply* only had to address one patentee, one manufacturer, and one customer. *Id.*

Honeywell further states that the indemnification issues between "Optrex and Kyocera present tangential controversies unrelated to the issues between Honeywell and the vast majority… of the accused infringers," and trying those issues first "would likely result in delay while the Court resolved these tangential issues."  Honeywell's Motion at pp. 9-11 (D.I. 134).

KWC *agrees* that the indemnification issues between KWC and Optrex should be tried second.  What Honeywell fails to recognize is that the indemnification issues are part of *this* action, *Honeywell I,* and are *not* part of the *Optrex* declaratory judgment action.  KWC filed and served a third party complaint in *Honeywell I* against Optrex for indemnification.  As a result, Optrex is already a party to the present lawsuit, and indemnification is already at issue.  By contrast, KWC is *not* a party to the *Optrex* action, and indemnification is *not* at issue in that case.

Accordingly, Honeywell is right – the simpler action, which does *not* involve any indemnification issues, should proceed to trial first.  That action, however, is Optrex's declaratory judgment action against Honeywell.  If the Court allows the *Optrex* action to be tried first, the indemnification claims will ***not*** be at issue, and the jury can focus solely on Honeywell's underlying claim of infringement against the Optrex LCDs.[8]

This is the usual way in which indemnification claims are tried:  the underlying claim is adjudicated first, and any indemnification claims that remain are litigated second.  *See, e.g., Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, LLP,* 243 F.Supp.2d 145 (D. Del. 2003) (staying third party complaint for indemnification pending litigation of underlying claims between parties).  Following this well-established approach, the *Optrex* declaratory judgment action should proceed to trial first, and Honeywell's action against Optrex's customer

---

[8] Many other customer defendants also have indemnification agreements with their suppliers. Two of those defendants – Nokia and Audiovox – have also filed third party complaints.  This adds further weight to KWC's position, that it would be far more efficient for the Court to try any claims involving the manufacturers first, and try the customer actions (including the indemnification claims) thereafter.

22

KWC – and KWC's indemnification claim against its supplier Optrex – should logically be tried second.[9]

In addition to the judicial efficiency of such an approach, it also recognizes that the party that has the true financial stake in a dispute should try the claims first. As one of the manufacturers of the LCDs in dispute, Optrex may ultimately be liable for any judgment entered against KWC and its other customers based on its own products, due to its indemnification obligations. It would be highly prejudicial for Optrex to be forced to sit on the sidelines while Honeywell proceeds to trial against Optrex's customers and adjudicates whether Optrex's LCDs are infringing. Optrex and the other LCD manufacturers are the entities that will be financially responsible, at the end of the day, if their LCDs are found infringing, and it is axiomatic that as the real parties in interest, they should proceed to trial first.

## VII. CONCLUSION

Optrex manufactures LCDs that are accused of infringement, and KWC's liability – if any – depends upon infringement or non-infringement by Optrex. Optrex has the greatest interest in adjudicating infringement as to its own LCD products and is the party best positioned to do so.

---

[9] Honeywell does not cite any authority for the proposition that a manufacturer's indemnification obligation to its customer in some way lends weight to the customer suit proceeding to trial first. A manufacturer's action is properly given priority over a customer action even if the manufacturer has an indemnification obligation to its customer. *See, e.g., Ferri v. United Aircraft Corp.,* 357 F.Supp. 814, 818 (D.C. Conn. 1973) (giving priority to manufacturer action where manufacturer had agreed to indemnify customer defendants for any damages).

\\\CC - 88549/0003 - 46585 v1

Accordingly, the *Optrex* action – not Honeywell's suit against Optrex's customers – should

proceed to trial first, and Honeywell's motion to stay the *Optrex* action should be denied.

HUNTLEY & ASSOCIATES, LLC.


By:_____/s/ Donald W. Huntley__ _____
          Donald W. Huntley, (No. 2096)
          1105 North Market Street, Ste. 800
          P.O. Box 948
          Wilmington, DE 19899-0948
          Tel: (302) 426-0610

          *Attorneys for Defendant*
          *Kyocera Wireless Corporation*

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
Hogan & Hartson LLP
500 S. Grand Avenue, Suite 1900
Los Angeles, CA 90071
(213) 337-6840

April 11, 2005

\\\CC - 88549/0003 - 46585 v1