**EXHIBIT A**

# NIKON DIGITAL STILL CAMERA ("DSC") LCD SUPPLY CHAIN (HONEYWELL LITIGATION)

## Nikon's DSCs –OEMed–



## Nikon's DSCs –Own Manufactured–



878,299 DOC

**EXHIBIT B**

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
DELL COMPUTER CORPORATION, et al.,
Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
TOTTORI SANYO ELECTRONIC CO., LTD.,
Defendant.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
BEST BUY CO. OF MINNESOTA, INC., et al.,
Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
FUJITSU LIMITED, et al., Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
TATUNG COMPANY, et al., Defendants.
No. Civ.A. 03-484-KAJ, Civ.A. 03-857-KAJ,
Civ.A. 03-931-KAJ, Civ.A. 03-1036-
KAJ, Civ.A. 04-99-KAJ.

May 13, 2004.

Richard D. Kirk, Morris, James, Hitchens &
Williams, Wilmington, DE, for Plaintiffs and
Counter-Defendant.

Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Defendants and Counter-
Claimant.

William J. Marsden, Jr., Fish & Richardson, P.C.,
Robert H. Richards, III, William J. Wade, Richards,
Layton & Finger, M. Duncan Grant, Pepper Hamilton
LLP, Josy W. Ingersoll, Young, Conaway, Stargatt &
Taylor, Jeffrey S. Goddess, Rosenthal, Monhait,
Gross & Goddess, Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

I. INTRODUCTION

*1 Presently before me are several Motions to
Consolidate filed by plaintiff, Commissariat à
l'Énergie Atomique ("CEA"), in the following patent
infringement cases currently pending in this court:
*CEA v. Dell Computer Corp., et al.*, Civ. No. 03-484-
KAJ (D.Del. May 19, 2003) (Docket Item ["D.I."] 89,
D.I. 142); *CEA v. Tottori Sanyo Electronic Co., Ltd.*,
Civ. No. 03-857-KAJ (D.Del. Sept. 4, 2003) (D.I.10,
D.I.27); *CEA v. Best Buy Co., et al.*, Civ. No. 03-931-
KAJ (D.Del. Oct. 6, 2003) (D.I.48, D.I.81); and *CEA
v. Fujitsu Ltd.*, Civ. No. 03-1036-KAJ (D.Del. Nov.
13, 2003) (D.I.14). Also before me are Motions to
Stay the Case filed by the defendants in Civ. No. 03-
484-KAJ (D.I.93); Civ. No. 03-931-KAJ (D.I.47);
and *CEA v. Tatung Co., et al.*, Civ. No. 04-099-KAJ
(D.Del. Feb. 13, 2004) (D.I.16). For the reasons that
follow, CEA's Motions to Consolidate will be granted
in part and denied in part and the defendants' Motions
to Stay the Case will be granted.

II. BACKGROUND

CEA alleges, in all of the cases listed above, that the
defendants are infringing its U.S. Patent No.
4,701,028 ("the '028 patent") and U.S. Patent No.
4,839,412 ("the '412 patent"), which claim certain
liquid crystal display ("LCD") technology. (D.I. 90 at
3.) [FN1] CEA categorizes the defendants by entity,
as follows: module manufacturers, original
equipment manufacturers/distributors
("OEM/distributors"), and retailers. (D.I. 186 at
11:18-12:17.) In all, CEA has sued over 60
defendants on the same patents. (*Id.* at 15:6-11.) CEA
would like the cases against all these defendants
consolidated for discovery, pretrial, and trial
purposes. (*Id.* at 17:18-18:2.)

> FN1. For ease of reference, and because
> plaintiffs and defendants essentially make
> the same arguments in all of their motions, I
> will cite the docket items associated with
> *CEA v. Dell Computer Corp., et al.*, Civ.
> No 03-484-KAJ, and the transcript from the
> hearing on the parties' motions (D.I.186),
> unless otherwise noted. CEA did not file
> Motions to Consolidate in *CEA v. Tatung
> Co., et al.* and *CEA v. Sharp Corp., et al.*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

Page 2

Civ. No. 04-231-KAJ (D.Del. Apr. 13, 2004), which also allege infringement of the '028 and '412 patents. CEA also has a patent infringement case against Chi Mei Optoelectronics Corporation pending in the Northern District of California. (D.I. 186 at 9:20-23.)

At the hearing on the parties' motions, the defendants in all of the cases advanced a unified position in response to CEA's Motions to Consolidate. [FN2] (*Id.* at 20:3-12.) The defendants would like the case to go forward against the LCD module manufacturers only, those parties being Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo, and for the case to be stayed against all remaining defendants (*Id.* at 20:15- 21:1; 43:12-18.)

> FN2. From this point forward, any reference herein to "the defendants" means those defendants who were represented at the April 20, 2004 hearing. This does not include the defendants in *CEA v. Tatung Co., et al.* or the defendants in *CEA v. Sharp Corp., et al.* (*See* D.I. 186 at 21:9- 19.)

### III. STANDARD OF REVIEW

In general, a district court has broad discretion when deciding whether to consolidate or stay proceedings. *See* Fed.R.Civ.P. 42(a); *Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d Cir.1976). Federal Rule of Civil Procedure 42 provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a) (2004).

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a

trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

### IV. DISCUSSION

#### A. CEA's Motion to Consolidate

*2 CEA argues that, because the pending actions involve the same patent, they necessarily have common questions of law and fact, and that this court "routinely grants motions to consolidate when two actions are pending that involve the same or similar patents." (D.I. 90 at 4-5.) CEA also argues that consolidation is appropriate when a single plaintiff has filed multiple actions in the same court (*id.*), particularly where, as here, the cases involve the same patents, the same infringing products, and the same distribution chain (*id.* at 6).

