**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and<br>HONEYWELL INTELLECTUAL PROPERTIES<br>INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>AUDIOVOX COMMUNICATIONS CORP.; AUDIOVOX<br>ELECTRONICS CORPORATION;<br>NIKON CORPORATION; NIKON INC.; NOKIA<br>CORPORATION; NOKIA INC.; SANYO ELECTRIC CO.,<br>LTD.; and SANYO NORTH AMERICA CORPORATION,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-1337-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and<br>HONEYWELL INTELLECTUAL PROPERTIES<br>INC.,<br><br><br>        Plaintiffs,<br><br>        v.<br><br>APPLE COMPUTER, INC.; ARGUS A/K/A<br>HARTFORD COMPUTER GROUP, INC.; CASIO<br>COMPUTER CO., LTD.; CASIO, INC.; CONCORD<br>CAMERAS; DELL INC.; EASTMAN KODAK COMPANY;<br>FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A.,<br>INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.;<br>FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.;<br>KYOCERA WIRELESS CORP.; MATSUSHITA<br>ELECTRICAL INDUSTRIAL CO.; MATSUSHITA<br>ELECTRICAL CORPORATION OF AMERICA; NAVMAN<br>NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS<br>CORPORATION; OLYMPUS AMERICA, INC.; PENTAX<br>CORPORATION; PENTAX U.S.A., INC.; SONY<br>CORPORATION; SONY CORPORATION OF AMERICA;<br>SONY ERICSSON MOBILE COMMUNICATIONS AB;<br>SONY ERICSSON MOBILE COMMUNICATIONS (USA)<br>INC.; TOSHIBA CORPORATION; and TOSHIBA<br>AMERICA, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-1338-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CUSTOMER
DEFENDANTS' (NIKON, PENTAX, AND KYOCERA) JOINT
MOTION TO STAY CASES PENDING RESOLUTION OF
<u>LCD MODULE MANUFACTURERS' CASES</u>**

OF COUNSEL:

Barry W. Graham
John F. Hornick
Darren M. Jiron
FINNEGAN, HENDERSON
 FARABOW, GARRETT & DUNNER LLP
901 New York Avenue, N.W.
Washington, DC 20001-4413
*Attorneys for Defendants Nikon Corporation
and Nikon Inc.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Phone: (302) 984-6000
*Attorneys for Defendants
Nikon Corporation and Nikon Inc.*


Stuart Lubitz
David H. Ben-Meir
Robert J. Benson
Hogan & Hartson, LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
*Attorneys for Defendants Kyocera Wireless
Corp.*

Donald W. Huntley
Huntley & Associates, LLC
1105 North Market Street
P.O. Box 948
Wilmington, DE 19899-0948
Phone: (302) 426-0610
*Attorneys for Defendants Kyocera Wireless
Corp.*


Michael J. Fink
P. Branko Pejic
Neil F. Greenblum
Greenblum and Bernstein, PLC
1950 Roland Clarke Place
Reston, VA 20191
*Attorneys for Defendants Pentax Corporation
and Pentax of America, Inc.*

Adam Wyatt Poff
Young, Conaway, Stargatt, & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: (302) 571-6600
*Attorneys for Defendants Pentax
Corporation and Pentax of America, Inc.*

Dated: May 2, 2005

## TABLE OF CONTENTS

I.      Introduction ........................................................................................................ 1

II.     Honeywell Fails To Adequately Distinguish The Facts Of The
        Present Suit From The *CEA* Case ..................................................................... 4

III.    Staying The Case As To Nikon, Pentax, and KWC Will Simplify
        The Litigation Regardless Of The Outcome Of The Cases Against
        The LCD Suppliers. ............................................................................................ 8

IV.     A Stay Of Nikon, Pentax, And KWC Would Not Result In Any
        Prejudice To Honeywell Because The Relevant LCD Suppliers
        Are Already In The Litigation, Are Entering The Litigation, Or
        Have Settled. ...................................................................................................... 9

V.      Nikon, Pentax, and KWC Would Be Prejudiced In The Absence Of
        A Stay Because The LCD Suppliers Are Best Equipped To Defend
        This Action ........................................................................................................ 13

VI.     Honeywell's Own Licensing Activities Confirm Who The Real
        Parties-In-Interest Are – The LCD Suppliers. ................................................... 16

VII.    Honeywell's Attempt To Label The Customer Defendants As
        Something Other Than Customers Of LCD Modules Ignores This
        Court's Decision In The *CEA* Case And Other Applicable Precedent ............... 17

VIII.   Now Is The Time To Simplify The Litigation – Before Discovery
        Begins. ............................................................................................................... 19

IX.     Conclusion ......................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.,*
  133 F. Supp. 2d 354 (D. Del. 2001)............................................................................. 18

