# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 575 7273
302 425 4661 Fax
tgrimm@mnat.com

June 1, 2005

**BY E-FILING**

The Honorable Kent A. Jordan
U.S. District Court, District of Delaware
844 N. King Street
Lockbox 10
Wilmington, DE 19801

> Re:     *Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.*
>           C.A. 04-1337-KAJ
>         *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
>           C.A. No. 04-1338-KAJ
>         *Optrex America, Inc. v. Honeywell International Inc., et al.*
>           C.A. No. 04-1536-KAJ

Dear Judge Jordan:

Regrettably, Honeywell needs to apprise the Court of certain difficulties it is facing in its efforts to work with the defendants to develop a joint proposal for restructuring this case. Honeywell is bringing these issues to the Court's attention now in the interest of minimizing delay in implementing the "contours" of the stay along the lines indicated by the Court at the May 16 Hearing.

Since that Hearing, the parties have exchanged correspondence regarding what they believe to be the reasonable contours of that stay and how it is to be implemented. A copy of Honeywell's letter to the defendants sent on May 18 is attached as Exhibit A, and a copy of the defendants' response on May 25 is attached as Exhibit B. Suffice it to say that the letters evidence a vastly different interpretation of the Court's statements made at the May 16 Hearing. Honeywell respectfully submits that, without further guidance from the Court, these disparate points of view will prevent meaningful progress on this issue and will only serve to delay the transition of this case from one against the end product manufacturers to one against the LCD suppliers.

The Honorable Kent A. Jordan
June 1, 2005
Page 2

        As the Court is aware, the motions to stay were granted, "to the extent stated in open Court." Memorandum Order of May 18, 2005, p. 9 (D.I. 202).[1] Consequently, in crafting its May 18th letter to defendants, Honeywell was guided by statements made by the Court at the Hearing. Specifically, the Court stated that the exact contours of the stay were open for discussion and that it was expecting the parties to work together toward a proposal that made sense. Transcript of May 16, 2005 Hearing, pp. 45, 53 (D.I. 204). Moreover, the Court indicated that the goal was to "substantially reduce" – if not eliminate – the universe of litigation that has to go forward against the end product manufacturers. *Id.* at 45. Honeywell respectfully submits that, rather than work toward this overarching goal, the defendants are simply trying to minimize their involvement in this transition, leaving many issues unresolved for the future.

        In short, issues concerning three subjects have crystallized: (1) **Procedures for transitioning the case against the LCD suppliers:** the defendant end product manufacturers are refusing to implead their suppliers into the case, even when those suppliers have indemnification obligations to them, and are refusing to agree to be bound by the results of any liability trial against their suppliers; (2) **Effect of stay on the "hybrid" defendants:** the defendants who manufacture both LCD modules and end products incorporating LCDs are asserting that the stay granted to end product manufacturers fully applies to them; and (3) **Initial discovery from the end product manufacturers:** Honeywell has previously provided the defendants with the full list of infringing products that it discovered through its pre-filing investigation; the defendants, however, refuse to acknowledge this disclosure and further refuse to identify a complete list of their products that are similarly designed or use similar components.

        1.    Procedures for Transitioning the Case.

        The defendants' May 25 letter (Exh. B) demonstrates an unwillingness to assist in bringing their LCD suppliers into this litigation. To date, only two LCD suppliers – Optrex and Seiko Epson – have voluntarily intervened in this matter, which represents only a small fraction of the infringement. Although some additional LCD suppliers have been impleaded, the status of these third-party complaints is unclear. Moreover, as the Court recognized in its May 18 Order, many other suppliers have neither been sued nor even identified. Order, p. 7, fn. 4 (D.I. 202). Indeed, the Court indicated that one subject of the parties' discussions should be how to bring in those LCD module suppliers in order to "reduce the universe of litigation that has to go forward against" the end product manufacturers. Transcript, pp. 45, 51 (D.I. 204).

