IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE COMPUTER, INC.; ARGUS a/k/a HARTFORD COMPUTER GROUP, INC.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA, INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.; SONY CORPORATION, SONY CORPORATION OF AMERICA; SONY ERICSSON MOBILE COMMUNICATIONS AB; SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.; TOSHIBA CORPORATION; and TOSHIBA AMERICA, INC. <br><br> Defendants. | C.A. No. 04-1338 (KAJ) |

**SEIKO EPSON CORPORATION'S REPLY
TO PLAINTIFF HONEYWELL'S COUNTERCLAIMS**

{10005438.DOC}

Intervenor Seiko Epson Corporation ("Seiko Epson") hereby replies to the counterclaims alleged in paragraphs 21-34 of Plaintiffs' Reply to the Counterclaims of Intervening Defendant Seiko Epson Corporation and Counterclaims Against Seiko Epson Corporation (the "Counterclaims"), filed on July 15, 2005, as follows:

## GENERAL DENIAL

Unless specifically admitted below, Seiko Epson denies each and every allegation contained in the Counterclaims.

## RESPONSE TO SPECIFIC ALLEGATIONS

21. Seiko Epson admits that Plaintiffs have filed counterclaims that allege willful infringement of a United States patent. Except as specifically admitted, Seiko Epson denies the allegations of paragraph 21 of the Counterclaims.

22. Seiko Epson is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Counterclaims, and on that basis denies these allegations.

23. Seiko Epson is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Counterclaims, and on that basis denies these allegations.

24. Seiko Epson admits the allegations of paragraph 24 of the Counterclaims.

25. Seiko Epson admits the allegations of paragraph 25 of the Counterclaims.

26. Seiko Epson denies the allegations of paragraph 26 of the Counterclaims.

27. Seiko Epson admits that venue is proper in this judicial district. Except as specifically admitted, Seiko Epson denies the allegations of paragraph 27 of the Counterclaims.

28. Seiko Epson is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Counterclaims, and on that basis denies these allegations.

29. Seiko Epson admits that a document is attached to the Counterclaims as Exhibit 1 which purports to be a copy of United States Patent No. 5,280,371 (the "'371 patent"). Except as specifically admitted, Seiko Epson is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Counterclaims, and on that basis denies these allegations.

30. Seiko Epson is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Counterclaims, and on that basis denies these allegations.

31. Seiko Epson admits that LCD modules manufactured, sold or offered for sale by Seiko Epson have been incorporated into "products which include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems." Except as specifically admitted, Seiko Epson denies the allegations of paragraph 31 of the Counterclaims.

32. Seiko Epson admits that it has manufactured, sold or offered for sale products that include an LCD display, which products "include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems." Except as specifically admitted, Seiko Epson denies the allegations of paragraph 32 of the Counterclaims.

33. Seiko Epson denies the allegations of paragraph 33 of the Counterclaims.

34. Seiko Epson denies the allegations of paragraph 34 of the Counterclaims.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

35. Seiko Epson denies that Plaintiffs are entitled to any relief whatsoever against Seiko Epson in this action, either as prayed for in their Counterclaims or otherwise.

## AFFIRMATIVE DEFENSES

Further answering Plaintiffs' Counterclaims, Seiko Epson alleges the following affirmative defenses:

### First Affirmative Defense

36. Seiko Epson does not infringe and has not infringed any claim of the '371 patent, either literally or under the doctrine of equivalents, by direct, contributory or inducing infringement.

### Second Affirmative Defense

37. The claims of the '371 patent are invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.

### Third Affirmative Defense

38. At least a portion of Plaintiffs' claim for damages is barred by the doctrine of laches.

### Fourth Affirmative Defense

39. Plaintiffs' claims are barred by the doctrine of equitable estoppel.

### Fifth Affirmative Defense

40. Upon information and belief, one or more of the parties who purchase, use or sell products accused to infringe the '371 patent are licensed and/or claims have been released pursuant to agreements with Plaintiffs.

### Sixth Affirmative Defense

41. Plaintiffs' claims are barred by the equitable doctrine of unclean hands.

### Seventh Affirmative Defense

42. Plaintiffs' infringement claims are barred by the equitable doctrine of prosecution history laches.

### Eighth Affirmative Defense

43. At least a portion of Plaintiffs' claim for damages is barred by the time limitation on damages set forth in 35 U.S.C. §286.

