# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Leslie A. Polizoti
302 351 9415
302 425 3084 Fax
lpolizoti@mnat.com

January 20, 2006

The Honorable Kent A. Jordan
United States District Court
  for the District of Delaware
844 King Street
Wilmington, DE 19801

Redacted

***REDACTED – PUBLIC VERSION***

     Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.,*
            C.A. No. 04-1338-KAJ

Dear Judge Jordan:

       We write on behalf of Honeywell International Inc. and Honeywell Intellectual Properties Inc. (collectively, "Honeywell") in response to Matsushita Electric Industrial Co., Ltd. and Panasonic Corporation of North America's (collectively, "Matsushita") letter to Your Honor dated January 9, 2006 (D.I. 301). Despite Matsushita's effort to characterize its entities as "customers for purposes of this litigation," Honeywell had and continues to have a good faith basis to maintain a suit against Matsushita as a manufacturer of LCD modules. In prior correspondence and in its January 9 letter, Matsushita fails to address the rationale underlying that good faith basis and has steadfastly refused to provide information that could shed further light upon this good faith basis, notwithstanding this Court's October 7, 2005 Order.

## I.    Honeywell's Investigation Demonstrates Matsushita's Manufacturer Status.

       Prior to filing this suit, Honeywell performed an extensive investigation into the wide-spread use of its '371 patent in consumer electronic devices. Honeywell identified several Matsushita end products which evidence Matsushita's use of the '371 technology. One of those products, the     Redacted     contained an LCD module   Redacted   explicitly marked with the "Panasonic" brand name, indicating that it was made by Matsushita.[1]

---

[1]   "Panasonic" is one of Matsushita's brand names. The other Matsushita products that were the subject of Honeywell's presuit investigation appear to use modules manufactured by other parties.

The Honorable Kent A. Jordan
January 20, 2006
Page 2

       Honeywell identified both the    Redacted    and the LCD    Redacted      Redacted in correspondence with Matsushita's counsel. (*See* Ex. A., Letter from Oberts to Rizzi dated December 3, 2004; Ex. B, Letter from Woods to All Counsel of Record dated May 27, 2005). When confronted with this evidence, Matsushita claimed that, despite the branding on the module, it had never manufactured this specific module; rather, it was manufactured by a joint venture, Toshiba Matsushita Display Technology Co. Ltd. ("TMD"),[2] which Matsushita had helped form in 2002. (Ex. C, Letter from Rizzi to Woods dated June 13, 2005 at 1). Nevertheless, Matsushita could not explain how the Panasonic marking came to be on the module in question, but only noted that        Redacted
Redacted    (Ex. D, Letter from Rizzi to Woods dated June 16, 2005 at 2). Certainly, Honeywell should be entitled to verify these assertions. Even taking all this to be true, however, salient questions regarding Matsushita's past and current activities remain unanswered.

A.      **Matsushita's past activities.**

       Since TMD was formed by merging certain portions of Matsushita's pre-existing LCD manufacturing operations with those of Toshiba, it seems likely that, prior to that formation, Matsushita manufactured a comparable module or modules under a different model number. Honeywell's investigation of historical specification sheets published by Matsushita suggests this to be the case. The module numbering scheme used by Matsushita prior to the formation of TMD, and the corresponding specifications, suggest that TMD merely continued to manufacture the same LCD modules formerly manufactured by Matsushita. As known by those in the consumer electronics industry and recognized by courts, model numbers often change, despite continuity in the manufactured technology. *See, e.g., I.P. Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427, 428 (N.D. Ill. 2003) (Ex. E).

       In fact, a close comparison of Matsushita's Exhibit 1 with the 1999 Matsushita Brochure (attached hereto as Exhibit F) reveals parallel technological specifications. First, the numbering schemes suggest a familial relationship. Exhibit 1 shows     Redacted and the 1999 Matsushita Brochure showing    Redacted   Second, the relevant specifications outline the following identical features:    Redacted
Redacted

       In the context of technology

---

2     Last year, TMD obtained a license to the '371 patent from Honeywell. Honeywell does not claim that it is entitled to recovery related to any LCD modules manufactured by TMD. This agreement excludes Matsushita, however, and has no impact on the manufacture of earlier generations of an infringing LCD module manufactured before the creation of TMD in 2002. Equally, this agreement is wholly irrelevant to the manufacture of any later generations of infringing LCD modules manufactured by Matsushita.

The Honorable Kent A. Jordan
January 20, 2006
Page 3

developed in large part with a goal of low power consumption and increased brightness, this consistency is highly suggestive and merits further inquiry.

