LEXSEE

**M&M TECHNOLOGIES, INC., Plaintiff, v. GURTLER CHEMICALS, INC., Defendant/Third-Party Plaintiff, v. BURLINGTON CHEMICAL CO., INC., Third-Party Defendant.**

**Civil Action No. 03-994 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 1726*

**February 8, 2005, Decided**

**DISPOSITION:** Motion to dismiss for lack of personal jurisdiction was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff company filed a patent infringement action against defendant company. Before the court was third-party defendant company's motion to dismiss for lack of personal jurisdiction.

**OVERVIEW:** Defendant argued that third-party defendant's actions were directed at Delaware because it engaged defendant as a nationwide distributor of a product it sold to defendant. There was no evidence in the record that defendant was acting as third-party defendant's distributor of the product. Indeed, defendant purchased the product from third-party defendant, diluted it with water, and sold it under defendant's trademark. Thus, Del. Code Ann. tit. 10, § 3104(c)(1), was not a basis for the exercise of jurisdiction. Defendant also did not make a prima facie showing of personal jurisdiction under § 3104(c)(4). Third-party defendant's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $ 1,000 each year, representing 0.0007 percent of annual sales revenues. In 2004, it had sales to three customers in Delaware that totaled approximately $ 20,070. While sales of products to Delaware customers grew in 2004, Delaware revenue only comprised approximately 0.14 percent of its total annual sales. Because the Delaware revenue was less than one percent of total annual revenue, it was not substantial enough to warrant an exercise of general jurisdiction.

**OUTCOME:** The motion to dismiss was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] Fed. R. Civ. P. 12(b)(2) requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Constitutional Law > Procedural Due Process > Scope of Protection*
[HN2] In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. To satisfy the second prong of this analysis, the court must find the existence of minimum contacts between the defendant and the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Specifically, the plaintiff must show that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. Unless the contacts are continuous and systematic, they must be related to the present cause of action.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

2005 U.S. Dist. LEXIS 1726, *

[HN3] In determining the jurisdictional question, the court must accept as true the allegations in the complaint, but the plaintiff bears the burden of alleging facts sufficient to make a prima facie showing of personal jurisdiction over the defendant. To meet this burden, the plaintiff must adduce facts which establish with reasonable particularity that jurisdiction over the defendant exists.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] Under Del. Code Ann. tit. 10, § 3104(c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN5] Delaware courts construe the Del. Code Ann. tit. 10, § 3104, broadly to confer jurisdiction to the maximum extent possible so as to provide residents a means of redress against those not subject to personal service within the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] The Delaware Supreme Court has interpreted Del. Code Ann. tit. 10, § 3104(c)(1), as a specific jurisdiction provision that requires a nexus between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. In order to meet the requirements of § 3104(c)(1), the defendant's actions must be directed at residents of Delaware and the protection of Delaware laws. However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] Under Del. Code Ann. tit. 10, § 3104(c)(4), the court may exercise personal jurisdiction over anyone who causes tortious injury in the state or outside of the state by an act or omission outside the state if the person regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from services, or things used or consumed in the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN8] Delaware courts have interpreted Del. Code Ann. tit. 10, § 3104(c)(4), as a general jurisdiction provision. This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN9] A tortious act under Del. Code Ann. tit. 10, § 3104(c)(4), is an act which involves a breach of duty to another and makes the one committing the act liable in damages.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN10] Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Constitutional Law > Procedural Due Process > Scope of Protection*
[HN11] The Due Process Clause requires that, in order to subject a defendant who is not present within the territory of the forum to personal jurisdiction, the court must first make sure that the party has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of justice and fair play. In order to give non-residents fair warning that a particular activity may subject them to litigation within the forum, these minimum contacts must be purposeful. In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be haled before a court in the forum as a result of its conduct. Finally, even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Constitutional Law > Procedural Due Process > Scope of Protection*
[HN12] The substantial connection between the defendant and the forum state necessary for a finding of minimum

contacts must come about by an action of the defendant purposefully directed toward the forum state. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

COUNSEL: [*1] For M&M TECHNOLOGIES INC, Plaintiff: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For GURTLER CHEMICALS INC., Defendant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For GURTLER CHEMICALS INC., Counter-Claimant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For BURLINGTON CHEMICAL, Defendant: Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE.

For GURTLER CHEMICALS INC., Third-Party Plaintiff: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For GURTLER CHEMICALS INC., Counter-Claimant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & [*2] Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION:

### MEMORANDUM

## I. INTRODUCTION

On October 30, 2003, the plaintiff, M&M Technologies, Inc. ("M&M"), filed this patent infringement action against Gurtler Chemicals, Inc. ("Gurtler"). Presently before the court is a motion to dismiss for lack of personal jurisdiction filed by third-party defendant Burlington Chemical Company, Inc. ("Burlington"). For the following reasons, the court will grant the motion.

## II. BACKGROUND

The patent-in-suit, *U.S. Patent No. 6,159,548* (the "*'548 patent*"), allegedly is owned by M&M. The patented invention is a method for oilproofing and waterproofing previously manufactured fabric with an aerosol spray containing a diluted fluoroacrylate emulsion. The complaint alleges that Gurtler has infringed, induced infringement of, or contributorily infringed the method claims of the *'548 patent*.

On July 12, 2004, Gurtler filed a motion [*3] to file a second amended answer, counterclaim, and third-party complaint. The court granted Gurtler's motion on September 22, 2004. Gurtler named Burlington as a third-party defendant and brought claims against Burlington for negligent misrepresentation and violation of the *Uniform Commercial Code, Section 2-312*, *i.e.* breach of warranty. The third-party complaint alleges in Count I that: (1) Gurtler makes its allegedly infringing product merely by adding water to Burcopel CAT, a product sold to it by Burlington; (2) at the time Burlington began selling Burcopel CAT to Gurtler, Burlington orally represented and warranted that Gurtler's use of the product would not infringe, induce infringement of, or contributorily infringe the *'548 patent*; and (3) Burlington breached its warranty against infringement. Count II alleges that: (1) Burlington's representation that Burcopel CAT was not infringing was a false representation of fact; (2) Burlington made the false representation because of its lack of reasonable care in ascertaining the facts; (3) Burlington made the false representation with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; [*4] and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not registered

with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped collect to Gurtler in South Holland, Illinois. n1 After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

n1 Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois.

