IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and<br>HONEYWELL INTELLECTUAL PROPERTIES INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )  C.A. No. 04-1338 (KAJ) <br> ) |
| APPLE COMPUTER, INC., et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## HONEYWELL'S OPPOSITION TO DEFENDANT ST-LCD'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
lpolizoti@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

February 27, 2006

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 1

    A.   ST-LCD Was Created and Exists for the Sole Purpose of Manufacturing LCD Modules for Sony Corporation.................................. 2

    B.   All of ST-LCD's Modules are Sold Through Sony's Established Distribution Channels, Including Those Channels in the United States and Delaware. ................................................................................. 3

ARGUMENT ....................................................................................................... 5

    I.   ST-LCD INJECTS ITS PRODUCTS INTO A STREAM OF COMMERCE DIRECTED TO THIS FORUM, THUS JUSTIFYING THIS COURT'S EXERCISE OF IN PERSONAM JURISDICTION. ................. 5

    A.   Determining Jurisdiction over ST-LCD Involves a Two-Step Inquiry....................................................................................................... 6

    B.   Personal Jurisdiction Exists Under Delaware's Long-Arm Statute........... 7

        1.   Del. Code. Ann. tit. 10 § 3104(c)(1) Confers Specific Jurisdiction Over ST-LCD In Delaware. ........................................ 7

        2.   Del. Code. Ann. tit. 10 § 3104 (c) (4) Confers General Jurisdiction Over ST-LCD In Delaware. ........................................ 9

    C.   Federal Due Process Clause is Not Offended By Bringing ST-LCD Before This Court. ................................................................................. 13

        1.   Specific Jurisdiction Over ST-LCD Does Not Offend The Due Process Clause.................................................................... 15

        2.   General Jurisdiction Over ST-LCD Does Not Offend the Due Process Clause.................................................................... 16

        3.   Exercising Specific Jurisdiction Over ST-LCD Does Not Violate Traditional Notions Of Fair Play And Justice.................. 16

    D.   ST-LCD is Subject to Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 4(k)(2). ............................................................. 17

ii.

II.     AT A MINIMUM, HONEYWELL IS ENTITLED TO OBTAIN JURIS-
        DICTIONAL DISCOVERY FROM SONY AND ST-LCD. .............................. 18

CONCLUSION ........................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                          Page(s)

*Asahi Metal Indus. Co. v. Superior Court of California*,
    480 U.S. 102 (1987).................................................................................... 12, 14, 17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994).................................................................. 8, 10

*BP Chems. Ltd. V. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000)....................................................................... 18

*CC Investors Corp. v. Raytheon Co.*,
    219 F.R.D. 328 (D. Del. 2003) ................................................................... 6

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005)..................................... 5, 11, 12, 13, 14, 15

*Del. Mktg. Partners, LLC v. Creditron Fin. Servs.*,
    2004 U.S. Dist. LEXIS 17828 (D. Del. 2004) ........................................... 7

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    2004 U.S. Dist. LEXIS 19760 (D. Del. 2004) .................................... 14, 17

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
    149 F.3d 1382 (Fed. Cir. 1998)................................................................... 6

*Hadley v. Shaffer*,
    2003 U.S. Dist. LEXIS 14106 (D. Del. 2003) ........................................ 6, 7

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................. 14, 16

*In re Elonex Phase II Power Mgmt. Litig.*,
    2003 U.S. Dist. LEXIS 7715 (D. Del. 2003) ................................ 10, 11, 13

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................... 14

*Jeffreys v. Exten*,
    784 F. Supp. 146 (D. Del. 1992).............................................................. 10

*La Nuova D & B, S.p.A. v. Bowe Co.*,
    513 A.2d 764 (Del. 1986) ................................................................... 12, 14

*M & L of Del., Inc. v. Wallace*,
    2004 U.S. Dist. LEXIS 21863 (D. Del. 2004) ................................. 6, 12, 18

*Merck & Co., v. Barr Laboratories, Inc.*,
    179 F.Supp. 2d 368 (D.Del. 2002) ...................................................................... 13

*Padcom, Inc. v. NetMotion Wireless, Inc.*,
    2004 U.S. Dist. LEXIS 9658 (D. Del. 2004) ................................................. 7, 8, 10, 13, 14

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
    2004 U.S. Dist. LEXIS 3940 (D. Del. 2004) ........................................................ 8, 9, 16

*Siemens Aktiengesellschaft v. LG Semicon Co.*,
    69 F. Supp. 2d 622 (D. Del. 1999) .................................................................... 13

## Statutes

DEL. CODE. ANN. tit. 10 § 3104(c) ........................................................................ 7

DEL. CODE. ANN. tit. 10 § 3104(c)(1) ................................................................. 7, 9

DEL. CODE. ANN. tit. 10 § 3104(c)(4) ............................................. 7, 9, 10, 11, 12, 13

## Other Authorities

Federal Rule of Civil Procedure 4(k)(2) .......................................................... 17, 18

## INTRODUCTION

In its prior rulings in this matter, this Court has indicated its desire that Honeywell proceed for now against those companies that manufacture LCD modules. Following this directive, Honeywell's Amended Complaint named those LCD manufacturers that it had identified in its pre-suit analysis and/or which were disclosed by the "Non Manufacturer Defendants." One of these manufacturers is ST-Liquid Crystal Display Corp. ("ST-LCD"), a prominent member of the industry that was referenced in stay proceedings.

