# TAB 1

LEXSEE

**AMERICAN BIO MEDICA CORPORATION, Plaintiff, v. PENINSULA DRUG ANALYSIS CO., INC.; JAMES T. RAMSEY; PHAMATECH, INC.; DIPRO DIAGNOSTIC PRODUCTS, INC.; DIPRO DIAGNOSTIC PRODUCTS OF NORTH AMERICA, INC., Defendants.**

**Civil Action No. 99-218-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**1999 U.S. Dist. LEXIS 12455**

**August 3, 1999, Decided**

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendants' motions to dismiss granted in part and denied in part. Defendants' motions to transfer venue granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants filed motions to dismiss or transfer venue in plaintiff's action against defendants for design patent infringement, violation of the Lanham Act, and other acts of unfair competition.

**OVERVIEW:** Plaintiff sued defendants for design patent infringement, violation of the Lanham Act, and other acts of unfair competition. Defendant California corporation filed an action in another district. Defendants filed motions to dismiss or transfer venue in plaintiff's action. The court could have exercised personal jurisdiction over defendant Delaware corporation. The issue was whether the exercise of personal jurisdiction over the others comported with the law. Such exercise over defendants Virginia corporation and its sole stockholder and employee was compatible with both Del. Code Ann. tit. 10, § 3104(c)(1), and federal due process considerations. They purposefully directed their activities at Delaware residents, out of which plaintiff's claims arose. There was no compelling evidence that suggested that such exercise would have been unreasonable. The court declined to find that defendant California corporation transacted business consistent with § 3104(c)(1) and (3); thus, the court could not have exercised personal jurisdiction over it. Motions to dismiss were granted in part and denied in part. Motions to transfer venue were granted.

**OUTCOME:** The court granted in part and denied in part defendant corporations' motions to dismiss. The court could have exercised personal jurisdiction over defendant Delaware corporation and defendant Virginia corporation, as well as over that defendant's sole stockholder and employee. However, the court could not have exercised personal jurisdiction over defendant California corporation. Therefore, the court granted defendants' motions to transfer venue.

**CORE TERMS:** resident, website, long-arm, personal jurisdiction, exercise of personal jurisdiction, venue, exercise personal jurisdiction, infringing, causes of action, tangible, patent, customers, ongoing, transacting business, general business, intermediary, out-of-state, marketing, isolated, summons, internet, transactional, designated, omission, tortious, course of conduct, purposefully, solicitation, negotiations, amenability

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a prima facie case with the record viewed in the light most favorable to the plaintiff.

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN2] According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, is applicable.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] Pursuant to Fed. R. Civ. P. 12(b)(2), a court may dismiss a suit for lack of jurisdiction over the person.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] Before a court may exercise personal jurisdiction over a defendant there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Civil Procedure > Pleading & Practice > Service of Process*
[HN5] Fed. R. Civ. P. 4(e)(1) states that service of a summons may be effected pursuant to the law of the state in which the district court is located.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] The Delaware long-arm statute, Del. Code Ann. tit. 10, § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] The Delaware Supreme Court has not determined that Del. Code Ann. tit. 10, § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN8] See Del. Code Ann. tit. 10, § 3104(c).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN9] The conduct embraced in Del. Code Ann. tit. 10, § 3104(c)(1) and (2), the transaction of business or performance of work and contracting to supply services or things in the state, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction. Similarly, where the claim is one for tortious injury under § 3104(c)(3), a single "act or omission" in the state in which the injury was caused will suffice. Such a claim may also be viewed as transactional.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN10] In order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from those act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute transacting business in Delaware, i.e., that defendants purposefully availed themselves of the privileges and benefits of Delaware law.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN11] Mere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN12] The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is part of a general business plan to solicit business in Delaware and deliver products to customers in Delaware.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN13] Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN14] The minimum contacts must be "purposeful" contacts; even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation."

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN15] Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN16] The Federal Circuit suggests a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair?

*Civil Procedure > Venue > Change of Venue Generally*
[HN17] Generally, in reviewing a motion for transfer of venue, the court gives great deference to a plaintiff's choice of forum and only transfers venue if the defendants truly are regional (as opposed to national) in character. Motions to transfer venue are granted as well if there is a related case that has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties.

**COUNSEL:** For plaintiff: Daniel F. Wolcott, Jr., Esquire, Gregory A. Inskip, Esquire, Joanne Ceballos, Esquire, Potter, Anderson & Corroon LLP, Wilmington, Delaware.

For plaintiff: Charles Michael Tobin, Esquire, Hopkins & Sutter, Washington, D.C.

For Peninsula Drug Analysis Co., Inc., James T. Ramsey, DiPro Diagnostic Products, Inc., DiPro Diagnostic Products of North America, Inc., defendants: Matthew B. Lehr, Esquire, Maryellen Noreika, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.

For Peninsula Drug Analysis Co., Inc., James T. Ramsey, DiPro Diagnostic Products, Inc., DiPro Diagnostic Products of North America, Inc., defendants: Edward W. Moore, Esquire, Dallas, Texas.

For Peninsula Drug Analysis Co., Inc., James T. Ramsey, DiPro Diagnostic Products, Inc., DiPro Diagnostic Products of North America, Inc., defendants: Doreen L. Costa, Esquire, Neil P. Sirota, Esquire, Steven R. Gustavson, Esquire, Of Counsel, Baker & Botts, L.L.P., New York, New York.

For Phamatech, Inc., defendant: Kevin W. Goldstein, [*2] Esquire, Ratner & Prestia, Wilmington, Delaware.

For Phamatech, Inc., defendant: Steele N. Gillaspey, Esquire, Of Counsel, Gillaspey, Harms & Associates, San Diego, California.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: August 3, 1999

Wilmington, Delaware

**ROBINSON**, District Judge

## I. INTRODUCTION

Pending before the court are motions to dismiss or transfer venue filed by defendants Dipro Diagnostic Products of North America, Inc. ("Dipro"), Phamatech, Inc. ("Phamatech"), and Peninsula Drug Analysis Co., Inc. and James T. Ramsey ("Peninsula" and "Ramsey," respectively). (D.I. 17, 25 and 49) Plaintiff American Bio Medica Corporation ("ABMC") opposes said motions. ABMC owns the rights to U.S. Design Patent No. D404812, which patent issued on January 26, 1999. ABMC is a New York corporation engaged in the manufacture, worldwide distribution and sale of the Rapid Drug Screen, a product covered by the patent at issue. According to ABMC, when the Rapid Drug Screen was developed in 1995, it was the first vertical, hands free test for the detection of the presence of drug residue in urine. Until February [*3] 1999, ABMC purchased test strips from defendant Phamatech for incorporation into the Rapid Drug Screen. ABMC alleges that Phamatech initiated production of its own vertical test kit (Quick Screen) in 1998 or earlier, using proprietary information it acquired by reason of its supply relationship with ABMC.

Defendant Phamatech is a California corporation. According to ABMC, Phamatech distributes Quick Screen through the auspices of defendants Peninsula and Ramsey, among others. Defendant Dipro is a Delaware corporation that, according to ABMC, acquires directly or indirectly from Phamatech an accused product called Rapid Response and distributes that product through Peninsula and Ramsey, among others. Peninsula is a Virginia corporation and Ramsey is the sole stockholder and an employee of Peninsula.

Plaintiff ABMC initiated this lawsuit on April 7, 1999 against defendants for design patent infringement, violation of the Lanham Act, and other acts of unfair competition. A day later, on April 8, 1999, Phamatech filed suit in the United States District Court for the Southern District of California seeking a declaratory judgment that ABMC's design patent is invalid, and joining other [*4] federal and state claims essentially mirroring the claims and operative facts at issue. By decision issued June 21, 1999, Judge Keep of the Southern District of California found that the California court could exercise specific personal jurisdiction over ABMC; however, applying the "first-filed" rule, she stayed the California case pending disposition of the instant motions.

## II. FACTS

The facts are essentially undisputed. Prior to the filing of the complaint, none of the accused products had been sold to a Delaware resident. In the fall of 1998, defendant Peninsula did ship an order of ABMC's Rapid Drug Screen to a Delaware resident, Pace Electric of New Castle, Delaware. Sometime thereafter and prior to January 1999, Peninsula stopped handling ABMC's product. In January 1999, defendant Ramsey and a third party met with a representative of Pace to discuss a possible business relationship for the sale and distribution of the Phamatech/Dipro product, Rapid Response, in Delaware. These discussions took place in Hawaii and Maryland. Although there are averments of record indicating that some agreement was reached (D.I. 32), it is the court's understanding that no actual sales [*5] or movement of defendants' products occurred in Delaware prior to the filing of the complaint.

Prior to April 1999, Peninsula sent direct mail postcards to Delaware as part of a mass mailing to potential customers in more than 20 states. n1 Both Ramsey and Phamatech maintain national Internet websites that can be accessed from Delaware. It is the court's understanding that these websites include promotional material about the allegedly infringing products, including information on ordering and shipping; however, orders cannot be consummated directly through the websites.

n1 Approximately 60 out of a total of 6,000 postcards were directed to Delaware residents. No responses are recorded.

## III. DISCUSSION

### A. Personal Jurisdiction

ABMC, as plaintiff, bears the burden of establishing that this court may exercise personal jurisdiction over defendants. [HN1] When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a prima facie case with the record [*6] viewed in the light most favorable to the plaintiff. See Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1462 (D. Del. 1991); Computer People, Inc. v. Best Int'l Group, Inc., 1999 Del. Ch. LEXIS 96, No. Civ. A. 16648, 1999 WL 288119, at *4 & n.5 (Del. Ch. Apr 27, 1999). There is no question but that this court can exercise personal jurisdiction over defendant Dipro, a Delaware corporation. The focus of the following discussion, therefore, is whether the exercise of personal jurisdiction over the remaining defendants comports with the law of the Federal Circuit. n2

n2 [HN2] According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

[HN3] Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss [*7] a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

[HN4]
before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). The principle pronounced above is traditionally described in this court as a two-step analysis. The court will determine, first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendants' rights to due process.

[HN5] Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the dis-

trict court is located." [HN6] The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly . . . to confer jurisdiction to the maximum extent possible [*8] under the due process clause." LaNuova D & B S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986). As noted by this court in Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998). [HN7] "the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis." Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd., 611 A.2d 476, 480-81 (Del. 1992); Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc., 1991 Del. Ch. LEXIS 113, Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); Ramada Inns v. Drinkhall, 1984 Del. Super. LEXIS 599, No. Civ. A. 83 C-AU-56, 1984 WL 247023, at *2 (Del. Super. May 17, 1984). Therefore, the court must determine that the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendants' constitutional rights to due process. n3

n3 The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we . . . defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998). Thus, in Luker, the Federal Circuit's analysis followed that of the Sixth Circuit's holding in R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc., 811 F.2d 967 (6th Cir. 1987): "'This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations.'" Luker, 45 F.3d at 1544 (quoting Dribeck, 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

[*9]

Delaware's long-arm statute provides:

(c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-

resident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

[HN8] Del. Code Ann. tit. 10, § 3104(c)(1) - (4).

As explained by the Delaware Supreme Court in LaNuova,

[HN9]
the conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to [*10] the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.

