IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and | ) | |
| HONEYWELL INTELLECTUAL PROPERTIES INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1338-KAJ |
| | ) | |
| APPLE COMPUTER INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ARIMA DISPLAY CORPORATION'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**


William J. Wade  (#704)
Wade@rlf.com
Matthew W. King  (#4566)
King@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

OF COUNSEL:

Dan C. Hu
Diana M. Sangalli
TROP, PRUNER & HU, P.C.
Suite 100
8554 Katy Freeway
Houston, TX  77024

Dated: March 23, 2006

Attorneys for Defendant
Arima Display Corporation

## TABLE OF CONTENTS

I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................... 1

II.  SUMMARY OF ARGUMENT ...................................................................................... 2

III. STATEMENT OF FACTS .......................................................................................... 3

IV.  ARGUMENT ................................................................................................................ 6

   A.  The Delaware long-arm statute does not provide a basis for personal jurisdiction over Arima Display. ........................................................................... 7

      1.  Subsection 3104(c)(1) of the Delaware long-arm statute does not confer specific jurisdiction over Arima Display. ........................................... 9

      2.  Subsection 3104(c)(4) of the Delaware long-arm statute does not confer general jurisdiction over Arima Display. ............................................ 14

   B.  The exercise of personal jurisdiction over Arima Display in Delaware does not satisfy the requirements of federal due process. ........................................ 17

      1.  Exercising specific jurisdiction over Arima Display would violate the Due Process Clause. ..................................................................................... 17

      2.  Exercising general jurisdiction over Arima Display would violate the Due Process Clause. ..................................................................................... 20

      3.  Exercising jurisdiction over Arima Display would offend traditional notions of fair play and substantial justice. .................................................. 21

V.   CONCLUSION ........................................................................................................... 23

APPENDIX (Unreported Cases (Part I and Part II) ................................................. attached

## TABLE OF AUTHORITIES

**Cases**

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458 (D. Del. 1991) ............................. 9

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) ....................................... 18, 19, 21

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir.), *cert. dismissed*, 512 U.S. 1273 (1994) ............................................................................................................. 6, 17, 21

*Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. Ct. 1997), *cert. denied*, 524 U.S. 939 (1998) ........................................................................................................................... 7, 8, 10, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................. 17

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005) ................................................................................................................................. passim

*eSpeed, Inc. v. Brokertec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004)  10

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382 (Fed. Cir. 1998) .................... 6

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ........................... 17, 20

*ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 147 F. Supp. 2d 268 (D. Del. 2001) .............................................................................................................................. 6

*In re Elonex Phase II Power Mgmt. Litig.*, 2003 U.S. Dist. LEXIS 7715 (D. Del. May 6, 2003) 16

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................................................. 17, 21

*Intel Corp. v. Silicon Storage Technology, Inc.*, 20 F. Supp. 2d 690 (D. Del. 1998) .................... 8

*LaNuova D&B S.p.A. v. Bowe Co.*, 513 A.2d 764 (Del. 1986) ................................................... 7, 9

iii

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, 2005 U.S. Dist. LEXIS 1726 (D. Del. Feb. 8, 2005) ................................................................................................................. 11

*Merck & Co., Inc. v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368 (D. Del. 2002) ...................... 7

*Milliken v. Meyer*, 311 U.S. 457 (1940) ................................................................................ 17

*Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999) ..................................... 8, 15, 16

*Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004) ........................................................................................................................... 12, 13

*Philips Electronics North America Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940 (D. Del. Mar. 11, 2004) ........................................................................................... 8, 12, 13

*Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622 (D. Del. 1999) .... passim

*Thorn EMI North America, Inc. v Micron Technology, Inc.*, 821 F. Supp. 272 (D. Del. 1993)... 10

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ......................................... 17, 21

**Statutes**

DEL. CODE ANN. tit. 10 § 3104(c) (2004) ................................................................................ 7, 14

## TABLE OF ABBREVIATIONS

Shen Decl. ¶ __.                Refers to the March 23, 2006, *Declaration of Hsing-Hung Shen in Support of Arima Display Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction*, attached hereto.

RLF1-2994810-1

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Honeywell International Inc., a Delaware corporation, and Honeywell Intellectual Properties Inc., an Arizona corporation, (collectively "Honeywell") have brought this action for patent infringement against Arima Display Corporation ("Arima Display"), a Taiwanese corporation having its principal place of business in Kaohsiung, Taiwan.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Arima Display moves to dismiss this action against it for lack of personal jurisdiction.

1

## II.    SUMMARY OF ARGUMENT

1.    Arima Display is a Taiwanese corporation with no specific or general contacts with Delaware.  Arima Display manufactures, sells and delivers all of its components in Asia and passes title to those components to its customers in Asia.  Arima Display's customers may incorporate Arima Display's components into consumer products which may be distributed around the world, including the United States and perhaps Delaware.  However, Arima Display has no knowledge of or control over the consumer products' ultimate destination or the manner by which the products travel to their ultimate destination.  In fact, Arima Display transacts no business in Delaware, and Arima Display does not have an agent or distributor that transacts business in Delaware.  Arima Display has not taken any purposeful action directed toward the Delaware market or engaged in continuous or substantial activity such that Arima Display is subject to personal jurisdiction in Delaware pursuant to the Delaware long-arm statute.

2.    Because Arima Display has no contacts with Delaware and has not exhibited any purposeful conduct directed toward Delaware, exercising personal jurisdiction in Delaware over Arima Display would violate the federal Due Process Clause.

3.    Exercising personal jurisdiction over Arima Display in Delaware would offend traditional notions of fair play and substantial justice because the heavy burden of subjecting Arima Display to litigation in Delaware clearly outweighs any prejudice that would result to Honeywell in dismissing Arima Display from this lawsuit.

2

## III.   STATEMENT OF FACTS

Arima Display is a Taiwanese corporation established in June 2000 that manufactures and sells color LCD panels and modules ("LCDs"). (Shen Decl. ¶¶ 2, 3). In addition to its headquarters located in Kaohsiung, Taiwan, Arima Display has offices and manufacturing facilities located in Wujiang, China and Shizuoka, Japan. (*Id.* at ¶ 2).

Arima Display does not own or maintain any property, offices, facilities, or other places of business in Delaware. (*Id.* at ¶¶ 9, 11). It has no employees or agents located in Delaware. (*Id.* at ¶¶ 4, 16). Arima Display does not solicit or transact business in Delaware and does not have a distributor that solicits or transacts business in Delaware on its behalf. (*Id.* at ¶¶ 6, 16). Likewise, Arima Display has no local telephone listing and no bank account in Delaware. (*Id.* at ¶¶ 13, 14). It has never paid any taxes in Delaware and is not registered to do business in Delaware. (*Id.* at ¶ 12). Arima Display has never entered into any contracts or agreements in Delaware. (*Id.* at ¶¶ 8, 10). Arima Display has never commenced or appeared in any legal action in Delaware and has never been named as a defendant in any action in Delaware, except the current lawsuit. (*Id.* at ¶ 15).

Arima Display does maintain a website at www.arimadisp.com, which can be accessed by anyone in the United States, including Delaware. (*Id.* at ¶ 17). However, the website merely provides general information about Arima Display and general technical specifications for its products. A user cannot order any products online or access or acquire technical support for the products through the website. (*Id.*).

Arima Display does not directly or indirectly sell any of its LCDs in Delaware. (*Id.* at ¶¶ 6, 7, 16). Arima Display sells its LCDs to customers that are believed to incorporate the LCDs as components into those customers' own products. Arima Display has a small number of customers in the United States. (*Id.* at ¶ 18). None of those customers are located in Delaware. (*Id.*) Arima Display delivers its products to these customers in Taiwan and passes title to the products in Taiwan. (*Id.*).

All of Arima Display's other customers to which it sells LCDs are located in Asia, including Taiwan, Hong Kong, China, Singapore, and Japan.[1] (*Id.* at ¶ 19). The Asian customers all accept delivery of the LCDs in Taiwan or another country in Asia, and title to the LCDs passes to the Asian customers in Asia. (*Id.*).

Arima Display does not control any of its customers' use of the LCDs. (*Id.* at ¶ 21). Arima Display believes that the LCDs are incorporated into electronic products of Arima Display's customers and that some of these products may end up in the United States. However, Arima Display has no control over the sale or distribution of its customers' products or control over whether its customers sell or distribute the LCDs to others. (*Id.*).

In all cases, Arima Display derives its revenues from LCDs based on the sales of the LCDs delivered to its customers, all of which deliveries occur in Asia. (*Id.* at ¶¶ 18, 19, 22). Arima Display's revenues are not based on the sales of any of its customers' products which incorporate the LCDs. (*Id.* at ¶ 22).

---

[1] One of Arima Display's Asian customers is Arima Communications Corporation. (Shen Decl. ¶ 20). Both Arima Display and Arima Communications are subsidiaries of Arima Computer Corporation, a Taiwanese corporation headquartered in Taipei, Taiwan. (*Id.* at ¶¶ 2, 20). Arima Communications is a Taiwanese corporation with headquarters in Taipei, Taiwan. (*Id.* at ¶ 20).

4

Honeywell added Arima Display to this lawsuit in its First Amended Complaint,

alleging that :

> Arima Display has been and is engaged in the manufacture, importation,
> offer for sale, and/or sale of liquid crystal display (LCD) modules that are
> incorporated into products that are sold in the United States with the
> knowledge and intention that such LCD screen-containing products would
> be sold throughout the United States, including this judicial district.

(D.I. 239 ¶ 70). However, Honeywell has not alleged that Arima Display has any direct

contacts with Delaware, that Arima Display has directed any purposeful conduct toward

Delaware, or that any products containing Arima Display's LCDs actually are present in

Delaware.

5

## IV.  ARGUMENT

Once the defense of lack of personal jurisdiction is raised, the plaintiff bears the burden of alleging facts sufficient to make a *prima facie* showing of jurisdiction over the defendant. *ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, the plaintiff must adduce facts which "establish with reasonable particularity" that jurisdiction over the defendant exists. *Id.* at 271. Honeywell cannot meet its burden.

Personal jurisdiction may be premised on either a specific jurisdiction or a general jurisdiction theory. In either case, to establish personal jurisdiction over a non-resident defendant, a plaintiff must show that both the state's long-arm statute applies and the exercise of jurisdiction comports with the requirements of federal due process. *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). In patent cases, a court's exercise of personal jurisdiction over a defendant is governed by Federal Circuit law rather than the law of the regional circuit in which the case is brought. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir.), *cert. dismissed*, 512 U.S. 1273 (1994). However, the Federal Circuit has stated that "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

Delaware courts interpret the Delaware long-arm statute "broadly . . . to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova*

6

*D&B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). *But see Commissariat*, 395 F.3d at 1320 (observing that it is not clear "whether the Delaware long arm statute extends to the full extent that the due process clause would permit"). Even so, the Delaware Supreme Court has not collapsed the analysis of the long-arm statute into the federal due process analysis. *Merck & Co., Inc. v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002). Thus, the analysis here will start with an examination of the Delaware long-arm statute.

### A.    The Delaware long-arm statute does not provide a basis for personal jurisdiction over Arima Display.

The Delaware long-arm statute provides, in relevant part, that a court may not exercise personal jurisdiction over a nonresident unless the nonresident, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> . . .
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

DEL. CODE ANN. tit. 10 § 3104(c) (2004). Delaware courts generally view § 3104(c)(1) as a specific jurisdiction provision, which requires, at a minimum, that some conduct of the defendant must have occurred in Delaware. *See Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. Ct. 1997), *cert. denied*, 524 U.S. 939 (1998). Subsection 3104(c)(4) is viewed as a general jurisdiction provision which considers acts of the defendant that have occurred outside of Delaware. *Id.*

Here, Honeywell has not alleged that Arima Display has had any direct contacts with Delaware or that Arima Display has directly or indirectly sold any of its LCDs in

7

Delaware.    Rather, Honeywell has alleged only that infringing products which incorporate Arima Display's LCDs are sold into the United States with knowledge and intention that such products would be sold throughout the United States, including this judicial district.  Thus, Honeywell appears to rely on a "stream of commerce" theory to establish jurisdiction over Arima Display in Delaware.

The Federal Circuit has recently observed that "[t]he scope of the stream of commerce theory under Delaware law is not clear." *Commissariat*, 395 F.3d at 1320.  In general, the stream of commerce theory was designed to confer jurisdiction in those cases in which a product has traveled through a chain of distribution before reaching the ultimate consumer.  *See Boone*, 724 A.2d at 1156.  As noted by the Delaware Superior Court in *Boone*, the stream of commerce theory "does not fit neatly into any section of § 3104." *Id.* at 1157.  Despite this analytical dilemma, the *Boone* court used the stream of commerce theory to confer jurisdiction over a non-resident under the Delaware long-arm statute via §§ 3104(c)(1) and (c)(4).  *Id.* at 1157-58.

Although Delaware cases subsequent to *Boone* have also applied the stream of commerce in their analysis of the "transacting business" provision of § 3104(c)(1) and the general provision of § 3104(c)(4),[2] the Federal Circuit has recently noted that Delaware case law does not clearly indicate that the stream of commerce theory can be used to support specific jurisdiction under the Delaware long-arm statute.    *See*

---

[2] *See, e.g., Philips Electronics North America Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940 (D. Del. Mar. 11, 2004) (finding jurisdiction under § 3104(c)(1) based on the stream of commerce theory); *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622 (D. Del. 1999) (declining to find jurisdiction under §§ 3104(c)(1) and (c)(4) based on the stream of commerce theory); *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999) (finding jurisdiction under § 3104(c)(4) based on the stream of commerce theory); *Intel Corp v. Silicon Storage Technology, Inc.*, 20 F. Supp. 2d 690 (D. Del. 1998) (declining to find jurisdiction under §§ 3104(c)(1) and (c)(4) based on the stream of commerce theory).

8

*Commissariat*, 395 F.3d at 1319 n.3 (limiting its jurisdictional analysis to § 3104(c)(4) of the Delaware long-arm statute and declining to consider the "transacting business" provision, because "[o]ur review of the Delaware case law indicates that this provision is not a valid basis for assertion of jurisdiction under the stream of commerce theory"). Because the law is not clear with respect to this issue, the application of the stream of commerce theory to both the specific and general jurisdiction provisions of the Delaware long-arm statute will be discussed below.[3]

>    1.    **Subsection 3104(c)(1) of the Delaware long-arm statute does not confer specific jurisdiction over Arima Display.**

Subsection 3104(c)(1) provides for jurisdiction over a non-resident that "transacts business" in Delaware. This subsection is a specific jurisdiction provision in that it requires a nexus between the plaintiff's cause of action and the conduct of the defendant that is used as the basis for jurisdiction. *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd*, 69 F. Supp. 2d 622, 625 (D. Del. 1999); *LaNuova*, 513 A.2d at 768.

Subsection 3104(c)(1) has been interpreted as requiring that some action of the defendant or the defendant's distributor must actually occur in Delaware. *See Siemens*, 69 F. Supp. 2d at 626 (holding § 3104(c)(1) insufficient to confer jurisdiction because neither the defendant *nor its distributor* had sold components "directly to customers in Delaware"); *see also Applied Biosystems, Inc. v. Cruachem, Ltd*., 772 F. Supp. 1458, 1466 (D. Del. 1991). Here, Arima Display has not performed an act in Delaware because Arima Display neither sells its LCDs nor has a distributor that sells its LCDs directly to customers in Delaware. (Shen Decl. ¶¶ 6, 7, 16). Rather, Arima Display delivers and

---

[3] The Delaware courts also view §§ 3104(c)(2) and (c)(3) as specific jurisdiction provisions. However, the Delaware courts have not appeared to embrace applicability of the stream of commerce theory to these subsections.

passes title to all of its LCDs outside Delaware, in Asia. (*Id.* at ¶¶ 18, 19). *See Boone*, 724 A.2d at 1156 (stating that when a manufacturer passes title to goods outside Delaware, *the manufacturer has not performed an act in Delaware*).

Not only must an act occur in Delaware, but to constitute "transacting business" under § 3104(c)(1), the defendant's conduct must be directed at residents of Delaware and the protection of Delaware laws. *Siemens*, 69 F. Supp. 2d at 625. Isolated business activities generally are not sufficient to qualify as "transacting business." *Thorn EMI North America, Inc. v Micron Technology, Inc.*, 821 F. Supp. 272, 274 (D. Del. 1993). Rather, the defendant's conduct must be "part of a general business plan . . . to solicit business in Delaware and deliver products to customers in Delaware." *Id.*

Not only has Arima Display not committed an act that actually occurred in Delaware, Arima Display's conduct does not evince a general business plan to solicit business in Delaware. Arima Display does not have any offices, employees, or property in Delaware, and it is not registered to do business in Delaware. (Shen Decl. ¶¶ 4, 9, 12). At most, Arima Display has an Internet website that can be accessed by Delaware residents and which provides information about its products. However, a user's interaction with Arima Display's website is limited. Arima Display's products may not be purchased online and the website does not offer any technical support or other assistance. (*Id.* at ¶ 17). *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760 *11 (D. Del. Sept. 13, 2004) (stating that "[i]t is interactivity and the *conducting of business over the Internet* that carries jurisdictional consequences") (emphasis added).

10

Stream of commerce cases generally include allegations that the nonresident defendant transacted business in Delaware by placing its product in an established distribution channel. Although it is not clear from these cases whether "transacting business" in Delaware requires "proof of an 'intent or purpose to serve the Delaware market,'" *Commissariat*, 395 F.3d at 1320 (quoting *Boone*, 724 A.2d at 1158), the analysis in stream of commerce cases invariably focuses on some purposeful conduct of the defendant that is directed toward Delaware. Thus, for instance, when examining the stream of commerce that carried the product into Delaware, courts have considered whether that stream is a distribution channel that was *established by the nonresident defendant. See, e.g., M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*, 2005 U.S. Dist. LEXIS 1726 *9 (D. Del. Feb. 8, 2005) (stating that "a party *who contracts* to have its product distributed throughout the United States is subject to jurisdiction in any state") (emphasis added).

In *M&M Technologies*, the court's analysis of the applicability of § 3104(c)(1) included determining whether nonresident defendant Burlington had engaged Gurtler as a nationwide distributor of Burcopel CAT. The court concluded:

> There is no evidence in the record ... that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user.

*Id.* at *10. Based on these facts, the court held that § 3104(c)(1) did not provide a basis for jurisdiction over Burlington. *Id.* In other words, the evidence did not support finding any purposeful conduct of Burlington directed toward the Delaware market.

11

Like the defendant in *M&M Technologies*, Arima Display has not transacted business in Delaware within the meaning of § 3104(c)(1), because Arima Display has not directed any purposeful conduct toward Delaware. Arima Display has not contracted with a distributor to distribute its LCDs or consumer products containing the LCDs throughout the United States. (Shen Decl. ¶ 16). Rather Arima Display delivers and passes title to all of its LCDs to customers outside of Delaware, in Asia. (*Id.* at ¶¶ 18, 19). Those customers may then integrate the LCDs into consumer products. Arima Display has not authorized any of its customers to sell these consumer products under any trademark belonging to Arima Display. (*Id.* at ¶ 23).

When specific jurisdiction based on a stream of commerce theory has been found, the nonresident defendant's purposeful conduct has been clearly directed toward Delaware. *See, e.g., Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004); *Philips Electronics North America Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940 (D. Del. Mar. 11, 2004). In *Padcom*, the court found that nonresident defendant NetMotion had placed its software product into the stream of commerce by allowing another company to include marketing information about NetMotion which included a link to NetMotion's website. *Padcom*, 2004 U.S. Dist. LEXIS 9658 at *13. A Delaware resident had used the link to visit NetMotion's website and download a trial version of the software. *Id.* at *10-11. NetMotion also communicated via email with that resident regarding problems with the software. *Id.* at *17. Yet further, NetMotion had specifically targeted Delaware businesses with a telemarketing and promotional mailing campaign. *Id.* Based on these activities, the court found that NetMotion had "*knowingly conducted business* with Delaware residents" and

12

had "*knowledge and purpose[] to do business*" in Delaware, and thus conferred jurisdiction under § 3104(c)(1). *Id.* at *16-17 (emphasis added).

Purposeful conduct directed toward Delaware was also present in *Philips*, a stream of commerce case that was before this Court. In *Philips,* the nonresident defendant Remote Solution purposefully directed its conduct toward the Delaware market by marking its allegedly infringing remote control product with the logo of a major Delaware cable service provider. *Philips*, 2004 U.S. Dist. LEXIS 3940 at *7. In addition, Remote Solution had a longstanding "close business relationship" with co-defendant Contec, a Delaware corporation that sold cable set top boxes with the remote controls to the major Delaware cable provider. *Id.* at *13. Given that Remote Solution "*knew or should have known*" that the remote controls would end up in Delaware "and in light of Remote Solution's ongoing business relationship with Contec," this Court found jurisdiction over Remote Solution proper under § 3104(c)(1). *Id.* (emphasis added).

The purposeful conducts exhibited in *Padcom* and *Philips* do not exist in the present case. Instead, this case is more like *Siemens* and *M&M Technologies*, where Arima Display delivers and passes title to all of its LCDs to customers outside of Delaware, and where Arima Display's LCDs lose any association with Arima Display once integrated into end user products. Moreover, unlike the defendant in *Philips*, Arima Display does not design its LCDs specifically for the Delaware market. (Shen Decl. ¶ 24). Yet further, Arima Display does not have any ongoing commercial relationship or other direct contact with a Delaware resident that distributes products containing its LCDs in Delaware. (*Id.* at ¶ 16). Finally, unlike the defendant in *Padcom*, Arima Display has not knowingly conducted business with a Delaware resident, has not

13

specifically targeted Delaware residents with a marketing program, does not provide an interactive website, and has not allowed any of its customers to use Arima Display's name, trademarks or logos in conjunction with those customers' products. (*Id.* at ¶¶ 6, 7, 17, 23).

In view of Arima Display's lack of contacts with or purposeful conduct directed toward Delaware, § 3104(c)(1) cannot serve as the basis for this Court's jurisdiction over Arima Display.

### 2. Subsection 3104(c)(4) of the Delaware long-arm statute does not confer general jurisdiction over Arima Display.

Not only is a statutory basis to confer specific jurisdiction lacking, this Court also may not exercise general jurisdiction over Arima Display under § 3104(c)(4) of the Delaware long-arm statute. Subsection 3104(c)(4) allows a court to exercise personal jurisdiction over a defendant that "regularly does or solicits business" or "derives substantial revenue from services or things used or consumed in the State." DEL. CODE ANN. tit. 10 § 3104(c)(4) (2004). To assert general jurisdiction under § 3104(c)(4), "the defendant's activity in the forum must be continuous and substantial." *Siemens*, 69 F. Supp. 2d at 626.

As with specific jurisdiction, attempts to confer general jurisdiction have analyzed the applicability of the Delaware long-arm statute under the stream of commerce theory. Some of these attempts have involved a component manufacturer (like Arima Display) which sold a product that was then integrated into an end product that found its way into Delaware. *See, e.g., Siemens*, 69 F. Supp. 2d at 622. For instance, *Siemens* involved a manufacturer—LG Semicon—of DRAM chips that were sold to customers outside of Delaware. These customers incorporated the DRAM chips into electronic products that

14

were then sold in Delaware. In declining to confer jurisdiction under § 3104(c)(4) based on a stream of commerce theory, the court found that LG Semicon's conduct did not satisfy the long-arm statute, because its sales outside of Delaware did not amount to the continuous and substantial activity in the forum state required by § 3104(c)(4). *Id.* at 627. Indeed, as noted by the court, "LG Semicon's only contact with Delaware [was] second hand contact from the sale of DRAM chips to customers who use the chips in electronic devices that are available to Delaware consumers." *Id.* Likewise, Arima Display's sales of LCDs do not amount to continuous and substantial activity in Delaware, since Arima Display sells its products to customers outside Delaware, in Asia.

In addition to the lack of continuous and substantial activity in the forum state, the court found that LG Semicon had not derived substantial revenue from the sales in Delaware:

> The court finds that any revenue LG Semicon has generated through sales of DRAM chips to customers outside Delaware whose electronic devices are sold in Delaware is ***too remote and insubstantial*** to meet the requirements of § 3104 (c)(4).

*Id.* (emphasis added). The same finding would apply here. That is, revenue generated by Arima Display's sales of its LCDs to customers in Asia that incorporate the LCDs into end user products which may end up in Delaware would be considered too remote and insubstantial to satisfy § 3104 (c)(4).

In another stream of commerce case, general jurisdiction under § 3104(c)(4) over a nonresident component manufacturer was found. *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999). However, in *Motorola*, the component manufacturer's contacts with Delaware could not be characterized as either "remote" or "second hand." The component manufacturer, Altocom, had designed a softmodem for integration by its

15

customers into computers. The computers then were placed in a distribution chain which included retail outlets with a national presence. Significantly, Altocom required its customers to enter into licensing agreements which provided for royalties to be paid to Altocom on the basis of each port enabled in the licensee's shipped end products. *Id.* at 355. Thus, AltoCom's softmodem revenues were not based on the sale of the softmodem itself, but rather on the sales of end user products. In addition, the court found that AltoCom maintained an interactive website from which end users could download softmodem control commands to their computer, obtain customer support directly from AltoCom, and order a product to test the softmodem. *Id.* at 352. In light of these facts, the court found the exercise of general jurisdiction proper under § 3104(c)(4).[4] *Id.* at 357.

Unlike the component manufacturer in *Motorola*, Arima Display does not maintain an interactive website. (Shen Decl. ¶ 17). Arima Display also does not derive its LCD revenues based on sales of its customers' end products. (*Id.* at ¶ 22). Rather, Arima Display's revenue is based on sales of the LCDs themselves, which occur outside of Delaware, in Asia. (*Id.*). Thus, the facts which supported an exercise of jurisdiction by the *Motorola* court are not present here.

Arima Display's sales of components outside Delaware do not amount to the continuous and substantial activity in Delaware required by § 3104(c)(4). Further, revenue derived from sales of components outside Delaware is too remote and insubstantial to satisfy the jurisdictional requirements of § 3104(c)(4). As such, Arima Display neither "regularly does or solicits business" nor "derives substantial revenue"

---

[4] *See also In re Elonex Phase II Power Mgmt. Litig.*, 2003 U.S. Dist. LEXIS 7715 *9 (D. Del. May 6, 2003) (stating that the defendant's interactive website through which Delaware residents could download software and obtain customer support supported a finding of purposeful minimum contacts with Delaware).

16

from Delaware. Thus, Arima Display has not conducted itself in a manner that would subject it to the general jurisdiction provision of the Delaware long-arm statute.

**B.    The exercise of personal jurisdiction over Arima Display in Delaware does not satisfy the requirements of federal due process.**

Not only does Arima Display's conduct fail to satisfy the requirements of the Delaware long-arm statute, the requirements of federal due process also are not met. To satisfy due process, the exercise of personal jurisdiction over a nonresident defendant requires the existence of "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 468 (1940)). The minimum contacts must be "purposeful." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). To exercise personal jurisdiction—either specific or general—over a foreign defendant, sufficient minimum contacts between the defendant and the forum state must be established. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 411 (1984). Here, the requisite "purposeful" minimum contacts between Arima Display and Delaware do not exist.

**1.    Exercising specific jurisdiction over Arima Display would violate the Due Process Clause.**

To establish specific jurisdiction, a plaintiff must show that the defendant purposefully directed its activities at forum residents, and that the claim arises out of or relates to those activities. *Burger King Corp.*, 471 U.S. at 472. The exercise of specific jurisdiction based on a stream of commerce theory also requires purposeful conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Beverly Hills Fan*, 21 F.3d at 1565. However, the Federal Circuit has recently noted that, amongst the

17

regional circuits, there is "substantial uncertainty concerning . . . the due process clause" with respect to the standard that should be used to determine the conduct that would constitute sufficient minimum contacts with a forum state under the stream of commerce theory. *Commissariat*, 395 F.3d at 1322. Moreover, the Federal Circuit acknowledged that it also had not resolved the issue. *Id.*

This uncertainty stems from the Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), in which the Justices split over what purposeful action would constitute sufficient minimum contacts with the forum state under the stream of commerce theory. In Justice O'Connor's view, more than a "mere act of placing the product in the stream [of commerce]" is required. *Id.* at 112. Rather, due process also demands "an act of the defendant purposefully directed toward the forum State." *Id.* Thus, some "additional conduct" is needed, such as conduct that "may indicate an intent or purpose to service the market in the forum State." *Id.* Examples of such conduct include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* However, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State" is not sufficient. *Id.*

Here, Arima Display's actions do not rise to the level of "purposeful conduct" under Justice O'Connor's test. Arima Display does not specifically design its LCDs for the Delaware market. (Shen Decl. ¶ 24). Although Arima Display has a website that can be accessed by Delaware residents, the website does not offer any regular channels of

18

advice, support, or service to Delaware residents, and Arima Display's LCDs cannot be purchased online. (*Id.* at ¶ 17). Yet further, Arima Display does not have an agent that sells its LCDs or solicits business in Delaware. (*Id.* at ¶¶ 6, 16). In sum, Arima Display has not acted in any way that indicates a "purpose or intent" to service the Delaware market such that the exercise of jurisdiction would satisfy Justice O'Connor's due process test. *See Commissariat*, 395 F.3d at 1321-22 (finding that although the products might have been placed in an established distribution channel, no evidence had been presented that would satisfy Justice O'Connor's standard for "additional conduct").

In *Asahi*, Justice Brennan took a less restrictive approach to the purposeful conduct question. According to Justice Brennan's view, Justice O'Connor's "additional conduct" is not needed when the defendant has placed its products into a stream of commerce that consists not of "unpredictable currents and eddies," but which is a "regular and anticipated flow of products from manufacture to distribution to retail sale." *Asahi*, 480 U.S. at 117.

Not only would the exercise of jurisdiction over Arima Display fail to satisfy Justice O'Connor's test, no basis exists for exercising jurisdiction over Arima Display even under Justice Brennan's test. Justice Brennan's test is premised on placing a product in a stream of commerce that is a "regular and anticipated flow from manufacture to market." Here, although some consumer products that incorporate the LCDs may end up in Delaware, there is nothing "regular" or "anticipated" about the manner in which they travel from Arima Display's manufacturing facilities in Asia to a market in Delaware. Arima Display loses sight of the LCDs once it completes the delivery of and passes title to the LCDs in Asia. From that point forward, Arima Display has no control

19

over the LCDs' ultimate use or destination. Thus, if consumer products having the LCDs are present at all in Delaware, they arrived there by traveling on an unpredictable current, not by a regularly traveled and anticipated route or through any purposeful conduct of Arima Display.

Arima Display's conduct does not satisfy either Justice O'Connor or Justice Brennan's minimum contacts test. As such, a finding of specific jurisdiction by this Court over Arima Display would not comport with the requirements of the Due Process Clause.

### 2.    Exercising general jurisdiction over Arima Display would violate the Due Process Clause.

Not only is Arima Display's conduct insufficient to establish specific jurisdiction, Arima Display also has insufficient general contacts with Delaware to justify this Court's exercise of general jurisdiction. Federal due process contemplates that a court may exercise general jurisdiction over a nonresident defendant when the cause of action does not arise out of or relate to the defendant's activities in the forum State, provided the defendant has sufficient general contacts with the forum State. *Helicopteros*, 466 U.S. at 414. For the contacts to be sufficient, the nonresident's activities in the forum must be "continuous and systematic." *Id.* at 415.

Here, Arima Display has no contacts with Delaware, much less any contacts that would rise to the level of "continuous and systematic." It has no place of business in Delaware, no personnel in Delaware, and no property in Delaware. (Shen Decl. ¶¶ 4, 9, 11). Arima Display has never sold any products or services in Delaware or solicited any business in Delaware. (*Id.* at ¶¶ 6-8). Yet further, it has never sent any of its employees

to Delaware. (*Id.* at ¶ 4). As such, Honeywell cannot establish that this Court has general jurisdiction over Arima Display.

### 3. Exercising jurisdiction over Arima Display would offend traditional notions of fair play and substantial justice.

Not only does Arima Display lack sufficient minimum contacts with Delaware to establish jurisdiction, the exercise of jurisdiction in this case would violate the Due Process Clause because it would "offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316). A forum state may not exercise jurisdiction over a nonresident defendant if all the facts and circumstances indicate that to do so would be unreasonable. *Asahi*, 480 U.S. at 114. The exercise of jurisdiction is unreasonable when "the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568. When a foreign defendant is involved, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U. S. at 114.

Any interests that Delaware and Honeywell may have in adjudicating this lawsuit in this forum are clearly outweighed by the substantial burden that would be placed on Arima Display. Arima Display is a Taiwanese corporation with no contacts with Delaware. All of its sales of LCDs are made in Asia. All relevant documents and potential witnesses are located in Asia. Thus, the burden of subjecting Arima Display to a lawsuit in Delaware is substantial. When considering these factors, the slight prejudice

that might result to Honeywell from dismissing Arima Display from this lawsuit is clearly outweighed by the significant burden that would be imposed on Arima Display.

22

## V.    CONCLUSION

Honeywell bears the burden of establishing that this Court may exercise personal jurisdiction over Arima Display.  Honeywell has not, and cannot, present facts which establish with reasonable particularity sufficient contacts between Arima Display and Delaware or any purposeful conduct directed toward Delaware to justify this Court's exercise of personal jurisdiction over Arima Display.  As such, this Court should dismiss Honeywell's First Amended Complaint against Arima Display for lack of personal jurisdiction.

William J. Wade  (#704)
Wade@rlf.com
Matthew W. King  (#4566)
King@rlf.com
Richards, Layton & Finger

OF COUNSEL:

Dan C. Hu
Diana M. Sangalli
Trop, Pruner and  Hu, P.C.
Suite 100
8554 Katy Freeway
Houston, TX  77024

Dated:  April 23, 2006

One Rodney Square
P.O. Box 551
Wilmington, DE  19899
302-651-7700

Attorneys for Defendant
Arima Display Corporation

23