# Unreported Cases
# Part I

LEXSEE

**PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and U.S. PHILIPS CORPORATION, Plaintiffs, v. CONTEC CORPORATION, COMPO MICRO TECH, INC., SEOBY ELECTRONICS CO., LTD., REMOTE SOLUTION CO., LTD., F/K/A HANGO ELECTRONICS CO., LTD., HANGO REMOTE SOLUTION, INC., Defendants.**

**Civil Action No. 02-123-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 3940*

**March 11, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion granted by *Philips Elecs. N. Am. Corp. v. Contec Corp., 220 F.R.D. 415, 2004 U.S. Dist. LEXIS 4255 (D. Del., 2004)* Reargument denied by, Motion to strike denied by, Summary judgment granted, in part, summary judgment denied, in part by *Philips Elecs. N. Am. Corp. v. Remote Solution Co., 2004 U.S. Dist. LEXIS 19807 (D. Del., Sept. 9, 2004)*

**DISPOSITION:** [*1] Defendant Remote Solution's motion to dismiss for lack of personal jurisdiction denied.

**COUNSEL:** For PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, U.S. PHILIPS CORPORATION, plaintiffs: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For COMPO MICRO TECH, INC., defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For HANGO REMOTE SOLUTION, INC., defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE.

For REMOTE SOLUTION CO., LTD., third-party defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE.

For COMPO MICRO TECH, INC., counter-claimant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, U.S. PHILIPS CORPORATION,

counter-defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

I. INTRODUCTION

This is a patent infringement case. Jurisdiction is proper under *28 U.S.C. § 1338*. Presently before me is a Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") filed [*2] by defendant Remote Solution Co., Ltd. ("Remote Solution") pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. (Docket Item ["D.I."] 105.) For the following reasons, Remote Solution's Motion will be denied.

II. BACKGROUND

Plaintiffs Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, "Philips"), both Delaware corporations, filed an action on February 12, 2002, alleging that Contec Corporation ("Contec"), also a Delaware corporation, was infringing *U.S. Patent No. 4,703,359* n1 (the "'359 patent") and 5,872,562 n2 (the "'562 patent"), both owned by Philips. n3 The technology disclosed in the *'359* and '562 patents is directed to remote control units ("RCUs") for controlling home appliances from different manufacturers and categories. *See* '359 patent, col 1, Ins. 15-17; '562 patent, col 1, Ins. 13-16 (attached to D.I. 1 as Exs. A and B). On September 17, 2002, Philips filed an amended complaint

2004 U.S. Dist. LEXIS 3940, *

joining Remote Solution and others as additional defendants in this action. (D.I. 41, 42.) Remote Solution is a Korean corporation with its principal place of business in Kimcheon City, Kyongbuk, Korea. [*3] (D I 41, Ex. A at P 6.) Philips alleges that Remote Solution "manufactures and designs RCUs that infringe the patents in suit under a manufacturing and purchase agreement with Contec, and is subject to personal jurisdiction in [the District of Delaware] " (*Id.* at P 12.) One of the types of RCUs accused of infringement in this case is Remote Solution's model RT U49C. (*Id.*)

n1 The '359 patent, entitled "Universal Remote Control Unit With Model Identification Capability," names as inventors Robin B. Rumbolt, William R. McIntyre, and Larry E. Goodson. The '359 patent issued on October 27, 1987 and was assigned to Philips on May 25, 1993. (D.I. 42, Ex. A at P 16.)

n2 The '562 patent, entitled "Universal Remote Control Transmitter With Simplified Device Identification," names as inventors Donald P. McConnell and William R. McIntyre. The '562 patent issued on February 16, 1999 and was assigned to Philips on the same day. (D.I. 42, Ex. A at P 17.)

n3 Defendants Contec Corporation and Seoby Electronics Co. are no longer involved in this case, having submitted to a Consent Judgment on August 28, 2003. (D.I. 258.)

[*4]

Remote Solution filed its Motion on January 24, 2003, arguing that this court cannot properly exercise personal jurisdiction over it under Delaware's long-arm statute, *10 Del. C. § 3104*, or consistent with the requirements of the *Due Process Clause*. (D.I. 106 at 4, 9.) In support of its Motion, Remote Solution submitted the Declaration of its Director, Suk-Kyu Park. (*Id.*, Ex. A.) In his declaration, Mr. Park stated that Remote Solution does not have any offices, facilities, subsidiaries or employees in Delaware; is not registered to do business in Delaware; has not contracted to supply services or things in Delaware; has no sales force in Delaware; has derived no revenues from sales in Delaware; does not own any property, assets or bank accounts in Delaware or maintain any offices in Delaware. (*Id.* P 4, 7-10.) According to Mr. Park, Contec is Remote Solution's only customer for the accused RT U49C RCU. (*Id.* P 5.) Mr. Park further stated that Remote Solution maintains a website to provide information about its products, but Remote Solution does not accept orders through its website. (*Id.* P 12.)

After Remote Solution filed its Motion, the parties conducted jurisdictional [*5] and substantive discovery until September 15, 2003. (D.I. 286 at 2.) The following facts are taken from Philips' opposition to Remote Solution's Motion. (D.I. 286.) Since Philips' factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction in this court. *See Beverly Hills Fan Co. V. Royal Sovereign Corp., 21 F.3d 1558, 1563 (Fed. Cir. 1994).*

In 1997, Remote Solution decided to expand its RCU sales by entering the United States consumer market. (*Id.* at 5 (citing deposition testimony of Suk-Kyu Park at D.I. 287, Ex. 14).) To that end, Remote Solution hired David Ahn, a native Korean living in California, as its exclusive sales agent in the United States. (*Id.*) Mr. Ahn established Hango Electronics, Inc., d/b/a Remote Solution ("HEI") in California, for the sole purpose of soliciting customers in the United States on behalf of Remote Solution. (*Id.* (citing deposition testimony of David Ahn at D.I. 287, Ex. 3).) HEI is an independent corporation of which Mr. Ahn is the sole owner and employee. (*Id.*)

In 1999, HEI entered into a Manufacturing and Purchase Agreement with Contec, L.P., a New York limited [*6] partnership, wherein Contec L.P. retained HEI to design and manufacture RCUs and sell them to Contec L.P. n4 (D.I. 287, Ex. 15 at 1.) HEI also agreed to "defend any suit or proceeding brought against Contec L.P. to the extent that such suit or proceeding is based on a claim that the [RCUs] constitute an infringement of any valid United States ... patent ...." (*Id.* at 3.) In 2000, with Mr. Ahn's consent, HEI changed its name to Remote Solution, the name under which Mr. Ahn conducts business in California. (*Id.* at 6.)

n4 The relationship between Contec L.P. and Contec Corporation was fleshed out at oral argument. At some point in time, Contec L.P., a New York entity, merged with Contec LLC, another New York entity, which then merged with Contec Corporation, a Delaware entity. (D.I. 338 at 67:16-25.)

According to Mr. Ahn, Remote Solution's business plan was to sell as many RCUs as possible. (*Id.*) As a result of his extensive efforts to market the RCUs, Mr. Ahn acquired Contec, TiVo, Inc., Harman Kardon, [*7] Inc. and Hy-Tek Manufacturing Co., Inc. as customers for Remote Solution. (*Id.*) Remote Solution does not design its own remote controls, rather, it manufactures them according to its customers' specifications. (*Id.* at 7.) Contec is a Delaware corporation with its principal place of business in New York, and its primary business is to

2004 U.S. Dist. LEXIS 3940, *

sell refurbished cable set top boxes and RCUs to major cable companies in the United States. (Id. at 10.) Contec's customers include Comcast, which provides cable television services to residents of Delaware. (Id.) Generally, Remote Solution knows who Contec's customers are because Remote Solution marks the RCUs with those customer's logos (Id., D.I. 287, Ex. 10.) Remote Solution knew that Comcast was one of Contec's customers, as it sent drawings of the Comcast logo to Contec via email on April 24, 2002. (D.I. 287, Ex. 36.)

In 2000, Remote Solution established a subsidiary in the United States, Hango Remote Solution, Inc ("Hango"). (D.I. 286 at 8.) Remote Solution was a 70% shareholder in Hango and Mr. Ahn owned the remaining 30%. (Id.) About half of Hango's revenue came from sales of Remote Solution's RCUs, Hango's primary [*8] business was marketing an MP3 player called Personal Jukebox (Id. at 8-9.) Ultimately, however, Hango's business failed, and the company folded in December 2002. (Id. at 9.) Thereafter, Remote Solution began litigating this case on Hango's behalf as well as its own, filing an answer to the complaint and a motion to amend the answer to include a crossclaim against Contec for indemnification in the event Hango is found liable for patent infringement. (Id. at 9; see also D.I. 287, Ex. 2 at 8.)

Remote Solution has sold at least 1,969,849 of the accused RCUs in the United States since November 22, 2000. (D.I. 286 at 2 (citing Expert Report of Kerry Ruoff at D.I. 287, Ex. 1).) Based on the records obtained from TiVo, one of Remote Solution's customers, Philips discovered that at least 2,000 infringing RCUs manufactured by Remote Solution for TiVo have been sold or used in Delaware since March 31, 1999. (D.I. 286 at 3, 13.) According to TiVo's records, 1,738 residents of Delaware subscribed to TiVo's service between March 31, 1999 and May 28, 2003. (Id. (citing Declaration of Matthew P. Zinn at D.I. 287, Ex. 39 P 12).) Because TiVo sells its digital video [*9] recorders ("DVRs") bundled with the RCUs manufactured by Remote Solution, it is likely that more than 1,500 Remote Solution RCUs are being used for TiVo recorders in Delaware today. (Id. (citing D.I. 287, Ex. 39 PP 6, 17).) Furthermore, since January 1, 2000, more than 1,000 DVRs bundled with RCUs manufactured by Remote Solution were sold in Delaware at two retailers, specifically, 654 were sold at BestBuy and 406 were sold at Circuit City. (Id. (citing Declaration of Scott Jacobi at D.I. 287, Ex. 40 P 7; Declaration of Mark Smucker at D.I. 287, Ex. 41 P 9).)

III. DISCUSSION

When a non-resident defendant's motion to dismiss challenges personal jurisdiction, the plaintiff has the burden to show the basis for the court's jurisdiction over that defendant. Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 699 (D. Del. 2001) (citing Wright v. American Home Products, 768 A 2d 518, 526 (Del. Super. 2000)) To satisfy this burden, Philips must make a prima facie showing that this court may exercise personal jurisdiction over Remote Solution. Id. After discovery has begun, the plaintiff must sustain this burden [*10] by "establishing jurisdictional facts through sworn affidavits or other competent evidence." Id. (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F 2d 61, 66 n.9 (3d Cir. 1984)).

Determining whether Remote Solution is subject to personal jurisdiction requires a two-part analysis. Id. at 700; see also Siemens Aktiengesellschaft v. LG Semicon Co., Ltd., 69 F. Supp. 2d 622, 624 (D. Del. 1999) First, I must determine whether the language of Delaware's long-arm statute, 10 Del. C. § 3104(c), reaches Remote Solution. Broadcom, 167 F. Supp. at 700. Second, if I find that Remote Solution's conduct gives rise to personal jurisdiction under the long-arm statute, I must then determine whether subjecting Remote Solution to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Id. (citing Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)).

A. Jurisdiction over Remote Solution is Proper Under § 3104(c)(1) of Delaware's Long-Arm Statute

Philips contends that Remote Solution is subject to jurisdiction [*11] under sections 3104(c)(1) and (c)(4) of the Delaware long-arm statute (D.I. 286 at 17, 20), which provide:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or a personal representative, who in person or through an agent:
> ***
> (1) Transacts business or performs any character of work or service in the State;
> ***
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State ...

2004 U.S. Dist. LEXIS 3940, *

*10 Del. C. § § 3104(c)(1) & (c)(4) Delaware state courts have interpreted the "transacting business" provision of § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. See La Nuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986). The Federal Circuit has held that, where a defendant has "purposefully shipped the accused [*12] [product] into [the forum state] through an established distribution channel ... no more is usually required to establish specific jurisdiction." Beverly Hills Fan, 21 F.3d at 1564. Moreover, in order to meet the requirements of § 3104(c)(1), Remote Solution's actions must be directed at residents of Delaware and the protection of Delaware laws. See Thorn EMI N. Am. v. Micron Technology, 821 F. Supp. 272, 274 (D. Del. 1993) (citing Sears, Roebuck & Co. v. Sears, 744 F. Supp. 1289, 1292 (D. Del. 1990)).

Philips argues that Remote Solution has shipped the accused RCUs into an established distribution channel as part of a general business plan that results in sales of the accused products in Delaware. (D.I. 286 at 18.) In response, Remote Solution argues that it merely had a general plan to serve the national market and that its activities were not directed specifically toward Delaware. (D.I. 309 at 2, 4.)

I find that Philips has presented competent evidence that an established distribution channel exists through which accused RCUs manufactured by Remote Solution are shipped to, distributed, and sold in Delaware. First, the [*13] evidence shows that Remote Solution and Contec have enjoyed a close business relationship since at least as early as 1999, when, in a manufacturing and purchase agreement governed by New York law, Remote Solution agreed to defend one of Contec's predecessors against any claims of patent infringement. Furthermore, Remote Solution is seeking indemnification from Contec for Hango, Remote Solution's defunct subsidiary, in the event Hango is found liable for patent infringement in this case. Philips has also presented competent evidence that Remote Solution knew that Comcast, a major provider of cable television services in the State of Delaware, was one of Contec's customers for the accused RCU. Given all of these facts, and in light of Remote Solution's ongoing business relationship with Contec, it was reasonably foreseeable that the accused RCUs would make their way into the Delaware market through Contec's customers. Documents obtained from Remote Solution show that Contec was selling the accused RCUs to Comcast, such that Remote Solution knew or should have known that the accused RCUs were being sold or distributed in Delaware. See Thorn EMI, 821 F. Supp. at 275-76. [*14]

Finally, Philips has competent evidence that the accused RCUs are present in Delaware in large numbers, and were present in Delaware prior to its filing suit, as a result of Remote Solution manufacturing the accused RCUs for TiVo. Because Philips has presented competent evidence of an established distribution channel that caused the accused RCUs to be sold and distributed in Delaware, and that the accused RCUs are actually present in Delaware, I find that jurisdiction over Remote Solution is proper under § 3104(c)(1), and I need not address the issue of whether jurisdiction over Remote Solution is proper under § 3104(c)(4). n5

n5 Remote Solutions relies upon Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 293 F. Supp. 2d 423, reconsideration denied, 293 F. Supp. 2d 430 (D. Del. 2003) (granting defendant's motion to dismiss for lack of personal jurisdiction in patent infringement case) in support of its motion to dismiss. There are key factual distinctions between this case and Commissariat. First, unlike the plaintiff in Commissariat, Philips requested and conducted jurisdictional discovery which uncovered evidence of actual sales and the presence of the accused device in Delaware prior and subsequent to the date the complaint was filed, evidence that was lacking in Commissariat. Second, that Remote Solution (1) agreed to defend a predecessor of Contec from patent infringement and (2) is seeking indemnification from Contec should Hango be found liable for patent infringement is evidence of Remote Solution's close business relationship with Contec, and its knowledge of the established distribution channel through which its products were being sent into Delaware. Thus, the quantum of evidence upon which to rest personal jurisdiction in this case is significantly greater than in Commissariat.

[*15]

B. Exercising Jurisdiction over Remote Solution in Delaware Comports With the Requirements of the Due Process Clause

Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In considering whether jurisdiction may extend to a defendant, courts should primarily consider whether the defendant has purposely availed itself of the forum state's law, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed.

2004 U.S. Dist. LEXIS 3940, *

2d 528, 105 S. Ct. 2174 (1985), and whether the defendant reasonably could have anticipated being haled into the courts of the forum state, *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* Courts should also consider the burden imposed on the defendant by having to litigate in a foreign forum, as well as the interests of the plaintiff and the forum state. *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 114, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).*

In this case, the accused RCUs arrived in Delaware through [*16] Remote Solution's purposeful shipment of them through an established distribution channel. *See Beverly Hills Fan, 21 F.3d at 1565.* Philips has "stated all of the necessary ingredients for an exercise of jurisdiction consonant with the requirements of due process," namely, that Remote Solution placed the accused products in the stream of commerce, that it knew the likely destination of the products, and that its conduct and connections with Delaware were such that they should reasonably have anticipated being brought into court here. *Id. at 1566.*

Finally, litigating this case in Delaware would not place such a burden on Remote Solution as to offend traditional notions of fair play and substantial justice,

especially since Remote Solution has executed an agreement to defend Contec L.P. against all claims of patent infringement, which proves that Remote Solution was well aware of and prepared for the possibility of litigation where Contec did business, including Delaware. Nor has Remote Solution shown that it does not have the resources to fairly litigate this case in Delaware. *See Thorn EMI, 821 F. Supp. at 276.* Moreover, "Delaware [*17] has an abiding interest in protecting the property rights of its residents[,]" *id.,* including corporate citizens such as Philips. Thus, exercising jurisdiction over Remote Solution in this case comports with the requirements of the *Due Process Clause.*

## IV. CONCLUSION

For these reasons, it is hereby ORDERED that Remote Solution's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 105) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware
March 11, 2004

LEXSEE 2004 US DIST LEXIS 19760

**eSPEED, INC.; CANTOR FITZGERALD, L.P.; CFPH, L.L.C., and eSPEED GOVERNMENT SECURITIES, INC., Plaintiffs, v. BROKERTEC USA, L.L.C.; BROKERTEC GLOBAL, L.L.C.; GARBAN, LLC; ICAP PLC; OM AB; and OM TECHNOLOGY (U.S.), INC., Defendants.**

**Civil Action No. 03-612-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 19760*

**September 13, 2004, Decided**

**PRIOR HISTORY:** *eSpeed, Inc. v. BrokerTec USA, L.L.C., 2004 U.S. Dist. LEXIS 20589 (D. Del., Sept. 9, 2004)*

**DISPOSITION:** [*1] Motion of defendant ICAP Plc to dismiss for lack of personal jurisdiction granted. Plaintiffs' contingent cross motion to compel discovery denied.

**COUNSEL:** Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, counsel for plaintiffs.

Of counsel: Gary A. Rosen, Esquire, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania; David J. Wolfsohn, Esquire, Alan C. Promer, Esquire, and Michele D. Hangley, Esquire, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania.

Richard L. Horwitz, Esquire and David E. Moore, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, counsel for defendants.

Of counsel: James W. Dabney, Esquire, Peter L. Simmons, Esquire, and Henry C. Lebowitz, Esquire, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**JORDAN, District Judge**

I. INTRODUCTION

This is a patent infringement case. Jurisdiction is proper under *28 U.S.C. § 1338.* The plaintiffs filed their Complaint on June 30, 2004, naming [*2] BrokerTec USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1.) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(2)* (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

II. BACKGROUND

A. The Parties

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, PP 2-4; *see also* D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (*Id.,* PP 5-7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (*Id.,* P 8.)

B. Factual Background

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in [*3] jurisdictional discovery. (*See* D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal ju-

2004 U.S. Dist. LEXIS 19760, *

risdiction over ICAP in this District, *see Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d 434, 437 (3d Cir. 1987)*, the following is taken largely from the plaintiffs' recitation of the facts (*see* D.I. 271 at 3-10), unless noted otherwise.

The plaintiffs allege that all of the defendants are willfully and intentionally infringing *U.S. Patent No. 6,560,580* B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (*See* D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) n1 ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (*Id.*) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (*Id.*) ICAP characterizes itself as a "holding [*4] company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

n1 In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3-4.) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (*Id.* at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. n2 (*Id.* at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board") (*Id.*) The Board approves the ICAP Group's budget and makes [*5] regular internal audit visits to the Group's operating companies in the United States. (*Id.* at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (*Id.* at 9.)

n2 BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC, and Wrightson ICAP LLC. (*Id.* at 8 (citing D.I. 275, Ex. 30).)

ICAP, together with its BrokerTec n3 and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec.com. (*Id.* at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms n4 from anywhere in the world. (*Id.*)

n3 ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (*Id.* at 7.)

[*6]

n4 BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

III. STANDARD OF REVIEW

Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant

*Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)*. This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Rule 4(e)(1) of the Federal Rules of Civil Procedure* [*7] states that service of a summons may be effected "pursuant to the law of the state in which the district

2004 U.S. Dist. LEXIS 19760, *

court is located." The Delaware long-arm statute, *10 Del C. § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. n5 *La Nuova D&B S p A v. Bowe Co Inc., 513 A.2d 764, 768 (Del. 1986)*. I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*; *see generally, Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

n5 According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)*. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998)*. The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[*8]

As noted previously, once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction n6 *Provident Nat'l Bank, 819 F.2d at 437*; *see also Ace & Co., Inc v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 422 (D. Del. 2001)* (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 (D. Del. Aug. 3, 1999)* General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *Id*

N6 In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (*see supra* at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I. 272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests. The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully *infra* at n.7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I. 272) will be denied.

[*9]

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del C. § 3104(c)*. The above provisions have been construed "liberally so as to provide jurisdiction to the

2004 U.S. Dist. LEXIS 19760, *

maximum extent possible" in order "to provide residents [*10] a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997).*

## IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long-arm statute. (D.I. 162 at 4-5.) The plaintiffs say that ICAP is subject to specific jurisdiction, under *10 Del. C. § 3104(c)(1),* on the basis of its website activities and its subsidiaries' actions in Delaware. (D.I. 271 at 11-16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under *10 Del. C. § 3104(c)(4)* because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n.2) (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its website activity alone. "Where the defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website," it is proper to exercise [*11] specific jurisdiction over a defendant. *See Toys 'R' Us, Inc v. Step Two, S.A., 318 F.3d 446, 452-54 (3d Cir. 2003)* (specific jurisdiction exists if "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."). In this case, the plaintiffs have come forward with evidence showing that ICAP's websites are accessible to computer users anywhere in the world. Mere accessibility of a website, though, is not a matter of much moment. It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences. *Toys 'R' Us, 318 F.3d at 452* (exercise of personal jurisdiction proper where commercial website's interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).* There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's websites, downloaded the [*12] BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. n7 (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its website, they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's websites. Therefore, the plaintiffs have failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with resi-

dents of Delaware through its websites, *see Toys 'R' Us, 318 F.3d at 453,* and I decline to exercise personal jurisdiction over ICAP on the basis of its website alone.

> n7 For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.,* while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I. 273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n.6, the plaintiffs' request to compel further discovery pertaining to Webtrends will be denied.

[*13]

I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, "under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4-5 (citing *C.R. Bard v. Guidant Corp., 997 F. Supp. 556, 558-59 (D. Del. 1998))* ) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. n8 Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

> n8 To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 425 (D. Del. 2001)* (quoting *C.R. Bard, 997 F. Supp. at 559).* The plaintiffs have not come forward with any evidence to establish those things in this case.

[*14]

2004 U.S. Dist. LEXIS 19760, *

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 at *2.* The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7-8.)

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members [*15] of the Board occasionally travel to the United States on business; however, there is no evidence that they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to *Federal Rule of Civil Procedure 4(k)(2)*, on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) Personal jurisdiction pursuant to *Rule 4(k)(2)* may

be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction [*16] over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 258 (3d Cir. 2000).*

In this case, the plaintiffs' patent infringement claims arise under federal law. However, ICAP asserts that it would properly be subject to jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under *Rule 4(k)(2). See ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001)* ("A defendant who wants to preclude use of *Rule 4(k)(2)* has only to name some other state in which the suit could proceed.")

## V. CONCLUSION

For these reasons, ICAP's Motion (D.I. 161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) will be denied. An appropriate order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 161) is GRANTED and [*17] the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

September 13, 2004
Wilmington, Delaware

LEXSEE 2005 US DIST LEXIS 1726

**M&M TECHNOLOGIES, INC., Plaintiff, v. GURTLER CHEMICALS, INC., Defendant/Third-Party Plaintiff, v. BURLINGTON CHEMICAL CO., INC., Third-Party Defendant.**

**Civil Action No. 03-994 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 1726*

**February 8, 2005, Decided**

**DISPOSITION:** Motion to dismiss for lack of personal jurisdiction was granted.

**COUNSEL:** [*1] For M&M TECHNOLOGIES INC, Plaintiff: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For GURTLER CHEMICALS INC., Defendant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For BURLINGTON CHEMICAL, Defendant: Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE.

For GURTLER CHEMICALS INC., Third-Party Plaintiff: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For GURTLER CHEMICALS INC., Counter-Claimant: William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Wilmington, DE; Rex A. Donnelly, IV, Ratner & [*2] Prestia, Wilmington, DE; Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, Malvern, PA.

For M&M TECHNOLOGIES INC, Counter-Defendant: George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On October 30, 2003, the plaintiff, M&M Technologies, Inc. ("M&M"), filed this patent infringement action against Gurtler Chemicals, Inc. ("Gurtler"). Presently before the court is a motion to dismiss for lack of personal jurisdiction filed by third-party defendant Burlington Chemical Company, Inc. ("Burlington"). For the following reasons, the court will grant the motion.

**II. BACKGROUND**

The patent-in-suit, *U.S. Patent No. 6,159,548* (the "*'548 patent*"), allegedly is owned by M&M. The patented invention is a method for oilproofing and waterproofing previously manufactured fabric with an aerosol spray containing a diluted fluoroacrylate emulsion. The complaint alleges that Gurtler has infringed, induced infringement of, or contributorily infringed the method claims of the *'548 patent*.

On July 12, 2004, Gurtler filed a motion [*3] to file a second amended answer, counterclaim, and third-party complaint. The court granted Gurtler's motion on September 22, 2004. Gurtler named Burlington as a third-party defendant and brought claims against Burlington for negligent misrepresentation and violation of the *Uniform Commercial Code, Section 2-312, i.e.* breach of

2005 U.S. Dist. LEXIS 1726, *

warranty. The third-party complaint alleges in Count I that: (1) Gurtler makes its allegedly infringing product merely by adding water to Burcopel CAT, a product sold to it by Burlington; (2) at the time Burlington began selling Burcopel CAT to Gurtler, Burlington orally represented and warranted that Gurtler's use of the product would not infringe, induce infringement of, or contributorily infringe the '548 patent; and (3) Burlington breached its warranty against infringement. Count II alleges that: (1) Burlington's representation that Burcopel CAT was not infringing was a false representation of fact; (2) Burlington made the false representation because of its lack of reasonable care in ascertaining the facts; (3) Burlington made the false representation with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; [*4] and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not registered with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped collect to Gurtler in South Holland, Illinois. n1 After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

n1 Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois

[*5]

Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $ 1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $ 4,000.00 to one Delaware customer, $ 70.00 to a second Delaware customer, and $ 16,000.00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

## III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "*Rule 12(b)(2) of the Federal Rules of Civil Procedure* requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, 197 F.R.D. 112, 119 (D. Del. 2000).* In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc., 544 F. Supp. 858, 864-65 (D. Del. 1982).* [*6] If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause of the Fourteenth Amendment. Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs., 948 F. Supp. 338, 342 (D. Del. 1996)* (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154(1945)* (citation omitted). Specifically, Gurtler must show that Burlington "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).* Unless the [*7] contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)*

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F. Supp. 53, 55 (D. Del. 1982),* but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268, 270-71 (D. Del. 2001).* To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 193 (D. Del. 1996)).*

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, *Del. Code Ann. tit 10 § 3104*, warrant the exercise of jurisdiction over Burlington. Burlington contends that the [*8] court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections *(c)(1)* and *(c)(4)* of the long-arm statute. The court will address each of these sections below.

#### 1. Delaware Long-Arm Statute § 3104(c)(1)

Under *subsection (c)(1)*, the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. *DEL. CODE ANN. tit. 10 § 3104(c)(1)*. Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997)*. The Delaware Supreme Court has interpreted subsection *(c)(1)* as a specific jurisdiction provision that requires a "nexus" [*9] between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D&B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986)*. In order to meet the requirements of subsection *(c)(1)*, Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology, 821 F. Supp. 272, 274 (D. Del. 1993)*. However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone, 724 A.2d at 1156*. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. *(D.I. 52 P 4)*. In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268 (D. Del. 2001)*.

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of [*10] Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone, 724 A.2d at 1160*. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection *(c)(1)* is not a basis for the exercise of jurisdiction over Burlington.

#### 2. Delaware Long-Arm Statute § 3104(c)(4)

Additionally, Gurtler asserts that Burlington has, within the meaning of subsection *(c)(4)*, availed itself of the general jurisdiction of Delaware. Under subsection *(c)(4)*, the court may exercise personal jurisdiction over anyone who "causes tortious injury in the State [*11] or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. *DEL. CODE ANN. tit. 10 § 3104(c)(1)*. Gurtler contends that jurisdiction is proper under subsection *(c)(4)* because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted *§ 3104(c)(4)* as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc., 295 F. Supp. 2d 400, 405 (D. Del. 2002)*; *Boone, 724 A.2d at 1155* (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 727-28 (Del. Super. 1996)*). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter, 295 F. Supp. 2d at 405*. [*12]

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under *§ 3104(c)(4)* is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc., 517 F. Supp 1125, 1130 (D. Del. 1981)*. Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler

2005 U S. Dist. LEXIS 1726, *

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 P 2) Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. (Id.) It has no local telephone listing, bank accounts, real estate or employees in Delaware. (Id.) It has not paid any taxes or franchise fees in Delaware. (Id.). It has never commenced [*13] any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the current litigation. (Id.) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. See Motorola Inc. v. PC-Tel, 58 F. Supp 2d 349, 352 (D. Del 1999) (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. See United States v. Consolidated Rail Corp., 674 F. Supp 138, 144 (D. Del. 1987). However, [*14] when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. Bell Helicopter, 295 F. Supp. 2d at 405. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $ 1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3) In 2004, Burlington had sales to three customers in Delaware that totaled approximately $ 20,070.00. (Id. at 3) While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. (Id.) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the Delaware long-arm statute.

**B. Due Process [*15]**

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause*. The *Due Process Clause* requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*. In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)* n2 Finally, "even if the requisite minimum contacts have been found through an application of the stream [*16] of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994)*.

n2 The United States Supreme Court has explained that:

the "substantial connection" . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. . . . The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum

State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*ICT Pharms., 147 F. Supp. 2d at 272* (quoting *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987))*

[*17]

Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship [*18] it directly to Gurtler's clients. (*Id.* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to

direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which [*19] was a critical factor in *Boone.* The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone, 724 A.2d at 1160.* As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $ 66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned $ 270,000 from sales of its product by its distributor in Delaware. *See id. at 1158.*

Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product [*20] was integrated into a variety of consumer products manufactured by well-known multi-national corporations. n3 The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola, 58 F. Supp 2d at 352.* While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

n3 The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant [*21] derived its revenues "appeared to be based upon

2005 U.S. Dist. LEXIS 1726, *

the sale to *end users* of products containing its soft-modems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplated sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington [*22] does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola*. Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees.

As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the *Due Process Clause.* [*23] n4

> n4 The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice'" because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

Dated: February 8, 2005

　　Gregory M. Sleet

　　UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 51) is GRANTED.

Dated: February 8, 2005

　　Gregory M. Sleet

　　UNITED STATES DISTRICT JUDGE

# Unreported Cases
# Part II

LEXSEE 2004 U.S. DIST. LEXIS 9658

**PADCOM, INC., Plaintiff, v. NETMOTION WIRELESS, INC. and DATABASE SOLUTIONS, INC., Defendants.**

**Civ. No. 03-983-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 9658*

**May 24, 2004, Decided**

**SUBSEQUENT HISTORY:** Summary judgment denied by *Padcom, Inc. v. Netmotion Wireless, Inc., 2006 U.S. Dist. LEXIS 6548 (D. Del., Feb. 22, 2006)*

**DISPOSITION:** [*1] Defendants' motion to dismiss and to transfer denied.

**COUNSEL:** Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, and Adam W. Poff, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Neil F. Greenblum, Esquire, Van C. Ernest, Esquire and Jill M. Browning, Esquire of Greenblum & Bernstein, P.L.C., Reston, Virginia.

Mary B. Graham, Esquire and James W. Parrett, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: John Allcock, Esquire, M. Elizabeth Day, Esquire, William G. Goldman, Esquire and Michael G. Schwartz, Esquire of Gray, Cary Ware & Freidenrich, LLP, Palo Alto, California.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

MEMORANDUM OPINION

Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On October 26, 2003, plaintiff Padcom Inc. ("Padcom") filed this patent action alleging infringement of its *United States Patent Nos. 6,418,324 ("the '324 patent")* and 6,198,920 ("the '920 patent") by defendants NetMotion Wireless, Inc. ("NetMotion") and Database Solutions, Inc. ("DSI"). (D.I. 1) Padcom also contends that NetMotion intentionally and wrongfully interfered with [*2] contractual and business relations with potential customers.

NetMotion has moved to dismiss based on lack of personal jurisdiction pursuant to *Fed.R.Civ.P. 12(b)(2)* and improper venue under *Fed. R. 12(b)(3)*. (D.I. 9) DSI has moved to transfer the remaining portion of the litigation to the Northern District of California pursuant to *28 U.S.C. § 1404(a)*. n1 Alternatively, if the court dismisses NetMotion and declines to transfer the case against DSI, defendants move to stay this action pending resolution of the California case. Padcom opposes the motion (D.I. 23, 24) and defendants' have filed their reply. (D.I. 27, 28)

n1 On November 7, 2003, NetMotion and DSI filed a declaratory action in the Northern District of California mirroring the issues raised in this action. By order and stipulation dated December 10, 2003, the California action was stayed pending resolution of this first-filed action. NetMotion Wireless, Inc. v Padcom, Inc., 03-cv-04963-MMC, (N.D. Ca. 2003)(D.I. 12). A case management conference is scheduled for June 18, 2004. (Id., D.I. 19)

[*3]

**II. BACKGROUND**

**A. The parties**

Padcom is a Pennsylvania corporation with its principal place of business in Bethlehem, Pennsylvania. Founded in 1989, Padcom is in the business of developing, making, licensing, selling and servicing software and hardware products that enhance connectivity for

wireless network uses. (D.I. 1) The patent-in-suit relate to wireless communications and data transfers between remote devises and host systems. (D.I. 10)

NetMotion is a corporation organized under the laws of Washington with a principal place of business in Seattle, Washington. (D.I. 11) NetMotion is in the business of designing, developing and selling mobility software. Mobility software is client/server based software that extends the enterprise network to the mobile environment and allows mobile users on both wide area and local area networks secure access to the enterprise application and information. (D.I. 10) NetMotion's corporate office, research and development facility, and engineering, sales, marketing and manufacturing facilities are all located in Seattle. Of NetMotion's 53 employees, 46 reside in Washington. The other seven employees reside in Ohio, Pennsylvania, Florida, [*4] Georgia, Texas, California and Illinois. (D.I. 11) NetMotion maintains and supports a web site in Washington. The web site provides: 1) company and product information; 2) partner information; and 3) download information. None of NetMotion's products are available for purchase through its website; however, free trial versions of NetMotion's software are available for download from the web site. (D.I. 12)

On February 2, 2001, a predecessor of NetMotion, WRQ, Inc., entered into a Value Added Reseller ("VAR") agreement with DSI. (D.I. 11, Ex. A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey. (D.I. 13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions. DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere. D.I. 13 P 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI.

## III. STANDARD OF REVIEW

Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court [*5] may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

> before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be au-

thorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)*. The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Rule 4(e)(1) of the Federal Rules of Civil Procedure* states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, *10 Del. C. § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due [*6] process clause. n2 *LaNuova D & B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986)*.

> n2 According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)*. The Court has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998)*. The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[*7]

However, since the Delaware Supreme Court has not determined that *§ 3104(c)* is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*; see generally, *Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred

with between the forum state and defendant to support jurisdiction n3 *Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)*. To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related [*8] to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., 1999 U.S. Dist. LEXIS 12455, Civ. No. 99-218-SLR, 1999 WL 615175 (D. Del. 1999)*.

> n3 The record reflects that the parties have engaged in limited jurisdictional discovery. (D.I. 24, Ex. A, Ex. B)

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the [*9] State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c)*. The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal

service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997)*.

## IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I. 10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § 3104(c)(1), (c)(4) and (c)(3). Padcom argues that § 3104(c)(1) and (c)(4), confer jurisdiction because NetMotion has repeatedly transacted and solicited business in Delaware. Specifically: (1) NetMotion shipped an [*10] infringing product to the Wilmington Police Department to enable them to evaluate the product in anticipation of a sale; (2) NetMotion has contacted Delaware residents by mail, email and telemarketing, either cold calling or in response to inquiries about the product; and (3) NetMotion operates a national interactive web site.

In opposition, NetMotion presents the affidavit of its CFO, Bob Colliton. (D.I. 12, 28) Colliton avers:

> NetMotion maintains and supports a web site in the state of Washington, but none of NetMotion's products are available for purchase through NetMotion's web site. NetMotion's web site offers free trial down-loads of its software, as well as white papers that outline the capabilities of NetMotion's software products.
> NetMotion has not contacted or otherwise engaged any company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware - the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer [*11] that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after

2004 U.S. Dist. LEXIS 9658, *

this download has any employee contacted the Wilmington Police Department NetMotion's advertising strategy is national in nature. It is not directed to any particular region, state or company. On occasion, NetMotion has utilized the services of a third party telemarketing organization to obtain information regarding potential customers. Prospective customers in Delaware may have been contacted by this third party organization.

(D.I. 12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that in January 2004, NetMotion electronically transmitted its Mobility Connection Newsletter nationwide. Over 12,000 received this [*12] material, including 23 entities in Delaware. Nonetheless, Colliton indicates that no revenue was received from the 23 emails. Padcom responds that it is unnecessary to consummate a sale for jurisdictional purposes. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, Civ. No. 99-218-SLR, 1999 WL 615175 (D. Del. 1999).* Padcom maintains that NetMotion's activities are part of a general business plan to solicit business in Delaware.

The Delaware Supreme Court has interpreted *§ 3104(c)(1)* as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *LaNuova D & B S.p.A. v. Bowe Co., 513 A.2d at 768.* Section *3104(c)(4)* is a general jurisdiction provision that allows the defendants contacts with the forum state to be unrelated to the cause of action. The Federal Circuit has found that when a defendant has "purposefully shipped the accused [product] into [the forum state] through an established distribution channel no more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994).* [*13]

The record reflects that NetMotion made trial versions of products available on its web site for downloading by consumers located anywhere. There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packward as onesided, i.e., "Hewlett-Packward chose to include product information", the court interprets this as a mutually beneficial agreement.

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003).* In so doing, the Court acknowledged the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.

> Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out [*14] of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the *Due Process Clause of the Fifth Amendment* requires (1) that the "defendant have constitutionally sufficient minimum contacts with the forum," and (2) that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice,"

*Id. at 451* (citations omitted); see also, *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa 1997)* (sliding scale analysis for personal jurisdictional issues in web site cases).

The Third Circuit's test is whether the defendant "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us, 318 F.3d at 453.* There, the Court considered a trademark infringement and unfair competition action filed pursuant to the Lanham Act, *15 U.S.C. § 1501 et seq.,* and New Jersey state law. The defendant was a Spanish corporation that owns or franchises toy stores in Spain and [*15] nine other countries but none in the United States. The defendant lacked any offices, bank accounts or employees in the United States. Further, the defendant did not direct any advertising or marketing efforts in the United States. The record did reflect that some merchandise for defendant's stores was purchased in the United States. From defendant's Internet web site, consumers could make online purchases; however, the site clearly was intended for users outside of the United States. For example, the price of items was noted in Spanish pesetas and Euros and goods ordered from the site could only be shipped within Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, n4 the Third Circuit recognized that

the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] that determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts.'" *Id. at 453*; (quoting [*16] *Zippo, 952 F. Supp. at 1127*) Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers *Toys "R" Us, 318 F.3d at 453-454*. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state. *Id. at 454*

> n4 The district court denied plaintiff the opportunity to conduct jurisdictional discovery to address the defendant's motion attacking jurisdiction.

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility [*17] software. (D.I. 24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged infringing product. (Id.)

Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities n5 for contact by a third party telemarketer in the summer of 2003. (D.I. 24, Ex. A, pgs. 61-64) Additionally, NetMotion specifically targeted Delaware health care facilities n6 NetMotion also mailed promotional materials to a targeted market of public safety organizations. n7 The documents were mailed to provide information about the products to encourage purchase. (D.I. 24, Ex. A, pgs. 44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list. The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business.

> n5 The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volunteer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

[*18]

> n6 Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I. 24, Ex. A, p. 89, Ex. M)

> n7 These agencies were identified as: Delaware State Police (Dover), Kent County Emergency Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department. (D.I. 24, Ex. A)

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the *Due Process Clause of the United States Constitution*. See *Int'l Shoe Co. v. Washington, 326 U.S. at 310*. Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit [*19] does not offend "traditional notions of fair play and substantial justice." *Id. at 316*. In *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*, the Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id. at 475 n.18*. Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-293, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*; 2) the burden imposed on the defendant by litigating in that forum, *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*; and 3) plaintiff's interest in the forum state, id.; see also, *Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d at 437* (Third Circuit held that plaintiff must show significantly more than

2004 U.S. Dist. LEXIS 9658, *

mere minimum contacts to establish [*20] general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packard enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

## V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a), n8 arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc., 157 F.R.D. 215 (D. Del. 1993).* NetMotion n9 argues that the court should transfer the case to the United States District Court for the District of Washington.

n8 Title 28, Section § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[*21]

n9 NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. NetMotion Wireless Inc. v. Padcom, Inc., 04-cv-622-JCC (W.D. Wa 2004). Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. (Id., D.I. 1) On April 27, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. (Id., D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. (Id., D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to en-

join prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a *Rule 16* Conference. (D.I. 33)

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience [*22] and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).* The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin. 512 F. Supp. 972, 973 (D. Del 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert. denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971))* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, Civ. No. 01-199-SLR, 2001 WL 1617186 (D. Del. 2001).* [*23] Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only [*24] to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly

2004 U.S. Dist. LEXIS 9658, *

limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle, Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established [*25] on the jurisdictional discov-

ery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

## VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I. 9) is denied. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 24th day of May, 2004, consistent with the memorandum opinion issued concomitantly,

IT IS ORDERED that:

1. Defendants' motion to dismiss and to transfer is denied. (D.I. 9)

2. Defendants shall file their Answer on or before June 11, 2004.

Sue L. Robinson

United States District Judge

LEXSEE 2003 U.S. DIST. LEXIS 7715

## IN RE: ELONEX PHASE II POWER MANAGEMENT LITIGATION

**C.A. Nos.: 01-082 GMS; 01-083 GMS; 01-084 GMS; 01-085 GMS; 01-086 GMS; 01-087 GMS; 01-088 GMS; 01-089 GMS; 01-090 GMS; 01-091 GMS; 01-092 GMS; 01-093 GMS, 01-095 GMS, 01-096 GMS, 01-097 GMS, 01-098 GMS, 01-099 GMS; 01-100 GMS, 01-101 GMS; 01-102 GMS, 01-103 GMS; 01-104 GMS**

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 7715*

**May 6, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by *In re Elonex Phase II Power Mgmt. Litig., 2003 U.S. Dist. LEXIS 10717 (D. Del., June 23, 2003)*

**PRIOR HISTORY:** *In re Elonex Phase II Power Mgmt. Litig., 2002 U.S. Dist. LEXIS 19552 (D. Del., Oct. 15, 2002)*

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction denied

**COUNSEL:** For Elonex IP Holdings, Ltd, Eip Licensing BV, Elonex Phase II Power Management Litigation, PLAINTIFFS (01cv82): Andre G Bouchard, Bouchard, Margules & Friedlander, Wilmington, DE USA.

For Elonex Phase II Power Management Litigation, PLAINTIFF (01cv82): Donald F Parsons, Jr, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Compaq Computer Corp, Proview International Holdings Ltd, DEFENDANTS (01cv82): William J Wade, Richards, Layton & Finger, Wilmington, DE USA.

For LG Electronics Inc, DEFENDANT (01cv82): Richard K Herrmann, Blank Rome LLP, Wilmington, DE USA.

For Delta Electronics Inc, Amtran Technology Co, Ltd, Daewoo Electronics Co, Ltd, Compal Electronics, Inc, DEFENDANTS (01cv82): Richard L Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE USA

For Delta Electronics Inc, DEFENDANT (01cv82): John T Meli, Jr, Fish & Richardson, PC, Wilmington, DE USA.

For NEC Corp, DEFENDANT (01cv82): Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For Gateway Inc, Acer Communications & Multimedia, Inc, DEFENDANTS (01cv82): Allen M Terrell, Jr, Richards, [*2] Layton & Finger, Wilmington, DE USA.

For Gateway Inc, Necx Direct LLC, DEFENDANTS (01cv82): Dominick T Gattuso, Richards, Layton & Finger, Wilmington, DE USA.

For Lite-on Technology Corp, DEFENDANT (01cv82): Robert W Whetzel, Richards, Layton & Finger, Wilmington, DE USA.

For ADI Corp, DEFENDANT (01cv82): Josy W Ingersoll, John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For ADI Corp, Daewoo Electronics Co, Ltd, DEFENDANTS (01cv82): David L Finger, David L Finger, Esq, Wilmington, DE USA.

For Chuntex Electronics Co, Ltd, CTX International Inc, DEFENDANTS (01cv82): Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Acer Communications & Multimedia, Inc, CTX International Inc, DEFENDANTS (01cv82): Gerard M O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

2003 U.S. Dist. LEXIS 7715, *

For Acer Communications & Multimedia, Inc,
DEFENDANT (01cv82): John C Andrade, Basil C Kol-
lias, Parkowski & Guerke, PA, Dover, DE USA

For Jean Co Ltd, DEFENDANT (01cv82): Donald W
Huntley, Donald W Huntley, Esq, Wilmington, DE USA

For Tatung Corp, DEFENDANT (01cv82): James C
Strum, Stradley, Ronon, Stevens & Young, Wilmington,
DE USA.

For [*3]  Apple Computer, DEFENDANT (01cv82):
Frederick L Cottrell, III, Richards, Layton & Finger,
Wilmington, DE USA.

For Korea Data Systems Co, Ltd, DEFENDANT
(01cv82): Richard H Morse, Young, Conaway, Stargatt
& Taylor, Wilmington, DE USA

For Envision Peripherals Inc, Top Victory Electronics
(Taiwan) Co, Ltd, Aoc International, DEFENDANTS
(01cv82): Richard D Kirk, Morris, James, Hitchens &
Williams, Wilmington, DE USA

For Necx Direct LLC, DEFENDANT (01cv82): Allen M
Terrell, Jr, Richards, Layton & Finger, Wilmington,
USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES
DISTRICT JUDGE

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On February 13, 2001, the plaintiffs, Elonex I.P.
Holdings, Ltd. and EIP Licensing, B.V. (collectively
"Elonex"), filed this action against certain companies that
manufacture and sell computer systems or computer
monitors. n1 The complaint alleges infringement of U.S.
Patent Numbers *5,389,952* ("the *'952* patent"), *5,648,799*
("the *'799* patent"), and *5,649,719* ("the *'719* patent").
The lawsuit relates to technology that concerns power
management in computer monitors.

> n1 In December 1998, Elonex I.P. Holdings
> Ltd. and Elonex plc filed a related lawsuit against
> another group of defendants on substantially the
> same grounds ("Elonex Phase I litigation").

[*4]

On May 21, 2001, Elonex requested entry of default
against the defendant Jean Co., Ltd. ("Jean"). The Clerk
of the Court entered default against Jean on June 18,
2001. On January 31, 2003, Elonex then moved for entry
of default judgment against Jean. On February 20, 2002,
counsel entered an appearance on behalf of Jean.

Presently before the court is Jean's motion to dismiss
for lack of personal jurisdiction. For the following rea-
sons, the court will deny this motion.

### II. BACKGROUND

Jean is an international monitor and electronics
manufacturer, with its principle place of business in
Taipei, Taiwan. In 2001, Jean had more than $ 316 mil-
lion in worldwide sales.

From March 1995 until April 1996, Elonex alleges
that Jean shipped 404,855 monitors to the United States.
Since 1998, ViewSonic Corporation and eMachines, Inc.
-- two United States monitor companies with nationwide
re-seller networks--have been among Jean's biggest cus-
tomers. According to Jean's 1999 Annual Report,
ViewSonic alone accounted for 22.91% of Jean's world-
wide monitor sales in 1998. In 1999, ViewSonic pur-
chased 30.4% of Jean's total 1999 monitor sales. In 2001,
ViewSonic purchased 39.7% of Jean's total [*5]  monitor
sales. Likewise, in 1999, eMachines purchased 12.94%
of Jean's worldwide monitor sales.

Additionally, both ViewSonic and eMachines have
well-established retail distribution networks. ViewSonic
monitors are available from retailers such as Best Buy,
Office Depot, and CompUSA. Likewise, eMachines
monitors are sold in Delaware at Best Buy, Office Depot,
and Circuit City. Both ViewSonic and eMachines also
sell monitors directly to consumers via their own internet
websites. Thus, the Jean monitors sold to ViewSonic and
eMachines are resold in Delaware and throughout the
United States.

Furthermore, Delaware purchasers of Jean monitors
can download monitor software and obtain customer
service via Jean's website. Visitors to the website can
also download drivers for Jean monitors and obtain tech-
nical support via e-mail. Finally, Jean's website lists an
"East Coast" service facility located in New Jersey.

### III. DISCUSSION

#### A. Due Process

*The Due Process Clause* requires that, in order to
subject a defendant who is "not present within the terri-
tory of the forum" to personal jurisdiction, the court must
first make sure that the party "has certain minimum con-
tacts with [the [*6]  forum] state such that the mainte-
nance of the suit does not offend 'traditional notions of

fair play and substantial justice.'" *International Shoe, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)).* In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472. 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994)* [*7]

In *Beverly Hills Fan,* the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia. *21 F.3d at 1560.* Ultec claimed that it was not subject to personal jurisdiction in Virginia because it did not have any Virginia assets, employees, or a license to do business in that state. *Id.* Acknowledging that Ultec's sole contact with the forum resulted from indirect shipments through the stream of commerce, the Federal Circuit held that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to rise out of these activities. No more is usually required to establish specific jurisdiction." *Id. at 1560, 1564-65*

The court's decision in *Motorola Inc. v. PC-Tel, Inc.* is likewise instructive in resolving the present issue. *58 F. Supp. 2d 349 (D. Del. 1999).* In that case, the court described the accused infringer's sales activities as follows:

> Altocom does not (and, it seems, cannot) contest the fact that its [*8] softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Song, and the like. These goods are then put into the world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City,

CompUSA, Office-Max, Sears, Service Merchandise, and others -- all of which have outlets in Delaware.

*58 F. Supp. 2d at 352.* Relying on *Beverly Hills Fan,* the court rejected AltoCom's arguments and held that exercising personal jurisdiction comported with due process. *See id. at 355-56.*

In the present case, as in *Beverly Hills Fan,* Jean's president states in his declaration that Jean makes no direct sales to the United States. He further states that Jean has no United States offices or subsidiaries. However, the court concludes that Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells it monitors to ViewSonic and eMachines, who in turn distribute [*9] Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-reseller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

Jean further maintains an interactive website through which customers in Delaware, and elsewhere, can download driver software, as well as obtain customer support. On its website, it also lists "Global Service Centers," including an "East Coast" service facility in New Jersey. These facts further support the court's conclusion that Jean's undeniably substantial and regular monitor sales into ViewSonic's and eMachines' national distribution networks constitute "purposeful minimum contacts" with Delaware.

Notwithstanding the existence of Jean's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice ...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court, 480 U.S. 102, 116, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).* [*10] This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendants to litigation within the forum. *See Beverly Hills Fan, 21 F.3d at 1568*

In the present case, Delaware clearly has a substantial interest in discouraging injuries in the state, including patent infringement injury. It has also been the sole forum for the Elonex Power Management Litigation for several years. Finally, and as the *Beverly Hills Fan* court

noted, "progress in communications and transportation" have made "the defense of a lawsuit in a foreign tribunal less burdensome." *21 F.3d at 1569* (internal quotation and citation omitted). Thus, the court concludes that any burden on Jean "is not sufficiently compelling to outweigh" Elonex's and Delaware's interests. *Id.*

**B. Delaware's Long-Arm Statute**

The second step in the court's analysis into the propriety of subjecting Jean to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See DEL.* [*11] *CODE. ANN. tit. 10 § 3104.* While Jean contends that it does not fall within the grasp of any of *Section 3104*'s provisions, Elonex contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection *(c)(4)*, the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." *DEL. CODE. ANN. tit. 10, § 3104(c)* (2001). n2 The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten, 784 F. Supp. 146, 151 (D. Del. 1992).*

n2 This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth., 56 F. Supp. 2d 436, 439 (D. Del. 1999).* Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

[*12]

As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors satisfies the act requirement of *Section 3104(c)(4). See Beverly Hills Fan, 21 F.3d at 1571.* Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at PP 3-7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

**C. Venue**

Jean finally asserts that, pursuant to *28 U.S.C. § 1391(c)*, venue is improper in this district. Jean's argument is meritless, however, because "the venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if ... the district court has personal jurisdiction over [the defendant]." *North American Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994); see also 28 U.S.C. § 1391(b)(1) & (c)* (stating that venue is proper in a judicial district where the defendant corporation is subject to personal jurisdiction at the time the action is commenced). [*13] As the court has already found that the exercise of personal jurisdiction is proper and complies with both due process and the Delaware long-arm statute, venue in this district is also proper.

**IV. CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jean's Motion to Dismiss (D.I. 856) is DENIED.

Dated: May 6, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following, and the document is available for viewing and downloading from CM/ECF:

Thomas C. Grimm, Esquire
Leslie A. Polizoti, Esquire
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Thomas L. Halkowski, Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

Richard L. Horwitz, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

David E. Moore, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

Frederick L. Cottrell, III, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Adam Wyatt Poff, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899

Francis DiGiovanni, Esquire
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Arthur G. Connolly, III, Esquire
Connolly Bove Lodge & Hutz
8th Floor, The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899

Amy Evans, Esquire
Cross & Simons, LLC
Suite 1001, 913 N. Market Street
P.O. Box 1380
Wilmington, DE 19899

Robert J. Katzenstein, Esquire
Robert K. Beste, III, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899

-1-

Philip A. Rovner, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

John W. Shaw, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE  19899

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899

David J. Margules, Esquire
Bouchard, Margules, Friedlander
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

Gerard M. O'Rourke, Esquire
Connolly Bove Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

Monte Terrell Squire, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE  19899

William J. Wade  (#704)

Dated:  March 23, 2006

RLF1-2987483-2