IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and | ) | |
| HONEYWELL INTELLECTUAL PROPERTIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-1338 (KAJ) |
| v. | ) | |
| | ) | |
| APPLE COMPUTER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**HONEYWELL'S OPPOSITION TO DEFENDANT ARIMA DISPLAY'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
lpolizoti@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

April 6, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................ 1

I.     THE ORIGINALLY-NAMED DEFENDANTS WERE CHOSEN, IN PART, TO
       AVOID JURISDICTIONAL BATTLES......................................................... 2

II.    UNDER THE CURRENT POSTURE OF THIS CASE, THE DEFENSE OF
       LACK OF PERSONAL JURISDICTION RAISES SUBSTANTIAL DUE
       PROCESS CONCERNS REGARDING HONEYWELL'S RIGHT TO
       PROSECUTE ITS CLAIMS ........................................................................ 4

STATEMENT OF FACTS ............................................................................................ 6

I.     ARIMA DISPLAY CORPORATION'S MEMORANDUM OMITS MOST
       DETAILS RELEVANT TO PERSONAL JURISDICTION.............................. 6

II.    ARIMA DISPLAY'S MEMORANDUM FAILS TO IDENTIFY EITHER THE
       NAME OR LOCATION OF ANY OF ITS UNITED STATES-BASED
       CUSTOMERS........................................................................................... 7

III.   ARIMA DISPLAY'S MEMORANDUM FAILS TO IDENTIFY THE NAME
       OR LOCATION OF ANY OF ITS ASIAN CUSTOMERS ............................ 8

IV.    ARIMA DISPLAY'S MEMORANDUM FAILS TO STATE WHAT
       RELATIONSHIP IT HAS WITH THE RELATED ARIMA COMPANIES ................... 8

V.     ARIMA DISPLAY'S MEMORANDUM FAILS TO STATE RELEVANT
       FACTS  CONCERNING ITS WEBSITE....................................................... 10

ARGUMENT ............................................................................................................ 11

I.     ARIMA DISPLAY INJECTS ITS PRODUCTS INTO A STREAM OF
       COMMERCE DIRECTED TO THIS FORUM, THUS JUSTIFYING THIS
       COURT'S EXERCISE IN PERSONAM JURISDICTION .............................. 11

       A.     Honeywell Has Been Forced To Oppose Arima Display's Motion With
              Only A Limited Factual Record......................................................... 12

       B.     Based On The Limited Record Now Available To Honeywell, Arima
              Display Is Subject To Both Specific And General Jurisdiction; Exercising
              That Jurisdiction Does Not Run Afoul Of Due Process ...................... 13

C.    Arima Display Is Subject To Personal Jurisdiction Pursuant To Federal Rule Of Civil Procedure 4(k)(2) ........................................................................ 14

II.    HONEYWELL IS ENTITLED TO OBTAIN JURISDICTIONAL DISCOVERY FROM ARIMA DISPLAY, INCLUDING ITS SISTER AND PARENT COMPANIES DOING BUSINESS IN THE UNITED STATES ................................... 14

III.    ANY RELIEF TO ARIMA DISPLAY—OR ANY OTHER LCD MODULE MANUFACTURER—SHOULD BE CONDITIONED UPON PROVIDING HONEYWELL WITH A "REPLACEMENT" DEFENDANT ...................................... 16

CONCLUSION.................................................................................................................. 17

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**Cases**

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000) .............................................................................. 15

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (U.S. 1985) ................................................................................ 14

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005) ........................................................................ 12

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
   2004 U.S. Dist. LEXIS 19760 (D. Del. 2004) ................................................... 15

*M & L of Del., Inc. v. Wallace*,
   2004 U.S. Dist. LEXIS 21863  (D. Del. 2004) ................................................... 15

*New Jersey Institute of Technology v. Medjet, Inc.*,
   47 Fed. Appx. 921 (Fed. Cir. 2002) ................................................................. 17

*Padcom, Inc. v. NetMotion Wireless, Inc.*,
   2004 U.S. Dist. LEXIS 9658 (D. Del. 2004) ..................................................... 14

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
   2004 U.S. Dist. LEXIS 3940 (D. Del. 2004) ..................................................... 17

**Statutes**

DEL. CODE. ANN. tit. 10 § 3104(c) ......................................................................... 14

Federal Rule of Civil Procedure 4(k)(2) ............................................................. 15, 16

## INTRODUCTION

On March 23, 2006 Arima Display Corporation ("Arima Display"), a Taiwanese manufacturer of LCD modules, filed a Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 369). Essentially, Arima Display's Motion claims the company has "no contacts" with the state of Delaware and that subjecting Arima Display to this Court's jurisdiction would "offend traditional notions of fair play and justice." (D.I. 370 at 2). Arima Display's legal arguments in this regard are set forth in some detail. Unfortunately, however, both the factual assertions in Arima Display's Memorandum as well as the supporting paragraphs in Hsing-Hung Shen's Declaration (D.I. 372) conspicuously omitted those facts that are most relevant to the issues before this Court, including the identities and specific locations of Arima Display's customers.

Arima Display's Motion should be denied because Arima Display intentionally injects its products into a stream of commerce with the intention of taking advantage of the United States market, including this forum. Such purposeful availment satisfies both the Delaware "long-arm" statute and constitutional due process standards.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

While Arima Display's instant Motion should be denied in its entirety, the occasion of its Motion to Dismiss presents an opportunity to reflect on how the parties arrived at this jurisdictional crossroad. It also presents an opportunity to reflect on the evidentiary challenges that personal jurisdictional questions present in the greater context of a case that is now scheduled to proceed against LCD module manufacturers, as opposed to those companies that sell the end products into which those modules are incorporated.

Previously, numerous Defendants and this Court indicated their collective belief that the LCD module suppliers would *voluntarily* appear in court in order to stand by their customers and

stand behind their LCD products.  (*See, e.g.*, D.I. 204, May 16, 2005 Status Conference at 44-46).  On this very issue, that Court stated in September of last year:

> I would think that overseas marketers of LCD modules who have big clients in the United States incorporating those things into their products are not going to want to upset their clientele by playing games with jurisdiction.  And particularly in the aftermath of the Federal Circuit's *CEA* decision, which I remember well, I would think people would be thinking hard about how they're going to play the jurisdictional issues here.  But that is a discussion for another day.

(D.I. 230, September 9, 2005 Conference at 30).  Unfortunately, however, at least two companies are *unwilling* to come into this court to stand by their customers.  Arima Display's Motion to Dismiss represents the second such motion.  Moreover, putting aside those parties that have not yet filed an Answer in this action, only three have either admitted or waived personal jurisdiction and twelve have either denied personal jurisdiction or have otherwise sought to preserve that defense.  It is thus not known at this time whether other LCD suppliers are waiting with similar jurisdictional motions.  Should this Court entertain either ST-LCD or Arima Display's request to be dismissed—and it should not—additional motions are all but guaranteed.

## I.    THE ORIGINALLY-NAMED DEFENDANTS WERE CHOSEN, IN PART, TO AVOID JURISDICTIONAL BATTLES.

Honeywell initially filed the instant lawsuit against a number of end product manufacturer of portable consumer electronic devices.  Honeywell sued the end product manufacturers, instead of the LCD module manufacturers themselves, for a number of reasons, including a desire to avoid the very type of jurisdictional battles with which it is now confronted.  Many of those concerns were outlined during the Status Conference held on May 16, 2005, where Honeywell stated, "If we start with the products that we know are going to be sold in the United States, which is the end products . . . the transactions take place *here* . . . we have corralled the *entire scope* of the infringement."  (D.I. 204 at 25) (emphasis added).

Honeywell believed that suing the end product manufacturers made more sense since those companies reap the principal benefits from incorporating Honeywell's LCD technology into their end products. Moreover, evidence regarding the benefits of utilizing Honeywell's patented technology in the portable consumer electronic devices is more likely in the hands of the end product manufacturers, not the foreign LCD suppliers. It was with respect to these LCD suppliers that Honeywell candidly explained, "whether or not we know [who the relevant LCD suppliers are] and whether they are people that we can actually serve with process and bring into court, we do not know that." (*id.* at 26). In reply, the Court acknowledged Honeywell's concerns, stating, "Yes, we are acutely aware of the challenges associated with personal jurisdiction in this court." (*Id.*).

Most of the end product manufacturers protested Honeywell's approach to addressing this industry-wide infringement, arguing that allowing Honeywell to proceed against them was unfair in light of the fact that they "know nothing" about the millions of modules they have purchased from their foreign suppliers. Their arguments in this regard are succinctly stated in their Opening Brief in Support of Customer Defendants' Joint Motion to Stay Cases Pending Resolution of LCD Module Manufacturers' Cases:

> As purchasers and users of the allegedly infringing devices, the customer defendants have no technical information concerning the design or manufacture of the allegedly infringing devices, nor any ability to address fully and thoroughly the substance of the claims raised by Honeywell. Rather, it is the device manufacturers in these actions who have an overriding interest in defending their products and who have the technical information necessary to defend against claims of patent infringement . . . Staying the proceedings against the Customer Defendants will not prejudice Honeywell because Honeywell will have a full opportunity to attempt to prove its allegations that the LCD modules manufactured by the LCD manufacturers and used by the Customer Defendants, and those used by the OEMs of the Customer Defendants, are infringing.

(D.I. 159 at 6, 18).

After oral argument on these issues, the Court ordered Honeywell to proceed largely according to the end product manufacturers' plan.  In so doing, however, the Court stated, "I am not unmindful of the plaintiff's assertion that, whether it's now or later, they want you folks. And that's my way of saying I'm intending to hold everybody's feet to the fire [ . . . ]."  (D.I. 204 at 56).  Following the Court's directive, Honeywell amended its Complaint to name those LCD manufacturers which it had identified in its pre-suit analysis and/or which were disclosed by the "Non Manufacturer Defendants."

**II.    UNDER THE CURRENT POSTURE OF THIS CASE, THE DEFENSE OF LACK OF PERSONAL JURISDICTION RAISES SUBSTANTIAL DUE PROCESS CONCERNS REGARDING HONEYWELL'S RIGHT TO PROSECUTE ITS CLAIMS.**

While the end product manufacturers were successful in temporarily stepping to the sidelines, it is not altogether clear that jurisdictional battles with the LCD manufacturers have been avoided.  To date, the following Defendants have pled or otherwise reserved the defense that this Court lacks personal jurisdiction over them: Arima Display Corporation; Boe Hydis Technology Co., Ltd; Casio Computer Co., Ltd.; Citizen Displays Co., Ltd.; Citizen Watch Co., Ltd.; International Display Technology; Koninklijke Philips Electronics N.V.; Sanyo Epson Imaging Devices Corporation; ST Liquid Crystal Display Corp.; Samsung SDI Co., Ltd.; Sony Corporation; Quanta Display, Inc.; and Wintek Corp.  In other words, despite the end product Defendants' proclamation that the LCD module manufacturers "have an overriding interest in defending their products," and while the Court opined that those LCD manufacturers are "not going to want to upset their clientele by playing games with jurisdiction," it is clear that those jurisdictional issues are alive.

The structure of this case now threatens to place Honeywell between an evidentiary rock and a jurisdictional hard place.  To dismiss Arima Display or any other LCD module

manufacturer from the suit without leaving Honeywell with a "replacement" defendant would in fact be prejudicial to Honeywell. Under these circumstances, dismissing any foreign LCD module manufacturer under the present structure of this case presents compelling due process concerns which must be fully considered. Honeywell is entitled to have its day in court; if it is not to be against the LCD manufacturers, then it must be against the end product manufacturers. Otherwise, Honeywell's claims are essentially being relegated to legal "limbo."

Ultimately, the end product manufacturers sought to persuade the Court to institute a stay by claiming that: "[s]taying the proceedings against the Customer Defendants will not prejudice Honeywell," that "[d]iscovery directed at the LCD Manufacturers will provide Honeywell with the relevant information regarding the allegedly infringing LCD devices," and that those LCD manufacturers would "provide an accounting of accused LCD modules sold to Customer Defendants." (D.I. 159 at 18). Given those assurances to the Court, any relief granted to the LCD module Defendants should be conditioned on (i) the LCD module manufacturers identifying each and every LCD module they manufacture that contains the Accused Structure, identifying each and every customer who purchases those LCD modules, and (ii) proceeding to "hold everybody's feet to the fire" by immediately releasing the stay as to those customers who purchase the allegedly infringing modules. Anything less will severely hamper Honeywell's rights.

## STATEMENT OF FACTS

Defendant Arima Display is a Taiwanese corporation having its principal place of business in Kaohsiung, Taiwan.  In addition to its corporate headquarters in Taiwan, Arima Display has offices and manufacturing plants in both China and Japan.  According to Arima Display's instant Motion, the company apparently exists for two principal reasons, namely to manufacture and sell LCD modules and LCD panels to its customers located throughout Asia and the United States.  (D.I. 370 at 3).

Arima Display was formed in June 2000, and it is clear from the record that the company has close ties with its customer and sister company Arima Communications Corporation, which, together with Arima Display, is a subsidiary of Arima Computer Corporation.  (D.I. 370 at 3-4).  Unlike ST-LCD, which filed a similar Motion to Dismiss with this Court, the history and impetus behind Arima Display's formation is not clear and is not readily ascertained from independent sources.  In fact, the selective record created by Arima Display leaves unanswered many questions vital to evaluation of the issue of personal jurisdiction.

## I.    ARIMA DISPLAY CORPORATION'S MEMORANDUM OMITS MANY DETAILS RELEVANT TO PERSONAL JURISDICTION.

In support of its Motion to Dismiss, Arima Display made approximately two dozen assertions in its Statement of Facts which, when considered together, paint the picture of a distant foreign company with no ties to Delaware and only tangential ties to the United States.  (D.I. 370 at 3-5).  Arima Display unambiguously states that it does not directly sell LCD modules in Delaware.  (*Id*. at 4).  Arima Display clearly indicates that it has no phone number in Delaware nor any bank accounts in the state.  (*Id*. at 3).  Arima Display further proclaims that it has no employees in Delaware and protests that it has not entered into any contracts in Delaware.  (*Id*.).  Arima Display's Memorandum, however, does not tell the whole story.

## II.  ARIMA DISPLAY'S MEMORANDUM FAILS TO IDENTIFY EITHER THE NAME OR LOCATION OF ANY OF ITS UNITED STATES-BASED CUSTOMERS.

Upon a closer reading of Arima Display's Memorandum, a clear pattern emerges.  While many of Arima Display's allegedly factual assertions are set forth in a declarative manner ("Arima Display has no local telephone listing . . . in Delaware") (D.I. 370 at 3), the fact remains that Arima Display has left unquestionably vague most of the highly relevant facts upon which issues of personal jurisdiction depend.  For example, Arima Display's Memorandum asserts that the company has only a "small number" of customers in the United States.  (*Id*. at 4).  The implication, of course, is that the company has only a correspondingly "small number" of contacts with the United States and that such contacts are insufficient to support personal jurisdiction.  And it is true that Arima Display's assertion is certainly relevant as far as it goes . . . but *only* as far as it goes.

Conspicuously *absent* from Arima Display's Memorandum are the relevant details concerning these U.S. customers.  (D.I. 370 at 4).   In fact, not a single detail is provided.  This absence of evidence begs a number of questions, namely, what does Arima Display consider to be a "small number" of U.S. customers?  Who are those customers?  Where are they located (do they have branches in Delaware)?  What does Arima Display sell to those customers, in what quantities, and what does Arima Display know about what its customers do with those products?  And significantly, if there are only a "small number" of U.S.-based customers, and if Arima Display is confident about its lack of any jurisdictionally relevant ties to this forum, why did it not provide Honeywell and this Court with their names?[1]

---

[1]    At a minimum, Honeywell is entitled to know what percentage of Arima Display's production of LCD modules are destined for these U.S.-based customers and into what products Arima Display's products are incorporated.

### III.     ARIMA DISPLAY'S MEMORANDUM FAILS TO IDENTIFY THE NAME OR LOCATION OF ANY OF ITS ASIAN CUSTOMERS.

Arima Display is similarly vague with respect to its non-U.S.-based customers.  Arima Display states that all of its non-U.S.-based customers are located "in Asia." (D.I. 370 at 4). Specifically, Arima Display states that it sells LCD modules to "other" customers that are domiciled in Taiwan, Hong Kong, China, Singapore, and Japan.  (*Id.*).  Again, Arima Display is completely silent with respect to the details.

Arima Display's Memorandum fails to provide the name of a *single* Asia-based customer, other than identifying in a footnote its sister company, Arima Communications. Moreover, as was the case with its U.S. counterparts, Arima Display provides no relevant information concerning the identity of those Asian companies, into what products those companies incorporate Arima Display's LCD modules, and what Arima Display knows about where those products are destined.  Arima Display states it believes that "some of these products may end up in the United States"—a fact highly relevant to issues of personal jurisdiction—yet is apparently unwilling to provide that information. (D.I. 370 at 4). That presents a serious problem for Honeywell which, absent the Court ordering jurisdictional discovery, will be forced to take Arima Display's assertions at face value.

### IV.     ARIMA DISPLAY'S MEMORANDUM FAILS TO STATE WHAT RELATIONSHIP IT HAS WITH THE RELATED ARIMA COMPANIES.

The only customer that Arima Display *is* willing to divulge is that of its sister company, Arima Communications, and that fact is only divulged in a footnote.  (D.I. 370 at 4, n.1).  Again, no details are provided concerning the nature of that relationship between Arima Display and Arima Communications.  For example, Arima Display is entirely silent as to what products (and how many of those products) it sells to Arima Communications.  Arima Display is also entirely silent as to its knowledge of what its sister company does with those products.  It is, of course,

entirely possible that the two companies have the same sort of close ties that ST-LCD and Sony enjoy. This leaves a host of jurisdictionally relevant questions—many of which were discussed in the context of Honeywell's Opposition to ST-LCD's Motion—completely unanswered. Honeywell, however, is entitled to jurisdictional discovery on these issues—jurisdictional discovery which Honeywell believes is highly likely to establish strong jurisdictional ties to this forum.

Arima Display's relationship with its yet-unnamed customers aside, Honeywell notes that couched in the middle of a single footnote in Arima Display's Memorandum resides one *facially* innocuous sentence:  "Both Arima Display and Arima Communications are subsidiaries of Arima Computer Corporation, a Taiwanese corporation with headquarters in Taipei, Taiwan." (D.I. 370 at 4, n.1).  That is the only information Arima Display has provided concerning its parent company, Arima Computer.

Arima Display has not, however, provided background about its parent company. Notably, Arima Computer manufactures and sells all sorts of LCD-equipped devices.  For example, Arima Computer manufactures and sells LCD-equipped smart phones.  (Okerlund Aff., Ex. A).[2]  Arima Computer also manufactures and sells notebook computers.  (Ex. B).  It also sells LCD TVs and it presumably sells other LCD devices of which Honeywell and this Court are not yet aware.  (Ex. C).  LCD devices, of course, require LCD modules.  It seems reasonable that those devices incorporate Arima Display's modules, at least to some extent.  This fact is highly relevant to this Court's analysis regarding jurisdiction.

---

[2]    All exhibits referenced herein are attached to the Affidavit of Michael D. Okerlund in Support of Plaintiffs' Opposition to Arima Display's Motion to Dismiss for Lack of Personal Jurisdiction, filed herewith.  Each such exhibit is cited herein as "Ex. __."

As a final note, Arima Display also fails to mention in its brief that Arima Computer, the manufacturer of the above-mentioned LCD end products, has its very own factory and service center *here* in the United States, located at 9600 W. Gulf Bank Road in Houston, Texas. (Ex. D). Arima Computer's Houston factory may be what Arima Display was referring to when it stated that it "believes that the LCDs are incorporated into electronic products of Arima Display's customers and that some of these products may end up in the United States." (D.I. 370 at 4).

## V.    ARIMA DISPLAY'S MEMORANDUM FAILS TO STATE RELEVANT FACTS CONCERNING ITS WEBSITE.

Arima Display maintains a website which Arima Display explains "can be accessed by anyone in the United States, including Delaware." (D.I. 370 at 3). Arima Display, a Taiwanese company, neglects to say that it offers a version of its website in English. Moreover, while Arima Display states that its website "merely provides general information" about the company and its products, and that a user cannot "order products online," those statements present only a portion of the overall relevance of the website.

Arima Display's website clearly and unambiguously invites customers, including customers in Delaware, to purchase Arima Display's LCD modules and displays. For example, when visiting Arima Display's English website, located at http://www.arimadisp.com/EN/about/main.htm, Delaware customers are presented with a "Company Profile," which provides certain information concerning the history and location of the company. (Ex E). Located at the top of that page are two electronic buttons, one labeled "On-line Request for Quotation," the other labeled "Contact Us." (*Id.*).

Significantly, for those Delaware customers who want to request a quote for Arima Display's LCD products, clicking on the "Request for Quotation" button transports the user to a page that is entirely in Chinese, but which contains a single link, again in English. (Ex. F).

Pressing on that link transports the would-be Delaware user to Arima Computer, which as mentioned *supra*, has manufacturing and service facilities in Houston, Texas.

Arima Display's "Contact Us" button is possibly even more significant. (Ex. E). After perusing the "technical specifications for [Arima Display's] products" (D.I. 370 at 3), if Delaware-based customers want to request further information concerning Arima Display's LCD modules, they are invited to follow the "Contact Us" link located at the top of the page. (Ex. E). Clicking on that button will automatically launch the user's e-mail program, such as Microsoft Outlook, and will automatically insert the following internet address: "sales@arimadisp.com." (Ex. G). It is unlikely that the use of the word "sales" in the e-mail address here is accidental. Simply put, Arima Display's website appears to be an invitation to do business with Arima Display; it is targeted toward English speakers throughout the United States and it is targeted to customers in Delaware. Its existence alone is sufficient to establish personal jurisdiction over Arima Display.

## ARGUMENT

### I.    ARIMA DISPLAY INJECTS ITS PRODUCTS INTO A STREAM OF COMMERCE DIRECTED TO THIS FORUM, THUS JUSTIFYING THIS COURT'S EXERCISE IN PERSONAM JURISDICTION.

Honeywell has alleged that Arima Display *knows* and indeed *intends* that its products will make their way into the United States via a well-established "stream of commerce." As the parties recognize, Delaware courts have recognized Honeywell's "stream of commerce" theory and have repeatedly found it a basis for a determination of personal jurisdiction. *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1320-22 (Fed. Cir. 2005).

### A.    Honeywell Has Been Forced To Oppose Arima Display's Motion With Only A Limited Factual Record.

At the outset, Honeywell notes that Arima Display's motion provides little evidence concerning Arima Display's operations and connections with the United States and this forum. While the lack of facts voluntarily provided to Honeywell and this Court evidence the clear need for jurisdictional discovery, the lack of those facts places Honeywell in a difficult legal position. The Federal Circuit's law and Delaware's law as they relate to issues of personal jurisdiction have already been articulated by Honeywell in its Opposition to ST-LCD's Motion to Dismiss (D.I. 341), and in the interest of avoiding needless repetition, Honeywell incorporates by reference the arguments presented in its earlier Opposition.

With respect to additional argument, as this Court is well aware, the relevant permutations of Delaware and Federal Circuit law on personal jurisdiction are highly fact-driven. Moreover, the identification and proper application of the relevant case law can *only happen* in the context of a reasonably complete factual record. In Arima Display's case, that factual record has yet to be made. Given the lack of discovery on this matter, Honeywell has been left to respond to Arima Display's Motion with its evidentiary arms tied behind its back. For that reason, Honeywell respectfully moves the Court for jurisdictional discovery in order to determine the exact extent and nature of its contacts with the forum state. *See infra*, Section II. Honeywell further reserves its right, following receipt of that discovery, to proceed with additional tailored arguments rooted in Delaware and Federal Circuit case law, the relevance of which Honeywell can only speculate upon at this time given the factual record.

**B.    Based On The Limited Record Now Available To Honeywell, Arima Display Is Subject To Both Specific And General Jurisdiction; Exercising That Jurisdiction Does Not Run Afoul Of Due Process.**

Based only on the limited information obtained to date, Sections 3104(c)(1) and (c)(4) of the Delaware long-arm statute will still operate to subject Arima Display to both specific and general jurisdiction under the laws of Delaware.  Moreover, exercising jurisdiction in this case will not run afoul of due process.  *See* DEL. CODE. ANN. tit. 10 § 3104(c).

To date, the facts obtained by Honeywell which support the exercise of personal jurisdiction include the presence of a Sony Ericsson Z200 GSM World Phone, purchased on-line in the United States, which Honeywell has found contains an infringing LCD module manufactured by Arima Display.  (Ex. H).  Further evidence regarding the specific contacts Arima Display has with the United States and Delaware include its English website which directly encourages Delaware residents to request quotations for Arima Display's products and which encourages Delaware residents to contact Arima Display's sales representatives at sales@arimadisp.com.  (Exs. E and G).  These facts alone are sufficient to establish jurisdiction over Arima Display, and Arima Display's Motion should be denied on that basis.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (U.S. 1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); *Padcom, Inc. v. NetMotion Wireless, Inc*., 2004 U.S. Dist. LEXIS 9658 at *12-17 (D. Del. 2004) (finding specific jurisdiction under the stream of commerce theory in the context of a *third party* website that was accessible by "consumers located anywhere.").  Additional discovery into Arima Communications and Arima Computer, as well as discovery into Arima Display's allegedly "small number" of U.S.-based customers will likely yield a wealth of information establishing

13

additional jurisdictional ties.  *Padcom,* 2004 U.S. Dist. LEXIS 9658 at *13-15 (citing a mix of ties to the forum state and observing that "the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.") (citations omitted).

**C.    Arima Display Is Subject To Personal Jurisdiction Pursuant To Federal Rule Of Civil Procedure 4(k)(2).**

Should this Court for any reason not find that it does not have jurisdiction over Arima Display by virtue of Delaware's long-arm statute, this Court may still exercise its jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).  As this Court has previously stated, personal jurisdiction under Rule 4(k)(2) may be exercised if "(1) plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law." *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760 at *16 (D. Del. 2004); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000).

Here, as was the case with ST-LCD, each of the requirements for jurisdiction under Rule 4(k)(2) is satisfied.  For the sake of brevity, Honeywell will again incorporate by reference the arguments it set forth in its Opposition to ST-LCD's Motion to Dismiss (D.I. 341).  Honeywell merely states that should this Court proceed on this factual record and find that Arima Display is not subject to the long-arm jurisdiction of this Court, jurisdiction must therefore lie via Rule 4(k)(2).

**II.    HONEYWELL IS ENTITLED TO OBTAIN JURISDICTIONAL DISCOVERY FROM ARIMA DISPLAY, INCLUDING ITS SISTER AND PARENT COMPANIES DOING BUSINESS IN THE UNITED STATES.**

As noted above, where "personal jurisdiction is contested without the benefit of discovery, [Honeywell] need only establish a prima facie case, with the record viewed in the

light most favorable to [Honeywell]" in order to proceed. *M & L of Del., Inc. v. Wallace*, 2004 U.S. Dist. LEXIS 21863 at *4-5 (D. Del. 2004). Here, Honeywell has set forth facts, such as Arima Display's internet solicitations to customers in Delaware, sufficient to deny Arima Display's motion outright. Should, however, this Court determine that the record is insufficient to demonstrate the presence of specific or general jurisdiction under Delaware's long-arm statute, Honeywell respectfully requests that the Court permit Honeywell to conduct additional discovery into Arima Display's contacts with the forum state. For example, Honeywell must be allowed to ascertain, at a minimum, the following relevant facts:

- To what extent Arima Display receives sales queries through its website;

- To what extent other companies in the Arima Family, such as Arima Communications Corporation and Arima Computer Corporation, utilize Arima Display's products;

- What Arima Family products incorporate the accused modules;

- Where and through what channels are Arima Family products that incorporate the accused LCD modules sold;

- What control does Arima Computer or any other company exhibit over Arima Display's product lines;

- Who are Arima Display's other Asia-based customers;

- What products sold by Arima Display's Asia-based customers are known to incorporate an Arima Display LCD module, and where are those products sold;

- How many inquiries Arima Display has received through its website from individuals residing in the United States and Delaware;

- Whether Arima Display has executed an agreement to defend any customer against claims of patent infringement in the United States.[3]

## III.   ANY RELIEF TO ARIMA DISPLAY—OR ANY OTHER LCD MODULE MANUFACTURER—SHOULD BE CONDITIONED UPON PROVIDING HONEYWELL WITH A "REPLACEMENT" DEFENDANT.

Honeywell has a meritorious claim for the infringement of its patent rights; it is axiomatic that every plaintiff is entitled to its day in court. *See, e.g.*, *New Jersey Institute of Technology v. Medjet, Inc.*, 47 Fed. Appx. 921, 926 (Fed. Cir. 2002). Releasing Arima Display from this Court's jurisdiction, without replacing Arima Display with the companies that incorporate its infringing LCD Modules, will therefore prejudice Honeywell and stand in the way of due process.

Should this Court provide any relief to Arima Display, it should condition that relief upon the condition that Arima Display (i) identifies each and every LCD module it manufactures that contains the Accused Structure, and (ii) identifies each and every customer who purchases those LCD modules. Upon Arima Display's full compliance with those conditions, the Court should indeed "hold everybody's feet to the fire" by immediately releasing the stay as to those customers, including Sony Ericsson, who purchase Arima Display's allegedly infringing modules.

---

[3]     If so, that fact might well demonstrate that Arima Display was "well aware of and prepared for the possibility of litigation" where Sony Ericcson does business. *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 3940 (D. Del. 2004).

## <u>CONCLUSION</u>

For the reasons set forth above, jurisdiction in the State of Delaware and this Court is entirely proper, and Arima Display's Motion to Dismiss for Lack of Personal Jurisdiction must be denied.  In the event that the Court does not deny Arima Display's Motion outright, Honeywell requests ample time to conduct jurisdictional discovery into all information that Arima Display possesses that is relevant to issues of personal jurisdiction and provide Honeywell with the opportunity to adequately respond to Arima Display's motion after the receipt of such discovery.  Should, however, this Court grant Arima Display's Motion to Dismiss, Honeywell moves the Court to first order Arima Display to (i) identify each and every LCD module it manufactures that contains the Accused Structure, (ii) identify each and every customer who purchases those LCD modules, and (iii) immediately release the stay as to those Arima Display customers, including Sony Ericsson, who purchase the allegedly infringing modules prior to selling their end products in the United States.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

_____

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

April 6, 2006
514967

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
lpolizoti@mnat.com
*Attorneys for Plaintiffs*

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, John M. Caracappa, Christopher E. Chalsen, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Amy Elizabeth Evans, York M. Faulkner, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Richard L. Horwitz, Dan C. Hu, John T. Johnson, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Stephen S. Korniczky, Hamilton Loeb, Robert Maier, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Kevin M. O'Brien, Gerard M. O'Rourke, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, Alana A. Prills, Steven J. Rizzi, Avelyn M. Ross, Philip A. Rovner, Diana M. Sangelli, Robert C. Scheinfeld, Carl E. Schlier, John M. Seaman, Chad Michael Shandler, John W. Shaw, Neil P. Sirota, Monte Terrell Squire, William J. Wade, Roderick B. Williams and Edward R. Yoches.

I also certify that on April 6, 2006, I caused to be served true and correct copies of the foregoing on the following as indicated:

**BY HAND:**

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square, P.O. Box 551
Wilmington, DE  19899-0551

**BY FEDERAL EXPRESS:**

Dan C. Hu
TROP PRUNER & HU, P.C.
8554 Katy Freeway
Houston, TX  77024-1834

*/s/ Leslie A. Polizoti*

Leslie A. Polizoti (#4299)
lpolizoti@mnat.com

514967