IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 04-1338-KAJ |
| APPLE COMPUTER INC., et al, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT ARIMA DISPLAY CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

William J. Wade  (#704)
Wade@rlf.com
Matthew W. King  (#4566)
King@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

Attorneys for Defendant
Arima Display Corporation

OF COUNSEL:

Dan C. Hu
Diana M. Sangalli
TROP, PRUNER & HU, P.C.
Suite 100
8554 Katy Freeway
Houston, TX  77024

Dated: April 17, 2006

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................4

    I.    HONEYWELL HAS NOT MADE A *PRIMA FACIE* SHOWING THAT THIS
           COURT HAS JURISDICTION OVER ARIMA DISPLAY ........................................4

    II.    HONEYWELL IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY
           BECAUSE HONEYWELL HAS FAILED TO ESTABLISH A *PRIMA FACIE*
           CASE FOR PERSONAL JURISDICTION ..................................................................8

    III.    PERSONAL JURISDICTION OVER ARIMA DISPLAY DOES NOT EXIST
           UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2). .................................9

CONCLUSION .................................................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics, Corp.*, 395 F.3d 1315 (Fed. Cir. 2005) ........................................................................................................... 8

*Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 (D. Del. 2004) .............. 6

*Telcordia Technologies, Inc. v. Alcatel S.A.*, 2005 U.S. Dist. LEXIS 10194 (D. Del. 2005)..... 7, 9

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)........................................... 6, 8

## TABLE OF ABBREVIATIONS

Shen Supp. Decl. ¶ __.    Refers to the April 17, 2006, *Supplemental Declaration of Hsing-Hung Shen in Support of Arima Display Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction.*

Sangalli Decl. ¶ __.    Refers to the April 17, 2006, *Declaration of Diana M. Sangalli in Support of Arima Display Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction.*

iii

## INTRODUCTION

Arima Display's opening brief established that it is not subject to jurisdiction in this Court because it has no contacts with Delaware and has directed no purposeful conduct toward Delaware. In response, rather than providing much in the way of legal analysis, Honeywell engages in a lengthy discourse "reflecting" on the difficult challenges presented by this lawsuit. (D.I. 385 at 1-5). Honeywell's complaints regarding the alleged inequity of the present situation are irrelevant to the question of whether this Court has jurisdiction over Arima Display. Moreover, what Honeywell forgets amidst its dissatisfaction with the present situation is that Honeywell chose to file a single lawsuit against numerous defendants and that Honeywell—not the named defendants—chose the forum in which to sue. Not all of the named defendants are subject to jurisdiction in Honeywell's chosen forum. Honeywell apparently is unwilling to accept the consequences of its choice of forum and even goes so far as to demand that any relief granted to LCD manufacturer defendants (such as Arima Display)—apparently regardless whether personal jurisdiction exists—should be conditioned upon this Court providing Honeywell with a "replacement defendant." (D.I. 385 at 16).

After lamenting about its general predicament, Honeywell then complains that Arima Display did not present details relevant to personal jurisdiction. Contrary to Honeywell's assertion, Arima Display did provide the relevant details. Unfortunately for Honeywell, those details establish that Arima Display is indeed, as Honeywell recognized, "a distant foreign company with no ties to Delaware." (D.I. 385 at 6). Rather than accept this reality, Honeywell insists that if only further details were provided, then personal jurisdiction could be fabricated. However, the details that

1

Honeywell seeks add nothing further to the jurisdictional analysis.[1]  Regardless of the identities of Arima Display's Asian or U.S.-based customers, the facts established in Arima Display's opening brief remain indisputable:  None of Arima Display's customers is located in Delaware; Arima Display sells and delivers title to the LCD modules that it sells to those customers in Asia (not Delaware); and Arima Display does not control what its customers do with the LCD modules or the distribution of end products which incorporate the LCD modules.  (*See generally* D.I. 370).  Moreover, Arima Display has no presence in Delaware, and Arima Display does not transact or solicit business in Delaware.  (*Id.*).  In other words, Arima Display simply has no contacts with Delaware and has not directed any purposeful conduct toward Delaware such that the exercise of jurisdiction in this forum would be proper.

Honeywell further complains that Arima Display provided insufficient detail about its parent, Arima Computer Corporation, and in particular that Arima Display did not mention Arima Computer's facility located in Houston, Texas.  Arima Display, as a subsidiary of Arima Computer, does not exert control over any aspect of Arima Computer's business.  Thus, if Honeywell is attempting to attribute conduct of Arima Computer to Arima Display based on an agency theory, such attempt is improper.  Nonetheless, to put an end to some of Honeywell's speculations, Arima Display has provided additional information about Arima Computer in Mr. Shen's Supplemental

---

[1] Mr. Shen's Supplemental Declaration provides the identities and locations of Arima Display's U.S.-based customers and Arima Display's Asian customers that manufacture end products that may be sold in the United States. (Shen Supp. Decl. at ¶¶ 3, 4).  Arima Display also has one European customer that manufactures end products that may be sold in the United States. (Shen Supp. Decl. at ¶ 5).  Although not disclosed in Arima Display's opening brief, the existence of a European customer does not change the jurisdictional analysis, since sales of LCD modules to the European customer do not occur in the United States and Arima Display does not control any of its customers' use of the LCD modules or distribution of end products which incorporate the LCD modules.

Declaration, which is being filed concurrently with this Reply. Specifically, while Arima Display has sold LCD modules to Arima Computer, those products were 2.66 inch LCD modules that Arima Computer used for internal purposes only. (Shen Supp. Decl. at ¶ 2). Contrary to Honeywell's implication, Arima Display has not sold any LCD modules to Arima Computer that were incorporated into any of Arima Computer's end products that were sold, distributed, or assembled anywhere in the United States. (*Id.*).

After Honeywell's host of complaints, Honeywell eventually reaches its legal argument and asserts that Arima Display is subject to this Court's general and specific jurisdiction because "Arima Display knows and indeed intends that its products will make their way into the United States via a well-established 'stream of commerce.'" (D.I. 385 at 11). Honeywell appears to believe that the mere act of selling an LCD module in Asia to another entity which incorporates that module in an electronic product that ends up anywhere in the United States (such as New Mexico) is sufficient to confer jurisdiction in Delaware. However, as set forth in detail in Arima Display's opening brief, neither Delaware law nor federal law supports this far-reaching proposition.

Honeywell further argues that this Court may exercise jurisdiction over Arima Display under Federal Rule of Civil Procedure 4(k)(2). Under the guise of a desire for brevity, rather than present arguments and evidence to support an exercise of jurisdiction under Rule 4(k)(2), Honeywell simply incorporates its arguments from its Opposition to ST-LCD's Motion to Dismiss. (D.I. 385 at 14). Such an approach must fail, if for none other than the fact that the factual record underlying ST-LCD's Motion to Dismiss is not the same as the factual record here.

3

Finally, Honeywell insists that it is "entitled to jurisdictional discovery from Arima Display, including its sister and parent companies doing business in the United States." (D.I. 385 at 14). Honeywell, however, has failed to make the *prima facie* showing of jurisdiction that is required before discovery may be granted. In addition, Honeywell presents no basis for demanding discovery from Arima Communications or Arima Computer (each of which are separate corporate entities and neither of which is a party to this lawsuit) whose jurisdictional conduct (should any exist) is irrelevant to the issue of this Court's exercise of jurisdiction over Arima Display.

Honeywell may be entitled to its day in court. However, because Honeywell chose to bring suit in this forum, Honeywell's case must proceed without the participation of Arima Display. Both Delaware law and federal due process require that a foreign defendant must have some contacts with Delaware to be haled into a Delaware court. Because Honeywell is basing its jurisdictional arguments on a stream of commerce theory, those contacts must be in the form of purposeful conduct directed toward Delaware. Honeywell has failed to establish any fact which shows with reasonable particularity that Arima Display has exhibited such conduct. As such, Arima Display's motion to dismiss for lack of personal jurisdiction should be granted and Honeywell's request for jurisdictional discovery should be denied.

## ARGUMENT

## I. HONEYWELL HAS NOT MADE A *PRIMA FACIE* SHOWING THAT THIS COURT HAS JURISDICTION OVER ARIMA DISPLAY.

Honeywell bears the burden of making a *prima facie* showing of jurisdiction. To satisfy this burden, Honeywell must adduce facts which "establish with reasonable particularity" contacts between Arima Display and Delaware sufficient to support a

4

finding of jurisdiction. As set forth in detail in Arima Display's opening brief, in stream of commerce cases, under both Delaware law and federal law, the analysis of a foreign defendant's contacts with the forum state generally examines whether the foreign defendant has directed purposeful conduct toward the forum. (*See generally* D.I. 370). Honeywell has not—and cannot—make a *prima facie* showing that Arima Display has exhibited such conduct. As such, Honeywell has not satisfied its burden.

Honeywell asserts that it has uncovered two facts which are sufficient to establish personal jurisdiction over Arima Display in Delaware. (D.I. 385 at 13). The facts relied upon by Honeywell are (1) a Sony Ericsson phone containing an Arima Display LCD module which was purchased on-line by someone in Albuquerque, New Mexico (D.I. 385 at Exh. H); and (2) Arima Display's website which is accessible by English-speaking people throughout the world, and which includes an alleged request for quotation form that is in *Chinese* as well as an email link to Arima Display's sales department (D.I. 385 at Exhs. E, F, G). Honeywell is mistaken that these facts support with "reasonable particularity" the contacts between Arima Display and Delaware needed to make a *prima facie* showing of jurisdiction. Indeed, the alleged quotation form attached as Exhibit F of Honeywell's Opposition is not in fact a quotation form, but a page with an error message (*i.e.*, "HTTP 404") indicating that the website cannot be found. (Shen Supp. Decl. at ¶ 6; Sangalli Decl. at ¶¶ 2, 3).

Honeywell does not explain how the purchase of a Sony Ericsson phone in Albuquerque—which is located in New Mexico, not Delaware—is a fact that supports with reasonable particularity contacts with Delaware. Given Honeywell's failure to

5

connect the dots between the New Mexico purchase and Delaware, this fact should be disregarded as irrelevant to establishing jurisdiction over Arima Display in this forum.

Honeywell overstates its case when it argues that the existence of Arima Display's website "alone is sufficient to establish personal jurisdiction over Arima Display." (D.I. 385 at 11). Notably, the case law that Honeywell cites in this section of its brief (*i.e.*, *Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 (D. Del. 2004)) does not stand for this overreaching proposition. In *Padcom*, the district court examined the circumstances under which personal jurisdiction could be based upon operation of an Internet web site and clearly concluded that "[t]he Third Circuit's test is whether the defendant 'intentionally and knowingly transacted business with residents of the forum state, *and had significant other contacts with the forum besides those generated by its web site*." *Padcom*, 2004 U.S. Dist. LEXIS 9658 at *14 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 453 (3d Cir. 2003)) (emphasis added). Indeed, in *Toy "R" Us*, the Third Circuit further explained that

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Toys "R" Us*, 318 F.3d at 454.

Perhaps grasping for those "significant other" non-Internet contacts required by the Third Circuit's test, Honeywell also attempts to make much of the fact that Arima Computer, the parent company of Arima Display, "sells all sorts of LCD-equipped devices" and has a facility located in Texas. (D.I. 385 at 9-10; Exhs. A-D). However, Arima Display does not sell or supply to Arima Computer LCD modules that are

6

incorporated into any of Arima Computer's LCD-equipped devices that are sold, distributed or assembled anywhere in the United States. (Shen Supp. Decl. at ¶ 2). Moreover, Arima Display, as a subsidiary of Arima Computer, does not control any aspect of Arima Computer's business. Thus, not only does the information that Honeywell relies on from Arima Computer's website have nothing to do with Arima Display (D.I. 385 at Exhs. A-D), but any attempt to attribute alleged jurisdictional conduct of Arima Computer to Arima Display based on an agency theory would be improper. *See Telcordia Technologies, Inc. v. Alcatel S.A.*, 2005 U.S. Dist. LEXIS 10194 at *7-8 (D. Del. 2005) (explaining that the agency theory examines the degree of control which one entity exercises over another to determine whether the controlled entity's jurisdictional actions can be attributed to the controlling entity).

In attempting to make a threshold showing of jurisdiction, Honeywell's evidence and allegations establish only that Arima Display has created a commercial web site which is minimally capable of interacting with English-speaking people throughout the world. Honeywell has not shown that the web site was directly targeted at Delaware or that Arima Display knowingly interacted with Delaware residents via its web site. Moreover, even if Honeywell could establish some interaction with a Delaware resident via the web site, such evidence alone would be insufficient to establish personal jurisdiction under the Third Circuit's test. Rather, Honeywell must present evidence of some other contact that Arima Display has with Delaware. The purchase of a Sony Ericsson phone in New Mexico is not that evidence. And, Arima Computer's presence in the United States and its sales of products which incorporate LCDs that are not

7

manufactured by Arima Display are not that evidence. As such, Honeywell has failed to make a *prima facie* showing of this Court's jurisdiction over Arima Display.

**II.    HONEYWELL IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY BECAUSE HONEYWELL HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION.**

Honeywell asserts that it is entitled to obtain jurisdictional discovery from Arima Display, Arima Computer, and Arima Communications. However, a plaintiff is entitled to jurisdictional discovery only after the plaintiff has made a *prima facie* showing that jurisdiction exists. *See, e.g., Toys R Us*, 318 F.3d at 456. *See also Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics, Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005). As discussed above, Honeywell has fallen far short of making a sufficient threshold showing of jurisdiction to warrant obtaining discovery from Arima Display. In addition, Honeywell has failed to show either the relevance of or its entitlement to discovery from Arima Computer and Arima Communications. Arima Computer and Arima Communications are corporate entities that are separate from Arima Display. Neither corporation is the agent of Arima Display and neither corporation is a party to this lawsuit. As such, Arima Computer's and Arima Communications' jurisdictional conduct—if any exists—is irrelevant to the issue of whether this Court has personal jurisdiction over Arima Display.

Because Honeywell has not alleged facts sufficient to make a *prima facie* showing of jurisdiction over Arima Display and has not established the relevance of discovery from Arima Communications or Arima Computer, Honeywell's discovery request should be denied.

8

### III.   PERSONAL JURISDICTION OVER ARIMA DISPLAY DOES NOT EXIST UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2).

Honeywell asserts that should this Court find that the Delaware long-arm statute does not confer jurisdiction over Arima Display, then this Court may exercise its jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2). Honeywell is wrong.

To establish jurisdiction pursuant to Rule 4(k)(2), (a) the case must arise under federal law; (b) the foreign defendant must lack sufficient contacts with any state to subject it to personal jurisdiction; and (c) the foreign defendant must have sufficient contacts with the United States as a whole to satisfy due process. *Telcordia Technologies, Inc. v. Alcatel S.A.*, 2005 U.S. Dist. LEXIS 10194 at *14-15 (Dist. Del. 2005). The plaintiff bears the burden of proving that the defendant is not subject to the jurisdiction of any state. *Id.* at *17-18.

Honeywell has not offered any evidence to support its contention that Arima Display is subject to this Court's jurisdiction pursuant to Rule 4(k)(2). Rather, Honeywell has alleged to the contrary, asserting that Arima Display has contacts with Delaware, or, that at a minimum, Arima Display has contacts with the United States and that those contacts are sufficient to establish jurisdiction in Delaware. Thus, Honeywell's allegations would tend to support an argument that Arima Display is subject to jurisdiction in at least some state in the United States, rather than prove (as required) that Arima Display is not subject to the jurisdiction of *any state*. As such, Honeywell's argument that jurisdiction exists under Rule 4(k)(2) is unsupportable.

9

## CONCLUSION

The purchase of a Sony Ericsson phone in New Mexico and the mere existence of an Internet web site are not facts which establish with reasonable particularity jurisdiction over Arima Display in Delaware. As such, Honeywell has failed to make a *prima facie* showing of this Court's jurisdiction over Arima Display. Honeywell's request for jurisdictional discovery should be denied and Arima Display's Motion to Dismiss for Lack of Personal Jurisdiction should be granted.


William J. Wade (#704)
Wade@rlf.com
Matthew W. King (#4566)
King@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

OF COUNSEL:

Dan C. Hu
Diana M.Sangalli
Trop, Pruner and Hu, P.C.
Suite 100
8554 Katy Freeway
Houston, TX 77024

Dated:  April 17, 2006

Attorneys for Defendant
Arima Display Corporation

10

# Unreported Cases

LEXSEE 2004 U.S. DIST. LEXIS 9658

PADCOM, INC., Plaintiff, v. NETMOTION WIRELESS, INC. and DATABASE
SOLUTIONS, INC., Defendants.

Civ. No. 03-983-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 9658*

May 24, 2004, Decided

**SUBSEQUENT HISTORY:** Summary judgment denied by *Padcom, Inc. v. Netmotion Wireless. Inc., 2006 U.S. Dist LEXIS 6548 (D. Del., Feb. 22, 2006)*

**DISPOSITION:** [*1] Defendants' motion to dismiss and to transfer denied

**COUNSEL:** Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, and Adam W. Poff, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Neil F. Greenblum, Esquire, Van C. Ernest, Esquire and Jill M. Browning, Esquire of Greenblum & Bernstein, P.L.C., Reston, Virginia

Mary B. Graham, Esquire and James W. Parrett, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: John Allcock, Esquire, M. Elizabeth Day, Esquire, William G. Goldman, Esquire and Michael G. Schwartz, Esquire of Gray, Cary Ware & Freidenrich, LLP, Palo Alto, California

**JUDGES:** Sue L. Robinson, United States District Judge

**OPINIONBY:** Sue L. Robinson

**OPINION:**

    MEMORANDUM OPINION

    Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

    On October 26, 2003, plaintiff Padcom Inc. ("Padcom") filed this patent action alleging infringement of its *United States Patent Nos. 6,418,324* ("the *'324 patent*") and 6,198,920 ("the '920 patent") by defendants NetMotion Wireless, Inc. ("NetMotion") and Database Solutions, Inc. ("DSI"). (D.I. 1) Padcom also contends that NetMotion intentionally and wrongfully interfered with [*2] contractual and business relations with potential customers.

    NetMotion has moved to dismiss based on lack of personal jurisdiction pursuant to *Fed R. Civ. P. 12(b)(2)* and improper venue under *Fed. R. 12(b)(3)*. (D.I. 9) DSI has moved to transfer the remaining portion of the litigation to the Northern District of California pursuant to *28 U.S.C. § 1404(a)* n1 Alternatively, if the court dismisses NetMotion and declines to transfer the case against DSI, defendants move to stay this action pending resolution of the California case. Padcom opposes the motion (D.I. 23, 24) and defendants' have filed their reply. (D.I. 27, 28)

            n1 On November 7, 2003, NetMotion and DSI filed a declaratory action in the Northern District of California mirroring the issues raised in this action. By order and stipulation dated December 10, 2003, the California action was stayed pending resolution of this first-filed action Net-Motion Wireless, Inc. v. Padcom, Inc., 03-cv-04963-MMC, (N.D. Ca. 2003)(D.I. 12). A case management conference is scheduled for June 18, 2004. (Id., D.I. 19)

[*3]

**II. BACKGROUND**

    **A. The parties**

    Padcom is a Pennsylvania corporation with its principal place of business in Bethlehem, Pennsylvania. Founded in 1989, Padcom is in the business of developing, making, licensing, selling and servicing software and hardware products that enhance connectivity for

wireless network uses (D I 1) The patent-in-suit relate to wireless communications and data transfers between remote devises and host systems (D I 10)

NetMotion is a corporation organized under the laws of Washington with a principal place of business in Seattle, Washington (D.I 11) NetMotion is in the business of designing, developing and selling mobility software Mobility software is client/server based software that extends the enterprise network to the mobile environment and allows mobile users on both wide area and local area networks secure access to the enterprise application and information (D.I. 10) NetMotion's corporate office, research and development facility, and engineering, sales, marketing and manufacturing facilities are all located in Seattle Of NetMotion's 53 employees, 46 reside in Washington. The other seven employees reside in Ohio, Pennsylvania, Florida, [*4] Georgia, Texas, California and Illinois. (D.I. 11) NetMotion maintains and supports a web site in Washington. The web site provides: 1) company and product information; 2) partner information; and 3) download information None of NetMotion's products are available for purchase through its website; however, free trial versions of NetMotion's software are available for download from the web site (D.I. 12)

On February 2, 2001, a predecessor of NetMotion, WRQ, Inc., entered into a Value Added Reseller ("VAR") agreement with DSI (D I 11, Ex A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey (D.I. 13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere D I 13 P 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI

## III. STANDARD OF REVIEW

Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court [*5] may dismiss a suit for lack of jurisdiction over the person According to the United States Supreme Court,

> before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be au-

thorization for service of summons on the defendant

*Omni Capital Int'l v Rudolf Wolff & Co , 484 U.S. 97, 104, 98 L Ed 2d 415, 108 S Ct 404 (1987)* The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Rule 4(e)(1) of the Federal Rules of Civil Procedure* states that service of a summons may be effected "pursuant to the law of the state in which the district court is located " The Delaware long-arm statute, *10 Del C § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due [*6] process clause n2 *LaNuova D & B S p A v Bowe Co Inc , 513 A 2d 764, 768 (Del 1986)*

> n2 According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp v Luker, 45 F 3d 1541, 1543 (Fed Cir 1995)* The Court has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process " *Graphic Controls Corp v Utah Med Prods , Inc , 149 F 3d 1382, 1386 (Fed Cir 1998)*. The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[*7]

However, since the Delaware Supreme Court has not determined that *§ 3104(c)* is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process *Intel Corp v Silicon Storage Tech , Inc , 20 F Supp 2d 690, 694 (D Del 1998)*; see generally, *Int'l Shoe Co v Washington, 326 U S 310, 90 L Ed 95, 66 S Ct 154 (1945)*.

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred

with between the forum state and defendant to support jurisdiction. n3 *Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).* To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related [*8] to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., 1999 U.S. Dist. LEXIS 12455, Civ. No. 99-218-SLR, 1999 WL 615175 (D. Del. 1999)*

n3 The record reflects that the parties have engaged in limited jurisdictional discovery (D.I. 24, Ex. A, Ex. B).

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the [*9] State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c).* The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal

service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997)*

## IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I. 10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § 3104(c)(1), (c)(4) and (c)(3). Padcom argues that § 3104(c)(1) and (c)(4), confer jurisdiction because NetMotion has repeatedly transacted and solicited business in Delaware. Specifically: (1) NetMotion shipped an [*10] infringing product to the Wilmington Police Department to enable them to evaluate the product in anticipation of a sale; (2) NetMotion has contacted Delaware residents by mail, email and telemarketing, either cold calling or in response to inquiries about the product; and (3) NetMotion operates a national interactive web site.

In opposition, NetMotion presents the affidavit of its CFO, Bob Colliton. (D.I. 12, 28) Colliton avers:

NetMotion maintains and supports a web site in the state of Washington, but none of NetMotion's products are available for purchase through NetMotion's web site. NetMotion's web site offers free trial down-loads of its software, as well as white papers that outline the capabilities of NetMotion's software products.
NetMotion has not contacted or otherwise engaged any company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware - the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer [*11] that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after

this download has any employee contacted the Wilmington Police Department NetMotion's advertising strategy is national in nature It is not directed to any particular region, state or company On occasion, NetMotion has utilized the services of a third party telemarketing organization to obtain information regarding potential customers. Prospective customers in Delaware may have been contacted by this third party organization

(D.I 12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that in January 2004, NetMotion electronically transmitted its Mobility Connection Newsletter nationwide. Over 12,000 received this [*12] material, including 23 entities in Delaware. Nonetheless, Colliton indicates that no revenue was received from the 23 emails Padcom responds that it is unnecessary to consummate a sale for jurisdictional purposes *American Bio Medica Corp v Peninsula Drug Analysis Co , Inc , 1999 U S Dist LEXIS 12455, Civ No 99-218-SLR, 1999 WL 615175 (D Del 1999)* Padcom maintains that NetMotion's activities are part of a general business plan to solicit business in Delaware

The Delaware Supreme Court has interpreted § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *LaNuova D & B S p A v Bowe Co , 513 A 2d at 768.* Section 3104(c)(4) is a general jurisdiction provision that allows the defendants contacts with the forum state to be unrelated to the cause of action. The Federal Circuit has found that when a defendant has "purposefully shipped the accused [product] into [the forum state] through an established distribution channel no more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co v Royal Sovereign Corp , 21 F 3d 1558, 1564 (Fed Cir 1994)* [*13]

The record reflects that NetMotion made trial versions of products available on its web site for downloading by consumers located anywhere There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packard as one-sided, i e , "Hewlett-Packard chose to include product information", the court interprets this as a mutually beneficial agreement

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc , v Step Two, S A , 318 F 3d 446 (3d Cir 2003).* In so doing, the Court acknowledged the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet

> Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out [*14] of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the *Due Process Clause of the Fifth Amendment* requires (1) that the "defendant have constitutionally sufficient minimum contacts with the forum," and (2) that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice,"

*Id at 451* (citations omitted); see also, *Zippo Mfg Co v Zippo Dot Com, Inc , 952 F Supp 1119 (W D Pa 1997)* (sliding scale analysis for personal jurisdictional issues in web site cases).

The Third Circuit's test is whether the defendant "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us, 318 F 3d at 453.* There, the Court considered a trademark infringement and unfair competition action filed pursuant to the Lanham Act, *15 U S C § 1501 et seq ,* and New Jersey state law. The defendant was a Spanish corporation that owns or franchises toy stores in Spain and [*15] nine other countries but none in the United States. The defendant lacked any offices, bank accounts or employees in the United States. Further, the defendant did not direct any advertising or marketing efforts in the United States The record did reflect that some merchandise for defendant's stores was purchased in the United States From defendant's Internet web site, consumers could make online purchases; however, the site clearly was intended for users outside of the United States For example, the price of items was noted in Spanish pesetas and Euros and goods ordered from the site could only be shipped within Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, n4 the Third Circuit recognized that

2004 U.S. Dist. LEXIS 9658, *

the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] that determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts.'" *Id* at 453; (quoting [*16] *Zippo, 952 F. Supp at 1127*). Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers. *Toys "R" Us, 318 F.3d at 453-454*. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state *Id at 454*.

> n4 The district court denied plaintiff the opportunity to conduct jurisdictional discovery to address the defendant's motion attacking jurisdiction.

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility [*17] software (D.I. 24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged infringing product. (Id.)

Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities n5 for contact by a third party telemarketer in the summer of 2003 (D.I. 24, Ex. A, pgs. 61-64) Additionally, NetMotion specifically targeted Delaware health care facilities. n6 NetMotion also mailed promotional materials to a targeted market of public safety organizations. n7 The documents were mailed to provide information about the products to encourage purchase. (D.I. 24, Ex. A, pgs. 44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business

> n5 The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volun-

teer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

[*18]

> n6 Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I. 24, Ex. A, p. 89, Ex. M)

> n7 These agencies were identified as: Delaware State Police (Dover), Kent County Emergency Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department (D.I. 24, Ex. A)

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the *Due Process Clause of the United States Constitution* See *Int'l Shoe Co. v Washington, 326 U.S. at 310*. Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit [*19] does not offend "traditional notions of fair play and substantial justice " *Id at 316*. In *Burger King Corp. v Rudzewicz, 471 U.S. 462, 85 L. Ed 2d 528, 105 S. Ct. 2174 (1985)*, the Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id at 475 n.18* Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, *World-Wide Volkswagen Corp v Woodson, 444 U.S. 286, 291-293, 62 L. Ed 2d 490, 100 S Ct 559 (1980)*; 2) the burden imposed on the defendant by litigating in that forum, *Asahi Metal Industry Co v Superior Court of California, 480 U.S. 102, 94 L. Ed 2d 92, 107 S. Ct 1026 (1987)*; and 3) plaintiff's interest in the forum state, id.; see also, *Provident National Bank v California Federal Savings & Loan Assoc., 819 F.2d at 437* (Third Circuit held that plaintiff must show significantly more than

mere minimum contacts to establish [*20] general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packard enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

## V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404(a)*, n8 arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc., 157 F.R.D. 215 (D. Del. 1993).* NetMotion n9 argues that the court should transfer the case to the United States District Court for the District of Washington.

n8 Title 28, Section § *1404(a)* provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[*21]

n9 NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. *NetMotion Wireless Inc. v. Padcom, Inc., 04-cv-622-JCC (W.D. Wa. 2004).* Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. (Id., D.I. 1) On April 27, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. (Id., D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. (Id., D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to en-

join prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a *Rule 16* Conference. (D.I. 33)

Congress intended through § *1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience [*22] and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).* The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert. denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971)).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, Civ. No. 01-199-SLR, 2001 WL 1617186 (D. Del. 2001)* [*23] Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only [*24] to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly

2004 U.S. Dist. LEXIS 9658, *

limited to the extent that the files could not be produced in the alternative forum)" Id. (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle, Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established [*25] on the jurisdictional discov-

ery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

## VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I. 9) is denied. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 24th day of May, 2004, consistent with the memorandum opinion issued concomitantly,

IT IS ORDERED that:

1. Defendants' motion to dismiss and to transfer is denied. (D.I. 9)

2. Defendants shall file their Answer on or before June 11, 2004.

Sue L. Robinson

United States District Judge

LEXSEE 2005 U.S. DIST. LEXIS 10194

TELCORDIA TECHNOLOGIES, INC., Plaintiff, v. ALCATEL S.A. and
ALCATEL USA, INC., Defendants.

Civil Action No. 04-874 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 10194*

May 27, 2005, Decided

**COUNSEL:** [*1] For Telcordia Technologies Inc., Plaintiff: Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE.

For Alcatel S.A., Defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Alcatel USA Inc., Defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Alcatel USA Inc., Counter Claimant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Kevin M. Baird, Connoly Bove Lodge & Hutz, Wilmington, DE.

For Telcordia Technologies Inc., Counter Defendant: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this patent infringement action against Alcatel S.A. ("Alcatel S.A.") and Alcatel USA, Inc. ("Alcatel USA"). Presently before the court is Alcatel S.A.'s motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will grant the motion.

**II. BACKGROUND**

Alcatel S.A. is a French corporation [*2] with its principal place of business in Paris, France. Alcatel S.A. is the parent company of Alcatel USA, a Delaware corporation with its principal place of business in Plano, Texas. (D.I. 18 Ex. 2 PP 2-3.) It is a holding company that does not manufacture, sell, advertise, offer to sell, trade or import any goods or services in the United States or anywhere in the world. (Id. PP 3-5.) It does not maintain any offices or other facilities in Delaware, or the United States. (Id. P 7.) It neither owns nor leases any real property in Delaware or the United States, but it does own United States patents. (Id. P 8.) Alcatel S.A. does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. (Id. PP 9-10.)

Telcordia, a Delaware Corporation with its principal place of business in Piscataway, New Jersey, is the assignee and owner of the patent-in-suit, *U.S. Patent No. 4,893,306* (the "'306 patent") n1 The *'306 patent* relates to a method and apparatus for multiplexing circuit and packet traffic. The patent discloses a data transmission technique, [*3] or Dynamic Time Division Multiplexing ("DTDM"), that is compatible with the digital circuit transmission format, as well as the packet transmission format, thereby providing "a flexible migration strategy between present circuit networks and future broadband packet networks." (*U.S. Patent No. 4,893,306* Abstract.) The complaint alleges that Alcatel S.A. and Alcatel USA have infringed, induced infringement of, and/or contributorily infringed one or more claims of the *'306 patent* by making, using, offering for sale, selling and/or importing into the United States communication network products embodying the patented invention. (D.I. 1 PP 13-14.)

n1 The *'306 patent* was issued on January 9, 1990 and assigned to Bell Communications Research, Inc. ("Bellcore"), which became Telcordia in 1999.

## III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack of personal jurisdiction over the defendant. "*Rule 12(b)(2) of the Federal Rules of Civil Procedure* [*4] requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, 197 F.R.D. 112, 119 (D.Del 2000)* In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aereos de Angola v. Ronair, Inc., 544 F. Supp. 858 at 864-65 (D. Del. 1982).* If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the *Due Process Clause of the Fourteenth Amendment. Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs., 948 F. Supp. 338, 342 (D. Del. 1996)* (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions [*5] of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)* (citation omitted). Specifically, Telcordia must show that Alcatel S.A. "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)*); *see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).* Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)*

In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F. Supp. 53, 55 (D. Del. 1982).* However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Alcatel S.A. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268, 270-71 (D. Del. 2001)* [*6] To meet this burden, Telcordia must adduce facts which "'establish with reasonable particularity'" that jurisdiction over Alcatel S.A. exists. *Id.* (quoting *Joint*

*Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 193 (D. Del. 1996))*

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, *Del. Code Ann. tit. 10 § 3104*, warrant the exercise of jurisdiction over Alcatel S.A.. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections *(c)(1)* and *(c)(3)* of the long-arm statute.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." *DEL. CODE ANN. tit. 10 § 3104(c)(1).* Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission [*7] in this State." *DEL. CODE ANN. tit. 10 § 3104(c)(3).* Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997).* The Delaware Supreme Court has interpreted subsections *(c)(1)* and *(c)(3)* as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See La Nuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986).* In order to meet the requirements of subsections *(c)(1)* and *(c)(3)*, Alcatel S.A.'s actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. v. Micron Technology, 821 F. Supp. 272, 274 (D. Del. 1993).*

Telcordia asserts that the court should exercise jurisdiction under *§ 3104(c)(1)* and/or *(c)(3)* because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of [*8] agency. n2. The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard Inc. v. Guidant Corp., 997 F. Supp. 556, 559 (D. Del. 1998)* (citing *Mobil Oil Corp. v. Linear Films, Inc., 718 F. Sup. 260, 266 (D. Del. 1989)).* Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1463 (D. Del. 1991).*

The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the division of responsibility for day-to-day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.* If the court determines that an agency relationship exists, it may attribute certain [*9] actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether Telcordia has satisfied the requirements of the long-arm statute. *See id.* However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute. *See id. at 1465* ("[A] finding of agency does not render the long-arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

> n2 Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1463 (D. Del. 1991).* Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.; see Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 266 (D. Del. 1989).* Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

[*10]

Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one." (D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries - that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chooses to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id. at 3-5, 10.*) Telcordia further contends that,"at the very least," Alcatel USA has offered to sell in Delaware products accused of infringing the '306 patent and, therefore, transacts business in the state. In addition, because Alcatel USA committed these [*11] acts as Alcatel S.A.'s agent, they are attributable to Alcatel S.A. (D.I. 20, at 10.)

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day-to-day management between the two, and the process by which each corporation obtains its business. After having considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; *D.I. 22 P 6.*) This minor overlap, however, is not dispositive, [*12] as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998)* (citations omitted) (noting that it is "well established principle . . . that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 PP 3-5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard, 997 F. Supp. at 561.* In addition, Alcatel USA maintains its own executive team, which is responsible for the day-to-day management of Alcatel USA, and no employee of [*13] Alcatel S.A. is a member of the executive team of Alcatel USA. (*D.I. 22 P 5.*) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (*D.I. 22 P 10.*) Alcatel USA files a

Case 1:04-cv-01338-JJF    Document 405    Filed 04/17/2006    Page 27 of 32

Page 4
2005 U.S. Dist. LEXIS 10194, *

consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id. P 12.*) Alcatel USA finances its day-to-day activities through funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id. P 13.*) Accordingly, the court finds that while there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections *(c)(1)* and *(c)(3)* do not warrant the exercise of jurisdiction over Alcatel S.A. n3

> n3 The court need not address whether jurisdiction in Delaware comports with the requirements of the *Due Process Clause* because it has no statutory authority under the Delaware long-arm statute to exercise jurisdiction over Alcatel S.A.

[*14]

**B. *Federal Rule of Civil Procedure 4(k)(2)***

Telcordia next asserts that, even if the Delaware long-arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to *Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2)* provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

*FED. R. CIV. P. 4(k)(2).* In order to establish jurisdiction pursuant to *Rule 4(k)(2)*, (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States [*15] as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp. 229 F.3d 254, 258-59 (3d Cir. 2000).* Telcordia contends that all three requirements of *Rule 4(k)(2)* are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily infringed the *'306 patent.* Patents and the protection of patent rights are the subject of Title 35 of the United States Code. *35 U.S.C. § 271* specifically provides the elements of patent infringement. Additionally, *28 U.S.C. § 1338* gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises under federal law. Telcordia has thus satisfied the first requirement of *Rule 4(k)(2).*

Having found that the first requirement of *Rule 4(k)(2)* is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd., 179 F.R.D. 156, 160, 38 V.I. 422 (D.V.I. 1998); Revak v. Locatum A.B., 2005 U.S. Dist. LEXIS 11076, No. Civ. A. 03-4822, 2005 WL 1017771, at \*2 (E.D. Pa. Apr. 28, 2005).* [*16] As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.,* the United States District Court for the District of the Virgin Islands noted that "the question [of] which party bears the burden of proving . . . that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction." *Offshore Marine Ltd., 179 F.R.D. at 160.* Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 47 Fed. Appx. 73, 75 (3d Cir. 2002)* (unpublished) (determining that negation issues need not be reached because the Due Process requirement of *Rule 4(k)(2)* was [*17] not satisfied). n4 Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd., 179 F.R.D. at 160* ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A.L. 'Energie Atomique v. Chi Mei Optoelectronics Corp., 293 F.Supp. 2d 423, 430 (D. Del. 2003), vacated on other grounds by 395 F.3d 1315 (Fed. Cir. 2005)* (issue abandoned on appeal) ("Plaintiffs must also demonstrate that defendant is 'not subject to the jurisdiction of *any* state' under *Rule 4(k)(2).* Therefore, *Rule 4(k)(2)* "provides 'a narrow exception which

may subject an alien defendant to a federal court's jurisdiction."') The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject to [*18] to jurisdiction in any state.

n4 Likewise, it appears that the Federal Circuit has not had occasion to address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then *Rule 4(k)(2)* applies. (*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement [*19] of *Rule 4(k)(2).*

Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of *Rule 4(k)(2)* because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process. *The Due Process Clause* requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play'" *See International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*(citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 (1984).* The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed its activities at residents of the forum and the litigation [*20] results from alleged injuries that 'arise out of or related to' those activities." *Burger King, 471 U.S. at 472* (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum,

regardless of their relation to the litigation, are "continuous and systematic." *Helicopteros Nacionales, 466 U.S. at 416.* The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give rise to specific jurisdiction, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *BP Chems., 229 F.3d at 259* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286).* In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)* [*21] Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with that activity. *See Burger King, 471 U.S. at 475-76.* In the present case, however, the court need not make this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, as discussed in Section IV.A., *supra,* do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S.A.'s website fails to distinguish [*22] among its multinational subsidiaries and uses its name in the name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in

2005 U.S. Dist. LEXIS 10194, *

Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. *See Presbyterian Church of Sudan v Talisman Energy, Inc., 244 F. Supp. 2d 289, 330 (S.D.N.Y. 2003)*; [*23] *Doe v Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)*("The Court is not persuaded that Congress intended for the courts to assert jurisdiction under *Rule 4(k)(2)* whenever a corporation lists its stock on a United States exchange."). Likewise, "ownership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia." *Advanced Cardiovascular Sys., Inc. v Medtronic, Inc., 1996 U.S. Dist. LEXIS 11696, No. C-95-3577 DLJ, 1996 WL 467293, at *6 n. 5 (N.D. Cal. July 24, 1996)* (citing *35 U.S.C. § 293*). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. *See Applied Biosystems, 772 F. Supp. at 1468.* Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via [*24] its web site." *Toys "R" Us, Inc. v Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003).* Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States. n5

> n5 Telcordia asserts that there can be "no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing products) from Delaware residents, pointing to a "website page concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with [*25] Telcordia's assertion that Alcatel's website "never discloses that its U.S. activities are performed by some entity (or entities)

other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country/region the web address changes from "www.alcatel.com" to "www usa alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects "Alcatel in the U.S.A.," he or she is provided with information regarding Alcatel USA, including its business locations. Moreover, the web page states "it is the policy of *Alcatel USA* to satisfy the expectation of our                                          customers " www.usa.alcatel.com/company/ausa_info.jhtml     (last visited May 23, 2005)(emphasis added). Thus, the Alcatel web site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis [*26] to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd v Formosa Chemical & Fibre Corp., 229 F.3d 254 (3d Cir. 2000)* is instructive on this point. In *BP Chemicals,* the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of *Rule 4(k)(2)* jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id. at 263.* The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of those alleged by the plaintiff in *BP Chemicals.* As such, the court finds that there is no basis for exercising *Rule 4(k)(2)* jurisdiction over Alcatel S.A.

## C. Jurisdictional Discovery

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute,* [*27] " it should permit limited jurisdictional discovery rather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11)(emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the personal jurisdiction issue.

Conversely, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia

has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware." (D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that Plaintiff (1) did not know which entities in the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them." (*Id* at 17.) According to Alcatel S.A., Telcordia has had prior business interactions with Alcatel entities regarding the patent-in-suit, as well as other communications technology (*Id* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most [*28] knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market." (*Id* at 1.) Thus, it "is hard to believe that it [Telcordia] does not know exactly who the relevant players in the market are." (*Id*.) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." (*Id* at 18-19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist Iowa, 482 U.S. 522, 546, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987)*). The court is persuaded by Alcatel S.A.'s argument.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir 2003)* (internal citations omitted). Thus, resolution of Telcordia's request [*29] "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. Oct. 5, 1995)* However, "the court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id. at 475.* For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id. at 476.* Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997); see B.L. Poe v. Babcock Int'l, 662 F. Supp. 4, 7 (M.D. Pa Mar. 14, 1985)* ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order

to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction [*30] over [a] defendant might exist before allowing discovery to proceed." *Hansen, 163 F.R.D. at 475* Furthermore, "when the lack of personal jurisdiction is clear, . . . further discovery serves no purpose and should be denied." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 338 (Fed. Cir. 2003)* (unpublished)

Here, as previously discussed in Section IV.A., *supra*, the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court could exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long-arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's request for jurisdictional discovery would amount to allowing it to conduct a fishing expedition in order to form a basis for jurisdiction. The court, therefore, will deny [*31] Telcordia's request for jurisdictional discovery.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

> 1. Alcatel S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 17) is GRANTED.

> 2. Telcordia's request for jurisdictional discovery is DENIED.

Dated: May 27, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 17, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following, and the document is available for viewing and downloading from CM/ECF, and the document has also been served as indicated:

### <u>BY HAND</u>

Thomas C. Grimm, Esquire
Leslie A. Polizoti, Esquire
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tgrimm@mnat.com
lpolizoti@mnat.com

Adam Wyatt Poff, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899
apoff@ycst.com

Thomas L. Halkowski, Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Francis DiGiovanni, Esquire
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
fdigiovanni@cblh.com

Richard L. Horwitz, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
rhorowitz@potteranderson.com

Arthur G. Connolly, III, Esquire
Connolly Bove Lodge & Hutz
8th Floor, The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
aconnollyIII@cblh.com

RLF1-2987483-2

David E. Moore, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
dmoore@potteranderson.com

Frederick L. Cottrell, III, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
cottrell@rlf.com

Philip A. Rovner, Esquire
Potter Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
provner@potteranderson.com

John W. Shaw, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899
jshaw@ycst.com

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899
marsden@fr.com

Amy Evans, Esquire
Cross & Simons, LLC
Suite 1001, 913 N. Market Street
P.O. Box 1380
Wilmington, DE 19899
aevans@crosslaw.com

Robert J. Katzenstein, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
rkatzenstein@skdelaware.com

David J. Margules, Esquire
Bouchard, Margules, Friedlander
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
dmargules@BMF-law.com

Karen L. Pascale, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
Wilmington, DE 19899
kpascale@ycst.com

Monte Terrell Squire, Esquire
Young, Conaway, Stargatt & Taylor
17th Floor, The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899
msquire@ycst.com

William J. Wade (#704)

Dated: April 17, 2006