# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

July 14, 2006

The Honorable Kent A. Jordan**Via Electronic Filing**
United States District Court for the District of Delaware
844 King Street, Lockbox 10
Wilmington, DE 19801

     Re:   *Honeywell International Inc., et. al., v. Apple Computer, Inc., et. al.*
             C.A. No. 04-1338 (KAJ) (Consolidated)

Dear Judge Jordan:

     We represent the Honeywell parties in this matter. We write with respect to the majority of the LCD Manufacturer Defendants' refusal to provide documents and information going to the heart of Honeywell's infringement claim.

     Specifically, most defendants have refused to answer key interrogatories and document requests directed to all LCD modules made by them that use "substantially the same structure" (the phrase used in the Court's October 7, 2005 Order) as the modules previously identified by Honeywell as infringing. This letter sets forth the basic contours of the present dispute. However, because the defendants' refusal to respond to this discovery threatens to severely and perhaps irreparably prejudice Honeywell's ability to pursue its infringement claim, Honeywell respectfully requests the opportunity to brief fully the legal and factual arguments briefly summarized below.

     The defendants' refusal to provide discovery is based on three unsupportable objections. **First,** Honeywell asked the LCD Manufacturer Defendants to identify, and then provide technical and financial information regarding, all LCD modules which use "substantially the same structure" as those previously identified; i.e., those that include a light source, an LCD panel, and two lens arrays, one of which is misaligned (the "Accused Structure"). This definition provides straightforward, objective criteria by which any LCD module manufacturer can easily identify which LCD modules fall under Honeywell's infringement allegations. The defendants argue that such discovery goes beyond the scope of the case insofar as Honeywell has not first identified, by model number, each such module; they also argue it is unduly burdensome for them to produce information on modules which meet these select criteria.

     However, the requested discovery was crafted in view of prior guidance from the Court. The Court has determined that Honeywell is entitled to information regarding modules with "substantially the same structure." October 7, 2005 Order, ¶ 1(c). In the hearing leading up to

The Honorable Kent A. Jordan
July 14, 2006
Page 2

this Order, the Court approved of Honeywell's identification of criteria to be used to determine whether a module was substantially the same:

> THE COURT: [ . . . ] what do you mean when you say "similar?"
> MR. LUECK: Right. Here is what I mean when I say "similar," Your Honor. A light source, an LCD panel, two lens arrays, one of which is misaligned.
> THE COURT: If you want to say, if you want to frame your discovery in a manner that incorporates your specific allegations of infringement, fine.
> MR. LUECK: That is exactly what we're asking for. And that we would frame it exactly that way.
> THE COURT: All right. Does everybody understand the discovery I'm telling them they're entitled to?

September 9, 2005 hearing transcript, page 31. When the original customer defendants largely could not provide this information, Honeywell focused its discovery efforts upon the current manufacturer defendants, seeking information *only* on modules which meet the criteria stated at the hearing and in the Order. Thus, while the defendants attempt to avoid the consequences of their infringement by crying "fishing expedition," Honeywell's focused discovery extends only to products with substantially the same structure (defined using non-subjective criteria) as those that Honeywell has already analyzed and considers to be infringing. In a further effort to alleviate any claimed burdens on the defendants, Honeywell has offered to purchase from each defendant a sample of each of their modules and perform the above-noted evaluation itself. Only one defendant has agreed to such an arrangement.

The LCD Manufacturer Defendants are the only ones in possession and control of the basic information about the LCD modules at issue that Honeywell is seeking. Indeed, these defendants were brought into the case specifically because of their superior knowledge regarding the structure of their products, as compared with their customers -- the original defendants in this case. *See, e.g.,* May 16, 2005 status conference transcript at 17-18 (statements of Counsel for Seiko Epson). For the LCD Manufacturer Defendants to now refuse to provide discovery regarding their modules vitiates the purpose of the Court ordering them brought into the litigation — *i.e.,* their ability and presumed desire to defend their products on behalf of the original defendants who are their customers. These defendants have no legitimate practical or legal basis for refusing to respond to Honeywell's discovery.

Not only are the Manufacturer Defendants best positioned to provide the requested discovery, but without it, Honeywell will be severely prejudiced because it has no other way to obtain the evidence critical to its infringement claims. This is true for a number of practical reasons, including:

- LCD modules can generally be obtained only by purchasing the consumer electronic products containing them. But there is no way when purchasing a retail product to know which brand LCD module is used in it, let alone which *model* LCD module is in it.

The Honorable Kent A. Jordan
July 14, 2006
Page 3

- In the electronics industry, it is common for new models of consumer products to be brought to market, and relatively recent models to be discontinued, frequently. The same is true for the LCD modules within them.

- Older model modules, sold within the relevant statute of limitations period, are often not available for purchase.

Thus, while Honeywell was able to gather evidence of widespread patent infringement by purchasing and tearing down many dozens of electronics products before suit, it is highly impractical, if not literally impossible, for Honeywell to locate (and ultimately be compensated for) all infringing products without the aid of discovery. *See, e.g., I.P. Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427, 429 (N.D. Ill. 2003) (In litigation involving industry with rapidly changing model numbers, defendant ordered to provide discovery on all models which met certain criteria).

**Second,** a majority of the LCD Manufacturer Defendants have refused to provide discovery based on the presumed viability of a collection of affirmative defenses, such as: the alleged fact that modules are sold outside of the United States and thus outside of the reach of U.S. patent laws (35 U.S.C. §271); time limitation on damages; and alleged licensing. Such positions put the proverbial cart before the horse — effectively converting legal defenses into discovery shields. Moreover, in the context of the original defendants' earlier claim that it is the LCD Manufacturer Defendants who have the ability to provide the requested information, the use of these defenses as a shield to discovery represents a bait and switch approach to discovery that both deprives Honeywell of information to which it is been entitled and defeats the purpose of bringing the LCD Manufacturer Defendants into the litigation in the first instance.

**Third,** a majority of the LCD Manufacturer Defendants have objected to producing information about their products until after the claims of the patent-in-suit (the "'371 Patent") have been construed. This position similarly gets the order and purpose of discovery all wrong. Indeed, Honeywell is unaware of any precedent allowing the defendants to avoid infringement discovery until after the claim construction process is complete. The effrontery of this objection is exacerbated by the fact that the claim at issue here is not unduly complicated.

Ultimately, if the defendants fail to answer Honeywell's requested discovery, Honeywell will have been whipsawed between the original defendants' claimed inability to defend this action and the LCD Manufacturer Defendants' feigned willingness to do so. Particularly in light of the lengths to which Honeywell is willing to go to alleviate any claimed burdens associated with the requested discovery, such a result would not be just, fair, or an efficient administration of justice. *See, e.g., Hallco v. Foster*, 947 F.3d 469, 479-80 (Fed. Cir. 1991) (recognizing potential for *res judicata* where "new" infringement assertion is brought against device existing at the time of an earlier suit).

The Honorable Kent A. Jordan
July 14, 2006
Page 4

                                          Respectfully,

                                          */s/ Thomas C. Grimm*

                                          Thomas C. Grimm (#1098)

cc:    Dr. Peter T. Dalleo, Clerk (by hand)
        CM/ECF list (by e-filing)