EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and<br>HONEYWELL INTELLECTUAL PROPERTIES INC.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE COMPUTER, INC.; ALL AROUND CO., LTD.,<br>ARGUS A/K/A HARTFORD COMPUTER GROUP, INC.;<br>ARIMA DISPLAY; AU OPTRONICS CORP.; AU<br>OPTRONICS CORPORATION AMERICA; BOE<br>TECHNOLOGY GROUP COMPANY LTD.; BEIJING BOE<br>OPTOELECTRONICS TECHNOLOGY CO., LTD.; BOE--<br>HYDIS TECHNOLOGY CO., LTD.; CASIO COMPUTER<br>CO., LTD.; CASIO, INC.; CITIZEN SYSTEMS EUROPE;<br>CITIZEN SYSTEMS AMERICA CORPORATION;<br>CONCORD CAMERAS; DELL INC.; EASTMAN KODAK<br>COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO<br>FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU<br>AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF<br>AMERICA, INC.; HANNSTAR DISPLAY<br>CORPORATION; HITACHI, LTD.;  HITACHI DISPLAYS,<br>LTD.; HITACHI DISPLAY DEVICES, LTD.; HITACHI<br>ELECTRONIC DEVICES (USA), INC.; INNOLUX<br>DISPLAY CORPORATION; INTERNATIONAL DISPLAY<br>TECHNOLOGY; INTERNATIONAL DISPLAY<br>TECHNOLOGY USA, INC.; KONINKLIJKE PHILIPS<br>ELECTRONICS N.V.; PHILIPS CONSUMER<br>ELECTRONICS NORTH AMERICA; PHILIPS<br>ELECTRONICS NORTH AMERICA CORPORATION;<br>KYOCERA WIRELESS CORP.; MATSUSHITA<br>ELECTRICAL INDUSTRIAL CO.; MATSUSHITA<br>ELECTRICAL CORPORATION OF AMERICA; NAVMAN<br>NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS<br>CORPORATION; OLYMPUS AMERICA, INC.; PENTAX<br>CORPORATION; PENTAX U.S.A., INC.; PICVUE<br>ELECTRONICS LIMITED; QUANTA DISPLAY INC.;<br>SAMSUNG SDI CO., LTD; SAMSUNG SDI AMERICA,<br>INC.; SONY CORPORATION; SONY CORPORATION OF<br>AMERICA; SONY ERICSSON MOBILE<br>COMMUNICATIONS AB; SONY ERICSSON MOBILE<br>COMMUNICATIONS (USA) INC.; ST LIQUID CRYSTAL<br>DISPLAY CORP.; TOPPOLY OPTOELECTRONICS | C.A. No. 04-1338-KAJ<br>(Consolidated)<br><br>JURY TRIAL DEMAND |

CORP.; TOSHIBA CORPORATION; TOSHIBA )
AMERICA, INC.; WINTEK CORP.; WINTEK ELECTRO- )
OPTICS CORPORATION; WISTRON CORPORATION; )
and M-DISPLAY OPTRONICS CORP., )
                                              )
                 Defendants. )

## <u>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Pursuant to the Court's October 7, 2005 Memorandum Order (D.I. 237), Plaintiffs, for their Second Amended Complaint against Defendants, hereby allege as follows:

### <u>Nature of the Action</u>

1.     This is an action for the willful infringement of a United States patent.

### <u>The Parties</u>

2.     Plaintiff Honeywell International Inc. ("Honeywell International") is a corporation organized and existing under the laws of Delaware with its principal place of business in Morristown, New Jersey.

3.     Plaintiff Honeywell Intellectual Properties Inc. ("HIPI") is a corporation organized and existing under the laws of Arizona with its principal place of business in Tempe, Arizona. (Honeywell International and HIPI will be referred to collectively as "Honeywell.")

4.     Upon information and belief, Defendant Apple Computer, Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California.

5.     Upon information and belief, Defendant All Around Co., Ltd. ("All Around") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

6.     Upon information and belief, Defendant Argus, A/K/A Hartford Computer Group, Inc. ("Argus") is an Illinois corporation with its principal place of business in Inverness, Illinois.

7.    Upon information and belief, Defendant Arima Display ("Arima Display") is a Taiwan corporation having its principal place of business in Kaohsiung, Taiwan.

8.    Upon information and belief, Defendant AU Optronics Corp. ("AUO Taiwan") is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.

9.    Upon information and belief, Defendant AU Optronics Corporation America ("AUO America") is a California corporation having its principal place of business in Round Rock, Texas.  (AUO Taiwan and AUO America will be referred to collectively as "AUO.")

10.    Upon information and belief, Defendant BOE Technology Group Company Ltd. ("BOE Technology") is a China corporation having its principal place of business in Beijing, China.

11.    Upon information and belief, Defendant Beijing BOE Optoelectronics Technology Co., Ltd. ("BOE Optoelectronics") is a China corporation having its principal place of business in Beijing, China.

12.    Upon information and belief, Defendant BOE-Hydis Technology Co., Ltd. ("BOE-Hydis") is a South Korea corporation having its principal place of business in Gyeonggi-do, South Korea.  (BOE Technology, BOE Optoelectronics, and BOE-Hydis will be referred to collectively as "BOE.")

13.    Upon information and belief, Defendant Casio Computer Co., Ltd. ("Casio Computer") is a Japan corporation having its principal place of business in Tokyo, Japan.

14.    Upon information and belief, Defendant Casio Inc. ("Casio U.S.") is a New York corporation having its principal place of business in Dover, New Jersey.  (Casio Computer and Casio U.S. will be referred to collectively as "Casio.")

15.    Upon information and belief, Defendant Citizen Systems Europe is a United Kingdom corporation having its principal place of business in Middlesex, United Kingdom.

16.    Upon information and belief, Defendant Citizen Systems America Corporation ("Citizen Systems America") is a California corporation having its principal place of business in Torrance, California. (Citizen Systems Europe and Citizen Systems America will be referred to collectively as "Citizen Systems.")

17.    Upon information and belief, Defendant Concord Cameras ("Concord") is a Florida corporation having its principal place of business in Hollywood, Florida.

18.    Upon information and belief, Defendant Dell Inc. ("Dell") is a Delaware corporation having its principal place of business in Round Rock, Texas.

19.    Upon information and belief, Defendant Eastman Kodak Company ("Kodak") is a New Jersey corporation having its principal place of business in Rochester, New York.

20.    Upon information and belief, Defendant Fuji Photo Film Co., Ltd. ("Fuji Photo Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

21.    Upon information and belief, Defendant Fujifilm Photonix Co., Ltd. ("Fujifilm Photonix") is a Japan corporation having its principal place of business in Miyagi, Japan. Fujifilm Photonix is a subsidiary of Fuji that manufactures LCD modules.

22.    Upon information and belief, Defendant Fuji Photo Film U.S.A., Inc. ("Fuji Photo U.S.A.") is a New York corporation having its principal place of business in Valhalla, New York. (Fuji Photo Japan, Fujifilm Photonix, and Fuji Photo U.S.A. will be referred to collectively as "Fuji.")

23.    Upon information and belief, Defendant Fujitsu Limited ("Fujitsu Japan") is a Japan corporation having its principal place of business in Kanagawa, Japan.

24.    Upon information and belief, Defendant Fujitsu America, Inc. ("Fujitsu America") is a California corporation having its principal place of business in Sunnyvale, California.

25.    Upon information and belief, Defendant Fujitsu Computer Products of America, Inc. ("Fujitsu Computer") is a California corporation having its principal place of business in San Jose, California. (Fujitsu Japan, Fujitsu America, and Fujitsu Computer will be referred to collectively as "Fujitsu.")

26.    Upon information and belief, Defendant HannStar Display Corporation ("HannStar") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

27.    Upon information and belief, Defendant Hitachi, Ltd. ("Hitachi Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

28.    Upon information and belief, Defendant Hitachi Displays, Ltd. ("Hitachi Displays") is a Japan corporation having its principal place of business in Tokyo, Japan.

29.    Upon information and belief, Defendant Hitachi Display Devices, Ltd. ("Hitachi Display Devices") is a Japan corporation having its principal place of business in Mobara-shi, Japan.

30.    Upon information and belief, Defendant Hitachi Electronic Devices (USA), Inc. ("Hitachi Display US") is a Delaware corporation having its principal place of business in Greenville, South Carolina.   (Hitachi Japan, Hitachi Displays, Hitachi Display Devices, and Hitachi Display US will be referred to collectively as "Hitachi.")

31.    Upon information and belief, Defendant Innolux Display Corporation ("Innolux") is a Taiwan corporation having its principal place of business in Chu-nan, Taiwan.

32.    Upon information and belief, Defendant International Display Technology ("ID Tech Japan") is a Japan corporation having its principal place of business in Siga-ken, Japan.

33.    Upon information and belief, Defendant International Display Technology USA, Inc. ("ID Tech USA") is a Delaware corporation having its principal place of business in San Jose, California.  (ID Tech Japan and ID Tech USA will be referred to collectively as "ID Tech.")

34.    Upon information and belief, Defendant Koninklijke Philips Electronics N.V. ("Philips Netherlands") is a Netherlands corporation having its principal place of business in Eindhoven, Netherlands.

35.    Upon information and belief, Defendant Philips Consumer Electronics North America ("Philips Consumer N.A.") is a Delaware corporation having its principal place of business in Atlanta, Georgia.

36.    Upon information and belief, Defendant Philips Electronics North America Corporation ("Philips N.A.") is a Delaware corporation having its principal place of business in New York, New York.  (Philips Netherlands, Philiips Consumer N.A., and Philips N.A. will be referred to collectively as "Philips.")

37.    Upon information and belief, Defendant Kyocera Wireless Corp. ("Kyocera Wireless") is a California corporation having its principal place of business in San Diego, California.

38.    Upon information and belief, Defendant Matsushita Electrical Industrial Co. ("Matsushita Japan") is a Japan corporation having its principal place of business in Osaka, Japan.

39.    Upon information and belief, Defendant Matsushita Electrical Corporation of America ("Matsushita America") is a Delaware corporation having its principal place of business in Secaucus, New Jersey.  (Matsushita Japan and Matsushita America will be referred to collectively as "Matsushita.")

40.    Upon information and belief, Defendant Navman NZ Limited ("Navman New Zealand") is a New Zealand corporation having its principal place of business in Auckland, New Zealand.

41.    Upon information and belief, Defendant Navman U.S.A., Inc. ("Navman U.S.") is a Delaware corporation having its principal place of business in Acton, Massachusetts. (Navman New Zealand and Navman U.S. will be referred to collectively as "Navman.")

42.    Upon information and belief, Defendant Olympus Corporation ("Olympus Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

43.    Upon information and belief, Defendant Olympus America, Inc. ("Olympus America") is a New York corporation having its principal place of business in Melville, New York. (Olympus Japan and Olympus America will be referred to collectively as "Olympus.")

44.    Upon information and belief, Defendant Pentax Corporation ("Pentax Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

45.    Upon information and belief, Defendant Pentax U.S.A., Inc. ("Pentax U.S.A.") is a Delaware corporation having its principal place of business in Golden, Colorado.  (Pentax Japan and Pentax U.S.A. will be referred to collectively as "Pentax.")

46.    Upon information and belief, Defendant Picvue Electronics Limited. ("Picvue") is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.

47.    Upon information and belief, Tech-Well (Shanghai) Display Co. ("Tech-Well") is a China corporation having its principal place of business in Shanghai, China. Tech-Well is a subsidiary of Quanta that manufactures LCD modules.

48.    Upon information and belief, Defendant Quanta Display Inc. ("Quanta Display") is a Taiwan corporation having its principal place of business in Taoyuan, Taiwan. (Techwell and Quanta Display will be referred to collectively as "Quanta Display.")

49.    Upon information and belief, Defendant Samsung SDI Co., Ltd. ("SDI Korea") is a South Korea corporation having its principal place of business in Seoul, South Korea.

50.    Upon information and belief, Defendant Samsung SDI America, Inc. ("SDI America") is a California corporation having its principal place of business in Rancho Dominguez, California. (SDI Korea and SDI America will be referred to collectively as "Samsung SDI.")

51.    Upon information and belief, Defendant Sony Corporation ("Sony Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

52.    Upon information and belief, Defendant Sony Corporation of America ("Sony America") is a New York corporation having its principal place of business in New York, New York. (Sony Japan and Sony America will be referred to collectively as "Sony.")

53.    Upon information and belief, Defendant Sony Ericsson Mobile Communications AB ("Sony Ericsson England") is an England corporation having its principal place of business in London, England.

54.    Upon information and belief, Defendant Sony Ericsson Mobile Communications (USA) Inc. ("Sony Ericsson USA") is a Delaware corporation having its principal place of

business in Research Triangle Park, North Carolina. (Sony Ericsson England and Sony Ericsson USA will be referred to collectively as "Sony Ericsson.")

55.    Upon information and belief, Defendant ST Liquid Crystal Display Corp. ("ST-LCD") is a Japan corporation having its principal place of business in Aichi, Japan.

56.    Upon information and belief, Toppoly Nanjing is a China corporation having its principal place of business in Nanjing, China.  Toppoly Nanjing is a subsidiary of Toppoly Optoelectronics Corp. that manufactures LCD modules.

57.    Upon information and belief, Defendant Toppoly Optoelectronics Corp. ("Toppoly") is a Taiwan corporation having its principal place of business in Miao-Li County, Taiwan.  (Toppoly Nanjing and Toppoly will be referred to collectively as "Toppoly.")

58.    Upon information and belief, Defendant Toshiba Corporation ("Toshiba Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

59.    Upon information and belief, Defendant Toshiba America, Inc. ("Toshiba America") is a Delaware corporation having its principal place of business in Irvine, California. (Toshiba Japan and Toshiba America will be referred to collectively as "Toshiba.").

60.    Upon information and belief, United Win (China) Technology Ltd. ("United Win") is a China corporation having its principal place of business in China.  United Win is a subsidiary of Wintek Corp. that manufactures LCD modules.

61.    Upon information and belief, Dongguan Masstop Liquid Crystal Display Co., Ltd. ("Dongguan") is a China corporation having its principal place of business in Dongguan, China. Dongguan is a subsidiary of Wintek Corp. that manufactures LCD modules.

62.    Upon information and belief, Defendant Wintek Corp. ("Wintek Taiwan") is a Taiwan corporation having its principal place of business in Taichung, Taiwan.

63.     Upon information and belief, Defendant Wintek Electro-Optics Corporation ("Wintek US") is a Delaware corporation having its principal place of business in Ann Arbor, Michigan.   (United Win, Dongguan, Wintek Taiwan and Wintek US will be referred to collectively as "Wintek.").

64.     Upon information and belief, Defendant Wistron Corporation ("Wistron") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

65.     Upon information and belief, M-Display Optronics Corp. d/b/a M-Display Corporation ("M-Display"), is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.   Also upon information and belief, M-Display is Wistron's affiliate and a manufacturer of its LCD modules.   (Wistron and M-Display will be referred to collectively as "Wistron.")

66.     Upon information and belief, Epson Europe Electronics GmbH ("Epson Europe") is a German corporation having its principal place of business in Munchen, Germany.   Epson Europe is a related entity of Seiko Epson Corporation (an intervenor in this action) that sells and/or distributes LCD modules.

67.     Upon information and belief, Epson Hong Kong Ltd. ("Epson Hong Kong") is a Hong Kong corporation having its principal place of business in Wanchai, Hong Kong.   Epson Hong Kong is a related entity of Seiko Epson Corporation (an intervenor in this action) that sells and/or distributes LCD modules.   (Epson Europe and Epson Hong Kong will be collectively referred to herein as "the Epson subsidiaries.")

## Jurisdiction and Venue

68.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a).

69.     Personal jurisdiction over defendants comports with the United States Constitution and § 3104 of title 10 of the Delaware Code because defendants have committed and continue to commit, have contributed to and continue to contribute to, and have induced and continue to induce, acts of patent infringement in this district as alleged in this First Amended Complaint.

70.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## Background to the Action

71.     In the 1980s, years before LCD screen-containing products such as cellular phones, digital cameras, PDAs, and portable DVD players became ubiquitous in the consumer electronics market, the aviation and aerospace industry became interested in replacing traditional cockpit displays with LCD displays. Honeywell invested heavily in developing the technology necessary to provide LCD displays that would meet this need.

72.     Among Honeywell's LCD display inventions was technology that enables a display to produce a brighter image (making the screen easier to see) without requiring additional power while helping to reduce the appearance of an undesirable interference pattern called the "Moire effect" on the screen. Honeywell protected this invention by obtaining United States Patent No. 5,280,371, (the "'371 Patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 18, 1994. A copy of the '371 Patent is attached hereto as Exhibit 1.

73.     Honeywell possesses the right to sue infringers of the '371 Patent.

## Acts Giving Rise to the Action

74.    Apple has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

75.    All Around has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

76.    Argus has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

77.    Arima Display has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing

products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

78.    AUO has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

79.    BOE has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

80.    Casio has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital

still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

81.    Citizen Systems has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

82.    Concord has been and is engaged in the manufacture, importation, offer for sale, and/or sale products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

83.    Dell has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

84.    Kodak has been and is engaged in the manufacture, importation, offer for sale, and/or sale products that include a liquid crystal display (LCD) in the United States with the

knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

85.    Fuji has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

86.    Fujitsu has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

87.    HannStar has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital

still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

88.    Hitachi has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

89.    Innolux has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

90.    ID Tech has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

91.     Philips has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

92.     Kyocera Wireless has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

93.     Matsushita has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or module products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

94.     Navman has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the

knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

95.    Olympus has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

96.    Pentax has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

97.    Picvue has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

18

98.     Quanta Display has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

99.     Samsung SDI has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

100.    Sony has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

101.    Sony Ericsson has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with

19

the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

102. ST-LCD has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

103. Toppoly has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

104. Toshiba has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such

products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

105.    Wintek has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

106.    Wistron has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

107.    The Epson subsidiaries have been and are engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers,

cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

108.    At least some of the LCD modules and/or LCD screen-containing products manufactured, imported, offered for sale, and/or sold by Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, Wistron, and the Epson subsidiaries infringe the '371 patent literally and/or under the doctrine of equivalents, making Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, Wistron, and the Epson Subsidiaries liable for direct and/or indirect infringement under 35 U.S.C. § 271.

109.    The manufacture, importation, offer for sale, or sale of these infringing products, and/or the continued such manufacture, importation, offer for sale, or sale of them in the future by Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, Wistron, and the Epson subsidiaries is and/or will be willful, warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285, entitling Honeywell to treble damages, and an award of attorneys' fees.

## Prayer For Relief

WHEREFORE, Plaintiffs pray for entry of a judgment against Defendants as follows:

a.      That Defendants have infringed the '371 patent;

b.      That Defendants, and their respective agents, servants, officers, directors, employees and all persons acting in concert with them, directly or indirectly, be preliminarily and permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '371 patent;

c.      That Defendants account for and pay to Plaintiffs damages adequate to compensate them for Defendants' infringement, including an accounting, in an amount to be proven at trial, together with interest and costs as fixed by the Court;

d.      Finding that Defendants' infringement has been willful and trebling the award of damages;

e.      Declaring that this case is exceptional and awarding Plaintiffs their costs and attorneys' fees in accordance with 35 U.S.C. § 285; and

f.      That Plaintiffs be awarded such other and further relief as the Court may deem just and equitable.

**Jury Demand**

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maria Granovsky*

_____

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
lpolizoti@mnat.com
mgranovsky@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

July 28, 2006
530570

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and HONEYWELL  )
INTELLECTUAL PROPERTIES INC.,                )
                                             )
            Plaintiffs,                      )
                                             )
    v.                                       )
                                             )
APPLE COMPUTER, INC.; ALL AROUND CO., LTD.,  )
ARGUS A/K/A HARTFORD COMPUTER GROUP, INC.;   )
ARIMA DISPLAY; AU OPTRONICS CORP.; AU        )
OPTRONICS CORPORATION AMERICA; BOE           )   C.A. No. 04-1338-KAJ
TECHNOLOGY GROUP COMPANY LTD.; BEIJING BOE   )   (Consolidated)
OPTOELECTRONICS TECHNOLOGY CO., LTD.;        )
BOE-HYDIS TECHNOLOGY CO., LTD.; CASIO        )   JURY TRIAL DEMAND
COMPUTER CO., LTD.; CASIO, INC.; CITIZEN     )
SYSTEMS EUROPE; CITIZEN SYSTEMS AMERICA      )
CORPORATION; CONCORD CAMERAS; DELL INC.;     )
EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO.,  )
LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU  )
LIMITED; FUJITSU AMERICA, INC.; FUJITSU      )
COMPUTER PRODUCTS OF AMERICA, INC.;          )
HANNSTAR DISPLAY CORPORATION; HITACHI, LTD.; )
HITACHI DISPLAYS, LTD.; HITACHI DISPLAY      )
DEVICES, LTD.; HITACHI ELECTRONIC DEVICES    )
(USA), INC.; INNOLUX DISPLAY CORPORATION;    )
INTERNATIONAL DISPLAY TECHNOLOGY;            )
INTERNATIONAL DISPLAY TECHNOLOGY USA, INC.;  )
KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS )
CONSUMER ELECTRONICS NORTH AMERICA;          )
PHILIPS ELECTRONICS NORTH AMERICA            )
CORPORATION; KYOCERA WIRELESS CORP.;         )
MATSUSHITA ELECTRICAL INDUSTRIAL CO.;        )
MATSUSHITA ELECTRICAL CORPORATION OF         )
AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A.    )
INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA,  )
INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.; )
PICVUE ELECTRONICS LIMITED; QUANTA DISPLAY   )
INC.; SAMSUNG SDI CO., LTD; SAMSUNG SDI      )
AMERICA, INC.; SONY CORPORATION; SONY        )
CORPORATION OF AMERICA; SONY ERICSSON        )
MOBILE COMMUNICATIONS AB; SONY ERICSSON      )
MOBILE COMMUNICATIONS (USA) INC.; ST LIQUID  )

CRYSTAL DISPLAY CORP.; TOPPOLY                   )
OPTOELECTRONICS CORP.; TOSHIBA CORPORATION;      )
TOSHIBA AMERICA, INC.; WINTEK CORP.; WINTEK      )
ELECTRO-OPTICS CORPORATION; WISTRON              )
CORPORATION; and M-DISPLAY OPTRONICS CORP.,      )
                                                 )
                      Defendants.                )

## ~~FIRST~~SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Pursuant to the Court's October 7, 2005 Memorandum Order (D.I. 237), Plaintiffs, for their ~~First~~Second Amended Complaint against Defendants, hereby allege as follows:

### Nature of the Action

1.     This is an action for the willful infringement of a United States patent.

### The Parties

2.     Plaintiff Honeywell International Inc. ("Honeywell International") is a corporation organized and existing under the laws of Delaware with its principal place of business in Morristown, New Jersey.

3.     Plaintiff Honeywell Intellectual Properties Inc. ("HIPI") is a corporation organized and existing under the laws of Arizona with its principal place of business in Tempe, Arizona. (Honeywell International and HIPI will be referred to collectively as "Honeywell.")

4.     Upon information and belief, Defendant Apple Computer, Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California.

5.     Upon information and belief, Defendant All Around Co., Ltd. ("All Around") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

6.     Upon information and belief, Defendant Argus, A/K/A Hartford Computer Group, Inc. ("Argus") is an Illinois corporation with its principal place of business in Inverness, Illinois.

7.    Upon information and belief, Defendant Arima Display ("Arima Display") is a Taiwan corporation having its principal place of business in Kaohsiung, Taiwan.

8.    Upon information and belief, Defendant AU Optronics Corp. ("AUO Taiwan") is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.

9.    Upon information and belief, Defendant AU Optronics Corporation America ("AUO America") is a California corporation having its principal place of business in Round Rock, Texas.  (AUO Taiwan and AUO America will be referred to collectively as "AUO.")

10.    Upon information and belief, Defendant BOE Technology Group Company Ltd. ("BOE Technology") is a China corporation having its principal place of business in Beijing, China.

11.    Upon information and belief, Defendant Beijing BOE Optoelectronics Technology Co., Ltd. ("BOE Optoelectronics") is a China corporation having its principal place of business in Beijing, China.

12.    Upon information and belief, Defendant BOE-Hydis Technology Co., Ltd. ("BOE-Hydis") is a South Korea corporation having its principal place of business in Gyeonggi-do, South Korea.  (BOE Technology, BOE Optoelectronics, and BOE-Hydis will be referred to collectively as "BOE.")

13.    Upon information and belief, Defendant Casio Computer Co., Ltd. ("Casio Computer") is a Japan corporation having its principal place of business in Tokyo, Japan.

14.    Upon information and belief, Defendant Casio Inc. ("Casio U.S.") is a New York corporation having its principal place of business in Dover, New Jersey.  (Casio Computer and Casio U.S. will be referred to collectively as "Casio.")

15.    Upon information and belief, Defendant Citizen Systems Europe is a United Kingdom corporation having its principal place of business in Middlesex, United Kingdom.

16.    Upon information and belief, Defendant Citizen Systems America Corporation ("Citizen Systems America") is a California corporation having its principal place of business in Torrance, California. (Citizen Systems Europe and Citizen Systems America will be referred to collectively as "Citizen Systems.")

17.    Upon information and belief, Defendant Concord Cameras ("Concord") is a Florida corporation having its principal place of business in Hollywood, Florida.

18.    Upon information and belief, Defendant Dell Inc. ("Dell") is a Delaware corporation having its principal place of business in Round Rock, Texas.

19.    Upon information and belief, Defendant Eastman Kodak Company ("Kodak") is a New Jersey corporation having its principal place of business in Rochester, New York.

20.    Upon information and belief, Defendant Fuji Photo Film Co., Ltd. ("Fuji Photo Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

21.    Upon information and belief, Defendant Fujifilm Photonix Co., Ltd. ("Fujifilm Photonix") is a Japan corporation having its principal place of business in Miyagi, Japan. Fujifilm Photonix is a subsidiary of Fuji that manufactures LCD modules.

21. 22. Upon information and belief, Defendant Fuji Photo Film U.S.A., Inc. ("Fuji Photo U.S.A.") is a New York corporation having its principal place of business in Valhalla, New York. (Fuji Photo Japan, Fujifilm Photonix, and Fuji Photo U.S.A. will be referred to collectively as "Fuji.")

22. 23. Upon information and belief, Defendant Fujitsu Limited ("Fujitsu Japan") is a Japan corporation having its principal place of business in Kanagawa, Japan.

23. 24. Upon information and belief, Defendant Fujitsu America, Inc. ("Fujitsu America") is a California corporation having its principal place of business in Sunnyvale, California.

24. 25. Upon information and belief, Defendant Fujitsu Computer Products of America, Inc. ("Fujitsu Computer") is a California corporation having its principal place of business in San Jose, California. (Fujitsu Japan, Fujitsu America, and Fujitsu Computer will be referred to collectively as "Fujitsu.")

25. 26. Upon information and belief, Defendant HannStar Display Corporation ("HannStar") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

26. 27. Upon information and belief, Defendant Hitachi, Ltd. ("Hitachi Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

27. 28. Upon information and belief, Defendant Hitachi Displays, Ltd. ("Hitachi Displays") is a Japan corporation having its principal place of business in Tokyo, Japan.

28. 29. Upon information and belief, Defendant Hitachi Display Devices, Ltd. ("Hitachi Display Devices") is a Japan corporation having its principal place of business in Mobara-shi, Japan.

29. 30. Upon information and belief, Defendant Hitachi Electronic Devices (USA), Inc. ("Hitachi Display US") is a Delaware corporation having its principal place of business in Greenville, South Carolina. (Hitachi Japan, Hitachi Displays, Hitachi Display Devices, and Hitachi Display US will be referred to collectively as "Hitachi.")

30. 31. Upon information and belief, Defendant Innolux Display Corporation ("Innolux") is a Taiwan corporation having its principal place of business in Chu-nan, Taiwan.

~~31.~~ 32. Upon information and belief, Defendant International Display Technology ("ID Tech Japan") is a Japan corporation having its principal place of business in Siga-ken, Japan.

~~32.~~ 33. Upon information and belief, Defendant International Display Technology USA, Inc. ("ID Tech USA") is a Delaware corporation having its principal place of business in San Jose, California. (ID Tech Japan and ID Tech USA will be referred to collectively as "ID Tech.")

~~33.~~ 34. Upon information and belief, Defendant Koninklijke Philips Electronics N.V. ("Philips Netherlands") is a Netherlands corporation having its principal place of business in Eindhoven, Netherlands.

~~34.~~ 35. Upon information and belief, Defendant Philips Consumer Electronics North America ("Philips Consumer N.A.") is a Delaware corporation having its principal place of business in Atlanta, Georgia.

~~35.~~ 36. Upon information and belief, Defendant Philips Electronics North America Corporation ("Philips N.A.") is a Delaware corporation having its principal place of business in New York, New York. (Philips Netherlands, Philiips Consumer N.A., and Philips N.A. will be referred to collectively as "Philips.")

~~36.~~ 37. Upon information and belief, Defendant Kyocera Wireless Corp. ("Kyocera Wireless") is a California corporation having its principal place of business in San Diego, California.

~~37.~~ 38. Upon information and belief, Defendant Matsushita Electrical Industrial Co. ("Matsushita Japan") is a Japan corporation having its principal place of business in Osaka, Japan.

~~38.~~ 39. Upon information and belief, Defendant Matsushita Electrical Corporation of America ("Matsushita America") is a Delaware corporation having its principal place of business

in Secaucus, New Jersey. (Matsushita Japan and Matsushita America will be referred to collectively as "Matsushita.")

39. 40. Upon information and belief, Defendant Navman NZ Limited ("Navman New Zealand") is a New Zealand corporation having its principal place of business in Auckland, New Zealand.

40. 41. Upon information and belief, Defendant Navman U.S.A., Inc. ("Navman U.S.") is a Delaware corporation having its principal place of business in Acton, Massachusetts. (Navman New Zealand and Navman U.S. will be referred to collectively as "Navman.")

41. 42. Upon information and belief, Defendant Olympus Corporation ("Olympus Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

42. 43. Upon information and belief, Defendant Olympus America, Inc. ("Olympus America") is a New York corporation having its principal place of business in Melville, New York. (Olympus Japan and Olympus America will be referred to collectively as "Olympus.")

43. 44. Upon information and belief, Defendant Pentax Corporation ("Pentax Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

44. 45. Upon information and belief, Defendant Pentax U.S.A., Inc. ("Pentax U.S.A.") is a Delaware corporation having its principal place of business in Golden, Colorado. (Pentax Japan and Pentax U.S.A. will be referred to collectively as "Pentax.")

45. 46. Upon information and belief, Defendant Picvue Electronics Limited. ("Picvue") is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.

47. Upon information and belief, Tech-Well (Shanghai) Display Co. ("Tech-Well") is a China corporation having its principal place of business in Shanghai, China. Tech-Well is a subsidiary of Quanta that manufactures LCD modules.

46. 48. Upon information and belief, Defendant Quanta Display Inc. ("Quanta Display") is a Taiwan corporation having its principal place of business in Taoyuan, Taiwan. (Techwell and Quanta Display will be referred to collectively as "Quanta Display.")

47. 49. Upon information and belief, Defendant Samsung SDI Co., Ltd. ("SDI Korea") is a South Korea corporation having its principal place of business in Seoul, South Korea.

48. 50. Upon information and belief, Defendant Samsung SDI America, Inc. ("SDI America") is a California corporation having its principal place of business in Rancho Dominguez, California. (SDI Korea and SDI America will be referred to collectively as "Samsung SDI.")

49. 51. Upon information and belief, Defendant Sony Corporation ("Sony Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

50. 52. Upon information and belief, Defendant Sony Corporation of America ("Sony America") is a New York corporation having its principal place of business in New York, New York. (Sony Japan and Sony America will be referred to collectively as "Sony.")

51. 53. Upon information and belief, Defendant Sony Ericsson Mobile Communications AB ("Sony Ericsson England") is an England corporation having its principal place of business in London, England.

52. 54. Upon information and belief, Defendant Sony Ericsson Mobile Communications (USA) Inc. ("Sony Ericsson USA") is a Delaware corporation having its principal place of business in Research Triangle Park, North Carolina. (Sony Ericsson England and Sony Ericsson USA will be referred to collectively as "Sony Ericsson.")

53. 55. Upon information and belief, Defendant ST Liquid Crystal Display Corp. ("ST-LCD") is a Japan corporation having its principal place of business in Aichi, Japan.

56.    Upon information and belief, Toppoly Nanjing is a China corporation having its principal place of business in Nanjing, China.   Toppoly Nanjing is a subsidiary of Toppoly Optoelectronics Corp. that manufactures LCD modules.

54. 57.  Upon information and belief, Defendant Toppoly Optoelectronics Corp. ("Toppoly") is a Taiwan corporation having its principal place of business in Miao-Li County, Taiwan.  (Toppoly Nanjing and Toppoly will be referred to collectively as "Toppoly.")

55. 58.  Upon information and belief, Defendant Toshiba Corporation ("Toshiba Japan") is a Japan corporation having its principal place of business in Tokyo, Japan.

56. 59.  Upon information and belief, Defendant Toshiba America, Inc. ("Toshiba America") is a Delaware corporation having its principal place of business in Irvine, California. (Toshiba Japan and Toshiba America will be referred to collectively as "Toshiba.").

60.    Upon information and belief, United Win (China) Technology Ltd. ("United Win") is a China corporation having its principal place of business in China.  United Win is a subsidiary of Wintek Corp. that manufactures LCD modules.

61.    Upon information and belief, Dongguan Masstop Liquid Crystal Display Co., Ltd. ("Dongguan") is a China corporation having its principal place of business in Dongguan, China.  Dongguan is a subsidiary of Wintek Corp. that manufactures LCD modules.

57. 62.  Upon information and belief, Defendant Wintek Corp. ("Wintek Taiwan") is a Taiwan corporation having its principal place of business in Taichung, Taiwan.

58. 63.  Upon information and belief, Defendant Wintek Electro-Optics Corporation ("Wintek US") is a Delaware corporation having its principal place of business in Ann Arbor, Michigan.  (United Win, Dongguan, Wintek Taiwan and Wintek US will be referred to collectively as "Wintek.").

59. 64.  Upon information and belief, Defendant Wistron Corporation ("Wistron") is a Taiwan corporation having its principal place of business in Taipei, Taiwan.

60. 65.  Upon information and belief, M-Display Optronics Corp. d/b/a M-Display Corporation ("M-Display"), is a Taiwan corporation having its principal place of business in Hsinchu, Taiwan.  Also upon information and belief, M-Display is Wistron's affiliate and a manufacturer of its LCD modules.  (Wistron and M-Display will be referred to collectively as "Wistron.")

66.    Upon information and belief, Epson Europe Electronics GmbH ("Epson Europe") is a German corporation having its principal place of business in Munchen, Germany.  Epson Europe is a related entity of Seiko Epson Corporation (an intervenor in this action) that sells and/or distributes LCD modules.

67.    Upon information and belief, Epson Hong Kong Ltd. ("Epson Hong Kong") is a Hong Kong corporation having its principal place of business in Wanchai, Hong Kong.  Epson Hong Kong is a related entity of Seiko Epson Corporation (an intervenor in this action) that sells and/or distributes LCD modules.  (Epson Europe and Epson Hong Kong will be collectively referred to herein as "the Epson subsidiaries.")

**Jurisdiction and Venue**

61. 68.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a).

62. 69.  Personal jurisdiction over defendants comports with the United States Constitution and § 3104 of title 10 of the Delaware Code because defendants have committed and continue to commit, have contributed to and continue to contribute to, and have induced and

continue to induce, acts of patent infringement in this district as alleged in this First Amended Complaint.

63. 70. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

### Background to the Action

64. 71. In the 1980s, years before LCD screen-containing products such as cellular phones, digital cameras, PDAs, and portable DVD players became ubiquitous in the consumer electronics market, the aviation and aerospace industry became interested in replacing traditional cockpit displays with LCD displays. Honeywell invested heavily in developing the technology necessary to provide LCD displays that would meet this need.

65. 72. Among Honeywell's LCD display inventions was technology that enables a display to produce a brighter image (making the screen easier to see) without requiring additional power while helping to reduce the appearance of an undesirable interference pattern called the "Moire effect" on the screen. Honeywell protected this invention by obtaining United States Patent No. 5,280,371, (the "'371 Patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 18, 1994. A copy of the '371 Patent is attached hereto as Exhibit 1.

66. 73. Honeywell possesses the right to sue infringers of the '371 Patent.

**Acts Giving Rise to the Action**

67. 74. Apple has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

68. 75. All Around has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

69. 76. Argus has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

70. 77. Arima Display has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing

products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

71. 78. AUO has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

72. 79. BOE has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

73. 80. Casio has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital

still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

74. 81. Citizen Systems has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

75. 82. Concord has been and is engaged in the manufacture, importation, offer for sale, and/or sale products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

76. 83. Dell has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

77. 84. Kodak has been and is engaged in the manufacture, importation, offer for sale, and/or sale products that include a liquid crystal display (LCD) in the United States with the

knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

78. 85. Fuji has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

79. 86. Fujitsu has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

80. 87. HannStar has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital

still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

81. 88. Hitachi has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

82. 89. Innolux has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

83. 90. ID Tech has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

16

84. 91. Philips has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

85. 92. Kyocera Wireless has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

86. 93. Matsushita has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or module products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

87. 94. Navman has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the

knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

88. 95. Olympus has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

89. 96. Pentax has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

90. 97. Picvue has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

91. 98. Quanta Display has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

92. 99. Samsung SDI has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

93. 100. Sony has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

94. 101. Sony Ericsson has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with

the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

95. 102. ST-LCD has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

96. 103. Toppoly has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

97. 104. Toshiba has been and is engaged in the use, manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules and/or products that include an LCD module in the United States with the knowledge and intention that such LCD modules and/or products would be sold throughout the United States, including this judicial district. Such

products include at least one of the following: LCD modules, laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

98. 105. Wintek has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

99. 106. Wistron has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

107.   The Epson subsidiaries have been and are engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones,

PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, portable entertainment systems, and/or portable navigation aids.

100. 108. At least some of the LCD modules and/or LCD screen-containing products manufactured, imported, offered for sale, and/or sold by Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, and Wistron, and the Epson subsidiaries infringe the '371 patent literally and/or under the doctrine of equivalents, making Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, and Wistron, and the Epson Subsidiaries liable for direct and/or indirect infringement under 35 U.S.C. § 271.

101. 109. The manufacture, importation, offer for sale, or sale of these infringing products, and/or the continued such manufacture, importation, offer for sale, or sale of them in the future by Apple, All Around, Argus, Arima Display, AUO, BOE, Casio, Citizen Systems, Concord, Dell, Kodak, Fuji, Fujitsu, HannStar, Hitachi, Innolux, ID Tech, Philips, Kyocera Wireless, Matsushita, Navman, Olympus, Pentax, Picvue, Quanta Display, Samsung SDI, Sony, Sony Ericsson, ST-LCD, Toppoly, Toshiba, Wintek, and Wistron, and the Epson subsidiaries is and/or will be willful, warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285, entitling Honeywell to treble damages, and an award of attorneys' fees.

22

### Prayer For Relief

WHEREFORE, Plaintiffs pray for entry of a judgment against Defendants as follows:

a.    That Defendants have infringed the '371 patent;

b.    That Defendants, and their respective agents, servants, officers, directors, employees and all persons acting in concert with them, directly or indirectly, be preliminarily and permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '371 patent;

c.    That Defendants account for and pay to Plaintiffs damages adequate to compensate them for Defendants' infringement, including an accounting, in an amount to be proven at trial, together with interest and costs as fixed by the Court;

d.    Finding that Defendants' infringement has been willful and trebling the award of damages;

e.    Declaring that this case is exceptional and awarding Plaintiffs their costs and attorneys' fees in accordance with 35 U.S.C. § 285; and

f.    That Plaintiffs be awarded such other and further relief as the Court may deem just and equitable.

**Jury Demand**

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Leslie A. Polizoti*

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
tgrimm@mnat.com
lpolizoti@mnat.com
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

November 7, 2005

491437

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maria Granovsky*

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
lpolizoti@mnat.com
mgranovsky@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue

Minneapolis, MN 55402-2015
(612) 349-8500

July 28, 2006
530570

EXHIBIT C

Case 1:04-cv-01338-JJF    Document 515-2    Filed 07/28/2006    Page 53 of 62

Page 1
2003 U.S. Dist. LEXIS 20665, *

LEXSEE 2003 U.S. DIST. LEXIS 20665

**MYLAN PHARMACEUTICALS, INC., et al., Plaintiffs, v. KREMERS URBAN DEVELOPMENT, et al., Defendants.**

**C.A. No. 02-1628 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 20665*

**November 14, 2003, Decided**

**SUBSEQUENT HISTORY:** Patent interpreted by, Motion denied by *Mylan Pharms., Inc. v. Kremers Urban Dev. Co., 2004 U.S. Dist. LEXIS 391 (D. Del., Jan. 13, 2004)*

**PRIOR HISTORY:** *Mylan Pharms., Inc. v. Kremers Urban Dev. Co., 2003 U.S. Dist. LEXIS 5728 (D. Del., Apr. 7, 2003)*

**DISPOSITION:** [*1] Plaintiff's Motion for Leave to Amend GRANTED.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1] Fed. R. Civ. P. 15(a) permits a party to amend a complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be freely given when justice so requires. A court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, or when the amendment would be futile. Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. In other words, the court should apply the same standards as are applied to Fed. R. Civ. P. 12(b)(6) motions to dismiss.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
*Trade Secrets Law > Civil Actions > General Overview*
*Trade Secrets Law > Misappropriation Actions > General Overview*
[HN2] Where it has original jurisdiction over a federal claim, a district court may exercise supplemental juris-

diction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under U.S. Const. art. III. 28 U.S.C.S. § 1367(a). Specifically, supplemental jurisdiction is proper under § 1367 if the state law claims derive from a common nucleus of operative fact to the federal claims.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN3] There is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint.

*Civil Procedure > Dismissals > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN4] Generally, the appropriate procedural mechanism to enforce an arbitration agreement is a motion to compel, not a motion to dismiss.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN5] Unless a complaint, on its face, fails to comply with the applicable limitations period, a motion to dismiss based on the failure to comply with the statute of limitations should be denied.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN6] In the absence of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, a court should exercise its discretion in favor of granting leave to amend. To ensure that cases are decided on the merits rather than on technicalities, the court should use strong liberality in considering whether to grant to leave to amend.

COUNSEL: For Mylan Pharmaceuticals Inc, Esteve Quimica, SA, PLAINTIFFS: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Kremers Urban Development Company, Schwarz Pharma Inc, Schwarz Pharma Manufacturing, Inc., Schwarz Pharma-Group USA, DEFENDANTS: Philip A Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION:

MEMORANDUM AND ORDER

I. INTRODUCTION

On November 2, 2002, plaintiff, Mylan Pharmaceuticals Inc. ("Mylan"), filed the above-captioned action alleging infringement of the '875 patent and tortious interference by the defendants, Kremers Urban Development Company, Schwartz Pharma, Inc., Schwartz Pharma Manufacturing, Inc., Schwartz Pharma USA Holdings, Inc. and Kremers Urban, Inc. (collectively "Kremers"). On January 2, 2003, Mylan filed an amended complaint joining the plaintiff, Esteve Quimica, S.A. ("Esteve" or collectively with Mylan, "Mylan"), a corporation organized under the laws of Spain with its principal place of business in Spain and the assignee of the '875 patent. On April 4, 2003, Mylan [*2] filed a second amended complaint correcting the name of one of the defendants.

Presently before the court is Mylan's motion for leave to file a third amended complaint adding two new defendants, Dr. Pawn Seth and Dr. Andre Stamm, and alleging four new counts for transfer of ownership of the '499, '198, and '355 patents, infringement of the '499, '198, and '355 patents, misappropriation of trade secrets technology and know-how, and conversion, respectively.

For the following reasons, the court will grant this motion.

II. BACKGROUND

The existing complaint alleges that Kremers' manufacturing and marketing of omeprazole generic drug infringes Mylan's '875 patent and tortiously interferes with Mylan's prospective business opportunity to the sole use of its patented invention and the right to compete fairly for customers. After Mylan joined Esteve in this action, it undertook further investigation of these issues during discovery. In doing so, Mylan uncovered proof that two Esteve consultants, Dr. Seth and Dr. Stamm, misappropriated certain trade secrets, know-how, and other proprietary information regarding the development and manufacture of omeprazole. This proprietary information, [*3] Mylan claims, is the exclusive property of Esteve pursuant to the terms of an agreement between Saltrade Ltd. and Laboratorios Esteve, S.A. (hereinafter the "Saltrade Agreement"), n1 an affiliate of plaintiff Esteve. According to Mylan, Dr. Seth and Dr. Stamm used the know-how they misappropriated from Esteve to develop the omeprazole formula that is the subject of the '499, '198, and '355 patents assigned to Schwartz Pharma A.G. upon issuing. Mylan contends that those three patents, therefore, rightfully belong to itself and not to Schwartz Pharma A.G. or any of the other defendants.

n1 The pertinent section of the Saltrade Agreement states, "SALTRADE hereby transfers to ESTEVE on exclusive basis on the KNOW-HOW to manufacture the PRODUCT." "Know-how" is defined to mean "a body of technical information, documentation and data which refer to the process technology, machinery required and analytical technology used in manufacture, testing and analysis of the PRODUCT." "Product" is defined to mean OMEPRAZOLE PELLETS, bioequivalent to *ANTRA pellets."

[*4]

Mylan's allegations are reflected in the proposed amended complaint by four new counts, modification of the existing tortious interference count, and the addition of two defendants, Dr. Seth and Dr. Stamm. Count Two of Mylan's proposed amended complaint alleges that Dr. Seth and Dr. Stamm improperly obtained and assigned to Schwartz Pharma A.G. the '499, '198, and '355 patents for a formulation of omeprazole. Count Three then claims that Kremers marketing of omeprazole infringes the '499, '198, and '355 patents. In Count Five, Mylan asserts that Dr. Seth and Dr. Stamm, in addition to the

other defendants, misappropriated confidential technology and know-how that Dr. Seth gained during his association with Esteve and that was the exclusive property of Esteve. Mylan also seeks to amend its tortious interference claim in Count Four to include allegations that Dr. Seth and Dr. Stamm conspired to misappropriate confidential technology and know-how that was the exclusive property of Esteve. In Count Six of the proposed amended complaint, Mylan alleges that the defendants' receipt of profits from the sale of omeprazole constitutes conversion of funds properly belonging to Mylan.

Mylan claims [*5] it should be permitted to amend the complaint because the facts supporting the additional counts and joinder of parties were ascertained and developed during discovery. Kremers contends that the amendments are prejudicial because Mylan seeks to add four entirely new claims concerning three new patents and two new defendants at a late date in the case which would require reworking of the case management plan and rescheduling of the trial date. Kremers also makes a series of arguments claiming that Mylan's motion for leave to amend is also futile. It argues that Mylan lacks standing to claim patent infringement over the '499, '198, and '355 patents. Kremers also contends that the court lacks subject matter jurisdiction over the claims and personal jurisdiction over Dr. Seth and Dr. Stamm. It further argues that the new claims must be settled through arbitration because they arise out of the Saltrade Agreement which contains an arbitration provision. The tort claims, Kremers asserts, are barred by the three-year statute of limitations because Esteve was aware of the underlying facts as early as 1996. Kremers makes additional arguments that Mylan improperly relies on Delaware law, the [*6] Saltrade Agreement does not transfer a future interest in all omeprazole technology, and the conversion and tortious interference counts fail to state claims upon which relief may be granted. The court disagrees with these contentions.

## III. STANDARD OF REVIEW

*Rule 15 of the Federal Rules of Civil Procedure* permits [HN1] a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." *Fed. R. Civ. P. 15(a).* The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001).* Specifically, an amendment would be futile for purposes of *Rule 15(a)* if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted.

*See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 646 F. Supp. 118, 120 (D. Del 1986).* [*7] In other words, "the court should apply the same standards as are applied to *Rule 12(b)(6)* motions to dismiss." *Id.*

## IV. DISCUSSION

The court does not find the relevant factors to weigh against granting leave to amend the complaint to add Dr. Seth and Dr. Stamm as defendants and to include the proposed new and modified claims for transfer of ownership, infringement, tortious interference, misappropriation of trade secrets and conversion.

### A. Mylan Has Neither Unduly Delayed Nor Exhibited Bath Faith in Seeking to Amend the Complaint, and Kremers Will Not Be Significantly Prejudiced by the Amendments.

Having discovered the factual basis for the claims only after conducting discovery, Mylan timely seeks to amend its complaint to include the proposed counts. Mylan has not unduly delayed in seeking leave to amend the complaint to add the new counts, nor does its motion for leave appear to arise out of any bad faith or dilatory motive. This is particularly true because the proposed claims are based on facts having to do with the newer plaintiff, Esteve. Being a foreign corporation, Esteve had not been represented by counsel in the United States until being joined in [*8] this action after the filing of the initial complaint. After being joined in this action, Esteve had just over three months, pursuant to the March 19, 2003 scheduling order, to obtain any discovery necessary to evaluate potential additional claims and amend the complaint accordingly. Given the foregoing circumstances, it seems that the plaintiffs acted quickly and diligently to investigate Esteve's involvement in the events that gave rise to this action.

Furthermore, permitting Mylan to amend the complaint to include the above-described counts would not significantly prejudice Kremers. The court is not unsympathetic to Kremers' concerns that the addition of the new defendants and claims would require discovery from new third parties and additional discovery from the plaintiff Esteve. However, Mylan sought leave to amend nearly two months before the close of discovery, and the new defendants, Dr. Seth and Dr. Stamm, have already produced documents and been deposed as third parties. In view of Mylan's timely request and considering the discovery that has already been obtained, the court finds that little prejudice would result from re-opening discovery for the limited purpose of obtaining [*9] additional information on these claims.

### B. Mylan's Proposed Amendments Are Not Futile.

Kremers' remaining arguments against Mylan's proposed amendments, though possibly proper bases for a fully briefed motion to dismiss, are premature reasons for denying Mylan's motion to amend. The court will not determine at this juncture that Mylan lacks standing to bring infringement claims for the '499, '198, and '355 patents. The issue of Mylan's standing to bring an infringement claim for these patents is riveted with factual disputes over the meaning of the Saltrade Agreement. Precedent suggests that Mylan would have standing to bring these claims if the Saltrade Agreement indeed transferred to Esteve legal title in the omeprazole formulation that is the subject of the '499, '198, and '355 patents. *See Speedplay Inc. v. Bebop, Inc., 211 F.3d 1245, 1250 (Fed. Cir. 2000)* ("A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights."); *Filmtec Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1573 (Fed. Cir. 1991)* (where a contract expressly [*10] granted rights in any future invention, finding the transfer of title would occur by operation of law). However, to make such a determination the court would have to probe the fact-intensive issue of the scope of the know-how and technology transferred under the Saltrade Agreement. The court will not undertake this kind of inquiry on a motion to amend the complaint.

Because the court at this juncture will not opine ultimately on the issue of Mylan's standing to claim infringement of the '499, '198, and '355 patents, it likewise would be premature for the court to conclude that it lacks subject matter jurisdiction over Mylan's proposed additional state law claims. [HN2] Where it has original jurisdiction over a federal claim, a district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under *Article III of the United States Constitution*." *28 U.S.C. § 1367(a)*. Specifically, supplemental jurisdiction is proper under *28 U.S.C. § 1367* if the state law claims "derive from a common nucleus of operative [*11] fact" to the federal claims. *United Mine Workers v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*. Based on the allegations in the proposed amended complaint, Mylan's state law claims for transfer of ownership, tortious interference, misappropriation of trade secrets and conversion purport to arise from the same or similar set of facts and circumstances that give rise to Mylan's claim of ownership and infringement of the '499, '198, and '355 patents. It therefore appears that the court would have sufficient grounds to exercise supplemental jurisdiction over the additional state law claims if Mylan has properly brought the additional infringement claims. Nevertheless, without expressing a view on Mylan's standing to bring the additional infringement claims, the court cannot determine whether or not to exercise supplemental jurisdiction over the accompanying proposed state law claims.

Kremers' challenge to this court's exercise of personal jurisdiction over Dr. Seth and Dr. Stamm is also not a proper basis for denying Mylan leave to amend the complaint under these circumstances. [HN3] There is no requirement that a plaintiff allege the facts that support [*12] a finding of personal jurisdiction in a complaint. *See, e.g., Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. 1995)* ("Noticeably absent from ... Rule [8] is a requirement of a statement setting forth the grounds upon which the court has personal jurisdiction over the defendant."). In view of this consideration, along with the fact that the parties have not yet developed a record on the possible contacts Dr. Seth and Dr. Stamm may or may not have in the state of Delaware, denying Mylan leave to amend its complaint for lack of personal jurisdiction over these two defendants would be inappropriate.

The court furthermore finds it inappropriate to determine the arbitrability of Mylan's claims on a motion to amend. [HN4] Generally, the "appropriate procedural mechanism to enforce an arbitration agreement is a motion to compel, not a motion to dismiss." *West v. Merillat Indus., Inc., 92 F. Supp. 2d 558, 561 (W.D. Va. 2000); see also Strick Corp. v. Cravens Homalloy (Sheffield) Ltd., 352 F. Supp. 844, 848 (E.D. Pa. 1972)*. Moreover, although the Saltrade Agreement does contain an arbitration clause, the actual parties to that contract, [*13] Saltrade Ltd. and Laboratorios Esteve, S.A., have not been joined in this action. Given these considerations, it would be premature at this juncture to compel arbitration, particularly where the dispute is among non-parties to the contract.

Likewise, Kremers' argument that Mylan's tort claims are barred by the statute of limitations is also premature. [HN5] "Unless the complaint, on its face, fails to comply with the applicable limitations period, a motion to dismiss based on the failure to comply with the statute of limitations should be denied." *Tracinda Corp. v. Daimlerchrysler AG 197 F. Supp. 2d 42, 57 (D. Del. 2002)* (citing *In re Equimed, Inc., 2000 U.S. Dist. LEXIS 6209, 2000 WL 562909, at *9 (E.D. Pa. May 9, 2000)*). The parties clearly dispute when the proposed claims accrued. Kremers contends that Mylan knew of the claims over six years ago whereas Mylan asserts that it had the opportunity to learn of the defendants' unlawful activities on January 14, 2003, at the earliest. Applying the same standard as for a *12(b)(6)* motion, the court will not deny Mylan leave to amend on the grounds that its proposed counts are barred by the statute of limitations.

Finally, construing the [*14] allegations of the proposed amendments in the light most favorable to Mylan, the facts underlying Kremers' remaining contentions that the conversion and tortious interference counts fail to state claims upon which relief may be granted, that the Saltrade Agreement does not transfer a future interest in all omeprazole technology, and that Mylan improperly relies on Delaware law are not sufficiently developed at this time to warrant a finding that the amendments are futile

## IV. CONCLUSION

[HN6] In the absence of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, the court should exercise its discretion in favor of granting leave to amend. *See Foman, 371 U.S. at 182; Cureton, 252 F.3d at 273.* To ensure that cases are decided on the merits rather than on technicalities, the court should use strong liberality in considering whether to grant to leave to amend. *See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989);*

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing Virgin Islands, 663 F.2d 419, 425 (3d Cir. 1981).* [*15] Having found no dilatory motive or undue prejudice and that the claims would not be futile, the court will exercise its discretion in favor of granting Mylan leave to amend the complaint in the proposed manner

Therefore, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Leave to Amend (D.I. 81) is GRANTED.

2. Mylan shall be permitted leave to file the Third Amended Complaint in the form attached as Exhibit A to the Plaintiff's Motion for Leave to Amend.

Dated: November 14, 2003

Gregory M. Sleeet

UNITED STATES DISTRICT JUDGE

2002 U.S. Dist. LEXIS 19967, *; 65 U.S.P.Q.2D (BNA) 1055

LEXSEE 2002 U.S. DIST. LEXIS 19967

**FRANCE TELECOM S.A., TELEDIFFUSION DE FRANCE S.A., AND U.S. PHILIPS CORP., Plaintiffs, v. NOVELL, INC., Defendant.**

**C.A. No. 02-437-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 19967; 65 U.S.P.Q.2D (BNA) 1055*

**October 17, 2002, Decided**

**DISPOSITION:** [*1] Plaintiffs' motion to strike defendant's fourth affirmative defense of unclean hands denied. Defendant's motion for leave to amend its answer granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1] Fed. R. Civ. P. 15(a) provides that a party may amend its complaint by leave of court and leave shall be freely given when justice so requires. Leave should be freely granted unless there is (1) an apparent or declared reason for denial, e.g., undue delay, bad faith, or dilatory motive on the part of the movant; (2) undue prejudice to the opposing party; or (3) futility of the amendment.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN2] Leave to amend is particularly warranted when pleadings lack the requisite factual specificity for a particular cause of action. Indeed, the clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > Redundant Matters*
[HN3] Fed. R. Civ. P. 12(f) provides that a court may order stricken from any pleading any insufficient defense or any redundant matter.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*

[HN4] Motions to strike affirmative defenses are disfavored.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN5] When ruling on a motion to strike, a court must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under the law.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN6] The Federal Rules of Civil Procedure requires a short and plain statement of a claim or defense. Fed. R. Civ. P. 8(a), (b).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN7] It is well settled that the Federal Rules of Civil Procedure intend a liberal pleading standard.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN8] Fed. R. Civ. P. 8(e) expressly mandates that each averment of a pleading shall be simple, concise, and direct.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*

Case 1:04-cv-01338-JJF    Document 515-2    Filed 07/28/2006    Page 59 of 62

Page 2

2002 U.S. Dist. LEXIS 19967, *; 65 U.S.P.Q.2D (BNA) 1055

[HN9] Fed. R. Civ. P. 9 requires that all pleadings of fraud or mistake shall be stated with particularity. Fed. R. Civ. P. 9(b). Such averments, however, remain subject to the liberal pleading requirements of Fed. R. Civ. P. 8.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN10] In the context of alleged inequitable conduct before the Patent and Trademark Office during a patent prosecution, pleadings that disclose the name of the allegedly withheld relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Fed. R. Civ. P. 9(b).

*Civil Procedure > Equity > Maxims > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN11] The defense of unclean hands requires an immediate and necessary relation between the plaintiff's alleged misconduct and the equity sought by that party. Courts apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. That nexus is the primary principle guiding application of the unclean hands doctrine.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN12] Inequitable conduct is the failure to disclose material information, or submission of false material information, with an intent to deceive.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN13] Unclean hands remains a broader defense, less amenable to a particular checklist of elements than does the defense of inequitable conduct.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Criminal Law & Procedure > Trials > Judicial Discretion*
[HN14] The doctrine of unclean hands necessarily gives wide range to the equity court's use of discretion. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as

to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim.

**COUNSEL:** For FRANCE TELECOM SA, TELEDIFFUSION DE FRANCE SA, U.S. PHILIPS CORPORATION, plaintiffs: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

For NOVELL, INC., defendant: Donald F. Parsons, Jr., Joy Mulholland, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NOVELL, INC., counter-claimant: Donald F. Parsons, Jr., Joy Mulholland, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For FRANCE TELECOM SA, TELEDIFFUSION DE FRANCE SA, U.S. PHILIPS CORPORATION, counterdefendants: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On May 17, 2002, the plaintiffs, France Telecom S.A. ("France Telecom"), TeleDiffusion de France S.A. ("TDF"), and U.S. Philips Corp. ("Philips") (collectively "the plaintiffs") filed this action alleging patent infringement of a computer software system for accreditating message signatures. The defendant, Novell, Inc. ("Novell"), filed its Answer [*2] and Counterclaim on July 16, 2002 (D.I. 7). In its Answer, the defendant asserts ten affirmative defenses, including the affirmative defense of "unclean hands." The plaintiffs move to strike this fourth affirmative defense (D.I. 8), and the defendant subsequently moved for leave to file an amended Answer (D.I. 12). For the following reasons, the court will deny the plaintiffs' motion and grant the defendant's motion.

**II. DISCUSSION**

**A. Defendant's Motion for Leave to Amend Its Answer**

The defendant moves to amend its Answer pursuant to *Federal Rule of Civil Procedure 15(a)*. Rule 15(a) [HN1] provides that a party may amend its complaint

Case 1:04-cv-01338-JJF     Document 515-2     Filed 07/28/2006     Page 60 of 62

Page 3

2002 U.S. Dist. LEXIS 19967, *; 65 U.S.P.Q.2D (BNA) 1055

"by leave of court ... and leave shall be freely given when justice so requires." *FED. R. CIV. P. 15(a)*. Leave should be freely granted unless there is an apparent or declared reason for denial, *e.g.*, undue delay, bad faith, or dilatory motive on the part of the movant; undue prejudice to the opposing party; or futility of the amendment. *See Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).* [HN2] Leave to [*3] amend is particularly warranted when pleadings lack the requisite factual specificity for a particular cause of action. *See District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986).* Indeed, "the clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses." *U.S. v. Teeven, 1992 U.S. Dist. LEXIS 22189, 1992 WL 683682,* at *7 (D. Del. Oct. 27, 1992).

The plaintiffs object to Novell's motion to amend its Answer because, they argue, it is futile, as the amended Answer would remain subject to a motion to strike due to redundancy. For the reasons set out in Part B below, the court finds the two defenses are not redundant, and therefore the amendment is not futile.

Nor would the amendment prejudice the plaintiffs by complicating discovery and confusing issues at trial, as they assert. Indeed, as the plaintiffs imply in their briefs, the more particularized amended Answer will benefit the parties by providing notice of the nature and grounds of the defense and by narrowing discovery and preparation efforts. n1 None of the other reasons for denial, such as undue delay, bad faith, or dilatory motive [*4] on Novell's part, has been alleged, and the court finds no evidence of such. The defendant's motion for leave to amend the Answer is, therefore, granted.

n1 Referring to the defendant's unamended Answer, the plaintiffs asserted: "The unclean hands defense will prejudice plaintiffs if it remains in its present form ... The undefined nature of defendant's current pleading could permit defendant to change the theory of its defense, without putting plaintiffs on notice that this has occurred ... Defendant could also utilize the broad and undefined nature of its 'unclean hands' defense to rationalize 'fishing expeditions' on matters that would otherwise not properly be subject to discovery." Plaintiffs' Opening Brief in Support of Plaintiff's Motion to Strike Defendant's Fourth Affirmative Defense of Unclean Hands at 7-8. These potential problems will be avoided by the amended Answer.

## B. Plaintiffs' Motion to Strike Defendant's Fourth Affirmative Defense of Unclean Hands

The plaintiffs move to strike the [*5] defendant's fourth affirmative defense of unclean hands pursuant to *Federal Rule of Civil Procedure 12(f)*. Rule 12(f) [HN3] provides that "the court may order stricken from any pleading any insufficient defense or any redundant ... matter." *FED. R. CIV. P. 12(f).* [HN4] Motions to strike affirmative defenses are disfavored. *Procter & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988).* [HN5] When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law."

In its unamended form, the defendant's fourth affirmative defense reads: "The Complaint and the relief requested therein are barred, in whole or in part, by the doctrine of unclean hands." The plaintiffs contend this articulation is insufficient and redundant. They allege it is insufficient because it provides no notice of the nature of the unclean hands defense and because it does not detail the relationship between the plaintiffs' alleged inequitable conduct and the plaintiffs' claim. n2 Even if amended, the plaintiffs object, the defense is redundant, because Novell also asserts the affirmative defense of inequitable [*6] conduct. The plaintiffs maintain that these two affirmative defenses share identical elements and standards of proof. If one fails, the plaintiffs contend, so must the other. The court will now address these objections in turn.

n2 Although the plaintiffs seem to have withdrawn the insufficiency objections following the defendant's motion for leave to amend the Answer, the court will address the insufficiency objection *vis-a-vis* the amended Answer.

### 1. Sufficiency per Rule 8

Rule 8 of [HN6] the Federal Rules of Civil Procedure requires a "short and plain" statement of a claim or defense. *FED. R. CIV. P. 8(a)* and (b). [HN7] It is well settled that the Federal Rules intend a liberal pleading standard. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)* (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"). Indeed, Rule [*7] 8 [HN8] expressly mandates that "each averment of a pleading shall be simple, concise, and direct." *FED. R. CIV. P. 8(e).*

2002 U.S. Dist. LEXIS 19967, *; 65 U.S.P.Q.2D (BNA) 1055

The defendant's fourth affirmative defense, as amended, comprises six short paragraphs stating the basis for the unclean hands defense, including the context of the alleged misconduct. This context includes the title, author, and publication date of the reference allegedly withheld by the plaintiffs from the Patent and Trademark Office ("PTO"). The amended affirmative defense clearly meets the threshold sufficiency requirements of Rule 8.

## 2. Sufficiency Per Rule 9

*Rule 9 of the Federal Rules of Civil Procedure* [HN9] requires that all pleadings of fraud or mistake "shall be stated with particularity." *FED. R. CIV. P. 9(b)*. Such averments, however, remain subject to the liberal pleading requirements of Rule 8. *See In re Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir. 1996); see generally* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1281, at 520-21 (1990) (pleading with particularity under Rule 9(b) should be done consistently with the general philosophy of Rule 8); 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE P 8.13, at [*8] 8-58 (2d ed. 1995) (the mandate of Rule 8 applies "even where the Rules command particularity, as in the pleading of fraud under Rule 9(b)") (footnote omitted). [HN10] In the context of alleged inequitable conduct before the PTO during a patent prosecution, "pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)." *EMC Corp. v. Storage Tech. Corp., 921 F. Supp. 1261, 1263 (D. Del. 1996).*

To the extent the defendant's fourth affirmative defense involves fraud and is subject to the particularity requirement of Rule 9(b), this requirement also is satisfied by Novell's amendment. As noted above, the amended Answer discloses the title, author, and publication date of the relevant prior art allegedly withheld from the PTO. Novell's amended fourth affirmative defense suffices "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings" as Rule 9 requires. 5 WRIGHT & MILLER § 1296 (1990).

## 3. Nexus between the Unclean Hands Defense and Plaintiffs' Claim

[HN11] The defense of unclean hands requires "an immediate and necessary relation" [*9] between the plaintiff's alleged misconduct and the equity sought by that party. *See Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 78 L. Ed. 293, 54 S. Ct. 146, 1934 Dec. Comm'r Pat. 639 (1933)* (apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and

necessary relation to the equity that he seeks in respect of the matter in litigation."). Indeed, in the Third Circuit, this nexus is "the primary principle guiding application of the unclean hands doctrine." *New Valley Corp. v. Corporate Prop. Assocs. 2 & 3, 181 F.3d 517, 525 (3d Cir. 1999).*

The plaintiffs object to Novell's unamended fourth affirmative defense because, they argue, it fails to disclose any relationship between the alleged inequitable conduct constituting unclean hands, and the patent infringement claim at issue. The amended fourth affirmative defense, however, makes clear this relationship. Novell alleges the defendants knowingly, and with an intent to deceive, failed to disclose relevant and material prior art to the Patent and Trademark Office. If such conduct constitutes unclean hands, it would render the patent unenforceable, [*10] and the present infringement action necessarily would fail. *See generally Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 78 L. Ed. 293, 54 S. Ct. 146, 1934 Dec. Comm'r Pat. 639 (1933).* The relationship between the alleged inequitable conduct on the part of the plaintiffs and the equity sought by them has been made sufficiently clear by Novell's amended Answer.

## 4. Redundancy

The plaintiffs object to Novell's fourth affirmative defense of unclean hands as redundant because it is indistinguishable from Novell's third affirmative defense of inequitable conduct. The elements and standards of proof for the two defenses are identical, the plaintiffs contend, in the context of non-disclosure of material prior art to the PTO during the procurement of a patent.

The court is unconvinced that the two defenses are "identical," even in the context of non-disclosure to the PTO. The Federal Circuit has defined [HN12] inequitable conduct as the "failure to disclose material information, or submission of false material information, with an intent to deceive." *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867 (Fed. Cir. 1988).* [HN13] Unclean hands, however, remains a broader [*11] defense less amenable to a particular checklist of elements. [HN14] The doctrine of unclean hands

necessarily gives wide range to the equity court's use of discretion ... It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act

2002 U.S. Dist. LEXIS 19967, *; 65 U.S.P.Q.2D (BNA) 1055

concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim.

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 815, 89 L. Ed. 1381, 65 S. Ct. 993, 1945 Dec. Comm'r Pat. 582 (1945)* (citation omitted). Although the two affirmative defenses in the instant case may well rest on the same facts and may result in identical outcomes, the defenses themselves are not necessarily identical. Particularly at this early stage in the proceedings and given the disfavor with which motions to strike affirmative defenses are received, the court will allow the fourth affirmative defense to remain, to succeed or [*12] fail as it may in the remaining litigation.

**III. CONCLUSION**

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The plaintiffs' motion to strike the defendant's fourth affirmative defense of unclean hands (D.I. 8) is DENIED.

2. The defendant's motion for leave to amend its Answer (D.I. 12) is GRANTED.

3. The defendant shall file its amended Answer within 10 days of the date of this order.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

October 17, 2002