# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and )
HONEYWELL INTELLECTUAL PROPERTIES INC., )
)
                Plaintiffs, )
)
            v. )      C.A. No. 04-1338-KAJ
)
APPLE COMPUTER, INC; *et al.*, )
)
                Defendants )
)

## BRIEF IN SUPPORT OF DEFENDANT INNOLUX DISPLAY CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**DUANE MORRIS LLP**
Daniel V. Folt (Del. I.D. No. 3143)
Gary W. Lipkin (Del. I.D. No. 4044)
1100 North Market Street, 12th Floor
Wilmington, Delaware 19801
Tel:   302.657.4900
Fax:  302.657.4901
E-Mail:   dfolt@duanemorris.com
                gwlipkin@duanemorris.com

**OF COUNSEL:**

Donald R. McPhail
**DUANE MORRIS LLP**
1667 K Street, NW
Suite 700
Washington, DC 20006
(202) 776-7800
E-Mail: drmcphail@duanemorris.com

Attorneys for Defendant InnoLux Display
Corp.

DATED: August 25, 2006

# TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . 1

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    The Delaware Long-Arm Statute Does Not Provide a Basis for Personal
        Jurisdiction Over IDC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Subsection 3104 (c)(1) of the Delaware Long Arm Statute does
            not confer specific jurisdiction over IDC . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Subsection 3104(c)(4) of the Delaware Long Arm Statute does
            not confer general jurisdiction over IDC . . . . . . . . . . . . . . . . . . . . . . 15

    B.    The Federal Due Process Clause Does Not Provide a Basis for Personal
        Jurisdiction Over IDC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1.    Exercising Specific Jurisdiction Over IDC Would Violate the
            Federal Due Process Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        2.    Exercising General Jurisdiction Over IDC Would Violate the
            Federal Due Process Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        3.    Exercising Personal Jurisdiction Over IDC Would Offend
            Traditional Notions of Fair Play and Substantial Justice . . . . . . . . . . . . 22

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**CASES**

*3D Systems, Inc. v. Aarotech Labs, Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998) ................................................................8, 11

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.,*
    1999 WL 615175 (D. Del. Aug. 3, 1999).................................................13, 14

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,*
    480 U.S. 102 (1987).......................................................................................passim

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir.), *cert. dismissed*, 512 U.S. 1273 (1994) ....................8, 11, 18, 22

*Boone v. OyPartek Ab,*
    724 A.2d 1150 (Del. Super. 1997) ............................................................10, 11

*Burger King v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................................... 17, 18, 22

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005)................................................................8, 10, 19

*eSpeed, Inc. v. Brokertec USA, L.L.C.,*
    2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004)................................12, 16

*Hanson v. Denckla,*
    357 U.S. 235 (1958)........................................................................................18

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
    466 U.S. 408 (1984).................................................................................18, 21

*ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
    147 F. Supp. 2d 268 (D. Del. 2001)..................................................................8

*Intel Corp. v. Silicon Storage Tech.,*
    20 F. Supp. 2d 690 (D. Del. 1998).....................................................................8

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)..................................................................................17, 22

*Jeffreys v. Exten,*
    784 F. Supp. 146 (D. Del. 1992).....................................................................10

*Keeton v. Hustler Magazine,*
    465 U.S. 770 (1984)..........................................................................................18

*LaNuova D&B, S.p.A. v. Bowe Co.,*
    513 A.2d 764 (Del. 1986)............................................................................10, 11

*M&M Techs., Inc. v. Gurtler Chem, Inc.,*
    2005 U.S. Dist. LEXIS 1726 (D. Del. Feb. 8, 2005)..................................10, 14

*Merck & Co., Inc. v. Barr Laboratories, Inc.,*
    179 F. Supp. 2d 368 (D. Del. 2002)..................................................................8

*Padcom , Inc. v. NetMotion Wireless, Inc.,*
    2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004).......................................14

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.,*
    1991 Del. Ch. LEXIS 113 (July 10, 1991)........................................................15

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    48 F.3d 1355 (Fed. Cir. 1998)...........................................................................8

*Renner v. Lanard Toys Ltd.,*
    33 F.3d 277 (3d Cir. 1994).............................................................................20

*Sears, Roebuck & Co. v. Sears plc,*
    744 F. Supp. 1297 (D. Del. 1990)...................................................................21

*Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,*
    69 F. Supp. 2d 622 (D. Del. 1999) ...........................................................passim

*Thorn EMI N. Am. v. Micron Tech.,*
    821 F. Supp. 272 (D. Del. 1993)..........................................................11, 12, 15

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).....................................................................................18, 22

## STATUTES

Del. Code Ann. tit. 10, § 3104................................................................................passim

Federal Rule of Civil Procedure 12(b)(2)...............................................................1, 24

I.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

Honeywell International Inc., a Delaware corporation, and Honeywell Intellectual Properties Inc., an Arizona corporation, (collectively "Honeywell") have brought this action for patent infringement under 35 U.S.C. § 271 against InnoLux Display Corporation ("IDC"), a Taiwanese corporation.

On July 11, 2006, IDC was served with a copy of Honeywell's First Amended Complaint.    According to the accompanying Request for International Judicial Assistance, the time for responding was set at forty-five (45) days after service.  Pursuant to Federal Rule of Civil Procedure 12(b)(2), IDC timely moves to dismiss the action against it for lack of personal jurisdiction.

## II.   SUMMARY OF ARGUMENT

1.     InnoLux Display Corporation ("IDC") is a Taiwanese corporation with no specific or general contacts with the state of Delaware or any resident thereof. IDC transacts no business in Delaware or with any resident of the state of Delaware, and IDC has no agent or representative in Delaware. IDC has directed no purposeful action toward the Delaware market or the residents of the state of Delaware, IDC derives no revenue from the sale of any product in Delaware, and IDC has not engaged in continuous or substantial activity with respect to Delaware such that IDC is subject to personal jurisdiction under the Delaware long-arm statute.

2.     Because IDC has no contacts with Delaware or any resident thereof and has not directed any purposeful conduct toward Delaware or any resident thereof, the exercise of personal jurisdiction over IDC would violate the federal Due Process Clause.

3.     The exercise of personal jurisdiction over IDC in Delaware would offend traditional notions of fair play and substantial justice because the heavy burden of subjecting IDC to litigation in Delaware far outweighs any supposed prejudice to Honeywell that might result from the dismissal of IDC from this action.

## III.    STATEMENT OF FACTS

InnoLux Display Corporation ("IDC") is a corporation organized under the laws of Taiwan, with a principal place of business in Chu-nan, Taiwan. (*See* Yang Declaration at ¶ 3, attached as Exhibit "A"). IDC began manufacturing and selling LCD panels and modules (collectively "IDC's LCD components") in 2004. (*Id.* at ¶ 4). IDC manufactures IDC's LCD components in Taiwan or at a facility in Shenzhen, Guangdong, China. (*Id.* at ¶ 5).

IDC's LCD components are available in various sizes, including 1.4" (diagonal), 1.5", 1.8" and 2.2" for small size applications, such as mobile phones, and 3.5", 5.6", 7", 8" and 10.2" for middle size applications, such as portable Audio Visual ("AV") devices. (*Id.* at ¶ 6).

IDC sells LCD components for small size applications only in Asia to companies such as Nokia. (*Id.* at ¶ 7). IDC understands that the devices containing IDC's LCD components for small size applications are designed for and sold in the Asian market only. (*Id.* at ¶ 8). More specifically, IDC understands that IDC's LCD components for small size applications that are sold to Nokia are used in mobile phones having a "black & white" display and are therefore only intended for sale in developing countries, such as India, and not in the US. (*Id.*) However, IDC has no actual, direct knowledge of, and certainly no control over, where Nokia or any other customer makes, uses or sells devices containing IDC's LCD components for small size applications. (*Id.* at ¶ 9).

IDC sells LCD components for middle size applications only in Asia and only to companies located in China, Taiwan, Hong Kong, Japan, South Korea and Malaysia. (*Id.* at ¶ 10). IDC understands that each of these companies acts as a distributor, *i.e.* the

-3-

company sells IDC's LCD components to one or more other companies, and/or act as a manufacturer, *i.e.* the company makes devices containing IDC's LCD components, either for direct sale or under an OEM (original equipment manufacturer) relationship. (*Id.* at ¶ 11). However, IDC has no direct knowledge of and no control over where these companies use or sell IDC's LCD components for middle size applications or where these companies make, use or sell devices containing IDC's LCD components for middle size applications. (*Id.* at ¶ 12).

IDC manufactures LCD monitors in China under an OEM relationship for customers including HP, Dell, ViewSonic, Acer and LG. (*Id.* at ¶ 13). IDC has a subsidiary located in Austin, Texas (InnoLux Corporation; "IC") that receives and processes orders for IDC's LCD monitors only, and provides testing services for the monitor customers. (*Id.* at ¶ 14). IC employees 3 salesmen, 1 accountant and 2 engineers in Texas. (*Id.* at ¶ 15). No IC employee is located in or travels to the state of Delaware in connection with their employment. (*Id.*).

IDC and IC do not have, and have never had, an office or any other facility in the state of Delaware. (*Id.* at ¶ 16). IDC and IC are not licensed, and have never been licensed, to do business in the state of Delaware. (*Id.* at ¶ 17).

IDC and IC do not direct, and have never directed, any sales or marketing activity to any resident of the state of Delaware. (*Id.* at ¶ 18). IDC and IC do not direct, and have never directed, any commerce into the state of Delaware. (*Id.* at ¶ 19). IDC and IC do not sell or market, and have never sold or marketed, any products in the state of Delaware or to any resident of the state of Delaware. (*Id.* at ¶ 20). IDC and IC have made no plans

to sell or market any products in the future in the state of Delaware or to any resident of the state of Delaware. (*Id.* at ¶ 21).

IDC and IC do not send and have never sent any promotional letter or other advertisements to any resident of the state of Delaware. (*Id.* at ¶ 22). IDC and IC do not solicit, and have never solicited, any purchase orders for any products from any resident of the state of Delaware. (*Id.* at ¶ 23). IDC and IC have not received, and have never received, any purchase orders for any products from any resident of the state of Delaware. (*Id.* at ¶ 24).

IDC's website (www.innolux.com.tw) is offered in Mandarin Chinese only; there is no English language version of any of the information, except for the information concerning "Recycling information for customers" (which directs customers to product disposal locations in Singapore, Germany, the Netherlands and the Czech Republic) and "RoHS declaration" (information about component(s) of IDC's LCD components that is required by the Restriction of Hazardous Substances directive issued by the European Union (EU Directive 2002/95/EC)). (*Id.* at ¶ 25). No one can place orders for IDC LCD components using IDC's website. (*Id.* at ¶ 26). IC does not have a separate website. (*Id.* at ¶ 27).

IDC and IC have no sales representative or agent who resides in the state of Delaware, or who travels to the state of Delaware to sell any product. (*Id.* at ¶ 28). IDC and IC have no distributor or retailer in the state of Delaware for any products. (*Id.* at ¶ 29). IDC and IC have no past or on-going relationships with any distributor or retailer in the state of Delaware. (*Id.*).

IDC and IC derive no revenue from any sale of any product in the state of Delaware. (*Id.* at ¶ 30). IDC derives all of its revenue from the direct sale of IDC's LCD components to its customers in Asia. (*Id.* at ¶ 31). IDC does not receive any revenue, such as a royalty or commission, from any further sale or use of IDC's LCD components by any of its customers in any location. (*Id.*).

For LCD components, IDC is merely a component supplier and, as such, does not care and has no idea about how end-product manufacturers will later assemble those LCD components with other components, regardless of whether such a manufacturer is IDC's direct customer or one of the companies that purchases IDC LCD components from independent third-parties. IDC also does not care and has no idea where consumer retailers may eventually try to sell end-products containing an IDC LCD component, particularly as such retailers are even more remote to IDC than the end-product manufacturers. As a component supplier, IDC's revenue is independent of what its customers may subsequently do with IDC's LCD components, including whether or not that customer is even able to sell or use IDC's LCD components or devices containing them, or where those products or devices may eventually be sold, offered for sale or used. (*Id.* at ¶ 32). IDC's revenue arises *solely* from IDC's *direct sales* of IDC's LCD components in Asia; IDC receives no revenue from any subsequent sale or use of an IDC LCD component by anyone anywhere. (*Id.*)

IDC has no established channels of distribution by which IDC's LCD components could have been foreseen to reach the state of Delaware. (*Id.* at ¶ 33). Rather, once IDC has sold IDC's LCD component to its customer in Asia, IDC no longer has any knowledge of or control over what that customer does with the LCD component or where

it may do so. (*Id.*) Any distribution channel for IDC's LCD components, to the extent one may even arguably exist, is therefore composed only of IDC and *its immediate, direct customers*, at least for the reason that IDC has no knowledge of or control over *any* subsequent activity by these customers. (*Id.*)

In Honeywell's First Amended Complaint, Honeywell added IDC as a defendant based on the allegation that IDC:

> has been and is engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district.

(D.I. 239 at ¶ 82).

However, Honeywell has not alleged that IDC transacts any business in Delaware, that IDC engages in any persistent course of conduct in Delaware, or that IDC derives substantial revenue from the sale of IDC LCD components, or devices containing those products, in Delaware. Moreover, Honeywell has not even alleged that any device containing an IDC LCD component has ever been bought, sold, offered for sale or used anywhere in the state of Delaware.

## IV.    ARGUMENT

When the defense of lack of personal jurisdiction is raised, the plaintiff bears the burden of alleging facts sufficient to make a *prima facie* showing of jurisdiction over the defendant. *See ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To satisfy this burden under the law, the plaintiff must set forth facts which "establish with reasonable particularity" that jurisdiction over the defendant exists. *See id.* at 271. Honeywell has not, and cannot, meet this burden with respect to IDC.

In a patent infringement case, the precedent of the United States Court of Appeals for the Federal Circuit should control the question of personal jurisdiction. *See 3D Systems, Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir.), *cert. dismissed*, 512 U.S. 1273 (1994). A court may exercise general or specific jurisdiction. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).

Irrespective of whether general or specific, a two-part test is to be applied to determine whether personal jurisdiction exists over an out-of-state defendant: (i) whether the forum state's long-arm statute permits service of process; and (ii) whether the exercise of jurisdiction complies with the requirements of due process. *See Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005).

To date, the Delaware Supreme Court has not yet merged the analysis of the state long-arm statute with the analysis of federal due process. *See Merck & Co., Inc. v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002); *Intel Corp. v. Silicon*

*Storage Tech.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998) ("it is important not to collapse the long-arm inquiry into the due process inquiry [because] the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis."). Accordingly, both parts of the applicable test will be addressed in this brief.

### A. The Delaware Long-Arm Statute Does Not Provide a Basis for Personal Jurisdiction Over IDC

With respect to the first part of the applicable test, the Delaware long-arm statute provides that a court may exercise personal jurisdiction over a non-resident defendant only if that defendant:

> (1)    Transacts any business or performs any character of work or service in the State;
> (2)    Contracts to supply services or things in this State;
> (3)    Causes tortious injury in the State by an act or omission in this State;
> (4)    Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5)    Has an interest in, uses or possesses real property in the State; or
> (6)    Contracts to insure or as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c).

Honeywell has not alleged in its First Amended Complaint that IDC has any direct contacts with Delaware, or that IDC has directly or indirectly sold any of IDC's

LCD components in Delaware. (D.I. 239 at ¶ 82).[1] Rather, Honeywell has alleged only that devices containing IDC's LCD components "are sold into the United States with [IDC's] knowledge and intention that such . . . [devices] would be sold throughout the United States, including this judicial district."

Honeywell therefore appears to have based its plea for jurisdiction over IDC on a "stream of commerce" theory. Delaware courts have found jurisdiction in certain "stream of commerce" cases, if ever, typically under §§ 3104(c)(1) and (c)(4). *See, e.g.,* *Commissariat*, 395 F.3d at 1320-22; *M&M Techs., Inc. v. Gurtler Chem, Inc.*, 2005 U.S. Dist. LEXIS 1726, at *9 (D. Del. Feb. 8, 2005). Delaware courts generally view § 3104(c)(1) as a specific jurisdiction provision, which requires that at least some conduct of the defendant must have occurred in the state of Delaware, and § 3104(c)(4) as a general jurisdiction provision. *See, e.g., Boone v. OyPartek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997); *LaNuova D&B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992).

Accordingly, Honeywell must prove either specific or general jurisdiction is appropriate in this case, and this is something Honeywell simply cannot do.

### 1. Subsection (c)(1) of the Delaware Long Arm Statute does not confer specific jurisdiction over IDC

As a specific jurisdiction provision, subsection (c)(1) requires some nexus between the plaintiff's cause of action and the conduct of the defendant alleged to give rise to jurisdiction. *See Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F. Supp.

---

[1] Honeywell also has *not* alleged that IDC contracts to supply services or things in Delaware, or that IDC causes tortious injury in Delaware by an act or omission therein, or that IDC has, uses or possesses real property in Delaware, or that IDC contracts to insure for anything located, executed or to be performed within Delaware. 10 *Del. C.* § 3104(c)(2), (c)(3), (c)(5) and (c)(6) of the statute are therefore plainly not at issue here.

2d 622, 625 (D. Del. 1999); *LaNuova*, 513 A.2d at 768. Thus, specific jurisdiction exists when: (i) the out-of-state defendant "purposefully directed" its activities towards the residents of the forum state; (ii) the plaintiff's cause of action "arises out of or relates to" the defendant's activities within the forum state; and (iii) assertion of personal jurisdiction is "reasonable and fair." *See 3D Systems*, 160 F.3d at 1378. The burden is on the plaintiff to show that such a nexus exists. *See Siemens*, 69 F. Supp. 2d. at 625.

To satisfy the plaintiff's burden under subsection (c)(1), Honeywell must show either: (i) pre-filing sales by IDC of the infringing product in the forum state; or (ii) IDC is transacting business through an "established distribution channel" such that its products are sold in the forum state. *See Siemens*, 69 F. Supp. 2d at 625; *see also Beverly Hills Fan*, 21 F.3d at 1565-66. In addition, Honeywell must show that the IDC's actions in this regard were specifically directed toward residents of the state of Delaware and the protection of Delaware laws. *See Thorn EMI N. Am. v. Micron Tech.*, 821 F. Supp. 272, 274 (D. Del. 1993). Honeywell cannot make such a showing.

IDC has never transacted any business in the state of Delaware, IDC has never established a distribution channel into Delaware and IDC has no retailers or distributors for its LCD components in Delaware. And Honeywell does not allege otherwise in its First Amended Complaint.

Similarly, IDC has never made any sales of or offers to sell IDC's LCD components and LCD monitors in Delaware. Rather, IDC sells, delivers and passes title to all its LCD components and LCD monitors in Asia, which is plainly not in Delaware. *See Boone*, 724 A.2d at 1156 (when a manufacturer passes title to goods outside

Delaware, manufacturer has not performed an act in Delaware). Again, Honeywell does not allege otherwise in its First Amended Complaint.

To constitute "transacting business" under §3104(c)(1), not only must some act of the defendant have actually occurred in Delaware, which is clearly not the case here, but there must also be some conduct by the defendant that is directed at the residents of Delaware and the protection of Delaware laws. *See Siemens*, 69 F. Supp. 2d at 625. Isolated business activities, even if Honeywell could show them, are generally not sufficient to qualify as "transacting business" under the Delaware statute. *See Thorn EMI N. Am.*, 821 F. Supp. 2d at 274. To the contrary, the defendant's conduct must be "part of a general business plan . . . to solicit business in Delaware and deliver products to customers in Delaware." *See id.*

In this case, IDC has not committed any act that actually occurred in Delaware, either directly or through its subsidiary IC. And Honeywell does not allege otherwise.

Moreover, IDC's conduct does not evince a general business plan directed to soliciting business in Delaware and/or to delivering LCD components to customers in Delaware. IDC presently has no customers in Delaware, and has never had any customers in Delaware, simply because IDC makes, sells and delivers all of its LCD components in Asia, not Delaware. IDC and IC do not have any offices, employees, agents, distributors or retailers in Delaware, and IDC and IC are not licensed to do business in Delaware. While IDC has an Internet website which can be accessed by someone in Delaware, no information about IDC LCD components is presented (IC has no website). In addition, it is not possible to place an order using IDC's website or to ask a technical question or seek technical assistance using the website. *See eSpeed, Inc. v.*

*Brokertec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760 at *11 (D. Del. Sept. 13, 2004) ("It is the interactivity and the conducting of business over the Internet that carries jurisdictional consequences . . .").

Thus, irrespective of whether an IDC LCD component may eventually be found somewhere in Delaware, Honeywell would not be able to show that such a component arrived in Delaware through an "established distribution channel."   Absent a showing of such an established distribution channel directed at Delaware, jurisdiction would still not be appropriate. *See, e.g., American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, 1999 WL 615175 (D. Del. Aug. 3, 1999) (Even though distributors of alleged infringing products directed efforts at Delaware, defendant manufacturer did not direct the distributors towards Delaware, and there was no ongoing relationships between defendant manufacturer and Delaware residents – therefore, no jurisdiction over defendant manufacturer under subsection 3104(c)(1)).

IDC has no "established distribution channel" via which IDC could reasonably foresee that IDC's LCD components might end up being sold or offered for sale in Delaware (something that Honeywell has thus far failed to even show or allege).   Rather, once IDC has sold an IDC LCD component to IDC's customer in Asia, IDC no longer has any knowledge of or control over what the customer does with the product, or where.[2]   Any alleged "established distribution channel" for IDC's LCD components therefore, to the extent one may even arguably exist, is composed exclusively of IDC and *its immediate, direct customers*, at least for the reason that IDC has no knowledge of or control over *any subsequent activity* by these customers once the component has been

-13-

sold to them. IDC certainly does not instruct its customers as to where to market devices containing IDC's LCD components, either directly or through its subsidiary IC. Accordingly, such a distribution channel, to the extent it may be said to exist, is a wholly insufficient basis for finding jurisdiction in Delaware. *See, American Bio Medica.*, 1999 WL 615175.

Finally, in Delaware, "stream of commerce" cases generally require some purposeful conduct by the defendant that is directed at Delaware or the residents thereof. *See, e.g., Padcom , Inc. v. NetMotion Wireless, Inc.*, 2004 U.S. Dist. LEXIS 9658 at *16-17 (D. Del. May 24, 2004); *M&M Technologies*, 2005 U.S. Dist. LEXIS 1726 at *9. In this case, Honeywell has not even alleged that IDC (or IC) has directed any purposeful conduct at Delaware, or the residents thereof. None of IDC's LCD components are designed for the Delaware market and IDC and IC have made no efforts to attempt to sell any IDC LCD components or monitors in Delaware. It is not possible for any resident of Delaware to purchase IDC LCD components or monitors using IDC's Chinese-language website, or even to obtain technical information or assistance concerning IDC's LCD components or monitors. In sum, there is absolutely no evidence of any conduct by IDC (or IC) that was or is directed at Delaware or its residents.

Indeed, IDC has not even contracted with any distributors or retailers in the United States to distribute or sell IDC's LCD components or monitors throughout the US. All sales of IDC's LCD components and monitors take place in Asia, and title to those products passes in Asia. What IDC's customers do with those LCD components and monitors, and where they chose to do it, is outside of IDC's knowledge and control.

---

[2] Even if IDC did know that its customers' products may reach Delaware, an allegation which has not been shown in this case, this would still be insufficient to confer personal jurisdiction over

In view of the utter absence of any contact between IDC (or IC) and Delaware and the utter absence of any purposeful conduct by IDC (or IC) directed toward Delaware, subsection § 3104(a) does not provide any basis for this Court finding personal jurisdiction over IDC.

**2.    Subsection 3104(c)(4) of the Delaware Long Arm Statute does not confer general jurisdiction over IDC**

As a general jurisdiction provision, subsection (c)(4) requires that the out-of-state defendant's contacts with the forum state be both "continuous and systematic" as well as substantial, even though those contacts may not relate to the plaintiff's cause of action. *See Siemens*, 69 F. Supp. 2d at 626. A finding of general jurisdiction is therefore proper only "when [the] defendant has had contacts with [the forum state] that are *so extensive and continuing* that it is fair and consistent with state policy to require that the defendant appear [in Delaware] and defend a claim even when that claim arose outside of [Delaware] and causes injury outside [Delaware]." *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.*, 1991 Del. Ch. LEXIS 113, at *8 (Del. Ch. July 10, 1991) (emphasis supplied).

To satisfy the plaintiff's burden under subsection (c)(4), Honeywell must show that IDC either (i) regularly does or solicits business in Delaware; or (ii) derives substantial revenue from the sale of products in Delaware. *See* 10 *Del. C.* § 3104(c)(4). Honeywell cannot show either one of these elements with respect to IDC or IC.

With respect to the first element, *i.e.* whether the defendant regularly does or solicits business in Delaware, IDC and IC have never done or solicited *any* business in

---

IDC. *See Thorn EMI N. Am.*, 821 F. Supp. at 274.

the state of Delaware.  And Honeywell did not allege otherwise in its First Amended Complaint.

More specifically, IDC and IC have never made *any* sales of or offers to sell *any* products in Delaware.  IDC and IC do not have, and have never had, an office or any other facility in Delaware and IDC and IC are not licensed, and have never been licensed, to do business in Delaware.  IDC and IC do not have any officers, employees, agents, distributors or retailers in Delaware.  Clearly, IDC does not do business in the State of Delaware, either directly or through IC.

Further, IDC and IC do not send and have never sent any promotional letters or other advertisements to any resident of Delaware.  IDC and IC do not solicit, and have never solicited, any purchase orders for any products from any resident of Delaware. While IDC has an Internet website which can be accessed by someone in Delaware, no information about IDC LCD components is presented and it is not possible to place an order using IDC's website or to ask a technical question or seek technical assistance using the website.  *See eSpeed*, 2004 U.S. Dist. LEXIS 19760 at *11.  IC has no website. IDC's conduct therefore does not evince an effort to solicit business in Delaware.

With respect to the second element, *i.e.* whether the defendant derives substantial revenue from the sale of goods in Delaware, IDC does not derive *any* revenue from the sale of goods in Delaware.  Rather, IDC derives *all* of its revenue from sales of IDC's LCD components and monitors in Asia, outside of Delaware.

IDC and IC receive no royalty or commission, or any other payment, based on any subsequent sale of a device containing an IDC LCD component or an IDC LCD monitor, whether in Delaware or elsewhere.  Moreover, IDC and IC have no knowledge

or control over what, if anything, IDC's customers may do with the LCD components and monitors they buy, or where they may do it. The mere fact that a third party might have sold a device containing an IDC LCD component in Delaware, as alleged by Honeywell in its First Amended Complaint, does not mean that IDC derived *any* revenue from that sale. *See Siemens*, 69 F. Supp. 2d at 627 ("any revenue [defendant] has generated through sales of DRAM chips to customers outside of Delaware whose electronic devices are sold in Delaware is too remote and insubstantial to meet the requirements of § 3104(c)(4).").

Accordingly, Honeywell cannot show that IDC "regularly does or solicits business" in Delaware or that IDC "derives substantial revenue" from the sale of goods in Delaware. All of IDC's business activities, including those of IC, take place outside of Delaware. IDC and IC have directed no activity towards Delaware and IDC and IC derive no revenue from the sale of anything in Delaware. Section 3104(c)(4) therefore does not provide a basis for finding personal jurisdiction over IDC in Delaware.

**B.    The Federal Due Process Clause Does Not Provide a Basis for Personal Jurisdiction Over IDC**

Not only do IDC's conduct and circumstances fail to satisfy the minimum standards for Delaware's long-arm statute, they also fail to reach the minimum requirements of federal due process. For a district court to exercise jurisdiction within the limits of due process, the out-of-state defendant must have "certain minimum contacts with . . . [the forum state] . . . such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Asahi Metal Indus. Co., Ltd. V. Superior Court of California*, 480 U.S. 102, 108-109, 113 (1987); *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The minimum contacts between the non-resident defendant and the forum state must be "purposeful" to satisfy the requirement of due process. *See Burger King*, 471 U.S. at 474. In this case, there have been no "purposeful" contacts between IDC and Delaware, and Honeywell cannot show otherwise.

### 1. Exercising Specific Jurisdiction Over IDC Would Violate the Federal Due Process Clause

To assert specific jurisdiction, the plaintiff must show that the non-resident defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 486 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (for specific jurisdiction, it is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state"). Even under a "stream of commerce" theory, some purposeful conduct must be found in order for specific jurisdiction to be exercised. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Beverly Hills Fan*, 21 F.3d at 1565.

In this case, Honeywell cannot show that IDC has "purposefully directed" any of its activities towards Delaware, either directly or through IC. IDC makes its LCD components in Taiwan or China, and sells the LCD components exclusively to companies in Asia. IDC does not advertise in Delaware and solicits no business from residents of Delaware. IDC and IC have no agent, distributor or retailer for LCD components or LCD monitors in Delaware and IDC does not sell or attempt to sell any of its LCD components or LCD monitors in Delaware. Indeed, it is not even possible for a resident of Delaware

to purchase IDC's LCD components or LCD monitors through IDC's website. It is therefore indisputable that IDC has not "purposefully directed" *any* activity toward Delaware, and so specific jurisdiction should not attach.

The Court of Appeals for the Federal Circuit, however, has recently stated that there is "substantial uncertainty" as to whether an "intent and purpose" is required to find minimum contacts under the Delaware long-arm statute. *See Commissariat*, 395 F.3d at 1322. In addressing this uncertainty, the Federal Circuit discussed the Supreme Court's decision in *Asahi Metals*, in which there was a split over what would constitute sufficient minimum contacts.

More specifically, Justice O'Connor, writing for a plurality of the Court in *Asahi*, found that:

> [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112. Rather, there must be "an act of the defendant purposefully directed toward the forum State." *Id.*

Thus, the exercise of personal jurisdiction over a non-resident defendant requires some conduct on the part of that defendant that evidences "an intent or purpose to serve the market in the forum State." *Id.* Such conduct may include "advertising in the forum State, establishing channels for providing regular advice to customers in the forum States, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

Under Justice O'Connor's test, there is clearly no basis for exercising personal jurisdiction over IDC. IDC has no contacts at all with Delaware or the residents thereof,

directly or through IC.  IDC and IC do not advertise in Delaware.  IDC and IC have not

established any channel for providing advice to residents of Delaware (indeed, no product

information is available on IDC's website and IC has no website).  And IDC and IC have

no agent, retailer or distributor located in Delaware or who visits Delaware.

In contrast to Justice O'Connor's test requiring some activity beyond merely

placing a product in the stream of commerce, Justice Brennan stated in a concurring

opinion that:

> The stream of commerce refers not to unpredictable currents or eddies, but
> to the regular and anticipated flow of products from manufacture to
> distribution to retail sale.  As long as a participant in this process is aware
> that the final product is being marketed in the forum State, the possibility
> of a lawsuit there cannot come as a surprise.

*Id.* at 117.

Even under Justice Brennan's less restrictive standard, however, there is no basis

for exercising personal jurisdiction over IDC.  Justice Brennan's test is based on a

defendant placing its product in a stream of commerce that is a "regular and anticipated

flow" from the manufacturer to the distributor to the retailer.[3]  No such stream of

commerce can be shown here with respect to IDC.  Rather, IDC manufactures its LCD

components in China or Taiwan and then sells those LCD components to companies in

Asia.  At that point, however, IDC's involvement in and control over the distribution

and/or sale of its LCD components ends.  Similarly, once IDC has sold an LCD monitor

---

[3]  *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994) ("[e]ven under Justice
Brennan's view, the mere knowledge or awareness that one's products will end up in the forum
state without some regularity of shipment would not be enough.  The contact must be purposeful,
rather than incidental, because the stream of commerce does not refer to 'unpredictable currents
or eddies.'").

to a customer, IDC's involvement in and control over the distribution and/or sale of such a monitor ends.

IDC and IC have no direct knowledge of and no control over what customers do with the LCD components or monitors they purchase. Accordingly, from IDC's perspective, there is nothing "regular and anticipated" about how IDC's LCD components or LCD monitors may end up in Delaware, or even if they end up there at all. Thus, if any consumer device containing an IDC LCD component may be present in Delaware, such a device arrived in Delaware via a path that is unknown to both IDC and IC, and wholly outside IDC's and IC's control. This hardly constitutes Justice Brennan's "regular and anticipated flow" of goods from the manufacturer into the forum state.

IDC's conduct therefore fails to satisfy either Justice O'Connor's test or Justice Brennan's test for minimum contacts. Consequently, a finding of specific jurisdiction over IDC would not comport with the requirements of the Due Process clause.

### 2. Exercising General Jurisdiction Over IDC Would Violate the Federal Due Process Clause

When the defendant's conduct and activities do not provide a basis for specific jurisdiction, such as here, then "in order to assert general jurisdiction, the defendant's activity in the forum must be continuous and substantial." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1304 (D. Del. 1990). That is, federal due process permits the exercise of general jurisdiction over a non-resident defendant even when the cause of action does not arise out of or relate to the defendant's activity in the forum state, provided that the defendant has sufficient general contacts with the forum state. *See Helicopteros*, 466 U.S. at 414. For such general contacts to be sufficient to confer

general jurisdiction, the non-resident defendant's activities in the forum state must be "continuous and systematic." *Id.* at 415.

In this case, IDC has absolutely *no* contacts with Delaware, whether "continuous and systematic" or otherwise. IDC and IC have no place of business or other facility in Delaware, and IDC and IC have no employees or agents located in Delaware or who visit Delaware. IDC and IC have never made or sold or offered for sale *any* product in Delaware, and IDC and IC have never advertised any product or solicited any business in Delaware. Accordingly, Honeywell cannot establish that this Court properly may exercise general jurisdiction over IDC.

### 3. Exercising Personal Jurisdiction Over IDC Would Offend Traditional Notions of Fair Play and Substantial Justice

Based on the discussion above, it seems indisputable that IDC simply does not have sufficient minimum contacts with Delaware for this Court to exercise jurisdiction over IDC, either specific or general. Nevertheless, even if such minimum contacts could somehow be shown by Honeywell, the exercise of jurisdiction in this case would violate the Due Process Clause because it would "offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316).

More specifically, a forum state may not exercise jurisdiction over a non-resident defendant if all the facts and circumstances show that such a result would be unreasonable. *See Asahi*, 480 U.S. at 114. The exercise of jurisdiction is unreasonable if "the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568; *see also Burger King*,

-22-

471 U.S. at 477. When the non-resident defendant is foreign, then "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national border." *Asahi*, 480 U.S. at 114.

When these interests and burdens are considered and weighed in the context of the present case, it is clear that any interest that Honeywell and/or Delaware might have in adjudicating this lawsuit in Delaware are vastly outweighed by the considerable burden that will be placed on IDC. IDC is a Taiwanese corporation having *no* contacts with Delaware and all of IDC's manufacturing and sales activity of the LCD components at issue takes place in Asia. All of IDC's customers for the LCD components at issue are Asian companies, and all sales to those companies take place in Asia. Consequently, all of IDC's documents and potential witnesses are located in Asia – no documents and no potential witnesses are located anywhere in the U.S., much less Delaware. The burden of subjecting IDC to a lawsuit in Delaware is therefore very substantial.

The issues presented in this case have no connection to Delaware – no act of alleged infringement by IDC has occurred in Delaware and none of IDC's activities occurred in Delaware. Moreover, the claim is based on federal patent law, and Delaware has no interest in how that law is applied to these facts. Accordingly, the state of Delaware has very little interest in adjudicating this lawsuit in Delaware.

Finally, Honeywell also has very little interest in adjudicating this lawsuit against IDC in Delaware. Honeywell is free to sue, and has sued, parties that are subject to jurisdiction in Delaware and actually sell products that incorporate allegedly infringing LCD modules. Honeywell is also free to sue parties who are not subject to jurisdiction in

Delaware in any other forum in the U.S. in which jurisdiction over the defendant would be proper.

Accordingly, Honeywell will not be prejudiced or harmed by the dismissal of IDC from this action in Delaware. In contrast, IDC would face a substantial burden and would be significantly prejudiced if this suit were allowed to proceed in Delaware.

## V.    CONCLUSION

Honeywell bears the burden of showing that this Court can exercise personal jurisdiction over IDC. However, Honeywell has not and cannot allege facts which establish, with reasonable particularity, that there are sufficient minimum contacts between IDC and Delaware or that IDC has directed any purposeful conduct towards Delaware. Accordingly, for at least the foregoing reasons, IDC respectfully requests that this Court grant IDC's motion to dismiss under Fed. R. Civ. Proc. 12(b)(2) for lack of personal jurisdiction.

DATED: August 25, 2006                    **DUANE MORRIS LLP**


                                          /s/ Daniel V. Folt
                                          Daniel V. Folt (Del. I.D. No. 3143)
                                          Gary W. Lipkin (Del. I.D. No. 4044)
                                          1100 North Market Street, 12th Floor
                                          Wilmington, Delaware 19801
                                          Tel:    302.657.4900
                                          Fax:    302.657.4901
                                          E-Mail:    dfolt@duanemorris.com
**OF COUNSEL:**                                      gwlipkin@duanemorris.com

Donald R. McPhail
**DUANE MORRIS LLP**
1667 K Street, NW
Suite 700
Washington, DC 20006
(202) 776-7800                            Attorneys for Defendant InnoLux Display
E-Mail: drmcphail@duanemorris.com         Corp.