# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

October 24, 2006

**BY E-FILING**

The Honorable Kent A. Jordan
United States District Court
   for the District of Delaware
844 King Street
Wilmington, DE  19801

   Re: *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
     Consol. C.A. No. 04-1338-KAJ

Dear Judge Jordan:

  Pursuant to Paragraph 7 of the Scheduling Order in this matter, and on behalf of the Honeywell Plaintiffs ("Honeywell"), we write to update the Court on the status of "the nature of the matters in issue and the progress of discovery to date." We note that counsel have agreed that each side would submit its respective views of the status of the case. We look forward to answering any questions the Court may have regarding this status report during the upcoming teleconference on October 31, 2006.

**I.** **Current Defendants**

  When the parties began discussing scheduling of this matter in March of this year, sixteen defendant "groups" had appeared in response to Honeywell's charge of infringement.[1] Honeywell had previously begun service of process under international conventions against three other defendants, one of whom (Arima Display) has now answered and two of whom (InnoLux and PicVue) have yet to answer. Since that time, five of the appearing defendants have taken a license to the McCartney '371 patent and consequently been dismissed from the action or relegated to "stayed" status, (AU Optronics, HannStar, ID Tech, Quanta, and Sony). As it currently stands, then, twelve active defendants remain in the case.

---

[1]  AU Optronics, BOE Hydis, Casio, Citizen, Fuji, HannStar, Hitachi, ID Tech, Optrex, Philips, Quanta, Samsung SDI, Sanyo and Seiko Epson, Sony, Toppoly (TPO) and Wintek.

The Honorable Kent A. Jordan
October 24, 2006
Page 2

## II. Honeywell's and the Defendants' Respective Document Productions

### A. Honeywell

Honeywell's primary document production was complete as of August 17, 2006. Honeywell has recently conducted a small supplemental document production based upon more recent requests from specific defendants and as a result of the meet and confer process with other defendants. While Honeywell anticipates the need to do additional, small supplemental productions where, for example, additional licenses are entered into or additional infringing modules are discovered, Honeywell considers its document production to be substantially complete as of the time of the conference.

### B. Defendants

Pursuant to this Court's Order of September 27, 2006, the defendants' respective document productions are not required to be substantially complete until the time of the status teleconference. As of the submission of this letter, the defendants' respective production of documents is as follows:

| DEFENDANT | PAGES OF DOCUMENTS PRODUCED |
|---|---|
| Arima | 1531 |
| BOE Hydis | 0 |
| Casio Computer | 321 |
| Citizen | 1,762 |
| Fuji | 24,462 |
| Hitachi | 169,855 |
| Optrex* | 13,289 |
| Philips | 0 |

The Honorable Kent A. Jordan
October 24, 2006
Page 3

| DEFENDANT | PAGES OF DOCUMENTS PRODUCED |
|---|---|
| Samsung SDI | 426 |
| Seiko Epson and Sanyo Epson | 9,959 |
| Toppoly | 2,120 |
| Wintek | 1,102 |

*Optrex is re-sending an additional production on external hard drive which was previously produced in a corrupted format.

In instances where Honeywell anticipates large productions, Honeywell has asked the defendants to estimate what percentage of their total intended production has been completed, but as of the submission of this letter, no defendant has responded except for Optrex. Consequently, Honeywell does not yet know how much effort will be necessary to review the defendants' documents, or whether motion practice concerning the productions will be necessary.

In anticipation of what many defendants have indicated will be sizeable productions, Honeywell has explored ways to improve the speed and efficiency with which it may be able to review defendants' production. For example, as expected, many of the documents produced to date are in a foreign language. In some circumstances, Honeywell has requested that the producing defendant inform Honeywell whether it has in its possession, custody or control any translations of these foreign language documents and, if so, to produce any abstract and/or summary translations of any foreign language documents. In light of the case of *Plant Genetic Systems, N. V. v. Northrup King Co.*, 174 F.R.D. 330, 332 (D. Del. 1997), Honeywell is entitled to receive, at a minimum, summary and/or abstract translations of foreign language documents. Such a production of abstract and/or summary translations would significantly reduce delays and costs in this matter. *See id.* The individual defendants have responded to Honeywell as follows:

The Honorable Kent A. Jordan
October 24, 2006
Page 4

| DEFENDANT | AMOUNT OF FOREIGN LANGUAGE DOCUMENTS | HAS DEFENDANT AGREED TO PRODUCE SUMMARY AND/OR ABSTRACT TRANSLATIONS? |
|---|---|---|
| Arima** | 44% of documents produced are in Chinese | (see below) |
| BOE Hydis | No documents produced | No - Claims not to have any translations |
| Casio Computer | 19% of documents produced are in Japanese | No response to Honeywell inquiry |
| Citizen** | 5% of documents produced are in Japanese and other documents are in French and German | (see below) |
| Fuji** | Small percentage of foreign language documents | (see below) |
| Hitachi | 90% of documents produced are in Japanese | No – Claims not to have any abstract translations and any full translations are work-product |

The Honorable Kent A. Jordan
October 24, 2006
Page 5

| DEFENDANT | AMOUNT OF FOREIGN LANGUAGE DOCUMENTS | HAS DEFENDANT AGREED TO PRODUCE SUMMARY AND/OR ABSTRACT TRANSLATIONS? |
|---|---|---|
| Optrex | 22% of documents produced are in Japanese | No - Claims not to have any translations |
| Philips | No documents produced | No response to Honeywell inquiry |
| Samsung SDI | 6% of documents produced are in Korean | No response to Honeywell inquiry |
| Seiko Epson and Sanyo Epson*** | More than half of this production consists of foreign language documents related to patents not cited to as prior art | (see below) |
| Toppoly | Over 50% of the documents are in all or part Chinese | No - Claims not to have any translations |
| Wintek | 96% of documents produced are in Chinese | No - Claims not to have any translations |

**Honeywell has not raised the issue of summary translations with Arima, Fuji and Citizen because of the small percentages of foreign language documents produced thus so far and/or they have already produced some abstracts.

***Seiko Epson and Sanyo Epson have produced some abstracts and translations of a sizable volume of documents which appear to be irrelevant to this action.

It would be useful to have those defendants who have not responded to Honeywell's inquiry do so by the time of the Status Conference.

As a second example, all defendants, with the exception of Fuji, have relied upon Federal Rule of Civil Procedure 33(d) in response to one or more of Honeywell's interrogatories. At this time, however, only Optrex has directed Honeywell to the documents wherein the response to Honeywell's interrogatory can be found, although Hitachi, Wintek, and Toppoly have agreed to provide bates ranges at some point in the future. Clearly, Honeywell is entitled to such an identification. *Johnson v. Kraft Foods N.A., Inc.*, 236 F.R.D. 535, 541 (D. Kan. 2006) (requiring producing party to provide Bates ranges or other identifier for each responsive category of documents referenced under Rule 33(d)); *In re: G-I Holdings, Inc.*, 218 F.R.D. 428, 438-39 (D.N.J. 2003) (same); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (same). If defendants provide the requisite identification of relevant Bates ranges, it will significantly expedite Honeywell's review of the large productions.

### III. Honeywell's and the Defendants' Respective Supplementation of Responses to Interrogatories

#### A. Honeywell

In May 2005, Honeywell served defendants with a letter identifying (by model number) those LCD modules which formed the initial basis for filing this suit. A copy of that letter is attached as Exhibit A. Honeywell has repeatedly referred to this letter in its dealings with the Module Manufacturers and further supplemented its identifications, where appropriate, in its interrogatory answers. By August 28, 2006, Honeywell provided both supplemental interrogatory responses explaining the basis of its infringement claim, and also provided a preliminary claim chart of those terms contained within Claim 3 of the '371 patent. To date, only two defendants (Optrex and Samsung SDI) have raised any specific concerns about those supplemental answers and Honeywell is exchanging communications with them on this subject.

#### B. Defendants

A number of defendants have served Honeywell with supplemental interrogatory responses regarding their affirmative defenses, particularly invalidity and laches. Honeywell has raised concerns about the adequacy of these supplemental responses and is discussing them with defendants on an individual basis. However, two common themes or patterns have emerged with regard to those responses. With regard to the invalidity defense, many defendants have adopted a practice of identifying twenty or thirty (or more) references as a basis for this defense, but only providing an analysis of several of these references, thereby leaving Honeywell to guess as to what disclosure from these other references is allegedly pertinent to the defense. As for laches, many defendants have yet to identify what specific modules form the basis for that defense and have not yet provided technical and sales/marketing information regarding those modules.

Cognizant of the Court's stated desire that Honeywell identify discovery issues with regard to particular defendant(s), Honeywell provides the following summary.

### 1. **Invalidity**

- **BOE Hydis.** BOE Hydis provided some analysis for two of its exemplary references, but did not provide any analysis for its remaining 16 references. Moreover, BOE Hydis has not provided its definition of the relevant field of art or the level of ordinary skill in the art at the time of the McCartney invention.

- **Casio Computer.** Casio Computer provided some analysis for four of the exemplary references it relies upon, but did not provide any analysis for its remaining 16 references. Moreover, Casio has not provided its definition of the relevant field of art or the level of ordinary skill in the art at the time of the McCartney invention.

- **Citizen.** Citizen provided some analysis for four of its exemplary references, but did not provide any analysis for its remaining 20 references. Moreover, Citizen has not provided its definition of the relevant field of art or the level of ordinary skill in the art at the time of the McCartney invention.

- **Fuji.** Did not provide any analysis for its list of 50 art references. Moreover, Fuji has not provided its definition of the relevant field of art or the level of ordinary skill in the art at the time of the McCartney invention.

- **Hitachi.** Hitachi provided some analysis for four of the exemplary references it relies upon, but did not provide any analysis for its remaining 28 references. While Hitachi has made overtures about supplementing these responses at a later time, it has not committed to any timeline for supplementation.

- **Philips Entities.** The Philips Entities provided some analysis for seven of the exemplary references they rely upon, but did not provide any analysis for its remaining 18 references.

- **Samsung SDI.** Samsung SDI provided some analysis for six of the exemplary references it relies upon, but did not provide any analysis for its remaining 16 references. Moreover, Samsung SDI has not provided its definition of the relevant field of art or the level of ordinary skill in the art at the time of the McCartney invention.

- **Seiko Epson and Sanyo Epson.** Seiko Epson and Sanyo Epson provided some analysis for five of the exemplary references they rely upon, but did not provide any analysis for their remaining 21 references.

The Honorable Kent A. Jordan
October 24, 2006
Page 8

- **Toppoly.** Toppoly provided some analysis on four exemplary references it relies upon, but did not provide any analysis for its remaining 28 references.

- **Wintek.** Wintek's responses are identical to Toppoly's.

   2. <u>Laches</u>

      a. **Defendants Who Have Identified Modules in Support of Their Affirmative Defense of Laches**

- **Optrex.** Optrex identified 16 modules in support its laches defenses and has provided sales information on these modules. A substantial portion of Optrex's documents were produced on the date of this letter; it has not yet been ascertained whether they include technical documentation for these modules.

- **Hitachi.** Hitachi identified four modules to support its laches defenses, but has not directed Honeywell to any technical or sales information relating to these identified modules (although it has stated that it will do so).

      b. **Defendants Who Have Not Identified Modules and/or Other Information In Support of Their Affirmative Defense of Laches[2]**

- **Fuji.** Fuji has not identified specific modules on which its laches defense is based, nor directed Honeywell to technical or sales information for such modules. Further, Fuji has not supplemented its responses to Honeywell's interrogatory request regarding its laches defense.

- **Toppoly.** Toppoly has not identified specific modules on which its laches defense is based, nor directed Honeywell to technical or sales information regarding such modules. Further, Toppoly has not supplemented its responses to Honeywell's interrogatory request regarding its laches defense.

- **Wintek.** Wintek's responses are identical to Toppoly's.

- **Seiko Epson and Sanyo Epson.** Seiko Epson and Sanyo Epson have not identified specific modules on which its laches defense is based, nor directed Honeywell to technical or sales information regarding any such modules.

---

[2]   Both BOE Hydis and Philips dropped their affirmative defense of laches against Honeywell.

The Honorable Kent A. Jordan
October 24, 2006
Page 9

- **Samsung SDI.** Samsung SDI has not identified specific modules on which its laches defense is based, nor directed Honeywell to technical or sales information regarding any such modules.

- **Citizen.** Citizen has not identified specific modules on which its laches defense is based, nor directed Honeywell to technical or sales information regarding any such modules.

- **Casio Computer.** Beyond the specifically accused modules, Casio Computer has not identified additional modules on which its laches defense is based.

### 3. Discovery Regarding Accused Modules (Wintek)

The Court's October 7, 2005 Order set forth a specific procedure for the identification of accused modules contained in end products that Honeywell originally accused of infringing the '371 patent. Pursuant to this Order, three end product manufacturer defendants[3] notified Honeywell that Wintek supplied them with LCD modules that were incorporated into end products that Honeywell tore down and accused of infringement. In turn, Honeywell notified Wintek that 9 of its modules had been so identified by customer defendants as being incorporated into accused products. To date, Wintek has refused to provide discovery on any of these 9 modules.

### IV. Scheduling of Depositions

As it currently stands, no depositions have yet been scheduled by either side. As reflected above in Section II, Honeywell cannot conduct deposition discovery of a particular defendant until it first receives that defendant's complete production, translates those documents where necessary and then has a meaningful opportunity to analyze the documents. The following recounts the status of Honeywell's efforts to plan for depositions with specific defendants.

Honeywell first raised the issue of depositions in a teleconference with defendants last December 2005. These discussions are reflected in the January 9, 2006 Status Report submitted to the Court, a copy of which is attached as Exhibit B. Unfortunately, those discussions yielded no substantive plan for moving forward with depositions. Early this year, Honeywell began taking the steps necessary to take foreign depositions. As the Court is aware, foreign depositions generally require much more advance planning due to the particular requirements of other countries. For example, Honeywell has reserved the earliest available time slots at the

---

[3] These particular defendants designated their respective disclosures as "Attorneys Eyes Only." In order to avoid having to similarly designate this letter as such, Honeywell does not identify these defendants by name.

U.S. Embassy in Japan -- January and March of 2007. Honeywell notified the Japanese defendants of this development as soon as it received confirmation of this reservation in August 2006.

For this reason, Honeywell will avail itself of that portion of this Court's Order which requires defendants who are counterclaimants, cross-claimants, or third-party plaintiffs to submit to depositions in the District of Delaware. To that end, Honeywell also specifically inquired of defendants in that category as to whether they agreed to be bound by the Court's requirement, or would nonetheless be willing to agree to a mutually convenient location.

A. **Defendants Who Have Filed Counterclaims**

- Optrex, Seiko Epson and Sanyo Epson have agreed to either produce deposition witnesses in a mutually agreeable location in the United States and/or to coordinate with Honeywell to produce witnesses in Japan at times when Honeywell would already be in Japan to depose other defendants' witnesses.

- Defendant Citizen has counterclaimed, but has not confirmed that it will produce deposition witnesses in Delaware or anywhere else in the United States.

B. **Defendants Who Have Not Filed Counterclaims**

- Hitachi insists that it cannot have witnesses available for the January 2007 embassy dates that Honeywell has been able to secure, but states instead that it can produce witnesses in Japan for the March 2007 available embassy dates – only after the deadline for initial expert reports (end of February 2007). Honeywell has inquired whether Hitachi will agree to produce witnesses either in the United States or in some other mutually agreeable location, and Honeywell is awaiting Hitachi's response to this proposal.

- Honeywell does not have an indication from the following defendants with respect to whether they will produce deposition witnesses in the United States: Casio (Japan), Samsung SDI (Korea), BOE Hydis (Korea).

- The following defendants will not consent to produce deposition witnesses in Delaware or anywhere else in the United States: Fuji (Japan), Toppoly (Taiwan), Wintek (Taiwan), and Philips (Netherlands).

## V.     Additional Discovery Issues

### A.     Willfulness/Opinions of Counsel

In its original interrogatories served in March, Honeywell asked each defendant whether it had obtained any relevant opinion of counsel upon which it may rely to rebut Honeywell's charge of willfulness. Uniformly, each defendant objected to this interrogatory, claiming it to be premature. Consequently, Honeywell has no information from any defendant as to how they intend to rebut Honeywell's charge. This information is important to Honeywell's evaluation of its settlement posture for purposes of the upcoming mediations scheduled before Magistrate Judge Thynge in mid-December. Moreover, in light of the fact that patent opinions of counsel generally contain positions on claim construction and validity and/or infringement, if defendants do elect to rely upon advice of counsel, such opinions ought to be produced meaningfully in advance of the deadline for affirmative expert reports at the end of February 2007. To date, Optrex has agreed to make its election by December 15, 2006. Inquiry has been made to all other defendants, but as of the date of this letter, none has committed to any deadline.

### B.     Production of Licenses

Currently, Honeywell has entered into license agreements for the McCartney '371 patent with thirteen module makers. Eleven of those licenses have been previously produced. Two licensees, however, have objected to the production of their respective agreements, even under the protections of the current Protective Order. One of these licensees just yesterday consented to production and Honeywell will process it for production. Honeywell is contractually bound to honor the request of the final remaining licensee's objection until such time as the Court directs its production.

\* \* \*

Should the Court require any additional information prior to the Status Conference, please contact us.

Respectfully,

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
*(Counsel in C.A. No. 04-1338)*

*/s/ Steven J. Balick*

Steven J. Balick (#2114)
*(Counsel in C.A. No. 04-1337)*

The Honorable Kent A. Jordan
October 24, 2006
Page 12


TCG
Enclosures
cc:    Matthew L. Woods, Esquire (by e-mail)
       Counsel for Non-Stayed Defendant Module Makers
       (by e-filing and e-mail)