**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC.<br>and HONEYWELL INTELLECTUAL<br>PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-1338-*** |
| v. | ) ) | (consolidated) |
| APPLE COMPUTER, INC., *et al.*, | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |
| HONEYWELL INTERNATIONAL INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1337-*** |
| AUDIOVOX COMMUNICATIONS CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**SEIKO EPSON CORP.'S AND SANYO EPSON
IMAGING DEVICES CORP.'S OBJECTIONS TO
PLAINTIFFS' NOTICE OF RULE 30(b)(6) DEPOSITION**

Defendants Seiko Epson Corporation and Sanyo Epson Imaging Devices Corporation (hereinafter collectively referred to as "Seiko Epson"), by their attorneys, submit the following General and Specific Objections to Plaintiffs Honeywell International, Inc.'s and Honeywell Intellectual Properties Inc.'s (collectively "Honeywell") Notice of Rule 30(b)(6) Deposition of Defendant Seiko Epson Corporation.

**GENERAL OBJECTIONS**

1.      Seiko Epson objects to the instructions and definitions provided by Honeywell to the extent they purport to impose obligations on Seiko Epson that are beyond what is required by the

Federal Rules of Civil Procedure, the Court's Local Rules, Orders issued in this case, and applicable case law.

2.      Seiko Epson objects to the time and location of the deposition, in part because the notice of deposition provides only three dates and times for the deposition (January 17-19, 2007, at 9:00 a.m.).  Subject to its objections, Seiko Epson will make available representatives at a mutually agreeable time and place.

3.      Seiko Epson further objects to the Deposition Topics to the extent they are vague, ambiguous, and/or fail to describe with reasonable particularity the matters on which examination is requested. The level and specificity of the knowledge for which Seiko Epson will be able to prepare a witness to testify is necessarily commensurate in scope with the specificity of the Deposition Topics.

4.      Seiko Epson further objects to the Deposition Topics to the extent they seek information protected from disclosure by attorney-client privilege, work product immunity, or other applicable privilege.

5.      Seiko Epson further objects to the Deposition Topics to the extent they seek confidential and/or proprietary information, including the proprietary information of third parties provided to Seiko Epson under confidentiality obligations.

6.      Seiko Epson further objects to the Deposition Topics to the extent that they assume facts that are not accurate, not known to Seiko Epson, or not relevant to the claims and defenses in this litigation.

7.      Seiko Epson further objects to the Deposition Topics to the extent that the information requested therein is not within the possession, custody, or control of Seiko Epson.

8.      Seiko Epson further objects to the Deposition Topics to the extent they are cumulative and/or duplicative.

9.      Seiko Epson further objects to the Deposition Topics to the extent that they call for legal conclusions.

10.     Seiko Epson objects to Honeywell's definition of "Seiko Epson," "you," or "you" to the extent these terms potentially include entities or persons outside the possession, custody, or control of Seiko Epson. Seiko Epson interprets "Seiko Epson," "you," or "your" to mean Seiko Epson Corp. and Sanyo Epson Imaging Devices Corp.

11.     Seiko Epson objects to Honeywell's definition of "your corporate organization" to the extent it includes entities or persons outside the control of Seiko Epson. Seiko Epson interprets "your corporate organization" to mean just Seiko Epson Corp. and Sanyo Epson Imaging Devices Corp.

12.     Seiko Epson's responses will be based on Seiko Epson's present knowledge, information, and belief, and may be subject to change or modification based on Seiko Epson's further discovery, or on facts or circumstances that may come to Seiko Epson's knowledge.

13.     Seiko Epson objects to Honeywell's definition of "Document" to the extent it includes materials produced by another in this litigation that Seiko Epson is precluded from viewing under the terms of the governing Protective Order.

14.     Seiko Epson objects to Definition 16 as overbroad as Seiko Epson has not been importing into the U.S. the accused LCD modules since 1998.  SEC first began selling the accused LCD products in 2002; therefore, the relevant time frame is 2002 to the present, and our responses to all deposition topics will be limited accordingly, unless otherwise stated.

15.     Seiko Epson objects to Definition 14 as overbroad to the extent that "Accused Module(s)" is not limited to the seven models of products identified by the Plaintiff as made or sold by Seiko Epson that they accuse of infringement.  Plaintiffs' definition of "Accused Module(s)" extends discovery beyond the limits previously ordered by the Court (see Judge Jordan's October 7,2005 Order), especially with respect to subsection (3).  The seven modules which Honeywell has

specifically identified by part number as infringing are: L2F50011, L2F50126, L2F50139, L2F50145, L2F50184, L2F50223, and L4F00005. Accordingly, Seiko Epson will respond to the Notice as to the seven LCD modules that Honeywell has identified as infringing together with generational changes, as that term is understood by Seiko Epson.

16.     Insofar as any of Honeywell's deposition topics seeks information to which the foregoing General Objections apply, specification of, or failure to, note particular General Objections is not a wavier of those or other General Objections with respect to any specific topic.

## SPECIFIC OBJECTIONS

**Topic No. 1:**

Your corporate organization and structure, including the identity of departments, affiliates, groups and individuals with decision-making authority regarding the design, manufacture and distribution of LCD modules.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad and unduly burdensome to the extent it requires identification of "corporate organization and structure" for a period of time prior to 2002. Seiko Epson objects to this topic as seeking information neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Seiko Epson will only produce a witness to testify regarding this subject insofar as the testimony involves the seven Accused Modules.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify about Seiko Epson's corporate structure in the requested areas as limited to the seven Accused Modules at a mutually agreeable date and place.

**Topic No. 2:**

All communications between you and any third party regarding Honeywell's claims of infringement of the '371 Patent including, but not limited to any formal and/or informal discussions between yon and any third party relating to any request to be defended against Honeywell's claims of infringement.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Seiko Epson also objects to this topic as seeking information not relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify as to Topic No. 2 at a mutually agreeable time and place.

**Topic No. 3:**

The circumstances under which you began manufacturing and/or offering for sale LCD modules with two lenticular and/or prismatic films, including but not limited to a description of the technical and marketing reasons for such development.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as vague and ambiguous with regard to the term "circumstances." Seiko Epson also objects to this topic as seeking information not relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Seiko Epson will only produce a witness to testify regarding this subject insofar as the testimony involves the seven Accused Modules.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, about the decisions to manufacture and offer for sale the seven Accused Modules.

**Topic No. 4:**

For each of the seven Accused Modules, from the date of their first manufacture to the present:

    a.     the manner in which you identify each such Accused Module, including but not limited to any alphanumeric, model number or other label used to identify each such module;

    b.     any and all generations or variations of such Accused Module, including the criteria used to identify generational modules;

       c.     the operation and configuration of all lighting components of each accused module, particularly including but not limited to: the presence of lenticular and/or prismatic films and/or structures; the orientation of such structures with regard to the LCD panel and the reasons for such orientation;

       d.     the extent to which your customers or intended customers participated in the design of each such Accused Module, including the identification of any design ideas or changes provided by such customers or intended customers;

       e.     to the extent you only assemble, but do not manufacture any lighting component used in such module, an identification of where you obtain such component parts including without limitation who manufactures and supplies lenticular and/or prismatic films used in such Accused Module; and

       f.     the identification by Bates ranges and the authentication of the technical documents and specifications related to your Accused Modules produced in response to Honeywell's Requests for Production of Documents.

**OBJECTIONS AND RESPONSE:**

       Seiko Epson objects to the topic as vague and ambiguous with respect to the phrases "intended customers" and "generations or variations." Seiko Epson also objects to the definition of "lighting component" on the ground that it is seeking information that is not relevant. According to Honeywell's discovery responses, Honeywell contends that each of the seven accused models, L2F50011, L2F50126, L2F50139, L2F50145, L2F50184, L2F50223, and L4F00005, include "two films, which constitute two lens arrays." Since Honeywell does not contend that any component of the backlight of Seiko Epson's accused products constitutes a "lens array," this topic appears to seek information that is not relevant to Honeywell's infringement contentions as to Seiko Epson.

       Seiko Epson further objects to the topic to the extent it seeks information not within Seiko Epson's possession, custody, or control. Seiko Epson also objects to the topic as overly broad and unduly burdensome to the extent it seeks to force Seiko Epson to prepare a witness to identify documents by Bates ranges. Honeywell served interrogatories requesting an identification of technical documents related to seven Accused Modules. Seiko Epson also objects to this topic because it does not specify any specific documents, making it impossible for Seiko Epson to

prepare a witness who can authenticate those undefined documents. If Honeywell identifies specific documents, Seiko Epson will be better able to prepare a witness to provide authentication testimony.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, as to Topic No. 4.

**Topic No. 5:**

Any and all efforts undertaken by or at your direction to investigate whether any LCD Module manufactured, assembled and/or sold by you may infringe the '371 patent, including but not limited to obtaining opinions of counsel and all facts that support your assertion that any Accused Modules manufactured by you do not infringe the '371 patent.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Seiko Epson will therefore not produce a witness to testify regarding this topic.

**Topic No. 6:**

The date upon and circumstances under which you first learned of the existence of the '371 patent.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Subject to the foregoing General and Specific Objections, Seiko Epson states that it will produce one or more witnesses who will testify, at a mutually agreeable time and place, as to Topic No. 6.

**Topic No. 7:**

Your knowledge of, and experiences with any of the named inventors of the '371 patent and their body of work, including but not limited to your consideration of the subject matter of the presentation entitled "Directional Diffuser Lens Array for Backlit LCDs" given at or about the Japan Display SID Conference in October 1992.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Subject to the foregoing General and Specific Objections, Seiko Epson states that it has no witness to testify as to Topic No. 7.

**Topic No. 8:**

Consideration, development and implementation of any alternative design(s) for your Accused Modules relating to different angles of rotation for any lenticular and/or prismatic structures contained thereon; and/or relating to the use of two such structures as opposed to any other number.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly board, vague, and ambiguous with regard to the term "alternative design(s)." Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege.

Subject to the foregoing General and Specific Objections, Seiko Epson states that it will produce one or more witnesses to testify, at a mutually agreeable time and place, as to Topic No. 8 as it relates to the seven Accused Modules.

**Topic No. 9:**

Seiko Epson's accounting and financial reporting standards, systems, and methods.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad, unduly burdensome, and seeking irrelevant information. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present. Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, as to financial records relating to the seven Accused Modules, to the extent that Honeywell can identify with greater specificity those financial records that this topic relates to.

**Topic No. 10:**

The method and/or procedure for gathering the data used to calculate and/or compute gross revenue, net revenue, cost of revenue, gross margin, selling, general, administrative and other expenses, income before income taxes and net income on a monthly, quarterly, and annual basis or any other timeframe Seiko Epson regularly keeps records for its sales.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad, unduly burdensome, and seeking irrelevant information. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present. Subject to the foregoing General and Specific Objections, Seiko Epson states that it will produce one or more witnesses who will testify, at a mutually agreeable time and place, as to any of the areas of Topic No. 10 that involves the seven Accused Modules as kept in the ordinary course of business.

**Topic No. 11:**

For each Accused Module, from the date of its first sale to the present:

a.       the projected and actual sales revenue generated by month, quarter and year;

b.       the projected and actual sales expenses or cost of sales incurred by month, quarter and year; and

c.       the projected and actual profits and profit margins generated and how profit is calculated.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad and unduly burdensome to the extent it seeks financial information "by month, quarter and year," to the extent it differs from Seiko Epson's normal timeframe for maintaining financial information. It is also irrelevant to the extent it seeks any information about current projected sales, expenses, or profits.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses who will testify, at a mutually agreeable time and place, as to Topic No. 11, limited to the Accused Modules, as kept in the ordinary course of business.

**Topic No.12:**

The:

     a.     process by which Seiko Epson distributes and sells its LCD Modules, including without limitation a description of the channel(s) of distribution utilized by Seiko Epson;

     b.     market in the United States and worldwide for Seiko Epson's LCD Modules; and

     c.     process by which Seiko Epson markets or promotes the sale of its LCD Modules in the United States and worldwide, including any and all advertising or promotional materials and/or campaigns.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as seeking information neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present. Subject to the foregoing General and Specific Objections, Seiko Epson will only produce a witness to testify (1) regarding the seven Accused Modules; (2) regarding the market in the United States; (3) regarding marketing and promotion in the United States; and (4) with regard to information available to Seiko Epson.

**Topic No. 13:**

     The target market and/or customer base for Seiko Epson LCD Modules, and the reason(s) why Seiko Epson targets this market and/or customer base, including without limitation any and all advertising, marketing and/or promotional efforts Seiko Epson has undertaken or considered undertaking relating to the Accused Modules.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as unrelated to a claim or defense of any party to this action nor likely to lead to the discovery of admissible evidence. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present. Seiko Epson also objects to this topic as overly broad, vague, and ambiguous as to the terms "target market," "considered," and "customer base."

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses who will testify, at a mutually agreeable time and place, as to identified topics, limited to the United States market for the seven Accused Modules.

**Topic No. 14:**

Seiko Epson's policy and marketing program for maintaining their patent monopolies by not licensing others to use their inventions or by granting licenses under special conditions designed to preserve that monopoly.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects this topic as overly broad, vague, and ambiguous as to the terms and phrases "their," "policy and marketing program," "special conditions," "designed to preserve," and "monopoly."  The topic also is not limited to any particular time period.  Seiko Epson interprets "their" to mean "Seiko Epson's." Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Seiko Epson objects to this topic (Seiko Epson's patent policy) as unrelated to a claim or defense of any party to this action nor likely to lead to the discovery of admissible evidence. Therefore, Seiko Epson will not produce any witness to testify on this topic.

**Topic No. 15:**

Seiko Epson's policies and practices for the negotiation of royalty or license agreements for the use of patented technology, including without limitation, licensing of third party technology for Seiko Epson's use, the licensing of Seiko Epson's technology to third parties, and the cross licensing of technologies.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected by attorney-client privilege, work product immunity, or other applicable privilege. Seiko Epson also objects to this topic as seeking information protected under Federal Rule of Evidence 408. Seiko Epson also objects to this topic as overly broad and unduly burdensome to the extent it seeks information unrelated to a claim or defense of any party to this action nor likely to lead to the

discovery of admissible evidence. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present.  Seiko Epson further objects to this topic to the extent it seeks confidential and/or proprietary information of third parties that was provided to Seiko Epson under confidentiality obligations.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, as to the terms of license agreements related to the technology of the patent-in-suit.

**Topic No. 16:**

Seiko Epson's license agreements, including the terms and conditions of such license agreements, related to consumer electronics entered into by Seiko Epson.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad and unduly burdensome to the extent it seeks information unrelated to a claim or defense of any party to this action nor likely to lead to the discovery of admissible evidence. Seiko Epson will limit its response to the time period beginning in 2002 and running to the present.  Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify regarding license agreements related to the technology of the patent-in-suit.

**Topic No. 17:**

Royalty or license fees received or paid by Seiko Epson from October 1998 to the present for any non-consumer license.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information unrelated to a claim or defense of any party to this action nor likely to lead to the discovery of admissible evidence. Seiko Epson objects to this topic as overly broad and unduly burdensome to the extent it requires identification of "[r]oyalty or license fees received or paid by Seiko Epson" for a period of time

prior to 2002. Subject to the foregoing General and Specific Objections, Seiko Epson will produce

one or more witnesses to testify regarding licenses related to the technology of the patent-in-suit.

**Topic No. 18:**

Any analysis of Seiko Epson's domestic and foreign market share from October 1998 to the
present, including but not limited to, the size of the markets and expected growth in the markets,
prices in the markets, supply and demand in the markets, competition and expected future
competition in the markets, and factors that might influence the markets.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad, vague, and ambiguous as to the terms

"domestic market" and "foreign market." Seiko Epson objects to this topic as overly broad and

unduly burdensome to the extent it requires identification of "Seiko Epson's domestic and foreign

market share" for a period of time prior to 2002. Seiko Epson also objects to this topic to the extent

it seeks information unrelated to a claim or defense of any party to this action nor likely to lead to

the discovery of admissible evidence. Seiko Epson will only produce a witness to testify regarding

the United States market for the seven Accused Modules.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or

more witnesses to testify, at a mutually agreeable time and place, as to the items in Topic No. 18

relating to the United States market for the seven Accused Modules, and only to the extent that

Seiko Epson currently has such information.

**Topic No. 19:**

Seiko Epson's pricing and pricing policies and strategy for the sale of each of the Accused
Modules.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to the deposition topic as vague and ambiguous as to the phrases

"pricing policies" and "strategy for the sale" of each accused module.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, about Seiko Epson's determination of prices for the seven Accused Modules.

**Topic No. 20:**

The effect of selling the Accused Modules in promoting the sale of other products of Seiko Epson, including but not limited to the existing value of the Accused Modules as a generator of sales of other items, and the extent of such derivative or convoyed sales.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic as overly broad, vague, and ambiguous with regard to the terms "promoting," "generator," and "derivative or convoyed sales." This topic is also irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent Honeywell is not entitled to lost profits and therefore not entitled to recovery for convoyed sales.

Subject to the foregoing General and Specific Objections, Seiko Epson will produce one or more witnesses to testify, at a mutually agreeable time and place, as to Topic No. 20, but only as to the seven Accused Modules and as to the effect of sales in the United States market.

**Topic No. 21:**

Information and documents relied on or reviewed by the corporate representative(s) for purposes of becoming knowledgeable about the topics set forth in Schedule A.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected at least by attorney-client privilege or work product immunity. Seiko Epson will not produce a witness to testify on this topic.

**Topic No. 22:**

Seiko Epson's document retention policies from October 1998 to the present.

**OBJECTIONS AND RESPONSE:**

Seiko Epson objects to this topic to the extent it seeks information that is protected at least by attorney-client privilege or work product immunity. Seiko Epson objects to this topic as overly broad and unduly burdensome to the extent it requires identification of "Seiko Epson's document retention policies" for a period of time prior to 2002. Subject to the foregoing General and Specific Objections, Seiko Epson states that it will produce one or more witness who will testify, at a mutually agreeable time and place, as to Topic No. 22, as limited to the current lawsuit.

Dated: January 15, 2006

SMITH, KATZENSTEIN & FURLOW LLP

Robert J. Katzenstein (ID No. 378)
Robert K. Beste, III (ID No. 3931)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
[Courier 19801]
302-652-8400 – telephone
302-652-8405 – fax
rjk@skfdelaware.com – e-mail

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
HOGAN & HARTSON L.L.P.
500 South Grand Avenue
Suite 1900
Los Angeles, California 90071
Telephone: (213) 337-6700
Facsimile: (213) 337-6701

Attorneys for Defendants
SEIKO EPSON CORP. and SANYO EPSON
IMAGING DEVICES CORPORATION