# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**Thomas L. Halkowski**
302 778-8407

Email
halkowski@fr.com

January 24, 2007

**VIA ECF AND HAND DELIVERY**
Magistrate Judge Mary Pat Thynge
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    *Apple Computer, Inc., et al. adv. Honeywell International, Inc., et al.*
        **USDC-D. Del. - C.A. No. 04-1338 *** (Consolidated)**

Dear Magistrate Judge Thynge:

We submit this letter on behalf of stayed customer defendant Apple Inc. (formerly Apple Computer, Inc.) regarding strategies for efficiently handling the remainder of this case. Apple joins fully in the customer defendants' joint letter opposing lifting the stay and does not repeat what is stated there.

This letter addresses an issue specific to Apple, but which impacts the efficient handling and administration of the case more generally. The case against Apple has become moot and should be dismissed. All Apple products that Honeywell accused of infringement are now licensed via manufacturers of the LCDs for those products. Dismissing parties against whom the case has become moot would assist the efficient management of this case.

Remarkably, Honeywell refuses to dismiss Apple voluntarily – not because it disputes all Apple products it has accused of infringement are licensed – but because it wants to keep the case and the list of accused products open-ended for an indefinite period of time, hoping further discovery (including from the stayed customer defendants) will help it make a claim that its own due diligence presently does not support. Honeywell's open-ended approach to this litigation would make the case even more unwieldy and inefficient, and has already been rejected by Judge Jordan. Apple intends to bring a motion to dismiss in the near future, and, if necessary, will ask the Court to lift the stay as to Apple *only* for the limited purpose of briefing and hearing that motion.

This is a large, complex, multi-defendant case with an inordinate number of allegedly infringing LCD modules incorporated into a variety of different end products. In the case's early stages, Honeywell sought to shift its burden of investigating and identifying allegedly infringing products to the defendants. It did this by asking that the defendants be required to investigate their own product lines to identify all

FISH & RICHARDSON P.C.

Magistrate Judge Mary Pat Thynge
January 24, 2007
Page 2

products or modules that incorporate what Honeywell described as the "accused structure," a description that broadly parroted the claim language of the '371 patent.

Because of the already unwieldy nature of the case, Judge Jordan rejected Honeywell's open-ended, burden-shifting approach, and instead established a more manageable structure to define the scope of the case. First, Judge Jordan required Honeywell to "specifically identify" the products and LCD modules that it believed infringed. Next, Judge Jordan (a) required all defendants to identify earlier and later generations of the products specifically identified by Honeywell, and (b) required the customer defendants to identify all manufacturers who supplied LCDs for these specifically identified products. When the second step was complete, Judge Jordan stayed the case against the customer defendants so it could proceed against the manufacturer defendants in the first instance.

Requiring Honeywell to specifically identify, by make and model number, the products it was accusing of infringement – and allowing Honeywell leeway to conduct discovery regarding other versions (*i.e.,* earlier and later generations) of any specifically identified products – was an integral part of Judge Jordan's structure of this case. It was also a part of the structure that Honeywell vigorously opposed. In its Order dated May 18, 2005, however, the court permitted Honeywell limited discovery from the customer defendants "to learn who the suppliers of LCDs are for the various devices *that Honeywell must now specifically identify as accused products.*" (D.I. 202 at p. 9, 2nd full para. & fn. 5 (copy attached as Exhibit A)). Honeywell complied in a May 27, 2005, letter to all defense counsel, which specifically-identified 66 products and 97 LCD modules that it accused of infringement. (Exhibit B).

But thereafter, Honeywell again sought to keep the list of accused products open-ended by requiring defendants to investigate their product lines and provide discovery on any other products or LCD modules with a "similar" structure. In a September 9, 2005 conference, and again in the Order dated October 7, 2005, Judge Jordan again rejected this approach in no uncertain terms, requiring Honeywell to do its own tear-downs to itself determine whether it believed specific models infringed before pursuing discovery on those models from the defendants. (D.I. 237 at fn. 2. (Exhibit C)). The Court reiterated that Honeywell was only allowed discovery into other versions (*i.e.,* earlier and later generations) of "products and product lines which have been identified by Honeywell with specificity (*e.g.,* by make and model number)." (*Id.* at p. 5, para. 1.)

With respect to Apple, Honeywell identified the following products in its May 27, 2006, letter: the "Powerbook G4" notebook computer and the "ibook G4 12-inch" notebook computer. Thus, as against Apple, this case is and always has been about versions of these notebook computers only. Therefore, in October 2005, Apple

FISH & RICHARDSON P.C.

Magistrate Judge Mary Pat Thynge
January 24, 2007
Page 3

provided Honeywell with a comprehensive list of all versions and generations of the accused iBook and Powerbook notebook computers, and a complete list of all manufacturers who supplied LCDs to Apple for those products. At the time, many of the manufacturers who supplied Apple with LCDs for iBooks and Powerbooks were already licensed. Since that time, the remaining manufacturers who supplied Apple with LCDs for iBooks and Powerbooks have all taken licenses.

But Apple went further. Apple also examined the list of allegedly infringing LCD modules (of the manufacturer defendants) identified in Honeywell's May 27, 2005 letter and confirmed that none of the other accused LCD module numbers match any LCDs supplied to Apple for any product - notebook computer or not. The responses to interrogatories served by both Honeywell and the manufacturer defendants since 2005 include an expanded list of LCD modules that Honeywell accuses of infringement, as well as the list of all customers to whom those accused modules have been sold. Apple is not among them.

Therefore, as of today, and after Honeywell has had more than two years to develop a case against Apple, there is not a single accused LCD module that has been sold to Apple for any product which remains unlicensed. Although stayed, the expense and distraction to Apple of remaining a party to such a lengthy and extraordinarily complex lawsuit that it no longer has any part of is substantial and inefficient for everyone involved.

In view of this, beginning in October of 2006, counsel for Apple (Frank Scherkenbach) sought to engage counsel for Honeywell (Matt Woods) on the question of dismissing Apple from the case. Most recently, on January 22, counsel for Apple (Kelly Hunsaker) contacted counsel for Honeywell (Stacey Oberts) and again requested that Honeywell voluntarily dismiss the case against Apple. Ms. Hunsaker told Ms. Oberts that all suppliers of the accused Apple products (iBooks and Powerbooks) were licensed, and that none of the discovery responses served in the case identifies Apple as a customer of any accused LCD module for any other Apple product.

Ms. Oberts responded that production documents showed one of the current manufacturer defendants, Optrex, had supplied unspecified LCDs to Apple for the iPod music player. When Ms. Hunsaker pointed out that neither the iPod, nor any Optrex modules sold to Apple for the iPod, had ever been identified or accused of infringement by Honeywell in this case, Ms. Oberts said the case was no longer limited to any specifically-identified products. When Ms. Hunsaker inquired whether Honeywell had any reason to believe the iPod or the Optrex modules sold to Apple infringed, Ms. Oberts said only that Honeywell needed more discovery. When Ms. Hunsaker asked if Honeywell had torn down an iPod, Ms. Oberts said they had, but that the results were "privileged." When Ms. Hunsaker asked what Honeywell's

FISH & RICHARDSON P.C.

Magistrate Judge Mary Pat Thynge
January 24, 2007
Page 4


Rule 11 basis for keeping Apple in the suit was, Ms. Oberts declined to answer further.  All of the foregoing is in direct conflict with Judge Jordan's rulings in this case, and an opportunistic attempt by Honeywell to reverse those rulings very late in the game.

Even putting to one side the fact that iPods are plainly outside the scope of this case as pleaded, as ordered by Judge Jordan, and as litigated by Honeywell, it is obvious to Apple that Honeywell has indeed done its homework on the iPod and has realized what Apple and its iPod LCD module suppliers long have known – the iPod LCD modules do not have a structure that even Honeywell can bring itself to accuse.

A motion to dismiss for lack of subject matter jurisdiction should be granted where there is no case or controversy, which is the case with respect to Apple.  Apple therefore proposes to bring such a motion so the Court can consider the matter fully.  The scope of this case should not revert to one that is open-ended or expanded to include never-before-identified products or LCD modules; Judge Jordan has already rejected this approach.  Rather, efficient handling of the remainder of the case calls for proceeding to the first trial on validity and enforceability, denying Honeywell's request to lift the stay as to the customer defendants, and disallowing Honeywell's renewed attempt to yet again unravel the structure and scope of the case.

There is no better reason now than there was before to make the list of accused products open-ended or expand it more than two years after the case was filed, and the Court should not allow Honeywell now to fish for further discovery to make up a claim that Honeywell's own due diligence has shown it cannot make.

Respectfully,

/s/ *Thomas L. Halkowski*

Thomas L. Halkowski

TLH:sb

Attachments

cc      Clerk of Court (via hand delivery)
        Counsel of record (via ECF and e-mail)


80041346.doc