# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

January 24, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

    Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
             C.A. No. 04-1338-KAJ (Consolidated)

Dear Magistrate Judge Thynge:

    I am writing pursuant to the Court's Order from January 18, 2007, asking for the parties' thoughts regarding strategies for the efficient handling of the remainder of the case. In summary, in light of the position taken by several of the Manufacturer Defendants (described below), Honeywell submits that a discussion regarding such strategies first requires clarity on the fundamental issue of who will answer Honeywell's charge of infringement at trial in the first instance: the Manufacturer Defendants or the Customer Defendants?

    The original Scheduling Order, entered by Judge Jordan, did not specify how, when, and against whom infringement issues would be tried. Judge Jordan stayed the original action against the Customer Defendants on the assumption that the Manufacturer Defendants would stand behind their customers in a manner that would substantially reduce, if not eliminate entirely, the need for further proceedings. However, contrary to Judge Jordan's expectations, the Manufacturer Defendants, by their actions, have not committed to defending their customers from Honeywell's allegations.

    For example, the issue of indirect sales figured prominently in the mediations held in December. The Manufacturer Defendants are clearly relying on their assertion that a substantial portion of sales to the Customer Defendants occurs outside the United States in order to avoid liability for those sales. To compound this, the Manufacturer Defendants are now requesting that

The Honorable Mary Pat Thynge
January 24, 2007
Page 2

the damages issues be put off to some indeterminate future date.[1] By this recent conduct, the Manufacturer Defendants apparently prefer to avoid, rather than embrace, the potential liability of their customers.

Indeed, the different legal status of the Manufacturer Defendants may require Honeywell to resort to indirect infringement theories under the patent law—theories that require different elements of proof than direct infringement against the Customer Defendants. The differences between these two types of infringement claims (indirect versus direct) have been heightened by the Federal Circuit's recent change in the standard for proving indirect infringement under 35 U.S.C. §271(b). *See DSU Med. Corp. v. JMS Co., Ltd.*, 04-1620, 05-1048, -1052, slip op. (Fed. Cir. Dec. 13, 2006) (*en banc* in pertinent part). A copy of that decision is attached hereto for the Court's convenience. Essentially, the Federal Circuit now requires that allegations of inducement be supported by proof that a defendant both: (1) knew of the patent in suit; and (2) knew that its activities were causing others to directly infringe the patent. These new standards do not apply to direct infringers such as the stayed Customer Defendants.

The new inducement standards have implications on both the scope of discovery and on the efficient handling of the case. Discovery regarding certain issues will now take on newly increased importance; such discovery includes: (1) any opinions of counsel and related requests for legal advice sought regarding Honeywell's original allegations; (2) communications between manufacturers and customers regarding those allegations, including customer requests for indemnification and responses thereto; and (3) a precise date upon which each Manufacturer Defendant became aware of the patent. Honeywell has not had an opportunity to fully explore these topics, and relevant information is likely to be in the hands of the Customer Defendants (*e.g.*, their expectations with regard to indemnification).

More fundamentally, the impact of the *DSU* decision could undermine the fundamental premise of Judge Jordan's reorganization of the case. The Manufacturer Defendants may seek to avoid—in whole or in part—answering for the infringement and damages caused by their customers on the grounds that they did not know of the patent, or did not believe direct infringement was occurring. If that becomes the case, then it makes little sense to proceed against them in the first instance because resolution of these unique inducement issues would, at best, resolve only a small portion of Honeywell's direct claims against the Customer Defendants. In that event, what Judge Jordan intended as an efficient means for handling this action could become a wasteful rehearsal for the real trial.

Accordingly, to efficiently handle the remainder of the case, Honeywell suggests the following. First, the Court should direct the Manufacturer Defendants and the Customer Defendants to caucus among themselves and decide whether the former intends to defend the latter against the full extent of Honeywell's allegations, regardless of whether the sales were direct or indirect. If they do, then all parties can be reassured that proceeding against the

---

[1] The Manufacturer Defendants do not appear to be requesting that damages discovery itself be stayed, only damages expert reports and the damages component of the trial.

The Honorable Mary Pat Thynge
January 24, 2007
Page 3

Manufacturer Defendants first will still likely resolve the majority of Honeywell's allegations. If not, then the Court should schedule a subsequent hearing to address why the first trials should not be against the Customer Defendants.[2]

Second, once it is clear which class of defendants is best suited to answer Honeywell's infringement allegations in the first instance, Honeywell will work with these defendants to develop a timetable and plan for trying infringement and damages.

To avoid delay, the current stay against the Customer Defendants should be lifted so that Honeywell can obtain information regarding the commercial success of end products incorporating the accused modules (relevant to the issues of validity and damages) and to begin developing a record that addresses the new standards set forth in *DSU* (to the extent necessary).

As the Court is aware, Honeywell and the Manufacturer Defendants have agreed to a three-month extension of all the deadlines set forth in the current Scheduling Order (D.I. 376). While the agreed-upon extension provides short-term relief, it does not address this broader issue of a global strategy for efficiently handling the remainder of the case.

Honeywell looks forward to discussing this issue with the Court on Thursday.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm

Enclosure
cc:   All Counsel of Record—All Defendants (via e-filing, w/encl.)
      Matthew L. Woods, Esquire (via e-mail, w/encl.)
      Seong Yoon Jeong, BOE Hydis Technology (via Fed. Ex., w/encl.)

---

[2]  It may well be that the substantial settlements executed to date will impact the scope of the remaining claims against the Customer Defendants, and Honeywell would work with the Customer Defendants to ensure that further proceedings reflect the scope of those settlements.