# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>AUDIOVOX COMMUNICATIONS CORP., AUDIOVOX ELECTRONICS CORPORATION, NIKON CORPORATION, NIKON, INC., NOKIA CORPORATION; NOKIA INC., SANYO ELECTRIC CO., LTD., and SANYO NORTH AMERICA CORPORATION, )<br><br>Defendants. ) | Civil Action No. 04-1337-KAJ |

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>APPLE COMPUTER, INC.; ARGUS A/K/A HARTFORD COMPUTER GROUP, INC.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS )<br> | Civil Action No. 04-1338-KAJ |

AMERICA, INC.; PENTAX CORPORATION;  )
PENTAX U.S.A., INC.; SONY CORPORATION; )
SONY CORPORATION OF AMERICA; SONY )
ERICSSON MOBILE COMMUNICATIONS AB; )
SONY ERICSSON MOBILE )
COMMUNICATIONS (USA) INC.; TOSHIBA )
CORPORATION; and TOSHIBA AMERICA, )
INC., )
                                                    )
                    Defendants.                     )
                                                    )
_____     )
                                                    )
OPTREX AMERICA, INC.,                               )
                                                    )
                    Plaintiff,                      )
                                                    )
        v.                                          )     Civil Action No. 04-1536-KAJ
                                                    )
HONEYWELL INTERNATIONAL INC., and                   )
HONEYWELL INTELLECTUAL PROPERTIES                   )
INC.,                                               )
                                                    )
                    Defendants.                     )

## MEMORANDUM ORDER

### Introduction & Background

In these three actions, Honeywell International Inc., a Delaware corporation, and

Honeywell Intellectual Properties Inc., an Arizona corporation, (collectively "Honeywell")

have asserted that their rights under U.S. Patent No. 5,280,371, issued January 18,

1994, (the "'371 patent) have been infringed. The '371 patent claims a liquid crystal

display ("LCD") apparatus said to provide enhanced brightness and clarity when

compared with prior art LCDs. (See '371 patent, attached to C.A. No. 04-1338-KAJ

Docket Item ["D.I."] 1 at Ex. 1, col. 1 lines 48-61; col. 6, lines 1-42.) In Civil Action No.

04-1337-KAJ, Honeywell asserts the '371 patent against 8 defendants. (C.A. No. 04-

1337-KAJ D.I. 39.) In Civil Action No. 04-1338-KAJ, it asserts the same patent against another 27 defendants.[1] In Civil Action No. 04-1536-KAJ, Optrex America, Inc., a New York corporation, ("Optrex") has sued for a declaratory judgment that it does not infringe Honeywell's rights under the '371 patent and that the patent is invalid. (C.A.No. 04-1536-KAJ D.I. 1.)

Pending before me are several motions bearing on the management of these cases.[2] Honeywell seeks consolidation of the actions. (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) A third party, Seiko Epson Corporation, a Japanese company, ("Seiko Epson") seeks to intervene because it is the original manufacturer of LCDs said to be the infringing component in some of the defendants' consumer electronics. (*See* C.A No. 04-1337-KAJ D.I. 50; C.A. No. 04-1338-KAJ D.I. 136 at 7-9); Optrex, another seller of allegedly infringing LCDs to defendants in the suits filed by Honeywell, seeks to have its case tried first.[3] (C.A. No. 04-1536-KAJ D.I. 23.) And several of the defendants in the actions brought by Honeywell have filed motions to

---

[1]Honeywell chose to file two separate suits simultaneously because a conflict of interest of one of its law firms prevented that firm from representing Honeywell against certain of the defendants, but it now seeks consolidation of the actions. (*See* C.A. No. 04-1338-KAJ D.I. 135 at n. 1.)

[2]A chart listing the motions filed by the parties is appended.

[3]Federal Rule of Civil Procedure 7(b)(1) provides in pertinent part that, "[a]n application to the court for an order shall be by motion ... ." It is the custom and expectation of this court that, unless otherwise ordered by the court, an application like Optrex's should be made by way of formal motion. That expectation was not met in this instance. Failure to abide by Rule 7 necessarily brought with it a failure to abide by Local Rule 7.1.1, respecting the certification of counsel required with all non-dispositive motions. Solely because Optrex's request, which came by way of a letter, can be readily disposed of in light of my rulings on the motions properly made, I have considered it and address it herein.

stay the litigation against them while Honeywell first tries its infringement claims against the manufacturers of the LCDs. (*See, e.g.,* C.A. No. 04-1337-KAJ D.I. 60, 63, 101, and 112; C.A. No. 04-1338-KAJ D.I. 95, 158, 161, 181, and 189.)

On May 16, 2005, I held a consolidated pretrial conference in these cases pursuant to Federal Rule of Civil Procedure 16. At that time, I heard argument on the various motions and issued preliminary rulings. This Order confirms those rulings and provides a further explication for them. For the reasons stated herein, as well as those stated in open court at the Rule 16 conference, Seiko Epson's motion to intervene is granted, Honeywell's motion to consolidate is granted in part, Optrex's request is granted to the extent stated herein, and the motions to stay submitted by defendants in the Honeywell-filed cases are granted. In short, Honeywell will be required to litigate its infringement claims in the first instance against the manufacturers of the accused LCDs, not against the many customers of those manufacturers who incorporate the LCDs into their consumer electronics.

**Standard of Review**

Motions to intervene are entrusted to the discretion of the court. *See Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir.1998) ("We will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect.") Intervention as of right is governed by Federal Rule of Civil Procedure 24(a), which states in relevant part, "[u]pon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the

property or transaction which is the subject of the action and the applicant is so situated

that the disposition of the action may as a practical matter impair or impede the

applicant's ability to protect that interest, unless the applicant's interest is adequately

represented by existing parties." That rule has been interpreted

> to require proof of four elements from the applicant seeking intervention
> as of right: first, a timely application for leave to intervene; second, a
> sufficient interest in the litigation; third, a threat that the interest will be
> impaired or affected, as a practical matter, by the disposition of the action;
> and fourth, inadequate representation of the prospective intervenor's
> interest by existing parties to the litigation.

*Kleissler*, 157 F.3d at 969.

A district court also generally has broad discretion when deciding whether to

consolidate or stay proceedings. *See Bechtel Corp. v. Laborers' International Union*,

544 F.2d 1207, 1215 (3d Cir. 1976) ("A United States district court has broad power to

stay proceedings."); *Blake v. Farrell Lines, Inc.*, 417 F.2d 264, 266 (3d Cir. 1969) ("the

trial judge, under Rule 42(a), is given the broad authority to 'make such orders

concerning proceedings therein as may tend to avoid unnecessary costs or delay'").

With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides

that, "[w]hen actions involving a common question of law or fact are pending before the

court, it may order a joint hearing or trial of any or all the matters in issue in the actions;

it may order all the actions consolidated; and it may make such orders concerning

proceedings therein as may tend to avoid unnecessary costs or delay."

The power to stay proceedings "is incidental to the power inherent in every court

to control the disposition of the cases on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler*, 703

F.2d 732, 738 (3d cir. 1983) (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

**Discussion**

These cases are the second set of LCD technology cases to come before this court on a grand scale. The first set, in which the lead case is *Commissariat Á L'Energie Atomique v. Samsung, et al.*, C.A. No. 03-484-KAJ (consolidated), involved the plaintiff ("CEA") suing a host of manufacturers, distributors, and retailers of LCDs or products containing them. After sorting through the various motions to stay and to consolidate, I concluded that consolidation of cases against the manufacturer defendants was appropriate because those cases involved common questions of law and fact pertaining to infringement. *See id.*, May 13, 2004 Mem. Order at 5-6. However, I declined to consolidate the cases involving non-manufacturer defendants because no sound reason was given for immediately addressing what could only be the derivative liability of those defendants. *See id.* For that same reason, I stayed the cases against the non-manufacturer defendants, observing, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at 7 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

I was persuaded then and remain persuaded that large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives. It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation.[4]  Cf. Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (noting that the "customer suit exception" to the preference for allowing a first-filed action to proceed first is based on "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement").

Honeywell has been frank to say that it deliberately avoided suing the manufacturers to avoid "the complications faced by this Court in the French government's LCD action, C.A. No. 03-484 [i.e., the CEA suit]." (C.A. No. 04-1338-KAJ D.I. 147 at 3, ¶ 2.) Honeywell also accurately assesses the several motions to stay and the motion to intervene as an effort by the movants to "recast [Honeywell's lawsuits] as a case against LCD suppliers ... ." (C.A. No. 04-1338-KAJ D.I. 167 at 5.) What Honeywell fails to appreciate is that, from the perspective of the host of defendants

---

[4]Optrex and Seiko Epson are before the court already.  Other LCD manufacturers identified as "Curitel, Philips, Wintek, and Samsung SDI" have been named in a third party complaint (see C.A. No. 04-1338-KAJ D.I. 167 at 5), and LCD manufacturers identified as "Arima Display, AU Optronics, CPT, Hannstar, Hitachi, Primeview, Quanta Display, Inc., ST-LCD, TM Display, and Tottori Sanyo" have not been named or appeared in any of the cases to date.  (See id.)

Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

Thus, Honeywell's motions to consolidate will be granted because the cases certainly do involve common questions of law and fact which make sense to handle for certain purposes on a consolidated basis. See Fed.R.Civ.P. 42(a). Whether a single trial against all the non-manufacturer defendants makes sense is a question for another day. For now it is sufficient to order that trial and pretrial activities with respect to the dispute between Honeywell and those manufacturer defendants presently before the court will be handled on a consolidated basis. Any pretrial activities with respect to Honeywell's claims against the non-manufacturer defendants will also be handled, for the time being, on a consolidated basis. It is likely that the claims against and by the manufacturer defendants will later be separated out for pretrial proceedings as well as a separate trial. As further noted herein, however, there will be some discovery permitted of the non-manufacturer defendants, so all will remain in the case for the time being.

The motion to intervene filed by Seiko Epson will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. Seiko Epson correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is

involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

For evidently similar reasons, Optrex has taken affirmative steps to insert itself in this litigation and to have the opportunity to have the dispute over its LCDs heard before the suits against the non-manufacturer defendants are permitted to go forward. As stated at the May 16 conference, I agree that the dispute between Honeywell and the manufacturers should go forward first. To that extent, Optrex's request to proceed with its claims on a priority basis will be granted.

As to the several motions to stay, they too are granted to the extent stated in open court. The non-manufacturer defendants will not be given a complete and immediate stay of all proceedings involving them, because I will permit Honeywell certain limited discovery to learn who the suppliers of LCDs are for the various devices that Honeywell must now specifically identify as accused products.[5] I will otherwise stay the litigation against the non-manufacturer defendants, however, since a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants, and it comes at time when discovery has not even begun and no trial date has been set. See *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (setting forth test for propriety of a stay). At the

---

[5]At the case management conference, I granted a defense request that Honeywell be required to identify the products it is accusing of infringement. To date, it has only stated that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '371 patent literally and/or under the doctrine of equivalents ... ." (C.A. No. 04-1338-KAJ D.I. 1 at ¶ 53.)

appropriate time, a separation of the suits against the manufacturer and non-manufacturer defendants may well be warranted, for ease of case administration.

At the close of the case management conference, I instructed the parties to confer and provide me with proposed language respecting permissible discovery activities directed at the non-manufacturer defendants during the stay. A further and separate order will be entered following the parties' filing or filings in that regard.

**Conclusion**

For the reasons stated in open court on May 16, 2005 and herein, it is hereby ORDERED that

(1)    Honeywell's motions to consolidate (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) are GRANTED to the extent that Civil Action Nos. 04-1337-KAJ, 04-1338-KAJ and 04-1536-KAJ are consolidated for the present for all purposes, with a consolidated case caption to be suggested by the parties by June 17, 2005;

(2)    Seiko Epson's motions to intervene (C.A. No. 04-1337-KAJ D.I. 50 and C.A. No. 04-1338-KAJ D.I. 136) are GRANTED;

(3)    Optrex's request to proceed with its dispute in advance of Honeywell being permitted to proceed with its litigation against the non-manufacturer defendants (C.A. No. 04-1536-KAJ D.I. 23) is GRANTED to the extent described herein; and

(4)    the several motions to stay (C.A. No. 04-1337-KAJ D.I. 60, 63, 101 and 112; C.A. No. 04-1338 D.I. 95, 158, 161, 181 and 189) are GRANTED to the extent

described herein, with a further order regarding the stay to be proposed by the parties

no later than June 17, 2005.

UNITED STATES DISTRICT JUDGE

May 18, 2005
Wilmington, Delaware

## HONEYWELL V. AUDIOVOX, ET AL.

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| **04-1337** | Audiovox Communications | 1) Motion to Stay (D.I. 112) |
| | Audiovox Electronics | 1) Customer defendants' Motion to Stay (D.I. 101) |
| | Nikon Corporation<br>Nikon Inc. | 1) Motion to Stay (D.I. 60) |
| | Nokia Corporation<br>Nokia Inc. | 1) Motion for leave to file third party complaint (D.I. 57)<br><br>2) Motion to Stay (D.I. 63)<br><br>3) Joinder in Toshiba's Motion to Bifurcate filed in C.A. No. 04-1138 at D.I. 164 (D.I. 97) |
| | Sanyo Electric Co.<br>Sanyo North America | No Motions |
| | Curitel Communications (Third Party Deft) | No Motions |
| | Toshiba Corp. (Third Party Deft) | No Motions |
| | Seiko Epson Corporation (non-party) | 1) Motion to Intervene (D.I. 50) |

## HONEYWELL V. APPLE COMPUTER, ET AL.

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| 04-1338 | Apple Computer | 1) Joinder (D.I. 172) in Toshiba's motion to bifurcate (D.I. 164)<br><br>2) motion to stay (D.I. 181) |
| | Argus a/k/a Hartford Computer | 1) motion to stay (D.I. 181) |
| | Casio Computer<br>Casio Inc. | 1) Joinder (D.I. 172) in Toshiba's motion to bifurcate (D.I. 164) |
| | Concord Cameras | 1) Joinder (D.I. 172) in Toshiba's motion to bifurcate (D.I. 164)<br><br>2) motion to stay (D.I. 181) |
| | Dell Inc. | 1) Joinder (D.I. 172) in Toshiba's motion to bifurcate (D.I. 164)<br><br>2) motion to stay (D.I. 181) |
| | Eastman Kodak | 1) Joinder (D.I. 194) in Toshiba's motion to bifurcate (D.I. 164)<br><br>2) motion to stay (D.I. 181) |
| | Fuji Photo Film<br>Fuji Photo Film USA | 1) motion for more definite statement, for stay, and for partial dismissal (D.I. 95)<br><br>2) motion to transfer (D.I. 97)<br><br>3) brief filed (D.I. 156) in support of Seiko Epson's motion to intervene (D.I. 136)<br><br>4) briefs filed (D.I. 166, 183) in support of Toshiba's motion to bifurcate (D.I. 164) |
| | Fujitsu Limited<br>Fujitsu America<br>Fujitsu Computer | 1) Joinder (D.I. 172) in Toshiba's motion to bifurcate (D.I. 164) |
| | Kyocera Wireless | 1) motion to stay (D.I. 158) |

| | | |
|---|---|---|
| | Matsushita Electrical Industrial<br>Matsushita Electrical Corp. | 1) Joinder (D.I. 172) in Toshiba's<br>motion to bifurcate (D.I. 164) |
| | Navman NZ<br>Navman USA | 1) motion to stay (D.I. 181) |
| | Olympus Corp.<br>Olympus America | 1) motion to stay (D.I. 161) |
| | Pentax Corporation<br>Pentax USA | 1) motion to stay (D.I. 158)<br><br>2) Joinder (D.I. 172) in Toshiba's<br>motion to bifurcate (D.I. 164) |
| | Sony Corp.<br>Sony Corp. Of America | 1) Joinder (D.I. 172) in Toshiba's<br>motion to bifurcate (D.I. 164)<br><br>2) motion to stay (D.I. 189) |
| | Sony Ericsson Mobile AB<br>Sony Ericsson Mobile USA | 1) Joinder (D.I. 196) in motion to stay<br>(D.I. 158) |
| | Toshiba Corporation | 1) motion to bifurcate (D.I. 164) |
| | Toshiba America | no motions |
| | Philips Electronics (3rd pty dft) | no motions |
| | Wintek Electro-Optics (3rd pty<br>dft) | no motions |
| | Optrex America (3rd pty dft) | no motions |
| | Seiko Epson (non-party) | 1) motion to intervene (D.I. 136) |
| | **PLAINTIFFS - HONEYWELL** | 1) motion to consolidate and for stay<br>(D.I. 134) |

## OPTREX AMERICA INC. V. HONEYWELL

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| **04-1536** | Honeywell International | 1) Motion to consolidate and for stay (D.I. 14) |
| | Honeywell Intellectual Properties | 1) Motion to consolidate and for stay (D.I. 14) |

# EXHIBIT B

*2 2 376*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and )
HONEYWELL INTELLECTUAL PROPERTIES INC., )
)
Plaintiffs, )
)
v. )
)
APPLE COMPUTER, INC.; ALL AROUND CO., LTD.; )
ARGUS A/K/A HARTFORD COMPUTER GROUP, )
INC.; ARIMA DISPLAY; AU OPTRONICS CORP.; AU )
OPTRONICS CORPORATION AMERICA; BOE ) C.A. No. 04-1338-KAJ
TECHNOLOGY GROUP COMPANY, LTD.; BEIJING )
BOE OPTOELECTRONICS TECHNOLOGY CO., LTD.; )
BOE-HYDIS TECHNOLOGY CO., LTD.; CASIO )
COMPUTER CO., LTD.; CASIO, INC.; CITIZEN )
SYSTEMS EUROPE; CITIZEN SYSTEMS AMERICA )
CORPORATION; CONCORD CAMERAS; DELL INC.; )
EASTMAN KODAK COMPANY; FUJI PHOTO FILM )
CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU )
LIMITED; FUJITSU AMERICA, INC.; FUJITSU )
COMPUTER PRODUCTS OF AMERICA, INC.; )
HANNSTAR DISPLAY CORPORATION; HITACHI, )
LTD.; HITACHI DISPLAYS, LTD.; HITACHI )
DISPLAY DEVICES, LTD.; HITACHI ELECTRONIC )
DEVICES (USA), INC.; INNOLUX DISPLAY )
CORPORATION; INTERNATIONAL DISPLAY )
TECHNOLOGY; INTERNATIONAL DISPLAY )
TECHNOLOGY USA, INC.; KONINKLIJKE PHILIPS )
ELECTRONICS N.V.; PHILIPS CONSUMER )
ELECTRONICS NORTH AMERICA; PHILIPS )
ELECTRONICS NORTH AMERICA CORPORATION; )
KYOCERA WIRELESS CORP.; MATSUSHITA )
ELECTRICAL INDUSTRIAL CO.; MATSUSHITA )
ELECTRICAL CORPORATION OF AMERICA; )
NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; )
OLYMPUS CORPORATION; OLYMPUS AMERICA, )
INC.; PENTAX CORPORATION; PENTAX U.S.A., )
INC.; PICVUE ELECTRONICS LIMITED; QUANTA )
DISPLAY INC.; SAMSUNG SDI CO., LTD; SAMSUNG )
SDI AMERICA, INC; SONY CORPORATION; SONY )
CORPORATION OF AMERICA; SONY ERICSSON )
MOBILE COMMUNICATIONS AB; SONY ERICSSON )
MOBILE COMMUNICATIONS (USA) INC.; ST )
LIQUID CRYSTAL DISPLAY CORP.; TOPPOLY )

OPTOELECTRONICS CORP.; TOSHIBA                )
CORPORATION; TOSHIBA AMERICA, INC.; WINTEK     )
CORP.; WINTEK ELECTRO-OPTICS CORPORATION;      )
WISTRON CORPORATION; and M-DISPLAY             )
OPTRONICS CORP.,                               )
                                               )
            Defendants.                        )
                                               )
_____            )
                                               )
HONEYWELL INTERNATIONAL INC. and               )
HONEYWELL INTELLECTUAL PROPERTIES INC.,        )
                                               )
            Plaintiffs,                        )
                                               )   C.A. No. 04-1337-KAJ
      v.                                       )
                                               )
AUDIOVOX COMMUNICATIONS CORP.;                 )
AUDIOVOX ELECTRONICS CORPORATION; NIKON        )
CORPORATION; NIKON INC.; NOKIA                 )
CORPORATION; NOKIA INC.; SANYO ELECTRIC        )
CO., LTD.; SANYO NORTH AMERICA                 )
CORPORATION; and SANYO EPSON IMAGING           )
DEVICES CORPORATION,                           )
                                               )
            Defendants.                        )

_____

OPTREX AMERICA, INC.                           )
                                               )
            Plaintiff,                         )   C.A. No. 04-1536-KAJ
                                               )
      v.                                       )
                                               )
HONEYWELL INTERNATIONAL INC.                    )
and HONEYWELL INTELLECTUAL                      )
PROPERTIES INC.                                )
                                               )
            Defendants.                        )

2

## SCHEDULING ORDER

This _____ day of March, 2006, the Court having conducted an initial Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(a) on March 13, 2006, Plaintiffs and the Manufacturing Defendants (hereinafter referred to as "the parties") having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding arbitration;

IT IS ORDERED that:

1.    Rule 26(a)(1) Initial Disclosures and E-Discovery Default Standard.

Unless otherwise agreed to by the parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) within ten (10) days of the date of this Order. If they have not already done so, the parties are to review the Court's Default Standard for Discovery of Electronic Documents, which is posted at http://www.ded.uscourts.gov (see Orders, etc., Policies & Procedures, Ad Hoc Committee for Electronic Discovery), and is incorporated herein by reference. Discovery shall commence upon entry of the Scheduling Order.

2.    Joinder of Other Parties/Amendment of Pleadings.

All motions to join other parties, and to amend or supplement the pleadings shall be filed on or before July 7, 2006.

3.    Discovery.

a.    Limitation on Hours for Deposition Discovery.

Each side is limited to a total of 300 hours for fact depositions on common issues, each Manufacturer Defendant family may take 50 deposition hours of Plaintiffs for party specific issues and Plaintiffs may take 50 deposition hours per Manufacturer Defendant family for party

3

specific issues, and each party family may take an additional 50 hours for party specific issues. Manufacturer Defendants shall have an additional 150 hours of Third-Party depositions. Honeywell shall have an additional 75 hours of Third-Party depositions. A party may apply to Court for additional time for good cause shown. Limitations do not apply to expert discovery.

      b.    Location of Depositions.

Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court must ordinarily be required, upon request, to submit to a deposition at a place designated within this district. Exceptions to this general rule may be made by order of the Court or the agreement of the parties. A defendant who becomes a counterclaimant, cross-claimant, or third-party plaintiff shall be considered as having filed an action in this Court for the purpose of this provision.

      c.    Discovery Cut Off.

All discovery in this case shall be initiated so that it will be completed on or before May 30, 2007. The Court encourages the parties to serve and respond to contention interrogatories early in the case. Unless otherwise ordered by the Court, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.

      d.    Disclosure of Expert Testimony.

Unless otherwise agreed to by the parties, they shall file their initial Federal Rule of Civil Procedure 26(a)(2) disclosures of expert testimony on or before ninety (90) days before the date of the completion of discovery, and file a supplemental disclosure to contradict or rebut evidence on the same subject matter identified by another party on or before forty-five (45) days before the date for the completion of discovery. To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579 (1993), it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

      e.    Discovery Disputes.

Should counsel find they are unable to resolve a discovery dispute, the party seeking the relief shall contact Chambers (302) 573-6001 to schedule a telephone conference. Not less than five business days prior to the conference, the party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues. (The Court does not seek extensive argument or authorities at this point; it seeks simply a statement of the issue to be addressed and a summary of the basis for the party's position on the issue.) Not less than one business day prior to the conference, any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition. Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it. Disputes over protective orders are to be addressed in the first instance in accordance with this paragraph.

      4.    Application to Court for Protective Order.

Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within ten days from the date of this Order.

Any proposed order should include the following paragraph:

Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclosure another party's information designated "confidential"

[the parties should list any other level of designation, such as "highly confidential," which may be provided for in the protective order] pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

Should counsel be unable to reach an agreement on a proposed form of order, the counsel must first follow the provisions of Paragraph 3e above.

5.   Papers Filed Under Seal.

When filing papers under seal, counsel should deliver to the Clerk an original and one copy of the papers.

6.   Settlement Conference.

Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement.  The Magistrate Judge will schedule a settlement conference with counsel and their clients.

7.   Interim Status Report.

On October 24, 2006, counsel shall submit a letter to the Court with an interim report on the nature of the matters in issue and the progress of discovery to date.

8.   Status Conference.

On October 31, 2006, the Court will hold an in-person Rule 16(a), (b) and (c) conference beginning at 4:30 p.m.

If all parties agree that there is nothing to report, nor anything to add to the interim status report or to this order, they may so notify the Court in writing before the conference is scheduled to occur, and the conference will be taken off of the Court's calendar.

9.   Tutorial Describing the Technology and Matters in Issue.

On December 22, 2006, at 9:30 a.m. the parties shall appear live to provide the Court with a tutorial on the technology at issue.  The tutorial should focus on the technology at

issue and should not be used to argue the parties' claims construction contentions. No testimony, expert or lay, will be offered at the hearing. For the convenience of the Court, these live (in-Court) tutorials may be videotaped (or otherwise recorded) and submitted to the Court. The tutorial should be limited to no more than thirty (30) minutes per side. In addition to the live presentation, the parties may present a video tape of no more than 30 minutes at the hearing.

      10.    Case Dispositive Motions.

All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before June 30, 2007. Answering briefs shall be served and filed within 30 days of the opening brief. Reply briefs shall be served and filed within 14 days of the answering briefs.

      11.    Claim Construction Issue Identification.

If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on November 9, 2006, each side shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and their proposed claim construction of those term(s)/phrase(s). This document will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be submitted pursuant to paragraph 12 below. The parties' Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s)-in-issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent-in-issue as well as those portions of the intrinsic record relied upon are to be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

12.    Claim Construction.

Issues of claim construction shall be submitted to the Court by way of the Joint Claim Construction Chart no later than May 30, 2007, to be considered by the Court in conjunction with the parties' summary judgment motions. Simultaneous opening briefs on issues of claim construction shall be served and filed by each side on June 29, 2007. Simultaneous reply briefs shall be served and filed by each side on July 27, 2007.

13.    Hearing on Claim Construction.

Beginning at 9:30 a.m. on August 30, 2007, the Court will hear evidence and argument on claim construction and summary judgment.

14.    Applications by Motion.

Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers. Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

15.    Pretrial Conference.

On December 17, 2007, the Court will hold a Final Pretrial Conference in Chambers with counsel beginning at 4:30 p.m. Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3). The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before November 16, 2007.

16.    Motions *in Limine*.

Motions *in limine* shall not be separately filed. All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each party shall be limited to five *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of five pages of argument and may be opposed by a maximum of five pages of argument. No separate briefing shall be submitted on *in limine* requests unless otherwise permitted by the Court. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single five (5) page submission. However, if a party does not believe that its position is being adequately represented by the combined submission, the party may seek leave from the Court to increase the page limitations for the combined submission.

17.    Jury Instructions, Voir Dire, and Special Verdict Forms.

Where a case is to be tried to a jury, pursuant to Local Rules 47 and 51 the parties should file proposed voir dire, instructions to the jury, and special verdict forms and jury interrogatories on or before three full business days before the final pretrial conference. That submission shall be accompanied by a computer diskette which contains the instructions, proposed voir dire, special verdict forms, and jury interrogatories.

18.    Trial.

This matter is scheduled for a ten (10) day jury trial beginning at 9:30 a.m. on January 28, 2008. For the purpose of completing pretrial preparations, counsel should plan on each side being allocated a total of 22 hours to present their case. Issues to be tried in this phase shall be limited to the validity and enforceability of U.S. Patent No. 5,280,371.

Dated: March 28, 2006.

724294

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

Case 1:04-cv-01338-JJF    Document 694-2    Filed 01/24/2007    Page 29 of 52

SHEET 1

1

```
1                THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4    HONEYWELL INTERNATIONAL, INC.    :     CIVIL ACTIONS
     et al.                          :
5                                    :
                    Plaintiffs,      :
6                                    :
             v.                      :
7                                    :
     AUDIOVOX COMMUNICATIONS CORP.,  :
8    et al.                          :
                                     :     NO. 04-1337 (KAJ)
9                   Defendants.      :
     --------------------------------
10   HONEYWELL INTERNATIONAL, INC.    :
     et al.                          :
11                                   :
                    Plaintiffs,      :
12                                   :
             v.                      :
13                                   :
     APPLE COMPUTER, INC., et al.,   :
14                                   :     NO. 04-1338 (KAJ)
                    Defendants.      :
15   --------------------------------
     OPTREX AMERICA, INC.,           :
16                                   :
                    Plaintiff,       :
17                                   :
             v.                      :
18                                   :
     HONEYWELL INTERNATIONAL, INC.   :
19   et al.                          :
                                     :     NO. 04-1536 (KAJ)
20                  Defendants.            - - -

21
                      Wilmington, Delaware
22           Monday, March 13, 2006 at 10:00 a.m.
                     TELEPHONE CONFERENCE
23
                          - - -
24
     BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.
25
                          - - -
```

SHEET 2                                                    2

1   APPEARANCES:

2       ASHBY & GEDDES
3       BY:  STEVEN J. BALICK, ESQ.

4           and

5       MORRIS NICHOLS ARSHT & TUNNELL
6       BY:  THOMAS C. GRIMM, ESQ.

        and

7       ROBINS KAPLAN MILLER & CIRESI, L.L.P
8       BY:  MARTIN R. LUECK, ESQ.,
            MATTHEW L. WOODS, ESQ., and
9           STACIE E. OBERTS, ESQ.
            (Minneapolis, Minnesota)
10

11      HONEYWELL INTERNATIONAL
12      BY:  J. DAVID BRAFMAN, ESQ.

13          Counsel on behalf of Honeywell
            International, Inc., and Honeywell
14          Intellectual Properties, Inc.

15      YOUNG CONAWAY STARGATT & TAYLOR
16      BY:  KAREN L. PASCALE, ESQ.

17          and

18      OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
19      BY:  RICHARD D. KELLY, ESQ., and
            ANDREW M. OLLIS, ESQ.
20          (Alexandria, Virginia)

            Counsel for Optrex America, Inc.
21

22

23

24

25

---

                                                          4

1   APPEARANCES:  (Continued:

2       YOUNG CONAWAY STARGATT & TAYLOR
3       BY:  JOHN W. SHAW, ESQ.

4           Local counsel for below-listed defendants

5           and

6       KENYON & KENYON
        BY:  ROBERT L. HAILS, ESQ.
7            (Washington, District of Columbia)

8           and

9       KENYON & KENYON
        BY:  JOHN FLOCK, ESQ.
10           (New York, New York)

11          Counsel for Sony Corporation, and Sony
            Corporation of America
12

        and

13      PAUL HASTINGS JANOFSKY & WALKER, LLP
14      BY:  PETER J. WIED, ESQ.
            (Los Angeles, California)

15          Counsel for Quanta Display Inc.

16

17      RICHARDS LAYTON & FINGER
18      BY:  JEFFREY L. MOYER, ESQ.

19          and

20      WEIL GOTSHAL & MANGES
        BY:  DAVID J. LENDER, ESQ., and
21           STEPHEN J. RIZZI, ESQ.
             (New York, New York)

22          Counsel for Matsushita Electrical
            Industrial Co. and Matsushita
23          Electrical Corporation of America

24

25

---

                                                          3

1   APPEARANCES:  (Continued)

2       BOUCHARD MARGULES & FRIEDLANDER
3       BY:  JOEL FRIEDLANDER, ESQ.

4           and

5       HOGAN & HARTSON
6       BY:  DAVID H. BEN-MEIR, ESQ.
            (Los Angeles, California)

7           Counsel for Citizen Watch Co., Ltd.;
8           Citizen Displays Co., Ltd.

9       SMITH KATZENSTEIN & FURLOW
10      BY:  JOELLE ELLEN POLESKY, ESQ.

11          and

12      HOGAN & HARTSON, LLP
13      BY:  ROBERT J. BENSON, ESQ.
            (Los Angeles, California)

14          Counsel for Seiko Epson Corp.,
15          Kyocera Wireless Corp.

16      FISH & RICHARDSON, P.C.
17      BY:  WILLIAM J. MARSDEN, ESQ.

            Counsel for ID Tech;  International
18          Display Technology USA Inc.

19      CONNOLLY BOVE LODGE & HUTZ
20      BY:  GERARD M. O'ROURKE, ESQ.

21          Counsel for AU Optronics Corp. and
            AU Optronics Corp. of America
22

23      TROP PRUNER & HU
        BY:  DAN C. HU, ESQ.
24           (Houston, Texas)

25          Counsel for Arima Display

---

                                                          5

1   APPEARANCES:  (Continued)

2

3       FISH & RICHARDSON, P.C.
        BY:  THOMAS L. HALKOWSKI, ESQ.

4           Local counsel for below-listed defendants

5           and

6       FISH & RICHARDSON, P.C.
7       BY:  JOHN T. JOHNSON, ESQ., and
             (New York, New York)

8           Counsel for Casio, Inc., Casio Computer

9           and

10      FISH & RICHARDSON, P.C.
11      BY:  KELLY C. HUNSAKER, ESQ.
             (Redwood City, California)

12          Counsel for Apple Computer Inc.

13          and

14      FISH & RICHARDSON, P.C.
15      BY:  ANDREW R. KOPSIDAS, ESQ.
             (Washington, District of Columbia)

16          Counsel for Nokia, Inc.

17

18      RICHARDS LAYTON & FINGER
        BY:  CHAD M. SHANDLER, ESQ.
19

20          and

21      HARRIS BEACH, LLP
        BY:  NEAL L. SLIFKIN, ESQ.
22           (Pittsford, New York)

            Counsel for Eastman Kodak
23

24

25

---

SHEET 3

**6**

```
1   APPEARANCES:  (Continued)

2
        POTTER ANDERSON & CORROON, LLP
3       BY:   RICHARD L. HORWITZ, ESQ.

4            Local counsel below-named defendants

5            and

6   FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:  BARRY W. GRAHAM, ESQ.
7          (Washington, District of Columbia)

8            Counsel for Nikon Corporation, Nikon Inc.

9            and

10  MILBANK TWEEK HADLEY & McCLOY, LLP
        BY:   CHRISTOPHER E. CHALSEN, ESQ.
11         (New York, New York)

12           Counsel for Fujitsu Limited, Fujitsu
             America, Inc., Fujitsu Computer Products
13           of America, Inc.

14           and

15  FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:   YORK FAULKNER, ESQ.
16         (Reston, Virginia)

17           and

18  FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:  ELIZABETH A. NIEMEYER, ESQ.
19         (Washington, District of Columbia))

20           Counsel for Toppoly Optoelectronics, Wintek
             Corp., Wintek Electro-Optics Corporation
21
             and
22

23

24

25
```

**7**

```
1   APPEARANCES:  (Continued)

2

3       HOWREY, LLP
        BY:   NELSON M. KEE, ESQ.
4          (Washington, District of Columbia)

5            Counsel for Philips Electronics
             North America Corp.
6
             and
7
    PAUL HASTINGS JANOFSKY & WALKER, LLP
8       BY:   ELIZABETH L. BRANN, ESQ.
           (San Diego, California)
9
             Counsel for Samsung SDI
10
             and
11
    BAKER BOTTS, L.L.P.
12      BY:   NEIL P. SIROTA, ESQ., and
              ROBERT MAIER, ESQ.
13         (New York, New York)

14           Counsel for Hitachi, Ltd., Hitachi
             Displays, Ltd., Hitachi Display Devices,
15           Ltd., Hitachi Electronic Devices (USA),
             Inc.
16
             and
17
    BAKER & McKENZIE, LLP
18      BY:   KEVEN M. O'BRIEN, ESQ.
           (Washington, District of Columbia)
19
             Counsel for Boe-Hydis Technology
20
    DUANE MORRIS
21      BY:   MATTHEW NEIDERMAN, ESQ.

22           Counsel for Audiovox Communications Corp.

23

24

25
```

**8**

```
1   APPEARANCES:  (Continued)

2
        POTTER ANDERSON & CORROON, LLP
3       BY:   PHILIP A. ROVNER, ESQ.

4            and

5   STROOCK & STROOCK & LAVAN LLP
        BY:   LAWRENCE ROSENTHAL, ESQ.
6          (New York, New York)

7            Counsel for Fuji Photo Film Co., Ltd.
             and Fuji Photo Film U.S.A. Inc.
8
9   CONNOLLY BOVE LODGE & HUTZ
        BY:  N. RICHARD POWERS, ESQ.
10
             Counsel on behalf of Sony Ericsson AB
11           and Sony Ericsson, Inc.

12

13                    Brian P. Gaffigan
                      Registered Merit Reporter
14

15

16

17

18

19

20              - oOo -

21      P R O C E E D I N G S

22      REPORTER'S NOTE:  The following telephone

23  conference was held in chambers, beginning at 10:00 a.m.)

24      THE COURT:  Hi, this is Judge Jordan.  Why don't

25  we go ahead and take what I expect will be a lengthy roll
```

**9**

```
1   call?  We'll start with the plaintiff and I need to have

2   counsel identify; and given the numbers that I expect are on

3   this call, you don't have to identify everybody but I'll

4   need to know who is speaking for what party.  So please

5   identify yourself, the law firm that you are with and the

6   client you are representing if you are going to be speaking

7   for that client; all right?

8       MR. GRIMM:  Good afternoon, Your Honor.  This

9   is Tom Grimm at Morris Nichols.  I represent Honeywell; and

10  on the line with me this morning from Robins Kaplan firm

11  are Marty Lueck and Matt Woods who will be speaking for

12  Honeywell.  Joining them are Stacie Roberts from their firm

13  and also Honeywell Intellectual Property Counsel David

14  Brafman.

15      I also may have -- I represent Honeywell in the

16  04-1338 case.  Ashby Geddes represents them in the 04-1337

17  case, specifically Steve Balick and John Day.

18      MR. DAY:  Yes, John Day is on the phone for

19  Honeywell in 1337.

20      THE COURT:  All right.  Thanks.

21      Why don't we just start now through the

22  defendants and in no particular order but hopefully politely

23  with no elbows being thrown, go ahead and identify who is on

24  the call for me, please.

25      MR. HALKOWSKI:  Yes, Your Honor.  This is Tom
```

**10**

1  Halkowski with Fish & Richardson. I guess I'll start
2  off. On the phone should be Kelly Hunsaker who will be
3  representing Apple Computer. And the other folks that are
4  on the phone from Fish & Richardson include John Johnson
5  representing the Casio defendants, and Andrew Kopsidas
6  representing the Nokia defendants. And I believe William
7  Marsden is also on the phone representing a new defendant.
8      MR. MARSDEN: Yes, Your Honor. William Marsden
9  from Fish & Richardson on the phone for International
10 Display Technology and International Display Technology USA.
11     THE COURT: All right. I'm sure we got others
12 so please continue. Who else do we have?
13     MR. ROVNER: Your Honor, this is Phil Rovner
14 from Potter Anderson on behalf of Fuji Photo. And with me
15 on the line I believe is Larry Rosenthal from Stroock &
16 Stroock & Lavan in New York.
17     MR. HORWITZ: Your Honor, this is Rich Horwitz,
18 also from Potter Anderson. We didn't get a chance to take
19 a roll call before calling chambers so I'm not sure with
20 respect to all of the defendants I represent who is on the
21 call. I know for Toppoly and Wintek, York Faulkner and
22 Elizabeth Niemeyer are on from Finnegan Henderson.
23     I am also representing on the call Philips, I
24 don't know if someone from Howrey is on the line.
25     MR. KEE: And Nelson Kee is on the line from

**11**

1  Philips.
2      MR. HORWITZ: For Samsung with Paul Hastings.
3      MS. BRANN: Elizabeth Brann from Paul Hastings
4  is on for Samsung SDI.
5      MR. HORWITZ: With Hitachi, I know Neil Sirota
6  and Robert Maier are on the line from Baker Botts.
7      THE COURT: All right. You will need to speak
8  up a little bit, Mr. Horwitz.
9      MR. HORWITZ: All right. For Hitachi, Neil
10 Sirota and Robert Maier from Baker Botts are also on the
11 line.
12     For Hannstar, I'm not sure who else is on the
13 line. I may be handling that myself.
14     And for Boe-Hydus, Kevin O'Brien in from Baker &
15 MacKenzie.
16     MR. O'BRIEN: Yes, this is Kevin O'Brien in for
17 Baker & McKenzie for Boe-Hydus.
18     THE COURT: All right. Thank you. Who else do
19 we have?
20     MR. NEIDERMAN: Your Honor, Matt Neiderman of
21 Duane Morris for Audiovox Communications Corp.
22     THE COURT: All right. Next.
23     MS. POLESKY: Joelle Polesky from Smith
24 Katzenstein & Furlow on behalf of Seiko Epson and Sanyo
25 Epson Imaging Devices. And on the line with me should be my

**12**

1  co-counsel, Robert Benson from Hogan & Hartson.
2      MR. BENSON: Yes, I'm here.
3      THE COURT: All right. Who else?
4      MR. FRIEDLANDER: Your Honor, from Bouchard
5  Margules & Friedlander, Joel Friedlander on behalf of
6  Citizen Watch and Citizen Displays. With me on the line
7  is my co-counsel David Ben-Meir from Hogan & Hartson. We
8  represent Citizens in the 05-874 matter.
9      MR. POWERS: Your Honor, Richard Powers for Sony
10 Ericsson Mobile Communications AB and Sony Ericsson Mobile
11 Communications USA Inc.
12     THE COURT: Okay.
13     MS. PASCALE: Your Honor, Karen Pascale from
14 Young Conaway Stargatt & Taylor for Optrex America Inc.; and
15 we should have on the line from the Oblon Spivak firm, Andy
16 Ollis and Dick Kelly.
17     THE COURT: All right.
18     MR. SHAW: Your Honor, John Shaw at Young
19 Conaway. At Kenyon & Kenyon for Sony Corporation and Sony
20 Corporation of America is John Flock and Robert Hails. And
21 also on the line for Quanta Display from Paul Hastings is
22 Peter Weid.
23     THE COURT: Okay. Who else do we have?
24     MR. MOYER: Your Honor, this is Jeff Moyer of
25 Richard Layon on behalf of Matsushita. I have my co-counsel

**13**

1  David Lender from Weil Gotshal & Manges on the phone.
2      MR. RIZZI: Stephen Rizzi from Weil Gotshal is
3  here as well as for Matsushita and Panasonic North America
4  Corporation of America.
5      THE COURT: All right. Anybody else?
6      MR. SHANDLER: Your Honor, from Richards Layton
7  & Finger, Chad Shandler on behalf of Eastman Kodak. With me
8  is Neil Slifkin from Harris Beach.
9      THE COURT: Okay.
10     MR. ROVNER: Your Honor, Jerry O'Rourke from
11 Connolly Bove Lodge & Hutz on behalf of AU Optronics Corp.
12 and AU Optronics America Corp.
13     THE COURT: Thank you.
14     MR. CHALSEN: Your Honor, this is Chris Chalsen.
15 I'm from Milbank in New York for the Fujitsu defendants.
16     THE COURT: Anybody on with you locally?
17     MR. CHALSEN: Yes, Rich Horwitz.
18     THE COURT: All right. Thanks. Anybody else
19 on? Other parties?
20     MR. GRAHAM: Your Honor, this is Barry Graham
21 at Finnegan Henderson representing two of the stayed
22 defendants, Nikon Corporation, Nikon Inc. I don't know if I
23 need to identify myself because I'm sitting in the gallery;
24 and local counsel is Rich Horwitz.
25     THE COURT: All right. Thanks.

14

1    So am I correct that we've got all the
2 manufacturer defendants and Optrex and Honeywell identified
3 at this point?
4    MR. HU: Your Honor, this is Dan Hu from Trop
5 Pruner & Hu for Arima Display.
6    THE COURT: All right. Well, I'm going to take
7 it at this point that we got everybody unless somebody pipes
8 up now and tells me I got that wrong; okay? And I have to
9 say this is an experiment to see whether we can actually
10 have teleconferences in this case. Just the introduction
11 makes me wonder whether that is feasible or not. It's an
12 expensive thing to get everybody together but with this
13 many folks, teleconferences might be so unwieldy as to be
14 unworkable but we'll give this a shot.
15    First, before we turn to scheduling, there are a
16 couple of motions hanging here that I want to address very
17 quickly. I have a motion for leave to file a third-party
18 complaint that was filed by Nokia. Is Nokia on?
19    MR. KOPSIDAS: Yes, Your Honor. Andrew Kopsidas
20 from Fish & Richardson for Nokia.
21    THE COURT: Okay. And I had a letter several
22 months ago from Mr. Marsden in this regard and the
23 indications were that this motion to file a third-party
24 complaint was not objected to. Is that correct?
25    MR. KOPSIDAS: That's correct, Your Honor.

16

1 morning?
2    MR. LUECK: Marty Lueck, Your Honor.
3    THE COURT: Mr. Lueck.
4    MR. LUECK: Yes, Your Honor.
5    THE COURT: Has my October 7, '05 order been
6 complied with at this point? There were several things that
7 I directed be accomplished to try to move things forward and
8 I'd appreciate if you could take a moment and give me an
9 update on that.
10    MR. LUECK: Your Honor, we do not. We still do
11 not have complete information from the defendants on that
12 order.
13    THE COURT: Well, why don't we do this? First,
14 do you happen to have that order in front of you?
15    MR. LUECK: I can get it, Your Honor, if you
16 give me just one moment.
17    THE COURT: All right.
18    MR. LUECK: And, Your Honor, while I'm getting
19 it, could I just go back to the Toshiba motion for a moment?
20    THE COURT: Sure.
21    MR. LUECK: I believe that motion is mooted by
22 resolution of the issues between Honeywell and Toshiba.
23    THE COURT: Does anybody on the call disagree
24 with that assessment?
25    I'm hearing no one. Okay. We'll take that

15

1    THE COURT: Well, I'm not sure quite how things
2 will work by granting this at this stage because how you
3 would proceed with a third-party complaint at this juncture
4 is not clear to me given the way we're trying to stage the
5 case.
6    Can you take just a moment and tell me about
7 that? Did you have something in mind about pursuing these
8 claims immediately or was this something that you felt like,
9 well, we need to get on file or what was thinking?
10    MR. KOPSIDAS: Your Honor, this is a motion
11 that was filed really before the last status conference,
12 I believe when the Court issued its guidance as to
13 restructuring the case. Since then, Honeywell has filed
14 its amended complaint naming a whole bunch of manufacturer
15 defendants and all of the parties that we intended to
16 in-plead prior to that point have since been named in the
17 complaint. So I believe it's actually a moot issue at this
18 point.
19    THE COURT: That's what I need to know. Thanks.
20 So we'll deal with that by saying denied as moot and done.
21    The other motion is a motion to bifurcate -- and
22 we'll take that up in the course of the discussion that
23 we're going to have today -- motion to bifurcate liability
24 and damages that was filed by Toshiba. But let me start by
25 asking first, who is speaking on behalf of Honeywell this

17

1 as --
2    MR. HORWITZ: Your Honor, this is Rich
3 Horwitz. I'm local counsel for Toshiba, which is one of
4 the defendants. I'm not exactly sure what Mr. Lueck is
5 referring to, if it's something other than the fact that the
6 case is made against them. I think some of the issues that
7 were raised in that motion were raised in the scheduling
8 order generally as to staging of trial and that may be come
9 up in the context of the scheduling order rather than in the
10 context of that specific motion.
11    THE COURT: Well, you're right, it may, but here
12 is what I need to do. I've got a specific motion to deal
13 with, and I hear Mr. Lueck telling me that the case against
14 Toshiba has -- maybe I'm misreading it -- has been either
15 stayed or resolved. You tell me. Therefore, that an issue
16 of bifurcation with respect to Toshiba is at this point
17 moot. Is that right or wrong, Mr. Horwitz?
18    MR. HORWITZ: All I'm saying is if it's based on
19 the stay, I agree that the case is stayed against them. If
20 it's based on anything else, Your Honor, I just don't have
21 information.
22    THE COURT: Mr. Lueck? Are you there,
23 Mr. Lueck?
24    MR. LUECK: Yes, I am, Your Honor.
25    THE COURT: Is it --

18

1    MR. LUECK: I believe we have resolved the
2   issues with Toshiba as to their module making activities,
3   and so they would still be stayed as to their customer
4   activities but it's our understanding that the motion itself
5   would be mooted as a result of that. Certainly, the issue
6   still remains as part of the scheduling conference.
7    THE COURT: Yes, it does. Well, here is what
8   I'm going to do. I'm going to deny this without prejudice
9   to leave for Toshiba to re-file because I think it may well
10  be mooted by the scheduling that we're going to be dealing
11  with and, in any event, the case against them is stayed at
12  this point.
13   So is there anything you want to put on the
14  record in response to that ruling, Mr. Horwitz?
15   MR. HORWITZ: No, Your Honor.
16   THE COURT: All right. Now, Mr. Lueck, are you
17  in a position to talk about the October '05 order?
18   MR. LUECK: Yes, I am, Your Honor.
19   THE COURT: All right. And we just have to
20  reorient ourselves. This was an order with six numbered
21  paragraphs in it.
22   Did we get accomplished what was supposed to be
23  accomplished out of paragraph 1?
24   MR. LUECK: With the exception of; going down to
25  sub-part C, Your Honor; the identification of other versions

19

1   of the identified products that include LCD modules with
2   substantially the same structure. We have not accomplished
3   that with the customer defendants.
4    THE COURT: Otherwise, it's done?
5    MR. LUECK: Yes, Your Honor.
6    THE COURT: Does anybody on this call want to
7   take issue with that assertion?
8    All right. I'm not --
9    MR. HORWITZ: Your Honor, again on behalf of a
10  number of customer defendants who aren't participating in
11  the call, I'm not sure what Mr. Lueck is referring to when
12  he says things weren't accomplished. I don't know of any
13  back-and-forth disputes that were outstanding. Perhaps I
14  wasn't copied on correspondence from Honeywell's counsel.
15   THE COURT: Well, let me be more clear. And
16  this is not designed to put anybody in the dock for failing
17  to do something or not do something. At this stage, I'm
18  just trying to figure out what has been done and what hasn't
19  without assigning blame in any fashion for what has been
20  done or hasn't. So my question more precisely put is not
21  with respect to what hasn't been done in this subparagraph C
22  but with respect to what manufacturer Lueck says has been
23  accomplished, does anybody on this call disagree, other than
24  this sub C, what was asked to be done has been done?
25   All right. Mr. Lueck, as to paragraph 2.

20

1    MR. LUECK: Yes, Your Honor. That has been
2   accomplished.
3    THE COURT: All right. Again, does anybody on
4   the call have a disagreement with that?
5    Paragraph 3.
6    MR. LUECK: We believe that has been
7   accomplished, Your Honor.
8    THE COURT: Once again, does anybody on the call
9   disagree with that assertion?
10   All right. Now, we have a stay in place under
11  paragraph 4.
12   Paragraph 5, has that been accomplished yet?
13   MR. LUECK: Your Honor, I believe that has been
14  largely accomplished. There is one outstanding issue which
15  I think we have handled but we have three defendants whom
16  we've been unable to serve because they wouldn't waive
17  formal process. And as to those three defendants, we have
18  agreed with the other defendants in this case that we should
19  simply sever those defendants and proceed.
20   THE COURT: Now, what --
21   MR. LUECK: I can give Your Honor the names.
22   THE COURT: Please do.
23   MR. LUECK: They are All Around Company Limited.
24   THE COURT: Tell me, if you would, if you know,
25  what type of entity it is and what its source or what

21

1   country or state it's organized under.
2    MR. LUECK: All Around Company is I believe a
3   Taiwan company, and it is a manufacturing defendant.
4    THE COURT: All right. Next.
5    MR. LUECK: The next one; and I believe all
6   of these are Taiwan companies, Your Honor; is Innolux,
7   I-N-N-O-L-U-X, Display Corporation. Again, a manufacturing
8   defendant.
9    And Picvue, P-I-C-V-U-E, Electronics Limited;
10  again, a Taiwan manufacturing defendant.
11   THE COURT: All right. So how many does that
12  leave as manufacturer defendants? And in that, kindly
13  include not just the ones you sued but the ones who sued
14  you.
15   MR. LUECK: That would be 19 manufacturing
16  groups or families. And for the purpose of a group or a
17  family we've treated, you know, companies that are more or
18  less under the same corporate umbrella as one.
19   THE COURT: Is there agreement by the parties
20  that your grouping is one they can live with and believe is
21  accurate?
22   MR. LUECK: I can't say for certain, Your Honor.
23   THE COURT: Then let's do this. Let's take the
24  time for you to just put on the record who the families are
25  and then if there is any disagreement with it, I'll know it

22

```
 1    because someone will be in a position to have to respond to
 2    it.
 3              MR. LUECK:  The families that -- I'm sorry.  The
 4    families that we are referring to, Your Honor, are Casio.
 5              THE COURT:  Which include?
 6              MR. LUECK:  I'm sorry.
 7              THE COURT:  And I want you to tell me who are
 8    including in this family, so give me the "family name" and
 9    then give me of the defendants who you think fall into that
10    grouping.
11              MR. LUECK:  Okay.  It may take me just a moment
12    because I don't have a list put together that way but I
13    think I can do it.
14              Casio would be Casio Computer Company Limited,
15    and Casio Inc.
16              Then there would be Fuji, which would include
17    Fuji Photo Film.  Let me say that again.  I'm sorry.  Fuji
18    Photo Film Company Limited, Fuji Photo Film USA Inc.  Those
19    are the two in that group.
20              Then Matsushita, which is Matsushita Electrical
21    Industrial Company and Matsushita Electrical Corporation of
22    America.
23              Then Sony, which includes Sony Corporation, Sony
24    Corporation of America, and ST Liquid Crystal Display Corp.
25              The next group is Optrex, which is simply Optrex
```

24

```
 1              THE COURT:  All right.  By the way, I need to
 2    have that last speaker please identify yourself for the
 3    record.
 4              MR. KEE:  This is Nelson Kee of Howrey
 5    representing Philips.
 6              THE COURT:  All right.
 7              MR. KEE:  And we noted that in our answer.
 8              THE COURT:  All right.  Mr. Lueck.
 9              MR. LUECK:  The next single defendant we have is
10    Quanta Display Inc.
11              Then we have the Samsung group, which is Samsung
12    SDI Limited and Samsung SDI America Inc.
13              And that also includes, which is combined with
14    Sony -- or excuse me.  Excuse me one moment, Your Honor.
15              Sorry.  The list I was looking at, I already
16    mentioned St Liquid Crystal Display.  That is part of Sony,
17    Your Honor.  My apologies.
18              THE COURT:  All right.
19              MR. LUECK:  The next one is Topply
20    Optoelectronics Corp.  That's a single defendant.
21              Then we have the Wintek group, which is Wintek
22    Corp. and Wintek Electro-Optics Corporation.
23              MS. NIEMEYER:  Your Honor.
24              THE COURT:  Yes.  Yes.
25              MS. NIEMEYER:  Hi, this is Elizabeth Niemeyer
```

23

```
 1    America.
 2              Then Seiko Epson.  That's also a stand-alone as
 3    I'm looking at the caption.
 4              Next is AU Optronics Corp. and AU Optronics
 5    Corporation of America.  That's a group.
 6              Then Boe-Hydis Technology Company.
 7              Then next is Citizen Watch, which is Citizen
 8    Watch Company and Citizen Displays Company Limited.
 9              Then we have Hannstar Display Corporation which
10    is a single defendant.
11              Then the Hitachi group.  The Hitachi group is
12    Hitachi Limited, Hitachi Displays Limited, Hitachi Display
13    Devices Limited and Hitachi Electronic Devices USA Inc.
14              Then we have International Display Technology
15    and International Display Technology USA Inc.
16              Next is the Philips group, which is Koninklijke,
17    Philips Electronics NV, Philips Consumer Electronics North
18    America, and Philips Electronics North America.
19              MR. KEE:  Philips has a point to raise about
20    this issue.
21              THE COURT:  All right.  What is that?
22              MR. KEE:  Philips Consumer is not a -- is a
23    division of Philips Electronics.  It's not a separate legal
24    entity.
25              MR. LUECK:  Okay.
```

25

```
 1    with Finnegan Henderson for Wintek.  We don't have any
 2    objection to being identified as a family for purposes of
 3    this litigation so we just want to make sure that it's not
 4    treated as a waiver for any future litigation issues in
 5    other cases.
 6              THE COURT:  In other cases?
 7              MS. NIEMEYER:  Yes.
 8              THE COURT:  Well, fortunately I don't have to
 9    deal with any other cases.  That's fine for you to put that
10    on the record but I'm just trying to find out who is getting
11    treated as lumped in the cases, these consolidated cases
12    before me right now.  Okay?
13              MS. NIEMEYER:  Okay.  Thank you, Your Honor.
14              THE COURT:  Thanks.  Go ahead, Mr. Lueck.
15              MR. LUECK:  No. 18 is Sanyo Epson Imaging
16    Devices Corporation.
17              MR. BENSON:  Your Honor, this is Robert Benson
18    from Hogan & Hartson.  I believe Sanyo Epson should probably
19    be grouped with Seiko Epson.
20              THE COURT:  All right.
21              MR. LUECK:  That's fine with us, Your Honor.
22              THE COURT:  Okay.
23              MR. LUECK:  And the last one is Arima Display.
24    So with the Sanyo clarification, that is part of Seiko, I
25    believe we have 18, in our view, Your Honor, 18
```

26

1  manufacturing families or groups.
2      THE COURT: Okay. Does anybody on the call,
3  other than those folks who have already spoken up with
4  issues, take issue at all with the description now of the
5  universe of manufacture defendants that we're dealing with?
6      MR. RIZZI: Yes, Your Honor. This is Stephen
7  Rizzi from Weil Gotshal for the Matsushita defendants. We
8  had raised an issue with the Court in January concerning
9  a disagreement with Honeywell as to the status of the
10  Matsushita defendants. In our view, the Matsushita
11  defendants should be treated as customer defendants under
12  the Court's October 2005 order. And I believe Your Honor
13  had indicated that was also to be taken up on today's call.
14      THE COURT: Is there anybody else in that same
15  boat?
16      MR. SIROTA: Your Honor, good morning. Neil
17  Sirota for Hitachi.
18      THE COURT: Yes.
19      MR. SIROTA: And we do not believe that all four
20  of the defendants that have been termed "manufacturers"
21  would actually fall into that category. And, Your Honor,
22  we submitted a letter alerting the Court to that issue and
23  hopefully we'll be able to resolve it on our own.
24      THE COURT: I did see your letter, yes. Thank
25  you.

27

1      Anybody else?
2      MR. FLOCK: Yes, Your Honor. This is John Flock
3  for the Sony entities. There is a motion to dismiss one of
4  the entities, ST LCD for lack of personal jurisdiction and
5  the pending motion will not be completed in its briefing
6  until later this week.
7      THE COURT: All right. The last shot. Anybody
8  else?
9      Okay. Given that the meter spinning wildly
10  given the number of lawyers that we have on this call, let
11  me ask this: Is there any opposition amongst any of the
12  other defendants to my taking up the position of Matsushita
13  in a separate discussion after this generalized call? And
14  I'll ask the Matsushita and Honeywell people that in a
15  moment but first I want to know whether anybody else has
16  an issue with that?
17      I hear nothing in that regard.
18      Okay. Matsushita defendants, do you have a
19  problem with our taking that up in a separate discussion?
20      MR. RIZZI: Stephen Rizzi, Your Honor. That's
21  fine.
22      THE COURT: All right. Mr. Lueck? Any problem
23  with our taking that up in a separate discussion?
24      MR. LUECK: No, Your Honor. We believe that
25  makes sense.

28

1      THE COURT: All right. We'll do that. I'll ask
2  you to make a call, in fact, Mr. Grimm at an opportune time,
3  if you would, and schedule that with Ms. Stein; all right?
4      MR. GRIMM: Certainly.
5      THE COURT: Thank you.
6      Okay. So for purposes of discussion only and
7  without prejudice to Matsushita's position; okay? I'm not
8  saying one way or another that I believe you are in or out
9  of this case but to have a number to use, I'm going to use
10  the 18. Let me first ask whether any thought had been given
11  to the position advanced -- and, Honeywell, I'm asking you
12  this question -- the position advanced by the manufacturer
13  defendants generally other than Optrex that this is a case
14  where validity and unenforceability issues are the common
15  issues and should be addressed first.
16      MR. LUECK: Yes, Your Honor. We believe that
17  there should be a trial that addresses all of the liability
18  issues and we believe there will be a great deal of
19  commonality with those issues once discovery and claim
20  construction is completed. And on the infringement side in
21  particular, Your Honor, I would point out that we think the
22  invention and the claims are pretty straightforward with
23  just the light source, two lens arrays, an LCD panel
24  configuration. Therefore, we believe it would be economical
25  to address that issue as well.

29

1      THE COURT: Even though there are 18
2  different groups of manufacturers, you think it's pretty
3  straightforward, huh?
4      MR. LUECK: I do, Your Honor.
5      THE COURT: All right. Well, without hearing a
6  course all at once, who wants to weigh in on behalf of the
7  manufacturer defendants on that front?
8      MR. ROVNER: Your Honor, this is Phil Rovner.
9  I'm representing, along with Stroock & Stroock & Levan,
10  Fuji Photo but I have been nominated to speak for the
11  manufacturer defendant group, as much as one person can
12  speak for the large group that we have. So I'll do my best.
13      Frankly, we are surprised that Honeywell would
14  come forward with basically the exact same proposal that was
15  rejected almost ten months to the day when we were before
16  you in May of 2005. In that case, in that time, they were
17  about the same number of defendants and in your opinion of
18  May 18, 2005, you wrote, "it is impracticable to try an
19  infringement case against 40-some defendants or third-party
20  defendants with many different accused devices."
21      Well, all that we have now is about the same
22  number of defendants; we have 35 total and 18 families; but
23  all that has been done is that the names have been replaced
24  and it's just as impracticable today as it was 10 months
25  ago. So the manufacturer defendants believe that the only

30

1  way to go at this point is our proposal, which is to try
2  the common issues, the true common issues which we believe
3  are invalidity and unenforceability, and that is what our
4  proposal sets forth.
5      THE COURT: Now, let me ask a question of you.
6      Have you given any thought to whether, if I
7  were to accept your suggestion in that regard, how I would
8  nevertheless manage a case with this many defendants?  In
9  other words, Optrex is making the pitch, hey, let us step
10 out front first and we'll carry the torch for everybody.
11 And you folks evidently think that is not a good idea.  But
12 have you thought of what other things might be done besides
13 having 18 groups of companies with platoons of lawyers for
14 everybody in the courthouse or some third location or some
15 other different location, because trying it in this facility
16 would be perhaps impracticable?
17     MR. ROVNER: Well, on behalf of the manufacturer
18 defendants, we believe that with a lot of effort, we could
19 try the true common issues with the defense group that we
20 have; and we believe that would be the most efficient way
21 because you would have the most parties at trial.  And as I
22 keep saying, the true common issues, that we believe could
23 be done.  And that's why we certainly considered Honeywell's
24 proposal and we considered Optrex's; but we believe for the
25 great bulk of the defendants, our proposal, which is set

31

1  forth in the proposal that was provided to Your Honor last
2  week, is the one that would be the best for all concerned.
3      THE COURT: All right.  Optrex, I'll give you a
4  chance to weigh in here; and then I'll turn back to you,
5  Mr. Lueck.
6      MR. KELLY: Your Honor, this is Dick Kelly for
7  Optrex.
8      Optrex doesn't believe that you can have a trial
9  with 18 defendants even if the so-called common issues are
10 there.  There are going to be differences of opinion as to
11 what prior art to play and other things.
12     Second, I just wonder how are you going to
13 schedule something like that.  This case has been going
14 on almost a year and-a-half now and we're no closer to
15 resolution than when the complaint was filed and Optrex
16 would like to get it over, and over as quickly as possible,
17 and we don't see that happening if this case is going to
18 have 18 or 19, whatever it winds up being, defendants at a
19 trial, even a trial on the so-called common issues.
20     THE COURT: Okay.  Mr. Lueck.
21     MR. LUECK: Yes, Your Honor.  I think, you know,
22 when we went back and set this structure up, the idea was
23 putting the manufacturing defendants in to stand in place
24 of the customer defendants on some of these issues would
25 streamline matters and speed up the resolution.  We believe

32

1  that that can be accomplished.  We think the issues of
2  validity are common and the issues of infringement.
3      Essentially, I recognize there are some differ-
4  ences in some of the ways that the invention is implemented
5  but overall the claim is really not complicated.  And I
6  don't believe the proofs on that issue will be terribly
7  complicated.
8      THE COURT: All right.
9      MR. LUECK: And --
10     THE COURT: Well, I got your position.  Thanks.
11     I have to say, bluntly, it's unworkable and it's
12 not going to happen.  We're not taking this case to trial
13 on all issues against all defendants.  We will take it to
14 trial on common issues in the first instance:  validity and
15 unenforceability.
16     The only question I have in my mind is whether
17 it's really possible to try this case with all these people
18 at once.  And I think it more likely than not that it is not
19 a practical way to approach it.  And something that the
20 parties ought to be talking about is if there are, if there
21 is a logical group to stand in first.  And this may be an
22 impossible thing to ask the people on this call to do,
23 certainly without having a chance to talk to each other and
24 talk to their clients, so I'm not expecting anybody to give
25 me an answer now.  And we're not going to delay scheduling

33

1  for now.
2      Let me emphasize, by the time this call is over
3  there is going to be a scheduling order.  The only question
4  is whether everybody is going to be on that same train or
5  not.  You know, some people like Optrex may want to be on
6  that train.  They may say I don't want to wait and see how
7  other people do at resolving the issue.  I am ready to go
8  now, and I want to go now.  And I'll count Optrex as one of
9  the folks that wants to be on a train and that is well and
10 good.  There may be others who are delighted to let others
11 carry the water and sit back and see what happens.
12     But you folks ought to talk to each other on the
13 defense side and see if there isn't a more manageable group.
14 And by "manageable," I'm thinking something not in excess of
15 five; and less is better; so that we could actually fit in
16 a courtroom, in this building, and we could actually try a
17 case to a jury over the course of a reasonable length of
18 time, a couple weeks, and get a resolution.
19     But I'll leave for another day how we narrow
20 that.  For now, it's enough to say that Optrex is not going
21 to go it alone and Honeywell's position is impractical and
22 is rejected.  So we're going to go against the manufacturer
23 defendants; what group remains to be seen; and we're going
24 to get ourselves a schedule in place.
25     With that as background, I assume that everybody

SHEET 10

34

1  has the form of order in front of them. Mr. Grimm was good
2  enough to send over a March 8th letter. And it's Docket
3  Item 160. I'm looking at that and at the attachment, and
4  we'll go through this together now.
5       First, hold on just one moment.
6       (Pause.)
7       THE COURT: Looking at paragraph 1, I was
8  delighted to see the word "agreed" after that; delighted and
9  surprised.
10      Looking at paragraph 2, I recognize that the
11  manufacturer defendants would like to hold Honeywell's feet
12  to the fire, but let me ask if anybody feels like they need
13  to speak to this position beyond the fact that I see you
14  have a different view on it. Mr. Lueck, I'll give you a
15  chance to speak on that, if you want.
16      MR. LUECK: Your Honor, simply that given the
17  scope of the case and the difficulty that we've had in
18  getting information rapidly; and I'm attaching no
19  characterization of that whatsoever; we think that the
20  later date makes sense to insure that we have all of
21  the issues that can be corralled, corralled.
22      THE COURT: All right. Do we have a single
23  voice for the manufacturer defendants here on this?
24      MR. ROVNER: Your Honor, it's Phil Rovner again.
25  We believe that given the amount of time that has transpired

35

1  so far, that the May 26th 2006 date is reasonable, very
2  reasonable; but I guess a lot depends on the scheduling that
3  we're going to set while we're on this call this morning,
4  where it fits into the overall scheme.
5       THE COURT: All right. Just a moment, please.
6       (Pause.)
7       THE COURT: All right. I'm going to come back
8  to that at this point.
9       Let's turn to the discovery issue which has
10  been the subject of additional letters by both sides and
11  commentary within the docket item. And I think I have
12  everybody's position on this so let's keep this short.
13      Mr. Lueck, is there anything else you need to
14  say other than what is in the papers?
15      MR. LUECK: Well, Your Honor, we didn't argue
16  the point in our letter. The only points I would make
17  is that we do not believe more discovery of the defendants
18  will burden each of the defendants in that we will be
19  taking discovery that is specific to the defendants and
20  likely of no interest to others, much like the Matsushita
21  motion that is pending. Conversely, every hour of
22  deposition that the defendants take of Honeywell is an
23  hour of deposition that generally will benefit all and we
24  believe that our proposal reflects that, affords people
25  what they need to take discovery and doesn't unduly

36

1  stretch it out.
2       THE COURT: All right. Optrex, now that you
3  are aware that you are going to be dealing with a
4  consolidated case and go to trial with others, does that
5  alter your position on the discovery limits?
6       MR. KELLY: Your Honor, this is Dick Kelly.
7  Absolutely not. We believe that Honeywell is too short.
8  With all due respect to the manufacturing defendants, theirs
9  is too long.
10      THE COURT: All right. Mr. Rovner.
11      MR. ROVNER: Your Honor, we disagree with both
12  Mr. Kelly and Mr. Lueck. What we have done with multiple
13  manufacture defendants, he has given Honeywell the amount
14  of time that they have requested in terms of taking party
15  discovery and taking third-party discovery, but what our
16  proposal has done, as you can see, is it has given us the
17  great number of manufacturer defendants more discovery than
18  what Honeywell thought we were entitled to and I guess
19  what Optrex now believes. But we feel it is absolutely
20  necessary.
21      It is very difficult to coordinate discovery
22  and we've undertaken to do that. And the idea that at this
23  point in time, Honeywell tells us what we can take and what
24  we can't take, we think that it's premature. This patent
25  has been out there for over 10 years. There are witnesses

37

1  that are all over the place. And we need, at least at this
2  point in time, we need the ability to go out and take the
3  depositions that we feel we absolutely have to take.
4       There is no desire on the part of any
5  manufacturer defendants to take more depositions than are
6  necessary. There is certainly no desire to take duplicative
7  discovery. And I have a feeling that if we start taking
8  duplicative discovery, Honeywell's counsel is going to be
9  before you. So at this point in time, we believe that our
10  proposal is what we feel we need at this time. Maybe we
11  can adjust it down; but at this point, we think that we
12  certainly need that and we feel the issues that are specific
13  to defendants need more time.
14      THE COURT: All right. Well, we're going to go
15  with the manufacturer defendants' proposal. It's impossible
16  for me to say precisely whether they're overreaching but I
17  have read the positions, heard your argument and it strikes
18  me that this is a case that is complicated enough and old
19  enough, long enough in the tooth that there is going to be a
20  substantial amount of third-party discovery going on.
21      So you've heard the invitation, Mr. Lueck. If
22  they're getting out of line, you can seek the Court's
23  assistance in dealing with any problem in that regard.
24  And I endorse that. But we'll go with those limits the
25  manufacturer defendants have laid out.

**38**

1  All right. The discovery cutoff. Of course,
2  3b, glad to see people agreed on that:
3  3c, we had a disagreement on the discovery
4  cutoff as well. And I have the parties positions on this I
5  think pretty well in mind. We're going to go ahead and set
6  the May 30th deadline -- May 30th, 2007 as the discovery
7  cutoff.
8  And in that regard, let me tell you that I
9  think that the appropriate limit for amending is going to be
10  some months ahead of that. December is too near in time to
11  that, Honeywell, and the date proposed by the manufacturer
12  defendants and Optrex too close. So I'm picking
13  arbitrarily -- well, not entirely arbitrarily. I think this
14  is a fair date to pick -- July 7, 2006 as the date that you
15  should plug into paragraph 2 as the date to join other
16  parties or amend pleadings.
17  I'm happy to see that 3d is agreed to. However,
18  there is a concern here about Honeywell's suggested addition
19  in that regard. So, Mr. Rovner, are you still speaking on
20  behalf of the manufacturer defendants?
21  MR. ROVNER: Yes, Your Honor.
22  THE COURT: Go ahead and explain to me the
23  opposition. And I'll give you a chance to --
24  MR. ROVNER: It's very simple. We don't believe
25  it's necessary. We believe that Your Honor's way of doing

**39**

1  things in other cases is appropriate here. And we don't
2  believe that what they have asked for here is necessary.
3  THE COURT: Mr. Kelly? Mr. Kelly for Optrex.
4  MR. KELLY: Your Honor, I agree with Mr. Rovner.
5  We believe that 90 days is more than enough.
6  THE COURT: All right. Mr. Lueck.
7  MR. LUECK: Simply put, Your Honor, I think it's
8  an additional point that, although not obviously in every
9  patent case, will help the issues, help the parties to focus
10  the issues, know what is coming up and hopefully streamline
11  the issues that have to be presented and the expert
12  discovery as well. This could be voluminous.
13  THE COURT: All right. Well, we're going to go
14  with my standard. It's a 90-day.
15  Discovery disputes. Now, there is some feeling
16  here that you need some additional time for putting stuff
17  together. What is the issue there? Mr. Lueck, I'll give
18  you the ball first on this one.
19  MR. LUECK: I believe, Your Honor, the 48 hours
20  is the standard turnaround time; and we're fine with that.
21  THE COURT: Okay. Mr. Rovner.
22  MR. ROVNER: Your Honor, in this situation we do
23  feel that we need to have a little bit of variation from
24  your standard order just because of the number of defendants
25  that we have to coordinate and make it easier for Honeywell

**40**

1  and to make it easier for your chambers to get one uniform
2  response is I think the only way to go and that takes time.
3  And that's the only reason that we put those extra days in
4  there, because it's really a chore to coordinate. I can
5  tell you, just based on preparing for this call.
6  THE COURT: Mr. Kelly, I take it you agree?
7  MR. KELLY: Absolutely, Your Honor.
8  THE COURT: All right. I agree as well. This
9  is not the typical case so we'll give you the extra time.
10  And I'm going to take that statement that you have made
11  there, Mr. Rovner, to heart which is I'll be getting a
12  coordinated response and not getting 18 or 20 different
13  letters from defendants.
14  MR. ROVNER: We're trying, Your Honor.
15  THE COURT: Okay. I'm happy to see there was
16  agreement on the various points up to paragraph 6. Let me
17  put you on hold for just a moment.
18  (Pause.)
19  THE COURT: When we get to paragraph 7, I'm
20  going to have to shift things a little bit on you. The
21  interim status conference is going to be, fittingly, on
22  Halloween. We're going to scare each other on October 31,
23  2006 at 4:30 p.m.; and this is going to be an in-person
24  conference. So the order will need to be changed in that
25  regard. I'll look forward to seeing people in my courtroom

**41**

1  on October 31st; okay? At 4:30.
2  And that I will need your status reports no
3  later than October 24th. And, of course, a coordinated
4  response on behalf of the defense would be appreciated to
5  the extent that is possible.
6  Let's talk about the tutorial. What is the
7  nature of the problem or disagreement here, Mr. Lueck?
8  MR. LUECK: Your Honor, the dates on the one
9  hand, and then simply that Honeywell proposes that the
10  parties be permitted to submit a videotape of no more than
11  30 minutes at the hearing. This would be something in the
12  nature of an animation to explain the technology.
13  THE COURT: All right. Mr. Rovner.
14  MR. ROVNER: Your Honor, other than the date,
15  our point only is that the tutorial is what Your Honor
16  requests all the time and this seems like a double tutorial.
17  They can videotape what they present in court. I thought,
18  we thought that is what Your Honor wanted. This just
19  seems like two tutorials and that is just really our
20  objection.
21  THE COURT: All right. Well, two for the price
22  of one. The short answer is if they want to come into court
23  and use their time to play a video and answer questions,
24  that's okay with me.
25  As far as the date goes, we're going to go ahead

**42**

1  and do this on December 22nd, 2006 and we'll pick it up at
2  9:30 a.m.
3        All right. Looking at case dispositives. In
4  this instance, we're going to go with the June 30th date.
5  June 30, 2007. And the briefing you proposed on the
6  Honeywell and the manufacturer defendants' side is fine.
7  That's the route we'll go there.
8        Similarly, we'll go with the November 9, 2006
9  proposal that Honeywell and the manufacturer defendants have
10  agreed on for paragraph 11.
11        Looking at paragraph 12, our hearing on these
12  matters is going to be -- excuse me. That's just paragraph
13  13. Our hearing on these matters is going to be on August
14  30th, 2007. We'll have that beginning at 9:30 a.m.
15        Now, looking down at paragraph 15. I'm going to
16  set this for a pretrial conference on December 17, 2007 at
17  4:30 p.m.
18        That means I'm going to need a form of pretrial
19  order, final pretrial order no later than November 16, 2007.
20        All right. As to the issue in paragraph 16, why
21  don't you explain to me your position. I think it's kind of
22  obvious but I will go ahead and take your position on the
23  record, Mr. Rovner. And Mr. Kelly, I'll let you join in or
24  disagree, as you choose, for Optrex on handling motions in
25  limine; which Honeywell, I take it, proposes to handle as I

**43**

1  typically do and you guys do not. Go ahead.
2        MR. ROVNER: Your Honor, this is Phil Rovner.
3  Actually, my feeling was that Honeywell was trying to
4  deviate. They wanted more coordination than we're required
5  to do. We're certainly going to try to make this a
6  coordinated response. And certainly if you narrow the trial
7  group, it's much more, it's obviously more chance to get a
8  single five-page motion in limine. But I think we would
9  want the ability or the defendant could want the ability to
10  add a page or two if their issues are different. Certainly,
11  it's the same global motion but if there is a certain fact
12  or two that plays to an individual defendant, they would
13  want the right to add to it. We do not want to overpaper
14  anything at that point at all.
15        THE COURT: Mr. Kelly, do you have anything you
16  want to add on that?
17        MR. KELLY: No, Your Honor.
18        THE COURT: Mr. Lueck?
19        MR. LUECK: Yes, Your Honor. We wanted to try
20  to streamline it as much as possible. We recognize that it
21  is a departure.
22        THE COURT: Well, it's actually not so much of a
23  departure in this respect. That typically I'm not dealing
24  with 18 sets of defendants, so what I'm used to seeing is a
25  coordinated defense response to a motion in limine from the

**44**

1  plaintiff and not multiple responses. However, I will --
2  I'm just reluctant to say, yes, go ahead and everybody can
3  file their own because litigation being what it is, people,
4  if given an opportunity to speak or write, typically will
5  take it. And I will get duplicative submissions. And
6  that's significantly unhelpful.
7        So I will limit it with leave for people to
8  request an opportunity to file something additional, if they
9  have something that is truly different than the position
10  that should be generally or is being generally taken by
11  other defendants.
12        So let me ask you if you folks would wordsmith
13  that concept, if you understand what I'm getting at. Are
14  you with me, Mr. Rovner?
15        MR. ROVNER: Yes, I am, Your Honor.
16        THE COURT: And, Mr. Lueck, if you understand
17  what I'm getting at, then you folks ought to be able to come
18  up with the language that would fit in paragraph 16 on that
19  point, please.
20        MR. LUECK: Yes, Your Honor. We'll do so.
21        THE COURT: All right. Now, let's talk about
22  trial. Why don't I hand the ball to you first, Mr. Lueck,
23  to make your pitch on behalf of the position you folks have
24  taken.
25        MR. LUECK: Our view of it, Your Honor, is there

**45**

1  are more common issues than the defendants recognize and
2  that coming into this we now have 18 groups. Seventeen of
3  the 18 agreed to speak with one voice on this issue except
4  with respect to the infringement claims. And looking at
5  what we believe will be the issues in claim construction,
6  the resolution of a large bulk of those issues, we simply
7  would go back to our point that we do believe that the ball
8  can be advanced in a simpler fashion than is being right
9  now as to those issues.
10        The other aspect of this is, Your Honor, that
11  there is a 271 issue out there as to whether the defendants
12  are going to come in and claim that there is no meaning to
13  this trial because they, themselves don't enforce their
14  manufactured products into the United States. And that's
15  why we believe it's important to deal with that infringement
16  issue, so that we can connect that up with the customer
17  defendants.
18        THE COURT: Well, let me ask, are you
19  suggesting, sir, that if they were to lose at a trial on
20  validity and unenforceability so that your claims were found
21  to be valid and enforceable, that you would then somehow not
22  be in as good a position as -- I mean that somehow affects
23  your ability to go after people for liability? Help me
24  understand that. I'm not sure I'm following you.
25        MR. LUECK: I don't know that it means that we

United States District Court - Honorable Kent A. Jordan

46

1 can't go after them, Your Honor. It's a question of when
2 to reach the issues in our view. And the issue on the 271
3 that I'm trying to explain is that the defendants have not
4 yet taken a position as to whether they actually put the
5 products that we're arguing about into the stream of
6 commerce in the United States. I'm saying that the
7 infringement trial is a necessary step to that in order
8 to resolve that issue and actually get the actual products
9 in front of the Court that have infringed in the U.S.
10        THE COURT: All right.
11        MR. LUECK: And that issue is kind of out there
12 as a stalking horse right now, and it's one of the reasons
13 why we believe the structure that we proposed is one that
14 makes logical sense overall to the resolution of the case.
15        THE COURT: All right. Mr. Rovner, you are
16 speaking to this again?
17        MR. ROVNER: Well, I was thinking as to how we
18 were staging this trial and what we were putting forward in
19 terms of validity/unenforceability and whether we thought it
20 was a 10-day trial and whether we thought it was -- how much
21 time we would need following the pretrial conference. I am
22 not the spokesman on the 271 issue, if that is what you want
23 to hear first.
24        THE COURT: No, I want to hear on what I asked
25 about and what you just said your position is. So if you

47

1 don't have anything to add, that's great, I've read your
2 position.
3        MR. ROVNER: Our feeling is that -- I can
4 actually, without having talked to the group, because we
5 have now got a trial that is going to go on validity and
6 enforceability issues with four to five defendants, we don't
7 feel that we're going to need six weeks between the pretrial
8 and the trial. That was something that we built-in because
9 of our numbers. And also, we probably would be flexible a
10 bit on the 10-day trial. But that is really all I would
11 need to add on that.
12        THE COURT: All right. Mr. Kelly, you've had
13 separate positions. I'll give you a chance to speak, if you
14 would like, sir.
15        MR. KELLY: Your Honor, given your decision
16 there are going to be four or five going together, Optrex
17 joins with what Mr. Rovner had to say.
18        THE COURT: All right. Well, here is how this
19 comes down. I'm going to set this for 10 days in the hopes
20 that it can be done in less, but we'll take 10 trial days
21 and we'll run the trial from January 28th to February 8,
22 2008. And, of course, by the time we get to that, we should
23 be in a position, if things haven't otherwise resolved
24 themselves, to know exactly who is going to be in that mix.
25        But whoever is going to be in that mix needs

48

1 to be planning and scheduling around those trial dates,
2 January 28th to February 8, 2008; 22 hours per side. That
3 means it's going to have to be coordinated on the defense
4 side. And I'm taking the defendants at their word that
5 they've got common issues on these fronts and it can be
6 coordinated, so it's going to be 22 hours per side:
7 plaintiffs having 22 and the manufacturing defendants set
8 having 22.
9        All right. Now, Mr. Grimm, this is kind of a
10 tall order, I guess, because this is more complicated than
11 the usual thing; but I would appreciate if you folks on the
12 plaintiffs' side would make the laboring oar and make sure
13 that what we've discussed in this call gets into a final
14 form that is circulated among the parties and everybody
15 agrees that it accurately reflects what we've discussed
16 on this call so that you can send that over to me for
17 signature. All right?
18        MR. GRIMM: We will do that, Your Honor.
19        THE COURT: Okay. I appreciate everybody's time
20 and attendance. We're finally going to get ourselves a
21 scheduling order here.
22        I will look forward to hearing from the
23 Matsushita folks so we can resolve the issue you have raised
24 in a separate call. I also look forward to hearing from the
25 parties as soon as practicable about the issue I have raised

49

1 which has not been resolved, and that is how do we select
2 this group to go to trial?
3        The thinking of anybody who is not in this group
4 should be you're on this boat all the way to the point of
5 pretrial. I mean I'm not absenting people from being
6 involved in the discovery process, okay? Let me rephrase
7 that. At least through the discovery process, I expect
8 people to be involved.
9        When it comes time for case dispositive motions,
10 and those kinds of things, by then I'm going to want just a
11 group that we're going to need to deal with. So it would be
12 a help I'm sure to everybody if we knew sooner rather than
13 later who that group was going to be.
14        Let me ask you if you've got out -- first, I'll
15 ask the manufacturer defendants. What is a reasonable time
16 frame for me to be asking you folks to have some discussions
17 amongst yourselves to take a position with Honeywell on?
18        MR. ROVNER: Your Honor, this is Phil Rovner.
19 I think that if we can be given about 10 days to talk
20 amongst ourselves, and then we can -- and I'll initiate the
21 call with Mr. Lueck and Mr. Woods within two weeks to try to
22 get discussions going.
23        THE COURT: Mr. Lueck, are you comfortable with
24 that?
25        MR. LUECK: Yes, that's fine with us, Your

1  Honor.
2      THE COURT: All right. Then I'll look forward
3  to hearing from you folks. I'll give you a couple weeks to
4  deal with it after that. So I'll give you about a month,
5  and then I would like to hear from people with some kind of
6  status report that tells me your positions. All right?
7      MR. ROVNER: Your Honor, again this is Phil
8  Rovner. When you say your positions, you mean in terms of
9  how we're going to decide ultimately? I just want to make
10 sure that everyone is aware of what Your Honor wants.
11     THE COURT: Well, what I would like is as much
12 as you can give me. The ideal would be if I got a letter
13 that was a joint letter from everybody that said, you know
14 what? We talked about it and we think these are the four
15 folks to go to trial first on the schedule that you have
16 given us. And everybody is in agreement. That would be the
17 ideal world. But if I'm not going to get the ideal world,
18 I'd like to at least get some sense of what competing
19 proposals are or even competing ways to approach the
20 question because you may disagree on even the appropriate
21 way to look at this, how do I get to this smaller group.
22     So within a month, that ought to be plenty of
23 time for even this large group of defendants to speak
24 amongst themselves and then to speak to Honeywell and for
25 people's positions to be formulated and put in front of

51

1  me, I think.
2      MR. ROVNER: That sounds good, Your Honor.
3  Thank you.
4      THE COURT: All right. Well, I appreciate
5  everybody's time and attendance on the call today. I'm
6  going to put out a short order which simply notes the things
7  that I have already stated on the record here with respect
8  to the Nokia motion and the motion to bifurcate that was
9  submitted by Toshiba, and good enough. We'll hear from you
10 folks in about a month. Thanks very much.
11     (The attorneys respond, "Thank you, Your
12 Honor.")
13     (Telephone conference ends at 11:13 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

**'**

**'05** [2] - 16:5, 18:17

**0**

04-1337 [2] - 1:8, 9:16
04-1338 [1] - 1:14, 9:16
04-1536 [1] - 1:19
05-874 [1] - 12:8

**1**

1 [2] - 18:23, 34:7
10 [5] - 29:24, 36:25, 47:19, 47:20, 49:19
10-day [2] - 46:20, 47:10
10:00 [2] - 1:22, 8:23
11 [1] - 42:10
11:13 [1] - 51:13
12 [1] - 42:11
13 [2] - 1:22, 42:13
1337 [1] - 9:19
15 [1] - 42:15
16 [3] - 42:19, 42:20, 44:18
160 [1] - 34:3
17 [1] - 42:16
18 [14] - 25:15, 25:25, 28:10, 29:1, 29:18, 29:22, 30:13, 31:9, 31:18, 40:12, 43:24, 45:2, 45:3
19 [2] - 21:15, 31:18

**2**

2 [3] - 19:25, 34:10, 38:15
20 [1] - 40:12
2005 [3] - 26:12, 29:16, 29:18
2006 [6] - 1:22, 35:1, 38:14, 40:23, 42:1, 42:8
2007 [5] - 38:6, 42:5, 42:14, 42:16, 42:19
2008 [2] - 47:22, 48:2
22 [4] - 48:2, 48:6, 48:7, 48:8
22nd [1] - 42:1
24th [1] - 41:3
26th [1] - 35:1
271 [3] - 45:11, 46:2, 46:22
28th [2] - 47:21, 48:2

**3**

3 [1] - 20:5
30 [2] - 41:11, 42:5
30th [4] - 38:6, 42:4, 42:14
31 [1] - 40:22
31st [1] - 41:1
35 [1] - 29:22
3b [1] - 38:2
3c [1] - 38:3
3d [1] - 38:17

**4**

4 [1] - 20:11
40-some [1] - 29:19
48 [1] - 39:19
4:30 [2] - 40:23, 41:1, 42:17

**5**

5 [1] - 20:12

**6**

6 [1] - 40:16

**7**

7 [3] - 16:5, 38:14, 40:19

**8**

8 [2] - 47:21, 48:2
8th [1] - 34:2

**9**

9 [1] - 42:8
90 [1] - 39:5
90-day [1] - 39:14
9:30 [2] - 42:2, 42:14

**A**

Ab [2] - 8:10, 12:10
ability [4] - 37:2, 43:9, 45:23
absenting [1] - 49:5
Absolutely [2] - 36:7, 40:7
absolutely [2] - 36:19, 37:3
accept [1] - 30:7
accomplished [1] -

16:7, 18:22, 18:23, 19:2, 19:12, 19:23, 20:2, 20:7, 20:12, 20:14, 32:1
accurate [1] - 21:21
accurately [1] - 48:15
accused [1] - 29:20
Actions [1] - 1:4
activities [2] - 18:2, 18:4
actual [1] - 46:8
add [5] - 43:10, 43:13, 43:16, 47:1, 47:11
addition [1] - 38:18
additional [4] - 35:10, 39:8, 39:16, 44:8
address [2] - 14:16, 28:25
addressed [1] - 28:15
addresses [1] - 28:17
adjust [1] - 37:11
advanced [3] - 28:11, 28:12, 45:8
affects [1] - 45:22
affords [1] - 35:24
afternoon [1] - 9:8
ago [2] - 14:22, 29:25
agree [4] - 17:19, 39:4, 40:6, 40:8
agreed [6] - 20:18, 34:8, 38:2, 38:17, 42:10, 45:3
agreement [3] - 21:19, 40:16, 50:16
agrees [1] - 48:15
ahead [10] - 8:25, 9:23, 25:14, 38:5, 38:10, 38:22, 41:25, 42:22, 43:1, 44:2
al [5] - 1:4, 1:8, 1:10, 1:13, 1:19
alerting [1] - 26:22
Alexandria [1] - 2:19
almost [2] - 29:15, 31:14
alone [2] - 23:2, 33:21
alter [1] - 36:5
amend [1] - 38:16
amended [1] - 15:14
amending [1] - 38:9
America [20] - 1:15, 2:20, 3:21, 4:11, 4:23, 6:12, 6:13, 7:5, 12:14, 12:20, 13:3, 13:4, 13:12, 22:22, 22:24, 23:1, 23:5, 23:18, 24:12
amount [3] - 34:25, 36:13, 37:20
and-a-half [1] - 31:14

Anderson [4] - 6:2, 8:2, 10:14, 10:18
Andrew [4] - 2:19, 5:15, 10:5, 14:19
Andy [1] - 12:15
Angeles [3] - 3:6, 3:13, 4:14
animation [1] - 41:12
answer [4] - 24:7, 32:25, 41:22, 41:23
apologies [1] - 24:17
Appearances [7] - 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1
Apple [3] - 1:13, 5:12, 10:3
appreciate [4] - 16:8, 48:11, 48:19, 51:4
appreciated [1] - 41:4
approach [2] - 32:19, 50:19
appropriate [2] - 38:9, 39:1, 50:20
arbitrarily [2] - 38:13
argue [1] - 35:15
arguing [1] - 46:5
argument [1] - 37:17
Arima [3] - 3:25, 14:5, 25:23
arrays [1] - 28:23
Arsht [1] - 2:5
art [1] - 31:11
Ashby [2] - 2:2, 9:16
aspect [1] - 45:10
assertion [2] - 19:7, 20:9
assessment [1] - 16:24
assigning [1] - 19:19
assistance [1] - 37:23
assume [1] - 33:25
attaching [1] - 34:18
attachment [1] - 34:3
attendance [2] - 48:20, 51:5
attorneys [1] - 51:11
Au [6] - 3:21, 3:21, 13:11, 13:12, 23:4
Audiovox [3] - 1:7, 7:22, 11:21
August [1] - 42:13
aware [2] - 36:3, 50:10

**B**

back-and-forth [1] - 19:13
background [1] - 33:25

Baker [6] - 7:11, 7:17, 11:6, 11:10, 11:14, 11:17
Balick [2] - 2:3, 9:17
ball [3] - 39:18, 44:22, 45:7
Barry [2] - 6:6, 13:20
based [3] - 17:18, 17:20, 40:5
Beach [2] - 5:20, 13:8
beginning [2] - 8:23, 42:14
behalf [15] - 2:13, 8:10, 10:14, 11:24, 12:5, 12:25, 13:7, 13:11, 15:25, 19:9, 29:6, 30:17, 38:20, 41:4, 44:23
believes [1] - 36:19
below [4] - 4:4, 5:4, 6:4
below-listed [1] - 4:4, 5:4
below-named [1] - 6:4
Ben [2] - 3:6, 12:7
Ben-meir [2] - 3:6, 12:7
benefit [1] - 35:23
Benson [5] - 3:12, 12:1, 12:2, 25:17
best [2] - 29:12, 31:2
better [1] - 33:15
between [2] - 16:22, 47:7
beyond [1] - 34:13
bifurcate [3] - 15:21, 15:23, 51:8
bifurcation [1] - 17:16
bit [4] - 11:8, 39:23, 40:20, 47:10
blame [1] - 19:19
bluntly [1] - 32:11
boat [2] - 26:15, 49:4
Boe [4] - 7:19, 11:14, 11:17, 23:6
Boe-hydis [2] - 7:19, 23:6
Boe-hydus [2] - 11:14, 11:17
Botts [3] - 7:11, 11:6, 11:10
Bouchard [2] - 3:3, 12:4
Bove [3] - 3:19, 8:9, 13:11
Brafman [2] - 2:12, 9:14
Brann [2] - 7:8, 11:3
Brian [1] - 8:13
briefing [2] - 27:5,

42:5
**building** [1] - 33:16
**built** [1] - 47:8
**built-in** [1] - 47:8
**bulk** [2] - 30:25, 45:6
**bunch** [1] - 15:14
**burden** [1] - 35:18

**C**

**California** [5] - 3:6,
3:13, 4:14, 5:11, 7:8
**caption** [1] - 23:3
**carry** [2] - 30:10,
33:11
**case** [28] - 9:16, 9:17,
14:10, 15:5, 15:13,
17:6, 17:13, 17:19,
18:11, 20:18, 28:9,
28:13, 29:16, 29:19,
30:8, 31:13, 31:17,
32:12, 32:17, 33:17,
34:17, 36:4, 37:18,
39:9, 40:9, 42:3,
46:14, 49:9
**cases** [6] - 25:5, 25:6,
25:9, 25:11, 39:1
**Casio** [7] - 5:8, 10:5,
22:4, 22:14, 22:15
**category** [1] - 26:21
**certain** [2] - 21:22,
43:11
**Certainly** [3] - 18:5,
28:4, 43:10
**certainly** [6] - 30:23,
32:23, 37:6, 37:12,
43:5, 43:6
**Chad** [2] - 5:18, 13:7
**Chalsen** [4] - 6:10,
13:14, 13:17
**chambers** [3] - 8:23,
10:19, 40:1
**chance** [6] - 10:18,
31:4, 32:23, 34:15,
38:23, 47:13
**changed** [1] - 40:24
**characterization** [1] -
34:19
**choose** [1] - 42:24
**chore** [1] - 40:4
**Chris** [1] - 13:14
**Christopher** [1] - 6:10
**circulated** [1] - 48:14
**Ciresi** [1] - 2:7
**Citizen** [7] - 3:7, 3:8,
12:6, 23:7, 23:8
**Citizens** [1] - 12:8
**City** [1] - 5:11
**Civil** [1] - 1:4
**claim** [4] - 28:19, 32:5,

45:5, 45:12
**claims** [4] - 15:8,
28:22, 45:4, 45:20
**clarification** [1] -
25:24
**clear** [2] - 15:4, 19:15
**client** [2] - 9:6, 9:7
**clients** [1] - 32:24
**close** [1] - 38:12
**closer** [1] - 31:14
**Co** [4] - 3:7, 3:8, 4:23,
8:7
**co** [3] - 12:1, 12:7,
12:25
**co-counsel** [3] - 12:1,
12:7, 12:25
**Columbia** [6] - 4:7,
5:15, 6:7, 6:19, 7:4,
7:18
**combined** [1] - 24:13
**comfortable** [1] -
49:23
**coming** [2] - 39:10,
45:2
**commentary** [1] -
35:11
**commerce** [1] - 46:6
**common** [11] - 28:14,
30:2, 30:19, 30:22,
31:9, 31:19, 32:2,
32:14, 45:1, 48:5
**commonality** [1] -
28:19
**Communications** [5] -
1:7, 7:22, 11:21,
12:10, 12:11
**companies** [3] - 21:6,
21:17, 30:13
**Company** [8] - 20:23,
21:2, 22:14, 22:18,
22:21, 23:6, 23:8
**company** [1] - 21:3
**competing** [2] - 50:18,
50:19
**complaint** [8] - 14:18,
14:24, 15:3, 15:14,
15:17, 31:15
**complete** [1] - 16:11
**completed** [2] - 27:5,
28:20
**complicated** [4] -
32:5, 32:7, 37:18,
48:10
**complied** [1] - 16:6
**Computer** [6] - 1:13,
5:8, 5:12, 6:12, 10:3,
22:14
**Conaway** [4] - 2:15,
4:2, 12:14, 12:19
**concept** [1] - 44:13

**concern** [1] - 38:18
**concerned** [1] - 31:2
**concerning** [1] - 26:8
**conference** [8] - 8:23,
15:11, 18:6, 40:21,
40:24, 42:16, 46:21,
51:13
**Conference** [1] - 1:22
**configuration** [1] -
28:24
**connect** [1] - 45:16
**Connolly** [3] - 3:19,
8:9, 13:11
**considered** [2] -
30:23, 30:24
**consolidated** [2] -
25:11, 36:4
**construction** [2] -
28:20, 45:5
**Consumer** [2] - 23:17,
23:22
**context** [2] - 17:9,
17:10
**continue** [1] - 10:12
**Continued** [6] - 3:1,
4:1, 5:1, 6:1, 7:1, 8:1
**Conversely** [1] - 35:21
**coordinate** [3] - 36:21,
39:25, 40:4
**coordinated** [6] -
40:12, 41:3, 43:6,
43:25, 48:3, 48:6
**coordination** [1] -
43:4
**copied** [1] - 19:14
**Corp** [15] - 1:7, 3:14,
3:14, 3:21, 3:21,
6:20, 7:5, 7:22,
11:21, 13:11, 13:12,
22:24, 23:4, 24:20,
24:22
**corporate** [1] - 21:18
**Corporation** [17] -
4:11, 4:11, 4:23, 6:8,
6:20, 12:19, 12:20,
13:4, 13:22, 21:7,
22:21, 22:23, 22:24,
23:5, 23:9, 24:22,
25:16
**corralled** [2] - 34:21
**correct** [3] - 14:1,
14:24, 14:25
**correspondence** [1] -
19:14
**Corroon** [2] - 6:2, 8:2
**Counsel** [25] - 2:13,
2:20, 3:7, 3:14, 3:17,
3:21, 3:25, 4:11,
4:15, 4:22, 5:8, 5:12,
5:16, 5:22, 6:8, 6:12,

6:20, 7:5, 7:9, 7:14,
7:19, 7:22, 8:7, 8:10,
9:13
**counsel** [11] - 4:4, 5:4,
6:4, 9:2, 12:1, 12:7,
12:25, 13:24, 17:3,
19:14, 37:8
**count** [1] - 33:8
**country** [1] - 21:1
**couple** [3] - 14:16,
33:18, 50:3
**course** [6] - 15:22,
29:6, 33:17, 38:1,
41:3, 47:22
**Court** [111] - 1:1, 8:24,
9:20, 10:11, 11:7,
11:18, 11:22, 12:3,
12:12, 12:17, 12:23,
13:5, 13:9, 13:13,
13:16, 13:18, 13:25,
14:6, 14:21, 15:1,
15:12, 15:19, 16:3,
16:5, 16:13, 16:17,
16:20, 16:23, 17:11,
17:22, 17:25, 18:7,
18:16, 18:19, 19:4,
19:6, 19:15, 20:3,
20:8, 20:20, 20:22,
20:24, 21:4, 21:11,
21:19, 21:23, 22:5,
22:7, 23:21, 24:1,
24:6, 24:8, 24:18,
24:24, 25:6, 25:8,
25:14, 25:20, 25:22,
26:2, 26:8, 26:14,
26:18, 26:22, 26:24,
27:7, 27:22, 28:1,
28:5, 29:1, 29:5,
30:5, 31:3, 31:20,
32:8, 32:10, 34:7,
34:22, 35:5, 35:7,
36:2, 36:10, 37:14,
38:22, 39:3, 39:6,
39:13, 39:21, 40:6,
40:8, 40:15, 40:19,
41:13, 41:21, 43:15,
43:18, 43:22, 44:16,
44:21, 45:18, 46:9,
46:10, 46:15, 46:24,
47:12, 47:18, 48:19,
49:23, 50:2, 50:11,
51:4
**court** [2] - 41:17,
41:22
**Courts** [2] - 26:12,
37:22
**courthouse** [1] -
30:14
**courtroom** [2] - 33:16,
40:25

**Crystal** [2] - 22:24,
24:16
**customer** [6] - 18:3,
19:3, 19:10, 26:11,
31:24, 45:16
**cutoff** [3] - 38:1, 38:4,
38:7

**D**

**damages** [1] - 15:24
**Dan** [2] - 3:23, 14:4
**date** [9] - 34:20, 35:1,
38:11, 38:14, 38:15,
41:14, 41:25, 42:4
**dates** [2] - 41:8, 48:1
**David** [6] - 2:12, 3:6,
4:20, 9:13, 12:7,
13:1
**days** [5] - 39:5, 40:3,
47:19, 47:20, 49:19
**deadline** [1] - 38:6
**deal** [7] - 15:20, 17:12,
25:9, 28:18, 45:15,
49:11, 50:4
**dealing** [5] - 18:10,
26:5, 36:3, 37:23,
43:23
**December** [3] - 38:10,
42:1, 42:16
**decide** [1] - 50:9
**decision** [1] - 47:15
**defendant** [10] - 10:7,
21:3, 21:8, 21:10,
23:10, 24:9, 24:20,
29:11, 43:9, 43:12
**Defendants** [3] - 1:9,
1:14, 1:20
**defendants** [73] - 4:4,
5:4, 6:4, 9:22, 10:5,
10:6, 10:20, 13:15,
13:22, 14:2, 15:15,
16:11, 17:4, 19:3,
19:10, 20:15, 20:17,
20:18, 20:19, 21:12,
22:9, 26:5, 26:7,
26:10, 26:11, 26:20,
27:12, 27:18, 28:13,
29:7, 29:17, 29:19,
29:20, 29:22, 29:25,
30:8, 30:18, 30:25,
31:9, 31:18, 31:23,
31:24, 32:13, 33:23,
34:11, 34:23, 35:17,
35:18, 35:19, 35:22,
36:8, 36:13, 36:17,
37:5, 37:13, 37:25,
38:12, 38:20, 39:24,
40:13, 42:9, 43:24,
44:11, 45:1, 45:11,

45:17, 46:3, 47:6, 48:4, 48:7, 49:15, 50:23
**defendants'** [2] - 37:15, 42:6
**defense** [5] - 30:19, 33:13, 41:4, 43:25, 48:3
**Delaware** [2] - 1:2, 1:21
**delay** [1] - 32:25
**delighted** [3] - 33:10, 34:8
**denied** [1] - 15:20
**deny** [1] - 18:8
**departure** [2] - 43:21, 43:23
**deposition** [2] - 35:22, 35:23
**depositions** [2] - 37:3, 37:5
**description** [1] - 26:4
**designed** [1] - 19:16
**desire** [2] - 37:4, 37:6
**deviate** [1] - 43:4
**devices** [1] - 29:20
**Devices** [6] - 7:14, 7:15, 11:25, 23:13, 25:16
**Dick** [3] - 12:16, 31:6, 36:6
**Diego** [1] - 7:8
**differ** [1] - 32:3
**differences** [1] - 31:10
**different** [7] - 29:2, 29:20, 30:15, 34:14, 40:12, 43:10, 44:9
**difficult** [1] - 36:21
**difficulty** [1] - 34:17
**directed** [1] - 16:7
**disagree** [6] - 16:23, 19:23, 20:9, 36:11, 42:24, 50:20
**disagreement** [5] - 20:4, 21:25, 26:9, 38:3, 41:7
**Discovery** [1] - 39:15
**discovery** [19] - 28:19, 35:9, 35:17, 35:19, 35:25, 36:5, 36:15, 36:17, 36:21, 37:7, 37:8, 37:20, 38:1, 38:3, 38:6, 39:12, 49:6, 49:7
**discussed** [2] - 48:13, 48:15
**discussion** [3] - 15:22, 27:13, 27:19, 27:23, 28:6
**discussions** [2] -

49:16, 49:22
**dismiss** [1] - 27:3
**Display** [17] - 3:18, 3:25, 4:15, 7:14, 10:10, 12:21, 14:5, 21:7, 22:24, 23:9, 23:12, 23:14, 23:15, 24:10, 24:16, 25:23
**Displays** [5] - 3:8, 7:14, 12:6, 23:8, 23:12
**dispositive** [1] - 49:9
**dispositives** [1] - 42:3
**disputes** [2] - 19:13, 39:15
**District** [8] - 1:1, 1:2, 4:7, 5:15, 6:7, 6:19, 7:4, 7:18
**division** [1] - 23:23
**doable** [1] - 43:7
**dock** [1] - 19:16
**Docket** [1] - 34:2
**docket** [1] - 35:11
**done** [13] - 15:20, 19:4, 19:18, 19:20, 19:21, 19:24, 29:23, 30:12, 30:23, 36:12, 36:16, 47:20
**double** [1] - 41:16
**down** [4] - 18:24, 37:11, 42:15, 47:19
**Duane** [2] - 7:21, 11:21
**due** [1] - 36:8
**Dunner** [3] - 6:6, 6:15, 6:18
**duplicative** [3] - 37:6, 37:8, 44:5

**E**

**easier** [2] - 39:25, 40:1
**Eastman** [2] - 5:22, 13:7
**economical** [1] - 28:24
**efficient** [1] - 30:20
**effort** [1] - 30:18
**either** [1] - 17:14
**elbows** [1] - 9:23
**Electrical** [4] - 4:22, 4:23, 22:20, 22:21
**Electro** [2] - 6:20, 24:22
**Electro-optics** [2] - 6:20, 24:22
**Electronic** [2] - 7:15, 23:13
**Electronics** [6] - 7:5, 21:9, 23:17, 23:18,

23:23
**Elizabeth** [5] - 6:18, 7:8, 10:22, 11:3, 24:25
**Ellen** [1] - 3:10
**emphasize** [1] - 33:2
**ences** [1] - 32:4
**endorse** [1] - 37:24
**ends** [1] - 51:13
**enforce** [1] - 45:13
**enforceability** [1] - 47:6
**enforceable** [1] - 45:21
**entirely** [1] - 38:13
**entities** [2] - 27:3, 27:4
**entitled** [1] - 36:18
**entity** [2] - 20:25, 23:24
**Epson** [7] - 3:14, 11:24, 11:25, 23:2, 25:15, 25:18, 25:19
**Ericsson** [4] - 8:10, 8:11, 12:10
**Esq** [43] - 2:3, 2:5, 2:8, 2:8, 2:9, 2:12, 2:16, 2:18, 2:19, 3:3, 3:6, 3:10, 3:12, 3:16, 3:20, 3:23, 4:3, 4:6, 4:9, 4:14, 4:18, 4:20, 4:21, 5:3, 5:7, 5:11, 5:15, 5:18, 5:21, 6:3, 6:6, 6:10, 6:15, 6:18, 7:3, 7:8, 7:12, 7:12, 7:18, 7:21, 8:3, 8:5, 8:9
**Essentially** [1] - 32:3
**et** [5] - 1:4, 1:8, 1:10, 1:13, 1:19
**event** [1] - 18:11
**evidently** [1] - 30:11
**exact** [1] - 29:14
**exactly** [2] - 17:4, 47:24
**except** [1] - 45:3
**exception** [1] - 18:24
**excess** [1] - 33:14
**excuse** [2] - 24:14, 42:12
**Excuse** [1] - 24:14
**expect** [3] - 8:25, 9:2, 49:7
**expecting** [1] - 32:24
**expensive** [1] - 14:12
**experiment** [1] - 14:9
**expert** [1] - 39:11
**explain** [4] - 38:22, 41:12, 42:21, 46:3
**extent** [1] - 41:5

23:23
**extra** [2] - 40:3, 40:9

**F**

**facility** [1] - 30:15
**fact** [4] - 17:5, 28:2, 34:13, 43:11
**failing** [1] - 19:16
**fair** [1] - 38:14
**fall** [2] - 22:9, 26:21
**families** [6] - 21:16, 21:24, 22:3, 22:4, 26:1, 29:22
**family** [4] - 21:17, 22:8, 25:2
**far** [2] - 35:1, 41:25
**Farabow** [3] - 6:6, 6:15, 6:18
**fashion** [2] - 19:19, 45:8
**Faulkner** [2] - 6:15, 10:21
**feasible** [1] - 14:11
**February** [2] - 47:21, 48:2
**feet** [1] - 34:11
**felt** [1] - 15:8
**figure** [1] - 19:18
**file** [6] - 14:17, 14:23, 15:9, 18:9, 44:3, 44:8
**filed** [5] - 14:18, 15:11, 15:13, 15:24, 31:15
**Film** [5] - 8:7, 8:7, 22:17, 22:18
**final** [2] - 42:19, 48:13
**finally** [1] - 48:20
**fine** [6] - 25:9, 25:21, 27:21, 39:20, 42:6, 49:25
**Finger** [3] - 4:17, 5:18, 13:7
**Finnegan** [6] - 6:6, 6:15, 6:18, 10:22, 13:21, 25:1
**fire** [1] - 34:12
**firm** [4] - 9:5, 9:10, 9:12, 12:15
**First** [3] - 14:15, 16:13, 34:5
**first** [12] - 15:25, 27:15, 28:10, 28:15, 30:10, 32:14, 32:21, 39:18, 44:22, 46:23, 49:14, 50:15
**Fish** [9] - 3:16, 5:3, 5:6, 5:10, 5:14, 10:1, 10:4, 10:9, 14:20
**fit** [2] - 33:15, 44:18
**fits** [1] - 35:4

**fittingly** [1] - 40:21
**five** [4] - 33:15, 43:8, 47:6, 47:16
**five-page** [1] - 43:8
**flexible** [1] - 47:9
**Flock** [4] - 4:9, 12:20, 27:2
**focus** [1] - 39:9
**folks** [15] - 10:3, 14:13, 26:3, 30:11, 33:9, 33:12, 44:12, 44:17, 44:23, 48:11, 48:23, 49:16, 50:3, 50:15, 51:10
**following** [3] - 8:22, 45:24, 46:21
**form** [3] - 34:1, 42:18, 48:14
**formal** [1] - 20:17
**formulated** [1] - 50:25
**forth** [3] - 19:13, 30:4, 31:1
**fortunately** [1] - 25:8
**forward** [7] - 16:7, 29:14, 40:25, 46:18, 48:22, 48:24, 50:2
**four** [4] - 26:19, 47:6, 47:16, 50:14
**frame** [1] - 49:16
**Frankly** [1] - 29:13
**Friedlander** [5] - 3:3, 3:3, 12:4, 12:5
**front** [8] - 16:14, 29:7, 30:10, 34:1, 46:9, 50:25
**fronts** [1] - 48:5
**Fuji** [8] - 8:7, 8:7, 10:14, 22:16, 22:17, 22:18, 29:10
**Fujitsu** [4] - 6:12, 6:12, 13:15
**Furlow** [2] - 3:9, 11:24
**future** [1] - 25:4

**G**

**Gaffigan** [1] - 8:13
**gallery** [1] - 13:23
**Garrett** [3] - 6:6, 6:15, 6:18
**Geddes** [2] - 2:2, 9:16
**generalized** [1] - 27:13
**generally** [5] - 17:8, 28:13, 35:23, 44:10
**Gerard** [1] - 3:20
**Given** [1] - 27:9
**given** [13] - 9:2, 15:4, 27:10, 28:10, 30:6, 34:16, 34:25, 36:13,

36:16, 44:4, 47:15, 49:19, 50:16
glad [1] - 38:2
global [1] - 43:11
Gotshal [4] - 4:20, 13:1, 13:2, 26:7
Graham [3] - 6:6, 13:20
granting [1] - 15:2
great [4] - 28:18, 30:25, 36:17, 47:1
Grimm [3] - 2:5, 9:8, 9:9, 28:2, 28:4, 34:1, 48:9, 48:18
group [23] - 21:16, 22:19, 22:25, 23:5, 23:11, 23:16, 24:11, 24:21, 29:11, 29:12, 30:19, 32:21, 33:13, 33:23, 43:7, 47:4, 49:2, 49:3, 49:11, 49:13, 50:21, 50:23
grouped [1] - 25:19
grouping [2] - 21:20, 22:10
groups [5] - 21:16, 26:1, 29:2, 30:13, 45:2
guess [4] - 10:1, 35:2, 36:18, 48:10
guidance [1] - 15:12
guys [1] - 43:1

**H**

Hadley [1] - 6:10
Hails [2] - 4:6, 12:20
half [1] - 31:14
Halkowski [3] - 5:3, 9:25, 10:1
Halloween [1] - 40:22
hand [2] - 41:9, 44:22
handle [1] - 42:25
handled [1] - 20:15
handling [2] - 11:13, 42:24
hanging [1] - 14:16
Hannstar [2] - 11:12, 23:9
happy [2] - 38:17, 40:15
Harris [2] - 5:20, 13:8
Hartson [5] - 3:5, 3:12, 12:1, 12:7, 25:18
Hastings [5] - 4:13, 7:7, 11:2, 11:3, 12:21
hear [6] - 17:13, 27:17, 46:23, 46:24, 50:5, 51:9

heard [2] - 37:17, 37:21
hearing [8] - 16:25, 29:5, 41:11, 42:11, 42:13, 48:22, 48:24, 50:3
heart [1] - 40:11
held [1] - 8:23
Help [1] - 45:23
help [3] - 39:9, 49:12
Henderson [6] - 6:6, 6:15, 6:18, 10:22, 13:21, 25:1
Hi [2] - 8:24, 24:25
Hitachi [13] - 7:14, 7:14, 7:15, 11:5, 11:9, 23:11, 23:12, 23:13, 26:17
Hogan [5] - 3:5, 3:12, 12:1, 12:7, 25:18
hold [3] - 34:5, 34:11, 40:17
Honeywell [33] - 1:4, 1:10, 1:18, 2:11, 2:13, 2:13, 9:9, 9:12, 9:13, 9:15, 9:19, 14:2, 15:13, 15:25, 16:22, 26:9, 27:14, 28:11, 29:13, 35:22, 36:7, 36:13, 36:18, 36:23, 38:11, 39:25, 41:9, 42:6, 42:9, 42:25, 43:3, 49:17, 50:24
Honeywell's [6] - 19:14, 30:23, 33:21, 34:11, 37:8, 38:18
Honor [92] - 9:8, 9:25, 10:8, 10:13, 10:17, 11:20, 12:4, 12:9, 12:13, 12:18, 12:24, 13:6, 13:10, 13:14, 13:20, 14:4, 14:19, 14:25, 15:10, 16:2, 16:4, 16:10, 16:15, 16:18, 17:2, 17:20, 17:24, 18:15, 18:18, 18:25, 19:5, 19:9, 20:1, 20:7, 20:13, 20:21, 21:6, 21:22, 22:4, 24:14, 24:17, 24:23, 25:13, 25:17, 25:21, 25:25, 26:6, 26:12, 26:16, 26:21, 27:2, 27:20, 27:24, 28:16, 28:21, 29:4, 29:8, 31:1, 31:6, 31:21, 34:16, 34:24, 35:15, 36:6, 36:11, 38:21, 39:4, 39:7,

39:19, 39:22, 40:7, 40:14, 41:8, 41:14, 41:15, 41:18, 43:2, 43:17, 43:19, 44:15, 44:20, 44:25, 45:10, 46:1, 47:15, 48:18, 49:18, 50:1, 50:7, 50:10, 51:2, 51:12
Honor's [1] - 38:25
Honorable [1] - 1:24
hopefully [3] - 9:22, 26:23, 39:10
hopes [1] - 47:19
horse [1] - 46:12
Horwitz [16] - 6:3, 10:17, 11:2, 11:5, 11:8, 11:9, 13:17, 13:24, 17:2, 17:3, 17:17, 17:18, 18:14, 18:15, 19:9
hour [2] - 35:21, 35:23
hours [3] - 39:19, 48:2, 48:6
Houston [1] - 3:17
Howrey [3] - 7:3, 10:24, 24:4
Hu [5] - 3:23, 3:23, 14:4, 14:5
Hunsaker [2] - 5:11, 10:2
Hutz [3] - 3:19, 8:9, 13:11
hydis [2] - 7:19, 23:6
hydus [2] - 11:14, 11:17

**I**

Id [1] - 3:17
idea [3] - 30:11, 31:22, 36:22
ideal [3] - 50:12, 50:17
identification [1] - 18:25
identified [3] - 14:2, 19:1, 25:2
identify [6] - 9:2, 9:3, 9:5, 9:23, 13:23, 24:2
Imaging [2] - 11:25, 25:15
immediately [1] - 15:8
implemented [1] - 32:4
important [1] - 45:15
impossible [2] - 32:22, 37:15
impracticable [3] - 29:18, 29:24, 30:16
impractical [1] - 33:21

in-person [1] - 40:23
in-plead [1] - 15:16
Inc [28] - 1:4, 1:10, 1:13, 1:15, 1:18, 2:13, 2:14, 2:20, 3:18, 4:15, 5:8, 5:12, 5:16, 6:8, 6:12, 6:13, 7:15, 8:7, 8:11, 12:11, 12:14, 13:22, 22:15, 22:18, 23:13, 23:15, 24:10, 24:12
include [5] - 10:4, 19:1, 21:13, 22:5, 22:16
includes [2] - 22:23, 24:13
including [1] - 22:8
indicated [1] - 26:13
indications [1] - 14:23
individual [1] - 43:12
Industrial [2] - 4:23, 22:21
information [3] - 16:11, 17:21, 34:18
infringed [1] - 46:9
infringement [6] - 28:20, 29:19, 32:2, 45:4, 45:15, 46:7
initiate [1] - 49:20
Innolux [2] - 21:6, 21:7
instance [2] - 32:14, 42:4
insure [1] - 34:20
Intellectual [2] - 2:14, 9:13
intended [1] - 15:15
interest [1] - 35:20
interim [1] - 40:21
International [10] - 1:4, 1:10, 1:18, 2:11, 2:13, 3:17, 10:9, 10:10, 23:14, 23:15
introduction [1] - 14:10
invalidity [1] - 30:3
invention [2] - 28:22, 32:4
invitation [1] - 37:21
involved [2] - 49:6, 49:8
issue [25] - 15:17, 17:15, 18:5, 19:7, 20:14, 23:20, 26:4, 26:8, 26:22, 27:16, 28:25, 32:6, 33:7, 35:9, 39:17, 42:20, 45:3, 45:11, 45:16, 46:2, 46:8, 46:11, 46:22, 48:23, 48:25

issued [1] - 15:12
issues [33] - 16:22, 17:6, 18:2, 25:4, 26:4, 28:14, 28:15, 28:18, 28:19, 30:2, 30:19, 30:22, 31:9, 31:19, 31:24, 32:1, 32:2, 32:13, 32:14, 34:21, 37:12, 39:9, 39:10, 39:11, 43:10, 45:1, 45:5, 45:6, 45:9, 46:2, 47:6, 48:5
Item [1] - 34:3
item [1] - 35:11
itself [1] - 18:4

**J**

Janofsky [2] - 4:13, 7:7
January [3] - 26:8, 47:21, 48:2
Jeff [1] - 12:24
Jeffrey [1] - 4:18
Jerry [1] - 13:10
Joel [2] - 3:3, 12:5
Joelle [2] - 3:10, 11:23
John [9] - 4:3, 4:9, 5:7, 9:17, 9:18, 10:4, 12:18, 12:20, 27:2
Johnson [2] - 5:7, 10:4
join [2] - 38:15, 42:23
Joining [1] - 9:12
joins [1] - 47:17
joint [1] - 50:13
Jordan [2] - 1:24, 8:24
Judge [1] - 8:24
July [1] - 38:14
juncture [1] - 15:3
June [2] - 42:4, 42:5
jurisdiction [1] - 27:4
jury [1] - 33:17

**K**

Kaj [3] - 1:8, 1:14, 1:19
Kaplan [2] - 2:7, 9:10
Karen [2] - 2:16, 12:13
Katzenstein [2] - 3:9, 11:24
Kee [8] - 7:3, 10:25, 23:19, 23:22, 24:4, 24:7
keep [2] - 30:22, 35:12
Kelly [19] - 2:18, 5:11, 10:2, 12:16, 31:6, 36:6, 36:12, 39:3, 39:4, 40:6, 40:7, 42:23, 43:15, 43:17,

47:12, 47:15
Kent[1] - 1:24
Kenyon[5] - 4:6, 4:9, 12:19
Keven[1] - 7:18
Kevin[2] - 11:14, 11:16
kind[4] - 42:21, 46:11, 48:9, 50:5
kindly[1] - 21:12
kinds[1] - 49:10
Kodak[2] - 5:22, 13:7
Koninklijke[1] - 23:16
Kopsidas[6] - 5:15, 10:5, 14:19, 14:25, 15:10
Kyocera[1] - 3:14

**L**

laboring[1] - 48:12
lack[1] - 27:4
laid[1] - 37:25
language[1] - 44:18
large[3] - 29:12, 45:6, 50:23
largely[1] - 20:14
Larry[1] - 10:15
last[5] - 15:11, 24:2, 25:23, 27:7, 31:1
Lavar[2] - 8:5, 10:16
law[1] - 9:5
Lawrence[1] - 8:5
lawyers[2] - 27:10, 30:13
Layon[1] - 12:25
Layton[3] - 4:17, 5:18, 13:6
Lcd[3] - 19:1, 27:4, 28:23
least[3] - 37:1, 49:7, 50:18
leave[5] - 14:17, 18:9, 21:12, 33:19, 44:7
legal[1] - 23:23
Lender[2] - 4:20, 13:1
length[1] - 33:17
lengthy[1] - 8:25
lens[1] - 28:23
less[3] - 21:18, 33:15, 47:20
letter[7] - 14:21, 26:22, 26:24, 34:2, 35:16, 50:12, 50:13
letters[2] - 35:10, 40:13
Levar[1] - 29:9
liability[3] - 15:23, 28:17, 45:23

light[1] - 28:23
likely[2] - 32:18, 35:20
limine[3] - 42:25, 43:8, 43:25
limit[2] - 38:9, 44:7
Limited[10] - 6:12, 20:23, 21:9, 22:14, 22:18, 23:8, 23:12, 23:13, 24:12
limits[2] - 36:5, 37:24
line[12] - 9:10, 10:15, 10:24, 10:25, 11:6, 11:11, 11:13, 11:25, 12:6, 12:15, 12:21, 37:22
Liquid[2] - 22:24, 24:16
list[2] - 22:12, 24:15
listed[2] - 4:4, 5:4
litigation[3] - 25:3, 25:4, 44:3
live[1] - 21:20
Llp[15] - 2:7, 3:12, 4:13, 5:20, 6:2, 6:6, 6:10, 6:15, 6:18, 7:3, 7:7, 7:11, 7:17, 8:2, 8:5
local[2] - 13:24, 17:3
Local[3] - 4:4, 5:4, 6:4
locally[1] - 13:16
location[2] - 30:14, 30:15
Lodge[3] - 3:19, 8:9, 13:11
logical[2] - 32:21, 46:14
look[5] - 40:25, 48:22, 48:24, 50:2, 50:21
Looking[4] - 34:7, 34:10, 42:3, 42:11
looking[3] - 23:3, 24:15, 34:3, 42:15, 45:4
Los[3] - 3:6, 3:13, 4:14
lose[1] - 45:19
Ltd[6] - 3:7, 3:8, 7:14, 7:14, 7:15, 8:7
Lueck[74] - 2:8, 9:11, 16:2, 16:3, 16:4, 16:10, 16:15, 16:18, 16:21, 17:4, 17:13, 17:22, 17:23, 17:24, 18:1, 18:16, 18:18, 18:24, 19:5, 19:11, 19:22, 19:25, 20:1, 20:6, 20:13, 20:21, 20:23, 21:2, 21:5, 21:15, 21:22, 22:3, 22:6, 22:11, 23:25,

24:8, 24:9, 24:19, 25:14, 25:15, 25:21, 25:23, 27:22, 27:24, 28:16, 29:4, 31:5, 31:20, 31:21, 32:9, 34:14, 34:16, 35:13, 35:15, 36:12, 37:21, 39:6, 39:7, 39:17, 39:19, 41:7, 41:8, 43:18, 43:19, 44:16, 44:20, 44:22, 44:25, 45:25, 46:11, 49:21, 49:23, 49:25
lumped[1] - 25:11

**M**

Mackenzie[1] - 11:15
Maier[4] - 2:18, 7:12, 11:6, 11:10
manage[1] - 30:8
manageable[2] - 33:13, 33:14
Manges[2] - 4:20, 13:1
manufacture[2] - 26:5, 36:13
manufactured[1] - 45:14
manufacturer[21] - 14:2, 15:14, 19:22, 21:12, 28:12, 29:7, 29:11, 29:25, 30:17, 33:22, 34:11, 34:23, 36:17, 37:5, 37:15, 37:25, 38:11, 38:20, 42:6, 42:9, 49:15
manufacturers[2] - 26:20, 29:2
manufacturing[8] - 21:3, 21:7, 21:10, 21:15, 26:1, 31:23, 36:8, 48:7
March[2] - 1:22, 34:2
Margules[2] - 3:3, 12:5
Marsden[5] - 3:16, 10:7, 10:8, 14:22
Martin[1] - 2:8
Marty[2] - 9:11, 16:2
Matsushita[15] - 4:22, 4:23, 12:25, 13:3, 22:20, 22:21, 26:7, 26:10, 27:12, 27:14, 27:18, 35:20, 48:23
Matsushita's[1] - 28:7
Matt[2] - 9:11, 11:20
matter[1] - 12:8
matters[3] - 31:25,

42:12, 42:13
Matthew[2] - 2:8, 7:21
Mcclelland[1] - 2:18
Mccloy[1] - 6:10
Mckenzie[2] - 7:17, 11:17
mean[3] - 45:22, 49:5, 50:8
meaning[1] - 45:12
means[3] - 42:18, 45:25, 48:3
meir[2] - 3:6, 12:7
mentioned[1] - 24:16
Merit[1] - 8:14
meter[1] - 27:9
might[2] - 14:13, 30:12
Milbank[2] - 6:10, 13:15
Miller[1] - 2:7
mind[3] - 15:7, 32:16, 38:5
Minneapolis[1] - 2:9
Minnesota[1] - 2:9
minutes[1] - 41:11
misreading[1] - 17:14
mix[2] - 47:24, 47:25
Mobile[2] - 12:10
module[1] - 18:2
modules[1] - 19:1
moment[10] - 15:6, 16:8, 16:16, 16:19, 22:11, 24:14, 27:15, 34:5, 35:5, 40:17
Monday[1] - 1:22
month[3] - 50:4, 50:22, 51:10
months[4] - 14:22, 29:15, 29:24, 38:10
moot[3] - 15:17, 15:20, 17:17
mooted[1] - 16:21, 18:5, 18:10
morning[4] - 9:10, 16:1, 26:16, 35:3
Morris[4] - 2:5, 7:21, 9:9, 11:21
most[2] - 30:20, 30:21
motion[20] - 14:17, 14:23, 15:10, 15:21, 15:23, 16:19, 16:21, 17:7, 17:10, 17:12, 18:4, 27:3, 27:5, 35:21, 43:8, 43:11, 43:25, 51:8
motions[3] - 14:16, 42:24, 49:9
move[1] - 16:7

Moyer[3] - 4:18, 12:24
multiple[2] - 36:12, 44:1

**N**

name[1] - 22:8
named[2] - 6:4, 15:16
names[2] - 20:21, 29:23
naming[1] - 15:14
narrow[2] - 33:19, 43:6
nature[2] - 41:7, 41:12
Neal[1] - 5:21
near[1] - 38:10
necessary[5] - 36:20, 37:6, 38:25, 39:2, 46:7
need[25] - 9:1, 9:4, 11:7, 13:23, 15:9, 15:19, 17:12, 24:1, 34:12, 35:13, 35:25, 37:1, 37:2, 37:10, 37:12, 37:13, 39:16, 39:23, 40:24, 41:2, 42:18, 46:21, 47:7, 47:11, 49:11
needs[1] - 47:25
Neiderman[3] - 7:21, 11:20
Neil[5] - 7:12, 11:5, 11:9, 13:8, 26:16
Nelson[3] - 7:3, 10:25, 24:4
Neustadt[1] - 2:18
nevertheless[1] - 30:8
New[15] - 4:10, 4:21, 5:7, 5:21, 6:11, 7:13, 8:6, 10:16, 13:15
new[1] - 10:7
next[5] - 21:5, 22:25, 23:7, 24:9, 24:19
Next[4] - 11:22, 21:4, 23:4, 23:16
Nichols[2] - 2:5, 9:9
Niemeyer[7] - 6:18, 10:22, 24:23, 24:25, 25:7, 25:13
Nikon[4] - 6:8, 13:22
Nokia[6] - 5:16, 10:6, 14:18, 14:20, 51:8
nominated[1] - 29:10
North[4] - 7:5, 13:3, 23:17, 23:18
Note[1] - 8:22
noted[1] - 24:7

notes [1] - 51:6
nothing [1] - 27:17
November[2] - 42:8, 42:19
number [7] - 19:10, 27:10, 28:9, 29:17, 29:22, 36:17, 39:24
numbered [1] - 18:20
numbers [2] - 9:2, 47:9
Nv [1] - 23:17

**O**

O'brien [4] - 7:18, 11:14, 11:16
O'rourke [2] - 3:20, 13:10
oar [1] - 48:12
Oberts [1] - 2:9
objected [1] - 14:24
objection [2] - 25:2, 41:20
Oblon[2] - 2:18, 12:15
obvious [1] - 42:22
obviously [2] - 39:8, 43:7
October[6] - 16:5, 18:17, 26:12, 40:22, 41:1, 41:3
old [1] - 37:18
Ollis[2] - 2:19, 12:16
Once[1] - 20:8
once [3] - 28:19, 29:6, 32:18
one [23] - 16:16, 16:25, 17:3, 20:14, 21:5, 21:18, 21:20, 24:14, 24:19, 25:23, 27:3, 28:8, 29:11, 31:2, 33:8, 34:5, 39:18, 40:1, 41:8, 41:22, 45:3, 46:12, 46:13
ones [2] - 21:13
ooo [1] - 8:20
opinion [2] - 29:17, 31:10
opportune [1] - 28:2
opportunity [2] - 44:4, 44:8
opposition [2] - 27:11, 38:23
optics [2] - 6:20, 24:22
Optoelectronics[2] - 6:20, 24:20
Optrex[21] - 1:15, 2:20, 12:14, 14:2, 22:25, 28:13, 30:9,

31:3, 31:7, 31:8, 31:15, 33:5, 33:8, 33:20, 36:2, 36:19, 38:12, 39:3, 42:24, 47:16
Optrex's [1] - 30:24
Optronics[6] - 3:21, 3:21, 13:11, 13:12, 23:4
order [19] - 9:22, 16:5, 16:12, 16:14, 17:8, 17:9, 18:17, 18:20, 26:12, 33:3, 34:1, 39:24, 40:24, 42:19, 46:7, 48:10, 48:21, 51:6
organized [1] - 21:1
otherwise [1] - 47:23
Otherwise[1] - 19:4
ought [4] - 32:20, 33:12, 44:17, 50:22
ourselves [4] - 18:20, 33:24, 48:20, 49:20
outstanding [2] - 19:13, 20:14
overall [3] - 32:5, 35:4, 46:14
overpaper [1] - 43:13
overreaching [1] - 37:16
own [2] - 26:23, 44:3

**P**

page [2] - 43:8, 43:10
Panasonic [1] - 13:3
panel [1] - 28:23
papers [1] - 35:14
paragraph [14] - 18:23, 19:25, 20:11, 34:7, 34:10, 38:15, 40:16, 40:19, 42:10, 42:11, 42:12, 42:15, 42:20, 44:18
Paragraph [2] - 20:5, 20:12
paragraphs [1] - 18:21
part [5] - 18:6, 18:25, 24:16, 25:24, 37:4
participating [1] - 19:10
particular [2] - 9:22, 28:21
parties [11] - 13:19, 15:15, 21:19, 30:21, 32:20, 38:4, 38:16, 39:9, 41:10, 48:14, 48:25
party [6] - 9:4, 14:17, 14:23, 15:3, 29:19,

36:14, 36:15, 37:20
Pascale [3] - 2:16, 12:13
patent [2] - 36:24, 39:9
Paul [5] - 4:13, 7:7, 11:2, 11:3, 12:21
Pause [3] - 34:6, 35:6, 40:18
Pc [6] - 2:18, 3:16, 5:3, 5:6, 5:10, 5:14
pending [2] - 27:5, 35:21
people [14] - 27:14, 32:17, 32:22, 33:5, 33:7, 35:24, 38:2, 40:25, 44:3, 44:7, 45:23, 49:5, 49:8, 50:5
people's [1] - 50:25
per [2] - 48:2, 48:6
Perhaps [1] - 19:13
perhaps [1] - 30:16
permitted [1] - 41:10
person [2] - 29:11, 40:23
personal [1] - 27:4
Peter [2] - 4:14, 12:22
Phil [5] - 10:13, 29:8, 34:24, 43:2, 49:18, 50:7
Philip [1] - 8:3
Philips [11] - 7:5, 10:23, 11:1, 23:16, 23:17, 23:18, 23:19, 23:22, 23:23, 24:5
phone [6] - 9:18, 10:2, 10:4, 10:7, 10:9, 13:1
Photo [7] - 8:7, 8:7, 10:14, 22:17, 22:18, 29:10
pick [2] - 38:14, 42:1
picking [1] - 38:12
Picvue [2] - 21:9
pipes [1] - 14:7
pitch [2] - 30:9, 44:23
Pittsford [1] - 5:21
place [4] - 20:10, 31:23, 33:24, 37:1
Plaintiff [1] - 1:16
plaintiff [2] - 9:1, 44:1
plaintiffs [1] - 48:7
Plaintiffs [2] - 1:5, 1:11
plaintiffs' [1] - 48:12
planning [1] - 48:1
platoons [1] - 30:13
play [2] - 31:11, 41:23
plays [1] - 43:12

plead [1] - 15:16
pleadings [1] - 38:16
plenty [1] - 50:22
plug [1] - 38:15
Pm [2] - 40:23, 42:17
point [22] - 14:3, 14:7, 15:16, 15:18, 16:6, 17:16, 18:12, 23:19, 28:21, 30:1, 35:8, 35:16, 36:23, 37:2, 37:9, 37:11, 39:8, 41:15, 43:14, 44:19, 45:7, 49:4
points [2] - 35:16, 40:16
Polesky [3] - 3:10, 11:23
politely [1] - 9:22
position [21] - 18:17, 22:1, 27:12, 28:7, 28:11, 28:12, 32:10, 33:21, 34:13, 35:12, 36:5, 42:21, 42:22, 44:9, 44:23, 45:22, 46:4, 46:25, 47:2, 47:23, 49:17
positions [5] - 37:17, 38:4, 47:13, 50:6, 50:8, 50:25
possible [4] - 31:16, 32:17, 41:5, 43:20
Potter [4] - 6:2, 8:2, 10:14, 10:18
Powers [5] - 8:9, 12:9
practicable [1] - 48:25
practical [1] - 32:19
precisely [2] - 19:20, 37:16
prejudice [2] - 18:8, 28:7
premature [1] - 36:24
preparing [1] - 40:5
present [1] - 41:17
presented [1] - 39:11
pretrial [6] - 42:16, 42:18, 42:19, 46:21, 47:7, 49:5
pretty [3] - 28:22, 29:2, 38:5
price [1] - 41:21
problem [4] - 27:19, 27:22, 37:23, 41:7
proceed [2] - 15:3, 20:19
process [3] - 20:17, 49:6, 49:7
Products [1] - 6:12
products [4] - 19:1, 45:14, 46:5, 46:8
proofs [1] - 32:6

Properties [1] - 2:14
Property [1] - 9:13
proposal [11] - 29:14, 30:1, 30:4, 30:24, 30:25, 31:1, 35:24, 36:16, 37:10, 37:15, 42:9
proposals [1] - 50:19
proposed [3] - 38:11, 42:5, 46:13
proposes [2] - 41:9, 42:25
provided [1] - 31:1
Pruner [2] - 3:23, 14:5
purpose [1] - 21:16
purposes [2] - 25:2, 28:6
pursuing [1] - 15:7
put [12] - 18:13, 19:16, 19:20, 21:24, 22:12, 25:9, 39:7, 40:3, 40:17, 46:4, 50:25, 51:6
putting [2] - 31:23, 39:16, 46:18

**Q**

Quanta [3] - 4:15, 12:21, 24:10
questions [1] - 41:23
quickly [2] - 14:17, 31:16
quite [1] - 15:1

**R**

raise [1] - 23:19
raised [5] - 17:7, 26:8, 48:23, 48:25
rapidly [1] - 34:18
rather [2] - 17:9, 49:12
re [1] - 18:9
re-file [1] - 18:9
reach [1] - 46:2
read [2] - 37:17, 47:1
ready [1] - 33:7
really [6] - 15:11, 32:5, 32:17, 40:4, 41:19, 47:10
reason [1] - 40:3
reasonable [4] - 33:17, 35:1, 35:2, 49:15
reasons [1] - 46:12
recognize [4] - 32:3, 34:10, 43:20, 45:1
record [2] - 18:14, 21:24, 24:3, 25:10,

42:23, 51:7
Redwood [1] - 5:11
referring [3] - 17:5, 19:11, 22:4
reflects [2] - 35:24, 48:15
regard [7] - 14:22, 27:17, 30:7, 37:23, 38:8, 38:19, 40:25
Registered [1] - 8:14
rejected [2] - 29:15, 33:22
reluctant [1] - 44:2
remains [2] - 18:6, 33:23
reorient [1] - 18:20
rephrase [1] - 49:6
replaced [1] - 29:23
report [1] - 50:6
Reporter [1] - 8:14
Reporters [1] - 8:22
reports [1] - 41:2
represent [4] - 9:9, 9:15, 10:20, 12:8
representing [9] - 9:6, 10:3, 10:5, 10:6, 10:7, 10:23, 13:21, 24:5, 29:9
represents [1] - 9:16
request [1] - 44:8
requested [1] - 36:14
requests [1] - 41:16
required [1] - 43:4
resolution [6] - 16:22, 31:15, 31:25, 33:18, 45:6, 46:14
resolve [3] - 26:23, 46:8, 48:23
resolved [4] - 17:15, 18:1, 47:23, 49:1
resolving [1] - 33:7
respect [8] - 10:20, 17:16, 19:21, 19:22, 36:8, 43:23, 45:4, 51:7
respond [2] - 22:1, 51:11
response [6] - 18:14, 40:2, 40:12, 41:4, 43:6, 43:25
responses [1] - 44:1
Reston [1] - 6:16
restructuring [1] - 15:13
result [1] - 18:5
Rich [4] - 10:17, 13:17, 13:24, 17:2
Richard [5] - 2:18, 6:3, 8:9, 12:9, 12:25
Richards [3] - 4:17,

5:18, 13:6
Richardson [9] - 3:16, 5:3, 5:6, 5:10, 5:14, 10:1, 10:4, 10:9, 14:20
Rizzi [7] - 4:21, 13:2, 26:6, 26:7, 27:20
Robert [8] - 3:12, 4:6, 7:12, 11:6, 11:10, 12:1, 12:20, 25:17
Roberts [1] - 9:12
Robins [2] - 2:7, 9:10
roll [2] - 8:25, 10:19
Rosenthal [2] - 8:5, 10:15
route [1] - 42:7
Rovner [35] - 8:3, 10:13, 13:10, 29:8, 30:17, 34:24, 36:10, 36:11, 38:19, 38:21, 38:24, 39:4, 39:21, 39:22, 40:11, 40:14, 41:13, 41:14, 42:23, 43:2, 44:14, 44:15, 46:15, 46:17, 47:3, 47:17, 49:18, 50:7, 50:8, 51:2
ruling [1] - 18:14
run [1] - 47:21

S

Samsung [6] - 7:9, 11:2, 11:4, 24:11, 24:12
San [1] - 7:8
Sanyo [1] - 11:24, 25:15, 25:18, 25:24
scare [1] - 40:22
schedule [4] - 28:3, 31:13, 33:24, 50:15
scheduling [10] - 14:15, 17:7, 17:9, 18:6, 18:10, 32:25, 33:3, 35:2, 48:1, 48:21
scheme [1] - 35:4
scope [1] - 34:17
Sdi [4] - 7:9, 11:4, 24:12
Second [1] - 31:12
see [14] - 14:9, 26:24, 31:17, 33:6, 33:11, 33:13, 34:8, 34:13, 36:16, 38:2, 38:17, 40:15
seeing [2] - 40:25, 43:24
seek [1] - 37:22
Seiko [5] - 3:14, 11:24,

23:2, 25:19, 25:24
select [1] - 49:1
send [2] - 34:2, 48:16
sense [1] - 27:25, 34:20, 46:14, 50:18
serve [1] - 20:16
set [7] - 30:25, 31:22, 35:3, 38:5, 42:16, 47:19, 48:7
sets [2] - 30:4, 43:24
Seventeen [1] - 45:2
sever [1] - 20:19
several [2] - 14:21, 16:6
Shandler [3] - 5:18, 13:6, 13:7
Shaw [3] - 4:3, 12:18
shift [1] - 40:20
short [2] - 14:14, 27:7
shot [2] - 14:14, 27:7
side [7] - 28:20, 33:13, 42:6, 48:2, 48:4, 48:6, 48:12
sides [1] - 35:10
signature [1] - 48:17
significantly [1] - 44:6
Similarly [1] - 42:8
simple [1] - 38:24
simpler [1] - 45:8
Simply [1] - 39:7
simply [8] - 20:19, 22:25, 34:16, 41:9, 45:6, 51:6
single [5] - 23:10, 24:9, 24:20, 34:22, 43:8
Sirota [6] - 7:12, 11:5, 11:10, 26:16, 26:17, 26:19
sit [1] - 33:11
sitting [1] - 13:23
situation [1] - 39:22
six [2] - 18:20, 47:7
Slifkin [2] - 5:21, 13:8
smaller [1] - 50:21
Smith [2] - 3:9, 11:23
so-called [2] - 31:9, 31:19
someone [2] - 10:24, 22:1
Sony [14] - 4:11, 8:10, 8:11, 12:9, 12:10, 12:19, 22:23, 24:14, 24:16, 27:3
soon [1] - 48:25
sooner [1] - 49:12

sorry [3] - 22:3, 22:6, 22:17
Sorry [1] - 24:15
sounds [1] - 51:2
source [2] - 20:25, 28:23
speaker [1] - 24:2
speaking [6] - 9:4, 9:6, 9:11, 15:25, 38:19, 46:16
specific [4] - 17:10, 17:12, 35:19, 37:12
specifically [1] - 9:17
speed [1] - 31:25
spinning [1] - 27:9
Spivak [2] - 2:18, 12:15
spoken [1] - 26:3
spokesman [1] - 46:22
St [3] - 22:24, 24:16, 27:4
Stacie [2] - 2:9, 9:12
stage [3] - 15:2, 15:4, 19:17
staging [2] - 17:8, 46:18
stalking [1] - 46:12
stand [3] - 23:2, 31:23, 32:21
stand-alone [1] - 23:2
standard [3] - 39:14, 39:20, 39:24
Stargatt [3] - 2:15, 4:2, 12:14
start [5] - 9:1, 9:21, 10:1, 15:24, 37:7
state [1] - 21:1
statement [1] - 40:10
States [3] - 1:1, 45:14, 46:6
status [5] - 15:11, 26:9, 40:21, 41:2, 50:6
stay [2] - 17:19, 20:10
stayed [5] - 13:21, 17:15, 17:19, 18:3, 18:11
Stein [1] - 28:3
step [2] - 30:9, 46:7
Stephen [4] - 4:21, 13:2, 26:6, 27:20
Steve [1] - 9:17
Steven [1] - 2:3
still [4] - 16:10, 18:3, 18:6, 38:19
straightforward [2] - 28:22, 29:3
stream [1] - 46:5
streamline [3] - 31:25,

39:10, 43:20
stretch [1] - 36:1
strikes [1] - 37:17
Stroock [6] - 8:5, 10:15, 10:16, 29:9
structure [3] - 19:2, 31:22, 46:13
stuff [1] - 39:16
sub [2] - 18:25, 19:24
sub-part [1] - 18:25
subject [1] - 35:10
submissions [1] - 44:5
submit [1] - 41:10
submitted [2] - 26:22, 51:9
subparagraph [1] - 19:21
substantial [1] - 37:20
substantially [1] - 19:2
sued [2] - 21:13
suggested [1] - 38:18
suggesting [1] - 45:19
suggestion [1] - 30:7
supposed [1] - 18:22
surprised [2] - 29:13, 34:9

T

Taiwan [3] - 21:3, 21:6, 21:10
tall [1] - 48:10
Taylor [3] - 2:15, 4:2, 12:14
Tech [1] - 3:17
technology [1] - 41:12
Technology [7] - 3:18, 7:19, 10:10, 23:6, 23:14, 23:15
teleconferences [2] - 14:10, 14:13
telephone [1] - 8:22
Telephone [2] - 1:22, 51:13
ten [1] - 29:15
termed [1] - 26:20
terms [3] - 36:14, 46:19, 50:8
terribly [1] - 32:6
Texas [1] - 3:24
theirs [1] - 36:8
themselves [3] - 45:13, 47:24, 50:24
Therefore [2] - 17:15, 28:24
they've [1] - 48:5
thinking [4] - 15:9,

33:14, 46:17, 49:3
third [7] - 14:17, 14:23, 15:3, 29:19, 30:14, 36:15, 37:20
third-party [6] - 14:17, 14:23, 15:3, 29:19, 36:15, 37:20
Thomas[2] - 2:5, 5:3
three [2] - 20:15, 20:17
thrown [1] - 9:23
today [3] - 15:23, 29:24, 51:5
today's [1] - 26:13
together [5] - 14:12, 22:12, 34:4, 39:17, 47:16
Tom[2] - 9:9, 9:25
tooth [1] - 37:19
Toppoly[3] - 6:20, 10:21, 24:19
torch [1] - 30:10
Toshiba[9] - 15:24, 16:19, 16:22, 17:3, 17:14, 17:16, 18:2, 18:9, 51:9
total [1] - 29:22
train [3] - 33:4, 33:6, 33:9
transpired [1] - 34:25
treated [4] - 21:17, 25:4, 25:11, 26:11
trial [24] - 17:8, 28:17, 30:21, 31:8, 31:19, 32:12, 32:14, 36:4, 43:6, 44:22, 45:13, 45:19, 46:7, 46:18, 46:20, 47:5, 47:8, 47:10, 47:20, 47:21, 48:1, 49:2, 50:15
Trop[2] - 3:23, 14:4
true [3] - 30:2, 30:19, 30:22
truly [1] - 44:9
try [9] - 16:7, 29:18, 30:1, 30:19, 32:17, 33:16, 43:5, 43:19, 49:21
trying [7] - 15:4, 19:18, 25:10, 30:15, 40:14, 43:3, 46:3
Tunnell[1] - 2:5
turn [3] - 14:15, 31:4, 35:9
turnaround [1] - 39:20
tutorial [3] - 41:6, 41:15, 41:16
tutorials [1] - 41:19
Tweek[1] - 6:10
two [8] - 13:21, 22:19,

28:23, 41:19, 41:21, 43:10, 43:12, 49:21
type [1] - 20:25
typical [1] - 40:9
typically [3] - 43:1, 43:23, 44:4

## U

ultimately [1] - 50:9
umbrella [1] - 21:18
unable [1] - 20:16
under [4] - 20:10, 21:1, 21:18, 26:11
undertaken [1] - 36:22
unduly [1] - 35:25
unenforceability [4] - 28:14, 30:3, 32:15, 45:20
unhelpful [1] - 44:6
uniform [1] - 40:1
United[3] - 1:1, 45:14, 46:6
universe [1] - 26:5
unless [1] - 14:7
unwieldy [1] - 14:13
unworkable [2] - 14:14, 32:11
up [17] - 11:8, 14:8, 15:22, 17:9, 26:3, 26:13, 27:12, 27:19, 27:23, 31:18, 31:22, 31:25, 39:10, 40:16, 42:1, 44:18, 45:16
update [1] - 16:9
Usa[8] - 3:18, 7:15, 8:7, 10:10, 12:11, 22:18, 23:13, 23:15
Usdcj[1] - 1:24
usual [1] - 48:11

## V

valid [1] - 45:21
validity [5] - 28:14, 32:2, 32:14, 45:20, 47:5
validity/ unenforceability [1] - 46:19
variation [1] - 39:23
various [1] - 40:16
versions [1] - 18:25
video [1] - 41:23
videotape [2] - 41:10, 41:17
view [5] - 25:25, 26:10, 34:14, 44:25, 46:2

Virginia[2] - 2:19, 6:16
voice [2] - 34:23, 45:3
voluminous [1] - 39:12

## W

wait [1] - 33:6
waive [1] - 20:16
waiver [1] - 25:4
Walker[2] - 4:13, 7:7
wants [3] - 29:6, 33:9, 50:10
Washington[6] - 4:7, 5:15, 6:7, 6:19, 7:4, 7:18
Watch[4] - 3:7, 12:6, 23:7, 23:8
water [1] - 33:11
ways [2] - 32:4, 50:19
week [2] - 27:6, 31:2
weeks [4] - 33:18, 47:7, 49:21, 50:3
Weid[1] - 12:22
weigh [2] - 29:6, 31:4
Weil[4] - 4:20, 13:1, 13:2, 26:7
whatsoever [1] - 34:19
whole [1] - 15:14
Wied[1] - 4:14
wildly [1] - 27:9
William[3] - 3:16, 10:6, 10:8
Wilmington[1] - 1:21
winds [1] - 31:18
Wintek[7] - 6:20, 6:20, 10:21, 24:21, 24:22, 25:1
Wireless[1] - 3:14
witnesses [1] - 36:25
wonder [2] - 14:11, 31:12
Woods[3] - 2:8, 9:11, 49:21
word [2] - 34:8, 48:4
words [1] - 30:9
wordsmith [1] - 44:12
world [2] - 50:17
write [1] - 44:4
wrote [1] - 29:18

## Y

year [1] - 31:14
years [1] - 36:25
York[17] - 4:10, 4:21, 5:7, 5:21, 6:11, 6:15,

7:13, 8:6, 10:16, 10:21, 13:15
Young[4] - 2:15, 4:2, 12:14, 12:18
yourself [2] - 9:5, 24:2
yourselves [1] - 49:17