**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

January 24, 2007

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States District Court for the District of Delaware
844 N. King Street, Room 6100
Wilmington, Delaware 19801

  Re: **Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.**
     **C.A. No. 04-1337-\*\*\***
     **Honeywell International Inc., et al. v. Apple Computer, Inc., et al..**
     **C.A. No. 04-1338-\*\*\***
     **Optrex America, Inc. v. Honeywell International Inc., et al.**
     **C.A. No. 04-1536-\*\*\***

Dear Magistrate Judge Thynge:

  I write on behalf of certain "Non-Manufacturer Defendants"[1] that are stayed in the above-referenced consolidated cases. Your Honor's January 18 Order permits the parties to set forth their positions regarding strategies for the efficient handling of the remainder of this case. The active parties' January 18 letter to the Court makes reference to Honeywell's unilateral belief that "the time has come to lift the stay of Honeywell's claims against the [Non-Manufacturer Defendants] so that full information about the sales between the module makers and their

---

[1] The following Non-Manufacturer Defendants respectfully submit this letter: Fujitsu Limited; Fujitsu America, Inc.; Fujitsu Computer Products of America, Inc.; Nikon Corporation; Nikon Inc.; Eastman Kodak Co.; Dell Inc.; Navman NZ Limited; Navman U.S.A., Inc.; Argus (a/k/a Hartford Computer Group, Inc.); Kyocera Wireless Corp.; Sony Ericsson Mobile Communications AB; Sony Ericsson Mobile Communications (USA) Inc.; Nokia Corporation; Nokia, Inc.; Olympus Corporation; Olympus America, Inc.; Pentax Corporation; Pentax U.S.A., Inc.; Matsushita Electrical Industrial Co.; Matsushita Electrical Corporation of America; Audiovox Communications Corp.; Sony Corporation; Sony Corporation of America; Sanyo Electric Co., Ltd.; and Sanyo North America Corporation.

The Honorable Mary Pat Thynge
January 24, 2007
Page 2

customers may be discovered and brought to bear with regard to a number of issues relevant to this case."

The Non-Manufacturer Defendants oppose Honeywell's informal and undeveloped request to lift the stay, which appears little more than an opportunistic attempt to overturn Judge Jordan's months-long efforts to schedule and sequence this consolidated action most efficiently.

I.      **Judge Jordan Granted the Stay in the Interests of Efficient Case Management**

Honeywell initially brought patent-infringement claims in this consolidated action against both (i) *retailers* of consumer-electronics products that contain an accused LCD module, and (ii) *manufacturers* of those modules. Through Judge Jordan's persistent efforts, the consolidated action was transitioned in October 2005 *from* one involving both manufacturers and retailers *to* a suit involving only the module manufacturers in the first instance. By Order dated October 7, 2005 (D.I. 140 in C.A. 04-1337-KAJ, Ex. A hereto), Judge Jordan explained specifically the requirements each Non-Manufacturer Defendant had to meet to avail itself of a stay. The Non-Manufacturer Defendants quickly complied, and have been stayed ever since.

But this transition and case-sequencing did not come easily, as Judge Jordan poignantly noted on pages 3-4 of his October 7 Order explaining the rationale and parameters for the stay:

> Given the ["extraordinary"] number and variety of defendants, I have attempted for several months to bring the parties to a consensus position on how best to organize the cases so that the litigation can proceed on an efficient and appropriate basis, with suit proceeding against the Manufacturers in the first instance. (*See* D.I. 119 in C.A. 04-1337-KAJ.)
>
> Among other things, on May 18, 2005, I issued a Memorandum Order stating that "large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives." (*Id.* at 7.) I ruled that dealing first with the Manufacturers "is the fairest and most efficient way to proceed." (*Id.* at 8.) To that end, I stayed the cases against the Non-manufacturer defendants, with the exception of permitting Honeywell to take

The Honorable Mary Pat Thynge
January 24, 2007
Page 3

> some limited discovery to determine the identity of Manufacturers whom it may wish to sue as infringers. I ordered the parties "to confer and provide me with proposed language respecting permissible discovery activities directed at the non-manufacturer defendants during the stay." Unfortunately, despite two in-person conferences with counsel, which involved literally dozens of attorneys, and despite the direction given in the Memorandum Order in May, these cases are still not progressing. … Because I do not believe further discussion will be productive and will only increase the substantial costs associated with these cases, I will not again convene the platoons of attorneys involved. Instead, I am providing the following direction and schedule for discovery against the Non-manufacturer Defendants.

Dozens of Orders, transcripts, and party submissions address the stay-and-transition issue.[2] Judge Jordan's entry of the stay thus was the culmination of a substantial expenditure of resources, both judicial and litigant.

II.     **Judge Jordan's Rationale for the Stay Still Applies**

There is no reason to disturb Judge Jordan's sequencing and scheduling orders. As was true in October 2005, an "extraordinary" number of parties are still accused of infringing the patent-in-suit: *Twenty-five* defendant families (forty-one parties), including *nine* families of Manufacturer Defendants (fourteen parties) and *sixteen* Non-Manufacturer-Defendant families (twenty-seven parties). Even the exercise of reconfiguring this action could itself use up a substantial amount of time and resources.

---

[2] *See* D.I. 61, D.I. 63, D.I. 67, D.I. 95, D.I. 96, D.I. 99, D.I. 101, D.I. 109, D.I. 110, D.I. 111, D.I. 119, D.I. 120, D.I. 121, D.I. 122, D.I. 123, D.I. 128, D.I. 129, D.I. 130, D.I. 131, D.I. 132, D.I. 133, D.I. 135, D.I. 137, D.I. 138, D.I. 139, D.I. 140 in C.A. 04-1337-KAJ; D.I. 158, D.I. 161, D.I. 167, D.I. 171, D.I. 174, D.I. 178, D.I. 181, D.I. 189, D.I. 195, D.I. 196, D.I. 197, D.I. 198, D.I. 199, D.I. 202, D.I. 204, D.I. 208, D.I. 209, D.I. 217, D.I. 218, D.I. 219, D.I. 227, D.I. 228, D.I. 232, D.I. 234, D.I. 235, D.I. 236, D.I. 237 in C.A. 04-1338-KAJ.

The Honorable Mary Pat Thynge
January 24, 2007
Page 4

### III. *More* Discovery Activities in this Consolidated Case Will Produce Inefficiencies

Adding discovery activities of more than a dozen Non-Manufacturer-Defendant families will do little to promote efficiency here. Apparently pressed for time, Honeywell and the Manufacturer Defendants recently asked for a three-month extension on all deadlines. It thus appears that even with the current number of Manufacturer Defendants (*i.e.*, nine families), the discovery load from the current schedule is taxing Honeywell and the non-stayed defendants. And because many of the Non-Manufacturer Defendants are foreign corporations, Honeywell's goal of completing discovery of an additional sixteen defendant families – even with a three-month extension of deadlines – seems ambitious.

In addition, more discovery of the Non-Manufacturer Defendant may never be needed. Honeywell has yet to finish discovery of the Manufacturer Defendants on damages issues. Thus, Honeywell does not yet know what, if any, gaps may need to be filled by further Non-Manufacturer discovery. The stay should only be revisited *if* additional discovery is needed after the Manufacturer Defendants are finished, and *if* damages issues remain after the first trial.

### IV. Honeywell Made No Attempt to Confer With the Non-Manufacturers Before Proposing a "Fundamental Change" to the Scheduling and Sequencing of Discovery

The Court need not reward Honeywell's apparent disregard for this District's procedure for raising discovery issues. Honeywell asks the Court to overhaul the established sequencing of these consolidated cases, but has not contacted *any* Non-Manufacturer Defendant to discuss its proposal. The reason seems clear: Having lost on the stay issue before Judge Jordan, Honeywell now takes this first opportunity in his absence to see if Your Honor might overlook Judge Jordan's Herculean efforts to sequence this case for efficient management. Indeed, the timing of

The Honorable Mary Pat Thynge
January 24, 2007
Page 5

Honeywell's request to revisit this settled issue – almost immediately after Judge Jordan left the District Court bench – is particularly telling.

      Counsel for the Non-Manufacturer Defendants will join the January 25 teleconference should Your Honor wish to hear further from them on these or other issues.

                          Respectfully,

                          */s. Richard L. Horwitz*

                          Richard L. Horwitz

*Attorney for, or with permission and on behalf of, Fujitsu Limited; Fujitsu America, Inc.; Fujitsu Computer Products of America, Inc.; Nikon Corporation; Nikon Inc.; Eastman Kodak Co.; Dell Inc.; Navman NZ Limited; Navman U.S.A., Inc.; Argus (a/k/a Hartford Computer Group, Inc.); Kyocera Wireless Corp.; Sony Ericsson Mobile Communications AB; Sony Ericsson Mobile Communications (USA) Inc.; Nokia Corporation; Nokia, Inc.; Olympus Corporation; Olympus America, Inc.; Pentax Corporation; Pentax U.S.A., Inc.; Matsushita Electrical Industrial Co.; Matsushita Electrical Corporation of America; Audiovox Communications Corp.; Sony Corporation; Sony Corporation of America; Sanyo Electric Co., Ltd.; and Sanyo North America Corporation*

RLH/msb
Enclosure

cc:    Clerk of the Court (via hand delivery)
        All Local Counsel of Record (via ECF and hand delivery)