# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

March 2, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE  19801

    Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
             Cons. C.A. No. 04-1338-***

Dear Magistrate Judge Thynge:

I write on behalf of the Plaintiffs ("Honeywell") to demonstrate why the commercial success of products manufactured and sold by the Customer Defendants – products which use the Accused Modules and stand accused of infringement in this case – is highly relevant to a proper validity analysis, even if the case is tried first against the Manufacturer Defendants. As explained below, the success of the patented invention is best understood in the context of the end products sold in the United States which incorporate the features of the invention. The Manufacturer Defendants have little or no information as to why the functionalities provided by the '371 technology has generated such acceptance in the marketplace. The case law does not limit the issue of commercial success to consideration of component sales only. To the contrary, the law recognizes that often the success of the overall end product is relevant to the non-obviousness of a patent directed to a component of the product.

Case 1:04-cv-01338-JJF  Document 724  Filed 03/02/2007  Page 2 of 10

The Honorable Mary Pat Thynge
March 2, 2007
Page 2

The case reconfiguration ordered by the Court was never intended to prejudice Honeywell's substantive rights. To now deny Honeywell access to information regarding the commercial success of the end products merely because of that reconfiguration would prejudice Honeywell's defense to the defendants' invalidity claim. The Manufacturer Defendants should not be allowed to bring their obviousness defense to trial if the jury will not have meaningful information about how products using this technology have successfully penetrated the United States market. Accordingly, Honeywell should be granted the right to conduct limited discovery of the Customer Defendants.

I. **A Proper *Graham v. John Deere* Analysis Should Include Consideration of the Commercial Success of Infringing Products Using the Accused Modules.**

As set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 35-36 (1966), it is well settled that secondary considerations, such as the commercial success of the patented invention, can be used by a patent holder as indicia of non-obviousness. It is equally well settled that sales of the accused infringing products can be used to gauge the commercial success of the patented invention. *See, e.g., Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention."). Accordingly, the success of products that use the '371 technology is highly relevant to any challenge that the subject matter of the '371 patent is obvious.

In this regard, it bears emphasizing that Honeywell has accused the portable consumer electronic products manufactured and sold by the Customer Defendants of infringement in this lawsuit. While the Manufacturers' infringement means there may be discrete and multiple acts of infringement, the Manufacturers and the Customers share a common interest in the

distribution chain that ultimately leads to the end users of infringing portable consumer electronics. Sales of the modules themselves – while reflective of ultimate demand – are once removed from the ultimately infringing end product and not the best evidence of why the technology has become the standard in the United States. This is especially so because the Manufacturer Defendants are still claiming that the majority of their sales of infringing modules are beyond the territorial scope of the United States Patent Laws (35 U.S.C. § 271). If the Manufacturer Defendants' assertions are correct, then the only "infringing" products would be of the end products sold by the Customer Defendants. Unless the Manufacturer Defendants now agree that overseas module sales infringe as long as those modules are ultimately incorporated into end products sold in the United States, information regarding such sales would only be the *first step* in proving the commercial success of infringing products. Unless and until the Manufacturer Defendants' sales are linked to the United States, Honeywell will be met with the legal argument that the bulk of those sales are irrelevant because no one "knows" whether those modules ever reach the United States. Indeed, several Manufacturer Defendants are currently refusing to provide sales information regarding their own sales, because they claim those sales are not within the United States. This represents a grossly unfair scenario for Honeywell, especially when the current procedural configuration of the case was not of its own choosing. Undeniably, a significant market has developed in the United States for products using the claimed technology. Any challenge to the validity of the patent must take this market into consideration.

As acknowledged at the recent hearing on February 22, 2007, the commercial success of the infringing products can only provide a basis for demonstrating non-obviousness when the

patent holder is able to demonstrate that the success is attributable to the feature that is the subject of the patent claim. As articulated by the Federal Circuit:

> [F]or commercial success of a product embodying a claimed invention to have true relevance to the issue of nonobviousness, that success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter. Thus, a nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight enroute to [a] conclusion on the obviousness issue.

*Cable Electric Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). *See also Brown & Williamson Tobacco Corp.*, 229 F.3d at 1130 ("A nexus between commercial success and the claimed features is required."); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1351 (Fed. Cir.), *cert denied*, 530 U.S. 1238 (2000) ("establishing such a nexus is required in order to establish commercial success").

With regard to the requisite nexus, it is well understood that patents often cover only a portion of a product which stands accused of infringement. Defendants' mantra has been – and presumably will continue to be – that the '371 patent reads only upon the LCD module itself, not upon the end product into which the module is incorporated. This tactic is not a legally sound basis for preventing discovery into that larger product. The Federal Circuit has noted that proof of commercial success may not always be coextensive with the patented invention:

> When the thing that is commercially successful is not coextensive with the patented invention – for example, if the patented invention is only a component of a commercially successful machine or process – the patentee must show *prima facie* a legally sufficient relationship between that which is patented and that which is sold.

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In numerous cases, patent holders have been permitted to introduce evidence to demonstrate that

March 2, 2007
Page 5

the commercial success of a product was due to the component that contained the patented invention. Thus, for example, in *Hughes Tool Co. v. Dresser Indus. Inc.*, 816 F.2d 1549 (Fed. Cir.), *cert. denied*, 484 U.S. 914 (1987), Hughes Tool's patent claimed an O-ring seal in rock bit cutters of an oil and gas well drilling bit, where the O-ring seal was compressed by not less than 10%. The Court stated:

> Despite Dresser's assertions that other aspects of Hughes Tool's new rock bits were responsible for Hughes Tool's commercial success, the one feature that Hughes Tool and all of its competitors continued to use was the minimum 10% squeeze called for in the claims in suit of the '928 patent. Such continuous use of the patented feature while other features were not copied gives rise to an inference that there is a nexus between the patented feature and the commercial success.

*Id.* at 1556. Likewise, in *Winner*, the patent at issue claimed an improvement in a security device (the "original Club") consisting of substituting a "self-locking ratcheting mechanism" for the original Club's key lock. The Court stated:

> [T]he survey introduced at the district court by Winner established that a statistically significant percentage of customers viewed the self-locking ratcheting mechanism of the '047 patent as being of more value to them, and reported that the self-locking ratchet was the very reason they purchased the device, as opposed to those requiring key-locking, and was the reason they were willing to pay more for such a lock than for one without it, such as the original Club. When such evidence was introduced, it became Wang's burden to show that it should not be given weight. Given the evidence before the district court, it did not clearly err in finding that the survey showed the nexus between the patented features, especially the keyless self-locking ratcheting mechanism, of the Super Club line of products and the reasons the consumers bought products.

*Id.* at 1350-51.

The Honorable Mary Pat Thynge
March 2, 2007
Page 6

As each of these cases illustrates, the patent holder was afforded the opportunity to demonstrate that a nexus existed between those patented features or components and the commercial success of the end products as a whole.

This principle is not limited to situations where there is an issue between the component and the complete product. In *Truswal System Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987), the Federal Circuit vacated a district court's decision to quash a subpoena directed to a non-party who had been charged with infringement, but not included in the suit. Even though there was no supplier-customer relationship between the named defendant and the entity served with the subpoena, the Federal Circuit recognized that information regarding unrelated infringing products could bear on commercial success, and thus remanded the matter to the district court. *Id.* at 813 F.2d at 1212.

Here, the discovery is targeted to customers of the Accused Modules, a discovery request significantly more in line than what was at issue in *Truswal*. Moreover, the '371 patent expressly recognizes that makers of end products would be particularly interested in the energy efficiency of the claimed invention. *See* '371 Patent, Col. 3, ll. 19-23 (noting that one of the goals of the invention is to allow for concentration of light into "viewing angles of interest for a particular application"). This, of course, necessarily begs the question of what "application" is at issue. It is the Customers, not the Manufacturers, who are in the best position to articulate the metes and bounds of each such application and its relative needs/sensitivities for bright, clear displays and smaller, more portable batteries. The Manufacturers can describe how their modules meet a technical specification, but they are not the best source for explaining why that specification is important in the first instance. Given that the '371 patent discloses its utility in

The Honorable Mary Pat Thynge
March 2, 2007
Page 7

the context of "particular applications,"[1] first hand information regarding such applications is more likely to relate to the field of the invention.

## II. Honeywell's Requested Discovery is Narrowly Tailored to Address the Issue of Commercial Success.

Honeywell recognizes this Court's desire to limit discovery directed to the Customer Defendants at this point. In order to develop its arguments with respect to commercial success, Honeywell will need discovery concerning two general areas:

(a) documents and information concerning sales of the Customer Defendants' products that contain the Accused Module; and

(b) documents and information discussing why the Accused Modules allow the Customer Defendants to better meet market demand.

Specific requests with respect to each of these two areas are set forth below. It bears noting that all this discovery could be avoided if the Manufacturer Defendants would stipulate to the commercial success of the products which have used the Accused Modules for many years.

In outlining these specific requests, Honeywell is cognizant that "one size may not fit all" Customer Defendants. Certainly, discovery could be limited to those products that employ Accused Modules which have not yet been licensed. This presumes, however, that the '371 licenses executed to date would be admissible and otherwise available for the jury's consideration. The Customer Defendants have argued that these licenses adequately protect Honeywell's right to establish a record of commercial success, and thus advocate this as a basis for limiting discovery. Clearly, it would be inappropriate to limit discovery if there is any issue regarding the ultimate admissibility of the licenses.

---

[1] *E.g.*, Col. 3, l. 23; Col. 5, l. 15.

The Honorable Mary Pat Thynge
March 2, 2007
Page 8

### A. Sales Information

Honeywell has not obtained discovery from the Customer Defendants regarding sales of all products which employ the Accused Modules. Such information is clearly relevant to the issue of infringing sales, especially where the Manufacturer Defendants are claiming that the substantial majority of these sales occur overseas and are refusing to provide information regarding those sales. The Manufacturer Defendants should not be allowed to avoid accounting for the benefit they have derived – even if unknowingly – from a well recognized market in the United States for portable consumer electronic products using the patented technology.

Honeywell proposes as follows:

(1) Each Customer Defendant would identify sales information for each product that uses an Accused Module; such sales information could take the form of summary charts which list, on a yearly basis, the number of units sold of each such product and the revenue derived from such sales.

(2) Honeywell believes that, if comprehensive information is provided as per (1) above, and if all parties stipulated to the admissibility of such summary information, depositions on this topic could be avoided.

The Customer Defendants presumably track sales data regularly and keep their sales data in readily accessible electronic format. Accordingly, once the initial task of identifying the relevant products is complete, Honeywell expects that the collection of the sales data itself will be a largely mechanical process of querying the Customer Defendants' respective sales databases.

### B. Nexus Discovery

The Customer Defendants will also presumably have documents concerning the features and advantages of the end products into which the accused LCD technology was incorporated.

Honeywell expects that, when new products are launched, the Customer Defendants prepare materials for marketing and sales purposes that compare the products' new features with

The Honorable Mary Pat Thynge
March 2, 2007
Page 9

those of other products. Given that the Customer Defendants will have identified the relevant products in providing the sales information, they should be able to simply pull the relevant product launch materials from their marketing files and produce them.

Advertising is also relevant to the nexus between the products' commercial success and the patented invention. "The prominence of the patented technology in [the infringer's] advertising creates an inference that links the [patented invention] to this success." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997). Accordingly, advertising concerning products using the Accused Modules should be produced. In particular, the accused technology can achieve such benefits as a brighter, cleaner display, longer battery life and lower weight in applications such as portable consumer electronics. Advertising which reflects or touts these advantages and benefits is relevant to the "nexus" issue. To limit the burden of discovery, Honeywell is willing to accept the production of advertising that the Customer Defendants prepared when the products were initially launched, and is also willing to accept representative samples of such advertising as opposed to every advertisement.

In addition, as *Winner* indicates, customer surveys can provide relevant information concerning the reasons why customers select specific products. Accordingly, Honeywell requests that the Customer Defendants be required to produce any surveys of customers or vendors reflecting the reported benefits of the products and/or the reasons why those products were purchased.

Finally, Honeywell anticipates that once documents are produced, there may be a need to clarify the import of their contents via limited depositions and to authenticate them for purposes of trial. Nonetheless, Honeywell is willing to defer the issue of the depositions until the parties

The Honorable Mary Pat Thynge
March 2, 2007
Page 10

first have an opportunity to assess the documents themselves, and then discuss a reasonable scope for such depositions.

### III.     Conclusion

The Manufacturer Defendants have been unable, or unwilling, to provide the following information which bears directly on the issue of commercial success:

(1) The amount of the Accused Modules which enter the United States via their incorporation into a portable consumer electronic product.

(2) Whether and why a brighter display is important to end users of the accused portable consumer electronic products.

(3) Whether, because of the energy efficiency of the Accused Modules, a smaller or lighter battery is used in the accused portable consumer electronic products.

Such information is only in the hands of the Customer Defendants. Without that information, Honeywell will be forced to defend the validity of the '371 patent without highly probative information. At the same time, the burden on the Customer Defendants will be minimal. For these and all the foregoing reasons, the Court should order the limited discovery identified herein.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm (#1098)

cc:   Dr. Peter T. Dalleo, Clerk (by hand)
      All Counsel of Record (by e-filing and e-mail)
      Matthew L. Woods, Esquire (by e-mail)