

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
302  984-6140  Direct Phone
302  658-1192  Fax

March 12, 2007

**BY E-FILE**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
U.S. Courthouse
844 King Street
Wilmington, DE 19801

> Re:  Honeywell International, Inc. et al. v. Apple Computer, Inc. *et al.*
>       D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536

Dear Magistrate Judge Thynge:

We write on behalf of co-defendants Epson Imaging Devices, Fuji Photo Film Co, Ltd.,
now FUJIFILM Corporation, Fuji Photo Film U.S.A., Inc., now FUJIFILM U.S.A., Inc., Hitachi
Displays, Ltd., Optrex America, Inc., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Seiko
Epson Corp., Wintek Corp. and Wintek Electro-Optics Corporation ("Manufacturer Defendants")
to oppose Plaintiffs' ("Honeywell") application to take discovery of the stayed Customer
Defendants, allegedly to seek evidence to support its claim of commercial success, a secondary
consideration in the analysis of the obviousness of the claimed invention.  Such discovery is only
permitted if reasonably calculated to lead to admissible evidence, and then only if it is not unduly
burdensome on the stayed Customer Defendants.  Fed R. Civ. P. 26(b)(1) and (2).  Honeywell
has failed to satisfy this threshold requirement.

Honeywell correctly cites the Federal Circuit precedent that requires a nexus between the
claimed invention and the commercial success sought to be proved.  Grimm 3/2/07 letter at first

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

half of 4. "[Commercial] success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter." *Cable Electric Prods., Inc. v. Genmark Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). Where Honeywell goes wrong is in relying on two improper and incorrect presumptions, that the success of every "Accused Product" and "Accused Module" is attributable to the claimed "invention", and that every such product and module infringes claim 3 of the '371 patent. Strip away these presumptions and examine the facts and it becomes clear that the discovery sought of the Customer Defendants cannot lead to admissible evidence.

I.    **Honeywell's Requested Discovery Focuses On Advantages of Structures In The Prior Art And Will Not Lead To Admissible Evidence**

Not every sale of a product which includes a patented component supports, or is even relevant to, a finding of commercial success. "[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). The same is true if commercial success is the result of unclaimed features. *Id.* "[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J. T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997), *see also, In Re Paulsen,* 30 F.3d 1475, 1482–83 (Fed. Cir. 1994) (commercial success of product was attributable to aspects of claims in prior art and thus was accorded no weight).

Honeywell has argued that the benefits obtained by the '371 patent technology are "a brighter, cleaner display, longer battery life and lower weight." Grimm 3/2/07 letter at 9. However, these benefits are the result of structures that were already known in the prior art more than a year before the filing date of the application for the '371 patent (July 9, 1992). A copy of the '371 patent is annexed as Exhibit 1. Honeywell relinquished claims to these structures during prosecution of the '371 patent, and cannot recapture them in this case.

The Honorable Mary Pat Thynge
March 12, 2007
Page 3

The application for the '371 patent was filed with very broad claims, not limited to a liquid crystal panel or lens arrays. Ex. 2 at 14. Upon rejection of these broad claims, Honeywell amended the application to present an independent claim 10, which read:

> 10.  A display apparatus comprising;
> a light source;
>
> a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
>
> first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source though said lens arrays and said liquid crystal panel.

Ex. 3 at 2. This claim differs from the '371 patent claim 3 only in the recitation in claim 3 of the moiré minimizing technique of rotating at least one of the two lens arrays to provide a "slight misalignment" between the lenslets of the lens array and the liquid crystal panel (Ex. 1 at col. 6, lines 27-42), a limitation which was claimed in application dependant claim 9. Ex. 3 at 1.

In an Office Action dated May 6, 1993 (Ex. 4 at 1), the Examiner ruled that application claim 10 was anticipated by U.S. Patent No. 5,161,041 ("Abileah et al."; Ex. 5), which was based on an application filed April 26, 1990. Honeywell acquiesced in the finding of the Examiner by combining application claims 9 and 10 to form what became claim 3 of the '371 patent. Ex. 6. Abileah et al. teach two crossed lens arrays between a liquid crystal panel and a light source. Ex. 5 at FIG. 6. Abileah et al. list the advantages of their new LCD backlight in essentially the same terms as Honeywell now claims for the invention of claim 3, namely:

> a bright uniform image of high contrast and capable of being viewed over a wide viewing angle, while maintaining a narrow profile and minimizing power consumption and thermal inconveniences.

Ex. 5 at col. 4, lines 26-29. Abileah et al repeatedly characterize their invention as providing improvements in brightness and energy efficiency:

The Honorable Mary Pat Thynge
March 12, 2007
Page 4

> In order for electronic displays to gain increased acceptance in
> military and avionic applications, the backlighting of flat panel
> displays, and particularly active matrix liquid crystal displays,
> **must be improved in light efficiency** and reliability. In order for a
> full color liquid crystal display to possess acceptable contrast
> under high ambient lighting conditions, the backlighting
> arrangement **must be bright**. While current backlighting systems
> have the requisite light output, they still require high power (on the
> order of 2.4 watts/square inch) and a depth dimension of about two
> inches. In contrast thereto, **the backlight assembly of the instant
> invention consumes only about 1.2 watts/square inch of power**
> with a depth dimension of only about one inch.

Ex. 5 at col. 7, lines 5-15 (emphasis added).

Rotation of the lens array, the only feature of claim 3 not taught in Abileah et al.,
contributes to eliminating moiré, and not to the enhancement of brightness and energy efficiency
of the module. Ex. 1 at col. 4, lines 26-34; col. 5, lines 16-28.

Honeywell's justification for the requested discovery of the stayed Customer Defendants
focuses on advantages of LCD modules which are attributable to the prior art, and cannot be
considered as evidence of commercial success. *See, supra, Ormco Corp., J. T. Eaton, Paulson.*
As such it is not reasonably calculated to lead to the discovery of admissible evidence and should
not be permitted.

Furthermore, Honeywell claims that the patented invention produces longer battery life
and lower weight have no basis in the '371 patent. Nowhere does the '371 patent describe these
features as attributes of the invention. In fact, Honeywell's patent does not even discuss
consumer electronics. The only "application" discussed in the patent is aircraft cockpit displays
(the same application noted in Abileah et al, *see supra*), and the object of the invention is "to
provide a tailored variation of luminance with viewing angle" to focus the light of the display in
a particular viewing angle. Ex. 1 at col. 1, lines 40-45. Thus, to the extent the commercial
success of Customer Defendants' products may be connected to energy efficiency, longer battery
life, or lower weight, these attributes cannot support the non-obviousness of the '371 patent. *See
Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence

The Honorable Mary Pat Thynge
March 12, 2007
Page 5

that invention solved certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [ ] patent.").

As Honeywell points out, the specification of the '371 patent describes which structural features result in the benefits identified by Honeywell, namely, enhanced brightness and energy efficiency. Indeed, the portion of the '371 patent relied upon by Honeywell states that inserting a lens array between the light source and the liquid crystal panel provides the benefits of increased energy efficiency and increased luminance. Ex. 1 at col. 3, lines 15-36. The portion of the '371 patent specification cited by Honeywell as explaining the benefits of the patent describes an *unclaimed* embodiment. An embodiment having a single lens array provides the benefits of energy efficiency and brightness, whereas the claims of the '371 patent are limited to modules having multiple lens arrays. Thus, even assuming that the benefits alleged by Honeywell and the '371 patent were not found in the prior art, they are provided by an unclaimed feature and, as such, commercial success based on those benefits is irrelevant to validity of the '371 patent. *Ormco Corp.*, 463 F.3d at 1312 ("if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant").

## II.    Honeywell Has Failed To Demonstrate The Necessary Nexus Between Claim 3 And The Customer Defendants' Products.

The Federal Circuit has ruled that: "if the patented invention is only a component of a commercially successful machine or process - the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In the present case, to demonstrate commercial success based on the end products rather than the LCD modules (the accused products), Honeywell must establish both (1) that the commercial success of the end products are attributable to certain characteristics of the LCD modules (brightness and energy consumption), and (2) that the brightness and energy consumption of the LCD modules are attributable to use of the claimed invention within the modules, as opposed to other embodiments or the prior art. Honeywell fails to make either showing.

The Honorable Mary Pat Thynge
March 12, 2007
Page 6

In no way does Honeywell suggest how the success of a portable consumer product, such as a digital still camera, a cell phone, a laptop or the other myriad of portable consumer products sold by the Customer Defendants, is attributable to the brightness of the LCD or the weight of the battery, as opposed to the many other features of such devices, both technical (e.g., CPU power, memory volume, camera lens, mobile phone antenna and software) and non-technical (e.g., aesthetic design, advertising, price, sales channel). As discussed above, there is no nexus between the commercial success of the liquid crystal modules at issue and the "invention" of claim 3 of the '371 patent.

The commercial success of the Customer Defendants' Products is even further removed from the alleged success of the Manufacturer Defendants' modules, which are the products at issue. Honeywell cannot maintain that commercial success is unique to LCD modules that contain the accused features. Honeywell's own analysis of the modules within end products successful enough to be considered resulted in only about fifty percent being deemed by Honeywell to infringe. September 9, 2005 Transcript at 22-23, Ex. 7. Thus, by Honeywell's own admission, the fifty percent of defendants' commercially successful products deemed not to infringe must owe their commercial success to features not claimed in the '371 patent. There can be no nexus between the claimed invention and commercial success of the end products when the end products are commercially successful regardless of whether they make use of the accused modules. Where commercial success is attributable to unclaimed features and features found in the prior art, such commercial success cannot be considered. *See, supra, Ormco Corp., J. T. Eaton, Paulson.* The existence of such other features makes Honeywell's proof of the requisite nexus implausible.

The requested discovery is hardly limited. It takes three pages to describe and is, on its face, unduly burdensome on the stayed Customer Defendants at this stage of this case. Given the lack of nexus between the advantages and sales Honeywell seeks to discover and the claimed invention, the failure to explain why evidence adduced from the Manufacturer Defendants is

The Honorable Mary Pat Thynge
March 12, 2007
Page 7

insufficient, and the existence of non-infringing structures which may have been incorporated in

the Customer Defendants' products, it is submitted that Honeywell has failed to demonstrate a

need for the discovery sufficient to justify modifying the stay.  The requested discovery defeats

the purpose of the stay and unduly burdens the Manufacturer Defendants, who would need to

monitor the discovery.

                                        Respectfully,

                                        /s/ Philip A. Rovner

                                        Philip A. Rovner
                                        provner@potteranderson.com

PAR/mes/783007
Enc.

cc:     All counsel of record – by ECF