

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

PUBLIC VERSION

April 17, 2007

**Philip A. Rovner**
Partner
provner@potteranderson.com
302-984-6140   Direct Phone
302-658-1192   Fax

April 10, 2007

**BY E-FILE AND HAND DELIVERY**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
U.S. Courthouse
844 King Street
Wilmington, DE 19801

**CONFIDENTIAL – FILED UNDER
SEAL PURSUANT TO
PROTECTIVE ORDER**

**IN CAMERA REVIEW**

      Re:    Honeywell International, Inc. *et al.* v. Apple Computer, Inc. *et al.*
           D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536

Dear Magistrate Judge Thynge:

    We write on behalf of co-defendants Fuji Photo Film Co, Ltd., now FUJIFILM Corporation, and Fuji Photo Film U.S.A., Inc., now FUJIFILM U.S.A., Inc. ("Fuji") to seek an order of the Court pursuant to Section 3(e) of the Scheduling Order, that (1) the document bearing bates number HW021021 (the first page of Brafman Deposition Ex. 10 annexed as the first page of Ex. A), which Honeywell attempted to claw back on February 14, 2007, almost two months after the document was marked and used as a deposition exhibit is not privileged, and (2) Honeywell must produce all documents being withheld as "the fruit of the tree" of Honeywell's belated privilege claim for page one of Exhibit A, and, in particular, a two-page report on the value of the '371 patent prepared by inventor Richard I. McCartney in October 1992. In order to establish the attorney-client privilege here, Honeywell has the burden to show that, *inter alia*, the withheld communications were made to or at the direction of an attorney, acting as a lawyer, primarily for the purpose of seeking legal advice. *In re Impounded*, 241 F.3d 308, 316 (3d Cir. 2001); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1442 (D. Del. 1989). This is not the case here.

    The document Honeywell is attempting to claw back is a 1992 memorandum from

                                                  *See* HW021022 (Ex. A). The

memorandum seeks factual and business information

The Honorable Mary Pat Thynge
April 10, 2007
Page 2

HW021025, #15 (Ex. A).  Notably, even the questions specifically directed to (which constitute only a portion of the memorandum) seek factual responses,

, not opinions of law.

A).  Furthermore,

*See* HW021042-45  (Ex. B) and Defendants' Ex. 77, attached hereto as Ex. C.  The fact that        might be a repository for facts does not make those facts privileged.  Although one request is for

*Id.* at ¶ 3b.  Moreover, that request would elicit facts such as Not surprisingly, the document bears no legend of confidentiality or privilege.  "Where the attorney acts merely…as a business advisor, the privilege is not applicable."  *U.S. v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984).                          was simply asked to provide factual information in the role of a business advisor.  Honeywell's improper application of the attorney-client privilege is further evidenced by Honeywell's counsel's letter of March 12, 2007, which characterizes the basis for Honeywell's claim of privilege as "Honeywell's ongoing investigation suggest[ing] that attorneys were involved to some extent in this underlying project." (Ex. D).  Whether the communications are privileged does not turn on whether an attorney is "involved to some extent", but rather, it depends on whether the communications were directed to, or made at the direction of, the attorney acting in his capacity as a lawyer and providing confidential legal advice.

Regardless of whether the document is otherwise privileged, Honeywell waived any claim of privilege almost two months prior to its attempted claw back of the document by allowing it to be marked as an exhibit during the Rule 30(b)(6) deposition of Honeywell's in-house counsel, David Brafman, and by allowing questions regarding it to be asked and answered.  Brafman Deposition at 53-54 (referring to Brafman Exhibit 10)(Ex. E); *Murray v. Gemplus International, S.A.*, 217 F.R.D. 362, 364 (E.D.Pa. 2003); *see also*  Stipulated Protective Order, D.I. 572, ¶ 19.3 (inadvertent disclosure is not a waiver if designated as privileged within 10 days).

Even though Mr. Brafman claimed to be unfamiliar with the document and the transaction it revealed, his unfamiliarity should not excuse Honeywell's failure to preserve the privilege.[1]  In a March 1, 2007 Memorandum Order in another case, Judge Robinson of this Court rejected an argument (albeit in the context of a particular provision of the protective order in the case) that a document was not "used" at a deposition even though the witness was not questioned in depth about the document.  Ex. G.  Moreover, the questioning here went to one of the specific topics addressed in the subject document—                          Ex. E.  In short, Honeywell

---

[1]  Mr. Brafman should have been familiar with the document.  Topic 7 of the 30(b)(6) notice pursuant to which Mr. Brafman testified on behalf of Honeywell was "The decision to initiate and the initiation of [Honeywell's] efforts to license and/or enforce any of [Honeywell's] patents relating to LCD Technology, including, but not limited to the '371 patent." (Ex. F).

The Honorable Mary Pat Thynge
April 10, 2007
Page 3

permitted the document to be marked as an exhibit, permitted questioning on its contents and the subject of the document, and thereby waived whatever privilege attached to the document.

Honeywell has also withheld an important document that it now alleges to be privileged "fruit of the tree" of Exhibit A. Although Honeywell claims to have only recently discovered that the first page of Exhibit A is privileged, Honeywell withheld as privileged and included on its privilege log a related October 10, 1992 document that was prepared by inventor Richard McCartney at the request of his boss, non-attorney Wayne Clark, in which Mr. McCartney is believed to have estimated the value of and identified potential markets for the alleged invention of the '371 patent. Privilege Log Excerpt, Ex. H, entry no. 22.[2] Honeywell's privilege log was served on December 13, 2006. If Honeywell had not yet determined at that time that an attorney was involved in the preparation of Mr. McCartney's valuation document, then Honeywell had no basis for withholding it as privileged.

Whatever the reason was for Honeywell's withholding Mr. McCartney's valuation of the invention of the '371 patent, it finds no basis in the law. The document is clearly not privileged, and, even if it was privileged, any privilege has been waived by the production of all other documents surrounding the

Documents produced by Honeywell for which no privilege claim has been made establish that on October 9, 1992,

Ex. I [HW021032]. The request was accompanied by Ex. J [HW021038]. Mr. McCartney filled out the form for at least three of his inventions. Significantly, Honeywell produced Mr. McCartney's completed forms for two of the inventions (reference nos. 17 and 18 identified in Ex. H and provided as Exhibit B hereto), but withheld the completed form for reference no. 15, i.e., the alleged invention of the '371 patent. Honeywell has not explained why the most relevant valuation from Mr. McCartney was withheld from production as allegedly privileged while other completed valuation forms were produced. *See also* Ex. C. Fuji respectfully submits that no legitimate basis for withholding the document exists, and Honeywell should be ordered to produce it and any other alleged "fruit of the tree."

Moreover, the defendants' efforts to discover the basis for Honeywell having withheld the '371 patent valuation document was totally frustrated at the recent deposition of Mr. McCartney. Honeywell's counsel (also representing Mr. McCartney in his personal capacity) instructed Mr. McCartney not to answer any questions about Exhibits H and I, neither of which are privileged communications or have even been alleged by Honeywell to be privileged communications, including questions such as whether Mr. McCartney had ever seen the documents before. McCartney Dep., Ex. K, pp. 465-71. In view of Honeywell's indefensible conduct at the McCartney deposition, Fuji respectfully requests not only that Honeywell re-produce Mr. McCartney for deposition (as Honeywell has already agreed to do if this motion is granted), but also pay for all fees and costs associated with the continued deposition.

---

[2] Although the log states that the date of the document is October 10, 2002, Honeywell has advised the defendants that the date is actually October 10, 1992.

The Honorable Mary Pat Thynge
April 10, 2007
Page 4

We look forward to discussing the foregoing with Your Honor at the Court's earliest convenience.

Respectfully,

Philip A. Rovner

PAR/mes/788466
Enc.
cc.  Thomas C. Grimm, Esq. (w/encls.) – by ECF and E-mail
     Manufacturer Defendants (w/encls. – Ex. A redacted) – by ECF and E-mail

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 Fax: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

MATTHEW L. WOODS
612-349-8272

March 12, 2007

VIA E-MAIL

Neil P. Sirota, Esq.
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112

Ian G. DiBernardo, Esq.
Stroock, Stroock & Laven LLP
180 Maiden Lane
New York, NY 10038

Andrew M. Ollis, Esq.
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

Elizabeth L. Brann, Esq.
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130

   Re: *Honeywell International, Inc., et al. v. Apple Computer, Inc., et al.*
     Our File No.: 019896.0229

Dear Counsel:

   This letter is in response to Neil's e-mail from last Friday regarding several outstanding matters related to the upcoming deposition of Richard McCartney.

   First, with regard to the document identified by Dale Jepsen during his deposition, please note the exchange reflected on pages 112-113 of the transcript in which I informed you that document was not attached to the invention disclosure statement. On those pages, I suggested that you confirm this at Mr. McCartney's upcoming deposition. Having said that, the document which I understand Mr. Jepsen to be referring to bears production numbers HW013601 through HW013608.

   With regard to our continued discussions involving Brafman Deposition Exhibit 10 and the estimation documents stemming therefrom, Honeywell's ongoing investigation suggests that attorneys were involved to some extent in this underlying project. Having said that, we acknowledge defendants' concerns regarding these documents. Accordingly, we propose as follows:

Counsel
March 12, 2007
Page 2

1.      The defendants will agree to substitute, for Brafman Deposition Exhibit No. 10, a redacted document, which redacts the substance under Item No. 3, "Action" (referencing specific request for legal advice);

2.      Honeywell will withdraw any objection to use of the estimation documents (HW021021-HW021049) in this litigation (reserving, of course, all applicable objections regarding admissibility), and will produce an additional document generated by Mr. McCartney with regard to the application file that ultimately became the '371 patent;

3.      All defendants participating in any Joint Defense Agreement regarding this case will agree that the withdrawal of such objection and production will not constitute, or serve as a basis for claiming, a waiver of the Attorney-Client and Work Product privileges, if any.

With regard to your request for best copies of HW021042-45, we have confirmed that you already have the best available copies of the documents. The documents that are in Honeywell's possession are the same quality as the documents that were produced. Given the ongoing discussion regarding these documents, however, this issue should be tabled until resolution of the matters outlined above. It is our intent at the upcoming McCartney deposition to prohibit testimony regarding matters which may, by their inquiry, constitute a waiver of the privilege, unless or until the broader issue referenced above is resolved.

Finally, with regard to the issue of the 30(b)(6) categories, as previously communicated in Ms. Oberts' letter of January 26, 2007, Mr. McCartney will be able to speak to topics 1, 2, 19, 21, 25. While he will testify as Honeywell's representative (as well as an individual), he is testifying regarding his personal participation in the events noticed in these categories. As we have communicated, the breadth of the categories, as well as their reference to the "awareness" or "knowledge" of a variety of persons, has caused Honeywell to designate multiple persons in response to a category. Also, as noted at the Jepsen deposition, Mr. McCartney will have some personal information responsive to categories 16, 18 and 20, given what we understand from your recent questioning to be subjects of interest to you. As you know, Honeywell has objected to the breadth of these categories as well, but will continue to work with you to ensure you have a reasonably complete record on these topics.

I look forward to hearing from you regarding all these matters.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Matthew L. Woods

MLW/sdg
cc:    Stacie E. Oberts
       Anthony A. Froio
       Marc Henschke

MP3 20216695.1

# EXHIBIT E

# REDACTED

# EXHIBIT F



DEPOSITION EXHIBIT
Berkman 1
12/21/06
BILL VISCONTI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC.　)
and HONEYWELL INTELLECTUAL　)
PROPERTIES INC.,　)
　)
　)
　　　　　Plaintiffs,　)
　)
v.　)
　)
　)
APPLE COMPUTER, INC., *et al.*,　)
　)
　　　　　Defendants.　)

C.A. No. 04-1338-KAJ
(consolidated)

**JURY TRIAL DEMANDED**

## NOTICE OF DEPOSITION OF PLAINTIFF
## HONEYWELL INTELLECTUAL PROPERTIES INC. (LACHES)

TO:　　　COUNSEL IDENTIFIED ON ATTACHED SERVICE LIST

　　　　PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal

Rules of Civil Procedure and pursuant to Delaware Local Rules 30.1 through 30.5,

Defendants Hitachi Displays, Ltd., Optrex America, Inc., Fuji Photo Film Co., Ltd. (now

FUJIFILM Corporation), Fuji Photo Film U.S.A., Inc. (now FUJIFILM U.S.A., Inc.),

TPO Displays Corporation (formerly known as "Toppoly Optoelectronics Corp.), Wintek

Electro-Optics Corporation, Wintek Corporation and Arima Display Corporation will

take the deposition upon oral examination of plaintiff Honeywell Intellectual Properties

Inc. ("HIPI"), and specifically the witness or witnesses designated by HIPI as officers,

managing agents, directors, agents, employees or other person(s) who are most

knowledgeable and can testify on its behalf with respect to each of the categories

identified in Appendix A hereto, commencing at 9:30 A.M. on November 29, 2006, and

proceeding day-to-day until complete, before a notary public or other officer duly

authorized to administer oaths at Potter Anderson & Corroon LLP, Hercules Plaza, 6th

Floor, 1313 N. Market Street, Wilmington, DE 19899-0951, or such other location as mutually agreed upon by counsel. The deposition will also be videotaped.

PLEASE TAKE FURTHER NOTICE that HIPI is requested to identify, on or before November 15, 2006, its designated witnesses and the matters to which each will testify.

You are invited to attend and cross-examine.

OF COUNSEL:

Robert C. Scheinfeld
Neil P. Sirota
Robert L. Maier
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

*Attorneys for Defendant*
*Hitachi Displays, Ltd.*

Lawrence Rosenthal
Matthew W. Siegal
Kevin Ecker
Angie Hankins
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Attorneys for Defendants*
*Fuji Photo Film Co., Ltd. and Fuji Photo*
*Film U.S.A., Inc.*

E. Robert Yoches
Elizabeth A. Niemeyer
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000

*Attorneys for Defendants TPO Displays*
*Corp., Wintek Electro-Optics Corp. and*
*Wintek Corp.*

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    Philip A. Rovner (#3215)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    provner@potteranderson.com
    dmoore@potteranderson.com

*Attorneys For Defendants*
*Hitachi Displays, Ltd., Fuji Photo Film Co.,*
*Ltd., Fuji Photo Film U.S.A., Inc., TPO*
*Displays Corp., Wintek Electro-Optics Corp.*
*and Wintek Corp.*

OF COUNSEL:

Dan C. Hu
Diana M. Sangalli
TROP, PRUNER & HU, P.C.
1616 S. Voss Road, Suite 750
Houston, TX 77057
(713) 468-8880

RICHARDS, LAYTON & FINGER

By: /s/ William J. Wade
  William J. Wade (#704)
  One Rodney Square
  P.O. Box 551
  Wilmington, DE 19899-0551
  (302) 651-7718
  wade@rlf.com

*Attorneys for Defendant*
*Arima Display Corporation*

OF COUNSEL:

Richard D. Kelly
Andrew M. Ollis
Alexander E. Gasser
OBLON, SPIVAK, MCCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
Tel. No.: (703) 413-3000
Fax No.: (703) 413-2220

Dated: October 27, 2006

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

By: /s/ Karen L. Pascale
  Karen L. Pascale (#2903)
  Young Conaway Stargatt & Taylor, LLP
  The Brandywine Building
  1000 West Street, 17th Floor
  P.O. Box 391
  Wilmington, DE 19899-0391
  (302) 571-5001
  kpascale@ycst.com

*Attorneys For Defendant*
*Optrex America, Inc.*

758416/29765

3

## APPENDIX A

### Definitions

A.    "HIPI" shall mean plaintiff Honeywell Intellectual Properties Inc., and all divisions, departments, subsidiaries (whether direct or indirect), parents, affiliates, acquisitions, predecessors and entities controlled by any of them, whether domestic or foreign, including but not limited to, Allied Corporation, Bendix Corp., Honeywell Inc., Allied-Signal, and/or AlliedSignal and their respective present or former officers, directors, employees, owners, attorneys and agents, as well as consultants and any other persons acting or purporting to act on behalf of each such entity or person.

B.    "HDL" shall mean defendant Hitachi Displays, Ltd. and all divisions, departments, subsidiaries (whether direct or indirect), parents, affiliates and predecessors, whether domestic or foreign, including, but not limited to stayed defendants Hitachi, Ltd.; Hitachi Display Devices, Ltd.; and Hitachi Electronic Devices (USA), Inc.

C.    "Optrex" shall mean Optrex America, Inc. and all divisions, departments, subsidiaries (whether direct or indirect), parents, affiliates and predecessors, whether domestic or foreign.

D.    "Fujifilm" shall mean Fuji Photo Film Co., Ltd. (now FUJIFILM Corporation), Fuji Photo Film U.S.A., Inc. (now FUJIFILM U.S.A., Inc.) and all divisions, departments, subsidiaries (whether direct or indirect), parents, affiliates and predecessors, whether domestic or foreign.

E.    "TPO Displays" or "TPO Displays Corp." means defendant TPO Displays Corporation, its parents, predecessors in interest including Toppoly Optoelectronics

Corporation, subsidiaries, joint ventures, and other legal entities that are wholly or partially owned or controlled by TPO Displays, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

F.      "Wintek Electro-Optics Corp." or "WEOC" means defendant Wintek Electro-Optics Corporation, its parents, predecessors in interest, subsidiaries, joint ventures, and other legal entities that are wholly or partially owned or controlled by WEOC, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

G.      "Wintek" or "Wintek Corp." means defendant Wintek Corporation, its parents, predecessors in interest, subsidiaries, joint ventures, and other legal entities that are wholly or partially owned or controlled by Wintek, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

H.      "Arima Display" shall mean Arima Display Corporation and all divisions, departments, subsidiaries (whether direct or indirect), parents, affiliates and predecessors, whether domestic or foreign.

I.      "LCD" shall mean liquid crystal display.

J.      "'371 patent" shall mean U.S. Pat. No. 5,280,371.

2

K.    "LCD Module" shall mean an LCD including a liquid crystal panel and other components for incorporation into another product to provide a viewable image to a user.

L.    "LCD Products" shall mean an LCD module and/or a product incorporating an LCD module, where such product is one of laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, and portable televisions, and/or portable game systems, and all similar products.

M.    "LCD Technology" shall mean technology related to the structure of LCDs and LCD Modules and the components thereof.

N.    "Others" shall mean any entity other than HIPI.

### Topics

1.    HIPI's efforts to monitor the growth of the United States market for LCD Products from January 1, 1994, through October 6, 2004.

2.    HIPI's knowledge of LCD Products made, used, imported, marketed or sold in or into the United States by others before October 6, 2004.

3.    HIPI's consideration, review or analysis of LCD Products made, used, imported, marketed or sold in or into the United States by others before October 6, 2004.

4.    HIPI's possession, custody or control of documents related to and/or reflecting LCD Products made, used, imported, marketed or sold in or into the United States by others before October 6, 2004.

3

5.     HIPI's efforts to determine and/or monitor potential infringements of its patents relating to LCD Technology, including, but not limited to the '371 patent, from January 1, 1994, through October 6, 2004.

6.     HIPI's knowledge before October 6, 2004, of the use, sale, offer for sale, importation, and manufacture of films, including but not limited to 3M films, that HIPI contends are for providing a predetermined variation with viewing angle when used in LCD products, and all communications and other documents reflecting such knowledge.

7.     The decision to initiate and the initiation of HIPI's efforts to license and/or enforce any of HIPI's patents relating to LCD Technology, including, but not limited to the '371 patent.

8.     HIPI's possession, custody or control, at any time, of documents related to and/or reflecting research and development on LCD Technology that led to the filing of the '371 patent (including documents created by or for the inventors such as inventor's notebooks and documents containing technical data reported in the '371 patent) and the destruction or discarding of any such documents.

9.     HIPI's possession, custody or control, at any time, of documents concerning prosecution of the '371 patent), and the destruction or discarding of any such documents.

10.     HIPI's possession, custody or control, at any time, of documents related to or reflecting the decision not to file the application for the '371 patent until July 9, 1992, and/or the decision to prepare and ultimately file that application on July 9, 1992, and the destruction or discarding of any such documents.

4

11.   HIPI's document retention policies from 1992–2005.

<u>Specific to HDL</u>

12.   HIPI's first actual knowledge that HDL makes, uses and/or sells LCD Products in the United States and/or imports LCD Products into the United States.

13.   HIPI's first actual knowledge of any product HDL makes, uses, sells and/or imports into the United States that HIPI alleges infringes the '371 patent.

14.   All efforts by HIPI to investigate whether HDL's LCD Products infringe the '371 patent.

15.   HIPI's first notification to, and all consideration given by HIPI at any time to notifying, HDL of alleged infringement of the '371 patent.

16.   All of the reasons or excuses why HIPI did not bring suit against HDL prior to November 7, 2005.

17.   All facts supporting or rebutting HDL's laches defense.

<u>Specific as to Optrex</u>

18.   HIPI's first actual knowledge that Optrex makes, uses and/or sells LCD Products in the United States and/or imports LCD Products into the United States.

19.   HIPI's first actual knowledge of any product Optrex makes, uses, sells and/or imports into the United States that HIPI alleges infringes the '371 patent.

20.    All efforts by HIPI to investigate whether Optrex's LCD products infringe the '371 patent.

21.    HIPI's first notification to, and all consideration given by HIPI at any time to notifying, Optrex of alleged infringement of the '371 patent.

22.    All of the reasons or excuses why HIPI did not bring suit against Optrex.

23.    All facts supporting or rebutting Optrex's laches defense.

Specific as to Fujifilm

24.    HIPI's first actual knowledge that Fujifilm makes, uses and/or sells LCD Products in the United States and/or imports LCD Products into the United States.

25.    HIPI's first actual knowledge of any product Fujifilm makes, uses, sells and/or imports into the United States that HIPI alleges infringes the '371 patent.

26.    All efforts by HIPI to investigate whether Fujifilm's LCD products infringe the '371 patent.

27.    HIPI's first notification to, and all consideration given by HIPI at any time to notifying, Fujifilm of alleged infringement of the '371 patent.

28.    All of the reasons or excuses why HIPI did not bring suit against Fujifilm prior to October 7, 2004.

29.    All facts supporting or rebutting Fujifilm's laches defense.

Specific as to Arima Display

6

30.     HIPI's first actual knowledge that Arima Display makes, uses and/or sells LCD Products in the United States and/or imports LCD Products into the United States.

31.     HIPI's first actual knowledge of any product Arima Display makes, uses, sells and/or imports into the United States that HIPI alleges infringes the '371 patent.

32.     All efforts by HIPI to investigate whether Arima Display's LCD Products infringe the '371 patent.

33.     HIPI's first notification to, and all consideration given by HIPI at any time to notifying, Arima Display of alleged infringement of the '371 patent.

34.     All of the reasons or excuses why HIPI did not bring suit against Arima Display prior to November 7, 2005.

35.     All facts supporting or rebutting Arima Display's laches defense.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 27, 2006, the within document

was served via hand delivery and electronic mail and was electronically filed with the

Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899
provner@potteranderson.com

William J. Wade
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
wade@rlf.com

John W. Shaw
Karen Keller
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com
kkeller@ycst.com

Frederick L. Cottrell, III
Chad Michael Shandler
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
Cottrell@rlf.com
shandler@rlf.com

Adam W. Poff
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
apoff@ycst.com

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market St., Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Thomas C. Grimm
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tgrimm@mnat.com
lpolizoti@mnat.com

Francis DiGiovanni
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
fdigiovanni@cblh.com

Amy Evans
Cross & Simon, LLC
913 N. Market Street, Suite 1001
P.O. Box 1380
Wilmington, DE 19899-1380
aevans@crosslaw.com

Karen L. Pascale
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
kpascale@ycst.com

William J. Marsden, Jr.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
marsden@fr.com

Paul A. Bradley
Thomas D. Walsh
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington, DE 19899
pbradley@mccarter.com
twalsh@mccarter.com

Matthew Neiderman
Duane Morris LLP
1100 N. Market Street
Suite 1200
Wilmington, DE 19801
mneiderman@duanemorris.com

Robert J. Katzenstein
Smith, Katzenstein, & Furlow
800 Delaware Avenue, 7th Fl.
P.O. Box 410
Wilmington, DE 19899
rkatzenstein@skfdelaware.com

Arthur G. Connolly, III
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
ac3@cblhlaw.com

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
17th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

David J. Margules
John M. Seaman
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
dmargules@bmf-law.com
jseaman@bmf-law.com

Monte Terrell Squire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
msquire@ycst.com

2

Gary William Lipkin
Duane Morris LLP
1100 N. Market Street
Suite 1200
Wilmington, DE 19801
gwlipkin@duanemorris.com

By: */s/ David E. Moore*
    Richard L. Horwitz
    David E. Moore
    Potter Anderson & Corroon LLP
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

709365

3

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:                        )
'318 PATENT INFRINGEMENT      )   Civ. No. 05-356-SLR
LITIGATION                    )

### MEMORANDUM ORDER

At Wilmington this 1st day of March, 2007, having reviewed
the papers submitted in connection with plaintiffs Janssen
Pharmaceutical N.V., Janssen, L.P. and Synaptech, Inc.'s motion
seeking return or destruction of privileged documents;

IT IS ORDERED that said motion (D.I. 309) is granted in part
and denied in part, for the reasons that follow:

1. With respect to the Life Cycle Opportunity Plan (JAN RAZ
0192627 - JAN RAZ 0192641), the motion is denied. Consistent
with the clear language of ¶ 29(c) of the parties' stipulated
protective order, "[o]nce an inadvertently produced document has
been used during a deposition . . . , the producing party has
three (3) weeks from the date of disclosure to provide notice of
the inadvertent production." (D.I. 35, ¶ 29(c)) Although the
movants concede that the document was identified at the
deposition and the deponent was questioned about the document,
nevertheless, the movants argue that they should be excused from
their untimely request for return because the document was not

really "used." I find such reasoning to be strained, at best. Paragraph 29(c) speaks to the "document" being used, not the allegedly privileged portions of the document being "used". Moreover, given the remaining language of ¶ 29(c), I conclude that the purpose of the paragraph is to ensure that the producing party has been put on notice that the document has been produced and deemed relevant to the issues in the case. The use of the document at bar satisfied those purposes, despite the fact that the deponent was not familiar with the document and, therefore, was not questioned in depth about it.

    2. With respect to the Shire Business Memo (JAN RAZ 0177809 - JAN RAZ 0177812), the motion is granted. I have consistently held that draft licensing agreements written by counsel are not subject to disclosure. This case presents no facts justifying an exception to my practice.

                                    _____
                                 United States District Judge

# EXHIBIT H

# REDACTED

# EXHIBIT I

# <u>REDACTED</u>

# EXHIBIT J

# REDACTED

# EXHIBIT K

# REDACTED