EXHIBIT 17

# BAKER BOTTS LLP

|  |  |
| --- | --- |
| 30 ROCKEFELLER PLAZA | AUSTIN |
| NEW YORK, NEW YORK | BAKU |
| 10112-4498 | DALLAS |
| 212.408.2500 | DUBAI |
| FAX 212.408.2501 | HONG KONG |
|  | HOUSTON |
|  | LONDON |
|  | MOSCOW |
|  | **NEW YORK** |
|  | RIYADH |
|  | WASHINGTON |

April 23, 2007

Robert L. Maier
212.408.2538
FAX 212.259.2538
robert.maier@bakerbotts.com

**VIA E-MAIL**

Peter N. Surdo, Esq.
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Re:  *Honeywell Int'l, Inc. et al. v. Apple Computer, Inc. et al.*
      Civil Action No. 04-1338

Dear Pete:

This is in response to your April 17, 2007 letter to Neil Sirota and further to our meet and confer regarding deposition scheduling and the correlation of documents to modules in Hitachi's document production.

Hitachi will agree to your proposed compromise that Hitachi produce the correlation documents (*i.e.*, documents similar to the type produced the morning of Tsukizaki-san's deposition in Osaka) for only those modules sold directly in the United States.

Additionally, Hitachi can agree to go forward with the laches deposition during the week of July 2.

Very truly yours,

Robert L. Maier

EXHIBIT 18

## Gustafson, Stacy D.

| | |
|---|---|
| **From:** | Neil.Sirota@bakerbotts.com |
| **Sent:** | Wednesday, November 22, 2006 4:07 PM |
| **To:** | McDiarmid, Jeremy C. |
| **Cc:** | McKenna, Alan E.; Woods, Matthew L.; TGrimm@MNAT.com; Robert.Scheinfeld@bakerbotts.com; Robert.Maier@bakerbotts.com |
| **Subject:** | RE: Honeywell v. Hitachi, et. al. |

Dear Jeremy,

Thank you for your letter of November 13, 2006. As we discussed last week, Hitachi does not believe that it is subject to an obligation to identify "generational" modules because Hitachi has produced documents for all potentially relevant modules so that Honeywell can identify for Hitachi all "accused modules." Please advise when Honeywell will be supplementing its response to Hitachi's Interrogatory Nos. 1-3.

Regards.

Neil

Neil P. Sirota
Baker Botts L.L.P. ■
30 Rockefeller Plaza
New York, New York 10112
tel.: 212.408.2548
personal fax: 212.259.2548
main fax: 212.408.2501

This transmittal may be a confidential attorney-client communication or may be otherwise privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this communication in error, please notify us immediately by reply electronic mail or by telephone (call collect at 212-408-2572) and immediately delete this message and all its attachments.

-----Original Message-----
**From:** McDiarmid, Jeremy C. [mailto:JCMcDiarmid@rkmc.com]
**Sent:** Monday, November 13, 2006 5:36 PM
**To:** Sirota, Neil P.
**Cc:** McKenna, Alan E.; Woods, Matthew L.; Thomas C. Grimm
**Subject:** Honeywell v. Hitachi, et. al.

>>>> Please read the confidentiality statement below <<<<

Hi Neil,

Sorry I missed your call today.

Attached please find a letter concerning Hitachi's generational modules.

Best regards,

Jeremy

Jeremy C. McDiarmid

Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
617-267-2300 tel
617-859-2723 direct
617-267-8288 fax

---

Information contained in this e-mail transmission is privileged,
confidential and covered by the Electronic Communications
Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute,
or reproduce this transmission.

If you have received this e-mail transmission in error, please
notify us immediately of the error by return email and please
delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal
Revenue Service, any tax advice contained in this
communication (including any attachments) is not intended
to be used, and cannot be used, for purposes of (i) avoiding
penalties imposed under the U. S. Internal Revenue Code
or (ii) promoting, marketing or recommending to another
person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

---

# EXHIBIT 19

Honeywell International Inc., et al. v. Apple Computer, Inc., et al. (C.A. No. 04-1338-***)    Page 1 of 2

## Surdo, Peter N.

| | |
|---|---|
| **From:** | Surdo, Peter N. |
| **Sent:** | Monday, April 23, 2007 5:20 PM |
| **To:** | 'Robert.Maier@bakerbotts.com' |
| **Cc:** | Neil.Sirota@bakerbotts.com; Woods, Matthew L.; McKenna, Alan E.; 'Polizoti, Leslie' |
| **Subject:** | RE: Honeywell International Inc., et al. v. Apple Computer, Inc., et al. (C.A. No. 04-1338-***) |

Dear Rob,

Thanks for your letter. We will begin processing the necessary paperwork to conduct depositions the week of July 2. We anticipate conducting the deposition of Hitachi's designated witness for the recently-noticed laches topics, and continuing the depositions of those witnesses for which we requested follow-up deposition time (pending the outcome of a hearing on the issue).

We do appreciate your agreement to provide technical documents for modules sold directly into the United States. Given the short timeframe, we request you provide such documentation by May 4. For modules sold worldwide but not directly into the United States, we maintain our position that Hitachi should either: (1) agree that res judicata does not apply, or (2) produce the same information as it has agreed to provide for those modules sold directly into the United States.

We have scheduled a hearing for May 2 at 2pm EST. From my understanding, the Judge would like to address these issues in conjunction with other pending discovery matters.

Have a safe trip to Minnesota.

Regards,

Pete

Peter N. Surdo
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN, 55402
(612) 349-0982 (office)
(612) 339-4181 (fax)
www.rkmc.com
pnsurdo@rkmc.com

---

**From:** Robert.Maier@bakerbotts.com [mailto:Robert.Maier@bakerbotts.com]
**Sent:** Monday, April 23, 2007 1:46 PM
**To:** Surdo, Peter N.
**Cc:** Neil.Sirota@bakerbotts.com
**Subject:** Honeywell International Inc., et al. v. Apple Computer, Inc., et al. (C.A. No. 04-1338-***)

Dear Pete:

Please see attached.
<<NYC_ECOPY.pdf>>
Thanks and best,
 Robert L. Maier
BAKER BOTTS LLP
30 Rockefeller Plaza

4/24/2007

Honeywell International Inc., et al. v. Apple Computer, Inc., et al. (C.A. No. 04-1338-***)   Page 2 of 2

New York, New York 10112-4498
Tel: (212) 408-2538
Fax: (212) 259-2538
E-mail: robert.maier@bakerbotts.com

---

**NOTICE: This transmittal is confidential.**

It may be a protected attorney-client communication or may otherwise be legally privileged.  If you are not the intended recipient or an agent of the same, you are hereby notified that you have received this transmittal in error.  In this case, any review, dissemination, distribution, or copying of this transmittal is strictly prohibited.  If you have received this communication in error, please notify us immediately by reply e-mail or by telephone (call collect at (212) 408-2538) and immediately delete this message and any attachments hereto.

4/24/2007

# EXHIBIT 20

SHEET 1

1

```
 1                THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   HONEYWELL INTERNATIONAL, INC.      :      CIVIL ACTIONS
     et al.                            :
 5                                      :
                    Plaintiffs,         :
 6                                      :
              v.                        :
 7                                      :
     AUDIOVOX COMMUNICATIONS CORP.,     :
 8   et al.                            :
                                        :      NO. 04-1337 (KAJ)
 9              Defendants.             :
     ----------------------------------
10   HONEYWELL INTERNATIONAL, INC.      :
     et al.                            :
11                                      :
                    Plaintiffs,         :
12                                      :
              v.                        :
13                                      :
     APPLE COMPUTER, INC.,  et al.,     :
14                                      :      NO. 04-1338 (KAJ)
                Defendants.             :
15   ----------------------------------
     OPTREX AMERICA, INC.,              :
16                                      :
                    Plaintiff,          :
17                                      :
              v.                        :
18                                      :
     HONEYWELL INTERNATIONAL, INC.      :
19   et al.                            :
                                        :      NO. 04-1536 (KAJ)
20              Defendants.
                            - - -
21
                    Wilmington, Delaware
22        Friday, July 21, 2006 at 11:03 a.m.
                 TELEPHONE CONFERENCE
23
                            - - -
24
     BEFORE:     HONORABLE KENT A. JORDAN, U.S.D.C.J.
25
                            - - -
```

SHEET 2

**2**

1    APPEARANCES:

2

3    ASHBY & GEDDES
     BY:  STEVEN J. BALICK, ESQ.

4         and

5    MORRIS NICHOLS ARSHT & TUNNELL
     BY:  JULIA HEANEY, ESQ.,

6         and

7    ROBINS KAPLAN MILLER & CIRESI, L.L.P
8    BY:  MARTIN R. LUECK, ESQ.,
          MATTHEW L. WOODS, ESQ., and
9         STACIE E. OBERTS, ESQ.
          (Minneapolis, Minnesota)

10             Counsel on behalf of Honeywell
11             International, Inc., and Honeywell
               Intellectual Properties, Inc.

12

13   YOUNG CONAWAY STARGATT & TAYLOR
     BY:  KAREN L. PASCALE, ESQ.

14

15        and

     OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
16   BY:  ALEXANDER E. GASSER, ESQ., and
          JOHN F. PRESPER, ESQ.
17        (Alexandria, Virginia)

18             Counsel for Optrex America, Inc.

19

20   BOUCHARD MARGULES & FRIEDLANDER
     BY:  JAMES GORDON McMILLAN, III, ESQ.

21             Counsel for Citizen Watch Co., Ltd.;
22             Citizen Displays Co., Ltd.

23   FISH & RICHARDSON, P.C.
     BY:  WILLIAM J. MARSDEN, ESQ.

24             Counsel for ID Tech;  International
25             Display Technology USA Inc.

**3**

1    APPEARANCES:  (Continued)

2

3    YOUNG CONAWAY STARGATT & TAYLOR
     BY:  MONTE' TERRELL SQUIRE, ESQ.

4         and

5    PAUL HASTINGS JANOFSKY & WALKER, LLP
6    BY:  PETER J. WIED, ESQ., and
          HUA CHEN, ESQ.
7         (Los Angeles, California)

8              Counsel for Quanta Display Inc.

9    SMITH KATZENSTEIN & FURLOW
     BY:  JOELLE ELLEN POLESKY, ESQ.

10

11        and

12   HOGAN & HARTSON, LLP
     BY:  ROBERT J. BENSON, ESQ.

13        (Los Angeles, California)

14             Counsel for Seiko Epson Corp.,
               Sanyo Epson Imaging Devices Corporation

15

16   RICHARDS LAYTON & FINGER
     BY:  WILLIAM J. WADE, ESQ.

17        and

18   TROP PRUNER & HU
     BY:  DAN C. HU, ESQ.
19        (Houston, Texas)

20             Counsel for Arima Display

21

22

23

24

25

**4**

1    APPEARANCES:  (Continued:

2

3    YOUNG CONAWAY STARGATT & TAYLOR
     BY:  JOHN W. SHAW, ESQ.

4         and

5    KENYON & KENYON
     BY:  ROBERT L. HAILS, ESQ.

6         (Washington, District of Columbia)

7         and

8    KENYON & KENYON
     BY:  JOHN FLOCK, ESQ.

9         (New York, New York)

10             Counsel for Sony Corporation, and Sony
               Corporation of America

11

12   POTTER ANDERSON & CORROON, P.C.
     BY:  PHILIP A. ROVNER, ESQ.

13

14        and

15   STROOCK & STROOCK & LAVAN LLP
     BY:  LAWRENCE ROSENTHAL, ESQ.,
16        MATTHEW W. SIEGAL, ESQ., and
          KEVIN ECKER, ESQ.
17        (New York, New York)

18             Counsel for Fuji Photo Film Co., Ltd.
               and Fuji Photo Film U.S.A. Inc.

19

20   FISH & RICHARDSON, P.C.
     BY:  THOMAS L. HALKOWSKI, ESQ.

21        and

22   FISH & RICHARDSON, P.C.
     BY:  JOHN T. JOHNSON, ESQ.
23        (New York, New York)

24             Counsel for Casio, Inc., Casio Computer
25

**5**

1    APPEARANCES:  (Continued)

2

3    POTTER ANDERSON & CORROON, LLP
     BY:  RICHARD L. HORWITZ, ESQ.

4         and

5    FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
     BY:  YORK FAULKNER, ESQ.
6         (Reston, Virginia)

7         and

8    FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
     BY:  ELIZABETH A. NIEMEYER, ESQ.
9         (Washington, District of Columbia))

10             Counsel for Toppoly Optoelectronics, Wintek
               Corp., Wintek Electro-Optics Corporation

11

12        and

     HOWREY, LLP
13   BY:  NELSON M. KEE, ESQ.
          (Washington, District of Columbia)

14             Counsel for Philips Electronics
15             North America Corp.

16

17   PAUL HASTINGS JANOFSKY & WALKER, LLP
     BY:  ELIZABETH L. BRANN, ESQ.
18        (San Diego, California)

19             Counsel for Samsung SDI

20        and

21   BAKER & McKENZIE, LLP
     BY:  KEVEN M. O'BRIEN, ESQ.
22        (Washington, District of Columbia)

23             Counsel for Boe-Hydis Technology

24        and

25

United States District Court - Honorable Kent A. Jordan

SHEET 3

6

```
1   APPEARANCES: (Continued)
2
        BAKER BOTTS, L.L.P.
3       BY:  NEIL P. SIROTA, ESQ., and
             ROBERT MAIER, ESQ.
4            (New York, New York)
5            Counsel for Hitachi, Ltd., Hitachi
             Displays, Ltd., Hitachi Display Devices,
6            Ltd., Hitachi Electronic Devices (USA),
             Inc.
7
8                     Brian P. Gaffigan
9                     Registered Merit Reporter
10
11
12                      - oOo -
13          P R O C E E D I N G S
14       REPORTER'S NOTE:  The following telephone
15   conference was held in chambers, beginning at 11:03 a.m.)
16          THE COURT:  Hi, this is Judge Jordan.  Who do I
17   have on the line?
18          MS. HEANEY:  Good morning, Your Honor.  It's
19   Julie Heaney for Honeywell.  I'm covering for Tom Grimm
20   this morning; and from Robins Kaplan, we have Martin Lueck,
21   Matthew Woods and Stacie Oberts.
22          MR. MORRIS:  Also, John Day for Honeywell in the
23   1337 action, Your Honor.
24          THE COURT:  All right.
25          MR. HORWITZ:  Good morning, Your Honor.  This
```

7

1   is Rich Horwitz at Potter Anderson for a number of the
2   defendants. With me for Boe-Hydis, Kevin O'Brien; for
3   Hitachi, Neil Sirota and Robert Maier; for Phillips, we
4   have Nelson Kee; for TPO and Wintek, York Faulkner and
5   Elizabeth Niemeyer; and for Samsung, Elizabeth Brann.
6          MR. ROVNER: Your Honor, this is Phil Rovner
7   for defendant Fuji Photo. With me on the line is Lawrence
8   Rosenthal, Matt Siegal, I believe, and Kevin Ecker.
9          MR. WADE: Good morning, Your Honor. It's Bill
10  Wade for Arima Display. With me on the phone is Dan Hu.
11         MR. HALKOWSKI: Good morning, Your Honor. This
12  is Tom Halkowski with Fish & Richardson on behalf of the
13  Casio defendants. With me on the line are John Johnson from
14  our New York office.
15         MR. SQUIRE: Good morning, Your Honor. This is
16  Monte' Squire from Young Conaway representing defendant
17  Quanta Display. With me on the line are Peter Weid and Hua
18  Chen from Paul Hastings in Los Angeles.
19         MS. PASCALE: Good morning, Your Honor, this is Karen Pascale
20  from Young Conaway for Optrex America, the plaintiff in the
21  1536 action. And on the line, my co-counsel from Oblon
22  Spivak is Alex Gasser and John Presper.
23         MR. MARSDEN: Good morning, Your Honor. William
24  Marsden from Fish & Richardson for defendant ID Tech.
25         MR. SHAW: Good morning, Your Honor. John Shaw

8

1   for defendant Sony Corporation. With me from Kenyon &
2   Kenyon, John Flock and Bob Hails.
3          MS. POLESKY: Good morning, Your Honor. Joelle
4   Polesky on behalf of Seiko Epson and Sanyo Epson Imaging
5   Devices. On the line is our co-counsel Robert Benson from
6   Hogan & Hartson.
7          MR. McMILLAN: Good morning, Your Honor. It's
8   Jay McMillan for Citizen Watch Company and Citizen Displays
9   Company.
10         THE COURT: Anybody else?
11         Well, we're here to deal with a few issues.
12  And if you've got me on speaker, you may need to pick up
13  because, particularly if you are going to be speaking, it
14  makes it difficult for me to keep the conference call on
15  track if I can't insert myself in the discussion. And if
16  you're moving papers around next to your telephone, that
17  also can cause some interference or noise that makes it
18  hard to hear.
19         Why don't we start with the first sort of
20  fundamental problem it looks like we're dealing with here
21  which is the assertion on both sides that discovery isn't
22  moving forward. I've got the defendants saying to me,
23  Honeywell won't give basic contention discovery with respect
24  to its infringement positions, nor will it provide discovery
25  without assurances that discovery won't be shared among

9

1   defendants. And I take it that the defendants disagree with
2   both those positions that they view Honeywell as having
3   taken. And on the other side, I have Honeywell arguing to
4   me that the defendants are just failing to provide some
5   basic information with respect to the same or similar
6   versions of accused devices.
7          So, let me start by asking Honeywell some
8   questions here. First, I assume, of course, that you have
9   read your opponents' correspondence. Who is going to be
10  speaking for Honeywell on this?
11         MR. LEUCK: Your Honor, this is Martin Lueck. I
12  had planned to address the issues of Honeywell's discovery
13  that we are seeking from the defendants. Mr. Woods has been
14  more involved in the Honeywell discovery going in the other
15  direction and is prepared to speak to that.
16         THE COURT: Well, Mr. Lueck, I'll give you first
17  crack. You've seen the opponents here come forward and say
18  you've essentially posed discovery that says tell us
19  everything that fits our patent. Even though you haven't
20  framed it in that particular language, you've taken the
21  elements of the claim, framed it as a discovery response
22  and served it on all manufacturers. And that the defense
23  says that's not what I had ordered. I had ordered that you,
24  in some fashion, tie the request for additional versions
25  to identified models. What is your response to that

SHEET 4

**10**

1  argument?
2  MR. WOODS: Your Honor, this is Matt Woods.
3  Mr. Lueck asked that I look into this particular one issue.
4  We believe, Your Honor, that the discovery that
5  Honeywell is asking for is narrowly tailored to go to the
6  heart of the infringement claim, to remove any burden upon
7  defendants and to essentially avoid any type of prejudice to
8  Honeywell, should discovery be limited in a way that could
9  eventually or could be argued down the road as effecting
10  some type of claim splitting and ultimately res judicata.
11  Honeywell has endeavored, in keeping with
12  the exchange that Your Honor had with Mr. Lueck back in
13  September, and the Court's October 7th order, to narrowly
14  define the discovery to those modules which are
15  substantially the same as those that were identified in
16  the prior correspondence that was submitted last year. The
17  patent, Claim 3 of the '371 patent in particular, has some
18  very discrete elements and is very straightforward. The
19  discovery that we are seeking is well known in the industry
20  to the extent that what we are asking for are modules that
21  have four basic elements.
22  THE COURT: Yes, I read your papers. So I
23  understand your position that, hey, we're just asking them
24  to tell us whether they've got things that meet these
25  elements. I mean that much is clear to me. I'm trying to

**11**

1  get you to respond to the assertion that this does not
2  square up with the obligation to tie your discovery requests
3  to specifically identified models. In other words, as the
4  defense reads my previous statements and orders, they say,
5  hey, judge, you told these people they're not allowed just
6  to say to us, in effect, tell us what infringes. They have
7  to identify a product and then they can ask about it. And
8  then we had a further discussion where you said, well, what
9  about later versions or other versions and how would you
10  identify such versions? And that the crafted attempt to
11  meet Honeywell's concern was to say if you can ask about
12  versions that are linked to identified models, that would
13  be okay. And, judge, they've gone outside that. Now all
14  they've done is propounded discovery that says tell us,
15  again tell us what you have that infringes.
16  That's the argument I'm trying to get you to
17  meet. So it's not helpful to me at this juncture for you to
18  characterize it as narrowly drawn, et cetera. I need you to
19  go back into the history of the case and tell me how what
20  you are asking for is actually based on what went before
21  today in the case.
22  MR. WOODS: Yes, Your Honor. And I will do so,
23  because I believe that history is exactly on point with what
24  brings us here today.
25  Back in September 9th, when we were having the

**12**

1  discussion with the Court on this very issue, Mr. Lueck had
2  an exchange with Your Honor with regard to the amount and
3  the type of discovery that we believed was appropriate. And
4  that exchange can be found on page 31 of the September 9th
5  transcript.
6  Your Honor specifically asked Mr. Lueck:
7  Well, when you say the same or similar, what do you mean?
8  Mr. Lueck explained exactly what he meant by that and,
9  incidently, or not coincidentally, that is the exact scope
10  of discovery that we have put in to written discovery. And
11  Your Honor said: All right. Does everybody understand the
12  discovery I'm telling them they're entitled to?
13  We took that exchange as it was then embodied in
14  the Court's order of October 7th and used that as the basis
15  for the written discovery.
16  One of the outstanding issues that have been
17  raised historically in the past is that the customer
18  defendants, those who are now stayed, were not in a position
19  to comply with the Court's October 7th order because, as I
20  believe Mr. Horwitz himself pointed out in the September
21  9th hearing, they didn't know. They didn't know what was
22  substantially the same, or at least they claimed not to.
23  And so we were faced with a situation where, based on the
24  exchange from the September 9th hearing and the Court's
25  order which recognized, as we view it, Your Honor, that

**13**

1  the LCD modules that are substantially -- that have
2  substantially the same structure are in fact relevant
3  to the analysis.
4  THE COURT: Did you --
5  MR. WOODS: The question then, of course, is
6  what does it mean to be substantially the same?
7  THE COURT: Yes, that's right. The question is
8  what does it mean to be substantially the same?
9  MR. WOODS: And, Your Honor, that is exactly the
10  criteria that were discussed on page 31 of the September 9th
11  hearing.
12  THE COURT: Right, and it seems to me that
13  maybe you're reading this without having read the previous
14  three pages of the transcript, which I have also re-read.
15  But let me have you hold right there for a
16  second, Mr. Woods. I'll give you another crack at this but
17  on this specific point about what the parties understood
18  coming out of that hearing, I understand, I think, what
19  Honeywell is saying it got from that September conference
20  and why it's framed its discovery as it has.
21  Let me have somebody -- not everybody. There
22  needs to be a designee on behalf of the defendants here to
23  address the defense perspective on this. Who is speaking
24  for the defense?
25  MR. HORWITZ: Your Honor, it's Rich Horwitz.

SHEET 5

**14**

1 I don't have too much to say, Your Honor,
2 because I think you framed it exactly. I think that what
3 Mr. Woods is doing is basically repackaging what we've
4 gone over a few times before to try to require us, the
5 defendants, to have the burden of going through all of
6 our products. And if you look at that transcript in its
7 entirety, you look at the October order and you look at what
8 Your Honor told us later, which we've also quoted to the
9 Court in my July 20th letter in May of 2006, it's clear from
10 our perspective, and I think from the record, that what the
11 Court was talking about was the prior and later versions and
12 not simply the language that parrots the claim language.
13 And what we have asked Honeywell to do is for those products
14 that it's already broken down, tell us how they infringe.
15 Point us to specific things that meet a specific limitation.
16 And to the extent we have been able to determine what an
17 earlier or later version is, that would inform us in making
18 that decision but it would not require us, which is what
19 they're doing now under what they say is removing the
20 burden, it's doing exactly the opposite, Your Honor. What
21 they want you to do is just give them everything, which
22 Your Honor has told them a number of times is not the way
23 discovery works.
24 THE COURT: All right. Go ahead, Mr. Woods.
25 Your crack.

**15**

1 MR. WOODS: Yes, Your Honor. I would disagree
2 with Mr. Horwitz for the following reasons: First of all,
3 the prior discussion was done in the context of changing the
4 focus from end products to modules. And if we're going to
5 look at the history of the case, there is a translation
6 function that needs to occur here because, as Your Honor
7 well knows, the first round or the first group of defendants
8 were in end product manufacturers and so Your Honor's
9 comments and the discussions were framed in that context.
10 The question becomes, clearly, there was a sense
11 that we were entitled to more discovery than just those that
12 were expressly identified. And the question then becomes to
13 what extent. Mr. Horwitz has said there is some kind of
14 mystery about our claim. We have endeavored to show and
15 have explained to them --
16 THE COURT: Well, hold on. We're going to talk
17 about your contention, the adequacy of your contention
18 interrogatory responses in a moment. And I'm rejecting,
19 I'll just tell you right now, I'm rejecting the notion that
20 the defense response to discovery depends upon how you
21 respond to their discovery. I'm not going to have any more
22 of this you go first stuff. I tried to say that to you
23 folks repeatedly. So those things aren't linked in my mind
24 and you don't have to argue about them being linked.
25 Right now, I'm just giving you your last

**16**

1 opportunity to explain to me why you think the way you
2 framed your demand for additional discovery from these folks
3 is correct in light of what we've had to say to each other
4 over the course of a few meetings and many, many months.
5 MR. WOODS: Your Honor, thank you. And we would
6 respectfully submit that if you look at that whole exchange,
7 as Mr. Horwitz was suggesting, there was clearly a sense,
8 as we believe we're entitled to under the law, to get some
9 discovery about modules other than those that have been
10 expressly located and expressly torn down and expressly
11 identified.
12 THE COURT: And now, when you say you are
13 entitled to under the law.
14 MR. WOODS: Correct.
15 THE COURT: Well, you know what?
16 MR. WOODS: Your Honor?
17 THE COURT: I guess I'm trying to pull from you
18 where you think this is linked to my instructions to you
19 folks that you had an obligation to tell people, look, this
20 is your product. We think it infringes. Here is why. You
21 know, we're accusing you of infringing. We've got something
22 that we believe infringes. That ought to be the baseline.
23 Everybody should have understood that from what I've said to
24 people repeatedly.
25 MR. WOODS: Correct.

**17**

1 THE COURT: Now, they are saying you have
2 unmoored your discovery from that foundation, and you have
3 heard Mr. Horwitz explain why they believe that. I'm trying
4 to get you to explain to me how it is you are rooted in that
5 foundation, because that is the foundational principle from
6 which I am operating.
7 MR. WOODS: Yes, Your Honor. The request we
8 have made absolutely is rooted in the foundation. We
9 identified a series of modules that have been torn down and
10 are accused of infringement. As we have told defendants,
11 those modules have the following criteria. They are back
12 lit. They have an LCD panel and they have two particular
13 arrays, at least one of which misaligned, and that is the
14 commonality amongst everything that has been identified and
15 torn down. And that is how we, Honeywell, understood the
16 term "substantially the same" to be implemented in the
17 Court's order.
18 So we have said to defendants we are asking you
19 to identify those modules which are substantially the same
20 as those which were expressly identified by model number
21 and the way we are defining "substantially the same" is as
22 Mr. Lueck and you discussed at the September 9th hearing on
23 page 31 where we are trying to provide objective criteria
24 for doing that analysis.
25 And so we have in fact moored our request for

SHEET 6

**18**

1  discovery not for some fishing expedition, not for
2  everything under the sun but rather take those modules that
3  have been expressly identified and look at these features.
4  And we are asking for everything that has those same
5  features.
6      THE COURT: Okay. I have your position and I
7  can only apologize to the parties because to the extent I've
8  been unclear before, it's not been intentional. I just
9  can't agree with Honeywell here because I'm bound, I think,
10  to agree that what you have done is to say, under the
11  rubric of "substantially the same," is to just recast as a
12  discovery request, tell me everything that infringes my
13  claim. And that is precisely that I have been trying to
14  avoid in this matter, because I view that as a reversal, a
15  basic reversal of the obligation of parties in litigation.
16      You know, maybe I'll turn out to be wrong about
17  this but I don't think you can go to somebody and say I'm
18  suing you and now tell me why I'm suing you, which is what
19  in effect this discovery demands. And I had attempted
20  previously to say, as clearly as I knew how but evidently
21  not clearly enough, you identify what the problem is and
22  they'll have to respond to that. And then Mr. Lueck, as a
23  skillful advocate, would have said, well, there may be
24  versions of this very same device which we can't say by
25  model number because if we're one letter off -- now, I'm

**19**

1  interpolating, not precisely quoting what he had to say. If
2  we're one letter off or one number off in the alphanumeric
3  sequence in the model number, they could say, well, you
4  didn't ask about that and that's not fair, and I was
5  agreeing well that isn't fair. You know, if you've got a
6  next generation of the very thing you've produced, the fact
7  that you can't name it with precision using the alphanumeric
8  sequence attached to that make or model number shouldn't
9  prevent you from getting discovery on that.
10      That was not intended to open the door for
11  you to say, now, and anything else that meets the claim
12  language, tell us about that, too. I don't view that as
13  proper discovery. I mean that turns the process on its head
14  and I'm just not having it.
15      So to the extent I left people thinking that was
16  the problem or the way I wanted you to proceed, I apologize
17  because it isn't. And I reject the assertion that this
18  raises res judicata problems for you or claim splitting. If
19  you sue them on a specific thing and in the course of
20  discovery, they don't tell you about a different product,
21  nobody I think in their right mind is going to say, well,
22  you gave up a claim against that accused product because
23  you never had the chance to accuse it. So I view that as
24  a red herring.
25      So I'm hoping this is clear enough in telling

**20**

1  people, Honeywell, if you want to sue people, fine, sue
2  them. But have in mind exactly what it is you're accusing
3  them of doing. And that means if you say they've produced
4  an accused device, you need to have some basis for saying
5  they have an accused device and ask them, okay, tell us
6  about this accused device. You can't say to them, look
7  across your product line and tell us everything that meets
8  our claim language.
9      So have I been clear enough? You could
10  disagree with me, obviously, that this is a correct or an
11  appropriate approach but at least you understand what I'm
12  getting at now, Mr. Lueck and Mr. Woods?
13      MR. WOODS: Your Honor, we certainly understand.
14  And I, with Your Honor's indulgence, just have to ask if I
15  could just say one thing, please, because we do respectfully
16  disagree with the Court about the concern about the
17  potential for res judicata here. We do recognize that there
18  is law out there like the Sharp case that has been cited
19  that talk about the standard for getting additional module
20  model numbers in an industry where models change.
21      We have proposed to the defendants we're
22  willing to buy their modules. We're willing to buy it.
23  Historically, you can't get these things any more and yet
24  they're still within the statute of limitations period. For
25  all these reasons, because respectfully we believe what Your

**21**

1  Honor is doing is having a tremendously prejudicial effect
2  upon Honeywell's claim, we would respectfully be allowed to
3  brief this issue. We understand where the Court is going.
4  Nevertheless, we feel obligated to create a record here.
5      THE COURT: You've got a record. You have a
6  record which is adequate for review. I don't think any
7  reviewing court is going to look at this and say you didn't
8  make your position clear. I don't need any more paper on
9  this. You don't need to persuade me that you have a
10  position and you think the position is well founded. My job
11  is not to say to you, to every party that has got a position
12  well, okay, go ahead and give me another 40 pages of paper
13  about it. We have been over this now. This is at least the
14  third time I have taken a crack at this. And I've done it
15  in print and I've done it orally and I just don't need more
16  paper on it.
17      It could be I'm wrong. I certainly get
18  reversed; to my chagrin, I do; but I don't think you've got
19  the better of it. I think I understand the argument that
20  you've made and what I'm telling you is you don't have the
21  better of the argument in my view. So let's move forward
22  with the case you've got.
23      MR. WOODS: Yes, Your Honor. One final point of
24  clarification.
25      You had asked if we understood. Is it Your

SHEET 7

**22**

1  Honor's view that Honeywell is entitled to any discovery
2  beyond those modules expressly identified? And if so,
3  could Your Honor clarify for us exactly where that goes?
4        THE COURT: I'm not sure I can clarify it any
5  more than I have. And I'll have to confess to you that
6  we're in a region where apparently I haven't been clear
7  before. I have tried to say, and, you know, the fact is I
8  don't know that I can say it any better than I just said it,
9  which is going to be in this transcript and you can take a
10  look at it.
11        The point is to avoid people having to dodge
12  behind a particular sequence of numbers associated with an
13  alphanumeric make or model identification. You wanted to
14  know initially, my recollection is, you were trying to make
15  sure that they didn't dodge appropriate discovery by having
16  a next generation of a model that you had identified but
17  which you couldn't identify with precision because you
18  didn't happen to know that particular model number, whatever
19  it is.
20        That's the kind of thing that I think is fairly
21  within the ambit of further discovery. You identify some-
22  thing specific and then you can inquire about generational
23  changes or additions to something that you've identified.
24  But you can't take that which I have tried to give you as a
25  fair ambit beyond a specific piece of hardware that you know

**23**

1  about and turn it into what you have, which is here is our
2  claim language. Tell us what you've got that infringes.
3  That's what you have done in effect. I agree with the
4  defendants, that's what you have done in effect, and that's
5  what I'm telling you you can't do. So please take what I
6  have given you, do your best with it.
7        I'm expecting the defendants to play fair on
8  this. Mr. Horwitz, do you understand what I'm asking?
9        MR. HORWITZ: Yes, sir.
10        THE COURT: Okay. Well, are you speaking for
11  the defense on thi point?
12        MR. HORWITZ: I think if anybody wants to chime
13  in, they can chime in now. But I think what you said is
14  consistent with what you have told us before.
15        THE COURT: All right. Then move forward with
16  what I'm telling you now and let's not go back over this yet
17  again. Let's put it to bed and move forward.
18        All right. Now, we do have an argument about
19  Honeywell's responses to contention interrogatories and
20  also argument about conditioning discovery responses on
21  confidentiality. You've heard what the defense has said
22  about that.
23        And again, I don't know whether this is yours,
24  Mr. Woods or Mr. Lueck. Whoever it is, could you please
25  respond to the assertion that you're just not giving claim

**24**

1  discovery the way you are obligated to.
2        MR. WOODS: Your Honor, there are several issues
3  there that have been raised.
4        With regard to claim construction, or contention
5  discovery, we have provided with the defendants with the
6  generalized information that we can have right now that
7  would avoid waiving the privilege at this point. We have
8  asked for. At the earliest point in time, we served the
9  defendants with the discovery upon them to get the very
10  documents upon which we can supplement our contentions.
11  And it was only later that the defendants served their
12  contention discovery. And Your Honor has now, we have clear
13  direction with regard to getting the documents, and we have
14  tried to tell the defendants provide us the documents and
15  then we will supplement our contentions.
16        Everyone knows that we have identified modules
17  and the basis for infringement is those modules have LCD
18  panels, they have a back light and they have two lens
19  arrays, at least one of which is misaligned. There is no
20  mystery here. What we have asked for, and what we have been
21  asking for since March of this year, has been the documents
22  from the defendants to which we can point to basically prove
23  up our case. And we are certainly prepared to do that as
24  soon as we can provide it, as soon as that documentation is
25  provided.

**25**

1        With regard to protective order issues, our
2  position is and has always been we asked for documents and
3  all we're asking for is a mutual exchange of documents.
4  The parties have been working on a protective order.
5  Candidly, I'm not sure I know what protective order is at
6  issue because we certainly understand the local rule of the
7  court and the parties are working on a more formalized
8  protective order, but we are not withholding any documents
9  from a protective order standpoint. Rather, we're saying,
10  defendants, you did not produce documents to us. Can't we
11  just agree upon a mutual exchange of documents? Because it
12  seems only fair that since we were the first ones to submit
13  document requests, that the parties, at a very minimum,
14  should do a mutual exchange. And that is acceptable to us.
15        THE COURT: All right. Who has got this one for
16  the defendants?
17        MR. HORWITZ: Your Honor, this is Rich Horwitz
18  again.
19        I don't understand what contentions Mr. Woods
20  says they've already given us. We've given you some exam-
21  ples and basically they said you meet the claim limitations
22  without anything specific and they have products that they
23  have broken down and that they have said infringe. And what
24  the defendants are asking is for them to tell us the basis
25  of that claim of infringement.

SHEET 8

**26**

1  It's not privileged. We're not asking them to
2  give us the memo that they wrote to the client that says we
3  think these 10 products infringe and here is why and this
4  is a stronger argument and this is a weaker argument. We
5  don't need that. We're not entitled to the work product.
6  What we are entitled to are the factual contentions, the
7  bases of alleged infringement, and that is what we're not
8  getting.
9      THE COURT: All right. Now, stop there.
10     Go ahead, Mr. Woods. Respond to that, please.
11     MR. WOODS: Your Honor, we provided. And I
12  provided it just a few minutes ago and I can provide it
13  again.
14     THE COURT: Well, wait, wait, wait.
15     MR. WOODS: In our view, the claim is very
16  straightforward.
17     THE COURT: Well, stop, Mr. Woods, because I
18  don't think you're answering the point here.
19     MR. WOODS: Okay.
20     THE COURT: I don't think anybody is disagreeing
21  with you that you said what you view as the essential
22  elements of the claim. And now what they are telling me is,
23  look, as to -- pick a defendant. As to Apple -- well, pick
24  a manufacturer defendant. Select a name. Whoever it is.
25     MR. WOODS: I'll pick Seiko Epson.

**27**

1      THE COURT: Fine, Seiko Epson. That Seiko Epson
2  says to you, okay, you've accused my product XYZ of
3  infringing. What is your basis for saying that that product
4  infringes? And then it's incumbent upon you as a matter of
5  contention to say, well, one of the claims is that there be
6  a back lit aspect. And here, in your product, is a back lit
7  aspect. It's this piece of hardware. It has two lens.
8  Yours has two lens. We can identify those there, this and
9  this. And one of them is misaligned in the product we took
10  from you. This is how. We say that this one or both are
11  misaligned.
12     I mean I understand that to be what the defense
13  is saying. That you've got to take it out of the abstract,
14  which is claim language, and apply it to devices to say, and
15  here is why we say your device infringes. That is our
16  contention about the facts of your thing that meet our claim
17  limitations. That's what I understand them to be saying
18  you're declining to do at this point.
19     MR. WOODS: No, Your Honor. On the contrary, we
20  have done that. We have told them that every single module
21  that we have accused has those. Now, the question is, how
22  do we prove that? We have a module. We have a module we
23  tore it down.
24     THE COURT: Did you identify things? I mean
25  when you say we've told them all of them infringe, have you

**28**

1  said to them here is a model, here is how it infringes?
2  These are the limitations of the claim and here is how this
3  model infringes? That is what they're saying you haven't
4  done. Are you telling me you have done that?
5      MR. WOODS: No, no, Your Honor. We have told
6  them this as a general matter. We have also agreed to
7  provide supplementation on that. What we're asking is, is
8  give us the assembly drawing so we can point to them. So we
9  can say -- all right. So, for example, let's take a Seiko
10  Epson module. There will be assembly drawings that show
11  exactly where those are, all the elements. And all we're
12  saying is give us the documents so we have a common means
13  of discussion so that we can point to the very thing that
14  is the lens array.
15     THE COURT: All right. Mr. Horwitz, what is
16  your response to the assertion that they're happy to respond
17  but you won't give them basic documentation that will allow
18  a foundation for discussion with precision?
19     MR. HORWITZ: Well, a couple of things, Your
20  Honor. And then maybe Robert Benson, who represents Seiko
21  Epson who has been involved directly in this back and forth
22  of Mr. Woods, may want to chime in.
23     But I think that even without those documents --
24  and I can tell you. Mr. Woods talked about document
25  production. I didn't get there yet and I can tell you

**29**

1  about that. But even without the document, they shouldn't
2  be able to give up the basis on which they made the claims
3  from the broken down module. That information isn't
4  privileged. They should have given that to us when they
5  responded the first time. They should give it to us now.
6      THE COURT: All right. Well, go ahead and pass
7  the ball to your colleague then.
8      MR. BENSON: Okay. This is Robert Benson. And
9  just reiterating what Mr. Horwitz was saying there, we did
10  serve a couple of interrogatories on Honeywell asking for
11  the basis of its infringement contentions and the details of
12  its analysis of those modules it has already torn down.
13     We understand that Honeywell has identified at
14  least seven or eight distinct model numbers and I believe
15  they tore down more than 10 different physical modules and,
16  on that basis of that tear down, have accused the modules
17  of infringement.
18     We asked them state the basis for that. State
19  the details of your analysis. They came back and said we
20  can't do that because it's privileged because it was our
21  prefiling investigation. And what we are asking for I think
22  in level of specificity is what Your Honor suggested a
23  moment ago, which is you broke down this module. Which part
24  of this module are you contending meets the claim limitation
25  "light source?" Which component in this module are you

SHEET 9

30

1   contending is the lens array?  We asked them what is the
2   degree of misalignment you measured?  They said I can't tell
3   you that either.
4           THE COURT:  All right.  Good enough.  Look,
5   here is the short of it.  Once again I'm trapped in the
6   "you go first" game that you folks are playing.  It's got
7   to stop.
8           Honeywell, you are obligated to answer
9   contention interrogatories even early in the case.  That's
10  why in the trial management order that I put out; and I
11  believe I put out in this case, because I'm pretty sure I
12  put it out in all of my cases; you've got an obligation.  I
13  encourage the parties to file contention interrogatories
14  early and I require answers early; which is not to say that
15  you can't amend your answer as you get greater detailed
16  information, as they come forward with spec drawings that
17  you asked for; that you can't supplement, if you think
18  you need to, contention interrogatory response; or if you
19  think your response is adequate, that you can't then use
20  that other information later in the trial if you think it
21  bolsters the contention interrogatory response you took
22  before.  But what you can't do is to hang back and say
23  I'm not telling you until you tell me.  That isn't how it
24  works.
25          So to the extent the defense is complaining that

31

1   you won't tell them, look, in response to your request for
2   how Model XYZ infringes, here is our response.  It infringes
3   in the following way:  Claim I says you've got to have a
4   light source.  In this XYZ model, the light source is A,
5   technical description, the best you can give it.  Whatever
6   you are able to do.
7           In short, it's certainly not work product
8   protected that you have a view about why they infringe.
9   Give them your view about how it is the things they make
10  infringe your patent.  You're obligated to do it.  That is
11  what contention interrogatories are about.  So that ought
12  to be clear.  I hope it's clear now.
13          And on the defense side, I'm not sure why
14  you're not giving them drawings they're asking for; but if
15  they've got an accused device and they have identified it
16  as an infringing device, and they're asking for background
17  information about it, including technical drawings, I'm not
18  sure what possible reason you could have for not giving it
19  to them.  Give it to them.
20          Does that iron you out the problem?  Is there
21  still a problem here with that instruction given, Mr. Woods?
22          MR. WOODS:  No, Your Honor.
23          THE COURT:  Mr. Horwitz?
24          MR. HORWITZ:  No, Your Honor.
25          THE COURT:  Okay.  Well, then I'm nonplussed

32

1   that it requires a court's intervention to deal with this
2   which seems to me to be a pretty basic discovery point
3   in patent cases but I'm glad to hear it's resolved.
4           Okay.  Now we had some other letters that were
5   flying around that indicated there may be some additional
6   problems that need to be addressed.
7           MR. HORWITZ:  Your Honor, this is Rich Horwitz.
8           There was another category of information that
9   we included in the general defendants' letter and that
10  relates to information on Honeywell's product.  Could I
11  address that now before we move on to the defendants'
12  specific issues?
13          THE COURT:  That's fine.
14          MR. HORWITZ:  Your Honor, we think that they
15  should be required to produce the information that we
16  requested about their own products.  It's difficult to
17  just take their word for it when they say that they don't
18  infringe.  But even beyond that, in the letter that came
19  from Mr. Grimm yesterday, in response, all they say is that
20  they didn't manufacture anything embodying the claims of the
21  '371 patent and obviously they could have sold or offered to
22  sell something that embodied the claims of the '371 patent.
23  The information on their product is important to us for a
24  number of reasons, including marking.  If they manufactured,
25  sold anything in the market, that obviously has implications

33

1   in this case.  Honeywell also has been in this business for
2   a long time.  Some of their own material might be prior art
3   for the '371 patent.
4           Even if they're right, Your Honor, that none of
5   their products are embodiments, the '371 patent, that in
6   and of itself is relevant to a lack of commercial success
7   argument that we would make.  If they didn't use it, how
8   good could it be?  And in that context, we would be
9   entitled to information, possibly in a summary fashion, on
10  whatever sales they made of their own products that didn't
11  incorporate the '371 patent.
12          So those are the reasons why we think they can't
13  just stonewall us as they have done so far on that issue.
14          THE COURT:  Who has got this for plaintiffs?
15          MR. WOODS:  I do, Your Honor.  Matt Woods here.
16          THE COURT:  Okay.
17          MR. WOODS:  There has been no stonewalling at
18  all.  This case is about portable electronics consumer
19  goods.  Honeywell has never been, and is not now, a
20  participant in that industry.
21          As the defendants all well know through detailed
22  interrogatories answers, the invention of the '371 patent
23  came out of work on a cockpit display for Boeing, the 777
24  Boeing aircrafts, as the defendants also know through
25  detailed interrogatory answers.  There, the decision was

United States District Court - Honorable Kent A. Jordan

SHEET 10

**34**

1   made not to incorporate the invention into that display.
2   Now, Honeywell has agreed to produce all the
3   documents regarding the invention process. They have also
4   agreed to produce all the documents even on a broader
5   category regarding this cockpit display project so that,
6   in fact, the defendants can verify and test Honeywell's
7   allegations.
8   So really we view this as a nonissue. And
9   we're prepared to produce the documents. I think what we're
10  hearing from Mr. Horwitz, well, we're entitled to basically
11  get everything from Honeywell. Well, you know, you're
12  suggesting we're producing all the documents that are
13  related to this effort. We're certainly producing all the
14  prior art that we're aware of. And we're just saying, look,
15  everything else I think falls in the realm of a fishing
16  expedition because there is no definition to it.
17  THE COURT: Mr. Horwitz, do you want to respond
18  to the assertion that to the extent they've got anything
19  responsive, they're giving it to you?
20  MR. HORWITZ: Well, I guess it depends on what
21  they believe is responsive, Your Honor, and what we believe
22  is responsive. I'm not sure what else to say. We think
23  it's a broader inquiry than they think it is.
24  THE COURT: Well --
25  MR. ROSENTHAL: Your Honor, this is Lawrence

**35**

1   Rosenthal for Fuji. Could I make an observation here?
2   THE COURT: Yes, you can quickly, but it's got
3   to be -- yes, go ahead.
4   MR. ROSENTHAL: I think Mr. Woods said it all
5   when he said, in one breath, this is about portable devices,
6   and in the next breath, but the patent is all about cockpit
7   displays.
8   I think while their discovery is focused on
9   portable devices, we're entitled to take discovery on
10  cockpit displays because that was the focus in 1990 when
11  the invention was, apparently, it was a practice given to a
12  Japanese company. That much we know.
13  THE COURT: Well, hold on just a second.
14  Mr. Woods, are you suggesting that they can't
15  take discovery into the development of the invention,
16  itself?
17  MR. WOODS: Absolutely not, Your Honor.
18  THE COURT: Yes.
19  MR. WOODS: Of course, they can.
20  THE COURT: Well, I didn't think you were.
21  Looks, it sounds to me like this isn't a dispute that is
22  much of a dispute. You guys need to get back and talk to
23  each other sensibly about this.
24  I hear the plaintiff saying they're giving you
25  information about the development of the invention, prior

**36**

1   art to the extent they know about it, and if they've got
2   information or products associated with the invention,
3   you're getting them.
4   Have I heard you right, Mr. Woods?
5   MR. WOODS: That is correct, Your Honor.
6   THE COURT: Well, then, I don't know what it
7   is exactly that the defendants are complaining about
8   except you think maybe there is something that they're not
9   giving you, but your unformed and, at this point at least,
10  unsubstantiated concern that you are not getting something
11  you are entitled to isn't a basis on which I can wade in,
12  but they're telling me you are getting it and I'm not
13  hearing a basis for disputing that they're giving you what
14  they have that is associated with the development of the
15  patent and whatever product they have which itself would
16  practice the patented invention. So that disposes of that.
17  Maybe at some point you will have something more
18  to tell me, and I'm not obviously closing the door on any
19  party from further discovery discussions to try to work out
20  issues or concerns that anybody has. Nor am I saying you
21  can't come back to me if you have a well founded concern
22  that I can help you with, but this doesn't fit that
23  description.
24  Mr. Horwitz, I didn't mean to blow past your
25  letter without having covered things you needed to be

**37**

1   covered. Have we done that now, sir?
2   MR. HORWITZ: I think we have, Your Honor. Yes.
3   THE COURT: Well, then there were other concerns
4   that were raised. In particular, the issue about selecting
5   the role of lead defendant. So I'm shifting off discovery
6   at this point. Let me just say does anybody else have a
7   discovery issue that they think needs to be surfaced and has
8   been the subject of a letter and is properly raised on this
9   call and I haven't addressed it yet?
10  (Pause.)
11  THE COURT: Okay. I'm hearing nothing.
12  MR. HAILS: Your Honor, this is Robert Hails
13  for Sony. We did have one letter directed to the license
14  defense issue that is unique to us.
15  THE COURT: All right.
16  MR. HAILS: And, real quickly, this is just an
17  issue where we're trying to get information from Honeywell
18  to demonstrate that there is an honest dispute over the
19  scope of the license. Again, this is defining how many
20  products are going to be properly concerned at issue in
21  this particular case. We have a license for our client in
22  which Honeywell agreed not to sue us on camcorders and that
23  term is defined on the license, and then they sued us on
24  camcorders.
25  THE COURT: Well, let me stop you there because

SHEET 11

**38**

1   this is memorialized on a July 20th letter from Mr. Shaw;
2   right?
3        MR. HAILS: That's right.
4        THE COURT: Honeywell, did you get a chance to
5   respond to this?
6        MR. WOODS: No, we did not, Your Honor.
7        THE COURT: Well, this one isn't properly before
8   me today. I've got a procedure for this and it requires me
9   to give both sides a chance to get their oar on the water
10  before we get on the phone.
11       MR. HAILS: Okay.
12       THE COURT: So with that understanding, is there
13  any other discovery dispute where people have had a chance
14  to weigh in that I have, not for lack of trying, but I have
15  overlooked at this point and not addressed?
16       (Pause.)
17       THE COURT: Okay. Then let's go ahead and move
18  to the lead counsel phase.
19       MR. ROVNER: Your Honor, this is Phil Rovner.
20  I'm going to handle this for the manufacturer defendants.
21       And I'm bringing to Your Honor's attention my
22  letter to the Court of July 14th and Honeywell responded by
23  letter on this issue on July 20th. I just want to make sure
24  that --
25       THE COURT: I have those.

**39**

1        MR. ROVNER: Okay. On behalf of the
2   manufacturer defendants, we have really just one goal here.
3   We want to make sure that we put our best foot forward
4   come trial on the first trial on the issues of validity and
5   enforceability. That drives what we had proposed, and
6   it's very simple. And it's identified on page two of our
7   letter where anything can happen with respect to claim
8   construction. The group that we want to try this first
9   phase, we want to make sure that they have the best interest
10  in leading the group effort on those issues.
11       THE COURT: Mr. Rovner, if I have understood
12  you right, your basic contention is, hey, this isn't a stay
13  against anybody so up through discovery, all of these
14  defendants, all these manufacturer defendants, they're in
15  the harness and they all are responsible for pulling so any
16  one of the group could be in the mix and they should be up
17  to speed because they are all in it through discovery.
18  Right?
19       MR. ROVNER: Yes, that is absolutely our point.
20  And Honeywell's proposal might have some merit if the
21  discovery was limited to the phase one trial issues, but
22  it's not and so there is no reason to name a lead counsel
23  that would come from this five defendant trial group.
24       I think they're just unnecessarily linking these
25  things. We believe the best thing to do -- and basically

**40**

1   it's in response to our initial exchange of letters where
2   Honeywell said we don't want claim construction to occur
3   in the May time frame. We had sought to move up claim
4   construction just so everybody would know the five
5   defendants sooner rather than later.
6        THE COURT: Well, why don't we just say, if your
7   concern is the ground could change, which is the concern
8   have you expressed in your letter, and everybody is going to
9   be equally up to speed on this, maybe the right thing to do
10  is just to hold off on selecting lead counsel until after
11  claim construction on the schedule we've currently got.
12       MR. ROVNER: Well, that certainly is an option,
13  Your Honor. That is certainly something we would, unless
14  someone believes differently, we would be in favor of. We
15  were just trying to meet Honeywell halfway by moving claim
16  construction up, because not only would we be able to name
17  the five defendants earlier under our new proposal, but it
18  would eliminate one of their issues that they have sought to
19  shield discovery from, which is we need claim construction
20  rulings, for example, to give you our contentions of
21  infringement under the doctrine of equivalents.
22       So we thought that that would be a compromise
23  proposal but, yes, we would accept just holding back on
24  naming of the defendants and trial defendants until claim
25  construction under the present schedule.

**41**

1        MR. ROSENTHAL: Your Honor, this is Lawrence
2   Rosenthal again.
3        If I could address one practical consideration.
4   And that is in the current schedule, the likely date of the
5   Court rendering a decision on claim construction steps on
6   the preparation of the pretrial order period, and that was
7   one of our concerns from the get-go when we proposed moving
8   it up three months in order to give time for Your Honor to
9   rule, and then the products to be selected, and then for
10  them to carry the ball on the preparation of the pretrial
11  order which is the key first step in a trial.
12       THE COURT: Yes. Understood.
13       All right. Mr. Woods, is this one yours or is
14  this one Mr. Lueck?
15       MR. WOODS: No, I get this one, too, Your Honor.
16       THE COURT: All right. You are getting heavy
17  lifting today.
18       MR. WOODS: We're amenable to what the Court
19  suggested. I'm just waiting for the identification of the
20  lead defendants until after claim construction as set forth
21  in the original scheduling order.
22       THE COURT: What if that ends up shifting some
23  dates? Because I hear what Mr. Rosenthal saying, and I
24  presume Mr. Rovner would agree with it and other defendants,
25  that you've got to get claim construction in sufficient time

SHEET 12

**42**

1  for people to know. Well, not claim construction. You have
2  to have your lead defendants selected in time for them to
3  participate meaningfully in the preparation of the pretrial
4  order.
5       MR. WOODS: Your Honor, the defendants were --
6  when the defendants were potentially all on the hook back
7  in March, they had all agreed to the schedule and the dates
8  as originally implemented. And so it is it has only been
9  now where there is the potential that some subset might go
10  first that this is becoming the case. Candidly, I'm a
11  little concerned about the logistical issues of conducting
12  discovery, including Honeywell's time to conduct full dicovery
13  in connection with claim construction. And some of those
14  issues are identified in the letter, including the fact that
15  we are apparently going to have to go to the Far East for a
16  lot of these depositions and have to wrangle with embassies
17  and such because defendants are unwilling to bring their
18  witnesses over here. So I am concerned about handling any
19  erosion or compression of the discovery period prior to
20  claim construction. That could potentially prejudice
21  Honeywell in a situation where Honeywell is being forced
22  to go over to the Far East.
23       THE COURT: Here is the short of it. I am not
24  moving claim construction up. I think Honeywell's concerns
25  are well founded, although I will say this, Honeywell.

**43**

1  If you think you will have to go through international
2  conventions or you are going to have to take steps
3  associated with getting embassy or consulate space to handle
4  depositions, you should be, I hope you are moving on it
5  now because what will leave me less than sympathetic is to
6  hear, well, we tried for three months to negotiate with
7  the other side for them to bring people and it's then we
8  started making these arrangements. I think you need to
9  assume, sad though it may be, that you have people on the
10  other side who won't make it easy for you and do your
11  arrangement. And then if you can go ahead and get people
12  over to the United States and that is helpful to you, great.
13  But otherwise, you have taken the steps you need to take.
14  Are you with me?
15       MR. WOODS: Very much, Your Honor. And I can
16  represent to you that we have been working on that issue.
17       THE COURT: All right. Fine. Well, I'm not
18  moving claim construction up. I understand the concern that
19  Mr. Rosenthal has raised but you know what? I think that in
20  part is a function of you folks being reluctant to go ahead
21  and pick your five. Now, there are some practical problems
22  to pick in the five but I agree with Mr. Rovner that
23  everybody should be moving ahead as if they were going to
24  trial. All of you should be moving ahead as if you were
25  going to trial until we have that identified set of five.

**44**

1  And what I'm hearing from the defendants, well, we just
2  don't think we can pick five right now. Okay? Then you're
3  all getting ready for trial as if you were going to trial
4  and that's the way we'll handle it. If we come to the
5  preparation of the pretrial order and that means that you
6  are going to have to do some hurry up there, I guess that
7  means you will have to do some hurry up.
8       MR. HAILS: Okay. Thank you.
9       THE COURT: The schedule is set. It was set
10  in consultation with everybody. I'm not going to have an
11  inability to select the five now throw this thing off. It
12  has been a monumental task, and I don't just mean for the
13  court. Don't get me wrong. I'm not suggesting I've done
14  the heavy lifting. You folks have all been engaged in what
15  is a monumental task, which is trying to get this case to a
16  point where we can get at least the first piece of it on
17  for trial. And I'm just not having it come off the tracks.
18  It's staying on the schedule that it's on. We're moving
19  ahead.
20       All right. Having said that, I still hope
21  that people are open to the idea of identifying the lead
22  defendants earlier rather than later, but I won't make you
23  do it before claim construction if you really think that
24  makes it impossible.
25       Okay. Are there any other issues that we need

**45**

1  to address while we're all on the line together?
2       There is a letter here where Seiko was asking
3  for leave to fully brief something, if I have understood the
4  letter correctly. Am I right?
5       MR. BENSON: Your Honor, we were raising that
6  at this juncture because it potentially intersected with
7  the discovery issues, but I think that has been inherently
8  resolved insofar as it relates to discovery.
9       THE COURT: All right. Fine. Good. Then we'll
10  let that go.
11       (Computerized Voice): Joining conference.
12       THE COURT: You're a little late, whoever has
13  just joined.
14       (Unidentified Speaker): My apologies, Your
15  Honor. I got dropped.
16       THE COURT: Last, but not least, I got a couple
17  letters directly from Mr. Benson on behalf of Seiko, and I
18  would just ask that you make sure you submit things through
19  local counsel, if you would.
20       MR. BENSON: Thank you, Your Honor. We did
21  recognize that and tried to correct it.
22       THE COURT: Okay. Now, Mr. Woods, is there
23  anything else from the plaintiffs' perspective that we need
24  to take up on this call, sir?
25       MR. WOODS: Nothing, Your Honor.

```
SHEET 13
                                                    46

 1          THE COURT:  Okay.  Mr. Horwitz or Mr. Rovner,
 2   you folks have done most the speaking for the defense.
 3   Anything?
 4          MR. HORWITZ:  I don't think so, Your Honor.
 5          MR. ROVNER:  No, Your Honor.
 6          THE COURT:  Okay.  Does anybody else on the
 7   defense side feel like you need to weigh in?
 8          (Pause.)
 9          THE COURT:  All right.  Well, then thanks for
10   your time today, and I hope we're able to work out other
11   things going forward and things stay on track.  Talk to you
12   later.
13          (The attorneys respond, "Thank you, Your
14   Honor.")
15          (Telephone conference ends at 12:05 p.m.)
16
17
18
19
20
21
22
23
24
25
```

United States District Court - Honorable Kent A. Jordan

**'**

'371 [7] - 10:17, 32:21, 32:22, 33:3, 33:5, 33:11, 33:22

**0**

04-1337 [1] - 1:8
04-1338 [1] - 1:14
04-1536 [1] - 1:19

**1**

1 [1] - 31:3
10 [2] - 26:3, 29:15
11:03 [2] - 1:22, 6:15
12:05 [1] - 46:15
1337 [1] - 6:23
14th [1] - 38:22
1536 [1] - 7:21
1990 [1] - 35:10

**2**

2006 [2] - 1:22, 14:9
20th [3] - 14:9, 38:1, 38:23
21 [1] - 1:22

**3**

3 [1] - 10:17
31 [3] - 12:4, 13:10, 17:23

**4**

40 [1] - 21:12

**7**

777 [1] - 33:23
7th [3] - 10:13, 12:14, 12:19

**9**

9th [6] - 11:25, 12:4, 12:21, 12:24, 13:10, 17:22

**A**

a.m [2] - 1:22, 6:15
able [5] - 14:16, 29:2, 31:6, 40:16, 46:10
Absolutely [1] - 35:17
absolutely [2] - 17:8, 39:19
abstract [1] - 27:13
accept [1] - 40:23
acceptable [1] - 25:14
accuse [1] - 19:23
accused [10] - 9:6, 17:10, 19:22, 20:4, 20:5, 20:6, 27:2, 27:21, 29:16, 31:15
accusing [2] - 16:21, 20:2
action [2] - 6:23, 7:21
ACTIONS [1] - 1:4
additional [4] - 9:24, 16:2, 20:19, 32:5
additions [1] - 22:23
address [5] - 9:12, 13:23, 32:11, 41:3, 45:1
addressed [3] - 32:6, 37:9, 38:15
adequacy [1] - 15:17
adequate [2] - 21:6, 30:19
advocate [1] - 18:23
ago [2] - 26:12, 29:23
agree [5] - 18:9, 18:10, 23:3, 25:11, 41:24, 43:22
agreed [5] - 28:6, 34:2, 34:4, 37:22, 42:7
agreeing [1] - 19:5
ahead [4] - 14:24, 21:12, 26:10, 29:6, 35:3, 38:17, 43:11, 43:20, 43:23, 43:24, 44:19
aircrafts [1] - 33:24
al [5] - 1:4, 1:8, 1:10, 1:13, 1:19
Alex [1] - 7:22
ALEXANDER [1] - 2:16
Alexandria [1] - 2:17
allegations [1] - 34:7
alleged [1] - 26:7
allow [1] - 28:17
allowed [2] - 11:5, 21:2
alphanumeric [3] - 19:2, 19:7, 22:13

ambit [2] - 22:21, 22:25
amenable [1] - 41:18
amend [1] - 30:15
AMERICA [1] - 1:15
America [4] - 2:18, 4:10, 5:15, 7:20
amount [1] - 12:2
analysis [4] - 13:3, 17:24, 29:12, 29:19
AND [1] - 1:2
Anderson [1] - 7:1
ANDERSON [2] - 4:12, 5:2
Angeles [3] - 3:6, 3:12, 7:18
answer [2] - 30:8, 30:15
answering [1] - 26:18
answers [3] - 30:14, 33:22, 33:25
apologies [1] - 45:14
apologize [2] - 18:7, 19:16
APPEARANCES [5] - 2:1, 3:1, 4:1, 5:1, 6:1
Apple [1] - 26:23
APPLE [1] - 1:13
apply [1] - 27:14
approach [1] - 20:11
appropriate [3] - 12:3, 20:11, 22:15
argue [1] - 15:24
argued [1] - 10:9
arguing [1] - 9:3
argument [9] - 10:1, 11:16, 21:19, 21:21, 23:18, 23:20, 26:4, 33:7
Arima [2] - 3:20, 7:10
arrangement [1] - 43:11
arrangements [1] - 43:8
array [2] - 28:14, 30:1
arrays [2] - 17:13, 24:19
ARSHT [1] - 2:5
art [3] - 33:2, 34:14, 36:1
ASHBY [1] - 2:2
aspect [2] - 27:6, 27:7
assembly [2] - 28:8, 28:10
assertion [8] - 8:21, 11:1, 19:17, 23:25, 28:16, 34:18
associated [4] - 22:12, 36:2, 36:14, 43:3

assume [2] - 9:8, 43:9
assurances [1] - 8:25
attached [1] - 19:8
attempt [1] - 11:10
attempted [1] - 18:19
attention [1] - 38:21
attorneys [1] - 46:13
AUDIOVOX [1] - 1:7
avoid [4] - 10:7, 18:14, 22:11, 24:7
aware [1] - 34:14

**B**

background [1] - 31:16
BAKER [2] - 5:21, 6:2
BALICK [1] - 2:3
ball [2] - 29:7, 41:10
based [2] - 11:20, 12:23
baseline [1] - 16:22
bases [1] - 26:7
basic [7] - 8:23, 9:5, 10:21, 18:15, 28:17, 32:2, 39:12
basis [11] - 12:14, 20:4, 24:17, 25:24, 27:3, 29:2, 29:11, 29:16, 29:18, 36:11, 36:13
becomes [2] - 15:10, 15:12
becoming [1] - 42:10
bed [1] - 23:17
BEFORE [1] - 1:24
beginning [1] - 6:15
behalf [6] - 2:10, 7:12, 8:4, 13:22, 39:1, 45:17
behind [1] - 22:12
believes [1] - 40:14
BENSON [4] - 3:12, 29:8, 45:5, 45:20
Benson [4] - 8:5, 28:20, 29:8, 45:17
best [5] - 23:6, 31:5, 39:3, 39:9, 39:25
better [3] - 21:19, 21:21, 22:8
beyond [3] - 22:2, 22:25, 32:18
Bill [1] - 7:9
blow [1] - 36:24
Bob [1] - 8:2
Boe [2] - 5:23, 7:2
Boe-Hydis [2] - 5:23, 7:2
Boeing [1] - 33:23,

33:24
bolsters [1] - 30:21
BOTTS [1] - 6:2
BOUCHARD [1] - 2:19
bound [1] - 18:9
Brann [1] - 7:5
BRANN [1] - 5:17
breath [2] - 35:5, 35:6
Brian [1] - 6:8
brief [2] - 21:3, 45:3
bring [2] - 42:17, 43:7
bringing [1] - 38:21
brings [1] - 11:24
broader [2] - 34:4, 34:23
broke [1] - 29:23
broken [3] - 14:14, 25:23, 29:3
burden [3] - 10:6, 14:5, 14:20
business [1] - 33:1
buy [2] - 20:22
BY [27] - 2:3, 2:5, 2:8, 2:13, 2:16, 2:20, 2:23, 3:3, 3:5, 3:9, 3:12, 3:16, 3:18, 4:3, 4:5, 4:8, 4:12, 4:15, 4:20, 4:22, 5:3, 5:5, 5:8, 5:13, 5:17, 5:21, 6:3

**C**

California [3] - 3:6, 3:12, 5:18
camcorders [2] - 37:22, 37:24
Candidly [2] - 25:5, 42:10
carry [1] - 41:10
case [13] - 11:19, 11:21, 15:5, 20:18, 21:22, 24:23, 30:9, 30:11, 33:1, 33:18, 37:21, 42:10, 44:15
cases [2] - 30:12, 32:3
Casio [3] - 4:24, 7:13
category [2] - 32:8, 34:5
certainly [8] - 20:13, 21:17, 24:23, 25:6, 31:7, 34:13, 40:12, 40:13
cetera [1] - 11:18
chagrin [1] - 21:18
chambers [1] - 6:15
chance [3] - 19:23, 38:4, 38:9, 38:13
change [2] - 20:20,

40:7
changes [1] - 22:23
changing [1] - 15:3
characterize [1] -
11:18
Chen [1] - 7:18
CHEN [1] - 3:6
chime [3] - 23:12,
23:13, 28:22
CIRESI [1] - 2:7
cited [1] - 20:18
Citizen [4] - 2:21,
2:21, 8:8
CIVIL [1] - 1:4
Claim [2] - 10:17, 31:3
claim [38] - 9:21, 10:6,
10:10, 14:12, 15:14,
18:13, 19:11, 19:18,
19:22, 20:8, 21:2,
23:2, 23:25, 24:4,
25:21, 25:25, 26:15,
26:22, 27:14, 27:16,
28:2, 29:24, 39:7,
40:2, 40:3, 40:11,
40:15, 40:19, 40:24,
41:5, 41:20, 41:25,
42:1, 42:13, 42:20,
42:24, 43:18, 44:23
claimed [1] - 12:22
claims [4] - 27:5, 29:2,
32:20, 32:22
clarification [1] -
21:24
clarify [2] - 22:3, 22:4
clear [3] - 10:25, 14:9,
19:25, 20:9, 21:8,
22:6, 24:12, 31:12
clearly [4] - 15:10,
16:7, 18:20, 18:21
client [2] - 26:2, 37:21
closing [1] - 36:18
co [2] - 7:21, 8:5
Co [3] - 2:21, 2:21,
4:17
co-counsel [2] - 7:21,
8:5
cockpit [4] - 33:23,
34:5, 35:6, 35:10
coincidentally [1] -
12:9
colleague [1] - 29:7
Columbia [4] - 4:6,
5:9, 5:13, 5:22
coming [1] - 13:18
comments [1] - 15:9
commercial [1] - 33:6
common [1] - 28:12
commonality [1] -
17:14
COMMUNICATIONS

[1] - 1:7
company [1] - 35:12
Company [2] - 8:8, 8:9
complaining [2] -
30:25, 36:7
comply [1] - 12:19
component [1] - 29:25
compression [1] -
42:19
compromise [1] -
40:22
COMPUTER [1] - 1:13
Computer [1] - 4:24
Computerized [1] -
45:11
CONAWAY [3] - 2:13,
3:2, 4:2
Conaway [2] - 7:16,
7:20
concern [7] - 11:11,
20:16, 36:10, 36:21,
40:7, 43:18
concerned [3] - 37:20,
42:11, 42:18
concerns [4] - 36:20,
37:3, 41:7, 42:24
conditioning [1] -
23:20
conduct [1] - 42:12
conducting [1] - 42:11
conference [5] - 6:15,
8:14, 13:19, 45:11,
46:15
CONFERENCE [1] -
1:22
confess [1] - 22:5
confidentiality [1] -
23:21
connection [1] - 42:13
consideration [1] -
41:3
consistent [1] - 23:14
construction [17] -
24:4, 39:8, 40:2,
40:4, 40:11, 40:16,
40:19, 40:25, 41:5,
41:20, 41:25, 42:1,
42:13, 42:20, 42:24,
43:18, 44:23
consulate [1] - 43:3
consultation [1] -
44:10
consumer [1] - 33:18
contending [2] -
29:24, 30:1
contention [14] - 8:23,
15:17, 23:19, 24:4,
24:12, 27:5, 27:16,
30:9, 30:13, 30:18,
30:21, 31:11, 39:12

contentions [6] -
24:10, 24:15, 25:19,
26:6, 29:11, 40:20
context [3] - 15:3,
15:9, 33:8
Continued [4] - 3:1,
4:1, 5:1, 6:1
contrary [1] - 27:19
conventions [1] - 43:2
CORP [1] - 1:7
Corp [3] - 3:13, 5:10,
5:15
Corporation [5] -
3:14, 4:10, 4:10,
5:10, 8:1
correct [4] - 16:3,
20:10, 36:5, 45:21
Correct [2] - 16:14,
16:25
correctly [1] - 45:4
correspondence [2] -
9:9, 10:16
CORROON [2] - 4:12,
5:2
Counsel [15] - 2:10,
2:18, 2:21, 2:24, 3:7,
3:13, 3:20, 4:10,
4:17, 4:24, 5:10,
5:14, 5:19, 5:23, 6:5
counsel [6] - 7:21,
8:5, 38:18, 39:22,
40:10, 45:19
couple [3] - 28:19,
29:10, 45:16
course [5] - 9:8, 13:5,
16:4, 19:19, 35:19
Court [8] - 12:1, 14:9,
14:11, 20:16, 21:3,
38:22, 41:5, 41:18
COURT [66] - 1:1,
6:16, 6:24, 8:10,
9:16, 10:22, 13:4,
13:7, 13:12, 14:24,
15:16, 16:12, 16:15,
16:17, 17:1, 18:6,
21:5, 22:4, 23:10,
23:15, 25:15, 26:9,
26:14, 26:17, 26:20,
27:1, 27:24, 28:15,
29:6, 30:4, 31:23,
31:25, 32:13, 33:14,
33:16, 34:17, 34:24,
35:2, 35:13, 35:18,
35:20, 36:6, 37:3,
37:11, 37:15, 37:25,
38:4, 38:7, 38:12,
38:17, 38:25, 39:11,
40:6, 41:12, 41:16,
41:22, 42:23, 43:17,
44:9, 45:9, 45:12,

45:16, 45:22, 46:1,
46:6, 46:9
court [3] - 21:7, 25:7,
44:13
Court's [5] - 10:13,
12:14, 12:19, 12:24,
17:17
court's [1] - 32:1
covered [2] - 36:25,
37:1
covering [1] - 6:19
crack [4] - 9:17, 13:16,
14:25, 21:14
crafted [1] - 11:10
create [1] - 21:4
criteria [3] - 13:10,
17:11, 17:23
current [1] - 41:4
customer [1] - 12:17

D

DAN [1] - 3:18
Dan [1] - 7:10
date [1] - 41:4
dates [2] - 41:23, 42:7
deal [2] - 8:11, 32:1
dealing [1] - 8:20
decision [3] - 14:18,
33:25, 41:5
declining [1] - 27:18
defendant [6] - 7:7,
7:16, 7:24, 8:1,
26:23, 26:24, 37:5,
39:23
Defendants [3] - 1:9,
1:14, 1:20
defendants [45] - 7:2,
7:13, 8:22, 9:1, 9:4,
9:13, 10:7, 12:18,
13:22, 14:5, 15:7,
17:10, 17:18, 20:21,
23:4, 23:7, 24:5,
24:9, 24:11, 24:14,
24:22, 25:10, 25:16,
25:24, 33:21, 33:24,
34:6, 36:7, 38:20,
39:2, 39:14, 40:5,
40:17, 40:24, 41:20,
41:24, 42:2, 42:5,
42:6, 42:17, 44:1,
44:22
defendants' [2] - 32:9,
32:11
defense [13] - 9:22,
11:4, 13:23, 13:24,
15:20, 23:11, 23:21,
27:12, 30:25, 31:13,
37:14, 46:2, 46:7

define [1] - 10:14
defined [1] - 37:23
defining [2] - 17:21,
37:19
definition [1] - 34:16
degree [1] - 30:2
DELAWARE [1] - 1:2
Delaware [1] - 1:21
demand [1] - 16:2
demands [1] - 18:19
demonstrate [1] -
37:18
depositions [2] -
42:16, 43:4
description [2] - 31:5,
36:23
designee [1] - 13:22
detailed [3] - 30:15,
33:21, 33:25
details [2] - 29:11,
29:19
determine [1] - 14:16
development [3] -
35:15, 35:25, 36:14
device [7] - 18:24,
20:4, 20:5, 20:6,
27:15, 31:15, 31:16
Devices [4] - 3:14, 6:5,
6:6, 8:5
devices [4] - 9:6,
27:14, 35:5, 35:9
dicovery [1] - 42:12
Diego [1] - 5:18
different [3] - 19:20,
29:15
differently [1] - 40:14
difficult [2] - 8:14,
32:16
directed [1] - 37:13
direction [2] - 9:15,
24:13
directly [2] - 28:21,
45:17
disagree [4] - 9:1,
15:1, 20:10, 20:16
disagreeing [1] -
26:20
discovery [57] - 8:21,
8:23, 8:24, 8:25,
9:12, 9:14, 9:18,
9:21, 10:4, 10:8,
10:14, 10:19, 11:2,
11:14, 12:3, 12:10,
12:12, 12:15, 13:20,
14:23, 15:11, 15:20,
15:21, 16:2, 16:9,
17:2, 18:1, 18:12,
18:19, 19:9, 19:13,
19:20, 22:1, 22:15,
22:21, 23:20, 24:1,

24:5, 24:9, 24:12, 32:2, 35:8, 35:9, 35:15, 36:19, 37:5, 37:7, 38:13, 39:13, 39:17, 39:21, 40:19, 42:12, 42:19, 45:7, 45:8
**discrete** [1] - 10:18
**discussed** [2] - 13:10, 17:22
**discussion** [6] - 8:15, 11:8, 12:1, 15:3, 28:13, 28:18
**discussions** [2] - 15:9, 36:19
**display** [3] - 33:23, 34:1, 34:5
**Display** [6] - 2:25, 3:7, 3:20, 6:5, 7:10, 7:17
**displays** [2] - 35:7, 35:10
**Displays** [3] - 2:21, 6:5, 8:8
**disposes** [1] - 36:16
**dispute** [5] - 35:21, 35:22, 37:18, 38:13, 38:18
**disputing** [1] - 36:13
**distinct** [1] - 29:14
**DISTRICT** [2] - 1:1, 1:2
**District** [4] - 4:6, 5:9, 5:13, 5:22
**doctrine** [1] - 40:21
**document** [3] - 25:13, 28:24, 29:1
**documentation** [2] - 24:24, 28:17
**documents** [15] - 24:10, 24:13, 24:14, 24:21, 25:2, 25:3, 25:8, 25:10, 25:11, 28:12, 28:23, 34:3, 34:4, 34:9, 34:12
**dodge** [2] - 22:11, 22:15
**done** [14] - 11:14, 15:3, 18:10, 21:14, 21:15, 23:3, 23:4, 27:20, 28:4, 33:13, 37:1, 44:13, 46:2
**door** [2] - 19:10, 36:18
**down** [12] - 10:9, 14:14, 16:10, 17:9, 17:15, 25:23, 27:23, 29:3, 29:12, 29:15, 29:16, 29:23
**drawing** [1] - 28:8
**drawings** [4] - 28:10, 30:16, 31:14, 31:17
**drawn** [1] - 11:18

**drives** [1] - 39:5
**dropped** [1] - 45:15
**DUNNER** [2] - 5:5, 5:8

**E**

**earliest** [1] - 24:8
**early** [3] - 30:9, 30:14
**East** [2] - 42:15, 42:22
**easy** [1] - 43:10
**ECKER** [1] - 4:16
**Ecker** [1] - 7:8
**effect** [5] - 11:6, 18:19, 21:1, 23:3, 23:4
**effecting** [1] - 10:9
**effort** [2] - 34:13, 39:10
**eight** [1] - 29:14
**either** [1] - 30:3
**Electro** [1] - 5:10
**Electro-Optics** [1] - 5:10
**Electronic** [1] - 6:6
**electronics** [1] - 33:18
**Electronics** [1] - 5:14
**elements** [6] - 9:21, 10:18, 10:21, 10:25, 26:22, 28:11
**eliminate** [1] - 40:18
**ELIZABETH** [2] - 5:8, 5:17
**Elizabeth** [2] - 7:5
**ELLEN** [1] - 3:9
**embassies** [1] - 42:16
**embassy** [1] - 43:3
**embodied** [2] - 12:13, 32:22
**embodiments** [1] - 33:5
**embodying** [1] - 32:20
**encourage** [1] - 30:13
**end** [2] - 15:4, 15:8
**endeavored** [2] - 10:11, 15:14
**ends** [2] - 41:22, 46:15
**enforceability** [1] - 39:5
**engaged** [1] - 44:14
**entirety** [1] - 14:7
**entitled** [11] - 12:12, 15:11, 16:8, 16:13, 22:1, 26:5, 26:6, 33:9, 34:10, 35:9, 36:11
**Epson** [9] - 3:13, 3:14, 8:4, 26:25, 27:1, 28:10, 28:21
**equally** [1] - 40:9

**equivalents** [1] - 40:21
**erosion** [1] - 42:19
**ESQ** [34] - 2:3, 2:5, 2:8, 2:8, 2:9, 2:13, 2:16, 2:16, 2:20, 2:23, 3:3, 3:5, 3:6, 3:9, 3:12, 3:16, 3:18, 4:3, 4:5, 4:8, 4:12, 4:15, 4:15, 4:16, 4:20, 4:22, 5:3, 5:5, 5:8, 5:13, 5:17, 5:21, 6:3, 6:3
**essential** [1] - 26:21
**essentially** [2] - 9:18, 10:7
**et** [8] - 1:4, 1:8, 1:10, 1:13, 1:19, 11:18
**eventually** [1] - 10:9
**evidently** [1] - 18:20
**exact** [1] - 12:9
**exactly** [9] - 11:23, 12:8, 13:9, 14:2, 14:20, 20:2, 22:3, 28:11, 36:7
**exam** [1] - 25:20
**example** [2] - 28:9, 40:20
**except** [1] - 36:8
**exchange** [10] - 10:12, 12:2, 12:4, 12:13, 12:24, 16:6, 25:3, 25:11, 25:14, 40:1
**expecting** [1] - 23:7
**expedition** [2] - 18:1, 34:16
**explain** [3] - 16:1, 17:3, 17:4
**explained** [2] - 12:8, 15:15
**expressed** [1] - 40:8
**expressly** [7] - 15:12, 16:10, 17:20, 18:3, 22:2
**extent** [8] - 10:20, 14:16, 15:13, 18:7, 19:15, 30:25, 34:18, 36:1

**F**

**faced** [1] - 12:23
**fact** [6] - 13:2, 17:25, 19:6, 22:7, 34:6, 42:14
**facts** [1] - 27:16
**factual** [1] - 26:6
**failing** [1] - 9:4
**fair** [5] - 19:4, 19:5,

22:25, 23:7, 25:12
**fairly** [1] - 22:20
**falls** [1] - 34:15
**far** [1] - 33:13
**Far** [2] - 42:15, 42:22
**FARABOW** [2] - 5:5, 5:8
**fashion** [2] - 9:24, 33:9
**FAULKNER** [1] - 5:5
**Faulkner** [1] - 7:4
**favor** [1] - 40:14
**features** [2] - 18:3, 18:5
**few** [4] - 8:11, 14:4, 16:4, 26:12
**file** [1] - 30:13
**Film** [2] - 4:17, 4:18
**final** [1] - 21:23
**fine** [2] - 20:1, 32:13
**Fine** [3] - 27:1, 43:17, 45:9
**FINGER** [1] - 3:15
**FINNEGAN** [2] - 5:5, 5:8
**First** [2] - 9:8, 15:2
**first** [13] - 8:19, 9:16, 15:7, 15:22, 25:12, 29:5, 30:6, 39:4, 39:8, 41:11, 42:10, 44:16
**FISH** [3] - 2:23, 4:19, 4:22
**Fish** [2] - 7:12, 7:24
**fishing** [2] - 18:1, 34:15
**fit** [1] - 36:22
**fits** [1] - 9:19
**five** [8] - 39:23, 40:4, 40:17, 43:21, 43:22, 43:25, 44:2, 44:11
**FLOCK** [1] - 4:8
**Flock** [1] - 8:2
**flying** [1] - 32:5
**focus** [2] - 15:4, 35:10
**focused** [1] - 35:8
**folks** [7] - 15:23, 16:2, 16:19, 30:6, 43:20, 44:14, 46:2
**following** [6] - 6:14, 15:2, 17:11, 31:3
**foot** [1] - 39:3
**FOR** [1] - 1:2
**forced** [1] - 42:21
**formalized** [1] - 25:7
**forth** [2] - 28:21, 41:20
**forward** [8] - 8:22, 9:17, 21:21, 23:15, 23:17, 30:16, 39:3, 46:11

**foundation** [4] - 17:2, 17:5, 17:8, 28:18
**foundational** [1] - 17:5
**founded** [3] - 21:10, 36:21, 42:25
**four** [1] - 10:21
**frame** [1] - 40:3
**framed** [6] - 9:20, 9:21, 13:20, 14:2, 15:9, 16:2
**Friday** [1] - 1:22
**FRIEDLANDER** [1] - 2:19
**Fuji** [4] - 4:17, 4:18, 7:7, 35:1
**full** [1] - 42:12
**fully** [1] - 45:3
**function** [2] - 15:6, 43:20
**fundamental** [1] - 8:20
**FURLOW** [1] - 3:9

**G**

**Gaffigan** [1] - 6:8
**game** [1] - 30:6
**GARRETT** [2] - 5:5, 5:8
**Gasser** [1] - 7:22
**GASSER** [1] - 2:16
**GEDDES** [1] - 2:2
**general** [2] - 28:6, 32:9
**generalized** [1] - 24:6
**generation** [2] - 19:6, 22:16
**generational** [1] - 22:22
**get-go** [1] - 41:7
**given** [6] - 23:6, 25:20, 29:4, 31:21, 35:11
**glad** [1] - 32:3
**goal** [1] - 39:2
**goods** [1] - 33:19
**GORDON** [1] - 2:20
**great** [1] - 43:12
**greater** [1] - 30:15
**Grimm** [2] - 6:19, 32:19
**ground** [1] - 40:7
**group** [5] - 15:7, 39:8, 39:10, 39:16, 39:23
**guess** [3] - 16:17, 34:20, 44:6
**guys** [1] - 35:22

4

# H

Halls [2] - 8:2, 37:12
HALLS [6] - 4:5, 37:12, 37:16, 38:3, 38:11, 44:8
halfway [1] - 40:15
Halkowski [1] - 7:12
HALKOWSKI [2] - 4:20, 7:11
handle [1] - 38:20, 43:3, 44:4
handling [1] - 42:18
hang [1] - 30:22
happy [1] - 28:16
hard [1] - 8:18
hardware [2] - 22:25, 27:7
harness [1] - 39:15
HARTSON [1] - 3:11
Hartson [1] - 8:6
HASTINGS [2] - 3:5, 5:17
Hastings [1] - 7:18
head [1] - 19:13
HEANEY [2] - 2:5, 6:18
Heaney [1] - 6:19
hear [5] - 8:18, 32:3, 35:24, 41:23, 43:6
heard [3] - 17:3, 23:21, 36:4
hearing [9] - 12:21, 12:24, 13:11, 13:18, 17:22, 34:10, 36:13, 37:11, 44:1
heart [1] - 10:6
heavy [2] - 41:16, 44:14
held [1] - 6:15
help [1] - 36:22
helpful [2] - 11:17, 43:12
HENDERSON [2] - 5:5, 5:8
herring [1] - 19:24
Hi [1] - 6:16
himself [1] - 12:20
Historically [1] - 20:23
historically [1] - 12:17
history [3] - 11:19, 11:23, 15:5
Hitachi [5] - 6:5, 6:5, 6:6, 7:3
HOGAN [1] - 3:11
Hogan [1] - 8:6
hold [4] - 13:15, 15:16, 35:13, 40:10
holding [1] - 40:23

honest [1] - 37:18
HONEYWELL [3] - 1:4, 1:10, 1:18
Honeywell [35] - 2:10, 2:11, 6:19, 6:22, 8:23, 9:2, 9:3, 9:7, 9:10, 9:14, 10:5, 10:8, 10:11, 13:19, 14:13, 17:15, 18:9, 20:1, 22:1, 29:10, 29:13, 30:8, 33:1, 33:19, 34:2, 34:11, 37:17, 37:22, 38:4, 38:22, 40:2, 40:15, 42:21, 42:25
Honeywell's [9] - 9:12, 11:11, 21:2, 23:19, 32:10, 34:6, 39:20, 42:12, 42:24
Honor [71] - 6:18, 6:23, 6:25, 7:6, 7:9, 7:11, 7:15, 7:19, 7:23, 7:25, 8:3, 8:7, 9:11, 10:2, 10:4, 10:12, 11:22, 12:2, 12:6, 12:11, 12:25, 13:9, 13:25, 14:1, 14:8, 14:20, 14:22, 15:1, 15:6, 16:5, 16:16, 17:7, 20:13, 21:1, 21:23, 22:3, 24:2, 24:12, 25:17, 26:11, 27:19, 28:5, 28:20, 29:22, 31:22, 32:3, 32:7, 32:14, 33:4, 33:15, 34:21, 34:25, 35:17, 36:5, 37:2, 37:12, 38:6, 38:19, 40:13, 41:1, 41:8, 41:15, 42:5, 43:15, 45:5, 45:15, 45:20, 45:25, 46:4, 46:5, 46:14
Honor's [4] - 15:8, 20:14, 22:1, 38:21
HONORABLE [1] - 1:24
hook [1] - 42:6
hope [4] - 31:12, 43:4, 44:20, 46:10
hoping [1] - 19:25
HORWITZ [13] - 5:3, 6:25, 13:25, 23:9, 23:12, 25:17, 28:19, 31:24, 32:7, 32:14, 34:20, 37:2, 46:4
Horwitz [17] - 7:1, 12:20, 13:25, 15:2, 15:13, 16:7, 17:3, 23:8, 25:17, 28:15,

29:9, 31:23, 32:7, 34:10, 34:17, 36:24, 46:1
Houston [1] - 3:19
HOWREY [1] - 5:12
Hu [1] - 7:10
HU [2] - 3:18, 3:18
Hua [1] - 7:17
HUA [1] - 3:6
hurry [2] - 44:6, 44:7
Hydis [2] - 5:23, 7:2

# I

ID [2] - 2:24, 7:24
idea [1] - 44:21
Identification [2] - 22:13, 41:19
identified [19] - 9:25, 10:15, 11:3, 11:12, 15:12, 16:11, 17:9, 17:14, 17:20, 18:3, 22:2, 22:16, 22:23, 24:16, 29:13, 31:15, 39:6, 42:14, 43:25
identify [8] - 11:7, 11:10, 17:19, 18:21, 22:17, 22:21, 27:8, 27:24
identifying [1] - 44:21
III [1] - 2:20
imaging [2] - 3:14, 8:4
implemented [2] - 17:16, 42:8
implications [1] - 32:25
important [1] - 32:23
impossible [1] - 44:24
IN [1] - 1:2
inability [1] - 44:11
Inc [8] - 2:11, 2:11, 2:18, 2:25, 3:7, 4:18, 4:24, 6:6
INC [5] - 1:4, 1:10, 1:13, 1:15, 1:18
Incidently [1] - 12:9
included [1] - 32:9
including [3] - 31:17, 32:24, 42:14
incorporate [2] - 33:11, 34:1
incumbent [1] - 27:4
indicated [1] - 32:5
indulgence [1] - 20:14
Industry [3] - 10:19, 20:20, 33:20
Inform [1] - 14:17
Information [14] - 9:5, 24:6, 29:3, 30:16,

30:20, 31:17, 32:8, 32:10, 32:15, 32:23, 33:9, 35:25, 36:2, 37:17
infringe [7] - 14:14, 25:23, 26:3, 27:25, 31:8, 31:10, 32:18
infringement [9] - 8:24, 10:6, 17:10, 24:17, 25:25, 26:7, 29:11, 29:17, 40:21
infringes [12] - 11:6, 11:15, 16:20, 16:22, 18:12, 23:2, 27:4, 27:15, 28:1, 28:3, 31:2
infringing [3] - 16:21, 27:3, 31:16
inherently [1] - 45:7
initial [1] - 40:1
inquire [1] - 22:22
inquiry [1] - 34:23
insert [1] - 8:15
insofar [1] - 45:8
instruction [1] - 31:21
instructions [1] - 16:18
Intellectual [1] - 2:11
Intended [1] - 19:10
intentional [1] - 18:8
interest [1] - 39:9
interference [1] - 8:17
INTERNATIONAL [3] - 1:4, 1:10, 1:18
International [2] - 2:11, 2:24
international [1] - 43:1
interpolating [1] - 19:1
interrogatories [6] - 23:19, 29:10, 30:9, 30:13, 31:11, 33:22
interrogatory [4] - 15:18, 30:18, 30:21, 33:25
intersected [1] - 45:6
intervention [1] - 32:1
invention [8] - 33:22, 34:1, 34:3, 35:11, 35:15, 35:25, 36:2, 36:16
investigation [1] - 29:21
involved [2] - 9:14, 28:21
iron [1] - 31:20
issue [12] - 10:3, 12:1, 21:3, 25:6, 33:13, 37:4, 37:7, 37:14,

37:17, 37:20, 38:23, 43:16
issues [15] - 8:11, 9:12, 12:16, 24:2, 25:1, 32:12, 36:20, 39:4, 39:10, 39:21, 40:18, 42:11, 42:14, 44:25, 45:7
itself [3] - 33:6, 35:16, 36:15

# J

JAMES [1] - 2:20
JANOFSKY [2] - 3:5, 5:17
Japanese [1] - 35:12
Jay [1] - 8:8
job [1] - 21:10
Joelle [1] - 8:3
JOELLE [1] - 3:9
John [5] - 6:22, 7:13, 7:22, 7:25, 8:2
JOHN [4] - 2:16, 4:3, 4:8, 4:22
JOHNSON [1] - 4:22
Johnson [1] - 7:13
joined [1] - 45:13
Joining [1] - 45:11
JORDAN [1] - 1:24
Jordan [1] - 6:16
judge [2] - 11:5, 11:13
Judge [1] - 6:16
judicata [3] - 10:10, 19:18, 20:17
JULIA [1] - 2:5
Julie [1] - 6:19
July [5] - 1:22, 14:9, 38:1, 38:22, 38:23
juncture [2] - 11:17, 45:6

# K

KAJ [3] - 1:8, 1:14, 1:19
Kaplan [1] - 6:20
KAPLAN [1] - 2:7
KAREN [1] - 2:13
Karen [1] - 7:19
KATZENSTEIN [1] - 3:9
Kee [1] - 7:4
KEE [1] - 5:13
keep [1] - 8:14
keeping [1] - 10:11
KENT [1] - 1:24
KENYON [4] - 4:5, 4:8

Kenyon [2] - 8:1, 8:2
KEVEN [1] - 5:21
Kevin [2] - 7:2, 7:8
KEVIN [1] - 4:16
key [1] - 41:11
kind [2] - 15:13, 22:20
known [1] - 10:19
knows [2] - 15:7, 24:16

## L

L.L.P [2] - 2:7, 6:2
lack [2] - 33:6, 38:14
language [7] - 9:20, 14:12, 19:12, 20:8, 23:2, 27:14
last [2] - 10:16, 15:25
Last [1] - 45:16
late [1] - 45:12
LAVAN [1] - 4:14
law [3] - 16:8, 16:13, 20:18
Lawrence [3] - 7:7, 34:25, 41:1
LAWRENCE [1] - 4:15
LAYTON [1] - 3:15
LCD [3] - 13:1, 17:12, 24:17
lead [7] - 37:5, 38:18, 39:22, 40:10, 41:20, 42:2, 44:21
leading [1] - 39:10
least [9] - 12:22, 17:13, 20:11, 21:13, 24:19, 29:14, 36:9, 44:16, 45:16
leave [2] - 43:5, 45:3
left [1] - 19:15
lens [5] - 24:18, 27:7, 27:8, 28:14, 30:1
less [1] - 43:5
letter [16] - 14:9, 18:25, 19:2, 32:9, 32:18, 36:25, 37:8, 37:13, 38:1, 38:22, 38:23, 39:7, 40:8, 42:14, 45:2, 45:4
letters [3] - 32:4, 40:1, 45:17
LEUCK [1] - 9:11
level [1] - 29:22
license [4] - 37:13, 37:19, 37:21, 37:23
lifting [2] - 41:17, 44:14
light [5] - 16:3, 24:18, 29:25, 31:4
likely [1] - 41:4

limitation [2] - 14:15, 29:24
limitations [4] - 20:24, 25:21, 27:17, 28:2
limited [2] - 10:8, 39:21
line [8] - 6:17, 7:7, 7:13, 7:17, 7:21, 8:5, 20:7, 45:1
linked [4] - 11:12, 15:23, 15:24, 16:18
linking [1] - 39:24
lit [3] - 17:12, 27:6
litigation [1] - 18:15
LLP [10] - 3:5, 3:11, 4:12, 4:14, 5:2, 5:5, 5:8, 5:12, 5:17, 5:21
local [2] - 25:6, 45:19
located [1] - 16:10
logistical [2] - 42:11
look [14] - 10:3, 14:6, 14:7, 15:5, 16:6, 16:19, 18:3, 20:6, 21:7, 22:10, 26:23, 31:1, 34:14
Look [1] - 30:4
looks [1] - 8:20
Looks [1] - 35:21
Los [3] - 3:6, 3:12, 7:18
Ltd [6] - 2:21, 2:21, 4:17, 6:5, 6:5, 6:6
Lueck [13] - 6:20, 9:11, 9:16, 10:3, 10:12, 12:1, 12:6, 12:8, 17:22, 18:22, 20:12, 23:24, 41:14
LUECK [1] - 2:8

## M

Maier [1] - 7:3
MAIER [2] - 2:15, 6:3
management [1] - 30:10
manufacture [1] - 32:20
manufactured [1] - 32:24
manufacturer [4] - 26:24, 38:20, 39:2, 39:14
manufacturers [2] - 9:22, 15:8
March [2] - 24:21, 42:7
MARGULES [1] - 2:19
market [1] - 32:25
marking [1] - 32:24
MARSDEN [2] - 2:23,

7:23
Marsden [1] - 7:24
Martin [2] - 6:20, 9:11
MARTIN [1] - 2:8
material [1] - 33:2
Matt [3] - 7:8, 10:2, 33:15
matter [3] - 18:14, 27:4, 28:6
MATTHEW [2] - 2:8, 4:15
Matthew [1] - 6:21
McCLELLAND [1] - 2:15
McKENZIE [1] - 5:21
McMillan [3] - 2:20, 8:7, 8:8
mean [9] - 10:25, 12:7, 13:6, 13:8, 19:13, 27:12, 27:24, 36:24, 44:12
meaningfully [1] - 42:3
means [4] - 20:3, 28:12, 44:5, 44:7
meant [1] - 12:8
measured [1] - 30:2
meet [7] - 10:24, 11:11, 11:17, 14:15, 25:21, 27:16, 40:15
meetings [1] - 16:4
meets [3] - 19:11, 20:7, 29:24
memo [1] - 26:2
memorialized [1] - 38:1
merit [1] - 39:20
Merit [1] - 6:9
might [3] - 33:2, 39:20, 42:9
MILLER [1] - 2:7
mind [3] - 15:23, 19:21, 20:2
minimum [1] - 25:13
Minneapolis [1] - 2:9
Minnesota [1] - 2:9
minutes [1] - 46:2
misaligned [3] - 17:13, 24:19, 27:9, 27:11
misalignment [1] - 30:2
mix [1] - 39:16
model [12] - 17:20, 18:25, 19:3, 19:8, 20:20, 22:13, 22:16, 22:18, 28:1, 28:3, 29:14, 31:4
Model [1] - 31:2
models [4] - 9:25,

11:3, 11:12, 20:20
module [9] - 20:19, 27:20, 27:22, 28:10, 29:3, 29:23, 29:24, 29:25
modules [16] - 10:14, 10:20, 13:1, 15:4, 16:9, 17:9, 17:11, 17:19, 18:2, 20:22, 22:2, 24:16, 24:17, 29:12, 29:15, 29:16
moment [2] - 15:18, 29:23
MONTE' [1] - 3:3
Monte' [1] - 7:16
months [3] - 16:4, 41:8, 43:6
monumental [2] - 44:12, 44:15
moored [1] - 17:25
morning [10] - 6:18, 6:20, 6:25, 7:9, 7:11, 7:15, 7:23, 7:25, 8:3, 8:7
MORRIS [2] - 2:5, 6:22
most [1] - 46:2
move [6] - 21:21, 23:15, 23:17, 32:11, 38:17, 40:3
moving [10] - 8:16, 8:22, 40:15, 41:7, 42:24, 43:4, 43:18, 43:23, 43:24, 44:18
MR [68] - 6:22, 6:25, 7:6, 7:9, 7:11, 7:15, 7:23, 7:25, 8:7, 9:11, 10:2, 11:22, 13:5, 13:9, 13:25, 15:1, 16:5, 16:14, 16:16, 16:25, 17:7, 20:13, 21:23, 23:9, 23:12, 24:2, 25:17, 26:11, 26:15, 26:19, 26:25, 27:19, 28:5, 28:19, 29:8, 31:22, 31:24, 32:7, 32:14, 33:15, 33:17, 34:20, 34:25, 35:4, 35:17, 35:19, 36:5, 37:2, 37:12, 37:16, 38:3, 38:6, 38:11, 38:19, 39:1, 39:19, 40:12, 41:1, 41:15, 41:18, 42:5, 43:15, 44:8, 45:5, 45:20, 45:25, 46:4, 46:5
MS [6] - 6:18, 7:19, 8:3
mutual [3] - 25:3, 25:11, 25:14
mystery [2] - 15:14,

24:20

## N

name [4] - 19:7, 26:24, 39:22, 40:16
naming [1] - 40:24
narrowly [3] - 10:5, 10:13, 11:18
need [16] - 8:12, 11:18, 20:4, 21:8, 21:9, 21:15, 26:5, 30:18, 32:6, 35:22, 40:19, 43:8, 43:13, 44:25, 45:23, 46:7
needed [1] - 36:25
needs [3] - 13:22, 15:6, 37:7
negotiate [1] - 43:6
Neil [1] - 7:3
NEIL [1] - 6:3
Nelson [1] - 7:4
NELSON [1] - 5:13
NEUSTADT [1] - 2:15
never [2] - 19:23, 33:19
Nevertheless [1] - 21:4
New [3] - 4:9, 4:16, 4:23, 6:4, 7:14
new [1] - 40:17
next [4] - 8:16, 19:6, 22:16, 35:6
NICHOLS [1] - 2:5
NIEMEYER [1] - 5:8
Niemeyer [1] - 7:5
NO [3] - 1:8, 1:14, 1:19
nobody [1] - 19:21
noise [1] - 8:17
none [1] - 33:4
nonissue [1] - 34:8
nonplussed [1] - 31:25
North [1] - 5:15
NOTE [1] - 6:14
Nothing [1] - 45:25
nothing [1] - 37:11
notion [1] - 15:19
number [9] - 7:1, 14:22, 17:20, 18:25, 19:2, 19:3, 19:8, 22:18, 32:24
numbers [3] - 20:20, 22:12, 29:14

## O

O'BRIEN [1] - 5:21

O'Brien [1] - 7:2
oar [1] - 38:9
Oberts [1] - 6:21
OBERTS [1] - 2:9
objective [1] - 17:23
obligated [4] - 21:4,
  24:1, 30:8, 31:10
obligation [4] - 11:2,
  16:19, 18:15, 30:12
Oblon [1] - 7:21
OBLON [1] - 2:15
observation [1] - 35:1
obviously [4] - 20:10,
  32:21, 32:25, 36:18
occur [2] - 15:6, 40:2
October [4] - 10:13,
  12:14, 12:19, 14:7
OF [1] - 1:2
offered [1] - 32:21
office [1] - 7:14
Once [1] - 30:5
One [2] - 12:16, 21:23
one [23] - 10:3, 17:13,
  18:25, 19:2, 20:15,
  24:19, 25:15, 27:5,
  27:9, 27:10, 35:5,
  37:13, 38:7, 39:2,
  39:16, 39:21, 40:18,
  41:3, 41:7, 41:13,
  41:14, 41:15
ones [1] - 25:12
oOo [1] - 6:12
open [2] - 19:10,
  44:21
operating [1] - 17:6
opponents [1] - 9:17
opponents' [1] - 9:9
opportunity [1] - 16:1
opposite [1] - 14:20
Optics [1] - 5:10
option [1] - 40:12
Optoelectronics [1] -
  5:10
Optrex [2] - 2:18, 7:20
OPTREX [1] - 1:15
orally [1] - 21:15
order [18] - 10:13,
  12:14, 12:19, 12:25,
  14:7, 17:17, 25:1,
  25:4, 25:5, 25:8,
  25:9, 30:10, 41:6,
  41:8, 41:11, 41:21,
  42:4, 44:5
ordered [2] - 9:23
orders [1] - 11:4
original [1] - 41:21
originally [1] - 42:8
otherwise [1] - 43:13
ought [2] - 16:22,
  31:11

outside [1] - 11:13
outstanding [1] -
  12:16
overlooked [1] - 38:15
own [3] - 32:16, 33:2,
  33:10

**P**

P.C [4] - 2:15, 2:23,
  4:19, 4:22
p.m [1] - 46:15
page [4] - 12:4, 13:10,
  17:23, 39:6
pages [2] - 13:14,
  21:12
panel [1] - 17:12
panels [1] - 24:18
paper [3] - 21:8,
  21:12, 21:16
papers [2] - 8:16,
  10:22
parrots [1] - 14:12
part [2] - 29:23, 43:20
participant [1] - 33:20
participate [1] - 42:3
particular [8] - 9:20,
  10:3, 10:17, 17:12,
  22:12, 22:18, 37:4,
  37:21
particularly [1] - 8:13
parties [7] - 13:17,
  18:7, 18:15, 25:4,
  25:7, 25:13, 30:13
party [2] - 21:11,
  36:19
PASCALE [2] - 2:13,
  7:19
Pascale [1] - 7:19
pass [1] - 29:6
past [2] - 12:17, 36:24
patent [13] - 9:19,
  10:17, 31:10, 32:3,
  32:21, 32:22, 33:3,
  33:5, 33:11, 33:22,
  35:6, 36:15
patented [1] - 36:16
PAUL [2] - 3:5, 5:17
Paul [1] - 7:18
Pause [3] - 37:10,
  38:16, 46:8
people [13] - 11:5,
  16:19, 16:24, 19:15,
  20:1, 22:11, 38:13,
  42:1, 43:7, 43:9,
  43:11, 44:21
period [3] - 20:24,
  41:6, 42:19
perspective [3] -

13:23, 14:10, 45:23
persuade [1] - 21:9
Peter [1] - 7:17
PETER [1] - 3:5
phase [2] - 39:9, 39:21
Phil [2] - 7:6, 38:19
PHILIP [1] - 4:12
Philips [1] - 5:14
Phillips [1] - 7:3
phone [2] - 7:10,
  38:10
Photo [3] - 4:17, 4:18,
  7:7
physical [1] - 29:15
pick [7] - 8:12, 26:23,
  26:25, 43:21, 43:22,
  44:2
piece [2] - 22:25, 27:7,
  44:16
plaintiff [2] - 7:20,
  35:24
Plaintiff [1] - 1:16
plaintiffs [1] - 33:14
Plaintiffs [2] - 1:5,
  1:11
plaintiffs' [1] - 45:23
planned [1] - 9:12
play [1] - 23:7
playing [1] - 30:6
ples [1] - 25:21
Point [1] - 14:15
point [19] - 11:23,
  13:17, 21:23, 22:11,
  23:11, 24:7, 24:8,
  24:22, 26:18, 27:18,
  28:8, 28:13, 32:2,
  36:9, 36:17, 37:6,
  38:15, 39:19, 44:16
pointed [1] - 12:20
POLESKY [2] - 3:9,
  8:3
Polesky [1] - 8:4
portable [3] - 33:18,
  35:5, 35:9
posed [1] - 9:18
position [6] - 10:23,
  12:18, 18:6, 21:8,
  21:10, 21:11, 25:2
positions [2] - 8:24,
  9:2
possible [1] - 31:18
possibly [1] - 33:9
potential [2] - 20:17,
  42:9
potentially [3] - 42:6,
  42:20, 45:6
Potter [1] - 7:1
POTTER [2] - 4:12, 5:2
practical [2] - 41:3,
  43:21

practice [2] - 35:11,
  36:16
precisely [2] - 18:13,
  19:1
precision [3] - 19:7,
  22:17, 28:18
prefiling [1] - 29:21
prejudice [2] - 10:7,
  42:20
prejudicial [1] - 21:1
preparation [4] - 41:6,
  41:10, 42:3, 44:5
prepared [3] - 9:15,
  24:23, 34:9
present [1] - 40:25
Presper [1] - 7:22
PRESPER [1] - 2:16
presume [1] - 41:24
pretrial [4] - 41:6,
  41:10, 42:3, 44:6
pretty [2] - 30:11, 32:2
prevent [1] - 19:9
previous [2] - 11:4,
  13:13
previously [1] - 18:20
principle [1] - 17:5
print [1] - 21:15
privilege [1] - 24:7
privileged [3] - 26:1,
  29:4, 29:20
problem [5] - 8:20,
  18:21, 19:16, 31:20,
  31:21
problems [3] - 19:18,
  32:6, 43:21
procedure [1] - 38:8
proceed [1] - 19:16
process [2] - 19:13,
  34:3
produce [2] - 25:10,
  32:15, 34:2, 34:4,
  34:9
produced [2] - 19:6,
  20:3
producing [2] - 34:12,
  34:13
product [15] - 11:7,
  15:8, 16:20, 19:20,
  19:22, 20:7, 26:5,
  27:2, 27:3, 27:6,
  27:9, 31:7, 32:10,
  32:23, 36:15
production [1] - 28:25
products [11] - 14:6,
  14:13, 15:4, 25:22,
  26:3, 32:16, 33:5,
  33:10, 36:2, 37:20,
  41:9
project [1] - 34:5
proper [1] - 19:13

properly [3] - 37:8,
  37:20, 38:7
Properties [1] - 2:11
proposal [3] - 39:20,
  40:17, 40:23
proposed [3] - 20:21,
  39:5, 41:7
propounded [1] -
  11:14
protected [1] - 31:8
protective [5] - 25:1,
  25:4, 25:5, 25:8,
  25:9
prove [2] - 24:22,
  27:22
provide [7] - 8:24, 9:4,
  17:23, 24:14, 24:24,
  26:12, 28:7
provided [4] - 24:5,
  24:25, 26:11, 26:12
PRUNER [1] - 3:18
pull [1] - 16:17
pulling [1] - 39:15
put [6] - 12:10, 23:17,
  30:10, 30:11, 30:12,
  39:3

**Q**

Quanta [2] - 3:7, 7:17
questions [1] - 9:8
quickly [2] - 35:2,
  37:16
quoted [1] - 14:8
quoting [1] - 19:1

**R**

raised [5] - 12:17,
  24:3, 37:4, 37:8,
  43:19
raises [1] - 19:18
raising [1] - 45:5
rather [3] - 18:2, 40:5,
  44:22
Rather [1] - 25:9
re [1] - 13:14
re-read [1] - 13:14
read [4] - 9:9, 10:22,
  13:13, 13:14
reading [1] - 13:13
reads [1] - 11:4
ready [1] - 44:3
real [1] - 37:16
really [3] - 34:8, 39:2,
  44:23
realm [1] - 34:15
reason [2] - 31:18,

39:22
reasons [4] - 15:2, 20:25, 32:24, 33:12
recast [1] - 18:11
recognize [2] - 20:17, 45:21
recognized [1] - 12:25
recollection [1] - 22:14
record [4] - 14:10, 21:4, 21:5, 21:6
red [1] - 19:24
regard [4] - 12:2, 24:4, 24:13, 25:1
regarding [2] - 34:3, 34:5
region [1] - 22:6
Registered [1] - 6:9
reiterating [1] - 29:9
reject [1] - 19:17
rejecting [2] - 15:18, 15:19
related [1] - 34:13
relates [2] - 32:10, 45:8
relevant [2] - 13:2, 33:6
reluctant [1] - 43:20
remove [1] - 10:6
removing [1] - 14:19
rendering [1] - 41:5
repackaging [1] - 14:3
repeatedly [2] - 15:23, 16:24
Reporter [1] - 6:9
REPORTER'S [1] - 6:14
represent [1] - 43:16
representing [1] - 7:16
represents [1] - 28:20
request [5] - 9:24, 17:7, 17:25, 18:12, 31:1
requested [1] - 32:16
requests [2] - 11:2, 25:13
require [3] - 14:4, 14:18, 30:14
required [1] - 32:15
requires [2] - 32:1, 38:8
res [3] - 10:10, 19:18, 20:17
resolved [2] - 32:3, 45:8
respect [3] - 8:23, 9:5, 39:7
respectfully [4] - 16:6, 20:15, 20:25, 21:2

Respond [1] - 26:10
respond [8] - 11:1, 15:21, 18:22, 23:25, 28:16, 34:17, 38:5, 46:13
responded [2] - 29:5, 38:22
response [11] - 9:21, 9:25, 15:20, 28:16, 30:18, 30:19, 30:21, 31:1, 31:2, 32:19, 40:1
responses [3] - 15:18, 23:19, 23:20
responsible [1] - 39:15
responsive [3] - 34:19, 34:21, 34:22
Reston [1] - 5:6
reversal [2] - 18:14, 18:15
reversed [1] - 21:18
review [1] - 21:6
reviewing [1] - 21:7
Rich [4] - 7:1, 13:25, 25:17, 32:7
RICHARD [1] - 5:3
RICHARDS [1] - 3:15
RICHARDSON [3] - 2:23, 4:19, 4:22
Richardson [2] - 7:12, 7:24
road [1] - 10:9
ROBERT [3] - 3:12, 4:5, 6:3
Robert [5] - 7:3, 8:5, 28:20, 29:8, 37:12
ROBINS [1] - 2:7
Robins [1] - 6:20
role [1] - 37:5
rooted [2] - 17:4, 17:8
Rosenthal [5] - 7:8, 35:1, 41:2, 41:23, 43:19
ROSENTHAL [4] - 4:15, 34:25, 35:4, 41:1
round [1] - 15:7
Rovner [5] - 7:6, 38:19, 39:11, 41:24, 43:22, 46:1
ROVNER [7] - 4:12, 7:6, 38:19, 39:1, 39:19, 40:12, 46:5
rubric [1] - 18:11
rule [2] - 25:6, 41:9
rulings [1] - 40:20

S

sad [1] - 43:9
sales [1] - 33:10
Samsung [2] - 5:19, 7:5
San [1] - 5:18
Sanyo [2] - 3:14, 8:4
schedule [6] - 40:11, 40:25, 41:4, 42:7, 44:9, 44:18
scheduling [1] - 41:21
scope [2] - 12:9, 37:19
SDI [1] - 5:19
second [2] - 13:16, 35:13
seeking [2] - 9:13, 10:19
Seiko [9] - 3:13, 8:4, 26:25, 27:1, 28:9, 28:20, 45:2, 45:17
Select [1] - 26:24
select [1] - 44:11
selected [2] - 41:9, 42:2
selecting [2] - 37:4, 40:10
sell [1] - 32:22
sense [2] - 15:10, 16:7
sensibly [1] - 35:23
September [8] - 10:13, 11:25, 12:4, 12:20, 12:24, 13:10, 13:19, 17:22
sequence [3] - 19:3, 19:8, 22:12
series [1] - 17:9
serve [1] - 29:10
served [3] - 9:22, 24:8, 24:11
set [4] - 41:20, 43:25, 44:9
seven [1] - 29:14
several [1] - 24:2
shared [1] - 8:25
Sharp [1] - 20:18
Shaw [2] - 7:25, 38:1
SHAW [2] - 4:3, 7:25
shield [1] - 40:19
shifting [2] - 37:5, 41:22
short [2] - 30:5, 31:7, 42:23
show [2] - 15:14, 28:10
side [5] - 9:3, 31:13, 43:7, 43:10, 46:7
sides [2] - 8:21, 38:9
SIEGAL [1] - 4:15

Siegal [1] - 7:8
similar [2] - 9:5, 12:7
simple [1] - 39:6
simply [1] - 14:12
single [1] - 27:20
SIROTA [1] - 6:3
Sirota [1] - 7:3
situation [2] - 12:23, 42:21
skillful [1] - 18:23
SMITH [1] - 3:9
sold [2] - 32:21, 32:25
someone [1] - 40:14
Sony [4] - 4:10, 8:1, 37:13
soon [2] - 24:24
sooner [1] - 40:5
sort [1] - 8:19
sought [2] - 40:3, 40:18
sounds [1] - 35:21
source [3] - 29:25, 31:4
space [1] - 43:3
speaker [2] - 8:12
Speaker [1] - 45:14
speaking [5] - 8:13, 9:10, 13:23, 23:10, 46:2
spec [1] - 30:16
specific [8] - 13:17, 14:15, 19:19, 22:22, 22:25, 25:22, 32:12
specifically [2] - 11:3, 12:6
specificity [1] - 29:22
speed [2] - 39:17, 40:9
SPIVAK [1] - 2:15
Spivak [1] - 7:22
splitting [2] - 10:10, 19:18
square [1] - 11:2
Squire [1] - 7:16
SQUIRE [2] - 3:3, 7:15
Stacie [1] - 6:21
STACIE [1] - 2:9
standard [1] - 20:19
standpoint [1] - 25:9
STARGATT [3] - 2:13, 3:2, 4:2
start [2] - 8:19, 9:7
started [1] - 43:8
state [1] - 29:18
State [1] - 29:18
statements [1] - 11:4
STATES [1] - 1:1
States [1] - 43:12
statute [1] - 20:24
stay [2] - 39:12, 46:11

stayed [1] - 12:18
staying [1] - 44:18
step [1] - 41:11
steps [3] - 41:5, 43:2, 43:13
STEVEN [1] - 2:3
still [3] - 20:24, 31:21, 44:20
stonewall [1] - 33:13
stonewalling [1] - 33:17
stop [4] - 26:9, 26:17, 30:7, 37:25
straightforward [2] - 10:18, 26:16
stronger [1] - 26:4
STROOCK [2] - 4:14
structure [1] - 13:2
stuff [1] - 15:22
subject [1] - 37:8
submit [3] - 16:6, 25:12, 45:18
submitted [1] - 10:16
subset [1] - 42:9
substantially [10] - 10:15, 12:22, 13:1, 13:2, 13:6, 13:8, 17:16, 17:19, 17:21, 18:11
success [1] - 33:6
sue [4] - 19:19, 20:1, 37:22
sued [1] - 37:23
sufficient [1] - 41:25
suggested [2] - 29:22, 41:19
suggesting [4] - 16:7, 34:12, 35:14, 44:13
suing [2] - 18:18
summary [1] - 33:9
sun [1] - 18:2
supplement [3] - 24:10, 24:15, 30:17
supplementation [1] - 28:7
surfaced [1] - 37:7
sympathetic [1] - 43:5

T

tailored [1] - 10:5
task [2] - 44:12, 44:15
TAYLOR [3] - 2:13, 3:2, 4:2
tear [1] - 29:16
Tech [2] - 2:24, 7:24
technical [2] - 31:5, 31:17
Technology [2] - 2:25,

5:23
telephone [2] - 6:14, 8:16
TELEPHONE [1] - 1:22
Telephone [1] - 46:15
term [2] - 17:16, 37:23
TERRELL [1] - 3:3
test [1] - 34:6
Texas [1] - 3:19
THE [67] - 1:1, 1:2, 6:16, 6:24, 8:10, 9:16, 10:22, 13:4, 13:7, 13:12, 14:24, 15:16, 16:12, 16:15, 16:17, 17:1, 18:6, 21:5, 22:4, 23:10, 23:15, 25:15, 26:9, 26:14, 26:17, 26:20, 27:1, 27:24, 28:15, 29:6, 30:4, 31:23, 31:25, 32:13, 33:14, 33:16, 34:17, 34:24, 35:2, 35:13, 35:18, 35:20, 36:6, 37:3, 37:11, 37:15, 37:25, 38:4, 38:7, 38:12, 38:17, 38:25, 39:11, 40:6, 41:12, 41:16, 41:22, 42:23, 43:17, 44:9, 45:9, 45:12, 45:16, 45:22, 46:1, 46:6, 46:9
they've [6] - 10:24, 11:13, 11:14, 20:3, 25:20, 31:15, 34:18, 36:1
thi [1] - 23:11
thinking [1] - 19:15
third [1] - 21:14
THOMAS [1] - 4:20
three [3] - 13:14, 41:8, 43:6
throw [1] - 44:11
tie [2] - 9:24, 11:2
today [5] - 11:21, 11:24, 38:8, 41:17, 46:10
together [1] - 45:1
Tom [2] - 6:19, 7:12
took [3] - 12:13, 27:9, 30:21
Toppoly [1] - 5:10
tore [2] - 27:23, 29:15
torn [4] - 16:10, 17:9, 17:15, 29:12
TPO [1] - 7:4
track [2] - 8:15, 46:11
tracks [1] - 44:17
transcript [4] - 12:5,

13:14, 14:6, 22:9
translation [1] - 15:5
trapped [1] - 30:5
tremendously [1] - 21:1
trial [13] - 30:10, 30:20, 39:4, 39:21, 39:23, 40:24, 41:11, 43:24, 43:25, 44:3, 44:17
tried [6] - 15:22, 22:7, 22:24, 24:14, 43:6, 45:21
TROP [1] - 3:18
try [3] - 14:4, 36:19, 39:8
trying [11] - 10:25, 11:16, 16:17, 17:3, 17:23, 18:13, 22:14, 37:17, 38:14, 40:15, 44:15
TUNNELL [1] - 2:5
turn [2] - 18:16, 23:1
turns [1] - 19:13
two [5] - 17:12, 24:18, 27:7, 27:8, 39:6
type [3] - 10:7, 10:10, 12:3

# U

U.S.A [1] - 4:18
U.S.D.C.J [1] - 1:24
ultimately [1] - 10:10
unclear [1] - 18:8
under [8] - 14:19, 16:8, 16:13, 18:2, 18:10, 40:17, 40:21, 40:25
Understood [1] - 41:12
understood [6] - 13:17, 16:23, 17:15, 21:25, 39:11, 45:3
unformed [1] - 36:9
Unidentified [1] - 45:14
unique [1] - 37:14
United [1] - 43:12
UNITED [1] - 1:1
unless [1] - 40:13
unmoored [1] - 17:2
unnecessarily [1] - 39:24
unsubstantiated [1] - 36:10
unwilling [1] - 42:17
up [17] - 8:12, 11:2, 19:22, 24:23, 29:2,

39:13, 39:16, 40:3, 40:9, 40:16, 41:8, 41:22, 42:24, 43:18, 44:6, 44:7, 45:24
USA [2] - 2:25, 6:6

# V

validity [1] - 39:4
verify [1] - 34:6
version [1] - 14:17
versions [8] - 9:6, 9:24, 11:9, 11:10, 11:12, 14:11, 18:24
view [12] - 9:2, 12:25, 18:14, 19:12, 19:23, 21:21, 22:1, 26:15, 26:21, 31:8, 31:9, 34:8
Virginia [2] - 2:17, 5:6
Voice [1] - 45:11

# W

wade [1] - 36:11
Wade [1] - 7:10
WADE [2] - 3:16, 7:9
wait [3] - 26:14
waiting [1] - 41:19
waiving [1] - 24:7
WALKER [2] - 3:5, 5:17
wants [1] - 23:12
Washington [4] - 4:6, 5:9, 5:13, 5:22
Watch [2] - 2:21, 8:8
water [1] - 38:9
weaker [1] - 26:4
Weid [1] - 7:17
weigh [2] - 38:14, 46:7
whole [1] - 16:6
WIED [1] - 3:5
WILLIAM [2] - 2:23, 3:16
William [1] - 7:23
willing [2] - 20:22
Wilmington [1] - 1:21
Wintek [3] - 5:10, 5:10, 7:4
withholding [1] - 25:8
witnesses [1] - 42:18
WOODS [32] - 2:8, 10:2, 11:22, 13:5, 13:9, 15:1, 16:5, 16:14, 16:16, 16:25, 17:7, 20:13, 21:23, 24:2, 26:11, 26:15, 26:19, 26:25, 27:19,

28:5, 31:22, 33:15, 33:17, 35:17, 35:19, 36:5, 38:6, 41:15, 41:18, 42:5, 43:15, 45:25
Woods [20] - 6:21, 9:13, 10:2, 13:16, 14:3, 14:24, 20:12, 23:24, 25:19, 26:10, 26:17, 28:22, 28:24, 31:21, 33:15, 35:4, 35:14, 36:4, 41:13, 45:22
word [1] - 32:17
words [1] - 11:3
works [2] - 14:23, 30:24
wrangle [1] - 42:16
written [2] - 12:10, 12:15
wrote [1] - 26:2

# X

XYZ [3] - 27:2, 31:2, 31:4

# Y

year [2] - 10:16, 24:21
yesterday [1] - 32:19
YORK [1] - 5:5
York [10] - 4:9, 4:16, 4:23, 6:4, 7:4, 7:14
Young [2] - 7:16, 7:20
YOUNG [3] - 2:13, 3:2, 4:2

EXHIBIT 21

CONFIDENTIAL EXHIBIT

EXHIBIT 22

CONFIDENTIAL EXHIBIT

EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. | ) | |
| and HONEYWELL INTELLECTUAL | ) | |
| PROPERTIES INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 04-1338-KAJ |
| v. | ) | (Consolidated) |
| | ) | |
| APPLE COMPUTER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' NOTICE OF RULE 30(b)(6) DEPOSITION
OF DEFENDANT HITACHI DISPLAYS, LTD.**

PLEASE TAKE NOTICE that, in accordance with Rules 26, 30(b)(6), and 32 of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Defendant Hitachi Displays, Ltd. through one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf and who are most knowledgeable with respect to the deposition subjects set forth in Schedule A at the time and place as set forth below.

Said deposition will be taken on January 10, 2007 at 9:00 a.m. and will be taken at the United States Embassy in Tokyo, Japan or at such other time and place as may be agreed to by the parties. The deposition will continue until completed as provided in the Federal Rules of Civil Procedure. The deposition will be recorded stenographically and by videotape. You are invited to attend and cross-examine.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

_____

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
lpolizoti@mnat.com
mgranovsky@mnat.com
  *Attorneys for Honeywell International Inc.*
  *and Honeywell Intellectual Properties Inc.*

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Michael D. Okerlund
Denise S. Rahne
Peter N. Surdo
Marta M. Chou
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
Alan E. McKenna
Jeremy C. McDiarmid
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA  02199
(617) 267-2300

November 14, 2006

## SCHEDULE A

**I.     DEFINITIONS**

1.      The term "communication" means any transmission of thoughts, opinions or information, whether written or oral and including without limitation, letters, memoranda, meetings, discussions, conversations, negotiations, agreements, understandings, inquiries, notes, telegrams, and/or e-mail.

2.      The terms "Plaintiffs" or "Honeywell" shall mean Honeywell International Inc. and Honeywell Intellectual Properties Inc., including officers, agents, employees, and representatives of each entity.

3.      The terms "Hitachi," "you," or "your" shall refer to Hitachi Displays, Ltd., Hitachi, Ltd., Hitachi Display Devices, Ltd., and Hitachi Electronic Devices (USA), Inc. and includes, without limitation, your divisions, subsidiaries, directors, agents, representatives, and employees and any predecessor with an interest.

4.      The term "Complaint" shall mean the Complaint and any amended Complaints filed by Plaintiffs in this action.

5.      The term "Named Defendants" shall mean the defendants named in Honeywell's Complaints and any Amended Complaints in the Honeywell actions (C.A. Nos. 04-CV-1337, 1338, and 05-CV-874).

6.      The term "your corporate organization" shall mean Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Display Devices, Ltd., and Hitachi Electronic Devices (USA), Inc.

7.      The phrase "referring or relating to" as used herein, includes, but is not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing,

evidencing, identifying, in connection with, pertaining to, respecting, regarding, responding to, or in any way logically or factually relevant to the matter described in the request.

8.     The term "Person" shall mean any individual, partnership, incorporated or unincorporated association, and any other legal or commercial entity.

9.     The term "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

10.     The term "Document" shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise as contemplated by Fed. R. Civ. P. 26 in any form, whether on paper, in electronic form, on microfilm, or otherwise.  Documents generated by another party or non-party and in your possession, custody or control are within the scope of this request.

11.     The term "Identify" when used in reference to a person means to provide the following information:

        a.     Full name;

        b.     Present or last known address; and

        c.     Present or last known telephone number.

12.     The terms "'371 patent" and "patent-in-suit" shall mean United States Patent No. 5,280,371 entitled "Directional Diffuser For A Liquid Crystal Display."

13.     The term "LCD Modules" shall mean liquid crystal display modules.

14.     The terms "Accused Module" or "Accused Modules" shall mean those LCD modules identified by Honeywell in its Response No. 1 and Supplemental Response Nos. 1 and 3 to Hitachi Displays, Ltd.'s First Set of Interrogatories (Nos. 1-10) (and any and all generations or variations of those modules and/or substantially similar modules) that were made, used, sold or

2

offered for sale in, or imported into, the United States by you at any time from October 1998 to the present.

15.    The term "lighting components" shall include any and all components of your Accused Modules used to illuminate the LCD panel, and include without limitation backlight units, lamps, LEDs, reflectors, diffusers, polarizers, light pipes/wedges, prismatic/lenticular films and combinations thereof.

## II.    TIME PERIOD

16.    Unless otherwise specifically noted, these deposition topics cover the time period October 1998 to present.

## III.    RULE 30(b)(6) TOPICS

### Hitachi's General Entity Information

1.    Your corporate organization and structure, including the identity of departments, affiliates, groups and individuals with decision-making authority regarding the design, manufacture and distribution of LCD modules.

### Hitachi's LCD Modules

2.    All communications between you and any third party regarding Honeywell's claims of infringement of the '371 Patent including, but not limited to any formal and/or informal discussions between you and any third party relating to any request to be defended against Honeywell's claims of infringement.

3.    The circumstances under which you began manufacturing and/or offering for sale LCD modules with two lenticular and/or prismatic films, including but not limited to a description of the technical and marketing reasons for such development.

4.    For each of the Accused Modules, from the date of their first manufacture to the present:

       a.    the manner in which you identify each such Accused Module, including but not limited to any alphanumeric, model number or other label used to identify each such module;

       b.    any and all generations or variations of such Accused Module, including the criteria used to identify generational modules;

       c.    the operation and configuration of all lighting components of each accused module, particularly including but not limited to: the presence of lenticular and/or prismatic films and/or structures; the orientation of such structures with regard to the LCD panel and the reasons for such orientation;

       d.    the extent to which your customers or intended customers participated in the design of each such Accused Module, including the identification of any design ideas or changes provided by such customers or intended customers;

       e.    to the extent you only assemble, but do not manufacture any lighting component used in such module, an identification of where you obtain such component parts including without limitation who manufactures and supplies lenticular and/or prismatic films used in such Accused Module; and

       f.    the identification by Bates ranges and the authentication of the technical documents and specifications related to your Accused Modules produced in response to Honeywell's Requests for Production of Documents.

5.     Any and all efforts undertaken by or at your direction to investigate whether any LCD Module manufactured, assembled and/or sold by you may infringe the '371 patent, including but not limited to obtaining opinions of counsel and all facts that support your assertion that any Accused Modules manufactured by you do not infringe the '371 patent.

6.     The date upon and circumstances under which you first learned of the existence of the '371 patent.

7.     Your knowledge of, and experiences with any of the named inventors of the '371 patent and their body of work, including but not limited to your consideration of the subject matter of the presentation entitled "Directional Diffuser Lens Array for Backlit LCDs" given at or about the Japan Display SID Conference in October 1992.

8.     Consideration, development and implementation of any alternative design(s) for your Accused Modules relating to different angles of rotation for any lenticular and/or prismatic structures contained thereon; and/or relating to the use of two such structures as opposed to any other number.

**Hitachi's Accounting and Financial Reporting Methods**

9.     Hitachi's accounting and financial reporting standards, systems, and methods.

10.     The method and/or procedure for gathering the data used to calculate and/or compute gross revenue, net revenue, cost of revenue, gross margin, selling, general, administrative and other expenses, income before income taxes and net income on a monthly, quarterly, and annual basis or any other timeframe Hitachi regularly keeps records for its sales.

**Hitachi's Distribution, Sale and Marketing of Accused Products**

11.     For each Accused Module, from the date of its first sale to the present:

      a.      the projected and actual sales revenue generated by month, quarter and year;

      b.      the projected and actual sales expenses or cost of sales incurred by month, quarter and year; and

      c.      the projected and actual profits and profit margins generated and how profit is calculated.

12.    The**:**

      a.      process by which Hitachi distributes and sells its LCD Modules, including without limitation a description of the channel(s) of distribution utilized by Hitachi;

      b.      market in the United States and worldwide for Hitachi's LCD Modules; and

      c.      process by which Hitachi markets or promotes the sale of its LCD Modules in the United States and worldwide, including any and all advertising or promotional materials and/or campaigns.

13.    The target market and/or customer base for Hitachi LCD Modules, and the reason(s) why Hitachi targets this market and/or customer base, including without limitation any and all advertising, marketing and/or promotional efforts Hitachi has undertaken or considered undertaking relating to the Accused Modules.

14.    Hitachi's policy and marketing program for maintaining their patent monopolies by not licensing others to use their inventions or by granting licenses under special conditions designed to preserve that monopoly.

15.     Hitachi's policies and practices for the negotiation of royalty or license agreements for the use of patented technology, including without limitation, licensing of third party technology for Hitachi's use, the licensing of Hitachi's technology to third parties, and the cross licensing of technologies.

16.      Hitachi's license agreements, including the terms and conditions of such license agreements, related to consumer electronics entered into by Hitachi.

17.     Royalty or license fees received or paid by Hitachi from October 1998 to the present for any non-consumer license.

18.     Any analysis of Hitachi's domestic and foreign market share from October 1998 to the present, including but not limited to, the size of the markets and expected growth in the markets, prices in the markets, supply and demand in the markets, competition and expected future competition in the markets, and factors that might influence the markets.

19.     Hitachi's pricing and pricing policies and strategy for the sale of each of the Accused Modules.

20.     The effect of selling the Accused Modules in promoting the sale of other products of Hitachi, including but not limited to the existing value of the Accused Modules as a generator of sales of other items, and the extent of such derivative or convoyed sales.

21.     Information and documents relied on or reviewed by the corporate representative(s) for purposes of becoming knowledgeable about the topics set forth in  Schedule A.

22.     Hitachi's document retention policies from October 1998 to the present.

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, Christopher E. Chalsen, Hua Chen, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Kevin C. Ecker, Amy Elizabeth Evans, York M. Faulkner, Maria Granovsky, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Angie Hankins, Richard L. Horwitz, Dan C. Hu, John T. Johnson, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Matthew W. King, Stephen S. Korniczky, Gary William Lipkin, Hamilton Loeb, Robert L. Maier, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, John F. Presper, Alana A. Prills, Steven J. Rizzi, Lawrence Rosenthal, Avelyn M. Ross, Philip A. Rovner, Diana M. Sangelli, Robert C. Scheinfeld, Carl E. Schlier, Chad Michael Shandler, John W. Shaw, Matthew W. Siegal, Neil P. Sirota, Monte Terrell Squire, William J. Wade, Roderick B. Williams, Edward R. Yoches.

I further certify that on November 14, 2006, I caused to be served true and correct copies of the foregoing on the following in the manner indicated:

## BY HAND & E-MAIL:

John W. Shaw
Monte T. Squire
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, DE 19899-0391

*Attorneys for Sony Corporation*

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

*Attorneys for Arima Display Corporation*

Karen L. Pascale
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building, 17th floor
1000 West Street
Wilmington, DE  19801

*Attorneys for Optrex America, Inc.*

Philip A. Rovner
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for Fuji Photo Film Co., Ltd.*
*and Fuji Photo Film U.S.A., Inc.*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

*Attorneys for Casio Computer Co., Ltd.*

David J. Margules
John M. Seaman
BOUCHARD MARGULES
  & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington DE 19801

*Attorneys for Citizen Watch Co., Ltd.*
*and Citizen Displays Co., Ltd.*

Robert J. Katzenstein
Robert Karl Beste, III
SMITH, KATZENSTEIN
  & FURLOW LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

*Attorneys for Seiko Epson Corporation*

Daniel V. Folt
Gary W. Lipkin
DUANE MORRIS LLP
1100 North Market Street, 12th Floor
Wilmington, DE  19801-1246

*Attorneys for InnoLux Display Corporation*

2

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for Hitachi Displays, Ltd., Toppoly*
*Optoelectronics Corp., Koninklijke Philips*
*Electronics N.V., Philips Electronics North*
*America Corp., Wintek Corp., Wintek*
*Electro-Optics Corporation, Samsung SDI*
*America, Inc.  and Samsung SDI Co., Ltd.*


**BY E-MAIL:**

Robert C. Scheinfeld                        Andrew M. Ollis
Neil P. Sirota                              OBLON, SPIVAK, McCLELLAND,
BAKER BOTTS L.L.P.                            MAIER & NEUSTADT, P.C.
30 Rockefeller Plaza                        1940 Duke Street
New York, NY  10112                         Alexandria, VA  22314
robert.scheinfeld@bakerbotts.com            aollis@oblon.com

*Attorneys for Hitachi Displays, Ltd.*       *Attorneys for Optrex America, Inc.*

Elizabeth A. Niemeyer
FINNEGAN, HENDERSON,
   FARABOW, GARRETT
   & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001
elizabeth.niemeyer@finnegan.com

York M. Faulkner
FINNEGAN, HENDERSON,
   FARABOW, GARRETT
   & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA  20190
york.faulkner@finnegan.com

*Attorneys for Toppoly Optoelectronics,
Wintek Corp. and Wintek Electro-Optics
Corporation*

Stephen S. Korniczky
Elizabeth L. Brann
PAUL, HASTINGS, JANOFSKY
   & WALKER LLP
3579 Valley Centre Drive
San Diego, CA  92130
stephen korniczky@paulhastings.com

Hamilton Loeb
PAUL, HASTINGS, JANOFSKY
   & WALKER LLP
875 15th Street, N.W.
Washington, DC  20005
hamiltonloeb@paulhastings.com

*Attorneys for Samsung SDI Co., Ltd.
and Samsung SDI America, Inc.*

John T. Johnson
FISH & RICHARDSON P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY  10022-4611
HONEYWELL-FR@fr.com

*Attorneys for Casio Computer Co., Ltd.*

Alan M. Grimaldi
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
grimaldia@howrey.com

*Attorneys for Koninklijke Philips Electronics
N.V., and Philips Electronics North America
Corporation*

John Flock
KENYON & KENYON
One Broadway
New York, NY  10004-1050
jflock@kenyon.com

*Attorneys for Sony Corporation*

Stuart Lubitz
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
slubitz@hhlaw.com

*Attorneys for Seiko Epson Corporation, Citizen
Watch Co., Ltd. and Citizen Displays Co., Ltd.*

Lawrence Rosenthal
Matthew W. Siegal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
msiegal@stroock.com

*Attorneys for Fuji Photo Film Co., Ltd.*
*and Fuji Photo Film U.S.A., Inc.*

Dan C. Hu
TROP PRUNER & HU, P.C.
1616 South Voss Road
Suite 750
Houston, TX  77057-2631
hu@tphm.com

*Attorneys for Arima Display Corporation*

Donald R. McPhail
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006
**drmcphail@duanemorris.com**

*Attorneys for InnoLux Display Corporation*

*/s/ Leslie A. Polizoti*

Leslie A. Polizoti (#4299)
lpolizoti@mnat.com

545530

5