
**Potter Anderson & Corroon LLP**

David E. Moore

Attorney at Law
dmoore@potteranderson.com
302 984-6147  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

**www.potteranderson.com**

May 31, 2007
(Public Version Dated:  June 7, 2007)

**VIA ELECTRONIC FILING**

Magistrate Judge Mary Pat Thynge
United States District Court
    for the District of Delaware
844 King Street
Wilmington, DE  19801

**PUBLIC VERSION**

    Re:    *Honeywell Int'l, Inc. et al. v. Apple Computer, Inc. et al.*
        **C. A. No. 04-1338 (\*\*\*)**

Dear Magistrate Judge Thynge:

    Throughout this litigation, Wintek Corporation and Wintek Electro-Optics Corporation have complied with the Federal Rules to provide Honeywell's attorneys with discovery relating to a wide range of accused Wintek devices.  Wintek has prepared knowledgeable corporate witnesses to testify in response to twenty-two broadly-phrased Rule 30(b)(6) deposition topics. Those witnesses provided Honeywell with three-full days of unconstrained designee testimony regarding the structure of Wintek's accused products, Wintek's corporate structure and general business practices, and Wintek's sales of the accused LCD modules to third parties.  Those witnesses specially created exhibits and compilations providing Honeywell with information responsive to its Rule 30(b)(6) topics where no document existed to serve the purpose.  Those witnesses also worked nights and weekends to prepare corporate testimony relating to numerous newly "accused modules" first identified by Honeywell shortly before it was scheduled to take its Taiwan depositions.

    Honeywell now comes before this Court accusing Wintek of discovery abuses and demanding sanctions.  It is Honeywell, however, that is twisting the scope of its patent claims like the proverbial "nose of wax," *White v. Dunbar*, 119 U.S. 47, 51 (1886)[1] to obtain

---

[1]  Cited in *Catanzaro v. Masco Corp.*, 423 F. Supp. 415, 437 (D. Del. 1976).  In *White v. Dunbar*, Justice Bradley pointedly observed that:

"Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction . . .. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the

Magistrate Judge Mary Pat Thynge
May 31, 2007 (Public Version Dated:  June 7, 2007)
Page 2

burdensome discovery in defiance of the limitations imposed (and repeatedly reaffirmed) by
Judge Jordan.   Contrary to this Court's express direction, Honeywell has not yet provided
Wintek with claim charts specifically identifying its infringement contentions against specific
Wintek products or explaining its remarkable definition of "relevant" discovery.   Instead, it
stretches the words expressly defining the scope of its claimed invention—i.e., "slight[2]
misalignment"—to justify discovery demands reaching more than 67% of the range between
total alignment (at 0˚ and 90˚) and total misalignment (at 45˚).

Wintek recognizes that this Court has set a time for a *Markman* hearing and claim
construction. Honeywell seems to believe that the absence of a final claim construction gives it a
free shot at any discovery it demands.

## I.    Honeywell has provided no cognizable basis to accuse several Wintek products of infringement

Wintek has objected to Honeywell's demand for broad discovery of Wintek LCD
modules having BEF films positioned at ▮▮▮▮▮▮▮ to the LCD panel.  In support of its
position, Honeywell points to testimony by Wintek's Rule 30(b)(6) designees regarding ▮▮
▮▮▮▮▮▮▮▮▮▮.   Honeywell argues that such testimony admits that
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
(May 30 letter at 2; emphasis and quotation marks in original.) The argument misrepresents Dr.
Huang's testimony.    Dr.  Huang  first  testified  that  ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
(Exh. 1 to May 30 letter at 114:12-14), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
(*id.* at 115:17-20).   Nowhere in his testimony did Dr. Huang state or suggest that
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, Dr. Huang testified
that the issue was academic because ▮▮▮▮▮▮▮▮
▮▮▮▮▮.  He never said the term ▮▮▮▮▮▮—that phrase is a concoction invented by
Honeywell's attorneys.

Wintek additionally has refused to produce sales information for those products that
Honeywell has failed to adequately identify, or where Wintek did not make or control the
product.  For example, Wintek has refused to produce sales information on certain products
identified by Honeywell that do not correspond to any known Wintek product, or that do not
even include any BEF sheets. (*See e.g.*, Exh. A, at 7.) Wintek has also refused to produce sales
information on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮. (*Id.*, at 10–11.)  For instance,

---

public, as well as an evasion of the law, to construe it in a manner different from the plain import
of its terms."
[2]   *See* MERRIAM WEBSTER'S ONLINE DICTIONARY:  slight, *adj.*  2: small of its kind or in amount
<a *slight* chance> <a *slight* odor of gas>.

Magistrate Judge Mary Pat Thynge
May 31, 2007 (Public Version Dated: June 7, 2007)
Page 3

██████████████████████████████████████████████████████ [3]

████████████████████████████████████████████████

     Yet Honeywell's letter only addresses products having angles of alignment of ████
██████████████████████████. Regarding each product for which Wintek has not provided
sales information, Honeywell has failed to do what Judge Jordan ordered long ago—fully answer
Wintek's contention interrogatory and explain why Honeywell contends those products infringe.

     During the July 21, 2006 hearing, Judge Jordan clearly instructed Honeywell on its
obligation to provide complete responses to the contention interrogatory:

> So I'm hoping this is clear enough in telling you people, Honeywell, if you want
> to sue people, fine, sue them. But have in mind exactly what it is you're accusing
> them of doing. And that means if you say they've produced an accused device,
> you need to have some basis for saying they have an accused device and ask
> them, okay, tell us about this accused device.

(July 21, 2006, Tr. at 19-20.)

     Although Honeywell provided its infringement contention for some Wintek products, it
has provided no detailed allegations for those products that have no BEF sheets or angles of
alignment ████████. Honeywell simply ignored those products in its interrogatory answer, even
though it continues to assert, without justification, that they infringe. The only accused part
numbers that have angles of alignment of ████████ for which Wintek has not provided complete
sales information are ████████████████████████. Despite repeated statements from Wintek that Honeywell
has no basis to accuse those parts and despite clear instructions from Judge Jordan, Honeywell
has yet to provide claim charts disclosing its infringement contentions against the products.
(July 21, 2006 Tr. at 27–31, "Honeywell, you are obligated to answer contention interrogatories
even early in the case.") Moreover, Honeywell has not explained how accusing products with a
specification of ████████ angle does not render its claim invalid—undoubtedly prior art devices
with ██████████████████████████████████ Absent any objective
basis for believing that a class of LCD modules built to ████████ infringes Honeywell's patent,
Wintek is unwilling to proceed with collecting, reviewing, and providing such sales discovery.

     Even in its May 30 letter to the Court, Honeywell provided no explanation for how
products with rotation angles greater than ██ infringe a claim requiring "a slight misalignment
between said lenslets and said liquid crystal panel." The specification at best discloses a "slight
misalignment" as between 2° and 16° (a 14° range). A 14° range represents approximately 33%
of the total range of alignments between 0°/90° (i.e., total alignment) and 45° (i.e., total

---

[3] Honeywell's May 30 letter states that it has accused "one such module of infringing the '371
patent because of its approximate 1° of rotation." Honeywel fails to identify the module, ████████.
██████████████████████████████████████████████████████.

Magistrate Judge Mary Pat Thynge
May 31, 2007 (Public Version Dated:  June 7, 2007)
Page 4

misalignment), after allowing for a roughly 2° degree buffer between its invention and the prior art.  Wintek has provided Honeywell with sales information related to products that have an additional ███████, which is ██████ beyond the disclosed range and up to ████ of the total possible range of alignments.  (Exh. 3 to Honeywell May 30 letter.)  Any discovery beyond that point trespasses beyond any reasonable interpretation of the possible claims and defenses in this case.

Honeywell concludes by accusing Wintek of trying to "thwart the discovery process" by objecting to unlimited discovery prior to a formal claim construction.  Yet, the governing case law, which permits a party to refuse to answer requests for admission that call for legal conclusions, and yet simultaneously refusing to produce sales information on products beyond any reasonably interpretation of the claims.  *Tulip Computers Int'l, B.V. v. Dell Computers Corp.*, 210 F.R.D. 100 (D. Del. 2002).  At the extremes, represented by the Wintek products at issue here, Honeywell's claims cease to have meaning.  Wintek followed Judge Jordan's instructions by producing technical documents and a Rule 30(b)(6) witness on these products, even though Honeywell has failed to identify why it contends the products infringe.  Yet, there must be a point at which Wintek no longer has to "tell [Honeywell] about these accused products" until Honeywell discloses its full infringement contentions.

**II.**  **Wintek's corporate witnesses were properly prepared for the topics identified in Honeywell's first Notice of Deposition**

Honeywell provides selective snippets and misrepresents Wintek's testimony to support its argument that Wintek's witnesses were unprepared for deposition.  Conspicuously absent from Honeywell's May 30 letter to the Court is Honeywell's Notice of Deposition or any recitation of the noticed topics.  A complete copy of Honeywell's notice is attached, because the adequacy of Wintek's Rule 30(b)(6) testimony should not be judged in a vacuum.  (Exh. B.)

In fact, the dispute boils down to Wintek's position that the witnesses had to be prepared to testify on a reasonable interpretation of the noticed topics, and Honeywell's position that the witnesses should have been prepared to testify on anything and everything.  (Exh. C.[4])  For example, Honeywell loudly tout's Wintek's inability to correlate certain documents to specifically accused modules.  (May 30 letter at 3.)  Yet Honeywell provided no notice that it would seek such testimony.  (Exh. B; Exh. C at 14 of 27.)  Not surprisingly, therefore, Honeywell was able to ask questions of Wintek that generated the response, "I don't know."  But that is not determinative of whether Wintek's witnesses were prepared to testify.  Honeywell's letters to Wintek complaining about the witnesses' preparation are replete with examples of questions on subject matter that Wintek could not reasonably have anticipated.

Consequently, even if Honeywell's request to continue the deposition were granted, Wintek would be in the same position as when the deposition occurred.  Honeywell has persistently refused to identify how Wintek allegedly misconstrued the noticed topics and how

---

[4]  Wintek has included the complete correspondence between the parties on this issue.  Page numbers refer to the reference page at the bottom of each page, which is identified as "X of 27."

Magistrate Judge Mary Pat Thynge
May 31, 2007 (Public Version Dated: June 7, 2007)
Page 5

those topics require the testimony that Honeywell says it wants. Pointing to isolated instances in which the witness said, "I don't know" is not helpful. In reality, Wintek made two senior members of its company available to Honeywell as Rule 30(b)(6) designees, each of whom testified at length on the noticed topics and provided information even beyond the scope of the noticed topics (no effort was made to prevent answers to questions beyond the scope).

Moreover, contrary to Honeywell's assertions, Wintek went to extraordinary lengths to accommodate Honeywell's requests for information. However, Wintek's efforts to prepare are described, for example, by Honeywell disparagingly as a "document dump." (May 30 letter at 3.) The documents produced at the deposition were specifically prepared to assist the witnesses in giving complete and accurate testimony. Dr. Jimmy Huang prepared a detailed chart summarizing the rotation of BEF used in each accused product and the date of any change of that angle. (Exh. D; Exh. C at Topic 4a, b, c.) Similarly, Ms. Susie Lee and her staff prepared detailed sales information, broken down by quarter for each product to ensure that her testimony was accurate. (See Exh. E; Exh. C at Topics 10 .)

Most offensive is the statement made by Honeywell's counsel, Alan McKenna, that, in response to a request █████████████████████████████ "Dr. Huang replied . . . he could not find anyone and that he saw no reason to try and contact anyone over the weekend." (May 30 letter at 4, fn3; cf. Ex. 1 to May 30 at 164:8–17.) The statement openly misrepresents Dr. Huang's testimony. Dr. Huang clearly testified that because he was being deposed in Taipei until late Friday afternoon "when we went back, we were not able to reach any . . . product manager by using a phone call." (Ex. 1 to May 30 at 164:11-17.) In fact, Dr. Huang and his staff worked through the weekend, at Mr. McKenna's request, generating additional documentation for use at the continuation of Dr. Huang's deposition. (Exh. F). There is no question that the opportunity to follow-up on this point was non-existent, and that Dr. Huang made great efforts to prepare for the noticed topics. Honeywell failed to report these efforts to the Court, but instead misrepresents the one instance in which Dr. Huang was not able to find the requested information.

Wintek also produced technical information at the deposition about Wintek products that Honeywell had accused shortly before the deposition. Wintek made great efforts to quickly collect the documents for Honeywell's convenience and use at the deposition. Each document related to a late-identified product. However, a full document collection and production had not been completed as of the deposition—a fact Honeywell knew when it chose to proceed with the depositions in January. In fact, Wintek had offered to work with Honeywell to reschedule the deposition at a later time, after a full production on the newly accused products had been made. But, Honeywell declined the offer. Wintek also produced a handful of license agreements. But Honeywell already possessed the license agreement ██████████████████. (Exh. C at 26 of 27.) That Honeywell received another copy from Wintek at the deposition should not have impacted Honeywell's ability to ask questions. Wintek produced an additional ██████ ███████. Honeywell chose to not ask questions about those documents.

Magistrate Judge Mary Pat Thynge
May 31, 2007 (Public Version Dated:  June 7, 2007)
Page 6

Honeywell accuses Wintek of "flaunting [sic: flauting] [] its discovery obligations." (May 30 letter at 5.)  Yet the efforts by the witnesses to prepare for their depositions and investigate issues beyond the scope of the notice over the weekend demonstrates how serious Wintek took its obligations.

**III.    Honeywell's requested sanction is inappropriate and unwarranted**

At the time of the deposition in January 2007, Wintek had specifically informed Honeywell that Wintek's production was substantially incomplete as a result of Honeywell's recent identification of additional products.  Wintek recommended delaying the deposition until Wintek had had an opportunity to collect and produce responsive documents. (Exh. C at 26 of 27.)  Honeywell decided to go forward regardless.  On March 27, 2007, Honeywell served its second Notice of Deposition, seeking testimony on additional documents.  Now that Wintek has substantially completed its production and Honeywell has served a second notice of deposition, Honeywell seeks to continue the January depositions and asks that Wintek be ordered to subsidize Honeywell's expenses.  Not only does Honeywell's request for such an extraordinary sanction lack support, but it also appears to be an effort to "do over" the January deposition, based on a more robust document production, and have Wintek pay for Honeywell's second notice of deposition.

Wintek does not dispute that Honeywell is entitled to take reasonable discovery.  Wintek strongly opposes Honeywell's attempts to shift its own costs to Wintek or to get a second bite at the apple, especially when it knowingly chose to proceed with less than a complete production of documents on newly accused products.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM/msb
798725 / 29017

Enclosures
cc:    Clerk of the Court
        Counsel of Record