# EXHIBIT F

1

```
 1                    THE UNITED STATES DISTRICT COURT

 2                   IN AND FOR THE DISTRICT OF DELAWARE

 3                              -  -  -

 4    HONEYWELL INTERNATIONAL, INC.      :    CIVIL ACTIONS
      et al.                            :
 5                                       :
                     Plaintiffs,         :
 6                                       :
                v.                       :
 7                                       :
      AUDIOVOX COMMUNICATIONS CORP.,     :
 8    et al.                            :
                                         :    NO. 04-1337 (KAJ)
 9                   Defendants.         :
      ----------------------------------
10    HONEYWELL INTERNATIONAL, INC.      :
      et al.                            :
11                                       :
                     Plaintiffs,         :
12                                       :
                v.                       :
13                                       :
      APPLE COMPUTER, INC.,  et al.,     :
14                                       :    NO. 04-1338 (KAJ)
                     Defendants.         :
15    ----------------------------------
      OPTREX AMERICA, INC.,              :
16                                       :
                     Plaintiff,          :
17                                       :
                v.                       :
18                                       :
      HONEYWELL INTERNATIONAL, INC.      :
19    et al.                            :
                                         :    NO. 04-1536 (KAJ)
20                   Defendants.
                                   -  -  -
21
                          Wilmington, Delaware
22               Friday, July 21, 2006 at 11:03 a.m.
                         TELEPHONE CONFERENCE
23
                              -  -  -
24
      BEFORE:        HONORABLE KENT A. JORDAN, U.S.D.C.J.
25
                              -  -  -
```

```
1    APPEARANCES:

2
         ASHBY & GEDDES
3        BY:  STEVEN J. BALICK, ESQ.

4                   and

5        MORRIS NICHOLS ARSHT & TUNNELL
         BY:  JULIA HEANEY, ESQ.,
6
                   and
7
         ROBINS KAPLAN MILLER & CIRESI, L.L.P
8        BY:  MARTIN R. LUECK, ESQ.,
              MATTHEW L. WOODS, ESQ., and
9             STACIE E. OBERTS, ESQ.
              (Minneapolis, Minnesota)
10
                   Counsel on behalf of Honeywell
11                 International, Inc., and Honeywell
                   Intellectual Properties, Inc.
12

13       YOUNG CONAWAY STARGATT & TAYLOR
         BY:  KAREN L. PASCALE, ESQ.
14
                   and
15
         OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
16       BY:  ALEXANDER E. GASSER, ESQ., and
              JOHN F. PRESPER, ESQ.
17            (Alexandria, Virginia)

18                 Counsel for Optrex America, Inc.

19
         BOUCHARD MARGULES & FRIEDLANDER
20       BY:  JAMES GORDON McMILLAN, III, ESQ.

21                 Counsel for Citizen Watch Co., Ltd.;
                   Citizen Displays Co., Ltd.
22

23       FISH & RICHARDSON, P.C.
         BY:  WILLIAM J. MARSDEN, ESQ.
24
                   Counsel for ID Tech;  International
25                 Display Technology USA Inc.
```

1    APPEARANCES: (Continued)

2

3            YOUNG CONAWAY STARGATT & TAYLOR
             BY:  MONTE' TERRELL SQUIRE, ESQ.

4                    and

5            PAUL HASTINGS JANOFSKY & WALKER, LLP
             BY:  PETER J. WIED, ESQ., and

6                 HUA CHEN, ESQ.
                  (Los Angeles, California)

7                    Counsel for Quanta Display Inc.

8

9            SMITH KATZENSTEIN & FURLOW
             BY:  JOELLE ELLEN POLESKY, ESQ.

10                   and

11           HOGAN & HARTSON, LLP

12           BY:  ROBERT J. BENSON, ESQ.
                  (Los Angeles, California)

13                   Counsel for Seiko Epson Corp.,

14                   Sanyo Epson Imaging Devices Corporation

15

16           RICHARDS LAYTON & FINGER
             BY:  WILLIAM J. WADE, ESQ.

17                   and

18           TROP PRUNER & HU
             BY:  DAN C. HU, ESQ.

19                (Houston, Texas)

20                   Counsel for Arima Display

21

22

23

24

25

4

1    APPEARANCES: (Continued:

2

3        YOUNG CONAWAY STARGATT & TAYLOR
         BY:  JOHN W. SHAW, ESQ.

4                  and

5        KENYON & KENYON
         BY:  ROBERT L. HAILS, ESQ.
6             (Washington, District of Columbia)

7                  and

8        KENYON & KENYON
         BY:  JOHN FLOCK, ESQ.
9             (New York, New York)

10                 Counsel for Sony Corporation, and Sony
                   Corporation of America
11

12       POTTER ANDERSON & CORROON, LLP
         BY:  PHILIP A. ROVNER, ESQ.
13
                   and
14
         STROOCK & STROOCK & LAVAN LLP
15       BY:  LAWRENCE ROSENTHAL, ESQ.,
              MATTHEW W. SIEGAL, ESQ., and
16            KEVIN ECKER, ESQ.
              (New York, New York)
17
                   Counsel for Fuji Photo Film Co., Ltd.
18                 and Fuji Photo Film U.S.A. Inc.

19
         FISH & RICHARDSON, P.C.
20       BY:  THOMAS L. HALKOWSKI, ESQ.

21                 and

22       FISH & RICHARDSON, P.C.
         BY:  JOHN T. JOHNSON, ESQ.
23            (New York, New York)

24                 Counsel for Casio, Inc., Casio Computer

25

1    APPEARANCES: (Continued)

2

3            POTTER ANDERSON & CORROON, LLP
        BY:  RICHARD L. HORWITZ, ESQ.

4                    and

5            FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:  YORK FAULKNER, ESQ.
6                (Reston, Virginia)

7                    and

8            FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:  ELIZABETH A. NIEMEYER, ESQ.
9                (Washington, District of Columbia))

10                    Counsel for Toppoly Optoelectronics, Wintek
                    Corp., Wintek Electro-Optics Corporation
11
                    and
12
        HOWREY, LLP
13        BY:  NELSON M. KEE, ESQ.
                (Washington, District of Columbia)
14
                    Counsel for Philips Electronics
15                    North America Corp.

16                    and

17        PAUL HASTINGS JANOFSKY & WALKER, LLP
        BY:  ELIZABETH L. BRANN, ESQ.
18                (San Diego, California)

19                    Counsel for Samsung SDI

20                    and

21        BAKER & McKENZIE, LLP
        BY:  KEVEN M. O'BRIEN, ESQ.
22                (Washington, District of Columbia)

23                    Counsel for Boe-Hydis Technology

24                    and

25

1    APPEARANCES: (Continued)

2

3         BAKER BOTTS, L.L.P.
         BY:  NEIL P. SIROTA, ESQ., and
4              ROBERT MAIER, ESQ.
              (New York, New York)

5                   Counsel for Hitachi, Ltd., Hitachi
                   Displays, Ltd., Hitachi Display Devices,
6                  Ltd., Hitachi Electronic Devices (USA),
                   Inc.

7

8
                             Brian P. Gaffigan
9                            Registered Merit Reporter

10

11

12                        - oOo -

13              P R O C E E D I N G S

14         REPORTER'S NOTE:  The following telephone

15    conference was held in chambers, beginning at 11:03 a.m.)

16         THE COURT:  Hi, this is Judge Jordan.  Who do I

17    have on the line?

18         MS. HEANEY:  Good morning, Your Honor.  It's

19    Julie Heaney for Honeywell.  I'm covering for Tom Grimm

20    this morning; and from Robins Kaplan, we have Martin Lueck,

21    Matthew Woods and Stacie Oberts.

22         MR. MORRIS:  Also, John Day for Honeywell in the

23    1337 action, Your Honor.

24         THE COURT:  All right.

25         MR. HORWITZ:  Good morning, Your Honor.  This

1    is Rich Horwitz at Potter Anderson for a number of the

2    defendants.  With me for Boe-Hydis, Kevin O'Brien; for

3    Hitachi, Neil Sirota and Robert Maier; for Phillips, we

4    have Nelson Kee; for TPO and Wintek, York Faulkner and

5    Elizabeth Niemeyer; and for Samsung, Elizabeth Brann.

6              MR. ROVNER:  Your Honor, this is Phil Rovner

7    for defendant Fuji Photo.  With me on the line is Lawrence

8    Rosenthal, Matt Siegal, I believe, and Kevin Ecker.

9              MR. WADE:  Good morning, Your Honor.  It's Bill

10   Wade for Arima Display.  With me on the phone is Dan Hu.

11             MR. HALKOWSKI:  Good morning, Your Honor.  This

12   is Tom Halkowski with Fish & Richardson on behalf of the

13   Casio defendants.  With me on the line are John Johnson from

14   our New York office.

15             MR. SQUIRE:  Good morning, Your Honor.  This is

16   Monte' Squire from Young Conaway representing defendant

17   Quanta Display.  With me on the line are Peter Weid and Hua

18   Chen from Paul Hastings in Los Angeles.

19             MS. PASCALE:  Your Honor, this is Karen Pascale

20   from Young Conaway for Optrex America, the plaintiff in the

21   1536 action.  And on the line, my co-counsel from Oblon

22   Spivak is Alex Gasser and John Presper.

23             MR. MARSDEN:  Good morning, Your Honor.  William

24   Marsden from Fish & Richardson for defendant ID Tech.

25             MR. SHAW:  Good morning, Your Honor.  John Shaw

1    for defendant Sony Corporation. With me from Kenyon &

2    Kenyon, John Flock and Bob Hails.

3            MS. POLESKY:  Good morning, Your Honor.  Joelle

4    Polesky on behalf of Seiko Epson and Sanyo Epson Imaging

5    Devices.  On the line is our co-counsel Robert Benson from

6    Hogan & Hartson.

7            MR. McMILLAN:  Good morning, Your Honor.  It's

8    Jay McMillan for Citizen Watch Company and Citizen Displays

9    Company.

10           THE COURT:  Anybody else?

11           Well, we're here to deal with a few issues.

12    And if you've got me on speaker, you may need to pick up

13    because, particularly if you are going to be speaking, it

14    makes it difficult for me to keep the conference call on

15    track if I can't insert myself in the discussion.  And if

16    you're moving papers around next to your telephone, that

17    also can cause some interference or noise that makes it

18    hard to hear.

19           Why don't we start with the first sort of

20    fundamental problem it looks like we're dealing with here

21    which is the assertion on both sides that discovery isn't

22    moving forward.  I've got of the defendants saying to me,

23    Honeywell won't give basic contention discovery with respect

24    to its infringement positions, nor will it provide discovery

25    without assurances that discovery won't be shared among

1    defendants.  And I take it that the defendants disagree with

2    both those positions that they view Honeywell as having

3    taken.  And on the other side, I have Honeywell arguing to

4    me that the defendants are just failing to provide some

5    basic information with respect to the same or similar

6    versions of accused devices.

7              So, let me start by asking Honeywell some

8    questions here.  First, I assume, of course, that you have

9    read your opponents' correspondence.  Who is going to be

10   speaking for Honeywell on this?

11             MR. LEUCK:  Your Honor, this is Martin Lueck.  I

12   had planned to address the issues of Honeywell's discovery

13   that we are seeking from the defendants.  Mr. Woods has been

14   more involved in the Honeywell discovery going in the other

15   direction and is prepared to speak to that.

16             THE COURT:  Well, Mr. Lueck, I'll give you first

17   crack.  You've seen the opponents here come forward and say

18   you've essentially posed discovery that says tell us

19   everything that fits our patent.  Even though you haven't

20   framed it in that particular language, you've taken the

21   elements of the claim, framed it as a discovery response

22   and served it on all manufacturers.  And that the defense

23   says that's not what I had ordered.  I had ordered that you,

24   in some fashion, tie the request for additional versions

25   to identified models.  What is your response to that

1    argument?

2              MR. WOODS:  Your Honor, this is Matt Woods.

3    Mr. Lueck asked that I look into this particular one issue.

4              We believe, Your Honor, that the discovery that

5    Honeywell is asking for is narrowly tailored to go to the

6    heart of the infringement claim, to remove any burden upon

7    defendants and to essentially avoid any type of prejudice to

8    Honeywell, should discovery be limited in a way that could

9    eventually or could be argued down the road as effecting

10   some type of claim splitting and ultimately res judicata.

11             Honeywell has endeavored, in keeping with

12   the exchange that Your Honor had with Mr. Lueck back in

13   September, and the Court's October 7th order, to narrowly

14   define the discovery to those modules which are

15   substantially the same as those that were identified in

16   the prior correspondence that was submitted last year.  The

17   patent, Claim 3 of the '371 patent in particular, has some

18   very discrete elements and is very straightforward.  The

19   discovery that we are seeking is well known in the industry

20   to the extent that what we are asking for are modules that

21   have four basic elements.

22             THE COURT:  Yes, I read your papers.  So I

23   understand your position that, hey, we're just asking them

24   to tell us whether they've got things that meet these

25   elements.  I mean that much is clear to me.  I'm trying to

1    get you to respond to the assertion that this does not

2    square up with the obligation to tie your discovery requests

3    to specifically identified models.  In other words, as the

4    defense reads my previous statements and orders, they say,

5    hey, judge, you told these people they're not allowed just

6    to say to us, in effect, tell us what infringes.  They have

7    to identify a product and then they can ask about it.  And

8    then we had a further discussion where you said, well, what

9    about later versions or other versions and how would you

10   identify such versions?  And that the crafted attempt to

11   meet Honeywell's concern was to say if you can ask about

12   versions that are linked to identified models, that would

13   be okay.  And, judge, they've gone outside that.  Now all

14   they've done is propounded discovery that says tell us,

15   again tell us what you have that infringes.

16        That's the argument I'm trying to get you to

17   meet.  So it's not helpful to me at this juncture for you to

18   characterize it as narrowly drawn, et cetera.  I need you to

19   go back into the history of the case and tell me how what

20   you are asking for is actually based on what went before

21   today in the case.

22        MR. WOODS:  Yes, Your Honor.  And I will do so,

23   because I believe that history is exactly on point with what

24   brings us here today.

25        Back in September 9th, when we were having the

1    discussion with the Court on this very issue, Mr. Lueck had

2    an exchange with Your Honor with regard to the amount and

3    the type of discovery that we believed was appropriate.  And

4    that exchange can be found on page 31 of the September 9th

5    transcript.

6              Your Honor specifically asked Mr. Lueck:

7    Well, when you say the same or similar, what do you mean?

8    Mr. Lueck explained exactly what he meant by that and,

9    incidently, or not coincidentally, that is the exact scope

10   of discovery that we have put in to written discovery.  And

11   Your Honor said:  All right.  Does everybody understand the

12   discovery I'm telling them they're entitled to?

13             We took that exchange as it was then embodied in

14   the Court's order of October 7th and used that as the basis

15   for the written discovery.

16             One of the outstanding issues that have been

17   raised historically in the past is that the customer

18   defendants, those who are now stayed, were not in a position

19   to comply with the Court's October 7th order because, as I

20   believe Mr. Horwitz himself pointed out in the September

21   9th hearing, they didn't know.  They didn't know what was

22   substantially the same, or at least they claimed not to.

23   And so we were faced with a situation where, based on the

24   exchange from the September 9th hearing and the Court's

25   order which recognized, as we view it, Your Honor, that

1    the LCD modules that are substantially -- that have

2    substantially the same structure are in fact relevant

3    to the analysis.

4                    THE COURT:  Did you --

5                    MR. WOODS:  The question then, of course, is

6    what does it mean to be substantially the same?

7                    THE COURT:  Yes, that's right.  The question is

8    what does it mean to be substantially the same?

9                    MR. WOODS:  And, Your Honor, that is exactly the

10   criteria that were discussed on page 31 of the September 9th

11   hearing.

12                   THE COURT:  Right, and it seems to me that

13   maybe you're reading this without having read the previous

14   three pages of the transcript, which I have also re-read.

15                   But let me have you hold right there for a

16   second, Mr. Woods.  I'll give you another crack at this but

17   on this specific point about what the parties understood

18   coming out of that hearing, I understand, I think, what

19   Honeywell is saying it got from that September conference

20   and why it's framed its discovery as it has.

21                   Let me have somebody -- not everybody.  There

22   needs to be a designee on behalf of the defendants here to

23   address the defense perspective on this.  Who is speaking

24   for the defense?

25                   MR. HORWITZ:  Your Honor, it's Rich Horwitz.

1          I don't have too much to say, Your Honor,

2   because I think you framed it exactly.  I think that what

3   Mr. Woods is doing is basically repackaging what we've

4   gone over a few times before to try to require us, the

5   defendants, to have the burden of going through all of

6   our products.  And if you look at that transcript in its

7   entirety, you look at the October order and you look at what

8   Your Honor told us later, which we've also quoted to the

9   Court in my July 20th letter in May of 2006, it's clear from

10  our perspective, and I think from the record, that what the

11  Court was talking about was the prior and later versions and

12  not simply the language that parrots the claim language.

13  And what we have asked Honeywell to do is for those products

14  that it's already broken down, tell us how they infringe.

15  Point us to specific things that meet a specific limitation.

16  And to the extent we have been able to determine what an

17  earlier or later version is, that would inform us in making

18  that decision but it would not require us, which is what

19  they're doing now under what they say is removing the

20  burden, it's doing exactly the opposite, Your Honor.  What

21  they want you to do is just give them everything, which

22  Your Honor has told them a number of times is not the way

23  discovery works.

24          THE COURT:  All right.  Go ahead, Mr. Woods.

25  Your crack.

1          MR. WOODS:  Yes, Your Honor.  I would disagree

2    with Mr. Horwitz for the following reasons:  First of all,

3    the prior discussion was done in the context of changing the

4    focus from end products to modules.  And if we're going to

5    look at the history of the case, there is a translation

6    function that needs to occur here because, as Your Honor

7    well knows, the first round or the first group of defendants

8    were in end product manufacturers and so Your Honor's

9    comments and the discussions were framed in that context.

10          The question becomes, clearly, there was a sense

11    that we were entitled to more discovery than just those that

12    were expressly identified.  And the question then becomes to

13    what extent.  Mr. Horwitz has said there is some kind of

14    mystery about our claim.  We have endeavored to show and

15    have explained to them --

16          THE COURT:  Well, hold on.  We're going to talk

17    about your contention, the adequacy of your contention

18    interrogatory responses in a moment.  And I'm rejecting,

19    I'll just tell you right now, I'm rejecting the notion that

20    the defense response to discovery depends upon how you

21    respond to their discovery.  I'm not going to have any more

22    of this you go first stuff.  I tried to say that to you

23    folks repeatedly.  So those things aren't linked in my mind

24    and you don't have to argue about them being linked.

25          Right now, I'm just giving you your last

1    opportunity to explain to me why you think the way you

2    framed your demand for additional discovery from these folks

3    is correct in light of what we've had to say to each other

4    over the course of a few meetings and many, many months.

5        MR. WOODS:  Your Honor, thank you.  And we would

6    respectfully submit that if you look at that whole exchange,

7    as Mr. Horwitz was suggesting, there was clearly a sense,

8    as we believe we're entitled to under the law, to get some

9    discovery about modules other than those that have been

10   expressly located and expressly torn down and expressly

11   identified.

12       THE COURT:  And now, when you say you are

13   entitled to under the law.

14       MR. WOODS:  Correct.

15       THE COURT:  Well, you know what?

16       MR. WOODS:  Your Honor?

17       THE COURT:  I guess I'm trying to pull from you

18   where you think this is linked to my instructions to you

19   folks that you had an obligation to tell people, look, this

20   is your product.  We think it infringes.  Here is why.  You

21   know, we're accusing you of infringing.  We've got something

22   that we believe infringes.  That ought to be the baseline.

23   Everybody should have understood that from what I've said to

24   people repeatedly.

25       MR. WOODS:  Correct.

1          THE COURT:  Now, they are saying you have

2   unmoored your discovery from that foundation, and you have

3   heard Mr. Horwitz explain why they believe that.  I'm trying

4   to get you to explain to me how it is you are rooted in that

5   foundation, because that is the foundational principle from

6   which I am operating.

7          MR. WOODS:  Yes, Your Honor.  The request we

8   have made absolutely is rooted in the foundation.  We

9   identified a series of modules that have been torn down and

10  are accused of infringement.  As we have told defendants,

11  those modules have the following criteria.  They are back

12  lit.  They have an LCD panel and they have two particular

13  arrays, at least one of which misaligned, and that is the

14  commonality amongst everything that has been identified and

15  torn down.  And that is how we, Honeywell, understood the

16  term "substantially the same" to be implemented in the

17  Court's order.

18          So we have said to defendants we are asking you

19  to identify those modules which are substantially the same

20  as those which were expressly identified by model number

21  and the way we are defining "substantially the same" is as

22  Mr. Lueck and you discussed at the September 9th hearing on

23  page 31 where we are trying to provide objective criteria

24  for doing that analysis.

25          And so we have in fact moored our request for

1    discovery not for some fishing expedition, not for

2    everything under the sun but rather take those modules that

3    have been expressly identified and look at these features.

4    And we are asking for everything that has those same

5    features.

6           THE COURT: Okay. I have your position and I

7    can only apologize to the parties because to the extent I've

8    been unclear before, it's not been intentional. I just

9    can't agree with Honeywell here because I'm bound, I think,

10   to agree that what you have done is to say, under the

11   rubric of "substantially the same," is to just recast as a

12   discovery request, tell me everything that infringes my

13   claim. And that is precisely that I have been trying to

14   avoid in this matter, because I view that as a reversal, a

15   basic reversal of the obligation of parties in litigation.

16          You know, maybe I'll turn out to be wrong about

17   this but I don't think you can go to somebody and say I'm

18   suing you and now tell me why I'm suing you, which is what

19   in effect this discovery demands. And I had attempted

20   previously to say, as clearly as I knew how but evidently

21   not clearly enough, you identify what the problem is and

22   they'll have to respond to that. And then Mr. Lueck, as a

23   skillful advocate, would have said, well, there may be

24   versions of this very same device which we can't say by

25   model number because if we're one letter off -- now, I'm

1   interpolating, not precisely quoting what he had to say.  If

2   we're one letter off or one number off in the alphanumeric

3   sequence in the model number, they could say, well, you

4   didn't ask about that and that's not fair, and I was

5   agreeing well that isn't fair.  You know, if you've got a

6   next generation of the very thing you've produced, the fact

7   that you can't name it with precision using the alphanumeric

8   sequence attached to that make or model number shouldn't

9   prevent you from getting discovery on that.

10           That was not intended to open the door for

11   you to say, now, and anything else that meets the claim

12   language, tell us about that, too.  I don't view that as

13   proper discovery.  I mean that turns the process on its head

14   and I'm just not having it.

15           So to the extent I left people thinking that was

16   the problem or the way I wanted you to proceed, I apologize

17   because it isn't.  And I reject the assertion that this

18   raises res judicata problems for you or claim splitting.  If

19   you sue them on a specific thing and in the course of

20   discovery, they don't tell you about a different product,

21   nobody I think in their right mind is going to say, well,

22   you gave up a claim against that accused product because

23   you never had the chance to accuse it.  So I view that as

24   a red herring.

25           So I'm hoping this is clear enough in telling

1    people, Honeywell, if you want to sue people, fine, sue

2    them.  But have in mind exactly what it is you're accusing

3    them of doing.  And that means if you say they've produced

4    an accused device, you need to have some basis for saying

5    they have an accused device and ask them, okay, tell us

6    about this accused device.  You can't say to them, look

7    across your product line and tell us everything that meets

8    our claim language.

9              So have I been clear enough?  You could

10   disagree with me, obviously, that this is a correct or an

11   appropriate approach but at least you understand what I'm

12   getting at now, Mr. Lueck and Mr. Woods?

13             MR. WOODS:  Your Honor, we certainly understand.

14   And I, with Your Honor's indulgence, just have to ask if I

15   could just say one thing, please, because we do respectfully

16   disagree with the Court about the concern about the

17   potential for res judicata here.  We do recognize that there

18   is law out there like the Sharp case that has been cited

19   that talk about the standard for getting additional module

20   model numbers in an industry where models change.

21             We have proposed to the defendants we're

22   willing to buy their modules.  We're willing to buy it.

23   Historically, you can't get these things any more and yet

24   they're still within the statute of limitations period.  For

25   all these reasons, because respectfully we believe what Your

1    Honor is doing is having a tremendously prejudicial effect

2    upon Honeywell's claim, we would respectfully be allowed to

3    brief this issue.  We understand where the Court is going.

4    Nevertheless, we feel obligated to create a record here.

5              THE COURT:  You've got a record.  You have a

6    record which is adequate for review.  I don't think any

7    reviewing court is going to look at this and say you didn't

8    make your position clear.  I don't need any more paper on

9    this.  You don't need to persuade me that you have a

10   position and you think the position is well founded.  My job

11   is not to say to you, to every party that has got a position

12   well, okay, go ahead and give me another 40 pages of paper

13   about it.  We have been over this now.  This is at least the

14   third time I have taken a crack at this.  And I've done it

15   in print and I've done it orally and I just don't need more

16   paper on it.

17             It could be I'm wrong.  I certainly get

18   reversed; to my chagrin, I do; but I don't think you've got

19   the better of it.  I think I understand the argument that

20   you've made and what I'm telling you is you don't have the

21   better of the argument in my view.  So let's move forward

22   with the case you've got.

23             MR. WOODS:  Yes, Your Honor.  One final point of

24   clarification.

25             You had asked if we understood.  Is it Your

1    Honor's view that Honeywell is entitled to any discovery

2    beyond those modules expressly identified?  And if so,

3    could Your Honor clarify for us exactly where that goes?

4          THE COURT:  I'm not sure I can clarify it any

5    more than I have.  And I'll have to confess to you that

6    we're in a region where apparently I haven't been clear

7    before.  I have tried to say, and, you know, the fact is I

8    don't know that I can say it any better than I just said it,

9    which is going to be in this transcript and you can take a

10   look at it.

11         The point is to avoid people having to dodge

12   behind a particular sequence of numbers associated with an

13   alphanumeric make or model identification.  You wanted to

14   know initially, my recollection is, you were trying to make

15   sure that they didn't dodge appropriate discovery by having

16   a next generation of a model that you had identified but

17   which you couldn't identify with precision because you

18   didn't happen to know that particular model number, whatever

19   it is.

20         That's the kind of thing that I think is fairly

21   within the ambit of further discovery.  You identify some-

22   thing specific and then you can inquire about generational

23   changes or additions to something that you've identified.

24   But you can't take that which I have tried to give you as a

25   fair ambit beyond a specific piece of hardware that you know

1   about and turn it into what you have, which is here is our

2   claim language.  Tell us what you've got that infringes.

3   That's what you have done in effect.  I agree with the

4   defendants, that's what you have done in effect, and that's

5   what I'm telling you you can't do.  So please take what I

6   have given you, do your best with it.

7           I'm expecting the defendants to play fair on

8   this.  Mr. Horwitz, do you understand what I'm asking?

9           MR. HORWITZ:  Yes, sir.

10          THE COURT:  Okay.  Well, are you speaking for

11  the defense on thi point?

12          MR. HORWITZ:  I think if anybody wants to chime

13  in, they can chime in now.  But I think what you said is

14  consistent with what you have told us before.

15          THE COURT:  All right.  Then move forward with

16  what I'm telling you now and let's not go back over this yet

17  again.  Let's put it to bed and move forward.

18          All right.  Now, we do have an argument about

19  Honeywell's responses to contention interrogatories and

20  also argument about conditioning discovery responses on

21  confidentiality.  You've heard what the defense has said

22  about that.

23          And again, I don't know whether this is yours,

24  Mr. Woods or Mr. Lueck.  Whoever it is, could you please

25  respond to the assertion that you're just not giving claim

1   discovery the way you are obligated to.

2              MR. WOODS:  Your Honor, there are several issues

3   there that have been raised.

4              With regard to claim construction, or contention

5   discovery, we have provided with the defendants with the

6   generalized information that we can have right now that

7   would avoid waiving the privilege at this point.  We have

8   asked for.  At the earliest point in time, we served the

9   defendants with the discovery upon them to get the very

10  documents upon which we can supplement our contentions.

11  And it was only later that the defendants served their

12  contention discovery.  And Your Honor has now, we have clear

13  direction with regard to getting the documents, and we have

14  tried to tell the defendants provide us the documents and

15  then we will supplement our contentions.

16             Everyone knows that we have identified modules

17  and the basis for infringement is those modules have LCD

18  panels, they have a back light and they have two lens

19  arrays, at least one of which is misaligned.  There is no

20  mystery here.  What we have asked for, and what we have been

21  asking for since March of this year, has been the documents

22  from the defendants to which we can point to basically prove

23  up our case.  And we are certainly prepared to do that as

24  soon as we can provide it, as soon as that documentation is

25  provided.

1              With regard to protective order issues, our

2     position is and has always been we asked for documents and

3     all we're asking for is a mutual exchange of documents.

4     The parties have been working on a protective order.

5     Candidly, I'm not sure I know what protective order is at

6     issue because we certainly understand the local rule of the

7     court and the parties are working on a more formalized

8     protective order, but we are not withholding any documents

9     from a protective order standpoint.  Rather, we're saying,

10    defendants, you did not produce documents to us.  Can't we

11    just agree upon a mutual exchange of documents?  Because it

12    seems only fair that since we were the first ones to submit

13    document requests, that the parties, at a very minimum,

14    should do a mutual exchange.  And that is acceptable to us.

15              THE COURT:  All right.  Who has got this one for

16    the defendants?

17              MR. HORWITZ:  Your Honor, this is Rich Horwitz

18    again.

19              I don't understand what contentions Mr. Woods

20    says they've already given us.  We've given you some exam-

21    ples and basically they said you meet the claim limitations

22    without anything specific and they have products that they

23    have broken down and that they have said infringe.  And what

24    the defendants are asking is for them to tell us the basis

25    of that claim of infringement.

1    It's not privileged. We're not asking them to

2  give us the memo that they wrote to the client that says we

3  think these 10 products infringe and here is why and this

4  is a stronger argument and this is a weaker argument. We

5  don't need that. We're not entitled to the work product.

6  What we are entitled to are the factual contentions, the

7  bases of alleged infringement, and that is what we're not

8  getting.

9    THE COURT: All right. Now, stop there.

10    Go ahead, Mr. Woods. Respond to that, please.

11    MR. WOODS: Your Honor, we provided. And I

12  provided it just a few minutes ago and I can provide it

13  again.

14    THE COURT: Well, wait, wait, wait.

15    MR. WOODS: In our view, the claim is very

16  straightforward.

17    THE COURT: Well, stop, Mr. Woods, because I

18  don't think you're answering the point here.

19    MR. WOODS: Okay.

20    THE COURT: I don't think anybody is disagreeing

21  with you that you said what you view as the essential

22  elements of the claim. And now what they are telling me is,

23  look, as to -- pick a defendant. As to Apple -- well, pick

24  a manufacturer defendant. Select a name. Whoever it is.

25    MR. WOODS: I'll pick Seiko Epson.

1    THE COURT: Fine, Seiko Epson. That Seiko Epson

2    says to you, okay, you've accused my product XYZ of

3    infringing. What is your basis for saying that that product

4    infringes? And then it's incumbent upon you as a matter of

5    contention to say, well, one of the claims is that there be

6    a back lit aspect. And here, in your product, is a back lit

7    aspect. It's this piece of hardware. It has two lens.

8    Yours has two lens. We can identify those there, this and

9    this. And one of them is misaligned in the product we took

10   from you. This is how. We say that this one or both are

11   misaligned.

12   I mean I understand that to be what the defense

13   is saying. That you've got to take it out of the abstract,

14   which is claim language, and apply it to devices to say, and

15   here is why we say your device infringes. That is our

16   contention about the facts of your thing that meet our claim

17   limitations. That's what I understand them to be saying

18   you're declining to do at this point.

19   MR. WOODS: No, Your Honor. On the contrary, we

20   have done that. We have told them that every single module

21   that we have accused has those. Now, the question is, how

22   do we prove that? We have a module. We have a module we

23   tore it down.

24   THE COURT: Did you identify things? I mean

25   when you say we've told them all of them infringe, have you

1   said to them here is a model, here is how it infringes?

2   These are the limitations of the claim and here is how this

3   model infringes?  That is what they're saying you haven't

4   done.  Are you telling me you have done that?

5           MR. WOODS:  No, no, Your Honor.  We have told

6   them this as a general matter.  We have also agreed to

7   provide supplementation on that.  What we're asking is, is

8   give us the assembly drawing so we can point to them.  So we

9   can say -- all right.  So, for example, let's take a Seiko

10  Epson module.  There will be assembly drawings that show

11  exactly where those are, all the elements.  And all we're

12  saying is give us the documents so we have a common means

13  of discussion so that we can point to the very thing that

14  is the lens array.

15          THE COURT:  All right.  Mr. Horwitz, what is

16  your response to the assertion that they're happy to respond

17  but you won't give them basic documentation that will allow

18  a foundation for discussion with precision?

19          MR. HORWITZ:  Well, a couple of things, Your

20  Honor.  And then maybe Robert Benson, who represents Seiko

21  Epson who has been involved directly in this back and forth

22  of Mr. Woods, may want to chime in.

23          But I think that even without those documents --

24  and I can tell you.  Mr. Woods talked about document

25  production.  I didn't get there yet and I can tell you

1    about that.  But even without the document, they shouldn't

2    be able to give up the basis on which they made the claims

3    from the broken down module.  That information isn't

4    privileged.  They should have given that to us when they

5    responded the first time.  They should give it to us now.

6                THE COURT:  All right.  Well, go ahead and pass

7    the ball to your colleague then.

8                MR. BENSON:  Okay.  This is Robert Benson.  And

9    just reiterating what Mr. Horwitz was saying there, we did

10   serve a couple of interrogatories on Honeywell asking for

11   the basis of its infringement contentions and the details of

12   its analysis of those modules it has already torn down.

13               We understand that Honeywell has identified at

14   least seven or eight distinct model numbers and I believe

15   they tore down more than 10 different physical modules and,

16   on that basis of that tear down, have accused the modules

17   of infringement.

18               We asked them state the basis for that.  State

19   the details of your analysis.  They came back and said we

20   can't do that because it's privileged because it was our

21   prefiling investigation.  And what we are asking for I think

22   in level of specificity is what Your Honor suggested a

23   moment ago, which is you broke down this module.  Which part

24   of this module are you contending meets the claim limitation

25   "light source?"  Which component in this module are you

1   contending is the lens array?  We asked them what is the

2   degree of misalignment you measured?  They said I can't tell

3   you that either.

4           THE COURT:  All right.  Good enough.  Look,

5   here is the short of it.  Once again I'm trapped in the

6   "you go first" game that you folks are playing.  It's got

7   to stop.

8           Honeywell, you are obligated to answer

9   contention interrogatories even early in the case.  That's

10  why in the trial management order that I put out; and I

11  believe I put out in this case, because I'm pretty sure I

12  put it out in all of my cases; you've got an obligation.  I

13  encourage the parties to file contention interrogatories

14  early and I require answers early; which is not to say that

15  you can't amend your answer as you get greater detailed

16  information, as they come forward with spec drawings that

17  you asked for; that you can't supplement, if you think

18  you need to, contention interrogatory response; or if you

19  think your response is adequate, that you can't then use

20  that other information later in the trial if you think it

21  bolsters the contention interrogatory response you took

22  before.  But what you can't do is to hang back and say

23  I'm not telling you until you tell me.  That isn't how it

24  works.

25           So to the extent the defense is complaining that

1  you won't tell them, look, in response to your request for

2  how Model XYZ infringes, here is our response.  It infringes

3  in the following way:  Claim 1 says you've got to have a

4  light source.  In this XYZ model, the light source is A,

5  technical description, the best you can give it.  Whatever

6  you are able to do.

7          In short, it's certainly not work product

8  protected that you have a view about why they infringe.

9  Give them your view about how it is the things they make

10  infringe your patent.  You're obligated to do it.  That is

11  what contention interrogatories are about.  So that ought

12  to be clear.  I hope it's clear now.

13          And on the defense side, I'm not sure why

14  you're not giving them drawings they're asking for; but if

15  they've got an accused device and they have identified it

16  as an infringing device, and they're asking for background

17  information about it, including technical drawings, I'm not

18  sure what possible reason you could have for not giving it

19  to them.  Give it to them.

20          Does that iron you out the problem?  Is there

21  still a problem here with that instruction given, Mr. Woods?

22          MR. WOODS:  No, Your Honor.

23          THE COURT:  Mr. Horwitz?

24          MR. HORWITZ:  No, Your Honor.

25          THE COURT:  Okay.  Well, then I'm nonplussed

1    that it requires a court's intervention to deal with this

2    which seems to me to be a pretty basic discovery point

3    in patent cases but I'm glad to hear it's resolved.

4              Okay.  Now we had some other letters that were

5    flying around that indicated there may be some additional

6    problems that need to be addressed.

7              MR. HORWITZ:  Your Honor, this is Rich Horwitz.

8              There was another category of information that

9    we included in the general defendants' letter and that

10   relates to information on Honeywell's product.  Could I

11   address that now before we move on to the defendants'

12   specific issues?

13             THE COURT:  That's fine.

14             MR. HORWITZ:  Your Honor, we think that they

15   should be required to produce the information that we

16   requested about their own products.  It's difficult to

17   just take their word for it when they say that they don't

18   infringe.  But even beyond that, in the letter that came

19   from Mr. Grimm yesterday, in response, all they say is that

20   they didn't manufacture anything embodying the claims of the

21   '371 patent and obviously they could have sold or offered to

22   sell something that embodied the claims of the '371 patent.

23   The information on their product is important to us for a

24   number of reasons, including marking.  If they manufactured,

25   sold anything in the market, that obviously has implications

1    in this case.  Honeywell also has been in this business for

2    a long time.  Some of their own material might be prior art

3    for the '371 patent.

4         Even if they're right, Your Honor, that none of

5    their products are embodiments, the '371 patent, that in

6    and of itself is relevant to a lack of commercial success

7    argument that we would make.  If they didn't use it, how

8    good could it be?  And in that context, we would be

9    entitled to information, possibly in a summary fashion, on

10   whatever sales they made of their own products that didn't

11   incorporate the '371 patent.

12        So those are the reasons why we think they can't

13   just stonewall us as they have done so far on that issue.

14             THE COURT:  Who has got this for plaintiffs?

15             MR. WOODS:  I do, Your Honor.  Matt Woods here.

16             THE COURT:  Okay.

17             MR. WOODS:  There has been no stonewalling at

18   all.  This case is about portable electronics consumer

19   goods.  Honeywell has never been, and is not now, a

20   participant in that industry.

21        As the defendants all well know through detailed

22   interrogatories answers, the invention of the '371 patent

23   came out of work on a cockpit display for Boeing, the 777

24   Boeing aircrafts, as the defendants also know through

25   detailed interrogatory answers.  There, the decision was

1    made not to incorporate the invention into that display.

2          Now, Honeywell has agreed to produce all the

3    documents regarding the invention process.  They have also

4    agreed to produce all the documents even on a broader

5    category regarding this cockpit display project so that,

6    in fact, the defendants can verify and test Honeywell's

7    allegations.

8          So really we view this as a nonissue.  And

9    we're prepared to produce the documents.  I think what we're

10   hearing from Mr. Horwitz, well, we're entitled to basically

11   get everything from Honeywell.  Well, you know, we're

12   suggesting we're producing all the documents that are

13   related to this effort.  We're certainly producing all the

14   prior art that we're aware of.  And we're just saying, look,

15   everything else I think falls in the realm of a fishing

16   expedition because there is no definition to it.

17         THE COURT:  Mr. Horwitz, do you want to respond

18   to the assertion that to the extent they've got anything

19   responsive, they're giving it to you?

20         MR. HORWITZ:  Well, I guess it depends on what

21   they believe is responsive, Your Honor, and what we believe

22   is responsive.  I'm not sure what else to say.  We think

23   it's a broader inquiry than they think it is.

24         THE COURT:  Well --

25         MR. ROSENTHAL:  Your Honor, this is Lawrence

1    Rosenthal for Fuji.  Could I make an observation here?

2                    THE COURT:  Yes, you can quickly, but it's got

3    to be -- yes, go ahead.

4                    MR. ROSENTHAL:  I think Mr. Woods said it all

5    when he said, in one breath, this is about portable devices,

6    and in the next breath, but the patent is all about cockpit

7    displays.

8                    I think while their discovery is focused on

9    portable devices, we're entitled to take discovery on

10   cockpit displays because that was the focus in 1990 when

11   the invention was, apparently, it was a practice given to a

12   Japanese company.  That much we know.

13                   THE COURT:  Well, hold on just a second.

14                   Mr. Woods, are you suggesting that they can't

15   take discovery into the development of the invention,

16   itself?

17                   MR. WOODS:  Absolutely not, Your Honor.

18                   THE COURT:  Yes.

19                   MR. WOODS:  Of course, they can.

20                   THE COURT:  Well, I didn't think you were.

21   Looks, it sounds to me like this isn't a dispute that is

22   much of a dispute.  You guys need to get back and talk to

23   each other sensibly about this.

24                   I hear the plaintiff saying they're giving you

25   information about the development of the invention, prior

1    art to the extent they know about it, and if they've got

2    information or products associated with the invention,

3    you're getting them.

4              Have I heard you right, Mr. Woods?

5              MR. WOODS:  That is correct, Your Honor.

6              THE COURT:  Well, then, I don't know what it

7    is exactly that the defendants are complaining about

8    except you think maybe there is something that they're not

9    giving you, but your unformed and, at this point at least,

10   unsubstantiated concern that you are not getting something

11   you are entitled to isn't a basis on which I can wade in,

12   but they're telling me you are getting it and I'm not

13   hearing a basis for disputing that they're giving you what

14   they have that is associated with the development of the

15   patent and whatever product they have which itself would

16   practice the patented invention.  So that disposes of that.

17             Maybe at some point you will have something more

18   to tell me, and I'm not obviously closing the door on any

19   party from further discovery discussions to try to work out

20   issues or concerns that anybody has.  Nor am I saying you

21   can't come back to me if you have a well founded concern

22   that I can help you with, but this doesn't fit that

23   description.

24             Mr. Horwitz, I didn't mean to blow past your

25   letter without having covered things you needed to be

1    covered.  Have we done that now, sir?

2                   MR. HORWITZ:  I think we have, Your Honor.  Yes.

3                   THE COURT:  Well, then there were other concerns

4    that were raised.  In particular, the issue about selecting

5    the role of lead defendant.  So I'm shifting off discovery

6    at this point.  Let me just say does anybody else have a

7    discovery issue that they think needs to be surfaced and has

8    been the subject of a letter and is properly raised on this

9    call and I haven't addressed it yet?

10                  (Pause.)

11                  THE COURT:  Okay.  I'm hearing nothing.

12                  MR. HAILS:  Your Honor, this is Robert Hails

13   for Sony.  We did have one letter directed to the license

14   defense issue that is unique to us.

15                  THE COURT:  All right.

16                  MR. HAILS:  And, real quickly, this is just an

17   issue where we're trying to get information from Honeywell

18   to demonstrate that there is an honest dispute over the

19   scope of the license.  Again, this is defining how many

20   products are going to be properly concerned at issue in

21   this particular case.  We have a license for our client in

22   which Honeywell agreed not to sue us on camcorders and that

23   term is defined on the license, and then they sued us on

24   camcorders.

25                  THE COURT:  Well, let me stop you there because

1    this is memorialized on a July 20th letter from Mr. Shaw;

2    right?

3              MR. HAILS:  That's right.

4              THE COURT:  Honeywell, did you get a chance to

5    respond to this?

6              MR. WOODS:  No, we did not, Your Honor.

7              THE COURT:  Well, this one isn't properly before

8    me today.  I've got a procedure for this and it requires me

9    to give both sides a chance to get their oar on the water

10   before we get on the phone.

11             MR. HAILS:  Okay.

12             THE COURT:  So with that understanding, is there

13   any other discovery dispute where people have had a chance

14   to weigh in that I have, not for lack of trying, but I have

15   overlooked at this point and not addressed?

16             (Pause.)

17             THE COURT:  Okay.  Then let's go ahead and move

18   to the lead counsel dispute.

19             MR. ROVNER:  Your Honor, this is Phil Rovner.

20   I'm going to handle this for the manufacturer defendants.

21             And I'm bringing to Your Honor's attention my

22   letter to the Court of July 14th and Honeywell responded by

23   letter on this issue on July 20th.  I just want to make sure

24   that --

25             THE COURT:  I have those.

1          MR. ROVNER:  Okay.  On behalf of the

2     manufacturer defendants, we have really just one goal here.

3     We want to make sure that we put our best foot forward

4     come trial on the first trial on the issues of validity and

5     enforceability.  That drives what we had proposed, and

6     it's very simple.  And it's identified on page two of our

7     letter where anything can happen with respect to claim

8     construction.  The group that we want to try this first

9     phase, we want to make sure that they have the best interest

10     in leading the group effort on those issues.

11          THE COURT:  Mr. Rovner, if I have understood

12     you right, your basic contention is, hey, this isn't a stay

13     against anybody so up through discovery, all of these

14     defendants, all these manufacturer defendants, they're in

15     the harness and they all are responsible for pulling so any

16     one of the group could be in the mix and they should be up

17     to speed because they are all in it through discovery.

18     Right?

19          MR. ROVNER:  Yes, that is absolutely our point.

20     And Honeywell's proposal might have some merit if the

21     discovery was limited to the phase one trial issues, but

22     it's not and so there is no reason to name a lead counsel

23     that would come from this five defendant trial group.

24          I think they're just unnecessarily linking these

25     things.  We believe the best thing to do -- and basically

1    it's in response to our initial exchange of letters where

2    Honeywell said we don't want claim construction to occur

3    in the May time frame.  We had sought to move up claim

4    construction just so everybody would know the five

5    defendants sooner rather than later.

6           THE COURT:  Well, why don't we just say, if your

7    concern is the ground could change, which is the concern

8    have you expressed in your letter, and everybody is going to

9    be equally up to speed on this, maybe the right thing to do

10   is just to hold off on selecting lead counsel until after

11   claim construction on the schedule we've currently got.

12          MR. ROVNER:  Well, that certainly is an option,

13   Your Honor.  That is certainly something we would, unless

14   someone believes differently, we would be in favor of.  We

15   were just trying to meet Honeywell halfway by moving claim

16   construction up, because not only would we be able to name

17   the five defendants earlier under our new proposal, but it

18   would eliminate one of their issues that they have sought to

19   shield discovery from, which is we need claim construction

20   rulings, for example, to give you our contentions of

21   infringement under the doctrine of equivalents.

22          So we thought that that would be a compromise

23   proposal but, yes, we would accept just holding back on

24   naming of the defendants and trial defendants until claim

25   construction under the present schedule.

1          MR. ROSENTHAL:  Your Honor, this is Lawrence

2    Rosenthal again.

3          If I could address one practical consideration.

4    And that is in the current schedule, the likely date of the

5    Court rendering a decision on claim construction steps on

6    the preparation of the pretrial order period, and that was

7    one of our concerns from the get-go when we proposed moving

8    it up three months in order to give time for Your Honor to

9    rule, and then the products to be selected, and then for

10   them to carry the ball on the preparation of the pretrial

11   order which is the key first step in a trial.

12          THE COURT:  Yes.  Understood.

13          All right.  Mr. Woods, is this one yours or is

14   this one Mr. Lueck?

15          MR. WOODS:  No, I get this one, too, Your Honor.

16          THE COURT:  All right.  You are getting heavy

17   lifting today.

18          MR. WOODS:  We're amenable to what the Court

19   suggested.  I'm just waiting for the identification of the

20   lead defendants until after claim construction as set forth

21   in the original scheduling order.

22          THE COURT:  What if that ends up shifting some

23   dates?  Because I hear what Mr. Rosenthal saying, and I

24   presume Mr. Rovner would agree with it and other defendants,

25   that you've got to get claim construction in sufficient time

1   for people to know.  Well, not claim construction.  You have

2   to have your lead defendants selected in time for them to

3   participate meaningfully in the preparation of the pretrial

4   order.

5           MR. WOODS:  Your Honor, the defendants were --

6   when the defendants were potentially all on the hook back

7   in March, they had all agreed to the schedule and the dates

8   as originally implemented.  And so it is it has only been

9   now where there is the potential that some subset might go

10  first that this is becoming the case.  Candidly, I'm a

11  little concerned about the logistical issues of conducting

12  discovery, about Honeywell's time to conduct full dicovery

13  in connection with claim construction.  And some of those

14  issues are identified in the letter, including the fact that

15  we are apparently going to have to go to the Far East for a

16  lot of these depositions and have to wrangle with embassies

17  and such because defendants are unwilling to bring their

18  witnesses over here.  So I am concerned about handling any

19  erosion or compression of the discovery period prior to

20  claim construction.  That could potentially prejudice

21  Honeywell in a situation where Honeywell is being forced

22  to go over to the Far East.

23          THE COURT:  Here is the short of it.  I am not

24  moving claim construction up.  I think Honeywell's concerns

25  are well founded, although I will say this, Honeywell.

```
 1    If you think you will have to go through international
 2    conventions or you are going to have to take steps
 3    associated with getting embassy or consulate space to handle
 4    depositions, you should be, I hope you are moving on it
 5    now because what will leave me less than sympathetic is to
 6    hear, well, we tried for three months to negotiate with
 7    the other side for them to bring people and it's then we
 8    started making these arrangements.  I think you need to
 9    assume, sad though it may be, that you have people on the
10    other side who won't make it easy for you and do your
11    arrangement.  And then if you can go ahead and get people
12    over to the United States and that is helpful to you, great.
13    But otherwise, you have taken the steps you need to take.
14    Are you with me?
15              MR. WOODS:  Very much, Your Honor.  And I can
16    represent to you that we have been working on that issue.
17              THE COURT:  All right.  Fine.  Well, I'm not
18    moving claim construction up.  I understand the concern that
19    Mr. Rosenthal has raised but you know what?  I think that in
20    part is a function of you folks being reluctant to go ahead
21    and pick your five.  Now, there are some practical problems
22    to pick in the five but I agree with Mr. Rovner that
23    everybody should be moving ahead as if they were going to
24    trial.  All of you should be moving ahead as if you were
25    going to trial until we have that identified set of five.
```

 1   And what I'm hearing from the defendants, well, we just

 2   don't think we can pick five right now.  Okay?  Then you're

 3   all getting ready for trial as if you were going to trial

 4   and that's the way we'll handle it.  If we come to the

 5   preparation of the pretrial order and that means that you

 6   are going to have to do some hurry up there, I guess that

 7   means you will have to do some hurry up.

 8                    MR. HAILS:  Okay.  Thank you.

 9                    THE COURT:  The schedule is set.  It was set

10   in consultation with everybody.  I'm not going to have an

11   inability to select the five now throw this thing off.  It

12   has been a monumental task, and I don't just mean for the

13   court.  Don't get me wrong.  I'm not suggesting I've done

14   the heavy lifting.  You folks have all been engaged in what

15   is a monumental task, which is trying to get this case to a

16   point where we can get at least the first piece of it on

17   for trial.  And I'm just not having it come off the tracks.

18   It's staying on the schedule that it's on.  We're moving

19   ahead.

20                    All right.  Having said that, I still hope

21   that people are open to the idea of identifying the lead

22   defendants earlier rather than later, but I won't make you

23   do it before claim construction if you really think that

24   makes it impossible.

25                    Okay.  Are there any other issues that we need

1    to address while we're all on the line together?

2              There is a letter here where Seiko was asking

3    for leave to fully brief something, if I have understood the

4    letter correctly.  Am I right?

5              MR. BENSON:  Your Honor, we were raising that

6    at this juncture because it potentially intersected with

7    the discovery issues, but I think that has been inherently

8    resolved insofar as it relates to discovery.

9              THE COURT:  All right.  Fine.  Good.  Then we'll

10   let that go.

11             (Computerized Voice):  Joining conference.

12             THE COURT:  You're a little late, whoever has

13   just joined.

14             (Unidentified Speaker):  My apologies, Your

15   Honor.  I got dropped.

16             THE COURT:  Last, but not least, I got a couple

17   letters directly from Mr. Benson on behalf of Seiko, and I

18   would just ask that you make sure you submit things through

19   local counsel, if you would.

20             MR. BENSON:  Thank you, Your Honor.  We did

21   recognize that and tried to correct it.

22             THE COURT:  Okay.  Now, Mr. Woods, is there

23   anything else from the plaintiffs' perspective that we need

24   to take up on this call, sir?

25             MR. WOODS:  Nothing, Your Honor.

1              THE COURT:  Okay.  Mr. Horwitz or Mr. Rovner,

2    you folks have done most the speaking for the defense.

3    Anything?

4              MR. HORWITZ:  I don't think so, Your Honor.

5              MR. ROVNER:  No, Your Honor.

6              THE COURT:  Okay.  Does anybody else on the

7    defense side feel like you need to weigh in?

8              (Pause.)

9              THE COURT:  All right.  Well, then thanks for

10   your time today, and I hope we're able to work out other

11   things going forward and things stay on track.  Talk to you

12   later.

13              (The attorneys respond, "Thank you, Your

14   Honor.")

15              (Telephone conference ends at 12:05 p.m.)

16

17

18

19

20

21

22

23

24

25