

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
(302) 984-6140  Direct Phone
(302) 658-1192  Fax

January 2, 2008

**BY E-FILE**

**PUBLIC VERSION Dated: January 9, 2008**

The Honorable Mary Pat Thynge
United States Magistrate Judge
U.S. Courthouse, 844 King Street
Wilmington, DE 19801

      Re:    Honeywell International, Inc. *et al.* v. Apple Computer, Inc. *et al.*
              D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536

Dear Magistrate Judge Thynge:

    We write on behalf of the Fuji Defendants to seek an order to compel Plaintiffs to produce the invention disclosures and other documents relating to the preparation of the application for suit Patent No. 5,280,371 (the "'371 patent").[1] (Defendants Optrex and Samsung SDI join in the motion.) Honeywell bases its claim to privilege on *In re Spalding Sports Worldwide, Inc.*, 203 F. 3d 800 (Fed. Cir. 2000), which held that an "invention record" sent to the company's corporate legal department primarily for the purpose of obtaining legal advice (a patentability determination) was privileged. *Id.* at 802 at n.2, 805-06. The "invention disclosures" at issue here are forms completed by one or two named "inventors" submitting their directional diffuser idea to      REDACTED

                The forms also required         REDACTED
                               McCartney 3/15/07 Tr. 477:18–482:6 (Ex. 3);
Wood 2/28/07 Tr. 47:14–53:5 (Ex. 4).           REDACTED
                                                       *Id.*

at 54:18–55:8 (Ex. 4).          REDACTED

---

[1] Honeywell has admitted that invention disclosures relating to the '371 patent include at least REDACTED
                (*See* McCartney 3/14/07 Tr. at 92:23-93:4; 105:23-106:20, (Ex. 1); *see, also,* excerpt from Honeywell Privilege Log, (Ex. 2)).     REDACTED

The Honorable Mary Pat Thynge
January 2, 2008  Public Version January 9, 2008
Page 2

REDACTED
*Id.* at 183:4-11 (Ex. 4); McCartney 3/15/07 Tr. 481:18–482:1) (Ex. 3); Jepsen 3/2/07 Tr. 53: 10-21 (Ex. 5).  This is not surprising given fifteen (15) years between submittal of the "invention disclosure forms" and the filing of this action.

First, Fuji contends that the "invention disclosures forms" at issue here are not "invention records" as that term is used in *Spalding*, but rather have primarily a business purpose.

REDACTED
(Ex. 6).

Second, any privilege allegedly attaching to the invention disclosures has been waived by Honeywell's use of the invention disclosures to refresh the recollection of one of the named inventors, (McCartney) and the attorney who prepared the application for the '371 patent (Jepsen), in preparation for their respective depositions.   REDACTED
*See* McCartney 3/14/07 Tr. 41:11-42:4, 45:8-25; 92:11–93:4, 95:3–8 (Ex. 1); Jepsen 3/2/07 Tr. 8:25–11:4; 83:22–85:17, 111:10–113:16 (Ex. 5).  Jepsen, based on his refreshed recollection testified that
REDACTED

*Id.* at 85:18–86:25 (Ex. 5).  Fed. R. Evid. 612 provides that, in the interests of justice, an adverse party is entitled to a writing a witness uses to refresh his memory for the purposes of testifying.  "Courts who have considered this issue have generally agreed that the use of protected documents to refresh a witness' memory prior to testifying constitutes a waiver of the protection." *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138 (D.C. Del. 1982) (holding that rule waiving privilege of document used to refresh witness' recollection also applies to documents protected by the work product doctrine).  Because "Plaintiff's counsel made a decision to educate their witnesses by supplying them [with allegedly protected documents] defendants are entitled to know the content of that education." *Id.* at 146. Honeywell's assertion that McCartney and Jepsen "used the disclosures only to authenticate the basic foundational elements" for placement on Plaintiffs' Privilege Log is unsupported and even contradicted by the testimony. December 10, 2007 Woods Letter to Rosenthal at p. 2 (Ex. 11).

Third, Honeywell has waived the privilege, if any, by putting the knowledge and understanding of the inventors and their attorney at issue.  *In re Rhone-Poulenc Rorer, Inc.,* 185 F.3d 879, 1998 U.S. App. Lexis 33192,*5 (Fed. Cir. 1998); *see also International Paper Company v. Fibreboard Corporation*, 63 F.R.D. 88, 92-93 (D. Del. 1974). For example, the recently issued reports of Plaintiffs' experts repeatedly implicate the knowledge and understanding of the inventors and their attorney.  *See e.g.* Wilwerding Report (Ex. 7) at 6
REDACTED

19-20

REDACTED

The Honorable Mary Pat Thynge
January 2, 2008  Public Version January 9, 2008
Page 3

REDACTED

Lewin Report (Ex. 8) at 89-90          REDACTED

Id. at 101

REDACTED

Further, as

relied on by Lewin, attorney Jepsen was permitted to testify that

REDACTED

Jepsen 3/2/07 Tr. at 80:23-81:9;

125:1-13; 127:14-23 (Ex. 5).

Particularly relevant is Plaintiffs' claim, first made in a Supplemental Response to an interrogatory on June 25, 2007 (Ex. 10), that

REDACTED

In fact, Mr.

McCartney admitted          REDACTED

McCartney 3/14/07 Tr. 107:21-

109:5 (Ex. 1).          REDACTED

Id. at 109: 6-11.

Taken together, the foregoing show a pattern of reliance on Plaintiffs' and expert witnesses' interpretation of events occurring in the 1989-92 time period while denying defendants the ability to fully explore these events by recourse to the contemporaneous documents requested here.  Honeywell has waived the privilege, if any, by electing to rely on self-serving testimony regarding such key issues as an alleged reduction to practice relied upon to avoid art cited by Examiner, whether the best mode requirement was met, whether undisclosed prior art was knowingly suppressed by the patent attorney, and the inventors' intended scope of their claims. *See Friction Division Products, Inc. v. E.I. DuPont de Nemours & Company, Inc.*, 117 F.R.D. 535, 538 (D. Del. 1987) ("it would be manifestly unfair to allow [plaintiff] to make factual assertions ... and then deny [defendant] an opportunity to uncover the foundation for those assertions in order to contradict them.").  Honeywell's position is a classic example of the use of the privilege as a sword and a shield.  Based on the foregoing, Fuji requests that the Court order Honeywell to produce those documents identified in footnote 1.

The Honorable Mary Pat Thynge
January 2, 2008  Public Version January 9, 2008
Page 4

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/841663
Enc.
cc: Thomas C. Grimm, Esq. (w/encls.) – by ECF and E-mail
    Manufacturer Defendants (w/encls.) – by ECF and E-Mail

# Exhibit 1

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 4

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 5

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 7

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 8

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 9

"PATENT"

Applicant: R. McCartney et al          )     Art Unit: 2504

Serial No.: 07/911,547                  )     Examiner: H. Mai

Filed:        9 July 1992               )     Docket No.: A6213491

For:  "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

---

## AMENDMENT

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C.  20231

RECEIVED

FEB 23 1993

GROUP 2500

Dear Sir:

In response to the Office Action mailed on 2 October
1992, please amend the above-identified application as
follows:

### IN THE CLAIMS

Kindly delete claims 1, 2 and 3.

Kindly amend claims 4, 5, 7 and 9 as follows:

In claims 4 and 5, at line 1, delete "Claim 3", and
substitute therefor - - Claim 10 - -.

In claim 7, at line 1, delete "Claim 6", and substitute
therefor - - Claim 10 - -.

Claim 9. (Amended) A display apparatus in accordance with
Claim [3] 10 wherein at least one of said first and second
lens arrays is rotated about an axis perpendicular to said
liquid crystal panel in order to provide a slight misalignment
between said lenslets and said liquid crystal panel.

---

Docket No. A6213491          1          2 February 1993

SC13613 02/22/93 07911547       08-2727 130 115     110.00CH

Kindly add new claim 10 as follows:

Claim 10.   A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel.

<u>REMARKS</u>

The applicants wish to thank the Examiner for his citation to the noted references and his accompanying remarks. While the cited references are certainly pertinent to the claimed invention, applicants respectfully disagree with the interpretation of the cited references by the Examiner and his conclusions drawn therefrom.

The Examiner has rejected claims 1-5 under 35 USC 102 (a or b) as being clearly anticipated by Abileah et al or the cited IBM article.  While not necessarily providing the same function, the structure of these references does appear to be similar to that of applicants' invention.  In order to further prosecution of the application, claims 1-3 have been deleted

Docket No. A6213491              2              2 February 1993

and claims 4 and 5 amended to depend from new claim 10.

In addition, the Examiner has rejected claims 1-3 and 6-9 under 35 USC 103 as being unpatentable over Abileah et al or the IBM article in view of Hamada. Applicants have added new claim 10 which essentially includes the limitations of claims 1-3 and 6, resulting in a new claim for an apparatus having two lens arrays.

The Examiner contends that it would have been obvious, in view of Hamada, to add a second lens array to the structure of Abileah or IBM. In order to support a combination of references under 35 USC 103 there must be some suggestion for the combination. As the Hamada reference is concerned with a projection apparatus, there would be no suggestion to use the dual lens arrays of Hamada in the direct view apparatus of Abileah or IBM. Particularly since the dual lens array of Hamada is used to overcome a problem specifically associated with projection displays.

The two lens arrays of Hamada are used in a projection device to reduce the dimming at the outer edges. As such the dual lens arrays would not be suggested to the direct view display of Abileah or IBM.

In addition, at no point in any of the references is there any discussion of eliminating moire effects with appropriate selection of the relative pitch of the two lens arrays as specifically described and claimed by the applicants. Also, there is no discussion of rotating one of the

Docket No. A6213491            3            2 February 1993

lens arrays with respect to the liquid crystal panel as specifically claimed in applicants' claim 9.

Based on the foregoing, applicants contend that claims 4, 5, 7, 9 and 10, as amended, are in condition for allowance and respecfully request same at the earliest opportunity.

Respectfully submitted,

Dale E. Jepson
Attorney for Applicants
Reg. No. 32, 379

602/436-1336

Docket No. A6213491            4                2 February 1993

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: R. MCCARTNEY ET AL

Serial No.: 07/911,547          Group No.: 2504 √
Filed: 9 JULY 1992              Examiner: H. MAI
For: "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

Commissioner of Patents and Trademarks
Washington, D.C. 20231

AMENDMENT TRANSMITTAL                    RECEIVED

                                         FEB 23 1993
1.    Transmitted herewith is an amendment for this application.
                                         GROUP 2500

STATUS

2.    Applicant is
      ☐  a small entity — verified statement:
           ☐  attached.
           ☐  already filed.
      ☒  other than a small entity.

"EXPRESS MAIL" Date of Deposit   2 FEBRUARY 1993
Mailing Label No. TB579504420US
I hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D.C. 20231.
DALE E. JEPSEN
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

(Amendment Transmittal [9-19]—page 2 of 4)

## EXTENSION OF TERM

NOTE: "Extension of Time in Patent Cases (Supplement Amendments) — If a timely and complete response has been filed after a Non-Final Office Action, an extension of time is not required to permit filing and/or entry of an additional amendment after expiration of the shortened statutory period.

If a timely response has been filed after a Final Office Action, an extension of time is required to permit filing and/or entry of a Notice of Appeal or filing and/or entry of an additional amendment after expiration of the shortened statutory period unless the timely-filed response placed the application in condition for allowance. Of course, if a Notice of Appeal has been filed within the shortened statutory period, the period has ceased to run." Notice of December 10, 1985 (1061 O.G. 34-35).

NOTE: See 37 CFR 1.645 for extensions of time in interference proceedings and 37 CFR 1.550(c) for extensions of time in reexamination proceedings.

3.  The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply

*(complete (a) or (b) as applicable)*

(a) ☒  Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37 CFR 1.17(a)-(d)) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| ☒ one month | $ 110.00 | $ 55.00 |
| ☐ two months | $ 360.00 | $180.00 |
| ☐ three months | $ 840.00 | $420.00 |
| ☐ four months | $1,320.00 | $660.00 |

Fee $ 110.00

If an additional extension of time is required please consider this a petition therefor.

*(check and complete the next item, if applicable)*

☐  An extension for _____ months has already been secured and the fee paid therefor of $_____ is deducted from the total fee due for the total months of extension now requested.

Extension fee due with this request  $_____

OR

(b) ☐  Applicant believes that no extension of term is required. However, this conditional petition is being made to provide for the possibility that applicant has inadvertently overlooked the need for a petition for extension of time.

# Exhibit 10

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 11

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY