TAB B

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS C. GRIMM
302 351 9595
302 425 4661 FAX
tgrimm@mnat.com

March 2, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
　for the District of Delaware
844 North King Street
Wilmington, DE  19801

Re:　*Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
　　Cons. C.A. No. 04-1338-***

Dear Magistrate Judge Thynge:

I write on behalf of the Plaintiffs ("Honeywell") to demonstrate why the commercial success of products manufactured and sold by the Customer Defendants – products which use the Accused Modules and stand accused of infringement in this case – is highly relevant to a proper validity analysis, even if the case is tried first against the Manufacturer Defendants. As explained below, the success of the patented invention is best understood in the context of the end products sold in the United States which incorporate the features of the invention. The Manufacturer Defendants have little or no information as to why the functionalities provided by the '371 technology has generated such acceptance in the marketplace. The case law does not limit the issue of commercial success to consideration of component sales only. To the contrary, the law recognizes that often the success of the overall end product is relevant to the non-obviousness of a patent directed to a component of the product.

The Honorable Mary Pat Thynge
March 2, 2007
Page 2

The case reconfiguration ordered by the Court was never intended to prejudice
Honeywell's substantive rights.  To now deny Honeywell access to information regarding the
commercial success of the end products merely because of that reconfiguration would prejudice
Honeywell's defense to the defendants' invalidity claim.  The Manufacturer Defendants should
not be allowed to bring their obviousness defense to trial if the jury will not have meaningful
information about how products using this technology have successfully penetrated the United
States market.  Accordingly, Honeywell should be granted the right to conduct limited discovery
of the Customer Defendants.

I.      **A Proper *Graham v. John Deere* Analysis Should Include Consideration of the
        Commercial Success of Infringing Products Using the Accused Modules.**

As set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 35-36 (1966), it is well
settled that secondary considerations, such as the commercial success of the patented invention,
can be used by a patent holder as indicia of non-obviousness.  It is equally well settled that sales
of the accused infringing products can be used to gauge the commercial success of the patented
invention.  *See, e.g., Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120,
1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is
considered to be evidence of the commercial success of the claimed invention.").  Accordingly,
the success of products that use the '371 technology is highly relevant to any challenge that the
subject matter of the '371 patent is obvious.

In this regard, it bears emphasizing that Honeywell has accused the portable consumer
electronic products manufactured and sold by the Customer Defendants of infringement in this
lawsuit.  While the Manufacturers' infringement means there may be discrete and multiple acts
of infringement, the Manufacturers and the Customers share a common interest in the

The Honorable Mary Pat Thynge
March 2, 2007
Page 3

distribution chain that ultimately leads to the end users of infringing portable consumer electronics. Sales of the modules themselves – while reflective of ultimate demand – are once removed from the ultimately infringing end product and not the best evidence of why the technology has become the standard in the United States. This is especially so because the Manufacturer Defendants are still claiming that the majority of their sales of infringing modules are beyond the territorial scope of the United States Patent Laws (35 U.S.C. § 271). If the Manufacturer Defendants' assertions are correct, then the only "infringing" products would be of the end products sold by the Customer Defendants. Unless the Manufacturer Defendants now agree that overseas module sales infringe as long as those modules are ultimately incorporated into end products sold in the United States, information regarding such sales would only be the *first step* in proving the commercial success of infringing products. Unless and until the Manufacturer Defendants' sales are linked to the United States, Honeywell will be met with the legal argument that the bulk of those sales are irrelevant because no one "knows" whether those modules ever reach the United States. Indeed, several Manufacturer Defendants are currently refusing to provide sales information regarding their own sales, because they claim those sales are not within the United States. This represents a grossly unfair scenario for Honeywell, especially when the current procedural configuration of the case was not of its own choosing. Undeniably, a significant market has developed in the United States for products using the claimed technology. Any challenge to the validity of the patent must take this market into consideration.

As acknowledged at the recent hearing on February 22, 2007, the commercial success of the infringing products can only provide a basis for demonstrating non-obviousness when the

The Honorable Mary Pat Thynge
March 2, 2007
Page 4

patent holder is able to demonstrate that the success is attributable to the feature that is the

subject of the patent claim. As articulated by the Federal Circuit:

> [F]or commercial success of a product embodying a claimed
> invention to have true relevance to the issue of nonobviousness,
> that success must be shown to have in some way been due to the
> nature of the claimed invention, as opposed to other economic and
> commercial factors unrelated to the technical quality of the
> patented subject matter. Thus, a nexus is required between the
> merits of the claimed invention and the evidence offered, if that
> evidence is to be given substantial weight enroute to [a] conclusion
> on the obviousness issue.

*Cable Electric Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). *See also*

*Brown & Williamson Tobacco Corp.*, 229 F.3d at 1130 ("A nexus between commercial success

and the claimed features is required."); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1351

(Fed. Cir.), *cert denied*, 530 U.S. 1238 (2000) ("establishing such a nexus is required in order to

establish commercial success").

With regard to the requisite nexus, it is well understood that patents often cover only a

portion of a product which stands accused of infringement. Defendants' mantra has been – and

presumably will continue to be – that the '371 patent reads only upon the LCD module itself, not

upon the end product into which the module is incorporated. This tactic is not a legally sound

basis for preventing discovery into that larger product. The Federal Circuit has noted that proof

of commercial success may not always be coextensive with the patented invention:

> When the thing that is commercially successful is not coextensive
> with the patented invention – for example, if the patented invention
> is only a component of a commercially successful machine or
> process – the patentee must show *prima facie* a legally sufficient
> relationship between that which is patented and that which is sold.

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In

numerous cases, patent holders have been permitted to introduce evidence to demonstrate that

The Honorable Mary Pat Thynge
March 2, 2007
Page 5

the commercial success of a product was due to the component that contained the patented

invention. Thus, for example, in *Hughes Tool Co. v. Dresser Indus. Inc.*, 816 F.2d 1549 (Fed.

Cir.), *cert. denied*, 484 U.S. 914 (1987), Hughes Tool's patent claimed an O-ring seal in rock bit

cutters of an oil and gas well drilling bit, where the O-ring seal was compressed by not less than

10%. The Court stated:

> Despite Dresser's assertions that other aspects of Hughes Tool's
> new rock bits were responsible for Hughes Tool's commercial
> success, the one feature that Hughes Tool and all of its competitors
> continued to use was the minimum 10% squeeze called for in the
> claims in suit of the '928 patent. Such continuous use of the
> patented feature while other features were not copied gives rise to
> an inference that there is a nexus between the patented feature and
> the commercial success.

*Id.* at 1556. Likewise, in *Winner*, the patent at issue claimed an improvement in a security

device (the "original Club") consisting of substituting a "self-locking ratcheting mechanism" for

the original Club's key lock. The Court stated:

> [T]he survey introduced at the district court by Winner established
> that a statistically significant percentage of customers viewed the
> self-locking ratcheting mechanism of the '047 patent as being of
> more value to them, and reported that the self-locking ratchet was
> the very reason they purchased the device, as opposed to those
> requiring key-locking, and was the reason they were willing to pay
> more for such a lock than for one without it, such as the original
> Club. When such evidence was introduced, it became Wang's
> burden to show that it should not be given weight. Given the
> evidence before the district court, it did not clearly err in finding
> that the survey showed the nexus between the patented features,
> especially the keyless self-locking ratcheting mechanism, of the
> Super Club line of products and the reasons the consumers bought
> products.

*Id.* at 1350-51.

The Honorable Mary Pat Thynge
March 2, 2007
Page 6

As each of these cases illustrates, the patent holder was afforded the opportunity to demonstrate that a nexus existed between those patented features or components and the commercial success of the end products as a whole.

This principle is not limited to situations where there is an issue between the component and the complete product. In *Truswal System Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987), the Federal Circuit vacated a district court's decision to quash a subpoena directed to a non-party who had been charged with infringement, but not included in the suit. Even though there was no supplier-customer relationship between the named defendant and the entity served with the subpoena, the Federal Circuit recognized that information regarding unrelated infringing products could bear on commercial success, and thus remanded the matter to the district court. *Id.* at 813 F.2d at 1212.

Here, the discovery is targeted to customers of the Accused Modules, a discovery request significantly more in line than what was at issue in *Truswal*. Moreover, the '371 patent expressly recognizes that makers of end products would be particularly interested in the energy efficiency of the claimed invention. *See* '371 Patent, Col. 3, ll. 19-23 (noting that one of the goals of the invention is to allow for concentration of light into "viewing angles of interest for a particular application"). This, of course, necessarily begs the question of what "application" is at issue. It is the Customers, not the Manufacturers, who are in the best position to articulate the metes and bounds of each such application and its relative needs/sensitivities for bright, clear displays and smaller, more portable batteries. The Manufacturers can describe how their modules meet a technical specification, but they are not the best source for explaining why that specification is important in the first instance. Given that the '371 patent discloses its utility in

The Honorable Mary Pat Thynge
March 2, 2007
Page 7

the context of "particular applications,"[1] first hand information regarding such applications is more likely to relate to the field of the invention.

## II.    Honeywell's Requested Discovery is Narrowly Tailored to Address the Issue of Commercial Success.

Honeywell recognizes this Court's desire to limit discovery directed to the Customer Defendants at this point. In order to develop its arguments with respect to commercial success, Honeywell will need discovery concerning two general areas:

(a)    documents and information concerning sales of the Customer Defendants' products that contain the Accused Module; and

(b)    documents and information discussing why the Accused Modules allow the Customer Defendants to better meet market demand.

Specific requests with respect to each of these two areas are set forth below. It bears noting that all this discovery could be avoided if the Manufacturer Defendants would stipulate to the commercial success of the products which have used the Accused Modules for many years.

In outlining these specific requests, Honeywell is cognizant that "one size may not fit all" Customer Defendants. Certainly, discovery could be limited to those products that employ Accused Modules which have not yet been licensed. This presumes, however, that the '371 licenses executed to date would be admissible and otherwise available for the jury's consideration. The Customer Defendants have argued that these licenses adequately protect Honeywell's right to establish a record of commercial success, and thus advocate this as a basis for limiting discovery. Clearly, it would be inappropriate to limit discovery if there is any issue regarding the ultimate admissibility of the licenses.

---

[1]    *E.g.*, Col. 3, l. 23; Col. 5, l. 15.

The Honorable Mary Pat Thynge
March 2, 2007
Page 8

### A.      Sales Information

Honeywell has not obtained discovery from the Customer Defendants regarding sales of all products which employ the Accused Modules. Such information is clearly relevant to the issue of infringing sales, especially where the Manufacturer Defendants are claiming that the substantial majority of these sales occur overseas and are refusing to provide information regarding those sales. The Manufacturer Defendants should not be allowed to avoid accounting for the benefit they have derived – even if unknowingly – from a well recognized market in the United States for portable consumer electronic products using the patented technology.

Honeywell proposes as follows:

> (1)     Each Customer Defendant would identify sales information for each product that uses an Accused Module; such sales information could take the form of summary charts which list, on a yearly basis, the number of units sold of each such product and the revenue derived from such sales.

> (2)     Honeywell believes that, if comprehensive information is provided as per (1) above, and if all parties stipulated to the admissibility of such summary information, depositions on this topic could be avoided.

The Customer Defendants presumably track sales data regularly and keep their sales data in readily accessible electronic format. Accordingly, once the initial task of identifying the relevant products is complete, Honeywell expects that the collection of the sales data itself will be a largely mechanical process of querying the Customer Defendants' respective sales databases.

### B.      Nexus Discovery

The Customer Defendants will also presumably have documents concerning the features and advantages of the end products into which the accused LCD technology was incorporated.

Honeywell expects that, when new products are launched, the Customer Defendants prepare materials for marketing and sales purposes that compare the products' new features with

The Honorable Mary Pat Thynge
March 2, 2007
Page 9

those of other products.  Given that the Customer Defendants will have identified the relevant

products in providing the sales information, they should be able to simply pull the relevant

product launch materials from their marketing files and produce them.

Advertising is also relevant to the nexus between the products' commercial success and

the patented invention.  "The prominence of the patented technology in [the infringer's]

advertising creates an inference that links the [patented invention] to this success."  *Gambro*

*Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997).  Accordingly,

advertising concerning products using the Accused Modules should be produced.  In particular,

the accused technology can achieve such benefits as a brighter, cleaner display, longer battery

life and lower weight in applications such as portable consumer electronics.  Advertising which

reflects or touts these advantages and benefits is relevant to the "nexus" issue.  To limit the

burden of discovery, Honeywell is willing to accept the production of advertising that the

Customer Defendants prepared when the products were initially launched, and is also willing to

accept representative samples of such advertising as opposed to every advertisement.

In addition, as *Winner* indicates, customer surveys can provide relevant information

concerning the reasons why customers select specific products.  Accordingly, Honeywell

requests that the Customer Defendants be required to produce any surveys of customers or

vendors reflecting the reported benefits of the products and/or the reasons why those products

were purchased.

Finally, Honeywell anticipates that once documents are produced, there may be a need to

clarify the import of their contents via limited depositions and to authenticate them for purposes

of trial.  Nonetheless, Honeywell is willing to defer the issue of the depositions until the parties

The Honorable Mary Pat Thynge
March 2, 2007
Page 10

first have an opportunity to assess the documents themselves, and then discuss a reasonable

scope for such depositions.

## III.    Conclusion

The Manufacturer Defendants have been unable, or unwilling, to provide the following

information which bears directly on the issue of commercial success:

(1)    The amount of the Accused Modules which enter the United States via their incorporation into a portable consumer electronic product.

(2)    Whether and why a brighter display is important to end users of the accused portable consumer electronic products.

(3)    Whether, because of the energy efficiency of the Accused Modules, a smaller or lighter battery is used in the accused portable consumer electronic products.

Such information is only in the hands of the Customer Defendants.  Without that

information, Honeywell will be forced to defend the validity of the '371 patent without highly

probative information.  At the same time, the burden on the Customer Defendants will be

minimal.  For these and all the foregoing reasons, the Court should order the limited discovery

identified herein.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm (#1098)

cc:    Dr. Peter T. Dalleo, Clerk (by hand)
       All Counsel of Record (by e-filing and e-mail)
       Matthew L. Woods, Esquire (by e-mail)

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

March 12, 2007

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    Honeywell International Inc., et al., v. Apple Computer, Inc. et al.
       C.A. No. 04-1338-*** (consolidated with C.A. No. 04-1337-***)



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Judge Thynge:

        I write on behalf of the stayed Customer Defendants in response to Mr.

Grimm's March 2, 2007 letter on commercial success discovery. (D.I. 724)

        Honeywell is not entitled to the broad discovery it seeks from the Customer

Defendants because they possess little or no information that is truly relevant to

"commercial success" and that is not already in the possession of the Manufacturer

Defendants. Given that Honeywell's patent covers only the LCD module itself—and

not the combination of the LCD module with the device in which it is used—the

Manufacturers' information regarding sales of the accused LCD modules is

indisputably more relevant to Honeywell's assertion of commercial success.

        Honeywell's request to conduct additional discovery of the Customers is

merely its latest attempt to overturn Judge Jordan's original case management ruling,

reaffirmed by Your Honor, requiring Honeywell to pursue its claims against the

Manufacturers in the first instance. Honeywell has not shown that the Customers

have information more relevant than that possessed by the Manufacturers to warrant

lifting the stay imposed by Judge Jordan. Moreover, the proposed discovery

Honeywell requests is overbroad and not justified by its alleged need for evidence of

commercial success.

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

FISH & RICHARDSON P.C.

## I.    Honeywell Inappropriately Seeks Discovery of Features Present in the Prior Art

While commercial success is a factor to be considered in an obviousness determination, evidence of commercial success need only be considered if it tends to show that *claimed* features were responsible for the alleged commercial success. *See Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) (Rich, J.) (noting that jury is "constrained" to consider whether commercial success flowed from claimed invention). If a product that embodies the patented invention is successful in the marketplace and the success can be attributed to the invention (the "nexus"), an inference may be drawn that the patented invention is a non-obvious variant over the prior art. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).

The best source of evidence of commercial success involves products that are *coextensive* with the patented invention. If the product and the patented invention are the same, a nexus is presumed. *Ormco* 463 F.3d at 1312; *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). On the other hand, when a patent owner attempts to prove commercial success using products that are *not coextensive* with the patented device, the patent owner faces an additional burden to establish a legally sufficient relationship between the patented device and the product being sold. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Evidence of commercial success is probative only if it relates to features that are unique to the patented device. *Ormco*, 463 F.3d at 1311-12. Commercial success attributable to features known in the prior art is irrelevant to the obviousness inquiry. *Id.*; *J.T. Eaton & Co., Inc.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("the asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art"); *White v. Jeffrey Mining Machinery Co.*, 723 F.2d 1553, 1559-60 (Fed. Cir. 1983); *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).

The Honorable Mary Pat Thynge                          FISH & RICHARDSON P.C.
March 12, 2007
Page 3

The patent in suit covers LCD modules, not the combination of the modules and some end

product or the use of the modules in some end product. Therefore, the commercial success inquiry

should focus on the modules themselves and the parties that make and sell them: the Manufacturers.

Naturally, they have the sales information concerning the accused display devices. They also have

the design expertise that makes them uniquely suited to answer questions regarding any advantages

obtained by the accused design when compared to alternative designs.

In order to prove commercial success, Honeywell must show that the evidence of commercial

success it seeks relates to the invention at issue—an "improvement" on an LCD module with two

lens arrays that includes a slight misalignment of those arrays to eliminate the moiré interference

effect. Evidence regarding the success of Customers' end products such as mobile phones and

digital cameras is, at best, tangentially related to this issue. Honeywell has not shown that the

Customers would have any information as to why a particular configuration of lens arrays (slightly

misaligned) was chosen by the Manufacturers over other possible designs (including non-infringing

alternatives). Although some Customers provide specifications identifying the necessary

performance requirements for individual LCD modules, the internal structure of the devices,

including whether or not there are two lens arrays with a slight misalignment, is determined by the

Manufacturers. The Customers integrate these displays into larger consumer products that can

include hundreds, if not thousands of other technologies, all of which impact the commercial success

of the end products. They cannot explain why certain design choices were made by the

Manufacturer for a particular module or whether such design choices have any relevance to the

teachings of the patent-in-suit.

None of Honeywell's cases suggest that, when discovery is available regarding the accused

components themselves, discovery against products that merely incorporate these devices is

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 4

somehow preferred. *Winner Int'l v. Wang* is not on point; there, the claims were co-extensive with

the accused product. 202 F.3d 1340, 1351 (Fed. Cir. 2000). *Hughes Tool v. Dresser Ind.* does not

suggest that commercial success evidence was available for both the component part (the O-Ring)

and the completed product. 816 F.2d 1549 (Fed. Cir. 1987). *Truswal* also does not answer the

question presented here: why is evidence concerning sales of the accused components themselves

not sufficient for the obviousness inquiry?

Commercial success discovery will be conducted much more effectively against the

Manufacturers than the Customers. Because they design and sell the accused modules, the

Manufacturers are in a far better position to provide probative evidence on commercial success

issues. Discovery from Customers would only concern products with features additional to the

accused modules—features that cannot be used by Honeywell to support the alleged non-

obviousness of its claimed invention.

## II.    Honeywell Cannot Rely on the Features for Which It Seeks Discovery as Evidence of Commercial Success

The features of the end products on which Honeywell seeks discovery—display brightness

and energy efficiency—are common to unclaimed embodiments from Honeywell's patent and

present in prior art references. In particular, although Honeywell's patent describes both single lens

array and dual lens array embodiments, the single lens array embodiments are not claimed. *See '371*

*Patent*, FIGS. 2, 4A, 7 and 10 (shown in Appendix Tab A hereto). Claim 3, the only claim in suit,

expressly recites a ***pair of lens arrays***. The specification excerpts on which Honeywell relies, cols.

3:19-23 and 5:15, each refer to the ***single lens array*** embodiment described in FIGS 2 and 4A.

Thus, the advantages identified in the '371 patent are not unique to the invention at issue in this

The Honorable Mary Pat Thynge
March 12, 2007
Page 5

FISH & RICHARDSON P.C.

case—the dual lens array device recited in claim 3—and cannot be used as evidence of commercial

success of the *patented* invention. *Ormco*, 463 F.3d at 1311-12.

Moreover, both of these advantages—display brightness and energy efficiency—are

disclosed in prior art references that the Patent Office cited in rejections during prosecution. For

example, U.S. Patent No. 5,161,041 ("Abileah") states at column 7, lines 5-15:

> In order for electronic displays to gain increased acceptance in military and avionic
> applications, the backlighting of flat panel displays, and particularly active matrix liquid
> crystal displays, *must be improved in light efficiency* and reliability. In order for a full
> color liquid crystal display to possess acceptable contrast under high ambient lighting
> conditions, the backlighting arrangement *must be bright*. While current backlighting
> systems have the requisite light output, they still require high power (on the order of 2.4
> watts/square inch) and a depth dimension of about two inches. In contrast thereto, the
> backlight assembly of *the instant invention consumes only about 1.2 watts/square inch
> of power* with a depth dimension of only about one inch. [Emphasis added.]

Thus, Honeywell's discovery plan simply seeks to discover what is already known: LCD module

purchasers prefer bright displays to dark ones and energy-efficient displays to wasteful ones.

Abileah states this expressly. Honeywell's proposal seeks discovery of functional advantages that

are common to the prior art and, therefore, it should be rejected.

In addition, most of the advantages Honeywell claims stem from its invention—features its

proposed discovery is designed to explore with the Customers—cannot be attributed to Honeywell's

patent. For example, Honeywell claims that the patented invention results in longer battery life and

lower weight, but the '371 patent nowhere describes these features as attributes of the invention. In

fact, Honeywell's patent does not even discuss consumer electronics. The only "application"

discussed in the patent is aircraft cockpit displays, and the object of the invention is "to provide a

tailored variation of luminance with viewing angle" to focus the light of the display in a particular

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 6

viewing angle.[1]  Thus, the energy efficiency attribute Honeywell claims as part of its invention does

not even apply to consumer electronics.  As a result, to the extent the commercial success of

Customers' products may be due to energy efficiency, longer battery life, or lower weight, these

attributes cannot support the non-obviousness of the '371 patent.  *See Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence that invention solved

certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [

] patent."); *In re Vamco*, 752 F.2d 1564, 1574-77 (Fed. Cir. 1985).

## III.    Honeywell's Request for Discovery Is Broad, Burdensome, and Unnecessary

Honeywell acknowledges the Court's desire to limit discovery against the Customers, but

then proceeds to request broad, wide-ranging, and unnecessary discovery that is, at best, only

tangentially relevant to commercial success.  Indeed, discovery for such issues is more appropriately

obtained from the Manufacturers.  Furthermore, Honeywell's proposed discovery requests would

impose significant and unnecessary discovery burdens on the Customers.  Honeywell's assertion that

its discovery requests present a minimal burden is untrue.  Honeywell's request for sales information

for "Accused Modules"[2] again seeks to broaden discovery beyond the products Honeywell has

identified as allegedly infringing in this action, in violation of Judge Jordan's prior rulings.

Throughout the course of this litigation, and as part of the transition of this case to one against only

Manufacturers in the first instance, Judge Jordan consistently ordered Honeywell to focus its

---

[1] Because pilots' heads are always in approximately the same location when they are seated in the cockpit, and because extraneous light emissions in the cockpit should be minimized, aircraft cockpit displays preferably should concentrate all light in a narrow viewing angle.  In contrast, most consumer electronics are designed to provide a wide viewing angle so their displays can be viewed by users at any angle.

[2] Honeywell used this term in capitalized form, as if to suggest that the term has some understood meaning, but Honeywell did not define the term in its letter.  Thus, it is impossible to determine the exact scope of Honeywell's proposed discovery requests.  *See* D.I. 724 at 8.

The Honorable Mary Pat Thynge                FISH & RICHARDSON P.C.
March 12, 2007
Page 7

requests for information on specifically-identified accused products.  However, Honeywell's

proposed discovery requests do not limit the information sought to specifically identified products,

but rather, seem to require the Customers to conduct a burdensome investigation of information just

to determine what products are at issue.

     Similarly, while Honeywell downplays the effort required to actually locate and collect the

documents sought, the extent of this effort cannot be known until the products at issue are first

identified.  Therefore, Honeywell's request for sales, marketing, advertising, and customer surveys

for all such products is by no means a narrowly tailored request.  The broad scope of the discovery

Honeywell seeks will likely result in another round of needless satellite litigation, letter briefs, and

discovery disputes over information that is directed to a secondary issue in this litigation, and for

which any pertinent information is more efficiently discovered from the Manufacturer Defendants

currently before the Court and actively participating in this case.[3]

Respectfully,

*Thomas L. Halkowski*

Thomas L. Halkowski

TLH/kxk/80042860

cc:    Clerk, U.S. District Court (by hand w/attachment)
       All Counsel of Record (by e-filing and email)

---

[3] In addition, as noted during the February 22, 2007 conference, no discovery is warranted from
Customer Defendant Apple Computer because all of the accused modules used in Apple's products
have now been licensed.  Thus, the disputes concerning all of the accused modules used in Apple's
products have become moot.  For the same reason, no discovery is warranted from any Customer
Defendant who is similarly situated.



Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
302 984-6140   Direct Phone
302 658-1192   Fax

March 12, 2007

**BY E-FILE**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
U.S. Courthouse
844 King Street
Wilmington, DE 19801

> Re:    Honeywell International, Inc. et al. v. Apple Computer, Inc. *et al.*
>        <u>D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536</u>

Dear Magistrate Judge Thynge:

We write on behalf of co-defendants Epson Imaging Devices, Fuji Photo Film Co, Ltd.,
now FUJIFILM Corporation, Fuji Photo Film U.S.A., Inc., now FUJIFILM U.S.A., Inc., Hitachi
Displays, Ltd., Optrex America, Inc., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Seiko
Epson Corp., Wintek Corp. and Wintek Electro-Optics Corporation ("Manufacturer Defendants")
to oppose Plaintiffs' ("Honeywell") application to take discovery of the stayed Customer
Defendants, allegedly to seek evidence to support its claim of commercial success, a secondary
consideration in the analysis of the obviousness of the claimed invention.  Such discovery is only
permitted if reasonably calculated to lead to admissible evidence, and then only if it is not unduly
burdensome on the stayed Customer Defendants.  Fed R. Civ. P. 26(b)(1) and (2).  Honeywell
has failed to satisfy this threshold requirement.

Honeywell correctly cites the Federal Circuit precedent that requires a nexus between the
claimed invention and the commercial success sought to be proved.  Grimm 3/2/07 letter at first

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

half of 4. "[Commercial] success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter." *Cable Electric Prods., Inc. v. Genmark Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). Where Honeywell goes wrong is in relying on two improper and incorrect presumptions, that the success of every "Accused Product" and "Accused Module" is attributable to the claimed "invention", and that every such product and module infringes claim 3 of the '371 patent. Strip away these presumptions and examine the facts and it becomes clear that the discovery sought of the Customer Defendants cannot lead to admissible evidence.

## I.    Honeywell's Requested Discovery Focuses On Advantages of Structures In The Prior Art And Will Not Lead To Admissible Evidence

Not every sale of a product which includes a patented component supports, or is even relevant to, a finding of commercial success. "[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). The same is true if commercial success is the result of unclaimed features. *Id.* "[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J. T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997), *see also, In Re Paulsen*, 30 F.3d 1475, 1482–83 (Fed. Cir. 1994) (commercial success of product was attributable to aspects of claims in prior art and thus was accorded no weight).

Honeywell has argued that the benefits obtained by the '371 patent technology are "a brighter, cleaner display, longer battery life and lower weight." Grimm 3/2/07 letter at 9. However, these benefits are the result of structures that were already known in the prior art more than a year before the filing date of the application for the '371 patent (July 9, 1992). A copy of the '371 patent is annexed as Exhibit 1. Honeywell relinquished claims to these structures during prosecution of the '371 patent, and cannot recapture them in this case.

The Honorable Mary Pat Thynge
March 12, 2007
Page 3

The application for the '371 patent was filed with very broad claims, not limited to a liquid crystal panel or lens arrays. Ex. 2 at 14. Upon rejection of these broad claims, Honeywell amended the application to present an independent claim 10, which read:

> 10.    A display apparatus comprising;
>        a light source;
>
>        a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
>
>        first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source though said lens arrays and said liquid crystal panel.

Ex. 3 at 2. This claim differs from the '371 patent claim 3 only in the recitation in claim 3 of the moiré minimizing technique of rotating at least one of the two lens arrays to provide a "slight misalignment" between the lenslets of the lens array and the liquid crystal panel (Ex. 1 at col. 6, lines 27-42), a limitation which was claimed in application dependant claim 9. Ex. 3 at 1.

In an Office Action dated May 6, 1993 (Ex. 4 at 1), the Examiner ruled that application claim 10 was anticipated by U.S. Patent No. 5,161,041 ("Abileah et al."; Ex. 5), which was based on an application filed April 26, 1990. Honeywell acquiesced in the finding of the Examiner by combining application claims 9 and 10 to form what became claim 3 of the '371 patent. Ex. 6. Abileah et al. teach two crossed lens arrays between a liquid crystal panel and a light source. Ex. 5 at FIG. 6. Abileah et al. list the advantages of their new LCD backlight in essentially the same terms as Honeywell now claims for the invention of claim 3, namely:

> a bright uniform image of high contrast and capable of being viewed over a wide viewing angle, while maintaining a narrow profile and minimizing power consumption and thermal inconveniences.

Ex. 5 at col. 4, lines 26-29. Abileah et al repeatedly characterize their invention as providing improvements in brightness and energy efficiency:

The Honorable Mary Pat Thynge
March 12, 2007
Page 4

> In order for electronic displays to gain increased acceptance in
> military and avionic applications, the backlighting of flat panel
> displays, and particularly active matrix liquid crystal displays,
> **must be improved in light efficiency** and reliability. In order for a
> full color liquid crystal display to possess acceptable contrast
> under high ambient lighting conditions, the backlighting
> arrangement **must be bright**. While current backlighting systems
> have the requisite light output, they still require high power (on the
> order of 2.4 watts/square inch) and a depth dimension of about two
> inches. In contrast thereto, **the backlight assembly of the instant
> invention consumes only about 1.2 watts/square inch of power**
> with a depth dimension of only about one inch.

Ex. 5 at col. 7, lines 5-15 (emphasis added).

Rotation of the lens array, the only feature of claim 3 not taught in Abileah et al.,

contributes to eliminating moiré, and not to the enhancement of brightness and energy efficiency

of the module. Ex. 1 at col. 4, lines 26-34; col. 5, lines 16-28.

Honeywell's justification for the requested discovery of the stayed Customer Defendants

focuses on advantages of LCD modules which are attributable to the prior art, and cannot be

considered as evidence of commercial success. *See, supra, Ormco Corp., J. T. Eaton, Paulson.*

As such it is not reasonably calculated to lead to the discovery of admissible evidence and should

not be permitted.

Furthermore, Honeywell claims that the patented invention produces longer battery life

and lower weight have no basis in the '371 patent. Nowhere does the '371 patent describe these

features as attributes of the invention. In fact, Honeywell's patent does not even discuss

consumer electronics. The only "application" discussed in the patent is aircraft cockpit displays

(the same application noted in Abileah et al, *see supra*), and the object of the invention is "to

provide a tailored variation of luminance with viewing angle" to focus the light of the display in

a particular viewing angle. Ex. 1 at col. 1, lines 40-45. Thus, to the extent the commercial

success of Customer Defendants' products may be connected to energy efficiency, longer battery

life, or lower weight, these attributes cannot support the non-obviousness of the '371 patent. *See*

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence

The Honorable Mary Pat Thynge
March 12, 2007
Page 5

that invention solved certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [ ] patent.").

As Honeywell points out, the specification of the '371 patent describes which structural features result in the benefits identified by Honeywell, namely, enhanced brightness and energy efficiency. Indeed, the portion of the '371 patent relied upon by Honeywell states that inserting a lens array between the light source and the liquid crystal panel provides the benefits of increased energy efficiency and increased luminance. Ex. 1 at col. 3, lines 15-36. The portion of the '371 patent specification cited by Honeywell as explaining the benefits of the patent describes an *unclaimed* embodiment. An embodiment having a single lens array provides the benefits of energy efficiency and brightness, whereas the claims of the '371 patent are limited to modules having multiple lens arrays. Thus, even assuming that the benefits alleged by Honeywell and the '371 patent were not found in the prior art, they are provided by an unclaimed feature and, as such, commercial success based on those benefits is irrelevant to validity of the '371 patent. *Ormco Corp.*, 463 F.3d at 1312 ("if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant").

## II.   Honeywell Has Failed To Demonstrate The Necessary Nexus Between Claim 3 And The Customer Defendants' Products.

The Federal Circuit has ruled that: "if the patented invention is only a component of a commercially successful machine or process - the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In the present case, to demonstrate commercial success based on the end products rather than the LCD modules (the accused products), Honeywell must establish both (1) that the commercial success of the end products are attributable to certain characteristics of the LCD modules (brightness and energy consumption), and (2) that the brightness and energy consumption of the LCD modules are attributable to use of the claimed invention within the modules, as opposed to other embodiments or the prior art. Honeywell fails to make either showing.

The Honorable Mary Pat Thynge
March 12, 2007
Page 6

In no way does Honeywell suggest how the success of a portable consumer product, such as a digital still camera, a cell phone, a laptop or the other myriad of portable consumer products sold by the Customer Defendants, is attributable to the brightness of the LCD or the weight of the battery, as opposed to the many other features of such devices, both technical (e.g., CPU power, memory volume, camera lens, mobile phone antenna and software) and non-technical (e.g., aesthetic design, advertising, price, sales channel). As discussed above, there is no nexus between the commercial success of the liquid crystal modules at issue and the "invention" of claim 3 of the '371 patent.

The commercial success of the Customer Defendants' Products is even further removed from the alleged success of the Manufacturer Defendants' modules, which are the products at issue. Honeywell cannot maintain that commercial success is unique to LCD modules that contain the accused features. Honeywell's own analysis of the modules within end products successful enough to be considered resulted in only about fifty percent being deemed by Honeywell to infringe. September 9, 2005 Transcript at 22-23, Ex. 7. Thus, by Honeywell's own admission, the fifty percent of defendants' commercially successful products deemed not to infringe must owe their commercial success to features not claimed in the '371 patent. There can be no nexus between the claimed invention and commercial success of the end products when the end products are commercially successful regardless of whether they make use of the accused modules. Where commercial success is attributable to unclaimed features and features found in the prior art, such commercial success cannot be considered. *See, supra, Ormco Corp., J. T. Eaton, Paulson.* The existence of such other features makes Honeywell's proof of the requisite nexus implausible.

The requested discovery is hardly limited. It takes three pages to describe and is, on its face, unduly burdensome on the stayed Customer Defendants at this stage of this case. Given the lack of nexus between the advantages and sales Honeywell seeks to discover and the claimed invention, the failure to explain why evidence adduced from the Manufacturer Defendants is

The Honorable Mary Pat Thynge
March 12, 2007
Page 7

insufficient, and the existence of non-infringing structures which may have been incorporated in the Customer Defendants' products, it is submitted that Honeywell has failed to demonstrate a need for the discovery sufficient to justify modifying the stay. The requested discovery defeats the purpose of the stay and unduly burdens the Manufacturer Defendants, who would need to monitor the discovery.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/783007
Enc.

cc:   All counsel of record – by ECF

D. 739 Filed

*march 19, 2007*

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS C. GRIMM
302 351 9595
302 425 4661 FAX
tgrimm@mnat.com

**BY E-FILING**
The Honorable Mary Pat Thynge
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc.*, Cons. C.A. No. 04-1338-***

       Plaintiffs Honeywell International Inc., and Honeywell Intellectual Properties Inc., ("Honeywell") respectfully request that the Court compel Defendant Optrex America, Inc. ("Optrex") to produce documents and information identifying *all* sales of its accused modules regardless of the situs of those sales.[1] As explained in detail below, despite the fact that all sales of its accused modules are highly relevant to claims and issues in this case--and the fact that other defendants have acknowledged this and agreed to provide discovery for worldwide sales of their accused modules--Optrex has refused to produce discoverable information for any non-U.S. sales of its accused modules.

       Optrex should be ordered to produce information for all worldwide sales of its accused modules because this information is discoverable and relates directly to claims and defenses in this case, including Optrex's own claim that the '371 patent is invalid and Honeywell's claims that Optrex has contributed to and/or induced infringement of the '371 patent. From both the perspective of proving infringement, and establishing commercial success, the first step to determining what modules ultimately enter the U.S. is to identify what Optrex has sold to end product makers, regardless of location; then, the end product makers ("customers") can cull that list and identify what is incorporated into a product destined for the U.S.[2]

---

[1] *See, e.g.,* Optrex's Objections and Responses to Honeywell's First Set Of Document Requests, Nos. 21 and 22, attached as Exhibit A. On July 13, 2006, Honeywell and Optrex entered into a certain Stipulation whereby Optrex agreed to produce discoverable information from its affiliates and subsidiaries, including Optrex Corporation, located in Japan.

[2] As addressed further below, Honeywell requires commercial success discovery from *both* module manufacturers such as Optrex and their customers, the end product makers. As the Court is aware, the customer defendants are refusing to provide their discoverable information relating to commercial success.

The Honorable Mary Pat Thynge
March 19, 2007
Page 2

Optrex's refusal to produce this relevant and discoverable information prejudices Honeywell's right and ability to properly defend against Optrex's invalidity assertions and otherwise prepare this case for trial.

        A.      The Commercial Success of Optrex's Accused Modules Is Relevant To Optrex's Invalidity Claims And Optrex Should Produce Information For All Accused Module Sales

It cannot be disputed that the commercial success of Optrex's accused products is relevant to Optrex's invalidity contention because commercial success can be used by a patent holder as indicia of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 35-36 (1996). It also cannot be disputed that sales of the accused infringing products can be utilized to gauge the commercial success of the patented invention. *See, e.g., Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1130 (Fed Cir. 2000). Moreover, the commercial success of Optrex's accused modules is highly relevant to Optrex's claim that the subject matter of the '371 patent is obvious. Without information establishing the commercial success of Optrex's accused products, Honeywell cannot properly and adequately rebut Optrex's obviousness argument. Optrex's refusal to produce all discoverable information evidencing the commercial success of its products, therefore, unduly prejudices Honeywell.

As set forth in Honeywell's March 2, 2007 letter, Honeywell's ability to counter Optrex's (and the other defendants') obviousness argument is already impaired by the fact that Honeywell does not currently have information from the Customer Defendants showing the commercial success of the patented invention as incorporated into end products sold in the United States. Optrex's refusal to produce its own information relating to the commercial success of its products only exacerbates the prejudice to Honeywell, which is faced with opposing Optrex's obviousness arguments without *any* information relating to commercial success of Optrex's products. While Honeywell's request for such information from the Customer Defendants has been addressed in Honeywell's March 2, 2007 letter, it is important to note that Honeywell needs commercial success information from *both* the Customer Defendants and the manufacturers such as Optrex in order to gain a complete understanding of the commercial success of the patented invention. Without all of this information Honeywell cannot properly challenge Optrex's invalidity contentions.

The Honorable Mary Pat Thynge
March 19, 2007
Page 3

B.    Information Regarding Optrex's Non-U.S. Sales Is Relevant to Honeywell's Inducement
and Contributory Infringement Claims, And Honeywell's Direct Infringement Claims
Against The Customers Even If Optrex Asserts Honeywell Cannot Recover Damages For
Every Sale Of An Accused Module

Regardless of the fact that Optrex may contend that most of its sales of infringing modules are beyond the territorial scope of 35 U.S.C. § 271, information relating to Optrex's sales is nevertheless relevant and discoverable because Honeywell has alleged that Optrex has contributed to and/or induced infringement of the '371 patent. As outlined recently by the Federal Circuit in *DSU Medical Corp. v. JMS Co.*, F.3d, Nos. 04-1620, 05-1048, 04-1052, 2006 WL 3615056 (Fed. Cir. Dec. 13, 2006), Optrex is liable under 35 U.S.C. 271(b) even for foreign module sales if it: (1) knowingly caused the acts that constituted direct infringement and (2) possessed specific intent to encourage those acts of direct infringement. Based upon its own investigation and information provided by Optrex's customers, Honeywell has also alleged that Optrex's modules have been found in infringing end products sold in the United States.

As a result of the test outlined in *DSU Medical*, it imperative that Honeywell have access to Optrex's worldwide sales information as a first step in building its inducement of infringement case against Optrex. Even if ultimately some of those foreign sales are not subject to damages calculations against Optrex per se, the information regarding *all* sales is nevertheless relevant and discoverable at this stage so that Honeywell can determine whether those sales are made to a Customer Defendant who incorporates the modules into end products that are then imported into the United States. In this way, Honeywell will have an opportunity to meet its burden under *DSU Medical* and determine whether sales that appear "foreign" on their face are nevertheless infringing because they are sales made by Optrex with the requisite knowledge and intent to cause direct infringement. If Optrex refuses to produce information relating to its worldwide sales, Honeywell will not be able to discover information highly relevant and necessary under the test outlined in *DSU Medical*. Optrex's refusal, therefore, prejudices Honeywell's ability to prosecute its case.

For all of these reasons, Honeywell respectfully requests that this Court order Optrex to produce information detailing the worldwide sales of its accused modules within 7 days.

Respectfully,
/s/ *Thomas C. Grimm*
Thomas C. Grimm (#1098)

The Honorable Mary Pat Thynge
March 19, 2007
Page 4


cc:     Dr. Peter T. Dalleo, Clerk (by hand)
        All Counsel of Record (by e-filing and e-mail)
        Matthew L. Woods, Esquire (by e-mail)

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

|  | THE BRANDYWINE BUILDING | |
| --- | --- | --- |
| KAREN L. PASCALE | 1000 WEST STREET, 17TH FLOOR | (302) 571-6600 |
| DIRECT DIAL: (302) 571-5001 | WILMINGTON, DELAWARE 19801 | (302) 571-1253 FAX |
| DIRECT FAX: (302) 576-3516 | | (800) 253-2234 (DE ONLY) |
| kpascale@ycst.com | P.O. BOX 391 | www.youngconaway.com |
| | WILMINGTON, DELAWARE 19899-0391 | |

March 21, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States District Court
844 King Street
Wilmington, DE 19801

> Re: *Honeywell International Inc., et al v. Apple Computer Inc., et al.*
> C.A. Nos. 04-1337, -1338, and -1536-***

Dear Judge Thynge:

I write on behalf of Optrex America, Inc. ("Optrex") in advance of tomorrow afternoon's telephone conference scheduled at 3:30 p.m. EDT (*see* D.I. 736), and in response to Thomas C. Grimm, Esquire's March 19 letter brief (D.I. 739).

Optrex respectfully requests that the Court deny Plaintiffs Honeywell International Inc.'s, and Honeywell Intellectual Properties Inc.'s ("Honeywell") request that Optrex produce discovery identifying "all" worldwide sales of its accused modules. *See* D.I. 739. For the reasons set forth below, Honeywell's request should be denied because it is not reasonably calculated to lead to admissible evidence that is not already of record, and the scope of the request would unduly burden Optrex.

Before addressing the reasons for denying Honeywell's requested relief, it is important to clearly set forth the scope of the discovery sought. Honeywell asks for worldwide sales information relating to thirty-two[1] modules accused of infringement, including an identification of *every* customer (not just Customer Defendants) who has purchased an accused module anywhere in the world. Moreover, Honeywell further requests that a witness be made available to testify on such sales, requiring a witness from to be brought from Japan to the United States.

Neither of Honeywell's asserted reasons for requesting production of Optrex's worldwide sales can withstand careful scrutiny. First, Optrex has already provided detailed information about the extensive U.S. sales of its accused modules, including modules sold to both Customer Defendants and non-Customer Defendants. To the extent Honeywell wishes to allege commercial success based on the quantity of Optrex's accused module sales (and ignoring the lack of the required nexus between those sales and the claimed subject matter),[2] Honeywell

---

[1] Optrex expects that Honeywell will accuse additional modules of infringing the '371 patent in the future.

[2] *See* Customer Defendants' and Manufacturing Defendants' letters opposing commercial success discovery of Customer Defendants. D.I. 732 and 733.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Mary Pat Thynge
March 21, 2007
Page 2

already possesses ample information. Moreover, despite taking extensive discovery from Optrex, Honeywell has not suggested in its letter that it has any evidence that accused Optrex modules sold outside of the U.S. subsequently enter this country. Stated differently, Honeywell has not alleged any facts sufficient to hint at, let alone support, an inducement to infringe claim and thus the requested discovery amounts to a classic fishing expedition.

>    A.    Extensive Evidence Regarding the *Quantity* of Optrex's Accused Modules
>        Is Already of Record and Worldwide Sales Information Has No Bearing on
>        the Missing Nexus Between the Accused Sales and the Claimed Invention

Honeywell argues that it is "faced with opposing Optrex's obviousness arguments without *any* information relating to commercial success of Optrex's products." Grimm 3/19/07 Letter at 2. This premise is simply incorrect. Honeywell ignores the fact that it possesses an extraordinary amount of information from Optrex, from other defendants, and from its licensees about the sales of accused modules. Despite Honeywell's protestations that it lacks "*any*" information about commercial success of Optrex products, Optrex has in fact produced hundreds of pages of summary level sales data identifying every transaction associated with the accused modules sold through Optrex America (e.g., OAI0018049 – OAI0018226 and OAI0053232 – OAI0053261) and tens of thousands of pages relating to the sales and marketing of those modules. Thus, the only fact even potentially relating to commercial success encompassed in the requested discovery (that large quantities of accused module sales have occurred) is already clearly established by the existing evidence. What Honeywell cannot prove in its effort to allege commercial success is the existence of a nexus between the large quantity of accused module sales and the subject matter of claim 3 of the '371 patent. *See, e.g., Ormco Corp. v. Align Tech, Inc.* 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). Whether accused module sales have occurred abroad has no bearing on the nexus requirement and is thus not likely to lead to the discovery of admissible evidence.

While Honeywell's requested discovery has marginal relevance at best, it would unduly burden Optrex. Honeywell has requested that Optrex provide sales information identifying every customer of any accused Optrex module purchased anywhere in the world. Honeywell has further requested that Optrex provide a witness to testify about such sales. Such a witness would need to be brought to the United States from Japan for deposition. The substantial burden of providing this confidential information to simply repeat a point made time and again by evidence already of record (large quantities of accused Optrex module sales have occurred) and which is irrelevant to commercial success evidence absent from the record (nexus between the accused sales and the patented subject matter) strongly supports a denial of Honeywell's request. *See* Fed. R. Civ. P. 26(b)(2)(c) (limiting discovery where the court determines that the discovery sought is unreasonably cumulative or duplicative, or the burden or expense of the proposed discovery outweighs its likely benefit).

065004.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Mary Pat Thynge
March 21, 2007
Page 3

       B.     Honeywell Has Provided No Basis for Alleging that Optrex Induced
             Infringement of the '371 Patent by Making Non-U.S. Module Sales

Drawing on its vaguely asserted inducement of infringement claim against Optrex, Honeywell cites *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) as allegedly supporting its need for evidence of Optrex's worldwide sales of accused modules. *DSU* addresses the requisite intent needed to prove induced infringement. It does not address the more fundamental question at issue here. Unless Optrex's modules sold abroad reach the U.S., there can be no claim for induced infringement. Therefore, there is no legal basis for extending discovery to Optrex's modules sold abroad unless Honeywell can articulate a good faith basis that modules sold abroad reach the U.S. market. *DSU* does not overrule the well settled proposition that parties should not be permitted to engage in fishing expeditions.

Honeywell exhaustively deposed Optrex witnesses for three days about the structure, manufacturing, sales, and marketing of the accused modules. Honeywell has reviewed tens of thousands of Optrex documents relating to the accused modules. Despite this thorough examination, Honeywell has cited to no evidence in its letter of March 19, 2007 supporting its hope of showing that accused modules sold outside the United States later enter into the United States. As such, Honeywell's second basis for the requested discovery is not likely to lead to the discovery of admissible evidence.[3]

For these reasons, Optrex respectfully requests that Honeywell's requested relief be denied.

                   Respectfully submitted,

                   *Karen L. Pascale*

                   Karen L. Pascale
                   Delaware Bar No. 2903

cc:   Dr. Peter T. Dalleo, Clerk (by hand)
       CM/ECF list (by e-filing)
       Thomas C. Grimm, Esquire (by hand)
       Matthew L. Woods, Esquire (by e-mail)
       Andrew M. Ollis, Esquire (by e-mail)

---

[3]   If the Court should nonetheless deem it necessary to order limited discovery of Optrex's worldwide sales, Optrex requests that (1) such discovery be tightly confined to sales of accused modules *sold to Customer Defendants* and (2) any Fed. R. Civ. P. 30(b)(6) deposition testimony provided by Optrex regarding those sales be made by Optrex employees already present in the United States who have made a reasonable effort to educate themselves concerning this topic. *See* Honeywell's more limited assertion that it "seeks to determine whether those sales are made to a Customer Defendant who incorporates the modules into end products that are then imported into the United States." Grimm 3/19/07 Letter at 3.