# EXHIBIT 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE DISTRICT OF DELAWARE
 2
                              - - -
 3    HONEYWELL INTERNATIONAL, INC.          CIVIL ACTION
      et al.                         :
 4                                   :
                      Plaintiffs,    :
 5                                   :
            v.                       :
 6                                   :
      APPLE COMPUTER, INC., et al.,  :
 7                                   :   NO. 04-1338 (MPT)
                      Defendants.
 8                           - - -

 9                    Wilmington, Delaware
              Wednesday, November 21, 2007 at 11:47 a.m.
10                    TELEPHONE CONFERENCE

11    BEFORE:  HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

12                            - - -
      APPEARANCES:
13

14        MORRIS NICHOLS ARSHT & TUNNELL, LLP
          BY:  THOMAS C. GRIMM, ESQ.
15
              and
16
          ROBINS KAPLAN MILLER & CIRESI, L.L.P
17        BY:  MATTHEW L. WOODS, ESQ.,
               STACIE E. OBERTS, ESQ., and
18             PETER SURDO, ESQ.
               (Minneapolis, Minnesota)
19
              and
20
          ROBINS KAPLAN MILLER & CIRESI, L.L.P
21        BY:  ANTHONY FROIO, ESQ.
               (Boston, Massachusetts)
22
                    Counsel on behalf of Honeywell
23                  International, Inc., and Honeywell
                    Intellectual Properties, Inc.
24

25                              Brian P. Gaffigan
                                Registered Merit Reporter
```

SHEET 9

### 30

1  are potential infringers, all of which are detailed in the
2  provisions I referenced earlier.
3             The better cases, judge, from this particular
4  court, your court, is the Constar case where it specifically
5  states that a community of legal interests may arise between
6  parties jointly developing patents.  They have a common
7  legal interest in developing the patents to obtain greatest
8  protection and in exploiting the patents.
9             And that is exactly what the 2003 agreement
10 states and contemplates between Honeywell and LPL.  So
11 it's an untrue statement, to say, judge, as referenced in
12 Samsung's brief, that only when you have an exclusive
13 licensee and only when there is a duty to defend does this
14 common interest lie.  That is just not correct.
15            MR. KORNICZKY:  Steve Korniczky, Your Honor.
16 We're being whipsawed here.  Number one, the only interest
17 here --
18            THE COURT:  Well, let me put it this way.  I
19 was reading through my opinion, quite frankly, in the
20 Block Drug case and also the Corning, Incorporated case by
21 Judge Farnan in 2004.  My opinion, by the way, came down in
22 April of 2007.  And in reading through what it is, I'm not
23 fully comfortable that this is necessarily a joint defense
24 type argument, fully comfortable, because I don't see proof
25 that establishes that at the time of the negotiations, LPL

### 31

1  and Honeywell shared common identical legal interests in
2  this.  There, to me, is really negotiations between two
3  corporations to enter into a licensing arrangement in which
4  LPL ended up with a financial gain.  But I also don't agree
5  with paragraph three necessarily, that is, what defendants
6  want to say to their client.  And it would be only to, it
7  is my understanding, the level that is in-house counsel and
8  in-house counsel in these companies could not disclose it to
9  anyone else; is that correct?
10            MR. KORNICZKY:  That's correct, Your Honor.
11            THE COURT:  So paragraph one will be allowed,
12 paragraph two will be allowed.  And this is at page two.
13            Paragraph four will be allowed because it says,
14 share the costs, licensing and defense of the patent as well
15 as the proceeds from enforcement and licensing efforts
16 overall.  These are just statements you are going to be
17 allowed to say, nothing beyond that.
18            MR. KORNICZKY:  Understood, Your Honor.
19            MR. OLLIS:  Your Honor, might I request that
20 with respect to paragraph three, we be permitted to say
21 that there is a dispute as to Weather?
22            THE COURT:  No.  No, you are not.  No, paragraph
23 three is just going to be out entirely.  Once you start
24 telling them that Honeywell and LPL have a license, it's a
25 nonexclusive license and LPL shares in the cost of

### 32

1  enforcement, that is going to be enough to tell your
2  in-house counsel at the respective companies what is going
3  on.  So one, two and four will be allowed.
4             I'm trying to figure out what you are trying to
5  get at at paragraph five.
6             MR. KORNICZKY:  Let me just read that through
7  one more time, Your Honor.  Hang on one second, please.
8             Basically, number five would confirm that they
9  basically did what's stated there.  They have shared in the
10 costs, for example.
11            MR. FROIO:  Well, Your Honor, it directly
12 reflects back to paragraph number three.
13            THE COURT:  I understand that.  I understand
14 that.  But to the extent that it adhered to the terms of the
15 agreement reflected in four, I'm just trying to figure
16 out --
17            MR. KORNICZKY:  What does it add?
18            THE COURT:  Yes, what does it add?  That is my
19 whole problem.
20            MR. FROIO:  It doesn't add anything, Your Honor,
21 and again it goes back to the fundamental argument about
22 what is their basis for this.
23            THE COURT:  Yes.  And so it's one, two and four,
24 they're going to be allowed to share.  Okay?
25            MR. KORNICZKY:  Thank you, Your Honor.

### 33

1             MR. OLLIS:  Your Honor, this is Andy Ollis from
2  Optrex.  If I could make one point of clarification with
3  respect to who the in-house counsel are at Optrex.  For
4  example, there are no U.S. attorneys that are in-house
5  counsel but there are folks in the Legal Department and IP
6  Department, a select group of two or three individuals who
7  are in comparable positions.  And I wanted to confirm that
8  that was --
9             THE COURT:  Are those individuals that were
10 identified in some way under the protective order?  Because
11 it's my understanding, it sounds to me like there is a
12 two tier protective order in this case, I can't recall,
13 confidential and highly confidential.
14            MR. ROSENTHAL:  Your Honor, this is Larry
15 Rosenthal.  There is the three tier and the middle tier
16 defines in-house counsel to include more than just lawyers
17 on both sides.  I don't have it in front of me but I know
18 there is a definition that would extend to non-lawyers at
19 Fuji, also a very limited number, a very limited number of
20 non-lawyers at Honeywell.
21            THE COURT:  Okay.
22            MR. FROIO:  You know, Your Honor, that
23 certainly would not be acceptable, and I don't think that
24 is fair under any stretch of the imagination.  I mean this
25 particular issue has been tied to potentially a patent

United States District Court - Honorable Mary Pat Thynge

### 34

1  misuse claim.  There is absolutely no reason whatsoever
2  that even this information that Your Honor has allowed to be
3  disclosed needs to be any further than in-house counsel.
4  It's highly, highly prejudicial to Honeywell.
5           THE COURT:  Well, I don't know how highly,
6  highly prejudicial it is, quite frankly, but the request,
7  the way I read it, was seeking to only disclose it to a
8  limited set of in-house counsel.
9           MR. FROIO:  That was subject to the protective
10 order, right.
11          THE COURT:  And that is what was essentially
12 asked for.  And what SDI indicated in its letter that it
13 was seeking that Honeywell said no to, and I'm going back
14 to that, it's your paragraph at page two, the second to the
15 last paragraph:  Samsung SDI justified this request by
16 stating that those facts could potentially form the basis
17 of a patent misuse claim.  Further, Samsung SDI did not seek
18 to disseminate these facts as public information, instead
19 seeking only to disclose them to a limited set of in-house
20 counsel for Samsung SDI who have already agreed to be bound
21 by the protective order as confidential attorneys eyes only
22 information.
23          And that is how it's going to be used.  And that
24 is who it's going to be allowed to go to.
25          MR. KORNICZKY:  Yes, Your Honor.  It's Steve

### 35

1  Korniczky.  Under that definition, they don't necessarily
2  have to be U.S. lawyers.
3           THE COURT:  Well, but are they going to be bound
4  by a court order?  I'm assuming your clients are going to be
5  bound by a court order; correct?
6           MR. KORNICZKY:  Of course, Your Honor.  Yes.
7           THE COURT:  And that is the way it will be then.
8  So to the extent that that is covered in there, I will allow
9  it, but I don't expect it to be disseminated throughout a
10 number of nonlegal personnel.
11          MR. KORNICZKY:  And, Your Honor, this
12 information would also relate to the common interest
13 documents requested on page three of our letter brief;
14 correct?
15          THE COURT:  Wait a minute.  Let me just see.
16 Page three of your letter brief?
17          MR. KORNICZKY:  I guess, Your Honor, what
18 we're asking for, the documents that were withheld under
19 the common interest that had gone back and forth between
20 Honeywell and LPL.
21          MR. FROIO:  And, Your Honor, what is being
22 sought again is any and all communications by and between
23 Honeywell's in-house counsel and LPL, negotiations over
24 the license agreements, the joint defense agreements I
25 referenced to earlier, all of which contemplate a joint

### 36

1  defense agreement.  And even, judge, the March 2003 license
2  agreement itself states that it's subject to a joint defense
3  and common interest privilege right in the language itself.
4           THE COURT:  Let me ask you, who are you asking
5  for to have access to these communications?
6           MR. KORNICZKY:  Your Honor, outside counsel.
7           THE COURT:  Outside counsel only.
8           MR. KORNICZKY:  Correct.
9           MR. FROIO:  Again, Your Honor, even at that,
10 it is violating a privilege that Honeywell and LPL are
11 entitled to by virtue of not just their actions but what
12 they reduced to writing, and I believe it's inappropriate
13 and the privilege ought to be sustained.  It's for that
14 very purpose, judge.
15          MR. KORNICZKY:  Your Honor, I don't think that
16 they can contract this is a privilege when it's not.  It's
17 not appropriate.
18          MR. FROIO:  No, the privilege was created by
19 virtue of the language in the agreement itself which the
20 parties contemplated Cleary that there was an identical
21 legal interest as we clearly stated.  And that is clearly
22 stated in the agreements.  I don't know what more, judge,
23 Honeywell and LPL could possibly have done to better protect
24 themselves in this regard.  They contemplated this exact
25 situation.  And to allow that to be defeated would be just

### 37

1  wrong.
2           MR. KORNICZKY:  Your Honor, I think it's the
3  underlying facts and scenario that dictate whether there is
4  a privilege is there, and I think clearly there is not.  We
5  completely disagree with opposing counsel.
6           THE COURT:  I know you do.
7           MR. ROSENTHAL:  Your Honor, this is Larry
8  Rosenthal again.  Let me make two points.  First of all,
9  were there ever a privilege as to this agreement, it was
10 waived by its production and the reliance and the expert
11 reports.  And I just hark back to the clawback letter
12 motions that Your Honor decided some time ago where a
13 document was claimed to have been inadvertently produced and
14 upon the decision that it really wasn't privileged, it was
15 released again.  But it's clear to me that the facts, even
16 the recitations in the agreement cannot be privileged.  They
17 can be highly confidential and use distribution can be
18 restricted but I don't understand all the claim of privilege
19 since you can't have privilege on something that you use in
20 the litigation.
21          The second point is that I have in front of me
22 now the three level protective order.  The middle level,
23 which is called attorneys eyes only, permits disclosure to
24 up to four in-house counsel, legal or intellectual property
25 staff members regularly employed by a party or the parties

38

1  related corporate affiliate and responsible for assisting
2  such party in connection with this action, hereinafter
3  collectively in-house counsel -- collectively with in-house
4  counsel. And those people have to agree to be bound by the
5  terms before they're given any disclosure, so there a middle
6  ground which was defined in the protective order as in-house
7  counsel.
8           THE COURT: I have already given you my ruling
9  on what that particularly is on the prior issue so let's
10 pass by it right now.
11          MR. KORNICZKY: All right.
12          THE COURT: The issue that is sitting out there
13 is Honeywell provided it to their experts to look at and was
14 part of the analysis the experts used in preparing the
15 reports and going through it.
16          MR. WOODS: Your Honor, this is Matt Woods.
17 I'm just going to jump in because I can tell you that the
18 agreement that opposing counsel have -- already have was
19 provided to the experts, but none of any of the materials
20 that counsel and SDI are now seeking, none of those
21 materials were provided to any expert. The agreement, the
22 underlying basic agreement that reflects the licensing was
23 provided but none of the other materials. I apologize for
24 jumping in, Your Honor, but I'm not sure Mr. Froio is
25 familiar with that particular aspect.

39

1           THE COURT: You know, that is an issue I'm
2  going to put aside for now, about whether or not the other
3  communications are or are not protected. And it's an
4  issue that I'm concerned about because I'm not 100 percent
5  certain you necessarily have a joint defense or common
6  defense argument on this. I really do have some problems
7  with it. And like I said, I was looking at the Corning case
8  and also was looking over one of the cases that I had. In
9  the case that I had in the Block Drug case, at least the
10 two entities that were being sued were both being sued. So
11 I'm not 100 percent certain I'm real comfortable to sit
12 there and say I am persuaded that Honeywell and LPL have a
13 joint defense or common interest privilege just because they
14 say they have a joint defense and common interest privilege.
15          MR. FROIO: Well, I certainly understand what
16 Your Honor is saying. And I would simply add again, Your
17 Honor, not only what the parties said in the agreement but
18 also how they have interacted since that agreement. And
19 Loria Yeadon testified clearly as to what their
20 participation has been. It's been a whole lot more, judge,
21 than just sitting back and collecting whatever windfall
22 royalty, portion of the royalty that has come in on this
23 case. It's so much more than that.
24          THE COURT: Well, did you provide me with what
25 Ms. Yeadon testified to and in response to discovery that

40

1  was taken by the defendants or she provided was that
2  included in any of your attachments to me?
3           MR. FROIO: I believe, judge, yes. The excerpts
4  on the particular issues I believe were attached, yes.
5           THE COURT: Okay. And that would have been with
6  your letter in response to the defendants' motion?
7           MR. FROIO: Yes, that's right. And, you
8  know, Your Honor, we would even be willing to provide the
9  common interest joint defense privileged document that is
10 confidential by virtue of our agreement with LPL in camera
11 that were necessary.
12          THE COURT: Yes, that's fine. That's fine. How
13 much are we talking about as far as for my review? Because
14 I did an in camera review on the Block Drug case, too.
15          MR. FROIO: Your Honor, if I were to submit,
16 the two agreements I believe are approximately five pages
17 each. We would also be willing to review Ms. Yeadon's
18 deposition in those particular aspects to secure exactly
19 their relationship and what LPL has in fact done subsequent
20 to the execution of the agreement. We would be glad to
21 submit those. It wouldn't be voluminous at all.
22          THE COURT: All right. Get it to me within
23 the next two weeks, and then I will look at that issue
24 from the standpoint of whether or not you get -- whether
25 or not Samsung and the rest of the defendants get any

41

1  further information --
2           MR. FROIO: Very well.
3           THE COURT: -- pursuant I believe to Docket
4  Entry No. 925, a motion that Samsung and the defendants have
5  filed.
6           Now, counsel, I have run into a problem. Excuse
7  me for a moment.
8           (Off the record.)
9           THE COURT: Counsel, I have about 15 more
10 minutes before I have to go into another teleconference.
11 That teleconference should probably take me about a half
12 hour, if it turns out that I haven't finished up with the
13 discussion that is necessary, that may be necessary to
14 address Honeywell's issue that it brought up regarding the
15 discovery matter that it wanted addressed. So I don't want
16 to shortchange Honeywell's issue, I just want to warn you.
17 I've got about 15 minutes to address it and then I possibly
18 have to take a break and then have counsel get back on the
19 phone, but I'm telling you the next phone call is going to
20 probably last roughly a half hour.
21          MR. SURDO: Your Honor, this is Peter Surdo on
22 behalf of Honeywell. I'm perfectly willing to try to give
23 you a short oral argument and figure we can get this knocked
24 out quickly.
25          THE COURT: Okay.

# EXHIBIT 2

## FULLY REDACTED