# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

January 4, 2008

PUBLIC VERSION

The Honorable Mary Pat Thynge
United States District Court
  for the District of Delaware
844 King Street
Wilmington, DE 19801

BY E-FILING

Re: *Honeywell, et al. v. Apple Computer, et al.*,
C.A. No. 04-1338-*** (Consolidated)

Dear Judge Thynge:

We write on behalf of Honeywell in response to Defendant Fuji's motion regarding document production issues. When the actual history of these issues is revealed, it becomes clear that Fuji's allegations are a thinly veiled and sorely belated litigation tactic.

A. **Honeywell is Not Required to Act as a Conduit for the Document Productions Made by Fuji's Co-defendants**.

Fuji attacks Honeywell for not providing Fuji with copies of those documents produced by Fuji's co-defendants in this action. Ultimately, absolutely nothing in the Federal Rules of Civil Procedure requires Honeywell to reproduce the document productions of Fuji's co-defendants. Notably, Honeywell's original discovery responses served on Fuji in **August 2006** informed Fuji that Honeywell would not serve in this capacity:

> To the extent this request calls for the production of documents produced by other defendants in the litigation, Honeywell objects to this request as overly broad and unduly burdensome. It is Honeywell's understanding that the defendants have a joint defense agreement and that this request calls for documents that can be exchanged between them pursuant to that joint defense agreement.

Fuji Ex. 3 at 3-4. Fuji did not challenge this clear objection, but rather sat silent for over a year. During that year, Honeywell was operating with the understanding that defendants had accepted Honeywell's position and had shared their respective productions with each other. *E.g.*, Fuji Exs. 9 and 12. Fuji does not explain why it waited so long to challenge Honeywell's objection, nor does it explain why it has not requested such documents from its co-defendants as a matter of

The Honorable Mary Pat Thynge
January 4, 2008
Page 2

regular discovery or pursuant to their JDA. *E.g.,* Fuji Ex. 10 at 1. Fuji's delay, and its apparent desire to ignore alternative solutions, is particularly troublesome given defendants' repeated representations to the Court that they would be coordinating discovery efforts in this case.

Since Fuji raised this objection in September, Honeywell provided Fuji with electronic copies of remaining defendants' productions. Fuji Ex. 9. Honeywell has also produced deposition transcripts/exhibits taken from other defendants. Ex. A. Honeywell did this despite the fact that Fuji was regularly and contemporaneously served with deposition notices, yet never sought to attend the depositions nor contemporaneously requested transcripts. Accordingly, Fuji's request for documents and deposition transcripts has largely been moot for some time.

Apparently, Fuji raises these mooted issues in a misdirected effort to portray Honeywell in a negative light for its request for sanctions. Fuji objects that Honeywell has discarded its copies of documents produced by those defendants who, subsequent to their respective productions, settled the case. As Honeywell explained, it generally discarded its copies of those productions pursuant to the parties' respective agreements and consistent with Paragraph 21 of the Protective Order in the case. Once Honeywell dismissed its claims against a particular defendant, the action is final as to that defendant and it is appropriate that the designating/producing party would want to protect its proprietary information upon the termination of the case against them. Honeywell has only discarded its copies of those document productions in conformance with these understandings and the Protective Order in this case. *E.g.,* Ex. B.

It bears emphasizing that Fuji sat on its rights all throughout the past year while Honeywell was settling with a number of Fuji's co-defendants. Indeed, as discussed in Section B below, as each defendant settled, Fuji did receive copies of the settlement documents and notice of dismissals, yet never raised concerns about the whereabouts of any other productions. Sanctions are thus inappropriate because Honeywell's conduct has been in good faith and Fuji has sat on its alleged rights for well over a year. Sanctions are also inappropriate because there is no reason to believe that these document productions would have assisted Fuji in its defense. If Fuji's representations to the Court are to be believed, it has been coordinating its defenses since the implementation of the original scheduling order. Indeed, Fuji submitted over 180 pages of invalidity reports and 27 pages of non-infringement reports (Ex. C), thus demonstrating that it has ample information and resources in its effort to avoid having to take the same course of action that was already taken by the settling defendants. None of these experts complained that they needed these co-defendants' productions in order to render their lengthy opinions. Clearly, Fuji has evidenced no claim of prejudice. Finally, Fuji always had, and continues to have, the right to seek third party discovery from the producing parties – *i.e.,* its former co-defendants. Fuji has never explained why it has repeatedly refused to do that, instead preferring to manufacture this issue with Honeywell. The availability of this remedy since 2006 renders the sanctions Fuji seeks completely inappropriate.

The Honorable Mary Pat Thynge
January 4, 2008
Page 3

      **B.**    **Honeywell has Produced Its Settlement/Licensing Documentation, with Minor Exceptions.**

Contrary to Fuji's assertion, Honeywell has not refused to produce documents relating to its licensing/settlement negotiations. As each license was completed, Honeywell sought agreement from the licensee to produce related documentation and, with one exception, has produced those documents along with the actual license. This has resulted in a substantial supplemental production of approximately 3500 pages (Ex. D) and provides Fuji with insight as to the negotiating process underlying each license. The one exception is Sharp (not Sanyo), who objected to the production of these materials because it settled pre-suit, and Honeywell stands ready to resolve that objection. In addition, Honeywell has also not produced any materials regarding current, pending negotiations between itself and other remaining defendants, on the grounds of F.R.E. 408.

      **C.**    **Fuji's Request for Honeywell's Limited Party-Specific Production to Optrex is Moot.**

As Fuji notes, when Honeywell served its response to Fuji's document request back on **August 28, 2006,** Honeywell specifically stated that, because other defendants may have objections to Honeywell producing documents that were produced based on party specific requests, Honeywell would only produce documents related to common issues among the defendants, trusting the fact that the defendants have a joint defense agreement. Fuji Ex. 3 at 3. Fuji raised no objection to this response until over a year later on September 17, 2007, when it attempted to rewrite history by claiming surprise at Honeywell's clearly articulated, and long-standing position. Regardless of the curious timing of Fuji's motion, the *only* documents that are at issue are about 350 pages relating to a Honeywell patent that post-dates the McCartney patent (the "Borchardt documents") and approximately 700 pages relating to a specific transaction between Honeywell and Optrex (the "KLN documents"). Both groups of documents were requested solely by Optrex.

With regard to the former category, it appears that Optrex in fact shared the Borchardt documents with Fuji's counsel, because Fuji's counsel, Kevin Ecker, attended the deposition of Mr. Borchardt in April of 2007 where a number of those documents were marked and discussed. Ex. E. The conduct of Fuji's own lawyers not only undercuts any claim of surprise or prejudice, but once again calls into question the degree to which defendants are cooperating with one another. With regard to the KLN documents, Fuji has not explained how documents concerning a transaction between Honeywell and Optrex are reasonably calculated to lead to the discovery of admissible evidence with regard to Fuji. Moreover, Fuji has now acknowledged that it obtained a copy of these documents, presumably from Optrex. Fuji Ex. 8 at 1 ("We have obtained a copy of this production . . ."). Accordingly, Fuji's motion was moot at least as of October 29, 2007.

For the foregoing reasons, Honeywell respectfully requests that Fuji's motion be denied.

The Honorable Mary Pat Thynge
January 4, 2008
Page 4

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm

TCG
Enclosures
cc:   Dr. Peter T. Dalleo, Clerk (by hand, w/encls.)
      CM/ECF list (by e-filing)
      Counsel for Non-Stayed Defendants (by email, w/encls.)