# EXHIBIT B

US005280371A

# United States Patent [19]

## McCartney, Jr. et al.

[11] Patent Number: 5,280,371

[45] Date of Patent: Jan. 18, 1994

[54] **DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY**

[75] Inventors: **Richard I. McCartney, Jr.,** Scottsdale; **Daniel D. Syroid,** Glendale; **Karen E. Jachimowicz,** Goodyear, all of Ariz.

[73] Assignee: **Honeywell Inc., Minneapolis, Minn.**

[21] Appl. No.: **911,547**

[22] Filed: **Jul. 9, 1992**

[51] Int. Cl.5 ............................................. G02F 1/133
[52] U.S. Cl. ......................................... 359/40; 359/69
[58] Field of Search ............................... 359/69, 40, 41

[56]                **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,416,515 | 11/1983 | Fumada et al. ..................... | 359/69 |
| 5,052,783 | 10/1991 | Hamada ............................... | 359/41 |
| 5,101,279 | 3/1992 | Kurematsu et al. ................. | 359/40 |
| 5,128,783 | 7/1992 | Abileah et al. ...................... | 359/40 |
| 5,161,041 | 11/1992 | Abileah et al. ...................... | 359/40 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0068400 | 10/1977 | Japan | ..................... 359/69 |
| 2-14822 | 8/1990 | Japan | ..................... 359/69 |

### OTHER PUBLICATIONS

IBM Corp., "Polarized backlight for liquid crystal display", IBM Technical Disclosure Bulletin, vol. 33, No. 1B, Jun. 1990, pp. 143–144.

*Primary Examiner*—William L. Sikes
*Assistant Examiner*—Huy Mai
*Attorney, Agent, or Firm*—Dale E. Jepsen; A. Medved

[57]                **ABSTRACT**

A display apparatus including a light source, a liquid crystal panel, and one or more directional diffuser lens arrays disposed therebetween provides a tailored variation of luminance with viewing angle, a uniform variation of luminance with viewing angle within a first predetermined range of viewing angles and a concentration of light energy within a second predetermined range of viewing angles.

**3 Claims, 11 Drawing Sheets**





Fig.1
PRIOR ART



Fig.2



*Fig.3*



*Fig. 4A*



*Fig. 4B*



Fig. 5



Fig.6



*Fig. 7*



*Fig. 10*



*Fig. 8*

**U.S. Patent**    Jan. 18, 1994    **Sheet 9 of 11**    **5,280,371**



*Fig. 9*



Fig.11



$\theta = 2°$ TO $16°$

Fig.12

5,280,371

1

## DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

### BACKGROUND OF THE INVENTION

This invention relates in general to flat panel liquid crystal displays and, more particularly, to a liquid crystal display (LCD) having a directional diffuser to provide a tailored variation of luminance with viewing angle.

There are commercially available liquid crystal displays for use in various applications, including for example aircraft cockpit displays. However, a typical characteristic of the liquid crystal panel used therein is a wide variation of the light transmission of the liquid crystal panel with viewing angle, especially the vertical viewing angle. This results in gray-scale errors and off-state errors with viewing angle. That is to say, the brightness of certain areas of the display when viewed at angles above or below a vertical viewing angle normal to the display surface, may be substantially different than the brightness of those areas when viewed at an angle normal to the display surface. This variation of brightness or luminance with viewing angle is generally undesirable and particularly undesirable in those cases where the information being displayed on the liquid crystal display is critical to an operation such as controlling or navigating an aircraft.

In addition, a typical diffuser used to provide a light source for backlighting a typical liquid crystal display ordinarily provides a constant luminance with viewing angle and therefore provides the same amount of energy for any given viewing angle of the display. In certain applications, such as for example an aircraft cockpit, the typical vertical viewing angle is fixed within a relatively narrow range and it would therefore be desirable to concentrate a higher percentage of the energy from the light source within a particular range of viewing angles.

It would therefore be desirable to provide a directional diffuser for use with a liquid crystal display to provide a tailored variation of luminance with viewing angle while also providing a concentration of the light energy from the light source within a predetermined range of viewing angles.

### SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a directional diffuser element for a liquid crystal display to provide a tailored variation of luminance with viewing angle.

It is a further object of the present invention to provide a liquid crystal display having less variation of intermediate gray-level luminance with viewing angle.

It is still further an object of the present invention to provide a liquid crystal display combining the above features to provide a higher concentration of light energy, and therefore increased luminance, within a particular range of viewing angles thereby providing a more efficient use of light energy available from a light source.

The foregoing and other objects are achieved in the present invention wherein there is provided a liquid crystal display apparatus comprising a light source, a liquid crystal planar array of pixels for creating an image by controlling the amount of light allowed to pass through each of the pixels, and one or more directional diffuser lens arrays disposed between the light source and the liquid crystal array for providing a tailored variation of luminance from the liquid crystal display as a function of vertical viewing angle.

### BRIEF DESCRIPTION OF THE DRAWINGS

The above mentioned and other features and objects of the present invention and the manner of attaining them will become more apparent and the invention itself will be best understood by reference to the following description of alternative embodiments of the invention taken in conjunction with the accompanying drawings wherein:

FIG. 1 is an exploded view of a typical prior art backlit liquid crystal display;

FIG. 2 is an exploded view of the liquid crystal display of the present invention, having a directional diffuser lens array;

FIG. 3 illustrates a typical prior art LCD gray-level response showing the variation of luminance with vertical viewing angle;

FIGS. 4A and 4B show cross sectional side and top views of a typical assembly including the lens array of the present invention;

FIG. 5 illustrates the variation of luminance with viewing angle- for a light source alone and a light source combined with a single lens array;

FIG. 6 illustrates the path of various light rays when striking the lens array at various angles;

FIG. 7 is a cross sectional view of a preferred embodiment of the present invention with two lens arrays;

FIG. 8 illustrates the variation of luminance with viewing angle for the dual lens array configuration;

FIG. 9 illustrates the variation of luminance with viewing angle for a triple lens array configuration;

FIG. 10 is a cross sectional view of a configuration utilizing a triangular shaped lens array;

FIG. 11 illustrates the variation of luminance with viewing angle for the triangular shaped lens array; and

FIG. 12 shows the angular rotation of the lens array with respect to the LCD matrix array to eliminate residual moire effects.

### DESCRIPTION OF A PREFERRED EMBODIMENT

Referring now to FIG. 1 there is shown a cross section of a typical prior art liquid crystal display apparatus including backlight array 25 comprising lamp 10, rear reflecting surface 15 and lambertian diffuser 20. The backlight array provides a source of light which impinges on liquid crystal panel 30 comprised of a number of individual liquid crystal elements which are alternately energized in order to form a desired pattern or image for viewing from the front of the liquid crystal display.

While this typical prior art liquid crystal panel may be adequate for certain applications where the normal viewing angle is more or less at an angle normal to the display surface, this display is not optimum for applications wherein the typical viewing angle is other than at an angle normal to the display surface. This prior art display exhibits a relatively wide variation of light transmission with viewing angle, especially the vertical viewing angle. As illustrated in FIG. 3 this variation also changes with the level of lumination for various gray-levels or intermediate intensities for a given display.

5,280,371

3

As can be seen in the curves of FIG. 3, the luminance emitted from the lower gray-levels of the LCD system increases significantly with increasing vertical viewing angle. This variation presents an undesirably large luminance increase with angle when the information being presented is low-level luminance information, such as for avionics applications including weather radar or attitude director indicator presentations. As a pilot viewing the display moves his vertical perspective, or his viewing angle, higher above a normal angle to the display (larger vertical viewing angles), he observes a low luminance field increase significantly in luminance, thereby causing confusion in interpretation of critical display information.

In addition, the lambertian diffuser of the typical prior art display, element 20 of FIG. 1, provides for a nearly equal luminance in all angular viewing directions. In most applications a 180° field of view in both horizontal and vertical directions is not required. It would therefore be more energy efficient if a substantial portion of the light energy could be redirected so as to be concentrated in the viewing angles of interest for a particular application.

The apparatus of the present invention includes the backlight array and liquid crystal of the prior art as shown in FIG. 1 with the addition of a lens array 40 inserted between the lambertian diffuser 20 of the prior art and liquid crystal display panel 30, as shown in FIG. 2. It was found that by inserting a directional diffuser consisting of a cylindrical lens array 40 between the lambertian diffuser and the liquid crystal panel that both of the desired effects could be accomplished. That is, the overall light energy is concentrated within a desired rang of viewing angles and the variation of luminance with viewing angle is tailored to offset that which is obtained through the liquid crystal display alone.

For example, FIG. 5 illustrates that with the insertion of lens array 40 as shown in FIGS. 4A and 4B, the overall luminance has increased approximately 20 percent within a range from −20° to +20° viewing angle and the desired decrease in luminance with increased vertical viewing angle is obtained between approximately +10° and +35° of vertical viewing angle. Curve 110 of FIG. 5 illustrates the variation of luminance with viewing angle for the lambertian light source only, in both the horizontal and vertical angles while curves 120 and 130 respectively represent a variation of luminance with vertical and horizontal viewing angles for the backlight including lens array 40.

The effect which results from the insertion of the cylindrical lens array is explained by reference to FIG. 6 wherein there are shown light rays from the lambertian (having uniform luminance with angle) source diffuser impinging on the lens array from various angles. An air gap must be present at the interface of the lambertian diffuser and the lens array. The normal 4 percent loss per surface due to fresnel reflections is not incurred, because the surface reflections are returned to the diffuser and reflected again.

Those rays that are normal to the source diffuser but less than the critical angle within the lens array are passed through the lens array materially unobstructed, except for a small amount of surface reflection. Rays which enter at oblique angles and are greater than the critical angle of the lens array undergo total internal reflection at the inside of the lens surface as illustrated by ray tracing 70. These rays are reflected with no loss due to the total internal reflection effect around the lens

4

periphery. They exit the rear of the lens array and return to the source diffuser where they undergo a secondary diffuse reflection from the source diffuser.

However, because the source diffuser is not totally reflective, some of the returned rays are transmitted through the diffuser and are then reflected from the backlight enclosure surface 15 of FIG. 4A. Some fraction of these rays are reflected internally to exit the diffuser again. These reflected rays again have a lambertian distribution at the surface of lambertian diffuser 20. It is apparent from this interaction between the lens array and the backlight that rays which impinge close to the normal tend to be intensified while those rays which impinge at oblique angles undergo total internal reflection and are returned to the diffuser and diminished somewhat from this statistical process.

However, the roll off or variation with vertical viewing angle for this single directional diffuser cylindrical lens array was not sufficient to offset the effects of the liquid crystal display, and there were significant moire patterns caused by the interference between the lens array and the display panel wherein the lens array contained 142 lenses per inch and the display panel matrix had a spatial frequency resolution of 172 dots or pixels per inch.

For the desired specific implementation it was discovered that the adverse interaction producing moire patterns could be eliminated by including a second lens array with a different number of lenses per inch. The combination of the dual lenses increased the desired reduction in luminance with increased viewing angle, and in addition reduced or eliminated the moire patterns with the selection of an appropriate pitch, or number of lenses per inch, for the two lenses in question.

As illustrated in FIG. 7, one of the lens arrays 42 was selected to have a relatively coarse pitch with respect to that of the liquid crystal display and the second lens array 44 was selected to have a relatively fine pitch with respect to that of liquid crystal display. FIG. 8 illustrates again the relatively flat response of the lambertian source diffuser alone curve 110, and the increased roll off with vertical viewing angle of curve 125 as well as the corresponding variation of luminance with horizonal viewing angle as illustrated by curve 135 for the dual lens array of FIG. 8.

In general it was discovered that the addition of additional lens arrays caused a steeper or more rapid variation of the change in luminance with vertical viewing angle, which was desirable, but the corresponding change in luminance with variations in horizonal viewing angle also became steeper, which was not desirable for the particular application in question. For the particular application in question the preferred embodiment included two lens arrays in series which provided the best tradeoff of decrease in luminance with variation of vertical viewing angle, while not adversely affecting the variation in luminance with horizonal viewing angle.

In addition, since moire effects result when both of the lens arrays have the same spatial frequency, the rear array 42 should have a coarse resolution or low spatial frequency while the front lens array 44 should have a fine resolution or high spatial frequency. The lens arrays and the panel spatial frequencies should be selected to avoid integral multiples of the other. Thus the fine lens array should be as high a spatial frequency as is practical and should be a non integral multiple of the panel frequency. According to these guidelines the fine

5,280,371

5
6

array frequency becomes approximately 2.5 times the display spatial frequency and the coarse array frequency should be approximately the fine array frequency divided by 3.5, 4.5, 5.5 or as required for the most convenient fabrication.

It was also discovered that the maximum increase in luminance was obtained using a triangular lens array having an included angle of 90° as illustrated in FIG. 10. This configuration resulted in a variation of luminance with vertical and horizonal viewing angles which was quite steep as illustrated by curves 160 and 170 of FIG. 11. Other lens array shapes may be selected as desired to obtain the required concentration of luminance and variation of luminance with vertical and horizonal viewing angle for a particular application.

Even though the spatial frequencies of the directional diffuser lens array and LCD panel have been selected to be greatly different and non-integer multiples, some visual banding effects or moire pattern effects may still be apparent to the viewer. This is especially true at off-axis viewing conditions. This residual moire can be removed by rotating the lens array 40 with the respect to the LCD array 30, as illustrated in FIG. 12. This rotation of the lens array by a few degrees (Typically 2 to 16 degrees) from the horizontal axis causes a small change in the effective spatial frequency difference of the two arrays and thereby eliminates the residual moire.

In addition to the angular redistribution of the light from the directional diffuser, the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or nearly parallel to within a few degrees) the axis of the lens array. This allows the reduction of the thickness or optical density of the conventional diffuser while still achieving the same system luminance uniformity and masking of undesired spatial artifacts from the light source, but with higher luminance at the output.

While there have been described above the principals of invention in conjunction with several specific embodiments, it is to be clearly understood that these descriptions are made only by way of example and not as a limitation to the scope of the invention.

We claim:
1. A display apparatus comprising:
a light source;
a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein said liquid crystal panel comprises a plurality of pixels arranged in rows and columns, and wherein the number of rows of pixels per unit height, or pitch, of the liquid crystal panel is a first value; the number of lenslets per unit height, or pitch, of said first lens array is a second value which is less than said first value; and the number of lenslets per unit height, or pitch, of said second lens array is a third value which is greater than said first value.

2. A display apparatus in accordance with claim 1 wherein said third value is a non-integral multiple of said first value and is also a non-integral multiple of said second value.

3. A display apparatus comprising:
a light source;
a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

* * * * *

# EXHIBIT C

FILE WRAPPER FOR U.S. PATENT

NO:             **5,280,371**

ISSUE DATE:     JANUARY 18, 1994

INVENTORS:      RICHARD I. MCCARTNEY, JR.
                DANIEL D. SYROID
                KAREN E. JACHIMOWICZ

SERIAL NO:      07/911,547

FILING DATE:    JULY 9, 1992

TITLE:          DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

REFERENCES CITED   -   SEE PAPERS #3, 5

Honeywell v Apple
Date 3-2-07
Defendant
EXHIBIT 90

**1**

359-0  AM  13

5280371

| SERIAL NUMBER (Series of 1901) | PATENT DATE | | PATENT NUMBER | |
|---|---|---|---|---|
| 7/911547 | JAN 18 1994 | | | |
| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT |
| 07/911,547 | 07/09/92 | 359 | | 2504 |

*5280371*

**APPLICANTS**

RICHARD I. MC CARTNEY JR., SCOTTSDALE, AZ; DANIEL D. SYROID, GLENDALE, AZ; KAREN E. JACHIMOWICZ, GOODYEAR, AZ.

**CONTINUING DATA*******************
VERIFIED

__HM__

**FOREIGN/PCT APPLICATIONS*******************
VERIFIED

__HM__

FOREIGN FILING LICENSE GRANTED 07/24/92

| Foreign priority claimed | ☐ yes ☒ no | | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met | ☐ yes ☒ no | | AZ | 12 | 9 | 1 | $690.00 | A6213491 |
| Verified and Acknowledged | HM Examiner's initials | AS FILED → | | | | | | |

**ADDRESS**

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ  85027

**TITLE**

DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

U.S. DEPT. of COMM.–Pat. & TM Office – PTO-436L (rev. 10-78)

| PARTS OF APPLICATION FILED SEPARATELY | | | |
|---|---|---|---|

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE 7/9/93 | CLAIMS ALLOWED | |
|---|---|---|---|
| 7-19-93 | HUY MAI Assistant Examiner    Annette Smith Docket Clerk | Total Claims 3 | Print Claim |
| **ISSUE FEE** | William L Sikes | **DRAWING** | |
| Amount Due $ | Date Paid | WILLIAM L. SIKES SUPERVISORY PATENT EXAMINER Primary Examiner | Sheets Drwg. 12 11 | Figs. Drwg. 13 | Print Fig. 7 |
| 1770 00 | 8-27-93 | | | | |
| | **ISSUE CLASSIFICATION** | | |
| Label Area | Class 359 | Subclass 40 | ISSUE BATCH NUMBER 098 |
| | WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only. | | |

Form PTO-436
Rev. 9/80

**2**

BAR CODE LABEL

## U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 07/911,547 | 07/09/92 | 359 | 2504 |

APPLICANT

RICHARD I. MC CARTNEY JR., SCOTTSDALE, AZ; DANIEL D. SYROID, GLENDALE, AZ;
KAREN E. JACHIMOWICZ, GOODYEAR, AZ.

**CONTINUING DATA*********************
VERIFIED

_____

**FOREIGN/PCT APPLICATIONS************
VERIFIED

_____

FOREIGN FILING LICENSE GRANTED 07/24/92

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| AZ | 12 | 9 | 1 | $ 690.00 | A6213491 |

ADDRESS

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ  85027

TITLE

DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

This is to certify that annexed hereto is a true copy from the records of the United States
Patent and Trademark Office of the application as filed which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                        Certifying Officer

**3**

07 911547

APPROVED FOR LICENSE ☐

INITIALS _____

JUL 21 9
AUG 0 3 1992
GROUP 250
RECEIVED

| Entered or Counted | CONTENTS | Received or Mailed |
|---|---|---|
| | 1. Application *12 sheets* papers. | |
| | 2. Fee Authorization | 7/9/93 |
| 7/28/92 AS | 3. Rej (3 months) | 10/2/92 |
| 2/25/93 AS | 4. Req Ext (1) / Amdt A | 2/2/93 |
| 5.14.23.93 AS | 5. Final Rejection (3 months) | 5-10-93 nn |
| 7/8/93 AS | 6. Req Ext (1) | 7/2/93 |
| 7/8/93 AS | 7. Amdt B (N) | 7/2/93 |
| 7-16-93 | 8. Interview Summary | 7-16-93 |
| 7/19/93 AS | 9. PTO-37 Notice of Allowability | 7-19-93 Re |
| 8/5/93 | 10. Formal Drawings (shts) 1 | 8/27/93 |
| Sept 23 93 | 11. Notice of allowance | July 19 1993 |
| | 12. Issue Fee | 8/27/93 |
| 10/18/93 | 13. Formal Drawings (shts) 2 | 10-5-93 |
| | 14. PTO Grant  JAN 1 8 1994 | |
| | 15. | |
| | 16. | |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 24. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

**4**



US005280371A

## United States Patent [19]

### McCartney, Jr. et al.

| | |
|---|---|
| [11] | **Patent Number:** **5,280,371** |
| [45] | **Date of Patent:** **Jan. 18, 1994** |

[54] **DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY**

[75] Inventors: **Richard I. McCartney, Jr.,** Scottsdale; **Daniel D. Syrold,** Glendale; **Karen E. Jachimowicz,** Goodyear, all of Ariz.

[73] Assignee: **Honeywell Inc., Minneapolis, Minn.**

[21] Appl. No.: **911,547**

[22] Filed: **Jul. 9, 1992**

[51] Int. Cl.⁵ ............................................. G02F 1/133
[52] U.S. Cl. ........................................ 359/40; 359/69
[58] Field of Search ............................. 359/69, 40, 41

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,416,515 | 11/1983 | Fumada et al. | 359/69 |
| 5,052,783 | 10/1991 | Hamada | 359/41 |
| 5,101,279 | 3/1992 | Kurematsu et al. | 359/40 |
| 5,128,783 | 7/1992 | Abileah et al. | 359/40 |
| 5,161,041 | 11/1992 | Abileah et al. | 359/40 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0068400 | 10/1977 | Japan | 359/69 |
| 2-14822 | 8/1990 | Japan | 359/69 |

OTHER PUBLICATIONS

IBM Corp., "Polarized backlight for liquid crystal display", IBM Technical Disclosure Bulletin, vol. 33, No. 1B, Jun. 1990, pp. 143–144.

*Primary Examiner*—William L. Sikes
*Assistant Examiner*—Huy Mai
*Attorney, Agent, or Firm*—Dale E. Jepsen; A. Medved

[57] **ABSTRACT**

A display apparatus including a light source, a liquid crystal panel, and one or more directional diffuser lens arrays disposed therebetween provides a tailored variation of luminance with viewing angle, a uniform variation of luminance with viewing angle within a first predetermined range of viewing angles and a concentration of light energy within a second predetermined range of viewing angles.

3 Claims, 11 Drawing Sheets



**5**

U.S. Patent          Jan. 18, 1994          Sheet 1 of 11          5,280,371



Fig.1
PRIOR ART

U.S. Patent        Jan. 18, 1994        Sheet 2 of 11        5,280,371



*Fig.2*



*Fig.3*

U.S. Patent

Jan. 18, 1994

Sheet 3 of 11

5,280,371



$\Theta_V$ = VERTICAL VIEW ANGLE

*Fig. 4A*



$\Theta_H$ = HORIZONTAL VIEW ANGLE

*Fig. 4B*



Fig. 5

10



Fig. 6

**11**

U.S. Patent      Jan. 18, 1994      Sheet 7 of 11      5,280,371



*Fig. 7*



*Fig.10*

**12**



Fig.8

13



Fig.9

14



*Fig. 11*

15

U.S. Patent          Jan. 18, 1994          Sheet 11 of 11          5,280,371



Fig.12

**16**

5,280,371

1

### DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

#### BACKGROUND OF THE INVENTION

This invention relates in general to flat panel liquid crystal displays and, more particularly, to a liquid crystal display (LCD) having a directional diffuser to provide a tailored variation of luminance with viewing angle.

There are commercially available liquid crystal displays for use in various applications, including for example aircraft cockpit displays. However, a typical characteristic of the liquid crystal panel used therein is a wide variation of the light transmission of the liquid crystal panel with viewing angle, especially the vertical viewing angle. This results in gray-scale errors and off-state errors with viewing angle. That is to say, the brightness of certain areas of the display when viewed at angles above or below a vertical viewing angle normal to the display surface, may be substantially different than the brightness of those areas when viewed at an angle normal to the display surface. This variation of brightness or luminance with viewing angle is generally undesirable and particularly undesirable in those cases where the information being displayed on the liquid crystal display is critical to an operation such as controlling or navigating an aircraft.

In addition, a typical diffuser used to provide a light source for backlighting a typical liquid crystal display ordinarily provides a constant luminance with viewing angle and therefore provides the same amount of energy for any given viewing angle of the display. In certain applications, such as for example an aircraft cockpit, the typical vertical viewing angle is fixed within a relatively narrow range and it would therefore be desirable to concentrate a higher percentage of the energy from the light source within a particular range of viewing angles.

It would therefore be desirable to provide a directional diffuser for use with a liquid crystal display to provide a tailored variation of luminance with viewing angle while also providing a concentration of the light energy from the light source within a predetermined range of viewing angles.

#### SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a directional diffuser element for a liquid crystal display to provide a tailored variation of luminance with viewing angle.

It is a further object of the present invention to provide a liquid crystal display having less variation of intermediate gray-level luminance with viewing angle.

It is still further an object of the present invention to provide a liquid crystal display combining the above features to provide a higher concentration of light energy, and therefore increased luminance, within a particular range of viewing angles thereby providing a more efficient use of light energy available from a light source.

The foregoing and other objects are achieved in the present invention wherein there is provided a liquid crystal display apparatus comprising a light source, a liquid crystal planar array of pixels for creating an image by controlling the amount of light allowed to pass through each of the pixels, and one or more directional diffuser lens arrays disposed between the light source and the liquid crystal array for providing a tailored variation of luminance from the liquid crystal display as a function of vertical viewing angle.

#### BRIEF DESCRIPTION OF THE DRAWINGS

The above mentioned and other features and objects of the present invention and the manner of attaining them will become more apparent and the invention itself will be best understood by reference to the following description of alternative embodiments of the invention taken in conjunction with the accompanying drawings wherein:

FIG. 1 is an exploded view of a typical prior art backlit liquid crystal display;

FIG. 2 is an exploded view of the liquid crystal display of the present invention, having a directional diffuser lens array;

FIG. 3 illustrates a typical prior art LCD gray-level response showing the variation of luminance with vertical viewing angle;

FIGS. 4A and 4B show cross sectional side and top views of a typical assembly including the lens array of the present invention;

FIG. 5 illustrates the variation of luminance with viewing angle- for a light source alone and a light source combined with a single lens array;

FIG. 6 illustrates the path of various light rays when striking the lens array at various angles;

FIG. 7 is a cross sectional view of a preferred embodiment of the present invention with two lens arrays;

FIG. 8 illustrates the variation of luminance with viewing angle for the dual lens array configuration;

FIG. 9 illustrates the variation of luminance with viewing angle for a triple lens array configuration;

FIG. 10 is a cross sectional view of a configuration utilizing a triangular shaped lens array;

FIG. 11 illustrates the variation of luminance with viewing angle for the triangular shaped lens array; and

FIG. 12 shows the angular rotation of the lens array with respect to the LCD matrix array to eliminate residual moire effects.

#### DESCRIPTION OF A PREFERRED EMBODIMENT

Referring now to FIG. 1 there is shown a cross section of a typical prior art liquid crystal display apparatus including backlight array 25 comprising lamp 10, rear reflecting surface 15 and lambertian diffuser 20. The backlight array provides a source of light which impinges on liquid crystal panel 30 comprised of a number of individual liquid crystal elements which are alternately energized in order to form a desired pattern or image for viewing from the front of the liquid crystal display.

While this typical prior art liquid crystal panel may be adequate for certain applications where the normal viewing angle is more or less at an angle normal to the display surface, this display is not optimum for applications wherein the typical viewing angle is other than at an angle normal to the display surface. This prior art display exhibits a relatively wide variation of light transmission with viewing angle, especially the vertical viewing angle. As illustrated in FIG. 3 this variation also changes with the level of lumination for various gray-levels or intermediate intensities for a given display.

**17**

5,280,371

3

As can be seen in the curves of FIG. 3, the luminance emitted from the lower gray-levels of the LCD system increases significantly with increasing vertical viewing angle. This variation presents an undesirably large luminance increase with angle when the information being presented is low-level luminance information, such as for avionics applications including weather radar or attitude director indicator presentations. As a pilot viewing the display moves his vertical perspective, or his viewing angle, higher above a normal angle to the display (larger vertical viewing angles), he observes a low luminance field increase significantly in luminance, thereby causing confusion in interpretation of critical display information.

In addition, the lambertian diffuser of the typical prior art display, element 20 of FIG. 1, provides for a nearly equal luminance in all angular viewing directions. In most applications a 180° field of view in both horizonal and vertical directions is not required. It would therefore be more energy efficient if a substantial portion of the light energy could be redirected so as to be concentrated in the viewing angles of interest for a particular application.

The apparatus of the present invention includes the backlight array and liquid crystal of the prior art as shown in FIG. 1 with the addition of a lens array 40 inserted between the lambertian diffuser 20 of the prior art and liquid crystal display panel 30, as shown in FIG. 2. It was found that by inserting a directional diffuser consisting of a cylindrical lens array 40 between the lambertian diffuser and the liquid crystal panel that both of the desired effects could be accomplished. That is, the overall light energy is concentrated within a desired rang of viewing angles and the variation of luminance with viewing angle is tailored to offset that which is obtained through the liquid crystal display alone.

For example, FIG. 5 illustrates that with the insertion of lens array 40 as shown in FIGS. 4A and 4B, the overall luminance has increased approximately 20 percent within a range from −20° to +20° viewing angle and the desired decrease in luminance with increased vertical viewing angle is obtained between approximately +10° and +35° of vertical viewing angle. Curve 110 of FIG. 5 illustrates the variation of luminance with viewing angle for the lambertian light source only, in both the horizontal and vertical angles while curves 120 and 130 respectively represent a variation of luminance with vertical and horizontal viewing angles for the backlight including lens array 40.

The effect which results from the insertion of the cylindrical lens array is explained by reference to FIG. 6 wherein there are shown light rays from the lambertian (having uniform luminance with angle) source diffuser impinging on the lens array from various angles. An air gap must be present at the interface of the lambertian diffuser and the lens array. The normal 4 percent loss per surface due to fresnel reflections is not incurred, because the surface reflections are returned to the diffuser and reflected again.

Those rays that are normal to the source diffuser but less than the critical angle within the lens array are passed through the lens array materially unobstructed, except for a small amount of surface reflection. Rays which enter at oblique angles and are greater than the critical angle of the lens array undergo total internal reflection at the inside of the lens surface as illustrated by ray tracing 70. These rays are reflected with no loss due to the total internal reflection effect around the lens

4

periphery. They exit the rear of the lens array and return to the source diffuser where they undergo a secondary diffuse reflection from the source diffuser.

However, because the source diffuser is not totally reflective, some of the returned rays are transmitted through the diffuser and are then reflected from the backlight enclosure surface 15 of FIG. 4A. Some fraction of these rays are reflected internally to exit the diffuser again. These reflected rays again have a lambertian distribution at the surface of lambertian diffuser 20. It is apparent from this interaction between the lens array and the backlight that rays which impinge close to the normal tend to be intensified while those rays which impinge at oblique angles undergo total internal reflection and are returned to the diffuser and diminished somewhat from this statistical process.

However, the roll off or variation with vertical viewing angle for this single directional diffuser cylindrical lens array was not sufficient to offset the effects of the liquid crystal display, and there were significant moire patterns caused by the interference between the lens array and the display panel wherein the lens array contained 142 lenses per inch and the display panel matrix had a spatial frequency resolution of 172 dots or pixels per inch.

For the desired specific implementation it was discovered that the adverse interaction producing moire patterns could be eliminated by including a second lens array with a different number of lenses per inch. The combination of the dual lenses increased the desired reduction in luminance with increased viewing angle, and in addition reduced or eliminated the moire patterns with the selection of an appropriate pitch, or number of lenses per inch, for the two lenses in question.

As illustrated in FIG. 7, one of the lens arrays 42 was selected to have a relatively coarse pitch with respect to that of the liquid crystal display and the second lens array 44 was selected to have a relatively fine pitch with respect to that of liquid crystal display. FIG. 8 illustrates again the relatively flat response of the lambertian source diffuser alone curve 110, and the increased roll off with vertical viewing angle of curve 125 as well as the corresponding variation of luminance with horizonal viewing angle as illustrated by curve 135 for the dual lens array of FIG. 8.

In general it was discovered that the addition of additional lens arrays caused a steeper or more rapid variation of the change in luminance with vertical viewing angle, which was desirable, but the corresponding change in luminance with variations in horizonal viewing angle also became steeper, which was not desirable for the particular application in question. For the particular application in question the preferred embodiment included two lens arrays in series which provided the best tradeoff of decrease in luminance with variation of vertical viewing angle, while not adversely affecting the variation in luminance with horizonal viewing angle.

In addition, since moire effects result when both of the lens arrays have the same spatial frequency, the rear array 42 should have a coarse resolution or low spatial frequency while the front lens array 44 should have a fine resolution or high spatial frequency. The lens arrays and the panel spatial frequencies should be selected to avoid integral multiples of the other. Thus the fine lens array should be as high a spatial frequency as is practical and should be a non integral multiple of the panel frequency. According to these guidelines the fine

**18**

5,280,371

5

array frequency becomes approximately 2.5 times the display spatial frequency and the coarse array frequency should be approximately the fine array frequency divided by 3.5, 4.5, 5.5 or as required for the most convenient fabrication.

It was also discovered that the maximum increase in luminance was obtained using a triangular lens array having an included angle of 90° as illustrated in FIG. 10. This configuration resulted in a variation of luminance with vertical and horizontal viewing angles which was quite steep as illustrated by curves 160 and 170 of FIG. 11. Other lens array shapes may be selected as desired to obtain the required concentration of luminance and variation of luminance with vertical and horizontal viewing angle for a particular application.

Even though the spatial frequencies of the directional diffuser lens array and LCD panel have been selected to be greatly different and non-integer multiples, some visual banding effects or moire pattern effects may still be apparent to the viewer. This is especially true at off-axis viewing conditions. This residual moire can be removed by rotating the lens array 40 with the respect to the LCD array 30, as illustrated in FIG. 12. This rotation of the lens array by a few degrees (Typically 2 to 16 degrees) from the horizontal axis causes a small change in the effective spatial frequency difference of the two arrays and thereby eliminates the *residual moire.*

In addition to the angular redistribution of the light from the directional diffuser, the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or nearly parallel to within a few degrees) the axis of the lens array. This allows the reduction of the thickness or optical density of the conventional diffuser while still achieving the same system luminance uniformity and masking of undesired spatial artifacts from the light source, but with higher luminance at the output.

While there have been described above the principals of invention in conjunction with several specific embodiments, it is to be clearly understood that these descriptions are made only by way of example and not as a limitation to the scope of the invention.

6

We claim:

1. A display apparatus comprising:
a light source;
a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein said liquid crystal panel comprises a plurality of pixels arranged in rows and columns, and wherein the number of rows of pixels per unit height, or pitch, of the liquid crystal panel is a first value; the number of lenslets per unit height, or pitch, of said first lens array is a second value which is less than said first value; and the number of lenslets per unit height, or pitch, of said second lens array is a third value which is greater than said first value.

2. A display apparatus in accordance with claim 1 wherein said third value is a non-integral multiple of said first value and is also a non-integral multiple of said second value.

3. A display apparatus comprising:
a light source;
a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

* * * * *



# 911547

## A DIRECTIONAL DIFFUSER FOR A
## LIQUID CRYSTAL DISPLAY

### BACKGROUND OF THE INVENTION

This invention relates in general to flat panel liquid crystal displays and, more particularly, to a liquid crystal display (LCD) having a directional diffuser to provide a tailored variation of luminance with viewing angle.

There are commercially available liquid crystal displays for use in various applications, including for example aircraft cockpit displays. However, a typical characteristic of the liquid crystal panel used therein is a wide variation of the light transmission of the liquid crystal panel with viewing angle, especially the vertical viewing angle. This results in gray-scale errors and off-state errors with viewing angle. That is to say, the brightness of certain areas of the display when viewed at angles above or below a vertical viewing angle normal to the display surface, may be substantially different than the brightness of those areas when viewed at an angle normal to the display surface. This variation of brightness or luminance with viewing angle is generally undesirable and particularly undesirable in those cases where the information being displayed on the liquid crystal display is critical to an operation such as controlling or navigating an aircraft.

**20**

Docket No. A6213491          1          7 July 1992

In addition, a typical diffuser used to provide a light source for backlighting a typical liquid crystal display ordinarily provides a constant luminance with viewing angle and therefore provides the same amount of energy for any given viewing angle of the display. In certain applications, such as for example an aircraft cockpit, the typical vertical viewing angle is fixed within a relatively narrow range and it would therefore be desirable to concentrate a higher per-centange of the energy from the light source within a particu-lar range of viewing angles.

It would therefore be desirable to provide a directional diffuser for use with a liquid crystal display to provide a tailored variation of luminance with viewing angle while also providing a concentration of the light energy from the light source within a predetermined range of viewing angles.

**21**

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a directional diffuser element for a liquid crystal display to provide a tailored variation of luminance with viewing angle.

It is a further object of the present invention to provide a liquid crystal display having less variation of intermediate gray-level luminance with viewing angle.

It is still further an object of the present invention to provide a liquid crystal display combining the above features to provide a higher concentration of light energy, and therefore increased luminance, within a particular range of viewing angles thereby providing a more efficient use of light energy available from a light source.

The foregoing and other objects are achieved in the present invention wherein there is provided a liquid crystal display apparatus comprising a light source, a liquid crystal planar array of pixels for creating an image by controlling the amount of light allowed to pass through each of the pixels, and one or more directional diffuser lens arrays disposed between the light source and the liquid crystal array for providing a tailored variation of luminance from the liquid crystal display as a function of vertical viewing angle.

**22**

## BRIEF DESCRIPTION OF THE DRAWINGS

The above mentioned and other features and objects of the present invention and the manner of attaining them will become more apparent and the invention itself will be best understood by reference to the following description of alternative embodiments of the invention taken in conjunction with the accompanying drawings wherein:

Figure 1 is an exploded view of a typical prior art backlit liquid crystal display;

Figure 2 is an exploded view of the liquid crystal display of the present invention, having a directional diffuser lens array;

Figure 3 illustrates a typical prior art LCD gray-level response showing the variation of luminance with vertical viewing angle;

Figures 4A and 4B show cross sectional side and top views of a typical assembly including the lens array of the present invention;

Figure 5 illustrates the variation of luminance with viewing angle for a light source alone and a light source combined with a single lens array;

**23**

Docket No. A6213491                4                7 July 1992

Figure 6 illustrates the path of various light rays when striking the lens array at various angles;

Figure 7 is a cross sectional view of a preferred embodiment of the present invention with two lens arrays;

Figure 8 illustrates the variation of luminance with viewing angle for the dual lens array configuration;

Figure 9 illustrates the variation of luminance with viewing angle for a triple lens array configuration;

Figure 10 is a cross sectional view of a configuration utilizing a triangular shaped lens array;

Figure 11 illustrates the variation of luminance with viewing angle for the triangular shaped lens array; and

Figure 12 shows the angular rotation of the lens array with respect to the LCD matrix array to eliminate residual moire effects.

**24**

## DESCRIPTION OF A PREFERRED EMBODIMENT

Referring now to Figure 1 there is shown a cross section of a typical prior art liquid crystal display apparatus including backlight array 25 comprising lamp 10, rear reflecting surface 15 and lambertian diffuser 20. The backlight array provides a source of light which impinges on liquid crystal panel 30 comprised of a number of individual liquid crystal elements which are alternately energized in order to form a desired pattern or image for viewing from the front of the liquid crystal display.

While this typical prior art liquid crystal panel may be adequate for certain applications where the normal viewing angle is more or less at an angle normal to the display surface, this display is not optimum for applications wherein the typical viewing angle is other than at an angle normal to the display surface. This prior art display exhibits a relatively wide variation of light transmission with viewing angle, especially the vertical viewing angle. As illustrated in Figure 3, this variation also changes with the level of lumination for various gray-levels or intermediate intensities for a given display.

As can be seen in the curves of Figure 3, the luminance emitted from the lower gray-levels of the LCD system increases significantly with increasing vertical viewing angle. This variation presents an undesirably large luminance increase

with angle when the information being presented is low-level luminance information, such as for avionics applications including weather radar or attitude director indicator presentations. As a pilot viewing the display moves his vertical perspective, or his viewing angle, higher above a normal angle to the display (larger vertical viewing angles), he observes a low luminance field increase significantly in luminance, thereby causing confusion in interpretation of critical display information.

In addition, the lambertian diffuser of the typical prior art display, element 20 of Figure 1, provides for a nearly equal luminance in all angular viewing directions. In most applications a 180° field of view in both horizonal and vertical directions is not required. It would therefore be more energy efficient if a substantial portion of the light energy could be redirected so as to be concentrated in the viewing angles of interest for a particular application.

The apparatus of the present invention includes the backlight array and liquid crystal of the prior art as shown in Figure 1 with the addition of a lens array 40 inserted between the lambertian diffuser 20 of the prior art and liquid crystal display panel 30, as shown in Figure 2. It was found that by inserting a directional diffuser consisting of a cylindrical lens array 40 between the lambertian diffuser and the liquid crystal panel that both of the desired effects could be accomplished. That is, the overall light energy is

**26**

concentrated within a desired range of viewing angles and the variation of luminance with viewing angle is tailored to offset that which is obtained through the liquid crystal display alone.

For example, Figure 5 illustrates that with the insertion of lens array 40 as shown in Figures 4A and 4B, the overall luminance has increased approximately 20 percent within a range from -20° to + 20° viewing angle and the desired decrease in luminance with increased vertical viewing angle is obtained between approximately +10° and +35° of vertical viewing angle. Curve 110 of Figure 5 illustrates the variation of luminance with viewing angle for the lambertian light source only, in both the horizontal and vertical angles while curves 120 and 130 respectively represent a variation of luminance with vertical and horizontal viewing angles for the backlight including lens array 40.

The effect which results from the insertion of the cylindrical lens array is explained by reference to Figure 6 wherein there are shown light rays from the lambertian (having uniform luminance with angle) source diffuser impinging on the lens array from various angles. An air gap must be present at the interface of the lambertian diffuser and the lens array. The normal 4 percent loss per surface due to fresnel reflections is not incurred, because the surface reflections are returned to the diffuser and reflected again.

Those rays that are normal to the source diffuser but

less than the critical angle within the lens array are passed
through the lens array materially unobstructed, except for a
small amount of surface reflection.    Rays which enter at
oblique angles and are greater than the critical angle of the
lens array undergo total internal reflection at the inside of
the lens surface as illustrated by ray tracing 70. These rays
are reflected with no loss due to the total internal reflec-
tion effect around the lens periphery.  They exit the rear of
the lens array and return to the source diffuser where they
undergo  a  secondary  diffuse  reflection  from  the  source
diffuser.

However, because the source diffuser is not totally
reflective, some of the returned rays are transmitted through
the diffuser and are then reflected from the backlight enclo-
sure surface 15 of Figure 4A. Some fraction of these rays are
reflected internally to exit the diffuser again.    These
reflected rays again have a lambertian distribution at the
surface of lambertian diffuser 20.  It is apparent from this
interaction between the lens array and the backlight that rays
which impinge close to the normal tend to be intensified while
those rays which impinge at oblique angles undergo total
internal reflection and are returned to the diffuser and
diminished somewhat from this statistical process.

However, the roll off or variation with vertical
viewing angle for this single directional diffuser cylindrical
lens array was not sufficient to offset the effects of the

**28**            Docket No. A6213491            9            7 July 1992

liquid crystal display, and there were significant moire patterns caused by the interference between the lens array and the display panel wherein the lens array contained 142 lenses per inch and the display panel matrix had a spatial frequency resolution of 172 dots or pixels per inch.

For the desired specific implementation it was discovered that the adverse interaction producing moire patterns could be eliminated by including a second lens array with a different number of lenses per inch. The combination of the dual lenses increased the desired reduction in luminance with increased viewing angle, and in addition reduced or eliminated the moire patterns with the selection of an appropriate pitch, or number of lenses per inch, for the two lenses in question.

As illustrated in Figure 7, one of the lens arrays 42 was selected to have a relatively coarse pitch with respect to that of the liquid crystal display and the second lens array 44 was selected to have a relatively fine pitch with respect to that of liquid crystal display. Figure 8 illustrates again the relatively flat response of the lambertian source diffuser alone curve 110, and the increased roll off with vertical viewing angle of curve 125 as well as the corresponding variation of luminance with horizonal viewing angle as illustrated by curve 135 for the dual lens array of Figure 8.

In general it was discovered that the addition of additional lens arrays caused a steeper or more rapid varia-

Docket No. A6213491          10          7 July 1992

**29**

tion of the change in luminance with vertical viewing angle, which was desirable, but the corresponding change in luminance with variations in horizonal viewing angle also became steeper, which was not desirable for the particular application in question. For the particular application in question the preferred embodiment included two lens arrays in series which provided the best tradeoff of decrease in luminance with variation of vertical viewing angle, while not adversely affecting the variation in luminance with horizonal viewing angle.

In addition, since moire effects result when both of the lens arrays have the same spatial frequency, the rear array 42 should have a coarse resolution or low spatial frequency while the front lens array 44 should have a fine resolution or high spatial frequency. The lens arrays and the panel spatial frequencies should be selected to avoid integral multiples of the other. Thus the fine lens array should be as high a spatial frequency as is practical and should be a non-integral multiple of the panel frequency. According to these guidelines the fine array frequency becomes approximately 2.5 times the display spatial frequency and the coarse array frequency should be approximately the fine array frequency divided by 3.5, 4.5, 5.5 or as required for the most convenient fabrication.

It was also discovered that the maximum increase in luminance was obtained using a triangular lens array having an

Docket No. A6213491          11          7 July 1992

**30**

included angle of 90° as illustrated in Figure 10.  This configuration resulted in a variation of luminance with vertical and horizonal viewing angles which was quite steep as illustrated by curves 160 and 170 of Figure 11.  Other lens array shapes may be selected as desired to obtain the required concentration of luminance and variation of luminance with vertical and horizontal viewing angle for a particular application.

Even though the spatial frequencies of the directional diffuser lens array and LCD panel have been selected to be greatly different and non-integer multiples, some visual banding effects or moire pattern effects may still be apparent to the viewer.  This is especially true at off-axis viewing conditions.  This residual moire can be removed by rotating the lens array 40 with the respect to the LCD array 30, as illustrated in Figure 12.  This rotation of the lens array by a few degrees (Typically 2 to 16 degrees) from the horizontal axis causes a small change in the effective spatial frequency difference of the two arrays and thereby eliminates the residual moire.

In addition to the angular redistribution of the light from the directional diffuser, the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or nearly parallel to within a few degrees) the axis of the lens array.  This allows the reduction of the thickness or optical density of the

Docket No. A6213491          12          7 July 1992

conventional diffuser while still achieving the same system
luminance uniformity and masking of undesired spatial arti-
facts from the light source, but with higher luminance at the
output.

While there have been described above the principals of
invention in conjunction with several specific embodiments, it
is to be clearly understood that these descriptions are made
only by way of example and not as a limitation to the scope of
the invention.

**32**

<u>CLAIMS</u>

<u>Claim 1.</u>  A display apparatus comprising:

a light source;

a substantially planar array mounted adjacent to said light source for receiving light from said light source, said array comprising a plurality of controllable apertures for creating an image by controlling the amount of light from said light source which is allowed to pass through each of said apertures; and

luminance control means disposed between said light source and said planar array for providing a predetermined variation with viewing angle of light transmission from said light source through said luminance control means and said planar array.

<u>Claim 2.</u>  A display apparatus in accordance with Claim 1 wherein said planar array comprises a liquid crystal panel having a characteristic variation of light transmission with viewing angle.

<u>Claim 3.</u>  A display apparatus in accordance with Claim 2 wherein said luminance control means comprises a first lens array having a plurality of individual lenslets.

**33**

Claim 4. A display apparatus in accordance with ~~Claim 3~~ Claim 10 wherein each of said lenslets has a semi-cylindrical shape.

Claim 5. A display apparatus in accordance with ~~Claim 3~~ Claim 10 wherein each of said lenslets has a triangular cross section.

Claim 6. A display apparatus in accordance with Claim 3 wherein said luminance control means further comprises a second lens array disposed between said first lens array and said liquid crystal panel.

Claim 7. A display apparatus in accordance with ~~Claim 6~~ Claim 10 wherein said liquid crystal panel comprises a plurality of pixels arranged in rows and columns, and wherein the number of rows of pixels per unit height, or pitch, of the liquid crystal panel is a first value; the number of lenslets per unit height, or pitch, of said first lens array is a second value which is less than said first value; and the number of lenslets per unit height, or pitch, of said second lens array is a third value which is greater than said first value.

Claim 8. A display apparatus in accordance with Claim 7 wherein said third value is a non-integral multiple of said first value and is also a non-integral multiple of said second value.

Docket No. A6213491        15        7 July 1992

**34**

Claim 9.    A display apparatus in accordance with Claim 3 wherein said first lens array is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenlets and said liquid crystal panel.

**35**

07/911547

## ABSTRACT OF THE DISCLOSURE

A display apparatus including a light source, a liquid crystal panel, and one or more directional diffuser lens arrays disposed therebetween provides a tailored variation of luminance with viewing angle, a uniform variation of luminance with viewing angle within a first predetermined range of viewing angles and a concentration of light energy within a second predetermined range of viewing angles.

**36**

Application for United Stat.    tent

DOCKET No. A6213491

**PATENT**

## Declaration and Power of Attorney

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name:

    I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled
"A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

The specification of which

(check    __x__ is attached hereto
one)    ___ was filed on _____ as
    Application Serial No. _____
    and was amended on _____ .
                  (if applicable)

    I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

    I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

    I hereby claim foreign priority benefits under Title 35, United States Code §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)

                                               Priority
                                             Claimed

_____    _____    _____    ___    ___
(Number)          (Country)          (Day/Month/Year Filed)      Yes   No

    I hereby claim the benefit under Title 35, United States Code §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

_____    _____    _____
(Application Serial No.)         (Filing Date)       (Status) (patented, pending, abandoned)



    I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith: DALE E. JEPSEN
_____ (Reg. No. 31,379 ), Albin Medved (Reg. No. 22,710), Roger W. Jensen (Reg. No. 17,651) and Donald J. Lenkazus (Reg. No. 28,096). Address all telephone calls to 602/436-1336 (MR. JEPSEN) at telephone number

Address all correspondence to DALE E. JEPSEN, Office of General Counsel, Honeywell Inc.,
21,111 N. 19TH AVENUE, DV9L, PHOENIX, AZ 85027

**37**

DEC-POA (Rev. 3/91)

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full Name of Sole
or First Inventor  RICHARD ISAIAH MCCARTNEY JR.

Inventor's Signature _____  Date 7-8 , 19 92

Residence  5638 E. HELENA DR., SCOTTSDALE, ARIZONA 85254

Citizenship  USA

Post Office Address  5638 E. HELENA DR., SCOTTSDALE, ARIZONA  85254

Full Name of Second
Joint Inventor, if Any  DANIEL DAVID SYROID

Inventor's Signature _____  Date July 8 , 19 92

Residence  6627 W. ROBERT E. LEE, GLEDNDALE, ARIZONA  85308

Citizenship  US

Post Office Address  6627 W. ROBERT E. LEE, GLENDALE, AZ  85308

Full Name of Third
Joint Inventor, if Any  KAREN ELISABETH JACHIMOWICZ

Inventor's Signature _____  Date 7-8 , 19 92

Residence  16333 W. MAGNOLIA ST., GOODYEAR, ARIZONA  85338

Citizenship  US

Post Office Address  16333 W. MAGNOLIA ST., GOODYEAR, ARIZONA  85338

**38**

*Title 37, Code of Federal Regulations §1.56(a):

A duty of candor and good faith toward the Patent and Trademark Office rests on the inventor, on each attorney or agent who prepares or prosecutes the application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. All such individuals have a duty to disclose to the Office information they are aware of which is material to the examination of the application. Such information is material where there is substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. The duty is commensurate with the degree of involvement in the preparation or prosecution of the application.

Page 2 of 2

DEC-POA (Rev. 1/91)





MODULATED
LIGHT
from the Display

π 911547

LCD Panel (30)

Figure 2

Lens Array (40)

Lambertian Diffuser (20)

Improved Backlit 2D System
with Directional Diffuser

Lamp (10)

Rear Reflector (15)





Print Of Drawings
As Originally Filed

911547



SINGLE CYLINDRICAL LENS ARRAY
FIGURE 4A



SINGLE CYLINDRICAL LENS ARRAY
FIGURE 4B

**42**





FIGURE 5

**43**



911547



# FIGURE 6

**44**



87 911547

# PREFERRED EMBODIMENT



BACKLIGHT ASSY (25)

LAMBERTIAN DIFFUSER (20)

COURSE CYLINDRICAL LENS ARRAY (42)

FINE CYLINDRICAL LENS ARRAY (44)

MATRIX LCD (30)

## FIGURE 7

**45**



DUAL TANDEM LENS ARRAY

FIGURE 8

46

911547



FIGURE 9





TRIANGULAR LENS ARRAY

FIGURE 10

**48**





FIGURE 11

**49**



FIGURE 12

Ø 911547

PATENT
#2

| PATENT APPLICATION TRANSMITTAL LETTER | ATTORNEY'S DOCKET NO. A6213491 |
|---|---|

TO THE COMMISSIONER OF PATENTS AND TRADEMARKS:

Transmitted herewith for filing is the patent application of <u>RICHARD I. MCCARTNEY JR.</u> ET AL

for "<u>A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY</u>"

Enclosed are:
<u>X</u>  12 sheets of drawing (INFORMAL)
<u>X</u>  an assignment of the invention to <u>HONEYWELL INC., HONEYWELL PLAZA, MINNEAPOLIS, MN</u>
___  a certified copy of a _____
application.
<u>X</u>  associate power of attorney.

| Claims as Filed |||||
|---|---|---|---|---|
| For | Number Filed | Number Extra | Rate | Fee |
| Total claims.............................. | 9 -20 = | 0 | x $20= | 0 |
| Independent claims....................... | 1 -3 = | 0 | x $72= | 0 |
| Basic fee (minimum amount required)......... | | | | 690.00 |
| If filing multiple dependent claims add $220. | | | | |
| Total Filing Fee | | | | 690.00 |
| <u>X</u>  For Recording of Assignment | | | | 40.00 |

<u>X</u>  Please charge Deposit Account 08-2727 in the amount of $ ___730.00___
A duplicate copy of this sheet is enclosed.

<u>X</u>  The Commissioner is hereby authorized to charge any fees or credit any overpayment
under 37 CFR 1.16 and 1.17 which may be required during the entire pendency of the
application to Deposit Account No 08-2727. A duplicate copy of this sheet is
enclosed.

___  A check in the amount of $_____ to cover the filing fee is enclosed.

<u>9 JULY 1992</u>
date

DALE E. JEPSEN
Attorney of Record

<u>31,379</u>
Attorney Registration No.

**51**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
          Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/911,547 | 07/09/92 | MC CARTNEY | R | A6213491 |

| EXAMINER |
|---|
| MAI.H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2504 | 3 |

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, IVPL
PHOENIX, AZ 85027

DATE MAILED:  10/02/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), _____0_____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☑ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _____1-9_____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____1-9_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____ Under 37 C.F.R. 1.84 these drawings
      are ☐ acceptable ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
      examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received

      ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
      accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

# 52

Serial No. 911,547                              -2-

Art Unit   2504

    The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

    A person shall be entitled to a patent unless --
    (a) the invention was known or used by others in this
    country, or patented or described in a printed publication
    in this or a foreign country, before the invention thereof
    by the applicant for a patent.

    (b) the invention was patented or described in a printed
    publication in this or a foreign country or in public use or
    on sale in this country, more than one year prior to the
    date of application for patent in the United States.

    Claims 1-5 are rejected under 35 U.S.C. § 102(a or b) as

being clearly anticipated by Abileah et al or IBM (article).

    The limitations of claims 1-5 are drawn in Abileah et al's
                                        a device comprising
Figs. 3-4 or IBM's Fig. 1.   Abileah et al teach⋀a light source

100, a substantially planar array 10 and luminance control means

102.

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

**53**

Serial No. 911,547                    -3-
Art Unit   2504

    Claims 1-3 and 6-9 are rejected under 35 U.S.C. § 103 as
being unpatentable over Abileah et al or IBM (article) in view of
Hamada.

    The basic structure of claims 1-3 and 6-9 are shown in
Abileah et al's Figs. 3-4 or IBM's Fig. 1, except for a second
lens array disposed between the first lens array and the liquid
crystal panel.  Hamada teaches in Figs. 5A-B and 7 a liquid
crystal display panel having microlens arrays provided at a side
of the liquid crystal cell for improving the brightness of the
display panel.  Therefore, it would have been obvious at the time
the invention was made to one skilled in this art to utilize a
liquid crystal display apparatus comprising a light source, a
liquid crystal cell and luminance control means having a first
lens array and a second lens array interposed between the light
source and the liquid crystal cell like Abileah et al or IBM's in
view of Hamada.  It would have been obvious because of the second
lens array in the Hamada patent for improving the brightness of
the display;  One skilled in this art would have been motivated
to combine the Hamada's liquid crystal panel in to the Abileah et
al or IBM's display apparatus for improving the brightness
display.  Therefore, claims 1-3 and 6-9 are unpatentable under 35
USC 103 over Abileah et al. or IBM in view of Hamada.

    The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

**54**

Serial No. 911,547                         -4-

Art Unit   2504


    Any inquiry concerning this communication should be directed
to Examiner Huy K. Mai at telephone number (703) 308-4874.


ʜᴍ\
Mai/ks                                    *William L Sikes*
September 30, 1992              WILLIAM L. SIKES
                               SUPERVISORY PATENT EXAMINER
                               GROUP ART UNIT 251


**55**

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | SERIAL NO. 07/911,547 | GROUP ART UNIT 2504 | ATTACHMENT TO PAPER NUMBER | 3 |
|---|---|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | | APPLICANT(S) Mc Cartney, Jr. et al | | | |

### U.S. PATENT DOCUMENTS

| | | DOCUMENT NO. | | | | | | | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 5 | 1 | 2 | 8 | 7 | 8 | 3 | | 7/7/92 | Nakeale et al | 357 | 40 | 1-31-90 |
| B | 5 | 1 | 0 | 1 | 2 | 7 | 9 | | 3/31/92 | Kuematsu et al. | 357 | 40 | |
| C | 5 | 0 | 5 | 2 | 7 | 8 | 3 | | 10/1/91 | Hamada | 357 | 41 | |
| D | 4 | 4 | 1 | 6 | 5 | 1 | 5 | | 11/22/83 | Fumuda et al | 357 | 69 | |
| E | | | | | | | | | | | | | |
| F | | | | | | | | | | | | | |
| G | | | | | | | | | | | | | |
| H | | | | | | | | | | | | | |
| I | | | | | | | | | | | | | |
| J | | | | | | | | | | | | | |
| K | | | | | | | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NO. | | | | | | | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L | 0 | 2 | 1 | 4 | 8 | 2 | 2 | | 8-90 | Japan | Ishihara | 357 | 69 | | |
| M | 0 | 0 | 6 | 8 | 4 | 0 | 0 | | 10-77 | Japan | Tanaka | 357 | 69 | | |
| N | | | | | | | | | | | | | | | |
| O | | | | | | | | | | | | | | | |
| P | | | | | | | | | | | | | | | |
| Q | | | | | | | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | IBM corp, " Polarized backlight for liquid Crystal display " IBM Technical Disclosure Bulletin, vol 33 No. 1B, June 1990 pp. 143-144. |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER Mai | DATE 9-28-92 | **56** |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

PTO FORM 948
(Rev 6-91)

GROUP

**U.S. DEPARTMENT OF COMMERCE**
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER
3

APPLICATION NUMBER
911547

# NOTICE OF DRAFTSMAN'S PATENT DRAWING REVIEW

The PTO Draftsman review all originally filed drawings regardless
of whether they were designated as informal or formal.

The drawings filed ___7/9/92___

A. ☐ are approved.

B. ☒ are objected to under 37 CFR 1.84 for reason(s) checked below. The examiner will require submission of new, corrected drawings at the appropriate time. Corrected drawings must be submitted according to the instructions listed on the back of this Notice.

1. Paper and ink. 37 CFR 1.84(a)
   ☐ Poor Quality Paper, Must Be White Transparent Paper Not Allowed. Sheet(s) _____

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   Paper Size

   | Margin | 8 1/2 by 14 inches | 8 1/2 by 11 inches | 21 by 29.7 cm |
   |--------|--------------------|--------------------|---------------|
   | Top | 2 inches | 1 inch | 2.5 cm |
   | Left | 1/4 inch | 1/4 inch | 2.5 cm |
   | Right | 1/4 inch | 1/4 inch | 1.5 cm |
   | Bottom | 1/4 inch | 1/4 inch | 1.0 cm |

   ☒ Proper Size Paper Required. All Sheets Must be Same Size. *Papers Undersized* Sheet(s) ___1-12___

   ☐ Proper Margins Required. Sheet(s) _____
      ☐ Top    ☐ Right
      ☐ Left   ☐ Bottom

3. Character of Lines. 37 CFR 1.84(c)
   ☒ Lines Pale, Rough and Blurred, or Jagged. Fig(s) ___1,2,6,10,12___

   ☐ Solid Black Shading Not Allowed. Fig(s) _____

4. ☐ Photographs Not Approved. _____

☐ Comments:

5. Hatching and Shading. 37 CFR 1.84(d)
   ☐ Shade Lines are Required. Fig(s) _____

   ☐ Criss-Cross Hatching Not Allowed. Fig(s) _____

   ☐ Double Line Hatching Not Allowed. Fig(s) _____

   ☐ Parts in Section Must be Hatched Properly. Fig(s) _____

6. Reference Characters. 37 CFR 1.84(f)
   ☒ Reference Characters Poor or Rough and Blurred. Fig(s) ___1,2,10___

   ☐ Minimum 1/8 inch (3.2 mm.) in height is required. Fig(s) _____

   ☒ Figure Legends Poor or Placed Incorrectly. Fig(s) ___1-12___

7. Views. 37 CFR 1.84(i) & (j)
   ☒ Figures Must be Numbered Separately. Fig. _____

   ☐ Figures Must Not be Connected Fig(s) _____

8. Identification of Drawings. 37 CFR 1.84(l)
   ☒ Extraneous Matter or Copy Machine Marks Not Allowed. Fig(s) ___1-10,12___

9. ☐ Changes Not Completed from Prior PTO-948 dated _____

**57**

Telephone inquires concerning this review should be directed to the Chief Draftsman at telephone number (703) 557-6404.

___T. Kesfn___
Reviewing Draftsman

___7/28/92___
Date

*GD2504*
*#4/a*
*2/25/93*
"PATENT"
*A.S.*

Applicant:  R. McCartney et al     )   Art Unit: 2504
                                    )
Serial No.: 07/911,547             )   Examiner: H. Mai
                                    )
Filed:        9 July 1992          )   Docket No.: A6213491

For:  "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

-----------------------------------------------------------------

AMENDMENT

Honorable Commissioner of            **RECEIVED**
    Patents and Trademarks
Washington, D.C.  20231              FEB 2 3 1993

                                     GROUP 2500

Dear Sir:

In response to the Office Action mailed on 2 October
1992, please amend the above-identified application as
follows:

IN THE CLAIMS                    **58**

Kindly delete claims 1, 2 and 3.

Kindly amend claims 4, 5, 7 and 9 as follows:

In claims 4 and 5, at line 1, delete "Claim 3", and
substitute therefor - - Claim 10 - -.

In claim 7, at line 1, delete "Claim 6", and substitute
therefor - - Claim 10 - -.

Claim 9. (Amended) A display apparatus in accordance with
Claim [3] 10 wherein at least one of said first and second
lens arrays is rotated about an axis perpendicular to said
liquid crystal panel in order to provide a slight misalignment
between said lenslets and said liquid crystal panel.

Docket No. A6213491          1          2 February 1993

SC13613  02/22/93  07911547      08-2727  130  115    110.00CH

Kindly add new claim 10 as follows:

Claim 10.   A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel.

## REMARKS

The applicants wish to thank the Examiner for his citation to the noted references and his accompanying remarks. While the cited references are certainly pertinent to the claimed invention, applicants respectfully disagree with the interpretation of the cited references by the Examiner and his conclusions drawn therefrom.

The Examiner has rejected claims 1-5 under 35 USC 102 (a or b) as being clearly anticipated by Abileah et al or the cited IBM article.  While not necessarily providing the same function, the structure of these references does appear to be similar to that of applicants' invention.  In order to further prosecution of the application, claims 1-3 have been deleted

Docket No. A6213491                 2                 2 February 1993

**59**

and claims 4 and 5 amended to depend from new claim 10.

In addition, the Examiner has rejected claims 1-3 and 6-9 under 35 USC 103 as being unpatentable over Abileah et al or the IBM article in view of Hamada. Applicants have added new claim 10 which essentially includes the limitations of claims 1-3 and 6, resulting in a new claim for an apparatus having two lens arrays.

The Examiner contends that it would have been obvious, in view of Hamada, to add a second lens array to the structure of Abileah or IBM. In order to support a combination of references under 35 USC 103 there must be some suggestion for the combination. As the Hamada reference is concerned with a projection apparatus, there would be no suggestion to use the dual lens arrays of Hamada in the direct view apparatus of Abileah or IBM. Particularly since the dual lens array of Hamada is used to overcome a problem specifically associated with projection displays.

The two lens arrays of Hamada are used in a projection device to reduce the dimming at the outer edges. As such the dual lens arrays would not be suggested to the direct view display of Abileah or IBM.

In addition, at no point in any of the references is there any discussion of eliminating moire effects with appropriate selection of the relative pitch of the two lens arrays as specifically described and claimed by the appli-cants. Also, there is no discussion of rotating one of the

lens arrays with respect to the liquid crystal panel as specifically claimed in applicants' claim 9.

Based on the foregoing, applicants contend that claims 4, 5, 7, 9 and 10, as amended, are in condition for allowance and respecfully request same at the earliest opportunity.

Respectfully submitted,

Dale E. Jepsen
Attorney for Applicants
Reg. No. 31, 379

602/436-1336

**61**

*PATENT*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re application of: R. McCARTNEY ET AL

Serial No.: 07/911,547     Group No.: 2504 √
Filed: 9 JULY 1992     Examiner: H. MAI
For: "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

Commissioner of Patents and Trademarks
Washington, D.C. 20231

### AMENDMENT TRANSMITTAL

**RECEIVED**

**FEB 2 3 1993**

**GROUP 2500**

1.   Transmitted herewith is an amendment for this application.

### STATUS

2.   Applicant is

    ☐  a small entity — verified statement:

        ☐  attached.

        ☐  already filed.

    ☒  other than a small entity.

"EXPRESS MAIL" Date of Deposit 2 FEBRUARY 1993
Mailing Label No. TB379304420US
I hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D.C. 20231
DALE E. JEPSEN
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

**62**

(Amendment Transmittal [9-19]—page 2 of 4)

## EXTENSION OF TERM

NOTE: "Extension of Time in Patent Cases (Supplement Amendments) — If a timely and complete response has been filed after a Non-Final Office Action, an extension of time is not required to permit filing and/or entry of an additional amendment after expiration of the shortened statutory period.

If a timely response has been filed after a Final Office Action, an extension of time is required to permit filing and/or entry of a Notice of Appeal or filing and/or entry of an additional amendment after expiration of the shortened statutory period unless the timely-filed response placed the application in condition for allowance. Of course, if a Notice of Appeal has been filed within the shortened statutory period, the period has ceased to run." Notice of December 10, 1985 (1061 O.G. 34-35).

NOTE: See 37 CFR 1.645 for extensions of time in interference proceedings and 37 CFR 1.550(c) for extensions of time in reexamination proceedings.

3.   The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply.

### (complete (a) or (b) as applicable)

(a)  ☒   Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37 CFR 1.17(a)-(d) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| ☒ one month | $ 110.00 | $ 55.00 |
| ☐ two months | $ 360.00 | $180.00 |
| ☐ three months | $ 840.00 | $420.00 |
| ☐ four months | $1,320.00 | $660.00 |

Fee $ 110.00

If an additional extension of time is required please consider this a petition therefor.

### (check and complete the next item, if applicable)

☐   An extension for _____ months has already been secured and the fee paid therefor of $_____ is deducted from the total fee due for the total months of extension now requested.

Extension fee due with this request   $_____

### OR

(b)  ☐   Applicant believes that no extension of term is required. However, this conditional petition is being made to provide for the possibility that applicant has inadvertently overlooked the need for a petition for extension of time.

**63**

(Amendment Transmittal [9-19]—page 3 of 4)

## FEE FOR CLAIMS

4.    The fee for claims (37 CFR 1.16(b)-(d)) has been calculated as shown below:

| | (Col. 1) | | (Col. 2) | (Col. 3) | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | OR | RATE | ADDIT. FEE |
| TOTAL | 5 | MINUS | 9 | 0 | x10= $ | | | x20= $ | |
| INDEP. | 1 | MINUS | 1 | 0 | x36= $ | | | x72= $ | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +110= $ | | | +220= $ | |
| | | | | | TOTAL ADDIT. FEE $ | | OR | TOTAL ADDIT. FEE $ | |

*    If the entry in Col. 1 is less than entry in Col. 2, write "0" in Col. 3.
**   If the "Highest No. Previously Paid for" IN THIS SPACE is less than 20, enter "20".
***  If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, enter "3".
     The "Highest No. Previously Paid For" (Total or Indep.) is the highest number found in the
     appropriate box in Col. 1 of a prior amendment or the number of claims originally filed.

WARNING:   *After final rejection or action (§ 1.113) amendments may be made cancelling claims or complying
           with any requirement of form which has been made * 37 CFR § 1 116(a) (emphasis added)

### (complete (c) or (d) as applicable)

(c)  ☒  No additional fee for claims is required.

### OR

(d)  ☐  Total additional fee for claims required $_____.

## FEE PAYMENT

5.  ☐  Attached is a check in the sum of $_____.
    ☒  Charge Account No. 08-2727 _____ the sum of
       $ 110.00 .

       A duplicate of this transmittal is attached.

## FEE DEFICIENCY

NOTE:   If there is a fee deficiency and there is no authorization to charge an account, additional fees are
        necessary to cover the additional time consumed in making up the original deficiency. If the maximum,
        six-month period has expired before the deficiency is noted and corrected, the application is held
        abandoned. In those instances where authorization to charge is included, processing delays are
        encountered in returning the papers to the PTO Finance Branch in order to apply these charges prior
        to action on the cases. Authorization to charge the deposit account for any fee deficiency should
        be checked. See the Notice of April 7, 1986, (1065 O.G. 31-33).

6.  ☒  If any additional extension and/or fee is required, charge Account No.
       08-2727 _____

**64**

(Amendment Transmittal [9-19]—page 4 of 4)

**AND/OR**

☐  If any additional fee for claims is required, charge Account No.

_____

Reg. No.: 31,379

Tel. No.: (602) 436-1336

_____
SIGNATURE OF ATTORNEY

DALE E. JEPSEN
Type or print name of attorney

HONEYWELL INC
21111 N. 19TH AVE.
P.O. Address

PHOENIX, ARIZONA  85027

**65**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/911,547 | 07/09/92 | MC CARTNEY        R | A6213491 |

B5N2

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ 85027

| MATSH    EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 2504 | 5 |

DATE MAILED: 05/06/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined  ☑ Responsive to communication filed on _2/2/93_  ☑ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ___0___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I      THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II     SUMMARY OF ACTION**

1. ☑ Claims _____1-10_____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _____1-3_____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____4-6 & 10_____ are rejected.

5. ☑ Claims _____7-9_____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**66**

Serial No. 911,547                    -2-

Art Unit   2504

Applicant's arguments with respect to claims 4-10 have been

considered but are deemed to be moot in view of the new grounds

of rejection.

Claim 6 is rejected under 35 U.S.C. § 112, fourth paragraph,

as being of improper dependent form for failing to further limit

the subject matter of a previous claim.

Claim 6 depends from claim 3 which has been canceled.

Therefore, claim 6 is not treated on the merits.

The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

A person shall be entitled to a patent unless --
(e) the invention was described in a patent granted on an
application for patent by another filed in the United States
before the invention thereof by the applicant for patent, or
on an international application by another who has fulfilled
the requirements of paragraphs (1), (2), and (4) of section
371(c) of this title before the invention thereof by the
applicant for patent.

Claims 5 and 10 are rejected under 35 U.S.C. § 102(e) as

being clearly anticipated by Abileah et al ('041) or Yoshida et

al.

The recited limitations of claims 5 and 10 are shown in

Abileah et al's Figs. 6, 8, column 13, line 18 through column 14,

line 44 or Yoshida et al's Figs. 3, 5.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject

**67**

Serial No. 911,547                    -3-

Art Unit   2504

matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which
the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

Claim 4 is rejected under 35 U.S.C. § 103 as being

unpatentable over Abileah et al ('041) in view of Abileah et al

('783).

The '041 patent discloses in Figs. 6, 8 a display apparatus

having first and second lens arrays with lenslets having a

triangular cross section.  The '041 patent lacks a teaching the

lenslets having a semi-cylindrical shape.

The '783 patent teaches in Fig. 3 a lens array having

lenslets disposed between a liquid crystal panel and a light

source wherein the lenslets have semi-cylindrical shape for

improving the brightness of the display device.  Therefore, it

would have been obvious at the time the invention was made to a

person skilled in this art to modify the '041 patent by

substituting the lens arrays with lenslets having semi-

cylindrical shape for the lens arrays with triangular-cross-

section lenslets for improving the brightness of the display as

taught by the '783 patent.

**68**

Serial No. 911,547                        -4-

Art Unit   2504

Claims 7 and 9 are objected to as being dependent upon a
rejected base claim, but would be allowable if rewritten in
independent form including all of the limitations of the base
claim and any intervening claims.

Claim 8 is objected to as being dependent upon an objected
claim which has allowable subject matter.

Applicant's amendment necessitated the new grounds of
rejection. Accordingly, THIS ACTION IS MADE FINAL. See M.P.E.P.
§ 706.07(a). Applicant is reminded of the extension of time
policy as set forth in 37 C.F.R. § 1.136(a).


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Huy K. Mai
whose telephone number is (703) 308-4874.

Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0956.

**69**

Mai/ks
April 26, 1993

WILLIAM L. SIKES
SUPERVISORY PATENT EXAMINER
GROUP 2500

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/911547 | GROUP ART UNIT 2564 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Mc Carthey Jr. et al. | | | |

### U.S. PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 5 1 6 1 0 4 1 | 11/3/92 | Abileah et al | 359 | 40 | 4/26/90 |
| B | | | | | | | |
| C | | | | | | | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER Mai | DATE 2/23/93 | **70** |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

PATENT   DOCKET NO. A821304

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: RICHARD I. MCCARTNEY, ET AL
Serial No.: 07 / 911,547          Group No.: 2504
Filed: 09 JULY 1992               Examiner: H. MAI
For: "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

Commissioner of Patents and Trademarks
Washington, D.C. 20231

AMENDMENT TRANSMITTAL

1.   Transmitted herewith is an amendment for this application.

## STATUS

2.   Applicant is

    ☐   a small entity — verified statement:

        ☐   attached.

        ☐   already filed.

    ☒   other than a small entity.

---

### CERTIFICATE OF MAILING (37 CFR 1.8(a))

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United State Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

JOANNA JOHNSON
(Type or print name of person mailing paper)

Date: 02 JULY 1993

(Signature of person mailing paper)

CS14126  07/07/93  07911547          08-2727  140  115          110.00CH

(Amendment Transmittal [9-19]—page 1 of 4)

**71**

## EXTENSION OF TERM

NOTE: "Extension of Time in Patent Cases (Supplement Amendments) — If a timely and complete response has been filed after a Non-Final Office Action, an extension of time is not required to permit filing and/or entry of an additional amendment after expiration of the shortened statutory period.

If a timely response has been filed after a Final Office Action, an extension of time is required to permit filing and/or entry of a Notice of Appeal or filing and/or entry of an additional amendment after expiration of the shortened statutory period unless the timely-filed response placed the application in condition for allowance. Of course, if a Notice of Appeal has been filed within the shortened statutory period, the period has ceased to run." Notice of December 10, 1985 (1061 O.G. 34-35).

NOTE: See 37 CFR 1.645 for extensions of time in interference proceedings and 37 CFR 1.550(c) for extensions of time in reexamination proceedings.

3.   The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply

*(complete (a) or (b) as applicable)*

(a)  ☑   Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37 CFR 1.17(a)-(d) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| ☒ one month | $ 110.00 | $ 55.00 |
| ☐ two months | $ 360.00 | $180.00 |
| ☐ three months | $ 840.00 | $420.00 |
| ☐ four months | $1,320.00 | $660.00 |

Fee $ 110.00

If an additional extension of time is required please consider this a petition therefor.

*(check and complete the next item, if applicable)*

☐   An extension for _____ months has already been secured and the fee paid therefor of $_____ is deducted from the total fee due for the total months of extension now requested.

Extension fee due with this request  $_____

OR

(b)  ☐   Applicant believes that no extension of term is required. However, this conditional petition is being made to provide for the possibility that applicant has inadvertently overlooked the need for a petition for extension of time.

# 72

**FEE FOR CLAIMS**

4.   The fee for claims (37 CFR 1.16(b)-(d)) has been calculated as shown below:

| | (Col. 1) | | (Col. 2) | (Col. 3) | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | OR | RATE | ADDIT. FEE |
| TOTAL | 3 | MINUS | 20 | = | x11= | $ 0 | | x22= | $ 0 |
| INDEP. | 2 | MINUS | 3 | = | x37= | $ 0 | | x74= | $ 0 |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +115= | $ | | +230= | $ |

| | | | | |
|---|---|---|---|---|
| | | TOTAL ADDIT. FEE | $ | OR |
| | | | | TOTAL ADDIT. FEE $ 0 |

"   If the entry in Col. 1 is less than entry in Col. 2, write "0" in Col. 3.
"   If the "Highest No. Previously Paid for" IN THIS SPACE is less than 20, enter "20".
"   If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest No. Previously Paid For" (Total or Indep.) is the highest number found in the appropriate box in Col. 1 of a prior amendment or the number of claims originally filed.

WARNING:  "After final rejection or action (§ 1.113) amendments may be made cancelling claims or complying with any requirement of form which has been made." 37 CFR § 1.116(a) (emphasis added).

*(complete (c) or (d) as applicable)*

(c)  ☒  No additional fee for claims is required.

**OR**

(d)  ☐  Total additional fee for claims required $_____

**FEE PAYMENT**

5.  ☐  Attached is a check in the sum of $_____.
    ☒  Charge Account No. _08-2727_____ the sum of $ 110.00____.
       A duplicate of this transmittal is attached.

**FEE DEFICIENCY**

NOTE:  If there is a fee deficiency and there is no authorization to charge an account, additional fees are necessary to cover the additional time consumed in making up the original deficiency. If the maximum, six-month period has expired before the deficiency is noted and corrected, the application is held abandoned. In those instances where authorization to charge is included, processing delays are encountered in returning the papers to the PTO Finance Branch in order to apply these charges prior to action on the cases. Authorization to charge the deposit account for any fee deficiency should be checked. See the Notice of April 7, 1986, (1065 O.G. 31-33).

6.  ☒  If any additional extension and/or fee is required, charge Account No. _08-2727_____.

(Amendment Transmittal [9-19]—page 3 of 4)

**AND/OR**

☐  If any additional fee for claims is required, charge Account No.
_____

Reg. No.: 31,379

Tel. No.: ( 602) 436-1336

SIGNATURE OF ATTORNEY

DALE E. JEPSEN
Type or print name of attorney

**PATENT LAW OFFICE**
HONEYWELL INC.
P. O. BOX 21,111
PHOENIX, AZ 85036

P.O. Address

**74**

(Amendment Transmittal [9-19]—page 4 of 4)

PATENT

IN UNITED STATES
PATENT AND TRADEMARKS OFFICE

Applicant:  Richard I. McCartney, et al  ) Art Unit: 2504
                                          )
Serial No.:    007/911,547                ) Examiner: H. Mai
                                          )
Filed:     09 July 1992                   ) Doc. No.:A6213491
                                          )

For:  "A DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

------------------------------------------------------------
              AMENDMENT AFTER FINAL REJECTION

Commissioner of U.S.
  Patent and Trademark Office
Washington, D.C.  20231

Dear Sir:

     In response to the Office Action mailed on 06 May 1993,
please amend the above-identified application as follows:


                       IN THE CLAIMS


     Kindly delete Claims 4, 5, 6 and 10.

     Kindly amend Claims 7 and 9 as follows:

----------------------------------------------------------

     Claim 7 (Twice Amended)    A display apparatus comprising:

     a light source;

     a liquid crystal panel mounted adjacent to said light

source for receiving light from said light source; and

**75**

Docket No. A6213491           1           01 July 1993

first and second lens arrays, each having a plurality of
individual lenslets, disposed between said light source and
said liquid crystal panel for providing a predetermined
variation with viewing angle of light transmission from said
light source through said lens arrays and said liquid crystal
panel. [A display apparatus in accordance with Claim 10]
wherein said liquid crystal panel comprises a plurality of
pixels arranged in rows and columns, and wherein the number of
rows of pixels per unit height, or pitch, of the liquid
crystal panel is a first value; the number of lenslets per
unit height, or pitch, of said first lens array is a second
value which is less than said first value; and the number of
lenslets per unit height, or pitch, of said second lens array
is a third value which is greater than said first value.

Claim 8 (Twice Amended)  A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light
source for receiving light from said light source; and

first and second lens arrays, each having a plurality of
individual lenslets, disposed between said light source and
said liquid crystal panel for providing a predetermined
variation with viewing angle of light transmission from said
light source through said lens arrays and said liquid crystal
panel. [A display apparatus in accordance with Claim 10]

**76**

Docket No. A6213491          2          01 July 1993

*cntd by*

wherein at least one of said first and second lens arrays is
rotated about an axis perpendicular to said liquid crystal
panel in order to provide a slight misalignment between said
lenslets and said liquid crystal panel.

**77**



REMARKS

The Examiner has finally rejected Claims 4-6 and 10. Applicants have deleted Claims 4-6 and 10.

The Examiner has objected to Claims 7 and 9, indicating that they would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.  Claims 7 and 9 have been amended as suggested by the Examiner.

The Examiner has objected to Claim 8 as being dependent on an objected claim.  Claim 7 has been amended to overcome the noted objection and claim 8, which depends therefrom, should now be allowable.

Applicants having amended Claims 7 and 9 to overcome the Examiner's objections, Claim 8 now depending from allowable Claim 7, and all remaining claims having been canceled, hereby request a Notice of Allowance for Claims 7, 8 and 9, as amended, at the earliest opportunity.

"EXPRESS MAIL" Date of Deposit ___7 - 2 - 93___
Mailing Label No. __TB379304794__
I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231
___JOANNA JOHNSON___
(Typed or printed name of person making paper or fee)
___Joanna S. Johnson___
(Signature of person mailing paper or fee)

Respectfully Submitted,

Dale E. Jeppsen
Reg. No. 31,379
Attorney for Applicants
602/436-1336

**78**



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/911,547 | 07/09/92 | MC CARTNEY | R  A623.3491 |

```
                              B9042/0719            | HAI,H    EXAMINER |
  DALE E. JEPSEN                                     |                  |
  HONEYWELL INC.                                     |------------------|
  21,111 N. 19TH AVENUE, DV9L                        | ART UNIT | PAPER NUMBER |
  PHOENIX, AZ  85027                                 |  2504    |     8     |
                                                     | DATE MAILED:       |
                                                     |    07/19/93        |
```

**EXAMINER INTERVIEW SUMMARY RECORD**

All participants (applicant, applicant's representative, PTO personnel):

(1) _MARY GOLDSTEIN_                         (3) _____

(2) _DALE JEPSEN_                            (4) _____

Date of Interview _7-16-93_

Type: ☑ Telephonic   ☐ Personal (copy is given to  ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:  ☐ Yes  ☐ No.   If yes, brief description: _____

_____

Agreement  ☐ was reached with respect to some or all of the claims in question.   ☐ was not reached.

Claims discussed: _____

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _____

_Informed the attorney that the amendment after final_

_has been received_

**79**

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1 – 7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachment) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

_____
Examiner's Signature

PTOL-413 (REV 1-84)



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/911,547 | 07/09/92 | MC CARTNEY | R    A6213491 |

B5M2/0719

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ  85027

EXAMINER

MAI, H

| ART UNIT | PAPER NUMBER |
|---|---|
| 2504 | |

DATE MAILED:

07/19/93

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☑ This communication is responsive to THE AMENDMENT FILED ON JULY 8, 1993.

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are 7-9, CLAIMS 1-6 & 10 HAVE BEEN CANCELLED.

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received, [_] not been received. [_] been filed in parent application Serial No. _____ filed on _____.

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE ''DATE MAILED'' indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☑ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. __3__. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☑ Formal drawings are now REQUIRED.

-------------------------------------------------------------------------------------------------

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**

_ Examiner's Amendment                                    _ Notice of Informal Application, PTO-152
_ Examiner Interview Summary Record, PTOL-413             _ Notice re Patent Drawings, PTO-948
_ Reasons for Allowance                                   _ Listing of Bonded Draftsmen
_ Notice of References Cited, PTO-892                      _ Other
  Information Disclosure Citation, PTO-1449

# 80

WILLIAM L. SIKES
SUPERVISORY PATENT EXAMINER
GROUP 2500

PTOL-37 (REV. 11-88)                                                                    USCOMM-DC 89-3615



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

B5M2/0719

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ  85027

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/911,547 | 07/09/92 | 003 | MAI, H | 2504 | 07/19/93 |

First Named Applicant MC CARTNEY, RICHARD I. JR.

TITLE OF INVENTION
DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 0 | 06213491 | 359-040.000 | 098 | UTILITY | NO | $1170.00 | 10/19/93 |

**THE FEE DUE IS THE AMOUNT IN EFFECT AT THIS TIME. IF THE AMOUNT OF THE ISSUE FEE INCREASES PRIOR TO PAYMENT, APPLICANT WILL BE NOTIFIED OF THE BALANCE OF ISSUE FEE DUE.**

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**

**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I.  Review the SMALL ENTITY Status shown above.
    If the SMALL ENTITY is shown as YES, verify your
    current SMALL ENTITY status:

    A. If the status is changed, pay twice the amount of the
       FEE DUE shown above and notify the patent and
       Trademark Office of the change in status, or

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
   pay of 1/2 the FEE DUE shown above.

**81**

II.  Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
     Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
     If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III.  All communications regarding this application must give series code (or filing date) and serial number.
      Please direct all communications prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

DOCKET NO.  A6213491                               *PATENT*

                    IN THE    ITED STATES PATENT AND TRAD   ARK OFFICE

In re application of: RICHARD I. MCCARTNEY

Seria No.: 0 7 / 911,547          Group No.:  2504
Filed: 07/09/92                    Examiner:  H. MAI

"DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

Commissioner of Patents and Trademarks
Washington, D.C. 20231

                    TRANSMITTAL OF FORMAL DRAWINGS

    In response to the NOTICE OF INFORMAL DRAWINGS mailed on  07/19/93
                                                              (date)

attached please find:

    (a)  the formal drawing(s) for this application
                              Number of Sheets  11 SHEETS

    NOTE:  "Identifying indicia (such as the application number, group art unit, title of the invention, attorney's
           docket number, inventor's name, number of sheets, etc.) not to exceed 2 3/4 inches (7.0 cm) in width
           may be placed in a centered location between the side edge within three-fourths inch (19.1 mm.)
           of the top edge. Either this marking technique on the front of the drawing or the placement, although
           not preferred, of this information and the title of the invention on the back of the drawings is
           acceptable." 37 CFR § 1.84(l).

Each sheet of drawing indicates the serial number and Group Art Unit on ☐  the front
center ☑  the reverse side of the drawing.

    (b)  a copy of the NOTICE OF INFORMAL DRAWINGS

                                      SIGNATURE OF ATTORNEY

Reg. No. 31,379
                                      DALE E. JEPSEN
                                      Type or print name of attorney

Tel. No. ( 602  436-1336            PATENT LAW OFFICE
                                    HONEYWELL INC.
                          P.O. Address  P. O. BOX 21,111
                                    PHOENIX, AZ  85036

                    CERTIFICATE OF MAILING (37 CFR 1.8(a))

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited
with the United States Postal Service on the date shown below with sufficient postage as first class mail in
an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                          JOANNA  JOHNSON
                          (Type or print name of person mailing paper)

Date  08/27/93

                          (Signature of person mailing paper)

(Transmittal of Formal Drawings In Response to Notice of Informal Drawings
|9-16.1|)

**82**

HONEYWELL INC
A02134791 US DEJ
PAGE  1/11



*Fig.1*
*PRIOR ART*

REAR REFLECTOR (15)

LAMP (10)

25

LAMBERTIAN DIFFUSER (20)

CONVENTIONAL BACKLIT LCD SYSTEM

MODULATED LIGHT FROM THE DISPLAY

LCD PANEL (30)

**83**



IMPROVED BACKLIT LCD SYSTEM
WITH DIRECTIONAL DIFFUSER

LAMBERTIAN
DIFFUSER (20)

LENS ARRAY (40)

MODULATED
LIGHT
FROM THE DISPLAY

LCD PANEL (30)

LAMP (10)

REAR REFLECTOR
(15)

84

*Fig.2*

HONEYWELL INC.
A6234917 US DE.J
PAGE 2/11





**85**

*Fig. 3*

HONEYWELL INC.
A621349T US DEJ
PAGE  4/11



LAMBERTIAN
DIFFUSER (20)

142 LENS/INCH
ARRAY (40)

BACKLIGHT ARRAY (25)

LCD PANEL
MATRIX
172 DOTS/INCH (30)

LAMP (10)

EYE VIEW POINT

BACKLIGHT
HOUSING
(15)

$\Theta_V$

$\Theta_V$ = VERTICAL
VIEW
ANGLE

SINGLE CYLINDRICAL LENS ARRAY

*Fig. 4A*



BACKLIGHT
ARRAY (25)

LAMBERTIAN
DIFFUSER (20)

142 LENS/INCH
ARRAY (40)

LCD PANEL MATRIX
172 DOTS/INCH
(30)

$\Theta_H$

$\Theta_H$ = HORIZONTAL
VIEW
ANGLE

EYE VIEW POINT

SINGLE CYLINDRICAL LENS ARRAY

*Fig. 4B*

**86**





Fig.5

**87**





Fig.6

HONEYWELL INC.
A6213491 US DEJ
PAGE  7/11



COURSE CYLINDRICAL (42)
LENS ARRAY

LAMBERTIAN
DIFFUSER (20)

FINE CYLINDRICAL (44)
LENS ARRAY

BACKLIGHT ASSY (25)

MATRIX LCD (30)

*Fig. 7*  PREFERRED EMBODIMENT



LAMBERTIAN
DIFFUSER (20)

TRIANGULAR ARRAY (80)

BACKLIGHT ARRAY (25)

LCD PANEL MATRIX (30)

EYE VIEW POINT

LAMP (10)

$\Theta$v

$\Theta_V$ = VERTICAL
VIEW
ANGLE

*Fig. 10*  TRIANGULAR LENS ARRAY

**89**



Fig. 8

90



Fig.9



*Fig. 11*

**92**



LENS ARRAY AXIS
HORIZONTAL

LENS ARRAY AXIS
ROTATED BY θ DEGREES

LENS ARRAY 40

θ

θ ≈ 2 TO 16 DEGREES

LCD MATRIX PANEL 30

HONEYWELL INC.
A821841US.PEJ
PAGE 11/11

93

*Fig.12*



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/911,547 | 07/09/92 | MC CARTNEY | R | A6213491 |

MAI H

DALE E. JEPSEN
HONEYWELL INC.
21,111 N. 19TH AVENUE, DV9L
PHOENIX, AZ  85027

4102/0924

| EXAMINER | |
|---|---|
| ART UNIT | PAPER NUMBER |
| 2504 | *11* |

DATE MAILED:  09/24/93

## NOTICE OF DRAWING REQUIREMENTS

☐ The PTO delayed in providing a commercial bonded draftsman with drawings from the above-identified application. The delay prevented the draftsman from filing corrected drawings within the response period set in the Notice of Allowability mailed _____. Hence, said response period is hereby vacated. THE SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirement for drawing corrections is set to EXPIRE ONE MONTH FROM THE DATE OF THIS LETTER. Failure to comply will result in the ABANDON-MENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a) by filing the appropriate request and fee before the end of the six month statutory period for response.

☒ Corrected/substituted drawings for the above-identified application, received in the PTO on _8-27-9_ are still considered informal for the reason(s) identified on the attached Form PTO-948.

☒ Applicant has the time remaining in the response period set in the Notice of Allowability or Notice of Drawing Requirements mailed _7-19-93_ to overcome the objections raised in the attached Form PTO-948. This response period may be extended under the provisions of 37 CFR 1.136(a) by filing the appropriate request and fee before the end of the six month statutory period for response.

☐ The PTO delayed in reviewing the corrected drawings. Applicant is given ONE month time limit from the date of this letter to provide corrected drawings. NO EXTENSION OF THIS TIME LIMIT MAY BE GRANTED UNDER EITHER 37 CFR 1.136(a) or (b). See MPEP 714.03. However, the response period set in the Notice of Allowability or Notice of Drawing Requirements mailed _____ may be extended under the provisions of 37 CFR 1.136(a) by filing the appropriate request and fee before the end of the six month statutory period for response.

☐ Corrected/substituted drawings for the above-identified application received in the PTO on _____ were submitted outside of the period for response set in the Notice of Allowability or Notice of Drawing Requirements mailed _____. This application will become abandoned unless applicant obtains an extension of time under the provisions of 37 CFR 1.136(a) by filing the appropriate request and fee before the end of the six month statutory period for response.

**94**

3 ATTACHMENT: PTO-948

R. Willis      9-23-93

PATENT AND TRADEMARK OFFICE      DATE

| PTO FORM 948<br>(REV. 7-82) | U.S. DEPARTMENT OF COMMERCE<br>Patent and Trademark Office | ATTACHMENT TO PAPER NUMBER<br>_11_ |
|---|---|---|
| GROUP | | APPLICATION NUMBER<br>_911,547_ |

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

THE PTO DRAFTSMEN REVIEW ALL ORIGINALLY FILED DRAWINGS REGARDLESS
OF WHETHER THEY WERE DESIGNATED AS INFORMAL OR FORMAL. ADDITIONALLY, THE PATENT
EXAMINER WILL ALSO REVIEW THE DRAWINGS FOR COMPLIANCE WITH THE REGULATIONS.

The drawings filed _8-27-93_

A. ☐ are approved by the draftsperson.

B. ☑ are objected to by the draftsperson under 37 CFR 1.84 for the reason(s) checked below. The examiner will require submission of new, corrected drawings at the appropriate time. Corrected drawings must be submitted according to the instructions listed on the back of this Notice.

1. Paper and ink. 37 CFR 1.84(a)

   ☐ Sheet(s)_____Poor.

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   | Margin | Paper Size | | |
   |---|---|---|---|
   | | 8 1/2 by<br>14 inches | 8 1/2 by<br>13 inches | DIN size A4<br>21 by 29.7 cm. |
   | Top | 2 inches | 1 inch | 2.5 cm. |
   | Left | 1/4 inch | 1 inch | 2.5 cm. |
   | Right | 1/4 inch | 1/4 inch | 1.5 cm. |
   | Bottom | 1/4 inch | 1/4 inch | 1.0 cm. |

   ☑ Proper Size Paper Required.
   All Sheets Must be Same Size.
   Sheet(s) _are all oversized_

   ☑ Proper Margins Required.
   Sheet(s) _for all sheets_
   ☐ TOP      ☐ RIGHT
   ☐ LEFT     ☐ BOTTOM

3. Character of Lines. 37 CFR 1.84(c)

   ☐ Lines Pale or Rough and Blurred.
   Fig(s)_____

   ☐ Solid Black Shading Not Allowed.
   Fig(s)_____

4. ☐ Photographs Not Approved.

   _____

5. Hatching and Shading. 37 CFR 1.84(d)

   ☐ Shade Lines are Required.
   Fig(s)_____

   ☐ Criss-Cross Hatching Not Allowed.
   Fig(s)_____

   ☐ Double Line Hatching Not Allowed.
   Fig(s)_____

   ☐ Parts in Section Must be Hatched.
   Fig(s)_____

6. Reference Characters. 37 CFR 1.84(f)

   ☐ Reference Characters Poor or Incorrectly Sized.
   Fig(s)_____

   ☐ Reference Characters Placed Incorrectly.
   Fig(s)_____

7. Views. 37 CFR 1.84(i) & (j)

   ☐ Figures Must be Numbered Properly.

   ☐ Figures Must Not be Connected.
   Fig(s)_____

8. ☐ Identification of Drawings. 37 CFR 1.84(1)
   Extraneous Matter or Copy Machine
   Marks Not Allowed. Fig(s)_____

9. ☐ Changes Not Completed from Prior
   PTO-948 dated _____

☑ Comments: _Ref: Proper size Paper required above, you must use correct measurement. Descriptive matter obj, also descriptive title. Delete letter legends all figures that are not needed and use lead lines, also delet arrow heads._

Telephone Inquires concerning this review should be directed to the Chief Draftsperson at telephone number (703) 305-8404.

_R. Willis_                                    _9-23-93_
Reviewing Draftsperson                         Date

**95**

Note: Any objection to the drawings made by the examiner will be communicated separately in an office action.

PTO Copy

412  9/27/b                                                      B  #/12

PART B—ISSUE FEE TRANSMITTAL

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed only if appropriate.
rther correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addressee
red in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block below; or (b) providing the PTO with a separate
E ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. **See reverse for Certificate of Mailing.**

| 1. CORRESPONDENCE ADDRESS | | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|---|
| | 4/00 | INVENTOR'S NAME |
| | | Street Address |
| DS#2/0719 | | City, State and ZIP Code |
| DALE E. JEPSEN | | CO-INVENTOR'S NAME |
| HONEYWELL INC. | | Street Address |
| 21,111 N. 19TH AVENUE, E/9L | | |
| PHOENIX, AZ  85027 | | City, State and ZIP Code |
| | | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/911,547 | 07/09/92 | 003 | MAI, H | 2504 | 07/19/ |

rst Named
pplicant  MC CARTNEY,          RICHARD T                    JR

E OF
ENTION  DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| A6213491 | 359-040.000 | D98 | UTILITY | NO | $1170.00 | 10/19/93 |

3. Correspondence address change (Complete only if there is a change)

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent.. If no name is listed, no name will be printed.

1  DALE E. JEPSEN

2  A. MEDVED

3  _____

**DO NOT USE THIS SPACE**

DS20239   09/09/93   07911547
DS20239   09/09/93   07911547

08-2727  020  142
08 2727  020  561

1,170.00CH
30.00CH

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:
HONEYWELL INC.
(2) ADDRESS: (CITY & STATE OR COUNTRY)
MINNEAPOLIS, MN
(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION
DELAWARE

A. ☐ This application is NOT assigned.
☐ Assignment is being previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.
PLEASE NOTE: Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☐ Issue Fee    ☐ Advanced Order - # of Copies _____ (Minimum of 10)
6b. The following fees should be changed to:
DEPOSIT ACCOUNT NUMBER  08-2727
(ENCLOSED PART C)
☒ Issue Fee    ☐ Advanced Order - # of Copies  10  (Minimum
☒ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of party in interest of record)                    (Date)
DALE E. JEPSEN                  31,379    08/27/93

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

TRANSMIT THIS FORM WITH FEE: CERTIFICATE OF MAILING ON REVERSE



### Certificate of Mailing

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

Box ISSUE FEE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

on _____08/27/93_____
(Date)

_____
(Signature)

____JOANNA  JOHNSON____
(Typed or Printed Name)

_____08/27/93_____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

This form is estimated to take 20 minutes to Complete. Time will vary depending upon the needs of the individual applicant. Any comments on the amount of time you require to complete this form should be sent to the Office of Management and Organization, Patent and Trademark Office, Washington, D.C. 20231 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

**97**

DOCKET NO. A6213491

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

re application of: RICHARD MCCARTNEY ET AL

Serial No.: 07/911,547          Group No.: 2504
Filed: 0 / 07/09/92          Examiner: H. MAI
For: "DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY"

Date of mailing of PTOL 85 entitled "Notice of Allowance and Base Issue Fee Due" 10/19/93
Issue Batch No. 098

BOX ISSUE FEE

Commissioner of Patents and Trademarks

Washington, D.C. 20231

## TRANSMITTAL OF NEW DRAWING(S) TO CORRECT INFORMALITIES WITHIN THREE MONTH PERIOD OF RESPONSE SET IN NOTICE OF ALLOWABILITY (PTOL 37)

NOTE:   Applicant may correct any informalities in the drawings made by the Draftsman's objections on PTO-948 by filing new drawings with the changes incorporated therein. If the filing of the drawings are delayed until receipt of the "Notice of Allowance" (PTOL-37) the new drawings MUST be filed within the THREE MONTH shortened statutory period set for response in the "Notice of Allowability" (PTOL-37). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

NOTE:   Corrected drawings as well as the issue fee shold be addressed to: Box Issue Fee, November 30, 1990 (1122 O.G. 571 to 591).

NOTE:   Applicant is required to submit ACCEPTABLE corrected drawings within the three month shortened statutory period set in the "Notice of Allowability" (PTOL-37). Within that three month period, two weeks should be allowed for review by the Office of the correction. If a correction is determined to be unacceptable by the Office, applicant must arrange to have an acceptable correction re-submitted within the original three month period to avoid the necessity of obtaining an extension of time and of paying the extension fee. THEREFORE, APPLICANT SHOULD FILE CORRECTED DRAWINGS AS SOON AS POSSIBLE. Notice of January 14, 1985 (1051 O.G. 3).

### CERTIFICATE OF MAILING (37 CFR 1.8)

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

JOANNA JOHNSON
(Type or print name of person mailing paper)

Date: 10/04/93

Joanna Johnson
(Signature of person mailing paper)

(Transmittal of New Drawing(s) to Correct Informalities Within Three Month Period of Response Set in Notice of Allowability (PTOL 37) [5-2.1]—page 1 of 2)

**98**

*SUBMISSION OF DRAWING(S)*

1. To correct the informalities in the drawings as noted in the Draftsman's objection(s) on PTO-948 applicant submits herewith new drawing(s) for this application. Number of sheets of drawings submitted ___ELEVEN (11)___

> NOTE: *According to 37 CFR 1.84(1), identifying indicia (such as the attorney's docket number, inventor's name, number of sheets, etc.) not to exceed 2 3/4 inches may be placed in a centered location between the side edges within three-fourths inch of the top of the edge. Either this marking technique on the front of the drawing or the placement of this information on the back of the drawing is acceptable. However, for identification of the application number, the PTO prefers that is be placed on the front. Notice of September 30, 1986 (1070 O.G. 47-59, 54-5).*

2. The three month period of response set in the Notice of Allowability (PTOL 37) expires on ___10/19/93___ and this submission is on or before this expiry date.

Reg. No.:  31,379

Tel. No.: ( 602 )436-1336

_____
SIGNATURE OF ATTORNEY

___DALE E. JEPSEN___
Type or print name of attorney

_____
P.O. Address

PATENT LAW OFFICE
HONEYWELL INC.
P. O. BOX 21,111
PHOENIX, AZ 85036

**99**

HONEYWELL INC
A6213491 US DEJ
PAGE  1/11

5280371

*Fig.1*
*PRIOR ART*



**100**



Fig.2



Fig.3





*Fig. 4A*



*Fig. 4B*

**103**



HONEYWELL INC
A6213491 US DEJ
PAGE 5/11

Fig. 5





*Fig.6*

**105**







*Fig. 7*



$\ominus_V$ = VERTICAL VIEW ANGLE

*Fig.10*

**106**

HONEYWELL INC
A6213491 US DEJ
PAGE 8/11



Fig. 8



Fig. 9



Fig. 11

HONEYWELL INC.
A6213491 US DEJ
PAGE 11/11





Fig.12

110





PTO UTILITY GRANT
Paper Number *14*

The Commissioner of Patents
and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Commissioner of Patents and Trademarks*

*Attest*

PTO-1584

**111**

§7 911547

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

LA10289  07/20/92  07911547      0B-2727  010  101      690.00CH  A6213491

**112**

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 1992

| Application or Docket Number |
|---|
|  |

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE |  |  |  | $355.00 | OR |  | $710.00 |
| TOTAL CLAIMS | minus 20 = | * | x$11= |  | OR | x$22= |  |
| INDEPENDENT CLAIMS | minus 3 = | * | x 37= |  | OR | x 74= |  |
| MULTIPLE DEPENDENT CLAIM PRESENT |  |  | +115= |  | OR | +230= |  |
| * If the difference in column 1 is less than zero, enter "0" in column 2 |  |  | TOTAL |  | OR | TOTAL |  |

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | SMALL ENTITY ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | 7 | Minus ** 20 | | x$11= | | OR | x$22= | |
| Independent | 1 | Minus *** 3 | | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | SMALL ENTITY ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | 3 | Minus ** 20 | | x$11= | | OR | x$22= | |
| Independent | 2 | Minus *** 3 | | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | + 230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | SMALL ENTITY ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | | Minus ** | | x$11= | | OR | x$22= | |
| Independent | | Minus *** | | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875

**113**

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective December 16, 1991

**Application or Docket Number** 91/547

| CLAIMS AS FILED - PART I | | | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | (Column 1) | (Column 2) | | | | | |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | | RATE | FEE |
| BASIC FEE | | | | $ 345.00 | OR | | $ 690.00 |
| TOTAL CLAIMS | 9 | minus 20 = * | x $10= | | OR | x $20= | |
| INDEPENDENT CLAIMS | | minus 3 = * | x 36= | | OR | x 72= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 110= | | OR | + 220= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | | OR | TOTAL | 690 |

| | CLAIMS AS AMENDED - PART II | | | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| | (Column 1) | (Column 2) | (Column 3) | | | | | |
| **AMENDMENT A** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus ** | = | x $10= | | OR | x $20= | |
| Independent | * | Minus *** | = | x 36= | | OR | x 72= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 110= | | OR | + 220= | |
| | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

| | (Column 1) | (Column 2) | (Column 3) | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus ** | = | x $10= | | OR | x $20= | |
| Independent | * | Minus *** | = | x 36= | | OR | x 72= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 110= | | OR | + 220= | |
| | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

| | (Column 1) | (Column 2) | (Column 3) | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus ** | = | x $10= | | OR | x $20= | |
| Independent | * | Minus *** | = | x 36= | | OR | x 72= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 110= | | OR | + 220= | |
| | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

**114**

Form PTO-875
(Rev. 12-91)

*U.S. Government Printing Office: 1992 — 308-890

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| PTO 1130 | U.S. DEPARTMENT OF COMMERCE– PATENT & TRADEMARK OFFICE | | 1ST EXAMINER | *I. WEST* | DATE *7-24-92* |
|---|---|---|---|---|---|
| (REV 11/91) | PACE DATA ENTRY CODING SHEET | | 2ND EXAMINER | | DATE |

| APPLICATION NUMBER | TYPE APPL | FILING DATE | | | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWING |
|---|---|---|---|---|---|---|---|---|
| | | MONTH | DAY | YEAR | | | | |
| Ø 911547 | 1 | 0 7 | 0 9 | 9 2 | 0 | 2 5 0 4 | 3 5 9 | 1 2 |

| TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE | FOREIGN LICENSE | ATTORNEY DOCKET NUMBER |
|---|---|---|---|---|---|
| 9 | 1 1 | 0 | 6 9 0 | ✓ | A 6 2 1 3 4 9 1 |

## CONTINUITY DATA

| CONTINUITY CODE | STATUS CODE | PARENT APPPLICATION SERIAL NUMBER | PARENT PATENT NUMBER | PARENT FILING DATE | | |
|---|---|---|---|---|---|---|
| | | | | MONTH | DAY | YEAR |
| | | 0 | | | | |
| | | 0 | | | | |
| | | 0 | | | | |
| | | 0 | | | | |
| | | 0 | | | | |

## PCT/FOREIGN APPLICATION DATA

| FOREIGN PRIORITY CLAIMED | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FOREIGN FILING DATE | | |
|---|---|---|---|---|---|
| | | | MONTH | DAY | YEAR |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

115

Staple Issue Slip Here

911

. NUMBER
911.54

IARD  I
KAREN

INTINU
.IFIED

H.M.__

IREIGN
.IFIED

+√____

| POSITION | INIT. | DATE |
|---|---|---|
| CLASSIFIER | | /8 | // / /. |
| EXAMINER | | 337 | 7-04-92 |
| TYPIST | | 330 | 7-24-92 |
| VERIFIER | | | |
| CORPS CORR. | | | |
| SPEC. HAND | | | |
| FILE MAINT. | | | |

EIGN F

iority claim
9 conditior

1d Acknowl
.E E.
JEYWEL
.111 N
)ENIX.

{ECTIO

= APPLIC/
PARATEL!

)F ALLOW

-\9-
ISSUE

Label
Area

## INDEX OF CLAIMS

# 116

SYMBOLS

. Rejected
. Allowed
(Through numeral) Canceled
. Restricted
N . Non-elected
I . Interference
A . Appeal
O . Objected

| Claim | | | | Date | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 1/14 | 10/23/43 | 7/17/43 | | | | | |
| | 1 | ( | √ | | | | | | |
| | 2 | | √ | | | | | | |
| | 3 | | √ | | | | | | |
| | 4 | | √ | | | | | | |
| 1 | 7 | | O = | | | | | | |
| 2 | 8 | | O = | | | | | | |
| 3 | 9 | √ | C = | | | | | | |
| | 10 | | √ | | | | | | |
| | 11 | | | | | | | | |
| | 12 | | | | | | | | |
| | 13 | | | | | | | | |
| | 14 | | | | | | | | |
| | 15 | | | | | | | | |
| | 16 | | | | | | | | |
| | 17 | | | | | | | | |
| | 18 | | | | | | | | |
| | 19 | | | | | | | | |
| | 20 | | | | | | | | |
| | 21 | | | | | | | | |
| | 22 | | | | | | | | |
| | 23 | | | | | | | | |
| | 24 | | | | | | | | |
| | 25 | | | | | | | | |
| | 26 | | | | | | | | |
| | 27 | | | | | | | | |
| | 28 | | | | | | | | |
| | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Claim | | | | Date | | | |
|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | |
| | 51 | | | | | | |
| | 52 | | | | | | |
| | 53 | | | | | | |
| | 54 | | | | | | |
| | 55 | | | | | | |
| | 56 | | | | | | |
| | 57 | | | | | | |
| | 58 | | | | | | |
| | 59 | | | | | | |
| | 60 | | | | | | |
| | 61 | | | | | | |
| | 62 | | | | | | |
| | 63 | | | | | | |
| | 64 | | | | | | |
| | 65 | | | | | | |
| | 66 | | | | | | |
| | 67 | | | | | | |
| | 68 | | | | | | |
| | 69 | | | | | | |
| | 70 | | | | | | |
| | 71 | | | | | | |
| | 72 | | | | | | |
| | 73 | | | | | | |
| | 74 | | | | | | |
| | 75 | | | | | | |
| | 76 | | | | | | |
| | 77 | | | | | | |
| | 78 | | | | | | |
| | 79 | | | | | | |
| | 80 | | | | | | |
| | 81 | | | | | | |
| | 82 | | | | | | |
| | 83 | | | | | | |
| | 84 | | | | | | |
| | 85 | | | | | | |
| | 86 | | | | | | |
| | 87 | | | | | | |
| | 88 | | | | | | |
| | 89 | | | | | | |
| | 90 | | | | | | |
| | 91 | | | | | | |
| | 92 | | | | | | |
| | 93 | | | | | | |
| | 94 | | | | | | |
| | 95 | | | | | | |
| | 96 | | | | | | |
| | 97 | | | | | | |
| | 98 | | | | | | |
| | 99 | | | | | | |
| | 100 | | | | | | |

911

## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 354 | 069 040 041 | 9-27-42 | _illegible_ |
| update the above | search class/sub | 4/22/93 | _illegible_ |
| update the above | search class/sub | 7/16/93 | _illegible_ |

**FEE VALUE ACCOUNTABILITY**

| DEPOSIT ACCOUNT NO. | |
|---|---|
| 08 | 2727 |

| FEE CODE | VALUE FURNISHED |
|---|---|
| 1·16 | |
| 1·17 | |
| | |
| | |

## SEARCH NOTES

| | Date | Exmr. |
|---|---|---|
| | | |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 354 | 40 69 | 7/17/93 | _illegible_ |

**117**

(54) LIQUID CRYSTAL DISPLAY ELEMENT
(11) 2-214822 (A)        (43) 27.8.1990  (19) JP
(21) Appl. No. 64-36775   (22) 16.2.1989
(71) MATSUSHITA ELECTRIC IND CO LTD   (72) TERUHISA ISHIHARA(1)
(51) Int. Cl⁴. G02F1/1335,G02B5/02

PURPOSE: To obtain the liquid crystal display element which has no shades
of display patterns on a reflecting plate and has excellent visibility by diffusing
the light past a liquid crystal cell by a light diffusion plate having a rugged
surface or a light diffusion plate fixed with many transparent beads.

CONSTITUTION: A 1st polarizing plate 7a and a 2nd polarizing plate 7b are
provided on both surfaces of the liquid crystal cell 6. The light diffusion plate
11 is one-side ground glass having the rugged surface 12 and the reflecting
plate 8 consisting of a polyester film deposited with aluminum by evaporation
is provided on the smooth surface thereof. This light diffusion plate 11 and
the reflecting plate 8 are fixed in the form of being superposed on the 2nd
polarizing plate 7b to the liquid crystal cell 6. The display patterns 9 are, there-
fore, visible in the same manner as heretofore, but the light past the liquid
crystal cell 6 is diffused by the rugged surface 12 of the light diffusion plate
11. The formation of the distinct shadows is averted in this way and the double
appearance of the display patterns is obviated. The extremely good visibility
is thus obtd.





a : light

**118**



54) MANUFACTURE OF LIQUID CRYSTAL DISPLAY
UNIT
11) Kokai No. 52-68400    (43) 6.7.1977    (21) Appl. No. 50-143962
22) 12.5.1975
71) HITACHI SEISAKUSHO K.K.
72) HIRONARI TANAKA (2)
52) JPC: 101E9;101E5;104G0
51) Int. Cl². G09F9/00,G02F1/13


PURPOSE:   To increase transparency of diffusion surface by giving etching process after
mechanical polish of light diffusion surface of semiconductor of liquid crystal display
unit.

CONSTITUTION:   When electric field is applied between upper electrode 2a and lower
electrode 2b opposing to desired pattern, the liquid crystal at that area loses light emis-
sion function and incident rays which passed deflecting plate 6a is shut out by deflection
plate 6b. Here, the light diffusion surface receives polish etching to lower light diffusion
property a little, and has increased transparency. Therefore, the external light which
passed through plate 6a has extremely decreased diffusion light quantity, so that most
of the light transmits light director 7 and is then reflected at surface 7b. Thus, the display
pattern can be read extremely easily. In this structure, the production of light diffusion
surface is facilitated only by addition of etching process with increased transparency. As
a result, the incident transmittance of external light is greatly increased to display pattern
extremely clearly. At the same time, instantaneous and clear reading of the display be-
comes possible thanks to betterment of directivity of light reflection surface 7b.

119

IBM Technical Disclosure Bulletin    Vol. 33 No. 1B June 1990

POLARIZED BACKLIGHT FOR LIQUID CRYSTAL DISPLAY



Fig. 1

Disclosed is a backlight device for a transmissive liquid crystal display. This device emits a polarized light whose polarizing axis is parallel with that of a polarizer located on one side of a liquid crystal cell and near the backlight so that the light can pass through the polarizer more than a non-polarized light.

Light which has no polarization from a backlight into the liquid crystal cell has uniform electromagnetic field for 360 degrees. Theoretically, 50 percent of electromagnetic field is absorbed and 50 percent is transmitted by the polarizer. In actuality, 58 percent of electromagnetic field is absorbed and 42 percent is transmitted.

With reference to Fig. 1, the backlight disclosed herein consists of fluorescent lamps 1, an acrylic transparent light guide 2, an acrylic translucent diffuser 3, and an acrylic sheet 4 which has an indented cross-section. Light emitted from the fluorescent lamps 1 is conducted through the light guide 2 by the law of total reflection and is scattered by the diffuser 3 for the purpose of uniform luminance. The acrylic sheet 4 not only optimizes the emissing direction of light by varying the indentation angle but also polarizes the light. Fig. shows a rotation angle versus luminance measured with a polarizing prism. In this case, the acrylic sheet has a indentation angle of 90

© IBM Corp. 1990

POLARIZED BACKLIGHT FOR LIQUID CRYSTAL DISPLAY   — Continued



Fig 2

degrees. This chart shows that luminance changes according to the rotation angle, that is to say, the light has polarization. Five percent of luminous increase is achieved by arranging a polarizing axis of the polarizer and transmissive axis of the acrylic sheet parallel.

In the above example, 5 percent of luminous increase is achieved in consequence of 5 percent of polarization of light. In case linear polarization of light is accomplished, the backlight device makes it possible to eliminate the polarizer located on the backlight side of the liquid crystal cell.

**121**