**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 04-1337-JFF |
| AUDIOVOX COMMUNICATIONS CORP., AUDIOVOX ELECTRONICS CORP., NIKON CORPORATION, NIKON INC., NOKIA CORPORATION, NOKIA INC., SANYO ELECTRIC CO., LTD., and SANYO NORTH AMERICA, | |
| Defendants. | |

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 04-1338-JFF |
| APPLE COMPUTER, INC.; ARGUS a/k/a HARTFORD COMPUTER GROUP, INC.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA, INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.; SONY | |

CORPORATION, SONY CORPORATION OF
AMERICA; SONY ERICSSON MOBILE
COMMUNICATIONS AB; SONY ERICSSON
MOBILE COMMUNICATIONS (USA) INC.;
TOSHIBA CORPORATION; and TOSHIBA
AMERICA, INC.

          Defendants.

_____

HONEYWELL INTERNATIONAL INC., AND
HONEYWELL INTELLECTUAL
PROPERTIES INC.,

          Plaintiff,

          v.

CITIZEN WATCH CO., LTD. AND CITIZEN
DISPLAYS CO., LTD.,

          Defendants.

_____

C.A. No. 05-0874-JFF

## BRIEF OF DEFENDANTS CITIZEN WATCH CO., LTD.
## AND CITIZEN DISPLAYS CO., LTD. IN SUPPORT OF THEIR MOTION FOR
## SUMMARY JUDGMENT OF NON-INFRINGEMENT

BOUCHARD MARGULES & FRIEDLANDER, P.A.

David J. Margules (Bar No. 2254)
Evan O. Williford (Bar No. 4162)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Tel:     (302) 573-3508
Fax:     (302) 573-3501
E-mail: dmargules@bmf-law.com
E-mail: ewilliford@bmf-law.com
  *Attorneys for Defendants Citizen Watch Co., Ltd. and
Citizen Displays Co., Ltd.*

OF COUNSEL:
Stuart Lubitz
David H. Ben-Meir
HOGAN & HARTSON, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, California 90067

DATED:  April 25, 2008

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS .......................................2

III.  SUMMARY OF ARGUMENT ..............................................................4

IV.   STATEMENT OF FACTS .....................................................................5

     A.    Citizen Lacked Any Knowledge That Its Accused Module Would Be
         Sold In The U.S. And Did Nothing To Encourage Its Importation ..............5

     B.    Honeywell Has Provided No Basis For Its Inducement Claim In
         Discovery ...................................................................................7

V.    THERE IS NO EVIDENCE THAT CITIZEN INDUCED PANASONIC
     TO SELL ITS X300 PHONES IN THE UNITED STATES ..................10

     A.    Honeywell Cannot Identify Any Evidence To Support Its Claim Of
         Inducement Even After Substantial Discovery.............................................10

     B.    Citizen Did Not Engage In Any Conduct That Induced Panasonic To
         Import X300 Phones Into The United States .................................................12

     C.    Citizen Lacked Specific Intent To Induce Panasonic's One Time
         Importation Of X300 Phones Into The U.S. .................................................15

VI.   CONCLUSION....................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page  No.**

*A. Stucki Co. v. Buckeye Steel Castings Co.*
   963 F.2d 360 (Fed. Cir. 1992) ............................................. 11

*ABB Automation Inc. v. Schlumberger Resource Management Services, Inc.,*
   254 F.Supp.2d 479 (D. Del. 2002)..................................... 15-16

*Acierno v. Preit-Rubin, Inc.,*
   199 F.R.D. 157 (D. Del. 2001) ........................................... 10

*Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,*
   1996 WL 84590 (W.D. Wash. 1996)...................................... 17

*Apple Computer, Inc. v. Articulate Systems, Inc.,*
   991 F.Supp. 1189 (N.D. Cal. 1997)................................... 11, 17

*Aventis Pharma Deutschland GMBH v. Cobalt Pharmaceuticals, Inc.,*
   355 F.Supp.2d 586 (D. Mass. 2005)..................................... 13

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,*
   731 F.2d 831 (Fed.Cir.1984) ............................................. 16

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
   21 F.3d 1558 (Fed. Cir. 1994) ........................................... 12

*Bright v. Westmoreland County,*
   380 F.3d 729 (3rd Cir. 2004)............................................9

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................... 10

*DSU Medical Corp. v. JMS Co., Ltd.,*
   471 F.3d 1293 (Fed. Cir. 2006) .................................... 5, 11, 16

*Dynamis, Inc. v. Leepoxy Plastics, Inc.,*
   831 F.Supp. 651 (N.D. Ind. 1993) ...................................... 17

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,*
   394 F.3d 1368 (Fed. Cir. 2005) ......................................... 10

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
   909 F.2d 1464 (Fed. Cir. 1990) ...................................... 16, 17

*Hughes Aircraft Co. v. National Semiconductor Corp.,*
   857 F.Supp. 691 (N.D. Cal. 1994)...................................... 17

*ICN Pharmaceuticals, Iinc. v. Geneva Pharmaceuticals Technology Corp.,*
  272 F.Supp.2d 1028 (C.D. Cal. 2003) ............................................................................ 11

*International Rectifier Corp. v. Samsung Electronics Co., Ltd.,*
  361 F.3d 1355 (Fed. Cir. 2004) ........................................................................ 10, 13-14

*Jacobs Vehicle Systems, Inc. v. Pacific Diesel Brake Co.,*
  424 F.Supp.2d 388 (D. Conn. 2006) ............................................................................ 14

*L.A. Gear, Inc. v. E.S. Originals, Inc.,*
  859 F.Supp. 1294 (C.D. Cal. 1994) ...................................................................... 15, 16

*Manville Sales Corp. v. Paramount Sys., Inc.,*
  917 F.2d 544 (Fed. Cir. 1990) ................................................................... 4, 11, 16

*MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.,*
  420 F.3d 1369 (Fed. Cir. 2005) ............................................................... 10, 13, 16

*Rotec Indus. v. Mitsubishi Corp.,*
  215 F.3d 1246 (Fed. Cir. 2000) ................................................................................. 10

*Spectra Corp. v. Lutz,*
  839 F.2d 1579 (Fed. Cir. 1988) ................................................................................... 9

*Warner-Lambert Co. v. Apotex Corp.,*
  316 F.3d 1348 (Fed. Cir. 2003) ..................................................................... 12-13, 16

### STATUTE AND RULES

35 U.S.C.
  §271(b) ......................................................................................................................... 11
  §285 ............................................................................................................................... 3

Federal Rules of Civil Procedure
  Rule 30(b)(6) ................................................................................................................... 3
  Rule 56(c) ..................................................................................................................... 10

## I.  <u>INTRODUCTION</u>

Despite nearly two and a half years of extensive discovery and litigation, Honeywell has not alleged any facts or produced any evidence to support its claim that Citizen has infringed the '371 patent.  Indeed, not only is Honeywell's claim baseless, the undisputed facts show that Citizen could not have committed any act of infringement of the '371 patent in the U.S. – whether by inducement or otherwise.

Honeywell's infringement claim against Citizen is extremely narrow in scope as only one Citizen product is at issue: the K1122H-HL liquid crystal display ("LCD") module.  However, Citizen never manufactured, imported or sold these LCD modules in the U.S.  Citizen sold them - in Asia - to its Asian customer, Quanta, which incorporated them - in Asia - into cell phones that were ultimately purchased by Panasonic Mobile Communications Co. ("Panasonic"), a Japanese company.  Citizen understood that the Quanta-manufactured cell phones, called X300, were intended for sale by Panasonic in Asia and Europe.  Subsequently, it appears that Panasonic may have shipped a mere 1,000 cellphones to North America on one occasion, in December 2004.  Citizen only learned of this one possible importation a year later, in December 2005, *after* Honeywell filed this lawsuit.  By that time, all of Citizen's sales of the accused LCD had already ceased.

These facts are undisputed and stand uncontroverted due to the total absence of any evidence to support Honeywell's claim, warranting summary judgment for Citizen.  Because Citizen never performed any activity in the U.S. with respect to these LCDs, there is no possibility of direct infringement by Citizen, which Honeywell appears to admit.  As for inducement, there is no evidence that Citizen engaged in any conduct that promoted or encouraged Panasonic's sale of its X300 phones in the U.S.  Citizen's contacts with the U.S.

were non-existent.  Furthermore, the evidence proves that Citizen could not have possessed the required special intent to induce any potential direct infringement, *i.e.,* Panasonic's apparent limited importation into the U.S.  Citizen did not learn of the alleged U.S. importation until a year after it purportedly occurred, and Citizen could not have intentionally induced an importation about which it had no knowledge.  Finally, despite substantial and lengthy discovery, which is now closed, Honeywell has been unable to identify even a shred of evidence to support its inducement claim.  Honeywell has no basis to continue prosecuting this case against Citizen, and summary judgment should be granted.

## II.  NATURE AND STAGE OF PROCEEDINGS

Honeywell initially commenced this litigation against more than 30 defendants on October 6, 2004.  Most of the initial defendants were manufacturers of consumer end products that use LCDs.  Honeywell's complaint alleged that the LCDs in those end products infringed the '371 patent.  (D.I. 1.) (hereinafter the "1338 Action").[1]

On April 12, 2005, the end product manufacturers filed a motion to stay the action against them, arguing that Honeywell should first pursue its infringement claims against the manufacturers of the LCDs.  (D.I. 158.)  The Court granted defendants' motion to stay on May 18, 2005, and restructured the litigation so that Honeywell would first proceed against the LCD module manufacturers, and then against the end product manufacturers who use those LCDs in their products.  (D.I. 202.)

After obtaining limited discovery from the end product manufacturers regarding their LCD manufacturers, Honeywell amended its complaint on November 7, 2005 to name certain

---

[1] Citations are to the record in the 1338 Action, unless otherwise noted.

additional LCD manufacturers as defendants.  Among the newly-named defendants were Citizen

Systems Europe and Citizen Systems America Corp.  (D.I. 239.)  After realizing that those

entities do not manufacture LCD products, Honeywell filed a new lawsuit against Citizen Watch

Co. Ltd. and Citizen Displays Co. Ltd. (hereinafter, "Citizen") on December 16, 2005, (Case No.

1:05-cv-00874) (the "874 Action"), and dismissed its claims against the other Citizen entities.

(D.I. 297, 298.)  Citizen filed a counterclaim against Honeywell for a declaration of

noninfringement, invalidity, and unenforceability of the '371 patent, and attorneys' fees and

costs under 35 U.S.C. §285.  (D.I. 7 in the '874 Action.)  In March 2006, the new case was

consolidated with the previously-filed 1338 Action.

On October 2, 2006, Citizen served its First Set of Interrogatories on Honeywell, which

were generally directed to the basis for Honeywell's infringement contentions.  (D.I. 591.)

Honeywell served its response on November 6, 2006 (D.I. 624) and a supplemental response on

November 21, 2007 (D.I. 927).  On its own behalf, Honeywell has propounded three sets of

interrogatories, three sets of document requests, and two sets of requests for admission.  Citizen

responded to Honeywell's discovery, and in many cases, provided supplemental responses as

well.

On November 14, 2006, Honeywell noticed Citizen's Rule 30(b)(6) corporate deposition.

(D.I. 630.)  Various deposition topics were potentially relevant to Honeywell's inducement claim,

including, *e.g.,* Citizen's marketing and promotion of the accused products in the U.S. (Topic No.

12).  Citizen designated three corporate witnesses to testify on the 22 topics in Honeywell's

deposition notice:  Satoshi Kimura, a member of the Intellectual Property Department; Terumoto

Kimura, the director and general manager in charge of sales and marketing; and Seiichi Ikeda, a

manager in the accounting section of the General Affairs Department. Honeywell took the depositions of these witnesses on March 14 and 15, 2007.

### III. SUMMARY OF ARGUMENT

1. Honeywell only accuses one Citizen product of infringing the '371 patent, the K1122H-HL LCD module. The sole basis for Honeywell's infringement claim is that it purchased a Panasonic X300 cellular phone in the U.S. that contained a K1122H-HL LCD module made by Citizen. Panasonic is one of the stayed end-product manufacturer defendants in this case.

2. At most, Panasonic appears to have imported 1,000 X300 phones into the U.S. on one occasion, in December 2004. Citizen did not learn of this alleged importation until a year later, in December 2005. Prior to that, Citizen understood from information received from its direct customer, Quanta, and the end product seller, Panasonic, that the X300 phones would only be sold in Asia and Europe, and not in the U.S.

3. Citizen does not make, use, import, offer to sell or sell the K1122H-HL LCD module in the United States. Accordingly, Honeywell does not claim that Citizen directly infringes the '371 patent. Rather, Honeywell claims that Citizen induced Panasonic to sell consumer end products in the U.S. containing the Citizen LCD modules, thereby infringing the '371 patent.

4. An inducement claim under 35 U.S.C. § 271(b) requires proof "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990). Inducement "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct

infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

5.     Despite substantial discovery, Honeywell has not identified any evidence that Citizen induced the alleged direct infringement.  Specifically, Honeywell has not pointed to any evidence that Citizen promoted or encouraged Panasonic's sales of X300 phones in the U.S., that Citizen knew that its LCD modules would reach the U.S. market, and/or that Citizen knew of the '371 patent and intended to induce infringement of the patent.  Now more than two years into this litigation, Honeywell's failure to identify any evidence in support of its claim, in response to Citizen's discovery, is itself a sufficient basis on which to grant summary judgment.

6.     Citizen has submitted affirmative, undisputed evidence that (1) Citizen did not engage in any conduct promoting or encouraging the sale of the accused K1122H-HL modules or X300 phones in the U.S., and (2) Citizen could not have had specific intent to induce infringement because it did not even learn of the alleged one-time importation of its LCDs into the U.S. until a year after it happened.  This evidence also demonstrates that no issue of material fact exists as to Citizen's inducement of infringement, and summary judgment should be granted.

## IV.  STATEMENT OF FACTS

### A.     Citizen Lacked Any Knowledge That Its Accused Module Would Be Sold In The U.S. And Did Nothing To Encourage Its Importation

Claim 3 of the '371 patent recites a liquid crystal display ("LCD") with two lens arrays, at least one of which is slightly rotated.  *See* '371 Patent Col. 6:37-43.  Honeywell has only accused one Citizen product of infringing the '371 patent, the K1122H-HL LCD module.  Decl. Ben-Meir, Ex. A at pp. 2-3.  However, Honeywell does not contend that Citizen sold this LCD module in the U.S.  Honeywell states that it purchased a "Matsushita Phone Model X300" in the

U.S. and that the phone contained a K1122H-HL module.  *Id.* at p. 8.  This is the only end

product that Honeywell has identified as containing Citizen's K1122H-HL module.  *Id.*

Citizen only sold and shipped the K1122H-HL modules to one customer:  Quanta

Computer, in Taiwan, and two of Quanta's Chinese subsidiaries, Tech-Yeh (Shanghai) Computer

Co. and Tech-Front (Shanghai) Computer Co., located in China.  Decl. Kimura, ¶¶7-8, 15, Ex. A;

Decl. Ben-Meir, Ex. C at 31:9-32:6, Ex. D at 50:7-10.  Quanta and its subsidiaries incorporated

Citizen's LCD parts into cell phones which were eventually purchased by Panasonic.  Decl.

Kimura, ¶13; Decl. Ben-Meir, Ex. C at 31:9-32:6, Ex. D at 44:23-45:15.  Panasonic is a

subsidiary of Matsushita Electric Industrial Co. ("Matsushita").[2]  Information from Quanta and

Panasonic suggested that the K1122H-HL modules would only be incorporated into the

Panasonic X300 model cellular telephones, and that those phones were intended for the Asian

and European markets, ***not the U.S.*** market.  Decl. Kimura, ¶14; Decl. Nakao, ¶3, Ex. A; Decl.

Ben-Meir, Ex. D at 44:23-45:15.  Citizen never encouraged any customer to sell the K1122H-HL

module in the U.S., and did not in any other way facilitate or assist in the sale or servicing of that

product in the U.S. market.  Decl. Kimura, ¶¶3-6.

After Honeywell amended its complaint in November of 2005 to add the Citizen

defendants to the litigation, Citizen learned that Panasonic had identified Citizen as one of its

LCD suppliers.  Citizen then contacted Panasonic to confirm that none of Panasonic's X300 cell

phones incorporating K1122H-HL LCD parts had been imported into the U.S.  Decl. Takeuchi,

¶¶3-8, Ex. A.  In December of 2005, consistent with its past representations, Panasonic informed

Citizen that there had been no such sales to North America.  *Id.*  Shortly thereafter, however,

---

[2]  Matsushita is also a defendant in this litigation.  In the present motion, Citizen will hereinafter
refer to Panasonic and Matsushita collectively as "Panasonic."

Panasonic informed Citizen that approximately 1,000 X300 cellular telephones had been shipped to North America a year earlier, in December of 2004. *Id.* The gross revenues to Citizen from these sales were less than $15,000. Decl. Kimura, ¶8, Ex. B. These miniscule sales represent the sole possible basis for Honeywell's claim against Citizen.

Prior to the notice it received from Panasonic in December 2005, Citizen had no knowledge that any K1122H-HL LCD modules or Panasonic X300 cell phones had been sold in the U.S. Decl. Takeuchi, ¶7. Similarly, prior to the filing of Honeywell's amended complaint in November of 2005, Honeywell had never communicated to Citizen that any of its LCD modules might infringe the '371 patent. Decl. Kimura, ¶9. Accordingly, prior to the alleged importation of the 1,000 X300 phones into the U.S. – and for a year thereafter – Citizen had no knowledge or reason to believe that its K1122H-HL LCD modules might be imported into the U.S or that those modules could be accused of infringing the '371 patent.

Citizen stopped selling the K1122H-HL LCD modules in September of 2005 and later destroyed the remaining inventory to avoid storage costs. Decl. Takeuchi, ¶ 9, Ex. B; Decl. Lu, ¶¶3-7, Ex. A; Decl. Kimura, ¶11, Exs. B and D. Since the X300 cellular telephones sold by Panasonic were the only end products in which the K1122H-HL modules were incorporated, there were no other possible imports of the accused LCD module to the U.S. other than the 1,000 units that may have been imported in December 2004, and no further importation is possible.

**B.    Honeywell Has Provided No Basis For Its Inducement Claim In Discovery**

It is undisputed that Citizen has not made, used, imported, offered to sell or sold any accused products in the U.S. Therefore, the only *potential* basis for liability against Citizen must rest on the claim that Citizen induced a third party to resell Citizen's LCDs in the U.S.

Citizen's Interrogatory No. 2 issued on October 2, 2006, required Honeywell to state the basis for its contention that Citizen induced infringement of the '371 patent:

> "[S]tate in full your basis for contending that Citizen has induced and/or contributed to infringement of such claim(s), describing each act performed by Citizen which allegedly induced or contributed to infringement, the direct infringement allegedly resulting from each such act (including the identity of the Third Party committing the direct infringement), how each such act resulted in direct infringement, and the basis for your contention that Citizen intended to cause such direct infringement . . ."

Ben-Meir Decl., Ex. A at p. 3. The entirety of Honeywell's initial substantive response to Interrogatory No. 2, which it served on November 6, 2006 (D.I. 624), was as follows:

> "Honeywell states that the product identified in response to Interrogatory No. 1 [the K1122H-HL module] infringes claim 3 of the '371 patent and *was purchased in the United States.*"

*Id.* (emphasis added).[3]

After Citizen pressed Honeywell to supplement this response numerous times, Honeywell added the following information in a supplemental response, which it served over a year later on November 21, 2007 (D.I. 927):

> "…evidence exists that there has been correspondence and other documentation regarding products containing the Accused Structures with customers…"

Ben-Meir Decl., Ex. B at pp. 4-5. The "evidence" cited in Honeywell's supplemental response, however, consisted of specifications and purchase orders referring only to entities located outside of the United States, and suggesting nothing relating to the United States, and which Citizen disclosed to Honeywell long ago in Citizen's initial interrogatory responses and deposition testimony.

---

[3] Honeywell also incorporated by reference its response to Interrogatory No. 3. However, that response merely sets forth Honeywell's contentions as to how the limitations of the '371 patent are satisfied by the accused LCD module.

Perhaps in recognition of its own failing to offer any evidence to support its inducement claim, Honeywell has repeatedly cited its inability to obtain discovery from Panasonic. *See Id.* This, however, is no excuse for pursuing this case against Citizen for more than two years. Honeywell should have had some facts to maintain its claim of inducement for this long, and Honeywell should not be permitted to use discovery to manufacture a factual dispute where there has been none. "Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence through discovery that might tend to support a complaint." *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 (Fed. Cir. 1988); *see also Bright v. Westmoreland County*, 380 F.3d 729, 738 (3rd Cir. 2004) ("bald speculation" that continued discovery might yield evidence does not create an issue of fact).

Despite this glaring deficiency in Honeywell's case, in an effort to resolve the issue, Citizen invited Honeywell to move for the discovery on Panasonic that Honeywell claimed it needed on inducement. Honeywell refused to do so, and never responded to Citizen's request that it reconsider. *See* Ben-Meir Decl., Ex. E.

Accordingly, the only basis for Honeywell's claim of inducing infringement is that someone purchased a Panasonic X300 phone in the U.S. that contained the K1122H-HL LCD module. However, despite the comprehensive discovery it has taken, Honeywell has never identified (1) any *acts* by Citizen that allegedly induced infringement, *i.e.,* induced Panasonic to sell the X300 phone or the K1122H-HL LCD module in the U.S. or (2) any facts showing that Citizen *intended* to induce infringement of Honeywell's '371 patent, whether by Panasonic or any other third party.

## V.  THERE IS NO EVIDENCE THAT CITIZEN INDUCED PANASONIC TO SELL ITS X300 PHONES IN THE UNITED STATES

**A.    Honeywell Cannot Identify Any Evidence To Support Its Claim Of Inducement Even After Substantial Discovery**

Summary judgment is appropriate if, after reviewing all the evidence presented, the Court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On an issue where the nonmoving party bears the burden of proof at trial, summary judgment may be based solely on pleadings and answers to interrogatories which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).  *Accord, Acierno v. Preit-Rubin, Inc.,* 199 F.R.D. 157, 158-59 (D. Del. 2001).

It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States."  *MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005).[4]  However, it is undisputed that Citizen never made, used, imported, offered to sell or sold the accused product in the United States.  Honeywell merely asserts that it found Citizen's K1122H-HL LCD module in a Panasonic X300 cellular phone purchased in the U.S.  Since the only direct infringement alleged by Honeywell is the sale of Panasonic X300 phones in the United States, Honeywell's suit against Citizen is limited to a claim that Citizen somehow induced Panasonic to sell its X300 phones in the U.S.

---

[4] "The right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated [on] acts wholly done in a foreign country."  *Rotec Indus. v. Mitsubishi Corp.,* 215 F.3d 1246, 1251 (Fed. Cir. 2000).  *Accord, Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,* 394 F.3d 1368, 1376 (Fed. Cir. 2005) ("the United States patent system does not provide for extraterritorial effect"); *International Rectifier Corp. v. Samsung Electronics Co., Ltd.*, 361 F.3d 1355 (Fed. Cir. 2004).

An inducement claim under 35 U.S.C. § 271(b) requires proof "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006), *quoting Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990). Numerous cases have held that when there is insufficient evidence to support a finding of inducement, summary judgment is appropriate and should be granted. *See, e.g., ICN Pharmaceuticals, Inc. v. Geneva Pharmaceuticals Technology Corp.,* 272 F.Supp.2d 1028, 1048-50 (C.D. Cal. 2003) (plaintiff lacked evidence that defendant promoted or encouraged the infringing use by its customers).[5]

In response to Citizen's written discovery, Honeywell only identified one product – the K1122H-HL LCD module – as being accused of infringement. Ben-Meir Decl., Ex. A at pp. 2-3. Similarly, Honeywell only identified one product sold in the U.S. that contained this module, the Panasonic X300 phone. *Id.* at pp. 7-8. In response to Citizen's Interrogatory No. 2 seeking the basis for Honeywell's inducement claim, Honeywell merely stated that it had purchased an X300 phone in the U.S. containing a K1122H-HL LCD module. Honeywell failed to identify ***any*** evidence that would support a claim that Citizen induced this alleged infringement, *e.g.,* that Citizen encouraged or assisted Panasonic in selling its X300 phones in the U.S., that Citizen knew that its LCD modules would reach the U.S. market, or that Citizen knew of the '371 patent and intended to induce infringement of the patent. *Id.* at p. 3.

---

[5] *See also A. Stucki Co. v. Buckeye Steel Castings Co.,* 963 F.2d 360, 362 (Fed. Cir. 1992) (defendant had ceased its involvement in the management of the direct infringer); *Apple Computer, Inc. v. Articulate Systems, Inc.,* 991 F.Supp. 1189 (N.D. Cal. 1997) (no evidence that defendant induced its customers to use its product in an infringing manner).

Honeywell's failure to identify any evidence supporting its claim of inducement is a sufficient basis – by itself – to warrant summary judgment in favor of Citizen. Nevertheless, Citizen has also submitted affirmative, undisputed evidence that (1) Citizen did not engage in any conduct promoting or encouraging the sale of the accused K1122H-HL product or X300 phones in the U.S., and (2) Citizen could not have had specific intent to induce infringement because it did not even learn of the one-time importation of its LCDs into the U.S. until a year after it happened. These grounds independently support summary judgment in favor of Citizen and are discussed separately below.

**B.    Citizen Did Not Engage In Any Conduct That Induced Panasonic To Import X300 Phones Into The United States**

The mere act of a foreign company selling a product to a foreign customer is lawful and outside the scope of U.S. patent law. Liability for inducement only arises if a further act is committed that promotes or encourages the subsequent sale or use of that product in the U.S. In the absence of evidence that Citizen actively encouraged or assisted Panasonic in its sale of X300 phones in the U.S., there is no genuine issue of material fact as to inducement and summary judgment should be granted.

In order to prevail on a claim of inducement, "specific intent and *action to induce infringement* must be proven." *Warner-Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1364 (Fed. Cir. 2003), *citing Manville,* 917 F.2d at 554 (emphasis added). "Active inducement of infringement requires the commission of an affirmative act," rather than an omission. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed. Cir. 1994). *See, e.g., Warner-Lambert,* 316 F.3d at 1364 (granting summary judgment despite defendant's knowledge that its customers were using its products in an infringing manner, based on lack of evidence that defendant promoted or encouraged the infringing use); *Aventis Pharma Deutschland GMBH v.*

*Cobalt Pharmaceuticals, Inc.,* 355 F.Supp.2d 586, 598-99 (D. Mass. 2005) (defendant's knowledge that its customers used product to infringe was insufficient to withstand summary judgment of inducement, where plaintiff lacked evidence that defendant "promoted or encouraged" the infringing use).

Precedent illustrates the type of conduct that is required to prove inducement where a foreign manufacturer is selling accused products to foreign customers. In *MEMC*, 420 F.3d 1369, defendant SUMCO sold accused silicon wafers to Samsung Japan, which then shipped the products to Samsung's facilities in Austin, Texas. The Federal Circuit found that a question of fact existed as to inducement, because SUMCO had "encouraged and enabled" Samsung Texas to use the accused wafers in the U.S. by, *inter alia,* providing technical support to the Samsung facility in Texas. SUMCO had made adjustments to its manufacturing process to address problems encountered by Samsung Texas; sent replacement wafers to Samsung Texas; and made onsite visits to Samsung Texas to give technical presentations regarding its products. *Id.* at 1377-80.

Conversely, the Federal Circuit held that Samsung in Korea did *not* violate U.S. patent law in its sale and delivery of accused devices to IXYS in Germany, where:

- Samsung's activities occurred entirely outside the U.S.,

- Samsung knew of IXYS's importation of products into the U.S. but exercised no control over IXYS,

- Samsung did not participate in any of IXYS' activities after delivering its wafers to IXYS in Germany, and

- There was no evidence of an agreement between Samsung and IXYS to import IXYS's wafers into the U.S.

*International Rectifier*, 361 F.3d at 1360-61.

Similarly, in *Jacobs Vehicle Systems, Inc. v. Pacific Diesel Brake Co.,* 424 F.Supp.2d 388 (D. Conn. 2006), the court granted summary judgment because it found the evidence insufficient to support a claim for inducement.  Despite the defendant's knowledge of the patent and its general dealings with its subsidiary in the U.S., summary judgment was granted because the defendant did not take "any affirmative action to induce" its subsidiary to make, use or sell the product at issue within the U.S.  *Id.* at 393-94.

Honeywell has failed to identify ***any*** conduct of Citizen that allegedly encouraged or facilitated the sale or use of its LCD products in the U.S.  *See* Decl. Ben-Meir, Exs. A and B (Responses to Citizen's Interrogatory No. 2).  Honeywell's lack of evidence, by itself, mandates summary judgment in favor of Citizen.

Nevertheless, Citizen has also offered affirmative evidence that negates Honeywell's claim of inducement.  For example, Citizen never provided product or technical support to a U.S. entity, such as a U.S. distributor or customer, in connection with the potentially relevant modules, and did not manufacture those modules to specifications that were intended to render the products compliant with requirements of the U.S. market.  Decl. Kimura, ¶¶4-5.  Citizen never indemnified its customers against claims for infringement arising under U.S. law for those modules, and did not enter into any agreement with a foreign or U.S. entity that expressly provided that entity with U.S. distribution rights or that provided a right to inspect the premises of a U.S. entity.  Decl. Kimura, ¶6.  Citizen never advertised or marketed those modules in the U.S. or granted trademark rights to a U.S. entity to do so.  Decl. Kimura, ¶16.  Citizen never permitted a U.S. entity to perform warranty work relating to the third party products incorporating those modules on Citizen's behalf.  Decl. Kimura, ¶17.  Citizen never conducted

on-site visits to a U.S. entity to assist in the marketing or support of those modules or the products incorporating the modules. Decl. Kimura, ¶18. In fact, Citizen is not aware of *any* contacts between it and U.S. entities, whether distributors, retailers, consumers or other end users, to facilitate or encourage sales of the potentially relevant modules in the U.S. Decl. Kimura, ¶19.

Citizen's evidence affirmatively demonstrates that it lacked any connections with the U.S. pertaining to the accused products. Citizen's sales of the K1122H-HL LCD modules occurred entirely outside the U.S. and Citizen did not in any way promote or encourage Panasonic to sell its X300 phones in the U.S. Summary judgment dismissing Honeywell's claim of inducement is thus appropriate and should be granted.

## C.    Citizen Lacked Specific Intent To Induce Panasonic's One Time Importation Of X300 Phones Into The U.S.

It is well-established that a defendant cannot induce the infringing activity of a third party unless the defendant has knowledge of the infringing activity being induced. That is the most basic predicate for finding intent. ***Without prior or contemporaneous knowledge of the infringing activity*** – here, the importation of accused LCD modules into the U.S. – it is axiomatic that ***the defendant cannot possess specific intent to induce that activity***.

Although the issue of intent to induce infringement is a factual determination, Honeywell can only avoid summary judgment if there exists a material question of fact concerning Citizen's intent to induce infringement. *L.A. Gear, Inc. v. E.S. Originals, Inc.,* 859 F.Supp. 1294, 1302 (C.D. Cal. 1994). To demonstrate a material issue of fact, Honeywell must point to an evidentiary conflict in the record, and cannot defeat summary judgment by "mere denials or conclusory statements" in its complaint or discovery responses. *Id.*; *ABB Automation Inc. v. Schlumberger Resource Management Services, Inc.*, 254 F.Supp.2d 479, 482 (D. Del. 2002), *citing Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835-36

(Fed.Cir.1984).  If there is no evidentiary basis upon which a jury might reasonably find specific intent to induce infringement, summary judgment must be granted.  *L.A. Gear,* 859 F.Supp. at 1302 (granting summary judgment for defendant on inducement claim).

The Federal Circuit recently resolved a conflict in its prior precedent concerning the level of intent required to support a cause of action for inducement.  In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464 (Fed. Cir. 1990), the Federal Circuit held that to induce infringement, the inducer need only intend to cause the *acts* of the third party that constitute direct infringement.  In another decision, however, *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990), the Federal Circuit held that the "alleged infringer must be shown ... to have knowingly induced *infringement*," not merely the *acts* that constitute direct infringement.  In resolving this conflict, the Federal Circuit adopted the higher standard for intent required in *Manville*:

> "***It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.***  The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements."

*DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006), *quoting Manville,* 917 F.2d at 553.  Under this standard, "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU Medical,* 471 F.3d at 1305, *quoting Warner-Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1364 (Fed.Cir.2003).  *Accord, MEMC,* 420 F.2d at 1378.

Even under *Hewlett-Packard,* however, the alleged inducer at least had to know of the acts constituting the infringement, or there could be no intent to induce those acts.  This has always been a baseline requirement for finding intent to induce infringement.  Intent to induce

infringement requires that "an accused infringer must be shown to have _actual knowledge of the patent and the infringement_ and have the actual intent to induce the infringement." *Dynamis, Inc. v. Leepoxy Plastics, Inc.,* 831 F.Supp. 651, 657 (N.D. Ind. 1993). Knowledge of the acts constituting the infringement does not, by itself, support a finding of intent to induce infringement; but **intent to induce infringement cannot exist _but for_ knowledge of the infringing activity being induced.**

Without knowledge of the infringing activity, summary judgment is appropriate because there can be no genuine issue of fact as to the element of intent. *See, e.g., Apple,* 991 F.Supp. at 1193 (granting defendants' motion for summary judgment on inducement claim where there was "no evidence before the Court that the Defendants should have known that their product would lead to infringement"); *Hughes Aircraft Co. v. National Semiconductor Corp.,* 857 F.Supp. 691, 700 (N.D. Cal. 1994) (summary judgment on inducement based on, *inter alia,* lack of evidence that defendant knew of the allegedly infringing activity); *Dynamis,* 831 F.Supp. 651 (granting partial summary judgment on inducement as to sales made prior to date of actual notice of alleged infringement).

In *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,* 1996 WL 84590 (W.D. Wash. 1996), Amgen alleged that Elanex infringed its patent by making and using the accused products in the U.S. and that Merckle had induced that infringement. Amgen contended that Merckle and Elanex had "extensive interaction" relating to the activities that constituted infringement in the U.S. *Id.* at *5. Merckle argued that it had no input into Elanex's decision to use the patented technology in the U.S. and that its contracts with Elanex only involved the marketing of the product in Europe. *Id.* at *5-6. Finding that plaintiff had failed to introduce evidence showing

that Merckle had specific intent to induce infringement *in the U.S.,* the court granted Merckle's

motion for summary judgment as to lack of inducement. *Id.* at *6-7.

In the present case, the following facts are undisputed:

1)    The only infringement alleged by Honeywell is the importation of X300 phones

containing K1122H-HL LCD modules.  The only importation shown by the

evidence is Panasonic's apparent one-time importation of about 1,000 X300

phones into the U.S. in December 2004.  Decl. Takeuchi, ¶¶3-8, Ex. A; Decl.

Ben-Meir, Ex. C at 31:9-32:6.

2)    Citizen first learned that Panasonic X300 phones had been shipped to the U.S. in

December 2005, about one year *after* the one-time importation occurred.  Citizen

had no prior knowledge or reason to know that any of the accused products would

be sold in the U.S.  Decl. Kimura, ¶15; Decl. Nakao, ¶¶3, Ex. A; Decl. Takeuchi,

¶¶3-8, Ex. A.

3)    Prior to December 2005, information from both Quanta and Panasonic indicated

to Citizen that its LCD components (and/or the phones containing those LCDs)

were not intended for sale in the U.S., but rather, that the X300 phones were being

marketed exclusively in Asia and Europe.  Decl. Takeuchi, ¶¶3-5, Ex. A; Decl.

Kimura, ¶14; Decl. Nakao, ¶3, Ex. A.

4)    Prior to amending its complaint in November 2005, Honeywell never put Citizen

on notice that any of its LCD modules were accused of infringing the '371 patent,

and Citizen was unaware that any of its LCD modules were accused of

infringement.  Decl. Kimura, ¶9.

Under these facts, Honeywell cannot prove that Citizen possessed specific intent to induce infringement.  Most fundamentally, Citizen had no knowledge of the alleged infringement, *i.e.,* the alleged one-time importation of a nominal 1,000 K1122H-HL LCD modules into the U.S., until a year after the incident occurred.  To the contrary, Citizen understood that its LCDs were only being sold in Asia and Europe.  A party cannot intend to induce infringing activity that it is unaware of, much less intend to induce the resulting *infringement* of a U.S. patent.  Since Citizen lacked specific intent to cause the alleged infringement of Honeywell's '371 patent, summary judgment on Honeywell's inducement claim should be granted.

## VI.  CONCLUSION

Because Honeywell has not and cannot produce any evidence that Citizen induced Panasonic to import or sell its X300 cellular phones in the United States, Citizen requests that it be granted declaratory relief that it has not and does not infringe the '371 patent and that Honeywell's infringement claim be dismissed with prejudice.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

_____/s/ David J. Margules_____
David J. Margules (Bar No. 2254)
Evan O. Williford (Bar No. 4162)
222 Delaware Avenue, Suite 1400

OF COUNSEL:        Wilmington, DE 19801
Stuart Lubitz        Tel:   (302) 573-3508
David H. Ben-Meir    Fax:   (302) 573-3501
HOGAN & HARTSON, LLP  E-mail: dmargules@bmf-law.com
1999 Avenue of the Stars  E-mail: ewilliford@bmf-law.com
Suite 1400      *Attorneys for Defendants Citizen Watch Co., Ltd. and*
Los Angeles, California 90067  *Citizen Displays Co., Ltd.*

DATED:  April 25, 2008