# EXHIBIT 4
To
DECLARATION OF ALEXANDER E. GASSER
IN SUPPORT OF
DEFENDANTS OPTREX'S, FUJIFILM'S AND
SAMSUNG SDI'S OPENING MEMORANDUM OF LAW
IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE COMPUTER, INC., et al.,<br><br>Defendants. | Civil Action No. 04-1338-***<br>(Consolidated) |

**EXPERT REPORT OF DENNIS J. WILWERDING REGARDING VALIDITY & ENFORCEABILITY OF U.S. PATENT NO. 5,280,371**

CONTAINS HIGHLY CONFIDENTIAL INFORMATION
SUBJECT OT PROTECTIVE ORDER – OUTSIDE ATTORNEYS' EYES ONLY

## I. Introduction

My name is Dennis J. Wilwerding. I reside in Littleton, Colorado. I have been retained by the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel for plaintiffs Honeywell International, Inc., and Honeywell Intellectual Properties, Inc. ("Honeywell"), to provide expert testimony in the above captioned matter. This report summarizes my opinions and testimony I currently expect to provide in response to the Expert Reports of Dr. Elliott Dr. Schlam, Robert Smith-Gillespie, and Kevin Hathaway, concerning the validity and enforceability of United States Patent No. 5,280,371 ("the '371 patent"). I reserve the right to amend this report as necessary in view of further investigation or consideration, or in light of additional facts obtained in this case.

### A. SUCCINCT STATEMENT OF OPINION

I expect to testify as an expert in the art of light sources and backlighting for optical systems including LCD displays, which includes knowledge both in the fields of optics and electronics.

### B. BACKGROUND INFORMATION

#### 1. Qualifications.

I am qualified to testify about the technical issues presented here by virtue of my training, extensive experience in the design, development, and testing of lighting and optical systems as well as the training of others in optical lighting and sensing techniques. These include automatic xenon flash units, autofocus sensors, autofocus testing and manufacturing systems and for lighting and measurement systems for non-contact gauging and inspection used for many industrial and production applications.

1

The '371 patent teaches at Col. 3, l. 50 through Col. 4, l. 16 that light rays from a backlight can be redirected to improve the efficiency of the lighting. This is done by recycling the light, and returning a portion of the light rays that would not be in a desired direction. The '371 patent teaches that these rays need not be lost, but can be recycled to return to the LCD at a different angle, perhaps this time in the desired angular direction. This concept of recycling light yields the highly efficient LCD backlighting of today that is uniform and diffuse and concentrates light rays toward the viewer.

The '371 patent teaches the use of multiple lenticular arrays for providing even more on axis brightness. In the particular application described in the patent's specification, the inventors were trying to provide a high display brightness over a wide horizontal viewing angle and a narrow vertical viewing angle and placed both lenticular arrays in generally the same axis. While the patent as issued does not expressly depict lenticular arrays in a crossed configuration (which concentrates the light in two axes), as I discuss later in this report, there is no limitation on the orientation of those arrays with respect to the LCD. The inventors had studied all such configurations, and viewed the issue of orientation as dependent upon the particular application in question and the desired luminance profile.

The use of the lenticular arrays in conjunction with the LCD gave rise to an optical phenomenon known as the moiré effect (which I will describe later in this report). With the arrays aligned co-linear, McCartney and his team discovered that moiré from the interaction of the two arrays could be solved by choosing arrays of pitches in a particular manner in relation to the pitch of the LCD panel such that the resulting moiré would not be observable. They also discovered that observable moiré from the interaction between the lenticulars and the LCD could

6

## VIII. Conclusion

As I have described above, I have thoroughly reviewed the record in this litigation, along with the reports submitted by the defendants' experts. I have also reviewed the references they cite in an attempt to render the '371 patent invalid and unenforceable. After careful consideration of all of this, it is my professional opinion that the '371 patent is valid and enforceable.

Dated: Oct. 19, 2007

Dennis J. Wilwerding