EXHIBIT A

197 F.Supp.2d 86                                                                          Page 1
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

**H**

Tracinda Corp. v. Daimlerchrysler AG
D.Del.,2002.

United States District Court,D. Delaware.
In re: DAIMLERCHRYSLER AG SECURITIES
LITIGATION.
TRACINDA CORPORATION, a Nevada Corpora-
tion, Plaintiff,
v.
DAIMLERCHRYSLER AG, a Federal Republic of
Germany corporation; Daimler-Benz AG, a Federal
Republic of Germany corporation; Juergen Schr-
empp, a citizen of the Federal Republic of Ger-
many; Manfred Gentz, a citizen of the Federal Re-
public of Germany; Hilmar Kopper, a citizen of the
Federal Republic of Germany, Defendants.
Glickenhaus & Co., et al., Plaintiffs,
v.
Daimlerchrysler AG, et al., Defendants;
**Nos. CIV.A.00-993-JJF, CIV.A.00-994-JJF,
CIV.A.01-004-JJF.**

March 22, 2002.

Foreign defendant filed motion to dismiss claims
against him under federal securities laws. The Dis-
trict Court, Farnan, J., held that: (1) defendant did
not waive his right to contest personal jurisdiction
as result of his counsel's filing of a letter addressing
the issue of consolidation that had been raised by
plaintiff; (2) allegations that nonresident defendant
had been involved in the preparation and dissemin-
ation of false and misleading representations direc-
ted at shareholders in the United States in order to
secure their approval for merger of German and
American automobile manufacturers were sufficient
to raise a colorable showing of specific jurisdiction,
however, allegations were not sufficiently particu-
larized so as to clearly establish personal jurisdic-
tion over defendant; and (3) foreign defendant's
general business contacts with the United States
were insufficient to satisfy the requirements of gen-
eral jurisdiction.

Motion granted in part and denied in part.

West Headnotes

**[1] Federal Courts 170B ⮧95**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk95 k. Objections, Waiver and Con-
sent. Most Cited Cases
Requirement of personal jurisdiction, like other in-
dividual rights, can be waived as a result of a
party's actions.

**[2] Federal Courts 170B ⮧95**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk95 k. Objections, Waiver and Con-
sent. Most Cited Cases
Generally, where a party seeks affirmative relief
from a court, it normally submits itself to the juris-
diction of the court with respect to the adjudication
of claims arising from the same subject matter;
however, the mere participation in or filing of a
motion does not necessarily amount to a waiver of
the defense of lack of personal jurisdiction.

**[3] Federal Courts 170B ⮧95**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk95 k. Objections, Waiver and Con-
sent. Most Cited Cases
Defendant did not waive his right to contest person-
al jurisdiction as result of his counsel's filing of a
letter addressing the issue of consolidation that had
been raised by plaintiff; by his letter, defendant no-
tified the court that he opposed the proposed con-
solidation order and supported the relief sought by
his co-defendants, but did not actively litigate the
consolidation issue before the court by filing mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

tions or briefing.

**[4] Securities Regulation 349B ☜133**

349B Securities Regulation
   349BI Federal Regulation
      349BI(E) Remedies
         349BI(E)1 In General
            349Bk133 k. Venue. Most Cited Cases
Both Securities Exchange Act and Securities Act provide for national service of process, and both statutes are intended to extend personal jurisdiction to the full extent permitted by the Due Process Clause of the Fifth Amendment. U.S.C.A. Const.Amend. 5; Securities Exchange Act of 1934, §§ 22, 27, 15 U.S.C.A. §§ 78v, 78aa.

**[5] Federal Courts 170B ☜76.5**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.5 k. Contacts with Forum State. Most Cited Cases
Where jurisdiction is based on a statute that provides for nationwide service of process, the relevant minimum contacts inquiry focuses on the defendant's contacts with the United States as a whole, rather than with a particular state.

**[6] Federal Courts 170B ☜76.10**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum; defendant

must have purposefully availed himself of the privilege of conducting activities within the forum such that the defendant should reasonably anticipate being haled into court as a result of his conduct and connection with the forum. U.S.C.A. Const.Amend. 5.

**[7] Federal Courts 170B ☜76.5**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.5 k. Contacts with Forum State. Most Cited Cases
For general jurisdiction to exist, the litigation need not arise out of or be related to the defendant's contacts with the forum; rather, general jurisdiction may exist if the defendant's general business contacts with the United States have been "continuous and systematic," even though they are unrelated to the lawsuit.

**[8] Federal Courts 170B ☜76.1**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.1 k. In General. Most Cited Cases
   (Formerly 170Bk76)
In considering the reasonableness of exercising jurisdiction over a defendant, courts weigh the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. U.S.C.A. Const.Amend. 5.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

**[9] Federal Civil Procedure 170A ⟨=⟩1269.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1269 Grounds and Objections
                170Ak1269.1 k. In General. Most Cited Cases
If the court is not satisfied by a plaintiff's jurisdictional allegations, the court may allow the plaintiff to take jurisdictional discovery, if the plaintiff has made a colorable or prima facie showing of personal jurisdiction.

**[10] Federal Courts 170B ⟨=⟩76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum State. Most Cited Cases
A defendant may be subject to court's jurisdiction if he caused an effect in the forum by an act done elsewhere; exercise of jurisdiction over an individual may be appropriate where the individual has done an act outside of the forum that causes consequences in the forum, so long as the exercise of jurisdiction is not unreasonable. U.S.C.A. Const.Amend. 5.

**[11] Securities Regulation 349B ⟨=⟩133**

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk133 k. Venue. Most Cited Cases
Allegations that nonresident defendant had been involved in the preparation and dissemination of false and misleading representations directed at shareholders in the United States in order to secure their approval for merger of German and American automobile manufacturers were sufficient to raise a colorable showing of specific jurisdiction; however,

allegations were not sufficiently particularized so as to clearly establish personal jurisdiction over defendant. U.S.C.A. Const.Amend. 5; Securities Exchange Act of 1934, §§ 22, 27, 15 U.S.C.A. §§ 78v, 78aa.

**[12] Federal Courts 170B ⟨=⟩76.10**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
Post-transaction contacts with forum may not be considered in determining whether specific jurisdiction exists with respect to suit arising from transaction. U.S.C.A. Const.Amend. 5.

**[13] Federal Courts 170B ⟨=⟩86**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk86 k. Aliens or Alien Corporations. Most Cited Cases
Even if general jurisdiction could apply to individuals, the Court would conclude that foreign defendant's general business contacts with the United States were insufficient to satisfy the requirements of general jurisdiction; defendant's ownership of stock in United States corporation, his role as a director of corporation and his trips and speaking engagements in the United States were insufficient to support the exercise of general jurisdiction. U.S.C.A. Const.Amend. 5.

**[14] Federal Courts 170B ⟨=⟩86**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk86 k. Aliens or Alien Corporations. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Foreign defendant's alleged liability under federal securities laws as a control person did not provide an independent basis for the exercise of personal jurisdiction over defendant.

**[15] Securities Regulation 349B ⮞35.15**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)1 In General
            349Bk35.15 k. Controlling Persons.
Most Cited Cases
To state a claim for control person liability, the plaintiff must allege (1) a primary violation of the federal securities laws by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. Securities Act of 1933, § 15, 15 U.S.C.A. § 77o; Securities Exchange Act of 1934, § 20, 15 U.S.C.A. § 78t.

*88 Joseph A. Rosenthal, Esquire, and Carmella P. Keener, Esquire of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware. Of Counsel: Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, New York. Attorneys for Glicken-haus Plaintiffs.

A. Glichrist Sparks, III, Esquire, Alan J. Stone, Esquire, and Jessica Zeldin, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: Terry Christensen, Esquire, James S. Schreier, Esquire, Steven J. Aaronoff, Esquire, and Eric P. Early, Esquire of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, California. *89William G. McGuinness, Esquire and Julie E. Kamps, Esquire of Fried, Frank, Harris, Shriver & Jacobson, New York, New York. Attorneys for Plaintiff Tracinda Corporation.

Jay W. Eisenhofer, Esquire, Abott A. Leban, Esquire, and Richard M. Donaldson, Esquire of Grant & Eisenhofer, P.A., Wilmington, Delaware. Of Counsel: Vincent R. Cappucci, Esquire and Catherine Torell, Esquire, Entwistle & Cappucci LLP, New York, New York. Jeffrey A. Klafter, Esquire

and Stacy E. Osborne, Esquire of Bernstein Litowitz Berger & Grossmann LLP, New York, New York. Jeffrey W. Golan, Esquire and Samuel R. Simon, Esquire of Barrack Rodos & Bacine, Philadelphia, Pennsylvania. Attorneys for Co-Lead Plaintiffs, The Florida State Board of Administration, Municipal Employees Annuity and Benefit Fund of Chicago, Denver Employees Retirement Plan, Policemen's Annuity and Benefit Fund of Chicago, and Municipal Employees Annuity and Benefit Fund of Chicago.

Thomas J. Allingham II, Esquire, Robert S. Saunders, Esquire, Kenneth A. Polite, Jr., Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware. Of Counsel: Jonathan J. Lerner, Esquire, J. Michael Schell, Esquire, Joseph N. Sacca, Esquire and Jacob E. Hollinger, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. Attorneys for Defendants DaimlerChryler AG, Daimler-Benz AG, Jürgen Schrempp and Manfred Gentz.

Peter J. Walsh, Jr., Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Of Counsel: Milbank, Tweed, Hadley & McCloy LLP, New York, New York. Attorneys for Defendant Hilmar Kopper.

*OPINION*

FARNAN, District Judge.

Pending before the Court is a Motion To Dismiss (D.I.52) [FN1] filed by Defendant Hilmar Kopper. By his Motion, Defendant Kopper seeks to dismiss (1) the Complaint in *Tracinda Corp. v. Daimler-Chrysler AG et al.,* Civil Action No. 00-984-JJF (the "Tracinda Complaint"); (2) the Complaint in *Glickenhaus & Co., et al. v. DaimlerChrysler AG, et al.,* Civil Action No. 01-004-JJF [FN2] (the "Glickenhaus Complaint"); and (3) the First Amended Consolidated Class Action Complaint in *In re DaimlerChrysler Securities Litigation,* Master Docket No. 00-993-JJF (the "Amended Class Complaint") (collectively "the Complaints"), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), 12(b)(6), and Section 21D of the Securities Ex-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

change Act of 1934. For the reasons set forth be-
low, the Court will (1) grant Defendant Kopper's
Motion as it applies to the Amended Class Com-
plaint; (2) deny Defendant Kopper's Motion with
leave to renew as it applies to the Glickenhaus
Complaint;**90** and (3) grant Defendant Kopper's
Motion with respect to the civil conspiracy claim
alleged in the Tracinda Complaint, and deny De-
fendant Kopper's Motion with leave to renew as it
applies to the remaining claims of the Tracinda
Complaint.

FN1. Since the filing of Defendant Kop-
per's Motion To Dismiss, the three cases
referenced by Defendant Kopper have been
consolidated into Civil Action No.
00-993-JJF. Accordingly, the Docket
Numbers referenced in this Opinion cor-
respond to the docket items listed on the
consolidated docket in Civil Action No.
00-993-JJF, unless otherwise indicated.

FN2. Initially, Defendant Kopper did not
move to dismiss the Glickenhaus Com-
plaint, because he had not been served with
that Complaint. (D.I. 53 at 1). However,
the parties subsequently stipulated that (1)
Defendant Kopper's Motion To Dismiss
the claims asserted by Tracinda would be
deemed a Motion To Dismiss the claims
asserted by Glickenhaus, (2) Tracinda's an-
swering brief to the Motion would be
deemed to be the answering brief of Glick-
enhaus; and (3) Defendant Kopper's reply
brief would be applicable to the Glicken-
haus claims, as well. (D.I. 48, in Civil Ac-
tion No. 01-004-JJF).

## BACKGROUND

The background relevant to this action is set forth
fully in the Court's Opinion in *In re Daimler-
Chrysler AG Sec. Litig.,* Consolidated Civil Action
No. 00-993-JJF dated March 22, 2002 ("*In re
DaimlerChrysler I* "). For purposes of the instant
Motion, the Court provides the following additional

background information.

By their Complaints, Plaintiffs allege that Defend-
ant Kopper served as Chairman of the Supervisory
Board of three entities, Daimler-Benz AG
("Daimler-Benz"), Deutsche Bank, and Daimler-
Chrysler AG ("DaimlerChrysler"). At the time of
the merger, Defendant Kopper was the Chair of the
Daimler-Benz Supervisory Board, a position he had
occupied since 1990. By the terms of Proxy/
Prospectus, Defendant Kopper was to remain in this
position for at least two years after the effective
date of the merger.

In addition to his position at Daimler-Benz, De-
fendant Kopper was, and currently is, the Chair of
the Supervisory Board of Deutsche Bank. Deutsche
Bank was the largest shareholder of Daimler-Benz,
and is now the largest shareholder of Daimler-
Chrysler. In 1998 Deutsche Bank owned approxim-
ately 22% of Daimler-Benz. Currently, Deutsche
Bank owns approximately 11.9% of Daimler-
Chrysler.

Since the merger, Defendant Kopper has also
served as the Chair of the Supervisory Board of the
combined entity that resulted from the merger,
DaimlerChrysler. In this capacity, Defendant Kop-
per also sits on three committees of the Supervisory
Board: (1) the Presidential Committee, (2) the Fin-
ancial Audit Committee, and (3) the Mediation
Committee.

By their Complaint, Plaintiffs allege that Defendant
Kopper participated in the implementation of
Daimler-Benz's fraudulent scheme to acquire
Chrysler Corporation ("Chrysler"). Specifically,
Plaintiffs contend that Defendant Kopper was in-
strumental in negotiating and structuring the merger
and that Defendant Kopper was involved directly or
indirectly in all of Daimler-Benz's material de-
cisions regarding the merger. (Tracinda Cmplt. at
¶¶ 4, 16; Glickenhaus Cmplt. at ¶¶ 4, 16; Amended
Class Cmplt. at ¶¶ 18, 27).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## DISCUSSION

By his Motion To Dismiss, Defendant Kopper raises three arguments. Specifically, Defendant Kopper contends that (1) Plaintiffs' Complaints should be dismissed for lack of personal jurisdiction; (2) the control person claims against Defendant Kopper should be dismissed for failure to allege the elements of control person liability and failure to plead with the requisite specificity; and (3) Plaintiff Tracinda Corporation's ("Tracinda") claim for civil conspiracy should be dismissed for failure to state a claim upon which relief may be granted. The Court will address each of Defendant Kopper's arguments in turn.

## I. Whether Plaintiffs' Complaints Should Be Dismissed For Lack Of Personal Jurisdiction

By his Motion, Defendant Kopper contends that Plaintiffs' Complaints fail to plead any grounds for asserting personal jurisdiction over him. Specifically, Defendant Kopper contends that he is not subject to jurisdiction under the federal securities**\*91** laws. FN3 In addition, Defendant Kopper contends that he has not consented to the Court's jurisdiction. Accordingly, Defendant Kopper requests the Court to dismiss Plaintiffs' Complaints pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

> FN3. Defendant Kopper also contends that he is not subject to jurisdiction under the Delaware long-arm statute, 10 Del. C. § 3104(c), with regard to Tracinda's civil conspiracy claim. However, in its Answering Brief, Tracinda relies on the doctrine of supplemental jurisdiction to support its argument that the Court's jurisdiction over Defendant Kopper should extend to its civil conspiracy claim. Accordingly, the Court will not address the Delaware long-arm statute in its analysis.

A. *Whether Defendant Kopper Has Consented To*

*The Court's Jurisdiction*

By his Motion, Defendant Kopper contends that he has not consented to jurisdiction in this litigation, because he was not a party to the Merger Agreement between Daimler-Benz and Chrysler, and he has not attempted to litigate the merits of this action in this Court. In response, Plaintiffs contend that Defendant Kopper has consented to the Court's jurisdiction and waived his objection to personal jurisdiction as a result of his counsel's June 7, 2000 letter to the Court responding to a letter from Tracinda's counsel urging the Court to schedule oral argument on the DaimlerChrysler Defendants' Motion For Consolidation.

[1][2] The requirement of personal jurisdiction, like other individual rights, can be waived as a result of a party's actions. *Bel-Ray Company, Inc. v. Chemrite (Pty) Ltd.,* 181 F.3d 435 (3d Cir.1999) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). Generally, "where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray,* 181 F.3d at 443. However, the mere participation in or filing of a motion does not necessarily amount to a waiver of the defense of lack of personal jurisdiction. *Marquest Medical Products, Inc. v. EMDE Corporation,* 496 F.Supp. 1242, 1245 (D.Colo.1980) (citing *Altman v. Liberty Equities Corp.,* 322 F.Supp. 377, 379 (S.D.N.Y.1971)). Nevertheless, to conserve judicial time and resources, the Court of Appeals for the Third Circuit has concluded that "preliminary matters such as ... personal jurisdiction ... should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." *Bel-Ray,* 181 F.3d at 443 (quoting *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.,* 376 F.2d 543, 547 (3d Cir.1967)).

[3] In this case, Defendant Kopper moved to dismiss this action for lack of personal jurisdiction in his first filing with the Court. However, Defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Kopper's counsel subsequently filed a letter addressing the issue of consolidation that had been raised by Tracinda. By his letter, Defendant Kopper notified the Court that he opposed the proposed consolidation order submitted by Tracinda and Glickenhaus and supported the relief sought by his co-defendants. In closing, counsel for Defendant Kopper stated, "Thus, for the reasons set forth above as well as the reasons set forth in the DaimlerChrysler Defendants' motion papers, Mr. Kopper respectfully requests that the Court grant the relief sought by the DaimlerChrysler Defendants." (D.I. 73, Ex. B at 2).

Relying on the Third Circuit's decisions in *Bel-Ray* and *Wyrough,* Plaintiffs contend**\*92** that Defendant Kopper waived his right to contest personal jurisdiction as a result of this letter, because he requested relief from the Court. The Court is not persuaded by Plaintiffs' argument and finds *Bel-Ray* and *Wyrough* to be distinguishable from this case. In *Bel-Ray,* the defendants timely raised their personal jurisdiction defense in their answer to the complaint, as required by the Federal Rules. However, the defendants filed a motion for summary judgment on their counterclaims before filing their affidavits in support of their personal jurisidiction defense. Thus, the defendants actively requested relief from the Court and litigated their counterclaims through full briefing prior to securing a determination on their personal jurisdiction defense. Similarly, in *Wyrough,* the defendant participated in preliminary injunction proceedings, cross-examined witnesses and presented evidence before it even raised its personal jurisdiction defense.

In this case, however, Defendant Kopper did not participate in briefing on any substantive issues in the case and merely voiced his opinion with respect to a procedural matter that Plaintiffs were pressing. Unlike the defendants in *Bel-Ray* and *Wyrough,* Defendant Kopper did not actively litigate the consolidation issue before the Court by filing motions or briefing. Indeed, Defendant Kopper did not even request his own relief, but rather, merely expressed

the preference that the procedural relief sought by the other defendants be granted.

Further, because the consolidation motion was purely procedural, the Court did not touch on the merits or quasi-merits of the case before addressing the personal jurisdiction issue such that Defendant Kopper could be said to have submitted to the Court's jurisdiction. Moreover, Plaintiffs do not offer, and the Court has been unable to locate, any case law suggesting that this minimal amount of activity by a defendant in the context of a pressing procedural matter should be sufficient to constitute a waiver of a timely filed and actively pursued defense of lack of personal jurisdiction. *See e.g. Marquest,* 496 F.Supp. at 1245 (concluding that personal jurisdiction defense was waived where defendant waited six to ten weeks after complaint was served to object to jurisdiction and only objected after they had submitted to an order of the court by the parties' stipulation which restrained them from acting as requested by plaintiff and provided them with injunctive relief against other plaintiffs); *see also Drayton Enterprises, L.L.C. v. Dunker,* 142 F.Supp.2d 1177 (D.N.D.2001) (holding that defendant did not waive jurisdiction defense where he filed motion to dismiss for lack of personal jurisdiction after filing opposition briefing to preliminary injunction motion but before commencement of hearing, and defendant preserved defense in his papers); *Mallard v. Mallard,* 1992 WL 47998 (N.D.Ill.1992) (holding that no waiver resulted where defendant agreed to stipulated permanent injunction, but did not appear before the court to litigate the matter and only entered a special appearance to object to jurisdiction). Accordingly, in the circumstances of this case, the Court concludes that Defendant Kopper did not submit to the jurisdiction of this Court as a result of his June 7 letter, and therefore, the Court will proceed to the question of whether any additional grounds exist for exercising jurisdiction over Defendant Kopper.

B. *Whether the Court Has Jurisdiction Over Defendant Kopper Pursuant To The Federal Securities*

Page 8

*Laws*

[4] The Court's jurisdiction over a federal securities action is governed by Section 27 of the Securities Exchange Act of **\*93** 1934 (the "Exchange Act") and Section 22 of the Securities Act of 1933 (the "Securities Act"). Where, as here, claims are brought under both Acts, courts have applied the jurisdiction provisions of the Exchange Act, because they are less restrictive. *See e.g. Hilgeman v. Nat'l Ins. Co. of Am.,* 547 F.2d 298, 301 n. 7 (5th Cir.1977) (collecting cases); *Doll v. James Martin Assocs. (Holdings) Ltd.,* 600 F.Supp. 510, 516 n. 5 (E.D.Mich.1984). Both statutes, however, provide for national service of process, and both statutes are intended to extend personal jurisdiction to the full extent permitted by the Due Process Clause of the Fifth Amendment. *SEC v. Unifund SAL,* 910 F.2d 1028, 1033 (2d Cir.1990); *FS Photo, Inc. v. PictureVision, Inc.,* 48 F.Supp.2d 442, 445 (D.Del.1999); *SEC v. The Infinity Group Co.,* 27 F.Supp.2d 559, 563 (E.D.Pa.1998).

[5][6] To satisfy the jurisdictional requirements of the Due Process Clause, two components must be established: (1) the defendant must have "minimum contacts" with the United States [FN4], and (2) the exercise of jurisdiction over the defendant must be "reasonable." *SEC v. Euro Security Fund, Coim SA,* 1999 WL 76801 (S.D.N.Y. Feb.17, 1999). Two types of jurisdiction are implicated in the minimum contacts analysis, specific jurisdiction and general jurisdiction. Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567-568 (2d Cir.1996) (quoting *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-416 & nn. 8-9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Stated another way, the defendant must have purposefully availed himself of the privilege of conducting activities within the forum such that the defendant should reasonably anticipate being haled into court as a result of his con-

duct and connection with the forum. *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452 (S.D.N.Y.2001) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

> FN4. Because jurisdiction in this case is based on a statute that provides for nationwide service of process, the relevant minimum contacts inquiry focuses on the defendant's contacts with the United States as a whole, rather than with a particular state. *The Infinity Group Company,* 27 F.Supp.2d at 563 (citations omitted).

[7] In contrast, for general jurisdiction to exist, the litigation need not arise out of or be related to the defendant's contacts with the forum. Rather, general jurisdiction may exist if the defendant's general business contacts with the United States have been "continuous and systematic," even though they are unrelated to the lawsuit. *SEC v. Gonzalez de Castilla,* 2001 WL 940560, \*3 n. 3 (S.D.N.Y. Aug.20, 2001) (citing *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868).

[8] Once it has been established that a defendant had sufficient minimum contacts with the forum, the Court must then determine whether it would be reasonable for the defendant to litigate in the forum. In considering the reasonableness of exercising jurisdiction over a defendant, courts weigh the following factors:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

**\*94** *Metropolitan Life Ins.,* 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

[9] On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. Metropolitan Life Ins., 84 F.3d at 566. Where, as here, there has been no discovery, a motion to dismiss may be denied where the plaintiff has averred legally sufficient allegations of jurisdiction. Id. If the court is not satisfied by a plaintiff's jurisdictional allegations, the court may allow the plaintiff to take jurisdictional discovery, if the plaintiff has made a colorable or prima facie showing of personal jurisdiction. See e.g. Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir.2000), cert. denied,532 U.S. 943, 121 S.Ct. 1406, 149 L.Ed.2d 348 (2001); In re Baan Co. Sec. Litig., 81 F.Supp.2d 75, 76-77 (D.D.C.2000); Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475-476 (D.Del.1995).

1. Whether Defendant Kopper has sufficient minimum contacts with the United States to satisfy due process

In response to Defendant Kopper's motion to dismiss under Rule 12(b)(2), Plaintiffs contend that Defendant Kopper's contacts with the United States are sufficient to establish either specific jurisdiction or general jurisdiction over Defendant Kopper. The Court will consider each of these jurisdictional grounds in turn.

a. Whether specific jurisdiction exists over Defendant Kopper

With regard to specific jurisdiction, Plaintiffs contend that Defendant Kopper is subject to the Court's jurisdiction because he purposefully directed his activities at residents of the United States and the injuries alleged in this litigation arise out of or are related to those activities. Specifically, Plaintiffs allege that Defendant Kopper played an instrumental role in negotiating and structuring the merger at issue. Plaintiffs also allege that Defendant Kopper

was involved in all of the material decisions regarding the merger, advised Mr. Schrempp how to structure the merger and conduct the negotiations, met with Mr. Schrempp and Mr. Eaton in Germany to review the terms of the merger before it was publicly announced, and participated in the preparation or dissemination of the false representations at issue in this litigation. (Tracinda Cmplt. at ¶¶ 16, 46, 49, 61, 69; Glickenhaus Cmplt. at ¶¶ 16, 50-53; 66-68; Class Cmplt. at ¶¶ 18, 138, 141, 153, 156, 169, 172). Plaintiffs also allege by affidavit that Defendant Kopper traveled to the United States for at least four meetings of the Supervisory Board or one of its committees subsequent to the merger.

[10] After reviewing Plaintiffs' allegations as they relate to Defendant Kopper, the Court concludes that Plaintiffs' allegations raise a colorable showing of personal jurisdiction such that Plaintiffs should be permitted to conduct limited discovery on the question of personal jurisdiction. Defendant Kopper contends that Plaintiffs' allegations are insufficient, because he has not been alleged to have conducted any business or performed any acts in the United States related to the merger. However, whether Defendant Kopper performed acts in the United States is not the dispositive inquiry for purposes of establishing personal jurisdiction. A defendant may be subject to the Court's jurisdiction if he caused an effect in the forum by an act done elsewhere. FDIC v. Milken, 781 F.Supp. 226, 229 (S.D.N.Y.1991) (citing **95 Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1340 (2d Cir.1972)). As explained by the Court of Appeals for the Second Circuit, the exercise of jurisdiction over an individual may be appropriate where the individual has done an act outside of the forum that causes consequences in the forum, so long as the exercise of jurisdiction is not unreasonable. Id. In the international context, the Second Circuit has cautioned against applying this doctrine expansively. To this effect, the Second Circuit has stated that "the person sought to be charged under this ground for jurisdiction must know, or have good reason to know that his conduct will have effects in the state seek-

197 F.Supp.2d 86
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

ing to assert jurisdiction over him." *Id.*

[11] In this case, Defendant Kopper has been alleged to have been involved in the preparation and dissemination of false and misleading representations directed at shareholders in the United States in order to secure their approval for the merger. To this effect, Plaintiffs have alleged that Defendant Kopper was involved in the preparation and filing of a false and misleading registration with the SEC, the approval of other false and misleading documents disseminated to the shareholders like the Proxy/Prospectus, and the approval of the terms and structure of the merger which is alleged to have had an injurious impact on Plaintiffs. In the Court's view, these circumstances are comparable to the circumstances in which courts have exercised jurisdiction over defendants for their involvement in the preparation and dissemination of documents that they knew or should have known would be relied upon by investors in the United States, and thus, are sufficient to raise a colorable showing of personal jurisdiction. *See e.g. Itoba v. LEP Group PLC,* 930 F.Supp. 36 (D.Conn.1996); *Derensis v. Coopers & Lybrand Chartered Accountants,* 930 F.Supp. 1003, 1014 (D.N.J.1996).

Defendant Kopper seeks to distinguish the cases relied upon by Plaintiffs on the grounds that they either involved individuals who actually signed and/or prepared the statements at issue or involved more substantial factual allegations establishing the individuals' involvement than those alleged by Plaintiffs. After reviewing these cases, the Court is not persuaded by Defendant Kopper's attempt to distinguish them. For example, Defendant Kopper contend that the defendant in *Landry v. Price Waterhouse Chartered Accountants,* 715 F.Supp. 98, 102 (S.D.N.Y.1989) actually signed the amended financial statements at issue making the exercise of jurisdiction over him appropriate. Defendant Kopper's argument misreads the basis for the court's exercise of jurisdiction in *Landry.* In *Landry,* the defendant was alleged to have signed the amended financial statements at issue. However, the court

concluded that those documents were not relevant to the jurisdiction question, because they were not released until after the trading of the stock on the NASDAQ exchange was suspended. *Id.* (stating that "the amended financial statements should be removed from the scope of the jurisdictional inquiry"). Thus, the court in *Landry* based its jurisdictional analysis on the plaintiffs' allegations that the defendant was a "behind the scenes player" in the transaction and management of the company alleged to have acted fraudulently.

Similarly, in *Itoba,* the court concluded that it was appropriate to exercise jurisdiction over a defendant who approved the SEC filing giving rise to the plaintiffs' claims, even though that defendant was not actually present at the meeting in which those documents were approved. 930 F.Supp. at 41. Likewise, in *Derensis,* the court concluded that it was appropriate **\*96** to exercise jurisdiction over the defendants even though they were residents of Canada and conducted their related business activities in Canada, because the plaintiffs alleged that they were involved in approving and disseminating the financial statements at issue with the knowledge that they would affect the price of the stock on the United States' markets. 930 F.Supp. at 1014. Because the Court finds Plaintiffs' allegations in this case to be substantially similar to the allegations made by the plaintiffs in *Landry, Derensis* and *Itoba,* the Court concludes that it is appropriate to rely upon these cases to support the exercise of jurisdiction in this case.

[12] Further, Plaintiffs have alleged by affidavit that Defendant Kopper was present in the United States at several post-merger meetings of the DaimlerChrysler Supervisory Board and its committees. Defendant Kopper contends that these contacts are insufficient to confer jurisdiction, because they occurred subsequent to the merger. The Court agrees that post-transaction contacts may not be considered in determining whether specific jurisdiction exists. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

197 F.Supp.2d 86
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

Cir.1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *Surgical Laser Tech., Inc. v. Nev. City Hosp.,* 1991 WL 224609, *3 (E.D.Pa. Oct.23, 1991), aff'd, 970 F.2d 900 (3d Cir.1992) (refusing to consider post-transaction contacts between plaintiff and defendant in determining whether specific jurisdiction existed). However, in this case, Plaintiffs allegations of securities violations and fraud do not end with the culmination of the merger transaction. Rather, Plaintiffs contend that the scheme continued following the merger with the firing of certain key Chrysler executives. Accordingly, the Court cannot conclude at this juncture that these contacts are irrelevant for purposes of establishing a colorable showing of personal jurisdiction over Defendant Kopper.

Although the Court has concluded that Plaintiffs' allegations are sufficient to establish a colorable or prima facie showing of personal jurisdiction over Defendant Kopper, the Court agrees with Defendant Kopper that both the allegations of the Complaints and the post-merger allegations in Plaintiffs' affidavit are not sufficiently particularized so as to clearly establish personal jurisdiction. For example, Plaintiffs have not adequately specified Defendant Kopper's alleged role in structuring and approving the merger or in preparing and disseminating the allegedly false and misleading documents at issue. Similarly, Plaintiffs have not connected Defendant Kopper's post-merger visits to the events giving rise to the litigation. Thus, while the Court has concluded that Plaintiffs' allegations are sufficient to raise a colorable showing of personal jurisdiction, the Court finds the allegations insufficient in and of themselves to establish specific jurisdiction without further factual development.

"When the plaintiff does not set forth in its complaint adequate grounds upon which the court may assert personal jurisdiction over the defendants, courts commonly permit the plaintiff to conduct limited discovery to determine whether the defendants have adequate contacts with the forum." *Sand-*

*vik AB v. Advent Internat'l Corp.,* 83 F.Supp.2d 442, 446 (D.Del.1999). Indeed, the Third Circuit, as well as other circuit courts have not hesitated to reverse a dismissal for lack of personal jurisdiction where the plaintiff asserts non-frivolous claims and the court has declined to grant limited discovery. *Id.; Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir.1994); **\*97***Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982). Thus, the Court will permit Tracinda and Glickenhaus to conduct limited discovery for a period of ninety (90) days on the narrow issue of personal jurisdiction. However, the Court will not permit Class Plaintiffs to engage in this discovery for the reasons discussed in Section II of this Opinion. Accordingly, the Court will deny with leave to renew Defendant Kopper's Motion To Dismiss the Glickenhaus and Tracinda Complaints insofar as it is based upon the lack of personal jurisdiction.

b. Whether general jurisdiction exists over Defendant Kopper

In response to Defendant Kopper's Motion To Dismiss, Plaintiffs also contend that Defendant Kopper has had continuous and systematic general business contacts with the United States sufficient for the Court to exercise general jurisdiction over him. In addition to his activities in the United States connected to Daimler-Benz and DaimlerChrysler discussed in the context of specific jurisdiction, Plaintiffs contend that Defendant Kopper has had additional extensive contacts with the United States as a result of his service to the Xerox Corporation ("Xerox"). According to Plaintiffs' affidavit, Defendant Kopper has served as a director of Xerox since 1991. Defendant Kopper is also a member of Xerox's Audit and Nominating Committees. Plaintiffs further contend that Defendant Kopper owns Xerox stock, was paid by Xerox for services he rendered, and signed Xerox annual reports and SEC filings. Plaintiffs also point out that Defendant Kopper has frequently traveled to the United States for speaking engagements, interviews and presentations.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

197 F.Supp.2d 86
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
(Cite as: 197 F.Supp.2d 86)

In response to Plaintiffs' argument, Defendant Kopper contends that general jurisdiction does not apply to individuals. Rather, Defendant Kopper contends that general jurisdiction may only be used to obtain jurisdiction over corporations. In the alternative, Defendant Kopper contends that his contacts with Xerox and his trips to the United States are insufficient to constitute the continuous and substantial contacts necessary for the exercise of general jurisdiction.

Whether general jurisdiction applies to individuals is unclear. Indeed, the United States Supreme Court, and other courts, have expressed reservations as to whether general jurisdiction may extend to non-resident individuals. *Burnham v. Superior Court of California,* 495 U.S. 604, 610 n. 1, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (declining to address the issue in detail, but recognizing that "[i]t may be that [general jurisdiction] applies only to corporations ..."); *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.,* 896 F.Supp. 1190, 1193 n. 4 (M.D.Fla.1995) ("Nor is it clear that general jurisdiction can ever be held over a private, non-resident defendant."). Relying on *Dollar Savings Bank v. First Securities Bank of Utah, N.A.,* 746 F.2d 208, 214 (3d Cir.1984), Plaintiffs contend that the Third Circuit has concluded that "the status of the parties should not be determinative" and different jurisdictional rules should not exist for individuals and corporations. However, the *Dollar Savings* court was not squarely presented with the question of whether general jurisdiction applies to individuals, and the defendant in *Dollar Savings* was a corporation. Indeed, the Court has been hard pressed to locate any cases extending general jurisdiction to non-resident, foreign individuals. Further, the cases cited by Plaintiffs either involve a corporate defendant, *see Kenerson v. Stevenson,* 604 F.Supp. 792, 795 (D.Me.1985); *Metropolitan Life,* 84 F.3d at 564; a domestic individual, *see Brautigam v. Priest,* 2000 WL 291534 (D.Del. Mar. 2, 2000); or the exercise of specific jurisdiction, *see* **\*98***Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992); *Euro Sec. Fund,* 1999 WL 76801 at \*2.

On the other hand, neither Plaintiffs nor Defendant Kopper have offered sufficient analysis on the question of whether general jurisdiction applies to individuals.

[13] Given the uncertainty in this area, the Court is reluctant to base its jurisdiction over Defendant Kopper solely on the grounds of general jurisdiction. However, even if the Court were to conclude that general jurisdiction could apply to Defendant Kopper, the Court would conclude, in the circumstances of this case, that Defendant Kopper's general business contacts with the United States are insufficient to satisfy the requirements of general jurisdiction.

The continuous and systematic business contacts required for the exercise of general jurisdiction are difficult to establish. *Surgical Laser Technologies v. C.R. Bard, Inc.,* 921 F.Supp. 281, 284 (E.D.Pa.1996). Indeed, the plaintiff must show "significantly more than minimum contacts to establish general jurisdiction." *Provident National Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). Further, in this case, there is the added dimension of foreign policy concerns which requires the Court to exercise more caution in analyzing the contacts at issue. *See e.g. Asahi,* 480 U.S. at 114-115, 107 S.Ct. 1026 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

After reviewing the record as it relates to the exercise of general jurisdiction, the Court concludes that the types of contacts offered by Plaintiffs are insufficient to satisfy general jurisdiction. For example, Plaintiffs direct the Court to Defendant Kopper's ownership of Xerox stock. However, stock ownership has not been found to be sufficient to support the exercise of personal jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ("[I]t strains reason ... to suggest that anyone buying securities in a corporation formed in Delaware 'impliedly consents' to subject himself to Delaware's ... jurisdiction on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

any cause of action."). The cases offered by Plaintiffs to support their argument that stock ownership is the equivalent of property in the United States are not cases involving personal jurisdiction. Further, these cases were decided prior to the Supreme Court's decision in *Shaffer.*

Plaintiffs also direct the Court to Defendant Kopper's role as a director of Xerox and his trips and speaking engagements in the United States to support the exercise of general jurisdiction. However, many of Defendant Kopper's trips and speaking engagements in the United States have been made in connection with his appointment as Federal Commissioner for Foreign Direct Investments in Germany. In this capacity, Defendant Kopper is called upon to have business contacts with the United States on behalf of Germany. Given the governmental and foreign relations implications of Defendant Kopper's contacts with the United States, the Court cannot conclude that these contacts are sufficient to justify the exercise of general jurisdiction over Defendant Kopper.

Having concluded that Defendants' stock ownership and governmental contacts are an insufficient basis upon which to justify jurisdiction over Defendant Kopper, the Court is left with Defendant Kopper's service as a director of Xerox and his post-merger contacts with the United States related to Daimler-Chrysler. In the Court's view, these contacts are insufficient to meet the markedly higher burden of establishing systematic and continuous contacts with the United States sufficient **\*99** to warrant the exercise of general jurisdiction. Accordingly, the Court concludes that even if general jurisdiction were to apply to a non-resident individual, Defendant Kopper's contacts with the United States are not the quantity or type of contacts sufficient to justify the exercise of general jurisdiction.

2. Whether the exercise of jurisdiction over Defendant Kopper comports with the reasonableness requirements of due process

Having concluded that Plaintiffs have been unable to satisfy the contacts component of general jurisdiction, the Court need not discuss the second prong of whether the exercise of jurisdiction over Defendant Kopper would be reasonable. As for the exercise of specific jurisdiction over Defendant Kopper, the Court will defer its determination of reasonableness until a more complete record is developed through the limited discovery on specific jurisdiction authorized by the Court in this Opinion.

C. Whether Tracinda's Control Person Allegations Are Sufficient To Independently Support The Exercise Of Personal Jurisdiction Over Defendant Kopper

[14] In addition to its previous arguments concerning specific and general jurisdiction, Tracinda advances a third basis for jurisdiction. Tracinda contends that its control person allegations provide an additional independent basis for the exercise of jurisdiction over Defendant Kopper.

In response, Defendant Kopper contends that Tracinda's argument improperly merges two different inquiries, jurisdiction and liability. Because these concepts are governed by different sections of the securities statutes and jurisdiction must be adjudicated before liability, Defendant Kopper contends that Tracinda's control person claims cannot provide an independent basis for the exercise of personal jurisdiction.

The Court agrees with Defendant Kopper. Personal jurisdiction is an independent threshold consideration to the question of liability. The Court cannot adjudicate the question of liability without first establishing whether the Court has jurisdiction over the parties. Tracinda's argument, along with the cases it has cited in support of that argument, has been analyzed fully by the District Court for the District of Columbia in *In re Baan,* 81 F.Supp.2d at 79-82. Rejecting the plaintiff's argument that jurisdiction can be established by showing that the defendants controlled the corporation which engaged

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

197 F.Supp.2d 86                                                                                                 Page 14
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

in the acts alleged to have violated the statute, the *Baan* court stated

[T]hat theory goes too far. Under it, jurisdiction could be predicated on an act done anywhere in the world by a person who did not and could not have known that his act would affect the value of a security owned by someone in the United States.

81 F. Supp.2d at 79.

The *Baan* court went on to distinguish those cases cited by Tracinda, finding that in nearly each case jurisdiction was based on more than a showing that the defendant controlled the entity alleged to have violated the securities laws. *Id.* at 79-82. The Court agrees with the *Baan* court's analysis and declines to sidestep the time-honored and well-established due process analysis required for the exercise of personal jurisdiction. Accordingly, the Court declines to exercise jurisdiction over Defendant Kopper based solely on Tracinda's controlling person claims.

**\*100 II. Whether Plaintiffs' Control Person Liability Claims Against Defendant Kopper Should Be Dismissed**

In this case, Tracinda, Glickenhaus and Class Plaintiffs allege controlling person claims against Defendant Kopper pursuant to Section 20 of the Exchange Act and Section 15 of the Securities Act. By his Motion To Dismiss, Defendant Kopper contends that (1) Plaintiffs have not alleged primary violations of the Exchange Act and the Securities Act; (2) Plaintiffs have not adequately alleged that Defendant Kopper was a control person; (3) under German law Defendant Kopper did not have the ability to control Daimler-Benz, DaimlerChrysler or Mr. Schrempp; (4) Plaintiffs have not adequately alleged that Defendant Kopper was a culpable participant in the alleged primary securities law violations; (5) Defendant Kopper cannot be liable for oral statements attributable to Mr. Schrempp; (6) Plaintiffs' control person claims should be dis-

missed as aiding and abetting conspiracy claims; and (7) Plaintiffs fail to set forth the basis for their allegations pled on information and belief.

[15] The elements of controlling persons claims under Section 20 of the Exchange Act and Section 15 of the Securities Act are identical. *See In re Mobile-Media Sec. Litig.,* 28 F.Supp.2d 901, 940 (D.N.J.1998). To state a claim for control person liability, the plaintiff must allege (1) a primary violation of the federal securities laws by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. *Reliance,* 91 F.Supp.2d at 731 (citing *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998)).

Having concluded that limited discovery is appropriate on the question of personal jurisdiction, the Court declines, at this juncture, to address Defendant Kopper's remaining arguments, with the exception of his argument that Plaintiffs have failed to sufficiently allege primary violations of the securities laws so as to support a controlling person claim. The Court has previously addressed this issue in the context of its decision in *In re DaimlerChrysler I.* For purposes of the instant Motion, Defendant Kopper joins in and adopts the arguments raised by his co-defendants as they relate to the primary violations alleged by Plaintiffs. Accordingly, the Court is compelled to comment on Defendant Kopper's arguments to the extent that they address issues previously settled by the Court.

In its Opinion on the DaimlerChrysler Defendants' Motion To Dismiss, the Court concluded that Tracinda and Glickenhaus adequately alleged primary violations of the securities laws to support controlling person claims against Defendants Schrempp and Gentz. Accordingly, for the reason discussed in *In re DaimlerChrysler I,* the Court will deny Defendant Kopper's Motion To Dismiss the Tracinda and Glickenhaus Complaints based on a failure to adequately allege a primary violation of the securities laws.

197 F.Supp.2d 86
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777
**(Cite as: 197 F.Supp.2d 86)**

Page 15

With respect to Class Plaintiffs, the Court concluded in its previous Opinion that Class Plaintiffs' Amended Class Complaint suffered from certain deficiencies. Specifically, the Court concluded that Class Plaintiffs could not state a claim based on their allegations concerning the December 1999 press release, the 1999 Form 20-F, and channel stuffing. In addition, the Court concluded that the Class Plaintiffs' Amended Class Complaint was deficient because it failed to meet the requirements of the PSLRA for pleading allegations based on information and belief.**\*101** Because the Court has concluded that Class Plaintiffs have failed to adequately allege primary violations of the securities laws, the Court will grant Defendant Kopper's Motion To Dismiss the Amended Class Complaint for failure to adequately allege primary violations of the securities laws. In light of the Court's decision to dismiss the Amended Class Complaint, the Court declines to permit Class Plaintiffs to engage in the jurisdictional discovery contemplated in Part I of this Opinion.

**III. Whether Plaintiff Tracinda's Conspiracy To Defraud Claim Against Defendant Kopper Should Be Dismissed**

By his Motion, Defendant Kopper also contends that Tracinda's claim for civil conspiracy should be dismissed for failure to state a claim. As with Defendant Kopper's previous argument, the Court has addressed the deficiencies in Tracinda's civil conspiracy claim in its previous decision in *In re Daimler Chrysler I.* Specifically, the Court concluded that Tracinda failed to adequately plead the required elements of a claim for civil conspiracy. Because these deficiencies apply with equal force to Tracinda's civil conspiracy claim against Defendant Kopper, the Court will grant Defendant Kopper's Motion To Dismiss Tracinda's claim for civil conspiracy.

**CONCLUSION**

For the reasons discussed, the Court will (1) grant Defendant Kopper's Motion as it applies to the Amended Class Complaint; (2) deny Defendant Kopper's Motion with leave to renew as it applies to the Glickenhaus Complaint; and (3) grant Defendant Kopper's Motion with respect to the civil conspiracy claim alleged in the Tracinda Complaint, and deny Defendant Kopper's Motion with leave to renew as it applies to the remaining claims of the Tracinda Complaint.

An appropriate Order will be entered.

***ORDER***

At Wilmington, this 22nd day of March 2002, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED THAT:

1. Defendant Kopper's Motion To Dismiss (D.I.52) the Amended Class Complaint is GRANTED.

2. Defendant Kopper's Motion To Dismiss (D.I.52) the Glickenhaus Complaint is DENIED with leave to renew.

3. Defendant Kopper's Motion To Dismiss (D.I.52) the civil conspiracy claim in the Tracinda Complaint is GRANTED, and Defendant Kopper's Motion To Dismiss the remaining claims of the Tracinda Complaint is DENIED with leave to renew.

D.Del.,2002.
Tracinda Corp. v. Daimlerchrysler AG
197 F.Supp.2d 86, Fed. Sec. L. Rep. P 91,777

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 04-1338-JJF-MPT |
| APPLE COMPUTER, INC; ALL AROUND CO., LTD.; ARGUS A/K/A HARTFORD COMPUTER GROUP, INC.; BOE-HYDIS TECHNOLOGY CO., LTD.; CITIZEN WATCH CO., LTD.; CITIZEN DISPLAYS CO., LTD.; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK CO.; FUJIFILM CORP.; FUJIFILM U.S.A., INC.; FUJITSU LTD.; FUJITSU AMERICA INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; INNOLUX DISPLAY CORP.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO., MATSUSHITA ELECTRICAL CORP. OF AMERICA; NAVMAN NZ LTD.; NAVMAN U.S.A. INC.; OLYMPUS CORP.; OLYMPUS AMERICA, INC.; PENTAX CORP.; PENTAX U.S.A., INC., PICVUE ELECTRONICS LTD.; SAMSUNG SDI CO., LTD.; SAMSUNG SDI AMERICA, INC.; SONY CORP.; SONY CORP. OF AMERICA; SONY ERICSSON MOBILE COMMUNICATIONS AB; SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.; TOSHIBA CORP.; and TOSHIBA AMERICA, INC.; | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants | ) ) |

## INNOLUX DISPLAY CORPORATION'S CLAIM CONSTRUCTION BRIEF

Matt Neiderman
DUANE MORRIS LLP
1100 North Market Street
Wilmington, DE 19801-1246
(302)657-4900

Donald R. McPhail
DUANE MORRIS LLP
505 9th Street, NW
Washington, DC 20006
(202) 776-7800
*Attorneys for Defendant InnoLux Display Corporation*

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     OVERVIEW OF THE TECHNOLOGY.............................................................2

        A.      LCD Technology.....................................................................................2

        B.      The Patent-in-Suit....................................................................................3

III.    PRINCIPLES OF CLAIM CONSTRUCTION....................................................4

IV.     CONSTRUCTION OF THE DISPUTED CLAIM TERMS.................................6

        A.      The Intrinsic Evidence.............................................................................7

        B.      Honeywell's Proposed Construction Renders Claim 3 Ambiguous
                And is Not Supported by the Intrinsic Evidence.....................................11

        C       Extrinsic Evidence..................................................................................13

V.      CONCLUSION..................................................................................................14

ii

## TABLE OF AUTHORITIES

**Cases:**

*Bell Atlantic Network Servs., v. Covad Communications Group, Inc.,*
    262 F.3d 1258 (Fed. Cir. 2001).......................................................................4, 5

*Cross Medical Prods., Inc. v. Medtronic Sofamore Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005)...........................................................................6

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,*
    460 F.3d 1349 (Fed. Cir. 2006)..........................................................................11

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
    192 F.3d 973 (Fed. Cir. 1999), *cert. denied,* 529 U.S. 1066 (2000)....................4

*Gentry Gallery, Inc. v. Berkline Corp.,*
    134 F.3d 1473 (Fed. Cir. 1998)............................................................................6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
    381 F.3d 1111 (Fed. Cir. 2004)......................................................................12, 13

*Intellicall, Inc. v. Phonometrics, Inc.,*
    952 F.2d 1384 (Fed. Cir. 1992)............................................................................4

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)........................4, 5, 6

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996).............................................................................................4

*MBO Labs., Inc. v. Becton, Dickinson & Co.,*
    474 F.3d 1323 (Fed. Cir. 2007)............................................................................4

*Medrad, Inc. v. MRI Devices Corp.,*
    401 F.3d 1313 (Fed. Cir. 2005)............................................................................5

*Microsoft Corp. v. Multi-Tech Sys., Inc.,*
    357 F.3d 1340 (Fed. Cir. 2004)............................................................................5

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n,*
    75 F.3d 1545 (Fed. Cir. 1996)...........................................................................11

*MultiForm Desiccants, Inc. v. Medzam, Ltd.,*
    133 F.3d 1473 (Fed. Cir. 1998).......................................................................5, 6

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................4, 5, 6, 12

*Pickholz v. Rainbow Techs., Inc.,*
   284 F.3d 1365 (Fed. Cir. 2002)...........................................................................................................13

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n,*
   988 F.2d 1165 (Fed. Cir. 1993)............................................................................................................5

*United States v. Adams,*
   383 U.S. 39 (1966).................................................................................................................................5

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1371 (Fed. Cir. 1996)...........................................................................................................4, 5

**Other Authorities:**

*Cambridge Dictionary of American English* (2nd ed. 2007) ...............................................................13

*The American Heritage Dictionary of the English Language* (4th ed. 2006) ......................................14

*Webster's Revised Unabridged Dictionary* (1998) ...............................................................................14

*Webster's New World Dictionary* (3rd College Ed. 1988) ...................................................................14

*Webster's Ninth New Collegiate Dictionary* (1983) ............................................................................14

## I.    INTRODUCTION

Honeywell International, Inc. and Honeywell Intellectual Properties Inc. (collectively "Honeywell") assert that domestic and foreign companies, including InnoLux Display Corporation ("InnoLux"), have infringed and continue to infringe United States Patent No. 5,280,371 ("the '371 Patent"). InnoLux had filed a motion (D.I. 536) with this Court seeking to dismiss Honeywell's complaint against InnoLux for lack of personal jurisdiction. On April 22, 2008, the Court issued an order (D.I. 999) denying InnoLux's motion to dismiss with leave to renew.

Pursuant to the Court's amended Scheduling Order No. 2 (D.I. 937), Honeywell and certain other defendants (*viz.* Optrex America, Inc.; FUJIFILM Corporation; FUJIFILM U.S.A. Inc.; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Citizen Watch Co. Ltd.; and Citizen Displays Co. Ltd.; collectively referred to by themselves and Honeywell as "the Manufacturer Defendants"[1]) submitted a Joint Claim Construction Chart (D.I. 991) to this Court on March 24, 2008, setting forth various claim terms from the '371 patent that require construction.

InnoLux respectfully maintains that this Court cannot properly exercise personal jurisdiction over InnoLux for at least the reasons set forth in its motion to dismiss (D.I. 536) and its supporting brief (D.I. 538) and reply (D.I. 598). Nevertheless, InnoLux understands that it is subject to this Court's orders, including amended Scheduling Order No. 2 (D.I. 937). Accordingly, solely to preserve its rights, InnoLux respectfully submits this brief in support of the Manufacturer Defendants' proposed construction of the disputed term "wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to

---

[1]  Even though InnoLux is a manufacturer of LCD modules, InnoLux will also use the designation "the Manufacturer Defendants" to collectively refer to defendants Optrex America, Inc.; FUJIFILM Corporation; FUJIFILM U.S.A. Inc.; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Citizen Watch Co. Ltd. and Citizen Displays Co. Ltd. so as to prevent any unnecessary confusion.

provide a slight misalignment between said lenslets and said liquid crystal panel" as used in claim 3 of the '371 Patent.

## II.    OVERVIEW OF THE TECHNOLOGY

### A.    LCD Technology

A liquid crystal display (LCD) device is a thin, flat display device fundamentally composed of an array of pixels in front of a light source.

Each pixel of an LCD typically consists of a liquid crystal material layer between two transparent electrodes and two polarizing filters. The polarizing filters are usually arranged so that the axes of transmission are perpendicular to one other.

This perpendicular arrangement should preclude light from passing through these filters. Because the liquid crystal material is birefringent, however, light passing through one polarizing filter is rotated by the liquid crystal material, which thereby permits that light to pass through the second polarizing filter. The magnitude of rotation by the liquid crystal material depends upon the structure and orientation of the liquid crystal molecules.

When manufactured, the surface of the electrodes that are in contact with the liquid crystal material layer are treated so as to align substantially all of the liquid crystal molecules in a particular direction. In the absence of an electric field, the orientation of the liquid crystal molecules is determined by this alignment at the electrode surfaces.

Applying a voltage across the electrodes changes the orientation of the liquid crystal molecules. This change in orientation reduces the rotation of the polarization of the incident light by the liquid crystal material, and so, in the case of monochrome pixels, the LCD device appears gray.

2

If the applied voltage is large enough, the orientation of the liquid crystal molecules in the center of the layer is so changed that the polarization of the incident light is not rotated as it passes through the liquid crystal layer. Consequently, this light will be mainly polarized perpendicular to the second polarizing filter, and thus be blocked by that filter. Monochrome pixel(s) will then appear black.

Thus, by varying the voltage applied, varying amounts of light are allowed through the liquid crystal material and different levels of gray can be displayed.

### B.    The Patent-in-Suit

The '371 Patent is entitled "Directional Diffuser for A Liquid Crystal Display" and was issued on January 18, 1994 to Richard McCartney, Jr. *et al.* The specification of the '371 Patent describes the purported invention as generally relating to "flat panel liquid crystal displays and, more particularly, to a liquid crystal display (LCD) having a directional diffuser to provide a tailored variation of luminance with view angle." *See* the '371 Patent, at column 1, lines 6-10.

The only claim of the '371 Patent at issue in this case is claim 3. The language of asserted claim 3 reads:

> 3.    A display apparatus comprising:
> a light source;
> a liquid crystal panel mounted adjacent to said light source for receiving light from    said light source; and
> first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

*See* the '371 patent at column 6, lines 27-42.

## III.   PRINCIPLES OF CLAIM CONSTRUCTION

The construction of patent claims is a matter of law reserved exclusively for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 976 (Fed. Cir. 1999), *cert. denied*, 529 U.S. 1066 (2000).  In construing patent claims, the Court "should seek" the meaning of the claims from the public record (*i.e.* the "intrinsic evidence") – the claims, the specification, and the prosecution history – without reference to ex post facto subjective impressions or opinions of the inventor or prosecution attorney. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 987 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).  Indeed, the U.S. Court of Appeals for the Federal Circuit has recently reiterated the importance of the intrinsic evidence when construing a disputed claim term:

> The most relevant source is the patent's specification, which "is the single best guide to the meaning of a disputed term."  Next in importance is the prosecution history, which is also part of the "intrinsic evidence" that directly reflects how the patentee has characterized the invention. Extrinsic evidence – testimony, dictionaries, learned treatises, or other material not part of the public record associated with the patent-may be helpful but is "less significant than the intrinsic record in determining the legally operative meaning of claim language." The words of the patent claims have the meaning and scope with which they are used in the specification and the prosecution history.

*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007) (internal citations omitted).

Proper construction of claim terms therefore focuses first on the words of the claims themselves. *Phillips v. AWH Corp.* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1371, 1583 (Fed. Cir. 1996) (the starting point for any claim construction analysis is the words of the claims themselves); *Bell Atlantic Network Servs., v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001) (the Court "look[s] first to the claim language itself to define the scope of the patented invention").  Claim terms must be interpreted in a way that gives meaning to each and every word. *See, e.g., Phillips*, 415 F.3d at 1314 (explaining that

"steel baffles" must have a different meaning that "baffles"); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (rejecting a construction that would "render the disputed claim language mere surplusage" and therefore "read an express limitation out of the claims").

Upon reviewing the words of the claims themselves, the Court attempts to give each claim term its ordinary and customary meaning as it would have been understood by a person of ordinary skill in the relevant art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *see also Bell Atlantic*, 262 F.3d at 1268 ("Generally, there is a 'heavy presumption' in favor of the ordinary meaning of claim language" as opposed to an "unconventional meaning."). The person of ordinary skill, however, is not deemed to have read the claim terms in a vacuum, but rather in the context of both the specification and the prosecution history (*i.e.* the intrinsic evidence). *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1219 (Fed. Cir. 2005).

More particularly, it is "fundamental that claims are to be construed in the light of the specifications, and both are to be read with a view to ascertaining the invention." *United States v. Adams*, 383 U.S. 39, 49 (1966); *see also Markman*, 52 F.3d at 969 ("[Claims] must be read in view of the specification, of which they are a part."); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347 (Fed. Cir. 2004) (same); *Vitronics*, 90 F.3d at 1582 (the specification is highly relevant to claim construction analysis, as "it is the single best guide to the meaning of a disputed term"); *MultiForm Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) (the "best source for understanding a technical term is the specification from which it arose").

The specification is such a critical source in determining the meaning of disputed claim terms it may well be dispositive as to the proper construction of a term. *See Phillips* at 1315; *see also Vitronics*, 90 F.3d at 1582 ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."). Indeed, "[w]hen the specification

explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *MultiForm Desiccants*, 133 F.3d at 1478.

Nevertheless, while the specification is important in claim construction, the Court must be mindful not to limit the claims to the preferred embodiments disclosed in the specification. *Phillips*, 415 F.3d at 1323. Conversely, however, claims "may be no broader than the supporting disclosure, and therefore . . . a narrow disclosure will limit claim breadth." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

Although the emphasis in claim construction should remain on the intrinsic evidence, the Courts have been authorized to rely on extrinsic evidence as well. *See Philips*, 415 F.3d at 1317. Such extrinsic evidence includes dictionaries, which may be considered if the Court "deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Id.*, 415 F.3d at 1318 (citing *Markman*, 52 F.3d at 980). Indeed, "[a] dictionary definition has the value of being an unbiased source accessible to the public in advance of litigation." *Id.*, 415 F.3d at 1322. Thus, "a judge who encounters a claim term while reading a patent might consult a general purpose or specialized dictionary to begin to understand the meaning of the term, before reviewing the remainder of the patent to determine how the patentee has used the term." *Id.*, 415 F.3d at 1324.

Finally, if analysis of all the evidence, both intrinsic and extrinsic, fails to resolve an ambiguity, then a court may resort to the maxim of construing a claim, if possible, to preserve its validity. *See, e.g.*, *Philips*, 415 F.3d at 1327; *Cross Medical Prods., Inc. v. Medtronic Sofamore Danek, Inc.*, 424 F.3d 1293, 1304 (Fed. Cir. 2005).

## IV.     CONSTRUCTION OF THE DISPUTED CLAIM TERMS

Honeywell and the Manufacturer Defendants have disputed the construction of a number of terms used in claim 3 of the '371 Patent. Among these disputed terms is the following limitation:

> wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal pannel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

*See* Joint Claim Construction Chart (D.I. 991), Exhibit A at pages 11-12.

The Manufacturer Defendants have proposed that this term should be construed by this Court to mean:

> One or more of the lens arrays is intentional rotated at angle of not less than 2 degrees and not more than 16 degrees in relation to the horizontal axis of the liquid crystal display.

*See id.*, Exhibit A at page 11. Because the Manufacturer Defendants' construction is fully supported by the specification, the drawings and the claims of the '371 Patent and, concomitantly, because Honeywell's proposed construction introduces unnecessary ambiguity and is not supported by the intrinsic evidence, InnoLux respectfully urges this Court to adopt the Manufacturer Defendants' construction in its entirety.

## A.     The Intrinsic Evidence

As set forth in more detail below, the Manufacturer Defendants' proposed construction is fully supported by the intrinsic evidence.

First, in the "Background of the Invention" section, the '371 Patent teaches that LCD devices can exhibit a wide variation in luminescence based on viewing angle, particularly vertical viewing angle. *See* the '371 Patent at column 1, lines 13-17. That is, the brightness of these LCD devices may show a substantial difference based on whether one is viewing it directly head on (*i.e.* normal to the surface of the LCD device) or viewing it from an angle above or below. *See id.* at column 1, lines 18-23. This is apparently an undesirable characteristic, particularly in certain applications. *See id.* at column 1, lines 23-28. The '371 Patent states that it is therefore an object of the purported invention to solve this problem by "provid[ing] a directional diffuser element for a

7

liquid crystal display to provide a tailored variation of luminance with viewing angle." *See id.* at column 1, lines 40-51.

Second, in characterizing the broadest scope of the purported invention, the specification's "Summary of the Invention" states that:

> The foregoing and other objects are achieved in the present invention wherein there is provided a liquid crystal display apparatus comprising a light source, a liquid crystal planar array of pixels for creating an image by controlling the amount of light allowed to pass through each of the pixels, and one or more directional diffuser lens arrays disposed between the light source and the liquid crystal array for providing a tailored variation of luminescence from the liquid crystal display as a function of vertical viewing angle.

*See id.* at column 1, line 62, to column 2, line 3. Significantly, this "Summary of the Invention" sets forth no other purported inventions.

Getting more specific, the "Detailed Description of a Preferred Embodiment" includes the description of four distinct arrangements of lens array(s) in the embodiments of the purported invention: (i) a single cylindrical lens array as shown in FIG. 4A and 4B (*see id.* at column 3, lines 20-36); (ii) two cylindrical lens arrays as shown in FIG. 7 (*see id.* at column 4, lines 26-45); (iii) more than two cylindrical lens arrays (*see id.* at column 4, lines 46-58); and (iv) a single triangular lens array as shown in FIG. 10 and FIG. 12 (*see id.* at column 5, lines 6-8 and 21-28). Each of these embodiments requires the long axis of the lens array to be parallel to the horizontal axis of the LCD panel, as shown, *e.g.*, in FIG. 4A and 4B and in FIG. 12, reproduced below:



Fig. 4A                    Fig. 4B

8



*Fig.12*

Indeed, in the drawings originally filed with the application, the non-rotated arrangement shown on the left in FIG. 12 is expressly labeled "Lens Array Axis Horizontal".

The "Summary of the Invention" makes it quite clear why this parallel arrangement is required – because the invention is concerned with controlling the luminance <u>as a function of vertical viewing angle</u>. This is explained in the "Detailed Description of a Preferred Embodiment" with reference to FIG. 6, which shows that the lens array is used to reflect back those light rays (**70**) that would exit the LCD at vertical viewing angles higher or lower than desired. *See id.* at column 3, line 50, to column 4, line 16. Because the purported invention of the '371 Patent is not concerned with controlling luminance as a function of horizontal viewing angle, there is no need for the lens array(s) to reflect light dispersed across the horizontal viewing angle.

Although this arrangement permits reduced luminance as a function of increased vertical viewing angle, the '371 Patent specifically notes that the parallel alignment of the lenslets on a lens array and the LCD matrix array can cause significant interference, which is visible as moiré patterns. *See id.* at column 4, lines 17-25. To solve this problem, the '371 Patent discloses an embodiment[2] in

---

[2] The only other disclosed embodiment addressing moiré reduction relates to pitch variation between two lens arrays. *See id.* at column 4, line 59 to column 5, line 5. This embodiment, however, is indisputably outside the scope of asserted claim 3 and therefore not germane to the construction of the "slight misalignment" term.

which the lens array has been rotated by a few degrees from the horizontal axis of the LCD matrix array. *See id.* at column 5, lines 16-28.

This rotation is illustrated in FIG. 12 of the '371 Patent, which is reproduced above. The rotation of the lens array "by a few degrees . . . from the horizontal axis" of the LCD matrix array apparently causes a small change in the effective spatial frequency difference between the two arrays. *See id.* at column 5, lines 23-28. By changing the effective spatial frequency difference by a small amount, the residual moiré is reduced or eliminated. *See id.*

With respect to the magnitude of this rotation, the specification of the '371 Patent states the angle of rotation of the lens array is "a few degrees (Typically 2 to 16 degrees) from the horizontal axis" of the LCD matrix array. *See id.* at column 5, lines 24-25. Similarly, the rotation of the lens array from alignment with the LCD matrix array is shown in FIG. 12 as being "~ 2° TO 16°" from the horizontal axis.

Further guidance regarding the magnitude of rotation intended by the term "slight misalignment" is shown by the inventor's use of the term "a few degrees" elsewhere in the specification of the '371 Patent. More specifically, the specification makes it clear that "a few degrees" is intended to mean "nearly parallel" in the context of the purported invention. *See id.* at column 5, lines 29-34 ( "the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or nearly parallel to within a few degrees) the axis of the lens array."). This is further support that the angle of rotation intended by the claimed "slight misalignment" must be no greater than 16 degrees, or else the horizontal axis of the lens array and the horizontal axis of the LCD matrix array would not remain "nearly parallel" (parallel being 0 degrees).

10

**B.      Honeywell's Proposed Construction Renders Claim 3 Ambiguous and is Not Supported by the Intrinsic Evidence**

Both Honeywell and the Manufacturer Defendants generally agree that the term "slight misalignment" includes a rotation of from 2 degrees to 16 degrees between the horizontal axis of a lens array and the horizontal axis of the pixel arrangement on the liquid crystal panel. Where the parties differ substantially is on the issue of whether any other rotation angles are included within a "slight misalignment". Honeywell appears to suggest by its construction that rotation angles outside of the 2 to 16 degree range are included within this "slight misalignment". Conversely, the Manufacturer Defendants are quite adamant that any rotation angle less than 2 degrees or greater than 16 degrees is outside the scope of the claimed "slight misalignment".

More specifically, the Manufacturer Defendants' proposed construction limits the term "slight misalignment" to a rotation angle "of not less than 2 degrees and not more than 16 degrees" (emphasis added) from the horizontal axis of the LCD matrix array. In contrast, Honeywell's proposed construction provides that a "slight misalignment" is "a misalignment of typically 2-16 degrees" (emphasis added) without reference to which axis is it measured against. Thus, the Manufacturer Defendants seek to limit "slight misalignment" to the specific range and the specific reference axis disclosed in the specification. Honeywell, however, seeks to keep the term at least somewhat ambiguous by characterizing the range of 2 to 16 degrees as only "typical" rather than as a clear restriction and not defining a reference axis.

With respect to the range of 2 to 16 degrees, it is generally improper to import a numerical limitation into a patent claim that contains no numerical limitation. *See, e.g., Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,* 460 F.3d 1349, 1358 (Fed. Cir. 2006); *see also Modine Mfg. Co. v. U.S. Int'l Trade Comm'n,* 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("Ordinarily a claim element that is claimed in general descriptive words, when a numerical range appears in the specification and in other claims, is not limited to the numbers in the specification or other claims."). In this case, however, failure to limit

11

the "slight misalignment" to the disclosed range of 2 to 16 degrees, as proposed by Honeywell, would vitiate the notice function of the patent claim because the public cannot fairly determine what angles of rotation are not encompassed by the disputed language.

Significantly, particularly for resolution of the issues of infringement in this case, Honeywell's proposed construction leaves open the question of what other rotation angles fall within the scope of the claim. It is axiomatic, however, that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Philips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). With Honeywell's use of "typically" to characterize the 2 to 16 degree range in its proposed construction, the relevant public cannot possibly know what is outside the scope of claim 3 of the '371 Patent. There is no condition or basis disclosed in the specification of the '371 patent that would guide one skilled in the art to determine when a "typical" rotation should be used and when a "typical" rotation should be abandoned.

Moreover, Honeywell's proposed construction is not fairly supported by intrinsic evidence, *viz.* the language of claim 3 itself and the specification and drawings of the '371 Patent.

With respect to the claim language, the disputed limitation at issue includes the term "slight misalignment" (emphasis added). In this case, Honeywell has asserted infringement against LCD modules having an angle of rotation as small as 1 degree and as great as 44 degrees. Because Honeywell's proposed construction does not include a reference axis (*e.g.* the horizontal axis of the LCD matrix array), Honeywell's construction covers every possible angle of rotation except for 45 degrees (which is the maximum possible misalignment from both the horizontal and vertical axes of the LCD matrix array). Given that the term "misalignment" is modified by the term "slight" in claim 3, it is quite unreasonable to construe the limitation at issue to cover all possible angles of rotation, with the sole exception of 45 degrees. Honeywell's construction would render the modifier

"slight" utterly superfluous and unnecessary. All terms in a claim, however, are presumed to have meaning in the claim. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir 2004); *Pickholz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002). Honeywell's proposed construction therefore cannot be correct.

With respect to the specification, as noted above, the '371 Patent expressly discloses the angle of rotation is "<u>a few degrees</u> (Typically 2 to 16 degrees) from the horizontal axis" of the LCD matrix array. *See* the '371 Patent at column 5, lines 24-25 (emphasis added). As used in the specification of the '371 patent, the phrase "a few degrees" means "nearly parallel" (*i.e.* nearly 0 degrees). *See id.* at column 5, lines 29-34 ( "the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or <u>nearly parallel to within a few degrees</u>) the axis of the lens array." (emphasis added)). Consequently, the angle of rotation intended to be covered by the claimed "slight misalignment" must be no greater than 16 degrees, or else the horizontal axis of the lens array and the horizontal axis of the LCD matrix array would not remain "nearly parallel".

Finally, the drawings in the '371 Patent also show the angle of rotation of the lens array as being "~ 2° TO 16°" from the horizontal axis of the LCD matrix array. *See id.* at FIGURE 12. No other possible angles of rotation are shown anywhere in the '371 Patent. Similarly, no other reference axis is shown anywhere in the '371 Patent. Honeywell's proposed construction is therefore not supported by the drawings of the '371 Patent.

## C.    Extrinsic Evidence

Consideration of appropriate extrinsic evidence further supports the Manufacturer Defendants' proposed construction of the "slight misalignment" limitation. In particular, reference to any number of dictionaries shows that the word "slight" is and was commonly understood to have meanings such as "small", "insignificant", "inconsiderable" and the like. *See, e.g., Cambridge*

*Dictionary of American English* (2nd ed. 2007)("small in amount or degree"); *The American Heritage Dictionary of the English Language* (4th ed. 2006)("of small importance or consideration; trifling"); *Webster's Revised Unabridged Dictionary* (1998)("not decidedly marked; not forcible; inconsiderable; unimportant; insignificant; not severe; weak; gentle"); *Webster's New World Dictionary* (3rd College Ed. 1988)("small in amount or extent; not great or intense"); *Webster's Ninth New Collegiate Dictionary* (1983)("small of its kind or in amount").

All of these extrinsic sources confirm that the word "slight" is ordinarily and customarily used in the English language as a qualifier indicating something small or minor. As such, these sources support the Manufacturer Defendants' proposed construction of "slight misalignment" as being not more than 16 degrees. In marked contrast, because Honeywell's proposed construction includes rotation angles at least as great as 44 degrees, Honeywell's proposed construction is quite beyond any of the accepted meanings of "slight" found in common dictionaries.

## V.    CONCLUSION

For at least the reasons above, InnoLux respectfully requests that this Court adopt the Manufacturer Defendants' proposed construction of the term "wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to

14

provide a slight misalignment between said lenslets and said liquid crystal panel" as used in claim 3 of the '371 Patent.


Dated: April 25, 2008                    /s/ Matt Neiderman
                                         DUANE MORRIS LLP
                                         Matt Neiderman
                                         1100 North Market Street
                                         Suite 1200
                                         Wilmington, DE 19801-1246
                                         (302)657-4900

                                         Donald R. McPhail
                                         505 9th Street, NW
                                         Suite 1000
                                         Washington, DC 20004
                                         (202) 776-7800

                                         *Attorneys for Defendant InnoLux Display Corporation*


DM1\1327588.1


15

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2008, I caused the foregoing documents to be electronically filed with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to the following:

Thomas C. Grimm, Esq.
Benjamin J. Schladweiler, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Karen L. Pascale
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

Phillip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, Delaware 19899

David J. Margules
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmingon, Delaware 19899

/s/ Aimee M. Czachorowski
Aimee M. Czachorowski (Del. I.D. #4670)

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GUARDIAN INDUSTRIES CORP.,      )

                  Plaintiff,      )    **CA No.:**

      v.                      )

                        )    **Jury Trial Demanded**

INNOLUX DISPLAY CORP.,        )

                  Defendant.      )

)

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Guardian Industries Corp. ("Guardian") for its complaint against defendant InnoLux Display Corp. ("InnoLux") alleges as follows:

## NATURE OF THE ACTION

1.      This is an action under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, for infringement by InnoLux of patents owned by Guardian.

2.      The technology at issue involves the design and manufacture of liquid crystal displays ("LCDs") and related products (collectively "LCD Products"). An LCD is a type of flat panel display that is used in products such as computer monitors.

3.      Guardian is the owner of United States Patent No. 5,570,214 (the "'214 Patent") entitled "Normally White Twisted Nematic LCD with Retardation Films on Opposite Sides of Liquid Crystal Material for Improved Viewing Zone."

4.      Guardian is the owner of United States Patent No. 5,694,187 (the "'187 Patent") entitled "LCD Including A Negative Biaxial Retarder On Each Side Of The Liquid Crystal Layer."

5.    Guardian is the owner of United States Patent No. 6,226,065 (the "'065 Patent") entitled "Liquid Crystal Display Having High Contrast Viewing Zone Centered in Positive or Negative Vertical Region."

6.    Guardian is the owner of United States Patent No. 6,229,588 (the "'588 Patent") entitled "Normally White LCD Including First and Second Biaxial Retarders."

7.    This is a civil action for the infringement of the '214 Patent, the '187 Patent, the '065 Patent, and the '588 Patent (collectively, the "Patents-in-Suit") by InnoLux.  Guardian owns the Patents-in-Suit and possesses the right to sue and to recover for infringement of the Patents-in-Suit.  Copies of the Patents-In-Suit are attached hereto.

8.    Guardian and/or predecessor owners of the Patents-In-Suit marked their products under 35 U.S.C. § 287(a).

## THE PARTIES

9.    Plaintiff Guardian is a corporation organized under the laws of the state of Delaware with its principal place of business at 2300 Harmon Road, Auburn Hills, Michigan, 48326-1714.

10.    On information and belief, InnoLux is a Taiwanese corporation with its principal place of business at 160 Ke Syue Road, Hsingchu Science Park, Chu-Nan 350, Miao-Li County, Taiwan R.O.C.

11.    On information and belief, InnoLux sells LCD product(s) that include a version of Fuji Wide View (WV) film.

## JURISDICTION AND VENUE

12.    Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a).

13.    This Court has personal jurisdiction over the InnoLux because InnoLux has purposely availed itself of the privilege of conducting activities within this State and District, and/or have conducted activities elsewhere in the United States.

14.    Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b-c) and 1400(b).

## COUNT I - INFRINGEMENT OF THE '214 PATENT

15.    Guardian realleges and incorporates herein by reference the allegations stated in paragraphs 1-14 of this Complaint.

16.    The '214 patent was duly and legally issued on October 29, 1996.  The '214 Patent was duly and legally assigned to Guardian, and Guardian owns and has full rights to sue, enforce and recover damages for all infringements of the '214 patent.  Pursuant to Local Rule 3.2, a true and correct copy of the '214 Patent is attached to this Complaint as Exhibit 1.

17.    InnoLux has infringed, contributorily infringed and/or actively induced infringement, and on information and belief is infringing, contributorily infringing and/or actively inducing infringement of the '214 patent in this District, in the United States and elsewhere by at least making, importing, causing to be imported, using, causing to be used, offering to sell, causing to be offered for sale, selling and/or causing to be sold LCDs and/or products relating to LCDs that infringe one or more claims of the '214 Patent.

18.    On information and belief, InnoLux will continue to infringe, contributorily infringe and/or actively induce others to infringe the '214 Patent unless and until it is enjoined by this Court.

19.    On information and belief, InnoLux has been aware of the '214 Patent since at least as early as August 2005.

20.    On information and belief, InnoLux's infringement, with knowledge of the '214 Patent, has been and continues to be willful and deliberate, making this an exceptional case and entitling Guardian to increased damages and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT II - INFRINGEMENT OF THE '187 PATENT

21.    Guardian realleges and incorporates herein by reference the allegations stated in paragraphs 1-14 of this Complaint.

22.    The '187 patent was duly and legally issued on December 2, 1997.  The '187 Patent was duly and legally assigned to Guardian, and Guardian owns and has full rights to sue, enforce and recover damages for all infringements of the '187 patent.  Pursuant to Local Rule 3.2, a true and correct copy of the '187 Patent is attached to this Complaint as Exhibit 2.

23.    InnoLux has infringed, contributorily infringed and/or actively induced infringement, and on information and belief is infringing, contributorily infringing and/or actively inducing infringement of the '187 patent in this District, in the United States and elsewhere by at least making, importing, causing to be imported, using, causing to be used, offering to sell, causing to be offered for sale, selling and/or causing to be sold LCDs and/or products relating to LCDs that infringe one or more claims of the '187 Patent.

24.    On information and belief, InnoLux will continue to infringe, contributorily infringe and/or actively induce others to infringe the '187 Patent unless and until it is enjoined by this Court.

25.    On information and belief, InnoLux has been aware of the '187 Patent since at least as early as August 2005.

26.    On information and belief, InnoLux's infringement, with knowledge of the '187 Patent, has been and continues to be willful and deliberate, making this an exceptional case and

entitling Guardian to increased damages and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT III- INFRINGEMENT OF THE '065 PATENT

27.    Guardian realleges and incorporates herein by reference the allegations stated in paragraphs 1-14 of this Complaint.

28.    The '065 patent was duly and legally issued on May 1, 2001.  The '065 Patent was duly and legally assigned to Guardian, and Guardian owns and has full rights to sue, enforce and recover damages for all infringements of the '065 patent.  Pursuant to Local Rule 3.2, a true and correct copy of the '065 Patent is attached to this Complaint as Exhibit 3.

29.    InnoLux has infringed, contributorily infringed and/or actively induced infringement, and on information and belief is infringing, contributorily infringing and/or actively inducing infringement of the '065 patent in this District, in the United States and elsewhere by at least making, importing, causing to be imported, using, causing to be used, offering to sell, causing to be offered for sale, selling and/or causing to be sold LCDs and/or products relating to LCDs that infringe one or more claims of the '065 Patent.

30.    On information and belief, InnoLux will continue to infringe, contributorily infringe and/or actively induce others to infringe the '065 Patent unless and until it is enjoined by this Court.

31.    On information and belief, InnoLux has been aware of the '065 Patent since at least as early as August 2005.

32.    On information and belief, InnoLux's infringement, with knowledge of the '065 Patent, has been and continues to be willful and deliberate, making this an exceptional case and entitling Guardian to increased damages and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT IV - INFRINGEMENT OF THE '588 PATENT

33.    Guardian realleges and incorporates herein by reference the allegations stated in paragraphs 1-14 of this Complaint.

34.    The '588 patent was duly and legally issued on May 8, 2001. The '588 Patent was duly and legally assigned to Guardian, and Guardian owns and has full rights to sue, enforce and recover damages for all infringements of the '588 patent. Pursuant to Local Rule 3.2, a true and correct copy of the '588 Patent is attached to this Complaint as Exhibit 4.

35.    InnoLux has infringed, contributorily infringed and/or actively induced infringement, and on information and belief is infringing, contributorily infringing and/or actively inducing infringement of the '588 patent in this District, in the United States and elsewhere by at least making, importing, causing to be imported, using, causing to be used, offering to sell, causing to be offered for sale, selling and/or causing to be sold LCDs and/or products relating to LCDs that infringe one or more claims of the '588 Patent.

36.    On information and belief, InnoLux will continue to infringe, contributorily infringe and/or actively induce others to infringe the '588 Patent unless and until it is enjoined by this Court.

37.    On information and belief, InnoLux has been aware of the '588 Patent since at least as early as August 2005.

38.    On information and belief, InnoLux's infringement, with knowledge of the '588 Patent, has been and continues to be willful and deliberate, making this an exceptional case and entitling Guardian to increased damages and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Guardian prays that this Court:

A.    Enter a judgment that InnoLux has infringed, contributorily infringed and/or actively induced others to infringe the Patents-in-Suit;

B.    Award Guardian damages in an amount sufficient to compensate Guardian for InnoLux's infringement, contributory infringement and/or active inducement of others' infringement of the Patents-in-Suit, but not less than a reasonable royalty;

C.    Award prejudgment interest to Guardian pursuant to 35 U.S.C. § 284;

D.    Award increased damages, pursuant to 35 U.S.C. § 284, in an amount not less than three times the amount of actual damages awarded to Guardian, by reason of InnoLux's willful infringement of the Patents-in-Suit;

E.    Enter a permanent injunction enjoining InnoLux, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with InnoLux, from further acts of infringement of the Patents-in-Suit, pursuant to 35 U.S.C. § 283;

F.    Declare this case exceptional under 35 U.S.C. § 285 and award Guardian its reasonable attorneys' fees, expenses, and costs incurred in this action; and

G.    Grant Guardian such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Guardian hereby demands a jury trial on all issues appropriately triable by a jury.

\*    \*    \*

Dated: December 8, 2006

Richard K. Herrmann #405
MORRIS JAMES HITCHENS & WILLIAMS LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800

Of counsel:

Bryan S. Hales
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Plaintiff Guardian Industries Corp.*

EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GUARDIAN INDUSTRIES CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 06-748-SLR |
| | ) |
| INNOLUX DISPLAY CORP., | )    JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

**DEFENDANT INNOLUX DISPLAY
CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND
<u>COUNTERCLAIMS TO COMPLAINT, AND DEMAND FOR JURY TRIAL</u>**

Defendant InnoLux Display Corporation ("InnoLux") hereby submits this answer to the

Complaint for Patent Infringement ("Complaint") (D.I. 1) filed by Guardian Industries

Corporation ("Guardian" or "Plaintiff"), along with its defenses and counterclaims.

**I.    <u>ANSWER</u>**

InnoLux responds to Guardian's Complaint as follows.  To the extent not specifically

admitted in the following paragraphs, the allegations of the Complaint are denied:

**<u>NATURE OF THE ACTION</u>**

1.    InnoLux admits that Guardian alleges an action for patent infringement, but

InnoLux denies any liability for the alleged infringement.  InnoLux lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations set

forth in Paragraph 1 of the Complaint, and therefore denies those allegations.

2.    InnoLux admits that the patents-in-suit generally relate to specific Liquid Crystal

Displays ("LCDs") and that an LCD is a type of flat panel display that is used in some computer

monitors.  InnoLux denies all remaining allegations in Paragraph 2 of the Complaint.

3.      InnoLux admits that U.S. Patent No. 5,570,214 (the "'214 Patent") bears the title "NORMALLY WHITE TWISTED NEMATIC LCD WITH RETARDATION FILMS ON OPPOSITE SIDES OF LIQUID CRYSTAL MATERIAL FOR IMPROVED VIEWING ZONE."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 3 of the Complaint and on that basis denies that allegation.

4.      InnoLux admits that U.S. Patent No. 5,694,187 (the "'187 Patent") bears the title "LCD INCLUDING A NEGATIVE BIAXIAL RETARDER ON EACH SIDE OF THE LIQUID CRYSTAL LAYER."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 4 of the Complaint and on that basis denies that allegation.

5.      InnoLux admits that U.S. Patent No. 6,226,065 (the "'065 Patent") bears the title "LIQUID CRYSTAL DISPLAY HAVING HIGH CONTRAST VIEWING ZONE CENTERED IN POSITIVE OR NEGATIVE VERTICAL REGION."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 5 of the Complaint and on that basis denies that allegation.

6.      InnoLux admits that U.S. Patent No. 6,229,588 (the "'588 Patent") bears the title "NORMALLY WHITE LCD INCLUDING FIRST AND SECOND BIAXIAL RETARDERS." InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 6 of the Complaint and on that basis denies that allegation.

7.      InnoLux admits that Guardian alleges an action for patent infringement.  InnoLux denies that it has infringed, willfully or otherwise, any valid and/or enforceable claim of the '214

Patent, the '187 Patent, the '065 Patent, or the '588 Patent (collectively, the "patents-in-suit"). InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 7 of the Complaint, and therefore denies those allegations.

8.     InnoLux lacks information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 8 of the Complaint, and therefore denies those allegations.

9.     InnoLux lacks information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9 of the Complaint, and therefore denies those allegations.

## THE PARTIES

10.     InnoLux admits that it is a corporation organized under the laws of Taiwan R.O.C., with its principal place of business at No. 160, Kesyue Rd., Jhunan Science Park, Miaoli County 350, Taiwan R.O.C.  InnoLux denies the remaining allegations of Paragraph 10 of the Complaint.

11.     InnoLux admits that it sells certain LCD products that include Super Wide View ("WV-SA") film manufactured by Fuji Photo Film Co., Ltd.  InnoLux admits that it sells certain LCD products that include Excellent Wide View ("WV-EA") film manufactured by Fuji Photo Film Co., Ltd.  InnoLux denies the remaining allegations of Paragraph 11 of the Complaint.

## JURISDICTION AND VENUE

12.     InnoLux admits that this Court has subject matter jurisdiction over cases filed under at least 28 U.S.C. § 1338(a).  InnoLux otherwise denies the allegations set forth in Paragraph 12 of the Complaint.

13.     For purposes of this action only, InnoLux does not contest personal jurisdiction by this Court over InnoLux.  InnoLux otherwise denies the allegations set forth in Paragraph 13 of the Complaint.

14.     For purposes of this action only, InnoLux does not challenge venue in this Judicial District.  InnoLux otherwise denies the allegations set forth in Paragraph 14 of the Complaint.

## COUNT I – INFRINGEMENT OF THE '214 PATENT

15.      No new allegation is contained within Paragraph 15 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

16.     InnoLux admits that the '214 Patent bears the issue date of October 29, 1996. InnoLux further admits that a copy of the '214 Patent was attached to the Complaint as Exhibit 1. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 16 of the Complaint, and therefore denies those allegations.

17.     InnoLux denies the allegations of Paragraph 17.

18.     InnoLux denies the allegations of Paragraph 18.

19.     InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 19 of the Complaint.

20.     InnoLux denies the allegations of Paragraph 20.

## COUNT II – INFRINGEMENT OF THE '187 PATENT

21.     No new allegation is contained within Paragraph 21 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

22.     InnoLux admits that the '187 Patent bears the issue date of December 2, 1997. InnoLux further admits that a copy of the '187 Patent was attached to the Complaint as Exhibit 2.

InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 22 of the Complaint, and therefore denies those allegations.

23.    InnoLux denies the allegations of Paragraph 23.

24.    InnoLux denies the allegations of Paragraph 24.

25.    InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 25 of the Complaint.

26.    InnoLux denies the allegations of Paragraph 26.

### COUNT III – INFRINGEMENT OF THE '065 PATENT

27.    No new allegation is contained within Paragraph 27 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

28.    InnoLux admits that the '065 Patent bears the issue date of May 1, 2001. InnoLux further admits that a copy of the '065 Patent was attached to the Complaint as Exhibit 3. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 28 of the Complaint, and therefore denies those allegations.

29.    InnoLux denies the allegations of Paragraph 29.

30.    InnoLux denies the allegations of Paragraph 30.

31.    InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 31 of the Complaint.

32.    InnoLux denies the allegations of Paragraph 32.

## COUNT IV – INFRINGEMENT OF THE '588 PATENT

33.     No new allegation is contained within Paragraph 33 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

34.     InnoLux admits that the '588 Patent bears the issue date of May 8, 2001. InnoLux further admits that a copy of the '588 Patent was attached to the Complaint as Exhibit 4. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 34 of the Complaint, and therefore denies those allegations.

35.     InnoLux denies the allegations of Paragraph 35.

36.     InnoLux denies the allegations of Paragraph 36.

37.     InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 37 of the Complaint.

38.     InnoLux denies the allegations of Paragraph 38.

### INNOLUX'S RESPONSE TO GUARDIAN'S PRAYER FOR RELIEF

InnoLux denies that Guardian is entitled to either the relief requested in the Complaint or any other relief.

### II.     DEFENDANT INNOLUX'S
### AFFIRMATIVE DEFENSES TO GUARDIAN'S COMPLAINT

InnoLux asserts the following affirmative defenses to Guardian's Complaint:

### AFFIRMATIVE DEFENSE
### – NON-INFRINGEMENT AND/OR INVALIDITY

39.     Each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

6

40.    Each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

41.    Each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

42.    Each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## ADDITIONAL AFFIRMATIVE DEFENSES

43.    InnoLux reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter.  Additionally, InnoLux reserves the right to amend or seek to amend its answer and/or any of its affirmative defenses.

## III.    DEFENDANT INNOLUX'S COUNTERCLAIMS

## THE PARTIES

44.    InnoLux Display Corporation ("InnoLux") is a corporation organized under the laws of Taiwan R.O.C., with its principal place of business at No. 160, Kesyue Rd., Jhunan Science Park, Miaoli County 350, Taiwan R.O.C.

45.    On information and belief, Guardian Industries Corporation ("Guardian") is a corporation organized under the laws of Delaware, with its principal place of business at 2300 Harmon Road, Auburn Hills, Michigan, 48326-1714.

46.    Guardian has brought a lawsuit against InnoLux in this District alleging that InnoLux infringes U.S. Patent No. 5,570,214 (the "'214 Patent"), U.S. Patent No. 5,694,187 (the "'187 Patent"), U.S. Patent No. 6,226,065 (the "'065 Patent"), and U.S. Patent No. 6,229,588 (the "'588 Patent") (collectively, the "patents-in-suit").

47.      InnoLux denies that it has infringed, willfully or otherwise, any valid and/or enforceable claim of the patents-in-suit, and, through these Counterclaims, seeks declaratory relief.

## JURISDICTION AND VENUE

48.      Jurisdiction in this action is proper under 28 U.S.C. §§ 1367, 1338(a), 2201, and 2202.

49.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## COUNT  I – DECLARATORY RELIEF REGARDING
## NON-INFRINGEMENT AND/OR INVALIDITY OF THE '214 PATENT

50.      InnoLux hereby repeats and incorporates by reference Paragraphs 44-49 above.

51.      An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '214 Patent.

52.      Each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

53.      InnoLux requests a declaration that each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## COUNT  II – DECLARATORY RELIEF REGARDING
## NON-INFRINGEMENT AND/OR INVALIDITY OF THE '187 PATENT

54.      InnoLux hereby repeats and incorporates by reference Paragraphs 44-49 above.

55.      An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '187 Patent.

56.      Each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

57.     InnoLux requests a declaration that each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## COUNT III – DECLARATORY RELIEF REGARDING
## NON-INFRINGEMENT AND/OR INVALIDITY OF THE '065 PATENT

58.     InnoLux hereby repeats and incorporates by reference Paragraphs 44-49 above.

59.     An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '065 Patent.

60.     Each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

61.     InnoLux requests a declaration that each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## COUNT IV – DECLARATORY RELIEF REGARDING
## NON-INFRINGEMENT AND/OR INVALIDITY OF THE '588 PATENT

62.     InnoLux hereby repeats and incorporates by reference Paragraphs 44-49 above.

63.     An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '588 Patent.

64.     Each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

65.     InnoLux requests a declaration that each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## DEMAND FOR JURY TRIAL

66.     Pursuant to Federal Rule of Civil Procedure 28, InnoLux hereby demands a trial by jury as to all issues of fact in this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, InnoLux prays that:

(a)     Guardian's Complaint against InnoLux be dismissed, with prejudice;

(b)     Judgment be entered in favor of InnoLux declaring that each claim of the patents-in-suit is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code;

(c) Judgment be entered in favor of InnoLux and against Guardian declaring that this is an exceptional case and awarding InnoLux its attorneys' fees and costs under 35 U.S.C. § 285; and

(d)     InnoLux be awarded any such other and further relief as is just and proper.

ASHBY & GEDDES

/s/ *John G. Day*

_____
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant*
*InnoLux Display Corporation*

10

*Of Counsel:*

Roderick R. McKelvie (I.D. # 695)
Richard L. Rainey
David A. Garr*
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  202-662-6000
Fax:  202-662-6291

Deanna L. Kwong
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
Tel:   415-591-6000
Fax:  415-591-6091

* Member of the Bar of New York.
Not admitted to the Bar of the District of Columbia.
Supervised by principals of the firm.

Dated:  May 4, 2007
180232.1

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GUARDIAN INDUSTRIES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-748-SLR |
| | ) | |
| INNOLUX DISPLAY CORP., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

### DEFENDANT INNOLUX DISPLAY
### CORPORATION'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
### COUNTERCLAIMS TO COMPLAINT, AND DEMAND FOR JURY TRIAL

Defendant InnoLux Display Corporation ("InnoLux") hereby submits this amended

answer, defenses, and counterclaims to the Complaint for Patent Infringement ("Complaint")

(D.I. 1) filed by Guardian Industries Corporation ("Guardian" or "Plaintiff").

### I.    ANSWER

InnoLux responds to Guardian's Complaint as follows.  To the extent not specifically

admitted in the following paragraphs, the allegations of the Complaint are denied:

### NATURE OF THE ACTION

1.    InnoLux admits that Guardian alleges an action for patent infringement, but

InnoLux denies any liability for the alleged infringement.  InnoLux lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations set

forth in Paragraph 1 of the Complaint, and therefore denies those allegations.

2.    InnoLux admits that the patents-in-suit generally relate to specific Liquid Crystal

Displays ("LCDs") and that an LCD is a type of flat panel display that is used in some computer

monitors.  InnoLux denies all remaining allegations in Paragraph 2 of the Complaint.

3.      InnoLux admits that U.S. Patent No. 5,570,214 (the "'214 Patent") bears the title "NORMALLY WHITE TWISTED NEMATIC LCD WITH RETARDATION FILMS ON OPPOSITE SIDES OF LIQUID CRYSTAL MATERIAL FOR IMPROVED VIEWING ZONE."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 3 of the Complaint and on that basis denies that allegation.

4.      InnoLux admits that U.S. Patent No. 5,694,187 (the "'187 Patent") bears the title "LCD INCLUDING A NEGATIVE BIAXIAL RETARDER ON EACH SIDE OF THE LIQUID CRYSTAL LAYER."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 4 of the Complaint and on that basis denies that allegation.

5.      InnoLux admits that U.S. Patent No. 6,226,065 (the "'065 Patent") bears the title "LIQUID CRYSTAL DISPLAY HAVING HIGH CONTRAST VIEWING ZONE CENTERED IN POSITIVE OR NEGATIVE VERTICAL REGION."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 5 of the Complaint and on that basis denies that allegation.

6.      InnoLux admits that U.S. Patent No. 6,229,588 (the "'588 Patent") bears the title "NORMALLY WHITE LCD INCLUDING FIRST AND SECOND BIAXIAL RETARDERS."  InnoLux is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation in Paragraph 6 of the Complaint and on that basis denies that allegation.

7.      InnoLux admits that Guardian alleges an action for patent infringement.  InnoLux denies that it has infringed, willfully or otherwise, any valid and/or enforceable claim of the '214

Patent, the '187 Patent, the '065 Patent, or the '588 Patent (collectively, the "patents-in-suit"). InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 7 of the Complaint, and therefore denies those allegations.

8.     InnoLux lacks information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 8 of the Complaint, and therefore denies those allegations.

9.     InnoLux lacks information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9 of the Complaint, and therefore denies those allegations.

## THE PARTIES

10.     InnoLux admits that it is a corporation organized under the laws of Taiwan R.O.C., with its principal place of business at No. 160, Kesyue Rd., Jhunan Science Park, Miaoli County 350, Taiwan R.O.C.  InnoLux denies the remaining allegations of Paragraph 10 of the Complaint.

11.     InnoLux admits that it sells certain LCD products that include Super Wide View ("WV-SA") film manufactured by Fuji Photo Film Co., Ltd.  InnoLux admits that it sells certain LCD products that include Excellent Wide View ("WV-EA") film manufactured by Fuji Photo Film Co., Ltd.  InnoLux denies the remaining allegations of Paragraph 11 of the Complaint.

## JURISDICTION AND VENUE

12.     InnoLux admits that this Court has subject matter jurisdiction over cases filed under at least 28 U.S.C. § 1338(a).  InnoLux otherwise denies the allegations set forth in Paragraph 12 of the Complaint.

13.     For purposes of this action only, InnoLux does not contest personal jurisdiction by this Court over InnoLux.  InnoLux otherwise denies the allegations set forth in Paragraph 13 of the Complaint.

14.    For purposes of this action only, InnoLux does not challenge venue in this Judicial District.  InnoLux otherwise denies the allegations set forth in Paragraph 14 of the Complaint.

## COUNT I – INFRINGEMENT OF THE '214 PATENT

15.    No new allegation is contained within Paragraph 15 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

16.    InnoLux admits that the '214 Patent bears the issue date of October 29, 1996. InnoLux further admits that a copy of the '214 Patent was attached to the Complaint as Exhibit 1. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 16 of the Complaint, and therefore denies those allegations.

17.    InnoLux denies the allegations of Paragraph 17.

18.    InnoLux denies the allegations of Paragraph 18.

19.    InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 19 of the Complaint.

20.    InnoLux denies the allegations of Paragraph 20.

## COUNT II – INFRINGEMENT OF THE '187 PATENT

21.    No new allegation is contained within Paragraph 21 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

22.    InnoLux admits that the '187 Patent bears the issue date of December 2, 1997. InnoLux further admits that a copy of the '187 Patent was attached to the Complaint as Exhibit 2.

InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 22 of the Complaint, and therefore denies those allegations.

23.     InnoLux denies the allegations of Paragraph 23.

24.     InnoLux denies the allegations of Paragraph 24.

25.     InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 25 of the Complaint.

26.     InnoLux denies the allegations of Paragraph 26.

## COUNT III – INFRINGEMENT OF THE '065 PATENT

27.     No new allegation is contained within Paragraph 27 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

28.     InnoLux admits that the '065 Patent bears the issue date of May 1, 2001. InnoLux further admits that a copy of the '065 Patent was attached to the Complaint as Exhibit 3. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 28 of the Complaint, and therefore denies those allegations.

29.     InnoLux denies the allegations of Paragraph 29.

30.     InnoLux denies the allegations of Paragraph 30.

31.     InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 31 of the Complaint.

32.     InnoLux denies the allegations of Paragraph 32.

## COUNT IV – INFRINGEMENT OF THE '588 PATENT

33.     No new allegation is contained within Paragraph 33 of the Complaint and a new response by InnoLux is not necessary.  InnoLux incorporates by reference its responses herein to Paragraphs 1 through 14 of the Complaint, as though fully set forth herein.

34.     InnoLux admits that the '588 Patent bears the issue date of May 8, 2001. InnoLux further admits that a copy of the '588 Patent was attached to the Complaint as Exhibit 4. InnoLux lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 34 of the Complaint, and therefore denies those allegations.

35.     InnoLux denies the allegations of Paragraph 35.

36.     InnoLux denies the allegations of Paragraph 36.

37.     InnoLux admits that it received a copy of a letter dated August 25, 2005 from Robert Gorlin of Guardian Industries Corporation that enclosed a copy of a January 2005 complaint that Guardian filed against Dell, Inc. and others.  InnoLux otherwise denies the allegations set forth in Paragraph 37 of the Complaint.

38.     InnoLux denies the allegations of Paragraph 38.

### INNOLUX'S RESPONSE TO GUARDIAN'S PRAYER FOR RELIEF

InnoLux denies that Guardian is entitled to either the relief requested in the Complaint or any other relief.

## II.     DEFENDANT INNOLUX'S AFFIRMATIVE DEFENSES TO GUARDIAN'S COMPLAINT

InnoLux asserts the following affirmative defenses to Guardian's Complaint:

### AFFIRMATIVE DEFENSE – NON-INFRINGEMENT AND/OR INVALIDITY

39.     Each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

40.    Each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

41.    Each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

42.    Each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## AFFIRMATIVE DEFENSE – SETTLEMENTS AND/OR LICENSES

43.    To the extent that any of Guardian's allegations of infringement are premised on the alleged manufacture, importation, use, offer for sale, or sale of products that are licensed under the patents-in-suit, such allegations are barred pursuant to license.

44.     To the extent that any of Guardian's allegations of infringement are premised on an alleged transaction with an entity that has entered into a settlement (or license) agreement with Guardian, Guardian is barred from recovering at least the amounts Guardian received from the settling party (or licensee) that are attributable to any alleged transactions with InnoLux.

## ADDITIONAL AFFIRMATIVE DEFENSES

45.    InnoLux reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter.  Additionally, InnoLux reserves the right to amend or seek to amend its answer and/or any of its affirmative defenses.

## III.    DEFENDANT INNOLUX'S COUNTERCLAIMS

## THE PARTIES

46.    InnoLux Display Corporation ("InnoLux") is a corporation organized under the laws of Taiwan R.O.C., with its principal place of business at No. 160, Kesyue Rd., Jhunan Science Park, Miaoli County 350, Taiwan R.O.C.

47.    On information and belief, Guardian Industries Corporation ("Guardian") is a corporation organized under the laws of Delaware, with its principal place of business at 2300 Harmon Road, Auburn Hills, Michigan, 48326-1714.

48.    Guardian has brought a lawsuit against InnoLux in this District alleging that InnoLux infringes U.S. Patent No. 5,570,214 (the "'214 Patent"), U.S. Patent No. 5,694,187 (the "'187 Patent"), U.S. Patent No. 6,226,065 (the "'065 Patent"), and U.S. Patent No. 6,229,588 (the "'588 Patent") (collectively, the "patents-in-suit").

49.    InnoLux denies that it has infringed, willfully or otherwise, any valid and/or enforceable claim of the patents-in-suit, and, through these Counterclaims, seeks declaratory relief.

## JURISDICTION AND VENUE

50.    Jurisdiction in this action is proper under 28 U.S.C. §§ 1367, 1338(a), 2201, and 2202.

51.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## COUNT I – DECLARATORY RELIEF REGARDING NON-INFRINGEMENT AND/OR INVALIDITY OF THE '214 PATENT

52.    InnoLux hereby repeats and incorporates by reference Paragraphs 46-51 above.

53.    An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '214 Patent.

54.    Each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

55.    InnoLux requests a declaration that each claim of the '214 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

### COUNT II – DECLARATORY RELIEF REGARDING NON-INFRINGEMENT AND/OR INVALIDITY OF THE '187 PATENT

56.    InnoLux hereby repeats and incorporates by reference Paragraphs 46-51 above.

57.    An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '187 Patent.

58.    Each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

59.    InnoLux requests a declaration that each claim of the '187 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

### COUNT III – DECLARATORY RELIEF REGARDING NON-INFRINGEMENT AND/OR INVALIDITY OF THE '065 PATENT

60.    InnoLux hereby repeats and incorporates by reference Paragraphs 46-51 above.

61.    An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '065 Patent.

62.    Each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

63.    InnoLux requests a declaration that each claim of the '065 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

### COUNT IV – DECLARATORY RELIEF REGARDING NON-INFRINGEMENT AND/OR INVALIDITY OF THE '588 PATENT

64.    InnoLux hereby repeats and incorporates by reference Paragraphs 46-51 above.

65.     An immediate, real, and justiciable controversy exists and is ongoing between Guardian and InnoLux as to whether InnoLux infringes any valid and enforceable claim of the '588 Patent.

66.     Each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

67.     InnoLux requests a declaration that each claim of the '588 Patent is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code.

## DEMAND FOR JURY TRIAL

68.     Pursuant to Federal Rule of Civil Procedure 28, InnoLux hereby demands a trial by jury as to all issues of fact in this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, InnoLux prays that:

(a)     Guardian's Complaint against InnoLux be dismissed, with prejudice;

(b)     Judgment be entered in favor of InnoLux declaring that each claim of the patents-in-suit is not infringed and/or is invalid under one or more provisions of Title 35 of the United States Code;

(c)     Judgment be entered in favor of InnoLux and against Guardian declaring that this is an exceptional case and awarding InnoLux its attorneys' fees and costs under 35 U.S.C. § 285; and

(d)     InnoLux be awarded any such other and further relief as is just and proper.

ASHBY & GEDDES

/s/ *Steven J. Balick*

_____

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant*
*InnoLux Display Corporation*

*Of Counsel:*

Roderick R. McKelvie (*pro hac vice*)
Richard L. Rainey (*pro hac vice*)
David A. Garr (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  202-662-6000
Fax:  202-662-6291

Scott A. Schrader (*pro hac vice*)
Deanna L. Kwong (*pro hac vice*)
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
Tel:  415-591-6000
Fax:  415-591-6091

Dated:  May 9, 2008