

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

May 30, 2008

**BY E-FILE**

The Honorable Joseph J. Farnan, Jr.
United States District Court
   for the District of Delaware
U. S. Courthouse
844 North King Street
Wilmington, DE 19801

      Re:   *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*,
             C.A. No. 04-1338-JJF (Consolidated)

Dear Judge Farnan:

      Pursuant to the Court's May 19, 2008 Order, defendants Samsung SDI Co., Ltd., Samsung SDI America Inc., FUJIFILM Corp., FUJIFILM U.S.A. Inc., Citizen Watch Co., Ltd., and Citizen Displays Co., Ltd. (collectively, "Defendants") write in response to Honeywell's May 16, 2008 letter.

      Honeywell's letter is nothing more than yet another attempt to disturb Judge Jordan's well thought out judicial management and configuration of this case. Over two years ago, Judge Jordan ruled that "not in excess of five [defendant families] preferably less" would participate in an initial trial regarding solely the common issues of invalidity and unenforceability. (Ex. 1 at 32:16–33:24.) The situation that led to Judge Jordan's ruling was entirely of Honeywell's own making, and the concerns reflected in Judge Jordan's orders still exist. Yet, Honeywell again seeks another bite at the apple and another opportunity to reargue the appropriate configuration for this case.

      At the outset, it is important to understand the complete circumstances that led to Judge Jordan's trial plan. Initially, on October 6, 2004, Honeywell sued a large number of what have been referred to as "customer defendants" (companies that purchased fully assembled LCD modules for incorporation in products or purchased products incorporating such modules) and "hybrid defendants" (companies that both assembled LCD modules and purchased them, of which Fuji is an example). These defendants were accused of infringement of U.S. Patent No.

The Honorable Joseph J. Farnan, Jr.
May 30, 2008
Page 2

5,280,371 (the "'371 Patent") by reason of the manufacture, sale and/or offer for sale of a wide range of unrelated portable products including cell phones, PDA's, laptops and digital still cameras. As a consequence, not only were there a large number of parties before the Court, but also a large number of potentially accused products. To deal with this situation, of Honeywell's making, Judge Jordan ordered that the case be reconfigured to add the relevant LCD module manufacturers and that discovery proceed only against defendants who manufacture LCD modules with a goal of a trial solely on the common issues of validity and enforceability of the '371 patent. In effect, the case was limited to specifically accused LCD modules and generations/versions thereof. (Ex. 2 at 10:22-11:21, 16:17-17:6, 18:6-20:8 (rejecting an earlier attempt by Honeywell to reconfigure the scope of discovery).)

Three and half years into this case, Honeywell now seeks to "reconfigure" the case so as to "[return] … Honeywell to its rightful status as the infringement plaintiff in this action," without explanation about the meaning of that term. Defendants are unaware of any Order which deprived Honeywell of its status as plaintiff here.

The concerns that led Judge Jordan to schedule an initial, joint trial limited to common issues still exist today. Since the beginning of this case, Honeywell has argued that its infringement claim is simple and that proceeding with one trial on all issues against all customer defendants (but excluding manufacturer defendants) was feasible. (Honeywell Ex. A at 18:18–22). More than two years ago, Judge Jordan rejected Honeywell's argument and found that addressing only invalidity and unenforceability in an initial, joint trial would most efficiently dispose of the parties' disputes. Specifically, Judge Jordan stated, in response to Honeywell's position:

> I have to say, bluntly, it's unworkable and it's not going to happen. We're not taking this case to trial on all issues against all defendants. We will take it to trial on common issues in the first instance: validity and unenforceability.

(Ex. 1 at 32:11–15.) In light of the difficulties inherent in presiding over a trial involving eighteen defendants, Judge Jordan further ruled that "not in excess of five [defendant families] preferably less" would participate in the initial trial regarding common issues. (*Id.* at 32:16–33:24.) Therefore, Judge Jordan's pre-trial and trial schedule, once the customer defendants were stayed, was based on two concerns: 1) trying <u>all</u> defendant issues in a joint trial and 2) trying <u>common</u> issues with the participation of counsel for eighteen defendant families. Put another way, even if only five or fewer defendant families participated, Judge Jordan did not believe a joint trial on all issues, including infringement, was appropriate.

Judge Jordan's second concern has been resolved with time. Over the course of the last two years, fourteen defendant families have resolved their disputes with Honeywell, leaving only the three defendant families that joined in this letter, Optrex, and Innolux, which has not participated in any of the proceedings. These settlements eliminate Judge Jordan's concern

The Honorable Joseph J. Farnan, Jr.
May 30, 2008
Page 3

about the logistics of a trial of limited scope involving eighteen defendant families and obviate the need to choose a limited number of defendants to participate in the first trial. Four defendant families trying common issues of validity and enforceability is exactly the scenario envisioned by Judge Jordan when he established the current configuration of this case. Despite Honeywell's statements to the contrary, however, Judge Jordan's first concern still remains valid for at least three reasons.

First, Defendants' product designs are in fact materially different from each other, and therefore their non-infringement defenses will be different. For example, as stated on page 13 of Defendants' Markman brief, the construction of "light source" is primarily related to Fuji's modules and impacts the definition of "lens arrays." Although the '371 patent requires two lens arrays, many of Fuji's modules only contain a single lens array. Therefore, Fuji has a particular non-infringement defense related to the asserted claim's "light source" and "lens arrays" requirements that does not affect the other Defendants. As another example, the parties dispute the amount of rotation that constitutes a "slight misalignment" under claim 3. The construction of this term almost certainly will impact Defendants' non-infringement defenses differently. Indeed, Honeywell has accused numerous individual module designs of each defendant of infringement, making a joint trial on all such designs inherently confusing to the jury and prejudicial to each of the Defendants.

Second, Defendants' positions on laches, willfulness, and damages substantially differ. For example, a particular defendant's presentation of its laches defense will likely include evidence of both when Honeywell knew or should have known of the accused infringement and the extent to which the defendant suffered economic injury by reason of the delay in bringing suit. *See, e.g., Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1337–44 (Fed. Cir. 1998). As another example, a particular defendant's defense to Honeywell's willful infringement claim will involve evidence about that particular defendant's intent and reasonable beliefs with respect to Honeywell's infringement claims. *See, e.g., Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). Even the determination of a reasonable royalty rate would depend on a defendant's first date of sale of an allegedly infringing product, which will differ from that of the other defendants, as well as the profitability of each of defendants' accused products. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Each of the remaining defendant families is unrelated to the others and will present a completely different set of facts related to each of these issues, in addition to the difference in infringement evidence. Yet, Honeywell's proposal contemplates a joint trial on infringement, laches, damages, and willfulness as well as common issues of validity and enforceability.

Third, significant discovery would be needed to put this case in a position for a single trial on all issues. As a preliminary matter, Honeywell admits that significant discovery remains to be done with respect to InnoLux, which was not involved with the previous discovery in this case. Therefore, even if the Court grants Honeywell's request, Honeywell faces at least two trials – one against Defendants and another against InnoLux. Further, although Honeywell claims that it has completed all fact discovery needed for a trial on all issues, Honeywell has in fact

The Honorable Joseph J. Farnan, Jr.
May 30, 2008
Page 4

withheld discovery related to damages on the basis that the Scheduling Order did not provide for the disclosure of such information until after the first trial. (Ex. 3 at 4–5 (objecting to Topic 3).) Such discovery would have to be taken prior to any damages trial. In addition, additional experts will have to be engaged, render reports and be deposed. Therefore, scheduling a single trial on all issues will result in a significant delay.[1]

    Honeywell's proposal attempts to penalize Defendants for cooperating in discovery, but Defendants had no choice but to cooperate because the Scheduling Order required Defendants to work together to the extent possible on both discovery and claim construction. For example, Defendants were granted 300 hours in shared deposition time of Honeywell on "common issues" and 150 hours in shared third party deposition time, and each defendant was granted additional time for defendant-specific issues. (Ex. 5 ¶ 3a (the actual deadlines were adjourned several times).) The Scheduling Order also required joint submissions on claim construction. (Ex. 5 ¶¶ 11, 12.) As another example, Judge Jordan ordered Defendants to prepare joint submissions, to the extent possible, regarding any discovery disputes. (Ex. 1 at 40:10–13.) Using that coordination as an excuse to modify the Scheduling Order and hold a joint trial on party-specific issues would unfairly penalize the Defendants for complying with the Court's Orders.

    Honeywell complains of potential prejudice to it by reason of a scheduling order that has been in place for more than two years. Yet, Honeywell ignores the prejudice to Defendants of any further delay in trial, and the likely jury confusion that would result from the receipt of materially different defendant-specific evidence on the issues of infringement, laches, willfulness, and damages. A single trial on both common and defendant-specific issues remains unworkable, and any change would prejudice Defendants. Therefore, Defendants respectfully request that the Court maintain the trial structure contemplated by Judge Jordan's March 28, 2006 Order, as amended.

---

[1] Honeywell's proposal apparently and unfairly provides for Defendants as a group to share the same total amount of time as Honeywell to present both common and party-specific issues. Indeed, Honeywell's original trial proposal provided for the same amount of time per side to present each and every issue. (Ex. 4 at 4.) Under such a proposal, each defendant would have only one quarter of the time allotted to Honeywell to present its case, which is fundamentally unfair. Therefore, to the extent that the Court agrees with Honeywell that a single trial is appropriate, Defendants respectfully request that each party family have the same total amount of time (including both joint and individual trial presentation time) as Honeywell to present its case.

The Honorable Joseph J. Farnan, Jr.
May 30, 2008
Page 5

                                            Respectfully,

                                            /s/ Richard L. Horwitz

                                            Richard L. Horwitz
                                            rhorwitz@potteranderson.com

RLH/msb/867197
Enc.
cc: All counsel of record by electronic mail