# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

May 16, 2008

**BY E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

**PUBLIC VERSION**

Confidential Version Filed: May 16, 2008
Public Version Filed: June 4, 2008

    Re:   *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
            C.A. No. 04-1338-JJF (Consolidated)

Dear Judge Farnan:

    Pursuant to the discussions before Your Honor on April 2 regarding "reconfiguring" this case, we respectfully submit plaintiff Honeywell's thoughts as to how this matter can most efficiently and fairly be brought to trial.

    This case is very differently situated from when Judge Jordan entered the first Scheduling Order in March 2006. Honeywell submits that the fundamental differences discussed below warrant revisiting the decision to postpone a trial on infringement and damages and justify returning Honeywell to its rightful status as the infringement plaintiff in this action. Before discussing these changes, however, recounting some of the history of the case may be helpful to the Court.

    Honeywell initially filed this action in October 2004 against 37 manufacturers of consumer LCD products distributed in the United States. As Honeywell explained to Judge Jordan, it sued these entities – as opposed to the suppliers that manufacture the component LCD modules used in those products –to prevent jurisdictional disputes (including the territorial impact of 35 U.S.C. § 271) and because the full value of a module using the '371 invention is best realized in the context of the overall end product, like a PDA or cell phone. *E.g.*, Transcript of Hearing, May 16, 2005, pp. 18-29 (attached as Exhibit A). Nevertheless, these "Customer Defendants" (as they were colloquially referred to) persuaded Judge Jordan that Honeywell should be required to first sue the LCD manufacturers that supplied the LCD modules to them because the Customer Defendants themselves allegedly had little knowledge regarding the workings of the LCD modules used in their own products. *Id.* at pp. 43-46. Judge Jordan thus

The Honorable Joseph J. Farnan, Jr.
May 16, 2008
Page 2

granted a stay as to the Customer Defendants that Honeywell originally sued.[1] Consistent with Judge Jordan's Order, Honeywell filed an Amended Complaint in late 2005 naming approximately 25 LCD module manufacturers as additional defendants (the "Manufacturer Defendants").[2]

Subsequent to the filing of the Amended Complaint, Honeywell continued its licensing program. However, at the time the Scheduling Order was entered in March 2006, Judge Jordan faced a landscape that still included approximately 18 active Manufacturer Defendants, with no indication that the legal interests of those defendants were in any way aligned. Indeed, the Manufacturer Defendants disputed that their respective LCD modules had anything in common and argued that they could not as a practical mater coordinate their legal positions with respect to infringement and damages. This led Judge Jordan to observe that it would be "impractical" to try this case in the normal fashion with "18 groups of companies with platoons of lawyers" on site. Transcript of Scheduling Conference 3/13/06, p. 30 (attached hereto as Exhibit D). As a result, Judge Jordan ordered that the issues of invalidity and enforceability be tried first because he viewed these issues as the only ones common to all defendants. He also directed the defendants to select a group of no more than five parties who would lead the efforts of that initial trial. The Court did not render any decision regarding how or when the issues of infringement and damages would be tried; in fact, those issues remain unanswered today after three and a half years of litigation.

During the two years of discovery since then[3], four important things have happened: First, a number of manufacturers entered into agreements with Honeywell, thereby reducing the number of remaining Manufacturer Defendants to just four[4] -- below the threshold Judge Jordan originally envisioned for the first trial. Second, it became clear that the defendants were able to coordinate their litigation efforts. The remaining four defendants have a joint defense agreement in place that has served them throughout the case, and they have repeatedly demonstrated their ability and willingness to coordinate their litigation efforts, most notably in the areas of discovery upon Honeywell and third parties, claim construction and expert reports. Third, the exchange of expert reports regarding defendants' validity challenge confirms that many of the

---

[1] Although Judge Jordan directed the Customer Defendants to provide Honeywell with some information regarding the identity of these LCD module suppliers, Honeywell was not given the opportunity to conduct meaningful discovery regarding this supply chain.

[2] Attached as Exhibit B is a list of these Manufacturer Defendants and their current status in this litigation.

[3] Fact discovery was done on all issues in the case including infringement and damages.

[4] Attached hereto as Exhibit C is a complete list and chronology of the agreements. The four remaining defendants include Optrex, Fuji, Samsung SDI and Citizen. This does not include InnoLux, a fifth manufacturer whose motion to dismiss for lack of personal jurisdiction was left pending when Judge Jordan departed from the bench.

The Honorable Joseph J. Farnan, Jr.
May 16, 2008
Page 3

same facts that are relevant to the validity issue (*i.e.*, the extent and commercial success of defendants' use of the '371 technology) will also play a significant role in evaluating infringement and damages.                              REDACTED

REDACTED

REDACTED

Consequently, the infringement dispute will center around claim construction as it relates to the configuration/positioning of these films, and the degree of misalignment of each defendants' respective lens arrays. As demonstrated in their recent Joint Opening Claim Construction brief, however, the four principal defendants have clearly coordinated their non-infringement positions and see many commonalities among their modules. *E.g.*, Defendants' Opening Claim Construction Brief, pp. 15, 16, 18, 21, 22, 28 (repeatedly referencing and characterizing common features among defendants' modules and arguing why these modules allegedly fall outside the scope of the '371 patent). The advanced degree of preparation and coordination evidenced by this briefing undercuts defendants' anticipated argument that they have not prepared this aspect of the case in reliance on the current schedule. *See also*, footnote 6. Overall, then, the record demonstrates that the commonalities among the remaining defendants' LCD modules outweigh any small differences among them, such that a jury would have no problem understanding infringement issues and differentiating arguments where necessary. Honeywell would be pleased to provide the Court with a more detailed proffer on this submission if the Court would find it of value in assessing Honeywell's request.

Accordingly, Honeywell respectfully submits that the case should be reconfigured like a regular patent case so that there is a single trial that includes issues of infringement and damages along with the issues of validity and enforceability. The small number of defendants (which may decrease before trial as a result of further licenses), the high degree to which they have demonstrated their ability to cooperate, the commonality and factual overlap of the majority of issues and the need to bring this matter to final conclusion all weigh in favor of setting this matter for a unitary trial. More particularly, Honeywell proposes that the Court use its typical timed trial format where Honeywell would first present its case in chief on all issues. Because of the significant similarities among the accused modules, Honeywell believes that the use of

---

[5]   After three years of litigation, Defendants have offered no basis for disputing the presence of these elements, but simply claim that addressing these issues is "premature."

The Honorable Joseph J. Farnan, Jr.
May 16, 2008
Page 4

exemplary modules would fairly and efficiently facilitate the presentation of the case. The defendants would then proceed to present their invalidity/enforceability defense in unitary fashion (which should pose no problem given their common submissions on this subject to date) and can have additional time to present whatever particular, non-infringement and damages positions they wish to advance. Honeywell's rebuttal would follow.

In order to accomplish this goal, all that the parties need to complete are expert reports and depositions on the issues of infringement and damages (fact discovery included these issues).[6] Assuming that the Court adopted this approach, Honeywell could provide expert reports within a month of the Court's decision on claim construction, followed by responsive reports 45 days thereafter and an agreed-upon deposition schedule. In this way, the parties can proceed toward a unitary trial which avoids multiple proceedings and the potential for piecemeal appeals. Honeywell is concerned that trying only pieces of the case deprives the jury of a complete record, potentially prejudicing Honeywell, and could lead to a further balkanization of the case.

On behalf of Honeywell, we thank Your Honor for the opportunity to raise this important issue and stand ready to participate in an in-person or telephonic status conference with the Court after the defendants have had an opportunity to respond.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm (#1098)

TCG
Enclosures
cc:   Clerk of the Court (by hand, w/encls.)
      CM/ECF list (by e-filing)
      Non-Stayed Defendants (by e-filing & e-mail, w/encls.)
      David J. Margules, Esq. (Citizen) (by e-filing & e-mail, w/encls.)
      Philip A. Rovner (Fuji) (by e-filing & e-mail, w/encls.)
      Matt Neiderman (InnoLux) (by e-filing & e-mail, w/encls.)
      Karen L. Pascale (Optrex) (by e-filing & e-mail, w/encls.)
      Richard L. Horwitz (Samsung SDI) (by e-filing & e-mail, w/encls.)
      Steven J. Balick, Esq. (by e-mail, w/encls.)
      John G. Day, Esq. (by e-mail, w/encls.)
      Matthew L. Woods, Esq. (by e-mail, w/encls.)

---

[6] Fuji has already submitted a non-infringement report although the current schedule contains no reference to such submissions.