IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC.<br>and HONEYWELL INTELLECTUAL<br>PROPERTIES INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 04-1338- JJF |
| v. | ) | (Consolidated) |
| | ) | |
| APPLE COMPUTER, INC., et al., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' COUNTER-STATEMENT OF MATERIAL FACTS RELATED TO
CITIZEN'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
Peter N. Surdo
Amy N. Softich
Daniel M. White
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
Alan E. McKenna
Michael J. Garko
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA  02199
(617) 267-2300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com

*Attorneys for Plaintiffs*

Confidential Version Filed: June 2, 2008

Public Version Filed: June 13, 2008

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION .............................................................................................. 1

COUNTER-STATEMENT OF FACTS ............................................................... 2

    I.    HONEYWELL SEEKS RELIEF FOR THE INFRINGING LCD MODULES MANUFACTURED BY CITIZEN AND SOLD BY MATSUSHITA IN THE UNITED STATES. ........................................... 2

    II.    HONEYWELL FIRST SUED MATSUSHITA, AND ONLY SUED CITIZEN AFTER THE COURT REQUIRED HONEYWELL TO SUE THE LCD MANUFACTURERS. .................................. 3

        A.    Honeywell's Original Complaint and the Customer Defendants' Motion to Reconfigure the Case ................................................ 3

        B.    Judge Jordan's Decision to Restructure the Case ........................................ 5

    III.    MATSUSHITA IDENTIFIED CITIZEN AS THE MANUFACTURER OF THE LCD MODULES USED IN THE X300 PHONES. ..................................................................................... 7

    IV.    HONEYWELL REPEATEDLY RAISED THE SECTION 271 ISSUE WITH THE NEW MANUFACTURER DEFENDANTS AND ALERTED THE COURT TO THE SAME PRIOR TO THE FORMAL ENTRY OF THE STAY. .................................................. 8

    V.    MATSUSHITA WAS NOT COMPLETELY STAYED UNTIL MAY 2006. ....................................................................................... 10

    VI.    CITIZEN HAD COMMUNICATED WITH MATSUSHITA ABOUT THE INFRINGING LCDS BEFORE IT WAS NAMED AS A DEFENDANT, BUT HONEYWELL WAS NOT INFORMED OF THESE COMMUNICATIONS UNTIL AFTER MATSUSHITA WAS STAYED. ......................................................... 11

    VII.    THE RECORD REMAINS UNCLEAR AS TO HOW THE INFRINGING CITIZEN LCDS WERE SUPPLIED AND DISTRIBUTED. ....................................................................... 12

    VIII.    THE RECORD REMAINS UNCLEAR AS TO WHETHER CITIZEN IS DEFENDING MATSUSHITA. ........................................... 13

IX.    MATSUSHITA REMAINS SILENT EVEN AS CITIZEN SEEKS
        DISMISSAL. ....................................................................................................15

CONCLUSION.............................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**STATUTES**

35 U.S.C. § 271 ................................................................................................................*Passim*

**RULES**

Fed. R. Civ. P. 56(f) ...................................................................................................................16

<u>INTRODUCTION</u>

Pursuant to this Court's Summary Judgment Procedure Memorandum Order[1], and in accordance with the agreed schedule, (D.I. 1041), Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties Inc. ("Honeywell") submit the following Counter-Statement of Material Facts Related to Citizen's Motion for Summary Judgment of Non-Infringement. The Motion filed by Defendants Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd. ("Citizen") seeks summary judgment of non-infringement on the grounds that its sales of LCD modules which practice U.S. Patent No. 5,280,371 ("the '371 patent") fall outside of the territorial limits of the U.S. Patent Laws, 35 U.S.C. § 271, and otherwise do not meet the legal requirements for direct and indirect infringement. Honeywell respectfully directs the Court to the following undisputed material facts that bear on Citizen's motion, including the procedural history that led to Citizen being brought into the case, and the case being stayed against Citizen's customer Matsushita Electric Industrial Co. ("Matsushita"). Further, Honeywell hereby certifies that there are genuine issues of material fact that preclude the grant of Citizen's Motion for Summary Judgment of Non-Infringement (D.I. 1001).  This Counter-Statement is supported by the Declaration of Matthew L. Woods, Esquire ("Decl. Woods") filed herewith.

---

[1]    Available at http://www.ded.uscourts.gov/JJF/CaseMgmt/03_Sum_Jgmt_Procedure_Order.pdf (last visited June 2, 2008).

<u>COUNTER-STATEMENT OF FACTS</u>

I.     HONEYWELL SEEKS RELIEF FOR THE INFRINGING LCD MODULES MANUFACTURED BY CITIZEN AND SOLD BY MATSUSHITA IN THE UNITED STATES.

1.     Citizen's Motion for Summary Judgment asks this Court to dismiss, with prejudice, Honeywell's claim that certain LCD modules manufactured by Citizen and sold in the United States within consumer electronic end products by Matsushita infringe the '371 patent. (D.I. 1002.)[2] The brief filed by Citizen in support of its motion, however, does not address Judge Jordan's Order requiring parties like Citizen to be brought into the case to stand in the shoes of their customers—the original defendants—at those customers' behest. (D.I. 1002; D.I. 202.)

2.     Despite years of litigation, neither Citizen, nor its customer Matsushita, has been willing to defend against the substance of Honeywell's charge. (D.I. 1002; D.I. 445) On the one hand, Citizen seeks dismissal of Honeywell's claim by way of this motion, based on Section 271(a) of the Patent Statute. (D.I. 1002.) On the other, Matsushita, in its answer to Honeywell's original complaint, takes the position that "[t]o the extent that Honeywell alleges infringement by products including LCD displays (sic) supplied by third parties, *such third parties are responsible* for any liability arising under such claims." (D.I. 92; D.I. 93) (emphasis added).

3.     It is undisputed that Citizen manufactured the K1122H-HL LCD module, and that module was incorporated into Matsushita's Panasonic Model X300 phones, which were then shipped to and sold in the United States. (D.I. 1005 at ¶ 5; D.I. 1002 at 4; D.I. 624; D.I. 927.) Honeywell purchased the X300 phone containing Citizen's LCD module in the United

---

2     Citations are to the record in the 1338 Action, unless otherwise noted.

States at least as early as November 2005. *See* Decl. Woods, Ex. A. Honeywell has accused this phone, sold in the United States, of infringing the '371 patent. Decl. Woods, Ex. A.

II.      HONEYWELL FIRST SUED MATSUSHITA, AND ONLY SUED CITIZEN AFTER THE COURT REQUIRED HONEYWELL TO SUE THE LCD MANUFACTURERS.

     A.      Honeywell's Original Complaint and the Customer Defendants' Motion to Reconfigure the Case

4.      Honeywell did not originally sue Citizen when it filed this action on October 6, 2004. (D.I. 1.) Rather, Honeywell originally sued only the manufacturers of the end products incorporating the infringing LCD modules. (D.I. 1) One of the end-product makers was Matsushita—Citizen's LCD customer—which sells products under the brand name Panasonic. (D.I. 1; D.I. 1002) As Honeywell explained to Judge Jordan:

> [W]e sued the end product manufacturers for three reasons:
>
> First, they were the ones we could get complete relief against by hailing them into court in the United States. A lot of products, if you look at the modules, many of them are made overseas. Where those transactions take place, frankly, we don't know. And so one component of this is there is a very large unknown. We don't know who the suppliers are to each of the defendants. And if the Court looks at the papers that have been submitted, you can see there are some affidavits for five or six of the defendants but the majority of the defendants have taken no position on who their suppliers are. We don't know who those companies are. We don't even know how to bring them to court. We don't even know if they are all subject to jurisdiction in the United States.
>
> Secondly, the sales transactions. Now I said earlier that we sued the end product manufacturers. Well, the LCD module that is asserted to be the item that should be tried for infringement is not the product that is sold in the U.S. The product that is sold in the United States are (sic) cell phones, PDAs, digital still cameras, digital video recorders, games and so on. And in each of those in (sic) instances, someone has made a conscious decision to incorporate that piece of technology into their product.

- 3 -

…

> So if a module is sold in a transaction to someone who is going to – for example, let's say a cell phone. That cell phone may get sold in the United States but the module may have been sold in a transaction between Korea and Japan. Under the United States patent laws, we arguably can't reach the transaction between Korea and Japan but can reach the transaction of the cell phone in the United States.
>
> And then the third reason is from a reasonable royalty standpoint….

(D.I. 204 at 25.)

5.     Beginning on April 12, 2005, the Customer Defendants filed motions requesting that the Court stay these Customer Defendants until the infringement trial against the LCD manufacturer Defendants was resolved. (D.I. 158; D.I. 161.) These Defendants argued that the Court should allow the manufacturers of the LCD components to defend the product with respect to the merits of Honeywell's infringement claim as they are the ones with the relevant "technical" information:

> The resolution of Honeywell's allegations of infringement against the Customer Defendants hinges on whether the LCD devices manufactured by the LCD Manufacturers infringe any valid, enforceable claim of the '371 patent. As has been recognized in similar contexts, the determination of patent infringement claims against the device manufacturers will, as a practical matter, resolve the case against the users of the manufactured devices. *It is the device manufacturers -- in these cases, the LCD Manufacturers -- who have an overriding interest in defending their products* and who have the technical information necessary to defend against claims of patent infringement.

(D.I. 159 at 6 (emphasis added).) The Court heard these motions on May 16, 2005. (D.I. 204 at 17-46.) Although counsel for Matsushita did not argue these motions, Matsushita had previously taken this exact position in its answer, *see* ¶ 2 *supra*, and attended this

hearing. (D.I. 204 at 3.) Matsushita then availed itself of the subsequent grant of these motions by asserting its status as a Customer Defendant. *See* Decl. Woods, Ex. B.

6.    In responding to these motions, Honeywell informed the Court that one reason for suing the end product manufacturers like Matsushita, and not LCD manufacturers like Citizen, related to the fact that Honeywell did not know "if [the LCD manufacturers were] all subject to jurisdiction in the United States." (D.I. 204 at 20.) Honeywell further explained to the Court that "[u]nder the United States patent laws, [Honeywell] arguably can't reach [a foreign] transaction between Korea and Japan but can reach the transaction of the [end product] in the United States." (D.I. 204 at 21.) Likewise, Honeywell drew the Court's attention to the fact that "[i]f we start with the products that we know are going to be sold in the United States, which [are] the end products…we have corralled the entire scope of the infringement." (D.I. 204 at 25.) In light of this reasoning, Honeywell had located a large number of products *sold in the United States* that incorporated infringing LCDs. Decl. Woods, Ex. C; *see also* ¶ 3, *supra*.

B.    Judge Jordan's Decision to Restructure the Case

7.    Despite Honeywell's arguments, and over Honeywell's objection, the Court announced that it was restructuring the case by (1) provisionally staying[3] the end-product Defendants originally named by Honeywell,  and (2) requiring Honeywell to sue the LCD manufacturers in order to proceed with its claim. (D.I. 204 at 45-46; D.I. 202 at 4 (instructing Honeywell "to litigate its infringement claims in the first instance against the manufacturers of

---

[3]    The Court made its stay provisional upon the end product manufacturers first identifying to Honeywell who supplied the LCD modules used in their products at issue. (D.I. 202 at 9.)

the accused LCDs, not against the customers of those manufacturers who incorporate the LCDs into their consumer electronics."))

8.    Although Honeywell alerted the Court to the potential impact that the territorial limits of the Patent Statute could have upon the efficacy of the reconfiguration, (D.I. 204 at 24, 28, 38), the Court based its decision to restructure the case, in part, on the assumption that the LCD manufacturers would defend their customers. (D.I. 204.) In deciding that Honeywell must sue the LCD manufacturers first, the Court recognized that:

> [T]he people who have a real stake in terms of keeping their customers happy are the manufacturers and suppliers, and they haven been subject no doubt to a whole lot of communication from their customers, including demands for indemnification and third-party complaints and probably less formal demands and requests.

(D.I. 204 at 44.) Given this assumption, the Court concluded that "there is [not] a sound reason to depart from the traditional rule …that says you ought to [have] the people who are making the accused device face the music, and let them face it in the first instance[.] (D.I. 204 at 45.)

9.    After hearing Honeywell's concerns about the extraterritorial effects of the Patent Act and matching the LCD manufacturers to the end-product manufacturers, the Court effected a "limited stay" with "the opportunity to do some discovery on the end product users…to find out who the LCDs (sic) suppliers are" and "*where the products end up*[.]" (D.I. 204 at 38-39 (emphasis added).

10.    Furthermore, in a subsequent hearing addressing whether the Customer Defendants had adequately identified their suppliers in order to facilitate the reconfiguration, the Court stated:

> I would think that overseas marketers of LCD modules who have big clients in the United States incorporating those things into their products are not going to upset their clientele by *playing games with jurisdiction*.

Decl. Woods, Ex. D at 30 (emphasis added).

### III.   MATSUSHITA IDENTIFIED CITIZEN AS THE MANUFACTURER OF THE LCD MODULES USED IN THE X300 PHONES.

11.    On the same day of the Court's Order provisionally staying the Customer Defendants, Honeywell corresponded with all counsel to effect a plan for identifying the relevant LCD suppliers in order to accomplish the reconfiguration. Decl. Woods, Ex. E. Specifically, Honeywell asked the Customer Defendants to, *inter alia*, identify their LCD suppliers in accordance with Honeywell's interrogatories, identify any existing indemnification agreements and any efforts that will be taken to implead their LCD suppliers, and confirm the expectation that the stayed Customer Defendants will accept and be bound by any judgment against the LCD suppliers. Decl. Woods, Ex. E. Matsushita responded, the next month, by identifying four of its LCD suppliers, *but not Citizen*, and stating that it "expect[s] that…Honeywell will take appropriate steps as necessary to **substitute** the LCD manufacturers as defendants for [the accused] products." Decl. Woods, Ex. B (emphasis added).

12.    On October 7, 2005, several months after its Order provisionally granting the stay, Judge Jordan issued another Order clarifying what discovery the Defendants were required to provide Honeywell to facilitate the reconfiguration.  (D.I. 237.)  In the hearing leading to this Order, Judge Jordan directed all the parties, including Matsushita, that "what I do expect to happen at this juncture is for you guys to come together with a specific set now (sic) of identified products and manufacturers of the models of LCD modules that go into those products so that we can go about *having the proper defendants in the suit*." Decl. Woods, Ex. D at 29 (emphasis added).

13.                                    REDACTED


IV.    HONEYWELL REPEATEDLY RAISED THE SECTION
       271 ISSUE WITH THE NEW MANUFACTURER
       DEFENDANTS AND ALERTED THE COURT TO THE
       SAME PRIOR TO THE FORMAL ENTRY OF  THE
       STAY.

14.                                    REDACTED

Honeywell amended its complaint to include Citizen. (D.I. 239.)[4] This amendment was part of an overall effort by Honeywell in October and November of 2005 to bring all the identified LCD suppliers into the case.

15.    Judge Jordan had previously requested that Honeywell report back on the status of the reconfiguration effort in January 2006. (D.I. 237 at ¶ 6.) In December 2005, Honeywell met telephonically with counsel for the Manufacturer Defendants to discuss moving the case forward once the reconfiguration was complete. Decl. Woods, Ex. G. In this meeting, and in a follow-up letter to all Defendants, Honeywell raised the Section 271 issue and stated that "there is a threshold issue at to whether any of the defendants dispute that Honeywell's claims can be brought to trial because of any territorial limitations of [Section 271]." Decl. Woods, Ex G. The Defendants, including Citizen and Matsushita, responded that the issue was premature and that they did "not believe [that the Section 271 issue] is a significant 'threshold' issue that must be addressed now[.]" Decl. Woods, Ex. H.

---

[4]                              REDACTED
       Honeywell initially named the wrong Citizen entities in the amended complaint, and filed a separate complaint on December 16, 2005, naming the current Citizen entities. (Case No. 1:05-cv-00874) Honeywell then proceeded to effect the dismissal of the November 7, 2005 amended complaint. (D.I. 297; D.I. 298.)

16.    In January 2006, Honeywell expressly raised the Section 271 issue with the Court in its Status Report:

> Honeywell is concerned that the LCD Manufacturers will assert that the liability portion of this matter can not be tried against them and that a judgment could not be rendered based on the territorial limitations of 35 U.S.C. § 271. Honeywell believes this threshold issue must be resolved as soon as possible to *avoid wasteful or duplicative proceedings*. Honeywell raised this issue with the defendants, but the defendants do not believe it is an issue that must be addressed now.

Decl. Woods, Ex. I at 9 (emphasis added).

17.    After Honeywell raised the Section 271 issue with the Defendants and the Court, Citizen filed its Answer. (Case No. 1:05-cv-00874, D.I. 7.) On February 21, 2006, Citizen set out a multitude of defenses, but *did not* expressly mention Section 271. (Case No. 1:05-cv-00874, D.I. 7.) Moreover, Citizen, in its Answer, sought affirmative relief in the form of declaratory judgments on non-infringement, invalidity, and unenforceability. (Case No. 1:05-cv-00874, D.I. 7.)

18.    During a subsequent status conference with Judge Jordan, on March 13, 2006, that included both Citizen and Matsushita, Honeywell again pointed to the "stalking horse issue" of Section 271 and the fact that "the defendants have not yet taken a position as to whether they actually put the products that we're arguing about into the stream of commerce in the United States." Decl. Woods, Ex. J at 3-4, 46. At no time during this exchange did either Citizen or Matsushita acknowledge Section 271 was in play. *See, generally*, Decl. Woods, Ex. J. Judge Jordan proceeded to finalize the provisional stay. (D.I. 445.)

19.    Several months later, after considering the issue premature, *see* ¶ 15 *supra*, Citizen asserted Section 271 for the first time on May 19, 2006. Decl. Woods, Ex. K. This

was one day after Matsushita filed a representation required by Judge Jordan in order to formally trigger Matsushita's stay. *See* ¶¶ 23, 26, *infra*.

## V.  MATSUSHITA WAS NOT COMPLETELY STAYED UNTIL MAY 2006.

20.    Despite the entry of the formal stay in 2005, Matsushita's status remained at issue. (D.I. 445.) Matsushita was a "hybrid" Defendant in that it both manufactured LCDs and purchased LCDs from other suppliers. (D.I. 429 at 5-18.) Judge Jordan's stay did not apply to LCD manufacturing activity, so Matsushita initially remained an active defendant in the case. (D.I. 202.)

21.    Following the Court's May 18, 2005 Order staying the Customer Defendants, Matsushita had asserted that it was stayed, even though it also manufactured LCDs. Decl. Woods, Ex. B. Honeywell located infringing LCDs that Matsushita admitted to manufacturing, and so the stayed status of Matsushita remained in dispute. (D.I. 429 at 5-18.)

22.    Honeywell served Matsushita with discovery in March, 2006, requesting, *inter alia*, information regarding the number of infringing LCDs sold in the United States.  Decl. Woods, Ex. F. Specifically, Honeywell asked Matsushita to "identify by model number each module that was sold in the United States and state the number of each such modules sold." Decl. Woods, Ex. F, Interrogatory No. 12. This discovery was never answered because Matsushita was stayed in May 2006. *See* ¶ 23, *infra*.

23.    Matsushita moved the Court to stay the case against it completely, on the grounds that its LCD manufacturing activity was small and that it had ceased such activities. (D.I. 301.) At the hearing on this motion on May 4, 2006, Honeywell noted that Matsushita had not provided Honeywell with complete information about its suppliers, and Judge Jordan indicated that Matsushita should provide information about unknown modules. (D.I. 429.)

Nevertheless, Judge Jordan granted the stay. (D.I. 445). Since that date, Matsushita has not been involved in the ongoing and regular progress of the case. Decl. Woods ¶ 22.

> **VI.    CITIZEN HAD COMMUNICATED WITH MATSUSHITA ABOUT THE INFRINGING LCDS BEFORE IT WAS NAMED AS A DEFENDANT, BUT HONEYWELL WAS NOT INFORMED OF THESE COMMUNICATIONS UNTIL AFTER MATSUSHITA WAS STAYED.**

24.    Although Citizen Displays Co., Ltd. was not named as a defendant until December 16, 2005, Mr. Takeuchi, an employee of Citizen Displays Co. contacted Matsushita *before December 12, 2005* to determine "whether any X300 Panasonic handsets with LCD modules supplied by Citizen were ever sold in the North American market." (D.I. 1005 at ¶ 3.) On December 15, 2005 the simple answer from Matsushita was yes. (D.I. 1005 at ¶¶ 3-5.) The infringing LCD in the X300 is the K1122H-HL LCD manufactured by Citizen. Decl. Woods, Ex. A.

25.    It is undisputed that Matsushita shipped at least one thousand (1000) infringing LCDs manufactured by Citizen to the United States. (D.I. 1002); *see* ¶ 3, *supra*. It remains unclear, however, how many additional infringing LCDs manufactured by Citizen that were shipped to and sold in the United States by Matsushita. *see* ¶ 22, *supra*.

26.    Neither Citizen nor Matsushita informed Honeywell or the Court that these one thousand (1000) infringing LCDs were sold in the U.S. until *after* the Court agreed to stay Matsushita as a Customer Defendant on May 4, 2006. Decl. Woods, Ex. K. Before finalizing Matsushita's stay, the Court required Matsushita to make certain representations supporting its status as a customer defendant (D.I. 429 at 18-19.) - - these representations were made in the Declaration of Tesuyuki Watanade filed on May 18, 2006. (D.I. 441) One day later,

in a delayed response to Honeywell's Interrogatory No.2, Citizen for the first time informed Honeywell of the 1,000 infringing LCDs shipped to the U.S. Decl. Woods, Ex. K. The emails evidencing the shipment of the infringing LCDs to the U.S. were not produced until September 11, 2006. Decl. Woods, Ex. O.

> VII.    THE RECORD REMAINS UNCLEAR AS TO HOW THE INFRINGING CITIZEN LCDS WERE SUPPLIED AND DISTRIBUTED.

27.    When the Court was considering the original stay motions, Honeywell highlighted the potential for the instant situation, namely that, with an opportunity for discovery only from the Manufacturer Defendants, Honeywell will be denied the opportunity to determine the supply and distribution chain for the LCD modules in question. (D.I. 204 at 38-39.) At that time, the Court agreed that, to avoid prejudicing Honeywell, discovery from the Customer Defendants regarding where infringing LCDs were sold would occur. (D.I. 204 at 39.)

28.    A year later, Honeywell sought, from Judge Thynge, limited relief from the stay to conduct discovery regarding sales and commercial success of the '371 patent. (D.I. 724.) Honeywell highlighted to Judge Thynge that "[t]he Manufacturer Defendants [like Citizen] have been unable, or unwilling, to provide the following information which bears directly on the issue of commercial success: (1) The amount of the Accused Modules which enter the United States via their incorporation into a portable consumer electronic product." (D.I. 724 at 10.)

29.    The stayed Defendants, including Matsushita, resisted this motion to take limited discovery as contemplated by the Court. (D.I. 732.) The stayed Defendants argued that "Honeywell is not entitled to the broad discovery it seeks from the Customer Defendants because they possess little or no information that is truly relevant to 'commercial success' and that is not

already in the possession of the Manufacturer Defendants. (D.I. 732 at 1.) This motion seeking

limited discovery from Matsushita remains pending. Decl. Woods ¶ 23.

30.    Citizen, a Manufacturer Defendant, took no position on Honeywell's

motion seeking discovery from the Customer Defendants. (D.I. 724; D.I. 732.)

31.    Despite Judge Thynge's decision to keep the motion for Customer

Defendant discovery pending, Citizen later urged Honeywell to file a motion to lift the stay on

discovery from Matsushita. Decl. Woods, Exs. P, Q. Citizen even stated that it would not oppose

such a motion. Decl. Woods, Exs. P, Q. However, Citizen did not offer to join in that motion, nor

did it offer to encourage Matsushita to informally provide such information. Decl. Woods, Exs.

P, Q.

VIII.    THE    RECORD    REMAINS    UNCLEAR    AS    TO
WHETHER CITIZEN IS DEFENDING MATSUSHITA.

32.    In early 2007, Judge Thynge expressly called for the parties to proffer

their strategies for the efficient handling of the remainder of the case. (D.I. 688). This directive

came shortly after the Federal Circuit's decision in *DSU Med. Corp. v. JMS Co., Ltd.* Honeywell

submitted its position that "the impact of the *DSU* decision could undermine the fundamental

premise of Judge Jordan's reorganization of the case. The Manufacturer Defendants may seek to

avoid…answering for the infringement and damages caused by their customers…." Decl.

Woods, Ex. M. In this letter, Honeywell suggested that the Court direct the Manufacturer and

Customer Defendants to decide amongst themselves who will defend against Honeywell's

original claims. Decl. Woods, Ex. M.

33.    On January 25, 2007, Judge Thynge heard the parties, with Citizen in

attendance. Decl. Woods, Ex. N at 2. Honeywell raised the Section 271 issue again and asked,

"who is going to really answer for Honeywell's initial allegations of infringement in this case?"

Decl. Woods, Ex. N at 16-17. Further, Honeywell emphasized that:

> [I]t is inefficient to proceed down a path against the manufacturer defendants if the Court and Honeywell are going to have to face summary judgment motions based upon indirect sales and those types of issues which don't have any bearing and would have no impact upon Honeywell's initial and original claims against the customers….

Decl. Woods, Ex. N at 20. Meanwhile, counsel for the Manufacturer Defendants, including Citizen, claimed that "everything [Honeywell was saying] has been addressed." Decl. Woods, Ex. N at 21.

34.     Relying on the fact that Judge Jordan had deferred the issue of infringement until later, Judge Thynge likewise deferred consideration of the issue, but noted that the participation of the Customer Defendants "made sense" once the infringement issue was taken up:

> [D]epending … upon the outcome of that aspect of it will lead us into whether the issue of direct or indirect infringement becomes important. If it should, then it makes all the sense in the world to me that the customer defendants, if not fully participate, at least partially participate in the issues; specifically, the issue dealing with indirect infringement.

Decl. Woods, Ex. N at 32.

35.     As it currently stands, Honeywell has not been afforded an opportunity to conduct discovery on the issue as to whether Matsushita is looking to Citizen to defend it for the modules used in the X300. Decl. Woods ¶¶ 22-24. In its motion papers, Citizen represents that it "has not agreed to indemnify *any United States customer* for use of the K1122H-HL module within the United States[.]" (D.I. 1004 at ¶6 (emphasis added).) This of course avoids the

question of whether Citizen is indemnifying Matsushita Electrical Industrial Co., a Japanese corporation with its principal place of business in Osaka, Japan. (D.I. 1; D.I. 93.)

36.     Furthermore, neither the Court, nor Honeywell knows Matsushita's position as to whether Citizen has indemnified Matsushita. Decl. Woods ¶ 22, 24. Honeywell directed discovery to Matsushita regarding indemnification in March 2006, Decl. Woods, Ex. L, Interrogatory No. 11, but because Matsushita is stayed, it has not answered these questions. (D.I. 445.)

IX.     MATSUSHITA REMAINS SILENT EVEN AS CITIZEN SEEKS DISMISSAL.

37.     In the wake of the filing of Citizen's motion, Honeywell asked Citizen whether it had informed its customer Matsushita that Citizen was trying to escape liability by asserting Section 271. Decl. Woods, Ex. R. Citizen's response first included the requirement that Matsushita sign onto the Protective Order before it saw Citizen's Motion for Summary Judgment. Decl. Woods, Ex. S. Citizen subsequently backed away from the "sign-on" requirement, so long as Matsushita agreed to be bound by the terms of the Protective Order. Decl. Woods, Ex. T. Matsushita has remained silent on this issue. Decl. Woods ¶¶ 22, 24.

38.     To date, Matsushita has remained silent as to who will be accountable for the infringing LCDs made by Citizen and sold in the United States by Matsushita. Decl. Woods ¶ 22, 24.

<u>CONCLUSION</u>

Based on the foregoing Counter-Statement of Material Facts, Citizen's Motion for Summary Judgment of Non-Infringement should be denied pursuant to Fed. R. Civ. P. 56(f) until Honeywell is granted the right to conduct discovery of Matsushita and/or until Citizen and Matsushita are jointly required to answer who between them will be accountable for Honeywell's allegations of infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
Peter N. Surdo
Amy N. Softich
Daniel M. White
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
Alan E. McKenna
Michael J. Garko
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
(617) 267-2300

June 2, 2008

*/s/ Thomas C. Grimm*

_____
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com
  *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 13, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

I also certify that on June 13, 2008, I caused to be served true and correct copies of the foregoing on the following as indicated below:

<u>**BY E-MAIL**</u>**:**

Karen L. Pascale
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building, 17th floor
1000 West Street
Wilmington, DE  19801
kpascale@ycst.com

Richard D. Kelly
Andrew M. Ollis
OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
rkelly@oblon.com
aollis@oblon.com

*Attorneys for Optrex America, Inc.*

Matt Neiderman
DUANE MORRIS LLP
1100 North Market Street, 12th Floor
Wilmington, DE  19801-1246
MNeiderman@duanemorris.com

Donald R. McPhail
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006
drmcphail@duanemorris.com

*Attorneys for InnoLux Display Corporation*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Stephen S. Korniczky
Elizabeth L. Brann
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
3579 Valley Centre Drive
San Diego, CA  92130
stephenkorniczky@paulhastings.com
elizabethbrann@paulhastings.com

Hamilton Loeb
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
875 15th Street, N.W.
Washington, DC  20005
hamiltonloeb@paulhastings.com

*Attorneys for Samsung SDI America, Inc.*
*and Samsung SDI Co., Ltd.*

Philip A. Rovner
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
provner@potteranderson.com

Lawrence Rosenthal
Matthew W. Siegal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982
lrosenthal@stroock.com
msiegal@stroock.com

*Attorneys for FUJIFILM Corporation
and FUJIFILM U.S.A., Inc.*

David J. Margules
BOUCHARD MARGULES
   & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington DE 19801
dmargules@BMF-law.com

Stuart Lubitz
David H. Ben-Meir
Rose Hickman
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
slubitz@hhlaw.com
dhben-meir@hhlaw.com
rahickman@hhlaw.com

*Attorneys for Citizen Watch Co., Ltd.
and Citizen Displays Co., Ltd.*

*/s/ Thomas C. Grimm*

_____
Thomas C. Grimm (#1098)
tgrimm@mnat.com

734570

2