# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-1338-KAJ |
| v. | ) ) | (Consolidated) |
| APPLE COMPUTER, INC., et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANSWERS TO CITIZEN WATCH CO., LTD. AND
CITIZEN DISPLAYS CO., LTD.'S FIRST SET OF INTERROGATORIES (NO. 1-9)**

Plaintiffs Honeywell International Inc. ("Honeywell International") and Honeywell Intellectual Properties Inc. ("HIPI") (collectively, "Honeywell") hereby serve the following objections and responses to Defendants Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd.'s ("Citizen") First Set of Interrogatories to Plaintiffs (No. 1-9):

## OBJECTIONS

1.     Honeywell objects to each definition in Citizen's First Set of Interrogatories to the extent that it is inconsistent with or imposes an obligation beyond that required by the Federal Rules of Civil Procedure or any local rule for this Court.

2.     Honeywell objects to each interrogatory in Citizen's First Set of Interrogatories to the extent that it is inconsistent with or imposes an obligation beyond that required by the Federal Rules of Civil Procedure or any local rule for this Court.

3.     Honeywell objects to each interrogatory to the extent that it is unlimited in time or scope, overly broad, unduly burdensome or not reasonably calculated to lead to discovery of admissible evidence.

4.      Honeywell objects to each interrogatory to the extent it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity or any other privilege or immunity.

5.      Honeywell objects to each interrogatory to the extent it seeks discovery or information or identification of documents that are a matter of public record or otherwise equally accessible to all parties.

6.      Honeywell objects to each interrogatory to the extent it seeks unrestricted access to information or identification of documents that are protected from disclosure under a confidentiality obligation imposed by contract, by order or by understanding binding on Honeywell.

7.      Honeywell reserves the right to modify, supplement, add to or amend the responses to these interrogatories to the extent required or permitted by the Federal Rules of Civil Procedure or any local rule of this Court.

## ANSWERS

**INTERROGATORY NO. 1:**

Identify each Citizen product that you contend infringes any claim of the '371 patent and separately identify for each identified product the specific claim(s) that is/are allegedly infringed and whether you contend the alleged infringement is direct (*i.e.,* under 35 U.S.C. § 271(a)) or indirect (*i.e.,* under 35 U.S.C. § 271(b) or (c)).

**ANSWER:**

Honeywell objects to this Interrogatory to the extent it calls for information and documents protected by the attorney-client privilege and/or work product doctrine. Honeywell further objects to this Interrogatory on the grounds that it is premature in that Honeywell has not yet received all discovery from Citizen regarding Citizen's products.

Subject to and without waiving Honeywell's general and specific objections, upon information and belief, based on Honeywell's unilateral investigation, Honeywell states that, for the reasons set forth more fully below, at least the following LCD module manufactured by Citizen infringes claim 3 of the '371 patent: the K1122H-HL module contained in the Matsushita Phone Model X300.

**INTERROGATORY NO. 2:**

Separately for each Citizen product and specific claim(s) that you identified in response to Interrogatory No. 1 as being indirectly infringed under 35 U.S.C. § 271(b) or (c), state in full your basis for contending that Citizen has induced and/or contributed to infringement of such claim(s), describing each act performed by Citizen which allegedly induced or contributed to infringement, the direct infringement allegedly resulting from each such act (including the identity of the Third Party committing the direct infringement), how each such act resulted in direct infringement, and the basis for your contention that Citizen intended to cause such direct infringement and/or the basis for your contention that Citizen knew that such Citizen product was especially made or especially adapted for use in such direct infringement.

**ANSWER:**

Honeywell objects to this Interrogatory on the grounds that it is premature in that Honeywell has not yet received full and complete discovery from Citizen that is relevant to the subject matter of this Interrogatory.

Subject to and without waiving Honeywell's general and specific objections, Honeywell states that the product identified in response to Interrogatory No. 1 infringes claim 3 of the '371 patent and was purchased in the United States. Honeywell further incorporates its response to Interrogatory No. 3 below.

Honeywell's investigation is ongoing and Honeywell reserves the right to supplement this response after receipt and review of further information, including documents and discovery responses from Citizen as well as applicable Court Orders, including orders regarding claim construction.

**INTERROGATORY NO. 3:**

Separately for each Citizen product and each corresponding claim(s) that you identified in response to Interrogatory No. 1, provide an infringement chart that identifies the structure of each Citizen product that you allege causes it to infringe each limitation; state whether Honeywell alleges that the limitation is literally infringed or infringed under the doctrine of equivalents; state all factual bases that support your contention that Citizen infringes and identify three (3) persons most knowledgeable about the factual bases that support your contentions of infringement; and identify all documents on which you rely to support your contentions or [sic] infringement.

**ANSWER:**

Honeywell objects to this Interrogatory on the grounds that it is premature in that Honeywell has not yet received full and complete discovery from Citizen that is relevant to the subject matter of this Interrogatory.

Subject to and without waiving Honeywell's general and specific objections, Honeywell responds by incorporating its response to Interrogatory No. 1. In addition, Honeywell states that the K1122H-HL module literally infringes claim 3 of the '371 patent for the following reasons:

| **Claim 3** | |
|---|---|
| A display apparatus comprising: | |
| a light source; | The LCD module has a backlight. |
| a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and | The LCD module has a liquid crystal panel that is mounted adjacent to the backlight and that receives light from the backlight. |
| first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel | The LCD module includes two films, which constitute two lens arrays. |
| for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, | The lens arrays provide a predetermined variation in the transmission of light from the backlight through the lens arrays and liquid crystal panel. The variation depends upon viewing angle. |
| Wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between | Both lens arrays are rotated 10 degrees about the axis perpendicular to the liquid crystal panel, providing a slight misalignment between the lenslets and the liquid crystal panel. |

| said lenslets and said liquid crystal panel. | |
|---|---|

Honeywell states that in determining that this module infringes claim 3 of the '371 patent, Honeywell disassembled the LCD module to determine whether the product contains two or more lens arrays. If so, Honeywell determined whether one or more of the lens arrays was rotated, and if so, Honeywell measured the angle of rotation. The person most knowledgeable about Honeywell's LCD module analysis is Ted Wood.

Honeywell also states that all past, present, and future versions of the module Honeywell has identified as specifically accused of infringement are likely to practice claim 3 of the '371 patent, which Citizen must identify pursuant to the Court's Order of July 21, 2006. This includes both generational changes and related modules adapted based on customer or end product specifications.

Honeywell's investigation is ongoing, and Honeywell reserves the right to supplement this response to assert infringement of additional products after the receipt and review of further information, including documents and supplemental discovery responses from Citizen as well as applicable Court Orders, including orders regarding claim construction.

**INTERROGATORY NO. 4:**

Separately for each claim of the '371 patent that you contend Citizen willfully infringes, specifically identify and describe the period of such alleged willful infringement and all factual bases for your contention; identify all documents upon which you rely or will rely on in support of the factual bases identified and identify three (3) persons most knowledgeable about the factual bases.

**ANSWER:**

Honeywell objects to this Interrogatory on the grounds that it is premature in that Honeywell has not yet received full and complete discovery from Citizen that is relevant to the subject matter of this Interrogatory. Honeywell also objects to this Interrogatory to the extent it

calls for information and documents protected by the attorney-client privilege and/or work product doctrine. Honeywell states that discovery previously served on Citizen, if properly answered, would provide Honeywell with the information necessary for analyzing a number of issues posed in this Interrogatory.

Subject to and without waiving Honeywell's general and specific objections, Honeywell states that at least since the filing of this suit on October 6, 2004, Citizen has been aware that Honeywell has asserted infringement against Citizen's customers for direct infringement of claim 3 of the '371 patent. To the extent Citizen continued to manufacture the accused LCD module after it received notice of infringement, it is liable for willful infringement. Honeywell's investigation is ongoing and Honeywell reserves the right to supplement this response after receipt and review of further information, including discovery responses from Citizen as well as applicable Court Orders.

**INTERROGATORY NO. 5:**

Separately for each Citizen product identified in response to Interrogatory No. 1, state the exact date upon which you first became aware of such product or a product of a third party containing such product, identify the person who first acquired such awareness, and describe the activities taken by you to investigate whether such product or third party product containing such product infringes any claim of the '371 patent.

**ANSWER:**

Honeywell objects to this Interrogatory as overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Honeywell also objects to this Interrogatory to the extent it calls for information and documents protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving Honeywell's general and specific objections, Honeywell first became aware of the K1122H-HL module in November 2005. In determining that this

product infringes claim 3 of the '371 patent, Honeywell disassembled the LCD module to first determine whether the product contains two or more lens arrays. If so, Honeywell then determined whether one or more of the lens arrays was rotated, and if so, measured the angle of rotation. The person most knowledgeable about Honeywell's LCD module analysis is Ted Wood.

**INTERROGATORY NO. 6:**

Separately, for each LCD model that Honeywell has determined does not infringe the '371 patent, identify the module, the product from which it was taken and each limitation of the claims of the '371 patent which is not infringed.

**ANSWER:**

Honeywell objects to this Interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Honeywell further objects to this Interrogatory as calling for information protected by the attorney-client privilege and/or work product doctrine.

**INTERROGATORY NO. 7:**

Separately, for each Citizen product identified in response to Interrogatory No. 1, identify all products of End Product Manufacturers which include such Citizen product.

**ANSWER:**

Honeywell objects to this Interrogatory to the extent it seeks information that is in the defendants' knowledge, possession and control, and not Honeywell's. Honeywell further objects to this Interrogatory on the grounds that it is premature in that Honeywell has not yet received all of the discovery Honeywell has requested from the defendants that would inform Honeywell's response to this Interrogatory. Honeywell further objects to this Interrogatory to the extent the information requested is better known to third parties, including Citizen's own customers.

Honeywell further states that Matsushita identified Citizen as a supplier of LCD modules, specifically the K1122H-HL modules contained in the Matsushita Phone Model X300.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
lpolizoti@mnat.com
mgranovsky@mnat.com
*Attorneys for Honeywell International Inc.*
*and Honeywell Intellectual Properties Inc.*

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Michael D. Okerlund
Denise S. Rahne
Peter N. Surdo
Marta M. Chou
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
Alan E. McKenna
Jeremy C. McDiarmid
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA  02199
(617) 267-2300

November 6, 2006
544493

## VERIFICATION

I, David Brafman, Assistant General Cousel, IP Litigation of Honeywell International Inc., have read the foregoing responses, know the contents thereof and state that the facts stated therein are either based upon my personal knowledge and are known by me to be true, or are not within my personal knowledge, but have been assembled by authorized employees and counsel for Honeywell International Inc. and/or Honeywell Intellectual Properties Inc., and as to such facts I am informed and believe that they are true.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: November , 2006          HONEYWELL INTERNATIONAL INC.

By: _____
David Brafman
Assistant General Counsel, IP Litigation
Honeywell International Inc.

MP3 20180783.1
5/22/06

<u>CERTIFICATE OF SERVICE</u>

I certify that on November 6, 2006, I caused to be served true and correct copies

of the foregoing on the following by hand and by e-mail:

John W. Shaw
Monte T. Squire
YOUNG CONAWAY STARGATT
   & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

*Attorneys for Sony Corporation, Sony
Corporation of America and ST Liquid
Crystal Display*

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551

*Attorneys for Arima Display Corporation,
Matsushita Electrical Industrial Co., and
Matsushita Electrical Corporation of America*

Karen L. Pascale
YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
The Brandywine Building, 17th floor
1000 West Street
Wilmington, DE  19801

*Attorneys for Optrex America, Inc.*

Philip A. Rovner
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for Fuji Photo Film Co., Ltd.
and Fuji Photo Film U.S.A., Inc.*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

*Attorneys for Casio Computer Co., Ltd.*

David J. Margules
John M. Seaman
BOUCHARD MARGULES
   & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington DE 19801

*Attorneys for Citizen Watch Co., Ltd.
and Citizen Displays Co., Ltd.*

Robert J. Katzenstein
Robert Karl Beste, III
SMITH, KATZENSTEIN
  & FURLOW LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

*Attorneys for Seiko Epson Corporation*

William J. Marsden, Jr.
Raymond N. Scott, Jr.
FISH & RICHARDSON, P.C.
919 North Market Street, Suite 1100
Wilmington DE 19899-1114

*Attorneys for International Display Technology
and International Display Technology USA, Inc.*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for BOE Hydis Technology Co.,
Ltd., Hitachi Displays, Ltd., Toppoly
Optoelectronics Corp., Koninklijke Philips
Electronics N.V., Philips Electronics North
America Corp., Wintek Corp., Wintek
Electro-Optics Corporation, Samsung SDI
America, Inc.  and Samsung SDI Co., Ltd.*

Daniel V. Folt
Gary W. Lipkin
DUANE MORRIS LLP
1100 North Market Street, 12th Floor
Wilmington, DE  19801-1246

*Attorneys for InnoLux Display Corporation*

    I also certify that on November 6, 2006, I caused to be served true and correct

copies of the foregoing on the following by e-mail:

Robert C. Scheinfeld
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112

*Attorneys for Hitachi Displays, Ltd.*

Richard D. Kelly
Andrew M. Ollis
OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314

*Attorneys for Optrex America, Inc.*

Elizabeth A. Niemeyer
FINNEGAN, HENDERSON,
 FARABOW, GARRETT
 & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001

York M. Faulkner
FINNEGAN, HENDERSON,
 FARABOW, GARRETT
 & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190

*Attorneys for Toppoly Optoelectronics,*
*Wintek Corp. and Wintek Electro-Optics*
*Corporation*

Stephen S. Korniczky
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130

Hamilton Loeb
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005

*Attorneys for Samsung SDI Co., Ltd.*
*and Samsung SDI America, Inc.*

John T. Johnson
FISH & RICHARDSON P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611

*Attorneys for Casio Computer Co., Ltd.*

Alan M. Grimaldi
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401

*Attorneys for Koninklijke Philips Electronics*
*N.V., and Philips Electronics North America*
*Corporation*

John Flock
KENYON & KENYON
One Broadway
New York, NY 10004-1050

*Attorneys for Sony Corporation, Sony*
*Corporation of America, and ST Liquid*
*Crystal Display Corporation*

Kevin M. O'Brien
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006

*Attorneys for BOE Hydis Technology Co., Ltd.*

Robert L. Hails, Jr.
KENYON & KENYON
1500 K Street, N.W.
Washington, DC 20005-1257

*Attorneys for Sony Corporation, Sony*
*Corporation of America, and ST Liquid*
*Crystal Display Corporation*

David J. Lender
Steven J. Rizzi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

*Attorneys for Matsushita Electrical Industrial*
*Co. and Matsushita Electrical Corporation of*
*America*

Lawrence Rosenthal
Matthew W. Siegal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982

*Attorneys for Fuji Photo Film Co., Ltd.*
*and Fuji Photo Film U.S.A., Inc.*

Donald R. McPhail
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC 20006

*Attorneys for InnoLux Display Corporation*

Stuart Lubitz
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

*Attorneys for Seiko Epson Corporation, Citizen*
*Watch Co., Ltd. and Citizen Displays Co., Ltd.*

Dan C. Hu
TROP PRUNER & HU, P.C.
1616 South Voss Road
Suite 750
Houston, TX 77057-2631

*Attorneys for Arima Display Corporation*

_____
Maria Granovsky (#4709)

544493

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. | ) | |
| and HONEYWELL INTELLECTUAL | ) | |
| PROPERTIES INC., | ) | |
| | ) | C.A. No. 04-1338 (KAJ) |
| Plaintiffs, | ) | |
| | ) | CONSOLIDATED |
| v. | ) | |
| | ) | |
| APPLE COMPUTER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

I certify that on November 6, 2006, copies of *(1)* *Plaintiffs' Answers to Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd.'s First Set of Interrogatories (Nos. 1-9), and (2)* *Plaintiffs' Objections and Responses to Defendants Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd.'s First Set of Requests for Production* were caused to be served upon counsel of record in the manner indicated:

## BY HAND & E-MAIL:

John W. Shaw
Monte T. Squire
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

*Attorneys for Sony Corporation, Sony Corporation of America and ST Liquid Crystal Display*

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551

*Attorneys for Arima Display Corporation, Matsushita Electrical Industrial Co., and Matsushita Electrical Corporation of America*

Karen L. Pascale
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building, 17th floor
1000 West Street
Wilmington, DE  19801

*Attorneys for Optrex America, Inc.*

Philip A. Rovner
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for Fuji Photo Film Co., Ltd.*
*and Fuji Photo Film U.S.A., Inc.*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

*Attorneys for Casio Computer Co., Ltd.*

David J. Margules
John M. Seaman
BOUCHARD MARGULES
  & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington DE 19801

*Attorneys for Citizen Watch Co., Ltd.*
*and Citizen Displays Co., Ltd.*

Robert J. Katzenstein
Robert Karl Beste, III
SMITH, KATZENSTEIN
  & FURLOW LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

*Attorneys for Seiko Epson Corporation*

William J. Marsden, Jr.
Raymond N. Scott, Jr.
FISH & RICHARDSON, P.C.
919 North Market Street, Suite 1100
Wilmington DE 19899-1114

*Attorney for International Display Technology and*
*International Display Technology USA, Inc.*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

*Attorneys for BOE Hydis Technology Co.,
Ltd., Hitachi Displays, Ltd., Toppoly
Optoelectronics Corp., Koninklijke Philips
Electronics N.V., Philips Electronics North
America Corp., Wintek Corp., Wintek
Electro-Optics Corporation, Samsung SDI
America, Inc. and Samsung SDI Co., Ltd.*

Daniel V. Folt
Gary W. Lipkin
DUANE MORRIS LLP
1100 North Market Street, 12th Floor
Wilmington, DE 19801-1246

*Attorneys for InnoLux Display Corporation*

**BY E-MAIL:**

Robert C. Scheinfeld
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
robert.scheinfeld@bakerbotts.com

*Attorneys for Hitachi Displays, Ltd.*

Andrew M. Ollis
OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
aollis@oblon.com

*Attorneys for Optrex America, Inc.*

Elizabeth A. Niemeyer
FINNEGAN, HENDERSON,
  FARABOW, GARRETT
  & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
elizabeth.niemeyer@finnegan.com

York M. Faulkner
FINNEGAN, HENDERSON,
  FARABOW, GARRETT
  & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
york.faulkner@finnegan.com

*Attorneys for Toppoly Optoelectronics,
Wintek Corp. and Wintek Electro-Optics
Corporation*

John T. Johnson
FISH & RICHARDSON P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
HONEYWELL-FR@fr.com

*Attorneys for Casio Computer Co., Ltd.*

John Flock
KENYON & KENYON
One Broadway
New York, NY 10004-1050
jflock@kenyon.com

*Attorneys for Sony Corporation, Sony
Corporation of America, and ST Liquid
Crystal Display Corporation*

Stephen S. Korniczky
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130
stephen_korniczky@paulhastings.com

Hamilton Loeb
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
hamiltonloeb@paulhastings.com

*Attorneys for Samsung SDI Co., Ltd.
and Samsung SDI America, Inc.*

Alan M. Grimaldi
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
grimaldia@howrey.com

*Attorneys for Koninklijke Philips Electronics
N.V., and Philips Electronics North America
Corporation*

Kevin M. O'Brien
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
kevin.m.o'brien@bakernet.com

*Attorneys for BOE Hydis Technology Co., Ltd.*

Steven J. Rizzi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
steven.rizzi@weil.com

*Attorneys for Matsushita Electrical Industrial
Co. and Matsushita Electrical Corporation of
America*

Stuart Lubitz
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
slubitz@hhlaw.com

*Attorneys for Seiko Epson Corporation, Citizen
 Watch Co., Ltd. and Citizen Displays Co., Ltd.*

Matthew W. Siegal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
msiegal@stroock.com

*Attorneys for Fuji Photo Film Co., Ltd.
and Fuji Photo Film U.S.A., Inc.*

Dan C. Hu
TROP PRUNER & HU, P.C.
1616 South Voss Road
Suite 750
Houston, TX  77057-2631
hu@tphm.com

*Attorneys for Arima Display Corporation*

Donald R. McPhail
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006
**drmcphail@duanemorris.com**

*Attorneys for InnoLux Display Corporation*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maria Granovsky*
_____

Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
Maria Granovsky (#4709)
1201 N. Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
lpolizoti@mnat.com
mgranovsky@mnat.com
   *Attorneys for Honeywell International Inc.*
   *and Honeywell Intellectual Properties Inc.*

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Michael D. Okerlund
Denise S. Rahne
Peter N. Surdo
Marta M. Chou
ROBINS, KAPLAN, MILLER
   & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
Alan E. McKenna
Jeremy C. McDiarmid
ROBINS, KAPLAN, MILLER
   & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA  02199
(617) 267-2300

November 6, 2006
515565

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, Christopher E. Chalsen, Hua Chen, Jay C. Chiu, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Kevin C. Ecker, Amy Elizabeth Evans, York M. Faulkner, Maxwell A. Fox, Terry D. Garnett, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Angie Hankins, Richard L. Horwitz, Dan C. Hu, John T. Johnson, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Matthew W. King, Stephen S. Korniczky, Gary William Lipkin, Hamilton Loeb, Robert Maier, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Kevin M. O'Brien, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, Alana A. Prills, Steven J. Rizzi, Lawrence Rosenthal, Avelyn M. Ross, Philip A. Rovner, Diana M. Sangelli, Robert C. Scheinfeld, Carl E. Schlier, Chad Michael Shandler, John W. Shaw, Matthew W. Siegal, Neil P. Sirota, Monte Terrell Squire, William J. Wade, Peter J. Wied, Roderick B. Williams, Vincent K. Yip, Edward R. Yoches.

I also certify that on November 6, 2006, I caused to be served true and correct copies of the foregoing on the following by hand and by e-mail:

John W. Shaw
Monte T. Squire
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

*Attorneys for Sony Corporation, Sony Corporation of America and ST Liquid Crystal Display*

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square, P.O. Box 551
Wilmington, DE  19899-0551

*Attorneys for Arima Display Corporation, Matsushita Electrical Industrial Co., and Matsushita Electrical Corporation of America*

Karen L. Pascale
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building, 17th floor
1000 West Street
Wilmington, DE  19801

*Attorney for Optrex America, Inc.*

Philip A. Rovner
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for Fuji Photo Film Co., Ltd. and Fuji Photo Film U.S.A., Inc.*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

*Attorneys for Casio Computer Co., Ltd.*

David J. Margules
John M. Seaman
BOUCHARD MARGULES
  & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington DE 19801

*Attorneys for Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd.*

Robert J. Katzenstein
Robert Karl Beste, III
SMITH, KATZENSTEIN
  & FURLOW LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899

*Attorneys for Seiko Epson Corporation*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899

*Attorneys for BOE Hydis Technology Co.,
Ltd., Hitachi Displays, Ltd., Toppoly
Optoelectronics Corp., Koninklijke Philips
Electronics N.V., Philips Electronics North
America Corp., Wintek Corp., Wintek
Electro-Optics Corporation, Samsung SDI
America, Inc.  and Samsung SDI Co., Ltd.*

William J. Marsden, Jr.
Raymond N. Scott, Jr.
FISH & RICHARDSON, P.C.
919 North Market Street, Suite 1100
Wilmington DE 19899-1114

*Attorney for International Display Technology and
International Display Technology USA, Inc.*

Daniel V. Folt
Gary W. Lipkin
DUANE MORRIS LLP
1100 North Market Street, 12th Floor
Wilmington, DE  19801-1246

*Attorneys for InnoLux Display Corporation*

I further certify that on November 6, 2006, I caused to be served true and correct

copies of the foregoing on the following by e-mail:

Robert C. Scheinfeld
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112
robert.scheinfeld@bakerbotts.com

*Attorneys for Hitachi Displays, Ltd.*

Andrew M. Ollis
OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
aollis@oblon.com

*Attorneys for Optrex America, Inc.*

Elizabeth A. Niemeyer
FINNEGAN, HENDERSON,
 FARABOW, GARRETT
 & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
elizabeth.niemeyer@finnegan.com

York M. Faulkner
FINNEGAN, HENDERSON,
 FARABOW, GARRETT
 & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
york.faulkner@finnegan.com

*Attorneys for Toppoly Optoelectronics,
Wintek Corp. and Wintek Electro-Optics
Corporation*

John T. Johnson
FISH & RICHARDSON P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
HONEYWELL-FR@fr.com

*Attorneys for Casio Computer Co., Ltd.*

John Flock
KENYON & KENYON
One Broadway
New York, NY 10004-1050
jflock@kenyon.com

*Attorneys for Sony Corporation, Sony
Corporation of America, and ST Liquid
Crystal Display Corporation*

Stephen S. Korniczky
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130
stephen.korniczky@paulhastings.com

Hamilton Loeb
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
hamiltonloeb@paulhastings.com

*Attorneys for Samsung SDI Co., Ltd.
and Samsung SDI America, Inc.*

Alan M. Grimaldi
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
grimaldia@howrey.com

*Attorneys for Koninklijke Philips Electronics
N.V., and Philips Electronics North America
Corporation*

Kevin M. O'Brien
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
kevin.m.o'brien@bakernet.com

*Attorneys for BOE Hydis Technology Co., Ltd.*

Steven J. Rizzi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
steven.rizzi@weil.com

*Attorneys for Matsushita Electrical Industrial
Co. and Matsushita Electrical Corporation of
America*

Stuart Lubitz
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
slubitz@hhlaw.com

*Attorneys for Seiko Epson Corporation, Citizen
 Watch Co., Ltd. and Citizen Displays Co., Ltd.*

Matthew W. Siegal
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
msiegal@stroock.com

*Attorneys for Fuji Photo Film Co., Ltd.
and Fuji Photo Film U.S.A., Inc.*

Dan C. Hu
TROP PRUNER & HU, P.C.
1616 South Voss Road
Suite 750
Houston, TX  77057-2631
hu@tphm.com

*Attorney for Arima Display Corporation*

Donald R. McPhail
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006

*Attorneys for InnoLux Display Corporation*

*/s/ Maria Granovsky*

Maria Granovsky (#4709)
mgranovsky@mnat.com

515565

## VERIFICATION

I, David Brafman, Assistant General Cousel, IP Litigation of Honeywell International Inc., have read the foregoing responses, know the contents thereof and state that the facts stated therein are either based upon my personal knowledge and are known by me to be true, or are not within my personal knowledge, but have been assembled by authorized employees and counsel for Honeywell International Inc. and/or Honeywell Intellectual Properties Inc., and as to such facts I am informed and believe that they are true.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: November , 2006          HONEYWELL INTERNATIONAL INC.


By:  _David Brafman_
David Brafman
Assistant General Counsel, IP Litigation
Honeywell International Inc.

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

MATTHEW L. WOODS
612-349-8272

May 27, 2005

<u>Via E-Mail</u>

ALL COUNSEL OF RECORD

Re:    Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
Civil Action No. 04-1337 (KAJ)
Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
Civil Action No. 04-1338 (KAJ)
Optrex America, Inc. v. Honeywell International Inc., et al.
Civil Action No. 04-1536 (KAJ)
Our File No. 019896-0229

Dear Counsel:

As you know, since November of 2004, Honeywell has always identified the bases for its infringement claim in response to requests from individual defendants. As a result, Honeywell was dismayed when the defendants represented to the Court that Honeywell had not "stepped up" and informed them which products were being accused of infringement. In order to avoid any further inaccuracies in the record, we thought it would be worthwhile to consolidate the information previously provided to individual defendants in one global letter to all defendants. For many parties, the information below is redundant of information already provided. Given the Court's direction that the case be reconfigured as a case against the LCD Module Suppliers, we have also identified specific LCD module models, where such information is available.

Viewed from the perspective of the end product manufacturers, Honeywell has confirmed that the following products practice at least Claim 3 of the '371 patent, and, if not licensed, infringe that patent:

**Apple**: Notebook models Powerbook G4, i book G4 12-inch.

**Argus**: Camera models DC3640, DC3520, DC1730.

**ACC**: Phone model 4100.

ALL COUNSEL OF RECORD
May 27, 2005
Page 3

Viewed from the perspective of the LCD module suppliers, Honeywell has confirmed that the following LCD modules practice at least Claim 3 of the '371 patent, and, if not licensed, infringe that patent:

**ArimaDisplay**: part number MC16G03A.

**AU**: part numbers A015AN02, A015AN03, B121EW01.

**Casio**: part numbers 3L15DD052741, 3Y0325721, 3H16ACB000374, 4B 18CXD007 147, 4A16AWB725030, 3L16ARD009138, 3E16ZB109369, 9H25AEB27418, 3D16RD150663, 4D25ADN02731.

**CPT**: part number CLAA150XH01.

**Seiko Epson**: part numbers 2F0145P00, CV90-1216-01, L2F0011 S5, L2F50011, L2F500..., L2F50126.

**GiantPlus**: part number 30703941.

**Hannstar**: part number HSD150PX11-B.

**Hitachi**: part numbers 05D97VMB42H, 05D96VMR42T, 05D97VMB415, TX39D89VC1FAA, TX06D16M1EA4, TX41D97VC1HAA.

**ID Tech**: part numbers AXG01A, N141X7-L04, N150X4-L01.

**LG Phillips**: part numbers LB070W02, LP154W01, LP150X08, LP171W01, LP171W02.

**NEC**: part numbers NL2432HC22-23B, 35FF007-A.

**Optrex**: part numbers F-51629, F51719AA.

**Panasonic**: part number EDTCA32QSF.

**Quanta**: part numbers QD141X1LH03, QD141X1LH12, QD14FLL07, QD15XL06.

**Samsung**: part numbers LTN152W5-L02, LTN154X1-L01, LTS350Q1-PE1, LTN154X1-L02, LTN170WX-L03, LTN154P1.

**Samsung SDI**: part numbers LJ41-02032A, LJ41-01753A.

**Sanyo**: part numbers 127CLXD, 127CLXD 345F06E, 127CLXE 329A05A, 127CLXE.

ALL COUNSEL OF RECORD
May 27, 2005
Page 2


**AEC**: DVD player model D1210.

**Casio**: Portable television models EV680, EV570, and SY30C; PDA model EG800.

**Concord**: Camera model 4360z.

**Dell**: Notebook models Inspiron 8600, PP02X, Inspiron I8000 PP01, Inspiron 600M, Inspiron 700M, Inspiron 9200.

**Fuji**: Camera models A210, S3000.

**Fujitsu**: Notebook models Lifebook N5010, Lifebook P1120.

**Kodak**: Camera models CX 6230, DX 4530, Easy-Share CX 4230.

**Kyocera**: Phone models Kyocera 7135, KX 414, SE47; Camera model SL300R.

**Matsushita**: Phone models G51M, X70; Notebook model Toughbook Y2.

**Navman**: Portable navigation devices PiN Pocket PC, iCN510 Pocket PC.

**Nikon**:  Camera models Coolpix 2100, Coolpix 3100.

**Nokia**: Phone models 3650, 3600, 3620, 3660, NGage QD, 6600, 6620, NGAGE.

**Olympus**: Camera models C740UZ, Stylus 300.

**Pentax**: Camera models OptioS4i, OptioS40.

**Sanyo**: Phone models SCP 7300, SCP 8100, SCP 5500.

**Sony**: PDA models PEG-TJ27, PEG SJ33, DSCP32; Notebook model PCG-TR3A, PCGV505EX; DVD models DVP-FX700, MV7101DS, MV65ST; Camera models DSCP72, FD83.

**Sony Ericsson**: Phone model Z200.

**Toshiba**: PDA model E805; Notebook models M205S810, P25S520; DVD model SD P2500.

* * *

ALL COUNSEL OF RECORD
May 27, 2005
Page 4

**Sharp**: part numbers LS015A3GS03, LS040V7DD02, LQ106K1LA01, LQ154M1LW02, LQ121X1LS30, LM15SGFNZ07, LS021B8UB03A, LS021B8UB02G, LS021BU803A, RLC0048AFZZ, LQ150U1H22, LS040V7DD01, LQ154M1LM02.

**ST-LCD**: part numbers ACX507ALQ-2(A), ACX507ALZ-2, ACX316AKM-8, ACX509AKM-7, ACX313EKM-7, ACX309AKB-2.

**TM-Display**: part numbers LTD121KM1K, LTM09C362, LTD121EA4XY, TFD70W82A, LTM09C362E, LTP234QV-C01, LTD-141EM3M, LTM10C320S, LTD121EA41, LTD121KAOS, LTM09C362V.

**Toppoly**: part number TD035SHEB4.

**Wintek**: part number 3Y0325721.

**Unknown LCD module supplier(s)**: part numbers A0367104-A7, LP8745A, AA01B 0463T1-D0, CV90-13161-01B, LP8658-B, GML0385A.

* * *

Given what appears to be widespread infringement throughout the industry, Honeywell reasonably believes that these two lists are by no means a comprehensive list of infringing products for any party. Honeywell's infringement assertion against the parties in the above referenced actions relates to all portable electronic devices manufactured or sold by individual parties that contain LCD modules which practice the claimed invention or, in the case of module suppliers, those infringing LCD modules themselves. Suffice it to say that any and all products which use the LCD modules identified above, or any similar module (e.g., a light source, an LCD panel and two lens arrays, one of which is misaligned) will be the subject of Honeywell's infringement claim.

Information regarding additional infringing products manufactured or sold by the parties in these actions will be identified during the discovery phase of this litigation after the defendants have provided information regarding their product lists and the components used in those products.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Matthew L. Woods/ms

Matthew L. Woods

MLW/ms

ALL COUNSEL OF RECORD
May 27, 2005
Page 5


c:      Martin R. Lueck
        Thomas G. Grimm (via e-mail)
        Steven J. Balick (via e-mail)

ALL COUNSEL OF RECORD
May 27, 2005
Page 6


bc:     Anthony A. Froio
        Marc N. Henschke
        Stacie C. Oberts

**From:** Mary Ann Schumacher
**To:** Apple, Optrex Counsel; Audiovox Counsel
**Date:** 5/27/2005 4:23:41 PM
**Subject:** Honeywell, et al. v. Apple Computer, et al., Audiovox Communications, et al. & Optrex America

Dear Counsel:

Attached please find correspondence from Matthew L. Woods regarding the above files.


Mary Ann Schumacher
Legal Administrative Assistant
to Matthew L. Woods and
Sonya C. Seidl

612-349-8552
fax: 612-339-4181
e-mail: maschumacher@rkmc.com


**CC:** Lueck, Martin R.;  sbalick@ashby-geddes.com;  tgrimm@mnat.com

# EXHIBIT D

1

```
1                    THE UNITED STATES DISTRICT COURT

2                   IN AND FOR THE DISTRICT OF DELAWARE

3                                  - - -

4    HONEYWELL INTERNATIONAL, INC.        :     CIVIL ACTIONS
     et al.                               :
5                                         :
                   Plaintiffs,            :
6                                         :
              v.                          :
7                                         :
     AUDIOVOX COMMUNICATIONS CORP.,       :
8    et al.                               :
                                          :     NO. 04-1337 (KAJ)
9                   Defendants.           :
     ----------------------------------   :
10   HONEYWELL INTERNATIONAL, INC.        :
     et al.                               :
11                                        :
                   Plaintiffs,            :
12                                        :
              v.                          :
13                                        :
     APPLE COMPUTER, INC.,  et al.,       :
14                                        :     NO. 04-1338 (KAJ)
                   Defendants.
15                                 - - -

16                        Wilmington, Delaware
                   Friday, September 9, 2005 at 10:40 a.m.
17                       TELEPHONE CONFERENCE

18                                 - - -

19   BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.

20                                 - - -
     APPEARANCES:
21

22           ASHBY & GEDDES
             BY:  STEVEN J. BALICK, ESQ.
23                       and
24

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter
```

2

```
 1    APPEARANCES:  (Continued)

 2

 3          MORRIS NICHOLS ARSHT & TUNNELL
            BY:  THOMAS C. GRIMM, ESQ.,

 4               and

 5    ROBINS KAPLAN MILLER & CIRESI, L.L.P
      BY:  MARTIN R. LUECK, ESQ.,

 6          MATTHEW L. WOODS, ESQ., and
            STACIE E. OBERTS, ESQ.

 7          (Minneapolis, Minnesota)

 8               and

 9    HONEYWELL INTERNATIONAL
      BY:  J. DAVID BRAFMAN, ESQ.

10          Counsel on behalf of Honeywell

11          International, Inc., and Honeywell
            Intellectual Properties, Inc.

12

13    SMITH KATZENSTEIN & FURLOW
      BY:  ROBERT J. KATZENSTEIN, ESQ.

14               and

15    HOGAN & HARTSON, LLP
      BY:  ROBERT J. BENSON, ESQ.

16          (Los Angeles, California)

17          Counsel for Seiko Epson Corp.,

18          Kyocera Wireless Corp.

19    YOUNG CONAWAY STARGATT & TAYLOR

20    BY:  JOHN W. SHAW, ESQ.

21          Counsel for Olympus Corporation,
            Olympus America, Inc., Sony Corporation,

22          And Sony Corporation of America

23               and

24

25
```

4

```
 1    APPEARANCES:  (Continued)

 2

 3          FISH & RICHARDSON, P.C.
            BY:  THOMAS L. HALKOWSKI, ESQ.

 4               Counsel for Nokia, Inc., Casio, Inc., Casio

 5               Computer and Apple Computer Inc.

 6               and

 7    FISH & RICHARDSON, P.C.
      BY:  JOHN T. JOHNSON, ESQ., and

 8          LEWIS E. HUDNELL, III, ESQ.
            (New York, New York)

 9               Counsel for Casio, Inc., Casio Computer

10               and

11    FISH & RICHARDSON, P.C.
      BY:  KELLY C. HUNSAKER, ESQ.

12          (Redwood City, California)

13               Counsel for Apple Computer Inc.

14               and

15    FISH & RICHARDSON, P.C.
      BY:  LAUREN A. DEGNAN, ESQ.

16          (Washington, District of Columbia)

17               Counsel for Nokia, Inc.

18

19    RICHARDS LAYTON & FINGER
      BY:  CHAD M. SHANDLER, ESQ.

20               and

21    HARRIS BEACH, LLP
      BY:  NEAL L. SLIFKIN, ESQ.

22          (Pittsford, New York)

23               Counsel for Eastman Kodak

24

25
```

3

```
 1    APPEARANCES:  (Continued)

 2

 3          KENYON & KENYON
            BY:  ROBERT L. HAILS, ESQ.

 4          (Washington, District of Columbia)

 5               and

 6    KENYON & KENYON
      BY:  JOHN FLOCK, ESQ.

 7          (New York, New York)

 8          Counsel for Sony Corporation, and Sony
            Corporation of America

 9               and

10    KENYON & KENYON
      BY:  RICHARD M. ROSATI, ESQ.

11          (New York, New York)

12          Counsel for Olympus Corporation, and

13          Olympus America, Inc.

14    RICHARDS LAYTON & FINGER
      BY:  WILLIAM J. WADE, ESQ.

15

16               and

17    WEIL GOTSHAL & MANGES
      BY:  STEPHEN J. RIZZI, ESQ.

18          (New York, New York)

19          Counsel for Matsushita Electrical

20          Industrial Co. And Matsushita
            Electical Corporation of America

21

22

23

24

25
```

5

```
 1    APPEARANCES:  (Continued)

 2

 3          POTTER ANDERSON & CORROON, LLP
            BY:  RICHARD L. HORWITZ, ESQ.

 4               Counsel for Concord Cameras, Dell, Inc.

 5               Fujitsu Limited, Fujitsu America, Inc.,
                 Fujitsu Computer Products of America, Inc.,

 6               Toshiba Corporation, Toshiba America, Inc.,
                 Wintek Electro-Optics Corporation, Sanyo

 7               Electric Co. Ltd. and Sanyo North America,
                 Philips Electronics North America Corp.

 8               and Samsung SDI

 9               and

10    FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
      BY:  BARRY W. GRAHAM, ESQ.

11          (Washington, District of Columbia)

12               Counsel for Nikon Corporation, Nikon Inc.

13               and

14    KATTEN MUCHIN ROSENMAN
      BY:  MICHAEL A. DORFMAN  ESQ.

15          (Chicago, Illinois)

16               Counsel for Sanyo Electric Co. Ltd.

17               and Sanyo North America

18

19    OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
      BY:  CARL E. SCHLIER, ESQ.

20          (Alexandria, Virginia)

21               Counsel for Toshiba America

22               and

23    VINSON & ELKINS
      BY:  RODERICK B. WILLIAMS, ESQ.

24          (Austin, Texas)

25               Counsel for Dell, Inc.
```

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

```
                                                      6
 1    APPEARANCES: (Continued)

 2

 3        MILBANK TWEEK HADLEY & McCLOY, LLP
          BY:  CHRISTOPHER E. CHALSEN, ESQ.
 4             (New York, New York)

 5             Counsel for Fujitsu Limited, Fujitsu
               America, Inc., Fujitsu Computer Products
 6             of America, Inc.

 7             and

 8    FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
      BY:  YORK FAULKNER, ESQ.
 9         (Reston, Virginia)

10             Counsel for Wintek Electro-Optics
               Corporation
11
               and
12
      HOWREY SIMON ARNOLD & WHITE, LLP
13    BY:  ALAN M. GRIMALDI, and
           NELSON M. KEE, ESQ.
14         (Washington, District of Columbia)

15             Counsel for Philips Electronics
               North America Corp.
16
               and
17
      PAUL HASTINGS JANOFSKY & WALKER, LLP
18    BY:  STEPHEN  S. KORNICZKY, ESQ.
           (San Diego, California)
19
               Counsel for Samsung SDI
20
               and
21
      CONCORD CAMERA CORP.
22    BY:  SCOTT L. LAMPERT, ESQ.
           (Hollywood, Florida)
23
               Counsel for Concord Camera
24

25
```

```
                                                      7
 1    APPEARANCES:  (Continued)

 2

 3        SACHNOFF & WEAVER
          BY:  BRIAN D. ROCHE, ESQ.
 4             (Chicago, Illinois)

 5             Counsel for Argus a/k/a Hartford
               Computer Group, Inc.
 6

 7    POTTER ANDERSON & CORROON, LLP
      BY:  PHILIP A. ROVNER, ESQ.
 8
               and
 9
      STROOCK & STROOCK & LAVAN LLP
10    BY:  LAWRENCE ROSENTHAL, ESQ.
           (New York, New York)
11
               Counsel for Fuji Photo Film Co., Ltd.
12             And Fuji Photo Film U.S.A. Inc.

13
      DUANE MORRIS
14    BY:  D. JOSEPH ENGLISH, ESQ.
           (Washington, District of Columbia)
15
               Counsel for Audiovox Communications Corp.
16

17    YOUNG CONAWAY STARGATT & TAYLOR
      BY:  ADAM WYATT POFF, ESQ.
18
               and
19
      GREENBLUM and BERNSTEIN, PLC
20    BY:  MICHAEL J. FINK, ESQ.
           (Reston, Virginia)
21
               Counsel for Pentax Corporation,
22             Pentax U.S.A, Inc.

23

24

25
```

```
                                                      8
 1    APPEARANCES: (Continued)

 2

 3        BOUCHARD MARGULES & FRIEDLANDER
          BY:  KAREN L. PASCALE, ESQ.
 4
               and
 5
      OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
 6    BY:  ANDREW M. OLLIS, ESQ.
           (Alexandria, Virginia)
 7
               Counsel for Optrex America, Inc.
 8

 9    McCARTER & ENGLISH
      BY:  THOMAS D. WALSH, ESQ.
10
               Counsel on behalf of Optrex America
11

12    CONNOLLY BOVE LODGE & HUTZ
      BY:  JAMES MICHAEL OLSEN, ESQ.
13
               Counsel on behalf of Sony Ericsson AB
14             and Sony Ericsson, Inc.

15

16

17

18

19

20

21

22                   - oOo -

23          P R O C E E D I N G S

24          REPORTER'S NOTE:  The following proceedings were

25    held in open court, beginning at 10:40 a.m.)
```

```
                                                      9
 1          THE COURT:  Counsel, this is Judge Jordan.  I
 2    apologize keeping you waiting.  The folks who were in the
 3    queue ahead of you exceeded their allotted time but we were
 4    able to work some things out and I appreciate your patience.
 5          Why don't we go ahead and I'll get a roll call
 6    from you folks of who is on the line and who you represent.
 7    Okay? Let's start with the plaintiff.
 8          MR. GRIMM:  Good morning, Your Honor.  It's Tom
 9    Grimm at Morris Nichols for Honeywell.  On the line with me
10    today; first, Your Honor may recall Honeywell filed two
11    separate actions so on the line with me also is John Day of
12    the Ashby & Geddes firm.
13          Our co-counsel on the line with us this morning
14    are Martin Lueck, Matt Woods and Stacie Roberts at the
15    Robins Kaplan Miller & Ciresi firm.  And also on the line
16    this morning with us is David Brafman, Intellectual Property
17    counsel for Honeywell.  And that's for all plaintiff
18    Honeywell.
19          THE COURT:  All right.  Let's just start down
20    the list of defendants.  Go ahead.
21          MR. HORWITZ:  Your Honor, this is Rich Horwitz
22    at Potter Anderson on behalf of a number of defendants.  And
23    with me on the line, I'll go through the list.
24          THE COURT:  Well, you need to tell me which
25    defendants you are here for.  I know this is --
```

SHEET 4

10

1    MR. HORWITZ:  That's fine.  I'm on the line for
2  Dell, Fujitsu, Concord Camera, Toshiba, Nikon, Samsung SDI,
3  Sanyo, Wintek and Philips.
4        And with me on the line for Dell, Rick Williams;
5  for Philips, Alan Grimaldi and Nelson Kee; for Fujitsu,
6  Christopher Chalsen; for Sanyo, Michael Dorfman; for
7  Toshiba, Carl Schlier; for Nikon, Barry Graham; for Wintek,
8  York Faulkner.  We are on alone for Concord Camera.  And for
9  Samsung SDI, Stephen Korniczky.
10        MR. LAMPERT:  One correction.  This is Scott
11  Lampert for Concord Camera.
12        MR. HORWITZ:  I'm sorry, Scott.  I didn't
13  realize you were on.
14        THE COURT:  All right.  Thanks.
15        Is there anybody else on?
16        MR. WADE:  Your Honor, it's Bill Wade at
17  Richards Layton & Finger, and I'm on for the Matsushita
18  defendants along with Steve Rizzi and perhaps David Lender
19  from Weil, Gotshal & Manges.
20        MR. BENSON:  Your Honor, this is Robert Benson
21  of Hogan & Hartson on for Seiko Epson and Kyocera Wireless.
22        MR. KATZENSTEIN:  Your Honor, this is Robert
23  Katzenstein.  I'm Mr. Benson's local counsel.
24        MR. HALKOWSKI:  Your Honor, this is Tom
25  Halkowski on behalf of Nokia, Apple and Casio.  And with me

11

1  on the line on behalf of Nokia is Lauren Degnan; and on
2  behalf of Apple, Kelly Hunsaker; and on behalf of Casio,
3  John Johnson and Lewis Hudnell.  Thank you.
4        THE COURT:  All right.
5        MR. ROVNER:  Your Honor, this is Phil Rovner for
6  the Fuji Photo Film defendant.  With me on the line is Larry
7  Rosenthal from Stroock Stroock & Lavan in New York.
8        THE COURT:  Okay.
9        MR. ROCHE:  Your Honor, Brian Roche in Chicago
10  for Hartford Computer Group.
11        THE COURT:  And is somebody on with you, sir, as
12  local counsel?
13        MR. ROCHE:  No.
14        THE COURT:  Have you arranged for local counsel?
15        MR. ROCHE:  Yes, we have local counsel from
16  Cross & Simon.
17        THE COURT:  All right.  Typically, we look for
18  those folks to be on those calls too unless excused.  But
19  thanks for identifying yourself.
20        Who else is on?
21        MR. SHANDLER:  Your Honor, Chad Shandler for
22  Richard Layton for Eastman Kodak.  With me on the line is
23  Neal Slifkin from Harris Beach.
24        THE COURT:  Anybody else?
25        MR. WALSH:  Your Honor, Tom Walsh with McCarter

12

1  & English on behalf of Audiovox Electronics Corporation.
2        MR. POFF:  Your Honor, Adam Poff from Young
3  Conaway on behalf of the Pentax defendants.  And also
4  Michael Fink from Greenblum and Bernstein on behalf of
5  Pentax.
6        MR. SHAW:  Your Honor, John Shaw for the Olympus
7  and Sony defendants, and I believe Richard Rosati and Bob
8  Hails is for Olympus.
9        MR. ROSATI:  Rich Rosati for Olympus.
10        MR. SHAW:  And Bob Hails is for the Sony
11  defendants.
12        THE COURT:  Okay.
13        MR. OLSEN:  Your Honor, James Olsen from
14  Connolly Bove for the Sony Ericsson defendants.
15        MR. ENGLISH:  Your Honor, this is Joe English
16  from Duane Morris on behalf of Audiovox Communications Corp.
17        THE COURT:  And do we have anybody else on?
18        MR. FLOCK:  Your Honor, this is John Flock from
19  Kenyon & Kenyon, also on for Sony corporation.
20        THE COURT:  Thank you.
21        MS. PASCALE:  Your Honor, this is Karen Pascale
22  from Bouchard Margules & Friedlander for Optrex America
23  which is the named plaintiffs in the 04-1536 action; and on
24  the line with me is Andrew Ollis from the Oblong Spivack
25  firm.

13

1        THE COURT:  Okay.  Do I have anybody else?
2        (Pause.)
3        THE COURT:  All right.  Well, thanks for
4  assembling.  I'm glad the telephone company has got enough
5  lines to handle this call.
6        We are together because in spite of what I
7  thought was pretty clear direction a few months ago, we
8  still haven't been able to get plaintiffs and defendants
9  moving forward on this case, and I received a letter on
10  August 22nd from Mr. Grimm saying, "hey, since our
11  correspondence to you in June, we're still at odds."
12        So, I've taken a look at the correspondence but
13  why don't I give you a chance to tell me what you think the
14  points in dispute are that can't be resolved without my
15  intervention so we can get a scheduling order in place,
16  short of me just imposing one.
17        Who is speaking on behalf of the plaintiffs on
18  this?
19        MR. GRIMM:  Your Honor, this is Tom Grimm.
20  Marty Lueck of the Robins Kaplan Miller & Ciresi firm will
21  speak.
22        THE COURT:  Mr. Lueck.
23        MR. LUECK:  Good morning, Your Honor.  I think I
24  can give you a snapshot here of where we've made progress,
25  where we haven't and I think give the Court an idea of how

14

1  we might be able to resolve the logjam so we can transition
2  this case from the customer defendants to the module maker
3  defendants.
4       Basically, what we have asked for in discovery
5  from the customer defendants is a list of all products sold
6  in the United States in the categories that are set forth
7  in the complaint going back from October 6th, 1998 to the
8  present. And we've asked for the identity of a module maker
9  for each of those products and the LCD module model number.
10 And the reason we've asked for that information is so that
11 we can match up the LCD modules that were manufactured
12 overseas to the end products that were actually imported
13 into the United States and sold because those are the ones
14 that are going to be at issue for both liability and
15 ultimately, down the road, damage.
16      THE COURT: All right. I'm sorry to interrupt,
17 Mr. Lueck. Give it to me one more time. What is it that
18 you specifically asked for in discovery?
19      MR. LUECK: What we're asking for is a list of
20 all -- and let me just back up. This is for the customer
21 defendants. A list of all products sold in the United
22 States in the categories set forth in the complaint from
23 October 6th, 1998 to the present. And that's consistent
24 with the patent statute of limitations, six years back from
25 the date of filings of the complaint. The products.

15

1       THE COURT: All right. Now, before you go
2  further, let me ask you what I took it to be the other
3  side's position and just have you respond to it directly.
4       I think they were saying to saying to me, these
5  guys should be identifying the products they think infringe
6  in the first instance. Am I right that that is a point of
7  contention or am I wrong about that?
8       MR. LUECK: You are correct, Your Honor, as to
9  some of the defendants.
10      THE COURT: What is your response?
11      MR. LUECK: Our response to that is we have
12 identified all of the products that we have purchased and
13 torn down and found specific instances of infringement.
14 We're unable to buy every product that is out there, and in
15 fact for the products that are in the past, we have no idea
16 whether we would have all of those or not have all of them.
17 And we don't believe on a going-forward basis, it should be
18 our burden to buy every single product of every single
19 company, tear it down and then make an individual charge of
20 infringement.
21      We have given them all the information we have
22 to date. And, in addition, we have offered to tear down
23 any products they want to send us and we will give them a
24 response on the results of that tear-down. And that really
25 is the logjam right there. We have resolved that issue with

16

1  three of the defendants, Nikon, Concord Camera and Fuji. I
2  believe we're close to resolving it with Nokia and Olympus
3  but were unable to make progress with the others.
4       THE COURT: All right. And what is the basis of
5  your agreement with the ones you have resolved it with?
6       MR. LUECK: In essence, Your Honor, they have
7  agreed to provide us that information: A historical list of
8  products going back to 1998, the identity of the module
9  maker for each product and the LCD module number that is in
10 the product.
11      THE COURT: All right. And is that really the
12 heart of the dispute? Is there some other thing going on
13 that I need to know about or is this really a kind of an
14 Alphonse-and-Gaston thing about who goes through the door
15 first?
16      MR. LUECK: Yes, I think that is correctly
17 summarized, Your Honor. I believe if we can resolve this
18 issue, we can make a lot of progress to resolving everything
19 else.
20      THE COURT: Okay. Who wants to take this up in
21 the first instance for the defendants?
22      MR. HORWITZ: Your Honor, this is Rich Horwitz.
23      I think that you have captured what the main
24 dispute is and, really, it boils down to who should go
25 first. Based on what Your Honor told us when we were in

17

1  front of you, I think we quoted the language from the
2  transcript where we think it's their obligation to come
3  first as the plaintiff charging infringement.
4       There may be some defendants who want to speak
5  specifically because the burdens on defendants are different
6  depending on how many products fall within the eight
7  categories that were mentioned in the complaint for the time
8  period that we're talking about here, to reach back and grab
9  things for plaintiff with no firm charge of infringement.
10 And I think that is the nub of the controversy.
11      There are some other issues that haven't been
12 discussed yet today that plaintiff raised in its submissions
13 and we responded to that we thought were outside the scope
14 of what the Court ordered, but that is kind of a collateral
15 matter to the main issue which is the one that you have been
16 focusing on so far.
17      So if there are individual defendants, I think
18 that they should be able to jump in at this point, if they
19 want to add argument on their specific circumstances.
20      THE COURT: Okay. Who wants to speak? Don't be
21 shy.
22      MR. GRAHAM: Your Honor, this is Barry Graham
23 for the Nikon defendants. And I hope everyone can hear me
24 well. I had to be on a cell phone today.
25      As Mr. Lueck acknowledged, which I appreciate,

18

1  that Nikon has resolved, has given Honeywell what it asked
2  for. We gave them specific information in July, and the way
3  I read the Court's May 18th order, Nikon and other customer
4  defendants were under basically a conditional stay. And I
5  would like, at least for Nikon, and there may be others, to
6  ask the Court to change the conditional stay into a real
7  stay while the other parties resolve their differences with
8  the plaintiff.
9        THE COURT: All right. Does anybody else want
10  to speak?
11        MR. ROSENTHAL: Your Honor, this is Lawrence
12  Rosenthal for Fuji.
13        In fairness to the other defendants who still
14  have this dispute, as you may recall, Fuji asked the Court
15  to limit the case to the eight categories. Honeywell has
16  now conceded that is what the case is limited to. And if
17  the case is limited to eight categories, this case becomes a
18  single product case for Fuji and the burden became finite
19  and easy to satisfy. I think you will hear from other
20  defendants that that is not the case.
21        THE COURT: Is there anybody else?
22        MR. RIZZI: Your Honor, this is Stephen Rizzi of
23  Weil Gotshal for the Matsushita defendants.
24        Just to give you a sense of an example where
25  we're not similarly situated to some of these defendants

19

1  like Nikon and Fuji, Matsushita is a very diverse
2  electronics company and has products that span many of the
3  categories. And if you literately consider going back six
4  years, all LCD-containing products in those categories,
5  there are hundreds, if not perhaps more than a thousand
6  products in this action.
7        Honeywell has identified three products of
8  Matsushita that are accused of infringement. We, months
9  ago, told Honeywell who the LCD suppliers are for those
10  products: two cell phones and one laptop. And just as sort
11  of a fundamental matter of discovery and burden shifting,
12  we don't believe that identification of three products
13  justifies discovery of hundreds, if not perhaps a thousand
14  products that may or may not be accused of infringement.
15  The burden is squarely on Honeywell to identify which
16  products they believe infringe and the case should be framed
17  around those products. And we do not believe that merely
18  identifying three products justifies essentially a fishing
19  expedition into all products going backs six years which
20  could number well into the hundreds, if not more.
21        THE COURT: Okay. I got you.
22        Does anybody else feel like they want to say
23  something?
24        (Pause.)
25        THE COURT: All right. Hearing nothing,

20

1  Mr. Lueck, back to you. I'll give you a chance to rebut.
2        MR. LUECK: Thank you, Your Honor. Basically
3  it's hard for me to understand how the burden could be
4  greater on the defendants to provide this information than
5  on Honeywell to go out and try to uncover every product that
6  each of these defendants have sold in the past.
7        THE COURT: Well, wait. I've got to wrestle
8  with you on that premise because at the start, I moved from
9  the baseline understanding that the way our adversary system
10  works is you learn of something that tells you you've been
11  wronged and then you go and you draft a complaint that
12  identifies that wrong and you come to court and you bring
13  somebody in to answer for that wrong. So when you start by
14  saying, gee, let's look at who has got the greater burden
15  here, why is it the burden of defendants in the first
16  instance to tell you everything they ever made with an LCD
17  module in it when there's apparently a reluctance or
18  unwillingness or inability on your part in the first
19  instance to make a case that a product actually does
20  infringe?
21        I'm probably giving away the way I'm thinking
22  right now, aren't I? I'm having a real problem with the
23  fundamental premise with your argument which is we think
24  there is other stuff out there that infringes and we want to
25  know everything you made in the last six years so we can

21

1  decide whether we got a case against you or not. That just
2  isn't how it works.
3        MR. LUECK: Well, Your Honor, I believe we have
4  made that showing. And what we have done is we've gone out
5  and bought a large number of products from a wide range of
6  customers or end manufacturing defendants. We've torn them
7  down. We've given the defendants detailed information on
8  what we believe is the infringement. We identified the
9  eight product ranges where we found it.
10        The modules come from module makers overseas.
11  We have no access to those individuals. And I think we've
12  satisfied our Rule 11 burden, we satisfied the pleading
13  burden on it, and then it becomes an issue of whether or
14  not this is reasonably calculated to lead to admissible
15  information, which we believe it is, and then it is an issue
16  of looking at the relative burdens. And in our view on
17  burden, we have a right to recover for damages going six
18  years back from the date of the complaint. These models
19  change rapidly and often. And we simply have no access to
20  records that would show us what those models have been.
21        THE COURT: Well, let me ask this, because
22  maybe we're talking past each other. When you say you have
23  satisfied your initial burden, is the assertion that you are
24  making that we have identified products, we've told them the
25  products that infringe and the only question is whether,

22

1  through various generations of different models of this
2  product, somehow there is some difference?  Or is there
3  something else going on that I'm not getting.
4        MR. LUECK:  No, I think you have captured it.
5  We've identified what the products are that have infringed
6  and we've specified what those types of products are and
7  we've given them specific model numbers as to ones we've
8  been able to purchase and tear down, but that doesn't mean
9  that we know all of the generations of those products that
10 they have introduced in the past.
11       THE COURT:  All right.  I'm going to ask the
12 gentleman who spoke on behalf of Matsushita, the Weil
13 Gotshal attorney if he will speak up at this point and
14 answer that point, which is:  Hey, we're not just on some
15 wholesale fishing expedition.  We've identified a product
16 and a product line and we just need to know the different
17 model numbers in that product line so that we're sure that
18 we've had a chance to investigate this product thoroughly,
19 which is what I understand Mr. Lueck to be saying.  What is
20 your response to that?
21       MR. BRAFMAN:  Your Honor, this is David Brafman
22 from Honeywell.
23       I'd just like to add one further point which is
24 our tear-down rate, on average it's about a 50 percent hit
25 rate under our belief of infringement across all these

23

1  products.  So it's not a wild fishing expedition as it is
2  made to sound.  It is that we found products, a large
3  percentage of them do hit and we just don't have access to
4  the models that change every six months.
5        THE COURT:  All right.  Mr. -- I'm sorry, I've
6  forgotten your name, sir.
7        MR. RIZZI:  It's Steve Rizzi from Weil Gotshal.
8        THE COURT:  Mr. Rizzi, I apologize for not
9  holding on to that name.  Go ahead.
10       MR. RIZZI:  That's okay.  I think along those
11 lines, Your Honor, there is room to meet in the middle here
12 from our perspective and, in fact, one of the cases that
13 Honeywell cited in its correspondence I believe is
14 instructive -- the IP Innovation case out of the Northern
15 District of Illinois -- I think is somewhat similar in the
16 sense that case involved certain chips that were found
17 in various models of televisions that were accused of
18 infringement, the basis for infringement being this specific
19 chip.  And what the plaintiff did originally was identify
20 specific television models that they believe included the
21 chip and were infringing.  And there, the Court allowed
22 discovery of other models of televisions that included that
23 same chip.  So discovery in the case were structured
24 around other future generations or products but only those
25 products that included the same chip as the specific models

24

1  of televisions that were identified by plaintiff.
2        We think structuring it along those lines is
3  reasonable and does provide a framework that does allow
4  for a manageable case as well.  And that we believe it is
5  possible to identify, for example, other products that
6  utilize the same LCD modules incorporated in these specific
7  products that are alleged to infringe and that we don't
8  believe that that would present an unreasonable burden,
9  and we don't dispute that plaintiffs would be entitled to
10 that type of information.
11       THE COURT:  All right.  Mr. Lueck.
12       MR. LUECK:  Yes.  What we asked for, Your Honor,
13 is the modules that were identified in the infringing
14 products and similar modules.  And the problem we have is if
15 you were to go to these module makers, some of the modules
16 infringe, some of the modules don't.  The module makers do
17 not know what products they go into for the customers.
18 Literally, the only way for anyone to find that out is to
19 ask them for the historical products.  And we've offered to
20 take anything that they have and look at it and tell them
21 whether it infringes.
22       I don't believe the burden is as great as the
23 defendants are saying.  We've narrowed it down to specific
24 products we've torn down.  We don't know all of the
25 historical model numbers.  That's the information we're

25

1  asking for.
2        THE COURT:  All right.
3        MR. WILLIAMS:  Your Honor, this is Rick Williams
4  for Dell.
5        THE COURT:  Yes.
6        MR. WILLIAMS:  I'd like to weigh in on this.  In
7  the complaint, the products they're looking for include
8  cellular phones, digital cameras, PDAs, portable DVD
9  players, laptop computers.  In the case of Dell, they
10 identified six models of Dell laptop computers out of a
11 total current 17 models.
12       The first thing, all of Dell's laptops are
13 readily available to purchase over the Internet and they can
14 get them within a week's time and evaluate them.
15       They have not identified any PDAs, which Dell
16 also sells.
17       Dell resells digital cameras and digital video
18 cameras.  They have not identified any of those as being
19 accused against Dell.
20       So we're faced with the dilemma, out of all
21 these categories, they say they'd like information on --
22       THE COURT:  We'll, we're not --
23       MR. WILLIAMS:  -- them going down the list and
24 giving them information.
25       THE COURT:  Hold on.  Because I get the feeling

26

1  we're still talking past one another here. Maybe positions
2  have shifted as a result of the conversation we're having,
3  but what I hear what Mr. Lueck is saying is not I want
4  information about broad categories of products. I want
5  information about a specific product identified and
6  different generations of that same identified product. That
7  is, has a model changed? And if it has changed, would you
8  please identify what the newer different model is of that
9  identified product? Not category of products but a
10  specified product.
11         Mr. Lueck, have I misunderstood you?
12         MR. LUECK: Well, I think that is narrower than
13  we seek, Your Honor. I mean if it's going to be tied to
14  specific model numbers, we don't know what the past model
15  numbers these devices are marketed under. Basically what
16  we're asking for is which of your products had the modules
17  that had the infringing technology or the similar technology
18  in them so we can tie them back to the module makers and
19  know what modules were imported into the United States.
20         THE COURT: All right. I interrupted.
21         MR. LUECK: That could be a different model
22  number than what we have, we just don't know that, and we
23  have no other way of finding out.
24         THE COURT: The gentleman from Dell, I
25  interrupted you, sir. Go ahead.

27

1         MR. WILLIAMS: No, Your Honor. Again, they
2  identified six models out of 16-17. They could certainly
3  get the other models. Through the tear-down, they could
4  purchase them as easily as Dell could absorb the expense and
5  tell us the modules in fact they're accusing of infringement
6  rather than asking us to go back and conduct a unilateral
7  analysis of our products and say, well, maybe this module
8  infringes or maybe this one doesn't. And I think the burden
9  should be on them in the first instance to say a particular
10  LCD module in a particular computer model we contend meets
11  the elements of the claims in our patent instead of
12  vice-versa.
13         THE COURT: All right. And I am going to have
14  to get into a criminal proceeding here in a few minutes, so
15  I won't have an opportunity to resolve other issues that you
16  may have besides this one.
17         My understanding of what is being asked for has
18  shifted a little bit in the course of this conversation.
19  So instead of trying to speak in terms of what it is you
20  are asking for, let me tell you what I think you can
21  legitimately ask for and we can get this thing moving
22  forward.
23         I said in the order that I put out last May that
24  Honeywell was required to specifically identify accused
25  products. And that's what I meant. Not that Honeywell was

28

1  entitled to say, you know, we think all your cellular phones
2  infringe so we want you to tell us everything about all your
3  cellular phones. What I mean is if you've got a basis for
4  believing that a manufacturer's cellular phones are
5  infringing, and I mean you can say we've done this tear-down
6  on these specific products and these things appear to us to
7  infringe, well, then you are absolutely entitled to conduct
8  additional discovery with respect to those products, that
9  is, were earlier generations than the one you tore down.
10  Also, have they come out with subsequent generations of that
11  same model which could also be infringing?
12         But what you are not entitled to do is to say
13  you manufacture 15 different kinds of cell phones. We tore
14  down three. Tell us about your other 12. Because I agree
15  with the defendants that now what you are doing is you are
16  telling manufacturers, you know what? You got one or two
17  things that are bad. We want you to do an analysis of
18  everything you make and tell us whether you are guilty on
19  those fronts, too; and that is not what the law requires,
20  and it's not what I'm going to require them to do.
21         If you want to go out, you want to buy them, you
22  want to do the tear-down, you want to get information that
23  prompts you to be able to say "now I know that this specific
24  model also infringes," then you can certainly do that. And
25  then you would be in an area where you could be requiring

29

1  additional discovery from them. But to ask them to come
2  forward in the first instance, which is what it really comes
3  down to, is not right.
4         So I hope this straightens out where my thinking
5  is on it and gives you guidance about what I'm expecting the
6  parties to be willing to do. To the extent manufacturers
7  are prepared to say, you know what? For us, it's not such a
8  burden as to make it impossible to give you something more
9  broad than what the judge has ordered happen, that is fine
10  with me. But what I do expect to happen at this juncture is
11  for you guys to come together with a specific set now of
12  identified products and manufacturers of the models of LCD
13  modules that go into those products so that we can go about
14  having the proper defendants in the suit.
15         To the extent there was any thought that I was
16  putting the burden exclusively on the defendant retailers or
17  intermediate sellers, to third-party people in, that is not
18  necessarily the case. I'm not going to get to that issue
19  today, though, because we don't have time to fully explore
20  it, but I expect Honeywell to be active in finding out who
21  those manufacturers are and that is one of the reasons why
22  I gave only a conditional stay, because of the pieces
23  of information Honeywell is entitled to get as to those
24  identified products and product lines is who is the maker of
25  the LCD that is going in to that product, that generation of

30

1 product and maybe, I don't know, the generations before and
2 after that model.
3         So you guys absolutely on the defense side have
4 to give that information up. And then if we can't have some
5 sensible plan that the parties agree to on how to try to
6 bring those folks in, I'll get into the mix on that, too. I
7 would think that overseas marketers of LCD modules who have
8 big clients in the United States incorporating those things
9 into their products are not going to want to upset their
10 clientele by playing games with jurisdiction. And
11 particularly in the aftermath of the Federal Circuit's
12 CEA decision, which I remember well, I would think people
13 would be thinking hard about how they're going to play
14 the personal jurisdiction defenses here. But that is a
15 discussion for another day.
16         For now, I want you to get off of the
17 who-goes-first issue because Honeywell you guys are going
18 first. You identify what is infringing. Let's get those
19 manufacturers on notice and let's get the case going
20 forward.
21         When can I expect to hear back from you about a
22 plan for getting that done, Mr. Lueck?
23         MR. LUECK: Within a week, Your Honor. If I
24 could ask for just one clarification, recognizing you have
25 something else going.

31

1         The issue that we've had is just identifying who
2 the manufacturers of the modules are that are coming into
3 the U.S. And hearing what Your Honor has said regarding
4 those modules, can we ask about historical products that
5 have those modules or similar modules in them?
6         THE COURT: Well, when you say the "same" or
7 "similar," you know, the "same," absolutely. When you say
8 "similar," that is a big door, because, what do you mean
9 when you say "similar?"
10         MR. LUECK: Right. Here is what I mean when I
11 say "similar," Your Honor. A light source, an LCD panel,
12 two lens arrays, one of which is misaligned.
13         THE COURT: If you want to say, if you want to
14 frame your discovery in a manner that incorporates your
15 specific allegations of infringement, fine.
16         MR. LUECK: That is exactly what we're asking
17 for. And that we would frame it exactly that way.
18         THE COURT: All right. Does everybody
19 understand the discovery I'm telling them they're entitled
20 to?
21         (Pause.)
22         THE COURT: I'm not hearing anybody say no.
23         MR. HORWITZ: Your Honor?
24         THE COURT: Yes, go ahead.
25         MR. HORWITZ: This is Rich Horwitz. And I'll

32

1 defer to others if I'm missing something here, but I think
2 the problem with what Mr. Lueck just said is he may be
3 asking for things that led us to the stay motion in the
4 first instance.
5         THE COURT: No. What led to the stay motion in
6 the first place is I'm not going to have the folks who are
7 reselling things, reselling the LCD module as a part of
8 their own product defending us in the first instance.
9         MR. HORWITZ: I'm sorry. I understand that,
10 Your Honor. What I meant was that some of the people that
11 are the resellers may not have the information that would
12 respond to the broad question that Mr. Lueck just posed.
13         THE COURT: Well, and if you don't have it, you
14 don't have it.
15         MR. HORWITZ: Okay.
16         THE COURT: I mean I'm not saying anybody has to
17 make anything up, but if you've got the information, you
18 need to give it up because they're entitled to get behind
19 your products and get it to people who are making them if
20 they can get jurisdiction over them. And that's all.
21         Like I said, the personal jurisdiction issue,
22 that's for another day. But finding out who the
23 manufacturers are, that's something that is supposed to have
24 been happening over the course the last four months and it's
25 distressing to hear that we've been not moving forward on

33

1 that front because we should be. We should be finding out
2 who this case is going to run against in the first instance.
3 So I'll ask the parties to move forward with that forthwith;
4 all right?
5         And, Mr. Lueck, I'll look forward to hearing
6 from you some time in the next few days in a fashion that
7 includes discussions to the extent you need to have it with
8 all defense counsel on how you folks intend to proceed so
9 that I can get a scheduling order in place.
10         I'm going to set a deadline on you folks
11 reporting back to me for two weeks from today; all right?
12 And hopefully that can be a joint submission. But if it
13 can't given, the number of parties involved, it may be
14 impracticable, I'll expect though to hear from everybody
15 with a position on scheduling because what you can expect
16 from me is I'm ready to put an order in place. I want to
17 get a schedule in place. So you should be talking about how
18 to make that happen.
19         All right. Is there any other matter which is
20 of such urgency we ought to address it right now while we're
21 all on the phone right now, Mr. Lueck?
22         MR. LUECK: No, Your Honor.
23         THE COURT: From the defense side, anything?
24         MR. HORWITZ: No, Your Honor.
25         THE COURT: Okay. I'm hearing --

SHEET 10

34

1    MR. GRIMM:  Your Honor?
2    THE COURT:  Yes.
3    MR. GRIMM:  Your Honor, this is Tom Grimm.
4        I do have a concern of letting this go on and on
5    because we've had such a hard time in the last three or four
6    months.  And this has been very helpful to us but I'm
7    wondering if we could bother the Court for your permission
8    that in two weeks after we report, if there is still
9    differences, can we contact your clerk and ask for another
10   telephone conference?
11       THE COURT:  Well, that is something you are
12   always free to do.  If there is a problem in the case that I
13   can help you work out, I'm ready to help you work it out.
14   But I'm fully expecting on the basis of the discussion we
15   just had, for you to be able to take the next step, which is
16   set a schedule for getting this case transitioned to an
17   infringement suit against the manufacturers.  All right?
18       MR. GRIMM:  All right.
19       MR. GRAHAM:  Your Honor, this is Barry Graham
20   for Nikon.
21       Nikon would like to be able to step aside.  Do
22   we need to participate since we already provided the
23   information to Honeywell?
24       THE COURT:  The short answer is if Honeywell
25   and you agree that you don't have anything else to say with

35

1    respect to the case, I'm not going to default you.  And at a
2    certain point in time, there will be a transition from a
3    conditional stay to a full stay but I don't want to handle
4    that on a defendant-by-defendant basis if I can help it, so
5    I'm not moving on that request that you made earlier in this
6    call at this time.
7        MR. GRAHAM:  All right.  Thank you, Your Honor.
8    I'll speak with plaintiffs' counsel.
9        THE COURT:  All right.  Well, thanks for your
10   time this morning.  Good-bye.
11       (The attorneys respond, "Thank you, Your
12   Honor.")
13       (Telephone conference ends at 11:18 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

**0**

04-1337 [1] - 1:8
04-1338 [1] - 1:14
04-1536 [1] - 12:23

**1**

10:40 [1] - 1:16, 8:25
11 [1] - 21:12
11:18 [1] - 35:13
12 [1] - 28:14
15 [1] - 28:13
16-17 [1] - 27:2
17 [1] - 25:11
18th [1] - 18:3
1998 [3] - 14:7, 14:23, 16:8

**2**

2005 [1] - 1:16
22nd [1] - 13:10

**5**

50 [1] - 22:24

**6**

6th [2] - 14:7, 14:23

**9**

9 [1] - 1:16

**A**

a/k/a [1] - 7:5
Ab [1] - 8:13
able [8] - 9:4, 13:8, 14:1, 17:18, 22:8, 28:23, 34:15, 34:21
absolutely [3] - 28:7, 30:3, 31:7
absorb [1] - 27:4
access [3] - 21:11, 21:19, 23:3
accused [5] - 19:8, 19:14, 23:17, 25:19, 27:24
accusing [1] - 27:5
acknowledged [1] - 17:25
action [2] - 12:23, 19:6
Actions [1] - 1:4
actions [1] - 9:11
active [1] - 29:20

Adam [2] - 7:17, 12:2
add [2] - 17:19, 22:23
addition [1] - 15:22
additional [2] - 28:8, 29:1
address [1] - 33:20
admissible [1] - 21:14
adversary [1] - 20:9
aftermath [1] - 30:11
ago [2] - 13:7, 19:9
agree [3] - 28:14, 30:5, 34:25
agreed [1] - 16:7
agreement [1] - 16:5
ahead [6] - 9:3, 9:5, 9:20, 23:9, 26:25, 31:24
al [4] - 1:4, 1:8, 1:10, 1:13
Alan [2] - 6:13, 10:5
Alexandria [2] - 5:19, 8:6
allegations [1] - 31:15
alleged [1] - 24:7
allotted [1] - 9:3
allow [1] - 24:3
allowed [1] - 23:21
alone [1] - 10:8
Alphonse [1] - 16:14
Alphonse-and-
gaston [1] - 16:14
America [18] - 2:21, 2:22, 3:8, 3:12, 3:19, 5:5, 5:5, 5:6, 5:7, 5:7, 5:16, 5:20, 6:5, 6:6, 6:15, 8:7, 8:10, 12:22
analysis [2] - 27:7, 28:17
Anderson [3] - 5:3, 7:7, 9:22
Andrew [2] - 8:6, 12:24
Angeles [1] - 2:16
answer [3] - 20:13, 22:14, 34:24
apologize [2] - 9:2, 23:8
appear [1] - 28:6
Appearances [8] - 1:20, 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1
Apple [5] - 1:13, 4:4, 4:13, 10:25, 11:2
appreciate [2] - 9:4, 17:25
area [1] - 28:25
argument [2] - 17:19, 20:23
Argus [1] - 7:5

Arnold [1] - 6:12
arranged [1] - 11:14
arrays [1] - 31:12
Arsht [1] - 2:2
Ashby [2] - 1:22, 9:12
aside [1] - 34:21
assembling [1] - 13:4
assertion [1] - 21:23
attorney [2] - 22:13
attorneys [1] - 35:11
Audiovox [4] - 1:7, 7:15, 12:1, 12:16
August [1] - 13:10
Austin [1] - 5:23
available [1] - 25:13
average [1] - 22:24

**B**

backs [1] - 19:19
bad [1] - 28:17
Balick [1] - 1:22
Barry [4] - 5:10, 10:7, 17:22, 34:19
Based [1] - 16:25
baseline [1] - 20:9
basis [6] - 15:17, 16:4, 23:18, 28:3, 34:14, 35:4
Beach [2] - 4:21, 11:23
became [1] - 18:18
becomes [2] - 18:17, 21:13
beginning [1] - 8:25
behalf [14] - 2:10, 8:10, 8:13, 9:22, 10:25, 11:1, 11:2, 12:1, 12:3, 12:4, 12:16, 13:17, 22:12
behind [1] - 32:18
belief [1] - 22:25
Benson [3] - 2:16, 10:20
Benson's [1] - 10:23
Bernstein [2] - 7:19, 12:4
big [1] - 30:8, 31:8
Bill [1] - 10:16
bit [1] - 27:18
Bob [2] - 12:7, 12:10
boils [1] - 16:24
bother [1] - 34:7
Bouchard [2] - 8:3, 12:22
bought [1] - 21:5
Bove [2] - 8:12, 12:14
Brafman [4] - 2:9, 9:16, 22:21
Brian [3] - 1:25, 7:3,

11:9
bring [2] - 20:12, 30:6
broad [3] - 26:4, 29:9, 32:12
burden [16] - 15:18, 18:18, 19:11, 19:15, 20:3, 20:14, 20:15, 21:12, 21:13, 21:17, 21:23, 24:8, 24:22, 27:8, 29:8, 29:16
burdens [2] - 17:5, 21:16
buy [3] - 15:14, 15:18, 28:21
bye [1] - 35:10

**C**

calculated [1] - 21:14
California [3] - 2:16, 4:12, 6:18
Camera [6] - 6:21, 6:23, 10:2, 10:8, 10:11, 16:1
cameras [3] - 25:8, 25:17, 25:18
Cameras [1] - 5:4
captured [2] - 16:23, 22:4
Carl [2] - 5:19, 10:7
case [22] - 13:9, 14:2, 18:15, 18:16, 18:17, 18:18, 18:20, 19:16, 20:19, 21:1, 23:14, 23:16, 23:23, 24:4, 25:9, 29:18, 30:19, 33:2, 34:12, 34:16, 35:1
cases [1] - 23:12
Casio [6] - 4:4, 4:9, 10:25, 11:2
categories [9] - 14:6, 14:22, 17:7, 18:15, 18:17, 19:3, 19:4, 25:21, 26:4
category [1] - 26:9
Cea [1] - 30:12
cell [3] - 17:24, 19:10, 28:13
cellular [4] - 25:8, 28:1, 28:3, 28:4
certain [2] - 23:16, 35:2
certainly [2] - 27:2, 28:24
Chad [2] - 4:19, 11:21
Chalsen [2] - 6:3, 10:6
chance [3] - 13:13, 20:1, 22:18
change [3] - 18:6,

21:19, 23:4
changed [2] - 26:7
charge [2] - 15:19, 17:9
charging [1] - 17:3
Chicago [3] - 5:15, 7:4, 11:9
chip [4] - 23:19, 23:21, 23:23, 23:25
chips [1] - 23:16
Christopher [2] - 6:3, 10:6
Circuits [1] - 30:11
circumstances [1] - 17:19
Ciresi [3] - 2:5, 9:15, 13:20
cited [1] - 23:13
City [1] - 4:12
Civil [1] - 1:4
claims [1] - 27:11
clarification [1] - 30:24
clear [1] - 13:7
clerk [1] - 34:9
clientele [1] - 30:10
clients [1] - 30:8
close [1] - 16:2
co [1] - 9:13
Co [4] - 3:19, 5:7, 5:16, 7:11
co-counsel [1] - 9:13
collateral [1] - 17:14
Columbia [5] - 3:3, 4:16, 5:11, 6:14, 7:14
coming [1] - 31:2
Communications [3] - 1:7, 7:15, 12:16
company [2] - 13:4, 15:19, 19:2
complaint [7] - 14:7, 14:22, 14:25, 17:7, 20:11, 21:18, 25:7
computer [1] - 27:10
Computer [9] - 1:13, 4:4, 4:9, 4:13, 5:5, 6:5, 7:5, 11:10
computers [2] - 25:9, 25:10
Conaway [2] - 2:19, 7:17, 12:3
conceded [1] - 18:16
concern [1] - 34:4
Concord [7] - 5:4, 6:21, 6:23, 10:2, 10:8, 10:11, 16:1
conditional [4] - 18:4, 18:6, 29:22, 35:3
conduct [2] - 27:6,

28:7
Conference[1] - 1:17
conference [2] -
34:10, 35:13
Connolly[2] - 8:12,
12:14
consider [1] - 19:3
consistent [1] - 14:23
contact [1] - 34:9
containing [1] - 19:4
contend [1] - 27:10
contention [1] - 15:7
Continued[7] - 2:1,
3:1, 4:1, 5:1, 6:1,
7:1, 8:1
controversy [1] -
17:10
conversation [2] -
26:2, 27:18
Corp[8] - 1:7, 2:17,
2:18, 5:7, 6:15, 6:21,
7:15, 12:16
Corporation[13] -
2:21, 2:21, 2:22, 3:7,
3:8, 3:12, 3:19, 5:6,
5:6, 5:12, 6:10, 7:21,
12:1
corporation [1] -
12:19
correct [1] - 15:8
correction [1] - 10:10
correctly [1] - 16:16
correspondence [3] -
13:11, 13:12, 23:13
Corroon[2] - 5:3, 7:7
Counsel[29] - 2:10,
2:17, 2:21, 3:7, 3:12,
3:18, 4:4, 4:9, 4:13,
4:17, 4:23, 5:4, 5:12,
5:16, 5:20, 5:24, 6:5,
6:10, 6:15, 6:19,
6:23, 7:5, 7:11, 7:15,
7:21, 8:7, 8:10, 8:13,
9:1
counsel [8] - 9:13,
9:17, 10:23, 11:12,
11:14, 11:15, 33:8,
35:8
course [2] - 27:18,
32:24
Court[61] - 1:1, 9:1,
9:19, 9:24, 10:14,
11:4, 11:8, 11:11,
11:14, 11:17, 11:24,
12:12, 12:17, 12:20,
13:1, 13:3, 13:22,
13:25, 14:16, 15:1,
15:10, 16:4, 16:11,
16:20, 17:14, 17:20,
18:6, 18:9, 18:14,

18:21, 19:21, 19:25,
20:7, 21:21, 22:11,
23:5, 23:8, 23:21,
24:11, 25:2, 25:5,
25:22, 25:25, 26:20,
26:24, 27:13, 31:6,
31:13, 31:18, 31:22,
31:24, 32:5, 32:13,
32:16, 33:23, 33:25,
34:2, 34:7, 34:11,
34:24, 35:9
court [2] - 8:25, 20:12
Courts [1] - 18:3
criminal [1] - 27:14
Cross[1] - 11:16
current [1] - 25:11
customer [4] - 14:2,
14:5, 14:20, 18:3
customers [2] - 21:6,
24:17

D

damage [1] - 14:15
damages [1] - 21:17
date [3] - 14:25, 15:22,
21:18
David[4] - 2:9, 9:16,
10:18, 22:21
days [1] - 33:6
deadline [1] - 33:10
decide [1] - 21:1
decision [1] - 30:12
default [1] - 35:1
defendant [4] - 11:6,
29:16, 35:4
defendant-by-
defendant [1] - 35:4
defendants [33] -
9:20, 9:22, 9:25,
10:18, 12:3, 12:7,
12:11, 12:14, 13:8,
14:2, 14:3, 14:5,
14:21, 15:9, 16:1,
16:21, 17:4, 17:5,
17:17, 17:23, 18:4,
18:13, 18:20, 18:23,
18:25, 20:4, 20:6,
20:15, 21:6, 21:7,
24:23, 28:15, 29:14
Defendants [2] - 1:9,
1:14
defending [1] - 32:8
defense [3] - 30:3,
33:8, 33:23
defenses [1] - 30:14
defer [1] - 32:1
Degnan[2] - 4:15,
11:1
Delaware[2] - 1:2,

1:16
Dell[12] - 5:4, 5:24,
10:2, 10:4, 25:4,
25:9, 25:10, 25:15,
25:17, 25:19, 26:24,
27:4
Dell's [1] - 25:12
detailed [1] - 21:7
devices [1] - 26:15
Diego[1] - 6:18
difference [1] - 22:2
differences [2] - 18:7,
34:9
different [7] - 17:5,
22:1, 22:16, 26:6,
26:8, 26:21, 28:13
digital [3] - 25:8,
25:17
dilemma [1] - 25:20
direction [1] - 13:7
directly [1] - 15:3
discovery [10] - 14:4,
14:18, 19:11, 19:13,
23:22, 23:23, 28:8,
29:1, 31:14, 31:19
discussed [1] - 17:12
discussion [2] -
30:15, 34:14
discussions [1] - 33:7
dispute [5] - 13:14,
16:12, 16:24, 18:14,
24:9
distressing [1] - 32:25
District[8] - 1:1, 1:2,
3:3, 4:16, 5:11, 6:14,
7:14, 23:15
diverse [1] - 19:1
done [3] - 21:4, 28:5,
30:22
door [2] - 16:14, 31:8
Dorfman[2] - 5:14,
10:6
down [18] - 9:19,
14:15, 15:13, 15:19,
15:22, 15:24, 16:24,
21:7, 22:8, 22:24,
24:23, 24:24, 25:23,
27:3, 28:5, 28:9,
28:14, 29:3
downs [1] - 28:22
draft [1] - 20:11
Duane[2] - 7:13,
12:16
Dunner[2] - 5:10, 6:8
Dvd[1] - 25:8

E

easily [1] - 27:4
Eastman[2] - 4:23,

11:22
easy [1] - 18:19
eight [4] - 17:6, 18:15,
18:17, 21:9
Electical[1] - 3:19
Electric[2] - 5:7, 5:16
Electrical[1] - 3:18
Electro [2] - 5:6, 6:10
Electro-optics [2] -
5:6, 6:10
electronics [1] - 19:2
Electronics[3] - 5:7,
6:15, 12:1
elements [1] - 27:11
Elkins[1] - 5:22
end [2] - 14:12, 21:6
ends [1] - 35:13
English[5] - 7:14, 8:9,
12:1, 12:15
entitled [7] - 24:9,
28:1, 28:7, 28:12,
29:23, 31:19, 32:18
Epson[2] - 2:17,
10:21
Ericsson[3] - 8:13,
8:14, 12:14
Esq[41] - 1:22, 2:3,
2:5, 2:6, 2:6, 2:9,
2:13, 2:16, 2:20, 3:3,
3:6, 3:10, 3:14, 3:17,
4:3, 4:7, 4:7, 4:11,
4:15, 4:19, 4:21, 5:3,
5:10, 5:14, 5:19,
5:23, 6:3, 6:8, 6:13,
6:18, 6:22, 7:3, 7:7,
7:10, 7:14, 7:17,
7:20, 8:3, 8:6, 8:9,
8:12
essence [1] - 16:6
essentially [1] - 19:18
et [4] - 1:4, 1:8, 1:10,
1:13
evaluate [1] - 25:14
exactly [2] - 31:16,
31:17
example [2] - 18:24,
24:5
exceeded [1] - 9:3
exclusively [1] - 29:16
excused [1] - 11:18
expect [5] - 29:10,
29:20, 30:21, 33:14,
33:15
expecting [2] - 29:5,
34:14
expedition [3] - 19:19,
22:15, 23:1
expense [1] - 27:4
explore [1] - 29:19
extent [3] - 29:6,

29:15, 33:7

F

faced [1] - 25:20
fact [3] - 15:15, 23:12,
27:5
fairness [1] - 18:13
fall [1] - 17:6
far [1] - 17:16
Farabow[2] - 5:10, 6:8
fashion [1] - 33:6
Faulkner[2] - 6:8, 10:8
Federal[1] - 30:11
few [3] - 13:7, 27:14,
33:6
filed [1] - 9:10
filings [1] - 14:25
Film[3] - 7:11, 7:12,
11:6
fine [3] - 10:1, 29:9,
31:15
Finger[3] - 3:14, 4:18,
10:17
finite [1] - 18:18
Fink[2] - 7:20, 12:4
Finnegan[2] - 5:10,
6:8
firm [5] - 9:12, 9:15,
12:25, 13:20, 17:9
first [17] - 9:10, 15:6,
16:15, 16:21, 16:25,
17:3, 20:15, 20:18,
25:12, 27:9, 29:2,
30:17, 30:18, 32:4,
32:6, 32:8, 33:2
Fish[4] - 4:2, 4:6, 4:11,
4:15
fishing [3] - 19:18,
22:15, 23:1
Flock[3] - 3:6, 12:18
Florida[1] - 6:22
focusing [1] - 17:16
folks [7] - 9:2, 9:6,
11:18, 30:6, 32:6,
33:8, 33:10
following [1] - 8:24
forgotten [1] - 23:6
forth [2] - 14:6, 14:22
forthwith [1] - 33:3
forward [8] - 13:9,
15:17, 27:22, 29:2,
30:20, 32:25, 33:3,
33:5
four [2] - 32:24, 34:5
frame [2] - 31:14,
31:17
framed [1] - 19:16
framework [1] - 24:3

**free** [1] - 34:12
**Friday** [1] - 1:16
**Friedlander** [2] - 8:3, 12:22
**front** [2] - 17:1, 33:1
**fronts** [1] - 28:19
**Fuji** [8] - 7:11, 7:12, 11:6, 16:1, 18:12, 18:14, 18:18, 19:1
**Fujitsu** [8] - 5:5, 5:5, 6:5, 6:5, 10:2, 10:5
**full** [1] - 35:3
**fully** [2] - 29:19, 34:14
**fundamental** [2] - 19:11, 20:23
**Furlow** [1] - 2:13
**future** [1] - 23:24

**G**

**Gaffigan** [1] - 1:25
**games** [1] - 30:10
**Garrett** [2] - 5:10, 6:8
**gaston** [1] - 16:14
**Geddes** [2] - 1:22, 9:12
**gee** [1] - 20:14
**generation** [1] - 29:25
**generations** [7] - 22:1, 22:9, 23:24, 26:6, 28:9, 28:10, 30:1
**gentleman** [2] - 22:12, 26:24
**given** [5] - 15:21, 18:1, 21:7, 22:7, 33:13
**glad** [1] - 13:4
**going-forward** [1] - 15:17
**Good-bye** [1] - 35:10
**Gotshal** [5] - 3:16, 10:19, 18:23, 22:13, 23:7
**grab** [1] - 17:8
**Graham** [7] - 5:10, 10:7, 17:22, 34:19, 35:7
**great** [1] - 24:22
**greater** [2] - 20:4, 20:14
**Greenblum** [2] - 7:19, 12:4
**Grimaldi** [2] - 6:13, 10:5
**Grimm** [10] - 2:3, 9:8, 9:9, 13:10, 13:19, 34:1, 34:3, 34:18
**Group** [2] - 7:5, 11:10
**guidance** [1] - 29:5
**guilty** [1] - 28:18

**guys** [4] - 15:5, 29:11, 30:3, 30:17

**H**

**Hadley** [1] - 6:3
**Hails** [3] - 3:3, 12:8, 12:10
**Halkowski** [3] - 4:3, 10:24, 10:25
**handle** [2] - 13:5, 35:3
**hard** [3] - 20:3, 30:13, 34:5
**Harris** [2] - 4:21, 11:23
**Hartford** [2] - 7:5, 11:10
**Hartson** [2] - 2:15, 10:21
**Hastings** [1] - 6:17
**hear** [6] - 17:23, 18:19, 26:3, 30:21, 32:25, 33:14
**hearing** [4] - 31:3, 31:22, 33:5, 33:25
**Hearing** [1] - 19:25
**heart** [1] - 16:12
**held** [1] - 8:25
**help** [3] - 34:13, 35:4
**helpful** [1] - 34:6
**Henderson** [2] - 5:10, 6:8
**historical** [4] - 16:7, 24:19, 24:25, 31:4
**hit** [2] - 22:24, 23:3
**Hogan** [2] - 2:15, 10:21
**Hold** [1] - 25:25
**holding** [1] - 23:9
**Hollywood** [1] - 6:22
**Honeywell** [24] - 1:4, 1:10, 2:9, 2:10, 2:11, 9:9, 9:10, 9:17, 9:18, 18:1, 18:15, 19:7, 19:9, 19:15, 20:5, 22:22, 23:13, 27:24, 27:25, 29:20, 29:23, 30:17, 34:23, 34:24
**Honor** [47] - 9:8, 9:10, 9:21, 10:16, 10:20, 10:22, 10:24, 11:5, 11:9, 11:21, 11:25, 12:2, 12:6, 12:13, 12:15, 12:18, 12:21, 13:19, 13:23, 15:8, 16:6, 16:17, 16:22, 16:25, 17:22, 18:11, 18:22, 20:2, 21:3, 22:21, 23:11, 24:12, 25:3, 26:13, 27:1, 30:23, 31:3, 31:11,

31:23, 32:10, 33:22, 33:24, 34:1, 34:3, 34:19, 35:7, 35:12
**Honorable** [1] - 1:19
**hope** [2] - 17:23, 29:4
**hopefully** [1] - 33:12
**Horwitz** [13] - 5:3, 9:21, 10:1, 10:12, 16:22, 31:23, 31:25, 32:9, 32:15, 33:24
**Howrey** [1] - 6:12
**Hudnell** [2] - 4:7, 11:3
**hundreds** [3] - 19:5, 19:13, 19:20
**Hunsaker** [2] - 4:11, 11:2
**Hutz** [1] - 8:12

**I**

**idea** [2] - 13:25, 15:15
**identification** [1] - 19:12
**identified** [17] - 15:12, 19:7, 21:8, 21:24, 22:5, 22:15, 24:1, 24:13, 25:10, 25:15, 25:18, 26:5, 26:6, 26:9, 27:2, 29:12, 29:24
**identifies** [1] - 20:12
**identify** [6] - 19:15, 23:19, 24:5, 26:8, 27:24, 30:18
**identifying** [4] - 11:19, 15:5, 19:18, 31:1
**identity** [2] - 14:8, 16:8
**Iii** [1] - 4:7
**Illinois** [3] - 5:15, 7:4, 23:15
**imported** [2] - 14:12, 26:19
**imposing** [1] - 13:16
**impossible** [1] - 29:8
**impracticable** [1] - 33:14
**inability** [1] - 20:18
**Inc** [26] - 1:4, 1:10, 1:13, 2:11, 2:11, 2:21, 3:12, 4:4, 4:4, 4:9, 4:13, 4:17, 5:4, 5:5, 5:5, 5:6, 5:12, 5:24, 6:5, 6:6, 7:5, 7:12, 7:22, 8:7, 8:14
**include** [1] - 25:7
**included** [3] - 23:20, 23:22, 23:25
**includes** [1] - 33:7
**incorporated** [1] -

24:6
**incorporates** [1] - 31:14
**incorporating** [1] - 30:8
**individual** [2] - 15:19, 17:17
**individuals** [1] - 21:11
**Industrial** [1] - 3:19
**information** [19] - 14:10, 15:21, 16:7, 18:2, 20:4, 21:7, 21:15, 24:10, 24:25, 25:21, 25:24, 26:4, 26:5, 28:22, 29:23, 30:4, 32:11, 32:17, 34:23
**infringe** [8] - 15:5, 19:16, 20:20, 21:25, 24:7, 24:16, 28:2, 28:7
**infringed** [1] - 22:5
**infringement** [13] - 15:13, 15:20, 17:3, 17:9, 19:8, 19:14, 21:8, 22:25, 23:18, 27:5, 31:15, 34:17
**infringes** [4] - 20:24, 24:21, 27:8, 28:24
**infringing** [6] - 23:21, 24:13, 26:17, 28:5, 28:11, 30:18
**initial** [1] - 21:23
**Innovation** [1] - 23:14
**instance** [9] - 15:6, 16:21, 20:16, 20:19, 27:9, 29:2, 32:4, 32:8, 33:2
**instances** [1] - 15:13
**instead** [2] - 27:11, 27:19
**instructive** [1] - 23:14
**Intellectual** [2] - 2:11, 9:16
**intend** [1] - 33:8
**intermediate** [1] - 29:17
**International** [4] - 1:4, 1:10, 2:9, 2:11
**Internet** [1] - 25:13
**interrupt** [1] - 14:16
**interrupted** [2] - 26:20, 26:25
**intervention** [1] - 13:15
**introduced** [1] - 22:10
**investigate** [1] - 22:18
**involved** [2] - 23:16, 33:13
**Ip** [1] - 23:14

**issue** [10] - 14:14, 15:25, 16:18, 17:15, 21:13, 21:15, 29:18, 30:17, 31:1, 32:21
**issues** [2] - 17:11, 27:15

**J**

**James** [2] - 8:12, 12:13
**Janofsky** [1] - 6:17
**Joe** [1] - 12:15
**John** [7] - 2:20, 3:6, 4:7, 9:11, 11:3, 12:6, 12:18
**Johnson** [2] - 4:7, 11:3
**joint** [1] - 33:12
**Jordan** [2] - 1:19, 9:1
**Joseph** [1] - 7:14
**judge** [1] - 29:9
**Judge** [1] - 1:19
**July** [1] - 18:2
**jump** [1] - 17:18
**juncture** [1] - 29:10
**June** [1] - 13:11
**jurisdiction** [4] - 30:10, 30:14, 32:20, 32:21
**justifies** [2] - 19:13, 19:18

**K**

**Kaj** [2] - 1:8, 1:14
**Kaplan** [2] - 2:5, 9:15, 13:20
**Karen** [2] - 8:3, 12:21
**Katten** [1] - 5:14
**Katzenstein** [4] - 2:13, 2:13, 10:22, 10:23
**Kee** [2] - 6:13, 10:5
**keeping** [1] - 9:2
**Kelly** [2] - 4:11, 11:2
**Kent** [1] - 1:19
**Kenyon** [6] - 3:2, 3:5, 3:10, 12:19
**kind** [2] - 16:13, 17:14
**kinds** [1] - 28:13
**Kodak** [2] - 4:23, 11:22
**Korniczky** [2] - 6:18, 10:9
**Kyocera** [2] - 2:18, 10:21

**L**

**Lampert** [3] - 6:22, 10:10, 10:11
**language** [1] - 17:1

**laptop** [3] - 19:10, 25:9, 25:10
**laptops** [1] - 25:12
**large** [2] - 21:5, 23:2
**Larry** [1] - 11:6
**last** [4] - 20:25, 27:23, 32:24, 34:5
**Lauren** [2] - 4:15, 11:1
**Lavan** [2] - 7:9, 11:7
**law** [1] - 28:19
**Lawrence** [2] - 7:10, 18:11
**Layton** [4] - 3:14, 4:18, 10:17, 11:22
**Lcd** [13] - 14:9, 14:11, 16:9, 19:4, 19:9, 20:16, 24:6, 27:10, 29:12, 29:25, 30:7, 31:11, 32:7
**Lcdcontaining** [1] - 19:4
**lead** [1] - 21:14
**learn** [1] - 20:10
**least** [1] - 18:5
**led** [2] - 32:3, 32:5
**legitimately** [1] - 27:21
**Lender** [1] - 10:18
**lens** [1] - 31:12
**letter** [1] - 13:9
**letting** [1] - 34:4
**Lewis** [2] - 4:7, 11:3
**liability** [1] - 14:14
**light** [1] - 31:11
**limit** [1] - 18:15
**limitations** [1] - 14:24
**Limited** [2] - 5:5, 6:5
**limited** [2] - 18:16, 18:17
**line** [14] - 9:6, 9:9, 9:11, 9:13, 9:15, 9:23, 10:1, 10:4, 11:1, 11:6, 11:22, 12:24, 22:16, 22:17
**lines** [4] - 13:5, 23:11, 24:2, 29:24
**list** [7] - 9:20, 9:23, 14:5, 14:19, 14:21, 16:7, 25:23
**Literally** [1] - 24:18
**literately** [1] - 19:3
**Llp** [11] - 2:5, 2:15, 4:21, 5:3, 5:10, 6:3, 6:8, 6:12, 6:17, 7:7, 7:9
**local** [4] - 10:23, 11:12, 11:14, 11:15
**Lodge** [1] - 8:12
**logjam** [2] - 14:1, 15:25

**look** [5] - 11:17, 13:12, 20:14, 24:20, 33:5
**looking** [2] - 21:16, 25:7
**Los** [1] - 2:16
**Ltd** [3] - 5:7, 5:16, 7:11
**Lueck** [32] - 2:5, 9:14, 13:20, 13:22, 13:23, 14:17, 14:19, 15:8, 15:11, 16:6, 16:16, 17:25, 20:1, 20:2, 21:3, 22:4, 22:19, 24:11, 24:12, 26:3, 26:11, 26:12, 26:21, 30:22, 30:23, 31:10, 31:16, 32:2, 32:12, 33:5, 33:21, 33:22

## M

**Maier** [2] - 5:18, 8:5
**main** [2] - 16:23, 17:15
**maker** [4] - 14:2, 14:8, 16:9, 29:24
**makers** [4] - 21:10, 24:15, 24:16, 26:18
**manageable** [1] - 24:4
**Manges** [2] - 3:16, 10:19
**manner** [1] - 31:14
**manufacture** [1] - 28:13
**manufactured** [1] - 14:11
**manufacturer's** [1] - 28:4
**manufacturers** [8] - 28:16, 29:6, 29:12, 29:21, 30:19, 31:2, 32:23, 34:17
**manufacturing** [1] - 21:6
**Margules** [2] - 8:3, 12:22
**marketed** [1] - 26:15
**marketers** [1] - 30:7
**Martin** [2] - 2:5, 9:14
**Marty** [1] - 13:20
**match** [1] - 14:11
**Matsushita** [7] - 3:18, 3:19, 10:17, 18:23, 19:1, 19:8, 22:12
**Matt** [1] - 9:14
**matter** [3] - 17:15, 19:11, 33:19
**Matthew** [1] - 2:6
**Mccarter** [2] - 8:9, 11:25
**Mcclelland** [2] - 5:18, 8:5

**Mccloy** [1] - 6:3
**mean** [7] - 22:8, 26:13, 28:3, 28:5, 31:8, 31:10, 32:16
**meant** [2] - 27:25, 32:10
**meet** [1] - 23:11
**meets** [1] - 27:10
**mentioned** [1] - 17:7
**merely** [1] - 19:17
**Merit** [1] - 1:25
**Michael** [5] - 5:14, 7:20, 8:12, 10:6, 12:4
**middle** [1] - 23:11
**might** [1] - 14:1
**Milbank** [1] - 6:3
**Miller** [3] - 2:5, 9:15, 13:20
**Minneapolis** [1] - 2:7
**Minnesota** [1] - 2:7
**minutes** [1] - 27:14
**misaligned** [1] - 31:12
**missing** [1] - 32:1
**misunderstood** [1] - 26:11
**mix** [1] - 30:6
**model** [13] - 14:9, 22:7, 22:17, 24:25, 26:7, 26:8, 26:14, 26:21, 27:10, 28:11, 28:24, 30:2
**models** [13] - 21:18, 21:20, 22:1, 23:4, 23:17, 23:20, 23:22, 23:25, 25:10, 25:11, 27:2, 27:3, 29:12
**module** [13] - 14:2, 14:8, 14:9, 16:8, 16:9, 20:17, 21:10, 24:15, 24:16, 26:18, 27:7, 27:10, 32:7
**modules** [16] - 14:11, 21:10, 24:6, 24:13, 24:14, 24:15, 24:16, 26:16, 26:19, 27:5, 29:13, 30:7, 31:2, 31:4, 31:5
**months** [5] - 13:7, 19:8, 23:4, 32:24, 34:6
**morning** [5] - 9:8, 9:13, 9:16, 13:23, 35:10
**Morris** [4] - 2:2, 7:13, 9:9, 12:16
**motion** [2] - 32:3, 32:5
**move** [1] - 33:3
**moved** [1] - 20:8
**moving** [4] - 13:9,

27:21, 32:25, 35:5
**Muchin** [1] - 5:14

## N

**name** [2] - 23:6, 23:9
**named** [1] - 12:23
**narrowed** [1] - 24:23
**narrower** [1] - 26:12
**Neal** [2] - 4:21, 11:23
**necessarily** [1] - 29:18
**need** [6] - 9:24, 16:13, 22:16, 32:18, 33:7, 34:22
**Nelson** [2] - 6:13, 10:5
**Neustadt** [2] - 5:18, 8:5
**New** [14] - 3:6, 3:11, 3:17, 4:8, 4:22, 6:4, 7:10, 11:7
**newer** [1] - 26:8
**next** [2] - 33:6, 34:15
**Nichols** [2] - 2:2, 9:9
**Nikon** [12] - 5:12, 10:2, 10:7, 16:1, 17:23, 18:1, 18:3, 18:5, 19:1, 34:20, 34:21
**Nokia** [5] - 4:4, 4:17, 10:25, 11:1, 16:2
**North** [4] - 5:7, 5:7, 5:16, 6:15
**Northern** [1] - 23:14
**Note** [1] - 8:24
**nothing** [1] - 19:25
**notice** [1] - 30:19
**nub** [1] - 17:10
**number** [7] - 9:22, 14:9, 16:9, 19:20, 21:5, 26:22, 33:13
**numbers** [5] - 22:7, 22:17, 24:25, 26:14, 26:15

## O

**Oberts** [1] - 2:6
**obligation** [1] - 17:2
**Oblon** [2] - 5:18, 8:5
**Oblong** [1] - 12:24
**October** [2] - 14:7, 14:23
**odds** [1] - 13:11
**offered** [2] - 15:22, 24:19
**often** [1] - 21:19
**Ollis** [2] - 8:6, 12:24
**Olsen** [3] - 8:12, 12:13
**Olympus** [8] - 2:21, 2:21, 3:12, 3:12,

12:6, 12:8, 12:9, 16:2
**One** [1] - 10:10
**one** [15] - 13:16, 14:17, 17:15, 19:10, 22:23, 23:12, 26:1, 27:8, 27:16, 28:9, 28:16, 29:21, 29:22, 30:24, 31:12
**ones** [3] - 14:13, 16:5, 22:7
**ooo** [1] - 8:22
**open** [1] - 8:25
**opportunity** [1] - 27:15
**optics** [2] - 5:6, 6:10
**Optrex** [3] - 8:7, 8:10, 12:22
**order** [6] - 13:15, 18:3, 27:23, 33:9, 33:16
**ordered** [2] - 17:14, 29:9
**originally** [1] - 23:19
**ought** [1] - 33:20
**outside** [1] - 17:13
**overseas** [3] - 14:12, 21:10, 30:7
**own** [1] - 32:8

## P

**panel** [1] - 31:11
**part** [2] - 20:18, 32:7
**participate** [1] - 34:22
**particular** [2] - 27:9, 27:10
**particularly** [1] - 30:11
**parties** [5] - 18:7, 29:6, 30:5, 33:3, 33:13
**party** [1] - 29:17
**Pascale** [3] - 8:3, 12:21
**past** [6] - 15:15, 20:6, 21:22, 22:10, 26:1, 26:14
**patent** [2] - 14:24, 27:11
**patience** [1] - 9:4
**Paul** [1] - 6:17
**Pause** [3] - 13:2, 19:24, 31:21
**Pc** [6] - 4:2, 4:6, 4:11, 4:15, 5:18, 8:5
**Pdas** [2] - 25:8, 25:15
**Pentax** [4] - 7:21, 7:22, 12:3, 12:5
**people** [4] - 29:17, 30:12, 32:10, 32:19
**percent** [1] - 22:24

percentage [1] - 23:3
perhaps [3] - 10:18, 19:5, 19:13
period [1] - 17:8
permission [1] - 34:7
personal [2] - 30:14, 32:21
perspective [1] - 23:12
Phil [1] - 11:5
Philip [1] - 7:7
Philips [4] - 5:7, 6:15, 10:3, 10:5
phone [2] - 17:24, 33:21
phones [6] - 19:10, 25:8, 28:1, 28:3, 28:4, 28:13
Photo [3] - 7:11, 7:12, 11:6
pieces [1] - 29:22
Pittsford [1] - 4:22
place [5] - 13:15, 32:6, 33:9, 33:16, 33:17
plaintiff [8] - 9:7, 9:17, 17:3, 17:9, 17:12, 18:8, 23:19, 24:1
plaintiffs [4] - 12:23, 13:8, 13:17, 24:9
Plaintiffs [2] - 1:5, 1:11
plaintiffs' [1] - 35:8
plan [2] - 30:5, 30:22
play [1] - 30:13
players [1] - 25:9
playing [1] - 30:10
Plc [1] - 7:19
pleading [1] - 21:12
Poff [3] - 7:17, 12:2
point [6] - 15:6, 17:18, 22:13, 22:14, 22:23, 35:2
points [1] - 13:14
portable [1] - 25:8
posed [1] - 32:12
position [2] - 15:3, 33:15
positions [1] - 26:1
possible [1] - 24:5
Potter [3] - 5:3, 7:7, 9:22
premise [2] - 20:8, 20:23
prepared [1] - 29:7
present [1] - 14:8, 14:23, 24:8
pretty [1] - 13:7
problem [4] - 20:22, 24:14, 32:2, 34:12
proceed [1] - 33:8

proceeding [1] - 27:14
proceedings [1] - 8:24
product [21] - 15:14, 15:18, 16:9, 16:10, 18:18, 20:5, 20:19, 21:9, 22:2, 22:15, 22:16, 22:17, 22:18, 26:5, 26:6, 26:9, 26:10, 29:24, 29:25, 30:1, 32:8
Products [2] - 5:5, 6:5
products [52] - 14:5, 14:9, 14:12, 14:21, 14:25, 15:5, 15:12, 15:15, 15:23, 16:8, 17:6, 19:2, 19:4, 19:6, 19:7, 19:10, 19:12, 19:14, 19:16, 19:17, 19:18, 19:19, 21:5, 21:24, 21:25, 22:5, 22:6, 22:9, 23:1, 23:2, 23:24, 23:25, 24:5, 24:7, 24:14, 24:17, 24:19, 24:24, 25:7, 26:4, 26:9, 26:16, 27:7, 27:25, 28:6, 28:8, 29:12, 29:13, 29:24, 30:9, 31:4, 32:19
progress [3] - 13:24, 16:3, 16:18
prompts [1] - 28:23
proper [1] - 29:14
Properties [1] - 2:11
Property [1] - 9:16
provide [3] - 16:7, 20:4, 24:3
provided [1] - 34:22
purchase [3] - 22:8, 25:13, 27:4
purchased [1] - 15:12
put [2] - 27:23, 33:16
putting [1] - 29:16

### Q

queue [1] - 9:3
quoted [1] - 17:1

### R

raised [1] - 17:12
range [1] - 21:5
ranges [1] - 21:9
rapidly [1] - 21:19
rate [2] - 22:24, 22:25
rather [1] - 27:6
reach [1] - 17:8
read [1] - 18:3
readily [1] - 25:13

ready [2] - 33:16, 34:13
real [2] - 18:6, 20:22
realize [1] - 10:13
really [5] - 15:24, 16:11, 16:13, 16:24, 29:2
reason [1] - 14:10
reasonable [1] - 24:3
reasonably [1] - 21:14
reasons [1] - 29:21
rebut [1] - 20:1
received [1] - 13:9
recognizing [1] - 30:24
records [1] - 21:20
recover [1] - 21:17
Redwood [1] - 4:12
regarding [1] - 31:3
Registered [1] - 1:25
relative [1] - 21:16
reluctance [1] - 20:17
remember [1] - 30:12
report [1] - 34:8
Reporter [1] - 1:25
Reporters [1] - 8:24
reporting [1] - 33:11
represent [1] - 9:6
request [1] - 35:5
require [1] - 28:20
required [1] - 27:24
requires [1] - 28:19
requiring [1] - 28:25
resellers [1] - 32:11
reselling [2] - 32:7
resells [1] - 25:17
resolve [4] - 14:1, 16:17, 18:7, 27:15
resolved [4] - 13:14, 15:25, 16:5, 18:1
resolving [2] - 16:2, 16:18
respect [2] - 28:8, 35:1
respond [3] - 15:3, 32:12, 35:11
responded [1] - 17:13
response [4] - 15:10, 15:11, 15:24, 22:20
Reston [2] - 6:9, 7:20
result [1] - 26:2
results [1] - 15:24
retailers [1] - 29:16
Rich [4] - 9:21, 12:9, 16:22, 31:25
Richard [4] - 3:10, 5:3, 11:22, 12:7
Richards [3] - 3:14, 4:18, 10:17

Richardson [4] - 4:2, 4:6, 4:11, 4:15
Rick [2] - 10:4, 25:3
Rizzi [9] - 3:17, 10:18, 18:22, 23:7, 23:8, 23:10
road [1] - 14:15
Robert [5] - 2:13, 2:16, 3:3, 10:20, 10:22
Roberts [1] - 9:14
Robins [3] - 2:5, 9:15, 13:20
Roche [5] - 7:3, 11:9, 11:13, 11:15
Roderick [1] - 5:23
roll [1] - 9:5
room [1] - 23:11
Rosati [4] - 3:10, 12:7, 12:9
Rosenman [1] - 5:14
Rosenthal [4] - 7:10, 11:7, 18:11, 18:12
Rovner [3] - 7:7, 11:5
Rule [1] - 21:12
run [1] - 33:2

### S

Sachnoff [1] - 7:3
Samsung [4] - 5:8, 6:19, 10:2, 10:9
San [1] - 6:18
Sanyo [6] - 5:6, 5:7, 5:16, 5:16, 10:3, 10:6
satisfied [3] - 21:12, 21:23
satisfy [1] - 18:19
schedule [2] - 33:17, 34:16
scheduling [3] - 13:15, 33:9, 33:15
Schlier [2] - 5:19, 10:7
scope [1] - 17:13
Scott [3] - 6:22, 10:10, 10:12
Sdi [4] - 5:8, 6:19, 10:2, 10:9
seek [1] - 26:13
Seiko [2] - 2:17, 10:21
sellers [1] - 29:17
sells [1] - 25:16
send [1] - 15:23
sense [2] - 18:24, 23:16
sensible [1] - 30:5
separate [1] - 9:11
September [1] - 1:16
set [5] - 14:6, 14:22,

29:11, 33:10, 34:16
Shandler [3] - 4:19, 11:21
Shaw [4] - 2:20, 12:6, 12:10
shifted [2] - 26:2, 27:18
shifting [1] - 19:11
short [2] - 13:16, 34:24
show [1] - 21:20
showing [1] - 21:4
shy [1] - 17:21
side [2] - 30:3, 33:23
side's [1] - 15:3
similar [8] - 23:15, 24:14, 26:17, 31:5, 31:7, 31:8, 31:9, 31:11
similarly [1] - 18:25
Simon [2] - 6:12, 11:16
simply [1] - 21:19
single [3] - 15:18, 18:18
situated [1] - 18:25
six [8] - 14:24, 19:3, 19:19, 20:25, 21:17, 23:4, 25:10, 27:2
Slifkin [2] - 4:21, 11:23
Smith [1] - 2:13
snapshot [1] - 13:24
sold [4] - 14:5, 14:13, 14:21, 20:6
somewhat [2] - 23:15
Sony [10] - 2:21, 2:22, 3:7, 8:13, 8:14, 12:7, 12:10, 12:14, 12:19
sorry [4] - 10:12, 14:16, 23:5, 32:9
sort [1] - 19:10
sound [1] - 23:2
source [1] - 31:11
span [1] - 19:2
speaking [1] - 13:17
specific [15] - 15:13, 17:19, 18:2, 22:7, 23:18, 23:20, 23:25, 24:6, 24:23, 26:5, 26:14, 28:6, 28:23, 29:11, 31:15
specifically [3] - 14:18, 17:5, 27:24
specified [2] - 22:6, 26:10
spite [1] - 13:6
Spivack [1] - 12:24
Spivak [2] - 5:18, 8:5
squarely [1] - 19:15
Stacie [2] - 2:6, 9:14

**Stargatt**[2] - 2:19, 7:17
**start**[4] - 9:7, 9:19, 20:8, 20:13
**States**[6] - 1:1, 14:6, 14:13, 14:22, 26:19, 30:8
**statute**[1] - 14:24
**stay**[8] - 18:4, 18:6, 18:7, 29:22, 32:3, 32:5, 35:3
**step**[2] - 34:15, 34:21
**Stephen**[4] - 3:17, 6:18, 10:9, 18:22
**Steve**[2] - 10:18, 23:7
**Steven**[1] - 1:22
**still**[5] - 13:8, 13:11, 18:13, 26:1, 34:8
**straightens**[1] - 29:4
**Stroock**[4] - 7:9, 11:7
**structured**[1] - 23:23
**structuring**[1] - 24:2
**stuff**[1] - 20:24
**submission**[1] - 33:12
**submissions**[1] - 17:12
**subsequent**[1] - 28:10
**suit**[2] - 29:14, 34:17
**summarized**[1] - 16:17
**suppliers**[1] - 19:9
**supposed**[1] - 32:23
**system**[1] - 20:9

**T**

**Taylor**[2] - 2:19, 7:17
**tear**[8] - 15:19, 15:22, 15:24, 22:8, 22:24, 27:3, 28:5, 28:22
**tear-down**[4] - 15:24, 22:24, 27:3, 28:5
**tear-downs**[1] - 28:22
**technology**[2] - 26:17
**telephone**[2] - 13:4, 34:10
**Telephone**[2] - 1:17, 35:13
**television**[1] - 23:20
**televisions**[3] - 23:17, 23:22, 24:1
**terms**[1] - 27:19
**Texas**[1] - 5:23
**thinking**[3] - 20:21, 29:4, 30:13
**third**[1] - 29:17
**third-party**[1] - 29:17

**Thomas**[3] - 2:3, 4:3, 8:9
**thoroughly**[1] - 22:18
**thousand**[2] - 19:5, 19:13
**three**[6] - 16:1, 19:7, 19:12, 19:18, 28:14, 34:5
**tie**[1] - 26:18
**tied**[1] - 26:13
**today**[5] - 9:10, 17:12, 17:24, 29:19, 33:11
**together**[2] - 13:6, 29:11
**Tom**[5] - 9:8, 10:24, 11:25, 13:19, 34:3
**took**[1] - 15:2
**tore**[2] - 28:9, 28:13
**torn**[3] - 15:13, 21:6, 24:24
**Toshiba**[5] - 5:6, 5:20, 10:2, 10:7
**total**[1] - 25:11
**transcript**[1] - 17:2
**transition**[2] - 14:1, 35:2
**transitioned**[1] - 34:16
**try**[2] - 20:5, 30:5
**trying**[1] - 27:19
**Tunnell**[1] - 2:2
**Tweek**[1] - 6:3
**two**[6] - 9:10, 19:10, 28:16, 31:12, 33:11, 34:8
**type**[1] - 24:10
**types**[1] - 22:6
**Typically**[1] - 11:17

**U**

**ultimately**[1] - 14:15
**unable**[2] - 15:14, 16:3
**uncover**[1] - 20:5
**under**[3] - 18:4, 22:25, 26:15
**unilateral**[1] - 27:6
**United**[5] - 1:1, 14:6, 14:13, 14:21, 26:19, 30:8
**unless**[1] - 11:18
**unreasonable**[1] - 24:8
**unwillingness**[1] - 20:18
**up**[7] - 14:11, 14:20, 16:20, 22:13, 30:4, 32:17, 32:18

**upset**[1] - 30:9
**urgency**[1] - 33:20
**Usa**[2] - 7:12, 7:22
**Usdcj**[1] - 1:19
**utilize**[1] - 24:6

**V**

**various**[2] - 22:1, 23:17
**versa**[1] - 27:12
**vice**[1] - 27:12
**vice-versa**[1] - 27:12
**video**[1] - 25:17
**view**[1] - 21:16
**Vinson**[1] - 5:22
**Virginia**[4] - 5:19, 6:9, 7:20, 8:6

**W**

**Wade**[3] - 3:14, 10:16
**wait**[1] - 20:7
**waiting**[1] - 9:2
**Walker**[1] - 6:17
**Walsh**[3] - 8:9, 11:25
**wants**[2] - 16:20, 17:20
**Washington**[5] - 3:3, 4:16, 5:11, 6:14, 7:14
**Weaver**[1] - 7:3
**week**[1] - 30:23
**week's**[1] - 25:14
**weeks**[2] - 33:11, 34:8
**weigh**[1] - 25:6
**Weil**[5] - 3:16, 10:19, 18:23, 22:12, 23:7
**White**[1] - 6:12
**who-goes-first**[1] - 30:17
**wholesale**[1] - 22:15
**wide**[1] - 21:5
**wild**[1] - 23:1
**William**[1] - 3:14
**Williams**[7] - 5:23, 10:4, 25:3, 25:6, 25:23, 27:1
**willing**[1] - 29:6
**Wilmington**[1] - 1:16
**Wintek**[4] - 5:6, 6:10, 10:3, 10:7
**Wireless**[2] - 2:18, 10:21
**wondering**[1] - 34:7
**Woods**[2] - 2:6, 9:14
**works**[2] - 20:10, 21:2
**wrestle**[1] - 20:7

**wronged**[1] - 20:11
**Wyatt**[1] - 7:17

**Y**

**years**[5] - 14:24, 19:4, 19:19, 20:25, 21:18
**York**[16] - 3:6, 3:11, 3:17, 4:8, 4:22, 6:4, 6:8, 7:10, 10:8, 11:7
**Young**[3] - 2:19, 7:17, 12:2
**yourself**[1] - 11:19

# EXHIBIT E

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

MATTHEW L. WOODS
(612) 349-8272

May 18, 2005

<u>Via E-Mail</u>

ALL COUNSEL OF RECORD
PER THE ATTACHED LIST

Re:    Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
        Court File No. C.A. 04-1337-KAJ
        Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
        Court File No. C.A. No. 04-1338-KAJ
        Optrex America, Inc. v. Honeywell International Inc., et al.
        Civil Action No. 04-1536 (KAJ)
        Our File No. 019896.0229

Dear Counsel:

      As you know, in less than 30 days, the parties must report back to Judge Jordan on a plan for implementing some form of stay with regard to the end-product manufacturers. We heard Judge Jordan to be expecting the parties to find an effective way to substitute the LCD module suppliers for the end-product manufacturers, and to do so in a time frame which gets the case trial ready in less than 24 months.

      We have a number of thoughts regarding these directives, but need the following information to formulate a proper plan. Given Judge Jordan's clear direction on the trial date, all parties would be ill-served if the remaining LCD module suppliers are not promptly brought into this case. To this end, we need to have your answers to the following issues:

1.    Certain Named Defendants have identified their LCD module suppliers; most have not. For those who have provided this information, please confirm that it accurately reflects not only the current situation, but also the situation over the past six (6) years. For those who have not provided this information, please do so to the same extent. This information was requested in Interrogatories Nos. 1-3 that were served upon each defendant in April.

2.    We also need a list of model numbers for the modules used in the accused products. This information was also requested in the recent discovery. Based upon the affidavits that were filed in the recent motion practice, some defendants have already conducted a survey of their activities and compiled this information (*e.g.*, Declaration of Yoshimitsu Enomoto on behalf of Olympus Corporation, ¶ 6). We presume that even those defendants who chose not to identify their suppliers must have already conducted similar

ALL COUNSEL OF RECORD
May 18, 2005
Page 2

compilations, given the tenor of the motion practice. Please provide such information as soon as possible so we can give it due consideration in our discussions leading up to June 15th.

3.    The stay does not apply to those entities which are "hybrids" (i.e., they manufacture both LCDs and end-products), to the extent of their LCD supplying activities. A number of the movants have pointed to Casio, Sony, Toshiba, Sanyo, Fuji, and Matsushita as such hybrids. Please let us know whether you agree with this list. We also ask Sony to clarify whether it is responsible for the activities of ST-LCD, and Toshiba to clarify whether it is responsible for the activities of TMD Display.

4.    A number of the movants have referenced the existence of certain indemnification agreements between themselves and their suppliers, agreements which could serve as a basis for asserting jurisdiction over the suppliers. Please identify all such indemnification agreements and describe what steps the Named Defendants will undertake to implead their module suppliers. Given the Court's comments, we will stipulate to the filing and service of such third-party complaints, and will seek the Court's expeditious granting of all such motions. Alternatively, LCD module suppliers could simply intervene, as did Seiko Epson. To the extent an LCD module supplier is willing to intervene, we submit that there is no reason to delay such intervention; their presence prior to the deadline will serve to narrow the issues for June 15th. Please identify those of your suppliers that will join Optrex and Seiko Epson in this suit.

Ultimately, we are concerned that, despite the motion practice, only two LCD module suppliers have voluntarily appeared in this case (Optrex and Seiko Epson). If the remaining LCD module suppliers are not brought into the case, Honeywell faces palpable and immediate prejudice that will render any stay unworkable.

5.    Judge Jordan's Order references separate trials between the LCD manufacturers and the non-manufacturers. In this regard, we expect that the Named Defendants are willing to accept and be bound by any judgment against the LCD module suppliers with respect to infringement, validity and unenforceability. Please confirm this point, as it has a material impact on the scope and structure of any stay.

6.    Finally, we disagree with certain statements made by certain parties which suggested that Honeywell has not identified the bases for its infringement claim. As you know, beginning last year, Honeywell has always informed any inquiring party as to the bases for its infringement charge. At our meet and confer on April 27th in New York, I reiterated Honeywell's offer to do so and a number of parties have availed themselves of that opportunity. I will once again confirm Honeywell's willingness to identify the bases of its infringement to any party who has not so previously requested. In the meantime, once the Named Defendants provide the information discussed in paragraphs 1 and 2 above, Honeywell will "translate" this information so it is meaningful to the LCD module suppliers. The Court recognized Honeywell's right to use discovery to gather

ALL COUNSEL OF RECORD
May 18, 2005
Page 3

information regarding the full scope of infringement, and Honeywell's first round of discovery was tailored for that specific purpose. We will work with the LCD suppliers to provide a comprehensive list of accused products once information is provided regarding the identity and configuration of their LCD modules.

In order to meet the June 15th deadline, I would ask that each of the Named Defendants provide me with its thoughts on these questions by Wednesday, May 25, 2005. Honeywell can then provide a formal proposal to all parties by the following Wednesday, June 1, 2005. The Named Defendants can respond the following Wednesday, June 8th and we can set a teleconference for June 10th to discuss the proposals. This schedule should provide sufficient time for the parties to finalize a document in time for the June 15th deadline.

I look forward to hearing from you.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Matthew L. Woods

MLW/ms

c:    Martin R. Lueck, Esq.
      Thomas G. Grimm, Esq. (via e-mail)
      Steven J. Balick, Esq. (via e-mail)

ALL COUNSEL OF RECORD
May 18, 2005
Page 4


bc:    Anthony A. Froio, Esq.
       Marc N. Henschke, Esq.
       Stacie E. Oberts, Esq.

**From:** Mary Ann Schumacher
**To:** Apple, Optrex Counsel;  Audiovox Counsel
**Date:** 5/18/2005 5:16:04 PM
**Subject:** Honeywell v. Apple Computer, et al., Audiovox Corporation, et al. and Optrex v. Honeywell, et al.

Dear Counsel:

Attached is correspondence from Matthew L. Woods regarding the above matters.



Mary Ann Schumacher
Legal Administrative Assistant
to Matthew L. Woods and
Sonya C. Seidl

612-349-8552
fax: 612-339-4181
e-mail: maschumacher@rkmc.com


**CC:** Lueck, Martin R.;  sbalick@ashby-geddes.com;  tgrimm@mnat.com;  Woods, Matthew L.

# EXHIBIT F

## FULLY REDACTED

# EXHIBIT G

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

MATTHEW L. WOODS
(612) 349-8272

December 21, 2005

**Via E-Mail**

TO:  ALL COUNSEL OF NEWLY NAMED DEFENDANTS

Re:    Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
          Court File No. C.A. 04-1337-KAJ
          Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
          Court File No. C.A. No. 04-1338-KAJ
          Optrex America, Inc. v. Honeywell International Inc., et al.
          Civil Action No. 04-1536 (KAJ)
          Our File No. 019896.0229

Dear Counsel:

As the deadline for the January 9th progress approaches, I want to summarize the issues Honeywell identified during our teleconference last Thursday, December 15th. This summary is intended to assist you in your collective discussions, especially insofar as there was little engagement on these topics during that conference.

The Court's October 7th Order requires us to "report on progress toward a establishing a schedule for bringing to trial claims against manufacturers." October 7 Order, ¶ 6. It is Honeywell's intent to provide the Court with a report that not merely explains the status of which defendants have waived service, but also identifies those issues which need to be addressed in order to develop an effective and orderly schedule. With that charge in mind, Honeywell raised the following issues at the teleconference:

**Impact of 35 U.S.C. § 271:**

At the outset, there is a threshold issue as to whether any of the defendants dispute that Honeywell's claims can be brought to trial against them because of any territorial limitations of 35 U.S.C. § 271. Honeywell believes this threshold issue must be resolved as soon as possible, in order to avoid wasteful or duplicative proceedings. Depending upon the extent that this becomes an issue, it is Honeywell's view that the "customer" defendants may need to become

TO:  ALL COUNSEL OF NEWLY NAMED DEFENDANTS
December 21, 2005
Page 2

more actively involved in this first stage of the case.  While Honeywell offered several concepts for addressing the situation, it clearly reserves all its rights until the defendants have weighed in on this issue, something which they were not prepared to do on the 15th.

**Progress of Discovery:**

We discussed a number of issues relating to the progress of discovery.  Honeywell's basic position is that, as to any individual defendant, the discovery should not be burdensome. Honeywell's '371 patent is straightforward and, assuming defendants identify all modules using the Accused Structure (and produce documents regarding those modules), depositions could be accomplished under a set hourly approach (e.g., each defendant shall make its witness available for "x" hours of deposition).  We envision that discovery of the defendants could proceed along essentially parallel tracks.

More fundamental questions concern coordination of discovery and logistics for depositions, given the number of defendants.  For example, and without exclusion, some topics discussed during our teleconference include:

- Whether foreign defendants will make witnesses available in a mutually agreeable geographic location, thereby avoiding the need to resort to U.S. Embassies, which can substantially delay and complicate the taking of depositions?

- Whether defendants will desire to attend depositions of co-defendant competitors, and whether co-defendant competitors will object to such attendance, and the impact this dynamic has on scheduling of depositions?

- Whether the defendants will develop their legal positions and conduct their discovery of Honeywell under the "lead counsel" approach discussed in the Manual for Complex Litigation, so as to avoid duplicative briefing and duplicative discovery demands upon Honeywell?

- Methodology and timing for document production and privilege logs, especially as it may relate to any joint defense privilege asserted by defendants?

- One additional issue not discussed on the 15th is the extent to which parties anticipate needing third party discovery, which could impact the schedule.  Honeywell expects this will largely be driven by the contours of any affirmative defenses raised by defendants.

TO:  ALL COUNSEL OF NEWLY NAMED DEFENDANTS
December 21, 2005
Page 3

**Protective Order:**

Honeywell is not an active participant in the market for portable consumer electronics. Although Honeywell agrees that a protective order should be in place, the competitive nature of one defendant *vis a vis* the other defendants will likely drive the details of a protective order. Back in April, we had circulated a draft protective order for defendants' consideration.  As we discussed, we have re-circulated that draft for your renewed consideration.

* * *

If any of the defendants have views on these issues that they wish to communicate prior to January 9th, please forward them as soon as possible.  Given that the defendants have offered no meaningful engagement on these issues at this time, we think it likely that each side will file its own status report with the Court.  Moreover, until there has been a comprehensive exchange of ideas regarding establishing a schedule for bringing Honeywell's claims to trial, Honeywell reserves the right to raise all issues relevant to that subject.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Matthew L. Woods

MLW/ms

c:    Thomas G. Grimm, Esq. (via e-mail)
      John G. Day, Esq. (via e-mail)
      Steven J. Balick, Esq. (via e-mail)
      Stacie E. Oberts, Esq. (via e-mail)

## Schumacher, Mary Ann

| | |
|---|---|
| **From:** | Schumacher, Mary Ann |
| **Sent:** | Wednesday, December 21, 2005 3:33 PM |
| **To:** | 'hu@tphm.com'; 'gorourke@cblh.com'; 'O'Brien, Kevin M'; 'jjohnson@fr.com'; 'dhben-meir@hhlaw.com'; 'Siegal, Matthew'; 'lrosenthal@stroock.com'; 'neil.sirota@bakerbotts.com'; 'robert.scheinfeld@bakerbotts.com'; 'marsden@fr.com'; 'steven.rizzi@weil.com'; 'aollis@oblon.com'; 'grimaldia@howrey.com'; 'terrygarnett@paulhastings.com'; 'peterwied@paulhastings.com'; 'halkowski@fr.com'; 'dmargules@bmf-law.com'; 'jseaman@bmf-law.com'; 'provner@potteranderson.com'; 'tinalin@hannstar.com'; 'wade@rlf.com'; 'kpascale@bmf-law.com'; 'abouchard@bmf-law.com'; 'keen@howrey.com'; 'rhorwitz@potteranderson.com'; dmoore@potteranderson.com; 'stephenkorniczky@paulhastings.com'; 'elizabethbrann@paulhastings.com'; 'rjbenson@hhlaw.com'; 'jflock@kenyon.com'; 'rhails@kenyon.com'; 'jshaw@ycst.com'; 'kkeller@ycst.com'; 'york.faulkner@finnegan.com' |
| **Cc:** | 'Thomas C. Grimm'; 'JDay'; 'sbalick@ashby-geddes.com'; Oberts, Stacie E.; Woods, Matthew L. |
| **Subject:** | Honeywell, et al. v. Apple Computer, et al., Honeywell, et al. v. Audiovox Communications; Optrex v. Honeywell, et al. |
| **Attachments:** | Letter to All Counsel.pdf |

Dear Counsel:

Attached is correspondence from Matt Woods.

Mary Ann Schumacher
Legal Administrative Assistant
to Matthew L. Woods and
Sonya C. Seidl
Robins, Kaplan, Miller & Ciresi L.L.P.
Phone:  612.349.8552
Fax:  612.339.4181
E-mail:  maschumacher@rkmc.com

12/21/2005

# EXHIBIT H

**Potter**
**Anderson**
**& Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

December 30, 2005

**VIA FACSIMILE – (612) 339-4181**

Matthew L. Woods, Esquire
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015

Re:    **Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.**
**C.A. No. 04-1337-KAJ;**
**Honeywell International Inc., et al. v. Apple Computer, Inc., et al.**
**C.A. 04-1338-KAJ; and**
**Optrex America, Inc. v. Honeywell International Inc., et al.**
**Civil Action No. 04-1536-KAJ**

Dear Matt:

I am writing on behalf of a number of defendants/defendant groups[1] in response to your December 21, 2005 letter. As we have previously discussed in writing and during the December 15 conference call, these views are only preliminary, in view of the fact that many defendants have not yet appeared and participated in discussions either with you or with other defendants.

With respect to the issue you characterize as the "impact of 35 U.S.C. § 271," defendants do not believe this is a significant "threshold" issue that must be addressed now, before all parties have responded to the amended complaint. Based on our conversation during the conference call, we understand your question to be whether any LCD manufacturer will contend that all or some of its sales activities are not "within the United States" as required by, e.g., section 271(a). As was discussed during the call, this issue may affect different parties differently, and may vary for different products accused of infringement, so reaching a consensus on this issue is unrealistic, particularly at this early time.

Addressing the other specific issues raised in your December 21 letter, as a general matter foreign defendants will not agree to bring witnesses to the United States for depositions, although they will try to cooperate in setting particular deposition venues where witnesses are

---

[1] AUO, Casio, Citizens Systems America, Fuji, Hitachi, ID Tech, Matsushita, Optrex, Philips, Samsung SDI Co. Ltd. and Samsung SDI America, Inc., Seiko Epson, SEID, Sony Corp.and Wintek.

Matthew L. Woods, Esquire
December 30, 2005
Page 2

located, consistent with legal obligations in those countries. With respect to whether defendants
might desire to attend depositions of other defendants, it is too early to tell whether there will be
significant interest, but defendants do not think that issue should affect the timing or scheduling
of depositions. The primary contact for scheduling depositions should be with counsel for the
particular defendant.

Turning to the issue of the "lead counsel" approach, defendants are unwilling to waive
any of their individual rights, but as in all multi-defendant cases in this District, defendants are
aware that the Court will expect them to coordinate their efforts as appropriate, and to avoid
duplicative work where possible.

On document production and privilege logs, defendants are willing to hear your views as
to methods and timing of production. However, we do not expect the parties to have to log
privileged documents generated after the commencement of this litigation, and we do not believe
the resolution of these issues should affect a determination of the overall case schedule.

With respect to third party discovery, defendants are continuing to consider this issue,
and note that although it is too early in the case to have a real feel for how much third party
discovery may be necessary, defendants do not think third party discovery should be a significant
factor is setting an overall case schedule.

Finally, with respect to a protective order, defendants are reviewing the draft protective
order that you recently circulated and anticipate providing their comments thereon. Again,
however, resolution of an appropriate form of protective order, either by stipulation or order,
should not significantly affect the determination of an overall case schedule.

As stated during the December 15 call, we do not share your view that it is unlikely that
the parties can submit a joint progress report to the Court on January 9 to "report on progress
toward establishing a schedule for bringing to trial claims against manufacturers."[2] To the
contrary, since the Court has requested a progress report and not advocacy papers on how the
case should ultimately go forward, we hope that you will reconsider your position. After you
review this letter, we hope progress can be made to submit a joint report to the Court, in a way
that will foster cooperation among the parties in this early phase and subsequent phases of the
litigation.

Very truly yours,

Richard L. Horwitz

712650

---

[2] We would be happy to see an overall case schedule, in the form of a proposed Scheduling
Order, if you have a specific proposal in mind at this time.

## Schumacher, Mary Ann

| | |
|---|---|
| **From:** | Horwitz, Richard L. [rhorwitz@Potteranderson.com] |
| **Sent:** | Friday, December 30, 2005 10:39 AM |
| **To:** | Woods, Matthew L.; Schumacher, Mary Ann; hu@tphm.com; gorourke@cblh.com; O'Brien, Kevin M; jjohnson@fr.com; dhben-meir@hhlaw.com; Siegal, Matthew; lrosenthal@stroock.com; neil.sirota@bakerbotts.com; robert.scheinfeld@bakerbotts.com; marsden@fr.com; steven.rizzi@weil.com; aollis@oblon.com; grimaldia@howrey.com; terrygarnett@paulhastings.com; peterwied@paulhastings.com; halkowski@fr.com; dmargules@bmf-law.com; jseaman@bmf-law.com; Rovner, Philip A.; tinalin@hannstar.com; wade@rlf.com; kpascale@bmf-law.com; abouchard@bmf-law.com; keen@howrey.com; Moore, David E.; stephenkornizcky@paulhastings.com; elizabethbrann@paulhastings.com; rjbenson@hhlaw.com; jflock@kenyon.com; rhails@kenyon.com; jshaw@ycst.com; kkeller@ycst.com; york.faulkner@finnegan.com; Elizabeth.Niemeyer@finnegan.com |
| **Cc:** | Thomas C. Grimm; JDay; sbalick@ashby-geddes.com; Oberts, Stacie E. |
| **Subject:** | RE: Honeywell, et al. v. Apple Computer, et al., Honeywell, et al. v. Audiovox Communications; Optrex v. Honeywell, et al. |
| **Attachments:** | Digital_.pdf |

Matt - See attached response to your 12/21 letter.

Happy New Year to all!

Rich

---

**From:** Schumacher, Mary Ann [mailto:MASchumacher@rkmc.com]
**Sent:** Wednesday, December 21, 2005 4:33 PM
**To:** hu@tphm.com; gorourke@cblh.com; O'Brien, Kevin M; jjohnson@fr.com; dhben-meir@hhlaw.com; Siegal, Matthew; lrosenthal@stroock.com; neil.sirota@bakerbotts.com; robert.scheinfeld@bakerbotts.com; marsden@fr.com; steven.rizzi@weil.com; aollis@oblon.com; grimaldia@howrey.com; terrygarnett@paulhastings.com; peterwied@paulhastings.com; halkowski@fr.com; dmargules@bmf-law.com; jseaman@bmf-law.com; Rovner, Philip A.; tinalin@hannstar.com; wade@rlf.com; kpascale@bmf-law.com; abouchard@bmf-law.com; keen@howrey.com; Horwitz, Richard L.; Moore, David E.; stephenkorniczky@paulhastings.com; elizabethbrann@paulhastings.com; rjbenson@hhlaw.com; jflock@kenyon.com; rhails@kenyon.com; jshaw@ycst.com; kkeller@ycst.com; york.faulkner@finnegan.com
**Cc:** Thomas C. Grimm; JDay; sbalick@ashby-geddes.com; Oberts, Stacie E.; Woods, Matthew L.
**Subject:** Honeywell, et al. v. Apple Computer, et al., Honeywell, et al. v. Audiovox Communications; Optrex v. Honeywell, et al.

>>>> Please read the confidentiality statement below <<<<

Dear Counsel:

Attached is correspondence from Matt Woods.

Mary Ann Schumacher
Legal Administrative Assistant
to Matthew L. Woods and
Sonya C. Seidl
Robins, Kaplan, Miller & Ciresi L.L.P.
Phone: 612.349.8552
Fax: 612.339.4181

E-mail: maschumacher@rkmc.com

---

Information contained in this e-mail transmission is privileged,
confidential and covered by the Electronic Communications
Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute,
or reproduce this transmission.

If you have received this e-mail transmission in error, please
notify us immediately of the error by return email and please
delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal
Revenue Service, any tax advice contained in this
communication (including any attachments) is not intended
to be used, and cannot be used, for purposes of (i) avoiding
penalties imposed under the U. S. Internal Revenue Code
or (ii) promoting, marketing or recommending to another
person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

---

DEC. 30. 2005 12:40PM    POTTER ANDERSON & CORROON LLP    NO. 2285   P. 1

# POTTER ANDERSON & CORROON LLP

HERCULES PLAZA
1313 NORTH MARKET STREET
P. O. BOX 951
WILMINGTON, DELAWARE 19899-0951
VOICE: (302) 984-6000
FAX: (302) 658-1192

## DATE: DECEMBER 30, 2005

### FACSIMILE TRANSMITTAL SHEET

| TO:<br>Matthew L. Woods | COMPANY:<br>Robins Kaplan Miller & Ciresi | FAX NUMBER:<br>612-339-4181 | PHONE NUMBER:<br>612-349-8272 |
|---|---|---|---|
| FROM:<br>Richard L. Horwitz | PHONE NUMBER:<br>(302) 984-6027 | EMAIL:<br>rhorwitz@potteranderson.com | |
| NUMBER OF PAGES:<br>3 | CHARGE FILE NUMBER:<br>28574 | OPERATOR:<br>Melinda S. Baker, Secretary to R. Horwitz | |

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL
MELINDA BAKER AS SOON AS POSSIBLE AT: (302) 984-6251
ORIGINAL DOCUMENT WILL NOT FOLLOW BY MAIL

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☑ FOR YOUR INFORMATION

NOTES/COMMENTS:

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS PRIVILEGED AND CONFIDENTIAL
INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF
THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED
THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS
VIA THE U.S. POSTAL SERVICE. THANK YOU.

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| APPLE COMPUTER, INC.; ALL AROUND CO., LTD., ARGUS A/K/A HARTFORD COMPUTER GROUP, INC.; ARIMA DISPLAY; AU OPTRONICS CORP.; AU OPTRONICS CORPORATION AMERICA; BOE TECHNOLOGY GROUP COMPANY, LTD.; BEIJING BOE OPTOELECTRONICS TECHNOLOGY CO., LTD.; BOE-HYDIS TECHNOLOGY CO., LTD.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CITIZEN SYSTEMS EUROPE; CITIZEN SYSTEMS AMERICA CORPORATION; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; HANNSTAR DISPLAY CORPORATION; HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI DISPLAY DEVICES, LTD.; HITACHI ELECTRONIC DEVICES (USA), INC.; INNOLUX DISPLAY CORPORATION; INTERNATIONAL DISPLAY TECHNOLOGY; INTERNATIONAL DISPLAY TECHNOLOGY USA, INC.; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS CONSUMER ELECTRONICS NORTH AMERICA; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA, INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.; PICVUE ELECTRONICS LIMITED; QUANTA DISPLAY INC.; SAMSUNG SDI CO., LTD; SAMSUNG SDI AMERICA, INC; SONY CORPORATION; SONY CORPORATION OF AMERICA; SONY ERICSSON MOBILE COMMUNICATIONS AB; SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.; ST | ) ) ) ) ) C.A. No. 04-1338-KAJ ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

LIQUID CRYSTAL DISPLAY CORP.; TOPPOLY )
OPTOELECTRONICS CORP.; TOSHIBA )
CORPORATION; TOSHIBA AMERICA, INC.; WINTEK )
CORP.; WINTEK ELECTRO-OPTICS CORPORATION; )
WISTRON CORPORATION; and M-DISPLAY )
OPTRONICS CORP., )
                                              )
        Defendants.                           )
                                              )
—————————————————————————— )
                                              )
HONEYWELL INTERNATIONAL INC. and )
HONEYWELL INTELLECTUAL PROPERTIES INC., )
                                              )
        Plaintiffs,                           )
                                              )  C.A. No. 04-1337-KAJ
v.                                            )
                                              )
AUDIOVOX COMMUNICATIONS CORP.; )
AUDIOVOX ELECTRONICS CORPORATION; NIKON )
CORPORATION; NIKON INC.; NOKIA )
CORPORATION; NOKIA INC.; SANYO ELECTRIC )
CO., LTD.; SANYO NORTH AMERICA )
CORPORATION; and SANYO EPSON IMAGING )
DEVICES CORPORATION, )
                                              )
        Defendants.                           )
                                              )
—————————————————————————— )
                                              )
OPTREX AMERICA, INC. )
                                              )
        Plaintiff,                            )  C.A. No. 04-1536-KAJ
                                              )
    v.                                        )
                                              )
HONEYWELL INTERNATIONAL INC. )
and HONEYWELL INTELLECTUAL )
PROPERTIES INC. )
                                              )
        Defendants.                           )
                                              )
                                              )
                                              )
                                              )
                                              )

2

## PLAINTIFF HONEYWELL'S STATUS REPORT

Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties Inc. (collectively "Honeywell") submit the following Status Report pursuant to Paragraph 6 of the Court's October 7, 2005 Order, which directed that "a report on progress toward establishing a schedule for bringing to trial claims against Manufacturers shall be submitted no later than January 9, 2006." (C.A. No. 04-1338, D.I. 237 at ¶ 6 (the "October 7 Order")).[1]

While significant progress has been made in the restructuring of the case (as reflected in Section I), less progress has been made in working toward a schedule, including resolution of issues identified by Honeywell as potentially impacting the schedule (discussed below in Section II). Honeywell raised these issues in a teleconference on December 15, explaining that they have a direct impact on the schedule. (*See* Exhibit A, letter from Matthew L. Woods dated December 21, 2005). Defendants contended that the issues were premature or would have no impact on the schedule. (*See* Exhibit B, letter from Richard Horwitz, dated December 30, 2005). The absence of any meaningful substantive engagement on these issues led Honeywell to draft its own report, a draft of which was provided to defendants on Friday, January 6, 2006.

## I.    Status of Defendants

### A.    "Customer" Defendants.

Subsequent to the October 7 Order, the Non-Manufacturer Defendants[2] made certain

---

[1] This status report has been submitted in C.A. Nos. 04-1337, 04-1338, and 04-1536.

[2] Apple Computer, Inc., Audiovox Communications Corp., Audiovox Electronics Corporation, Casio, Inc., Concord Cameras, Dell, Inc., Eastman Kodak Company, Fujitsu America Inc., Fujitsu Computer Products of America, Inc., Fujitsu Limited, Kyocera Wireless Corp., Nikon Corporation, Nikon, Inc., Nokia Corporation, Nokia, Inc., Olympus America, Inc., Olympus Corporation, Pentax Corporation, Pentax U.S.A. Inc., Sanyo Electric Co., Ltd., Sanyo North America Corporation, Sony Ericsson Mobile Communications AB, Sony Ericsson Mobile

3

disclosures regarding the source of the LCD Modules used in their portable consumer electronic products. The Non-Manufacturer Defendants have informed the Court by letter, dated November 22, 2005 (C.A. No. 04-1338, D.I. 250), that – as a result of these disclosures – the case is stayed against them, and thus they will not be answering the Amended Complaint (which was filed by Honeywell on November 7, 2005). Although Honeywell has expressed concerns regarding the comprehensiveness of these disclosures, Honeywell has agreed that, for now, these defendants need not answer the Amended Complaint.

### B. "Hybrid" Defendants.

As acknowledged in Footnote 1 of the October 7 Order, the original complaint named a number of entities that manufacture both LCD Modules as well as the end products incorporating such modules. These Hybrid Defendants included the Casio, Fuji, Matsushita,[3] Sanyo, Sony and Toshiba entities. Since the briefing regarding the stay motion, Honeywell has entered into license agreements under the '371 patent with Sanyo and Toshiba to the extent those entities manufacture and/or sell LCD modules. Accordingly, the case is now stayed as to these two entities.[4]

The status of the remaining hybrids, Casio, Fuji, Matsushita and Sony, is as follows:

| | | |
|---|---|---|
| Casio | Answer will be filed on January 10, 2006 | C.A. No. 04-1338, D.I. 294 |
| Fuji | Answer was filed on November 28, 2005 | C.A. No. 04-1338, D.I. 256 |
| Matsushita | Answer will be filed on January 17, 2006 | C.A. No. 04-1338, D.I. 295 |
| Sony | Answer will be filed on February 10, 2006 | C.A. No. 04-1338, D.I. 273 |

---

Communications (USA) Inc., Toshiba America, Inc., and Toshiba Corporation.

[3] Matsushita currently disputes whether it should be treated as a "hybrid" and has submitted this issue to the Court (C.A. No. 04-1338, D.I. 301).

[4] The license agreements do not cover the end products these entities manufacture which incorporate LCD modules from a different manufacturer.

**C.    Original Manufacturer Defendants.**

Optrex                    Already answered

Seiko Epson               Already answered

**D.    New Manufacturer Defendants.**

After filing the Amended Complaint, Honeywell sent letters to the original defendants along with copies of the Amended Complaint and the Court's Orders of May 18, 2005 and October 7, 2005, requesting that they contact their disclosed suppliers pursuant to Paragraph 3 of the October 7 Order.  In addition, Honeywell itself initiated contact with those suppliers which had been newly named as defendants.  As a result of these parallel efforts, to date, the status is as follows:

1.    <u>Defendants who have retained trial counsel and agreed to waive formal service</u>.

| **Defendant/LCD Supplier** | **Answer Due** | **D.I.** |
| --- | --- | --- |
| AU Optronics Corp. and AU Optronics Corporation America | February 10, 2006 | C.A. No. 04-1338, D.I. 290 |
| BOE-Hydis Technology Co., Ltd.[5] | February 21, 2006 | C.A. No. 04-1338, D.I. 296 |
| Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd.[6] | February 21, 2006 | C.A. No. 05-874, D.I. 4 |
| HannStar Display Corporation | March 3, 2006 | C.A. No. 04-1338, D.I. 305 |

---

[5] BOE Technology Group Company Ltd. and Beijing BOE Optoelectronics Technology Co., Ltd. will be dismissed from the suit.

[6] Honeywell incorrectly named Citizen Systems Europe and Citizen Systems America Corporation in its First Amended Complaint.  Notices of dismissal without prejudice for these entities were filed on January 6, 2006 (C.A. No. 04-1338, D.I. 297, 298).  Honeywell filed a new action against Citizen Watch Co., Ltd. and Citizen Displays Co., Ltd. (C.A. No. 05-874).  These Citizen entities have agreed to move to consolidate the action against them with C.A. No. 04-1338-KAJ (*id*. at D.I. 4).

| | | |
|---|---|---|
| Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Display Devices, Ltd. and Hitachi Electronic Devices (USA), Inc. | February 10, 2006 | C.A. No. 04-1338, D.I. 278 |
| International Display Technology and International Display Technology USA, Inc. | February 10, 2006 | C.A. No. 04-1338, D.I. 291 |
| Koninklijke Philips Electronics N.V., Philips Consumer Electronics North America, and Philips Electronics North America | February 21, 2006 | *See* C.A. No. 04-1338, D.I. 248 |
| Quanta Display Inc. | February 21, 2006 | Stipulation will be filed |
| Samsung SDI Co., Ltd. and Samsung SDI America Inc. | February 13, 2006 | Stipulation will be filed |
| ST Liquid Crystal Display Corp. | February 10, 2006 | C.A. No. 04-1338, D.I. 273 |
| Toppoly Optoelectronics Corp. | April 15, 2006[7] | Stipulation will be filed |
| Wintek Corp. and Wintek Electro-Optics Corporation | February 10, 2006 | C.A. No. 04-1338, D.I. 270 |
| Sanyo Epson Imaging Devices Corporation | February 10, 2006 | C.A. No. 04-1337, D.I. 148 |

  2. <u>Defendants who have not agreed to waive formal service</u>.

   All Around Co., Ltd.

   Arima Display

   Innolux Display Corporation

   Picvue Electronics Limited

  Honeywell began the process of formally serving these entities in November 2005, but,

---

[7] Due to a unique set of circumstances, Toppoly has requested a longer extension to answer the Amended Complaint.  In exchange for this extension, Toppoly has agreed in writing that it will participate in scheduling discussions along with the other defendants and will not seek to delay the entry of a scheduling order on the grounds that it has not yet answered the Amended

under the relevant international protocols, it is likely to be a number of months before service can be effected.  Honeywell is willing to sever those entities that have not agreed to waive formal service from this case in the interest of moving this case forward.  Once those entities appear, Honeywell will work with those entities to create a separate, but parallel, track with the main litigation.

       3.    <u>Defendants who will be dismissed</u>.

Honeywell filed a notice of dismissal without prejudice for Wistron Corporation and M-Display Optronics Corp. on January 9, 2006 (C.A. No. 04-1338, D.I. 303).

**E.    Summary.**

In summary, by March 3, 2006, Honeywell anticipates that the case will be ready to proceed against 19 defendants/defendant groupings (2 original manufacturers, 13 new manufacturers, and 4 hybrids).

**II.    <u>Progress Toward Establishing A Schedule</u>**

On December 15, 2005, counsel for Honeywell and counsel for a group of defendants met to discuss how to establish a schedule for bringing to trial claims against the Manufacturers. In this conference, Honeywell sought clarification from the Defendants on a number of threshold issues which it believes will have a direct, material impact on the length of pretrial activities and the orderliness and efficiency of those efforts.  Those issues are summarized in Section A below. Following that conference, on December 30, defendants confirmed their basic position that the issues did not need resolution, but requested that Honeywell provide them with Honeywell's proposed overall case schedule.  (*See* Exhibit B).  Honeywell provided this schedule on January 5 and it is reproduced in Section B below.

---

Complaint.

As it stands, Honeywell and the substantial majority of defendants agree that the onset of discovery should be stayed for the time being. Defendant Optrex has sought Honeywell's agreement to initiate discovery now. While Honeywell earnestly desires to proceed with this case, it is concerned that the discovery not proceed in a piecemeal fashion that might balkanize the defendants and create issues regarding how to calculate the amount of discovery in this case. Defendant Fuji has recently expressed just this concern, stating its objection to such discovery if it might be used to limit the amount of discovery ultimately available to Fuji. Accordingly, Honeywell stands by its position that discovery should proceed in an orderly fashion once the scope and amount of such discovery has been decided.

**A.    Threshold Issues Impacting Schedule.**

While Honeywell recognizes that many newly-added defendants have not yet answered the Amended Complaint, and thus are not yet before the Court, Honeywell believes it is appropriate to apprise the Court of certain issues that the parties discussed which Honeywell believes will need to be addressed to effectively manage this litigation. Those defendants who participated in the December 15 teleconference have indicated their general belief that it is premature to raise these issues with the Court. Honeywell recognizes that the Court cannot substantively address the issues raised below without the defendants' input, but Honeywell believes that these are issues that should be addressed early in the litigation in order to "establish a schedule for bringing to trial claims against Manufacturers," as the Court requested in its October 7 Order. (C.A. No. 04-1338, D.I. 237 at ¶ 6). This will allow all parties to move toward trial with common expectations and understandings and will hopefully minimize the need to alter the schedule in the future.

1.    <u>Impact of 35 U.S.C. § 271</u>.

To establish a schedule for bringing to trial claims against the LCD manufacturers, a threshold issue that must be addressed is whether the defendants will dispute that Honeywell's claims can be brought to trial against them because of any territorial limitations of 35 U.S.C. § 271. Section 271 generally allows recovery only for acts that occur within the United States. To date, several of LCD Manufacturers have asserted that they do not sell the LCD modules within the United States. Instead, it appears that the LCD Manufacturers sell their modules overseas and the end product manufacturers import them into the United States in the accused portable consumer electronic products. Honeywell is concerned that the LCD Manufacturers will assert that the liability portion of this matter can not be tried against them and that a judgment could not be rendered based on the territorial limitations of 35 U.S.C. § 271.

Honeywell believes this threshold issue must be resolved as soon as possible to avoid wasteful or duplicative proceedings. Honeywell raised this issue with the defendants, but the defendants do not believe it is an issue that must be addressed now. If the LCD Manufacturers invoke this statute, then it will clearly impact the orderly and timely progression of this case. Honeywell respectfully submits that it would be wasteful to work towards a schedule to trying this case against the LCD Manufacturers, only to have the defendants raise this issue at a later date. Because the defendants have not stated their positions with respect to this issue, it is unclear whether or not this will be an issue. Depending upon the extent to which this becomes an issue, it is Honeywell's view that the "customer" defendants may need to become more actively involved in this first stage of the case if it is determined that liability cannot be tried against the LCD Manufacturers.

2.    <u>Scope of Discovery</u>.

Honeywell believes that the discovery it seeks in this case will not be burdensome as to any individual defendant, and that it should conduct its discovery of each defendant on essentially parallel tracks. The primary focus will be upon identification and discussion of all LCD modules which contain the Accused Structure, i.e., any module employing a light source, two lens arrays, one of which is misaligned or rotated, and an LCD display. The sooner, and more efficiently, this information is provided to Honeywell, the more streamlined the schedule can be, especially since most of the Customer Defendants claimed to lack information regarding which products contained substantially similar structures to those LCD modules Honeywell had already identified. Moreover, the new defendants, as Manufacturers of LCD Modules, are in a fundamentally different position than the "customers" (to which the October 7 Order was largely directed) in that they have access to comprehensive information regarding which modules use the Accused Structure.

Honeywell believes it would be appropriate to include such information/documentation in each manufacturer's initial disclosures.

3.    <u>Logistical Coordination of Discovery</u>.

There are a number of issues regarding coordinating discovery that Honeywell has raised with the defendants, including:

- <u>Protective Order</u>. Honeywell has provided a draft Protective Order to the new defendants, who are considering that draft. Honeywell respectfully submits that the parties should agree to a Protective Order as soon as possible so the parties can engage in productive discovery once the last of the new defendants files an Answer, which is March 3, 2006.

- Deposition Scheduling.  It is unclear whether each defendant will desire to attend depositions of its co-defendants and whether such co-defendants would object to such participation, due to the competitive nature of the industry.  If each deposition is to be attended by all parties, it will likely impact the scheduling of those depositions and the time necessary to complete discovery.  Honeywell thus suggests that the scheduling process for depositions give priority to the schedules of the witnesses, their defending counsel and counsel for the noticing party.  Without clarity on this point, Honeywell believes that deposition scheduling could become problematic.  The defendants believe it is too early to tell whether they might desire to attend depositions of other defendants but believe that this issue will not impact timing or scheduling of depositions.

- Location of Depositions.  Most, if not all, of the defendants' witnesses likely reside outside the United States.  Honeywell has requested that the defendants cooperate in holding these depositions in a mutually agreeable midway location, such as Hawaii.  (Of course Honeywell would agree to share in the cost of such efforts.)  If, however, Honeywell is required to resort to deposing witnesses in foreign countries in corresponding U.S. Embassies, it will delay the matter due to the backlog in reservation space in these embassies, and additional time will be needed in the discovery schedule to accommodate this built-in delay.

4. Lead Counsel.

Honeywell has asked the defendants whether they intend to develop their legal positions and conduct their discovery of Honeywell under the "lead counsel" approach discussed in the Manual for Complex Litigation to avoid duplicative briefing and duplicative discovery demands upon Honeywell, thus helping streamline the schedule.  Defendants have indicated that they are

considering this approach, but have not yet developed a position on this issue.

   **B.**    **Proposed Schedule**

Honeywell has proposed the following dates for a schedule beginning March 15, 2006. The timing and intervals being proposed are extremely similar to those proposed by Honeywell last April, with the exception that the schedule has been moved forward to reflect the restructuring of the case.  This proposed schedule assumes that Honeywell's concerns set forth in Section A, above, are addressed and resolved so as to minimize any impact on the schedule.

| Event | Honeywell's Proposed Dates |
|---|---|
| Date of Scheduling Order | March 15, 2006 |
| 2. Joinder of parties | October 16, 2006 |
| 3(a). Deposition hours | Each party will produce witnesses under its care, custody and control to the other side for a total of 50 hours.  Each side shall have 50 hours to conduct third party discovery. |
| 3(c). Discovery cut-off (includes expert discovery) | May 30, 2007 |
| 7. Interim Status Report | October 26, 2006 |
| 8. Status Conference | November 2, 2006 |
| 9. Technology Tutorial | December 22, 2006 |
| 10. Dispositive Motions | June 30, 2007<br><br>Answering briefs 30 days after opening briefs<br><br>Reply briefs 14 days after answering briefs |
| 11. Claim Construction Issue Identification | November 9, 2006 |
| 12.  Claim Construction | May 30, 2007 – Joint Claim Construction Chart<br><br>June 29, 2007 – Opening briefs<br><br>July 27, 2007 – Reply briefs |
| 13.  Hearing on Claim Construction | August 30, 2007 |
| 15.  Pretrial Conference/Joint Proposed | September 28, 2007/ |

| Final Pretrial Order | September 21, 2007 |
| 17. Trial | October 22, 2007/ 15-18 Trial days |

### III.    <u>Conclusion</u>

Honeywell stands ready to address any or all of these topics with the Court at its earliest convenience.  Honeywell respectfully suggests that the Court set a Scheduling Conference for early March, with a view toward entering a Scheduling Order in mid-March.  In the meantime, Honeywell will continue to work with the defendants to discuss the issues identified herein, and their impact on a schedule.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Leslie A. Polizoti*

_____
Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiffs*

OF COUNSEL:

Martin R. Lueck
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

January 9, 2006

EXHIBIT A

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

**Matthew L. Woods**
**(612) 349-8272**

December 21, 2005

**Via E-Mail**

TO:  ALL COUNSEL OF NEWLY NAMED DEFENDANTS

Re:   Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
        Court File No. C.A. 04-1337-KAJ
        Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
        Court File No. C.A. No. 04-1338-KAJ
        Optrex America, Inc. v. Honeywell International Inc., et al.
        Civil Action No. 04-1536 (KAJ)
        Our File No. 019896.0229

Dear Counsel:

As the deadline for the January 9th progress approaches, I want to summarize the issues Honeywell identified during our teleconference last Thursday, December 15th. This summary is intended to assist you in your collective discussions, especially insofar as there was little engagement on these topics during that conference.

The Court's October 7th Order requires us to "report on progress toward a establishing a schedule for bringing to trial claims against manufacturers." October 7 Order, ¶ 6. It is Honeywell's intent to provide the Court with a report that not merely explains the status of which defendants have waived service, but also identifies those issues which need to be addressed in order to develop an effective and orderly schedule. With that charge in mind, Honeywell raised the following issues at the teleconference:

**Impact of 35 U.S.C. § 271:**

At the outset, there is a threshold issue as to whether any of the defendants dispute that Honeywell's claims can be brought to trial against them because of any territorial limitations of 35 U.S.C. § 271. Honeywell believes this threshold issue must be resolved as soon as possible, in order to avoid wasteful or duplicative proceedings. Depending upon the extent that this becomes an issue, it is Honeywell's view that the "customer" defendants may need to become

TO:  ALL COUNSEL OF NEWLY NAMED DEFENDANTS
December 21, 2005
Page 2

more actively involved in this first stage of the case.  While Honeywell offered several concepts for addressing the situation, it clearly reserves all its rights until the defendants have weighed in on this issue, something which they were not prepared to do on the 15th.

**Progress of Discovery:**

        We discussed a number of issues relating to the progress of discovery.  Honeywell's basic position is that, as to any individual defendant, the discovery should not be burdensome.  Honeywell's '371 patent is straightforward and, assuming defendants identify all modules using the Accused Structure (and produce documents regarding those modules), depositions could be accomplished under a set hourly approach (e.g., each defendant shall make its witness available for "x" hours of deposition).  We envision that discovery of the defendants could proceed along essentially parallel tracks.

        More fundamental questions concern coordination of discovery and logistics for depositions, given the number of defendants.  For example, and without exclusion, some topics discussed during our teleconference include:

- Whether foreign defendants will make witnesses available in a mutually agreeable geographic location, thereby avoiding the need to resort to U.S. Embassies, which can substantially delay and complicate the taking of depositions?

- Whether defendants will desire to attend depositions of co-defendant competitors, and whether co-defendant competitors will object to such attendance, and the impact this dynamic has on scheduling of depositions?

- Whether the defendants will develop their legal positions and conduct their discovery of Honeywell under the "lead counsel" approach discussed in the Manual for Complex Litigation, so as to avoid duplicative briefing and duplicative discovery demands upon Honeywell?

- Methodology and timing for document production and privilege logs, especially as it may relate to any joint defense privilege asserted by defendants?

- One additional issue not discussed on the 15th is the extent to which parties anticipate needing third party discovery, which could impact the schedule.  Honeywell expects this will largely be driven by the contours of any affirmative defenses raised by defendants.

TO: ALL COUNSEL OF NEWLY NAMED DEFENDANTS
December 21, 2005
Page 3

**Protective Order:**

Honeywell is not an active participant in the market for portable consumer electronics. Although Honeywell agrees that a protective order should be in place, the competitive nature of one defendant *vis a vis* the other defendants will likely drive the details of a protective order. Back in April, we had circulated a draft protective order for defendants' consideration. As we discussed, we have re-circulated that draft for your renewed consideration.

\* \* \*

If any of the defendants have views on these issues that they wish to communicate prior to January 9th, please forward them as soon as possible. Given that the defendants have offered no meaningful engagement on these issues at this time, we think it likely that each side will file its own status report with the Court. Moreover, until there has been a comprehensive exchange of ideas regarding establishing a schedule for bringing Honeywell's claims to trial, Honeywell reserves the right to raise all issues relevant to that subject.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Matthew L. Woods

MLW/ms

c:    Thomas G. Grimm, Esq. (via e-mail)
      John G. Day, Esq. (via e-mail)
      Steven J. Balick, Esq. (via e-mail)
      Stacie E. Oberts, Esq. (via e-mail)

EXHIBIT B



Potter
Anderson
& Corroon LLP

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

December 30, 2005

**VIA FACSIMILE – (612) 339-4181**

Matthew L. Woods, Esquire
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402-2015

Re:     **Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
C.A. No. 04-1337-KAJ;
Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
C.A. 04-1338-KAJ; and
Optrex America, Inc. v. Honeywell International Inc., et al.
Civil Action No. 04-1536-KAJ**

Dear Matt:

I am writing on behalf of a number of defendants/defendant groups[1] in response to your December 21, 2005 letter.  As we have previously discussed in writing and during the December 15 conference call, these views are only preliminary, in view of the fact that many defendants have not yet appeared and participated in discussions either with you or with other defendants.

With respect to the issue you characterize as the "impact of 35 U.S.C. § 271," defendants do not believe this is a significant "threshold" issue that must be addressed now, before all parties have responded to the amended complaint.  Based on our conversation during the conference call, we understand your question to be whether any LCD manufacturer will contend that all or some of its sales activities are not "within the United States" as required by, e.g., section 271(a).  As was discussed during the call, this issue may affect different parties differently, and may vary for different products accused of infringement, so reaching a consensus on this issue is unrealistic, particularly at this early time.

Addressing the other specific issues raised in your December 21 letter, as a general matter foreign defendants will not agree to bring witnesses to the United States for depositions, although they will try to cooperate in setting particular deposition venues where witnesses are

---

[1] AUO, Casio, Citizens Systems America, Fuji, Hitachi, ID Tech, Matsushita, Optrex, Philips, Samsung SDI Co. Ltd. and Samsung SDI America, Inc., Seiko Epson, SEID, Sony Corp.and Wintek.

Matthew L. Woods, Esquire
December 30, 2005
Page 2

located, consistent with legal obligations in those countries. With respect to whether defendants might desire to attend depositions of other defendants, it is too early to tell whether there will be significant interest, but defendants do not think that issue should affect the timing or scheduling of depositions. The primary contact for scheduling depositions should be with counsel for the particular defendant.

Turning to the issue of the "lead counsel" approach, defendants are unwilling to waive any of their individual rights, but as in all multi-defendant cases in this District, defendants are aware that the Court will expect them to coordinate their efforts as appropriate, and to avoid duplicative work where possible.

On document production and privilege logs, defendants are willing to hear your views as to methods and timing of production. However, we do not expect the parties to have to log privileged documents generated after the commencement of this litigation, and we do not believe the resolution of these issues should affect a determination of the overall case schedule.

With respect to third party discovery, defendants are continuing to consider this issue, and note that although it is too early in the case to have a real feel for how much third party discovery may be necessary, defendants do not think third party discovery should be a significant factor is setting an overall case schedule.

Finally, with respect to a protective order, defendants are reviewing the draft protective order that you recently circulated and anticipate providing their comments thereon. Again, however, resolution of an appropriate form of protective order, either by stipulation or order, should not significantly affect the determination of an overall case schedule.

As stated during the December 15 call, we do not share your view that it is unlikely that the parties can submit a joint progress report to the Court on January 9 to "report on progress toward establishing a schedule for bringing to trial claims against manufacturers."[2] To the contrary, since the Court has requested a progress report and not advocacy papers on how the case should ultimately go forward, we hope that you will reconsider your position. After you review this letter, we hope progress can be made to submit a joint report to the Court, in a way that will foster cooperation among the parties in this early phase and subsequent phases of the litigation.

Very truly yours,

Richard L. Horwitz

712650

---

[2] We would be happy to see an overall case schedule, in the form of a proposed Scheduling Order, if you have a specific proposal in mind at this time.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: John R. Alison, Parker H. Bagley, Robert J. Benson, Robert Karl Beste, III, Elizabeth L. Brann, Christopher E. Chalsen, Arthur G. Connolly, III, Frederick L. Cottrell, III, Francis DiGiovanni, Thomas M. Dunham, Amy Elizabeth Evans, York M. Faulkner, Christopher J. Gaspar, Alexander E. Gasser, Alan M. Grimaldi, Thomas C. Grimm, Thomas Lee Halkowski, Richard L. Horwitz, Robert J. Katzenstein, Nelson M. Kee, Richard D. Kelly, Stephen S. Korniczky, Hamilton Loeb, David J. Margules, David Ellis Moore, Carolyn E. Morris, Arthur I. Neustadt, Elizabeth A. Niemeyer, Gerard M. O'Rourke, Andrew M. Ollis, Karen L. Pascale, Adam Wyatt Poff, Leslie A. Polizoti, Alana A. Prills, Steven J. Rizzi, Avelyn M. Ross, Philip A. Rovner, Carl E. Schlier, Chad Michael Shandler, John W. Shaw, William J. Wade, Roderick B. Williams and Edward R. Yoches.

*/s/ Leslie A. Polizoti* (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

14

## Schumacher, Mary Ann

| | |
|---|---|
| **From:** | Rahne, Denise S. |
| **Sent:** | Tuesday, January 10, 2006 9:05 AM |
| **To:** | Ketterling, Carrie R.; Schumacher, Mary Ann |
| **Subject:** | FW: Honeywell/CC/Apple (04-1338; 04-1536) - Honeywell's Status Report filed on 1/9/06 |
| **Attachments:** | 010906 Status Report.pdf |

---

**From:** Beth Ann Verderamo [mailto:BVerderamo@MNAT.com]
**Sent:** Monday, January 09, 2006 6:25 PM
**To:** Thomas C. Grimm; Deb Lemke; Rahne, Denise S.; Donna L. Allaband; Kadra Mull; Leslie A. Polizoti; Lueck, Martin R.; Woods, Matthew L.; Oberts, Stacie E.
**Subject:** Honeywell/CC/Apple (04-1338; 04-1536) - Honeywell's Status Report filed on 1/9/06

On behalf of Tom Grimm and Leslie Polizoti, I am forwarding *Honeywell's Status Report*, which was electronically filed with the Court tonight.

<<010906 Status Report.pdf>>

*Beth Ann Verderamo*
*Administrative Assistant*
*Morris, Nichols, Arsht & Tunnell*
*1201 North Market Street*
*Wilmington, DE 19801*
*Phone (302) 351-9128*
*Facsimile (302) 658-3989*


.....


This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

.....

**Schumacher, Mary Ann**

| | |
|---|---|
| **From:** | Rahne, Denise S. |
| **Sent:** | Tuesday, January 10, 2006 9:05 AM |
| **To:** | Ketterling, Carrie R.; Schumacher, Mary Ann |
| **Subject:** | FW: Honeywell v. Audiovox, C.A. No. 04-1337-KAJ |
| **Attachments:** | status report.pdf; Ex A to status report.pdf; Ex B to status report.pdf |

**From:** SBalick [mailto:SBalick@ashby-geddes.com]
**Sent:** Monday, January 09, 2006 7:56 PM
**To:** mneiderman@duanemorris.com; djenglish@duanemorris.com; pbradley@mccarter.com;
twalsh@mccarter.com; rhorwitz@potteranderson.com; dmoore@potteranderson.com;
barry.graham@finnegan.com; marsden@fr.com; elliott@fr.com; kopsidas@fr.com; degnan@fr.com;
rhorwitz@potteranderson.com; dmoore@potteranderson.com; timothy.vezeau@kmzr.com;
michael.dorfman@kmzr.com; scott.gettleson@kmzr.com; rjk@skfdelaware.com; slubitz@hhlaw.com;
rjbenson@hhlaw.com; jpolesky@skfdelaware.com
**Subject:** Honeywell v. Audiovox, C.A. No. 04-1337-KAJ

Attached is an as-filed copy of Honeywell's status report in the above action.

Steven J. Balick
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  302-654-1888
Facsimile:  302-654-2067
E-Mail:  sbalick@ashby-geddes.com