IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AUDIOVOX COMMUNICATIONS CORP., AUDIOVOX ELECTRONICS CORP., NIKON CORPORATION, NIKON INC., NOKIA CORPORATION, NOKIA INC., SANYO ELECTRIC CO., LTD., and SANYO NORTH AMERICA,<br><br>    Defendants. | C.A. No. 04-1337 (JJF) |
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE COMPUTER, INC.; ARGUS a/k/a HARTFORD COMPUTER GROUP, INC.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CONCORD CAMERAS; DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA, INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.; SONY | C.A. No. 04-1338 (JJF) |

| | |
|---|---|
| CORPORATION, SONY CORPORATION OF AMERICA; SONY ERICSSON MOBILE COMMUNICATIONS AB; SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.; TOSHIBA CORPORATION; and TOSHIBA AMERICA, INC.<br><br>        Defendants. | |
| HONEYWELL INTERNATIONAL INC., AND HONEYWELL INTELLECTUAL PROPERTIES INC.,<br>        Plaintiff,<br><br>        vs.<br><br>CITIZEN WATCH CO., LTD. AND CITIZEN DISPLAYS CO., LTD.,<br><br>        Defendants. | Case No.   1:05 CV 00874 JJF |

**CITIZEN'S RESPONSE TO PLAINTIFFS' COUNTER-STATEMENT
TO CITIZEN'S MOTION FOR SUMMARY JUDGMENT
<u>OF NON-INFRINGEMENT</u>**

| | |
|---|---|
| OF COUNSEL:<br>Stuart Lubitz<br>David Ben-Meir<br>HOGAN & HARTSON L.L.P.<br>1999 Avenue of the Stars<br>Suite 1400<br>Los Angeles, California 90067 | David J. Margules (Bar No. 2554)<br>Evan O. Williford (Bar No. 4162)<br>BOUCHARD MARGULES & FRIEDLANDER, P.A.<br>222 Delaware Avenue, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone:  (302) 573-3500<br>Facsimile:  (302) 573-3501<br>E-mail: dmargules@bmf-law.com<br>E-mail: ewilliford@bmf-law.com<br>*Attorney for Defendants*<br>*CITIZEN WATCH CO., LTD. and CITIZEN DISPLAYS CO., LTD* |

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..............................................................................1

II. RESPONSE TO COUNTER-STATEMENT .........................................................3

    A. Honeywell's Counter-Statement Only Confirms That There Is No Genuine Issue Of Material Fact As To Citizen's Non-infringement Of The '371 Patent........................................................................................................3

        1. Honeywell Does Not Dispute That Citizen Has Committed No Direct Infringement. ............................................................................4

        2. Honeywell Fails To Allege Any Genuine Issues Of Material Fact To Support Its Claim of Inducement .......................................4

    B. Nothing That Has Happened In This Case Changes The Requirements For Honeywell To Bring And Maintain A Claim Of Patent Infringement ................................................................................................9

III. CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

**Page No.**

**CASES**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 4, 5

*DSU Medical Corp. v. JSU Co., Ltd.*,
  471 F.ed 1293 (Fed. Cir. 2006) .............................................................................. 3, 4, 5

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
  364 F.Supp.2d 417 (D.Del. 2005) ................................................................................ 4

*Schoell v. Regal Marine Industries, Inc.*,
  247 F.3d 1202, 1210 (Fed. Cir. 2001) .......................................................................... 4

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316, 1323 (Fed. Cir. 2001) .......................................................................... 4

**STATUTES AND RULES**

35 U.S.C. §271(a)-(c) .................................................................................... 1, 3, 9, 10

# I. PRELIMINARY STATEMENT

1.      Rather than identify genuine issues of material fact regarding its infringement claims against Citizen, Honeywell, *having none to identify*, instead uses its Counter-Statement to grope for an excuse to explain why it sued Citizen in the first place.  In its Counter-Statement, Honeywell appears to *blame* Judge Jordan for making it sue Citizen (impliedly suggesting that its suit of Citizen was a mistake), even though it was never Judge Jordan's intention, nor could it have been, to allow Honeywell to sue a company when Honeywell had no good faith basis to do so.

2.      The total absence in Honeywell's Counter-Statement of *any* allegation of a genuine issue of material fact as to *Citizen's alleged infringement* is unmistakable.   For Citizen to infringe, Citizen must make, use, sell, offer to sell, or import infringing products or components thereof in the United States, or actively induce another party to do so.  35 U.S.C. §271(a)-(c).  Not only does Honeywell fail to identify any evidence that Citizen performed such acts, Honeywell does *not even allege* it.

3.      With respect to inducement, Honeywell does not identify *any* competent evidence that Citizen induced Matsushita (a.k.a. "Panasonic") to import the accused products in the United States   Honeywell weakly suggests that Citizen may have indemnified Matsushita and that the record is unclear as to how the LCD parts at issue were supplied and distributed, but it never explains how these suggestions are relevant to Honywell's inducement claim.  Furthermore, *all* of the evidence developed in discovery on these subjects points away from any genuine issue of material fact.

4.      To fill its sixteen pages, Honeywell's Counter-Statement includes irrelevant discussions about Judge Jordan's structuring of the case and Honeywell's claim of infringement against Matsushita, a subject on which Citizen's Motion for Summary Judgment *is appropriately*

*not directed*.[1]  Honeywell appears to argue that, under Judge Jordan's case structure, it did not *need* to have a basis to sue Citizen because Judge Jordan ordered it to sue the LCD manufacturers.  *See* D.I. 1047 at ¶¶ 1 and 7.  Indeed, according to its Counter-Statement, Honeywell sued Citizen solely because Matsushita stated in a letter that Citizen was the manufacturer of an LCD incorporated into Matsushita's X300 cellular phones.  *See* D.I. 1047 at ¶ 14. That is not a good faith basis to bring a lawsuit in the United States, and the fact that Judge Jordan merely decided to have Honeywell first proceed against the LCD manufacturers that might be liable for infringement does not create a cause of action against a manufacturer where there is none.

    5.  Likewise, Honeywell's Counter-Statement conflates its claims of infringement against Citizen and Matsushita. *See*, e.g., D.I. 1047 at ¶¶ 1-2, 32-33, 35-38, Conclusion.  Honeywell appears to argue that Citzen should be held accountable for Matsushita's potential liability.  However, Honeywell's infringement claim against Matsushita in this case has nothing to do with Citizen's alleged inducement of infringement, *unless* Honeywell identifies genuine issues of fact as to whether Citizen actively induced Matsushita to infringe the '371 patent.  Honeywell does not do so, or otherwise offer any evidence of inducement by Citizen.  Indeed, as explained in Citizen's Motion, the evidence developed in this case demonstrates that there was no and could not have been any inducement by Citizen.  Because Honeywell fails to make any showing of an essential element of its claim against Citizen, summary judgment should be entered.

    6.  Honeywell has had all too many *years* to establish a factual basis for its inducement claim, and by its Counter-Statement was obligated, *yet again*, to reveal to Citizen

---

[1] Honeywell mischaracterizes Citizen's Motion as seeking dismissal with respect to the LCD modules generally, as though Citizen is seeking relief for both Matsushita and itself.  That is not so. Citizen's Motion is directed solely to the fact that Honeywell has no evidence to support liability as to Citizen, and that Citizen is entitled to judgment as a matter of law with respect to Honeywell's claims against it. *See* D.I. 1047, ¶ 1.  Citations are to the record in the 1338 Action, unless otherwise noted.

and this Court that basis. Yet, all that Honeywell can point to is that Citizen manufactured and sold to a third party, entirely within Asia, an LCD part incorporated into an accused Matsushita cellular phone. *See*, e.g., D.I. 1047 at ¶ 3. That falls far short of any genuine issue of fact regarding Citizen's alleged inducement of infringement.

7.  Under the circumstances, it is quite surprising that Honeywell continues to maintain this case against Citizen. In the intervening years since Honeywell first brought this suit, the Federal Circuit decided *DSU Medical Corp. v. JSU Co., Ltd.*, in which the Court expressly stated that inducement "requires evidence of culpable conduct directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." 471 F.3d 1293, 1305 (Fed. Cir. 2006). In its Counter-Statement, Honeywell itself acknowledges the significance of the case to Citizen's Motion. D.I. 1047 at ¶ 32.

8.  Consistent with standards set forth in *DSU Medical*, Honeywell has the burden to identify genuine issues of material fact to support its inducement claim. In its Counter-Statement, Honeywell identifies nothing to suggest "culpable conduct directed to encouraging infringement" by Citizen. Moreover, Honeywell cannot even identify a genuine issue of fact regarding "knowledge" by Citizen of Matsushita's allegedly infringing activities in the U.S., which even if Honeywell could, would clearly still be insufficient under *DSU Medical*.

9.  Yet, rather than simply face the fact that it has made a terrible mistake, Honeywell stubbornly and without any basis asks the Court to maintain this action against Citizen. Having failed to demonstrate that any material fact exists as to Citizen's alleged infringement, summary judgment should be granted in Citizen's favor.

## II.  RESPONSE TO COUNTER-STATEMENT

### A.  Honeywell's Counter-Statement Only Confirms That There Is No Genuine Issue Of Material Fact As To Citizen's Non-infringement Of The '371 Patent.

10. The U.S. Supreme Court has held that the "plain language of Rule 56(c) *mandates* the entry of summary judgment…against a party who fails to make a showing sufficient to

3

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). The Court added, "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323, accord *Inline Connection Corp. v. AOL Time Warner, Inc.*, 364 F.Supp.2d 417, 443 (D. Del. 2005); *Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) and *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001). Because Honeywell accused Citizen of infringing its patent, it must establish all essential elements of either direct or indirect infringement. As discussed in more detail below, Honeywell has failed to *even allege* any act by Citizen that would directly infringe its patent or actively induce another to do so. Accordingly, summary judgment of non-infringement should be granted.

### 1. Honeywell Does Not Dispute That Citizen Has Committed No Direct Infringement.

11. To directly infringe the '371 patent, Citizen would have to make, use, sell, offer to sell, or import an infringing product in the United States. 35 U.S.C. §271(a). In its Motion, Citizen explained that Honeywell has offered no evidence to support an allegation of direct infringement by Citizen. D.I. 1002 at p. 4. In its Counter-Statement, Honeywell does not dispute that point, stating nothing to suggest that Citizen committed any such acts. Accordingly, Honeywell appears to concede that Citizen has not committed any act that could constitute direct infringement.

### 2. Honeywell Fails To Allege Any Genuine Issues Of Material Fact To Support Its Claim of Inducement.

12. As Citizen explained in its Motion, Honeywell must show that Citizen performed acts that induced allegedly infringing acts by Matsushita, and that Citizen knew or should have known that its actions would induce actual infringements. *DSU Medical* at 1306. Inducement

requires evidence that Citizen possessed specific intent to encourage infringement by Matsushita, the alleged direct infringer. *Id.* Even if Honeywell could show that Citizen had knowledge of the acts alleged to constitute Matsushita's infringement (which it cannot), that would still be insufficient to establish specific intent. *Id.*

13.     After what has been years of discovery, Honeywell's showing in its Counter-Statement on its inducement claim against Citizen repeats the failures of its earlier responses to Citizen's interrogatories – it fails to state *any* genuine issues of material fact to support inducement under the elements set forth in *DSU Medical*. According to *Celotex*, this failure alone mandates summary judgment in Citizen's favor of no inducement. Indeed, the evidence developed in this case affirmatively shows that Citizen *could not have* induced infringment:

a)  The only LCD part at issue in this case is the K1122H-HL LCD, which Citizen manufactured in Asia. (D.I. 1003, Exh A);

b)  Citizen's sole customer for the K1122H-HL LCD part was Quanta Computer of Taiwan and Citizen sold them to Quanta in Asia (D.I. 1002 at pp. 4, 6, D.I. 1004 at ¶¶ 7-8, 15, D.I. 1003 ¶¶ 5, 6, D.I. 1013);

c)  Quanta apparently incorporated the K1122H-HL LCD into X300 cellular phones that were then acquired by Matsushita, a Japanese company (*See Id.*);

d)  Citizen understood from information received from Quanta that Matsushita's X300 phones were to be sold only in Asia and Europe, not the U.S. (D.I. 1002 at p. 6, D.I. 1004 at ¶ 14, D.I. 1006 at ¶¶ 3-4, D.I. 1003 ¶ 6, D.I. 1013);

e)  Matsushita apparently shipped 1,000 of the accused X300 cellular phones to North America in December 2004[2] (D.I. 1005 at ¶¶ 3-8, D.I. 1011, Exh. A);

---

[2] Honeywell incorrectly states that it "is undisputed that Matsushita shipped at least one thousand infringing LCDs manufactured by Citizen into the U.S." D.I. 1047 at ¶ 25. First, Citizen disputes that the LCD parts at issue meet the limitations of the asserted claim of the '371 patent and so disputes that the LCD parts are infringing in any event. Second, the evidence from Matsushita is simply that 1000 units of the accused *cellular phones* were shipped to "North America." D.I. 1005 at ¶ 5, and 1011.

5

      f)      Before filing its Complaint against Citizen, Honeywell never told Citizen that any of its LCD parts might infringe the '371 patent (D.I. 1004 at ¶ 9);

      g)      Citizen did not learn of Matsushita's alleged importation of 1,000 cell phones incorporating Citizen-manufactured LCD parts until December 2005, *after* Honeywell filed suit against the "wrong" Citizen entities, i.e., entities not involved in the manufacturing of the LCD part at issue (D.I. 1002 at p. 6, D.I. 1005 at ¶¶ 3-8, D.I. 1011); and

      h)      Citizen is not aware of any acts by Citizen to facilitate or encourage sales of products incorporating the K1122H-HL LCD part in the U.S. (D.I. 1004).

14.    If anything, these facts demonstrate the total absence of any possible culpable conduct by Citizen to induce the allegedly infringing acts by Matsushita.

15.    In two instances in its Counter-Statement, Honeywell vaguely suggests a possible issue of fact where there is none. The first instance is Honeywell's statement that "the record remains unclear" as to how the Citizen's LCD parts at issue "were supplied and distributed." D.I. 1047 at ¶ 27. On the contrary, it is clear from the record as reflected in Citizen's Motion that Citizen simply and directly supplied the LCD parts to its sole customer, Quanta, in Asia.[3] Other than understanding from Quanta that Matsushita would be the end product buyer, that the end product X300 cellular phones were targeted for the Asian and European markets, and what Matsushita told Citizen in December 2005 (after Honeywell sued Citizen) regarding Matsushita's shipment of a handful of X300 phones into North America a year earlier, Citizen is

---

[3] Honeywell repeatedly mischaracterizes Matsushita as Citizen's "customer." D.I. 1047 at ¶¶ 2, 4, 8, 37. The evidence in this case, as set forth in Citizen's Motion, is that Quanta, not Matsushita, was Citizen's customer. D.I. 1004, ¶ 7-8, 13; D.I. 1012; D.I. 1013, Exh. C at 31:9-32:6, Exh. D at 44:23-45:15, 50:7-10. Similarly, Honeywell incorrectly states that Matsushita "identified Citizen as one of its LCD suppliers" and that Matsushita informed Honeywell that "Citizen supplied it with infringing LCDs." D.I. 1047 at ¶¶ 13, 14. However, the Matsushita letter to which Honeywell refers only describes Citizen as the "LCD model manufacturer," not that Citizen actually supplied Matsushita with the LCD parts at issue. D.I. 1048, Ex. F. The evidence shows that Citizen only supplied Quanta with K1122H-HL LCD parts.

not privy to what happened with the LCD parts at issue after it delivered them to Quanta. And unless Honeywell has some basis to suggest that Citizen was somehow involved in supplying and distributing Quanta-manufactured phones to the United States (which it was not), the entire inquiry *is irrelevant to Citizen's Motion concerning Honeywell's inducement claim* and does not constitute a genuine issue of material fact. Indeed, Honeywell never makes that suggestion, nor does it have any basis to do so. None of the evidence developed in this case suggests that Citizen had any involvement in the supply and distribution of the LCD parts at issue once it shipped them to Quanta. Nevertheless, Honeywell never explains *how* such information would even be relevant to Honeywell's inducement claim against Citizen.

16. In the same section of Honeywell's Counter-Statement, Honeywell vaguely complains that the information regarding the supply and distribution of the LCD parts at issue bears on the issue of the commercial success of the accused products. D.I. 1047 at ¶ 28. However, commercial success is an issue relating to the Defendants' claims that the '371 patent is invalid for obviousness, which, again, has nothing to do with and is totally irrelevant to Citizen's Motion.

17. The second instance of a vague suggestion by Honeywell of a possible issue of fact is its raising the question of whether Citizen has indemnified Matsushita with respect to the K1122H-HL module in the United States. As to this question as well, no genuine issue of material fact exists. As a threshold matter, Honeywell never explains *how* this quesion might possibly relate to its infringement claim against Citizen. Nevertheless, Citizen has already represented that it did not indemnify any U.S. customer for use of the K1122H-HL LCD within the United States. D.I. 1004 at ¶ 6. In its Counter-Statement, Honeywell suggests that Citizen "avoids the question" of indemnification of Matsushita because Matsushita, a Japanese company, is not a "U.S." customer. D.I. 1047 at ¶ 35. However, in more than two years of discovery, Citizen has never avoided any question on indemnification. *See* Ben-Meir Supp. Decl. ¶¶ 2-4, Exhs. A-C. Citizen fully responded to such inquiries. Indeed, Honeywell did not even bother to ask about whether Citizen had any indemnification obligations (even there was a noticed topic

7

regarding indemnification) at Citizen's deposition, likely because it already knew the answer -- no such duty exists. *Id.* at ¶ 3, Exh. B.

18.     Second, as noted above, in two years of discovery, Honeywell has had a full opportunity to explore the question of indemnification, has issued discovery on the matter of indemnification, and Citizen has fully responded to that discovery, and without any complaint from Honeywell.[4]  For example, Honeywell's Document Request No. 11 requests documents including those "constituting or relating to licenses or indemnification agreements."  Citizen produced no communications, documents or other information relating to indemnification because it has none, and it has none because it has no duty to defend or otherwise indemnify *Matsushita or anyone else* regarding the LCD part at issue.  While Citizen preserved its objections to this request, Citizen also told Honeywell that "it has no documents responsive to this request."  Ben-Meir Suppl. Decl. ¶ 2, Exh. A.

19.     Similarly, Honeywell's Interrogatory No. 11 sought identification of, among other things, communications regarding indemnification.  Citizen fully responded to this interrogatory, including providing all responsive non-privileged documents. Ben-Meir Suppl. Decl. ¶ 4, Exh. C.

20.     Also, in Honeywell's 30(b)(6) deposition notice of Citizen, Honeywell included the following Topic No. 2:

> All communications between you and any third party regarding Honeywell's claims of infringement of the '371 Patent including, but not limited to any formal and/or informal discussions between you and any third party relating to any request to be defended against Honeywell's claims of infringement"
>
> Ben-Meir Suppl. Decl., Exh. B.

---

[4] To the extent Honeywell is arguing that it needs more time to discover an issue of material fact per Rule 56(f), it is required to file an affidavit or at least "identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1313 (3rd Cir. 1994).  Honeywell has failed on all these counts.

8

Yet, at Citizen's two-day deposition, Honeywell did not ask a single question directed to any requests to Citizen from Matsushita or anyone else to be defended against Honeywell's infringement claims.

21.     Furthermore, in its Counter-Statement, Matsushita admits that in response to Honeywell's request to Matsushita that it identify any existing indemnification agreements, Matsushita *did not identify Citizen*, but rather identified four other companies.   D.I. 1047 at ¶ 11. Honeywell effectively received the relevant discovery from Matsushita regarding any potential indemnification of Citizen.  That discovery, consistent with all of the other discovery developed in this case, demonstrates that no indemnification obligation exists and that Honeywell has no basis to allege the existence of a genuine issue of fact with respect to a duty by Citizen to indemnify or defend Matsushita.

22.     Finally, whether or not Matsushita believes it may have a claim of indemnification against Citizen (which it does not) is wholly irrelevant to whether Honeywell can maintain an infringement claim, let alone obtain a judgment, against Citizen.  If it is an issue, it is one to be resolved between Matsushita and Citizen, should Matsushita ultimately be found liable for infringement.

23.     In sum, Honeywell has no evidence to support the existence of a genuine issue of material fact on its infringement claim against Citizen and no cause to be allowed to pursue additional discovery.  Furthermore, given the undisputed facts, additional discovery will not uncover anything new, but will only prolong a case that should have never been brought.

**B.    Nothing That Has Happened In This Case Changes The Requirements For Honeywell To Bring And Maintain A Claim Of Patent Infringement**

24.     Honeywell appears to suggest that acts by Citizen or Judge Jordan might somehow have waived the clear requirements of 35 U.S.C. § 271 and relieved Honeywell of its burden to establish direct or indirect infringement *by Citizen*.  If that is Honeywell's position, it is grossly mistaken.  The elements of infringement under § 271(a) and (b) were not and could not

9

have been waived. Rather than offering Citizen a jurisdictional loophole, as Honeywell appears to characterize it, § 271(a) and (b) set forth the basic elements that Honeywell must prove if it is to make out a claim of infringement against Citizen.

25.     After Honeywell filed a complaint in December of 2005 for infringement under § 271 against the "proper" Citizen entities, i.e., the Citizen entities actually involved in manufacturing the K1122H-HL LCD part at issue, Citizen timely filed its Answer, denying such infringement and requesting a declaration of non-infringement. Despite this express denial of liability under § 271, Honeywell states that Citizen "did not expressly mention Section 271" in its Answer, did not "acknowledge Section 271 was in play" during the March 13, 2006 status conference, and "asserted Section 271 for the first time on May 19, 2006." D.I. 1047 at ¶¶ 7-9. Honeywell's apparent argument that § 271 must be explicitly put "in play" by Citizen is both false and nonsensical. Denial of a claim of patent infringement is, by definition, asserting that there is no infringement under 35 U.S.C. § 271.

26.     Citizen also timely filed responses to Honeywell's interrogatories regarding the absence of direct and indirect infringement, despite having been provided no information at the time about the LCD parts with which Honeywell took issue. Citizen was forced to guess which LCD parts were at issue through its own investigation, including its few communications with Matsushita. Citizen produced these communications to Honeywell in discovery, and they are exhibits to Citizen's Motion.[5]  *See* D.I. 1011.

---

[5] In Section VI of its Counter-Statement, Honeywell incorrectly states that "Citizen had communicated with Matsushita about the infringing LCDs before it was named as a defendant…" D.I. 1047 at ¶ 24. These communications occurred in December of 2005, *after* and in response to Honeywell's complaint filing against the wrong Citizen entities a month earlier. Honeywell also falsely and without basis suggests that Citizen and Matsushita somehow

27.     Honeywell then suggests that Citizen might have inappropriately "delayed" its discovery responses. D.I. 1047 at ¶ 26. That suggestion is without merit. Honeywell stipulated to the two-week extension that Citizen received to serve its responses to Honeywell discovery. *See* D.I. 418. In any event, the timing of Citizen's responses does not in any way suggest some kind of waiver that would relieve Honeywell of its responsibility to have a good faith basis to make and maintain its infringement claim against Citizen.

28.     After earlier filing a complaint for infringement under § 271 against Matsushita, Honeywell filed a separate complaint for infringement under § 271 against Citizen on December 16, 2005. These are two separate causes of action that Honeywell continues to maintain regarding Matsushita's allegedly infringing X300 cellular phones. Honeywell appears to suggest that its basis for infringement by Matsushita suffices as a basis to claim that *Citizen infringes as well*, under the theory that Citizen must "stand in Matsushita's shoes." This twisted logic appears to be the premise underlying Honeywell's entire case against Citizen. However, there is no justification or precedent for treatig one party as though it is another. Citizen cannot be treated as though *it is Matsushita – i.e.,* that Citizen, not Matsushita, may have shipped the 1,000 X300 cellular phones into the U.S., and in one fell swoop eliminate all of the jurisdictional, territorial, and intent requirements that apply to any proof of infringement *against Citizen* for what were merely manufacturing activities in Asia. Citizen never agreed to stand in Matsushita's shoes, and never "waived" (if such even possible) Honeywell's burden to show that *Citizen* committed infringement.

---

coordinated the timing of Citizen's discovery responses with the Matsushita's stay. That is simply not true.

29.     Honeywell's obligation to prove that *Citizen* infringes is also not relieved or suspended by Judge Jordan's structuring of the case.  Honeywell argues that Judge Jordan "requir[ed] Honeywell to sue" nonliable LCD manufacturers "in order to proceed with its claim."  D.I. 1047 at ¶ 7.  To the contrary, Judge Jordan structured the case to proceed first against the manufacturers *that Honeywell had a good faith basis to bring a claim against*, because of their purportedly deeper knowledge of the LCD parts at issue, and then to proceed against the Customer defendants.  *See*, e.g., D.I. 1047, Exh. D at 32 (Judge Jordan stated that Honeywell is "entitled to get behind [the customer defendants'] products and get it to people who are making them *if they can get jurisdiction over them.*")  Importantly, *even if* Judge Jordan intended for all manufacturers of the LCD parts in the accused products to answer for any infringement by Customer defendants, regardless of whether there was any potential liability against the manufacturers, he could not do so.  Judge Jordan could not ignore the limits of U.S. jurisdiction and patent law any more than Honeywell can now.

30.     Honeywell also claims that it has had "an opportunity for discovery only from the Manufacturer Defendants, [so it has been] denied the opportunity to determine the supply and distribution chain for the LCD modules in question."  D.I. 1047 at ¶ 27.  However, while discovery was still open, Honeywell flatly refused Citizen's suggestion that it bring a motion for discovery of Matsushita related to Citizen's alleged infringement.[6]  In Honeywell's own words, Citizen even "urged Honeywell to file a motion to lift the stay on discovery from Matsushita…even stat[ing] that it would not oppose such a motion."  D.I. 1047 at ¶ 31.  Honeywell's only explanation now for not filing the motion is that Citizen somehow should have

---

[6] Honeywell's pending motion for discovery on the Customer Defendants relates to 'commercial success', not allegedly infringing or inducing acts by Citizen.

12

been more proactive in helping Honeywell obtain its supposedly needed discovery from Matsushita. Honeywell complains that "Citizen did not [also] offer to join that motion [or to] encourage Matsushita to provide the information" to Honeywell. D.I. 1047 at ¶ 31. Yet, all Honeywell ever did was to outright reject Citizen's overtures.[7] D.I. 1003, Exh. E. Nevertheless, the fact that *Citizen* did not "offer to join" in seeking discovery that *Honeywell* supposedly needed to make its case does not excuse Honeywell's failure to do so.

---

[7] It is Citizen's view that this correspondence before fact discovery closed reveals Honeywell's disinterest in discovery specifically directed to its inducement claim against Citizen, particularly given the miniscule volume of cellular phones at issue. Honeywell appears to be using this dispute (and in the process holding Citizen hostage) only to argue for a much broader base of discovery on the Customer defendants having nothing to do with Citizen. Accepting Citizen's suggestion to seek narrowly tailored discovery on Matsushita would not have advanced that broad objective.

### III.    CONCLUSION

Throughout this litigation, Honeywell has failed to produce any evidence that Citizen either directly infringed or induced Matsushita to import or sell its X300 Cellular phones in the United States.  In its Counter-Statement, Honeywell fails to allege any genuine issue of material fact regarding its infringement claim against Citizen.  Accordingly, Citizen requests that it be granted declaratory relief that it has not and does not infringe the '371 patent and that Honeywell's infringement claim against Citizen be dismissed with prejudice.

OF COUNSEL:
Stuart Lubitz
David Ben-Meir
HOGAN & HARTSON L.L.P.
1999 Avenue of the Stars
Suite 1400
Los Angeles, California 90067


Dated:  June 27, 2008

/s/ Evan O. Williford
David J. Margules (Bar No. 2554)
Evan O. Williford (Bar No. 4162)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
Telephone:  (302) 573-3500
Facsimile:  (302) 573-3501
E-mail: dmargules@bmf-law.com
E-mail: ewilliford@bmf-law.com
*Attorney for Defendants*
*CITIZEN WATCH CO., LTD. and CITIZEN DISPLAYS CO., LTD*