# EXHIBIT A

1                  THE UNITED STATES DISTRICT COURT

2                  IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4    HONEYWELL INTERNATIONAL, INC.        :     CIVIL ACTIONS
     et al.                               :
5                                         :
                         Plaintiffs,      :
6                                         :
            v.                            :
7                                         :
     AUDIOVOX COMMUNICATIONS CORP.,       :
8    et al.                               :
                                          :     NO. 04-1337 (KAJ)
9                        Defendants.      :
     ----------------------------------   :
10   HONEYWELL INTERNATIONAL, INC.        :
     et al.                               :
11                                        :
                         Plaintiffs,      :
12                                        :
            v.                            :
13                                        :
     APPLE COMPUTER, INC.,  et al.,       :
14                                        :     NO. 04-1338 (KAJ)
                         Defendants.
15                             - - -

16                     Wilmington, Delaware
            Friday, September 9, 2005 at 10:40 a.m.
17                   TELEPHONE CONFERENCE

18                             - - -

19   BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

20                             - - -
     APPEARANCES:
21

22         ASHBY & GEDDES
           BY:  STEVEN J. BALICK, ESQ.
23
                       and
24

25                              Brian P. Gaffigan
                                Registered Merit Reporter

```
 1    APPEARANCES: (Continued)

 2

 3            MORRIS NICHOLS ARSHT & TUNNELL
              BY:  THOMAS C. GRIMM, ESQ.,

 4                      and

 5            ROBINS KAPLAN MILLER & CIRESI, L.L.P
              BY:  MARTIN R. LUECK, ESQ.,
 6                 MATTHEW L. WOODS, ESQ., and
                   STACIE E. OBERTS, ESQ.
 7                 (Minneapolis, Minnesota)

 8                      and

 9            HONEYWELL INTERNATIONAL
              BY:  J. DAVID BRAFMAN, ESQ.
10
                      Counsel on behalf of Honeywell
11                    International, Inc., and Honeywell
                      Intellectual Properties, Inc.
12

13            SMITH KATZENSTEIN & FURLOW
              BY:  ROBERT J. KATZENSTEIN, ESQ.
14
                      and
15
              HOGAN & HARTSON, LLP
16            BY:  ROBERT J. BENSON, ESQ.
                   (Los Angeles, California)
17
                      Counsel for Seiko Epson Corp.,
18                    Kyocera Wireless Corp.

19

20            YOUNG CONAWAY STARGATT & TAYLOR
              BY:  JOHN W. SHAW, ESQ.

21                    Counsel for Olympus Corporation,
                      Olympus America, Inc., Sony Corporation,
22                    And Sony Corporation of America

23                    and

24

25
```

```
 1    APPEARANCES:  (Continued)

 2

 3         KENYON & KENYON
           BY:  ROBERT L. HAILS, ESQ.
 4              (Washington, District of Columbia)

 5                   and

 6         KENYON & KENYON
           BY:  JOHN FLOCK, ESQ.
 7                   (New York, New York)

 8                   Counsel for Sony Corporation, and Sony
                     Corporation of America

 9                   and

10         KENYON & KENYON
           BY:  RICHARD M. ROSATI, ESQ.
11                   (New York, New York)

12                   Counsel for Olympus Corporation, and
                     Olympus America, Inc.
13

14         RICHARDS LAYTON & FINGER
           BY:  WILLIAM J. WADE, ESQ.
15
                     and
16
           WEIL GOTSHAL & MANGES
17         BY:  STEPHEN J. RIZZI, ESQ.
                (New York, New York)
18
                     Counsel for Matsushita Electrical
19                   Industrial Co. And Matsushita
                     Electical Corporation of America
20

21

22

23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2

 3         FISH & RICHARDSON, P.C.
           BY:  THOMAS L. HALKOWSKI, ESQ.

 4              Counsel for Nokia, Inc., Casio, Inc., Casio
                Computer and Apple Computer Inc.
 5
                and
 6
           FISH & RICHARDSON, P.C.
 7         BY:  JOHN T. JOHNSON, ESQ., and
                LEWIS E. HUDNELL, III, ESQ.
 8              (New York, New York)

 9              Counsel for Casio, Inc., Casio Computer

10              and

11         FISH & RICHARDSON, P.C.
           BY:  KELLY C. HUNSAKER, ESQ.
12              (Redwood City, California)

13              Counsel for Apple Computer Inc.

14              and

15         FISH & RICHARDSON, P.C.
           BY:  LAUREN A. DEGNAN, ESQ.
16              (Washington, District of Columbia)

17              Counsel for Nokia, Inc.

18

19         RICHARDS LAYTON & FINGER
           BY:  CHAD M. SHANDLER, ESQ.

20              and

21         HARRIS BEACH, LLP
           BY:  NEAL L. SLIFKIN, ESQ.
22              (Pittsford, New York)

23              Counsel for Eastman Kodak

24

25
```

```
 1     APPEARANCES:  (Continued)

 2

 3             POTTER ANDERSON & CORROON, LLP
               BY:  RICHARD L. HORWITZ, ESQ.
 4
                        Counsel for Concord Cameras, Dell, Inc.
 5                      Fujitsu Limited, Fujitsu America, Inc.,
                        Fujitsu Computer Products of America, Inc.,
 6                      Toshiba Corporation, Toshiba America, Inc.,
                        Wintek Electro-Optics Corporation, Sanyo
 7                      Electric Co. Ltd. and Sanyo North America,
                        Philips Electronics North America Corp.
 8                      and Samsung SDI

 9                      and

10             FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
               BY:  BARRY W. GRAHAM, ESQ.
11                  (Washington, District of Columbia)

12                      Counsel for Nikon Corporation, Nikon Inc.

13                      and

14             KATTEN MUCHIN ROSENMAN
               BY:  MICHAEL A. DORFMAN  ESQ.
15                  (Chicago, Illinois)

16                      Counsel for Sanyo Electric Co. Ltd.
                        and Sanyo North America
17
                        and
18
               OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
19             BY:  CARL E. SCHLIER, ESQ.
                    (Alexandria, Virginia)
20
                        Counsel for Toshiba America
21
                        and
22
               VINSON & ELKINS
23             BY:  RODERICK B. WILLIAMS, ESQ.
                    (Austin, Texas)
24
                        Counsel for Dell, Inc.
25
                        and
```

```
 1   APPEARANCES: (Continued)

 2


 3        MILBANK TWEEK HADLEY & McCLOY, LLP
          BY:   CHRISTOPHER E. CHALSEN, ESQ.
 4              (New York, New York)

 5                   Counsel for Fujitsu Limited, Fujitsu
                     America, Inc., Fujitsu Computer Products
 6                   of America, Inc.

 7                   and

 8        FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
          BY:   YORK FAULKNER, ESQ.
 9              (Reston, Virginia)

10                   Counsel for Wintek Electro-Optics
                     Corporation
11
                     and
12
          HOWREY SIMON ARNOLD & WHITE, LLP
13        BY:   ALAN M. GRIMALDI, and
                NELSON M. KEE, ESQ.
14              (Washington, District of Columbia)

15                   Counsel for Philips Electronics
                     North America Corp.
16
                     and
17
          PAUL HASTINGS JANOFSKY & WALKER, LLP
18        BY:   STEPHEN S. KORNICZKY, ESQ.
                (San Diego, California)
19
                     Counsel for Samsung SDI
20
                     and
21
          CONCORD CAMERA CORP.
22        BY:   SCOTT L. LAMPERT, ESQ.
                (Hollywood, Florida)
23
                     Counsel for Concord Camera
24

25
```

```
 1    APPEARANCES:   (Continued)

 2


 3          SACHNOFF & WEAVER
            BY:  BRIAN D. ROCHE, ESQ.
 4               (Chicago, Illinois)

 5                   Counsel for Argus a/k/a Hartford
                     Computer Group, Inc.
 6


 7          POTTER ANDERSON & CORROON, LLP
            BY:  PHILIP A. ROVNER, ESQ.
 8
                     and
 9
            STROOCK & STROOCK & LAVAN LLP
10          BY:  LAWRENCE ROSENTHAL, ESQ.
                 (New York, New York)
11
                     Counsel for Fuji Photo Film Co., Ltd.
12                   And Fuji Photo Film U.S.A. Inc.

13
            DUANE MORRIS
14          BY:  D. JOSEPH ENGLISH, ESQ.
                 (Washington, District of Columbia)
15
                     Counsel for Audiovox Communications Corp.
16

17          YOUNG CONAWAY STARGATT & TAYLOR
            BY:  ADAM WYATT POFF, ESQ.
18
                     and
19
            GREENBLUM and BERNSTEIN, PLC
20          BY:  MICHAEL J. FINK, ESQ.
                 (Reston, Virginia)
21
                     Counsel for Pentax Corporation,
22                   Pentax U.S.A, Inc.

23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2

 3          BOUCHARD MARGULES & FRIEDLANDER
             BY:  KAREN L. PASCALE, ESQ.
 4
                        and
 5
             OBLON SPIVAK McCLELLAND MAIER & NEUSTADT, P.C.
 6           BY:  ANDREW M. OLLIS, ESQ.
                  (Alexandria, Virginia)
 7
                        Counsel for Optrex America, Inc.
 8

 9           McCARTER & ENGLISH
             BY:  THOMAS D. WALSH, ESQ.
10
                        Counsel on behalf of Optrex America
11

12           CONNOLLY BOVE LODGE & HUTZ
             BY:  JAMES MICHAEL OLSEN, ESQ.
13
                        Counsel on behalf of Sony Ericsson AB
14                      and Sony Ericsson, Inc.

15

16

17

18

19

20

21

22                        - oOo -

23                  P R O C E E D I N G S

24           REPORTER'S NOTE:  The following proceedings were

25    held in open court, beginning at 10:40 a.m.)
```

1      THE COURT:  Counsel, this is Judge Jordan.  I

2  apologize keeping you waiting.  The folks who were in the

3  queue ahead of you exceeded their allotted time but we were

4  able to work some things out and I appreciate your patience.

5      Why don't we go ahead and I'll get a roll call

6  from you folks of who is on the line and who you represent.

7  Okay?  Let's start with the plaintiff.

8      MR. GRIMM:  Good morning, Your Honor.  It's Tom

9  Grimm at Morris Nichols for Honeywell.  On the line with me

10  today; first, Your Honor may recall Honeywell filed two

11  separate actions so on the line with me also is John Day of

12  the Ashby & Geddes firm.

13      Our co-counsel on the line with us this morning

14  are Martin Lueck, Matt Woods and Stacie Roberts at the

15  Robins Kaplan Miller & Ciresi firm.  And also on the line

16  this morning with us is David Brafman, Intellectual Property

17  counsel for Honeywell.  And that's for all plaintiff

18  Honeywell.

19      THE COURT:  All right.  Let's just start down

20  the list of defendants.  Go ahead.

21      MR. HORWITZ:  Your Honor, this is Rich Horwitz

22  at Potter Anderson on behalf of a number of defendants.  And

23  with me on the line, I'll go through the list.

24      THE COURT:  Well, you need to tell me which

25  defendants you are here for.  I know this is --

1      MR. HORWITZ:  That's fine.  I'm on the line for

2  Dell, Fujitsu, Concord Camera, Toshiba, Nikon, Samsung SDI,

3  Sanyo, Wintek and Philips.

4      And with me on the line for Dell, Rick Williams;

5  for Philips, Alan Grimaldi and Nelson Kee; for Fujitsu,

6  Christopher Chalsen; for Sanyo, Michael Dorfman; for

7  Toshiba, Carl Schlier; for Nikon, Barry Graham; for Wintek,

8  York Faulkner.  We are on alone for Concord Camera.  And for

9  Samsung SDI, Stephen Korniczky.

10      MR. LAMPERT:  One correction.  This is Scott

11  Lampert for Concord Camera.

12      MR. HORWITZ:  I'm sorry, Scott.  I didn't

13  realize you were on.

14      THE COURT:  All right.  Thanks.

15      Is there anybody else on?

16      MR. WADE:  Your Honor, it's Bill Wade at

17  Richards Layton & Finger, and I'm on for the Matsushita

18  defendants along with Steve Rizzi and perhaps David Lender

19  from Weil, Gotshal & Manges.

20      MR. BENSON:  Your Honor, this is Robert Benson

21  of Hogan & Hartson on for Seiko Epson and Kyocera Wireless.

22      MR. KATZENSTEIN:  Your Honor, this is Robert

23  Katzenstein.  I'm Mr. Benson's local counsel.

24      MR. HALKOWSKI:  Your Honor, this is Tom

25  Halkowski on behalf of Nokia, Apple and Casio.  And with me

1    on the line on behalf of Nokia is Lauren Degnan; and on

2    behalf of Apple, Kelly Hunsaker; and on behalf of Casio,

3    John Johnson and Lewis Hudnell.  Thank you.

4                THE COURT:  All right.

5                MR. ROVNER:  Your Honor, this is Phil Rovner for

6    the Fuji Photo Film defendant.  With me on the line is Larry

7    Rosenthal from Stroock Stroock & Lavan in New York.

8                THE COURT:  Okay.

9                MR. ROCHE:  Your Honor, Brian Roche in Chicago

10   for Hartford Computer Group.

11               THE COURT:  And is somebody on with you, sir, as

12   local counsel?

13               MR. ROCHE:  No.

14               THE COURT:  Have you arranged for local counsel?

15               MR. ROCHE:  Yes, we have local counsel from

16   Cross & Simon.

17               THE COURT:  All right.  Typically, we look for

18   those folks to be on those calls too unless excused.  But

19   thanks for identifying yourself.

20               Who else is on?

21               MR. SHANDLER:  Your Honor, Chad Shandler for

22   Richard Layton for Eastman Kodak.  With me on the line is

23   Neal Slifkin from Harris Beach.

24               THE COURT:  Anybody else?

25               MR. WALSH:  Your Honor, Tom Walsh with McCarter

1      & English on behalf of Audiovox Electronics Corporation.

2                    MR. POFF:  Your Honor, Adam Poff from Young

3      Conaway on behalf of the Pentax defendants.  And also

4      Michael Fink from Greenblum and Bernstein on behalf of

5      Pentax.

6                    MR. SHAW:  Your Honor, John Shaw for the Olympus

7      and Sony defendants, and I believe Richard Rosati and Bob

8      Hails is for Olympus.

9                    MR. ROSATI:  Rich Rosati for Olympus.

10                   MR. SHAW:  And Bob Hails is for the Sony

11     defendants.

12                   THE COURT:  Okay.

13                   MR. OLSEN:  Your Honor, James Olsen from

14     Connolly Bove for the Sony Ericsson defendants.

15                   MR. ENGLISH:  Your Honor, this is Joe English

16     from Duane Morris on behalf of Audiovox Communications Corp.

17                   THE COURT:  And do we have anybody else on?

18                   MR. FLOCK:  Your Honor, this is John Flock from

19     Kenyon & Kenyon, also on for Sony corporation.

20                   THE COURT:  Thank you.

21                   MS. PASCALE:  Your Honor, this is Karen Pascale

22     from Bouchard Margules & Friedlander for Optrex America

23     which is the named plaintiffs in the 04-1536 action; and on

24     the line with me is Andrew Ollis from the Oblong Spivack

25     firm.

```
 1              THE COURT:  Okay.  Do I have anybody else?

 2              (Pause.)

 3              THE COURT:  All right.  Well, thanks for

 4   assembling.  I'm glad the telephone company has got enough

 5   lines to handle this call.

 6              We are together because in spite of what I

 7   thought was pretty clear direction a few months ago, we

 8   still haven't been able to get plaintiffs and defendants

 9   moving forward on this case, and I received a letter on

10   August 22nd from Mr. Grimm saying, "hey, since our

11   correspondence to you in June, we're still at odds."

12              So, I've taken a look at the correspondence but

13   why don't I give you a chance to tell me what you think the

14   points in dispute are that can't be resolved without my

15   intervention so we can get a scheduling order in place,

16   short of me just imposing one.

17              Who is speaking on behalf of the plaintiffs on

18   this?

19              MR. GRIMM:  Your Honor, this is Tom Grimm.

20   Marty Lueck of the Robins Kaplan Miller & Ciresi firm will

21   speak.

22              THE COURT:  Mr. Lueck.

23              MR. LUECK:  Good morning, Your Honor.  I think I

24   can give you a snapshot here of where we've made progress,

25   where we haven't and I think give the Court an idea of how
```

1    we might be able to resolve the logjam so we can transition

2    this case from the customer defendants to the module maker

3    defendants.

4            Basically, what we have asked for in discovery

5    from the customer defendants is a list of all products sold

6    in the United States in the categories that are set forth

7    in the complaint going back from October 6th, 1998 to the

8    present.  And we've asked for the identity of a module maker

9    for each of those products and the LCD module model number.

10   And the reason we've asked for that information is so that

11   we can match up the LCD modules that were manufactured

12   overseas to the end products that were actually imported

13   into the United States and sold because those are the ones

14   that are going to be at issue for both liability and

15   ultimately, down the road, damage.

16           THE COURT:  All right.  I'm sorry to interrupt,

17   Mr. Lueck.  Give it to me one more time.  What is it that

18   you specifically asked for in discovery?

19           MR. LUECK:  What we're asking for is a list of

20   all -- and let me just back up.  This is for the customer

21   defendants.  A list of all products sold in the United

22   States in the categories set forth in the complaint from

23   October 6th, 1998 to the present.  And that's consistent

24   with the patent statute of limitations, six years back from

25   the date of filings of the complaint.  The products.

1          THE COURT:  All right.  Now, before you go

2   further, let me ask you what I took it to be the other

3   side's position and just have you respond to it directly.

4          I think they were saying to saying to me, these

5   guys should be identifying the products they think infringe

6   in the first instance.  Am I right that that is a point of

7   contention or am I wrong about that?

8          MR. LUECK:  You are correct, Your Honor, as to

9   some of the defendants.

10          THE COURT:  What is your response?

11          MR. LUECK:  Our response to that is we have

12   identified all of the products that we have purchased and

13   torn down and found specific instances of infringement.

14   We're unable to buy every product that is out there, and in

15   fact for the products that are in the past, we have no idea

16   whether we would have all of those or not have all of them.

17   And we don't believe on a going-forward basis, it should be

18   our burden to buy every single product of every single

19   company, tear it down and then make an individual charge of

20   infringement.

21          We have given them all the information we have

22   to date.  And, in addition, we have offered to tear down

23   any products they want to send us and we will give them a

24   response on the results of that tear-down.  And that really

25   is the logjam right there.  We have resolved that issue with

1    three of the defendants, Nikon, Concord Camera and Fuji. I

2    believe we're close to resolving it with Nokia and Olympus

3    but were unable to make progress with the others.

4              THE COURT:  All right.  And what is the basis of

5    your agreement with the ones you have resolved it with?

6              MR. LUECK:  In essence, Your Honor, they have

7    agreed to provide us that information:  A historical list of

8    products going back to 1998, the identity of the module

9    maker for each product and the LCD module number that is in

10   the product.

11             THE COURT:  All right.  And is that really the

12   heart of the dispute?  Is there some other thing going on

13   that I need to know about or is this really a kind of an

14   Alphonse-and-Gaston thing about who goes through the door

15   first?

16             MR. LUECK:  Yes, I think that is correctly

17   summarized, Your Honor.  I believe if we can resolve this

18   issue, we can make a lot of progress to resolving everything

19   else.

20             THE COURT:  Okay.  Who wants to take this up in

21   the first instance for the defendants?

22             MR. HORWITZ:  Your Honor, this is Rich Horwitz.

23             I think that you have captured what the main

24   dispute is and, really, it boils down to who should go

25   first.  Based on what Your Honor told us when we were in

1   front of you, I think we quoted the language from the

2   transcript where we think it's their obligation to come

3   first as the plaintiff charging infringement.

4           There may be some defendants who want to speak

5   specifically because the burdens on defendants are different

6   depending on how many products fall within the eight

7   categories that were mentioned in the complaint for the time

8   period that we're talking about here, to reach back and grab

9   things for plaintiff with no firm charge of infringement.

10  And I think that is the nub of the controversy.

11          There are some other issues that haven't been

12  discussed yet today that plaintiff raised in its submissions

13  and we responded to that we thought were outside the scope

14  of what the Court ordered, but that is kind of a collateral

15  matter to the main issue which is the one that you have been

16  focusing on so far.

17          So if there are individual defendants, I think

18  that they should be able to jump in at this point, if they

19  want to add argument on their specific circumstances.

20          THE COURT:  Okay.  Who wants to speak?  Don't be

21  shy.

22          MR. GRAHAM:  Your Honor, this is Barry Graham

23  for the Nikon defendants.  And I hope everyone can hear me

24  well.  I had to be on a cell phone today.

25          As Mr. Lueck acknowledged, which I appreciate,

1    that Nikon has resolved, has given Honeywell what it asked

2    for.  We gave them specific information in July, and the way

3    I read the Court's May 18th order, Nikon and other customer

4    defendants were under basically a conditional stay.  And I

5    would like, at least for Nikon, and there may be others, to

6    ask the Court to change the conditional stay into a real

7    stay while the other parties resolve their differences with

8    the plaintiff.

9                THE COURT:  All right.  Does anybody else want

10    to speak?

11                MR. ROSENTHAL:  Your Honor, this is Lawrence

12    Rosenthal for Fuji.

13                In fairness to the other defendants who still

14    have this dispute, as you may recall, Fuji asked the Court

15    to limit the case to the eight categories.  Honeywell has

16    now conceded that is what the case is limited to.  And if

17    the case is limited to eight categories, this case becomes a

18    single product case for Fuji and the burden became finite

19    and easy to satisfy.  I think you will hear from other

20    defendants that that is not the case.

21                THE COURT:  Is there anybody else?

22                MR. RIZZI:  Your Honor, this is Stephen Rizzi of

23    Weil Gotshal for the Matsushita defendants.

24                Just to give you a sense of an example where

25    we're not similarly situated to some of these defendants

1    like Nikon and Fuji, Matsushita is a very diverse

2    electronics company and has products that span many of the

3    categories.  And if you literately consider going back six

4    years, all LCD-containing products in those categories,

5    there are hundreds, if not perhaps more than a thousand

6    products in this action.

7          Honeywell has identified three products of

8    Matsushita that are accused of infringement.  We, months

9    ago, told Honeywell who the LCD suppliers are for those

10   products:  two cell phones and one laptop.  And just as sort

11   of a fundamental matter of discovery and burden shifting,

12   we don't believe that identification of three products

13   justifies discovery of hundreds, if not perhaps a thousand

14   products that may or may not be accused of infringement.

15   The burden is squarely on Honeywell to identify which

16   products they believe infringe and the case should be framed

17   around those products.  And we do not believe that merely

18   identifying three products justifies essentially a fishing

19   expedition into all products going backs six years which

20   could number well into the hundreds, if not more.

21          THE COURT:  Okay.  I got you.

22          Does anybody else feel like they want to say

23   something?

24          (Pause.)

25          THE COURT:  All right.  Hearing nothing,

1    Mr. Lueck, back to you.  I'll give you a chance to rebut.

2              MR. LUECK:  Thank you, Your Honor.  Basically

3    it's hard for me to understand how the burden could be

4    greater on the defendants to provide this information than

5    on Honeywell to go out and try to uncover every product that

6    each of these defendants have sold in the past.

7              THE COURT:  Well, wait.  I've got to wrestle

8    with you on that premise because at the start, I moved from

9    the baseline understanding that the way our adversary system

10   works is you learn of something that tells you you've been

11   wronged and then you go and you draft a complaint that

12   identifies that wrong and you come to court and you bring

13   somebody in to answer for that wrong.  So when you start by

14   saying, gee, let's look at who has got the greater burden

15   here, why is it the burden of defendants in the first

16   instance to tell you everything they ever made with an LCD

17   module in it when there's apparently a reluctance or

18   unwillingness or inability on your part in the first

19   instance to make a case that a product actually does

20   infringe?

21             I'm probably giving away the way I'm thinking

22   right now, aren't I?  I'm having a real problem with the

23   fundamental premise with your argument which is we think

24   there is other stuff out there that infringes and we want to

25   know everything you made in the last six years so we can

1    decide whether we got a case against you or not.  That just

2    isn't how it works.

3              MR. LUECK:  Well, Your Honor, I believe we have

4    made that showing.  And what we have done is we've gone out

5    and bought a large number of products from a wide range of

6    customers or end manufacturing defendants.  We've torn them

7    down.  We've given the defendants detailed information on

8    what we believe is the infringement.  We identified the

9    eight product ranges where we found it.

10             The modules come from module makers overseas.

11   We have no access to those individuals.  And I think we've

12   satisfied our Rule 11 burden, we satisfied the pleading

13   burden on it, and then it becomes an issue of whether or

14   not this is reasonably calculated to lead to admissible

15   information, which we believe it is, and then it is an issue

16   of looking at the relative burdens.  And in our view on

17   burden, we have a right to recover for damages going six

18   years back from the date of the complaint.  These models

19   change rapidly and often.  And we simply have no access to

20   records that would show us what those models have been.

21             THE COURT:  Well, let me ask this, because

22   maybe we're talking past each other.  When you say you have

23   satisfied your initial burden, is the assertion that you are

24   making that we have identified products, we've told them the

25   products that infringe and the only question is whether,

1    through various generations of different models of this

2    product, somehow there is some difference?  Or is there

3    something else going on that I'm not getting.

4            MR. LUECK:  No, I think you have captured it.

5    We've identified what the products are that have infringed

6    and we've specified what those types of products are and

7    we've given them specific model numbers as to ones we've

8    been able to purchase and tear down, but that doesn't mean

9    that we know all of the generations of those products that

10   they have introduced in the past.

11           THE COURT:  All right.  I'm going to ask the

12   gentleman who spoke on behalf of Matsushita, the Weil

13   Gotshal attorney if he will speak up at this point and

14   answer that point, which is:  Hey, we're not just on some

15   wholesale fishing expedition.  We've identified a product

16   and a product line and we just need to know the different

17   model numbers in that product line so that we're sure that

18   we've had a chance to investigate this product thoroughly,

19   which is what I understand Mr. Lueck to be saying.  What is

20   your response to that?

21           MR. BRAFMAN:  Your Honor, this is David Brafman

22   from Honeywell.

23           I'd just like to add one further point which is

24   our tear-down rate, on average it's about a 50 percent hit

25   rate under our belief of infringement across all these

1    products.  So it's not a wild fishing expedition as it is

2    made to sound.  It is that we found products, a large

3    percentage of them do hit and we just don't have access to

4    the models that change every six months.

5          THE COURT:  All right.  Mr. -- I'm sorry, I've

6    forgotten your name, sir.

7          MR. RIZZI:  It's Steve Rizzi from Weil Gotshal.

8          THE COURT:  Mr. Rizzi, I apologize for not

9    holding on to that name.  Go ahead.

10         MR. RIZZI:  That's okay.  I think along those

11   lines, Your Honor, there is room to meet in the middle here

12   from our perspective and, in fact, one of the cases that

13   Honeywell cited in its correspondence I believe is

14   instructive -- the IP Innovation case out of the Northern

15   District of Illinois -- I think is somewhat similar in the

16   sense that case involved certain chips that were found

17   in various models of televisions that were accused of

18   infringement, the basis for infringement being this specific

19   chip.  And what the plaintiff did originally was identify

20   specific television models that they believe included the

21   chip and were infringing.  And there, the Court allowed

22   discovery of other models of televisions that included that

23   same chip.  So discovery in the case were structured

24   around other future generations or products but only those

25   products that included the same chip as the specific models

1    of televisions that were identified by plaintiff.

2            We think structuring it along those lines is

3    reasonable and does provide a framework that does allow

4    for a manageable case as well.  And that we believe it is

5    possible to identify, for example, other products that

6    utilize the same LCD modules incorporated in these specific

7    products that are alleged to infringe and that we don't

8    believe that that would present an unreasonable burden,

9    and we don't dispute that plaintiffs would be entitled to

10   that type of information.

11           THE COURT:  All right.  Mr. Lueck.

12           MR. LUECK:  Yes.  What we asked for, Your Honor,

13   is the modules that were identified in the infringing

14   products and similar modules.  And the problem we have is if

15   you were to go to these module makers, some of the modules

16   infringe, some of the modules don't.  The module makers do

17   not know what products they go into for the customers.

18   Literally, the only way for anyone to find that out is to

19   ask them for the historical products.  And we've offered to

20   take anything that they have and look at it and tell them

21   whether it infringes.

22           I don't believe the burden is as great as the

23   defendants are saying.  We've narrowed it down to specific

24   products we've torn down.  We don't know all of the

25   historical model numbers.  That's the information we're

 1   asking for.

 2              THE COURT:  All right.

 3              MR. WILLIAMS:  Your Honor, this is Rick Williams

 4   for Dell.

 5              THE COURT:  Yes.

 6              MR. WILLIAMS:  I'd like to weigh in on this.  In

 7   the complaint, the products they're looking for include

 8   cellular phones, digital cameras, PDAs, portable DVD

 9   players, laptop computers.  In the case of Dell, they

10   identified six models of Dell laptop computers out of a

11   total current 17 models.

12              The first thing, all of Dell's laptops are

13   readily available to purchase over the Internet and they can

14   get them within a week's time and evaluate them.

15              They have not identified any PDAs, which Dell

16   also sells.

17              Dell resells digital cameras and digital video

18   cameras.  They have not identified any of those as being

19   accused against Dell.

20              So we're faced with the dilemma, out of all

21   these categories, they say they'd like information on --

22              THE COURT:  We'll, we're not --

23              MR. WILLIAMS:  -- them going down the list and

24   giving them information.

25              THE COURT:  Hold on.  Because I get the feeling

1    we're still talking past one another here.  Maybe positions

2    have shifted as a result of the conversation we're having,

3    but what I hear what Mr. Lueck is saying is not I want

4    information about broad categories of products.  I want

5    information about a specific product identified and

6    different generations of that same identified product.  That

7    is, has a model changed?  And if it has changed, would you

8    please identify what the newer different model is of that

9    identified product?  Not category of products but a

10   specified product.

11              Mr. Lueck, have I misunderstood you?

12              MR. LUECK:  Well, I think that is narrower than

13   we seek, Your Honor.  I mean if it's going to be tied to

14   specific model numbers, we don't know what the past model

15   numbers these devices are marketed under.  Basically what

16   we're asking for is which of your products had the modules

17   that had the infringing technology or the similar technology

18   in them so we can tie them back to the module makers and

19   know what modules were imported into the United States.

20              THE COURT:  All right.  I interrupted.

21              MR. LUECK:  That could be a different model

22   number than what we have, we just don't know that, and we

23   have no other way of finding out.

24              THE COURT:  The gentleman from Dell, I

25   interrupted you, sir.  Go ahead.

1          MR. WILLIAMS:  No, Your Honor.  Again, they

2    identified six models out of 16-17.  They could certainly

3    get the other models.  Through the tear-down, they could

4    purchase them as easily as Dell could absorb the expense and

5    tell us the modules in fact they're accusing of infringement

6    rather than asking us to go back and conduct a unilateral

7    analysis of our products and say, well, maybe this module

8    infringes or maybe this one doesn't.  And I think the burden

9    should be on them in the first instance to say a particular

10   LCD module in a particular computer model we contend meets

11   the elements of the claims in our patent instead of

12   vice-versa.

13         THE COURT:  All right.  And I am going to have

14   to get into a criminal proceeding here in a few minutes, so

15   I won't have an opportunity to resolve other issues that you

16   may have besides this one.

17         My understanding of what is being asked for has

18   shifted a little bit in the course of this conversation.

19   So instead of trying to speak in terms of what it is you

20   are asking for, let me tell you what I think you can

21   legitimately ask for and we can get this thing moving

22   forward.

23         I said in the order that I put out last May that

24   Honeywell was required to specifically identify accused

25   products.  And that's what I meant.  Not that Honeywell was

1   entitled to say, you know, we think all your cellular phones

2   infringe so we want you to tell us everything about all your

3   cellular phones.  What I mean is if you've got a basis for

4   believing that a manufacturer's cellular phones are

5   infringing, and I mean you can say we've done this tear-down

6   on these specific products and these things appear to us to

7   infringe, well, then you are absolutely entitled to conduct

8   additional discovery with respect to those products, that

9   is, were earlier generations than the one you tore down.

10  Also, have they come out with subsequent generations of that

11  same model which could also be infringing?

12          But what you are not entitled to do is to say

13  you manufacture 15 different kinds of cell phones.  We tore

14  down three.  Tell us about your other 12.  Because I agree

15  with the defendants that now what you are doing is you are

16  telling manufacturers, you know what?  You got one or two

17  things that are bad.  We want to you do an analysis of

18  everything you make and tell us whether you are guilty on

19  those fronts, too; and that is not what the law requires,

20  and it's not what I'm going to require them to do.

21          If you want to go out, you want to buy them, you

22  want to do the tear-downs, you want to get information that

23  prompts you to be able to say "now I know that this specific

24  model also infringes," then you can certainly do that.  And

25  then you would be in an area where you could be requiring

1    additional discovery from them.  But to ask them to come

2    forward in the first instance, which is what it really comes

3    down to, is not right.

4         So I hope this straightens out where my thinking

5    is on it and gives you guidance about what I'm expecting the

6    parties to be willing to do.  To the extent manufacturers

7    are prepared to say, you know what?  For us, it's not such a

8    burden as to make it impossible to give you something more

9    broad than what the judge has ordered happen, that is fine

10   with me.  But what I do expect to happen at this juncture is

11   for you guys to come together with a specific set now of

12   identified products and manufacturers of the models of LCD

13   modules that go into those products so that we can go about

14   having the proper defendants in the suit.

15        To the extent there was any thought that I was

16   putting the burden exclusively on the defendant retailers or

17   intermediate sellers, to third-party people in, that is not

18   necessarily the case.  I'm not going to get to that issue

19   today, though, because we don't have time to fully explore

20   it, but I expect Honeywell to be active in finding out who

21   those manufacturers are and that is one of the reasons why

22   I gave only a conditional stay, because one of the pieces

23   of information Honeywell is entitled to get as to those

24   identified products and product lines is who is the maker of

25   the LCD that is going in to that product, that generation of

1  product and maybe, I don't know, the generations before and

2  after that model.

3          So you guys absolutely on the defense side have

4  to give that information up.  And then if we can't have some

5  sensible plan that the parties agree to on how to try to

6  bring those folks in, I'll get into the mix on that, too.  I

7  would think that overseas marketers of LCD modules who have

8  big clients in the United States incorporating those things

9  into their products are not going to want to upset their

10  clientele by playing games with jurisdiction.  And

11  particularly in the aftermath of the Federal Circuit's

12  CEA decision, which I remember well, I would think people

13  would be thinking hard about how they're going to play

14  the personal jurisdiction defenses here.  But that is a

15  discussion for another day.

16          For now, I want you to get off of the

17  who-goes-first issue because Honeywell you guys are going

18  first.  You identify what is infringing.  Let's get those

19  manufacturers on notice and let's get the case going

20  forward.

21          When can I expect to hear back from you about a

22  plan for getting that done, Mr. Lueck?

23          MR. LUECK:  Within a week, Your Honor.  If I

24  could ask for just one clarification, recognizing you have

25  something else going.

1           The issue that we've had is just identifying who

2    the manufacturers of the modules are that are coming into

3    the U.S.  And hearing what Your Honor has said regarding

4    those modules, can we ask about historical products that

5    have those modules or similar modules in them?

6           THE COURT:  Well, when you say the "same" or

7    "similar," you know, the "same," absolutely.  When you say

8    "similar," that is a big door, because, what do you mean

9    when you say "similar?"

10          MR. LUECK:  Right.  Here is what I mean when I

11   say "similar," Your Honor.  A light source, an LCD panel,

12   two lens arrays, one of which is misaligned.

13          THE COURT:  If you want to say, if you want to

14   frame your discovery in a manner that incorporates your

15   specific allegations of infringement, fine.

16          MR. LUECK:  That is exactly what we're asking

17   for.  And that we would frame it exactly that way.

18          THE COURT:  All right.  Does everybody

19   understand the discovery I'm telling them they're entitled

20   to?

21          (Pause.)

22          THE COURT:  I'm not hearing anybody say no.

23          MR. HORWITZ:  Your Honor?

24          THE COURT:  Yes, go ahead.

25          MR. HORWITZ:  This is Rich Horwitz.  And I'll

1    defer to others if I'm missing something here, but I think

2    the problem with what Mr. Lueck just said is he may be

3    asking for things that led us to the stay motion in the

4    first instance.

5            THE COURT:  No.  What led to the stay motion in

6    the first place is I'm not going to have the folks who are

7    reselling things, reselling the LCD module as a part of

8    their own product defending in the first instance.

9            MR. HORWITZ:  I'm sorry.  I understand that,

10    Your Honor.  What I meant was that some of the people that

11    are the resellers may not have the information that would

12    respond to the broad question that Mr. Lueck just posed.

13            THE COURT:  Well, and if you don't have it, you

14    don't have it.

15            MR. HORWITZ:  Okay.

16            THE COURT:  I mean I'm not saying anybody has to

17    make anything up, but if you've got the information, you

18    need to give it up because they're entitled to get behind

19    your products and get it to people who are making them if

20    they can get jurisdiction over them.  And that's all.

21            Like I said, the personal jurisdiction issue,

22    that's for another day.  But finding out who the

23    manufacturers are, that's something that is supposed to have

24    been happening over the course the last four months and it's

25    distressing to hear that we've been not moving forward on

 1  that front because we should be.  We should be finding out

 2  who this case is going to run against in the first instance.

 3  So I'll ask the parties to move forward with that forthwith;

 4  all right?

 5                And, Mr. Lueck, I'll look forward to hearing

 6  from you some time in the next few days in a fashion that

 7  includes discussions to the extent you need to have it with

 8  all defense counsel on how you folks intend to proceed so

 9  that I can get a scheduling order in place.

10                I'm going to set a deadline on you folks

11  reporting back to me for two weeks from today; all right?

12  And hopefully that can be a joint submission.  But if it

13  can't given, the number of parties involved, it may be

14  impracticable, I'll expect though to hear from everybody

15  with a position on scheduling because what you can expect

16  from me is I'm ready to put an order in place.  I want to

17  get a schedule in place.  So you should be talking about how

18  to make that happen.

19                All right.  Is there any other matter which is

20  of such urgency we ought to address it right now while we're

21  all on the phone right now, Mr. Lueck?

22                MR. LUECK:  No, Your Honor.

23                THE COURT:  From the defense side, anything?

24                MR. HORWITZ:  No, Your Honor.

25                THE COURT:  Okay.  I'm hearing --

1          MR. GRIMM:  Your Honor?

2          THE COURT:  Yes.

3          MR. GRIMM:  Your Honor, this is Tom Grimm.

4          I do have a concern of letting this go on and on

5     because we've had such a hard time in the last three or four

6     months.  And this has been very helpful to us but I'm

7     wondering if we could bother the Court for your permission

8     that in two weeks after we report, if there is still

9     differences, can we contact your clerk and ask for another

10    telephone conference?

11         THE COURT:  Well, that is something you are

12    always free to do.  If there is a problem in the case that I

13    can help you work out, I'm ready to help you work it out.

14    But I'm fully expecting on the basis of the discussion we

15    just had, for you to be able to take the next step, which is

16    set a schedule for getting this case transitioned to an

17    infringement suit against the manufacturers.  All right?

18         MR. GRIMM:  All right.

19         MR. GRAHAM:  Your Honor, this is Barry Graham

20    for Nikon.

21         Nikon would like to be able to step aside.  Do

22    we need to participate since we already provided the

23    information to Honeywell?

24         THE COURT:  The short answer is if Honeywell

25    and you agree that you don't have anything else to say with

1    respect to the case, I'm not going to default you.  And at a

2    certain point in time, there will be a transition from a

3    conditional stay to a full stay but I don't want to handle

4    that on a defendant-by-defendant basis if I can help it, so

5    I'm not moving on that request that you made earlier in this

6    call at this time.

7              MR. GRAHAM:  All right.  Thank you, Your Honor.

8    I'll speak with plaintiffs' counsel.

9              THE COURT:  All right.  Well, thanks for your

10   time this morning.  Good-bye.

11             (The attorneys respond, "Thank you, Your

12   Honor.")

13             (Telephone conference ends at 11:18 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25