EXHIBIT A

```
            IN THE UNITED STATES DISTRICT COURT
            IN AND FOR THE DISTRICT OF DELAWARE
                          - - -

HONEYWELL INTERNATIONAL INC.        :    CIVIL ACTION
                                    :
                                    :
            Plaintiff               :
                                    :
      vs.                           :
                                    :
AUDIOVOX COMMUNICATIONS CORP;       :
AUDIOVOX ELECTRONICS CORPORATION    :
NIKON CORPORATION; NIKON INC;       :
NOKIA CORPORATION; NOKIA INC;       :
SANYO ELECTRIC CO., LTD.; SANYO NORTH:
AMERICA CORPORATION; SANYO EPSON    :
IMAGING DEVICES CORPORATION,        :
SUZHOU EPSON CO., LTD.,             :
SANYO EPSON IMAGING DEVICES         :
(HONG kONG) LTD., and               :
SANYO EPSON IMAGING                 :
DEVICES (PHILLIPINES) INC.,         :
SANYO:                              :
            Defendants              :    NO. 04-1337-JJF

                          - - -

                                 Wilmington, Delaware
                                 April 2, 2008
                                 12:48 o'clock, p.m.
                                 Status Conference

                          - - -

BEFORE: HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

                          - - -

APPEARANCES:

          MORRIS, NICHOLS, ARSHT & TUNNELL
            BY:  THOMAS GRIMM, ESQ

                     and

          ASHBY & GEDDES
          BY: LAUREN MAGUIRE, ESQ
```

1  Inc.
2       At least these 11 customer defendants all have
3  suppliers who are fully licensed.
4       The issues here are completely mooted with regard
5  to these defendants. We raised this issue in a letter to the
6  Court of January 24th, 2007.
7       I have a copy if your Honor would like -- would
8  think that useful.
9       We also then followed that up with a brief
10 addressed during a telephone conference with Magistrate Judge
11 Thygne of January 25th, 2007 as well as February 22nd, 2007.
12      The upshot is that the customer defendants got
13 stayed. So this issue basically got put to the side.
14      THE COURT: Does Mr. Grimm agree they are out of
15 the case and mooted?
16      MR. GRIMM: No, your Honor. We've had no
17 discovery to know whether or not all their suppliers --
18 everybody is fully licensed or not, your Honor.
19      We don't know who all their suppliers are.
20      This issue was actually raised before 2007 with
21 Judge Thygne. In light of our argument against it, she
22 denied the request, although admittedly it was renewed in
23 early 2007.
24      THE COURT: Honeywell says it's not that we can't
25 agree, -- it's not that we don't agree, it's just that we

13

1  don't know.
2              Is that right?
3              MR. GRIMM:  One of the motions pending before
4  Judge Thygne was to get some discovery from what is referred
5  to as customer defendants, U.S. companies that actually sell
6  the devices.
7              THE COURT:  What does that say about the
8  discovery that you would request?
9              Does it say you would like to do depositions, 30
10 interrogatories?
11             MR. GRIMM:  I don't recall precisely.
12             I will say that we characterized it as limited
13 discovery.
14             THE COURT:  Limited discovery, one deposition, 15
15 interrogatories.
16             You think you should be out of the case by virtue
17 of the protection of the suppliers' license?
18             MR. HALKOWSKI:  Correct, your Honor.
19             From the products that have been identified in
20 our letter of January 24th, 2007, we went through and we laid
21 this all out.
22             We got certain products that were identified.
23 Judge Jordan made it very, very clear that there was to be a
24 stopping point where, you know, the shifting of the grounds
25 was suppose to stop and you're suppose to have a list of

1  accused products, and that was suppose to be it.
2          Based upon what has been accused, looking at the
3  suppliers, who provide the modules that go into those
4  products that are accused, everything is covered.
5          Again, we tried to raise this issue and just
6  haven't gotten anywhere at this point.
7          THE COURT: Here's what we're going to do.
8          Based on what I heard and since it seems to be a
9  big chunk of folks sitting around. I'm going to let you pick
10 a Special Master. The two of you can do that.
11         I'm sanctioning it after you pick the Special
12 Master. A Special Master will be authorized to work for 20
13 hours on any disputes that arise in this limited discovery.
14 I'm going to take that literally, very limited discovery.
15         Twenty hours means you're going to get the use of
16 a Special Master, four days, five hours a day, who will
17 charge you $500 an hour. $500 an hour times 20 hours is how
18 much? $10,000 split evenly. $5000 a side. Great deal.
19 That means where you are all going.
20         I want the suggestion of a Master by next
21 Friday. I'm going to allow a 120 days for this to occur so
22 you can go back and forth a little bit.
23         This is the way to do it cheaply. I won't say
24 cheaply, but less expensive than if you just start flailing
25 around and started filing motions with me.

1   If you pick a real good Master, this will be a
2   homerun. You'll either know whether you're in or out.
3        I'm going to allow the Master to come up with a
4   report and recommendation if there's any dispute.
5        MR. HALKOWSKI: Thank you, your Honor.
6        MR. GRIMM: As I understand it, this is with
7   respect to Honeywell's request for discovery from the
8   customer defendants?
9        THE COURT: Customer defendants who claim a
10  suppliers' license protection.
11       MR. HALKOWSKI: Exactly.
12       The customer defendants' position is that we're
13  done.
14       THE COURT: Right.
15       You're saying you need some information. I'm
16  going to get you the information. I'm going to get you a
17  dispute resolution mechanism for a peanut. $5000 to your
18  side. That Master will do an R&R. If there is a dispute if
19  you don't leave them out voluntarily.
20       MR. GRIMM: That's fine, your Honor. That's a
21  fine process.
22       I wanted to make it clear on the record that our
23  request for limited discovery from the stayed defendants went
24  beyond the question of whether or not their suppliers were
25  fully licensed.

# EXHIBIT B

# Exhibit B

## Affected Defendants Matrix

| Affected Defendant | Meet & Confer | Communications with LCD Suppliers | Authentication Declaration | Linkage Declarations | Optrex/ Samsung SDI Declaration |
|---|---|---|---|---|---|
| Apple | June 30, 2008 | Yes | Agreement in Principle | Agreement in Concept | Agreement in Concept |
| Audiovox | June 30, 2008 | Unknown | In Dispute | In Dispute | In Dispute |
| Dell | June 17, 2008 | Yes | Under Consideration | Under Consideration | Under Consideration |
| Eastman Kodak | June 24, 2008 | Yes | Agreement in Principle | Under Consideration | Agreement in Principle |
| Argus | June 12, 2008 | Unknown | Agreement in Principle | Under Consideration | In Dispute |
| Navman | July 3, 2008 | Unknown | Under Consideration | Agreement in Concept | Agreement in Principle |
| Nikon | June 20, 2008 | Yes | Agreement in Principle | Under Consideration | Under Consideration |
| Olympus | June 25, 2008 | Yes | Under Consideration | In Dispute | In Dispute |
| Pentax-Hoya | June 6, 2008 | Yes | Agreement in Principle | Under Consideration | Under Consideration |
| Sony | June 19, 2008 | Unknown | | | |
| Sony Ericson | July 2, 2008 | Yes | Agreement in Principle | Under Consideration | Under Consideration |

**LEGEND:**

| Agreement in Principle | Agreement in Concept, Specific Details to be Worked Out | Under Consideration | In Dispute |
|---|---|---|---|
| green | green hatched | yellow | red |

# EXHIBIT C

```
 1                    IN THE UNITED STATES DISTRICT COURT
                      IN AND FOR THE DISTRICT OF DELAWARE
 2
                                    - - -
 3
     HONEYWELL INTERNATIONAL, INC.,      :    CIVIL ACTION
 4   et al.                              :
                                         :
 5              Plaintiffs,              :
                                         :
 6         v.                            :
                                         :
 7   APPLE COMPUTER, INC., et al.,       :
                                         :
 8              Defendants.              :    NO. 04-1338 (***)

 9                                  - - -

10                         Wilmington, Delaware
                     Thursday, January 25, 2007 at 3:02 p.m.
11                          TELEPHONE CONFERENCE

12                                  - - -

13   BEFORE:  HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

14                                  - - -
     APPEARANCES:
15

16        MORRIS NICHOLS ARSHT & TUNNELL
          BY:  THOMAS C. GRIMM, ESQ.
17
                    and
18
          ROBINS KAPLAN MILLER & CIRESI, L.L.P
19        BY:  MATTHEW L. WOODS, ESQ.
               (Minneapolis, Minnesota)
20
                    Counsel on behalf of Honeywell
21                  International, Inc., and Honeywell
                    Intellectual Properties, Inc.
22

23

24
                              Brian P. Gaffigan
25                            Registered Merit Reporter
```

United States District Court - Honorable Mary Pat Thynge

30

   1  was it.  And, believe me, there were fights about what
   2  information should be provided.  This is a motion for
   3  reargument in front of Your Honor which I don't think they
   4  even would have made if we were still in front of Judge
   5  Jordan at this time.
   6          And, again, because we're in the first phase of
   7  this case which deals with invalidity and unenforceability
   8  issues, some of the discovery that they are talking about
   9  that they would want from the stayed customer defendants
  10  may never be needed.  And this is not the time to change
  11  direction in a case where we're already asking to extend
  12  the schedule so that we can burden stayed parties with
  13  discovery that may never be needed.
  14          MR. HALKOWSKI:  And, Your Honor, this is Tom
  15  Halkowski.  One other point on behalf of the stayed
  16  defendants is that this entire proceeding was set out for
  17  the first phase to address validity and enforceability, so
  18  the entire discussion that we have heard initially from
  19  Mr. Woods seems to be rather beside the point.  We're
  20  focused on in the first phase that is going to address
  21  validity, enforceability; and as Rich rightly points out,
  22  we may never even get there in terms of the other issues of
  23  infringement and/or damages.  Thank you.
  24          MS. HUNSAKER:  Your Honor, this is Kelly
  25  Hunsaker on behalf of Apple.  With the Court's permission,

31

   1  I'd like to address the question regarding whether Judge
   2  Jordan had looked at the indirect infringement issue before.
   3          THE COURT:  Yes.  Go ahead, Kelly.
   4          MS. HUNSAKER:  In the May 16th, 2005 hearing
   5  on the customer defendants motions to stay in which Judge
   6  Jordan was addressing in the first instance how this case
   7  was going to be structured, Honeywell's counsel, Mr. Lueck,
   8  beginning at page 19 of the transcript, did direct the issue
   9  of extraterritorial sales directly and raised an issue with
  10  the Court that most of these modules were sold outside the
  11  United States with the end product being the products that
  12  are sold in the United States.
  13          In the context of that hearing, Judge Jordan did
  14  address it and his question back to Mr. Lueck was whether in
  15  fact the proof of infringement relied on the LCD modules
  16  themselves, and it's this information that Judge Jordan
  17  believed was what the manufacturer defendants would have in
  18  their possession rather than the customers, and he asked
  19  Mr. Lueck if the infringement showing depended on how that
  20  product was incorporated to the end products that were sold
  21  in the United States, and Mr. Lueck said no.
  22          That part of the discussion goes from page 19 to
  23  page 21 of the transcript.  And it was after that discussion
  24  that Judge Jordan believed that the way he structured the
  25  case was the appropriate way to structure it in the first

32

   1  instance.  Ultimately, the extraterritorial nature of the
   2  sales goes to damages.
   3          THE COURT:  Again, I'm going to ask, I've got a
   4  horrible buzzing that is making it very difficult to hear
   5  some people so I don't know what is happening.  It could be
   6  my line, I don't know, but I don't know what is happening
   7  with the line.
   8          (Pause.)
   9          THE COURT:  Okay.  I've had a chance to look
  10  this over and at this point, I'm not inclined to necessarily
  11  change the format that this case is proceeding.  If it's
  12  working towards invalidity and unenforceability, then the
  13  issues of whether or not the manufacturing defendants
  14  infringe directly or indirectly -- directly is probably
  15  going to be much easier but indirectly does not bring the
  16  customer defendants into the issues.  It's whether or not
  17  the patents are going to survive, and depending I guess
  18  upon the outcome of that aspect of it will lead us into
  19  whether the issue of direct or indirect infringement becomes
  20  important.  If it should, then it makes all the sense in
  21  the world to me that the customer defendants, if not fully
  22  participate, at least partially participate in the issues;
  23  specifically, the issue dealing with indirect infringement.
  24          The read that I got was that Judge Jordan was
  25  going to be trying this case with one or more or maybe

33

   1  individual trials for the manufacturers, at least that is
   2  what he was thinking about.  He had not made a decision on
   3  how the case was going to be tried, who was necessarily
   4  going to be at each trial.  And I looked over what his order
   5  indicated, a previous order in May and then his subsequent
   6  order later on in 2005, about how little the case had moved
   7  forward, and it seemed to me a couple things:
   8          One, that he never determined or limited what
   9  type of discovery would be allowed later on, depending upon
  10  what the status of this case was through the first process.
  11  He never said that Honeywell's identification of products
  12  was necessarily all that there was because this is a
  13  continuing process to some extent.
  14          So I think that if we're looking at this case
  15  from the standpoint of whether this patent can survive the
  16  arguments of invalidity or unenforceability, then I don't
  17  see how the issue of infringement, whether it's direct or
  18  indirect, is that pertinent, at least in the first stages.
  19  It may be later on but not right now.
  20          Now, when this trial was planned to have in this
  21  order, was it going to include infringement, direct or
  22  indirect?
  23          MR. WOODS:  It's Matt Woods.  It was our
  24  understanding that the first trial would be limited to
  25  the issues of validity and enforceability.

# EXHIBIT D

## FULLY REDACTED

# EXHIBIT E

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7080
TEL: 617-267-2300  FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

ALAN E. MCKENNA
617-859-2719

July 11, 2008

**VIA E-MAIL**

COUNSEL (per attached list)

    Re:    Honeywell International Inc., et al v. Apple Computer, Inc., et al.
            Court File No. C.A. No. 04-1338-KAJ (consolidated)
            Our File No.: 019896.0229

Dear Counsel:

      Pursuant to Special Master Poppiti's instructions during the June 23, 2008 telephone conference, we have now conducted initial meet and confer conferences with each of you. We are scheduled to conduct a global meet and confer on July 15th. We propose having the call at 3:00 p.m. Eastern. If that time poses a problem for anyone, please let us know so that we can work together for a suitable time during the afternoon of July 15.

      In advance of the global meet and confer next week, we thought it might be helpful to further enlighten the group as a whole as to where the issues stand, in the hopes that our call on July 15th can be as productive as possible. Honeywell remains willing to work with you to find an efficient and amicable resolution to the issues before Special Master Poppiti, but expects the customer defendants to meaningfully participate in this process, especially since they are the ones who raised this issue and they are the ones who are seeking relief.

      Now that we have conducted meet and confer conferences, you are all aware of Honeywell's position with respect to a timely and orderly resolution of the issues facing the Special Master regarding the customer defendants' attempts to be dismissed from this matter. As you all know, the issues before the Special Master arose as a result of the customer defendants' request to be dismissed from this action based on the '371 licenses entered to date. For the reasons set forth in prior correspondence, and as preliminarily discussed with Judge Farnan on April 2, 2008, it remains Honeywell's position that more is required than simply pointing to an existing license agreement. In fact, during the April 2, 2008 Status Conference, Judge Farnan made it clear that Honeywell would be entitled to limited discovery to assist in determining whether a particular customer defendant is covered by a particular license. To avoid the cost and

Counsel
July 11, 2008
Page 2

expense of formal discovery, Honeywell has been willing to work with each of your clients to develop an informal way to resolve these issues. To that end, Honeywell has provided each of you with a proposal aimed at resolving the issues through the use of sworn declarations from your clients and the relevant LCD module manufacturers.

     Specifically, Honeywell has proposed obtaining a declaration from your individual clients that would cover two issues. First, it would authenticate the original disclosures made regarding the LCD modules at issue. Rather than rely upon letters from outside counsel, Honeywell needs to confirm the authenticity of the disclosures made by your clients and the manner in which the search for relevant LCD modules was conducted. To date, only one or two of you have raised any real concern with this portion of Honeywell's proposal.

     Second, this declaration would confirm that your client does not use/purchase accused modules from Samsung SDI or Optrex, two module manufacturers that remain in the case and are not licensed under the '371 patent. Honeywell is willing to accept either a declaration that your client has not purchased any modules from either entity, or a declaration that your client has not purchased any of the specifically-accused modules from either entity. As we have explained, that choice is up to you and your client. These entities have designated the alphanumeric module identifiers as highly confidential in this matter. Honeywell is currently working to be able to provide such lists to you, but does not yet have that permission from Samsung SDI or Optrex. Again, aside from questions as to logistics, only one or two of you has expressed concern with providing such a declaration. With respect to logistics, Honeywell would propose that this portion of the declaration cover the period from January 18, 1994 (date of issuance of the '371 patent) forward.

     Lastly, based on the issues in the various license agreements as we have discussed and as addressed in Matt Woods' May 13, 2008 letter, Honeywell has proposed that the customer defendants obtain a declaration from the relevant module manufacturer(s) that would provide the linkage between a given customer defendant and the license granted. Since it is the customer defendants' motion to dismiss at issue (*i.e.*, their burden), and since Honeywell does not have the information necessary to make such a linkage, it is the customer defendants' burden to obtain such linkage. As we have repeatedly stated, Honeywell is willing to participate in the process of obtaining such declarations in order to ensure that the efforts are directed to Honeywell's concerns, but the nature of the issue, as well as the customer defendants' ongoing business relationship with the manufacturers, make it more reasonable and efficient for the customer defendants to take the lead. I note in this regard that many of the agreements at issue envision that if a customer wants to be dismissed from a case, the licensee must first demonstrate to Honeywell by written documentation that the license covers the sales to the customers in question.

     With respect to the particulars of this declaration from the LCD manufacturer, by way of example and as we have discussed with many of you, it is Honeywell's position that this

35208637.3

Counsel
July 11, 2008
Page 3

declaration must include, at a minimum, statements showing that the customer defendant is covered by the various provisions that form the license grant (*e.g.*, date restrictions, limitations in Definitions Sections, monetary limits/sales caps). These issues are especially relevant given the foreign nature of the sales at issue and the customer defendants' claim of exhaustion.

So far, the response has been mixed on this issue.[1] Some of you have explained that your clients have already made contact with their licensed supplier and done the "due diligence" required to obtain such confirmation. For that group, Honeywell needs to confirm the type of the information you have obtained in the form of a sworn declaration from the module manufacturer. Other customer defendants have not flat out rejected this idea but have been unwilling to adopt it as of yet and/or indicated you needed to discuss it with your clients. A minority in the group has expressed objection to this concept as a whole.

Aside from raising potential questions and objections to Honeywell's proposal, at this time no customer defendant has proposed alternate positive steps to verify/document in a meaningful way that they are covered by the licenses. Since the issues before Special Master Poppiti relate to the customer defendants' attempts to be dismissed from this action – and since it is their burden – we expect to hear any counter-proposals the customer defendants may have during the July 15th call.

Many of you have indicated you would raise the issues we have discussed with your clients and report back to us. If anyone wishes to do so in advance of the call on July 15th, please let us know. Otherwise, we hope that next Tuesday we can further the discussion regarding Honeywell's proposal and reach the point where we are able to make a joint proposal to the Special Master for the orderly resolution of the customer defendant's attempts to be dismissed from this matter.

Again, please inform us if 3:00 p.m. Eastern on July 15th poses a problem. If we do not hear any objection to that time, we will circulate call-in information by e-mail no later than close of business on Monday.

---

[1] We recognize that not every customer defendant falls into the same category in this regard due to individual issues with particular license agreements (*i.e.*, since not all of the license agreements are identical and have the same covered products definitions, sales cap, etc. Honeywell acknowledges that such a declaration may not be required from a select few licensed end manufacturers.). Honeywell will, of course, continue to address these individualized issues on a customer defendant by customer defendant basis as we have done during the meet and confer process.

Counsel
July 11, 2008
Page 4

In the meantime, if anyone has any questions, please do not hesitate to contact me or Daniel White of our office.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Alan E. McKenna

cc: Thomas C. Grimm, Esq.
Matthew L. Woods, Esq.
Anthony A. Froio, Esq.
Stacie E. Oberts, Esq.
Daniel M. White, Esq.

35208637.3

Counsel
July 11, 2008
Page 5

## Apple Computer Inc.

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
PO Box 1114
Wilmington, DE 19899-1114
Office: (302) 652-5070
Fax: (302) 652-0607

## Audiovox Communications

D. Joseph English
Duane Morris LLP
505 9th Street N.W.
Suite 1000
Washington, DC  2004-2166
Office:  (202) 776-7800
Fax:  (202) 776-7801

## Dell

Roderick B. Williams
Vinson & Elkins
The Terrace 7, Suite 100
2801 Via Fortuna
Austin, TX 78746-7568
Office: (512) 542-8400
Fax: (512) 236-3218

## Eastman Kodak

Neal Slifkin
Harris Beach LLP
99 Garnsey Road
Pittsford, NY 14534
Office: (585) 419-8800
Fax: (585) 419-8801

## Hartford Computer Group, Inc. (Argus)

35208637.3

Counsel
July 11, 2008
Page 6


Brian D. Roche
Reed Smith, LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Home Address:
Office: (312) 207-1000
Fax: (312) 207-6400

## Navman

Brad P. Lyerla
Marshall, Gerstein & Borun LLP
233 W. Wacker Dr.
6300 Sears Tower
Chicago, IL 60606-6357
Office: (312) 474-6300
Fax: (312) 474-0448

## Nikon Corp. and Nikon Inc.

Barry W. Graham
Finnegan, Henderson, Farabow, Garrett
& Dunner, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
Office: (202) 408-4000
Direct: (202) 408-4017
Fax: (202) 408-4400

## Olympus Corp. and Olympus America Inc.

Richard M. Rosati
Kenyon & Kenyon
One Broadway
New York, NY 10004-1050
Office: (212) 425-7200
Fax: (212) 425-5288

## Pentax (now Hoya)

Counsel
July 11, 2008
Page 7

Michael J. Fink
Greenblum & Bernstein, P.L.C.
1950 Roland Clarke Place
Reston, VA 20191-1411
Office: (703) 716-1191
Fax: (703) 716-1180

## Sony

Robert Hails
Kenyon & Kenyon
1500 K Street, NW
Washington, DC 20005-1257
Office: (202) 220-4200
Fax: (202) 220-4201

## Sony Ericcson Mobile Communications AB and Sony Ericcson Mobile Communications USA Inc.

Francis DiGiovanni
Conolly Bove Lodge & Hutz LLP
The Nemours Building -8th Floor
1007 North Orange Street
PO Box 2207
Wilmington, DE 19899-2207
Office: (302) 658-9141
Fax: (302) 658-5614

35208637.3