# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Thomas L. Halkowski
302 778-8407

Email
halkowski@fr.com

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
MUNICH
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

July 25, 2008

**REDACTED**

<u>VIA E-MAIL AND HAND</u>
Judge Vincent Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

**HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS EYES ONLY**

**PUBLIC VERSION**

**DATED: 8/5/08**

Re: *Honeywell Int'l Inc., et al. v. Apple Computer, Inc., et al.*
USDC-D. Del., C.A. No. 04-1338 KAJ (Consolidated)

Dear Judge Poppiti:

This letter is in response to Honeywell's letter dated July 18th (D.I. 1085) and is in further support of Apple's motion seeking dismissal from this suit. Simply put, all of the modules used in Apple's Accused Products are provided by suppliers who have been licensed by Honeywell and, to the extent any of those suppliers were ever defendants in

*See, e.g.,* Exh. Q.

. If Honeywell had any concrete basis for asserting that the modules used by Apple exceeded any limitation of Honeywell's licenses with the relevant module suppliers, Honeywell would have continued to pursue its claims against the suppliers of such modules. Given these circumstances, Honeywell is unable to establish a genuine issue of material fact regarding—much less identify a non-frivolous basis in support of—its infringement claims against Apple. Accordingly, the claims against Apple should be dismissed pursuant to Fed. R. Civ. Pro. 56.

1. **SCOPE OF HONEYWELL'S LAWSUIT**

Disregarding explicit and repeated rulings by this Court, Honeywell's latest submission to the Court demands that Apple conduct a survey of all of its products —even products that have ***never*** been accused of infringing the asserted patent-in-suit — so that Honeywell can attempt to discover other possibly infringing devices that use LCD modules supplied by Optrex or Samsung SDI. Honeywell's open-ended approach to this case ignores repeated rulings by Judge Jordan whereby the Court firmly — and repeatedly — established that Honeywell bears the burden of identifying the specific Accused Products, in order to establish the scope of their suit. Judge Jordan stated, for example:

> I said in the order that I put out last May that ***Honeywell was required to specifically identify accused products***. And that's what I meant.
>
> But what you are not entitled to do is say you manufacture 15 different kinds of cell phones. We tore down three. Tell us about your other 12. Because I agree with the defendants that now you are doing is you are telling manufacturers, you know what? You got one or two things that are bad. ***We want to you do an***

FISH & RICHARDSON P.C.

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS EYES ONLY

Judge Vincent Poppiti
July 25, 2008
Page 2

> *analysis of everything you make* and tell us whether you are guilty on those fronts, too; and *that is not what the law requires*, and it's not what I'm going to require them to do.

Memorandum Order, dated October 7, 2005 (D.I. 237) (attached as Exh. K) (emphasis added).

> THE COURT: I guess I'm trying to pull from you where you think this is linked to my instructions to you folks that you had an obligation to tell people, look, this is your product. We think it infringes. Here is why. You know, we're accusing you of infringing. We've got something that we believe infringes. That ought to be the baseline. Everybody should have understood that from what I've said to people repeatedly.
>
> MR. WOODS: Correct.
>
> THE COURT: Now, they are saying you unmoored your discovery from that foundation .... I'm trying to get you to explain to me how it is you are rooted in that foundation, because that is the foundational principle from which I am operating.
>
> \*            \*            \*
>
> THE COURT: ... Honeywell, if you want to sue people, fine, sue them. But have in mind exactly what it is you're accusing them of doing. And that means if you say they've produced an accused device, you need to have some basis for saying they have an accused device and ask them, okay, tell us about this accused device. *You can't say to them, look across your product line and tell us everything that meets our claim language.*
>
> \*            \*            \*
>
> THE COURT: ... We have been over this now. This is at least the third time I have taken a crack at this. And I've done it in print and I've done it orally and I just don't need more paper on it. ... So let's move forward with the case you've got.

Transcript of July 21, 2006 Proceedings, at pp. 16-17, 20 and 21 (D.I. 506) (excerpts attached as Exh. L.) (emphasis added).

As Judge Jordan recognized, the identification of specific Accused Products serves as the mooring for this suit. Doing so prevents Honeywell from casting about for information concerning Apple's entire product line. Such fishing expeditions impose undue burdens on Apple and are—not surprisingly—prohibited under both the federal rules of discovery and specific rulings made in this case. While it may be convenient for Honeywell to have Apple—and all the other Affected Defendants—conduct company-wide surveys of all their product offerings, nothing entitles Honeywell to such all-encompassing discovery.

F ISH & R ICHARDSON P.C.                                   **HIGHLY CONFIDENTIAL**
                                                           **OUTSIDE ATTORNEYS EYES ONLY**

Judge Vincent Poppiti
July 25, 2008
Page 3

The scope of this case is defined by the Accused Products that have been properly identified by Honeywell. For Apple, those products are certain versions of its laptop computers. *See* Apple's July 18, 2007 Letter to Judge Poppiti (D.I. 1086) (hereinafter "Letter," attached as Exh. F). Moreover, in the nearly three years *since* Judge Jordan's deadline for identifying accused products, Honeywell has never, as it puts it, identified any additional "hits" of allegedly infringing Apple products.

As demonstrated below, Apple has made a prima facie showing that the modules used in all of the Apple Accused Products have been licensed by Honeywell, and Honeywell has been unable to identify any genuine issue of material fact to the contrary—much less a non-frivolous basis for continuing to pursue its infringement claims against Apple's accused laptop computers.

### 2.   BURDEN OF PROOF

Honeywell states that Apple bears the burden of establishing the affirmative defense that the modules being used have been duly licensed. Even assuming, *arguendo*, that Apple bore the burden of establishing the existence of licenses between its suppliers and Honeywell, now that this burden has been met by Apple, Honeywell would be required to present facts to the contrary to avoid summary judgment. Specifically, Honeywell—particularly in its position as the licensor—would have to present concrete evidence supporting its claim that Apple is liable for infringement if the case can be made that the scope of Honeywell's licenses to Apple's suppliers had somehow been exceeded.

Here, Apple has amply supported its motion for dismissal with undisputed proof:

> (i) identifying all of the LCD modules used in all of the Apple products accused of infringement, including identification of all of the suppliers who provided the relevant LCD modules;[1]
>
> (ii) that each and every one of Apple's suppliers obtained a license from Honeywell (*see* Letter at Exhs. A-I);[2] and

---

[1] This information was provided to Honeywell years ago. (*See* Ex. M.) Recently, an updated list was provided to Honeywell. (*See* Letter at Ex. F.) Attached hereto, as Ex. N and O, are declarations from knowledgeable Apple employees confirming the accuracy of the updated list.

[2] For the convenience of the Court, attached hereto is a list summarizing the key provisions in each of the licenses to Apple's suppliers. *See* Exh. Q. However, unless Honeywell identifies a concrete basis for disputing the coverage of the licenses, no further review of the licenses' terms is necessary—especially given Apple's *prima facie* showing that Honeywell has licensed all of the suppliers who provide LCD modules for Apple's Accused Products and considering the fact that Honeywell has dismissed its infringement claims against all those suppliers who were ever a part of this case.

FISH & RICHARDSON P.C.

**HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS EYES ONLY**

Judge Vincent Poppiti
July 25, 2008
Page 4

> (iii) that *all* of Apple's LCD module suppliers for its Accused Products who were ever defendants in this case have been dismissed from this suit, since Honeywell's claims of infringement against the LCD modules provided by those suppliers have been resolved. See Exh. P at Ex. C (*see also* D.I. 381, 568, and 601).

Pursuant to basic principles governing summary judgment motions, Honeywell now bears the burden of coming forward with specific evidence establishing a genuine issue of material fact, given Apple's showing that all of the modules it uses in the Accused Products have been licensed by Honeywell. *See Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (finding that where the moving party presents proof supporting a judgment in its favor, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2729.1 (3d.1998).

Indeed, the Second Circuit has addressed the nature of the burdens of proof born by litigants in an analogous case involving whether certain licenses provided a defense to claims of copyright infringement. The Court first noted that possession of a license by an accused infringer has been traditionally viewed as an affirmative defense requiring the accused infringer to come forward with evidence of a license. *See Bourne v. Walt Disney Co.*, 68 F.3d 621 (2nd Cir. 1995). The Court then observed that "the only dispute here is the scope of the licenses, not their existence," and affirmed the district court's instruction regarding burdens of proof, ruling:

> [I]n cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir.1989) ("To prevail on its claim of copyright infringement, [the copyright owner] must prove ... 'copying' of protectible expression by [the accused infringer] beyond the scope of [the] license."); *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F.Supp. 208, 210 (E.D.N.Y.1994); *see also NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 n. 5 (7th Cir. [1995]), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities. Just as in an ordinary contract action, the party claiming a breach carries the burden of persuasion. *See Gordon v. Leonetti*, 324 F.2d 491, 492 (2d Cir.1963).

*Bourne*, 68 F.3d at 631. Similarly, here, Honeywell must rebut — if it can — the prima facie case presented by Apple concerning the existence of relevant licenses. Specifically, Honeywell bears the burden of identifying particular facts to support its generalized

FISH & RICHARDSON P.C.

**HIGHLY CONFIDENTIAL**
**OUTSIDE ATTORNEYS EYES ONLY**

Judge Vincent Poppiti
July 25, 2008
Page 5

**REDACTED**

concern that Apple's use of LCD modules in the Accused Products may not be covered under the licenses granted by Honeywell to Apple's suppliers.

Because Honeywell has already obtained payment for the modules being used by Apple and has dismissed all of Apple's suppliers that were previously sued in this action (i.e., the companies who actually manufacture the allegedly infringing LCD module), it is difficult to imagine how Honeywell could possibly show that a downstream purchaser of those same modules is nonetheless engaging in an unauthorized use of the patent-in-suit and should have to give Honeywell a second payment for use of the LCD modules. Not surprisingly, Honeywell has yet to identify *any* genuine issue of material fact regarding Apple's position that all of the LCD modules used in the Accused Products have been purchased from suppliers licensed by Honeywell to sell such modules.[3] Thus, whatever the motive for Honeywell's refusal to promptly dismiss Apple—despite having already dismissed the all of Apple's LCD module suppliers—Apple respectfully requests dismissal from this suit now.

Respectfully,

*Thomas L. Halkowski*

Thomas L. Halkowski

cc   Clerk of Court (via hand)
     Counsel of Record (via ECF)

---

[3] Indeed, to date, Honeywell has merely proffered vague concerns regarding potential limitations on the scope of the licenses and injected a new and irrelevant arguments based on the doctrine of exhaustion. Among the potential concerns identified by Honeywell is that its patent rights may not be "exhausted" if sales to customers occurred outside, or were not directed to, the United States. This theory—raised for the first time by Honeywell's July 18th letter – lacks merit. Apple has never sought dismissal of this case based on a theory that Honeywell's patent rights were "exhausted" under the scope of US patent law. Rather, Apple has sought dismissal based on the fact that the licenses granted by Honeywell, as a matter of contract law,

*See, e.g.,* Exh. Q. Exhaustion concerns the scope of the United States patent monopoly, not contractual rights. Here, we are dealing solely with a contractual analysis, i.e.

Thus, Honeywell's entire discussion of the *Fuji Photo* case, and whether or not sales to licensed suppliers outside the United States implicate the doctrines of exhaustion and first sale is inapplicable. Moreover, Honeywell's complaints concerning exhaustion, like all of Honeywell's general concerns, fail to cite any concrete factual basis for disputing Apple's use of LCD modules obtained from suppliers who have all been licensed and/or dismissed from this suit.