

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140    Direct Phone
(302) 658-1192    Fax

August 7, 2008

### PUBLIC VERSION – August 8, 2008

### BY E-FILE, HAND DELIVERY AND E-MAIL

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

      Re:    Honeywell Int'l Inc., et al. v. Apple Computer, Inc., et al.
              D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536 (consolidated)

Dear Special Master Poppiti:

      We write on behalf of Defendants FUJIFILM Corporation and FUJIFILM U.S.A., Inc. (collectively "Fuji"), two of the Manufacturer Defendants, to respond to Honeywell's letter of August 5, 2008 (annexed as Ex. A without a copy of the DSU case), in which it seeks to have Your Honor go beyond the scope of the issues currently being considered, namely the potential dismissal of certain Customer Defendants and the appropriateness of discovery of those Customer Defendants requested by Honeywell and claimed to be relevant to that issue. By its August 5, 2008 letter, Honeywell appears to be seeking a dramatic restructuring of the case and discovery of the Customer Defendants on "commercial success." "Commercial success" relates solely to patent validity and is no justification for additional discovery, restructuring the case or precluding dismissal of the Customer Defendants, especially after the close of discovery in the remaining Manufacturer Defendants' case on January 31, 2008 without any effort on Honeywell's part to seek relief from Judge Farnan on discovery of the Customer Defendants on this issue. As previously demonstrated in pleadings Honeywell chose not to provide Your Honor, discovery of the Customer Defendants on commercial success is unlikely to lead to admissible evidence and would be unduly burdensome to the Manufacturer Defendants, who would need to participate in such discovery.

      The first letter (January 24, 2007) annexed by Honeywell (as Exhibit 1) sought a total restructuring of the case (i.e., a first trial against the Customer Defendants) and was rejected out of hand by Magistrate Judge Thygne. The only discovery sought by that letter related to infringement inducement (the subject of DSU Medical Corp. v. JMS Co., 471 F. 3d 1293, 1304-07 (Fed. Cir. 2006)), not commercial success. The second letter (March 2, 2007) (annexed by

The Honorable Vincent J. Poppiti
August 7, 2008
Page 2

Honeywell as Exhibit 2) is one of three pleadings at the request of Magistrate Judge Thygne directed to the commercial success discovery issue (DI 724 (Ex. 2 to Ex. A), 732 (for Customer Defendants-copy annexed as Ex. B) and 733 (for Manufacturing Defendants-copy annexed without exhibits as Ex. C)). It is telling that Magistrate Judge Thygne let discovery come to an end without ordering the requested discovery. In any event, the issues raised in Honeywell's August 5 letter, which was served at the eleventh hour (after 4pm on Tuesday, August 5, 2008) in connection with a matter on which Your Honor was to rule on August 8, 2008, should not be considered without all parties being given an opportunity to be heard on the issues raised.

Judge Farnan's August 1, 2008 oral order referring a different question to Your Honor cannot and should not be used to expand the scope of the issue to be decided on August 8. The discovery of the Customer Defendants sought by Honeywell in its August 5 letter is relevant, if at all, only to the issues to be tried by the remaining Manufacturer Defendants, namely the validity and enforceability of the '371 patent.

In 2005, Judge Jordan ruled that Honeywell must promptly identify accused products and limited discovery to such "Accused Products". (See D.I. 202 (May 18, 2005 Order) at p. 9 and n. 5; September 9, 2005 Hearing Tr. at pp. 27-29; D.I. 237 (October 7, 2005 Order) at pp. 4 (n. 2), 5). Honeywell now seeks to ignore that ruling, seeking discovery of all Customer Defendant products that use an accused LCD module. (See Ex. A (August 5, 2008 letter) at 2). As argued by the Customer Defendants before Your Honor, Honeywell's alleged need (which in fact does not exist) for discovery regarding commercial success cannot broaden Judge Jordan's long-standing order limiting the case to products accused of infringement by Honeywell pursuant to its Fed. R. Civ. P. Rule 11 obligation to put defendants on notice as to exactly what is at issue.

Honeywell relies on Judge Farnan's mention of the issue during the April 2 status conference as supporting its position. (Ex. A (August 5, 2008 letter) at 2). To the contrary, Judge Farnan rejected the position now presented by Honeywell:

> MR. GRIMM [FOR HONEYWELL]: The issue that I want to raise, your Honor, now that they [the Customer Defendants] are parties in the case, it's one thing to ask for discovery from them to establish commercial success and other indicia of non-obviousness. It's another thing to have them potentially dismissed from the case and we have to have third party discovery to establish those.
>
> THE COURT: If you don't agree on some mechanism **to get that discovery post their dismissal,** then you'll come to me and I will talk with them and see what we can work out . . . . I'll take that up later, either from you or from them.

Judge Farnan did not tie commercial success discovery to the status of the Customer Defendants or refer it to Your Honor; instead, he acknowledged commercial success discovery could be obtained following their dismissal if necessary or appropriate.

The Honorable Vincent J. Poppiti
August 7, 2008
Page 3

The history of this case establishes the separateness of the commercial success issue from the issues Your Honor is deciding. In the January 18, 2007 Order (D.I. 688), issued after Judge Jordan's elevation to the Third Circuit and the assignment of the case to her, the Magistrate Judge requested the parties' input on strategies for the efficient handling of the case within the scope of Judge Jordan's prior Orders. Notably, Honeywell first argued for a radical restructuring of the case (with the first trials against the Customer Defendants). See Honeywell's January 24, 2007 letter at 3 (Ex. 1 to Ex. A)). When that was rejected by Magistrate Judge Thynge, Honeywell narrowed the scope of its demands to seek discovery of the Customer Defendants related to commercial success of products such as cameras, phones, PDA's and laptops incorporating "Accused Modules." (D.I. 718 (February 22, 2007 Hearing Tr.) at 11; Honeywell March, 2, 2007 letter (Ex. 2 of Ex. A) at 7; see also id. at 8). The time for identifying new "Accused Modules" has long since passed. It is worth noting that in note 2 at page 3 of Honeywell's January 24, 2007 letter (Ex. 1 of Ex. A), Honeywell offered to "work with the Customer Defendants to ensure that further proceedings reflect the scope of those settlements [now relied on by the Customer Defendants]," an offer cast aside by Honeywell. However, Judge Thygne viewed restructuring the case and commercial success discovery as separate issues: after two hearings (January 25 and February 22, 2007) (D.I. 700, 718), she declined to deviate from Judge Jordan's Scheduling Order (D.I. 202), instead offering to consider the discrete issue of discovery regarding commercial success. (See Ex. 2 to Ex. A and Exs. B and C).

Indeed, recognizing that Magistrate Judge Thygne was not deviating from Judge Jordan's scheduling order, Honeywell chose to address only the issue of commercial success discovery in the second hearing. Following the January 25, 2007 hearing, Honeywell and the Customer Defendants exchanged letters addressing solely the issue of commercial success discovery. (See Woods February 14, 2007 letter (annexed as Ex. D); Horowitz February 21, 2007 letter (annexed as Ex. E). The issue at the February 22, 2007 hearing was "whether or not Honeywell should be entitled to get some . . . limited discovery from the customer defendants with regard to the issue of commercial success. We know from Judge Jordan's original order; and, Your Honor, you confirmed that as well; that the current scheduling order is going to say the first trial [against the remaining Manufacturing Defendants) will be on validity." (D.I. 718 (February 22, 2007 Hearing Tr.) at 11). The only change to Judge Jordan's Scheduling Order was to extend the deadlines.

As set forth more fully in the Manufacturer Defendants' and Customer Defendants' March 12, 2007 filings (Exs. B and C), Honeywell has no legal basis for taking additional discovery on the issue of commercial success. Briefly, Honeywell cannot establish the required "*nexus*" to rely on commercial success and any discovery will not lead to admissible evidence. Honeywell has argued that the patent provides for a brighter display and longer battery life; however, these benefits are provided by prior art structures, coverage of which Honeywell relinquished. (See Ex. C at 2-5) Honeywell also cannot establish that the sales of the end products are attributable to the claimed characteristics of the LCD module, as opposed to other characteristics of the module or the characteristics of the of the entire product as a whole. (See Ex. C at 5-7).

The Honorable Vincent J. Poppiti
August 7, 2008
Page 4

Furthermore, the Customer Defendants have little or no information pertaining to the structure of the LCD modules incorporated in their products and cannot explain why certain design choices were made. (See, e.g., D.I. 732; 718 (February 22, 2007 Tr. at) 17-19). This was one of the reasons Judge Jordan stayed the Customer Defendants in the first place. Additional discovery of the Customer Defendants under the guise of establishing commercial success is a mere fishing expedition calculated to unduly burden both Customer and Manufacturer Defendants.

Contrary to Honeywell's characterization of Judge Farnan's Oral Order of August 1, 2008, the issue of commercial success is not a "newly referred issue." Discovery regarding commercial success is unjustified and is unrelated to the Honeywell discovery requests in which Your Honor is set to decide by August 8 and unrelated to the status of the Customer Defendants.

Fuji concurs in the view expressed by Optrex in a letter from Karen Pascale, Esq. filed today, that a grant of Honeywell's application to take commercial success discovery of the Customer Defendants will require additional discovery of at least Honeywell, but adds that it may also necessitate discovery by the Manufacturer Defendants of the Customer Defendants to explore the relative commercial success of products including Accused Modules and those which do not. This is just another reason that the requested commercial success discovery should not be granted.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/877573
cc:    All Counsel of Record – by E-mail
Public Version:  August 8, 2008

# Exhibit A

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS C. GRIMM
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

August 5, 2008

**BY E-FILING, E-MAIL**
**& HAND DELIVERY**

**DM2**

The Honorable Vincent J. Poppiti
Blank Rome, LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

> Re: *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
> C.A. No. 04-1338-JJF (Consolidated)

Dear Judge Poppiti:

I am writing in light of Judge Farnan's Oral Order from Friday referring essentially all pending case management issues to Your Honor. Honeywell is mindful that such issues should be taken up in an organized manner, and, therefore, wishes to bring one newly referred issue to Your Honor's immediate attention because it is related to the "Accused Products" discovery that Your Honor is set to decide by this Friday, August 8.

In particular, there is a potential convergence between this pending issue concerning Accused Products, which was discussed last Wednesday, and how it relates to Honeywell's current infringement charge against the Accused Modules manufactured by Optrex and Samsung SDI ("SDI") that will be set for trial first. Honeywell submits that this issue must be addressed in a consistent and fair manner as between these two classes of defendants.

As Honeywell has explained, it has expressly identified and accused of infringement certain modules manufactured by Optrex and SDI. In response, Optrex and SDI have challenged the validity of the '371 patent, claiming that it is obvious under § 103 of the patent statute. Under established precedent, including the Supreme Court's recent *KSR* decision, one factor relevant to this inquiry is the commercial success of products using the claimed invention. Optrex and SDI are contesting Honeywell's contention that products using the invention have achieved the requisite commercial success. This litigation position prompted Honeywell to seek discovery from the stayed Customer Defendants to explore the factual

The Honorable Vincent J. Poppiti
August 5, 2008
Page 2

underpinnings relevant to this issue (D.I. Nos. 693 and 724, attached as Exhibits 1 and 2).[1] Honeywell filed this motion in early 2007; it was considered by Judge Thynge, but it was not decided.

During the status conference held by Judge Farnan on April 2, I raised the pendency of this discovery motion with Judge Farnan, noting that it was related to the issue of the status of the Customer Defendants. Although Judge Farnan did not refer this specific issue to you at the time, he acknowledged that this issue would ultimately have to be addressed:

> MR. GRIMM: The issue that I want to raise, your Honor, now that they [the Customer Defendants] are parties in the case, it's one thing to ask for discovery from them to establish commercial success and other indicia of non-obviousness. It's another thing to have them potentially dismissed from the case and we have to have third party discovery to establish those.

> THE COURT: If you don't agree on some mechanism to get that discovery post their dismissal, then you'll come to me and I will talk with them and see what we can work out. Hopefully, for every limited resources of both your clients and yourselves we're going to get it done.

> I understand your strategy problem. I'll take that up later, either from you or from them.

Honeywell referred to this pending motion in its recent submission to Your Honor, but did not feel it appropriate at the time to seek relief, given the limited scope of the original Order of Reference. Now, however, given Judge Farnan's recent Order, this issue has now been effectively referred to Your Honor and it is ripe for consideration.

Honeywell notes for the record that this issue of commercial success is related in many respects to the one currently under consideration. Regardless of whether Honeywell has identified a specific end product that uses a specifically accused LCD module, the actual use of such modules in Customer Defendants' products bears directly on the disputed issue of commercial success in the United States. It would be prejudicial to deny such relevant information to Honeywell, especially when the Manufacturer Defendants are claiming that the '371 patent is invalid.

Honeywell respectfully calls the relationship between these two issues to Your Honor's attention because, clearly, depending upon how Your Honor resolves the pending issue on August 8, it could have consequences not only as to the procedural status of the Affected

---

[1]    The various Defendants' responses are at D.I. Nos. 691, 694, 695, 732, and 733, which we can provide to Your Honor upon request.

The Honorable Vincent J. Poppiti
August 5, 2008
Page 3


Defendants, but also on the substantive merits of Honeywell's claims against the Manufacturer
Defendants. Accordingly, Honeywell requests that Your Honor consider the prior briefing set
forth in D.I. Nos. 693 and 724 (Exhibits 1 and 2) in evaluating the issues to be decided on
August 8.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm (#1098)


TCG
Enclosures
cc:    Dr. Peter T. Dalleo, Clerk (by e-filing, w/encls.)
       All Counsel of Record (by e-filing and/or e-mail, w/encls)
       (see attached Certificate of Service)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 5, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on August 5, 2008 upon the following parties:

SPECIAL MASTER

Vincent J. Poppiti, Esq.
**poppiti@blankrome.com**

Elizabeth Oestreich
**oestreich@blankrome.com**

Mary Levan
**levan@blankrome.com**

Carrie David
**david-c@blankrome.com**

REPRESENTING HONEYWELL INTERNATIONAL INC.
AND HONEYWELL INTELLECTUAL PROPERTIES INC.

(C.A. 04-1337)

Steven J. Balick
**sbalick@ashby-geddes.com**

John G. Day
**jday@ashby-geddes.com**

Lauren E. Maguire
**lmaguire@ashby-geddes.com**

REPRESENTING AUDIOVOX ELECTRONICS
CORPORATION

(C.A. 04-1337)

William F. Taylor, Jr.
**wtaylor@mccarter.com**

REPRESENTING AUDIOVOX COMMUNICATIONS CORP.

(C.A. 04-1337)

Matt Neiderman
**mneiderman@duanemorris.com**

D. Joseph English
**djenglish@duanemorris.com**

REPRESENTING NIKON CORPORATION
AND NIKON INC.

(C.A. 04-1337)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

William J. Marsden, Jr. (NIKON INC.)
**marsden@fr.com**

Barry W. Graham
**barry.graham@finnegan.com**

Darren M. Jiron
**darren.jiron@finnegan.com**

REPRESENTING NOKIA CORPORATION
AND NOKIA INC.

(C.A. 04-1337)

Thomas L. Halkowski
**halkowski@fr.com**

William J. Marsden, Jr.
**marsden@fr.com**

Lauren A. Degnan
**degnan@fr.com**

Andrew R. Kopsidas
**kopsidas@fr.com**

REPRESENTING SAMSUNG SDI CO., LTD.
(THIRD-PARTY DEFENDANT)

(C.A. 04-1337)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

Alana A. Prills
**alanaprills@paulhastings.com**

Carolyn E. Morris
**carolynmorris@paulhastings.com**

Elizabeth L. Brann
**elizabethbrann@paulhastings.com**

Hamilton Loeb
**hamiltonloeb@paulhastings.com**

Stephen S. Korniczky
**stephenkorniczky@paulhastings.com**

REPRESENTING SANYO ELECTRIC CO., LTD.
AND SANYO NORTH AMERICA

(C.A. 04-1337)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

Michael A. Dorfman
**Michael.dorfman@kattenlaw.com**

Timothy J. Vezeau
**timothy.vezeau@kattenlaw.com**

Richard P. Bauer
**richard.bauer@kattenlaw.com**

REPRESENTING SEIKO EPSON CORPORATION

(C.A. 04-1337)

Robert J. Katzenstein
**rjk@skfdelaware.com**

Robert J. Benson
**rjbenson@hhlaw.com**

REPRESENTING APPLE

(C.A.04-1338)

Thomas L. Halkowski
**halkowski@fr.com**

Kelly C. Hunsaker
**hunsaker@fr.com**

Frank E. Scherkenbach
**scherkenbach@fr.com**

REPRESENTING ARGUS

(C.A.04-1338)

Richard H. Cross, Jr.
**rcross@crosslaw.com**

Amy Evans
**aevans@crosslaw.com**

Brian D. Roche
**broche@reedsmith.com**

REPRESENTING CASIO

(C.A.04-1338)

Thomas L. Halkowski
**halkowski@fr.com**

John T. Johnson
**jjohnson@fr.com**

REPRESENTING CITIZEN WATCH CO., LTD.
AND CITIZEN DISPLAYS CO., LTD.

(C.A.04-1338)

David J. Margules
dmargules@bmf-law.com

Stuart Lubitz
slubitz@hhlaw.com

David H. Ben-Meir
dhben-meir@hhlaw.com

Rose Hickman
rahickman@hhlaw.com

REPRESENTING CONCORD

(C.A.04-1338)

Richard L. Horwitz
rhorwitz@potteranderson.com

David E. Moore
dmoore@potteranderson.com

Scott L. Lampert
by facsimile only:  (954) 989-4103

REPRESENTING DELL

(C.A.04-1338)

Richard L. Horwitz
rhorwitz@potteranderson.com

David E. Moore
dmoore@potteranderson.com

Avelyn M. Ross
aross@velaw.com

Willem G. Schuurman
bschuurman@velaw.com

Roderick B. Williams
rickwilliams@velaw.com

REPRESENTING EASTMAN KODAK

(C.A.04-1338)

Frederick L. Cottrell, III
cottrell@rlf.com

Chad M. Shandler
shandler@rlf.com

Neal Slifkin
nslifkin@harrisbeach.com

Paul J. Yesawich, III
pyesawich@harrisbeach.com

Laura W. Smalley
lsmalley@harrisbeach.com

REPRESENTING FUJIFILM CORPORATION
AND FUJIFILM U.S.A., INC.

(C.A.04-1338)

Philip A. Rovner
provner@potteranderson.com

Angie M. Hankins
ahankins@stroock.com

Matthew W. Siegal
msiegal@stroock.com

Lawrence Rosenthal
lrosenthal@stroock.com

REPRESENTING FUJITSU

(C.A.04-1338)

Richard L. Horwitz
rhorwitz@potteranderson.com

David E. Moore
dmoore@potteranderson.com

Parker H. Bagley
pbagley@milbank.com

Christopher E. Chalsen
cchalsen@milbank.com

Christopher J. Gaspar
cgaspar@milbank.com

| | |
|---|---|
| REPRESENTING HOYA (FORMERLY PENTAX)<br><br>(C.A.04-1338) | Adam W. Poff<br>**apoff@ycst.com**<br><br>Michael J. Fink<br>**mfink@gbpatent.com**<br><br>Neil F. Greenblum<br>**ngreenblum@gbpatent.com**<br><br>P. Branko Pejic<br>**bpejic@bgpatent.com** |
| REPRESENTING INNOLUX DISPLAY CORPORATION<br><br>(C.A.04-1338) | Matt Neiderman<br>**mneiderman@duanemorris.com**<br><br>Donald R. McPhail<br>**drmcphail@duanemorris.com** |
| REPRESENTING KYOCERA<br><br>(C.A.04-1338) | Robert J. Katzenstein<br>**rjk@skfdelaware.com**<br><br>Robert K. Beste, III<br>**rkb@skfdelaware.com**<br><br>Stuart Lubitz<br>**slubitz@hhlaw.com**<br><br>David H. Ben-Meir<br>**dhben-meir@hhlaw.com**<br><br>Rose Hickman<br>**rahickman@hhlaw.com** |
| REPRESENTING MEI/MEC (MATSUSHITA)<br><br>(C.A.04-1338) | William J. Wade<br>**wade@rlf.com**<br><br>Steven A. Reiss<br>**steven.reiss@weil.com**<br><br>David J. Lender<br>**david.lender@weil.com** |

| | |
|---|---|
| REPRESENTING NAVMAN | Arthur G. Connolly, III |
| | aconnollyIII@cblh.com |
| (C.A.04-1338) | |
| | Brian M. Gottesman |
| | bgottesman@cblh.com |
| | |
| | Bradford P. Lyerla |
| | blyerla@marshallip.com |
| | |
| REPRESENTING OLYMPUS | John W. Shaw |
| | jshaw@ycst.com |
| (C.A.04-1338) | |
| | Richard M. Rosati |
| | rrosati@kenyon.com |
| | |
| | George E. Badenoch |
| | gbadenoch@kenyon.com |
| | |
| REPRESENTING OPTREX | Karen L. Pascale |
| (THIRD-PARTY PLAINTIFF) | kpascale@ycst.com |
| | |
| (C.A.04-1338 AND 04-1536) | Thomas J. Fisher |
| | tfisher@oblon.com |
| | |
| | Alexander E. Gasser |
| | agasser@oblon.com |
| | |
| | Richard D. Kelly |
| | rkelly@oblon.com |
| | |
| | Andrew M. Ollis |
| | aollis@oblon.com |
| | |
| | John F. Presper |
| | jpresper@oblon.com |

REPRESENTING SAMSUNG SDI CO., LTD.
AND SAMSUNG SDI AMERICA, INC.

(C.A.04-1338)

Richard L. Horwitz
rhorwitz@potteranderson.com

David E. Moore
dmoore@potteranderson.com

Alana A. Prills
alanaprills@paulhastings.com

Carolyn E. Morris
carolynmorris@paulhastings.com

Elizabeth L. Brann
elizabethbrann@paulhastings.com

Hamilton Loeb
hamiltonloeb@paulhastings.com

Stephen S. Korniczky
stephenkorniczky@paulhastings.com

REPRESENTING SONY CORPORATION

(C.A.04-1338)

John W. Shaw
jshaw@ycst.com

John Flock
jflock@kenyon.com

Robert L. Hails, Jr.
rhails@kenyon.com

REPRESENTING SONY ERICSSON

(C.A.04-1338)

REPRESENTING TOSHIBA

(C.A.04-1338)

Francis DiGiovanni
fdigiovanni@cblh.com

Richard L. Horwitz
rhorwitz@potteranderson.com

David E. Moore
dmoore@potteranderson.com

Arthur I. Neustadt
aneustadt@oblon.com

Carl E. Schlier
cschlier@oblon.com

and by facsimile upon the following:

REPRESENTING CONCORD CAMERA CORP.                    Scott L. Lampert
                                                     (954) 989-4103
(C.A.04-1338)

       The undersigned also hereby certifies that on August 5, 2008, true and correct copies

of the foregoing were caused to be served by hand, in triplicate, upon the Special Master:

The Honorable Vincent J. Poppiti
BLANK ROME LLP
201 North Market Street
Suite 800
Wilmington, DE  19801-4226


                                    Thomas C. Grimm (#1098)

# EXHIBIT 1

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS C. GRIMM
302 351 9595
302 425 4661 FAX
tgrimm@mnat.com

January 24, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

> Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
>        C.A. No. 04-1338-KAJ (Consolidated)

Dear Magistrate Judge Thynge:

I am writing pursuant to the Court's Order from January 18, 2007, asking for the parties' thoughts regarding strategies for the efficient handling of the remainder of the case. In summary, in light of the position taken by several of the Manufacturer Defendants (described below), Honeywell submits that a discussion regarding such strategies first requires clarity on the fundamental issue of who will answer Honeywell's charge of infringement at trial in the first instance: the Manufacturer Defendants or the Customer Defendants?

The original Scheduling Order, entered by Judge Jordan, did not specify how, when, and against whom infringement issues would be tried. Judge Jordan stayed the original action against the Customer Defendants on the assumption that the Manufacturer Defendants would stand behind their customers in a manner that would substantially reduce, if not eliminate entirely, the need for further proceedings. However, contrary to Judge Jordan's expectations, the Manufacturer Defendants, by their actions, have not committed to defending their customers from Honeywell's allegations.

For example, the issue of indirect sales figured prominently in the mediations held in December. The Manufacturer Defendants are clearly relying on their assertion that a substantial portion of sales to the Customer Defendants occurs outside the United States in order to avoid liability for those sales. To compound this, the Manufacturer Defendants are now requesting that

The Honorable Mary Pat Thynge
January 24, 2007
Page 2

the damages issues be put off to some indeterminate future date.[1]  By this recent conduct, the Manufacturer Defendants apparently prefer to avoid, rather than embrace, the potential liability of their customers.

Indeed, the different legal status of the Manufacturer Defendants may require Honeywell to resort to indirect infringement theories under the patent law—theories that require different elements of proof than direct infringement against the Customer Defendants.  The differences between these two types of infringement claims (indirect versus direct) have been heightened by the Federal Circuit's recent change in the standard for proving indirect infringement under 35 U.S.C. §271(b).  *See DSU Med. Corp. v. JMS Co., Ltd.*, 04-1620, 05-1048, -1052, slip op. (Fed. Cir. Dec. 13, 2006) (*en banc* in pertinent part).  A copy of that decision is attached hereto for the Court's convenience.  Essentially, the Federal Circuit now requires that allegations of inducement be supported by proof that a defendant both: (1) knew of the patent in suit; and (2) knew that its activities were causing others to directly infringe the patent.  These new standards do not apply to direct infringers such as the stayed Customer Defendants.

The new inducement standards have implications on both the scope of discovery and on the efficient handling of the case.  Discovery regarding certain issues will now take on newly increased importance; such discovery includes: (1) any opinions of counsel and related requests for legal advice sought regarding Honeywell's original allegations; (2) communications between manufacturers and customers regarding those allegations, including customer requests for indemnification and responses thereto; and (3) a precise date upon which each Manufacturer Defendant became aware of the patent.  Honeywell has not had an opportunity to fully explore these topics, and relevant information is likely to be in the hands of the Customer Defendants (*e.g.*, their expectations with regard to indemnification).

More fundamentally, the impact of the *DSU* decision could undermine the fundamental premise of Judge Jordan's reorganization of the case.  The Manufacturer Defendants may seek to avoid—in whole or in part—answering for the infringement and damages caused by their customers on the grounds that they did not know of the patent, or did not believe direct infringement was occurring.  If that becomes the case, then it makes little sense to proceed against them in the first instance because resolution of these unique inducement issues would, at best, resolve only a small portion of Honeywell's direct claims against the Customer Defendants. In that event, what Judge Jordan intended as an efficient means for handling this action could become a wasteful rehearsal for the real trial.

Accordingly, to efficiently handle the remainder of the case, Honeywell suggests the following. First, the Court should direct the Manufacturer Defendants and the Customer Defendants to caucus among themselves and decide whether the former intends to defend the latter against the full extent of Honeywell's allegations, regardless of whether the sales were direct or indirect.  If they do, then all parties can be reassured that proceeding against the

---

[1]     The Manufacturer Defendants do not appear to be requesting that damages discovery itself be stayed, only damages expert reports and the damages component of the trial.

The Honorable Mary Pat Thynge
January 24, 2007
Page 3

Manufacturer Defendants first will still likely resolve the majority of Honeywell's allegations.  If not, then the Court should schedule a subsequent hearing to address why the first trials should not be against the Customer Defendants.[2]

Second, once it is clear which class of defendants is best suited to answer Honeywell's infringement allegations in the first instance, Honeywell will work with these defendants to develop a timetable and plan for trying infringement and damages.

To avoid delay, the current stay against the Customer Defendants should be lifted so that Honeywell can obtain information regarding the commercial success of end products incorporating the accused modules (relevant to the issues of validity and damages) and to begin developing a record that addresses the new standards set forth in *DSU* (to the extent necessary).

As the Court is aware, Honeywell and the Manufacturer Defendants have agreed to a three-month extension of all the deadlines set forth in the current Scheduling Order (D.I. 376). While the agreed-upon extension provides short-term relief, it does not address this broader issue of a global strategy for efficiently handling the remainder of the case.

Honeywell looks forward to discussing this issue with the Court on Thursday.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm

Enclosure
cc:    All Counsel of Record—All Defendants (via e-filing, w/encl.)
        Matthew L. Woods, Esquire (via e-mail, w/encl.)
        Seong Yoon Jeong, BOE Hydis Technology (via Fed. Ex., w/encl.)

---

[2]    It may well be that the substantial settlements executed to date will impact the scope of the remaining claims against the Customer Defendants, and Honeywell would work with the Customer Defendants to ensure that further proceedings reflect the scope of those settlements.

# EXHIBIT 2

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS C. GRIMM
302 351 9595
302 425 4661 FAX
tgrimm@mnat.com

March 2, 2007

**BY E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

> Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
>        Cons. C.A. No. 04-1338-***

Dear Magistrate Judge Thynge:

I write on behalf of the Plaintiffs ("Honeywell") to demonstrate why the commercial success of products manufactured and sold by the Customer Defendants – products which use the Accused Modules and stand accused of infringement in this case – is highly relevant to a proper validity analysis, even if the case is tried first against the Manufacturer Defendants. As explained below, the success of the patented invention is best understood in the context of the end products sold in the United States which incorporate the features of the invention. The Manufacturer Defendants have little or no information as to why the functionalities provided by the '371 technology has generated such acceptance in the marketplace. The case law does not limit the issue of commercial success to consideration of component sales only. To the contrary, the law recognizes that often the success of the overall end product is relevant to the non-obviousness of a patent directed to a component of the product.

The Honorable Mary Pat Thynge
March 2, 2007
Page 2

The case reconfiguration ordered by the Court was never intended to prejudice Honeywell's substantive rights. To now deny Honeywell access to information regarding the commercial success of the end products merely because of that reconfiguration would prejudice Honeywell's defense to the defendants' invalidity claim. The Manufacturer Defendants should not be allowed to bring their obviousness defense to trial if the jury will not have meaningful information about how products using this technology have successfully penetrated the United States market. Accordingly, Honeywell should be granted the right to conduct limited discovery of the Customer Defendants.

I.    A Proper *Graham v. John Deere* Analysis Should Include Consideration of the Commercial Success of Infringing Products Using the Accused Modules.

As set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 35-36 (1966), it is well settled that secondary considerations, such as the commercial success of the patented invention, can be used by a patent holder as indicia of non-obviousness. It is equally well settled that sales of the accused infringing products can be used to gauge the commercial success of the patented invention. *See, e.g., Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention."). Accordingly, the success of products that use the '371 technology is highly relevant to any challenge that the subject matter of the '371 patent is obvious.

In this regard, it bears emphasizing that Honeywell has accused the portable consumer electronic products manufactured and sold by the Customer Defendants of infringement in this lawsuit. While the Manufacturers' infringement means there may be discrete and multiple acts of infringement, the Manufacturers and the Customers share a common interest in the

The Honorable Mary Pat Thynge
March 2, 2007
Page 3

distribution chain that ultimately leads to the end users of infringing portable consumer electronics. Sales of the modules themselves – while reflective of ultimate demand – are once removed from the ultimately infringing end product and not the best evidence of why the technology has become the standard in the United States. This is especially so because the Manufacturer Defendants are still claiming that the majority of their sales of infringing modules are beyond the territorial scope of the United States Patent Laws (35 U.S.C. § 271). If the Manufacturer Defendants' assertions are correct, then the only "infringing" products would be of the end products sold by the Customer Defendants. Unless the Manufacturer Defendants now agree that overseas module sales infringe as long as those modules are ultimately incorporated into end products sold in the United States, information regarding such sales would only be the *first step* in proving the commercial success of infringing products. Unless and until the Manufacturer Defendants' sales are linked to the United States, Honeywell will be met with the legal argument that the bulk of those sales are irrelevant because no one "knows" whether those modules ever reach the United States. Indeed, several Manufacturer Defendants are currently refusing to provide sales information regarding their own sales, because they claim those sales are not within the United States. This represents a grossly unfair scenario for Honeywell, especially when the current procedural configuration of the case was not of its own choosing. Undeniably, a significant market has developed in the United States for products using the claimed technology. Any challenge to the validity of the patent must take this market into consideration.

As acknowledged at the recent hearing on February 22, 2007, the commercial success of the infringing products can only provide a basis for demonstrating non-obviousness when the

The Honorable Mary Pat Thynge
March 2, 2007
Page 4

patent holder is able to demonstrate that the success is attributable to the feature that is the

subject of the patent claim. As articulated by the Federal Circuit:

> [F]or commercial success of a product embodying a claimed
> invention to have true relevance to the issue of nonobviousness,
> that success must be shown to have in some way been due to the
> nature of the claimed invention, as opposed to other economic and
> commercial factors unrelated to the technical quality of the
> patented subject matter. Thus, a nexus is required between the
> merits of the claimed invention and the evidence offered, if that
> evidence is to be given substantial weight enroute to [a] conclusion
> on the obviousness issue.

*Cable Electric Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). *See also*

*Brown & Williamson Tobacco Corp.*, 229 F.3d at 1130 ("A nexus between commercial success

and the claimed features is required."); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1351

(Fed. Cir.), *cert denied*, 530 U.S. 1238 (2000) ("establishing such a nexus is required in order to

establish commercial success").

    With regard to the requisite nexus, it is well understood that patents often cover only a

portion of a product which stands accused of infringement. Defendants' mantra has been – and

presumably will continue to be – that the '371 patent reads only upon the LCD module itself, not

upon the end product into which the module is incorporated. This tactic is not a legally sound

basis for preventing discovery into that larger product. The Federal Circuit has noted that proof

of commercial success may not always be coextensive with the patented invention:

> When the thing that is commercially successful is not coextensive
> with the patented invention – for example, if the patented invention
> is only a component of a commercially successful machine or
> process – the patentee must show *prima facie* a legally sufficient
> relationship between that which is patented and that which is sold.

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In

numerous cases, patent holders have been permitted to introduce evidence to demonstrate that

The Honorable Mary Pat Thynge
March 2, 2007
Page 5

the commercial success of a product was due to the component that contained the patented

invention.  Thus, for example, in *Hughes Tool Co. v. Dresser Indus. Inc.*, 816 F.2d 1549 (Fed.

Cir.), *cert. denied*, 484 U.S. 914 (1987), Hughes Tool's patent claimed an O-ring seal in rock bit

cutters of an oil and gas well drilling bit, where the O-ring seal was compressed by not less than

10%.  The Court stated:

> Despite Dresser's assertions that other aspects of Hughes Tool's
> new rock bits were responsible for Hughes Tool's commercial
> success, the one feature that Hughes Tool and all of its competitors
> continued to use was the minimum 10% squeeze called for in the
> claims in suit of the '928 patent.  Such continuous use of the
> patented feature while other features were not copied gives rise to
> an inference that there is a nexus between the patented feature and
> the commercial success.

*Id.* at 1556.  Likewise, in *Winner*, the patent at issue claimed an improvement in a security

device (the "original Club") consisting of substituting a "self-locking ratcheting mechanism" for

the original Club's key lock.  The Court stated:

> [T]he survey introduced at the district court by Winner established
> that a statistically significant percentage of customers viewed the
> self-locking ratcheting mechanism of the '047 patent as being of
> more value to them, and reported that the self-locking ratchet was
> the very reason they purchased the device, as opposed to those
> requiring key-locking, and was the reason they were willing to pay
> more for such a lock than for one without it, such as the original
> Club.  When such evidence was introduced, it became Wang's
> burden to show that it should not be given weight.  Given the
> evidence before the district court, it did not clearly err in finding
> that the survey showed the nexus between the patented features,
> especially the keyless self-locking ratcheting mechanism, of the
> Super Club line of products and the reasons the consumers bought
> products.

*Id.* at 1350-51.

The Honorable Mary Pat Thynge
March 2, 2007
Page 6

As each of these cases illustrates, the patent holder was afforded the opportunity to demonstrate that a nexus existed between those patented features or components and the commercial success of the end products as a whole.

This principle is not limited to situations where there is an issue between the component and the complete product. In *Truswal System Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987), the Federal Circuit vacated a district court's decision to quash a subpoena directed to a non-party who had been charged with infringement, but not included in the suit. Even though there was no supplier-customer relationship between the named defendant and the entity served with the subpoena, the Federal Circuit recognized that information regarding unrelated infringing products could bear on commercial success, and thus remanded the matter to the district court. *Id.* at 813 F.2d at 1212.

Here, the discovery is targeted to customers of the Accused Modules, a discovery request significantly more in line than what was at issue in *Truswal*. Moreover, the '371 patent expressly recognizes that makers of end products would be particularly interested in the energy efficiency of the claimed invention. *See* '371 Patent, Col. 3, ll. 19-23 (noting that one of the goals of the invention is to allow for concentration of light into "viewing angles of interest for a particular application"). This, of course, necessarily begs the question of what "application" is at issue. It is the Customers, not the Manufacturers, who are in the best position to articulate the metes and bounds of each such application and its relative needs/sensitivities for bright, clear displays and smaller, more portable batteries. The Manufacturers can describe how their modules meet a technical specification, but they are not the best source for explaining why that specification is important in the first instance. Given that the '371 patent discloses its utility in

The Honorable Mary Pat Thynge
March 2, 2007
Page 7

the context of "particular applications,"[1] first hand information regarding such applications is

more likely to relate to the field of the invention.

## II.    Honeywell's Requested Discovery is Narrowly Tailored to Address the Issue of Commercial Success.

Honeywell recognizes this Court's desire to limit discovery directed to the Customer

Defendants at this point. In order to develop its arguments with respect to commercial success,

Honeywell will need discovery concerning two general areas:

   (a)    documents and information concerning sales of the Customer Defendants' products that contain the Accused Module; and

   (b)    documents and information discussing why the Accused Modules allow the Customer Defendants to better meet market demand.

Specific requests with respect to each of these two areas are set forth below. It bears noting that

all this discovery could be avoided if the Manufacturer Defendants would stipulate to the

commercial success of the products which have used the Accused Modules for many years.

In outlining these specific requests, Honeywell is cognizant that "one size may not fit all"

Customer Defendants. Certainly, discovery could be limited to those products that employ

Accused Modules which have not yet been licensed. This presumes, however, that the '371

licenses executed to date would be admissible and otherwise available for the jury's

consideration. The Customer Defendants have argued that these licenses adequately protect

Honeywell's right to establish a record of commercial success, and thus advocate this as a basis

for limiting discovery. Clearly, it would be inappropriate to limit discovery if there is any issue

regarding the ultimate admissibility of the licenses.

---

[1]    *E.g.*, Col. 3, l. 23; Col. 5, l. 15.

The Honorable Mary Pat Thynge
March 2, 2007
Page 8

### A.    Sales Information

Honeywell has not obtained discovery from the Customer Defendants regarding sales of all products which employ the Accused Modules.  Such information is clearly relevant to the issue of infringing sales, especially where the Manufacturer Defendants are claiming that the substantial majority of these sales occur overseas and are refusing to provide information regarding those sales.  The Manufacturer Defendants should not be allowed to avoid accounting for the benefit they have derived – even if unknowingly – from a well recognized market in the United States for portable consumer electronic products using the patented technology.

Honeywell proposes as follows:

(1)    Each Customer Defendant would identify sales information for each product that uses an Accused Module; such sales information could take the form of summary charts which list, on a yearly basis, the number of units sold of each such product and the revenue derived from such sales.

(2)    Honeywell believes that, if comprehensive information is provided as per (1) above, and if all parties stipulated to the admissibility of such summary information, depositions on this topic could be avoided.

The Customer Defendants presumably track sales data regularly and keep their sales data in readily accessible electronic format.  Accordingly, once the initial task of identifying the relevant products is complete, Honeywell expects that the collection of the sales data itself will be a largely mechanical process of querying the Customer Defendants' respective sales databases.

### B.    Nexus Discovery

The Customer Defendants will also presumably have documents concerning the features and advantages of the end products into which the accused LCD technology was incorporated.

Honeywell expects that, when new products are launched, the Customer Defendants prepare materials for marketing and sales purposes that compare the products' new features with

The Honorable Mary Pat Thynge
March 2, 2007
Page 9

those of other products. Given that the Customer Defendants will have identified the relevant

products in providing the sales information, they should be able to simply pull the relevant

product launch materials from their marketing files and produce them.

Advertising is also relevant to the nexus between the products' commercial success and

the patented invention. "The prominence of the patented technology in [the infringer's]

advertising creates an inference that links the [patented invention] to this success." *Gambro*

*Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997). Accordingly,

advertising concerning products using the Accused Modules should be produced. In particular,

the accused technology can achieve such benefits as a brighter, cleaner display, longer battery

life and lower weight in applications such as portable consumer electronics. Advertising which

reflects or touts these advantages and benefits is relevant to the "nexus" issue. To limit the

burden of discovery, Honeywell is willing to accept the production of advertising that the

Customer Defendants prepared when the products were initially launched, and is also willing to

accept representative samples of such advertising as opposed to every advertisement.

In addition, as *Winner* indicates, customer surveys can provide relevant information

concerning the reasons why customers select specific products. Accordingly, Honeywell

requests that the Customer Defendants be required to produce any surveys of customers or

vendors reflecting the reported benefits of the products and/or the reasons why those products

were purchased.

Finally, Honeywell anticipates that once documents are produced, there may be a need to

clarify the import of their contents via limited depositions and to authenticate them for purposes

of trial. Nonetheless, Honeywell is willing to defer the issue of the depositions until the parties

The Honorable Mary Pat Thynge
March 2, 2007
Page 10

first have an opportunity to assess the documents themselves, and then discuss a reasonable

scope for such depositions.

**III.    Conclusion**

The Manufacturer Defendants have been unable, or unwilling, to provide the following

information which bears directly on the issue of commercial success:

(1)    The amount of the Accused Modules which enter the United States via their
incorporation into a portable consumer electronic product.

(2)    Whether and why a brighter display is important to end users of the accused
portable consumer electronic products.

(3)    Whether, because of the energy efficiency of the Accused Modules, a smaller or
lighter battery is used in the accused portable consumer electronic products.

Such information is only in the hands of the Customer Defendants.    Without that

information, Honeywell will be forced to defend the validity of the '371 patent without highly

probative information.    At the same time, the burden on the Customer Defendants will be

minimal.  For these and all the foregoing reasons, the Court should order the limited discovery

identified herein.

Respectfully,

Thomas C. Grimm

Thomas C. Grimm (#1098)

cc:    Dr. Peter T. Dalleo, Clerk (by hand)
All Counsel of Record (by e-filing and e-mail)
Matthew L. Woods, Esquire (by e-mail)

# Exhibit B

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

March 12, 2007

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
    for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    Honeywell International Inc., et al., v. Apple Computer, Inc. et al.
       C.A. No. 04-1338-*** (consolidated with C.A. No. 04-1337-***)



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Judge Thynge:

  I write on behalf of the stayed Customer Defendants in response to Mr.

Grimm's March 2, 2007 letter on commercial success discovery.  (D.I. 724)

  Honeywell is not entitled to the broad discovery it seeks from the Customer

Defendants because they possess little or no information that is truly relevant to

"commercial success" and that is not already in the possession of the Manufacturer

Defendants.  Given that Honeywell's patent covers only the LCD module itself—and

not the combination of the LCD module with the device in which it is used—the

Manufacturers' information regarding sales of the accused LCD modules is

indisputably more relevant to Honeywell's assertion of commercial success.

  Honeywell's request to conduct additional discovery of the Customers is

merely its latest attempt to overturn Judge Jordan's original case management ruling,

reaffirmed by Your Honor, requiring Honeywell to pursue its claims against the

Manufacturers in the first instance.  Honeywell has not shown that the Customers

have information more relevant than that possessed by the Manufacturers to warrant

lifting the stay imposed by Judge Jordan.  Moreover, the proposed discovery

Honeywell requests is overbroad and not justified by its alleged need for evidence of

commercial success.

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

FISH & RICHARDSON P.C.

**I.    Honeywell Inappropriately Seeks Discovery of Features Present in the Prior Art**

While commercial success is a factor to be considered in an obviousness determination,

evidence of commercial success need only be considered if it tends to show that *claimed* features

were responsible for the alleged commercial success. *See Sjolund v. Musland*, 847 F.2d 1573, 1582

(Fed. Cir. 1988) (Rich, J.) (noting that jury is "constrained" to consider whether commercial success

flowed from claimed invention). If a product that embodies the patented invention is successful in

the marketplace and the success can be attributed to the invention (the "nexus"), an inference may be

drawn that the patented invention is a non-obvious variant over the prior art. *Ormco Corp. v. Align

Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).

The best source of evidence of commercial success involves products that are *coextensive*

with the patented invention. If the product and the patented invention are the same, a nexus is

presumed. *Ormco* 463 F.3d at 1312; *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229

F.3d 1120, 1130 (Fed. Cir. 2000). On the other hand, when a patent owner attempts to prove

commercial success using products that are *not coextensive* with the patented device, the patent

owner faces an additional burden to establish a legally sufficient relationship between the patented

device and the product being sold. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d

1387, 1392 (Fed. Cir. 1988). Evidence of commercial success is probative only if it relates to

features that are unique to the patented device. *Ormco*, 463 F.3d at 1311-12. Commercial success

attributable to features known in the prior art is irrelevant to the obviousness inquiry. *Id.*; *J.T. Eaton

& Co., Inc.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("the asserted commercial success of the product

must be due to the merits of the claimed invention beyond what was readily available in the prior

art"); *White v. Jeffrey Mining Machinery Co.*, 723 F.2d 1553, 1559-60 (Fed. Cir. 1983); *Richdel, Inc.

v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 3

The patent in suit covers LCD modules, not the combination of the modules and some end

product or the use of the modules in some end product. Therefore, the commercial success inquiry

should focus on the modules themselves and the parties that make and sell them: the Manufacturers.

Naturally, they have the sales information concerning the accused display devices. They also have

the design expertise that makes them uniquely suited to answer questions regarding any advantages

obtained by the accused design when compared to alternative designs.

In order to prove commercial success, Honeywell must show that the evidence of commercial

success it seeks relates to the invention at issue—an "improvement" on an LCD module with two

lens arrays that includes a slight misalignment of those arrays to eliminate the moiré interference

effect. Evidence regarding the success of Customers' end products such as mobile phones and

digital cameras is, at best, tangentially related to this issue. Honeywell has not shown that the

Customers would have any information as to why a particular configuration of lens arrays (slightly

misaligned) was chosen by the Manufacturers over other possible designs (including non-infringing

alternatives). Although some Customers provide specifications identifying the necessary

performance requirements for individual LCD modules, the internal structure of the devices,

including whether or not there are two lens arrays with a slight misalignment, is determined by the

Manufacturers. The Customers integrate these displays into larger consumer products that can

include hundreds, if not thousands of other technologies, all of which impact the commercial success

of the end products. They cannot explain why certain design choices were made by the

Manufacturer for a particular module or whether such design choices have any relevance to the

teachings of the patent-in-suit.

None of Honeywell's cases suggest that, when discovery is available regarding the accused

components themselves, discovery against products that merely incorporate these devices is

The Honorable Mary Pat Thynge                          FISH & RICHARDSON P.C.
March 12, 2007
Page 4

somehow preferred. *Winner Int'l v. Wang* is not on point; there, the claims were co-extensive with

the accused product. 202 F.3d 1340, 1351 (Fed. Cir. 2000). *Hughes Tool v. Dresser Ind.* does not

suggest that commercial success evidence was available for both the component part (the O-Ring)

and the completed product. 816 F.2d 1549 (Fed. Cir. 1987). *Truswal* also does not answer the

question presented here: why is evidence concerning sales of the accused components themselves

not sufficient for the obviousness inquiry?

      Commercial success discovery will be conducted much more effectively against the

Manufacturers than the Customers. Because they design and sell the accused modules, the

Manufacturers are in a far better position to provide probative evidence on commercial success

issues. Discovery from Customers would only concern products with features additional to the

accused modules—features that cannot be used by Honeywell to support the alleged non-

obviousness of its claimed invention.

**II.    Honeywell Cannot Rely on the Features for Which It Seeks Discovery as
         Evidence of Commercial Success**

      The features of the end products on which Honeywell seeks discovery—display brightness

and energy efficiency—are common to unclaimed embodiments from Honeywell's patent and

present in prior art references. In particular, although Honeywell's patent describes both single lens

array and dual lens array embodiments, the single lens array embodiments are not claimed. *See '371*

*Patent*, FIGS. 2, 4A, 7 and 10 (shown in Appendix Tab A hereto). Claim 3, the only claim in suit,

expressly recites a *pair of lens arrays*. The specification excerpts on which Honeywell relies, cols.

3:19-23 and 5:15, each refer to the *single lens array* embodiment described in FIGS 2 and 4A.

Thus, the advantages identified in the '371 patent are not unique to the invention at issue in this

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 5

case—the dual lens array device recited in claim 3—and cannot be used as evidence of commercial

success of the *patented* invention. *Ormco*, 463 F.3d at 1311-12.

Moreover, both of these advantages—display brightness and energy efficiency—are

disclosed in prior art references that the Patent Office cited in rejections during prosecution. For

example, U.S. Patent No. 5,161,041 ("Abileah") states at column 7, lines 5-15:

> In order for electronic displays to gain increased acceptance in military and avionic
> applications, the backlighting of flat panel displays, and particularly active matrix liquid
> crystal displays, *must be improved in light efficiency* and reliability. In order for a full
> color liquid crystal display to possess acceptable contrast under high ambient lighting
> conditions, the backlighting arrangement *must be bright*. While current backlighting
> systems have the requisite light output, they still require high power (on the order of 2.4
> watts/square inch) and a depth dimension of about two inches. In contrast thereto, the
> backlight assembly of *the instant invention consumes only about 1.2 watts/square inch
> of power* with a depth dimension of only about one inch. [Emphasis added.]

Thus, Honeywell's discovery plan simply seeks to discover what is already known: LCD module

purchasers prefer bright displays to dark ones and energy-efficient displays to wasteful ones.

Abileah states this expressly. Honeywell's proposal seeks discovery of functional advantages that

are common to the prior art and, therefore, it should be rejected.

In addition, most of the advantages Honeywell claims stem from its invention—features its

proposed discovery is designed to explore with the Customers—cannot be attributed to Honeywell's

patent. For example, Honeywell claims that the patented invention results in longer battery life and

lower weight, but the `371 patent nowhere describes these features as attributes of the invention. In

fact, Honeywell's patent does not even discuss consumer electronics. The only "application"

discussed in the patent is aircraft cockpit displays, and the object of the invention is "to provide a

tailored variation of luminance with viewing angle" to focus the light of the display in a particular

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 6

viewing angle.[1] Thus, the energy efficiency attribute Honeywell claims as part of its invention does

not even apply to consumer electronics. As a result, to the extent the commercial success of

Customers' products may be due to energy efficiency, longer battery life, or lower weight, these

attributes cannot support the non-obviousness of the '371 patent. *See Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence that invention solved

certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [

] patent."); *In re Vamco*, 752 F.2d 1564, 1574-77 (Fed. Cir. 1985).

III.    **Honeywell's Request for Discovery Is Broad, Burdensome, and Unnecessary**

        Honeywell acknowledges the Court's desire to limit discovery against the Customers, but

then proceeds to request broad, wide-ranging, and unnecessary discovery that is, at best, only

tangentially relevant to commercial success. Indeed, discovery for such issues is more appropriately

obtained from the Manufacturers. Furthermore, Honeywell's proposed discovery requests would

impose significant and unnecessary discovery burdens on the Customers. Honeywell's assertion that

its discovery requests present a minimal burden is untrue. Honeywell's request for sales information

for "Accused Modules"[2] again seeks to broaden discovery beyond the products Honeywell has

identified as allegedly infringing in this action, in violation of Judge Jordan's prior rulings.

Throughout the course of this litigation, and as part of the transition of this case to one against only

Manufacturers in the first instance, Judge Jordan consistently ordered Honeywell to focus its

---

[1] Because pilots' heads are always in approximately the same location when they are seated in
the cockpit, and because extraneous light emissions in the cockpit should be minimized, aircraft
cockpit displays preferably should concentrate all light in a narrow viewing angle. In contrast, most
consumer electronics are designed to provide a wide viewing angle so their displays can be viewed
by users at any angle.

[2] Honeywell used this term in capitalized form, as if to suggest that the term has some
understood meaning, but Honeywell did not define the term in its letter. Thus, it is impossible to
determine the exact scope of Honeywell's proposed discovery requests. *See* D.I. 724 at 8.

The Honorable Mary Pat Thynge
March 12, 2007
Page 7

FISH & RICHARDSON P.C.

requests for information on specifically-identified accused products. However, Honeywell's

proposed discovery requests do not limit the information sought to specifically identified products,

but rather, seem to require the Customers to conduct a burdensome investigation of information just

to determine what products are at issue.

Similarly, while Honeywell downplays the effort required to actually locate and collect the

documents sought, the extent of this effort cannot be known until the products at issue are first

identified. Therefore, Honeywell's request for sales, marketing, advertising, and customer surveys

for all such products is by no means a narrowly tailored request. The broad scope of the discovery

Honeywell seeks will likely result in another round of needless satellite litigation, letter briefs, and

discovery disputes over information that is directed to a secondary issue in this litigation, and for

which any pertinent information is more efficiently discovered from the Manufacturer Defendants

currently before the Court and actively participating in this case.[3]

Respectfully,

Thomas L. Halkowski

Thomas L. Halkowski

TLH/kxk/80042860

cc:    Clerk, U.S. District Court (by hand w/attachment)
       All Counsel of Record (by e-filing and email)

---

[3] In addition, as noted during the February 22, 2007 conference, no discovery is warranted from Customer Defendant Apple Computer because all of the accused modules used in Apple's products have now been licensed. Thus, the disputes concerning all of the accused modules used in Apple's products have become moot. For the same reason, no discovery is warranted from any Customer Defendant who is similarly situated.

## APPENDIX

### Figures from the '371 Patent

For ease of reference, this Appendix provides the various illustrations of the '371 patent, which are annotated to distinguish among the display designs shown therein. Lens arrays are displayed in yellow.



'371 Patent, Fig. 1 (identified as prior art)      '371 Patent, Fig. 2 (annotated)



'371 Patent, Fig. 4A
(not claimed)

'371 Patent, Fig. 7

'371 Patent, Fig. 10
(not claimed)

# Exhibit C



Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Fax

March 12, 2007

**BY E-FILE**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
U.S. Courthouse
844 King Street
Wilmington, DE 19801

      Re:    Honeywell International, Inc. et al. v. Apple Computer, Inc. *et al.*
            <u>D. Del., C.A. Nos. 04-1338, 04-1337, 04-1536</u>

Dear Magistrate Judge Thynge:

      We write on behalf of co-defendants Epson Imaging Devices, Fuji Photo Film Co., Ltd.,

now FUJIFILM Corporation, Fuji Photo Film U.S.A., Inc., now FUJIFILM U.S.A., Inc., Hitachi

Displays, Ltd., Optrex America, Inc., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Seiko

Epson Corp., Wintek Corp. and Wintek Electro-Optics Corporation ("Manufacturer Defendants")

to oppose Plaintiffs' ("Honeywell") application to take discovery of the stayed Customer

Defendants, allegedly to seek evidence to support its claim of commercial success, a secondary

consideration in the analysis of the obviousness of the claimed invention. Such discovery is only

permitted if reasonably calculated to lead to admissible evidence, and then only if it is not unduly

burdensome on the stayed Customer Defendants. Fed R. Civ. P. 26(b)(1) and (2). Honeywell

has failed to satisfy this threshold requirement.

      Honeywell correctly cites the Federal Circuit precedent that requires a nexus between the

claimed invention and the commercial success sought to be proved. Grimm 3/2/07 letter at first

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

half of 4. "[Commercial] success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter." *Cable Electric Prods., Inc. v. Genmark Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). Where Honeywell goes wrong is in relying on two improper and incorrect presumptions, that the success of every "Accused Product" and "Accused Module" is attributable to the claimed "invention", and that every such product and module infringes claim 3 of the '371 patent. Strip away these presumptions and examine the facts and it becomes clear that the discovery sought of the Customer Defendants cannot lead to admissible evidence.

I.    **Honeywell's Requested Discovery Focuses On Advantages of Structures In The Prior Art And Will Not Lead To Admissible Evidence**

Not every sale of a product which includes a patented component supports, or is even relevant to, a finding of commercial success. "[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). The same is true if commercial success is the result of unclaimed features. *Id.* "[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J. T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997), *see also, In Re Paulsen*, 30 F.3d 1475, 1482–83 (Fed. Cir. 1994) (commercial success of product was attributable to aspects of claims in prior art and thus was accorded no weight).

Honeywell has argued that the benefits obtained by the '371 patent technology are "a brighter, cleaner display, longer battery life and lower weight." Grimm 3/2/07 letter at 9. However, these benefits are the result of structures that were already known in the prior art more than a year before the filing date of the application for the '371 patent (July 9, 1992). A copy of the '371 patent is annexed as Exhibit 1. Honeywell relinquished claims to these structures during prosecution of the '371 patent, and cannot recapture them in this case.

The Honorable Mary Pat Thynge
March 12, 2007
Page 3

The application for the '371 patent was filed with very broad claims, not limited to a liquid crystal panel or lens arrays. Ex. 2 at 14. Upon rejection of these broad claims, Honeywell amended the application to present an independent claim 10, which read:

> 10.    A display apparatus comprising;
> a light source;
>
>    a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
>
>        first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source though said lens arrays and said liquid crystal panel.

Ex. 3 at 2. This claim differs from the '371 patent claim 3 only in the recitation in claim 3 of the moiré minimizing technique of rotating at least one of the two lens arrays to provide a "slight misalignment" between the lenslets of the lens array and the liquid crystal panel (Ex. 1 at col. 6, lines 27-42), a limitation which was claimed in application dependant claim 9. Ex. 3 at 1.

In an Office Action dated May 6, 1993 (Ex. 4 at 1), the Examiner ruled that application claim 10 was anticipated by U.S. Patent No. 5,161,041 ("Abileah et al."; Ex. 5), which was based on an application filed April 26, 1990. Honeywell acquiesced in the finding of the Examiner by combining application claims 9 and 10 to form what became claim 3 of the '371 patent. Ex. 6. Abileah et al. teach two crossed lens arrays between a liquid crystal panel and a light source. Ex. 5 at FIG. 6. Abileah et al. list the advantages of their new LCD backlight in essentially the same terms as Honeywell now claims for the invention of claim 3, namely:

> a bright uniform image of high contrast and capable of being viewed over a wide viewing angle, while maintaining a narrow profile and minimizing power consumption and thermal inconveniences.

Ex. 5 at col. 4, lines 26-29. Abileah et al repeatedly characterize their invention as providing improvements in brightness and energy efficiency:

The Honorable Mary Pat Thynge
March 12, 2007
Page 4

> In order for electronic displays to gain increased acceptance in
> military and avionic applications, the backlighting of flat panel
> displays, and particularly active matrix liquid crystal displays,
> **must be improved in light efficiency** and reliability. In order for a
> full color liquid crystal display to possess acceptable contrast
> under high ambient lighting conditions, the backlighting
> arrangement **must be bright.** While current backlighting systems
> have the requisite light output, they still require high power (on the
> order of 2.4 watts/square inch) and a depth dimension of about two
> inches. In contrast thereto, **the backlight assembly of the instant
> invention consumes only about 1.2 watts/square inch of power**
> with a depth dimension of only about one inch.

Ex. 5 at col. 7, lines 5-15 (emphasis added).

Rotation of the lens array, the only feature of claim 3 not taught in Abileah et al.,

contributes to eliminating moiré, and not to the enhancement of brightness and energy efficiency

of the module. Ex. 1 at col. 4, lines 26-34; col. 5, lines 16-28.

Honeywell's justification for the requested discovery of the stayed Customer Defendants

focuses on advantages of LCD modules which are attributable to the prior art, and cannot be

considered as evidence of commercial success. *See, supra, Ormco Corp., J. T. Eaton, Paulson.*

As such it is not reasonably calculated to lead to the discovery of admissible evidence and should

not be permitted.

Furthermore, Honeywell claims that the patented invention produces longer battery life

and lower weight have no basis in the '371 patent. Nowhere does the '371 patent describe these

features as attributes of the invention. In fact, Honeywell's patent does not even discuss

consumer electronics. The only "application" discussed in the patent is aircraft cockpit displays

(the same application noted in Abileah et al, *see supra*), and the object of the invention is "to

provide a tailored variation of luminance with viewing angle" to focus the light of the display in

a particular viewing angle. Ex. 1 at col. 1, lines 40-45. Thus, to the extent the commercial

success of Customer Defendants' products may be connected to energy efficiency, longer battery

life, or lower weight, these attributes cannot support the non-obviousness of the '371 patent. *See*

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence

The Honorable Mary Pat Thynge
March 12, 2007
Page 5

that invention solved certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [ ] patent.").

As Honeywell points out, the specification of the '371 patent describes which structural features result in the benefits identified by Honeywell, namely, enhanced brightness and energy efficiency. Indeed, the portion of the '371 patent relied upon by Honeywell states that inserting a lens array between the light source and the liquid crystal panel provides the benefits of increased energy efficiency and increased luminance. Ex. 1 at col. 3, lines 15-36. The portion of the '371 patent specification cited by Honeywell as explaining the benefits of the patent describes an *unclaimed* embodiment. An embodiment having a single lens array provides the benefits of energy efficiency and brightness, whereas the claims of the '371 patent are limited to modules having multiple lens arrays. Thus, even assuming that the benefits alleged by Honeywell and the '371 patent were not found in the prior art, they are provided by an unclaimed feature and, as such, commercial success based on those benefits is irrelevant to validity of the '371 patent. *Ormco Corp.*, 463 F.3d at 1312 ("if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant").

**II.    Honeywell Has Failed To Demonstrate The Necessary Nexus Between Claim 3 And The Customer Defendants' Products.**

The Federal Circuit has ruled that: "if the patented invention is only a component of a commercially successful machine or process - the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). In the present case, to demonstrate commercial success based on the end products rather than the LCD modules (the accused products), Honeywell must establish both (1) that the commercial success of the end products are attributable to certain characteristics of the LCD modules (brightness and energy consumption), and (2) that the brightness and energy consumption of the LCD modules are attributable to use of the claimed invention within the modules, as opposed to other embodiments or the prior art. Honeywell fails to make either showing.

The Honorable Mary Pat Thynge
March 12, 2007
Page 6

In no way does Honeywell suggest how the success of a portable consumer product, such as a digital still camera, a cell phone, a laptop or the other myriad of portable consumer products sold by the Customer Defendants, is attributable to the brightness of the LCD or the weight of the battery, as opposed to the many other features of such devices, both technical (e.g., CPU power, memory volume, camera lens, mobile phone antenna and software) and non-technical (e.g., aesthetic design, advertising, price, sales channel). As discussed above, there is no nexus between the commercial success of the liquid crystal modules at issue and the "invention" of claim 3 of the '371 patent.

The commercial success of the Customer Defendants' Products is even further removed from the alleged success of the Manufacturer Defendants' modules, which are the products at issue. Honeywell cannot maintain that commercial success is unique to LCD modules that contain the accused features. Honeywell's own analysis of the modules within end products successful enough to be considered resulted in only about fifty percent being deemed by Honeywell to infringe. September 9, 2005 Transcript at 22-23, Ex. 7. Thus, by Honeywell's own admission, the fifty percent of defendants' commercially successful products deemed not to infringe must owe their commercial success to features not claimed in the '371 patent. There can be no nexus between the claimed invention and commercial success of the end products when the end products are commercially successful regardless of whether they make use of the accused modules. Where commercial success is attributable to unclaimed features and features found in the prior art, such commercial success cannot be considered. *See, supra, Ormco Corp., J. T. Eaton, Paulson.* The existence of such other features makes Honeywell's proof of the requisite nexus implausible.

The requested discovery is hardly limited. It takes three pages to describe and is, on its face, unduly burdensome on the stayed Customer Defendants at this stage of this case. Given the lack of nexus between the advantages and sales Honeywell seeks to discover and the claimed invention, the failure to explain why evidence adduced from the Manufacturer Defendants is

The Honorable Mary Pat Thynge
March 12, 2007
Page 7

insufficient, and the existence of non-infringing structures which may have been incorporated in the Customer Defendants' products, it is submitted that Honeywell has failed to demonstrate a need for the discovery sufficient to justify modifying the stay. The requested discovery defeats the purpose of the stay and unduly burdens the Manufacturer Defendants, who would need to monitor the discovery.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/783007
Enc.

cc:    All counsel of record – by ECF

# Exhibit D

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit E



Potter
Anderson
&Corroon LLP

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

February 21, 2007

**VIA ELECTRONIC MAIL**

Matthew L. Woods, Esquire
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015

Re:  **Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.
C.A. No. 04-1337-\*\*\*;
Honeywell International Inc., et al. v. Apple Computer, Inc., et al.
C.A. 04-1338-\*\*\*; and
Optrex America, Inc. v. Honeywell International Inc., et al.
C.A. 04-1536-\*\*\***

Dear Matt:

      I am writing on behalf of a number of the customer defendants in response to your
February 14, 2007 letter. At this time, we do not believe it would be appropriate to disturb the
case management structure currently in place, and we would object to an attempt to lift the stay
along the lines you have discussed in your letter. Judge Jordan reached a compromise by
ordering the customer defendants to provide some discovery, which was done, and otherwise
stayed the case against the customer defendants, recognizing that the case was complex enough
with the manufacturer defendants. Your citation to the May 16, 2005 transcript does not alter
our view. All that was said there was that this issue could be discussed, which we have now
done. To be more specific, we believe there is no need to open discovery against the
stayed customer defendants. Honeywell already has all the evidence even arguably relevant to
alleged commercial success - the licenses plus the manufacturers' sales of LCD modules. The
additional discovery Honeywell seeks about the customer defendants' sales of products
containing LCDs has no nexus to commercial success and is simply irrelevant to any issues to be
raised in the trial. Moreover, I think your suggestion that the customer defendants somehow
dictate the technical blueprints for the modules is misguided. As I understand it, the customer
defendants request certain performance features and really don't care how the module
manufacturers get there, so there is nothing from the customer defendants that would relate to the
teachings of the '371 patent. Finally, even if we were inclined to consider discovery against the
stayed customer defendants, which we are not, we dispute that your suggested discovery is
limited at all. In fact, it covers almost all of the issues you would raise if discovery of the
customer defendants were not stayed.

Matthew L. Woods, Esquire
February 21, 2007
Page 2


Turning to the issue of whether the customer defendants will agree to be bound by the result of the first trial on validity, we will not take a position at this time. You have not articulated a reason why the customer defendants should be required to do so now, and nothing has changed since Judge Jordan declined to include such a provision in any scheduling order after Honeywell had raised it with the customer defendants and proposed it to the Court on June 17, 2005.


Very truly yours,

Richard L. Horwitz


778840