# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Thomas C. Grimm
302 351 9595
302 425 4661 Fax
tgrimm@mnat.com

**PUBLIC VERSION**

July 25, 2008

**Confidential Version Filed: July 25, 2008**
**Public Version Filed:** __8/11/08__

**BY E-FILING, E-MAIL
& HAND DELIVERY**

**DM 1**

The Honorable Vincent J. Poppiti
Blank Rome
1201 N. Market Street, Suite 800
Wilmington, DE 19801

Re:    *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
      *C.A. No. 04-1338-JJF (Consolidated)*

Dear Special Master Poppiti:

I write on behalf of Honeywell in accordance with the discussions on June 23, 2008 and in reply to the ten (10) letters[1] Your Honor received from the Affected Defendants on Friday, July 18, 2008.

At the outset, Honeywell believes it bears re-emphasizing that it is the Affected Defendants -- and not Honeywell -- who currently seek relief from Judge Farnan in the form of an order lifting the stay and dismissing them from this matter. Accordingly, it is the Affected Defendants—and not Honeywell—who bear the burden of demonstrating an entitlement to relief. Notwithstanding the Affected Defendants' burden, however, and in an attempt to work informally pursuant to Judge Farnan's directive, Honeywell has proposed a common protocol to address the issue of whether the Affected Defendants should be dismissed. Unfortunately, as the

---

[1]    The eleventh nominal Affected Defendant, Argus-Hartford decided not to submit a letter on July 18, 2008—a decision confirmed on July 21, 2008 via email with counsels for Argus-Hartford Amy Evans and Brian Roche. Nonetheless, Mr. Roche submits a response today, July 25, 2008, seeking a partial dismissal. With regard to this late effort, Honeywell's position is that a partial dismissal is inappropriate under the circumstances, but given the delay of Argus-Hartford's submission Honeywell has not been allowed sufficient time to respond.

REDACTED PUBLIC VERSION

The Honorable Vincent J. Poppiti
July 25, 2008
Page 2

ten (10) letters Your Honor has received from the Affected Defendants demonstrate, too many of them simply criticize Honeywell's proposal in one way or another and offer nothing to link the licenses granted to the LCD manufacturers to their own activities. Under their view, Honeywell should simply dismiss the Affected Defendants from this case now. This approach is legally erroneous since it is their burden to establish the affirmative defenses of licensure and exhaustion, and it contravenes Judge Farnan's directive that the parties work with Your Honor to resolve the dispute relating to this issue.

Certain Affected Defendants, like Nikon and Dell for example, have generally agreed with the three concepts which are the foundation of Honeywell's proposal, but have raised certain issues regarding the implementation of those concepts. Honeywell does not agree entirely with the proposal set forth in Nikon's July 18th letter, but, as discussed further below, Honeywell believes that a melding of Honeywell's proposal with that of Nikon would lead to a fair resolution of the issues. Absent that, and in the face of no other countervailing proposal from the Affected Defendants, it may be that formal discovery is the only way to resolve the current dispute. Indeed, the multitude of objections raised by the Affected Defendants since April regarding the proposed protocol undermines any argument that this issue is either simple or obvious. If the manufacturer licensees truly intended to resolve the liability of these customers, it should be a simple matter to confirm that intent. The fact that Honeywell's efforts to verify that intent have largely been met with protest over the course of the past months—rather than quick confirmation—calls the merits of their request for dismissal into question.

Honeywell recognizes that certain Affected Defendants have raised individualized issues in their letters to Your Honor. Thus, Honeywell will first address the common points made in response to Honeywell's proposal, and then will respond to individualized concerns, as appropriate.

## I. COMMON ISSUES

**1.    Confirmation of Affected Defendants' Prior Identification of Products and Module Suppliers (Declaration from Affected Defendants).**

Honeywell seeks a Declaration from each of the Affected Defendants to confirm the authenticity, accuracy and completeness of the information they informally provided in 2005 regarding comparable products and the suppliers of LCD modules used in such products. This informal information was ostensibly made pursuant to Judge Jordan's Order dated October 7, 2005. Because Honeywell never was given the opportunity to conduct any discovery, verification is necessary to establish a clear foundation of what products are covered in any dismissal.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 3

This aspect of Honeywell's proposed protocol is generally acceptable to six (6) of the ten (10) responding Affected Defendants.[2]  Two of these six (Dell and Nikon) agree to provide this declaration but <u>without</u> statements establishing the steps taken to identify the products and modules pursuant to Judge Jordan's Order of October 7, 2005.  The letters from Dell and Nikon both characterize this information as irrelevant and unnecessary.  To the contrary, this information is both relevant and necessary because Honeywell has not been afforded discovery to vet the informal disclosures, which came largely in the form of letters from outside counsels.

Such vetting is reasonable given the language of Judge Jordan's Order of October 7, 2005 which required more than ministerial acts.  In addition to identifying the supplier of the LCD modules Honeywell had specifically identified, the Order required the Affected Defendants to provide: "(b) an identification of *other* versions (i.e., earlier or later generations) of the specifically identified products that utilize the same LCD module…or *other* versions of the same LCD module…and (c) an identification of *other* versions of the identified products that include other LCD modules with *substantially the same structure* as the LCD module…contained in the specifically identified products[.]"  Order, October 7, 2005 (emphasis added).  Clearly, this language presumes some type of analysis or search be made beyond the products identified by Honeywell; whether and how the Affected Defendants implemented these instructions is the most fundamental aspect of this proceeding, yet these underlying facts are unknown to Honeywell since Honeywell has never had an opportunity to confirm compliance with the broad language of the Order.

The need to confirm compliance with Judge Jordan's Order is heightened by the fact that Honeywell has continued its investigation and identified additional infringing products manufactured by the Affected Defendants (although the LCD suppliers for these additional products are unknown).  As Honeywell detailed in its submission of July 18, 2008, it is the law of this case that Honeywell has the right to continue its investigation and identify infringing modules even while the Affected Defendants are stayed.  To reiterate, Judge Thynge expressly stated that Judge Jordan did *not* limit Honeywell from further investigating and accusing products of these customers: "He never said that Honeywell's identification of products was necessarily all that there was because this is a continuing process to some extent."  Telephone Conference Transcript at 32-33, January 25, 2007, Exhibit C to Honeywell's Letter of July 18, 2008.  Despite this ruling and the fact that the Affected Defendants were present at this hearing, certain Affected Defendants ignore the record and persist in taking the unwarranted position that the claims are limited to those products Honeywell accused in May 2005.[3]  Further, Judge

---

[2]    The following Affected Defendants have agreed to provide this Declaration: Apple, Dell, Eastman Kodak, Navman, Nikon, and Sony Ericsson.

[3]    Of course, even without that observation by the Court, Honeywell could seek leave to amend its complaint to accuse additional products or file a separate lawsuit.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 4

Jordan's Order of October 7, 2005 states that, "[t]he stay shall be without prejudice to Honeywell's seeking an order for further discovery from the Non-manufacturer Defendants[.]" So despite assertions from the Affected Defendants to the effect that "fact discovery is now closed"[4] and that Honeywell may not accuse additional products, a comprehensive declaration is necessary to define and bound the basis (if any) for dismissal.

As for the four (4) Affected Defendants that did not accept Honeywell's offer, two are simply non-responsive (Audiovox and Pentax/Hoya), two raise privilege issues (Sony and Olympus), and another (Olympus) proposes an inappropriate alternative. In any case, none has offered a proposal which addresses (or even acknowledges) Honeywell's concerns and for this reason alone should be rejected.[5]  Each of these four Affected Defendants rejecting the authentication declaration is addressed in turn.

Audiovox and Pentax/Hoya avoid accepting Honeywell's proposal by remaining silent (Audiovox) and indicating that it will not provide information in its possession unless ordered by the Court (Pentax/Hoya). The approach of these two Affected Defendants is not in the spirit in which Judge Farnan instructed the parties to proceed. On the other hand, Sony and Olympus raise the issues of attorney-client privilege and attorney work product in support of their refusal to provide the requested information. Honeywell, of course, does not seek privileged information, but simply the *facts* relating to the searches conducted by the Affected Defendants; i.e., Honeywell is asking simply that the Affected Defendants describe the factual criteria used to generate the lists provided to Honeywell pursuant to Judge Jordan's Order of October 7, 2005.[6] Moreover, to the extent that Sony and Olympus assert a privilege due to the legal interpretation required by the broad language of the Order, it further underscores Honeywell's need to understand how this Order was followed before any party is dismissed. Finally, Olympus, in refusing to provide this declaration, offers a limited verification in accordance with Fed. R. Civ. P. 33. As to the verification itself, Honeywell does not appreciate the substantive difference between the requested declaration and the offered verification, but Honeywell does consider a

---

[4]    Eastman Kodak Letter at 1, July 18, 2008.

[5]    It bears noting that what Honeywell is proposing is an informal and cost efficient substitute for what the Affected Defendants have to undertake should motion practice be necessary: they would have to support motion practice with signed declarations and would likely have to submit to formal discovery regarding the substance of such declarations.

[6]    It may be necessary for the Court to conduct—at the expense of the Affected Defendants—an *in camera* review of the communications and material that they now assert privilege over to determine the existence and scope of the privilege.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 5

verification pursuant to Rule 33 an inappropriate vehicle because, given that <u>there has been no opportunity for discovery</u>, no answers to Honeywell's interrogatories exist to verify.[7]

Given that the Affected Defendants never responded to any formal discovery, their representation to the Court that all of their products are covered requires a complete and transparent understanding of what products they refer to when making that representation. To the extent that their "covered" products include those identified in their disclosures made pursuant to Judge Jordan's Order of October 7, 2005, the Affected Defendants must confirm the authenticity, accuracy and completeness of these lists in a declaratory form subject to the laws of the Court.

2.    <u>Confirmation Regarding Non-Use of Accused Optrex and Samsung SDI Modules.</u>

Honeywell has accused a number of LCD modules manufactured by Optrex and Samsung SDI. However, given the often attenuated distribution chains in this industry, it is unclear whether any of the Affected Defendants use these specific modules. Consequently, Honeywell seeks confirmation of non-use of these accused modules before agreeing to a dismissal. It makes no practical sense to dismiss any party that uses the accused modules of the non-stayed defendants, and in fact would be legally erroneous to do so. Moreover, Honeywell made it abundantly clear in its May 2005 correspondence to all defendants that any products which use accused modules infringe the '371 patent. What the Affected Defendants continue to ignore is that the Optrex and Samsung SDI modules at issue, in fact, stand accused of infringement. It is worth remembering that the present situation is of the Affected Defendants' making; they asked for and were granted a stay, while other defendants (including Optrex and Samsung SDI) advanced this litigation. Again the Affected Defendants seek relief, but they cannot complain of the fact that the litigation continued while they were stayed. If the Affected Defendants are not using the accused modules, it should be a simple matter to confirm. If they are unwilling or unable to confirm, it calls into question their right to be dismissed.

Four (4)[8] of the ten (10) responding Affected Defendants accept this aspect of Honeywell's proposed protocol. In the interests of advancing a reasonable protocol, Honeywell has adapted its original request for a declaration regarding the accused modules themselves, to include the option, first proposed by Olympus, to provide a declaration that Optrex and Samsung SDI have not supplied the Affected Defendant with any LCD modules. Furthermore, Honeywell has engaged both Optrex and Samsung SDI on its own to obtain permission to release the list of accused modules to those Affected Defendants who intend to make a declaration in accordance with Honeywell's original request.

---

[7]    If, however, Olympus is now willing to answer the interrogatories directed to them before their stay and verify them, Honeywell will consider this offer.

[8]    Dell, Eastman Kodak, Olympus, and Nikon.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 6

The remaining six (6) Affected Defendants rejecting this aspect of Honeywell's proposal are Apple, Audiovox, Navman, Pentax/Hoya, Sony, and Sony Ericsson. These six take five different approaches on this issue. First, Pentax/Hoya rejects Honeywell's proposal, but says that it would provide information in its possession if ordered by the Court. Second, Audiovox and Navman are non-responsive and simply remain silent. These first two approaches fail to carry the burden of proof, are non-substantive and contrary to Judge Farnan's direction to resolve this issue cooperatively, and thus merit no further response. Third, Sony refuses to provide this declaration on the ground that the case is limited to those products accused of infringement by Honeywell as of October 2005. As noted above, this position is contrary to the law of this case as stated by Judge Thynge, contrary to the fact that Honeywell has accused these modules of infringement, and ignores the obvious ability of Honeywell to assert infringement of additional products in a separate lawsuit. Next, Sony and Sony Ericsson refuse to provide this declaration due to the costs and efforts required. In this modern era of computer databases, such burden is minimal. Moreover, regardless of burden, the burden of proof is theirs and it would be legal error to dismiss any party who uses an accused module. Finally, Apple accepts this proposal to the extent that it will declare that it does not presently use Optrex modules in its iPod product, but it refuses to make any declaration about the past or about the accused Samsung SDI module. Apple, like Sony, bases its rejection in the ill-founded notion that Honeywell is somehow precluded from accusing additional modules of infringement. Nevertheless, Apple's narrow and qualified acceptance, followed by a total rejection on illegitimate grounds, telegraphs that there is a major concern in determining conclusively as a basis for dismissal whether Apple uses any of the accused modules made and widely distributed by Optrex and Samsung SDI.

The Affected Defendants should not be allowed to avoid answering a question that is fundamental to the current scope of the case; namely, whether they use accused modules manufactured by Optrex and Samsung SDI. Absent consent on this issue, Honeywell suggests conducting 30(b)(6) depositions to obtain, for the first time, this basic discovery.[9]

---

[9]    Judge Farnan recognized that even if the Affected Defendants were to be dismissed there are other issues necessitating discovery from these customer defendants (e.g., secondary considerations of non-obviousness). Accordingly, Judge Farnan forecasted that if the parties could not agree to a mechanism before their dismissal the issue would be in front of him for a decision. So for the Affected Defendants to act as though information beyond products accused in May of 2005 is irrelevant and unnecessary is entirely contrary to the Court's position, and unreasonable when juxtaposed with Judge Farnan's concluding remarks that "[e]ven if they have licenses, we may need some discovery from them." Status Conference Transcript at 17, April 2, 2008.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 7

**3.    Confirmation that the Licenses Cover All the Activities and Products of the Affected Defendants (Declaration from Licensee/Module Maker).**



Honeywell seeks a Declaration from the Affected Defendants' suppliers to confirm that the modules ostensibly sold to the Affected Defendants fall within the language of the license██████████████████████████ and fall within the legal ambit of the license's coverage. Such linkage is necessary because despite the suggestion of some of the Affected Defendants, the mere existence of a license is not a sufficient basis to dismiss them from the case. ████████████████████████████████████████████████████

████████████████████████████████████ The question then, is whether the rights granted to the LCD module maker flow to the benefit of these particular customers. Honeywell's basic contention is that the Affected Defendants' answer to this question is simply conclusory and demands discovery into the circumstances regarding the supply relationship.[10]   Judge Farnan understood this, saying, "Honeywell says it's not that we can't agree, -- it's not that we don't agree, it's just that we don't know." Status Conference Transcript at 12-13, April 2, 2008. Accordingly, Judge Farnan directed the parties to work together to get the information necessary to determine whether the representations of the Affected Defendants were in fact the true state of affairs – that they are covered by the relevant license agreements.

Of the ten (10) responding Affected Defendants, only two (2) -- Nikon and Dell -- appear to be willing to work towards a dismissal under Honeywell's protocol. During the global meet and confer on July 18, 2008, Nikon agreed to place Honeywell in contact with the relevant persons within their LCD suppliers. Subsequently and through its letter to Your Honor, Dell appears to have agreed to this approach. While not exactly what Honeywell has been seeking, this proposal is very close to the one Honeywell has articulated since the inception of this process. Honeywell respectfully submits that common ground can be reached through a melding of theses two approaches.

In rejecting Honeywell's proposal, Nikon and Dell have expressed a concern for being stuck in the middle between Honeywell and their LCD suppliers. In turn, they seek assurances that their efforts will be rewarded in the end. Honeywell has repeatedly assured all of the Affected Defendants that it understands this concern and has no interest in continuing to advance infringement claims if the record demonstrates that these claims are exhausted. However, Honeywell likewise does not want to be in the middle between the Affected Defendants and their LCD suppliers████████████████████████████████████

---

[10]    After weeks of listening to statements to the effect that there is no contractual relationship between the Licensee and Affected Defendants like Audiovox, or the recent admission by Pentax/Hoya that its efforts get its suppliers to state that Pentax/Hoya is covered by a license have failed, Honeywell has become suspect as to the applicability of these licenses to at least some of the Affected Defendants.

The Honorable Vincent J. Poppiti
July 25, 2008
Page 8

████████████████████████████████████████████████████████

Accordingly, as Honeywell has suggested during the meet and confer process, it is willing to alter its protocol, as needed, to work jointly with each Affected Defendant and their relevant licensed LCD supplier to obtain an adequate declaration as efficiently and expeditiously as the situation allows. Honeywell believes this type of three-way communication is the quickest and most efficient way to gather the information required to link the liability of the Affected Defendants to the licenses granted by Honeywell. Again, given the nature of the relationship between the Affected Defendants and their suppliers, coupled with the fact that Honeywell does not have discovery either on that relationship or on the products at issue, it is critical that the Affected Defendants initiate and remain part of that discussion, albeit in a secondary role once the supplier is engaged. As reflected in Exhibit B to Honeywell's original submission, and confirmed in a number of the Affected Defendants' letters, many of them have already reached out to their suppliers and received some type of assurance; Honeywell simply wants to obtain these assurances in a form on which it can rely.

While Honeywell believes this cooperative approach reasonably addresses both sides' concerns, it nevertheless must address some of the assertions made by the remaining eight (8) responding Affected Defendants who have rejected Honeywell's original proposal outright. As indicated above and further detailed below, many of the responding Affected Defendants have flatly rejected Honeywell's proposal, and implicitly Nikon's also, and instead ask Your Honor to recommend that they simply be dismissed from the case. This approach entirely avoids Judge Farnan's comments on April 2 and what the Court instructed the parties to work towards -- a workable protocol to determine whether these Affected Defendants should be dismissed pursuant to their representations regarding full licensure.

Additionally, as detailed in Honeywell's Letter on July 18, 2008, the Affected Defendants ignore their burden under the *Jazz Photo* cases and their progeny to establish their entitlement to benefit from licenses to which they are not a party; i.e., that Honeywell's patent rights are now exhausted by the first sale doctrine. Interestingly, not one of the Affected Defendants rejecting Honeywell's proposal addresses this fundamental inquiry and none identify where or when these first sales occurred. In fact, some, like Audiovox, hint that they have no idea where the first sale of the relevant modules occurred. Honeywell's proposed declaration would fully satisfy its concerns as to whether its rights under the '371 patent have been exhausted. Under the law, the Affected Defendants cannot avoid this burden and must either meet it now through the proposed informal process, or later during formal motion practice.

As for the eight (8) Affected Defendants rejecting Honeywell and Nikon's proposals, many of them take the approach that the burden of proof in seeking their dismissal is somehow Honeywell's and not theirs. Moreover, not a single Affected Defendant has cited any case law supporting this position. For example, Navman, without citing any case law, simply

The Honorable Vincent J. Poppiti
July 25, 2008
Page 9

states that it "believes" that its products are covered by a license,[11] and therefore it "believes the burden should shift to Honeywell[.]" In addition to Navman, at least Eastman Kodak, Olympus, and Sony Ericsson[12] also rely heavily on a reallocation of their burden of proof to Honeywell. Implicit in these Affected Defendant's position is that they have somehow made a *prima facie* showing of license coverage by conclusory representations. The Affected Defendants are required to take into consideration the entirety of the license including the definition of what products are covered and the extent of such coverage. Their approach again ignores Judge Farnan's directive and their burden of proving affirmative defenses such as patent exhaustion and implied licenses.

Others like Pentax/Hoya[13] and Sony Ericsson seek to limit these proceedings to products accused in May 2005, while ignoring the other products accused by Honeywell. In fact Sony Ericsson fails to explain why it identified certain modules in its original disclosures that it now claims are not accused. Quite simply, the Affected Defendants are bound by Judge Thynge's statement on this issue, which serves as the law of the case.

Further, Sony Ericsson refuses to even contact its LCD suppliers[14] ███████ ███████ because it does not believe it should be "put to such additional activity and cost . . ." As Judge Farnan has indicated, clearly an informal process like that proposed by Honeywell is cheaper and easier than engaging in formal discovery to obtain the necessary information to establish coverage for the Affected Defendants. Indeed, if contacting one's supplier is as



The Honorable Vincent J. Poppiti
July 25, 2008
Page 10

problematic as Sony Ericsson contends, then it calls into question whether that supplier truly covered the activities of that particular customer.

        Apple has come close to fully accepting Honeywell's proposal regarding the linkage declarations from its LCD suppliers.



Nevertheless, Apple unfortunately ultimately rejects Honeywell's proposal. Specifically, Apple rejects this proposal, characterizing issues such as product definitions and the first sale doctrine as "generalized concerns[.]" These concerns, of course, have undeniable import and specific application to the licenses taken by the LCD manufacturers supplying Apple.[15] Nonetheless Apple asks that Your Honor circumvent the language of the relevant licenses and simply recommend its dismissal from the case.

        Far from demonstrating an entitlement to dismissal, this chain of events provides a clear example of why Honeywell needs sworn declarations confirming the chain of distribution; Audiovox's original unverified disclosure was incorrect and misdirected Honeywell. It was only after significant effort and expense that Honeywell rectified this mistake or misdirection Audiovox did not identify its LCD module maker by name or the LCD module by number as explicitly required by Judge Jordan's Order.

---



15

16

The Honorable Vincent J. Poppiti
July 25, 2008
Page 11

      As it did in 2005, Audiovox again throws its hands up, claiming that it does not know anything about the LCD modules at issue, while simultaneously claiming that it is fully licensed. These positions are not reconcilable. Indeed Audiovox's response regarding all of the Audiovox products Honeywell has identified involves extensive factual statements regarding branding, ownership, and sales data which cry out for confirmation and verification. In a final point, Counsel for Audiovox, Mr. English, claimed during the July 15, 2008 global meet and confer that Audiovox was not in privity with its LCD suppliers, and may be adverse to them in subsequent indemnification disputes. In other words, Audiovox admits that it has serious concerns as to whether its LCD supplier had any intent to cover Audiovox's liability.



However, it is Kodak that chose to be stayed, and thus chose not to participate in what became a negotiation between Honeywell and independent parties. Simply put, Eastman Kodak cannot complain about how those negotiations proceeded when it chose not to participate in them in the first instance.



This is exactly the type of information Honeywell is seeking, so it is unclear why Sony continues to object.

      Finally, some of these eight (8) Affected Defendants suggest that there is no Rule 11 basis for keeping them in the case. To the contrary, not one of the Affected Defendants

The Honorable Vincent J. Poppiti
July 25, 2008
Page 12

has a license with Honeywell as a Customer Defendant.[19]  It is thus incumbent upon them to
establish that they are third party beneficiaries of these agreements, both as a matter of contract
language ████████████████████████ and as a matter of law (i.e., patent exhaustion
and/or implied license).  Such linkage cannot be assumed or supposed but must be demonstrated
with some reasonable degree of specificity.[20]  The need for such linkage is highlighted by
statements such as Audiovox's that it might *not* be indemnified by its supplier and by
Pentax/Hoya's revelation that its module suppliers have refused its request to provide the linking
declarations.  Such information clearly calls into question whether the licensees intended to
cover a particular customer's liability in obtaining the license.

          Overall, there is no legal or factual basis for dismissing these parties from the case
merely because of the existence of these licenses.  Absent a sound record linking license
agreements to these third parties—information to which Honeywell is entitled—these parties
should remain in the case.  While Honeywell remains willing to engage in informal procedures in
the interests of cost and efficiency, the intransigence of many of the Affected Defendants suggest
that formal discovery and motion practice may, in the long run, be the best solution.

## CONCLUSION

          As set forth above and in my July 18, 2008 letter, Honeywell has set forth a
reasonable and effective protocol aimed at assessing the propriety of a dismissal of the Affected
Defendants without the need for costly and time consuming discovery.  In light of the parties'
submissions, Honeywell respectfully requests that Your Honor issue a Report and
Recommendation that the Affected Defendants obtain the following in advance of an order of
dismissal (without prejudice)[21] from this case:

          1)      A Declaration from the Affected Defendant that:

                        (i)      authenticates the disclosures made by the Affected
                                 Defendant in seeking their stay in this action;



19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

The Honorable Vincent J. Poppiti
July 25, 2008
Page 13

           (ii)    establishes that the Affected Defendant does not use any of the accused modules still at issue in this matter;

2)    A Declaration(s) from the Affected Defendant's LCD manufacturer(s) establishing the necessary linkage between the licenses and the Affected Defendant's products and activities.

Honeywell respectfully submits that, in lieu of this proposal, fairness and due process demands that the parties engage in formal discovery, including 30(b)(6) deposition(s) of the Affected Defendants and/or LCD manufacturers.[22] As expressed by Judge Farnan on April 2, Honeywell is entitled to obtain this type of information one way or another, so perhaps formal discovery is the only avenue the Affected Defendants are willing to pursue. Honeywell submits such formal procedures are guaranteed to increase multi-fold the cost and time necessary to resolve this issue, and, in that spirit, urges the Special Master to adopt its proposed protocol.

Respectfully,

*Thomas C. Grimm*

Thomas C. Grimm (#1098)

TCG/

cc:    Dr. Peter T. Dalleo, Clerk (by hand delivery)
       Counsel for Affected Defendants (see attached Certificate of Service)
       Counsel for Manufacturer Defendants (see attached Certificate of Service)
       Matthew L. Woods, Esq. (via e-mail)
       Stacie E. Oberts, Esq. (via e-mail)
       John G. Day, Esq. (via e-mail)

2425981

---

[22]    Additionally, formal discovery may require depositions of Defendants Optrex and Samsung SDI in order to verify that none of the Affected Defendants is purchasing accused LCD modules from either of these entities who remain in the case.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 11, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on August 11, 2008 upon the following parties:

| | |
|---|---|
| REPRESENTING HONEYWELL INTERNATIONAL INC. AND HONEYWELL INTELLECTUAL PROPERTIES INC.<br><br>(C.A. 04-1337) | Steven J. Balick<br>**sbalick@ashby-geddes.com**<br><br>John G. Day<br>**jday@ashby-geddes.com**<br><br>Lauren E. Maguire<br>**lmaguire@ashby-geddes.com** |
| REPRESENTING AUDIOVOX ELECTRONICS CORPORATION<br><br>(C.A. 04-1337) | William F. Taylor, Jr.<br>**wtaylor@mccarter.com** |
| REPRESENTING AUDIOVOX COMMUNICATIONS CORP.<br><br>(C.A. 04-1337) | Matt Neiderman<br>**mneiderman@duanemorris.com**<br><br>D. Joseph English<br>**djenglish@duanemorris.com** |
| REPRESENTING NIKON CORPORATION AND NIKON INC.<br><br>(C.A. 04-1337) | Richard L. Horwitz<br>**rhorwitz@potteranderson.com**<br><br>David E. Moore<br>**dmoore@potteranderson.com**<br><br>William J. Marsden, Jr. (NIKON INC.)<br>**marsden@fr.com**<br><br>Barry W. Graham<br>**barry.graham@finnegan.com**<br><br>Darren M. Jiron<br>**darren.jiron@finnegan.com** |

REPRESENTING NOKIA CORPORATION
AND NOKIA INC.

(C.A. 04-1337)

Thomas L. Halkowski
**halkowski@fr.com**

William J. Marsden, Jr.
**marsden@fr.com**

Lauren A. Degnan
**degnan@fr.com**

Andrew R. Kopsidas
**kopsidas@fr.com**

REPRESENTING SAMSUNG SDI CO., LTD.
(THIRD-PARTY DEFENDANT)

(C.A. 04-1337)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

Alana A. Prills
**alanaprills@paulhastings.com**

Carolyn E. Morris
**carolynmorris@paulhastings.com**

Elizabeth L. Brann
**elizabethbrann@paulhastings.com**

Hamilton Loeb
**hamiltonloeb@paulhastings.com**

Stephen S. Korniczky
**stephenkorniczky@paulhastings.com**

REPRESENTING SANYO ELECTRIC CO., LTD.
AND SANYO NORTH AMERICA

(C.A. 04-1337)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

Michael A. Dorfman
**Michael.dorfman@kattenlaw.com**

Timothy J. Vezeau
**timothy.vezeau@kattenlaw.com**

Richard P. Bauer
**richard.bauer@kattenlaw.com**

REPRESENTING SEIKO EPSON CORPORATION

(C.A. 04-1337)

Robert J. Katzenstein
**rjk@skfdelaware.com**

Robert J. Benson
**rjbenson@hhlaw.com**

REPRESENTING APPLE

(C.A.04-1338)

Thomas L. Halkowski
**halkowski@fr.com**

Kelly C. Hunsaker
**hunsaker@fr.com**

Frank E. Scherkenbach
**scherkenbach@fr.com**

REPRESENTING ARGUS

(C.A.04-1338)

Richard H. Cross, Jr.
**rcross@crosslaw.com**

Amy Evans
**aevans@crosslaw.com**

Brian D. Roche
**broche@reedsmith.com**

REPRESENTING CASIO

(C.A.04-1338)

Thomas L. Halkowski
**halkowski@fr.com**

John T. Johnson
**jjohnson@fr.com**

REPRESENTING CITIZEN WATCH CO., LTD.
AND CITIZEN DISPLAYS CO., LTD.

(C.A.04-1338)

David J. Margules
**dmargules@bmf-law.com**

Stuart Lubitz
**slubitz@hhlaw.com**

David H. Ben-Meir
**dhben-meir@hhlaw.com**

Rose Hickman
**rahickman@hhlaw.com**

REPRESENTING CONCORD

(C.A.04-1338)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

REPRESENTING DELL

(C.A.04-1338)

Richard L. Horwitz
**rhorwitz@potteranderson.com**

David E. Moore
**dmoore@potteranderson.com**

Avelyn M. Ross
**aross@velaw.com**

Willem G. Schuurman
**bschuurman@velaw.com**

Roderick B. Williams
**rickwilliams@velaw.com**

REPRESENTING EASTMAN KODAK

(C.A.04-1338)

Frederick L. Cottrell, III
**cottrell@rlf.com**

Chad M. Shandler
**shandler@rlf.com**

Neal Slifkin
**nslifkin@harrisbeach.com**

Paul J. Yesawich, III
**pyesawich@harrisbeach.com**

Laura W. Smalley
**lsmalley@harrisbeach.com**

REPRESENTING FUJIFILM CORPORATION
AND FUJIFILM U.S.A., INC.

(C.A.04-1338)

Philip A. Rovner
**provner@potteranderson.com**

Angie M. Hankins
**ahankins@stroock.com**

Matthew W. Siegal
**msiegal@stroock.com**

Lawrence Rosenthal
**lrosenthal@stroock.com**

| REPRESENTING FUJITSU | Richard L. Horwitz |
| --- | --- |
| (C.A.04-1338) | **rhorwitz@potteranderson.com** |
| | David E. Moore |
| | **dmoore@potteranderson.com** |
| | Christopher E. Chalsen |
| | **cchalsen@milbank.com** |
| | Christopher J. Gaspar |
| | **cgaspar@milbank.com** |
| REPRESENTING HOYA (FORMERLY PENTAX) | Adam W. Poff |
| | **apoff@ycst.com** |
| (C.A.04-1338) | Michael J. Fink |
| | **mfink@gbpatent.com** |
| | Neil F. Greenblum |
| | **ngreenblum@gbpatent.com** |
| | P. Branko Pejic |
| | **bpejic@bgpatent.com** |
| REPRESENTING INNOLUX DISPLAY CORPORATION | Matt Neiderman |
| | **mneiderman@duanemorris.com** |
| (C.A.04-1338) | Donald R. McPhail |
| | **drmcphail@duanemorris.com** |
| REPRESENTING KYOCERA | Robert J. Katzenstein |
| | **rjk@skfdelaware.com** |
| (C.A.04-1338) | Robert K. Beste, III |
| | **rkb@skfdelaware.com** |
| | Stuart Lubitz |
| | **slubitz@hhlaw.com** |
| | David H. Ben-Meir |
| | **dhben-meir@hhlaw.com** |
| | Rose Hickman |
| | **rahickman@hhlaw.com** |

REPRESENTING MEI/MEC (MATSUSHITA)

(C.A.04-1338)

William J. Wade
**wade@rlf.com**

Steven A. Reiss
**steven.reiss@weil.com**

David J. Lender
**david.lender@weil.com**

REPRESENTING NAVMAN

(C.A.04-1338)

Arthur G. Connolly, III
**aconnollyIII@cblh.com**

Brian M. Gottesman
**bgottesman@cblh.com**

Bradford P. Lyerla
**blyerla@marshallip.com**

REPRESENTING OLYMPUS

(C.A.04-1338)

John W. Shaw
**jshaw@ycst.com**

Richard M. Rosati
**rrosati@kenyon.com**

George E. Badenoch
**gbadenoch@kenyon.com**

REPRESENTING OPTREX
(THIRD-PARTY PLAINTIFF)

(C.A.04-1338 AND 04-1536)

Karen L. Pascale
**kpascale@ycst.com**

Thomas J. Fisher
**tfisher@oblon.com**

Alexander E. Gasser
**agasser@oblon.com**

Richard D. Kelly
**rkelly@oblon.com**

Andrew M. Ollis
**aollis@oblon.com**

John F. Presper
**jpresper@oblon.com**

| | |
|---|---|
| REPRESENTING SAMSUNG SDI CO., LTD. AND SAMSUNG SDI AMERICA, INC.<br><br>(C.A.04-1338) | Richard L. Horwitz<br>**rhorwitz@potteranderson.com**<br><br>David E. Moore<br>**dmoore@potteranderson.com**<br><br>Alana A. Prills<br>**alanaprills@paulhastings.com**<br><br>Carolyn E. Morris<br>**carolynmorris@paulhastings.com**<br><br>Elizabeth L. Brann<br>**elizabethbrann@paulhastings.com**<br><br>Hamilton Loeb<br>**hamiltonloeb@paulhastings.com**<br><br>Stephen S. Korniczky<br>**stephenkorniczky@paulhastings.com** |
| REPRESENTING SONY CORPORATION<br><br>(C.A.04-1338) | John W. Shaw<br>**jshaw@ycst.com**<br><br>John Flock<br>**jflock@kenyon.com**<br><br>Robert L. Hails, Jr.<br>**rhails@kenyon.com** |
| REPRESENTING SONY ERICSSON<br><br>(C.A.04-1338) | Francis DiGiovanni<br>**fdigiovanni@cblh.com** |
| REPRESENTING TOSHIBA<br><br>(C.A.04-1338) | Richard L. Horwitz<br>**rhorwitz@potteranderson.com**<br><br>David E. Moore<br>**dmoore@potteranderson.com**<br><br>Arthur I. Neustadt<br>**aneustadt@oblon.com**<br><br>Carl E. Schlier<br>**cschlier@oblon.com** |

*/s/ Thomas C. Grimm*

_____

Thomas C. Grimm (#1098)