IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-1338- JJF |
| v. | ) ) | (Consolidated) |
| APPLE COMPUTER, INC., et al., | ) ) | |
| Defendants. | ) | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING DM 1

## BACKGROUND

This is a patent infringement case brought by Honeywell alleging infringement of United States Patent No. 5,280,371 (the "'371 Patent" or the "Patent") that relates to a liquid crystal display ("LCD") screen which produces a brighter image (making the screen easier to use) without requiring additional power, while helping to reduce the appearance of an undesirable interference pattern called the "mouse effect" on the screen. These LCDs screens are associated with products such as laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, and/or portable game systems.

While the Special Master has conducted a thorough review of the procedural history of the four actions involving Honeywell pending in this District, it would serve no useful purpose in the context of the pending matter to make an effort to fully explicate all party filings, court orders (verbal or written) and transcripts of hearings. At the same time it is important to highlight what the Special Master concludes to be critical events in order to understand the matter *sub judice*. What follows then is a brief procedural history of those events.

—

On October 6, 2004, Honeywell simultaneously filed two separate complaints asserting the '371 Patent, C.A. Nos. 04-1338[1] and 04-1337, initially against 37 different so called non-manufacturing customer defendants.[2] Although the initial Defendants included some entities which are "hybrids", the Special Master understands that Honeywell's focus in the first complaint was on the sale of end products involving mainly Customer Defendants.

As early as December 2004, answers were filed by some Customer Defendants claiming the existence of licenses with their respective suppliers. For example, Apple in its December 2004 Answer set forth an affirmative defense that its products were licensed. (D.I. 76). (See also, Casio's Answer D.I. 83; Pentex's Answer D.I. 87, 88, Matsoshita's Answer D.I. 92, 93).

On December 20, 2004, Optrex America, Inc., a manufacturer of the alleged infringing LCDs, brought an action against Honeywell (C.A. No. 04-1536, D.I. 1), requesting declaratory relief for non-infringement or invalidity.

On March 10, 2005, Honeywell filed a motion that sought to consolidate all pending actions regarding the '371 Patent. (D.I. 134).

On March 14, 2005, Seiko Epson Corporation, another manufacturer of LCDs, sought intervention in both Honeywell initiated cases requesting declaratory relief. (C.A. Nos. 04-1337, D.I. 50; and C.A. No. 04-1338, D.I. 136).

Between January 5, 2005 and May 6, 2005, several Customer Defendants moved to stay the litigation in order for Honeywell to first resolve its claims against the manufactures of the

---

[1] For simplicity's sake, references to docket numbers are from C.A. No. 04-1338 unless otherwise noted.
[2] The Special Master understands that makers of the consumer electronics industry generally fall into two classes of entities: those who manufacture LCD modules ("Manufacturers") and those who incorporate such modules into end products such as laptop computers, cellular phones, PDA's and the like (the "Customer Defendants"). The Special Master also understands that some entities engage in both activities are colloquially referred to as "hybrids".

-2-

LCDs. The Customer Defendants argued that they had no information about the internal

working of the LCD modules used in their product lines.[3]

On May 16, 2005, Judge Jordan held a status conference for the purpose of discussing

management of the cases. (D.I. 204). The resulting May 18, 2005 Order granted Seiko's motion

to intervene and granted Honeywell's motion to consolidate and provided *inter alia* that:

- The dispute between Honeywell and the [Manufacturing Defendants] should go first. (D.I. 202 at 9).

- The Motions to Stay are granted in part permitting Honeywell "certain limited discovery to learn who the suppliers of the LCDs are for the various devices that Honeywell must now specifically identify as accused products." (D.I. 202 at 9).

With the direction to specifically identify accused products "now," Judge Jordan took the

occasion to observe:

> At the case management conference held on May 16, 2005, I granted a defense request that Honeywell be required to identify the products it is accusing of infringement. To date it has only stated that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '371 patent literally and/or under the doctrine of equivalents . . . ."

(D.I. 202 at 9, n.5). It is important to note that Judge Jordan did not set a time deadline by which

all infringing products had to be accused.

On September 9, 2005, at the request of Judge Jordan, another teleconference was

convened. Honeywell did not believe that it was receiving from the Customer Defendants what

it had requested, and the Customer Defendants, in turn, wanted a complete stay in the case.

Specifically, Honeywell stated that it "identified what the products are that have infringed and

---

[3] Fuji Photo Film Co. & Fuji Photo Film USA – D.I. 95; Kyocera Wireless Corp., Pentax Corporation, Pentax U.S.A. Inc., D.I. 158; Olympus Corporation & Olympus America Inc. – D.I. 161; Audiovox Electronics Corporation, Navman NZ Limited, Navman U.S.A. Inc., Apple Computer Inc., Argus, Dell Inc. & Eastman Kodak Corp. – D.I. 181; and Sony Corporation and Sony Corp. of America – D.I. 189.

we've specified what those types of products are and we've given them specific model numbers

as to ones we've been able to purchase and tear down, but that doesn't mean that we know all of

the generations of those products that they have introduced in the past.... We've narrowed it

down to specific products we've torn down. We don't know all of the historical model numbers.

That's the information we're asking for." (9/9/2005 Tr. 22: 5-10 and 24:23 - 25:1).   In the

context of this discussion, Judge Jordan again addressed the issue of Honeywell's obligation to

affirmatively accuse specific products:

> I said in the order that I put out last May that Honeywell was
> required to specifically identify accused products.  And, that's
> what I meant.  Not that Honeywell was entitled to say, you know,
> we think all you cellular phones infringe so we want you to tell us
> everything about all your cellular phones.  What I mean is if
> you've got a basis for believing that a manufacturer's cellular
> phones are infringing, and I mean you can say we've done this
> tear-down on these specific products and these things appear to us
> to infringe, well, then you are absolutely entitled to conduct
> additional discovery with respect to those products, that is, were
> earlier generations than the one you tore down.  Also, have they
> come out with subsequent generations of that same model which
> could also be infringing?
>
> But what you are not entitled to do is to say that you manufacture
> 15 different kinds of cell phones.  We tore down three.  Tell us
> about your other 12.  Because I agree with defendants that now
> that you are doing is you are telling manufacturers, you know
> what?  You got one or two things that are bad.  We want you to do
> an analysis of everything you make and tell us whether you are
> guilty on those fronts, too; and that is not what the law requires,
> and it's not what I'm going to require them to do.

(9/9/05 Tr. at 27-29).  Again, however, Judge Jordan did not set a time deadline

by which all infringing products had to be accused.

On October 7, 2005, Judge Jordan memorialized this teleconference in an Order, which

required *inter alia* that within 21 days the Customer Defendants "provide to Honeywell the

identify of the Manufacturers of LCDs incorporated into that Defendant's products and product

- 4 -

lines which have been identified by Honeywell with specificity (e.g., by make and model number)." (D.I. 237 at 5, ¶1). This information was to include any generational products ("other version of the identified products that include the LCD modules contained in the specifically identified products") and "other versions of the identified products that include other LCD modules with substantially the same structure as the LCD module or modules contained in the specifically identified products, if any." (D.I. 237 at 5, ¶ 1). The Order further provided that within 30 days Honeywell was required to file an amended complaint to add any Manufacturing Defendants. (D.I. 237 at 5, ¶ 2).

Once these conditions were satisfied, along with a few other non-substantive conditions, the suits against the Customer Defendants would be "entirely stayed." (D.I. 237 at 6, ¶ 4). Again, it is noteworthy that while Honeywell was reminded of Judge Jordan's direction to accuse products, Judge Jordan neither articulated a process for Honeywell to affirmatively accuse products nor indicated whether generational products identified by the Customer Defendants to Honeywell would be considered/deemed to be accused products.

On November 7, 2005, Honeywell amended its complaint to add approximately another 25 Manufacturing Defendants. (D.I. 239).

On March 16, 2006, Judge Jordan told the parties in a teleconference that the trial against the Manufacturing Defendants was to be tried first, and that trial was going to be bifurcated: validity and unenforceability to be tried first, then infringement/damages tried second. (03/16/2006 Tr. at 33: 22-23 and 32: 14-15). Judge Jordan further stated that a "manageable" number of defendants would be "something not in excess of five; and less is better." (03/16/2006 Tr. 33: 14-15).

- 5 -

On July 21, 2006, Judge Jordan held another teleconference with the Manufacturing Defendants because discovery was not moving forward. The Manufacturing Defendants, who were having a similar problem as the Customer Defendants, advised the Court that Honeywell was not specifically accusing products. Honeywell countered that they were not being given discovery on Manufacturing Defendants' entire product lines. Judge Jordan, again, made it clear that Honeywell had the "burden to come forward with specifically accused products." (7/21/2006 Tr. at pages 18-20). Again, Judge Jordan did not set a time deadline by which all infringing products had to be accused.

The Special Master is mindful that consistent with Honeywell's litigation efforts it had undertaken a program to license the '371 Patent. The Special Master is advised that as of April 23, 2008 Honeywell had entered into licensing agreements with 20 entities resulting in only five non-licensed Manufacturing Defendants being left in the case – Optrex, Samsung, SDI, Fry's, Citizen and InnoLux.[4]

Subsequent to Judge Jordan's appointment to the United States Court of Appeals for the Third Circuit, the case was assigned to Magistrate Judge Thynge on December 15, 2006, for all pretrial proceedings pursuant to 28 U.S.C. § 636 (b). On January 25, 2007, during the initial teleconference before Magistrate Judge Thynge, Apple raised the issue of lifting the stay to permit it (and presumably other Customer Defendants similarly situated) to file a motion to dismiss on the grounds that Apple could claim the benefit of a Honeywell license to its manufactures and in any event, "[t]here are no accused LCD modules in the case that are sold to Apple." (01/25/2007 Tr. 43-44). Magistrate Judge Thynge observed, "I'm not inclined at this

---

[4] On August 25, 2006, InnoLux filed a Motion to Dismiss asserting that this Court lacks jurisdiction over it. (D.I. 536). On April 18, 2008, Judge Farnan denied the Motion "with leave to renew following the completion of jurisdictional discovery in this action." (D.I. 999).

stage to lift the stay to let you file a motion to dismiss. Not at this stage . . . I told you right now

I'm not going to lift the stay to let you file a motion." (*Id.*).

With respect to Honeywell's obligation to accuse products Magistrate Judge Thynge also

took the occasion to observe that, "[Judge Jordan] never said that Honeywell's identification of

products was necessarily all that there was because this is a continuing process to some extent."

(*Id.* at 33). Counsel for Apple attempted to engage Magistrate Judge Thynge about the

observation:

> And with respect to the Court's comments before about the identification of products, I guess two points as to that:
>
> The first is whether or not Honeywell's May 2005 list was set in stone. It has been 20 months since that time and they have still not identified anything else that creates any case or controversy at this time with respect to Apple.
>
> And, secondly, the idea that the issue would never be resolved, that the list of products would not be final at some point, it was clear that products had to be identified. They had to be identified, Judge Jordan's term was, with reasonable dispatch as soon as they have any information that the product had to be identified. And at this point in time, there is nothing against our client.

(01/25/2007 Tr. 43-44). Magistrate Judge Thynge said nothing to alter her earlier statement,

which, in the Special Master's view, is consistent with Judge Jordan's direction to Honeywell to

accuse products but without setting a time deadline by which all infringing products had to be

accused.

On August 30, 2007, Honeywell, all Manufacturing Defendants and Sony, signed the

Stipulation and Order to Amend the Scheduling Order. (D.I. 863; So Ordered September 4,

2007). This Order cut-off fact discovery on January 31, 2008, and set other deadlines in that

case. The Order did not apply to the stayed Customer Defendants be as they were not parties to

the Order.

On February 1, 2008, Judge Farnan was assigned to the case. On April 2, 2008, Judge

Farnan held a status conference with the parties during which he authorized appointment of a

Special Master "to find out who has a license and doesn't belong here." (04/12/2008 Tr. 14: 12-

14 and 16:6-7). The Special Master was appointed on May 16, 2008. (D.I. 999). On August 1,

2008, by Oral Order, the reference to the Special Master was expanded.[5] The Special Master

conducted teleconferences on April 24, 2008 and again on May 5, 2008. By Order dated May 9,

2008, Honeywell agreed to produce to the Customer Defendants all licensing agreements it had

entered into regarding the '371 Patent not later than May 13, 2008. (D.I. 1034).

On June 23, 2008, the Special Master conducted a status conference for the purpose of

determining whether the parties had agreed on a protocol through which dismissal of appropriate

Customer Defendants could be achieved informally – that is by agreement with Honeywell –

without the need for each Customer Defendant to file a Motion to Dismiss.

Notwithstanding extensive meet and confers, the parties have been unable to reach

consensus on the protocol. The parties submitted their respective proposals on July 18, 2008.

(D.I. 1076-1086). Responses to same were submitted on July 25, 2008. (D.I. 1091, 1093-1102).

Honeywell seeks three declarations from the Customer Defendants: (1) "Confirmation of

Customer Defendants' Prior Identification of Products and Module Suppliers (Declaration from

Customer Defendants)" for all of the Customer Defendant's products, including accused and

non-accused products, including "a short statement as to how the Customer Defendant assured

---

[5] The Special Master believes it is important to make several observations regarding the Court's
expanded order of reference of August 1, 2008 in the context of the matter *sub judice*. First, the
Special Master concludes the order confers the authority to modify any dates and/or time frames
that have not been established by Judge Farnan as the newly assigned Judge. Second, the Special
Master also concludes that were there to be an issue that was controlled by the principle of "the
law of the case," the Special Master is free to make any recommendation to the Court that the
Special Master believes to be correct and appropriate.

itself that it had identified all the products as originally ordered by the Court"; (2) "Confirmation

Regarding Non-Use of Accused Optrex and Samsung SDI Modules" for all of the Customer

Defendant's products; and (3) Confirmation that the Licenses Cover All the Activities of the

Customer Defendants (Declaration from the Licensee/Module Maker). (D.I. 1085 at 2-4). The

Special Master understands that, once Honeywell received these declarations from a Customer

Defendant, that Defendant would be dismissed from the case. (*Id.* at 6).

Many of the Customer Defendants agreed to provide some of these declarations, and a

few did not agree to any of these requests. Although each Customer Defendant submitted its

own submission articulating their respective issues with Honeywell's requests (see chart,

Attachment 1), the critical stumbling blocks in the Special Master's view are:

1. The Customer Defendants assert that there is no agreement to provide
   declarations as to the non-accused products for declarations #1 and #2.

2. Claiming there is no agreement to provide declaration #3, the Customer
   Defendants assert that Honeywell should bear the burden to show that the
   licenses do not cover the particular Customer Defendant.

During the July 30, 2008 teleconference, it became clear to the Special Master that,

although the parties should be encouraged to continue to meet and confer with the goal of

achieving voluntary dismissals for appropriate Customer Defendants, it is also became clear that

absent agreements to dismiss in short order, a schedule should be established for the filing,

briefing, hearing and ultimate decisions on the Customer Defendants' Motions to Dismiss.

## ACCUSED PRODUCTS – DISCUSSION AND CONCLUSIONS

A number of Customer Defendants have asserted that only those end products

specifically identified and accused by Honeywell pursuant to Judge Jordan's Order of October 7,

2005 (D.I. 237, hereinafter "Judge Jordan's 2005 Order") are within the bounds of this case. Those Customer Defendants rely on Judge Jordan's statement referenced at page 4.

The Special Master agrees that consistent with Honeywell's responsibilities pursuant to Fed. R.Civ. P. 11 coupled with Honeywell's burden as the party asserting infringement, Honeywell must go first, i.e. specifically identify end products of the Customer Defendants that are accused of infringement. Such identification of accused end products requires written notification by Honeywell to the particular Customer Defendant and/or its representative.

Some Customer Defendants seek to prohibit Honeywell from identifying accused products after 2005 as being too late under Judge Jordan's October 7, 2005 Order. In the Special Master's view, however, Judge Jordan's 2005 Order was not so limited. The Special Master is mindful that Judge Jordan required that Honeywell both identify end products (D.I. 237, ¶ 1), and file an amended complaint within 30 days of the order naming additional Manufacturers it accuses of infringement. (D.I. 237, ¶ 2). The Order, however, did not prohibit Honeywell from later identifying accused products in addition to those it had already identified in 2005.[6] There is simply no end date in the Judge Jordan October 7, 2005 Order for accusing products. This observation, in the Special Master's view, is consistent with Magistrate Judge Thynge's interpretation of the Order in which she emphasized the on-going nature of the suit: "[h]e never said that Honeywell's identification of products was necessarily all that there was because it is a continuing process to some extent." (1/25/07 Tr. at 32-33). It is also, in the Special Master's view, consistent with the procedural posture of the stayed case against the Customer Defendants.

---

[6] The Special Master notes that Honeywell could request leave to amend its complaint notwithstanding either Judge Jordan's 2005 Order or the deadline for amending pleadings, or alternatively file another suit against any newly identified manufacturers or new end products of customers.

To now attempt to establish a retroactive deadline beyond which Honeywell would have been foreclosed from accusing additional products where none existed, would in the Special Master's view be both arbitrary and prejudicial to Honeywell to have its claims regarding the '371 Patent tried in the suits pending before the Court. Resolution of all Honeywell's '371 Patent claims in one suit is also in the interest of judicial economy and efficiency.

Accordingly, any end products identified by Honeywell, pursuant to Judge Jordan's 2005 Order, both before and after the Customer Defendants were stayed, should be in this case.[7]

The Special Master is aware of both Audiovox's and SEMC's assertions that they were only recently notified by Honeywell of "additional hits" of infringing end products. For reasons set forth above, however, the Special Master concludes that these end products should be in the case. Since the Special Master is recommending a brief window of time within which Honeywell can properly and finally designate accused products, it would, in the Special Master's view, be arbitrary to exclude them.

Further, consistent with this approach, the Special Master concludes that any end product identified to Honeywell by a Customer Defendant pursuant to Judge Jordan's 2005 Order should be part of this case if Honeywell in turn affirmatively designates the end product within the designated window. Honeywell has a window of one (1) week from the date of this Report to affirmatively designate these end products as accused.

In this regard, the Special Master is mindful that as one of the conditions of the Customer Defendants' stay in the case, the Customer Defendants were required to provide Honeywell with a list of end products and their associated LCD module suppliers. To now exclude from the case

---

[7] For example, the "additional hits" identified by Honeywell in its August 7, 2008 letter to the Special Master are included. (D.I. 1129).

those end products identified in the Customer Defendants' lists would essentially obviate this condition of the stay.   Further, once the stay was in place, thereby suspending the Customer Defendants participation in the case, there was, in the Special Master's view, no requirement for Honeywell to formally accuse end products of the Customer Defendants.   Moreover, any Customer Defendant that identified end products in response to Judge Jordan's 2005 Order was obviously aware (and on notice) of potential infringement regarding those end products. Given the Customer Defendant's knowledge of potential infringement for those end products each was required to identify, the Special Master concludes that Honeywell would be prejudiced and judicial economy would be impacted were Honeywell not provided with an opportunity to affirmatively accuse these products in this case.

In sum, any end products accused by Honeywell, including the "additional hits" as well as the end products identified by the Customer Defendants pursuant to Judge Jordan's 2005 Order, and affirmatively designated by Honeywell pursuant to this Report and Recommendation will be deemed accused in the case.

Notwithstanding the above, the Special Master concludes that Honeywell may not, as of the date of this Report, further accuse any newly identified end products.[8]   At some point, even in the context of this procedurally convoluted case, litigation of any issue must come to an end. Honeywell has had three years to purchase and tear-down any of the Customer Defendants' end products.   Additionally, and perhaps more importantly, Honeywell has essentially conceded that

---

[8] As discussed below, there is one exception to that cut-off regarding the accused Optrex and Samsung modules.

identification of additional accused end products is not a condition of dismissal of the Customer

Defendants from this case by not requesting additional time to identify additional end products.[9]

## VOLUNTARY DISMISSALS - DISCUSSION, GUIDANCE AND DIRECTION

The discussion and guidance which follows is framed by the Declarations Honeywell has

requested from each of the Customer Defendants.

As a condition of dismissal from this case, Honeywell requests three declarations from

each Customer Defendant including (1) an "authentication declaration"; (2) an "Optrex/Samsung

SDI declaration"; and (3) a "linkage declaration." (See p. 8 above). For reasons set forth below,

the Special Master agrees with Honeywell that the authentication and Optrex/Samsung

declarations should be provided (with some conditions) but disagrees that the linkage declaration

should be provided as a condition of dismissal.

## AUTHENTICATION DECLARATION

Honeywell requests a declaration from each Customer Defendant that verifies the

accuracy and completeness of the Customer Defendants' lists. Honeywell points out that the

lists were submitted to them informally and were not filed with the Court. (D.I. 1085 at 2), and

that as a result of the stay, Honeywell had not had an opportunity to conduct discovery regarding

the lists. (*Id.*) Because Honeywell has not had the opportunity to verify the accuracy of the

Defendants' lists through discovery, the Special Master believes Honeywell's request is

reasonable and would not be unduly burdensome to the Customer Defendants. Accordingly, the

Special Master encourages each Customer Defendant to provide an authentication declaration to

Honeywell.

---

[9] Nothing in Honeywell's July 18 or July 25 submissions requests time to identify additional end
products of the Customer Defendants.

062038.00619/40176096v.1

Moreover, as discussed above, because the Special Master has concluded that all end products identified by Honeywell to date and all end products identified by a Customer Defendant pursuant to Judge Jordan's 2005 Order which are affirmatively accused by Honeywell within the window will be deemed accused, all these accused products should be included in the authentication declaration.

Furthermore, the Special Master encourages each Customer Defendant to include in the declaration a statement as to the Customer Defendant's process in identifying the Customer Defendants' lists. In this regard, Honeywell requests only that the Customer Defendants identify the "factual criteria" used to compile the Customer Defendants lists and should not implicate either the attorney client privilege or the work-product doctrine. (D.I. 1085 at 3). If such a statement is not provided in the authentication declaration in the hope that the information would yet permit Honeywell to take a further step to voluntarily dismiss a Customer Defendant, the Special Master will allow Honeywell to conduct limited discovery as to the process and factual criteria used by the Customer Defendants in developing the Customer Defendants lists. This discovery should be completed by September 10, 2008 and is limited to one interrogatory or 1 hour of deposition.

If a particular Customer Defendant elects not to provide the above authentication declaration, the Special Master will allow Honeywell limited discovery as to the accuracy and completeness of that particular Customer Defendant's list including the process and factual criteria used to compile the list. This discovery is limited to 5 interrogatories or 5 hours total of deposition to be completed by September 10, 2008.

- 14 -

## OPTREX/SAMSUNG SDI DECLARATION

As a further condition of dismissal, Honeywell requests from each Customer Defendant a declaration stating that the Customer Defendant does not use Optrex or Samsung SDI LCD modules (hereinafter "Optrex/SDI declaration") which currently stand accused of infringement by Honeywell. According to Honeywell, those Optrex/SDI accused modules were identified after the Customer Defendants' were stayed and, thus, it had not had an opportunity to determine whether any of the Customer Defendants used their modules. (D.I. 1085 at 3). To expedite dismissal of the Customer Defendants from the case, the Special Master strongly encourages each Customer Defendant to provide the requested Optrex/SDI declaration with the understanding that if the Customer Defendants do not provide this declaration, they, at their own peril, could face another lawsuit.

Assuming Honeywell has been diligent in its investigation, the Special Master will permit Honeywell one (1) week from the date of this Report to affirmatively identify end products of the Customer Defendants that it accuses of infringement as containing either an accused Optrex or Samsung SDI LCD module.

Commensurate with this identification of accused products, the Special Master will allow Honeywell to conduct limited discovery on the end products specifically identified, associated product lines and generations of those end products. One (1) week subsequent to Honeywell's identification of the accused end products, Honeywell and the relevant defendants shall propose a discovery schedule consistent with the attached schedule.

## LINKAGE DECLARATION

As a last condition of dismissal, Honeywell requests a declaration from the relevant licensees (hereinafter "the Manufacturers") confirming that the modules sold to a particular

- 15 -

Customer Defendant are in fact covered by the license. The relevant Manufacturers are those suppliers of the Customer Defendants that have been dismissed from this suit.

While the Special Master understands that some Customer Defendants have contacted their suppliers and encouraged them to cooperate with Honeywell, the Special Master is only in the position of encouraging all Customer Defendants to echo the message of encouragement to cooperate with Honeywell. At the end of the day, if Honeywell is unable to informally secure whatever information it needs to form a position as to whether it believes activities by a Customer Defendant are outside the scope of an identified license, it is ultimately Honeywell's burden of persuasion. *Bourne Co. v The Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) ("Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities. Just as in an ordinary contract action, the party claiming a breach carries the burden of persuasion.").

Absent Honeywell being able to secure the Linkage information, Honeywell and the relevant defendant shall, no later than one (1) week from the date of this Report, propose a discovery schedule for third party discovery, consistent with the attached schedule.

To the extent that Manufacturers have information regarding the coverage of their customers under the Honeywell licenses, and to the extent that the Manufacturers receive requests for such information that are reasonable in scope, responding promptly to requests for such information would aid the parties' on-going efforts to agree upon stipulated voluntary dismissals of the Customers from this suit.

- 16 -

## MOTIONS TO DISMISS

Failing to achieve a voluntary dismissal as to any particular Customer Defendants will result in the implementation of the attached Discovery/Briefing Schedule.  (See Attachment 2).

## DISCOVERY REGARDING COMMERCIAL SUCCESS

Without addressing the merits thereof, the Special Master acknowledges Honeywell's request to obtain discovery from the Customer Defendants regarding the issue of commercial success prior to their dismissal of this case.  (D.I. 1126).  Because the Customer Defendants have not had the opportunity to respond to Honeywell's August 5, 2008 Letter, the Special Master declines to address the issue of commercial success in this Report.[10]  The Special Master is mindful of Judge Farnan's statement during the April 2, 2008 status conference that he would address the issue.  Consistent the August 1, 2008 order of reference, the Special Master will consider the prior briefing regarding this issue (D.I. 693 and 724) and any responses from the Customer Defendants.  Such responses by the Customer Defendants should be submitted no later than August 15, 2008.

## CONCLUSION

For the reasons set forth above, the conclusions reached, the guidelines provided, and the schedule established constitute the Special Master's Report and Recommendations to the Court.

---

[10] The Special Master acknowledges that both Manufacturing Defendants FUJIFILM and Optrex have responded to Honeywell's August 5, 2008 submission.

THE SPECIAL MASTER'S REPORT WILL BECOME A FINAL ORDER OF THE COURT, UNLESS OBJECTION IS TAKEN IN ACCORDANCE WITH THE ANTICIPATED ORDER BY THE COURT WHICH SHORTENS THE TIME WITHIN WHICH AN APPLICATION MAY BE FILED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 53(G).

ENTERED this 13th day of August, 2008.

_____

Vincent J. Poppiti, Esq. (DE ID # 100614)
Special Master

062038.00619/40176096v.1

# ATTACHMENT 1

| Customer Defendant | General Statements by the Customer Defendant | #1 Confirmation of (a)D's prior ID of products (Declaration) – sworn declaration confirming authenticity, accuracy and completeness of list and (b)short statement of process. | #2 Declaration re: Confirmation re: non-use of accused Optrex and Samsung SDI Modules | #3 Confirmation that Licenses Cover all Activities of Defendant (Declaration from Licensee) |
|---|---|---|---|---|
| Dell | | Agrees to provide a declaration verifying manufacturers of accused products. Disagrees with providing process, as this is not relevant. | This is not relevant to dismissal. But, Dell will provide it. | Disagrees. Honeywell should bear burden of Rule 11, and is in the best position to evaluate the licenses. Dell, though, has already contacted the manufacturers. |
| Nikon | | Agrees to provide a declaration confirming the accuracy of the list. Disagrees with process list as not relevant or necessary. | Does not believe this is relevant, but will provide the declaration. | Honeywell should bear the burden (rule 11). Honeywell has the info and should have to obtain this, but Nikon has already contacted its suppliers. |
| Kodak | Generally agrees to protocol, even though it does not agree with Honeywell's position. | Agrees to provide decl. outlining process for only accused products. | Agrees to provide decl. stating that these modules are not incorporated in accused and non-accused products. But believes this info is irrelevant as Kodak. | Disagrees. Kodak believes all modules are covered in the licenses. Honeywell has the burden now to est. that the licenses do not cover Kodak. |

0620038.00619/11814031v.1

| | | | | ...to the non-accused products. |
|---|---|---|---|---|
| Apple | Apple has made prima facie case showing that accused products have been licensed. The burden is now on Honeywell to present contrary facts. | Agrees to provide declaration (but is silent on the process part) | This is irrelevant b/c not accused product. But, will confirm that it does not presently use either. | Disagrees with trying to obtain 3rd party discovery - Honeywell has all this information. |
| Pentax | Will provide declaration with all info in its possession. | Agrees to provide declaration of info in their possession – confirming the prior id of products and module suppliers. | Will provide a declaration of non-use of accused Optrex and Samsung SDI modules. | Has all this information. Has asked suppliers to provide, and they have not done so. |
| SEMC (Sony Ericson) | Has one accused product, and has confirmed it is under a licensed (which is attached to 7/28 submission) | Will provide this information (as to steps it has taken to identify accused products) | Disagrees. These are newly identified products and not accused in this case. | Disagrees, as it is not willing to contact 3rd party for information when it is clear that the licensing agreement covers SEMC. |
| Sony | Sony has already made a prima facie case showing sufficient to demonstrate that its accused products are covered under license agreements. | Generally agrees to provide (a). Disagrees to provide (b) as it is not relevant and is privileged as AC and WP. | Disagrees because this information is irrelevant. These were not accused products. This is unreasonable b/c Honeywell should perform this task and Honeywell has not identified any Sony | TMD (manufacturer) has indicated that it is willing to provide written doc showing that the modules sold to the modules sold to Sony are covered by the license agreements. But, Honeywell already has this information and has |

062038.00619/11814031v.1

| | | | | |
|---|---|---|---|---|
| | | | product that contains these two modules. | not rebutted Sony's prima facie showing. |
| Audiovox | Generally – Honeywell has all the info. And nothing additional is needed. | Honeywell has an affidavit from Wistron Corp. confirming that the only product sold to Audiovox was PPC phone and the LCD modules on the PPC phone and the LCD modules on the PPC phones sold to Audiovox were purchased by Winston from Phillips (who has a license from Honeywell). | This is beyond the scope of discoverable material est. by the court. | Disagrees. Winston (manufacturer) already submitted affidavit confirming only product that it sold. Further, ACC has license agreement and points to section, but Honeywell has not pointed to any issue of material fact regarding the license defense. |
| Olympus | It has already established a prima facie license defense and now Honeywell has the burden to come forth with some explanation if they disagree. | Disagrees to providing (b) as to the process, as it goes beyond FRCP scope; not in Jordan's order; disclosure of AC WP; unnecessary and unreasonable burden. Proposes to provide a verification that information and discovery provided pursuant to Jordan's 2005 Order is true and correct. | Will do it. | Disagrees. The license agreements, on their face, covered Olympus accused products, and they have received independent confirmation from suppliers that the licenses cover Olympus. This is unnecessary and unreasonable. Honeywell has all the information. |
| Navman | Adopts the position taken by Apple in its 7/25/ submission. | (a) Has already provided Honwell with information pursuant to | Disagrees. | Disagrees. Honeywell should have burden to identify specific provisions of the license |

3

062038.00619/1814031v.1

| Hartford | | 10/7/2005 Order | | agreements which might arguable show that Navman is not covered. |
| --- | --- | --- | --- | --- |
| | No 7/18 submittal. Honeywell has represented that not all of Hartford products are covered under licenses. Therefore, Hartford only asks to be dismissed for the two products covered under licenses, but does not state whether it agrees or disagrees with Honeywell's proposal. | (b) Will provide a declaration confirming steps taken to compile the information pursuant to 10/7/05 Order. | | |

# ATTACHMENT 2

### SCHEDULE REGARDING HONEYWELL'S LIMITED DISCOVERY

### AND MOTIONS TO DISMISS

| AUTHENTICATION | DEADLINE |
|---|---|
| Honeywell to serve interrogatories regarding (a) the accuracy of lists compiled by Customer Defendants pursuant to Judge Jordan's October 2005 Order; and/or (b) the factual criteria used by the Customer Defendants to compile those lists. The number of interrogatories are limited to 5 if directed to (a) and (b) above, or 1 if directed to only (b).<br><br>-OR-<br><br>Honeywell to Notice 30(b)(6) depositions regarding (a) the accuracy of lists compiled by Customer Defendants pursuant to Judge Jordan's October 2005 Order; and/or (b) the factual criteria used by the Customer Defendants to compile those lists. The depositions are limited to 5 hours if directed to (a) and (b) above, or 1 hour if directed to only (b). | August 20, 2008 |
| Parties to meet-and-confer regarding mutually agreeable days for Honeywell to conduct 30(b)(6) depositions. | No later than August 25, 2008 |
| Customer Defendants to serve answers to Honeywell's interrogatories. | August 27, 2008 |
| Conclusion of Honeywell's limited fact discovery regarding (a) and/or (b) above. | September 10, 2008 |

| OPTREX/SAMSUNG SDI ACCUSED LCD MODULES | DEADLINE |
|---|---|
| Honeywell to identify end products of Customer Defendants accused of infringement as using either Optrex or Samsung SDI LCD modules. | August 20, 2008 |
| Parties to provide proposed discovery schedule regarding Customer Defendants end products accused of infringement by Honeywell that use either an Optrex or Samsung SDI LCD module. | August 27, 2008 |

| MANUFACTURERS/LICENSEES | DEADLINE |
|---|---|
| Third party fact discovery limited to distribution channels of Manufacturers and scope of Manufacturer licenses. | September 5, 2008 |

| MOTIONS TO DISMISS | DEADLINE |
|---|---|
| Opening Briefs for Motions to Dismiss.  Customer Defendants to file a joint brief not to exceed 25 pages.  Additionally, each individual Customer Defendant may file an appendix not to exceed 5 pages.  All submissions shall be double-spaced, 12 point font. | September 10, 2008 |
| Opposition Briefs regarding Motions to Dismiss not to exceed 15 pages double-spaced, 12 point font. | September 19, 2008 |
| Reply Briefs regarding Motions to Dismiss.  Customer Defendants to file a joint brief not to exceed 15 pages double-spaced, 12 point font.  Additionally, each individual Customer Defendant may file an appendix not to exceed 3 pages. | September 26, 2008 |
| Hearing on Motions to Dismiss | October 2, 2008 at 9:00 A.M. |
| Rulings on Motions to Dismiss | October 24, 2008 |