# Exhibit A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   HONEYWELL INTERNATIONAL INC.      :      CIVIL ACTION
                                       :
 5              Plaintiff              :
                                       :
 6         vs.                         :
                                       :
 7                                     :
     AUDIOVOX COMMUNICATIONS CORP;     :
 8   AUDIOVOX ELECTRONICS CORPORATION  :
     NIKON CORPORATION; NIKON INC;     :
 9   NOKIA CORPORATION; NOKIA INC;     :
     SANYO ELECTRIC CO., LTD.; SANYO NORTH:
10   AMERICA CORPORATION; SANYO EPSON  :
     IMAGING DEVICES CORPORATION,      :
11   SUZHOU EPSON CO., LTD.,           :
     SANYO EPSON IMAGING DEVICES       :
12   (HONG KONG) LTD., and             :
     SANYO EPSON IMAGING               :
13   DEVICES (PHILLIPINES) INC.,       :
     SANYO:                            :
14              Defendants             :      NO. 04-1337-JJF

15                              - - -

16                                     Wilmington, Delaware
                                       April 2, 2008
17                                     12:48 o'clock, p.m.
                                       Status Conference
18
                                - - -
19
     BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
20
                                - - -
21
     APPEARANCES:
22
                  MORRIS, NICHOLS, ARSHT & TUNNELL
23                BY:  THOMAS GRIMM, ESQ

24                      and

25                ASHBY & GEDDES
                  BY: LAUREN MAGUIRE, ESQ
```

```
 1                        Counsel for Plaintiff

 2
            RICHARDS, LAYTON & FINGER
 3          BY:  CHAD SHANDLER, ESQ

 4                        Counsel for  Eastman Kodak

 5          FISH & RICHARDSON:
            BY:  THOMAS HALKOWSKI, ESQ
 6
                          Counsel for Apple and Nokia
 7
            POTTER, ANDERSON & CORROON
 8          BY: PHILIP ROVNER, ESQ

 9                        Counsel for Fuji

10          YOUNG, CONAWAY, STARGATT & TAYLOR
            BY:  KAREN PASCALE, ESQ
11
                          Counsel for Optrex America
12
            BOUCHARD MARGULES & FRIEDLANDER, P.A.
13          BY: DAVID J. MARGULES, ESQ

14                        Counsel for Citizens' Watch

15          POTTER, ANDERSON & CORROON
            BY:  RICHARD L. HORWITZ, ESQ
16
                          Counsel for Samsung SDI
17
            YOUNG, CONAWAY, STARGATT & TAYLOR
18          BY:  MONTE SQUIRE, ESQ

19                        and

20          BY:  JOHN W. SHAW, ESQ

21                        Counsel for Olympus

22          CONNOLLY, BOVE, LODGE & HUTZ
            BY:  FRANK DIGIOVANNI, ESQ
23
                          Counsel for Sony Ericsson Mobil Systems
24          DUANE, MORRIS
            BY:  DONALD MCPHAIL, ESQ
25
                          and
```

```
 1                    AIMEE CZACHOROWSKI, ESQ

 2                     Counsel for Innolux

 3          YOUNG, CONAWAY, STARGATT & TAYLOR
            BY:  CHAD STOVER, ESQ
 4

 5                     Counsel for Pentax

 6

 7

 8                              Leonard A. Dibbs

 9                              Official Court Reporter

10

11              P R O C E E D I N G S

12

13          (Court commenced at 12:48 o'clock p.m.)

14          THE COURT:  Be seated, please.

15          Do you want to announce your appearances starting

16   with Honeywell?

17          MR. GRIMM:  Good afternoon, your Honor, Tom Grimm

18   of Morris, Nichols. I represent Honeywell in the 1338 case.

19   With me is Lauren Maguire from the Ashby Geddes firm. She is

20   in the 04-1337 case.

21          THE   COURT:  You're in the 1338 case?  I got it.

22          MR. GRIMM:  Correct.  They have been

23   consolidated.

24          THE COURT:  All of these are the ones in front of

25   Judge Jordan?
```

4

1          MR. GRIMM:  Correct.

2          THE COURT:  That you think?

3          MR. HORWITZ:  Richard Horwitz of Potter,

4    Anderson. I know you have another hearing.

5          I'm here today on behalf of Samsung SDI, which is

6    one of the manufacturers' defendants in the active case.

7    There are various stayed defendants as well.

8          THE COURT:  All right.  Good afternoon.

9          MR. ROVNER:  Good afternoon, your Honor, Phil

10   Rovner for the Fuji defendants.  I represent two of the

11   manufacturers' defendants that are in the case.

12         THE COURT:  Thank you.

13         MS. PASCALE:  Good afternoon, your Honor, Karen

14   Pascale of the Young, Conaway firm. I represent Optrex

15   America, a manufacturers' defendant.

16         THE COURT:  Thank you.

17         MR. HALKOWSKI:  Good afternoon, your Honor,

18   Thomas Halkowski with Fish & Richardson on behalf of Nokia as

19   well as Apple.

20         I have an issue that hopefully we can get to that

21   will help streamline the case.  At least ten or 11 customer

22   defendants -- suppliers who have been fully licensed up.

23         We would like an opportunity to raise that issue

24   in whatever way the Court deems appropriate.

25         THE COURT: Thank you.

5

1          MR. MCPHAIL:  Good afternoon, your Honor, Donald

2     McPhail  I represent one of the manufacture defendants in

3     this case, Innolux

4          THE COURT:  Thank you.

5          MR. SQUIRE:  Good afternoon, your Honor, Monte

6     Squire, along with John Shaw, we represent Olympus as well

7     Sony.

8          THE COURT:  Thank you.

9          MR. MARGULES:  Good afternoon, your Honor, Dave

10    Margules.  I represent Citizens' Watch and Citizens' Display,

11    which is the the only defendant in 874 case.

12         THE COURT:  Thank you.

13         MR. DIGIOVANNI:  Good afternoon, your Honor,

14    Frank DiGiovanni from Connolly, Bove, representing Sony

15    Ericsson Mobil Communications (USA) Inc.

16         THE COURT:  Thank you.

17         MR. STOVER:  Good afternoon, your Honor, Chad

18    Stover from from the Young, Conaway firm. I'm here on behalf

19    of the Pentax defendants.

20         THE COURT:  All right.  Thank you.

21         MR. SHANDLER:  Good afternoon, your Honor,  Chad

22    Shandler from Richards, Layton for Eastman Kodak.

23         THE COURT:  Thank you.

24         All  right.

25         This is started by the case being assigned to me

6

1  and then an e-mail and there being some questions about what

2  schedule the case was on, if it's on a schedule or not on a

3  schedule and how is the case going to proceed.

4        Mr. Grimm?

5        MR. GRIMM:  Your Honor, for the record, for what

6  it's worth, it was my understanding that today's hearing was

7  for Delaware Counsel only.  There is counsel here --

8  non-Delaware Counsel representing Optrex in the courtroom.

9        I don't know if there are any other non-Delaware

10  lawyers representing the parties in this lawsuit or not.

11        THE COURT:  I don't know.

12        Is that like a call out?

13        MR. GRIMM:  Yes.

14        THE COURT:  The only -- what I was trying to do

15  as we're trying to do with -- what I'm trying to do in cases

16  that I have inherited from that vacant judgeship is that over

17  the next 90 days, I'm trying to get everybody in.

18        What happened in this case was with the e-mail

19  and the confusion it created for me, I thought that I could

20  quickly without worrying about schedules, get somebody from

21  every local firm, Delaware firm, in to at least talk about

22  them.

23        It's okay if someone from another firm.

24  Although, I don't want anybody thinking that I'm favored to

25  that firm because I allowed someone to come.  I was trying to

7

1  get it on quickly.

2          MR. GRIMM:  I understand that, your Honor.  You

3  can imagine the ripple of panic it set off with Honeywell and

4  my co-counsel.

5          THE COURT:  I'm saying what I'm saying.  It was

6  only intended to get some expeditious treatment to the

7  confusion that is in the schedule.

8          I think it's largely driven by the way the case

9  was treated inside the Courthouse.  I'm trying to get it up

10  and running again.  I wanted to get some folks over so I

11  could talk.  I guess I could have done it on telephone.

12          As you can see with the numbers and everything at

13  my age, I'm not good on the telephone even with one party.  I

14  have to keep asking people to speak up and all.

15          Why don't you start.  No offense if you're here

16  or not here and you're not Delaware counsel.

17          MR. GRIMM:  Thank you, your Honor.

18          This case was filed in October of 2004.

19  Originally, Honeywell sued the U.S. end customers of LCD

20  screens that it claims infringe its patent because those were

21  the entities that obviously we could easily get jurisdiction

22  over.

23          Initially, the lawsuit involved 15 defendants.

24  The defendants moved to stay the action against them and

25  requested that the Court direct Honeywell to, in the first

1    instance, seek to bring in the original manufacturers of the

2    LCD screens, all or most of whom are in foreign countries

3    like Korea and Japan.  That process took quite sometime as

4    you can imagine.

5              At the end of the day there were, I believe, 24

6    manfacturers brought into the case.  Because of the large

7    number of defendants, the way the schedule was initially set

8    up by Judge Jordan, the first trial would be on the issue of

9    validity only and infringement would follow.

10             However, the parties were directed to discover

11    all issues.  That's what's been done over the last three and

12    a half years.  Of course, it was transferred to Judge Thygne

13    at some point in time, who has resolved a number of discovery

14    issues.

15             There are some discovery issues and other issues

16    that are currently pending.

17             At this point, given that 20 of the 24 defendants

18    have now settled and taken a license under the patent in

19    suit, not only would Honeywell would like to see the case put

20    on a schedule, an aggressive schedule as soon as possible

21    given your Honor's very busy schedule, but also to visit

22    reconfiguring on how the case is to be tried.

23             At this point, with only four defendants

24    remaining and some of whom are likely to settle, it doesn't

25    seem to make a lot of judicial sense or financial sense for

1  the parties to proceed the way it was initially mapped out

2  with validity only.

3          It would only take the filing of infringement

4  reports by experts and deposition of experts to have the

5  infringement case complete and ready to go.

6          In light of your Honor's more recent desire in

7  scheduling, and that is -- at least it seems to us, what you

8  are doing more and more, is holding Markman hearings before

9  expert reports and expert discovery so that the experts know

10  what you're claim construction is.

11          We can very quickly go to the claim construction

12  process.  The briefs are due next month.  We can have a

13  hearing whenever your Honor can do that and schedule

14  infringement expert reports to follow on after that with the

15  usual trial that could cover infringement as well as validity

16  as well as damages.

17          So, on behalf of Honeywell, I would request that

18  your Honor set an in-person scheduling conference, if

19  possible, in the near future to consider putting the case on

20  a schedule and reconfiguring the way the trial will proceed.

21          THE COURT:  All right.  Thank you.

22          MR. ROVNER:  Your Honor, as the author of that

23  e-mail, I'm going to be the first speaker.

24          First, to correct a few things that Mr. Grimm had

25  said.

1       The issues for the first trial -- it wasn't just

2   invalidity.  It was unenforceability as well.  We did have a

3   large number of defendants.  This was the list of the

4   defendants.  It was more than 15, maybe 15 defendant groups.

5   At one point, there were well over 30 individual defendants.

6       After much negotiation, argument, hearings, Judge

7   Jordan set the schedule the way he did, limiting the first

8   trial to the manufacturer defendants trying unenforceability

9   and invalidity.

10      Speaking for the manufacturers' defendants, we

11  certainly wish to keep that schedule.  And that's the trial.

12      There is no reason after years of proceeding that

13  way that we would undue everything.  We believe we shouldn't

14  undo it.  We should keep the trial the way it was initially

15  proposed.

16      With respect to the schedule.  The e-mail was

17  prompted simply by the fact that we know that your Honor

18  generally deals with Markman and Summary Judgement

19  differently than Judge Jordan did before he left and by Judge

20  Thygne, who maintained the schedule.

21      We didn't want to be put in a position of filing

22  claim construction briefs and Summary Judgement briefs at the

23  same time only to get the claim construction briefs done, get

24  a hearing and then having to do Summary Judgement.

25      We want to operate on your Honor's schedule that

1   makes a lot of sense to get the claim construction out of the

2   way.

3              What we're hoping to do, frankly, I was told that

4   the schedule that we had which was April 25 for Markman

5   briefs, which your Honor has maintained, responsive briefs by

6   May 26th.  I was told that's Memorial Day.

7              Maybe you brought us to Court to reprimand me for

8   picking Memorial day for responsive claim construction

9   briefs.

10             We would hope that would be May 27th.  We would

11  hope that your Honor would set a hearing for claim

12  construction after that.  We would go to Summary Judgement on

13  the issues that we've already -- that we planned on

14  briefing.

15             THE COURT:  All right.  Thank you.

16             THE COURT:  Anybody else?

17             MR. HALKOWSKI:  Yes, your Honor.

18             I mentioned before about an issue that I believe

19  is very important with regard to the stayed custody

20  defendants.  I don't know if I can have two minutes of your

21  Honor's time to just lay that out?

22             In addition to Apple, there is Sony, Sony

23  Ericsson Mobile Communications AB and USA Inc., Nikon Corp

24  and Inc., Pentax, which is now Hoya, H-O-Y-A,, Audiovox

25  Communications, Olympus Corporation and Olympus America,

1    Inc.

2              At least these 11 customer defendants all have

3    suppliers who are fully licensed.

4              The issues here are completely mooted with regard

5    to these defendants.  We raised this issue in a letter to the

6    Court of January 24th, 2007.

7              I have a copy if your Honor would like -- would

8    think that useful.

9              We also then followed that up with a brief

10   addressed during a telephone conference with Magistrate Judge

11   Thygne of January 25th, 2007 as well as February 22nd, 2007.

12             The upshot is that the customer defendants got

13   stayed.  So this issue basically got put to the side.

14             THE COURT:  Does Mr. Grimm agree they are out of

15   the case and mooted?

16             MR. GRIMM:  No, your Honor.  We've had no

17   discovery to know whether or not all their suppliers --

18   everybody is fully licensed or not, your Honor.

19             We don't know who all their suppliers are.

20             This issue was actually raised before 2007 with

21   Judge Thygne.  In light of our argument against it, she

22   denied the request, although admittedly it was renewed in

23   early 2007.

24             THE COURT:  Honeywell says it's not that we can't

25   agree, -- it's not that we don't agree, it's just that we

13

1    don't know.

2              Is that right?

3              MR. GRIMM:  One of the motions pending before

4    Judge Thygne was to get some discovery from what is referred

5    to as customer defendants, U.S. companies that actually sell

6    the devices.

7              THE COURT:  What does that say about the

8    discovery that you would request?

9              Does it say you would like to do depositions, 30

10   interrogatories?

11             MR. GRIMM:  I don't recall precisely.

12             I will say that we characterized it as limited

13   discovery.

14             THE COURT:  Limited discovery, one deposition, 15

15   interrogatories.

16             You think you should be out of the case by virtue

17   of the protection of the suppliers' license?

18             MR. HALKOWSKI:  Correct, your Honor.

19             From the products that have been identified in

20   our letter of January 24th, 2007, we went through and we laid

21   this all out.

22             We got certain products that were identified.

23   Judge Jordan made it very, very clear that there was to be a

24   stopping point where, you know, the shifting of the grounds

25   was suppose to stop and you're suppose to have a list of

1    accused products, and that was suppose to be it.

2            Based upon what has been accused, looking at the

3    suppliers, who provide the modules that go into those

4    products that are accused, everything is covered.

5            Again, we tried to raise this issue and just

6    haven't gotten anywhere at this point.

7            THE COURT:  Here's what we're going to do.

8            Based on what I heard and since it seems to be a

9    big chunk of folks sitting around.  I'm going to let you pick

10   a Special Master.  The two of you can do that.

11           I'm sanctioning it after you pick the Special

12   Master.  A Special Master will be authorized to work for 20

13   hours on any disputes that arise in this limited discovery.

14   I'm going to take that literally, very limited discovery.

15           Twenty hours means you're going to get the use of

16   a Special Master, four days, five hours a day, who will

17   charge you $500 an hour.  $500 an hour times 20 hours is how

18   much?  $10,000 split evenly.  $5000 a side.  Great deal.

19   That means where you are all going.

20           I want the suggestion of a Master by next

21   Friday.  I'm going to allow a 120 days for this to occur so

22   you can go back and forth a little bit.

23           This is the way to do it cheaply.  I won't say

24   cheaply, but less expensive than if you just start flailing

25   around and started filing motions with me.

1    If you pick a real good Master, this will be a

2  homerun.  You'll either know whether you're in or out.

3    I'm going to allow the Master to come up with a

4  report and recommendation if there's any dispute.

5    MR. HALKOWSKI:  Thank you, your Honor.

6    MR. GRIMM:  As I understand it, this is with

7  respect to Honeywell's request for discovery from the

8  customer defendants?

9    THE COURT:  Customer defendants who claim a

10  suppliers' license protection.

11    MR. HALKOWSKI:  Exactly.

12    The customer defendants' position is that we're

13  done.

14    THE COURT:  Right.

15    You're saying you need some information.  I'm

16  going to get you the information.  I'm going to get you a

17  dispute resolution mechanism for a peanut.  $5000 to your

18  side.  That Master will do an R&R.  If there is a dispute if

19  you don't leave them out voluntarily.

20    MR. GRIMM:  That's fine, your Honor.  That's a

21  fine process.

22    I wanted to make it clear on the record that our

23  request for limited discovery from the stayed defendants went

24  beyond the question of whether or not their suppliers were

25  fully licensed.

1    One of the things like establishing commercial

2 success and other things that, as I said, I don't have fully

3 in mind as I sit here.  It was more complete.

4    To be candid with the Court and with everyone

5 here, I wanted to be sure that was up and on the table.

6    THE COURT:  For $10,000, you're going to find who

7 has a license and doesn't belong here.

8    MR. GRIMM:  Okay.

9    THE COURT:  All the rest doesn't matter if they

10 have a license and are out.  If you go back and tell your

11 client you're going to get it done for $5,000 dollars plus a

12 little lawyers' fee, which won't be a little bit more than

13 that.

14    MR. GRIMM:  It does matter with respect to the

15 non-stayed defendants.

16    THE COURT:  Different story.

17    We're only operating on what has been presented.

18 I got a suppliers' license that covers me.

19    MR. GRIMM:  The issue that I want to raise, your

20 Honor, now that they are parties in the case, it's one thing

21 to ask for discovery from them to establish commercial

22 success and other indicia of non-obviousness.  It's another

23 thing to have them potentially dismissed from the case and we

24 have to have third party discovery to establish those.

25    THE COURT:  You'll raise that if you are going to

17

1   let them out.  If you don't agree on some mechanism to get

2   that discovery post their dismissal, then you'll come to me

3   and I will talk with them and see what we can work out.

4   Hopefully, for very limited resources of both your clients

5   and yourselves we're going to get it done.

6              I understand your strategy problem.  I'll take

7   that up later, either from you or from them.

8              MR. GRIMM:  That's great.

9              As long as we have that on the record, your

10  Honor.

11             THE COURT:  Even if they have licenses, we may

12  need some discovery from them.  We have to discuss that.

13             They ought not to be in a lawsuit and paying

14  money and not have the ability for anybody to make a claim

15  against them.

16             MR. HALKOWSKI:  Thank you, your Honor.

17             Just for the record, we would certainly object to

18  being more or less kind of held hostage so they could get

19  free access to additional discovery.

20             THE COURT:  We'll talk about that later.  I'll

21  look for an order from you on that basically sums up this

22  procedure.

23             MR. HALKOWSKI:  We'll work with Honeywell and get

24  a proposed order to your Honor.

25             THE COURT:  You'll have the names of the Master

1    in there.

2            MR. HORWITZ:  Now, speaking on behalf of a number

3    of stayed customer defendants.  I hope -- I wanted to make

4    sure that other than the limited purpose of getting into this

5    fully licensed issue, the case remains stayed as to the

6    customer defendants?

7            THE COURT:  This is only a relief valve to get

8    you out of the case if you don't belong in.

9            MR. HORWITZ:  There is a history.  I remember

10   because I argued in front of the Magistrate on the other

11   issues that Mr. Grimm has talked about.  I don't want the

12   record to be silent.

13           We've opposed the discovery that they are seeking

14   for various reasons.  We can get into that if we ever have to

15   get into that.  Your Honor can review the transcripts of what

16   was done before.

17           THE COURT:  Fine.

18           MR. HORWITZ:  Now, on behalf of Samsung as well

19   as the other defendants, I want to make sure where we are and

20   what your Honor wants to do and what your Honor may want to

21   still here from us going forward.

22           We all believe as Mr. Rovner said, that we have a

23   Markman brief due.  We should have a Markman Hearing and go

24   forward the way the case is already scheduled to go forward.

25           If your Honor is going to make any kind of a

19

1  major shift from that posture of the case for the

2  manufacturers' defendants after all the time that went into

3  it, it might be appropriate.  If you're even going to

4  consider that, to allow some of our co-counsel for both

5  sides, frankly, to be heard.

6            If your Honor is going to go forward as it is

7  now, that's fine.

8            THE COURT:  I'm not sure what I'm going to do.  I

9  wouldn't do it without bringing in the non-Delaware counsel.

10           What I'm trying to do is to get through the

11  immediate issues, you know, everybody gets their dates, looks

12  at them differently and have a little bit of a different

13  procedure.

14           I don't know enough about this case to do

15  anything drastically different anyway at this point.

16           I'm easing into this.  I will certainly give

17  everybody an opportunity,.  I'm thinking I'm going to go in a

18  wide direction from where you've been to be heard.

19           MR. HORWITZ:  Thank you, your Honor.

20           MR. MARGULES:  Dispositive Motions for the

21  Citizens' defendants?

22           My client is accused of infringing through one

23  patent.  There were a thousand cell phones that supposedly

24  infringed that were sold into the U.S. The potential damage

25  against my client is $15,000.

1          The undisputed factual record as of today after

2     all of these years of discovery is that my clients were

3     advised by the manufacturer and by the seller of the units

4     that they would not be sold into the U.S.

5          Their first knowledge that the 1,000 units had

6     been sold in the U.S. came with the filing of a lawsuit.

7          My understanding is that Honeywell essentially

8     concedes there is no infringement claim but presents an

9     inducement claim.

10          In response to an interrogatory asking for the

11     basis of the inducement claim, the only fact that they

12     brought forward was the fact that a thousand units were sold

13     in the U.S.

14          We seek immediately to move for Summary Judgement

15     and have that briefed.

16          THE COURT:  You can.

17          Deal with Mr. Grimm on a schedule.  If you can't

18     agree, submit it and I'll circle the date I like.

19          MR. MARGULES:  Thank you, your Honor.

20          MR. GRIMM:  Would we follow the procedure that

21     your Honor has on your website?

22          THE COURT:  Summary Judgement briefs are on the

23     website.  You have leave to file.

24          MR. MCPHAIL:  We represent Innolux.  Just to let

25     you know, we had a fully briefed Motion to Dismiss for lack

1  of personal jurisdiction as of October 2006 that is still

2  pending.

3                THE COURT:  Do you have a Docket Item?

4                MR. MCPHAIL:  No, I don't have a docket number.

5                THE COURT:  I looked at the docket.

6                MR. MCPHAIL:  The final brief, would say, was

7  filed in October.  It was filed in September.  The reply

8  brief was --

9                THE COURT:  Let's see if we can get it to make

10  sure.  October 6, 2006?

11                MR. MCPHAIL:  Yes, sir.

12                THE COURT:  Docket Item 536.  We'll take a look

13  at that.

14                MR. MCPHAIL:  Thank you very much, your Honor.

15                THE COURT:  Anything else from other defendants?

16                Here's what we're going to do.

17                As you know, the Markman briefing is proceeding

18  and it should continue to proceed.  Other than leave granted

19  for the Summary Judgement application today, Summary

20  Judgement should be -- any efforts there should be

21  discontinued until there is a claim construction order and

22  the opportunity for expert reports with the experts having

23  the claim construction order in hand.  At that point, we'll

24  be able to talk about the expert reports if there is going to

25  be Summary Judgement.

1          As far as you need a date, it sounds like for a

2   claim construction hearing -- do you have a timeframe, a

3   month that you were thinking about?

4          MR. ROVNER:  Your Honor, with briefing due at the

5   end of May, any time that is convenient for your Honor after

6   that.

7          THE COURT:  Do you agree?

8          MR. GRIMM:  Yes, your Honor.

9          THE COURT:  Okay.

10          Well, you can get up with your non-Delaware

11   counsel and they can pick any day of the week of July the 7th

12   except that I have another matter scheduled -- except Monday

13   July 7th.  The 8th, 9th, 10th or 11th.

14          MR. ROVNER:  That's fine, your Honor.

15          We'll get back to you within a week.

16          THE COURT:  A couple of weeks.

17          MR. ROVNER:  Do you know how much time during

18   that day you'll have?

19          THE COURT:  I won't know until I read the

20   papers.

21          I try to gauge it by what the papers say.  It's

22   hard in a vacuum to set times on Markman hearings until you

23   know what the issues are and how much you can tolerate.

24          MR. ROVNER:  Thank you.

25          THE COURT:  That will be the week.

23

1        Lastly, to take up Mr. Grimm's point.

2        You can consult with your non-Delaware counsel.

3   I'm going to give you a lot of time.  By May 16th it will be

4   helpful to the defendants a letter -- a joint letter with any

5   with any specialized exception taken in a footnote, if you

6   could -- the defendant's could open up with a position paper

7   on Mr. Grimm's suggestion to -- I'm using reorganized.

8        MR. GRIMM:  Reconfigure?

9        THE COURT:  Reconfigure.

10        I like it.  To reconfigure the procedures of this

11   case.  So, you will get that letter in.

12        Mr. Grimm, you'll have two weeks after that to

13   get a response and Mr. Rovner and Mr. Horwitz by May 26th.

14        Nobody will have to show for Memorial Day.

15        This is on reconfiguring the trial.

16        MR. ROVNER:  Mr. Horwitz and I were just

17   discussing.  This is really the first time that Honeywell

18   articulated they want to reconfigure.  They made noise

19   before.

20        Our proposal to reconfigure is that they should

21   go first and we should hear what they have to say and we

22   should be able to respond.

23        We're not quite sure other than what Mr. Grimm

24   has said today really what their basis is.

25        THE COURT:  All right.

1    I didn't think it was that complicated.

2    MR. ROVNER:  There is a four year history of this

3    case.

4    THE COURT:  Here's the bottom line.  He wants to

5    throw in infringement with your invalidity and

6    unenforceability case and then he might have a lot of

7    reasons.

8    MR. GRIMM:  We're happy to go first.  I have no

9    problem with that.

10    The four year history.  The point of the four

11    year history is that we've been proceeding along with one

12    trial configuration for four years.  The parties have

13    discovered everybody.  We have four defendants now.

14    THE COURT:  Maybe they think you have more that

15    they want to hear.  I'll give you a chance to put it out

16    there first.

17    What did you say?

18    MR. GRIMM:  I have no doubt that my co-counsel

19    may have other, even better reasons.

20    THE COURT:  You can respond in two weeks.

21    MR. ROVNER:  Thank you, your Honor.

22    MR. HORWITZ:  That will be the last word, our

23    response?

24    We should get the last word since we're

25    representing the status quo position.

1      THE COURT:  That decision may call for a quarter

2  to be flipped.  I only have three good decisions a day in

3  me.  I usually use two at home before I get here.  You're not

4  going to get a chance to say anything else, Mr. Grimm.

5      Put the it all in the first letter.

6      MR. GRIMM:  That's fine, your Honor.

7      THE COURT:  I feel badly for the people coming

8  back.

9      On a serious note, I hope we can get this thing

10  going for you.  We made some headway today.  I appreciate

11  your willingness and ability to be here on short notice.

12      I'm going to ask that you agree on an order that

13  goes in place calling it a status conference.

14      There's a transcript for all your non-Delaware

15  counsel.  That way we'll have a starting point for what we're

16  going to be doing.

17      It's going to be a little bit of a piecemeal

18  effort going forward to try to get this case on track.

19      Okay.

20      MR. GRIMM:  One last request?

21      Would it make sense to set a date for a status

22  conference, if not, immediately following the submission of

23  these two letter briefs following the Markman Hearing to

24  determine where we are, maybe set a trial date at that time?

25      THE COURT:  I think it makes sense for me to have

26

1    a status conference.

2            This calendar is such an moving target.  I don't

3    like to use up time unless I read a paper or something so I

4    have some idea of what I'm going to be talking about, then I

5    might schedule a half hour as opposed to an hour and a half

6    or something.

7            I agree with you, we ought to have a status

8    conference after I have these papers.

9            One procedure is to e-mail and ask for a time.

10   I'll get you on.

11           It's easier to get it on when I'm ready to have

12   you in rather than doing something now for the schedule

13   ahead.

14           The calendar is getting a little reconfigured.

15   I'm going to be using that word a lot, Mr. Grimm.  I like

16   that.

17           Anything else?

18           (No response).

19           THE COURT:  Thank you very much.

20       (Court proceedings concluded at 1:24 o'clock p.m.)

21

22

23

24

25