# Exhibit A

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

March 12, 2007

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:     Honeywell International Inc., et al., v. Apple Computer, Inc. et al.
        C.A. No. 04-1338-*** (consolidated with C.A. No. 04-1337-***)



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Judge Thynge:

I write on behalf of the stayed Customer Defendants in response to Mr.

Grimm's March 2, 2007 letter on commercial success discovery. (D.I. 724)

Honeywell is not entitled to the broad discovery it seeks from the Customer

Defendants because they possess little or no information that is truly relevant to

"commercial success" and that is not already in the possession of the Manufacturer

Defendants. Given that Honeywell's patent covers only the LCD module itself—and

not the combination of the LCD module with the device in which it is used—the

Manufacturers' information regarding sales of the accused LCD modules is

indisputably more relevant to Honeywell's assertion of commercial success.

Honeywell's request to conduct additional discovery of the Customers is

merely its latest attempt to overturn Judge Jordan's original case management ruling,

reaffirmed by Your Honor, requiring Honeywell to pursue its claims against the

Manufacturers in the first instance. Honeywell has not shown that the Customers

have information more relevant than that possessed by the Manufacturers to warrant

lifting the stay imposed by Judge Jordan. Moreover, the proposed discovery

Honeywell requests is overbroad and not justified by its alleged need for evidence of

commercial success.

The Honorable Mary Pat Thynge
March 12, 2007
Page 2

I.      **Honeywell Inappropriately Seeks Discovery of Features Present in the Prior Art**

While commercial success is a factor to be considered in an obviousness determination,

evidence of commercial success need only be considered if it tends to show that ***claimed*** features

were responsible for the alleged commercial success.  *See Sjolund v. Musland*, 847 F.2d 1573, 1582

(Fed. Cir. 1988) (Rich, J.) (noting that jury is "constrained" to consider whether commercial success

flowed from claimed invention).  If a product that embodies the patented invention is successful in

the marketplace and the success can be attributed to the invention (the "nexus"), an inference may be

drawn that the patented invention is a non-obvious variant over the prior art.  *Ormco Corp. v. Align*

*Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).

The best source of evidence of commercial success involves products that are ***coextensive***

with the patented invention.  If the product and the patented invention are the same, a nexus is

presumed.  *Ormco* 463 F.3d at 1312; *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229

F.3d 1120, 1130 (Fed. Cir. 2000).  On the other hand, when a patent owner attempts to prove

commercial success using products that are ***not coextensive*** with the patented device, the patent

owner faces an additional burden to establish a legally sufficient relationship between the patented

device and the product being sold.  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d

1387, 1392 (Fed. Cir. 1988).  Evidence of commercial success is probative only if it relates to

features that are unique to the patented device.  *Ormco*, 463 F.3d at 1311-12.  Commercial success

attributable to features known in the prior art is irrelevant to the obviousness inquiry.  *Id.*; *J.T. Eaton*

*& Co., Inc.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("the asserted commercial success of the product

must be due to the merits of the claimed invention beyond what was readily available in the prior

art"); *White v. Jeffrey Mining Machinery Co.*, 723 F.2d 1553, 1559-60 (Fed. Cir. 1983); *Richdel, Inc.*

*v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).

The Honorable Mary Pat Thynge
March 12, 2007
Page 3

The patent in suit covers LCD modules, not the combination of the modules and some end product or the use of the modules in some end product. Therefore, the commercial success inquiry should focus on the modules themselves and the parties that make and sell them: the Manufacturers. Naturally, they have the sales information concerning the accused display devices. They also have the design expertise that makes them uniquely suited to answer questions regarding any advantages obtained by the accused design when compared to alternative designs.

In order to prove commercial success, Honeywell must show that the evidence of commercial success it seeks relates to the invention at issue—an "improvement" on an LCD module with two lens arrays that includes a slight misalignment of those arrays to eliminate the moiré interference effect. Evidence regarding the success of Customers' end products such as mobile phones and digital cameras is, at best, tangentially related to this issue. Honeywell has not shown that the Customers would have any information as to why a particular configuration of lens arrays (slightly misaligned) was chosen by the Manufacturers over other possible designs (including non-infringing alternatives). Although some Customers provide specifications identifying the necessary performance requirements for individual LCD modules, the internal structure of the devices, including whether or not there are two lens arrays with a slight misalignment, is determined by the Manufacturers. The Customers integrate these displays into larger consumer products that can include hundreds, if not thousands of other technologies, all of which impact the commercial success of the end products. They cannot explain why certain design choices were made by the Manufacturer for a particular module or whether such design choices have any relevance to the teachings of the patent-in-suit.

None of Honeywell's cases suggest that, when discovery is available regarding the accused components themselves, discovery against products that merely incorporate these devices is

FISH & RICHARDSON P.C.

somehow preferred. *Winner Int'l v. Wang* is not on point; there, the claims were co-extensive with the accused product. 202 F.3d 1340, 1351 (Fed. Cir. 2000). *Hughes Tool v. Dresser Ind.* does not suggest that commercial success evidence was available for both the component part (the O-Ring) and the completed product. 816 F.2d 1549 (Fed. Cir. 1987). *Truswal* also does not answer the question presented here: why is evidence concerning sales of the accused components themselves not sufficient for the obviousness inquiry?

Commercial success discovery will be conducted much more effectively against the Manufacturers than the Customers. Because they design and sell the accused modules, the Manufacturers are in a far better position to provide probative evidence on commercial success issues. Discovery from Customers would only concern products with features additional to the accused modules—features that cannot be used by Honeywell to support the alleged non-obviousness of its claimed invention.

## II.    Honeywell Cannot Rely on the Features for Which It Seeks Discovery as Evidence of Commercial Success

The features of the end products on which Honeywell seeks discovery—display brightness and energy efficiency—are common to unclaimed embodiments from Honeywell's patent and present in prior art references. In particular, although Honeywell's patent describes both single lens array and dual lens array embodiments, the single lens array embodiments are not claimed. *See `371 Patent*, FIGS. 2, 4A, 7 and 10 (shown in Appendix Tab A hereto). Claim 3, the only claim in suit, expressly recites a ***pair of lens arrays***. The specification excerpts on which Honeywell relies, cols. 3:19-23 and 5:15, each refer to the ***single lens array*** embodiment described in FIGS 2 and 4A. Thus, the advantages identified in the `371 patent are not unique to the invention at issue in this

The Honorable Mary Pat Thynge                    FISH & RICHARDSON P.C.
March 12, 2007
Page 5

case—the dual lens array device recited in claim 3—and cannot be used as evidence of commercial

success of the *patented* invention. *Ormco*, 463 F.3d at 1311-12.

Moreover, both of these advantages—display brightness and energy efficiency—are

disclosed in prior art references that the Patent Office cited in rejections during prosecution. For

example, U.S. Patent No. 5,161,041 ("Abileah") states at column 7, lines 5-15:

> In order for electronic displays to gain increased acceptance in military and avionic
> applications, the backlighting of flat panel displays, and particularly active matrix liquid
> crystal displays, ***must be improved in light efficiency*** and reliability. In order for a full
> color liquid crystal display to possess acceptable contrast under high ambient lighting
> conditions, the backlighting arrangement ***must be bright***. While current backlighting
> systems have the requisite light output, they still require high power (on the order of 2.4
> watts/square inch) and a depth dimension of about two inches. In contrast thereto, the
> backlight assembly of ***the instant invention consumes only about 1.2 watts/square inch
> of power*** with a depth dimension of only about one inch. [Emphasis added.]

Thus, Honeywell's discovery plan simply seeks to discover what is already known: LCD module

purchasers prefer bright displays to dark ones and energy-efficient displays to wasteful ones.

Abileah states this expressly. Honeywell's proposal seeks discovery of functional advantages that

are common to the prior art and, therefore, it should be rejected.

In addition, most of the advantages Honeywell claims stem from its invention—features its

proposed discovery is designed to explore with the Customers—cannot be attributed to Honeywell's

patent. For example, Honeywell claims that the patented invention results in longer battery life and

lower weight, but the `371 patent nowhere describes these features as attributes of the invention. In

fact, Honeywell's patent does not even discuss consumer electronics. The only "application"

discussed in the patent is aircraft cockpit displays, and the object of the invention is "to provide a

tailored variation of luminance with viewing angle" to focus the light of the display in a particular

The Honorable Mary Pat Thynge
March 12, 2007
Page 6

FISH & RICHARDSON P.C.

viewing angle.[1]  Thus, the energy efficiency attribute Honeywell claims as part of its invention does

not even apply to consumer electronics.  As a result, to the extent the commercial success of

Customers' products may be due to energy efficiency, longer battery life, or lower weight, these

attributes cannot support the non-obviousness of the `371 patent.  *See Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence that invention solved

certain problem was irrelevant to non-obviousness when "this problem is not even mentioned in the [

] patent."); *In re Vamco*, 752 F.2d 1564, 1574-77 (Fed. Cir. 1985).

## III.   Honeywell's Request for Discovery Is Broad, Burdensome, and Unnecessary

Honeywell acknowledges the Court's desire to limit discovery against the Customers, but

then proceeds to request broad, wide-ranging, and unnecessary discovery that is, at best, only

tangentially relevant to commercial success.  Indeed, discovery for such issues is more appropriately

obtained from the Manufacturers.  Furthermore, Honeywell's proposed discovery requests would

impose significant and unnecessary discovery burdens on the Customers.  Honeywell's assertion that

its discovery requests present a minimal burden is untrue.  Honeywell's request for sales information

for "Accused Modules"[2] again seeks to broaden discovery beyond the products Honeywell has

identified as allegedly infringing in this action, in violation of Judge Jordan's prior rulings.

Throughout the course of this litigation, and as part of the transition of this case to one against only

Manufacturers in the first instance, Judge Jordan consistently ordered Honeywell to focus its

---

[1]  Because pilots' heads are always in approximately the same location when they are seated in the cockpit, and because extraneous light emissions in the cockpit should be minimized, aircraft cockpit displays preferably should concentrate all light in a narrow viewing angle.  In contrast, most consumer electronics are designed to provide a wide viewing angle so their displays can be viewed by users at any angle.

[2]  Honeywell used this term in capitalized form, as if to suggest that the term has some understood meaning, but Honeywell did not define it in its letter.  Thus, it is impossible to determine the exact scope of Honeywell's proposed discovery requests.  *See* D.I. 724 at 8.

The Honorable Mary Pat Thynge
March 12, 2007
Page 7

FISH & RICHARDSON P.C.

requests for information on specifically-identified accused products.  However, Honeywell's

proposed discovery requests do not limit the information sought to specifically identified products,

but rather, seem to require the Customers to conduct a burdensome investigation of information just

to determine what products are at issue.

Similarly, while Honeywell downplays the effort required to actually locate and collect the

documents sought, the extent of this effort cannot be known until the products at issue are first

identified.  Therefore, Honeywell's request for sales, marketing, advertising, and customer surveys

for all such products is by no means a narrowly tailored request.  The broad scope of the discovery

Honeywell seeks will likely result in another round of needless satellite litigation, letter briefs, and

discovery disputes over information that is directed to a secondary issue in this litigation, and for

which any pertinent information is more efficiently discovered from the Manufacturer Defendants

currently before the Court and actively participating in this case.[3]

Respectfully,

Thomas L. Halkowski

TLH/kxk/80042860

cc:    Clerk, U.S. District Court (by hand w/attachment)
       All Counsel of Record (by e-filing and email)

---

[3] In addition, as noted during the February 22, 2007 conference, no discovery is warranted from Customer Defendant Apple Computer because all of the accused modules used in Apple's products have now been licensed.  Thus, the disputes concerning all of the accused modules used in Apple's products have become moot.  For the same reason, no discovery is warranted from any Customer Defendant who is similarly situated.

## APPENDIX

### Figures from the '371 Patent

For ease of reference, this Appendix provides the various illustrations of the '371 patent, which are annotated to distinguish among the display designs shown therein. Lens arrays are displayed in yellow.



'371 Patent, Fig. 1 (identified as prior art)          '371 Patent, Fig. 2 (annotated)



'371 Patent, Fig. 4A          '371 Patent, Fig. 7          '371 Patent, Fig. 10
(not claimed)                                            (not claimed)