At the April 20, 2004 hearing, the defendants proposed that the case go forward against the LCD module manufacturers, specifically, Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo. (D.I. 186 at 20:15-21:1.) CEA argued that the retailer action, *CEA v. Best Buy Co., et al.,* Civ. No. 03-931-KAJ, should be consolidated with the manufacturer actions, the main reason being that haling the retailers into this court will force the manufacturers to consent to jurisdiction in order to defend their products. (*Id.* at 49:25-50:19.)

Because the defendants did not object to consolidating the cases against Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo at the hearing (*see id.* at 22:2-6), and because the cases involve common questions of law and fact pertaining to infringement of the '028 and '412 patents, those cases will be consolidated for all pretrial and trial purposes, without prejudice to any of the manufacturers filing a motion to sever from the others at trial, once the pretrial matters are concluded. However, I will not consolidate the retailer action with the manufacturer cases. CEA has not come forward with any compelling reason why the case against the retailers should proceed in lockstep with the cases against the manufacturers. Therefore, CEA's Motions to Consolidate will be granted in part and denied in part; they are granted to the extent that they seek to consolidate the Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo module manufacturers, and denied to the extent that they seek to consolidate the remaining defendants.

#### B. Defendants' Motions to Stay the Case

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp 2d
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

Defendants argue that CEA's case against the OEM/distributors and retailers should be stayed pending resolution of the case against the manufacturers. (D.I. 94 at 5; D.I. 186 at 41:23-42:11.) CEA responds that it would be unduly prejudiced and placed at a tactical disadvantage if a stay were granted, and that granting a stay as to the retailers would not simplify the issues in this case. (D.I. 106 at 4-6.) Applying the factors enumerated in *United Sweetener, supra,* I find that it is appropriate to stay the case against the OEM/distributors and the retailers pending the outcome of the case against the manufacturers.

First, CEA has not articulated, in its papers or at the hearing (*see* D.I. 186 at 25:24-29:4) any real prejudice or tactical disadvantage that it would suffer if the proceedings against the OEM/distributors and retailers are stayed. *See United Sweetner, 766 F.Supp. at 217.* CEA asserts that a stay would "substantially delay" its right to adjudicate its claims against the remaining defendants and that it would be most efficient for the court and the parties "to take discovery and present arguments in this case only one time and not through delayed piecemeal litigation." (D.I. 106 at 5.) Should CEA prevail in this case, it will be compensated for any delay it experiences in recovering damages against the remaining defendants by interest on the award. CEA also argues that, should a preliminary injunction be entered against the manufacturers, [FN3] the injunction would not be broad enough to encompass the retailers if the case against them is stayed. (D.I. 186 at 35:7-36:4.) Such a speculative argument, on its own, does not demonstrate enough prejudice to outweigh the remaining factors in favor of granting a stay. Furthermore, and as explained more fully below, staying the case against the remaining defendants may streamline the case and avoid piecemeal litigation altogether.

> FN3. CEA has filed Motions for a Preliminary Injunction in *CEA v. Dell* (D.I 58) and *CEA v. Tottori Sanyo* (D.I.18).

*3 Although CEA argues that granting a stay would not simplify the issues pending against the retailers, "[i]t is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier." David F. Herr, *Annotated Manual for Complex Litigation,* § 33.63 (3d ed.2003); *see also Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990) ("litigation against or brought by the

manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers would found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties. [FN4]

> FN4. As to the final two *United Sweetener* factors, discovery is not complete in any of the cases, and even though a trial date in October 2005 has been set in *CEA v. Dell,* Civ. No. 03-484-KAJ (*see* D.I. 106 at 3), neither of these factors weigh strongly against granting a stay under the circumstances presented by these cases

V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that CEA's Motions to Consolidate in *CEA v Dell Computer Corp., et al.,* Civ. No. 03-484-KAJ (D.I.89, D.I.142); *CEA v. Tottori Sanyo Electronic Co., Ltd.,* Civ. No. 03-857-KAJ (D.I.10, D.I.27); and *CEA v. Fujitsu Ltd.,* Civ. No. 03-1036-KAJ (D.I.14) are GRANTED IN PART and DENIED IN PART. They are GRANTED to the extent that they seek to consolidate the cases against Samsung Electronics, Fujitsu Display Technologies Corporation and Tottori Sanyo for pretrial and trial purposes, without prejudice to defendants filing motions to sever once the pretrial matters are completed; and in all other respects, CEA's Motions to Consolidate are DENIED. Counsel should confer on an appropriate simplified case caption for the proceeding against the three named manufacturer defendants. It is further ORDERED that CEA's Motions to Consolidate in *CEA v. Best Buy Co., et al.,* Civ. No. 03-931-KAJ (D.I.48, D.I.81) are DENIED. It is further ORDERED that defendants' Motions to Stay the Case in Civ. No. 03-484-KAJ (D.I 93); Civ. No. 03-931-KAJ (D.I.47); and Civ. No. 04-099-KAJ (D.I.16) are GRANTED to the extent that they seek to stay the proceedings against the OEM/distributors and retailers

2004 WL 1554382 (D.Del.)

Not Reported in F.Supp.2d
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

Page 4

Motions, Pleadings and Filings (Back to top)

- _____1:04CV00582_____(Docket)
(Jun. 25, 2004)

- _____1:04CV00099_____(Docket)
(Feb. 13, 2004)

- _____1:03CV01036_____(Docket)
(Nov. 13, 2003)

- _____1:03CV00857_____(Docket)
(Sep. 04, 2003)

- _____1:03CV00484_____(Docket)
(May. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

**EXHIBIT C**

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel  212 447 6060
Fax 212 447 6257

**Language*W*orks**

STATE OF NEW YORK      )
                       )        ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the attached, to the best of my knowledge and belief, is a true and accurate translation into English of the Declaration of Kazuhiko Okishio in Support of Customer Defendants' Motion to Stay (Nikon Corporation and Nikon Inc.), originally written in Japanese.

Glenn Cain
Manager of Legal Translation Services
The LanguageWorks, Inc.

Sworn to and subscribed before me
This Eleventh day of April, 2005

Notary Public

SCOTT R. SHENKMAN
Notary Public, State of New York
No. 01SH6049060
Qualified in Westchester County
Commission Expires Oct. 2, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC., and )
HONEYWELL INTELLECTUAL PROPERTIES )
INC., )
                                 )
                   Plaintiffs, )
                                 )
                                 )       C.A. No. 04-1337-KAJ
AUDIOVOX COMMUNICATIONS CORP.; )
AUDIOVOX ELECTRONICS CORPORATION; )
NIKON CORPORATION; NIKON INC.; )
NOKIA CORPORATION; NOKIA INC.; )
SANYO ELECTRIC CO., LTD.; and )
SANYO NORTH AMERICA CORPORATION, )
                                 )
                   Defendants. )

## DECLARATION OF KAZUHIKO OKISHIO IN SUPPORT OF CUSTOMER DEFENDANTS' MOTION TO STAY (NIKON CORPORATION AND NIKON INC.)

I, Kazuhiko Okishio, declare as follows:

1. I have been employed by Nikon Corporation continuously since April 1, 1978. I am currently the General Manager at Production Strategy Department for Nikon Corporation. As part of my responsibilities, I have knowledge of and have access to documents concerning the manufacture by Nikon Corporation and its subsidiaries and affiliates of digital still cameras ("DSCs"). Also as part of my responsibilities, I have knowledge of, and have access to documents concerning, the business activities of Nikon Corporation and the relationship between Nikon Corporation and its subsidiaries and affiliates, including defendant Nikon Inc. Unless otherwise stated, I have personal knowledge of all facts set forth in this Declaration, and I would and could testify competently thereto if called upon to do so.

2. Nikon Corporation and its subsidiaries are in the business of, among other things, manufacturing DSCs, including LCD screen-containing DSCs. I understand that Honeywell International Inc. and Honeywell Intellectual Properties Inc. ("Honeywell") have identified two DSCs, the Nikon Coolpix 2100 and 3100 cameras, as the accused products in the captioned lawsuit against Nikon Corporation and Nikon Inc.

### NIKON CORPORATION'S RELATIONSHIP WITH NIKON INC.

3. Nikon Corporation is a Japanese corporation and the parent company of Nikon Americas Inc., which in turn is the parent company of Nikon Inc.

4. Nikon Corporation sells its DSCs to Nikon Inc., which is the distributor of "Nikon"-brand DSCs in the United States.

5. All Nikon-branded DSCs sold by Nikon Inc. in the United States are either manufactured by wholly-owned subsidiaries of Nikon Corporation or supplied to Nikon Corporation by original equipment manufacturers ("camera OEM suppliers").

### NIKON CORPORATION DOES NOT MANUFACTURE LCD MODULES

6. While certain DSCs sold by Nikon Inc. include LCD modules as components, Nikon Corporation and its subsidiaries do not design, manufacture, or assemble any of these LCD modules.

7. Nikon Corporation or its subsidiaries purchase LCD modules from  suppliers in Japan or Singapore for incorporation into LCD screen-containing DSCs manufactured by the wholly-owned subsidiaries of Nikon Corporation.  There are two different LCD module manufacturers, and each of the suppliers obtains the LCD modules from one of the LCD module manufacturers, respectively. The subsidiaries of Nikon Corporation merely install the purchased LCD modules  in the camera.

2

8.  For LCD screen-containing DSCs supplied to Nikon Corporation by its camera OEM suppliers, the camera OEM suppliers either manufacture or obtain from LCD module manufacturers the LCD modules that the camera OEM suppliers incorporate as components in the DSCs supplied to Nikon Corporation.  The camera OEM suppliers choose their own LCD suppliers for the DSCs manufactured and supplied to Nikon Corporation. The two accused products (the Nikon Coolpix 2100 and 3100 cameras) are manufactured by camera OEM suppliers.

### NIKON CORPORATION'S AND ITS SUBSIDIARIES' LCD MODULE SUPPLIERS AND CAMERA OEM SUPPLIERS ARE NAMED DEFENDANTS

9.  Both of the LCD module manufacturers that furnish Nikon Corporation or its subsidiaries with LCD modules for incorporation into LCD screen-containing DSCs manufactured by the wholly-owned subsidiaries of Nikon Corporation are named defendants in at least one of C.A. No. 04-1337-KAJ and C.A. No. 04-1338-KAJ filed in the U.S. District Court for the District of Delaware ("the Honeywell litigation"), specifically SANYO Electric Co., Ltd. ("Sanyo") and Sony Corporation ("Sony"). (I understand that Sanyo and Seiko Epson Corporation ("Seiko Epson") formed a joint venture called Sanyo Epson Imaging Devices Corp. ("Sanyo Epson").  Sanyo Epson is the integration of LCD display businesses owned by the parent companies and Sanyo's subsidiaries and became operational in October 2004. It is also my understanding that the Sanyo LCDs that were being supplied by Sanyo to Nikon Corporation or its subsidiaries, through the suppliers in Japan or Singapore, before Sanyo Epson became operational are now supplied by Sanyo Epson through the Japanese or Singapore suppliers.) The Sanyo and Sony supply relationships with Nikon Corporation and its subsidiaries are

3

illustrated in the chart entitled "Nikon Digital Still Camera ("DSC") LCD Supply Chain" and attached to my declaration as Exhibit 1.

10.  Both of the camera OEM suppliers of LCD screen-containing DSCs to Nikon Corporation are named defendants in the Honeywell litigation, specifically Sanyo and Matsushita Electric Industrial Co., Ltd. ("Matsushita").    (The relationships are illustrated in Exhibit 1.) The two accused products (the Nikon Coolpix 2100 and 3100 cameras) are manufactured by Sanyo.

### LCD MODULE SUPPLIERS TO NIKON CORPORATION'S CAMERA OEMs

11. LCD modules included in DSCs supplied to Nikon Corporation by its camera OEM suppliers have been manufactured by five different LCD module manufacturers.  I am informed that three of these LCD module manufacturers are named as defendants in the Honeywell litigation: Sanyo (LCD module supplier to itself and to Matsushita) (the LCDs are now supplied by the joint venture, Sanyo Epson, whose owners are defendant Sanyo and Seiko Epson which is seeking to become a defendant); Casio Computer Co., Ltd. ("Casio")(LCD module supplier to Sanyo); and Sony (LCD module supplier to Sanyo).  The fourth of the LCD module manufacturers, Sharp Corporation (LCD module supplier to Sanyo), is not a named defendant in the Honeywell litigation, but I am informed that Honeywell has announced that this manufacturer is in the process of entering into a license agreement with Honeywell and, thus, will be licensed under the Honeywell patent in the Honeywell litigation (U.S. Patent No. 5,280,371). The fifth of the LCD module manufacturers, Prime View International Co., LTD. (Taiwan) ("Prime View")(LCD module supplier to Sanyo) is not a named defendant in the Honeywell litigation.  However, I am informed that defendant Audiovox Electronics Corporation is

4

seeking to bring Prime View into the Honeywell litigation by third-party complaint. (The relationships are illustrated in Exhibit 1.)

Based upon the attached Japanese translation of this declaration, I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this declaration was executed on April ___11___, 2005, in Tokyo, Japan.

_Kazuhiko Okishio_
**KAZUHIKO OKISHIO**

5

**EXHIBIT 1**

# NIKON DIGITAL STILL CAMERA ("DSC") LCD SUPPLY CHAIN (HONEYWELL LITIGATION)

## Nikon's DSCs –OEMed–

< Camera OEM Supplier >          < LCD Supplier >



## Nikon's DSCs –Own Manufactured–

< Camera Manufacturer >          < LCD Supplier >



878,299 DOC

**株式会社ニコン及びNikon Inc.による停止申立てに賛成する、沖塩一彦の 宣言書**

　　　私、沖塩一彦は、以下の通り宣言する。

　　　1.　　私は、1978 年 4 月 1 日以来、株式会社ニコンに雇用されている。私は、現在、株式会社ニコンの生産戦略部ゼネラルマネジャーである。私は、職務の一環として、株式会社ニコン並びにその子会社および関連会社によるデジタルスチルカメラ（以下「DSC」）の製造に関し、知識があり、書類を入手する権限を持つ。また、私は、職務の一環として、株式会社ニコンの営業活動、株式会社ニコンと被告の Nikon Inc.を含む株式会社ニコンの子会社および関連会社との関係に関し、知識があり、書類を入手する権限を持つ。別途記載のない限り、私はこの宣言書に記載された事実すべてに関して個人的な知識を有し、証言するよう要請された場合には十分に証言する用意があり、証言することが可能である。

　　　2.　　株式会社ニコンおよびその子会社は、数あるビジネスの中でも特に、LCD スクリーン付 DSC を含む、DSC の製造に従事している。私は、Honeywell International Inc.および Honeywell Intellectual Properties Inc.（以下「Honeywell」）が、株式会社ニコンおよび Nikon Inc.に対する標記訴訟における被疑製品として、Nikon Coolpix2100 および 3100 カメラの 2 つの DSC を特定したと理解している。

**株式会社ニコンとNikon Inc.との 関係**

　　　3.　　株式会社ニコンは日本の会社であり、Nikon Americas Inc.の親会社である。Nikon Americas Inc.は、Nikon Inc.の親会社である。

　　　4.　　株式会社ニコンは、「Nikon」ブランドの DSC の米国での販売会社である Nikon Inc.に、DSC を販売する。

　　　5.　　Nikon Inc.が米国で販売する「Nikon」ブランドの DSC は全て、株式会社ニコンの完全子会社によって製造されたもの、又は、相手先ブランド製造者（以下「カメラ OEM 供給者」）により株式会社ニコンに供給されたもの、のいずれかである。

<u>株式会社ニコンはLCDモジュールを製造しない</u>

     6.    Nikon Inc.により販売された、ある DSC は、要素部品として LCD モジュールを含んでいるが、株式会社ニコンおよびその子会社は、当該 LCD モジュールの設計、製造、又は、組み立てを行っていない。

     7.    株式会社ニコン又はその子会社は、株式会社ニコンの完全子会社が製造する LCD スクリーン付 DSC に組み込むために、日本又はシンガポールにある供給者から LCD モジュールを購入している。二つの異なる LCD モジュール製造者が存在し、それぞれの供給者は、LCD モジュールをそれぞれ一方の LCD モジュール製造者から入手している。株式会社ニコンの子会社は、購入した LCD モジュールを単にカメラに取り付けているだけである。

     8.    カメラ OEM 供給者から株式会社ニコンに供給される LCD スクリーン付 DSC のために、カメラ OEM 供給者は、株式会社ニコンに供給する DSC にカメラ OEM 供給者が要素部品として組み込む LCD モジュールを、自ら製造するか、又は、LCD モジュール製造者から入手している。カメラ OEM 供給者は、製造され株式会社ニコンに供給される DSC のために、彼ら自身の LCD 供給者を選択する。二つの被疑製品（Nikon Coolpix 2100 および 3100 カメラ）は、カメラ OEM 供給者により製造されている。

<u>株式会社ニコン及びその子会社へのLCDモジュール供給者及びカメラOEM供給者は被告である</u>

     9.    株式会社ニコンの完全子会社によって製造される LCD スクリーン付 DSC に組み込まれる LCD モジュールを、株式会社ニコン又はその子会社に供給している LCD モジュール製造者は、両社とも、米国デラウェア州の地方裁判所に提訴された民事訴訟第 04-1337-KAJ 又は民事訴訟第 04-1338-KAJ（以下「Honeywell 訴訟」）の少なくともいずれか一方の訴訟における被告である。具体的には、三洋電機株式会社（以下「三洋」）とソニー株式会社（以下「ソニー」）である。（私は、三洋とセイコーエプソン株式会社（以下「セイコーエプソン」）が三洋エプソンイメージングデバイス株式会社（以下「三洋エプソン」）という社名の合弁会社を設

立したと理解している。三洋エプソンは、両親会社と三洋の子会社のディスプレービジネスの統合であり、2004 年 10 月に業務を開始した。また、私は、三洋エプソンが業務を開始する前に、株式会社ニコンとその子会社に対し、日本またはシンガポールの供給者を通して三洋から供給されていた三洋の LCD は、現在は、当該日本またはシンガポールの供給者を通して三洋エプソンから供給されていると理解している。）三洋およびソニーと、株式会社ニコンおよびその子会社との供給関係は、「ニコンデジタルスチルカメラ（「DSC」）LCD 供給チェーン」とタイトルがつき、私の宣言書に証拠書類 1 として添付されたチャートに描かれている。

　　　　10.　　LCD スクリーン付 DSC を株式会社ニコンに供給するカメラ OEM 供給者は、両社とも、Honeywell 訴訟における被告である。具体的には、三洋と松下電器産業株式会社（以下「松下」）である（関係は証拠書類 1 に描かれている）。二つの被疑製品（Nikon Coolpix 2100 および 3100 カメラ）は、三洋により製造されている。

### 株式会社ニコンのカメラOEM供給者へのLCDモジュール供給者

　　　　11.　　カメラ OEM 供給者によって株式会社ニコンに供給される DSC に含まれる LCD モジュールは、5 つの異なる LCD モジュール製造者により製造された。私は、当該 LCD モジュール製造者のうちの 3 社は、Honeywell 訴訟における被告であると知らされた。その 3 社とは、三洋（三洋自身、及び、松下への LCD モジュール供給者）（現在は、その LCD は、被告である三洋と被告になろうとしているセイコーエプソンとが所有者である合弁会社、三洋エプソンによって供給される）、カシオ計算機株式会社（以下「カシオ」）（三洋への LCD モジュール供給者）、及び、ソニー（三洋への LCD モジュール供給者）である。第 4 の LCD モジュール製造者であるシャープ株式会社（三洋への LCD モジュール供給者）は、Honeywell 訴訟における被告ではないが、私は、Honeywell が、この LCD モジュール製造者はHoneywell とのライセンス契約締結途上にあり、それ故 Honeywell 訴訟におけるHoneywell 特許（米国特許第 5,280,371 号）についてライセンスを受けるであろうと発表したことを聞いている。第 5 の LCD モジュール製造者である、Prime View

International Co., LTD（台湾）（以下「Prime View」）（三洋へのLCDモジュール供給者）は、Honeywell訴訟における被告ではない。しかしながら、私は、被告のAudiovox Electronics Corporationが第三者引込訴訟によってPrime ViewをHoneywell訴訟に引き込もうとしていることを聞いている。（関係は証拠書類1に描かれている。）

　　　添付された本宣言書の日本語翻訳に基づき、米国の法律に基づく偽証の罰則のもと、私は上述の内容に関しては真実であり、嘘偽りのないこと、そしてこの宣言書が2005年4月　||日に日本国東京都において実行されたことを宣言する。

沖塩一彦

# NIKON DIGITAL STILL CAMERA ("DSC") LCD SUPPLY CHAIN (HONEYWELL LITIGATION)

## Nikon's DSCs  –OEMed–



## Nikon's DSCs  –Own Manufactured–



878,299 DOC

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC., and )
HONEYWELL INTELLECTUAL PROPERTIES )
INC., )
                        )
       Plaintiffs, )
                        )     C.A. No. 04-1337-KAJ
                        )
AUDIOVOX COMMUNICATIONS CORP.; )
AUDIOVOX ELECTRONICS CORPORATION; )
NIKON CORPORATION; NIKON INC.; )
NOKIA CORPORATION; NOKIA INC.; )
SANYO ELECTRIC CO., LTD.; and )
SANYO NORTH AMERICA CORPORATION, )
                        )
       Defendants. )

## DECLARATION OF RICHARD LOPINTO IN SUPPORT OF CUSTOMER
## DEFENDANTS' MOTION TO STAY (NIKON CORPORATION AND NIKON INC.)

I, Richard  LoPinto, declare as follows:

1.  I have been employed by Nikon Inc. continuously for over thirty years.  I am currently the Senior Vice President, Product, Technology and Engineering for Nikon Inc. As part of my responsibilities, I have knowledge of, and have access to documents concerning, the business activities of Nikon Inc. and the relationship between Nikon Inc. and its parent companies and affiliates, including Nikon Corporation .  Unless otherwise stated, I have personal knowledge of all facts set forth in this Declaration, and I would and could testify competently thereto if called upon to do so.

2.  Nikon Inc. does not design, manufacture, or assemble LCD modules or LCD-containing digital still cameras ("DSCs").  Instead, Nikon Inc. purchases completely

assembled DSCs from Nikon Corporation and resells them under the Nikon brand name. Nikon Inc. adds nothing to the Nikon-branded DSCs that it purchases and resells.

   3. Nikon Inc. has no control over the selection of LCD modules contained in DSCs that it purchases from Nikon Corporation.

   4. Nikon Inc. is not privy to any third party's proprietary or confidential technical information concerning any of the LCD modules included in the DSCs it purchases from Nikon Corporation.

   I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this declaration was executed on April 11, 2005, in Melville,New York.

   _____
   Richard LoPinto

2

**EXHIBIT E**





**EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE COMPUTER, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 04-1338 (KAJ)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF TATSUO ITAMI IN SUPPORT OF PENTAX CORPORATION**

I, Tatsuo Itami, declare as follows:

1. I am currently the General Manager of the Legal and Intellectual Property Department for PENTAX Corporation. I have knowledge of and have access to documents relating to the manufacture of digital cameras by PENTAX Corporation and its subsidiaries and affiliates. I have personal knowledge of all facts set forth in this Declaration, and I would and could testify competently thereto if called upon to do so.

2. PENTAX Corporation and its subsidiaries are in the business of, among other things, manufacturing digital cameras, including LCD screen-containing digital cameras. I understand that Honeywell International Inc. and Honeywell Intellectual Properties Inc. ("Honeywell") have generally identified digital cameras as accused products in the captioned lawsuit against PENTAX Corporation and PENTAX of America, Inc.

## PENTAX CORPORATION'S RELATIONSHIP WITH PENTAX OF AMERICA, INC.

3.   PENTAX Corporation is a Japanese company and the parent company of PENTAX of America, Inc., a Delaware corporation.

4.   PENTAX Corporation sells its digital cameras to PENTAX of America, Inc., which is the importer of PENTAX brand digital cameras into the United States.

5.   The only digital cameras sold by PENTAX of America, Inc. in the United States are PENTAX brand digital cameras.

## PENTAX CORPORATION DOES NOT MANUFACTURE LCD MODULES

6.   PENTAX Corporation does not design, manufacture, or assemble any of the LCD modules incorporated into any PENTAX brand digital camera.  Furthermore, neither PENTAX Corporation, nor PENTAX of America, Inc., are privy to third party proprietary or confidential technical information relating to the structure of any LCD module incorporated into any PENTAX brand digital camera.

7.   PENTAX Corporation has purchased and/or purchases LCD modules from independent suppliers Sanyo, Seiko-Epson, Sharp, Sony and Casio for incorporation into PENTAX brand digital cameras.

8.   PENTAX Corporation has also purchased and/or purchases digital cameras, containing LCD modules, from Sanyo, which is an original equipment manufacturers ("OEM suppliers") of PENTAX brand digital cameras.

## PENTAX CORPORATION'S DIRECT LCD MODULE SUPPLIERS ARE NAMED DEFENDANTS

9.   All but one of the LCD module manufacturers that supply PENTAX Corporation with LCD modules for incorporation into LCD-containing digital cameras manufactured by PENTAX Corporation are named defendants, or have moved to

2

intervene, in at least one of C.A. No. 04-1337-KAJ and C.A. No. 04-1338 filed in the U.S. District Court for the District of Delaware, specifically Sanyo, Seiko-Epson, Sony and Casio. While the third LCD module supplier, Sharp, is not a named defendant in either case, it is my understanding that Sharp has reached an agreement in principal to settle its dispute, relating to LCD modules, with Honeywell.

10. The OEM supplier of LCD-containing PENTAX brand digital cameras is a named defendant in at least one of C.A. No. 04-1337-KAJ and C.A. No. 04-1338 filed in the U.S. District Court for the District of Delaware, specifically Sanyo.

## LCD MODULE SUPPLIERS TO PENTAX CORPORATION'S OEMs

11. LCD modules incorporated into PENTAX brand digital cameras supplied by OEM supplier Sanyo, are supplied by Casio, Sanyo, and/or Sharp.


I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this declaration was executed on April 7, 2005, in Tokyo, JAPAN.

TATSUO ITAMI

**EXHIBIT G**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC., and )
HONEYWELL INTELLECTUAL PROPERTIES )
INC., )
                   )
           Plaintiffs, )
                   )
                   )    C.A. No. 04-1338 (KAJ)
       v. )
                   )
                   )
APPLE COMPUTER, INC., *et al.*, )
                   )
           Defendants. )
                   )

## DECLARATION OF JOHN K. HODNETT OF PENTAX OF AMERICA, INC.

I, John K. Hodnett, declare as follows:

1. I am currently the Director of Financial Services for PENTAX Imaging Company, a division of PENTAX of America, Inc. I have knowledge of, and have access to documents concerning, the business activities of PENTAX of America, Inc. and the relationship between PENTAX of America, Inc. and its parent companies and affiliates, including PENTAX Corporation. I have personal knowledge of all facts set forth in this Declaration, and I would and could testify competently thereto if called upon to do so.

2. PENTAX of America, Inc. does not design, manufacture, or assemble LCD modules or LCD-containing digital cameras. PENTAX of America, Inc. purchases completely assembled digital cameras from PENTAX Corporation and resells them

under the PENTAX brand name.  PENTAX of America, Inc. does not alter the structure of the LCD modules incorporated into the PENTAX branded digital cameras.

3.  PENTAX of America, Inc. has no control over the selection of LCD modules contained in the digital cameras that it purchases from PENTAX Corporation.

4.  PENTAX of America, Inc. is not privy to any third party's proprietary or confidential technical information relating to the structure any of the LCD modules incorporated into the digital cameras it purchases from PENTAX Corporation.

I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this declaration was executed on April __4__, 2005, in Golden, Colorado.

John K. Hodnett

2

**EXHIBIT H**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC., and
HONEYWELL INTELLECTUAL
PROPERTIES, INC.,

        Plaintiffs,

        v.

APPLE COMPUTER, INC.; ARGUS a/k/a
HARTFORD COMPUTER GROUP, INC.;
CASIO COMPUTER CO., LTD.; CASIO,
INC.; CONCORD CAMERAS; DELL
INC.; EASTMAN KODAK COMPANY; FUJI
PHOTO FILM CO., LTD.; FUJI PHOTO FILM
U.S.A., INC.; FUJITSU LIMITED; FUJITSU
AMERICA, INC.; FUJITSU COMPUTER
PRODUCTS OF AMERICA, INC.;
KYOCERA WIRELESS CORP.;
MATSUSHITA ELECTRICAL INDUSTRIAL
CO.; MATSUSHITA ELECTRICAL
CORPORATION OF AMERICA; NAVMAN
NZ LIMITED; NAVMAN U.S.A. INC.;
OLYMPUS CORPORATION; OLYMPUS
AMERICA, INC.; PENTAX CORPORATION;
PENTAX U.S.A., INC.; SONY
CORPORATION, SONY CORPORATION OF
AMERICA; SONY ERICSSON MOBILE
COMMUNICATIONS AB; SONY ERICSSON
MOBILE COMMUNICATIONS (USA) INC.;
TOSHIBA CORPORATION; and TOSHIBA
AMERICA, INC.

        Defendants.

C.A. No. 04-1338 (KAJ)

## DECLARATION OF DON TIMMS IN SUPPORT OF CUSTOMER DEFENDANTS' MOTION TO STAY KYOCERA WIRELESS CORPORATION

I, Don Timms, declare as follows:

1.    I have been continuously employed by Kyocera Wireless Corporation ("KWC") and its predecessor since 1997. I am currently the Director of Licensing for KWC.  As part of my responsibilities, I have knowledge of and have access to documents concerning the manufacture of mobile handsets sold by KWC in the United States and the procurement of the LCD modules used in those handsets. Unless otherwise stated herein, I have personal knowledge of the facts set forth in this declaration and I would and could testify competently thereto.

2.    KWC is in the business of, among other things, manufacturing and selling mobile handsets and other wireless products.  The handsets manufactured and sold by KWC contain liquid crystal displays ("LCDs").  I understand that Honeywell International Inc. and Honeywell Intellectual Properties Inc. ("Honeywell") have asserted that their '371 patent covers certain types of LCD structures and that Honeywell has accused any KWC handsets that incorporate such LCDs of infringing the patent.

3.    While the handsets sold by KWC include LCD modules, KWC does not design, manufacture, or assemble any of the LCD modules, nor does KWC have any technical information regarding the internal structure of the LCDs.  Rather, the LCD modules used in the handsets manufactured and sold by KWC are purchased from various LCD suppliers.

4.    The handsets sold by KWC in the United States contain LCDs that were manufactured by and/or purchased from Seiko Epson Corporation ("SEC"), Sharp Corporation ("Sharp"), Philips Electronics North America Corp. ("Philips"), Wintek Electro-Optics Corp. ("Wintek") and Optrex America, Inc. ("Optrex").  Three of those LCD suppliers are already parties to this litigation, SEC has a pending motion to intervene, and Sharp has represented to KWC that it entered into a license agreement with Honeywell.

5. SEC has moved to intervene in this action. SEC's declaratory judgment complaint seeks to establish that the LCDs manufactured and sold by SEC do not infringe the '371 patent. Moreover, the supporting Declaration of Kenji Sakamoto confirms that SEC is the party responsible for the LCD modules manufactured and sold to KWC.

6. KWC filed and served a third party complaint in this action against Philips, Wintek and Optrex. KWC has indemnification agreements with those companies and anticipates being indemnified by them if the LCD modules supplied to KWC are found to infringe any valid and enforceable claim of Honeywell's patent. Moreover, Optrex has filed its own declaratory judgment action in this Court seeking to establish that the LCDs it supplies to KWC do not infringe the '371 patent.

7. KWC's only other LCD supplier, Sharp Corporation, has informed KWC in writing that it entered into an agreement with Honeywell, pursuant to which Honeywell will dismiss any and all allegations of infringement to the extent they might arise from LCD modules manufactured or sold by Sharp.

8. I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this declaration was executed on April 11, 2005, in San Diego, California.

Don Timms

**EXHIBIT I**

Westlaw.

1987 WL 7496                                                                Page 1
1987 WL 7496 (N.D.Ill.)
(Cite as: 1987 WL 7496 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
T J  SMITH and Nephew Limited, Plaintiff,
v.
FERRIS CORPORATION and American Hospital
Supply Corporation, Pharmaseal
Division, Inc , Defendants.
No. 86 C 5461.

March 2, 1987.

MEMORANDUM OPINION

KOCORAS, District Judge:

*1 Defendants Ferris Corporation ("Ferris") and
American Hospital Supply Corporation ("AHS")
have filed separate motions to stay.   For the
following reasons, Ferris's motion 'is granted and
AHS's motion is granted in part and denied in part.

FACTS
Plaintiff T. J. Smith and Nephew Ltd. ("Smith &
Nephew") holds Reissue Patent No. Re 31,887 ("the
'887 reissue patent") which covers moisture-vapor
permeable pressure-sensitive adhesive materials.
Shortly after receiving the reissue patent in May
1985, Smith & Nephew filed seven lawsuits in
various district courts alleging infringement of the
'887 reissue patent.    Of those seven lawsuits, only
two are relevant here.   In the District of Delaware,
Smith & Nephew sued Pfizer Hospital Products
Group, Inc ("Pfizer"), alleging that certain wound
dressing products manufactured by Pfizer and sold
under the trademark "UNIFLEX" infringed on the
reissue patent. smith & Nephew filed suit in the
Northern District of New York against Consolidated
Medical Equipment, Inc. ("ConMed"), based on
ConMed's sale of a product manufactured by Avery
international Corporation.    Avery later intervened in
the suit against ConMed.

In July 1986, Smith & Nephew filed this action
which contains patent infringement claims against
both Ferris and AHs and related claims against AHS.
Smith & Nephew's claim against Ferris stems from
the marketing of moisture-vapor permeable adhesive
dressings which it converts from base materials
supplied by Avery.   According to Ferris, ninety-eight

percent of its adhesive dressing products are
unbranded products sold to AHS for resale under the
AHS trade name "Pharmaseal."    The remaining two
percent of Ferris's adhesive dressings are sold under
the name "Dynaderm" to AHS and other customers.

The patent infringement claim against AHS arises
from AHS's sale of Pharmaseal, Dynaderm, and the
UNIFLEX product supplied by Pfizer.   In addition,
Smith & Nephew have brought claims for trademark
infringement, unfair competition, and violation of the
Illinois sales statute, based on markings on the
Pharmaseal dressing.

Ferris has moved to stay the claim against it pending
resolution of the action against Avery in the Northern
District of New York. Similarly, AHS's motion seeks
a stay pending resolution of the Delaware action
against Pfizer.

DISCUSSION
The issuance of a stay under these circumstances is
committed to the sound discretion of the district
court. Kennametal, Inc. v. Spec Tool Co., 215
U.S.P.Q. 1158, 1158 (W.D. Mich. 1981); Kistler
Instrumente A.G. v. PCB Piezotronics, 419 F. Supp.
120, 123 (W.D.N.Y. 1976).    Several rules have
evolved, however, which guide the district courts in
the exercise of their discretion.   The suit filed first
ordinarily takes priority. Hernstreet v. Spiegel, Inc.,
211 U.S.P.Q. 598, 598 (N.D. Ill. 1978).   In addition,
a patent infringement action in which the
manufacturer of the accused product is a party should
take precedence over an action involving the
manufacturer's customer. Kennametal, 215 U.S.P.Q.
at  1158 (citing William  Gluckin  &  Co.  v.
International Playtex Corp., 407 F.2d 177 (2d Cir.
1969)).    An action against the manufacturer is
preferred because:

*2 [t]he manufacturer is clearly in the best position
to either defend against a claim of infringement or to
affirmatively assert invalidity of the holder's patent.
Presumably it is the manufacturer who has the more
detailed  knowledge  regarding  the  claim  of
infringement, the expertise in the area, and the
primary interest in the outcome of the litigation

Id. The preference for a manufacturer's action is so
strong that it will proceed and the action against the
customer will be stayed even through the customer
action is filed first.   Wehr Corp. v. Commercial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 7496                                                                      Page 2
1987 WL 7496 (N.D.Ill.)
(Cite as: 1987 WL 7496 (N.D.Ill.))

construction Corp., 464 F. Supp. 676, 677 (S.D. Fla. 1979); Hemstreet, 211 U.S.P.Q. at 599. With these general principles in mind, the court will address the motions before it.

### Ferris's Motion to Stay

There appears to be no dispute that Ferris purchases from Avery a product known as MED 5020 which it converts to Dynaderm and the unbranded product eventually sold as Pharmaseal. Thus, there is no question that the action against Ferris is a customer suit. The parties disagree, however, over whether the action pending in New York is the relevant manufacturer action to which this court should defer. The confusion apparently arises because of the procedural posture of the New York suit. As previously noted, Smith & Nephew originally brought the New York action against ConMed. The accused product sold by ConMed is converted from a base material known as MED 5025 manufactured by Avery. As the manufacturer of MED 5025, Avery intervened in the action against ConMed. The parties to this action, and apparently the parties to the New York action as well, disagree on whether the scope of the New York suit now includes all moisture-vapor permeable dressings produced by Avery, ten in number, including MED 5020, which potentially infringe on the '887 reissue patent or whether that suit is limited to MED 5025.

While it is difficult to believe that the attorneys to the New York suit cannot themselves agree on the scope of that litigation, the court finds that this action should be stayed pending resolution of the New York case regardless of whether MED 5020 is among the accused products in that case. Under Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971), a plaintiff in a patent infringement action whose patent was declared invalid in a prior proceeding is collaterally estopped from relitigating the validity of that patent in a subsequent action. Thus, if the New York court declares the '887 reissue patent invalid, there will be no need to litigate any of the patent infringement claims in this suit. Concurrent litigation here and in New York with respect to the validity of the '887 reissue patent would be duplicitous and a waste of the court's and the parties' time and energy.

Of course, if the New York court finds the '887 reissue patent valid and infringed by MED 5020 or MED 5025, that finding is not binding on Ferris. As a practical matter, however, a finding that MED 5020 infringes on the '887 reissue patent may be dispositive of this case as the parties are more likely

to settle. But the same may also be true if the New York court finds MED 5025 infringes the reissue patent, as the two products are similar in many respects. Therefore, Ferris's motion to stay the patent infringement claim against it pending resolution of the claims against Avery in the Northern District of New York is granted.

### AHS's Motion to Stay

*3 Smith & Nephew's patent infringement claim against AHS based on AHS's sale of UNIFLEX presents a textbook example of a customer action which should be stayed in deference to a manufacturer action. In addition, Smith & Nephew's suit against Pfizer was filed fourteen months prior to the filing of this suit, and substantial discovery, including depositions here and abroad and the production of thousands of documents, has been completed. Given that the court has concluded that Smith & Nephew's claim against Ferris should be stayed, the patent infringement claims against AHS based on AHS's sale of Ferris's products, Pharmaseal and Dynaderm, should also be stayed. Thus, AHS's motion to stay is granted as to the patent infringement claims set forth in Count I.

Smith & Nephew has brought three additional claims--claims of trademark infringment, unfair competition, and violation of the Illinois sales statute-- against AHS, stemming from markings on the Pharmaseal product which are allegedly similar to the green tabs used by Smith & Nephew on its own dressing. According to the plaintiff, the issues raised by these claims are not encompassed by any of the pending actions involving the '887 reissue patent. Thus, these claims cannot be disposed of by any of the pending actions and must inevitably be resolved by this court. The interests of justice would not be served by staying these claims. Therefore, the motion to stay is denied as to these claims, set forth in Counts II, III, and IV. See Kistler, 419 F. Supp. at 123-24 (granting stay as to patent infringement claims at issue in another action, but denying as to misappropriation of confidential information, unfair competition, and counterclaims).

1987 WL 7496 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.