*Commissariat a L'Energie Atomique v. Dell Computer Corp.,*
  C.A. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) .......................... 3, 18, 19

*Cordell Engineering, Inc. v. Picker Int'l, Inc.,*
  540 F. Supp. 1316 (D. Mass. 1982) ............................................................................. 19

*Kahn v. General Motors Corp.,*
  889 F.2d 1078 (Fed. Cir. 1989) ................................................................................. 19

*Ricoh Co. v. Aeroflex Inc.,*
  279 F. Supp. 2d 554 (D. Del. 2003)....................................................................... 18, 19

*T.J. Smith and Nephew Ltd. v. Ferris Corp.,*
  C. A. No. 86C 5461, 1987 WL 7496 (N.D. Ill. Mar. 2, 1987) ................................ 18, 19

*Whelen Technologies, Inc. v. Mill Specialties, Inc.,*
  741 F. Supp. 715 (N.D. Ill. 1990) .............................................................................. 18

## I.     Introduction

The Nikon Defendants ("Nikon"), Pentax Defendants ("Pentax"), and Kyocera Defendant ("KWC") submit this Reply in support of their Customer Defendants' Joint Motion to Stay Cases Pending Resolution of LCD Module Manufacturers' Cases and Opening Brief. (1337 D.I. 60, 61; 1338 D.I. 158, 159.) Specifically, this Reply is in response to Honeywell's Consolidated Brief. (1337 D.I. 67; 1338 D.I. 167; 1536 D.I. 20.) Honeywell's Consolidated Brief is crafted as six responses in one: three replies concerning Honeywell's motion to consolidate and to stay Optrex as well as three responses to the three pending stay motions, that is, the Nikon, Pentax, and KWC stay motion plus one filed by the Olympus Defendants (1338 D.I. 161) and one filed by the Nokia Defendants (1337 D.I. 63). In doing so, and by loosely characterizing all of the defendants as "Named Defendants" without distinction with respect to being a pure customer defendant (Nikon, Pentax, and KWC) or an LCD module supplier (such as Sanyo, Sony, and Casio), Honeywell confuses an already complicated litigation with its multiple parties, multiple product types, and multiple products within the types.

To refocus the Court on Nikon's, Pentax's, and KWC's efforts for a stay pending the outcome of the cases of their LCD suppliers, the following summary of the situation is provided and then a response to Honeywell's Consolidated Brief regarding Nikon's, Pentax's, and KWC's stay motion.[1]

---

[1]     The Olympus and Nokia Defendants are filing their own replies regarding their respective stay motions. Further, Eastman Kodak plans to file its own motion to stay, joined by other defendants in this litigation.

First, the summary.  All of the LCD suppliers to Nikon, Pentax, and KWC, who should litigate first while Nikon, Pentax, and KWC are stayed, are in the litigation, coming into the litigation, or have settled as follows:

    1. Nikon:

        a.    Every direct supplier to Nikon of LCD modules for Nikon-manufactured digital still cameras ("DSCs") is a defendant sued by Honeywell in this litigation;

        b.    Every camera OEM supplier to Nikon of DSCs containing an LCD screen is a defendant sued by Honeywell in this litigation; and

        c.    Even every LCD module contained in DSCs OEMed for Nikon is manufactured either by a defendant sued by Honeywell in this litigation, is a soon-to-be third-party defendant, or has settled with Honeywell.

    2. Pentax:

        a.    Every direct supplier to Pentax of LCD modules for Pentax-manufactured DSCs is a defendant sued by Honeywell in this litigation, an intervenor, or has settled with Honeywell;

        b.    The sole camera OEM supplier to Pentax of DSCs containing an LCD screen is a defendant sued by Honeywell in this litigation; and

        c.    Even every LCD module contained in DSCs OEMed for Pentax is manufactured either by a defendant sued by Honeywell in this litigation or has settled with Honeywell.

    3. KWC:

        a.    Every LCD supplier to KWC for wireless mobile handsets sold by KWC in the United States is either a declaratory judgment plaintiff, an intervenor, a third-party defendant, or has settled with Honeywell.

Now, the response.

2

As an initial matter, Honeywell is flat wrong when it informs the Court that "Honeywell did not sue the suppliers of LCD panels." (Consol. Br. at1.) For example, as summarized above, Honeywell sued all of the suppliers to Nikon. Moreover, Honeywell's attempts to fend off the guidance of the *CEA* holding and rationale as merely having "some superficial similarities" to Honeywell's LCD litigation is far off base, as explained below.[2] And Honeywell still has it backwards regarding how best to go about simplifying the litigation: Honeywell wants the Court to proceed with the customers first and the LCD manufacturers afterwards, whereas reversing that order will result in efficiencies for both the Court and the parties.

Based on the factual similarities between this LCD litigation and the *CEA* LCD case, Nikon, Pentax, and KWC (that is, the "Customer Defendants" in their Opening Brief) should be stayed in this litigation. Honeywell argues that the patents in the *CEA* case were directed only to inner workings of an LCD panel, while the '371 patent is directed to the use of the LCD panels in end products. Therefore, Honeywell contends that it is appropriate in this case to pursue the end users of the LCD panels rather than the suppliers of the LCD panels. However, Honeywell's representation of the patented technology is simply wrong. Just like the patents in the *CEA* case, the '371 patent claims are directed to an LCD component and not to any type of end products that may incorporate the LCD component. In both cases, the LCD components by themselves are alleged to infringe the patents-in-suit, irrespective of how they are used in end products. In both cases, the end products are alleged to benefit from the "improved" LCD

---

[2]    *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, C.A. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) ("CEA") (attached as Ex. B to the Opening Brief).

technology. Thus, just like in the *CEA* case, the real parties-in-interest here are the LCD component suppliers and not the LCD component end users.

Not only has Honeywell failed to distinguish the present case from *CEA*, but Honeywell has also failed to dispute the fact that staying Nikon, Pentax, and KWC would simplify the issues in the case. Adjudicating liability issues with the LCD suppliers first will certainly narrow – and may completely eliminate – the need for a further trial of Honeywell's claims against the customers. Further, Honeywell has failed to identify any valid reason why a stay of Nikon, Pentax, and KWC would unduly prejudice or present a clear tactical disadvantage to Honeywell. To the contrary, Honeywell's insistence on keeping Nikon, Pentax, and KWC in the litigation, when viewed along with Honeywell's settlement efforts with the LCD manufacturers, supports the conclusion that Honeywell is simply using this litigation as a tool to bolster its negotiation efforts against the LCD manufacturers. Honeywell's tactical preferences should not take precedence over the benefits that can be gained by focusing the litigation on the real parties-in-interest, the LCD manufacturers. Defendants' Motion to Stay should be granted.

## II. Honeywell Fails To Adequately Distinguish The Facts Of The Present Suit From The *CEA* Case

In its effort to prevent a stay of its claims against Nikon, Pentax, KWC and other customer defendants, Honeywell tries to distinguish the facts in this litigation from those of the *CEA* case. This is critical to Honeywell's opposition, because rarely is a case so directly on point. Less than one year ago in *CEA*, this Court stayed an action against end product manufacturers, in favor of proceeding with the LCD module makers, in a patent infringement action that also involved LCD technology. This Honeywell litigation is

4

similarly complex, involves the same type of technology and the same types of defendants, and should be streamlined in the same manner, with the real parties-in-interest – the LCD module manufactures – litigating infringement issues concerning their own products.

To avoid this direct precedent, Honeywell contends that the LCD technology in this case is materially different from the LCD technology involved in the *CEA* case. Particularly, Honeywell argues that the claims of the patents in the *CEA* case relate to the inner workings of the LCD panel itself, while the '371 patent "relates to how light can more effectively be used in certain types of products employing an LCD panel." (Consol.Br. at 7.) In actuality, the claims of the '371 patent are no more related to end products than the claims of the patents in the *CEA* case. In both cases, the LCD module *by itself* is alleged to infringe the patent-in-suit, and the end products in both cases allegedly benefit from the use of "improved" LCD displays.

Honeywell's argument fails because no claim in the '371 patent is directed to "how light can be more efficiently utilized in certain types of products which employ LCD panels," as Honeywell suggests. (Consol. Br. at 7.) Rather, just like the patents in the *CEA* case, the claims of the '371 patent are directed merely to an LCD-based component. There are only three claims in the '371 patent, and each is directed to "a display apparatus."[3] None of the claims are directed to end products that incorporate the

---

[3]    The asserted claim in this litigation, that is, claim 3 of the '371 patent, reads as follows:

    3. A display apparatus comprising:

    a light source;

*footnote continued on next page*

LCD-based component, for example, a Nikon camera, nor do the claims specify how the LCD-based component may be used in an end product, such as a Nikon camera. The claims of the '371 patent do not so much as mention the end product, or any device or component outside the LCD itself. Accordingly, an LCD module does not need to be incorporated into another product, or used in a particular manner, in order to infringe the claims of the '371 patent – and Honeywell never directly contends that this is the case.[4]

While the Court need not look beyond the literal language of the claims of the '371 patent to confirm this point, Honeywell's Complaints are necessarily consistent with this view. Honeywell's Complaints contend that in the 1980's Honeywell developed new LCD displays that would meet the needs of the aviation and aerospace industry. (Complaint ¶ 34 (1337 D.I. 1).) One of these purported inventions was an improved LCD that allegedly produced "a brighter image (making the screen easier to see) without

---

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal.

Similarly, both U.S. Patent No. 4,889,412 ("the '412 patent") and U.S. Patent No. 4,701,028 ("the '028 patent") (the patents in the *CEA* case) include claims directed to LCD components. Each of the claims in the '412 patent is directed to "a liquid crystal cell assembly," and each of the claims in the '028 patent is directed to a "liquid crystal cell of the electrically controlled birefringence type."

[4]    Indeed, Honeywell would never contend that the LCD modules only infringe if they are used in a particular way by end product manufacturers, because this would completely undercut Honeywell's strategy of trying to license the LCD module manufacturers. *See* Section VI.

requiring additional power while helping to reduce the appearance of an undesirable

interference pattern called the 'Moire effect.'" (*Id.* ¶ 35.) Honeywell alleges that it

protected the purported invention by obtaining the '371 patent, and that the defendants

infringe the '371 patent by selling "products that include a liquid crystal display (LCD)."

(*See Id.* ¶¶ 35-52.)[5]

The notion that end products do not benefit from the patented technology in the

*CEA* case is also erroneous. For example, the '028 patent's specification discusses how

the objective of the invention was to eliminate the disadvantage of other types of LCDs

which, when "observed obliquely, their contrast deteriorates and this increases as the

observation angle increases and said contrast can even be reversed." ('028 patent, Col. 1,

ll. 59-63.) Indeed, the '028 patent specification even states that "the present invention ...

particularly applies to the production of data display means, such as watches or electronic

pocket calculators." ('028 patent, Col. 1, ll. 10-12.) There is no basis for Honeywell's

assertion that the LCD technology claimed in the '371 patent benefits "end products" any

more than the patents in the *CEA* case were also intended, in certain respects, to benefit

end products.

Regardless of any intended uses for the technology described in the '371 patent,

the simple fact remains that the three claims of the '371 patent are all directed to an LCD-

based display structure. The claims of the '371 patent are no more closely related to the

---

[5]     Indeed, it is interesting to note that while Honeywell claims to have developed its
LCD technology for applications in airplane cockpits, it only accuses of infringement
"laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable
DVD players, and portable televisions, and/or portable game systems." (*Id.* ¶¶ 37-52.) If
the specific application of the alleged invention were so important, it would seem as if
Honeywell might sue at least one defendant in the aviation or aerospace industry for
infringing its patent. It has not done so, however.

end products in this litigation than the claimed technology in the patents of the *CEA* case
is related to the end products in that case. In both cases, the subject matter of the
infringement issue is the LCD module itself. The manufacturers of the LCD modules are
the most knowledgeable of the internal structure of the LCDs, are in the best position to
litigate issues of infringement and invalidity, have the greatest interest in the outcome of
the litigation, and therefore should be given priority in adjudicating Honeywell's
infringement claims. This is the basis for staying Honeywell's claims against the
customer defendants and proceeding first with the LCD suppliers, and in this respect, the
present case is indistinguishable from the *CEA* litigation.

Thus, the "marked contrast" between the *CEA* patents and the '371 patents, as
argued by Honeywell, does not exist. The *CEA* stay decision and rationale support,
rather than counter, staying customer defendants Nikon, Pentax, and KWC, pending
resolution of their LCD suppliers' cases.

## III.    Staying The Case As To Nikon, Pentax, and KWC Will Simplify The Litigation Regardless Of The Outcome Of The Cases Against The LCD Suppliers.

Honeywell never disputes the obvious fact that staying this litigation as to Nikon,
Pentax, and KWC (and other customer defendants) would streamline an otherwise unduly
complex multi-party, multi-product litigation, no matter what the outcome of the trial(s)
involving the LCD suppliers. Honeywell does not dispute that if the '371 patent is
ultimately found invalid, unenforceable, or not infringed by the LCDs supplied to Nikon,
Pentax, and KWC, Honeywell's claims against those customer defendants will be moot.
Conversely, if Honeywell prevails on its claims resulting in a judgment of infringement
against the LCD suppliers, satisfaction of that judgment by the LCD suppliers will also

render Honeywell's claims against the customer defendants moot. If Honeywell obtains an injunction against the LCD suppliers, this will preclude any downstream infringement by the customers of those suppliers. Any settlements between Honeywell and the LCD suppliers would also moot Honeywell's claims against Nikon, Pentax, and KWC to the extent that the claims are based on LCDs supplied by those suppliers.[6]

Accordingly, setting aside all of Honeywell's various other arguments, the fundamental premise of the Customer Defendants' Motion to Stay remains undisputed: a stay of Honeywell's claims against the customer defendants, while infringement and validity issues are litigated by the LCD suppliers, is the most efficient way to simplify and streamline what will otherwise be an enormously (and unnecessarily) complex and expensive litigation.

## IV. A Stay Of Nikon, Pentax, And KWC Would Not Result In Any Prejudice To Honeywell Because The Relevant LCD Suppliers Are Already In The Litigation, Are Entering The Litigation, Or Have Settled.

Honeywell acknowledges that many of the defendants in the Honeywell suits obtain LCD modules from third parties. (Consol. Br. at 2.) Honeywell argues, however, that most of the LCD module suppliers are not before the Court and may never be because of supposed jurisdictional issues. Honeywell contends that forcing it to sue the LCD suppliers would result in "piecemeal litigation, delay, potential jurisdictional battles, and possibly having to forego a full recovery for infringement of its intellectual property." (Id.)

---

[6]     Honeywell conveniently downplays the fact that several LCD suppliers, including Sharp Corporation ("Sharp"), have already settled. (Consol. Br. at 9-10.) Any strategic motive for attempting to settle with LCD manufacturers while pushing litigation against customers does not negate the fact that Honeywell is barred from double-recovery.

Honeywell's argument is inaccurate and misplaced. As explained in the Opening Brief, and conveniently ignored by Honeywell, all of the LCD suppliers for the Nikon, Pentax, and KWC are already engaged in this litigation. All of Nikon's LCD suppliers and OEM suppliers are in the litigation due to Honeywell's suing them; all of Pentax's LCD suppliers and its OEM supplier are in the case due to being sued by Honeywell, are intervening, or have settled with Honeywell; and all of KWC's LCD suppliers are declaratory judgment plaintiffs against Honeywell, intervenors, third-party defendants, or have settled with Honeywell. Accordingly, staying Honeywell's claims against Nikon, Pentax and KWC poses no risk to Honeywell of delay, piecemeal litigation, or foregoing a full recovery for any infringement.

Honeywell contends that some of the LCD suppliers are foreign entities that may not submit to the jurisdiction of this Court. None of the foreign entities referenced by Honeywell, however, have any bearing on Nikon, Pentax and KWC. Among the LCD suppliers for Nikon, Pentax and KWC, the only one that has not yet appeared in this action (other than licensed Sharp) is third-party defendant Wintek Electro-Optics Corporation, and this party is a U.S. company, not a foreign entity. (*See* Opening Br. at 8-12.) The entities referenced by Honeywell – Netherlands-based Philips, China-based Wintek, Curitel, and Samsung SDI – are not suppliers to Nikon, Pentax or KWC, but are suppliers to other customer defendants. Even as to those suppliers, however, Honeywell's contention that they might contest jurisdiction is nothing more than speculation. No LCD supplier to this action has contested personal jurisdiction.

Even as to those customer defendants who do not have 100% of their LCD suppliers in the case, allowing the LCD suppliers in the litigation to defend, while staying

the customer defendants, would either eliminate the need for a further trial involving the customer defendants or significantly narrow Honeywell's claims. If the '371 patent claims are found invalid or not infringed or unenforceable, nothing will be left to try against the customer defendants. Similarly, if the suppliers settle with Honeywell, there will be nothing left to try against the customer defendants. Furthermore, if – by chance – there are any loose ends to tie up after the supplier cases, the customer defendants are still in the litigation to respond. Movants are not asking for dismissal, merely a stay pending the results of the litigation by their suppliers.[7]

While Honeywell ignores the fact that *all* of the relevant LCD suppliers for Nikon, Pentax and KWC are already engaged in this litigation, Honeywell also misrepresents the extent to which LCD suppliers generally are involved in this litigation. Honeywell claims that only two LCD suppliers have appeared in the suit, four have been named by third-party complaint but have not appeared, and 11 have not yet been named. However, Honeywell ignores the fact that many of the companies sued by Honeywell manufacture LCD modules, either for their own products, for resale to other defendants, or both. These "hybrid" defendants include the Casio, Fuji, Sanyo, Sony, and Toshiba entities, many of whom supply other defendants in this litigation. Honeywell also ignores the fact that other LCD suppliers for the customer defendants have already been

---

[7]     Honeywell further argues that it should not be compelled to bring new claims or lawsuits against LCD suppliers that are not currently in the litigation. However, Movants have not suggested that Honeywell needs to sue additional defendants. Nikon, Pentax and KWC – and certain other customer defendants – already have *all* of their LCD suppliers engaged in the litigation. Even as to the remaining customer defendants (who are separately moving to stay Honeywell's action against them), the stay is warranted by the efficiencies that can be gained by first proceeding against those LCD suppliers that *are already* implicated in the litigation.

licensed by Honeywell, with the result that their LCDs are not at issue. The licensed

LCD suppliers include Sharp, LG Philips LCD, NEC LCD Technologies, Samsung

Electronics, and Chi Mei Optoelectronics. Movants anticipate that additional LCD

suppliers may be named in new third-party complaints in the imminent future. When all

of this is taken into consideration, more than two-thirds of the identified LCD suppliers

for *all* of the defendants in both actions are either named defendants, licensed,

intervening, filing declaratory judgment actions, or being brought into the litigation by

third-party complaint.[8]

Accordingly, Honeywell is incorrect in asserting that the failure of LCD suppliers

to defend this action demonstrates their lack of interest in this matter. All of the LCD

suppliers for Nikon, Pentax and KWC *are* engaged in the litigation, and as explained

above, a majority of the LCD suppliers for *all* of the customer defendants are either

licensed, in the litigation, or being brought into the litigation. Other LCD suppliers are

likely engaged in active licensing discussions with Honeywell. Regardless, there is no

factual basis for Honeywell's contention that the LCD suppliers are not the real parties-

in-interest because of their supposed "limited and varied participation" in this litigation.

(Consol. Br. at 6.)

Finally, Honeywell advances the contention that litigating against foreign-based

LCD suppliers will result in piecemeal litigation because their sales of LCDs occur

overseas and the U.S. patent laws only reach sales in the United States. However, this

restriction on liability applies to both LCD suppliers and their customers – as to *both*

---

[8]     Honeywell also glosses over the fact that many of the LCD suppliers it identified
as not yet being parties to the litigation are very minor suppliers in the LCD market,
whereas the leading manufacturers are already licensed or are parties to the litigation.

types of defendants, any liability must be premised on sales that ultimately occur within the U.S. Moreover, the only potential relevance of this issue (as with most of the issues raised by Honeywell) is to the possible scope of Honeywell's damages recovery, and the argument therefore has no bearing on the fundamental premise of this Motion to Stay: adjudicating invalidity and infringement by the LCD suppliers first will either resolve or substantially narrow Honeywell's claims against the customer defendants. If any damages issues do remain after litigation with the LCD suppliers has concluded, Honeywell can still proceed against the customer defendants and raise any remaining damages contentions at that time.

## V. Nikon, Pentax, and KWC Would Be Prejudiced In The Absence Of A Stay Because The LCD Suppliers Are Best Equipped To Defend This Action.

In its Consolidated Brief, Honeywell contends that the customer defendants are well equipped to defend against Honeywell's infringement allegations and therefore would not be prejudiced if required to defend this action. (Consol. Br. at 10-11.) Honeywell bases this assertion primarily on the fact that Nikon, Pentax, and KWC have answered Honeywell's Complaints with a noninfringement defense. Regardless of any level of understanding of LCD module design that Nikon, Pentax, and KWC may have gleaned from the LCD suppliers during preparation of their respective Answers, the LCD suppliers designed, fabricated, tested, marketed, and supplied the LCD modules and are much better suited to defend against Honeywell's infringement allegations than their customers. With their intimate knowledge of the design, structural, and operational details of the LCD modules, the LCD suppliers – not Nikon, Pentax, or KWC – are the parties in this litigation that can most capably and efficiently defend against Honeywell's infringement allegations.

13

None of the other "facts" cited by Honeywell undercut the conclusion that a customer stay is appropriate. For example, Honeywell points to the extra time that Nikon, Pentax, and KWC required to prepare their Answers as evidence that they are now sufficiently equipped with technical knowledge relating to the LCD modules to mount a noninfringement defense. However, this extra time only demonstrates that without a stay, Nikon, Pentax, and KWC (as well as other customer defendants) will be forced to turn to their LCD suppliers for technical guidance at nearly every step of this litigation. The result will be added costs to Nikon, Pentax, and KWC and to the other customer defendants to research technical issues; added costs to the LCD suppliers to educate and inform the customer defendants concerning the technology and the structure of the LCD modules; and added costs to the Court in the form of time delays, significantly more pleading submissions, inevitable discovery disputes, and the like.

Honeywell also argues that compared to the LCD suppliers, the customer defendants have a better understanding of the accused end products. However, the fact that the LCD suppliers may not understand or have information on the end products is completely irrelevant. Infringement of any of the claims of the '371 patent is determined solely by the LCD structures and does not depend in any way on the end product devices into which the LCD components are incorporated. None of the claim elements require a particular use of the LCD or a relationship between the LCD and an end product. The products in which such LCD structures may be incorporated are indisputably irrelevant to the infringement analysis.

Additionally, for the OEM situations, Honeywell's argument is factually wrong. For example, the bulk of the Nikon cameras that have LCD modules as components are

manufactured by another defendant in this case (Sanyo) and contain Sanyo LCD modules. In those instances, Sanyo knows the end product cameras it makes for Nikon as well as it knows the LCD modules incorporated into those cameras.

Honeywell further contends that consolidated discovery will enable experts for both sides to understand the LCD's role in the accused end products. Again, the LCD's role in the end products has no relevance to whether the LCD infringes any claim of the '371 patent. Honeywell advances no contention as to how the infringement of any asserted claim depends upon the *use* of an LCD in an end product, as opposed to the structure of the LCD itself. Therefore, whether or not the experts understand the LCD's "role" in an accused end product is irrelevant to any determination of infringement or invalidity.

Lastly, Honeywell maintains that validity issues related to the '371 patent claims may be addressed by any qualified attorney. This is only partially true. The LCD suppliers designed, made, and sold the LCD panels that are allegedly covered by the patent-in-suit. As the companies directly engaged in designing, manufacturing, and supplying the LCD panels, the LCD suppliers are the most familiar with the LCD industry and the progress of LCD technology over the years. Accordingly, the LCD suppliers – not the end product manufacturers – will be the most knowledgeable of the prior art and best positioned to challenge the validity of the '371 patent. Moreover, it is highly inefficient to burden the LCD suppliers and the customer defendants alike with the significant legal costs of conducting the validity analysis. Therefore, the LCD suppliers are the proper parties to investigate and determine the validity of any asserted claim of a patent directed to LCDs.

VI.    **Honeywell's Own Licensing Activities Confirm Who The Real Parties-In-Interest Are – The LCD Suppliers.**

Despite Honeywell's insistence in its Consolidated Brief that it is only focused on those companies that incorporate LCD devices into particular types of portable consumer electronics (*e.g.*, Nikon, Pentax, and KWC), Honeywell has already reached settlement agreements with several LCD module manufacturers[9] and is actively engaged in trying to license others. By contrast, Honeywell has *not* yet settled with any of the "end product manufacturers" that it sued in these related lawsuits. Honeywell's settlement activities with the LCD suppliers undermine Honeywell's contention that this litigation is or should be focused on the LCD module end users, such as Nikon, Pentax, and KWC. In fact, by actively pursuing settlements with the LCD manufacturers rather than the LCD users, Honeywell has effectively demonstrated that the real parties-in-interest in this case are the LCD suppliers.

Honeywell's actions against customer defendants, such as Nikon, Pentax, and KWC, suggest that Honeywell is using the litigation as a tool to strengthen its negotiation positions against LCD suppliers, both in and outside of this litigation. Honeywell is surely aware of the fact that maintaining the customer defendants in this litigation will significantly strengthen Honeywell's negotiating position with respect to the customer defendants' LCD suppliers, which have a natural inclination, driven by sound business interests, toward protecting their own customers. The empirical evidence that Honeywell

---

[9]    Reported licensees are Sharp, LG Philips LCD, NEC LCD Technologies, Samsung Electronics, and Chi Mei Optoelectronics, all of which manufacture LCD modules used in end products.

is settling with LCD suppliers, but not the "end product manufacturers" sued in this litigation, demonstrates that this is the strategy being pursued by Honeywell.

In view of Honeywell's settlement activities with the LCD suppliers, Honeywell's opposition to staying its claims against any of the customer defendants, and Honeywell's insistence that any actions brought by or against the LCD suppliers be "stayed" while it proceeds to trial against their customers, demonstrates that Honeywell is engaged in a not-so-thinly-veiled litigation strategy to keep the customers in the suit for purposes of exerting maximum settlement pressures on the LCD suppliers.

## VII.    Honeywell's Attempt To Label The Customer Defendants As Something Other Than Customers Of LCD Modules Ignores This Court's Decision In The *CEA* Case And Other Applicable Precedent

In its Consolidated Brief, Honeywell brazenly contends that the Movants' characterization of "the Named Defendants as mere customers is not supported by the facts or the law." (Consol. Br. at 9.)  In doing so, Honeywell argues that for purposes of the "customer suit exception" to the first-to-file rule, "customers" are limited to parties who purchase an infringing product and then resell it "with little additional material." (*Id.* at 8.)  Notably, however, Honeywell completely ignores *CEA* and many other decisions which hold that the "customer suit exception" applies whenever the component purchased by the defendant is itself accused of infringement, regardless of whether it is incorporated into a much more complex or economically valuable product.

The test as to whether an entity is a "customer" for the purpose of the "customer suit exception" is whether a determination of noninfringement against the manufacturer – for the manufacture and sale of its component – will release its customer of liability. Under these circumstances, the manufacturer's action will be given priority.  *Ricoh Co. v.*

17

*Aeroflex Inc.,* 279 F. Supp. 2d 554, 558 (D. Del. 2003); *Whelen Techs., Inc. v. Mill Specialties, Inc.,* 741 F. Supp. 715, 716 (N.D. Ill. 1990). Stated another way, the manufacturer's suit will have priority where the patentee's "infringement claims against the [customer] defendants are fundamentally claims against the ordinary use" of the product purchased from the manufacturer. *Ricoh,* 279 F. Supp. 2d at 557-58.

Numerous cases have applied the "customer suit exception" under circumstances parallel to the present case, where an allegedly infringing component is incorporated into another "end product." For example, in *CEA,* this Court stayed an infringement action against OEM customers that had incorporated LCDs into "end products" such as computer monitors, where the LCD modules themselves allegedly infringed the patents-in-suit. *CEA,* 2004 WL 1554382, at *1. *See also T.J. Smith & Nephew Ltd. v. Ferris Corp.,* C.A. No. 86C 5461, 1987 WL 7496 (N.D. Ill. Mar. 2, 1987) (where certain adhesive materials alleged infringed, a customer who purchased those materials and converted them into adhesive dressings was stayed in favor of the manufacturer of the adhesive materials) (attached as Ex. I to the Opening Brief); *Ricoh,* 279 F. Supp. 2d at 556-58 (where a computer tool allegedly infringed, "customers" who used the tool to design integrated circuits were stayed in favor of the manufacturer of the tool).

While Honeywell wholly ignores the holdings of cases such as *CAE, T.J. Smith,* and *Ricoh,* the authority cited by Honeywell is readily distinguishable. In those cases, the components at issue did not infringe by themselves, but only infringed if they were used in a particular manner. *See Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.,* 133 F. Supp. 2d 354, 357 (D. Del. 2001) (manufacturer's equipment had many applications, only some of which allegedly infringed the process claims of the patent); *Kahn v.*

*General Motors Corp.,* 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) ("customer suit

exception" inapplicable to Motorola, whose integrated circuits were *not* accused of

infringement, only the AM stereo receivers which used those components).[10] This is not

the case here, where the LCDs supplied to Nikon, Pentax and KWC are alleged to

infringe the '371 patent, irrespective of how they are used or what products they are

incorporated into. Under these facts, the line of authority represented by *CEA, T.J. Smith*

and *Ricoh* governs, the rationale of the "customer suit exception" applies, and the

manufacturers' actions should be given priority.

## VIII.  Now Is The Time To Simplify The Litigation – Before Discovery Begins.

At this time, no trial date is set and no discovery has occurred. The first

scheduling conference has not even taken place and is set for May 16, 2005. If this

litigation is to be structured in a logical and efficient way, now is the time to accomplish

that goal.

## IX.  Conclusion

For the foregoing reasons, the Customer Defendants Nikon, Pentax, and KWC

respectfully submit that the Court should stay proceedings against them and similarly

situated customer defendants, pending final resolution of Honeywell's claims against the

LCD suppliers.

---

[10]    Similarly, in *Cordell Eng'g, Inc. v. Picker Int'l, Inc.,* 540 F. Supp. 1316, 1319-20
(D. Mass. 1982), the court noted that the manufacturer's component was only "one part
of a patented system" made by the "customer," the manufacturer only sold its products to
one other customer, and both entities were equally capable of litigating infringement.

OF COUNSEL:

Barry W. Graham
John F. Hornick
Darren M. Jiron
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899-0951
    Phone: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants*
*Nikon Corporation and Nikon Inc.*

OF COUNSEL:

Stuart Lubitz
David H. Ben-Meir
Robert J. Benson
Hogan & Hartson, LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067

HUNTLEY & ASSOCIATES, LLC

By: _____
    Donald W. Huntley
    1105 North Market Street
    P.O. Box 948
    Wilmington, DE 19899-0948
    Phone: (302) 426-0610

*Attorneys for Defendants*
*Kyocera Wireless Corp.*

OF COUNSEL:

Michael J. Fink
P. Branko Pejic
Neil F. Greenblum
Greenblum and Bernstein, PLC
1950 Roland Clarke Place
Reston, VA 20191

YOUNG, CONAWAY, STARGATT, &
TAYLOR

By: _____
    Adam Wyatt Poff
    The Brandywine Building
    1000 West Street, 17th Floor
    P.O. Box 391
    Wilmington, DE 19899-0391
    Phone: (302) 571-6600

*Attorneys for Defendants*
*Pentax Corporation and*
*Pentax of America, Inc.*

DATED: May 2, 2005

680440

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 2, 2005, the attached document

was served via hand-delivery and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification of such filing(s) to the following and the

document is available for viewing and downloading from CM/ECF:

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899

John W. Shaw
Glenn Christopher Mandalas
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Adam W. Poff
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Thomas C. Grimm
Kristen Healey, Esquire
Sean T. O'Kelly, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

William J. Wade
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

Frederick L. Cottrell, III
Chad Michael Shandler
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market St., Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

Francis DiGiovanni
James M. Olsen
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Amy Evans
Cross & Simon, LLC
913 N. Market Street, Suite 1001
P.O. Box 1380
Wilmington, DE  19899-1380

Andre G. Bouchard
Karen L. Pascale
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

Donald W. Huntley
Huntley & Associates
1105 North Market Street, Suite 800
P. O. Box 948
Wilmington, DE  19899-0948

Arthur G. Connolly, III
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

By: _____
        Richard L. Horwitz
        David E. Moore
        Potter Anderson & Corroon LLP
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE  19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

676821