        As Honeywell highlighted in its May 18 letter (Exh. A), the defendants are in the best position to bring their suppliers into this case given the indemnification agreements between the defendants and their suppliers. Just as the defendants were able to persuade Optrex and Seiko Epson to join this action, the defendants continue to be in the best position to do likewise with respect to the other LCD suppliers. Despite this, the defendants have refused to provide Honeywell with information regarding those indemnification agreements and, at the same time,

_____

[1] All citations to Docket Items refer to the docket entries in Civil Action No. 04-1338 (KAJ).

The Honorable Kent A. Jordan
June 1, 2005
Page 3

refuse to assist in bringing the suppliers into this suit, positing that "these issues are not properly addressed at this time in view of the Court's Order." (Exh. B, p. 2). Honeywell believes that such issues fall squarely within the Court's charge to the parties, especially if this case is to be trial ready within 18 to 24 months. See Transcript at p. 55 (D.I. 204). Tremendous delay will ensue if Honeywell has to first wait for the defendants to name those suppliers and then wait further still to effect service upon these foreign entities and resolve jurisdictional issues. Honeywell submits that if the defendants wish to enjoy the benefit of the stay under the theory that Honeywell should pursue its liability case against the LCD suppliers, the defendants should participate in the transition and assist where possible with bringing those suppliers into the case. Accordingly, Honeywell believes that the defendants should engage in discussions on this subject, and that implementation of the stay be conditioned upon the defendants' good faith efforts to facilitate the transition of this case to their suppliers.

Moreover, based on the defendants' representations in their motion practice that the LCD suppliers were in the best position to challenge infringement, validity and enforceability of the '371 patent, Honeywell requested confirmation from the defendants that they would be bound by any liability findings against the LCD suppliers. Otherwise, when Honeywell pursues its damages case against these parties, it is at risk of having to re-litigate the same liability issues.

The defendants, however, have refused to be bound by any liability findings against the LCD suppliers. (Exh. B, p. 2). Defendants take this position despite the fact that they invoked those suppliers' alleged superior knowledge as the rationale for the stay. Now that some type of stay has been granted, the defendants have jettisoned this rationale and assert their right to force Honeywell to re-litigate liability issues against each of them individually. Proceeding first against the LCD suppliers would be meaningless if the defendants are not bound by the patent infringement, validity and enforceability findings in that phase.

2.    Hybrid Defendants.

In the recent motion practice, many of the defendants repeatedly pointed to several "hybrid" defendants as evidence that all of their LCD suppliers were currently before the Court. These "hybrid" defendants actually manufacture LCDs, in addition to end products. Consequently, these "hybrid" defendants did not seek a stay with regard to those LCD manufacturing activities, and the Court's Order applies only to the "non-manufacturer" defendants. Order, p. 9 (D.I. 202).

Based on this history, Honeywell requested that the defendants confirm that those "hybrid" defendants would remain a part of the first phase of the litigation, at least to the extent that they manufacture LCD modules. The defendants, however, are now taking a contradictory position, arguing that the case against those "hybrid" defendants is stayed. (Exh. B, p. 2). Honeywell cannot agree to effectively release parties who manufacture LCDs and who are properly before this Court, and thus seeks clarification from the Court that the stay will not apply to "hybrid" defendants to the extent of their LCD manufacturing activities.

The Honorable Kent A. Jordan
June 1, 2005
Page 4

     3.    <u>Initial Discovery from the End Product Manufacturers</u>.

     Honeywell's understanding from the May 16 Scheduling Conference was that it was to identify the infringing products about which it is currently aware. Transcript, p. 52 (D.I. 204). Honeywell understood that this was not intended as a final list of accused devices, but rather as a means of "telling people what [Honeywell] thinks the problem is as soon as you can." *Id.* In fact, as explained below, Honeywell had already done so at the time of the Hearing.

     Prior to filing this action, Honeywell purchased a number of portable consumer electronic products manufactured by the defendants. Honeywell then conducted a teardown analysis of those products and confirmed that they infringed the patent-in-suit. Based on the percentage of products that Honeywell discovered infringe its patent, Honeywell is certain that there are other products made by the defendants that infringe, but for which Honeywell does not have a sample to analyze. As a practical matter, it is impossible for Honeywell to purchase for testing all LCD-containing portable consumer electronic products made and sold by each of the defendants over the past six years, particularly given the rate at which new models of such products are introduced to the market. On the other hand, in the seven months since Honeywell initiated this action, it seems highly likely that the defendants have done some type of review of their products and identified those that may be implicated by the patent-in-suit. For example, the Declaration of the representative of defendant Olympus Corporation, Yoshimitsu Enomoto, admitted this.

     In the wake of filing this action, a number of the defendants asked Honeywell to specify what products formed the bases for Honeywell's infringement assertions. Honeywell responded to each and every request from the individual defendants. The letters to the individual defendants, which were sent in response to individual requests, are attached collectively as Exhibit C. Because this process has been ongoing, Honeywell was perplexed by defense counsel's representations at the Hearing that Honeywell "should step up now" and inform them of what products were accused of infringement. Transcript, p. 49 (D.I. 204). Having reviewed the transcript of the Hearing, Honeywell respectfully submits that the record before this Court is inaccurate. Honeywell *has* identified these bases for its infringement and has recently re-confirmed these bases in a global letter to all defendants, a copy of which is attached as Exhibit D.

     Given the widespread instances of infringement already identified across product lines and LCD module suppliers, Honeywell reasonably believes that defendants are well apprised of the bases for Honeywell's infringement claim and further believes that additional products using similar LCD modules exist. At the Hearing, the Court recognized that Honeywell had made a "persuasive case for needing to find out from these people who is supplying what to whom and for what products." Transcript, pp. 45-46 (D.I. 204). The Court proceeded to state that it would "let the plaintiffs go after that in discovery....You find out who is doing the manufacturing and supplying for who and for what products." *Id.* at 46.

The Honorable Kent A. Jordan
June 1, 2005
Page 5

Despite this history and these statements, the defendants are unwilling to provide any information to Honeywell except for those specific products previously identified by Honeywell. The defendants believe that Honeywell must limit the scope of the case to only those products that Honeywell found to be infringing in its pre-filing investigation, without the aid of any discovery whatsoever. Honeywell has always maintained, however, that the infringement it discovered prior to filing this suit is not exhaustive and that it is entitled to seek discovery to determine the full extent of infringement. (See Exhs. C and D generally). It would be highly prejudicial to Honeywell to limit its infringement case to only the products that Honeywell identified in its pre-suit investigation, especially now that the case is being reconfigured to focus upon a component of such products.

The defendants, not Honeywell, are in the best position to identify which of their products use the same or similar LCD modules to those that Honeywell has identified as infringing. If Honeywell is not allowed to obtain this discovery from the defendants now, then there will be no practical way to match up which LCD modules are incorporated into which end products, -- a key aspect of pretrial activity that was discussed at the Hearing. Transcript at pp. 38-39 (D.I. 204). In that event, only a small portion of the "universe" of overall infringement will be addressed in the initial phase, leaving a substantial amount of liability issues to be tried against the end product manufacturers. Honeywell respectfully submits that this is not what the Court intended.

* * *

Regrettably, based on the defendants' positions, it is unlikely that the parties will be able to work toward a joint proposal for the stay, absent further guidance from the Court along the lines addressed above. Honeywell believes that with such guidance, the parties can and should be able to develop a joint position regarding the contours of the stay.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm

TCG/
Enclosures
c:    Clerk of the Court (w/encls., via hand delivery & e-filing)
      All Counsel of Record (w/encls., via e-filing)
      Steven J. Balick, Esq. (w/encls., via e-mail)
      Martin R. Lueck, Esq. (w/encls., via e-mail)
      Matthew L. Woods, Esq. (w/encls., via e-mail)