### Ninth Affirmative Defense

44. At least a portion of Plaintiffs' claim for damages is barred by the failure of Plaintiffs or their licensees to comply with the notice and marking requirements of 35 U.S.C. §287.

### Tenth Affirmative Defense

45. The '371 patent is unenforceable as a result of inequitable conduct during the prosecution of the application that led to the issuance of the '371 patent. Specifically, on information and belief, the inventors of the '371 patent, the assignee of the '371 patent, and/or other persons associated with the filing and prosecution of the application that led to the issuance of the '371 patent, knowingly failed to appropriately disclose material information to the United States Patent and Trademark Office ("USPTO") with the intent to deceive the USPTO. Such material information includes, but is not limited to, an article

by H. Noda et al. entitled "High Definition Liquid Crystal Projection TV," Japan Display 1989, pp. 256-259 (hereinafter the "Noda article").

46. Applicants for patents have a general duty of candor and good faith in their dealings with the USPTO. Pursuant to 37 C.F.R. § 1.56 ("Rule 56"), the inventors had an affirmative obligation to disclose to the USPTO all information that they knew was material to the examination of their pending application. The inventors' duty extended to their representatives, such as their attorneys, and all others who were substantively involved in the preparation or prosecution of the '371 patent.

47. Seiko Epson is informed and believes that the inventors knew of their duty to cite material prior art references to the USPTO during the prosecution of the '371 patent. Seiko Epson is further informed and believes that the inventors and their agents knowingly and willfully concealed and misrepresented material information during the prosecution of the '371 patent and that because of such inequitable conduct, the '371 patent is unenforceable against Seiko Epson.

48. The Noda article was published in 1989, and is prior art to the '371 patent under 35 U.S.C. § 102. The Noda article discloses removing a moiré pattern by using a lens array pitch which is a non-integral multiple of a display pitch (see page 257, column 2).

49. During the prosecution of the application that led to the issuance of the '371 patent, individuals who were subject to the duty of candor under Rule 56 were aware of the Noda article. Two of the named inventors of the '371 patent, R.I. McCartney and D. Syroid, authored an article entitled "Directional Diffuser Lens Array for Backlit LCDs," Japan Display 1992, pp. 259-262 (hereinafter the "McCartney article"), in which the other named inventor of the '317 patent, Karen Jachimowicz, is acknowledged as a contributor. The McCartney article discloses technology similar to that disclosed in the '371 patent. The McCartney article cites the Noda article at page 261, column 2 and in footnote 4, for its teaching of removing a moiré pattern by using a lens array pitch that is a non-integral multiple of a display pitch.

50. The Noda article is material under Rule 56 at least because it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of one or more claims of the

'371 patent, and/or a reasonable examiner would have considered this information important in deciding whether to allow one or more claims of the application that led to the issuance of the '371 patent.

51. In comments made during the prosecution of the application that led to the issuance of the '371 patent, the applicants argued, in response to prior art rejections, that the applied references do not discuss eliminating moiré effects with appropriate selection of the relative pitch of lens arrays (page 3 of the Amendment filed on February 2, 1993). Further, the examiner indicated that dependent claims, which recited relative pitches of the lens arrays, contained allowable subject matter (page 4 of the Official Action mailed on May 6, 1993), and the applicants amended such claims to place them into independent form to obtain their allowance (Amendment filed on July 2, 1993). Accordingly, on information and belief, individuals subject to the duty of candor under Rule 56, including R.I. McCartney and D. Syroid, knew, or should have known, that the Noda article, which teaches removing a moiré pattern by using a lens array pitch which is a non-integral multiple of a display pitch, was highly material to the patentability of the subject matter claimed in the '371 patent and should have been disclosed to the USPTO Examiner for his consideration in determining whether or not to allow and issue the claims in the '371 patent.

52. The Noda article was never disclosed to the USPTO during the prosecution of the application that matured into the '371 patent, even though individuals subject to the duties of candor and disclosure were aware of the article. On information and belief, these individuals withheld the Noda article from the USPTO with an intent to mislead and deceive the USPTO.

53. As a result of the foregoing inequitable conduct, the '371 patent is unenforceable.

Dated: August 4, 2005

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

Robert J. Katzenstein (ID No. 378)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
(Courier 19801)
(302) 652-8400
rjk@skfdelaware.com

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
Hogan & Hartson LLP
2049 Century Park East, Ste. 700
Los Angeles, CA 90067
(310) 789-5167

*Attorneys for Intervenor Seiko Epson Corp.*