**B.    Matsushita's current activities.**

Despite the creation of TMD, Matsushita continues to manufacture LCD modules. (*See, e.g.,* D.I. 301 at 4                       Redacted

Redacted          (emphasis added)).  Unlike other "customer" defendants in the present litigation, including Nikon, Olympus, Concord, and Nokia -- who have provided sworn representations stating that they do not manufacture LCD modules/displays -- Matsushita has been unwilling to provide an unequivocal representation statement that it no longer manufacturers LCD modules.  (Ex. G, Letter from Woods to Rizzi dated June 14, 2005 at 2). Indeed, a careful review of Matsushita's letter reveals that it never denies that it is currently manufacturing such modules.

As a sophisticated international company, Matsushita is well-equipped to answer whether any of these modules use the Accused Structure.  In this regard, Matsushita is unlike the other defendants who could legitimately claim not to know the details of the modules they are using.  The Court's orders have been entered to protect "pure" customers from having to answer for products about which they do not manufacture; Matsushita simply is not in the same position.

**II.    Matsushita has been Unwilling to Engage in an Exchange of Information Regarding its Manufacturing Activities.**

In an effort to secure answers to these outstanding questions sufficient to allow the stay to apply to Matsushita, Honeywell has attempted to engage Matsushita in an *exchange* of information regarding its past and present manufacture of earlier or later versions of the                    Redacted          and substantially similar modules.  Rather than engage in such an exchange, however, Matsushita has insisted on taking the narrowest view that the only product at issue in the case is the specific module identified, regardless of whether Matsushita manufactures, or has manufactured, similar modules.

Over the past several months, the parties have had additional correspondence and communications on these topics.  In these communications, Honeywell continued to request information regarding Matsushita's involvement in the manufacture of LCD modules and the circumstances surrounding the             Redacted          but Matsushita repeatedly demurred.  Honeywell informed Matsushita that its investigation indicates that the        Redacted line or family of modules was being manufactured and offered for sale prior to the formation of TMD in 2002.  Matsushita sought the substance of this investigation, but was unwilling in return to agree to provide affirmative information regarding its own activities.  Honeywell was, and remains, willing to share such information if it is a part of an information exchange whereby Matsushita provides that to which Honeywell has been entitled all along:  information regarding earlier or later generations of the             Redacted          or sufficient representations to confirm

The Honorable Kent A. Jordan
January 20, 2006
Page 4

that no such earlier or later generations exist and/or that Matsushita no longer manufacturers LCD modules with the Accused Structure. (Ex. H, Letter from Oberts to Rizzi dated December 13, 2005). In rejecting this proposal, and instead filing its January 9 letter with the Court, Matsushita has precipitated this dispute, and now seeks the Court's decision upon an incomplete record. What Matsushita characterizes as a "fishing expedition" is in fact Honeywell's effort to verify Matsushita's claims that it should be treated as a customer defendant.

* * *

The fundamental question which Matsushita continues to avoid is whether any of its past or current operations involve modules which, like        Redacted        employ the Accused Structure, as defined at the September 9, 2005 hearing. For example, the marking of the        Redacted        module with the Panasonic brand name, in the context of Matsushita's past and present LCD module manufacturing activity, raises significant questions regarding: (1) the existence of earlier versions of this module manufactured by Matsushita prior to the 2002 creation of TMD; and (2) the existence of other modules with substantially the same structure either historically or currently manufactured by Matsushita.

At the very least, based on the identification of both the        Redacted        and LCD module number        Redacted        , if Matsushita seeks to claim "customer" status, it is obligated to provide, pursuant to paragraph 1 of the October 7 Order: (1) an identification of other versions (*i.e.*, earlier or later generations) of the specifically identified LCD module and (2) other versions of products that include other LCD modules with substantially the same structure (D.I. 237 at ¶¶ 1(b) & (c)). Matsushita has failed to do even this with regard to this module.

Ultimately, Honeywell seeks only to make an informed decision regarding modules using the Accused Structure. As an undisputed manufacturer, Matsushita should be able to provide comprehensive information regarding its module making activities and Honeywell should be allowed discovery to confirm these activities. In the absence of such information and discovery, it is prejudicial to Honeywell to allow the stay to take effect with regard to Matsushita. For all these reasons, Honeywell requests that the Court deny Matsushita's request to be treated as a customer.

Respectfully,



Leslie A. Polizoti (#4299)

cc:    Dr. Peter T. Dalleo, Clerk of the Court (by hand)
       All Local Counsel of Record (Original filing - by hand) (Redacted filing - by e-filing)

502891

CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, Christopher E. Chalsen, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Amy Elizabeth Evans, York M. Faulkner, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Richard L. Horwitz, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Stephen S. Korniczky, Hamilton Loeb, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Gerard M. O'Rourke, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, Alana A. Prills, Steven J. Rizzi, Avelyn M. Ross, Philip A. Rovner, Carl E. Schlier, John M. Seaman, Chad Michael Shandler, John W. Shaw, William J. Wade, Roderick B. Williams and Edward R. Yoches.

Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

502891