[*5]

Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $ 1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $ 4,000.00 to one Delaware customer, $ 70.00 to a second Delaware customer, and $ 16,000.00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

## III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant.[HN1] *"Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, 197 F.R.D. 112, 119 (D. Del. 2000)*. [HN2] In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc., 544 F. Supp. 858, 864-65 (D. Del. 1982)*. [*6] If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause of the Fourteenth Amendment. Id.* (noting, however, "intent of the legislature to exercise jurisdiction

over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs., 948 F. Supp. 338, 342 (D. Del. 1996)* (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154(1945)* (citation omitted). Specifically, Gurtler must show that Burlington "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958))*; *see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*. Unless the [*7] contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)*.

[HN3] In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F. Supp. 53, 55 (D. Del. 1982)*, but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268, 270-71 (D. Del. 2001)*. To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 193 (D. Del. 1996))*.

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, *Del. Code Ann. tit. 10 § 3104*, warrant the exercise of jurisdiction over Burlington. Burlington contends that the [*8] court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections *(c)(1)* and *(c)(4)* of the long-arm statute. The court will address each of these sections below.

#### 1. Delaware Long-Arm Statute *§ 3104(c)(1)*

[HN4] Under *subsection (c)(1)*, the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. *DEL. CODE ANN. tit. 10 § 3104(c)(1)*. Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its

way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

[HN5] Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997)*. [HN6] The Delaware Supreme Court has interpreted subsection *(c)(1)* as a specific jurisdiction provision that requires a "nexus" [*9] between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D&B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986)*. In order to meet the requirements of subsection *(c)(1)*, Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology, 821 F. Supp. 272, 274 (D. Del. 1993)*. However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone, 724 A.2d at 1156*. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. *(D.I. 52 P 4)*. In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268 (D. Del. 2001)*.

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of [*10] Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone, 724 A.2d at 1160*. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and is not identified to the end user. As such, subsection *(c)(1)* is not a basis for the exercise of jurisdiction over Burlington.

2. Delaware Long-Arm Statute *§ 3104(c)(4)*

Additionally, Gurtler asserts that Burlington has, within the meaning of subsection *(c)(4)*, availed itself of the general jurisdiction of Delaware. [HN7] Under subsection *(c)(4)*, the court may exercise personal jurisdiction over anyone who "causes tortious injury in the State [*11] or outside of the State by an act or omission outside the State if the person regularly does or solicits business,

engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. *DEL. CODE ANN. tit. 10 § 3104(c)(1)*. Gurtler contends that jurisdiction is proper under subsection *(c)(4)* because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

[HN8] Delaware courts have interpreted *§ 3104(c)(4)* as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc., 295 F. Supp. 2d 400, 405 (D. Del. 2002); Boone, 724 A.2d at 1155* (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 727-28 (Del. Super. 1996)*). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter, 295 F. Supp. 2d at 405*. [*12]

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. [HN9] A tortious act under *§ 3104(c)(4)* is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc., 517 F. Supp. 1125, 1130 (D. Del. 1981)*. Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. *(D.I. 52 P 2)*. Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. *(Id.)* It has no local telephone listing, bank accounts, real estate or employees in Delaware. *(Id.)* It has not paid any taxes or franchise fees in Delaware. *(Id.)*. It has never commenced [*13] any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the current litigation. *(Id.)* The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. *See Motorola Inc. v. PC-Tel, 58 F. Supp. 2d 349, 352 (D. Del. 1999)* (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines,

and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. [HN10] Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp., 674 F. Supp. 138, 144 (D. Del. 1987).* However, [*14] when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter, 295 F. Supp. 2d at 405.* In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $ 1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $ 20,070.00. *(Id. at 3).* While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. *(Id.)* Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under *§ 3104(c)(4)* of the Delaware long-arm statute.

**B. Due Process** [*15]

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause.* [HN11] The *Due Process Clause* requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).* In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* n2 Finally, "even if the requisite minimum contacts have been found through an application of the stream [*16] of commerce theory or otherwise, if it would

be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994).*

n2 The United States Supreme Court has explained that:

[HN12] the "substantial connection" . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. . . . The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*ICT Pharms., 147 F. Supp. 2d at 272* (quoting *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)).*

[*17]

Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it

informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship [*18] it directly to Gurtler's clients. (*Id. at 5*). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which [*19] was a critical factor in *Boone*. The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone, 724 A.2d at 1160*. As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $ 66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone*, where

the defendant earned $ 270,000 from sales of its product by its distributor in Delaware. *See id. at 1158*.

Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product [*20] was integrated into a variety of consumer products manufactured by well-known multi-national corporations. n3 The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola, 58 F. Supp. 2d at 352*. While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

> n3 The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant [*21] derived its revenues "appeared to be based upon the sale to *end users* of products containing its softmodems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplated sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington [*22] does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order

Case 1:04-cv-01338-JJF    Document 325-3    Filed 02/10/2006    Page 8 of 22

Page 8
2005 U.S. Dist. LEXIS 1726, *

solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola*. Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees. As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the *Due Process Clause*. [*23] n4

n4 The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice'" because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

Dated: February 8, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 51) is GRANTED.

Dated: February 8, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Westlaw.

Not Reported in A.2d                                                    Page 1
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.
    Court of Chancery of Delaware, New Castle County.
    RED SAIL EASTER LIMITED PARTNERS, L.P., a
    Delaware limited partnership, Delphi Easter Partners
    Limited Partnership, a New York limited partnership,
                     Plaintiffs,
                         v.
    RADIO CITY MUSIC HALL PRODUCTIONS, INC., a
Delaware corporation, Rockefeller Group, Inc., a New York
    corporation, Spectacular Partners, Inc., a Delaware
corporation, Easter Show Limited Partnership, a Delaware
            limited partnership, Defendants.
                 **Civ. A. No. 12036.**

                 Submitted: June 12, 1991.
                 Decided: July 10, 1991.

William Prickett, and Ronald A. Brown, Jr. of Prickett,
Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiffs.
William D. Johnston, and Melanie K. Sharp of Young,
Conaway, Stargatt & Taylor, Wilmington (Ronald S.
Rauchberg, Esquire, and Michael D. Povman of Proskauer
Rose Goetz & Mendelsohn, New York City, of counsel), for
defendants Radio City Music Hall Productions, Inc.,
Rockefeller Group, Inc. and Spectacular Partners, Inc.
Joseph A. Rosenthal of Morris, Rosenthal, Monhait &
Gross, P.A., Wilmington, for Easter Show Limited
Partnership.

                 MEMORANDUM OPINION

ALLEN, Chancellor.
*1 This is an action by the limited partners of a Delaware
limited partnership against the partnership, its corporate
general partner, and the corporate parent and grandparent of
the general partner. The allegation is that defendants have
breached duties arising out of the limited partnership
agreement and certain ancillary agreements between the
limited partners and the general partner and its parent.
Pending is a motion of the corporate
grandparent-Rockefeller Group, Inc.-to dismiss the
complaint for lack of personal jurisdiction.

Plaintiffs, Red Sail Limited Partners, L.P., and Delphi
Easter Partners Limited Partnership, are the only limited
partners of Easter Show Limited Partnership. The principal
defendants are: the general partner, Spectacular Partners,
Inc.; its sole stockholder, Radio City Music Hall
Productions, Inc.; and Rockefeller Group, Inc., the sole
stockholder of Radio City. Easter Show is a Delaware
limited partnership, and Spectacular Partners and Radio City
are both Delaware corporations. Rockefeller Group is a New
York corporation.

Rockefeller Group has moved for dismissal under Rule
12(b)(2) and (5). It claims that no facts exist that would
justify the assertion of personal jurisdiction over it by this
court because it was not a party to the partnership agreement
or any of the other agreements at issue; it does no business
in Delaware; and it has done no act in Delaware related to
this transaction. It affirms that it did cause the incorporation
of Radio City Music Hall Products, Inc., as a Delaware
corporation (as well as certain other subsidiaries), and it
acknowledges that that required a filing in Delaware, but it
asserts that that act was years ago and has no relationship
whatsoever with the claims that plaintiffs would require it
now to defend in this jurisdiction. This sole contact,
unrelated to the facts alleged to constitute a wrong, is, it
says, insufficient under the *International Shoe* line of cases
FN1 to support this court's exercise of personal jurisdiction
over it.

Plaintiffs respond that, in *Sternberg v. O'Neil,* Del.Supr.,
550 A.2d 1105 (1988), the Delaware Supreme Court
interpreted *International Shoe* and its progeny to permit the
courts of this state to exercise personal jurisdiction over the
parent of a wholly-owned subsidiary incorporated in
Delaware on any cause of action arising out of the operation
of that subsidiary. FN2

Rockefeller Group's principal place of business is New York
City. Its principal activity is developing, owning, and
operating real estate. The record contains no evidence that
Rockefeller Group owns real estate in Delaware or that it
otherwise conducts business in Delaware. The only acts in
Delaware that Rockefeller Group has done involve filings
necessary to form and to merge several wholly-owned

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                    Page 2
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

subsidiaries. Neither the formation nor the merger of any of those corporations constitute any part of the facts alleged in the complaint as a wrong. The record establishes that, before April of 1984, Rockefeller Group created four Delaware subsidiaries and caused two of those subsidiaries to merge into one of the other two. One of these two remaining Delaware subsidiaries is Radio City, the other is not a party to this litigation or otherwise associated with the agreements at issue.

**\*2** The record also contains evidence of activity in Delaware by subsidiaries of Rockefeller Group. In April of 1984 a subsidiary of Rockefeller Group registered to do business in Delaware. This subsidiary, however, is in no way involved in this case.

The question whether to exercise personal jurisdiction over a non-resident defendant involves a two part inquiry: (1) may the defendant constitutionally be required to litigate the plaintiff's claim in this jurisdiction given the defendant's conduct, its relationship with the forum and the claims sought to be adjudicated; and (2) does the Delaware statutory law authorize exercise of the constitutional power (if it exists in the circumstances) to compel such adjudication in the courts of this state.

I need not express an opinion on the constitutionality of requiring one in the position of Rockefeller Group to defend litigation of this sort in Delaware since I am firmly of the view that the language of the statutory enactment plaintiffs invoke to justify service of process-Section 3104 of Title 10 of the Delaware Code-cannot be stretched to cover this case without breaking the necessary connection between statutory words and common usage of the English language. *See Trans-Americas Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139, 1142-43 (1985).

Plaintiffs invoke three subsections of Section 3104(c) as authorizing service of process on Rockefeller Group in this case. The pertinent statutory language is as follows:

(c) As to a cause of action brought by any person *arising from any of the acts enumerated in this section,* a court may exercise personal jurisdiction over any nonresident, or his

personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. (emphasis added)

Application of these words to the acknowledged facts of Rockefeller Group's involvement with the alleged wrongs does not require great subtlety or the recitation of legal precedent. It is rather straight-forward.

In organizing subsidiary corporations in Delaware, Rockefeller Group has transacted business in this state (subsection (c)(1)), but the claims sought to be litigated here-breach of contract and breach of alleged fiduciary duties, or wrongful participation or conspiracy in either-in no sense relates to those activities in Delaware. *Compare Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979), *cert. denied,* 446 U.S. 909 (1980). Section 3104 expressly requires that where substituted service is employed under its terms, the wrong alleged must arise from the "acts enumerated." As the wrongs here alleged do not arise from the business that Rockefeller Group transacted in Delaware, subsection (c)(1) of Section 3104 does not authorize service of process upon it in this case.

**\*3** Subsection (c)(3) authorizes service of process when there is a tortious injury in the state by an act or omission in this state. Since the only act in Delaware that Rockefeller Group can be said to have done is to cause the formation and merger of its subsidiaries, and since those acts themselves are not part of any wrong (in this state or outside of it), this subsection offers plaintiffs no ground to require Rockefeller Group to appear in this action.[FN3]

These two sub-sections address specific personal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                    Page 3
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

jurisdiction-that is, jurisdiction to adjudicate a specific claim that itself is associated in some way with the forum jurisdiction. Subsection (c)(4) addresses a situation in which a defendant is generally affiliated with the forum jurisdiction. That is, subsection (c)(4) will apply when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of this state. See *Sternberg v. O'Neil,* 550 A.2d at 1117; *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1302-04 (D.Del.1990). Plainly, the minimal connection that Rockefeller Group has had with this state would be insufficient to predicate service of process on Section 3104(c)(4). There is here no "persistent course of conduct in the State" nor is there any suggestion that Rockefeller Group "derives substantial revenue from services, or things used or consumed in the State." Therefore, subsection (c)(4) is unavailing to plaintiffs.

I conclude therefore that Section 3104 does not authorize this court to exercise jurisdiction over Rockefeller Group. This conclusion is not inconsistent with the holding in *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988). That case addressed the constitutional issue that questions of personal jurisdiction over non-resident defendants inevitably raises. It did not concern the separate question whether Delaware law authorized service of process, since the defendant there had appointed an agent and so was "present" in the state. *Id.* at 1109 (citing *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.,* 243 U.S. 93, 95 (1917).[FN4]

In *Sternberg,* the Delaware Supreme Court held that it was consistent with traditional notions of fair play and substantial justice-that is, it was constitutional-to require a foreign corporation that had long owned all of the stock of a Delaware corporation to appear and defend a double derivative suit charging the directors of the Delaware company and its parent with breach of fiduciary duty.

Plaintiffs argue that, after *Sternberg,* this court must be authorized to exercise jurisdiction under Section 3104 over an out-of-state parent of a Delaware corporation because Section 3104 has been "construed to confer jurisdiction to

the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 768 (1988). In my opinion, the Supreme Court did not intend in *LaNuova* to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question. The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts in hand be slighted.

**\*4** Nor on the current record can the activities of Rockefeller Group's subsidiaries in Delaware be attributed to Rockefeller Group. [FN5] Courts in Delaware will ignore the separate corporate existence of a subsidiary and attribute its activities in Delaware to the parent only if the subsidiary is the alter ego or a mere instrumentality of the parent, or if the subsidiary acts as the agent of the parent. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959); *Sears, Roebuck & Co.,* 744 F.Supp. at 1304; *Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 265-72 (D.Del.1989). The record contains no evidence that either basis for imputing the acts of the subsidiary to the parent apply to Radio City or to the Rockefeller Group subsidiary that registered to do business here.

Finally, plaintiffs assert personal jurisdiction over Rockefeller Group based on a conspiracy theory of jurisdiction. It cites *Istituto Bancario Italiano SpA v. Hunter Eng. Co., Inc.,* Del.Supr., 449 A.2d 210 (1982), but that case too dealt with the constitutional fairness issue, not with statutory construction. In all events, the claim is that Rockefeller Group conspired with its wholly owned subsidiary to breach the partnership agreement and the ancillary agreements, and that the formation of Spectacular Partners and Easter Show were acts in Delaware in furtherance of that conspiracy.

A theory of personal jurisdiction based upon an alleged conspiracy between a foreign corporation and its wholly owned Delaware subsidiary is very close to being merely another way to assert that a controlling shareholder may

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                Page 4
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

always be sued in Delaware on any claim made against the subsidiary. A controlling shareholder does by definition control (or have the power to control) the acts of its subsidiary. Thus, an attempt to apply a conspiracy theory to parent-subsidiary corporations in order to extend the reach of Section 3104 raises particular concerns. I need not address those concerns, however, because, assuming that Rockefeller Group may be subjected to the compulsion of legal process under Section 3104 if any party with whom it is in conspiracy could be served under Section 3104, still plaintiffs have failed to show that any of the defendants could be served under the terms of that statute. In other words, if the conspiracy theory means Rockefeller Group may be sued in any jurisdiction in which an act in furtherance of the conspiracy occurred, plaintiffs have failed to make a *prima facie* case that the only Delaware acts-filing of the Spectacular Partners incorporation document and of the limited partnership documents-were part of a conspiracy to breach duties created by the funding of the limited partnership obligations. It is not enough to sustain service of process under Section 3104 when challenged on a motion under Rule 12(b)(2) or (5) that plaintiffs might imagine that an act in Delaware might possibly be related to the wrong alleged and that a non-resident defendant might possibly have participated in some way in that action ("conspired"). Plaintiffs' obligation is to come forward with some evidentiary support for such speculation. *See Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* Del.Ch., C.A. No. 11514, Allen, C. (Feb. 13, 1991). Here they have not done so.

**\*5** The motion to dismiss is therefore GRANTED.

> FN1. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310 (1945); *Shaffer v. Heitner,* 433 U.S. 186 (1977); *Burger King v. Rudzewicz,* 471 U.S. 462 (1985); *Burnham v. Superior Court of California,* 110 S.Ct. 2105 (1991).

> FN2. This principle is breath-taking in scope. It would apply for example to support jurisdiction over a New York corporation that owned a Delaware subsidiary whose employee was involved, during the course of his employment, in

an intersection collision in Los Angeles.

> FN3. In so concluding I need not express any view on the question whether a financial impact on a Delaware corporation (arising for example from the misappropriation of trade secrets) is "tortious injury in the State" within the meaning of this section.

> FN4. The present case is also different in this respect from *In re USACafes, L.P. Lit.,* Del.Ch., Cons. C.A. 11146, Allen, C. (June 7, 1991), where the directors of a Delaware corporation were subject to service of process under the director's longarm statute, 10 Del.C. § 3114.

> FN5. Indeed, the record does not disclose any such activities in Delaware, except the filing by Radio City of the incorporation documents of Spectacular Partners and the filing by Spectacular Partners of the limited partnership documents. Thus, while those Rockefeller Group subsidiaries are plainly "present" in Delaware by reason of their incorporation, they do not do business generally in this state for purposes of Section 3104(c).

Del.Ch.,1991.
Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.
Not Reported in A.2d, 1991 WL 129174 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1999 DEL. SUPER. LEXIS 219

**Republic Environmental Systems, Inc. v. RESI Acquisition (Delaware) Corp. and Philip Services Corp.**

**C.A. No. 99C–02–194 WTQ**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*1999 Del. Super. LEXIS 219*

**May 24, 1999, Date Submitted**
**May 28, 1999, Date Decided**

**SUBSEQUENT HISTORY:** [*1] Released for Publication by the Court July 1, 1999.

**DISPOSITION:** Letter Opinion and Order on: 1. Defendant Philip Services' Motion to Dismiss —

MOTION DENIED. 2. Defendants' Motion to Amend their Answer — MOTION GRANTED. 3. Plaintiff's Motion for Final Judgment on the Pleadings as to the Notes and Guaranty — MOTION GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff creditor moved for a judgment on the pleadings in an action against defendants, debtor and surety, to collect on promissory notes that were used as consideration for the sale of corporate entities. Defendants moved to dismiss claims for lack of personal jurisdiction and moved to amend their answer to include additional counterclaims.

**OVERVIEW:** Plaintiff creditor was engaged in the waste management business. Plaintiff sold corporate entities to defendant debtor. Promissory notes were executed and guaranteed by the defendant surety. The notes specifically stated that they were made under state laws, and they also contained a set-off clause. Plaintiff filed a debt collection action. Defendants admitted to defaulting on the notes, but they disputed the amount. Plaintiff filed a motion for judgment on the pleadings, and defendants moved to dismiss for lack of personal jurisdiction and to amend answer their answer to include counterclaims. The court granted plaintiff's motion because defendants admitted they were in default. Defendants' motion to amend was granted because there was no prejudice to plaintiff. Defendants' motion to dismiss was denied because they were subject to personal jurisdiction based on the permissive guaranty clause and a long arm statute.

**OUTCOME:** The court granted plaintiff's motion for judgment on the pleadings in an action to collect on promissory notes based on defendants admitting to default and granted defendants' motion to amend answer but denied defendants' motion to dismiss claims since they were subject to personal jurisdiction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] When personal jurisdiction is challenged by a motion to dismiss, the plaintiff bears the burden of showing a basis for the court's jurisdiction over a non-resident defendant. To obtain jurisdiction over a party, a court must satisfy the requirements of its long-arm statute and due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN2] Delaware's long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)*, provides that a Delaware court may exercise personal jurisdiction over a nonresident if the person: Transacts any business or performs any character of work or service in the State such as contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing. Ownership of a Delaware corporation, without more, can not create general jurisdiction in the state. The foreign

1999 Del. Super. LEXIS 219, *1

party must have some additional tie to the state, although a single tie may suffice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] Delaware's long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)(6)*, provides jurisdiction for any person who acts as a surety for any person located within the state, unless the parties provide otherwise in writing. A person includes a corporation, which by virtue of being incorporated in Delaware is present in Delaware for the purposes of jurisdiction. When the subject matter is the payment of a note, a general debt obligation, it seems especially appropriate to go to the forum of the debtor's domicile as one of the prime options.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] A permissive forum selection clause does not preclude the application of the long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)(6)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN5] Due process requires that in order to subject a defendant to personal jurisdiction, the person must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. This test requires that parties have fair warning that a particular activity may subject it to jurisdiction in a given locale. Fair warning can be satisfied where a defendant has purposely directed its activities to the residents of the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN6] A foreign corporation can not use the laws of a state to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in the state offends traditional notions of fair play. Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities. The Due Process Clause, U. S. Const. amend. XIV, may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] In the analysis regarding jurisdiction, the court may consider the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN8] A party may amend a pleading with leave of court, and such leave shall be freely given, as justice requires.

*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
[HN9] When one or more claims for relief are sought in an action, whether claims or counterclaims, the court may direct the entry of final judgment on fewer than all claims if there is no just reason for delay of such entry.

**COUNSEL:** John L. Reed, Esquire, Blank Rome Comisky & McCauley, Wilmington, DE.

Laura S. Clare, Esquire, Skadden Arps Slate Meagher & Flom, Wilmington, DE.

**JUDGES:** WILLIAM T. QUILLEN, JUDGE.

**OPINIONBY:** WILLIAM T. QUILLEN

**OPINION:**

This is the Court's Opinion on Plaintiff's Motion for Judgment on the Pleadings, Defendants' Motion to Amend their Answer and Defendant Philip Services' Motion to Dismiss. For the reasons stated herein, the Motion to Dismiss is DENIED, the Motion to Amend the Answer is GRANTED and the Motion for Judgment on the Pleadings is GRANTED.

**I. FACTS**

1999 Del. Super. LEXIS 219, *1

This case arises from the execution of promissory notes in favor of the Plaintiff and against the Delaware subsidiary of a Canadian corporation. The primary issues involve whether this Court has jurisdiction over the Canadian Defendant and whether a potential off-set precludes a final judgment on the pleadings as [*2] to the claims of the Complaint.

The Plaintiff, Republic Environmental Systems, Inc. ("Republic"), owned various operations engaged in the waste management business. In June 1997, via a Share Purchase Agreement, Republic sold certain corporate entities to Co-Defendant, RESI Acquisitions, Inc. ("RESI"), for $17 million. As consideration for the transaction, RESI paid $8 million in cash and executed two promissory notes (the "Notes") in favor of Republic in a combined amount of $9 million. The first Note, for $8 million, was payable on July 23, 1998. The second Note, for $1 million, was payable on July 23, 1999. Both Notes specifically state that they "shall be deemed to be made under and in accordance with and governed by the laws of the State of Delaware." n1 Both Notes also contained a "set-off clause" allowing RESI to set-off any liability arising under Section 9.2 of the Share Purchase Agreement. n2 Philip Services Corporation ("Philip Services"), the parent of RESI, signed the Notes as unconditional guarantor and also signed a separate Guaranty Agreement ("the Guaranty"). The same person signed both Notes and the Guaranty for both Defendants.

n1 Complaint, Exhibit A (Dkt. No. 1).

[*3]

n2 Section 9.2 of the Share Purchase Agreement stated that Republic would indemnify RESI for certain environmental liability in excess of an "Indemnification Threshold" arising from the clean-up of two facilities (one located in Hatfield, Pennsylvania and one located in Clayton, New Jersey). The Section, however, was limited to the clean-up of only a certain exhaustive list of contaminants.

RESI, a Delaware corporation, was a subsidiary of Co-Defendant Philip Services. Philip Services' Guaranty stated that Pennsylvania law would govern and that all disputes may be litigated in Pennsylvania. n3 Philip Services is a Canadian corporation with its corporate offices in Ontario, Canada. It is not registered to do business in Delaware and has no physical plants in Delaware. n4

n3 Complaint, Exhibit E, at PP10 and 14 (Dkt. No. 1).

n4 Affidavit of Stephen Brook, Esquire, at P5 (Dkt. No. 13). These facts can be assumed since the Complaint makes no allegations to the contrary.

[*4]

The 1997 Share Purchase Agreement was negotiated in Canada, Pennsylvania and Bermuda. The Share Purchase Agreement and Notes were executed in Ontario, Canada. The corporations purchased under this Agreement own facilities in Pennsylvania, New Jersey and Ohio. n5 These corporations were incorporated in New Jersey, Pennsylvania and Ohio. The Guaranty was negotiated in Canada and executed in Pennsylvania. n6

n5 Whether or not jurisdiction could be obtained over RESI in Pennsylvania is disputed by the parties. Defendants contend that jurisdiction can be obtained because certain negotiations occurred in Pennsylvania and because certain facilities owned by the purchased corporations are located in Pennsylvania. Plaintiff asserts that RESI does not directly own these facilities in Pennsylvania, it only owns corporations which in turn own facilities in Pennsylvania, and that ownership of a Pennsylvania corporation, by itself, does not give rise to jurisdiction in Pennsylvania. On the current record, this Court simply notes that jurisdiction over RESI in Pennsylvania is contested.

n6 Supplemental Affidavit of Stephen Brooke, Esquire (Dkt. No. 17). The Complaint makes no allegations that negotiations took place in Delaware.

[*5]

After the Notes were executed, the parties made several modifications to the payment schedule, allowing RESI extra time to fulfill its obligation. Although RESI repaid a portion of the first $8 million Note, it eventually defaulted. A condition of the second $1 million Note stated that a default on the $8 million Note also constituted a default on the $1 million Note. Republic brought this action in Delaware against both RESI and Philip Services to collect on the Notes. Defendants admitted to defaulting on the Notes and do not dispute the amount unpaid. n7 Defendants do raise the affirmative defenses of lack of personal jurisdiction and off-set, and have filed counterclaims alleging damages arising from the 1997 Share Purchase Agreement.

n7 Answer, at P15 (Dkt. No. 7).

Plaintiff now brings a Motion for Judgment on the Pleadings, stating that Defendants admit to defaulting on

1999 Del. Super. LEXIS 219, *5

the Notes. Defendants now bring a Motion to Dismiss all claims against Philip Services for lack of personal jurisdiction and a Motion [*6] to Amend their Answer to include additional counterclaims. These counterclaims contain allegations related to certain environmental issues, although none specifically mention Section 9.2 of the Share Purchase Agreement.

## II. DEFENDANT PHILIP SERVICES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

[HN1] When personal jurisdiction is challenged by a Motion to Dismiss, the Plaintiff bears the burden of showing a basis for the Court's jurisdiction over the non-resident Defendant. *Plummer & Co. Realtors v. Crisafi, Del. Super., 533 A.2d 1242, 1244 (1987)*. To obtain jurisdiction over a party, a Court must satisfy the requirements of its long-arm statute and due process. *Outokumpu Engineering Enterprises v. KEPI, Del. Super., 685 A.2d 724, 727 (1996)*(citing *LaNuova D&B, S.p.A. v. Bowe Co., Del. Supr., 513 A.2d 764, 768–769 (1986))*. In this case, the bare facts necessary for final decision on jurisdiction are established.

### A. [HN2] Delaware's Long–Arm Statute

Delaware's long-arm statute provides that a Delaware Court may exercise personal jurisdiction over a nonresident if the person:

> (1) Transacts any business or performs any character [*7] of work or service in the State;
>
> * * *
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c).*

Ownership of a Delaware corporation, without more, cannot create general jurisdiction in this State. *Outokumpu, 685 A.2d at 728 n.1* (citing *Sears, Roebuck & Co., v. Sears, plc, D. Del., 744 F. Supp. 1297, 1306 (1990))*. The foreign party must have some additional tie to this State, although a single tie may suffice.

[HN3] Section (c)(6) of Delaware's long-arm statute provides jurisdiction for any person who "acts as a surety for . . . any person . . . located . . . within the State, *unless the parties otherwise provide in writing.*" (Emphasis supplied). A person includes a corporation, and the debtor

here, which by virtue of being incorporated in Delaware, is "present" in Delaware for the purposes of jurisdiction. *10 Del. C. § 3104(a); 8 Del. C. § 321*. When the subject matter is the payment of a Note, a general debt obligation, [*8] it seems especially appropriate to go to the forum of the debtor's domicile as one of the prime options.

RESI is a Delaware corporation and therefore present in Delaware. Philip Services, a foreign corporation, acted as a surety for the Notes executed by RESI. In fact, Philip Services actually endorsed the Notes contemporaneously. Philip Services therefore acted as a surety for a person with a presence within the State, an action giving rise to specific jurisdiction under Section (c)(6). This Section, however, is qualified in that it does not apply if "the parties otherwise provide." *10 Del. C. § 3104(c)(6)*. Here, the Notes contained a choice of law provision choosing Delaware law (there is no choice of forum clause). The choice of law adds an additional factor as to the propriety of jurisdiction. The Guaranty provides that all parties submit to jurisdiction in Pennsylvania, but does not state that all actions *must* be litigated in Pennsylvania. In other words, the forum selection clause was permissive, not mandatory. Had the choice of forum clause been mandatory in nature, meaning the parties would be *required* to litigate in Pennsylvania, the contract may have fallen [*9] outside the reach of Delaware's long-arm statute, as provided by the qualifier in Section (c)(6). n8 The clause in the present case, however, is permissive in nature, meaning the parties have the *option* of litigating in Pennsylvania, but are not required to do so. Indeed, there is an express, albeit general, provision preserving all other rights cumulative to those in the Guaranty.

> n8 The Court uses the word "may" here because the Notes themselves could arguably be viewed as being the governing instrument without reference to the Guaranty.

The purpose of the qualifying language of Section (c)(6) is to allow the parties to "contract around" this Section by preselecting a forum in which to litigate disputes. This process adds certainty and predictability to the contract. Here, however, the parties only selected a "possible" forum, they did not conclusively select a "mandatory" forum. Under the terms of the forum selection clause in the Guaranty, the Plaintiff could sue Philip Services in Pennsylvania or any [*10] other forum with personal jurisdiction. This permissive language does not provide the certainty of a mandatory forum clause, and therefore does not show an intent to contract around Section (c)(6). Accordingly, [HN4] a permissive forum selection clause does not preclude the application of Section (c)(6) and Philip Services is subject to jurisdiction under Delaware's

long-arm statute on the limited issue of the Notes and the Guaranty.

Philip Services relies heavily upon *Outokumpu Engineering Enterprises v. KEPI, Del. Super., 685 A.2d 724 (1996).* That excellent decision is distinguishable on several dispositive bases:

> 1. In *Outokumpu*, the guarantor was not a parent guaranteeing the obligations of its wholly-owned subsidiary, but was a foreign *sister* company. *685 A.2d at 725-726.*

> 2. In *Outokumpu*, the underlying agreement that was being guaranteed was governed by Norwegian law and had an exclusive forum selection clause providing venue in Oslo, Norway. *Id.* Here, the Notes are governed by Delaware law and there is no forum selection clause in the Notes.

> 3. The guarantee in *Outokumpu* was governed by Swedish law and contained a mandatory [*11] forum selection clause providing that venue "shall" be in Sweden. n9 *Id. at 733.* The Guaranty in the present case is governed by Pennsylvania law as opposed to the laws of a foreign country and venue therein is permissive, not exclusive.

> 4. In *Outokumpu*, the dispute involved the failure to complete the construction of a power plant in Canada. *685 A.2d at 727.* In this case, the dispute is simply over the failure of a Delaware corporation to pay its debt.

> 5. In *Outokumpu*, the Court did not address jurisdiction as provided by *10 Del. C. § 3104(c)(6)*, because the forum selection clause mandated jurisdiction elsewhere, as expressly permitted by subsection (6) of Section 3104. Thus, the expectations and burdens of the parties in *Outokumpu* were very different from those in this case. Indeed, *Outokumpu* really involved litigation between two Scandinavian corporate enterprises over construction of a facility in Canada, where none of the agreements were governed by Delaware, or even American law. n10

n9 The actual language of the provision stated that "Goteborg *shall* be *the* proper venue for any dispute concerning any claim or dispute relating to this Guarantee." *Outokumpu, 685 A.2d at 726* (em-

phasis supplied). The Court reads this language as mandatory.
[*12]

n10 Republic also has contended that Philip Services waived the right to object to jurisdiction by filing a Counterclaim in this Court. Because the Court finds that there is jurisdiction over Philip Services for the reasons set forth herein, it is not necessary to reach that issue. *But see* Superior Court Civil Rule 8(e).

This Court holds that Philip Services actions, in guaranteeing the obligations of a Delaware corporation, in the absence of a mandatory forum selection clause, creates specific jurisdiction under Delaware's long-arm statute for actions arising under the Notes and Guaranty. To obtain jurisdiction, however, this Court must also satisfy the requirements of Due Process.

**B. Due Process**

[HN5] Due Process requires that in order to subject a Defendant to personal jurisdiction, the person must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).* [*13] This test requires that parties have fair warning that a particular activity may subject it to jurisdiction in a given locale, here Delaware. *Outokumpu, 685 A.2d at 731* (citing *Shaffer v. Heitner, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977).* Fair warning can be satisfied where a Defendant has purposely directed its activities to the residents of the forum State. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985).*

"[[HN6] A] foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play." *Sears, 744 F. Supp. at 1303.* As United States Supreme Court Justice Brennan stated in *Burger King*:

> Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities;

1999 Del. Super. LEXIS 219, *13

the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations [*14] that have been voluntarily assumed. And because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. [471 U.S.] at 473–74, [105 S. Ct. at] 2183 (citations omitted).

Philip Services created a Delaware subsidiary and availed itself of Delaware law in doing so. Philip Services had such fair warning that it may be haled into a Delaware Court because it: (a) guaranteed the financial obligations of a Delaware corporation which it wholly-owned; (b) induced, by virtue of the express language in the Guaranty, the Delaware corporate Plaintiff to engage in the transactions at issue; and (c) derived a "substantial and direct benefit" according to the express language of the Guaranty from these transactions of its Delaware subsidiary. It cannot be said that Philip Services' connection to Delaware is a result of "random," "fortuitous," or "attenuated" contacts. *471 U.S. at 476, 105 S. Ct. at 2183.*

[HN7] In this analysis, the Court may also consider the burden on the Defendant, the Plaintiff's interest [*15] in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Burger King, 471 U.S. at 477, 105 S. Ct. at 2184.* "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* Jurisdiction in Delaware would serve Republic's entitlement to convenient and effective relief. Moreover, there is no apparent burden on Philip Services to litigate in Wilmington, Delaware, as opposed to Philadelphia, Pennsylvania.

This Court finds that Philip Services is subject to personal jurisdiction in this Court for claims arising under the Notes and Guaranty under Delaware's long-arm statute. This Court further finds that such jurisdiction does not offend Due Process. Accordingly, Defendant Philip Services' Motion to Dismiss is DENIED.

### III. DEFENDANTS' MOTION TO AMEND THE ANSWER

Superior Court Civil Rule 15(a) states that [HN8] a party may amend a pleading with leave of Court, and such leave shall be freely given as justice requires. In this situation, the Defendants wish to amend their Answer [*16] to include counterclaims arising from the 1997 sale. Similar

counterclaims were brought in the original Answer and the case is not yet three months old. The Court sees no prejudice to the Plaintiff in allowing the requested amendments. At oral argument, Plaintiffs offered no opposition. Accordingly, Defendants' Motion to Amend their Answer is GRANTED.

### VI. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff has moved for Final Judgment on the Pleadings regarding liability on the Notes and Guaranty. Defendants oppose Republic's Motion on the basis that they have pending counterclaims which may entitle them to a set-off against Republic. They also assert that some counterclaims fit within the "set-off clause" of the Notes as claims arising under Section 9.2 of the Share Purchase Agreement. Plaintiff contends that none of the counterclaims fall within the scope of Section 9.2.

Section 9.2 of the Share Purchase Agreement carves out a narrow indemnification scenario. It states that Republic would indemnify RESI for environmental liability arising from damages related to excessive concentrations of certain specified contaminants in either the soil or groundwater of two particular [*17] facilities. The Notes allow RESI to off-set this liability, minus an "indemnification threshold," directly against the Notes. The Amended Answer makes many environmental counterclaims, some even relating to one of the facilities mentioned in Section 9.2. n11 None of these counterclaims, however, even when read broadly, make any allegations relating to costs associated with excessive contamination of the chemicals listed in Section 9.2. The list of chemicals is rather specific, and none are even mentioned in the counterclaims. As such, even read liberally, the counterclaims do not give rise to the type of off-set expressly provided in the Notes. Although Defendants may have general off-sets against Republic, these off-sets fall outside the scope of the Notes. The only remaining question is whether this Court should enter *final* judgment on the Notes and Guaranty while certain general off-sets remain pending. n12

> n11 *See, e.g.,* Amended Answer, at P62 (Dkt. No. 12) (alleging damages arising from a ruptured membrane of the Hatfield, Pennsylvania facility).

> n12 This is not to say that even if the counterclaims fell within Section 9.2 that this Court could not grant final judgment on the Notes. *See Olympia Hotels Corp v. Johnson Wax Dev. Corp., 7th Cir., 908 F.2d 1363 (1990).*

[*18]

1999 Del. Super. LEXIS 219, *18

Superior Court Civil Rule 54(b), modeled after its Federal counterpart, provides that [HN9] when one or more claims for relief are sought in an action, whether claims or counterclaims, the Court may direct the entry of final judgment on fewer than all claims if there is no just reason for delay of such entry. Because the Delaware and Federal Rule are similar, this Court finds Federal authority on the subject persuasive.

In *Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980)*, Curtiss-Wright brought an action against General Electric seeking damages and reformation with regard to 21 contracts. The Complaint asserted claims based on alleged fraud, misrepresentation, and breach of contract by General Electric. It also sought $19 million from General Electric on the outstanding balance due on the contracts already performed. General Electric counterclaimed for $1.9 million in costs allegedly incurred as the result of efforts provided to Curtiss-Wright during performance of the contracts which enabled Curtiss-Wright to avoid a contract default. General Electric also counterclaimed to recover $52 million by which Curtiss-Wright was allegedly unjustly [*19] enriched as a result of these efforts. The facts underlying most of these claims and counterclaims were in dispute. As to Curtiss-Wright's claims for the $19 million balance due, however, the facts were largely undisputed and the claim hinged on a single legal question.

When Curtiss-Wright moved for final judgment on the $19 million balance due, General Electric contended that so long as Curtiss-Wright's other claims remained pending, the potential set-off constituted a bar to recovery of the undisputed balance. The United States Supreme Court disagreed, and held that Rule 54(b) permitted the District Court, in its discretion, to enter final judgment on the claim before resolving the remaining claims. *446 U.S. at 10, 100 S. Ct. 1465.* The Court stated that while there is a general judicial policy against piecemeal litigation, in certain situations, the entry of judgment in less than all claims is appropriate. *446 U.S. at 9, 100 S. Ct. at 1465.* The overriding concern is that of judicial, and more specifically, appellate economy. That is, trial Courts should refrain from issuing final judgments on less than all issues if it creates the possibility of making an appellate Court review [*20] the facts and issues of a case more than once. In this case, the U.S. Supreme Court noted that an appeal of the pending counterclaims would not force an appellate Court to revisit issues decided in an appeal of the undisputed contractual claims. *Id.* The U.S. Supreme Court held that the central inquiry should be "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined were such that

no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *446 U.S. at 8, 100 S. Ct. at 1465.*

Defendants cite *Aluminum Co. of America v. Toba Adjustments Inc., 1998 U.S. Dist. LEXIS 3224, S.D.N.Y., No. 96 Civ. 9536, 1998 WL 120355,* Leisure, J. (Mar. 18, 1998), *First Federal Savings Bank v. CPM Energy Systems Corp., 1988 Del. Super. LEXIS 400,* Del. Super., C.A. No. 88C-05-249, Taylor, J. (Oct. 25, 1988) and *Ning Shing (U.S.A.), Inc. v. Howard Berger Co., 1998 U.S. Dist. LEXIS 11142, D.N.J., 1998 WL 684244* (Mar. 16, 1998) to support their contention that a counterclaim and potential off-set preclude entering judgment on the Notes. *Toba Adjustments* is distinguishable because the Plaintiff's claim for conversion [*21] was "disputed," and could not be determined as a matter of law, therefore foreclosing any summary judgment. The case even contrasts this very distinction with *Curtiss-Wright.* The case of *First Federal* is also distinguishable in that the affirmative defense of "fraudulent inducement" dealt with the very loan giving rise to the Plaintiff's claim. In *Ning Shing,* the Federal District Court did not grant final judgment when the Defendant had a possible set-off against the Plaintiff. Although this case is factually comparable to the present case, this Court does not read *Ning Shing* so broadly as to foreclose a Court, in the exercise of its discretion, from entering judgment under Rule 54(b) when a possible off-set exists.

In this case, the issue on Republic's claims is whether Defendants failed to make payment under the Notes and Guaranty as alleged in the Complaint. Defendants admit they did not make these payments. Defendants' counterclaims, while certainly raising an off-set issue, do not in any way relate to the defaults on the Notes. The Court finds this situation analogous to the one in *Curtiss-Wright,* that is an undisputed civil claim in the midst of other hotly [*22] contested claims and counterclaims. The Court also notes that Republic does not display any signs of imminent insolvency, and would be capable of paying a judgment in the future. Philip Services, on the other hand, appears to be experiencing financial difficulties, and potential insolvency *may* be a concern. n13 These factors weigh in favor of granting final judgment on the Notes and Guaranty before deciding the factually intensive counterclaims. Another factor is judicial (and appellate) economy. The issues concerning the Notes and Guaranty, while arising from the 1997 Share Purchase Agreement, are simply severable from the issues addressed in the counterclaims. Therefore, the granting of final judgment on the Notes and Guaranty will not in any event obligate our Supreme Court to pour over the facts and issues of this entire case more than once. Accordingly, Plaintiff's Motion for Final Judgment on the Pleadings with respect

1999 Del. Super. LEXIS 219, *22

to the Notes and Guaranty is GRANTED.

n13 There were assertions on the record at argument that Defendants are experiencing financial difficulties and may seek the protections of the Bankruptcy Courts. These assertions were not denied by Defendants. If true, this is an additional factor weighing in favor of certification of a final judgment on Republic's claims. *See Curtiss-Wright, 446 U.S. at 12* ("Nor is General Electric's solvency a dispositive factor; if its financial position were such that a delay in entry of judgment on Curtiss-Wright's claims would impair Curtiss-Wright's ability to collect on the judgment, that would weigh in favor of certification").

[*23]

Notwithstanding that Republic is entitled to a final judgment without further delay, the Court is not unmindful of the fact that the Defendants may have to pay the sums demanded by Republic in the face of their counterclaims. Accordingly, I propose to enter judgment along the following lines:

### PROPOSED JUDGMENT

*AND NOW, TO WIT, this ___ day of June, 1999, IT IS HEREBY ORDERED that judgment be entered against Defendant RESI Acquisition (Delaware) Corporation, and in favor of the Plaintiff, in the amount of $4,528,875.90, with interest at the legal rate from the date hereof;*

*IT IS FURTHER ORDERED that judgment be entered against Defendant Philip Services Corp., and in favor of the Plaintiff,*

*in the amount of $4,578,100.23, with interest at the legal rate from the date hereof;* n14

*IT IS EXPRESSLY DETERMINED that there is no just reason for delay and accordingly, under Superior Court Civil Rule 54(b), IT IS ORDERED that this judgment is final; and*

*IT IS FURTHER ORDERED that all sums paid or collected pursuant to this Order shall be deposited with the Court pending disposition of Defendants' counterclaims and further Order of this Court.* n15

[*24]

n14 I do not believe the numbers were contested but the figures might need adjustment for time.

n15 Counsel for Defendants have argued that this portion of the judgment is unique and somehow improper. It may possibly be, but it certainly makes common sense to have this Court-ordered "lien" imposed for the benefit of the Defendants. If the Defendants do not desire to make payment into Court, this provision could be stricken from the Order. The Court notes that it could be argued that this portion of the judgment affects finality, but the Court is prepared to live with that argument possibly looming.

In order to give counsel an opportunity to comment on the Order, I ask that they confer and that Mr. Reed present, as soon as possible, an order on notice, hopefully stipulated to by Ms. Clare as to amounts and form.

William T. Quillen