Now, despite this Court's directive, and despite its own admission that it manufactures LCD modules for Sony's end products, which are sold world-wide, ST-LCD moves to dismiss for lack of personal jurisdiction. ST-LCD's motion should be denied because it intentionally injects its products into a stream of commerce – through co-defendant Sony – with the intention of taking advantage of the United States market, including this forum. Such purposeful availment satisfies both the Delaware "long-arm" statute and constitutional due process standards.

## STATEMENT OF FACTS

Defendant ST-Liquid Crystal Display ("ST-LCD") is a Japanese corporation having its principal place of business in Aichi-Prefecture, Japan. ST-LCD was formed on October 22, 1997 through a joint venture by two other Japanese corporations, Toyota Automatic Loom Works, Ltd., ("Toyota") and Sony Corporation ("Sony"). Ex. A.[1] The sole purpose of ST-LCD appears to be the manufacture of LCD modules. For reasons set forth more fully

---

[1]     All exhibits referenced herein are attached to the Affidavit of Michael D. Okerlund in Support of Plaintiffs' Opposition to ST-LCD's Motion to Dismiss for Lack of Personal Jurisdiction, filed herewith. Each such exhibit is cited herein as "Ex. __."

below, the story of ST-LCD's corporate origin and purpose is quite relevant to the issue of personal jurisdiction now before this Court.

### A. ST-LCD WAS CREATED AND EXISTS FOR THE SOLE PURPOSE OF MANUFACTURING LCD MODULES FOR SONY CORPORATION.

In an interview published in English on Sony's website, Mr. Akira Kojima, Executive Vice President of ST-LCD, explains the impetus behind the formation of ST-LCD. Ex. A at 1-4. According to Mr. Kojima, Sony viewed Toyota as "the professional's professional when it comes to manufacturing" and had previously studied and adopted Toyota's "kanban" system of production in other manufacturing contexts. Ex. A at 2-3. Sony, however, wanted to apply Toyota's "kanban" system to the production of LCDs. *Id.*

While "conventional" LCDs were already being mass produced in Japan, Taiwan and Korea, Mr. Kojima states that Sony was "not interested in an established product but rather wanted to compete in the low-temperature polycrystalline silicon TFT LCD area, since that is the next-generation device in this area." Ex. A at 2. Thus, in order to achieve its goals, Sony sought to combine Toyota's production system with Sony's "technological prowess" to create an "advanced . . . manufacturing plant" to "mass produce . . . LCDs." Ex. A at 1, 2. According to Mr. Kojima, it was Sony that first proposed the LCD manufacturing plan to Toyota; Toyota accepted. *Id.* at 2.

Toyota and Sony each invested initially 15 billion yen to start ST-LCD, and both companies own exactly half of the company. Ex. A at 2. The company, formed in 1997, appears to have been successful. *Id.* Several press releases issuing from Sony Corp. later announced additional investments by Sony and Toyota as well as the subsequent expansion of ST-LCD's manufacturing capacity. Ex. E, F. An English press release on *Sony's* website dated March 8, 2001 announced an additional investment by Sony in ST-LCD to start a second LCD production

line.  Ex. E.  Another Sony press release announces "ST-LCD Corporation to Expand Production Capacity of . . . LCD panels for Digital Still and Cell Phones: 10 billion yen investment to increase production capacity to 40,000 based plates per month."  Ex. F.

**B.    ALL OF ST-LCD'S MODULES ARE SOLD THROUGH SONY'S ESTABLISHED DISTRIBUTION CHANNELS, INCLUDING THOSE CHANNELS IN THE UNITED STATES AND DELAWARE.**

It appears that Toyota does not buy any LCD panels from ST-LCD; Sony, however, clearly does.  In fact, according to ST-LCD, "ST-LCD sells *all of its LCDs* to Sony Corp., in Japan."  (D.I. 325 at 2) (emphasis added).  ST-LCD further states in its brief that Sony incorporates those LCDs into Sony's "own consumer electronics products," while apparently selling the remainder to other manufacturers. (*Id*.).  Many of Sony's "consumer electronics products" containing ST-LCD's products are available for purchase throughout the United States and Delaware via well-established retail chains such as Best Buy and Circuit City.  Exs. G-H.  In fact, Honeywell's initial pre-suit analysis focused on the purchase of such products from retail stores *in Delaware*, including the Circuit City store located at 4130 Concord Pike, Wilmington, Delaware; CompUSA, located at 4211 Concord Pike in Wilmington, Delaware; and Ritz Camera, located at 108 W. 9th Street, also in Wilmington, Delaware.  All of these products incorporated an ST-LCD module.  Ex. K; *see also* Okerlund Decl. at ¶¶ 1-4.

In addition, customers in the United States may purchase any number of Sony's products, including products containing LCDs, through Sony's website. Ex. B at 3.  Visitors to Sony's website, including visitors from Delaware, are invited to enter their email address in order to "Keep . . . informed about Sony special offers, exclusive products and new product information."  Ex. I at 2.

Figures available from both ST-LCD and Sony suggest that the number of LCD products entering the United States is enormous.  ST-LCD began producing LCDs for Sony in

4.

April of 1999, and by 2000 Sony's own figures indicate that "sales and operating revenue" from the sale of Sony's electronics products totaled 4,858 million dollars in the United States (nearly 5 *billion* dollars), as compared to 2,819 million dollars *for all of Europe*. Ex. C. By 2004, ST-LCD's press release published on *Sony's* website states, "Sony Toyota LCD Joint Venture Ships Milestone 100 Million LCD Panels for Mobile Products." Ex. D.

Information and numerous press releases regarding ST-LCD and its apparent success are published in English on Sony's website. For example, a quick search at http://www.sony.net/ using the term "ST liquid crystal display" yields 71 results; a search under "ST-LCD" yields 58 results, all in English. One of these press releases is titled "ST-LCD To Expand Production Capacity of Low-Temperature Polysilicon TFT LCD Panels" and proclaims that "ST Liquid Crystal Display Corporation (ST-LCD) . . . today announced that it will execute a capital expenditure of 75 billion yen to expand its production capacity of low-temperature polysilicon thin film transistor liquid crystal display (TFT LCD) panels." Ex. E.

Sony is a named Defendant in this case, and it is undisputed that Sony conducts extensive business in the United States and Delaware. Representatives for Sony have made a number of appearances before this Court, and Sony itself has not alleged a lack of personal jurisdiction. In order to try to distance itself from this Court's jurisdiction, ST-LCD tries to create the impression in its brief that its relationship with Sony is somehow arms-length. In actuality, it is anything but. For example, ST-LCD states in its brief that after it manufactures its LCDs in Japan "[i]t then sells them to another Japanese company." (D.I. 325 at 11). That other "company," of course, is Sony.[2]

---

[2]     Interestingly enough, ST-LCD's upper management—such as Mr. Akira Kojima, Executive Vice President of ST-LCD—appears to be formed in part by past executives of other Sony companies. *See* Ex. A at 1. It is not known whether those executives report in any way to Sony.

As another example, ST-LCD takes some pains to point out that its website, www.stlcd.co.jp, is in "Japanese with no English translation." The implication, of course, is that information about ST-LCD cannot be understood by Delaware's citizens. (D.I. 325 at 2). What ST-LCD neglects to point out, however, is that anyone in Delaware who is the least bit curious about ST-LCD need only visit *Sony's* website, which appears to contain as much information about ST-LCD (in English, no less) as ST-LCD publishes on its website in Japanese. Why an "arms-length" company would be so generous as to issue most of ST-LCD's press releases to the English-speaking market is not explained in ST-LCD's brief, nor is there any mention of the fact that most of that English-speaking market appears to be comprised of U.S. citizens. Ex. C. Overall, while ST-LCD professes ignorance as to the destination of its modules, such a claim is hard to reconcile with the close business relationship between ST-LCD and Sony.

## ARGUMENT

### I.    ST-LCD INJECTS ITS PRODUCTS INTO A STREAM OF COMMERCE DIRECTED TO THIS FORUM, THUS JUSTIFYING THIS COURT'S EXERCISE OF IN PERSONAM JURISDICTION.

Honeywell has not alleged that ST-LCD is subject to personal jurisdiction because it maintains a corporate presence in the United States or because it sells its LCD products directly to customers in the United States. As this Court is aware, Honeywell has instead alleged that ST-LCD *knows* and indeed *intends* that its products will make their way into the United States via a well-established "stream of commerce." As ST-LCD admits in its brief, Delaware courts recognize Honeywell's "stream of commerce" theory and have repeatedly found it a basis for a determination of personal jurisdiction. *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1320-22 (Fed. Cir. 2005).

### A.    DETERMINING JURISDICTION OVER ST-LCD INVOLVES A TWO-STEP INQUIRY.

Determining whether this Court has personal jurisdiction over the ST-LCD entails a two-step inquiry. The first inquiry is statutory; the second constitutional. *CC Investors Corp. v. Raytheon Co.*, 219 F.R.D. 328, 329 (D. Del. 2003). The statutory inquiry, which applies the law of the state and regional circuit, asks whether Delaware's long-arm statute authorizes personal jurisdiction over the defendant in question, here ST-LCD. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998). If Delaware's long-arm statute does authorize personal jurisdiction, the Court then determines whether exercising jurisdiction over the defendant would violate Federal Due Process. *M & L of Del., Inc. v. Wallace*, 2004 U.S. Dist. LEXIS 21863 at *5 (D. Del. 2004).

In its Opening Brief, ST-LCD suggests it need only allege it is not subject to this Court's jurisdiction and that once that defense is raised, the burden shifts to Honeywell to prove "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." (D.I. 325 at 3). Honeywell, however, notes that ST-LCD's motion to dismiss comes prior to any discovery in this case. Where, as here, "personal jurisdiction is contested without the benefit of discovery, [Honeywell] need only establish a prima facie case, with the record viewed in the light most favorable to [Honeywell]" in order to proceed. *M & L*, 2004 U.S. Dist. LEXIS 21863 at *4-5 (D. Del. 2004). Moreover, upon presenting such a prima facie case, "the burden shifts to the defendant to 'present *a compelling case* that the presence of some other consideration would render jurisdiction unreasonable.'" *Hadley v. Shaffer*, 2003 U.S. Dist. LEXIS 14106 at *5 (D. Del. 2003) (emphasis added) (citing *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993)).

## B.    PERSONAL JURISDICTION EXISTS UNDER DELAWARE'S LONG-ARM STATUTE.

In Delaware, a non-resident party may be subject to personal jurisdiction under sections 3104(c)(1) and (c)(4) of the Delaware long- arm statute.  *See* DEL. CODE. ANN. tit. 10 § 3104(c).  Those provisions state, in relevant part:

> (c)  As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

> (1)  Transacts business or performs any character of work or service in the State;

> (4)  Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . .

Subsection (c)(1) of Delaware's long-arm statute serves as a basis for the exercise of "specific jurisdiction" over defendants transacting business in the state, while subsection (c)(4) serves as a bases for the courts to exercise "general jurisdiction."  *See Del. Mktg. Partners, LLC v. Creditron Fin. Servs.*, 2004 U.S. Dist. LEXIS 17828 at *10 (D. Del. 2004).  Honeywell further notes that "[t]he Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction *to the maximum extent possible* under the due process clause."  *Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 at *5-6 (D. Del. 2004) (emphasis added).

### 1.    DEL. CODE. ANN. TIT. 10 § 3104(C)(1) CONFERS SPECIFIC JURISDICTION OVER ST-LCD IN DELAWARE.

The Delaware Supreme Court has interpreted § 3104 (c)(1) as a specific jurisdiction provision that requires a 'nexus' between the cause of action and the conduct used as a basis for jurisdiction." *Padcom,* 2004 U.S. Dist. LEXIS 9658 at *12 (D. Del. 2004); *Hadley v. Shaffer*, 2003 U.S. Dist. LEXIS 14106 at *22 (D. Del. 2003).  Here, that nexus is satisfied via ST-LCD's sales of its accused products to its parent company, Sony, with the full knowledge and

intent that millions of dollars of those products will be shipped to the United States and Delaware. Where, as here, a defendant has "'purposefully shipped the accused [product] into [the forum state] through an established distribution channel, no more is usually required to establish specific jurisdiction.'" *Padcom,* 2004 U.S. Dist. LEXIS 9658 at *12 (D. Del. 2004) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994)); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940, *11-12 (D. Del. 2004).

ST-LCD claims that Honeywell cannot establish specific jurisdiction over ST-LCD because, even if it "could point to the existence of an allegedly infringing ST-LCD module in Delaware, it could not show that it arrived through an 'established distribution channel.'" (D.I. 325 at 6). This argument simply ignores the facts. ST-LCD's modules unquestionably take advantage of the distribution channels for Sony's consumer electronics products, including those directed to Delaware. In fact in 2000 alone, some *five billion dollars* worth of Sony's consumer electronics were apparently sold in the United States, including in Delaware. Some of those sales of infringing products are accomplished through Sony's internet sales sites, which are in English. Other sales of infringing electronics are made through large consumer electronics retail chains such as Best Buy who sells, for example, Sony's products out of "Store No. 842," which is located at 1165 North Dupont Highway in Dover, Delaware, and out of "Store No. 575" and "Store No. 465," both situated in Wilmington, Delaware. Ex. G. At the Circuit City stores located in Newark and Wilmington, customers can choose from over *three dozen* Sony products, each of which incorporate LCDs.[3] Ex. H. Under these facts, there can be no question that

---

[3] Circuit City, a nationwide consumer electronics retailer has stores at 700 Center Boulevard in Newark, Delaware, and at 4130 Concord Pike in Wilmington, Delaware. According to these stores' websites, at least the following Sony products incorporating

Sony's products make it to Delaware via "established distribution channels," and there can be no question that ST-LCD has availed itself of Delaware's specific jurisdiction.

It is important to remember that ST-LCD appears to have been formed *specifically* to supply LCDs *to* Sony; *i.e.*, when ST-LCD puts its products into the "stream of commerce" the only party downstream from ST-LCD *is* Sony. This Court has found specific jurisdiction under far more attenuated circumstances. For example, in *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940, *11-12 (D. Del. 2004), this court found specific jurisdiction over a Korean company whose products made their way to the United States via a California intermediary company who sold them to another company, Contec, who sold them to its customers in Delaware (among other places). There are no such "intermediaries" here.[4] In *Philips*, as here, "it was reasonably foreseeable that the accused [products] would make their way into the Delaware market through Contec's [or, in this case, Sony's] customers." *Philips*, 2004 U.S. Dist. LEXIS 3940 at *13 (D. Del. 2004).

### 2. DEL. CODE. ANN. TIT. 10 § 3104 (C) (4) CONFERS GENERAL JURISDICTION OVER ST-LCD IN DELAWARE.

Should the Court conclude that Honeywell, based on the facts now available to it, is unable to establish jurisdiction under the specific jurisdiction provision Section (c)(1), ST-LCD will still be subject to personal jurisdiction via Section (c)(4). Section (c)(4) is a "general

---

LCD technology are available at those Delaware stores: Sony LCD flat panel displays, 17 different camcorders, 9 different digital cameras, and at least a dozen LCD TVs. Each of the consumer electronics products listed above having LCD screens. Sony products that do not have LCD technology have not been listed. Ex. H at 1-2.

[4]     The *Philips* case addressed the situation presented by a Korean company called Remote Solutions who manufactured remote control units ("RCU") for its customers based on those customers' specifications. Remote Solution's sole link to the United States (and thus Delaware) appeared to be via a California company called HEI, which entered into several contracts with a number of companies in the United States, including Contec, a company incorporated in Delaware.

jurisdiction" provision under Delaware law that "allows the defendants contacts with the forum

state to be *unrelated* to the cause of action." *Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004

U.S. Dist. LEXIS 9658 at *12 (D. Del. 2004). This Court has stated that it interprets the

language of Section (c)(4) "broadly, as reaching the 'maximum parameters of the due process

clause.'" *In re Elonex Phase II Power Mgmt. Litig.*, 2003 U.S. Dist. LEXIS 7715 at *11 (D. Del.

2003) (citing *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992)).

       In interpreting Delaware's "general jurisdiction" under Section (c)(4), this Court's

decision in *In re Elonex* is instructive. *In re Elonex* involved a Taiwanese company "Jean" that

sold monitors to various computer manufactures, such as ViewSonic and eMachines. *Id.* at *4-

5. Like ST-LCD's customer in the instant case (Sony), ViewSonic and eMachines then

subsequently sold those monitors on the internet and through "well-established retail distribution

networks" such as Best Buy stores that operate in Delaware. *Id.* at *5. In finding that the Court

had personal jurisdiction under Section (c)(4), the Court summed up its rationale as follows:

> Jean sells its monitors to ViewSonic and eMachines, who in turn distribute Jean's
> monitors to retailers with Delaware operations. Given ViewSonic's and
> eMachines' extensive re-reseller networks in Delaware and on the Internet, Jean
> cannot credibly claim it had no inkling that some of its monitors would make their
> way into Delaware via well-established distribution channels. . . Jean has
> intentionally sold monitors using nationwide distribution channels. This knowing
> and purposeful shipment of monitors satisfies the act requirement of Section
> 3104(c)(4) . . . Because Jean undeniably derives substantial revenue from these
> activities, it is subject to jurisdiction under Delaware's long-arm statute.

*In re Elonex*, 2003 U.S. Dist. LEXIS 7715 *12 (D. Del. 2003) (citing *Beverly Hills Fan Co. v.

Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994)).

       *In re Elonex* is so closely analogous to the case at bar that one need only replace

the name "Jean" with "ST-LCD," "monitors" with "LCDs" and "ViewSonic and eMachines"

with "Sony," and the above passage and its rationale remains 100% accurate. The products

manufactured by both Jean and ST-LCD end up in Delaware via some of the same retail chain stores, such as Best Buy and Circuit City, who sell them on the shelves of their stores in Delaware. The only difference is that in the present case, ST-LCD's connection to Delaware is even closer by virtue of the fact that ST-LCD sells its products not to an unrelated third party such as eMachines that has extensive contacts with the forum state, but to Sony, ST-LCD's only customer and the very company behind the formation of ST-LCD. Moreover, with Sony's billions of dollars of annual sales in the United States, there can be no question that ST-LCD and Sony derive substantial revenues from Delaware sales of its infringing products.

A slightly different, though similar case, presented itself in *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005). In *Commissariat,* the Federal Court discussed at length Delaware's general jurisdiction in the context of "CMO," a Taiwanese manufacturer with a far more attenuated connection to Delaware than ST-LCD's here or Jean's in *In re Elonex.* In *Commissariat,* the Taiwanese manufacturer a) sold modules to various companies who in turn b) used those LCD modules to build computer monitors that were then c) sold to various computer manufactures, who in turn d) shipped them to the United States where they were e) sold via U.S. retail outlets and likely in Delaware. *Id.*

Against this factual background, the plaintiff presented evidence of "established distribution channels" into the United States and *likely* in Delaware, and asserted that the court had personal jurisdiction over the defendant under the "stream of commerce theory" available under Section (c)(4). *Id.* at 1321. The District Court, however, granted the defendant's motion to dismiss, noting that while the plaintiff had set forth evidence that the defendant derived substantial revenue from sales in the United States, it had failed to demonstrate that sufficient

revenues flowed from Delaware and had further failed to timely move for additional jurisdictional discovery.[5]

On appeal, the Federal Circuit indicated that the court had imposed "too high a burden" on the plaintiff, noting that it had provided evidence that the defendant sold a "very large volume of LCDs to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." *Commissariat*, 395 F.3d at 1320. In so doing, the Federal Circuit noted that "[t]he evidence on the established distribution channels presented by [the plaintiff] suggests that the flow of [the Taiwanese manufacturer's] products to Delaware is "regular and anticipated," and more than "unpredictable currents or eddies," thus likely satisfying Justice Brennan's (and possibly Justice O'Connor's) version of the stream of commerce theory. *Id.* at 1321-22.

In the end, the Federal Circuit remanded the case to the District Court for additional discovery, saving for another day the question of whether Delaware's long-arm statute was coextensive with Justice Brennan's or Justice O'Connor's test in *Asahi*, discussed *infra*. The Federal Circuit took no position on whether Delaware's long-arm statute was coextensive with the due process clause, *id*. at 1322, though Delaware's courts have repeatedly noted that "[t]he Delaware long-arm statute has been construed 'broadly . . . to confer jurisdiction to the maximum extent possible under the due process clause.'" *M & L of Del., Inc. v. Wallace*, 2004 U.S. Dist. LEXIS 21863 at *5 (D. Del. 2004) (citing *La Nuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)). Following the Federal Circuit's observations in *Commissariat,* the defendants in that case appear to have dropped their jurisdictional challenge.

---

[5]    As explained further in section II, *infra*, should ST-LCD's motion not be dismissed by this Court outright, Honeywell respectfully moves this Court for time to conduct jurisdictional discovery in order to flesh out those facts related to ST-LCD's relationship with Sony, as well as those companies' jurisdictional-contacts with Delaware.

In their brief, the Defendants give short shrift to the Federal Circuit's decision in *Commissariat*, relegating discussion of that case to two footnotes, and ignore altogether the highly relevant case *In re Elonex*, discussed above. Instead, the Defendants focus on *Merck & Co., v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002), a case which is irrelevant to Honeywell's stream of commerce theory under § 3104 (c)(4). In *Merck*, the court stated "in the instant case, [the defendant] is not alleged to have placed a product that caused Merck injury into the stream of commerce, a fact which distinguishes this case from those that have applied a stream of commerce theory under § 3104 (c)(4)." *Merck*, 179 F. Supp. 2d at 374.

Similarly, the *Siemens* case cited by the Defendants predates both *In re Elonex* and *Commissariat*, and is also distinguishable on its facts. *Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F. Supp. 2d 622 (D. Del. 1999). The holding in that case focused on the fact that neither the defendants nor the defendants' distributor had solicited business *of any kind* in Delaware. *Siemens*, 69 F. Supp. 2d at 627. There, the court noted that "[n]either LG Semicon or its distributor All American have sold DRAM chips in Delaware." *Id*. That is not the situation here. ST-LCD is essentially a partially-owned subsidiary of Sony. Sony appears to be the sole distributor of ST-LCD's products, and Sony and ST-LCD derive substantial revenues from Sony's direct and pervasive contacts throughout Delaware and the rest of the United States.

## C.     FEDERAL DUE PROCESS CLAUSE IS NOT OFFENDED BY BRINGING ST-LCD BEFORE THIS COURT.

A state's long-arm statute may extend to the full jurisdictional bounds of the due process clause, but no further. It is for this reason that several states' long arm statutes authorize their courts to exercise jurisdiction that are coextensive with federal due process, effectively collapsing their long-arm statutes into the federal due process question. *Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 at *6 (D. Del. 2004). For the moment,

Delaware does not collapse its long-arm statute inquiry into the federal due process quotation, despite the fact that the Delaware Supreme Court repeatedly has made clear that "section 3104(c) has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." *La Nuova D & B, S.P.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) (citations omitted); *see also Padcom*, 2004 U.S. Dist. LEXIS 9658, *5-6 (D. Del. 2004); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760 (D. Del. 2004). Thus, this Court must nevertheless undergo the due process analysis.

The Supreme Court has stated that the test for determining whether the exercise of personal jurisdiction is consistent with due process is whether the defendant has such "minimum contacts" with the forum that subjecting the defendant to a judgment *in personam* "does not offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 108-09, 113 (1987); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Such minimum contacts can be demonstrated under either general or specific jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Like *Commissariat* and the instant case, the *Asahi* decision discussed the "stream of commerce theory" in the context of a foreign defendant with no direct contacts with the forum state. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). As stated by the Federal Circuit in *Commissariat*, "the [*Asahi*] Court was split as to what would constitute sufficient minimum contacts with the forum state under the stream of commerce theory." *Commissariat*, 395 F.3d at 1321. On the issue of minimum contacts, Justice O'Connor stated that more than a "mere act of placing the product into the stream [of commerce]" is required, and that due process also demands "an act of the defendant purposefully directed toward the forum State."

*Commissariat*, 395 F.3d at 1321.  Justice Brennan's standard, on the other hand, held that Justice O'Connor's "additional conduct" was not necessary where there exists a "regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.*  Whether Justice Brennan's standard or Justice O'Connor's standard is appropriate here, however, is unclear.  *Id*. at 1322.

That the Federal Circuit has not yet weighed in on this issue follows from the simple fact that most cases, such as the one at bar, involve facts that are more than sufficient to satisfy Justice O'Connor's test.  In analyzing the due process question in the patent infringement context, the Federal Circuit explained: "We have yet to decide whether Justice Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor."  *Id.*

## 1.     SPECIFIC JURISDICTION OVER ST-LCD DOES NOT OFFEND THE DUE PROCESS CLAUSE.

Honeywell has more than satisfied Justice O'Connor's standard here for the same reasons it satisfies the specific jurisdiction requirements under Delaware's long-arm statute.  Namely, ST-LCD *deliberately* places its LCD products into the stream of commerce through well-defined and established distribution channels that purposefully are directed toward the forum state.

ST-LCD sends its accused products to Sony, who uses them in a variety of products that it sells all over Delaware.  Further continuous and ongoing contacts are also established via Sony's internet retail sites, which are in English and are directed to the whole of the United States, including Delaware.  As this Court has noted, "[t]he Federal Circuit has held that, where a defendant has 'purposefully shipped the accused [product] into [the forum state] through an established distribution channel . . . no more is usually required to establish specific

jurisdiction." *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940, *11-12 (D. Del. 2004) (citations omitted). That standard is clearly met here.

### 2. GENERAL JURISDICTION OVER ST-LCD DOES NOT OFFEND THE DUE PROCESS CLAUSE.

ST-LCD's activities also satisfy due process under an exercise of general jurisdiction via Delaware's long-arm statute. Where a defendant has "continuous and systematic" contacts with the forum, the courts of the forum may exercise personal jurisdiction over the defendant on causes of action that do not arise from or relate to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73 (1984). ST-LCD satisfies that standard.

As explained above, ST-LCD was formed for the sole purpose of manufacturing LCDs. Sony owns half of ST-LCD and appears to be the only direct purchaser of ST-LCD's products. Sony has not sought to challenge this Court's jurisdiction, and with good reason: its contacts in Delaware are as extensive as they are "continuous and systematic." It would be disingenuous for Sony to deny that none of the several billions of dollars of revenue it receives for the sale of its products in the United States annually comes from Delaware, nor is it likely to challenge the fact that its website invites its customers to receive product updates, including product updates containing ST-LCD's accused products. Under these circumstances, and given Sony's unique relationship with ST-LCD, Sony's continuous and systematic contacts with Delaware must be imputed to ST-LCD, the company it formed and largely controls.

### 3. EXERCISING SPECIFIC JURISDICTION OVER ST-LCD DOES NOT VIOLATE TRADITIONAL NOTIONS OF FAIR PLAY AND JUSTICE.

In its brief, ST-LCD claims that even if Honeywell is able to establish sufficient "minimum contacts" with Delaware for the Court to exercise its jurisdiction, exercising that

jurisdiction would offend traditional notions of fair play and justice. (D.I. 325 at 14). ST-LCD's arguments in this regard merely reiterate its incorrect claim that it has no connection to Delaware, despite the fact that even preliminary evidence obtained to date is sufficient to show that it has shipped over 100 million LCD panels for mobile products, and that outside of Japan, no one buys more of those products than U.S. citizens, including citizens in Delaware. Ex. D.

Moreover, while ST-LCD claims that dismissing ST-LCD from this case "would not burden or harm Honeywell in any manner," that is simply incorrect. ST-LCD's arguments would apply equally well to any forum state as well as Delaware, and, somewhat predictably, ST-LCD's logic would preclude it from being held accountable for patent infringement anywhere in the United States, no matter how many of its infringing LCD products are sold here. As stated above, ST-LCD has numerous contacts here through its parent company, Sony, and all evidence shows that ST-LCD derives a very substantial portion of its income from products that are sold in the United States, including Delaware. Defending this lawsuit in Delaware is no more arduous for ST-LCD than defending in any other court, and ST-LCD has, predictably, not identified a U.S. venue that is more convenient.

### D.    ST-LCD IS SUBJECT TO PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2).

Should this Court for any reason find that it does not have jurisdiction over ST-LCD by virtue of Delaware's long-arm statute, this Court may still exercise its jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2). As this Court has previously stated, personal jurisdiction under Rule 4(k)(2) may be exercised if "(1) plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law." *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004

U.S. Dist. LEXIS 19760 at *16 (D. Del. 2004); *BP Chems. Ltd. V. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258 (3d Cir. 2000).

Here, each of the requirements for jurisdiction under Rule 4(k)(2) is satisfied. First, this is a patent infringement case, which indisputably qualifies as a claim arising under federal law. The second requirement will also be satisfied here if this Court finds that it cannot reach ST-LCD through an application of Delaware's long-arm statute. The Defendants have stated that they have no contacts with the United States at all, and thus would not be subject to the jurisdiction of any other state. Finally, the third requirement would also be satisfied because subjecting ST-LCD to this Court's jurisdiction runs afoul of no federal law and comports fully with the Constitution. Should, therefore, this Court determine for any reason that ST-LCD is not subject to the long-arm jurisdiction of this Court, jurisdiction must therefore lie via Rule 4(k)(2).

## II.    AT A MINIMUM, HONEYWELL IS ENTITLED TO OBTAIN JURISDICTIONAL DISCOVERY FROM SONY AND ST-LCD.

As noted above, where "personal jurisdiction is contested without the benefit of discovery, [Honeywell] need only establish a prima facie case, with the record viewed in the light most favorable to [Honeywell]" in order to proceed. *M & L of Del., Inc. v. Wallace*, 2004 U.S. Dist. LEXIS 21863 at *4-5 (D. Del. 2004). Here, Honeywell has set forth facts sufficient to deny ST-LCD's motion outright. Should, however, this Court determine that the record is insufficient to demonstrate the presence of specific or general jurisdiction under Delaware's long-arm statute, Honeywell respectfully requests that the Court permit Honeywell to conduct additional discovery into ST-LCD's contacts with the forum state.

Honeywell submits that, given the strong relationship between ST-LCD and Sony, ST-LCD is aware of how its LCD modules are being used, and where they are going. Additional discovery would confirm the extent of such awareness as it relates to this forum. For example:

- To what extent Sony advertises ST-LCD's products to other consumers and through what channels;

- What control Sony exhibits over ST-LCD's product lines;

- To what extent ST-LCD cooperates with Sony Corp. in advertising its services;

- How many products Sony sells to Delaware residents over the internet, and the number and kind of Sony's consumer electronic products that are sold in Delaware.

- Whether Sony has, among other things, executed an agreement to defend ST-LCD against claims of patent infringement in the United States.[6]

## **CONCLUSION**

For the reasons set forth above, jurisdiction in the State of Delaware and this Court is entirely proper, and ST-LCD's Motion to Dismiss for Lack of Personal Jurisdiction must be denied.

---

[6]     If so, that fact might well demonstrate that ST-LCD was "well aware of and prepared for the possibility of litigation" where Sony does business.  *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940 (D. Del. 2004).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Leslie A. Polizoti
_____
Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

February 27, 2006
508724

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, Christopher E. Chalsen, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Amy Elizabeth Evans, York M. Faulkner, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Richard L. Horwitz, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Stephen S. Korniczky, Hamilton Loeb, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Gerard M. O'Rourke, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, Alana A. Prills, Steven J. Rizzi, Avelyn M. Ross, Philip A. Rovner, Carl E. Schlier, John M. Seaman, Chad Michael Shandler, John W. Shaw, William J. Wade, Roderick B. Williams and Edward R. Yoches.

I further certify that I caused true and correct copies of the foregoing to be served on the following in the manner indicated:

**<u>BY HAND</u>**
John W. Shaw
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

**<u>BY FEDERAL EXPRESS</u>**
John Flock
KENYON & KENYON LLP
One Broadway
New York, NY 10004

*/s/ Leslie A. Polizoti* (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com