. . .

Similarly, where the claim is one for tortious injury under subsection (c)(3),

a single "act or omission" in the State in which the injury was caused will suffice. Such a claim may also be viewed as transactional.

LaNuova, 513 A.2d at 768. Therefore, [HN10] in order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from those act or acts. According to relevant caselaw, plaintiff

also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendants "purposefully avail[ed themselves] of the privileges and benefits of Delaware law." Computer People, Inc., 1999 WL 288119, at *8; see also Thorn EMI N. Am. v. Micron Tech., Inc., 821 F. Supp. 272, 274 (D. Del. 1993) (stating that the designated conduct "must be directed at residents of the State of [*11] Delaware and the protection of its laws"). With this requirement in mind, courts have concluded that [HN11] "mere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." Id. (citing Moore v. Little Giant Indus., Inc., 513 F. Supp. 1043, 1047 (D. Del. 1981); Waters v. Deutz Corp., 460 A.2d 1332, 1335 (Del. Super. 1983). [HN12] The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is "part of a general business plan . . . to solicit business in Delaware and deliver products to customers in Delaware." Thorn EMI, 821 F. Supp. at 274.

Plaintiff alleges in its complaint seven causes of action, including unlawful use of the trademarks and service marks of the Rapid Drug Screen in violation of the Lanham Act and common and state law trademark rights; violation of the design patent "by making, using and/or selling the ABMC design . . ."; and engaging in unfair competition and deceptive trade practices. (D.I. 1) Although the products at issue have not been made, used, or sold in Delaware, plaintiff [*12] asserts that, "through offers and extensive planning to sell the infringing product in Delaware, defendants have engaged in a course of conduct that readily meets the nexus requirements of sections 3104(c)(1), (2), and (3)." (D.I. 57 at 7-8)

The record demonstrates that defendants Peninsula and Ramsey have offered to sell n4 allegedly infringing products to Delaware residents through what appears to be a concerted marketing effort. The marketing effort includes national advertisements accessible to Delaware residents (the internet website), out-of-state sales negotiations with a Delaware resident, n5 and the mailing of promotional materials to Delaware residents. Given the history of these defendants' relationship with plaintiff, the record adequately demonstrates that these activities are directed at Delaware residents, constitute "transacting business," and are sufficiently related to plaintiff's causes of action to satisfy the requirements of 10 Del. C. § 3104(c)(1). n6 Cf. Computer People, Inc., 1999 WL 288119, at *8. n7

n4 Plaintiff did not specifically allege such in its complaint; however, 35 U.S.C. § 271(a) reads "whoever without authority makes, uses, **offers**

to sell, or sells any patented invention . . . infringes the patent." (Emphasis added)

[*13]

n5 The out-of-state sales negotiations with Pace Electric are viewed in tandem with defendants' other conduct as evidence of a general business plan directed at Delaware residents and the protection of its laws.

n6 As noted, the court is satisfied that the activities described above are "part of a general business plan" and not isolated, unrelated events. In the past, this court has demanded as well proof that the activities have had a "tangible effect" in Delaware. See, e.g., Intel Corp., 20 F. Supp. at 696 (". . . SST's solicitations in Delaware [have not] been shown to have had any tangible effect on Intel's sales here."). Sales are not generally because of the sale of competing products. Given the fact that liability under 35 U.S.C. § 271(a) can now rest on mere "**offers** to sell," the court is reluctant to require proof of actual sales and is not sure what other "tangible effect" is contemplated. Therefore, the court will not require evidence of "tangible effects" in this case.

n7 Although the court noted that, "as a general matter telephone calls and an e-mail [to a Delaware resident] do not, in and of themselves, automatically constitute 'transacting business' within Delaware sufficient to invoke jurisdiction under § 3104(c)(1)," the court looked at the specific factual context and held that these contacts were insufficient because they could not be a basis for the plaintiff's causes of action.

[*14]

The court further finds that the exercise of personal jurisdiction over these defendants comports with federal due process considerations. The Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), held that

> [HN13]
> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Id. at 316 (citation omitted). The Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985), added the further requirement that [HN14] the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." Id. at 475 n.18. Therefore, [HN15] "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case [*15] that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. In Luker, [HN16] the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? See Luker, 45 F.3d at 1545-46. The court has already answered the first two inquiries in the affirmative and has not discovered in the record any compelling evidence which suggests that the exercise of personal jurisdiction over these defendants would be unreasonable.

The court concludes otherwise with respect to defendant Phamatech. The conduct attributed to Phamatech includes the following: 1) Phamatech manufactures allegedly infringing products; 2) Phamatech arranges for the distribution of its product through defendants Peninsula and Ramsey; and 3) Phamatech advertises its product through an Internet website accessible to Delaware residents. As noted previously, however, there had been no actual sales of infringing product in Delaware prior to the filing [*16] of the complaint. Neither is there evidence relating Phamatech to Peninsula and Ramsey's marketing efforts directed at Delaware residents. Although plaintiff asserts that "Phamatech intentionally established a chain of distribution that it knew, or reasonably could have foreseen, had a termination point in Delaware" (D.I. 62 at 11), the record does not demonstrate the existence of ongoing commercial relationships with retailers and customers in **Delaware**.

The facts of record are distinguishable, therefore, from the facts in Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994), cited by plaintiff. In that case, the court concluded that the alleged infringers were placing accused products into the chain of commerce, which included shipping products into the forum for sale to customers through an intermediary.

Because the commercial relationship with the intermediary was ongoing and the accused products in fact had been shipped into the forum, the court found the defendant amenable to the exercise of personal jurisdiction: "From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the [*17] intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was [the forum]." Royal Sovereign, 21 F.3d at 1564. Instantly, there is no evidence demonstrating that Phamatech directed Peninsula and Ramsey's sales efforts at Delaware residents; there certainly is no evidence of any ongoing commercial relationships between Phamatech, Peninsula/Ramsey, and Delaware residents. The final conduct designated is Phamatech's Internet website. Assuming for purposes of this motion that a website with product information constitutes an "offer to sell," in the absence of evidence that Delaware residents actually accessed this website, the court declines to find that Phamatech transacted business in Delaware, consistent with 10 Del. C. § 3104(c)(1) and (3). n8

    n8 Plaintiff does not assert general jurisdiction under § 3104(c)(4).

### B. Venue

[HN17] Generally, in reviewing a motion for transfer of venue, this court gives great [*18] deference to a plaintiff's choice of forum and only transfers venue if the defendants truly are regional (as opposed to national) in character. Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties. Given the court's conclusion that it cannot exercise personal jurisdiction over defendant Phamatech, the manufacturer of the accused products, transfer of this case to the Southern District of California is warranted.

### IV. CONCLUSION

For the reasons stated, defendants' motions to dismiss are granted in part and denied in part. Defendants' motions to transfer venue are granted.

An appropriate order shall issue.

# TAB 2

LEXSEE 1997 US DIST LEXIS 7905

**CFMT INC. and CFM TECHNOLOGIES, INC., Plaintiffs, v. STEAG MICROTECH, INC., and STEAG MICROTECH GMBH DONAUESCHINGEN, Defendants.**

**Civil Action No. 95–442–LON**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1997 U.S. Dist. LEXIS 7905*

**January 9, 1997, Decided**

**DISPOSITION:** [*1] SMTD's motion to dismiss the amended complaint granted.

**COUNSEL:** Edward B. Maxwell, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, Attorney for Plaintiffs.

Arthur G. Connolly, Jr., Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, Attorney for Defendant Steag Microtech, Inc. Kent A. Jordan, Esquire, Morris, James, Hitchens & Williams, Wilmington, Delaware, Attorney for Defendant Steag Microtech GmbH Donaueschingen.

**JUDGES:** MARY PAT TROSTLE, Federal Magistrate-Judge

**OPINIONBY:** MARY PAT TROSTLE

**OPINION:**

**OPINION**

Dated: **January 9, 1997**

**Wilmington, Delaware**

**MARY PAT TROSTLE, Federal Magistrate–Judge**

Defendant Steag Microtech GmbH Donaueschingen ("SMTD") has filed a motion pursuant to *Federal Rule of Civil Procedure 12(b)(2)* requesting dismissal of the amended complaint for lack of personal jurisdiction. (Docket Item "D.I." 179). Plaintiffs CFMT and CFM Technologies, Inc. have opposed defendant's motion principally under a "national contacts" analysis, arguing that sufficient contacts of SMTD with the United States have been established to justify the exercise of jurisdiction and, thus, traditional notions of fair play and substantial justice will not be offended [*2] by subjecting SMTD to the jurisdiction of this Court. (D.I. 187).

**I. BACKGROUND**

Plaintiffs initiated this patent action on July 10, 1995, alleging defendant Steag Microtech, Inc. n1 infringed its patent related to a process and apparatus for drying surfaces including, but not limited to, semiconductor wafers. (D.I. 1). Subsequently, on September 29, 1995, plaintiffs filed an amended complaint which added SMTD as a defendant. (D.I. 22). On December 12, 1995, the Court authorized service of process upon SMTD pursuant to *Federal Rule of Civil Procedure 4(f)(1)* and the Hague Convention on the Service Abroad of Judicial and Extra judicial Documents (hereinafter "Hague Convention"). Service upon SMTD was perfected on February 13, 1996. (D.I. 99).

> n1 STEAG Microtech Inc. and SMTD are sister companies owned by STEAG Industries AG. (D.I. 187 at 1).

On April 18, 1996, SMTD filed a motion to dismiss the amended complaint for lack of personal jurisdiction. (D.I. 82). Subsequently, an Order was issued on May 13, 1996 [*3] directing SMTD to withdraw without prejudice the filing of its motion to dismiss, allowing plaintiffs additional time to investigate the propriety of jurisdiction. (D.I. 93). On November 18, 1996, defendant SMTD renewed its motion to dismiss on the same basis (D.I. 179), and plaintiffs submitted a letter memorandum in opposition on December 2, 1996. (D.I. 187). SMTD filed its reply memorandum on December 10, 1996. (D.I. 193). This Court's Report and Recommendation follows below.

**II. DISCUSSION**

SMTD contends that this Court lacks personal jurisdiction over it and, accordingly, moves for dismissal pursuant to *Fed.R.Civ.P. 12(b)(2)*. Rule 12(b)(2) provides, in pertinent part

1997 U.S. Dist. LEXIS 7905, *3

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

***

(2) lack of jurisdiction over the person . . . .

*Fed.R.Civ.P. 12(b)(2).*

When a defendant raises a jurisdictional defense, the court is directed to look outside the pleadings to determine if [*4] jurisdiction is proper. *Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3rd Cir. 1984).* A plaintiff then "bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3rd Cir. 1996);* also see *Patterson by Patterson v. FBI, 893 F.2d 595, 603, 604 (3rd Cir. 1990),* quoting *Time Share Vacation Club, 735 F.2d at 67, n. 9.* If plaintiff meets this burden, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Savings Bank, FA v. Shushan, 954 F.2d 141 (3rd Cir. 1992),* quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1986).*

As a general matter, when a court addresses a question of personal jurisdiction, it follows a well-established framework in making its determination. The court "must determine whether the alleged conduct of a defendant comes within one of the provisions of the [forum state's] long-arm statute . . . . Then the court must proceed to consider whether the exercise of jurisdiction over a particular defendant [*5] violates due process interests." *SAFT America, Inc. v. Ovonic Battery Co., Inc., 1996 U.S. Dist. LEXIS 5068,* *6, Civ.A.No. 95-430, mem. op. at 4 (D.Del. 1996), quoting *Blue Ball Properties, Inc. v. McClain, 658 F. Supp. 1310, 1316 (D.Del. 1987).*

In the case sub judice, plaintiffs have chosen to address the issue of personal jurisdiction by promoting a "national contacts" approach which can, under certain circumstances, establish jurisdiction when parties are litigating a federal question case in federal court. (D.I. 187 at 3). This contention will be addressed below.

**A. "National Contacts" Analysis**

The issue presented by plaintiffs and defendant in their respective submissions reflect the confusion which abounds in attempting to discern the 1993 amendments to *Rule 4 of the Federal Rules of Civil Procedure.* Plaintiffs

and defendant rely, at least to a degree, upon case law decided prior to the 1993 amendment. However, for the reasons discussed *supra,* plaintiffs' contention regarding the application of a national contacts analysis is applicable, but ultimately does not prevail. For this reason, and to try and clarify pre-and post-amendments to Rule 4, this Court will engage in a discussion [*6] of both aspects of this dispute.

**1. Pre-1993 Amendment**

Plaintiffs provided several cases which recognized and supported a national contacts analysis when a federal court litigated an issue emanating from the alleged violation of a federal statute. When describing the national contacts theory, the Third Circuit stated "the proper inquiry in determining personal jurisdiction in a case involving federal rights is one directed to the totality of a defendant's contacts throughout the United States. The hallmark of the theory is that 'it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part.'" *Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293–94 (3rd Cir. 1985)* (citations omitted).

The Third Circuit required a plaintiff relying on a national contacts approach to identify a federal statute prescribing nationwide or worldwide service of process — creating jurisdiction for the court depending upon the federal law being applied. n2 If the plaintiff could not do so, *in personam* jurisdiction would not rest upon an alien's aggregated national contacts. [*7] If a federal statute authorizing jurisdiction were identified, the test was similar to the one identified above. The court was still required to "ask whether the quality and quantity of [a defendant's] contacts [are] constitutionally adequate to support personal jurisdiction." *Id. at 295.* Therefore, a court addressed whether the "affiliating circumstances" — a defendant's contacts with the United States — were sufficient to apply personal jurisdiction to an international defendant. n3 Id.

> n2 Unless otherwise provided by federal law, *Federal Rule of Civil Procedure 4(f)* provides a mechanism by which a party can effectuate service of process upon an international defendant.

> n3 As noted by the appellate court, principles of fairness require that a defendant not only receive fair notice that it may be subject to the jurisdiction of a court in the United States, but also that it should reasonably anticipate being hauled into court in the jurisdiction in which it is sued, despite the insufficiency of contacts with that forum. *Id. at 295, fn. 6.*

[*8]

Max Daetwyler involved a patent infringement action commenced in the Eastern District of Pennsylvania wherein the plaintiff sued a West German manufacturer of "doctor blades," a device used to remove excess ink from a printing process. *Id. at 291.* There, the plaintiff sought to have the court exercise personal jurisdiction over the West German entity, despite the fact that the defendant had no personal contacts with the forum state, Pennsylvania. *Id. at 291–92.*

The Third Circuit could not identify a federal statute regarding patent law which authorized nationwide or worldwide service of process. *Id. at 295.* At the time of this decision, the court was "unaware of any federal statute which presently authorizes district courts to found personal jurisdiction upon such aggregated contacts." Id. Therefore, the court applied *Federal Rule of Civil Procedure 4* (hereinafter "Rule 4") to determine if *in personam* jurisdiction was appropriate. *Id. at 295–96.* Prior to 1993, Rule 4 required a federal court to apply the amenability standards of the state in which it sat when deciding the propriety of personal jurisdiction. As a result, in Daetwyler, the district court [*9] could only exercise jurisdiction upon the satisfaction of the Pennsylvania long-arm statute. Since the plaintiff failed to meet this burden, the court refused to exercise personal jurisdiction over the foreign defendant. Id.

Thus, prior to the 1993 amendment to Rule 4, in order to establish jurisdiction pursuant to a national contacts theory, a plaintiff was required to identify a federal statute which specifically authorized service of process and established personal jurisdiction over a defendant. If plaintiff did so, the court was required to analyze the fairness of subjecting a party to the personal jurisdiction of the court pursuant to the standards established in *International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)* and its progeny. If plaintiff could not identify such a federal statute, the court then had to engage in the traditional analysis of applying the forum state's long-arm statute and perform the fairness analysis identified above.

Plaintiffs have proffered several cases which allegedly stand for the proposition that "in a federal question case in which Congress has authorized nationwide or worldwide service of process, due [*10] process requires only that the defendant have minimum contacts with the United States as a whole, rather than with the forum state." (D.I. 178 at 3). Plaintiffs' submission relies solely upon a service of process provision (Rule 4(f)) to establish jurisdiction over SMTD. While courts commonly interchange the phrases "service of process provision" and a statute which "establishes personal jurisdiction," these two phrases are distinct concepts. n4 As the Supreme Court recently stated:

> *service of process, we have come to understand, is properly regarded as a matter discrete from a court's jurisdiction* to adjudicate a controversy of a particular kind, or against a particular individual or entity. Its essential purpose is auxiliary . . . . The core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.

*Henderson v. United States, 134 L. Ed. 2d 880, 116 S. Ct. 1638, 1647–48 (1996)* (emphasis added). Therefore, this Court cannot agree with plaintiffs' representation. In each case where personal jurisdiction was extended [*11] to a nonresident defendant, the court did not rely upon a provision which merely provided for service of process (i.e. a mechanism by which a plaintiff could serve a complaint upon a defendant), but rather upon a federal statute which specifically extended personal jurisdiction to an alien defendant.

> n4 See *United Rope Distributors, Inc. v. Seatriumph Marine Corp., 930 F.2d 532 (7th Cir. 1991)* (Although the Seventh Circuit sought to identify a federal statute which established personal jurisdiction, it examined the Carriage of Goods by Sea Act, *46 U.S.C. App. §§ 1300–15* to determine if it "authorized service of process." *Id. at 534).*

In United Rope, a shipper brought suit against an international cargo carrier who failed to deliver rope to a Wisconsin port. *Id. at 533.* Because the parties agreed that the Carriage of Goods by Sea Act, *46 U.S.C. App. §§ 1300–15,* would govern the terms of the shipment, federal law was implicated. *Id. at 534.* United Rope filed suit in federal court and sought [*12] to invoke federal law in resolving the loss of its cargo. Id. The district court held that it could not exercise personal jurisdiction over the defendant because, through the application of Wisconsin law, the Wisconsin long-arm statute was unconstitutional. Id. In deciding whether the plaintiff could invoke defendant's "national contacts" to establish personal jurisdiction on a theory of federal common law for personal jurisdiction in admiralty cases, the Seventh Circuit declined to create such a rule. Id. Instead, it engaged in an analysis similar to the approach of the Third Circuit in Daetwyler.

1997 U.S. Dist. LEXIS 7905, *12

As in Daetwyler, the Seventh Circuit sought but could not identify a federal statute which would allow the court to exercise personal jurisdiction over an international defendant. *Id. at 535.* It then concluded "unless a federal or state law authorizes personal jurisdiction over the defendant, the court must dismiss the suit." *Id. at 536.* Federal statutory authority did not confer personal jurisdiction, so the court applied the Wisconsin long-arm statute — the statute deemed unconstitutional by the district court through the application of Wisconsin state law. [*13] The Seventh Circuit determined that the state statute could be applied so long as it did not violate *federal* constitutional principles. n5 *Id. at 535–36.* In essence, the court was not constrained by the fact that a Wisconsin state court, in those circumstances, would not apply the long-arm statute due to a state constitutional defect. Id. The Seventh Circuit did not disregard the requirement of a federal statute authorizing jurisdiction, but additionally examined whether the state's long-arm statute authorized personal jurisdiction without violating the U.S. Constitution. Id.

n5 United Rope identified both the majority and minority positions held in relation to *Rule 4(e) of the Federal Rules of Civil Procedure.* At that time, Rule 4(e) provided that service of process could be made "under the circumstances" prescribed by state law. The majority of the courts of appeals, including the Third Circuit, interpreted these words to "require lockstep treatment of personal jurisdiction in state courts under state law and federal courts under federal law, so that when assessing the constitutionality of an assertion of personal jurisdiction the federal court must pretend that it is a state court even when the issue arises under federal law." *Id. at 535.* In contrast, the Seventh Circuit recognized that by applying federal law in federal court, it was exercising a "national power" and suggested that it would apply the Wisconsin long-arm statute so long as it did not violate the United States Constitution, regardless of the state constitutional defect. *Id. at 536.*

[*14]

Plaintiffs also rely on *Go–Video, Inc. v. Akai Electric Co., Ltd., 885 F.2d 1406 (9th Cir. 1989)* as expanding personal jurisdiction of the federal courts when presented with a federal question. Again, the court first sought a statute authorized by Congress which allowed nationwide service of process and established personal jurisdiction over a foreign defendant. Consistent with the aforementioned holdings, the Ninth Circuit identified § 12 of the Clayton Act, *15 U.S.C. § 22,* n6 as conferring personal jurisdiction over an alien defendant in a federal district

court so long as it was a "proceeding [brought] under the antitrust laws." *Id. at 1414–15.* A federal statute which permitted service of process beyond the boundaries of the forum state expanded the authorized scope of personal jurisdiction. *Id. at 1414,* citing *Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1315 (9th Cir. 1985).* Under such a statute, "the question [then] becomes whether the party has sufficient contacts with the United States, not any particular state." Id., quoting *Vigman, 764 F.2d at 1315.* (National contacts analysis appropriate in a suit in which process had been served [*15] on an alien corporation pursuant to § 27 of the Securities Exchange Act, *15 U.S.C. § 78aa.*)

n6 Title *15, United States Code § 22* provides:

> Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Subsequently, the court reviewed the constitutionality of exercising personal jurisdiction in relation to the due process component of the Fifth Amendment. Id. at 1415. As stated, "under the due process component of the Fifth Amendment, a court must consider whether the maintenance of the suit (i.e., the exercise of personal jurisdiction over the defendants to the suit) offends traditional notions of fair play and substantial justice." Id., citing *Omni Capital International v. Rudolf Wolff & Co., Ltd., 484* [*16] *U.S. 97, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987); International Shoe, 326 U.S. at 316.* The court ultimately concluded that personal jurisdiction did not offend Fifth Amendment due process concerns. n7

n7 The Ninth Circuit was faced with a contention similar to the one before this Court. Appellant's argument in Go–Video was characterized as assuming that a national contacts analysis "is justified by a particular notion of federal sovereignty in federal question cases." Id. at 1416. However, in rejecting this contention, the court stated "national contacts analysis more often finds its basis . . . in the concrete language of a statute under which Congress has, as it is unquestionably powered to do, authorized nationwide service of process. Indeed, a recent Supreme Court decision implies that a *national service provision* is a nec-

essary prerequisite for a court even to consider a national contacts approach." Id. at 1416 (citation omitted) (emphasis added).

The balance of cases identified [*17] by plaintiffs reflect the national contacts analysis as described above. See *Hogue v. Milodon Engineering, Inc., 736 F.2d 989 (4th Cir. 1984).* (Jurisdiction of bankruptcy courts arose under federal law, and Bankruptcy Rule 704(a) extended territorial jurisdiction of the bankruptcy courts to the entire United States. The remaining issue was whether exercise of personal jurisdiction comported with due process requirements); *Mariash v. Morrill, 496 F.2d 1138 (2nd Cir. 1974)* (Federal court retained jurisdiction pursuant to the Securities Exchange Act of 1934, Section 27, *15 U.S.C. § 78aa,* which established personal jurisdiction depending upon activity within a federal judicial district); *Trans-Asiatic Oil Ltd. v. Apex Oil Co., 743 F.2d 956 (1st Cir. 1984).* (Utilizing Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, plaintiff attached a $324,000 debt owed defendant by a third party. The clerk of the district court issued a summons and process of Maritime Attachment establishing *quasi-in-rem* jurisdiction over the defendant. The court concluded the defendant could "expect to be sued wherever its credits and [*18] property may be found." *Id. at 960); Dougherty v. Royal Zenith Corp., 1990 U.S. Dist. LEXIS 5386, Civ.A.No. 88–8666, 1990 WL 61756 (E.D.Pa. 1990).* (Pursuant to Foreign Sovereign Immunities Act, *28 U.S.C. §§ 1330,* 1605, plaintiff could exercise personal jurisdiction over an entity owned by a foreign state in federal district court). Therefore, prior to the 1993 amendments, a framework existed whereby a court could apply a national contacts analysis, recognizing the sovereignty of federal courts to apply federal law without a jurisdictional defect arising from the application of a state long-arm statute. n8

n8 Although the 1993 amendments to Rule 4 did not explicitly replace the aforementioned case law, Rule 4(k)(1) provides four instances where the service of a summons or filing a waiver of service will effectively establish jurisdiction, including the existence of a federal statute authorizing jurisdiction, thereby incorporating this prior case law. The exercise of jurisdiction is proper where a defendant could be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located; where a defendant is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; where a defendant is subject to the

federal interpleader jurisdiction under *28 U.S.C. § 1335;* or when jurisdiction is authorized by a statute of the United States. *Fed.R.Civ.P. 4(k)(1)(A–D).*

[*19]

## 2. Post–1993 Amendment to Rule 4

Many courts, including the Supreme Court, recognized the difficulty plaintiffs faced when attempting to sue an alien defendant for the violation of a federal statute, particularly when a federal law did not provide personal jurisdiction over such a defendant and the defendant lacked sufficient minimum contacts with any singular forum to exercise jurisdiction. This frustration was articulated by the Court in Omni Capital, where it opined

we are not blind to the consequences of the inability to serve process on [two foreign defendants]. *A narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute, might well serve the ends of the [Commodities Exchange Act] and other federal statutes.* It is not for the federal courts, however, to create such a rule as a matter of common law. That responsibility, in our view, better rests with those who propose the Federal Rules of Civil Procedure and with Congress.

*Omni Capital, 484 U.S. at 111* (emphasis added).

Rule 4 was subsequently amended [*20] by Congress, and the amendments became effective on December 1, 1993.

Two sections of Rule 4 are relevant to the issue before this Court. First, as discussed by plaintiffs, Rule 4(f)(1) authorizes service of process upon an individual in a foreign country pursuant to the Hague Convention. SMTD does not dispute that Rule 4(f) provides a mechanism to effectuate service of process, but argues that Rule 4(f) alone does not expand the jurisdiction of the federal courts. This Court agrees. As explained by the Advisory Committee, Rule 4(f) "provides for service on individuals who are in a foreign country. . . ." In addition to providing a mechanism for service, the provision intends to "facilitate the use of federal long-arm law in actions brought to enforce the federal law against defendants who cannot be served under any state law but who can be constitutionally subjected to the jurisdiction of the federal court. *Such a provision is set forth in paragraph (2) of subdivision (k) of this rule, applicable only to persons not subject to the ter-*

ritorial jurisdiction of any particular state." Fed.R.Civ.P. 4(f), 1993 Advisory Committee notes. n9

> n9 Plaintiffs have not identified either a state long-arm statute or a federal law (apart from Rule 4(f)) which subjects SMTD to the personal jurisdiction of the federal court. However, because Rule 4(k)(2) provides a vehicle by which a federal court, in the absence of explicit statutory authority, can exercise personal jurisdiction over a nonresident defendant, this Court will analyze plaintiffs' opposition to SMTD's dismissal pursuant to this Rule.

[*21]

Rule 4(k) addresses the territorial limits of effective service. Specifically, Rule 4(k)(2) provides

> if the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims *arising under federal law*, to establish personal jurisdiction over the person of any defendant who is *not subject* to the jurisdiction of the courts of general jurisdiction of *any* state. (emphasis added).

As indicated, Rule 4(k) was enacted to correct the inequity described in Omni Capital. Despite Congress' broadening of personal jurisdiction, a plaintiff still must satisfy the mandates of the Fifth Amendment — the party must have sufficient minimum contacts with the United States to be subject to personal jurisdiction. An noted by the Advisory Committee, "plaintiff's forum selection might be so inconvenient to a defendant that it would be a denial of 'fair play and substantial justice' required by the due process clause, even though defendant had significant affiliating contacts with the United States."

To determine if Rule 4(k)(2) is applicable, the court undertakes [*22] a two part analysis. *Eskofot v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 87 (S.D.N.Y. 1995)*, also see *United States v. International Brotherhood of Teamsters, 945 F. Supp. 609, 617, 1996 WL 655808* at *7 (S.D.N.Y. 1996). "First, the court must determine whether the Rule is applicable by discerning that: (1) the case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction, and (2) that the foreign defendant lacks sufficient contact with any single state to subject it to personal jurisdiction there. Then, the court must scrutinize plaintiff's allegations to ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process."

*Teamsters, 945 F. Supp. at 617, 1996 WL 655808* at *7 (citations omitted). This analysis will be discussed below.

The first question is whether patent litigation is considered a "claim arising under federal law" as required by Rule 4(k)(2). As discussed by the Fifth Circuit, this phrase has been interpreted to encompass all federal substantive law and is not limited to cases which arise pursuant to *28 U.S.C. § 1332* [*23] — diversity jurisdiction. *World Tanker Carriers Corp. v. Mv Ya Mawlaya, 99 F.3d 717, 720-21 (5th Cir. 1996)*. Pursuant to *28 U.S.C. § 1338*, federal district courts "have original jurisdiction of any civil action arising under an Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." *28 U.S.C. § 1338*(a). It is undisputed that the patent litigation before this Court arises under federal law, and neither litigant has offered a contrary position. Therefore, the first prong of the test is satisfied.

Plaintiffs are also required to demonstrate that SMTD is "not subject to the jurisdiction of the courts of general jurisdiction of *any* state." Rule 4(k)(2) (emphasis added). As contained in the Advisory Committee notes, this requirement

> corrects a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards [*24] of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction.

Therefore, Rule 4(k)(2) provides a narrow exception which may subject an alien defendant to a federal court's personal jurisdiction.

To satisfy this requirement, plaintiffs are required to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court. n10 At first glance, it would appear to be an onerous task for a plaintiff to analyze defendant's contacts with all fifty states. However, this burden can be satisfied by demonstrating that the defendant has "insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdic-

tion." n11 *Fed.R.Civ.P. 4(k)*, 1993 Advisory Committee Notes.

n10 The United States District Court for the Southern District of New York determined that this requirement was satisfied by demonstrating that the defendant was beyond the reach of that district court's long-arm jurisdiction as limited by New York's long-arm statute. *Teamsters, 945 F. Supp. 609, 1996 WL 655808* at *9. However, this Court does not adopt this analysis because it effectively emasculates Rule 4(k)(2) which requires that the defendant not be subject to personal jurisdiction in *any* state. This Court interprets the directive of Rule 4(k)(2) to require that the party opposing the motion to dismiss to affirmatively represent and demonstrate that the defendant is not subject to the jurisdiction of any state, not solely the state in which the district court is located.

[*25]

n11 The Due Process Clause of the Fourteenth Amendment restricts the ability of a state court to exert personal jurisdiction over a nonresident defendant. The constitutional touchstone required in ascertaining whether the exercise of personal jurisdiction conforms with due process "remains whether the defendant purposefully established" sufficient minimum contacts with a state. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); Ventroflex Certainteed v. Consolidated Fiber Glass, 75 F.3d 147, 150 (3rd. Cir. 1996).* Therefore," the strictures of the Due Process Clause forbid a state court to exercise jurisdiction over [a defendant] under circumstances that would offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 113, 94 L. Ed. 2d 92, 107 S. Ct. 1026* quoting *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).*

Plaintiffs have failed to satisfy this burden and, therefore, Rule 4(k)(2) is inapplicable [*26] to establish personal jurisdiction. Thus, this Court need not decide whether defendant's aggregate contacts with the United States are sufficient to comport with the Fifth Amendment notions of due process. n12

n12 The due process analysis under both the Fifth and Fourteenth Amendments is identical. Under either Amendment, when determining if a defendant is subject to *in personam* jurisdiction, a court is required to find that the defendant has "certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Carlough v. Amchem Products, Inc., 10 F.3d 189, 199 (3rd Cir. 1993),* quoting *International Shoe, 326 U.S. at 316.* The only distinction lies in the scope of the review — for the Fifth Amendment, a defendant's contacts with the United States are examined, while in the context of the Fourteenth Amendment, the court looks to a defendant's activities within the forum state. Regardless, a defendant's conduct must be sufficient so that party would "reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* Finally, this Court notes that if it were to undertake a Fifth Amendment due process inquiry, it would exercise "great care and reserve" due to the increased burdens placed upon an alien defendant and the pressures placed upon respective international policies. See *Asahi, 480 U.S. at 115,* quoting *United States v. First National City Bank, 379 U.S. 378, 404, 13 L. Ed. 2d 365, 85 S. Ct. 528 (1965)* (Harlan, J., dissenting).

[*27]

Plaintiffs have failed to explicitly assert and demonstrate that SMTD is not subject to the jurisdiction of any state court of general jurisdiction. Plaintiffs have also failed to provide the reasons why this burden is satisfied. This Court is reluctant to assume such silence is in fact an affirmative representation that plaintiffs could not have satisfied either a state long-arm statute or Fourteenth Amendment principles of due process. Therefore, the Court is unable to utilize Rule 4(k) to establish personal jurisdiction over SMTD.

### III. CONCLUSION

As plaintiffs have not alleged an alternative basis of jurisdiction which would satisfy the necessary jurisdictional predicate and has not identified a federal law or state long-arm statute which establishes personal jurisdiction, this Court recommends that SMTD's motion to dismiss the amended complaint be granted.

# TAB 3

LEXSEE

**DAVLYN MANUFACTURING CO., INC., Plaintiff, v. H&M AUTO PARTS, INC., d/b/a H&M COMPANY INCORPORATED, HENRY C. HIGHT, JR., and TAPE & TECHNOLOGIES INCORPORATED, Defendants.**

**CIVIL ACTION No. 04-5516**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2005 U.S. Dist. LEXIS 17532**

**August 18, 2005, Decided**
**August 22, 2005, Filed**

**PRIOR HISTORY:** Tape & Techs. v. Davlyn Mfg. Co., 2005 U.S. Dist. LEXIS 8291 (W.D. Tex., May 6, 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, an assignee of a patent, filed an infringement action against defendants, a Texas corporation, its shareholder, another corporation, and others. The Texas corporation and its shareholder filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to transfer.

**OVERVIEW:** The shareholder and his wife developed an oven gasket that allegedly infringed the assignee's patent while they were employed by the other corporation, which was established by the shareholder's father. The court held that it lacked personal jurisdiction over the Texas corporation because the Texas corporation had neither designed its product to target the needs of Pennsylvania consumers, nor established channels for providing regular advice to Pennsylvania customers, nor marketed its product to consumers either directly, or indirectly, through a distributor or sales agent. Moreover, the assignee failed to show that the Texas corporation and the shareholder were true successors or alter egos of the other corporation. Although the shareholder was an officer, shareholder and employee of both corporations, and although the Texas corporation's headquarters were located at the same address as one of the offices of the other corporation, the shareholder owned only 5.6 percent of the other corporation's stock and the other corporation made no claims with respect to any patent rights for the product developed by the shareholder.

**OUTCOME:** The court granted the motion of the Texas corporation and the shareholder to dismiss the action against them for lack of subject matter jurisdiction.

**CORE TERMS:** gasket, oven, forum state, patent, stream of commerce, personal jurisdiction, distributor, purposefully, appliances, patent infringement, successor, manufacturer, customer, brand, clip, consumers, alter ego, infringing, marketing, awareness, regular, entity, lack of personal jurisdiction, channels, selling, e-mail, motion to dismiss, product line, fan, non-resident

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > State & Federal Interrelationships > Application of State Law*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN1] Questions of personal jurisdiction in patent actions are governed by Federal Circuit law, rather than that of the regional circuit in which the actions arise.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN2] In order to establish personal jurisdiction in a patent infringement action over a non-resident defendant, a plaintiff must show both that jurisdiction exists under the forum state's long-arm statute, and that the exercise

of jurisdiction would be consistent with the requirements of due process.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
[HN3] Pennsylvania's long-arm statute is coextensive with the limits of due process, extending jurisdiction to the fullest extent allowed under the Constitution of the United States.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
[HN4] In order to be subject to personal jurisdiction, due process requires that a non-resident defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The minimum contacts requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum state.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
[HN5] Under the "minimum contacts" test, a defendant may be subject to personal jurisdiction under one of two theories. Where the defendant has maintained continuous and systematic contacts with the forum state, he will be subject to "general jurisdiction"; where, instead, the plaintiff's cause of action arises from the defendant's more limited forum-related activities, he may be subject to "specific jurisdiction."

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
***Evidence > Procedural Considerations > Burdens of Proof***
***Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview***
[HN6] The United States Court of Appeals for the Federal Circuit has established a three-prong test for determining whether the exercise of specific jurisdiction is consistent with due process. Specific jurisdiction properly exists where: (1) the defendant "purposefully di-

rected" its activities at residents of the forum state; (2) the claim arises out of or relates to those activities; and (3) the exercise of personal jurisdiction would be reasonable and fair. While the plaintiff bears the burden of establishing purposeful minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable. In deciding a motion to dismiss for lack of personal jurisdiction, the court need not treat the plaintiff's allegations as true, but may consider affidavits and weigh any other relevant evidence in making the jurisdictional determination.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
[HN7] Where the sale of a product is not simply an isolated occurrence, but arises from the seller's attempts to serve, directly or indirectly, the market for its product in other states, it is not unreasonable for a court to find that the seller has purposefully availed himself of the privilege of doing business in the forum state. Thus, personal jurisdiction may properly be exercised over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
[HN8] The United States District Court for the Eastern District of Pennsylvania finds that a defendant does not "purposefully direct" his activities at a forum state merely by selling a component part to a nationwide distributor of home appliances with the awareness that appliances containing the defendant's product may ultimately be sold in the forum state. There must be some additional evidence of the defendant's purpose and intent to serve the forum state, such as state-specific marketing or design, the provision of customer support services, or an exclusive contractual relationship with a distributor in the forum state. The United States Supreme Court has held that "foreseeability alone" is not a sufficient benchmark for personal jurisdiction under the Due Process Clause.

***Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Disregard of Corporate Entity***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***
***Mergers & Acquisitions Law > General Business Considerations > Successor Liabilities***

[HN9] Where an individual or a corporation has insufficient contacts with the forum state to satisfy due process, a court may nonetheless exercise personal jurisdiction if the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction before that court. The alter ego and successor doctrines are closely related, and look to whether the later-formed entity is a mere continuation of its predecessor, as well as whether there are any indicia of fraud, illegality, or injustice. In making these determinations, the court should consider the nature of the corporate entities' ownership and control, including commonality of stockholders or officers; common use of employees, business locations, or sales systems; common marketing or trademarking; similarity of core business lines; and commingling of funds and assets. The court should also consider the sufficiency of consideration paid for the transfer of the predecessor's assets or product line, as well as any other indicia of fraudulent intent in the creation of the second entity.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Disregard of Corporate Entity*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Mergers & Acquisitions Law > General Business Considerations > Successor Liabilities*
[HN10] The justification for imposing alter ego or successor jurisdiction is to prevent corporations from escaping liability by hiding behind sham entities.

**COUNSEL:** [*1] For DAVLYN MANUFACTURING CO., INC., Plaintiff: GARY ALLEN ROSEN, PATRICK MADAMBA, JR., LAW OFFICES OF GARY A. ROSEN, PC, PHILADELPHIA, PA.

For H&M AUTO PARTS, INC., doing business as H&M COMPANY INCORPORATED, Defendant: RICHARD M. JORDAN, WHITE AND WILLIAMS, PHILADELPHIA, PA.

For HENRY C. KNIGHT, JR., TAPE & TECHNOLOGIES INCORPORATED, Defendant: CLINE H. WHITE, LOEFFLER TUGGEY PAUERSTEIN, SAN ANTONIO, TX; ANTHONY J. DIMARINO, III, MCSHEA TECCE, P.C., PHILADELPHIA, PA.

**JUDGES:** J. CURTIS JOYNER, J.

**OPINIONBY:** J. CURTIS JOYNER

**OPINION:**

## MEMORANDUM AND ORDER

**JOYNER, J.**

Via the instant motion, Defendants Tape & Technologies, Incorporated and Henry C. Hight, Jr. seek, once again, to dismiss this patent infringement action for lack of personal jurisdiction. For the reasons that follow, Defendants' motion shall be granted and this action shall be dismissed with respect to the moving Defendants only.

### Facts

Plaintiff Davlyn Manufacturing Co., Inc. ("Davlyn"), a Pennsylvania corporation, is the assignee of three patents describing oven door gaskets used to seal the heat within conventional home ovens. Plaintiff filed the instant patent infringement action against Defendant [*2] H&M Auto Parts, Inc. ("H&M") on November 29, 2004, alleging that H&M's sale of oven door gaskets and clips to Electrolux Home Products ("Electrolux/Frigidaire"), the maker of Frigidaire brand appliances, infringed upon Plaintiff's patents. Plaintiff amended its Complaint on December 21, 2004, joining Defendants Tape & Technologies, Incorporated ("T&T") and Henry C. Hight, Jr ("Hight Jr.").

Defendant H&M is a Texas corporation headquartered in San Antonio, with additional offices in El Paso and Helotes. (Flack Depo., pp. 45, 47-50). H&M does business in Pennsylvania and does not contest this Court's jurisdiction. (Flack Depo., pp. 91-93). H&M was established in 1957 by Henry Hight, Sr. ("Hight Sr."), who is a current 60% shareholder. (Hight Aff. P 4). The remaining seven shareholders, who all hold positions as officers and directors, are Hight Sr.'s children: Defendant Henry C. Hight, Jr., Robert Hight, Stephen Hight, Susannah Herman, Hallie Rowe, Joe Hight, and Nancy Flack. (Flack Depo., pp. 10-11; Pl. Exh. D; Hight Aff. P 4).

During the time that they were employed at H&M, Defendant Hight Jr., a Vice President of H&M, and his wife, Sylvia Hight, a sales employee, developed an oven [*3] gasket for use in home ovens. (Flack Depo., pp. 65-67; Hight Aff. P 11). In 2003, they arranged for a Chinese vendor to manufacture the allegedly infringing oven gaskets, and Hight Jr. made two sales on behalf of H&M. (Flack Depo., pp. 31-32, 64-65). In June of 2003, 11,000 gaskets were shipped to Electrolux/Frigidaire. (Id. at pp. 65, 82-84; Pl. Exh. O). In August of 2003, 3,000 gaskets were shipped to G.E. Roper Corporation ("GE"), the maker of General Electric brand appliances. (Flack Depo., pp. 65, 82-84; Pl. Exh. O).

Defendant H&M contends that, at some point prior to October 2003, Hight Sr. decided to discontinue the sale of oven gaskets, and instructed Hight Jr. and Sylvia

Hight not to make any further sales or purchases of gaskets on behalf of H&M. (Flack Depo., pp. 30-37, 106-107, 114-115). Hight Sr. also allegedly told Hight Jr. and Sylvia Hight that "he wouldn't like" it if they purchased the gaskets on their own, independently of H&M. (Id. at p. 34). Nevertheless, Hight Jr. and Sylvia Hight made additional, allegedly unauthorized, purchases under the H&M name, and as well as at least one additional sale to Electrolux/Frigidaire, which was invoiced on December 19, 2003. ( [*4] Id. at pp. 31-32, 74-78, 95; Pl. Exhs. P, R). H&M became aware of some of these purchases because the shipping and billing address used was that of H&M's Helotes office, where Hight Jr. and Sylvia Hight are headquartered. (Flack Depo., pp. 32-33; Pl. Exhs. P, R).

On January 16, 2004, H&M was notified by a letter from Plaintiff's counsel that its sale of oven gaskets potentially infringed upon Davlyn's patents. (Pl. Exh. Q). H&M did not respond to Plaintiff's correspondence until April 12, 2004, when Nancy Flack, President of H&M, wrote, "We understand that there are patent issues. After the receipt of your letter we discontinued all sales to Frigidaire on this item." (Pl. Exh. V).

Shortly after H&M's receipt of the January 16, 2004 letter from Plaintiff's counsel, Sylvia Hight sent the following e-mail from her H&M e-mail account to the Chinese manufacturer regarding a purchase order that had been placed on January 16, 2004: "We have been having many issues here regarding the patent and the potential lawsuit ... I'll need to forward the P.O. But because of the potential suit. I need to write and wire it another way ... I'll wire the money but I think I need to send it by another [*5] company name." (Pl. Exh. R). A subsequent email from Sylvia noted, "The company name that we are going to use is 'H M Tape & Technologies Company." (Pl. Exh. R). Thereafter, a purchase order dated January 30, 2004 was issued by "H M Tape & Technologies" for 50,000 units from the Chinese manufacturer, for shipment to "H & M Tape & Technologies" at the address of H&M's Helotes office. (Pl. Exh. S).

Hight Jr. incorporated HM Tape & Technologies Incorporated on February 4, 2004, and formally changed the company's name to Tape & Technologies Incorporated on April 5, 2004. (Pl. Exhs. F, G). The business address of T&T's registered agent, Hight Jr., is the same address as H&M's Helotes office. (Pl. Exh. G).

**Procedural History**

Davlyn filed its Complaint against H&M on November 29, 2004 before the United States District Court for the Eastern District of Pennsylvania, unaware that the allegedly infringing gaskets were being sold by any other company. Defendant H&M was served with the Complaint on December 9, 2004, and Defendant Hight Jr.

was notified of the suit at some point prior to December 13, 2004. (Flack Depo., pp. 91-93). Plaintiff first learned that another company was involved [*6] in the sale of the gaskets on December 21, 2004, by the following correspondence from H&M's counsel: "H&M made one small sale of the accused product to both Frigidaire and GE. However, once they received the cease and desist letter from your client, they made no further sales ... I have a copy of an email from Louise Wang at Electrolux (Frigidaire) stating, 'this is to confirm that Tape & Technology was the supplier who was selling us the fiberglass door seal from Feb.04 to Oct.04.'" (Pl. Exh. Z). Upon receiving notice of T&T's involvement, Davlyn amended its Complaint on December 21, 2004, adding T&T and Hight Jr. as defendants. On January 5, 2005, Davlyn was served with a complaint in a declaratory judgment action that had been filed by T&T in the United States District Court for the Western District of Texas on December 16, 2004.

On January 10, 2005, Defendants T&T and Hight Jr. moved to dismiss this action for lack of personal jurisdiction, or in the alternative, to transfer the action to the United States District Court for the Western District of Texas. This Court denied the Motion without prejudice, and granted 60 days leave to conduct jurisdictional discovery.

On January 31, 2005, Plaintiff [*7] Davlyn moved before the United States District Court for the Western District of Texas to dismiss the action pending there, or in the alternative, to transfer venue to the Eastern District of Pennsylvania. Upon consideration of the record, the court found that T&T and Hight knew of the pending suit against H&M in the Eastern District and "clearly filed [the declaratory judgment action] in anticipation of litigation." Tape & Techs. v. Davlyn Mfg. Co., 2005 U.S. Dist. LEXIS 8291 at 8, 2005 WL 1072169 at 3 (W.D. TX. 2005). While recognizing that the evidence "weighed against the exercise of the Court's discretion to hear the declaratory judgment action," the court denied the motion to dismiss only because "there exists some question as to whether the Eastern District of Pennsylvania would be able to exercise personal jurisdiction over Plaintiff." Tape & Techs.. 2005 U.S. Dist LEXIS 8291 at 10. 2005 WL 1072169 at 4.

Before this Court, Defendants T&T and Hight Jr. now renew their motion to dismiss or, in the alternative, to transfer.

**Standard of Review: Personal Jurisdiction**

[HN1] Questions of personal jurisdiction in [*8] patent actions are governed by Federal Circuit law, rather than that of the regional circuit in which the actions arise. Akro Corp. v. Luker. 45 F.3d 1541. 1543 (Fed. Cir. 1995).

[HN2] In order to establish personal jurisdiction in a patent infringement action over a non-resident defendant, a plaintiff must show both that jurisdiction exists under the forum state's long-arm statute, and that the exercise of jurisdiction would be consistent with the requirements of due process. Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005). Of course, [HN3] Pennsylvania's long-arm statute is coextensive with the limits of due process, extending jurisdiction to the "fullest extent allowed under the Constitution of the United States." Resnick v. Manfredy, 52 F. Supp. 2d 462, 466 (E.D. Pa. 1999).

[HN4] In order to be subject to personal jurisdiction, due process requires that a non-resident defendant have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." LSI Indus. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) [*9] (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)). The minimum contacts requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum state. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)).

[HN5] Under the "minimum contacts" test, a defendant may be subject to personal jurisdiction under one of two theories. Where the defendant has maintained continuous and systematic contacts with the forum state, he will be subject to "general jurisdiction"; where, instead, the plaintiff's cause of action arises from the defendant's more limited forum-related activities, he may be subject to "specific jurisdiction." LSI Indus., 232 F.3d at 1374-75 (citing Burger King Corp. 471 U.S. at 472-73; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). [*10]

[HN6] The Federal Circuit has established a three-prong test for determining whether the exercise of specific jurisdiction is consistent with due process. Specific jurisdiction properly exists where: (1) the defendant "purposefully directed" its activities at residents of the forum state; (2) the claim arises out of or relates to those activities; and (3) the exercise of personal jurisdiction would be reasonable and fair. 3D Sys. v. Aarotech Lab., 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing Akro Corp., 45 F.3d at 1545-46). While the plaintiff bears the burden of establishing purposeful minimum contacts, upon this showing, defendants must prove that the exercise of ju-

risdiction is unreasonable. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) (citing Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, the Court need not treat the plaintiff's allegations as true, but may consider affidavits and weigh any other relevant evidence in making the jurisdictional determination. Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003). [*11]

### Discussion

### I. Specific Jurisdiction Under the Stream of Commerce Theory

Defendants T&T and Hight Jr. maintain that this action must be dismissed for lack of personal jurisdiction because neither T&T nor Hight Jr. purposefully directed the sale of allegedly infringing oven gaskets at the forum state of Pennsylvania.

Defendant T&T is a Texas corporation with no offices, employees, agents, or customers in Pennsylvania. (Hight Aff. P 4, 8, 13). T&T's president, Defendant Hight Jr., is a Texas resident with no Pennsylvania business contacts. (Id. at P 3, 14). T&T denies having ever sold, offered for sale, distributed, or advertised its products within Pennsylvania. (Id. at P 13). Since its incorporation in February of 2004, T&T has sold oven gaskets and clips to only one customer, Electrolux/Frigidaire, located in Springfield, Tennessee. (Id. at P 5).

Plaintiff, however, maintains that Defendants T&T and Hight Jr. purposefully directed their activities at the forum state of Pennsylvania by placing oven gaskets and clips in the stream of commerce via a nationwide distributor of home appliances. Electrolux/Frigidaire makes "Frigidaire" brand appliances, as well [*12] as residential ovens for Sears' "Kenmore" brand. (Flasher Aff. P 4). Frigidaire and Kenmore brand products are sold through established channels of distribution throughout the United States, including in Pennsylvania. (Id. at P 4). Electrolux/Frigidaire's website, for example, identifies 20 authorized retailers selling Frigidaire ovens in Pennsylvania within a 50 mile radius of Philadelphia, as well as seven authorized Frigidaire service providers in the same region through which replacement gaskets may be purchased. (Pl. Exh. CC). It is common knowledge that Frigidaire and Kenmore brand appliances, including residential ovens, are widely available for sale throughout Pennsylvania. Gary Flasher, a project manager at Davlyn, was able to locate without difficulty at least two Frigidaire ovens being offered for sale locally which incorporated clip gaskets "of the exact style, materials, and other characteristics as the Accused Product." (Flasher Aff., P 6-8). While T&T admits that Electrolux/Frigidaire is a manufacturer and distributor of ovens, and that Electrolux/Frigidaire incorporates T&T's

gaskets and clips into ovens intended for sale, it asserts that "T&T has no control, nor [*13] knowledge except in a general sense, of the oven gaskets and clips' final destination." (Hight Aff. P 9).

The Supreme Court in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) first addressed the question of whether constitutionally sufficient minimum contacts are satisfied where a defendant places a product in the "stream of commerce." The Court found that, [HN7] where the sale of a product is not simply an isolated occurrence, but arises from the seller's attempts "to serve, directly or indirectly, the market for its product in other states," it is not unreasonable for a court to find that the seller has purposefully availed himself of the privilege of doing business in the forum state. World-Wide Volkswagen Corp., 444 U.S. at 297. Thus, personal jurisdiction may properly be exercised over a corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp., 444 U.S. at 297-298. The Court did not, however, specify the degree of actual interaction that a seller must have with the forum state to demonstrate [*14] his intent or expectations with respect to serving a broader market.

In Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987), the Supreme Court was evenly divided as to what would constitute sufficient minimum contacts under a stream of commerce theory. Justice O'Connor, writing for four members of the Court, found that the mere placement of a product into the stream of commerce, without more, does not demonstrate that a defendant "purposefully directed" his activities toward the forum state. Asahi Metal Industry Co., 480 U.S. at 112. Justice O'Connor proposed that, even if the defendant is aware that his product may be swept into the forum state, some additional evidence of purpose or intent must be found - for example, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi Metal Industry Co., 480 U.S. at 112. Justice Brennan and three others instead suggested [*15] that evidence of such "additional conduct" is not necessary for a finding of constitutionally sufficient minimum contacts. "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Asahi Metal Industry

Co., 480 U.S. at 117. While maintaining the requirement that a defendant purposefully avail himself of business in the forum state, Justice Brennan found Justice O'Connor's "stream of commerce-plus" approach to be a "marked retreat" from the standard set forth in World-Wide Volkswagen. Asahi Metal Industry Co., 480 U.S. at 118-120.

In light of the conflicting positions set forth in Asahi, the Federal Circuit has declined to adopt a position as to whether mere placement of a product in the stream of commerce and awareness of its potential destination will subject a defendant to jurisdiction in a forum state. n1 Commissariat a l'Energie Atomique, 395 F.3d at 1322 n. 7; [*16] see also Beverly Hills Fan Co., 21 F.3d at 1566. In all the relevant cases addressed by the Federal Circuit to date, the defendants' contacts with the forum state have been sufficient to satisfy even the more stringent test set forth by Justice O'Connor in Asahi. In Beverly Hills Fan Co., for example, the defendant, a ceiling fan manufacturer, shipped its fans directly to the forum state of Virginia for sale by a distributor with several retail outlets in Virginia. The fans ultimately sold in Virginia clearly identified the defendant as the source of the product, and were accompanied by a warranty that the defendant would honor. The court concluded that the defendant manufacturer's "conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." Beverly Hills Fan Co., 21 F.3d at 1566. Likewise, in Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996), a foreign defendant entered into an exclusive marketing and distribution agreement with an Iowa corporation that distributed its product throughout the United States and in the forum state [*17] of California. Beyond simply placing its product into the stream of commerce, the foreign corporation "knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California." Viam Corp., 84 F.3d at 428-29.

n1 Although this Court is obligated to apply Federal Circuit law in this patent infringement action, we note that the Third Circuit has likewise declined to adopt a position with respect to this issue. See Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 207 n. 13 (3rd Cir. 1998); Renner v. Lanard Toys, 33 F.3d 277, 283 (3rd Cir. 1994); but see Portella v. Life-Time Truck Prods., Inc., 127 F. Supp. 2d 652, 658-59 (E.D. Pa. 2000) (adopting Justice O'Connor's approach as the "best-reasoned" and most likely to be adopted by the current Supreme Court).

In the instant case, Plaintiff has presented no evidence of additional [*18] conduct or contacts which would indicate that T&T purposefully directed its activities at the forum state of Pennsylvania. While T&T admits to a "general" awareness that its oven gaskets may be incorporated into ovens sold in various states, including Pennsylvania, it has no control over whether the gaskets end up in Pennsylvania as opposed to any other state, and has taken no purposeful steps to ensure that it reaps the benefits of Pennsylvania business. T&T does not ship its products to Pennsylvania. Unlike the defendant in Viam Corp., T&T has no exclusive distribution agreement with Electrolux/Frigidaire, and T&T is by no means the only company that sells oven gaskets for incorporation into Frigidaire ovens. Electrolux/Frigidaire does not market or advertise T&T's oven gaskets, let alone identify them by name, as in Beverly Hills Fan Co., given that each gasket is merely one minor component of a larger and independently functional product, the home oven. Plaintiff has offered no evidence to suggest that consumers purchasing Frigidaire ovens are aware that the oven's heat-sealing gaskets were originally sold by a Texas corporation. T&T does not provide consumers, either directly [*19] or indirectly, with a warranty for its products. Even if the purchaser of a Frigidaire oven were to contact an authorized Frigidaire service provider in Pennsylvania for a replacement gasket, there is no evidence that T&T would be involved in the replacement process in any way. In sum, T&T has neither designed its product to target the needs of Pennsylvania consumers, nor established channels for providing regular advice to Pennsylvania customers, nor marketed its product to consumers either directly, or indirectly, through a distributor or sales agent. See Asahi Metal Industry Co., 480 U.S. at 112. Thus, T&T's contacts with the forum state of Pennsylvania are clearly inadequate to satisfy Justice O'Connor's test of "stream of commerce-plus." It is arguable, however, that T&T's placement of oven gaskets into the nationwide stream of commerce, combined with its general awareness of their final destination, might be sufficient to satisfy Justice Brennan's less exacting standard for minimum contacts.

Despite the absence of clear guidance from either the Federal or Third Circuits, this Court must take a position with respect to the resolution of the instant action. Accordingly, [*20] [HN8] we find that a defendant does not "purposefully direct" his activities at a forum state merely by selling a component part to a nationwide distributor of home appliances with the awareness that appliances containing the defendant's product may ultimately be sold in the forum state. In keeping with the stream of commerce theory proposed by Justice O'Connor in Asahi, there must be some additional evidence of the defendant's purpose and intent to serve the forum state, such as state-specific marketing or design, the pro-

vision of customer support services, or an exclusive contractual relationship with a distributor in the forum state. The Supreme Court has held that "foreseeability alone" is not a sufficient benchmark for personal jurisdiction under the Due Process Clause, and we believe that adoption of the broad minimum contacts test enunciated by Justice Brennan in Asahi would run afoul of this prescription. World-Wide Volkswagen Corp., 444 U.S. at 295; see Portella v. Life-Time Truck Prods., Inc., 127 F. Supp. 2d 652, 658-59 (E.D. Pa. 2000).

As this Court's jurisdiction over Defendants T&T and Hight Jr. would be grounded on the mere foreseeability [*21] that T&T's oven gaskets might be incorporated into products ultimately sold in Pennsylvania, we decline to exercise it. Absent some other justification for the exercise of personal jurisdiction, this Court must dismiss the claims raised by Plaintiff against Defendants T&T and Hight Jr.

## II. Jurisdiction Under the Alter Ego or Successor Theories

Plaintiff contends that, even if Defendants T&T and Hight Jr. themselves had insufficient contacts with the forum state of Pennsylvania to satisfy the requirements of due process, this Court should nonetheless exercise jurisdiction because these Defendants are the alter egos or successors of H&M, a corporation with substantial and ongoing Pennsylvania contacts.

[HN9] Where an individual or a corporation has insufficient contacts with the forum state to satisfy due process, a court may nonetheless exercise personal jurisdiction if the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction before that court. Minn. Mining & Mfe. Co. v. Eco Chem, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (citing Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634 (8th Cir. 1975)). [*22] The alter ego and successor doctrines are closely related, and look to whether the later-formed entity is a mere continuation of its predecessor, as well as whether there are any indicia of fraud, illegality, or injustice. See generally, Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 62 F. Supp. 2d 13, 19-20 (D.D.C. 1999); Richard v. Bell Atl. Corp., 946 F. Supp. 54, 61 (D.D.C. 1996). In making these determinations, the court should consider the nature of the corporate entities' ownership and control, including commonality of stockholders or officers; common use of employees, business locations, or sales systems; common marketing or trademarking; similarity of core business lines; and commingling of funds and assets. See Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800, 805-806 (3rd Cir. 1981); Gammino v. SBC Communs., Inc., 2005 U.S. Dist. LEXIS 5077 at 11-12 (E.D. Pa. 2005); Material Supply Int'l, Inc. 62 F. Supp.

2d at 19-20. The court should also consider the sufficiency of consideration paid for the transfer of the predecessor's assets or product line, as well as any other indicia [*23] of fraudulent intent in the creation of the second entity. Material Supply Int'l, Inc., 62 F. Supp. 2d at 19-20; Valley Finance v. United States, 203 U.S. App. D.C. 128, 629 F.2d 162, 172 (D.C. Cir. 1980).

In this action, Plaintiff has failed to show to this Court's satisfaction that Defendants T&T and Hight Jr. are true successors or alter egos of Defendant H&M. This Court does recognize that Defendant Hight Jr. is an officer, shareholder, and employee of both T&T and H&M, and that T&T's headquarters are located at the same address as one of H&M's offices. This Court further recognizes that Hight Jr., as T&T's agent, is currently in the business of selling the same allegedly infringing oven gaskets he once sold as an agent of H&M, and to at least one of the same customers. However, the jurisdictional discovery that has been conducted since this Court's last order reveals a credible explanation of why T&T and Hight Jr. should not be considered successors or alter egos of H&M.

Hight Jr. owns only 5.6% of H&M's stock and does not participate significantly in the management, control, or day-to-day business decisions of H&M. (Flack Depo., pp. 112, 121; [*24] Hight Aff. P 4). H&M and Hight Jr. both maintain that there is no corporate relationship whatsoever between H&M and T&T. (Id. at pp. 105-106; Hight Aff. P 6). Nancy Flack, the president of H&M, avers that Hight Jr.'s 2004 creation of T&T resulted from a family rift concerning H&M's business line that occurred as early as October of 2003, at least three months before H&M was notified of a potential patent dispute. (Id. at pp. 30-37). H&M contends that the allegedly infringing gasket was designed by Hight Jr. and Sylvia Hight, and that H&M authorized Hight Jr. to make only two sales of sample gaskets on its behalf in 2003. (Id. at pp. 65-67, 82-84). Hight Sr. then determined that he was not interested in pursuing the oven gasket product line, and allegedly instructed Hight Jr. to stop purchasing and selling the gaskets on behalf of H&M. (Id. at pp. 33-37, 106-107, 114-115). H&M maintains that any invoices for gaskets issued after October 2003 were not authorized by H&M. (Id. at pp. 31-32, 74-78, 95). Furthermore, H&M makes no claims with respect to any patent rights for the product developed by Hight Jr. (Id. at pp. 108-109; Hight Aff. P 11).

Plaintiff asserts [*25] that T&T was created for the purpose of shielding H&M from patent litigation. However, every allegedly incriminating fact identified by Plaintiff is adequately rebutted by Nancy Flack's description of the events at issue. While Plaintiff contends that the timing of T&T's formation suggests an attempt to shield H&M from liability, this Court finds credible Nancy Flack's description of the October 2003 conflict between Hight Jr. and Hight Sr. with respect to H&M's sale of oven gaskets. And while Sylvia Hight's e-mails to the Chinese manufacturer may suggest an attempt by T&T to avoid liability for patent infringement, Plaintiff has offered no evidence beyond Sylvia Hight's use of an H&M e-mail address to suggest that H&M in any way authorized, or was even aware of, this course of action. Plaintiff also makes much of the fact that no consideration was paid by T&T to H&M for its gasket business, and that Hight Jr.'s gasket sales continued "seamlessly" through the transition from H&M to T&T. However, as H&M admits that Hight Jr. and Sylvia Hight developed the gaskets, and now denies having any claim to the product's patent rights, the course of events highlighted by Plaintiff seems less [*26] troubling. If Hight Jr. and Sylvia Hight initially introduced their gaskets as a potential H&M product line, and were informed that H&M was not interested in pursuing this line of business, it should come as no surprise that Hight Jr. would subsequently decide to sell his product through a corporation of his own creation. If H&M has no rights to the product at issue, it is likewise logical than no consideration would be paid for the transfer of H&M's "interest" in the product. Plaintiff's final piece of evidence suggesting a link between H&M and T&T is that Hight Sr. provided T&T with a $ 25,000 start-up loan. However, Plaintiff has offered nothing to suggest that this $ 25,000 was anything other than a legitimate family loan from a successful father to a son who is starting his own business. Moreover, Hight Jr. also contributed over $ 150,000 of his own money towards the formation of T&T, $ 65,960 of which was deposited in late 2003, long before H&M even knew of the possibility of a patent infringement action by Davlyn. (Pl. Exh. I).

[HN10] The justification for imposing alter ego or successor jurisdiction is to prevent corporations from escaping liability by hiding behind sham entities. [*27] While the facts highlighted by Plaintiff tend to suggest that Hight Jr. was aware of the pending patent dispute when he incorporated T&T, Plaintiff has failed to set forth sufficient evidence demonstrating that H&M authorized or anticipated the creation of T&T, or had any expectation that T&T's formation would help H&M escape liability. In fact, the testimony of H&M's representative, Nancy Flack, indicates that Hight Sr., who owns 60% of H&M's stock, instructed Hight Jr. in October of 2003 not to make any additional purchases or sales of oven gaskets, either on H&M's behalf or on Hight Jr.'s own behalf. (Flack Depo., p. 34; Hight Aff. P 4)B. Thus, Plaintiff's assertion that T&T was created for the purpose of shielding H&M from jurisdiction or liability is grounded in little more than speculation. This Court finds that Plaintiff has failed to meet its burden of demonstrat-

ing that personal jurisdiction over Defendants would be proper under a theory of alter ego or successor liability.

### III. Defendants' Motion in the Alternative to Transfer

As this Court finds that it cannot exercise jurisdiction over Defendants T&T and Hight Jr. consistent with the requirements of due process, [*28] the claims against them must be dismissed, and Defendants' motion in the alternative to transfer this case to the Western District of Texas is moot. Plaintiff's action against Defendant H&M may proceed before this Court, and Plaintiff is free to pursue its claims against Defendants T&T and Hight Jr. in a more appropriate forum.

An appropriate Order follows.

### ORDER

AND NOW, this 18th day of August, 2005, upon consideration of the Renewed Motion to Dismiss, Or, In the Alternative, to Transfer of Defendants Tape & Technologies Incorporated and Henry C. Hight, Jr. (Doc. No. 35) and all responses thereto (Docs. No. 36, 37, 38), it is hereby ORDERED that the Motion is GRANTED. It is FURTHER ORDERED that this matter is DISMISSED as to Defendants Tape & Technologies Incorporated and Henry C. Hight, Jr. only.

BY THE COURT:

J. CURTIS JOYNER, J.

# TAB 4

LEXSEE 2003 US DIST LEXIS 7715

**IN RE: ELONEX PHASE II POWER MANAGEMENT LITIGATION**

**C.A. Nos.: 01–082 GMS; 01–083 GMS; 01–084 GMS; 01–085 GMS; 01–086 GMS; 01–087 GMS, 01–088 GMS, 01–089 GMS, 01–090 GMS; 01–091 GMS, 01–092 GMS; 01–093 GMS, 01–095 GMS; 01–096 GMS, 01–097 GMS; 01–098 GMS, 01–099 GMS; 01–100 GMS, 01–101 GMS; 01–102 GMS, 01–103 GMS; 01–104 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 7715*

**May 6, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by *In re Elonex Phase II Power Mgmt. Litig., 2003 U.S. Dist. LEXIS 10717 (D. Del., June 23, 2003)*

**PRIOR HISTORY:** *In re Elonex Phase II Power Mgmt. Litig., 2002 U.S. Dist. LEXIS 19552 (D. Del., Oct. 15, 2002)*

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction denied.

**COUNSEL:** For Elonex IP Holdings, Ltd, Eip Licensing BV, Elonex Phase II Power Management Litigation, PLAINTIFFS (01cv82): Andre G Bouchard, Bouchard, Margules & Friedlander, Wilmington, DE USA.

For Elonex Phase II Power Management Litigation, PLAINTIFF (01cv82): Donald F Parsons, Jr, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Compaq Computer Corp, Proview International Holdings Ltd, DEFENDANTS (01cv82): William J Wade, Richards, Layton & Finger, Wilmington, DE USA.

For LG Electronics Inc, DEFENDANT (01cv82): Richard K Herrmann, Blank Rome LLP, Wilmington, DE USA.

For Delta Electronics Inc, Amtran Technology Co, Ltd, Daewoo Electronics Co, Ltd, Compal Electronics, Inc, DEFENDANTS (01cv82): Richard L Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Delta Electronics Inc, DEFENDANT (01cv82): John T Meli, Jr, Fish & Richardson, PC, Wilmington, DE USA.

For NEC Corp, DEFENDANT (01cv82): Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For Gateway Inc, Acer Communications & Multimedia, Inc, DEFENDANTS (01cv82): Allen M Terrell, Jr, Richards, [*2] Layton & Finger, Wilmington, DE USA.

For Gateway Inc, Necx Direct LLC, DEFENDANTS (01cv82): Dominick T Gattuso, Richards, Layton & Finger, Wilmington, DE USA.

For Lite-on Technology Corp, DEFENDANT (01cv82): Robert W Whetzel, Richards, Layton & Finger, Wilmington, DE USA.

For ADI Corp, DEFENDANT (01cv82): Josy W Ingersoll, John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For ADI Corp, Daewoo Electronics Co, Ltd, DEFENDANTS (01cv82): David L Finger, David L Finger, Esq, Wilmington, DE USA.

For Chuntex Electronics Co, Ltd, CTX International Inc, DEFENDANTS (01cv82): Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Acer Communications & Multimedia, Inc, CTX International Inc, DEFENDANTS (01cv82): Gerard M O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Acer Communications & Multimedia, Inc, DEFENDANT (01cv82): John C Andrade, Basil C Kollias, Parkowski & Guerke, PA, Dover, DE USA.

For Jean Co Ltd, DEFENDANT (01cv82): Donald W Huntley, Donald W Huntley, Esq, Wilmington, DE USA.

2003 U.S. Dist. LEXIS 7715, *2

For Tatung Corp, DEFENDANT (01cv82): James C Strum, Stradley, Ronon, Stevens & Young, Wilmington, DE USA.

For [*3] Apple Computer, DEFENDANT (01cv82): Frederick L Cottrell, III, Richards, Layton & Finger, Wilmington, DE USA.

For Korea Data Systems Co, Ltd, DEFENDANT (01cv82): Richard H Morse, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Envision Peripherals Inc, Top Victory Electronics (Taiwan) Co, Ltd, Aoc International, DEFENDANTS (01cv82): Richard D Kirk, Morris, James, Hitchens & Williams, Wilmington, DE USA.

For Necx Direct LLC, DEFENDANT (01cv82): Allen M Terrell, Jr, Richards, Layton & Finger, Wilmington, USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On February 13, 2001, the plaintiffs, Elonex I.P. Holdings, Ltd. and EIP Licensing, B.V. (collectively "Elonex"), filed this action against certain companies that manufacture and sell computer systems or computer monitors. n1 The complaint alleges infringement of U.S. Patent Numbers *5,389,952* ("the *'952* patent"), *5,648,799* ("the *'799* patent"), and *5,649,719* ("the *'719* patent"). The lawsuit relates to technology that concerns power management in computer monitors.

> n1 In December 1998, Elonex I.P. Holdings Ltd. and Elonex plc filed a related lawsuit against another group of defendants on substantially the same grounds ("Elonex Phase I litigation").

[*4]

On May 21, 2001, Elonex requested entry of default against the defendant Jean Co., Ltd. ("Jean"). The Clerk of the Court entered default against Jean on June 18, 2001. On January 31, 2003, Elonex then moved for entry of default judgment against Jean. On February 20, 2002, counsel entered an appearance on behalf of Jean.

Presently before the court is Jean's motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will deny this motion.

### II. BACKGROUND

Jean is an international monitor and electronics manufacturer, with its principle place of business in Taipei, Taiwan. In 2001, Jean had more than $316 million in worldwide sales.

From March 1995 until April 1996, Elonex alleges that Jean shipped 404,855 monitors to the United States. Since 1998, ViewSonic Corporation and eMachines, Inc. — two United States monitor companies with nationwide re-seller networks—have been among Jean's biggest customers. According to Jean's 1999 Annual Report, ViewSonic alone accounted for 22.91% of Jean's worldwide monitor sales in 1998. In 1999, ViewSonic purchased 30.4% of Jean's total 1999 monitor sales. In 2001, ViewSonic purchased 39.7% of Jean's total [*5] monitor sales. Likewise, in 1999, eMachines purchased 12.94% of Jean's worldwide monitor sales.

Additionally, both ViewSonic and eMachines have well-established retail distribution networks. ViewSonic monitors are available from retailers such as Best Buy, Office Depot, and CompUSA. Likewise, eMachines monitors are sold in Delaware at Best Buy, Office Depot, and Circuit City. Both ViewSonic and eMachines also sell monitors directly to consumers via their own internet websites. Thus, the Jean monitors sold to ViewSonic and eMachines are resold in Delaware and throughout the United States.

Furthermore, Delaware purchasers of Jean monitors can download monitor software and obtain customer service via Jean's website. Visitors to the website can also download drivers for Jean monitors and obtain technical support via e-mail. Finally, Jean's website lists an "East Coast" service facility located in New Jersey.

### III. DISCUSSION

#### A. Due Process

*The Due Process Clause* requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the [*6] forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe, 326 U.S. 310, 316, 90 L. Ed 95, 66 S. Ct. 154* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)).* In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the

forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*. In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994)*. [*7]

In *Beverly Hills Fan,* the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia. *21 F.3d at 1560*. Ultec claimed that it was not subject to personal jurisdiction in Virginia because it did not have any Virginia assets, employees, or a license to do business in that state. *Id.* Acknowledging that Ultec's sole contact with the forum resulted from indirect shipments through the stream of commerce, the Federal Circuit held that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel The cause of action for patent infringement is alleged to rise out of these activities. No more is usually required to establish specific jurisdiction." *Id. at 1560, 1564–65*.

The court's decision in *Motorola Inc. v. PC-Tel, Inc.* is likewise instructive in resolving the present issue. *58 F. Supp. 2d 349 (D. Del. 1999)*. In that case, the court described the accused infringer's sales activities as follows:

> Altocom does not (and, it seems, cannot) contest the fact that its [*8] softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Song, and the like. These goods are then put into the world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, Office-Max, Sears, Service Merchandise, and others — all of which have outlets in Delaware.

*58 F. Supp. 2d at 352*. Relying on *Beverly Hills Fan,* the court rejected AltoCom's arguments and held that exercising personal jurisdiction comported with due process.

*See id. at 355–56*.

In the present case, as in *Beverly Hills Fan,* Jean's president states in his declaration that Jean makes no direct sales to the United States. He further states that Jean has no United States offices or subsidiaries. However, the court concludes that Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells its monitors to ViewSonic and eMachines, who in turn distribute [*9] Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-reseller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

Jean further maintains an interactive website through which customers in Delaware, and elsewhere, can download driver software, as well as obtain customer support. On its website, it also lists "Global Service Centers," including an "East Coast" service facility in New Jersey. These facts further support the court's conclusion that Jean's undeniably substantial and regular monitor sales into ViewSonic's and eMachines' national distribution networks constitute "purposeful minimum contacts" with Delaware.

Notwithstanding the existence of Jean's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice ...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court, 480 U.S. 102, 116, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*. [*10] This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendants to litigation within the forum. *See Beverly Hills Fan, 21 F.3d at 1568*.

In the present case, Delaware clearly has a substantial interest in discouraging injuries in the state, including patent infringement injury. It has also been the sole forum for the Elonex Power Management Litigation for several years. Finally, and as the *Beverly Hills Fan* court noted, "progress in communications and transportation" have made "the defense of a lawsuit in a foreign tribunal less burdensome." *21 F.3d at 1569* (internal quotation and citation omitted). Thus, the court concludes that any burden on Jean "is not sufficiently compelling to outweigh" Elonex's and Delaware's interests. *Id.*

## B. Delaware's Long–Arm Statute

The second step in the court's analysis into the propriety of subjecting Jean to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See DEL.* [*11] *CODE. ANN. tit. 10 § 3104.* While Jean contends that it does not fall within the grasp of any of *Section 3104*'s provisions, Elonex contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection *(c)(4)*, the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." *DEL. CODE. ANN. tit. 10, § 3104(c)* (2001). n2 The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten, 784 F. Supp. 146, 151 (D. Del. 1992).*

> n2 This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth., 56 F. Supp. 2d 436, 439 (D. Del. 1999).* Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

[*12]

As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors

satisfies the act requirement of *Section 3104(c)(4)*. *See Beverly Hills Fan, 21 F.3d at 1571.* Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at PP 3–7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

## C. Venue

Jean finally asserts that, pursuant to *28 U.S.C. § 1391(c)*, venue is improper in this district. Jean's argument is meritless, however, because "the venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if ... the district court has personal jurisdiction over [the defendant]." *North American Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994); see also 28 U.S.C. § 1391(b)(1) & (c)* (stating that venue is proper in a judicial district where the defendant corporation is subject to personal jurisdiction at the time the action is commenced). [*13] As the court has already found that the exercise of personal jurisdiction is proper and complies with both due process and the Delaware long-arm statute, venue in this district is also proper.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jean's Motion to Dismiss (D.I. 856) is DENIED.

Dated: May 6, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE